**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE<br>255 Grapevine Road<br>Wenham, MA 01984-1899,<br><br>*Petitioner / Plaintiff*,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, *in her Official Capacity as Administrator of the Small Business Administration*; *and* THE UNITED STATES OF AMERICA,<br><br>*Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 07

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

**APPELLANT GORDON COLLEGE'S**
**APPEAL PETITION FOR REVIEW OF**
***PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION***

| | |
|---|---|
| ***Borrower:*** | GORDON COLLEGE |
| ***SBA Loan No.:*** | 8289087101 |
| ***Approved Loan Amount:*** | $7,046,037.00 |
| ***Loan Approval Date:*** | 04/15/2020 |
| ***Lender Forgiveness Decision Submission Date:*** | 09/03/2021 |
| ***Lender Forgiveness Decision Amount:*** | $7,046,037.00 |
| ***SBA Final Forgiveness Amount:*** | $ 0.00 |

Appellant Gordon College, a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and though its undersigned legal counsel, hereby submits this Appeal Petition to the Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA").

***(1)*** ***Decision Below***. Appellant seeks review and reversal of the *Paycheck Protection Program Final SBA Loan Review Decision* dated April 12, 2022 (the "*Loan Decision*") and received by Appellant on April 13, 2022. A copy of this *Loan Decision* is attached as Exhibit 01.

***(2)*** ***Basis for Jurisdiction***. The OHA has jurisdiction of this appeal pursuant to 13 CFR § 134.1204. This appeal is timely filed under 13 CFR § 134.1204 *et seq*. The *Paycheck Protection Program Final SBA Loan Review Decision* is dated April 12, 2022. Appellant Gordon College first received the *Loan Decision* (via its lender, Citizens Bank, National Association) via email the following day on April 13, 2022.[1] Gordon College is timely filing this appeal on May 12, 2022.

***(3)*** ***Standard of Review***. The *Loan Decision* was based on a clear error of fact or law and must be reversed. *See* 13 CFR § 134.1210. Review of the evidence in this appeal inexorably leads to a

[1] A copy of the email from Citizens Bank, National Office transmitting the SBA Loan Review Decision and dated April 13, 2022, is attached as Exhibit 02.

definite and firm conviction that a mistake has been committed by the SBA reviewer.[2]

***(4) Relief Sought by Appellant***. Appellant Gordon College respectfully requests that the Office of Hearings and Appeals ("OHA") reverse the SBA's final *Loan Decision* and grant Gordon College full forgiveness of its Paycheck Protection Program ("PPP") loan in the Approved Loan Amount of $7,046,037.00. Reversal of the final Loan Decision and granting full forgiveness, rather than remand, is proper because SBA's decision to deny forgiveness was premised upon clear legal and factual errors. Further, when the correct standard is applied, the record demonstrates that Gordon satisfied the applicable requirements for PPP loan eligibility and for PPP loan forgiveness.

***(5) Statement Of Why the SBA Loan Decision Is Erroneous***. The SBA's final *Loan Decision* retroactively overruled SBA's April 15, 2020 determination that Gordon College was eligible for its PPP loan and on that basis alone denied Gordon's application for forgiveness of its $7,046,037 PPP loan. The entire reason stated in the SBA *Loan Decision* is as follows:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501(c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard Qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria.

This *Loan Decision* is based on clear errors of fact and of law and must be reversed. *See* 13 CFR § 134.1210. The specific reasons are set forth below and expanded upon in the following sections.

**First**, the *Loan Decision* makes a clear error by applying the wrong legal standard. As

---

[2] *See, e.g., Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602 (1993); *PGBA, LLC v. United States*, 389 F.3d 1219, 1224 (Fed. Cir. 2004).

explained below, the SBA Examiner retroactively applied a standard for determining the number of employees for PPP loan *eligibility* purposes ***that did not exist*** at the time Gordon submitted its application on April 13, 2020. Rather, Gordon College relied in good faith upon the public guidance provided by SBA and Department of Treasury ("Treasury") at the time, as it was expressly authorized to do under SBA's PPP FAQ #17 (quoted below).

Gordon College's application was completely submitted to the SBA Portal by lender Citizen's Bank by no later than April 13, 2020. The Loan Application thus was beyond Gordon's control by April 13, 2020. The Loan Application was approved by SBA by April 15, 2020. The Loan Agreement was executed by both parties by no later than April 23, 2020.

At each such time, all publicly available SBA/ Treasury guidance either was silent on this or indicated that an applicant should determine its number of employees for purposes of the 500 employee maximum for PPP loan eligibility by calculating full-time equivalent employees ("FTEs"). Indeed, the SBA's Loan Application form at that time required that Gordon certify that:[3]

> The applicant will provide to the Lender documentation *verifying the number of* ***full-time equivalent employees*** *on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan. [emphasis added]

The first public guidance even suggesting that SBA would determine number of employees for purposes of PPP loan eligibility by using a "headcount" method was issued on April 26, 2020, ***after all*** these dates and two weeks after Gordon's loan was submitted to SBA. The certification on the Loan Application form remained unchanged through multiple iterations until January 2021.

**Second**, there is a second clear error by SBA in retroactively overruling its April 2020

[3] This was the fourth certification. "Instructions for completing this form" (p.3-4) in April 2020 did not address the formula for how to count number of employees nor in any way suggest that the certification's requirement to verify *full-time equivalent employees* was only for forgiveness and not eligibility purposes.

legal and factual determinations. On its April 13, 2020 Loan Application, and at all times since, Gordon consistently listed its total number of employees for determining loan eligibility as **495.67**. On its face, that is a precise FTE calculation, not a "headcount." (No employee has "0.67" of a "head" to count.). SBA originally determined that Gordon was eligible for a PPP loan on April 15, 2020 using this FTE calculation. This was clearly correct at that time. Yet two years later, the SBA examiner re-visits and retroactively overrules SBA's earlier (correct) determination by retroactively applying *ex post facto* a headcount test not in existence at time of application.

**Third**, the SBA *Loan Decision* under appeal utterly disregards SBA PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP FAQ since that time) which expressly provides:

> **Question**: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> **Answer**: No. *Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.* However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs. [emphasis added)]

Gordon College's application was submitted to SBA on April 13, 2020; SBA approved the loan on April 15, 2020; all loan documents were executed on or before April 23, 2020. PPP FAQ #17 requires that SBA determine Gordon's loan eligibility by applying the guidance that existed on April 13, 2020, and not retroactively applying rules that were only subsequently promulgated.

**Fourth**, not only is this a clear error of law, it also causes serious detrimental reliance harms to Appellant. For two full years, Gordon has relied in good faith and to its substantial detriment on FAQ #17, on the SBA Loan Application form, and on all SBA/Treasury regulations and guidance that had been publicly issued by SBA/Treasury when Gordon submitted its Loan Application on April 13, 2020. Gordon College in good faith reliance has expended all of its $7,046,037.00 PPP loan on employee payroll and benefits to retain its employees – precisely the

purposes of the PPP loan program. Gordon fully satisfied all *eligibility* requirements that existed at the time it applied. Gordon satisfies all **forgiveness** requirements that existed at the time it applied for forgiveness and that currently govern the forgiveness determination. Gordon is entitled to rely, and has relied to its great detriment, on the "laws, rules, and guidance available at the time of the relevant application".

**Fifth**, the SBA examiner's final *Loan Decision* in Appellant's case contradicts other decisions by other SBA Examiners involving substantially similar Borrowers and relevant facts. These include SBA using an FTE analysis in April 2020 to determine that other applicants satisfied all *eligibility* requirements for a PPP loan, and then subsequently determining that the same applicants also satisfied all requirements for PPP loan *forgiveness*. This has occurred even where the other applicants have as many or more employees at time of loan application and at time of loan forgiveness as does Appellant, as determined by the same IRS Form 941 responses that the specific SBA examiner and thus the final *Loan Decision* used here. This comparative data is provided on the spreadsheet attached as Exhibit 11 to this Appeal Petition.[4]

**Sixth**, it is a separate but extremely serious clear error for SBA to apply different legal and factual standards to other Borrowers who are similarly situated to Appellant. On its face, such distinctions are discriminatory and arbitrary, and likely even capricious. But further, by applying differential standards to Appellant Gordon College, a nonprofit religious private college, than to

[4] This spreadsheet provides data for specific comparable loans and borrowers extracted from SBA's internal records that have been publicly posted at https://data.sba.gov/dataset/ppp-foia and specifically the datafile publicly posted at https://data.sba.gov/dataset/ppp-foia/resource/501af711-1c91-477a-80ce-bf6428eb9253. OHA and its Administrative Law Judges may take judicial notice of SBA's own internal records and databases, particularly when as here those same records have also been made publicly available pursuant to the Freedom of Information Act. Appellant could not have submitted this factual data at any prior stage in these proceedings because until the SBA issued its Loan Decision it was not possible for Gordon to know what, if any, of this information was relevant. And there is no prejudice or even inconvenience to SBA for the OHA ALJ to consider SBA's own internal records.

similar non-religious colleges, the SBA *Loan Decision* may discriminate on the basis of religion in violation (among others) of the First and Fourteenth Amendments to the U.S. Constitution[5] and of the federal Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1.[6] Such disparate treatment would also be contrary to the CARES Act itself and to the *Frequently Asked Questions Regarding Participation of Faith-Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)* (April 3, 2020)[7] at Section 2:

> The PPP and EIDL loan programs are neutral, generally applicable loan programs that provide support for nonprofit organizations without regard to whether they are religious or secular.... In addition, the CARES Act does not impose unique burdens or limitations on faith-based organizations.

**6. *Factual Background.***

**6.1. The Borrower – Appellant Gordon College**. Appellant and Borrower here is Gordon College, a private religious college located in Wenham, Massachusetts. Gordon and other colleges were particularly hit hard by the national and state orders to shelter-in-place beginning in March 2020 due to COVID-19. The lockdowns created serious practical, financial, and even existential issues for colleges, particularly those focused on residential undergraduate education, like Gordon. How long would lockdowns last –months, semesters, or (academic) years? How would they impact summer programs that help provide needed year-round revenue? What would be the costs to retool for distance learning? Would colleges have to refund tuition and fees and room and board?

Further, Gordon College, like most colleges, has a vast array of types of employees that

---

[5] *See, e.g.*, *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021) (per curiam) ("government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."). *See also Fulton v. City of Phila*., 141 S.Ct. 1868 (2021).

[6] RFRA applies to SBA as a federal governmental agency.

[7] Available at https://www.sba.gov/document/support-faq-regarding-participation-faith-based-organizations-ppp-eidl

span full-time, part-time, and those who earn just a few hours of pay each week. Operations of a small college campus require numerous part-time workers in such diverse areas as classroom instruction, groundskeeping, food service, and plant and facility maintenance. Student employees seek part-time work for even a few hours a week to offset their costs of attending the college. Student aid packages often provide for students to work a certain number of hours per semester. Summer programs require seasonal staff and Gordon often hires its own students to serve in those summer programs. In one calendar year, there are two different payrolls given the two different academic years. Employees change frequently at the transition from one school calendar year to another. Part-time turnover is especially frequent. This is typical of most college campus operations. Yet it means that any "headcount" assessment of employees would vastly distort actual employment and payroll at colleges and that FTE assessment is more accurate and realistic.

**6.2. The Novel Paycheck Protection Program ("PPP")**. The SBA was given an almost impossible task – to administer a brand new Paycheck Protection Program loan program urgently authorized by Congress in a time of national crisis, a worldwide pandemic, and national and state ordered shelter-in-place orders. The duty of establishing rules and guidance to clarify uncertainty and confusion in the loan application and forgiveness process fell to the Treasury and the SBA. SBA and Treasury rolled out new rules, guidance, and clarifications every few days that were eagerly anticipated and devoured by borrowers and their attorneys and CPAs to understand such critical issues as loan eligibility and loan application procedures.

Many faith-based organizations such as Gordon College delayed applying due to needing clarification of their eligibility and the impact on their organizations of receiving federal PPP loans. Other organizations, including Gordon, were held up by the inability of larger banks to develop the technology and systems to receive and process loan applications. Uncertainty abounded.

When the PPP program was announced, the government stated frankly and frequently that

funds were limited and the program would operate on first come, first serve until the funds ran out or the program terminated on June 30, 2020. News media compounded this urgency. There was a rush to apply for this limited pool of funds for which applications would open on April 3, 2020, which ran headlong into the need for rules and guidance that was yet to be forthcoming. Both Treasury and SBA were issuing rules and guidance at the same time that PPP applications were flooding in. Interim Final Rules, SBA/Treasury instructions and guidance, and an evolving list of FAQs were cumulative and ongoing throughout the PPP loan application process. Different rules were available to applicants depending on when the applicant applied for the PPP loan.

Lenders – both national and community banks – were also overwhelmed as they were enlisted into the process as well. Some banks halted intake of loan applications due to technological issues of syncing up with the SBA portals, while at the same time media and government representatives were touting the limited funds and the need to hurry up and apply before the PPP funds ran out. Gordon College signed its application on April 6, 2020, yet its bank, Citizens Bank had to halt intake of PPP loan applications due to technical issues, and it was a week until Citizens Bank submitted the Gordon College PPP loan application to SBA on April 13, 2020.

Small businesses and nonprofits were overwhelmed in trying to discern how long, and what the impact national lockdowns would have on their respective businesses and organizations. Executives, business owners, and college administrators were all grappling with the loss of consumers of their goods and services and the loss of operational revenues. For example, Gordon College students were on spring break at the time of the lockdown and would not be returning to campus that semester due to national and state-wide shelter in place orders.

Many aspects of the PPP program are outside of regular SBA experience and jurisdiction. SBA was conscripted to serve as the administrator of a program that had few rules at the beginning and was unprecedented in size, impact, and necessity. SBA primarily handles loan programs for

small businesses, not nonprofits, let alone religious and educational nonprofits. SBA itself was under enormous pressure to get the program up and running immediately. It was a gargantuan task.

There were many issues that needed clarification and rules and guidance for both borrowers and lenders to be developed, announced, and implemented. However, the urgency factor and the crush of applicants at the beginning due to all the uncertainty of economic survival created a clash between access to a much needed program and the lack of clear guidance. The question in any review of SBA application with two years of hindsight is what a prudent employer, facing the imminent financial threat as a result of a national shelter-in-place order and state shutdown related to the COVID-19 virus pandemic, must do to certify in good faith the information and specific certifications required in the SBA's PPP Loan Application. That should guide what Gordon College should have known when its Loan Application was submitted to SBA on April 13, 2020.

Employers across the country analyzed what was available at the time of certification and submission, examined the limited guidance provided by SBA and Treasury, and made reasonable good faith decisions in calculating the maximum loan amount and number of employees. With burdensome penalties for knowingly making a false statement, it was difficult for loan applicants to secure adequate unambiguous guidance on many issues, even though clear guidance was needed to be absolutely certain that all information provided in the application and supporting documents was true and accurate in all material respects. In fact, early in the PPP program, some lenders had virtually no guidance even as to what documents the applicants were to submit. Additionally, it was unclear whether nonprofit organizations would be eligible as a "small business", what size standards would be applied, and if so what did faith-based nonprofit organizations give up in ways of autonomy or other concerns by applying for a PPP loan.

Thus began a series of Interim Final Rules and sequentially numbered Frequently Asked Questions (FAQs) posted on the PPP Loan website issued by SBA and Treasury. These were

cumulative and rolling in nature and the applicant only had available to it the relevant laws, rules and guidance at the time of completing and filing its application for the PPP loan.

**7. Timeline of SBA/Treasury PPP Loan Application Guidance.**

The following analysis focuses on the laws, rules and guidance available to Gordon College as of April 13, 2020, the date Appellant's PPP Loan Application was submitted to SBA, particularly related to the size standards, definitions of employees, or how to count employees.

***7.1 The CARES Act - effective 03-27-22***. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was enacted by Congress on March 27, 2020. The CARES ACT provided the definition of "employee" for purposes of this PPP loan program:

> (v) EMPLOYEE. — For purposes of determining whether a business concern, non-profit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees under clause (i)(I), **the term 'employee' includes individuals employed on a full-time, part-time, or other basis**. [emphasis added]

There are only three uses of the term "part-time employee" in the CARES Act and none define the term. The term "headcount" is not used in the CARES Act. There is no formula for counting employees provided in the CARES Act. The Act made it clear that part-time employees were "included" in the definition of employee but did not address how to calculate the sum of these full-time and part-time employees into a total number. At least until the issuance of FAQ #36 on April 26, 2020, it was unclear for purposes of determining the 500 maximum number of employees for PPP loan eligibility whether such part-time employees are each counted as one employee (regardless of any specific part-time threshold hours standard) – a "headcount" formula – or whether the full-time equivalent (FTE) calculation was appropriate. Although the CARES Act did not address the formula for calculation of 500 employee threshold, SBA and Treasury announced that SBA would begin taking applications for the PPP Loan on April 3, 2020.

***7.2 Treasury PPP Website PPP Loan Information -provided 03/31/2020***. On March 31,

2020, the special PPP section of the Treasury Department website provided four new documents:

- PAYCHECK PROTECTION PROGRAM APPLICATION FORM – OMB Control No.: 3245-0407 Expiration Date: 09/30/2020 [Exhibit 03]
- SMALL BUSINESS PAYCHECK PROTECTION PROGRAM [Exhibit 04]
- PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET LENDERS [Exhibit 05]
- PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET: BORROWERS [Exhibit 06]

In these four documents, the following information is provided about size standards and/or calculation of number of employees.

**7.2.1 Paycheck Protection Program Application Form**. The PPP Application Form itself stated that the Borrower should provide the Lender documentation verifying the number of full-time equivalent employees. The PPP Application Form available in April 2020 and that Gordon used did not state that this was for forgiveness only; it did not even state that it was for forgiveness or any other specific purposes at all. Gordon's PPP Borrower Loan Application Form, including the instructions at that time, was certified by Stephen Lacorazza, Director of Finance and Controller, Gordon College on April 06, 2020, and filed with SBA by Citizens Bank on April 13, 2020.[8] Page two of that Form requires the Borrower to make certifications that include:

> The applicant will provide to the Lender documentation *verifying the number of* ***full-time equivalent employees*** *on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan. [emphasis added]

Pages three and four of the form provided "Instructions for completing this form". These instructions did not address any formula for how to count the number of employees, nor undermine the emphasis in the certification on verifying the number of *full-time equivalent employees* on the Applicant's payroll as only for the forgiveness application purposes. At the time of the initial PPP

[8] A copy of Gordon's completed Application Form is attached as Exhibit 03. This Application Form consisted of two pages of the application form and applicant certifications and two pages of instructions.

Application Form, the form was stylized for businesses, and not for nonprofits.[9]

**7.2.2 Small Business Paycheck Protection Program.** The only reference to employee numbers or size standards in this one page memo summarizing the PPP program was the following:

> All Small Businesses Eligible. Small businesses with 500 or fewer employees—including nonprofits, veterans organizations, tribal concerns, self-employed individuals, sole proprietorships, and independent contractors— are eligible. Businesses with more than 500 employees are eligible in certain industries.

**7.2.3 Paycheck Protection Program (PPP) Information Sheet: Lenders**. There are no references in this document to number of employees or size standards.

**7.2.4 Paycheck Protection Program (PPP) Information Sheet: Borrowers**. Relevant information is found on page 1 and page 3. It answers the question "Who can apply?" by stating:

> All businesses – including nonprofits . . . with 500 or fewer employees can apply. Businesses in certain industries can have more than 500 employees if they meet applicable SBA employee-based size standards for those industries.

The question "How can I request loan forgiveness?" receives the following answer:

> You can submit a request to the lender that is servicing the loan. The request will include documents that verify ***the number of full-time equivalent employees***.... [emphasis added]

On pages 3-4, the document repeats the certifications and informs a borrower applying for forgiveness of a PPP loan that "as part of your application, you will need to certify in good faith. . ." and again references the full-time equivalent documentation that the applicant will provide to the lender for the eight-week period of the loan:

> You will provide to the lender documentation that verifies **the number of full-time equivalent employees** on payroll and the dollar amounts of payroll costs. [emphasis added]

---

[9] For example, it asked for Applicant Ownership and required the applicant to "list all owners of Applicant with greater than 20% ownership stakes." Federally tax-exempt organizations such as Gordon College are not owned by any individuals or companies. Many of the questions required to have a yes or no answer also applied to businesses and not nonprofit organizations. This Form is available at https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf

It was not until April 26, 2020 that SBA clarified that the full-time equivalent employees analysis was *not* to be the standard for PPP loan *eligibility* when counting to 500 employees, but only the standard for *forgiveness* of PPP loans. Prior to April 26, 2020, nothing in these documents or the CARES Act and related FAQs and Interim Final Rules provided by SBA or Treasury stated that the full-time equivalent employee standard would not apply for *eligibility*. To the contrary, the references to full-time equivalent employees and documentation that the applicant had to provide to the lender strongly indicated that full-time equivalent employees were an acceptable form of "counting" to get to 500 employees. In good faith, Gordon College provided its FTE calculations on its Loan Application Form, stating clearing that the number of employees was 495.67.

***7.3 Interim Final Rule Issued April 2, 2020.***

This 31-page Interim Final Rule ("IFR") was first posted on April 2, 2020 and published April 15, 2020.[10] Its stated purpose was to outline "the key provisions of SBA's implementation of sections 1102 and 1106 of the Act in formal guidance". It provides (in pertinent part):

> 2. What Do borrowers Need to Know and Do?
> a. Am I eligible?
> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
> i. You are: …….
> B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC) . . .

There is no guidance regarding calculation of number of employees and no reference to a definition of employee or "part-time" employee included. There is, however, a reference to "full-time equivalent employees" at section 2(t)(iv), where it again repeats the required certification that the borrower will provide " [d]ocumentation verifying the number of *full-time equivalent employees*

[10] 85 F.R. 20811 (Apr. 15, 2020). Copy attached as Exhibit 07. Also available at: https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf

*on payroll....*" [emphasis added]

### *7.4 Frequently Asked Questions Regarding Participation of Faith-Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)– issued April 3, 2020*.

On April 3, 2020, the SBA issued specific guidance as to whether nonprofits and faith-based organizations such as Gordon College could apply for the PPP loan without impunity or impact on its tax-exempt status, in its *Frequently Asked Questions Regarding Participation Of Faith-Based Organizations In The Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)* and provided FAQs #1 –8 (attached as Exhibit 08). Information on size standards for nonprofits was provided at Question 8:

> 8. How do I know where my organization fits in SBA's size standards table? Should I use the table to determine whether my organization is a small business that is eligible to participate in the PPP program?
>
> SBA's size standards can be found at 13 CFR § 121.201. Under the CARES Act, a non-profit organization qualifies as small, and is eligible for assistance, if (1) it has no more than 500 employees or (2) the NAICS code associated with its primary industry has a higher employee-based size standard. Some industries—including "religious organizations"—are currently listed in the size standards table with a monetary cap on annual receipts rather than an employee-based size standards cap. For nonprofit organizations whose primary industry is listed with a monetary cap on annual receipts, the size standards table therefore cannot be used to determine eligibility for the PPP program. Faith-based nonprofit organizations that do not fall under a primary industry that is listed with an employee-based size standard must have 500 employees or fewer to be considered small.[11]

### *7.5 Interim Final Rule on Affiliations Issued April 3, 2020; Effective April 15, 2020*.

The stated purpose of this IRF on Affiliations ("IFR-AFF") was to supplement the "Initial Rule" (see 7.3 above) "with additional guidance regarding the application of certain affiliate rules applicable to SBA's implementation of sections 1102 and 1106 of the [CARES] Act". [12]

[11] The SBA Loan Decision similarly stated that SBA industry size standards do not apply to Appellant.

[12] This IFR-AFF was published at 85 F.R. 20817 (Apr. 15, 2020) and is also available at:

This IFR-AFF was a significant determination for Faith Based Organizations (FBOs) as it exempted FBOs from the SBA affiliation rules "where the application of the affiliation rules would substantially burden those organizations' religious exercise." Generally, a borrower was considered together with its affiliates for purposes of determining eligibility for the PPP. Affiliates were generally identified by having such factors as stock ownership, overlapping management, and identity of interest. Of particular interest is how the IFR-AFF addressed the conflict between the SBA's existing affiliation rules for small businesses and the application of those rules to FBOs.

Prior to the CARES Act, nonprofits were not eligible for SBA Business Loan Programs under section 7(a) of the Small Business Act. The CARES Act not only made nonprofits eligible for the PPP but subjected them to the SBA affiliation rules (Section 1102 of the Act stated this explicitly). The IFR-AFF exempts FBOs from these SBA affiliation rules listed in 13 CFR part 121 because application of those rules to FBOs would impose a substantial burden on their free exercise of religion. The IFR-AFF further revised Section 121.103(b) by adding subsection (b)(10) addressing those free exercise considerations and explaining both the process for a Faith Based Organization to acknowledge that the FBO would have been an eligible borrower but for the application of the SBA rules and how the FBO can assert that exemption on its loan application.

In this IFR-AFF, SBA/Treasury acknowledged that nonprofits were not eligible for the previously existing SBA Business Loan section 7(a) and that some long-established rules provided for that regular SBA program not open to nonprofits would work to the detriment of the faith-

---

https://www.federalregister.gov/documents/2020/04/15/2020-07673/business-loan-program-temporary-changes-paycheck-protection-program

https://www.govinfo.gov/content/pkg/FR-2020-04-15/pdf/2020-07673.pdf

*See also Affiliations Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* outlining tests for affiliation posted on treasury.gov on April 3, 2020 at Borrower Information at: https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

based nonprofit securing the desperately needed PPP loan funds.

### *7.6 Treasury FAQs Posted as of April 13, 2020 – date of Gordon College PPP Application Submission to SBA*.

To assist borrowers, Treasury posted on its website Frequently Asked Questions (FAQs) and the answers on a continually updated basis. There were 25 FAQs issued as of the date of the filing of the Gordon College loan application with SBA on April 13, 2020. [Exhibit 09] Of these first 25 FAQs publicly available to Gordon at the time of its certifications and submission of its PPP loan application, only two FAQs tangentially reference number of employees:

**FAQ #3** clarified that PPP loans "are also available for qualifying tax-exempt nonprofit organizations described in Section 501(c)(3) of the Internal Revenue Code (IRC). . . *that have 500 or fewer employees whose principal place of residence is in the United States, or meets the SBA employee-based or revenue-based size standards for the industry corresponding to its primary industry*." [emphasis added] There are no SBA employee-based standards for Gordon's industry of higher education (NAICS 611310 Colleges, Universities and Professional Schools).[13] As discussed above in Section 7.4, for those industries with only a compensation standard and not a size standard, the size standards table cannot be used. Additionally, "Faith-based nonprofit organizations that do not fall under a primary industry that is listed with an employee-based size standard must have 500 employees or fewer to be considered small."

As originally posted by SBA/Treasury,[14] **FAQ #14** provided:

> **Question**: What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?

---

[13] *See* Size Standards Table, *U. S. Small Business Administration Table of Small Business Size Standards Matched to North American Industry Classification System Codes*, at page 38, attached as Exhibit 10 and also available at: https://www.sba.gov/sites/default/files/2022-05/Table%20of%20Size%20Standards_Effective%20May%202%202022_Final.pdf

[14] The original version of FAQ #14 is no longer posted on the SBA site. Footnote 17 to the version of FAQ #14 currently posted at www.SBA.gov explains the edits to the text.

> **Answer**: In general, borrowers can calculate their aggregate payroll costs using data either from the previous 12 months or from calendar year 2019. . . Borrowers may use their *average employment over the same time periods to determine their number of employees*, for the purposes of applying an employee-based size standard. [emphasis added]

The answer addressed which time periods to use when calculating number of employees for purposes of applying an employee-based size standard. However, Gordon College had no such employee-based size standard available to it as a faith-based nonprofit organization.

The most critical of these FAQs to the argument that the SBA decision below failed to take into consideration is the ability of an applicant to rely on the laws, rules, and guidance provided as of the date the employer applies for the PPP loan. **FAQ #17** issued April 06, 2020 provided:

> **Question**: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> **Answer**: No. *Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.* However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs. [emphasis added]

Gordon College was entitled to rely on the laws, rules and guidance available at the time of its application that was submitted to SBA on April 13, 2020.

*7.7* ***Treasury FAQ #36 – Issued April 26, 2020 -- Clarification on 500 Employee Calculation***.

Only *after* Gordon College's PPP Loan Application was submitted to SBA on April 13, 2020, approved by SBA on April 15, 2020, and all loan documents executed by April 23, 2020, Treasury/SBA issued a new FAQ #36 on April 26, 2020. Although the CARES Act did not address headcount or prescribe a formula as to how to count employees for *eligibility* for the PPP loan, FAQ #36 articulated a new formula for how to count the 500 employee threshold for *eligibility*, resulting in two different "counting" formulas – headcount for eligibility and FTE for forgiveness.

> **FAQ #36.**
>
> **Question**: To determine borrower eligibility under the 500-employee or other applicable

> threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?
>
> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." *A borrower must therefore* calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions. [emphasis added]

When on April 26, 2020 FAQ #36 first became the rule for counting employees to determine PPP loan *eligibility*, Gordon College had already filed two weeks earlier its application listing its number of employees as 495.67, clearly indicating that it had used FTE calculations as the calculation method. On that basis, SBA had already approved its loan application and both Gordon and its lender had fully executed the PPP loan documents. The SBA Loan Review Decision commits clear error by applying the April 26, 2020 headcount eligibility standard retroactively to Gordon College's April 13, 2020 PPP loan application to deny Gordon's forgiveness application.

**8. *Appellant Gordon College's Detrimental Reliance*.**

As discussed above, FAQ #17 issued on April 6, 2020, early in the process, but not so early that many borrowers had already submitted their applications and even received PPP loan funding. Nonetheless, SBA/Treasury made it explicit April 06, 2020 in FAQ #17 that an applicant was <u>only</u> to be held to the rules, regulations, and standards there were in effect at the time of application:

> **Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application**. …. [emphasis added]

Gordon College relied on FAQ #17 and expended the entire PPP loan proceeds of $7,046,037 entirely on payroll costs for its employees. It had mortgages and utilities, which would have been eligible forgiveness expenses, but its first priority was to keep its people on the payroll – the quintessential reason for the Paycheck Protection Program as designed by Congress. It has

been two years between the time SBA approved Gordon's loan application and the SBA denial of forgiveness. Gordon has relied on the PPP loan proceeds to keep its educational institution afloat during the extraordinarily long and uncertain Covid lockdowns that especially hit colleges hard as they had to comply with laws to keep students off the premises where they offer educational services. The SBA Loan Decision below revokes the eligibility of Gordon College for the PPP loan proceeds based on applying new rules created after the time Gordon had submitted, and SBA had approved, Gordon's application. That is clear error.

In addition, it is inequitable for SBA to treat one institution of higher education differently than others. SBA provides on its website available to the general public detailed data about PPP loans pursuant to FOIA requests. Exhibit 11 is a spreadsheet that gathers FOIA data related to PPP loans ranging from $5 million to $10 million made to institutions of higher education. The chart shows the number of institutions of higher learning (colleges and universities) who received PPP loan funds and loan forgiveness. The chart also captures public information indicates that numerous colleges and universities received the PPP loan forgiveness of amounts between $5 Million and $10 Million with stated number of employees of less than 500 when publicly available government data shows "headcounts" of over 500. To treat Gordon College differently raises serious issues about the SBA's review process and even possible questions of discrimination.

**9.** ***Conclusion***.

To hold Gordon College ineligible now for its PPP loan based on its April 13, 2020 application because of a new SBA rule it established on April 26, 2020 is erroneous and inequitable and contrary to SBA's own rules and guidance established on April 6, 2020 in FAQ #17. To use a college analogy, it is akin to a college granting a four year full scholarship to a qualified student. The student walks across the stage, shakes the hand of the President, receives the hard-earned diploma, and then proudly steps down off the stage. There she is greeted by the Vice-President of

Finance with a letter that says, "We didn't mean it. You now owe us the full amount." Yet she is the only one in the full-ride scholarship cohort who is required now to pay the funds back.

We respectfully request that the SBA decision below be reversed, that Gordon College be found to have been eligible at the time of its submission of its PPP Loan Application as of April 13, 2020, and that Gordon College be granted full forgiveness of its PPP Loan.

***10. Signature of Appellant and/or Its Attorney.***

In compliance with 13 CFR § 134.1202, Appellant Gordon College hereby submits this appeal by and under the signature of its legal counsel, Scott J. Ward, Esq., and Nancy Oliver LeSourd, Esq., of Gammon & Grange, P.C., with the following mailing address, email addresses, and cell and office phone numbers:


| | | |
|---|---|---|
| | /s/ Scott J. Ward | /s/ Nancy Oliver LeSourd |
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
| | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
| | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
| | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |