**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GORDON COLLEGE<br>    255 Grapevine Road<br>    Wenham, MA 01984-1899,<br><br>        *Petitioner / Plaintiff,*<br><br>    v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>        *Respondents / Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 16

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

HUSSON UNIVERSITY

       Appellant

Appealed from
SBA PPP Loan Number: 5931527107

Issued: August 4, 2022

Decision No. PPP- 5931527107

**APPEARANCES**

**Janna Gau, Esquire**, Counsel for the Appellant

**Mark O'Brien, Esquire**, Counsel for the Small Business Administration

**DECISION**

## I.      **Introduction and Jurisdiction**

On December 28, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Husson University (Appellant) is ineligible for a PPP loan.  On January 26, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for full PPP loan forgiveness in the amount of $5,965,000.00. For the reasons discussed *infra*, I GRANT the appeal and REVERSE the SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II.      **Background**

On April 08, 2020, Appellant, Husson University applied for a PPP Loan with the SBA certified lender, Bangor Savings Bank (Lender).   The loan was approved and on April 23, 2020, SBA disbursed a PPP loan of $ 5,965,000.00 to Appellant through the Lender.  On July 16, 2021, Appellant filed an application for PPP loan forgiveness.

1

A.     **Final SBA Review Decision**

On December 28, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan it received and therefore was not eligible for PPP loan forgiveness.  Specifically, the SBA found after review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. SBA has determined that forgiveness in the amount of $0.00 is appropriate.

B.     **Appeal**

On January 26, 2022, Appellant filed the instant appeal arguing that the final SBA loan review decision is clearly erroneous and requests the Office of Hearings and Appeals (OHA) to reverse that decision and find that the Appellant is eligible for PPP loan forgiveness.

On March 07, 2022, the undersigned issued a Notice and Order directing the SBA to file the Administrative Record (AR) by April 12, 2022. On March 25, 2022, counsel for the SBA moved to extend the time to file the Administrative Record (AR) by 30 calendar days. The Administrative Judge found good cause for an extension of time to file the AR and directed counsel for the SBA to file a responsive brief to the Appellant's January 26, 2022, brief on or before the expiration of said extension. Specifically, SBA counsel was directed to address the Appellant's arguments apropos reliance on PPP loan application guidance available on or before the date of Appellant's application. On April 26, 2022, SBA moved to further extend the time to file the AR and a Response for an additional 30 calendar days. The Administrative Judge granted the extension and the SBA had until May 26, 2022, to file the AR.

The AR was filed on May 25, 2022. The SBA filed seven (7) supplements to the Administrative Record on May 25, 2022. On May 25, 2022, the Appellant filed an Addendum to the January 26, 2022, Brief. On May 26, 2022, the SBA filed a Brief in response to the instant appeal.

III.     **Discussion**

The PPP Loan Program is a temporary SBA 7(a) program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis.  Its purpose was to help businesses keep their workers paid and employed.  The program was established under Section 1102 of the Coronavirus Aid Relief, and Economic Security (CARES) Act (Pub. L. 116-136) signed into law March 27, 2020, and subsequently revised and expanded by other statutes.

### A.    The Paycheck Protection Program

In general, PPP loans were open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 USC § 636(a)(36)(D).  Other types of entities, such as nonprofit organizations and housing cooperatives could also be eligible under certain circumstances.

Under PPP, borrowers obtain loans through an SBA approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose.  15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  15 U.S.C. § 636(a)(36)(G).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

### B.    PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e).  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3).   Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).  In general, a PPP

borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the Office of Capital Access may issue a final SBA loan review decision. This official written decision issued by the SBA Office of Capital Access reviews the PPP loan and can find a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program.

4

Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

### C.    <u>**Finding of Fact and Analysis**</u>

As previously noted herein, the SBA final loan decision stated that the Appellant business was ineligible for a PPP loan.  Specifically, the SBA stated that:

> "SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. A review of the documents provided indicate that the Borrower exceeded 500 employees. Per the certifications on the 2483, the applicant employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 CFR 121.201 for the applicant's industry. The Borrower indicated at the time of the loan application they had 492 employees, however the first quarter 2020 941 shows 1034 employees and second quarter 983. Additionally, the Borrower IRS form 990 confirms ineligibility based on the size standards for gross receipts. Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate."[1]

Appellant states in his appeal in pertinent part:

> "As a non-profit institution of higher education with an approximately two hundred eight (208) acre primary campus in Bangor, Maine which includes classrooms, administrative offices, dormitories, and an athletic complex, Husson was directly affected by the consequences of the COVID-19 virus's

---

[1] SBA Final Loan Review Decision.

economic impact and sought a loan under the Paycheck Protection Program. Relying on the context of the SBA's Interim Final Rule dated April 2, 2020, Husson reached out to its bankers (Bangor Savings Bank) and industry resources to determine how to qualify for the program and its terms. See April 2, 2020, Interim Final Rule, attached as Exhibit B. At the time the Paycheck Protection Program was launched in early April, there was a lack of clear guidance as to the definitions and approach to loan eligibility. There was specifically a lack of clarity for institutions of higher education in terms of calculating the number of employees, which is a PPP eligibility requirement. Husson employs part-time adjunct professors and students under the federal and state equivalent work-study programs. While Husson understood that all employees should be included in determining the 500 employee threshold for PPP loan eligibility, Husson sought advice whether eligibility would be determined using an "FTE" (full time equivalent) employee calculation of thirty (30) hours or total headcount. Based on professional advice, it was determined that using the Affordable Care Act ("ACA") definition of FTE (30 hours = 1 FTE), was a reasonable approach. Furthermore, using the FTE basis to determine PPP eligibility was reasonable in the context of the CARES Act since the availability of PPP loans was intended to stabilize the American workforce through forgivable loans. Husson determined it employed 492 FTEs. Faced with the uncertainty of the pandemic and with a workforce intended to service in person learning, Husson in good faith submitted its PPP loan application on April 6, 2020, to its SBA lender, Bangor Savings Bank ("Lender"). Contemporaneous with the submission of its original application, the SBA revised the PPP application and Husson, therefore, re-signed and submitted an application on April 8, 2020. The Lender submitted the loan application to the SBA on April 13, 2020. The SBA approved Husson's PPP loan application on April 14, 2020. Husson closed on the loan on April 23, 2020. Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended)."[2]

In its Addendum the Appellant further argues:

"On April 14, 2020, when the SBA approved Husson's loan application, there was no language or other indication of the intent for a headcount calculation

---

[2] Appellant's Appeal Pleading.

in the CARES Act to be used when determining eligibility. See Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, March 27, 2020, 134 Stat. 281 ("CARES Act"). However, there is clear intent and use of an FTE calculation in the CARES Act. Id. at §1106. On April 8, 2020, at the time Husson submitted its PPP loan application to its Lender, coupled with the fact that FTE is the methodology for forgiveness calculation, it was fair and reasonable for Husson to infer that this would be the basis for application. There being no statement to the contrary supports Husson's position that it acted reasonably. Only after Husson's PPP loan had been funded did the SBA issue guidance. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020. Emphasis added.

Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended). See Brief at Exhibit C. Clearly, many institutions of higher education struggled with the calculation basis under the April 2, 2020, Interim Final Rule because on May 8, 2020, the SBA issued another Interim Final Rule specifically addressing this issue. See May 8, 2020, Interim Final Rule. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020 . On May 8, 2020, an Interim Final Rule was issued by the SBA explaining that Federal Work Study student employees could be excluded for the loan eligibility count of 500 employees. Id. Most importantly, the May 8, 2020, Interim Final Rule stated: "Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process." Id. Emphasis added. Based upon Husson's reasonable interpretation of the calculation, and the SBA's indication that it would use an FTE approach for calculating and comparing employee counts during the protection period and the base period, Husson used the ACA definition of FTE (30 hours = 1 FTE), which the Lender concurred was a reasonable approach. Husson then calculated its FTEs under this basis and included all students. The result was 492 employees under this method, including approximately 50 FTE student employees. Husson met the eligibility requirement of having no greater than 500 employees."[3]

---

[3] Appellant's Supplement to Appeal Brief.

On April 2, 2020, the U.S. Small Business Administration (SBA) posted an interim final rule announcing the implementation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). This Rule was in affect at the time of the Appellant's loan application. [4] The CARES Act temporarily adds a new program, titled the "Paycheck Protection Program," to the SBA's 7(a) Loan Program. The CARES Act also provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP). The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID–19). SBA posted additional interim final rules on April 3, 2020, April 14, 2020, April 24, 2020, April 28, 2020, and April 30, 2020, and the Department of the Treasury posted an additional interim final rule on April 28, 2020. This interim final rule supplements the previously posted interim final rules by providing guidance on nondiscrimination obligations and additional eligibility requirements, and requests public comment. The IFR specifically states that, "In addition, as described below, to enable certain eligible small educational institutions to participate in PPP, this interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[5]

The Appellant is identified by NAICS Code: Colleges, Universities, and Professional Schools (611310) and is a nonprofit higher education institution.  A nonprofit organization means a 501(c)(3). In the IFR, III. Paycheck Protection Program Nondiscrimination and Additional Eligibility Criteria,

> "**2. Student Workers and PPP Loan Eligibility**
> Do student workers count when determining the number of employees for PPP loan eligibility?
>
> Yes, student workers generally count as employees, unless (a) the applicant is an institution of higher education, as defined in the Department of Education's Federal Work-Study regulations, 34 675.2, and (b) the student worker's services are performed as part of a Federal Work-Study Program (as defined in those regulations1) or a substantially similar program of a State or political subdivision thereof. Institutions of higher education must exclude work study students when determining the number of employees for PPP loan eligibility and must also exclude payroll costs for work study students from the calculation of payroll costs used to determine their PPP loan amount.

---

[4] 13 CFR Parts 113 and 120.
[5] Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

8

The Administrator, in consultation with the Secretary, has determined that this is a reasonable interpretation of section 1102(a) of the CARES Act's reference to "individuals employed on a full-time, part-time, or other basis." Such programs generally provide part- time jobs for students with financial need, and their services are incident to and for the purpose of pursuing a course of study. Work study students are excluded from the definition of employees in other areas of federal law. For example, in the regulations implementing the Affordable Care Act, Treasury defined an employee's "hours of service" to exclude work study hours.2 Explaining this exclusion, the regulation's preamble states that "[t]he federal work study program, as a federally subsidized financial aid program, is distinct from traditional employment in that its primary purpose is to advance education."3 Similarly, student work is generally exempt from Federal Insurance Contribution Act (FICA) and Federal Unemployment taxes.

For similar reasons, the Administrator, in consultation with the Secretary of the Treasury, has determined that a limited exception for work study is appropriate here. In particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process."[6]

The SBA argues that Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020; CARES Act §1102, 134 Stat. at 287 (codified 15 U.S.C. §636(a)(36)(B)). The First IFR, which was available to Lender and Appellant on SBA's website before Appellant submitted its PPP loan application, tracked the CARES Act eligibility language, and advised all PPP lenders and applicants of the basic PPP eligibility criteria. Under the "Am I eligible?" section of the First IFR, it provided that "[y]ou are eligible for a PPP loan if you have 500 or

---

[6] Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

fewer employees ...or are a business that operates in a certain industry and meet the applicable SBA employee-based size standard for that industry ..." SBA's regulations at 13 CFR § 121.106 captioned "How does SBA calculate number of employees?" states, in pertinent part, "In determining a concerns number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis" and "Where the size standard is number of employees, the method for determining a concern's size included the following principles: ... Part-time and temporary employees are counted the same as full-time employees." (Emphasis added) 13 CFR § 121.106 (a) and (b)(2).

The SBA further argues that pursuant to the SBA's PAYCHECK PROTECTION PROGRAM  LOANS Frequently Asked Questions (FAQs),

> **36.Question**: To determine borrower eligibility under the 500-employee or other applicable threshold for First Draw PPP Loans, or the 300-employee threshold for Second Draw PPP Loans established by the Economic Aid Act, must a borrower count all employees or only full-time equivalent employees? (Question 36 published April 26, 2020, and revised March 3, 2021, to reflect the interim final rule for Second Draw PPP Loans).

> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees.  By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

The SBA calculates number of employees in accordance with 13 CFR 121.106. Employee calculation: This is the average number of people employed for each pay period over the business's latest 12 calendar months. Any person on the payroll must be included as one employee, regardless of hours worked or temporary status. The number of employees of a concern in business less than 12 months is the average for each pay period that it has been in business.[7]

The Appellant does not dispute that it does not qualify as a PPP eligible small business under the total head count method, however the argument relies on the fact that Question 36 that

---

[7] 13 CFR 121.106.

offered additional guidance on PPP loan was published after their PPP loan application and loan disbursement. The Appellant argues they used full-time equivalent (FTE) and did not include Federal Work Study employees to determine "employee" amount for the PPP loan application and subsequent loan forgiveness application. Pursuant to Interim Final Rule 13 CFR 120, 85 FR 33004:

> **What does "full-time equivalent employee" mean?** Full-time equivalent employee means an employee who works 40 hours or more, on average, each week. The hours of employees who work less than 40 hours are calculated as proportions of a single full-time equivalent employee and aggregated, as explained further below in subsection d.
>
> The CARES Act does not define the term "full-time equivalent employee," and the Administrator, in consultation with the Secretary, has determined that full-time equivalent is best understood to mean 40 hours or more of work each week. The Administrator considered using a 30-hour standard but determined that 40 hours or more of work each week better reflects what constitutes full-time employment for the vast majority of American workers.
>
> **d. How should a borrower calculate its number of full-time equivalent (FTE) employees?**
>
> Borrowers seeking forgiveness must document their average number of FTE employees during the covered period (or the alternative payroll covered period) and their selected reference period. For purposes of this calculation, borrowers must divide the average number of hours paid for each employee per week by 40, capping this quotient at 1.0. For example, an employee who was paid 48 hours per week during the covered period would be considered to be an FTE employee of 1.0.
>
> For employees who were paid for less than 40 hours per week, borrowers may choose to calculate the full-time equivalency in one of two ways. First, the borrower may calculate the average number of hours a part-time employee was paid per week during the covered period. For example, if an employee was paid for 30 hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.75. Similarly, if an employee was paid for ten hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.25. Second, for administrative convenience, borrowers may elect to use a full-time equivalency of 0.5 for each part-time employee. The Administrator recognizes that not all borrowers maintain hours-worked data, and has decided to afford such borrowers this flexibility in calculating the full-time equivalency of their part-time employees.
>
> Borrowers may select only one of these two methods, and must apply that method consistently to all of their part-time employees for the covered period or the alternative payroll covered period and the selected reference period. In either case,

11

the borrower shall provide the aggregate total of FTE employees for both the selected reference period and the covered period, or the alternative payroll covered period, by adding together all of the employee-level FTE employee calculations. The borrower must then divide the average FTE employees during the covered period, or the alternative payroll covered period by the average FTE employees during the selected reference period, resulting in the reduction quotient.

Given that this guidance was provided at the time of the Appellant's loan application it is reasonable way of calculating number of employees for the PPP loan application and loan forgiveness. The SBA's citation of the PPP FAQs was posted after the Appellant's loan application and approval. Appellant was allowed to exclude Federal Work Study employees from there total employee count. The SBA clearly meant to provide an exception to the general rule as the IFR states "to enable certain eligible small educational institutions to participate in the PPP, the interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[8]

On July 08, 2022, the SBA published an update to the SBA PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs). Pursuant to the updated FAQs The Small Business Administration (SBA), in consultation with the Department of the Treasury, intends to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), including both First Draw PPP Loans and Second Draw PPP Loans. This document will be updated on a regular basis. Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (as amended), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")(link). The U.S. government will not challenge lender PPP actions that conform to this guidance, and to the PPP Interim Final Rules and any subsequent rulemaking in effect at the time the lender's action is taken.

> Question 71: Are 501(c)(3) nonprofit organizations with more than 500 employees eligible for PPP Loan Forgiveness?
>
> Answer: Section 7(a)(36)(A)(vii) of the Small Business Act (15 U.S.C. 636(a)(36)(A)(vii)) (as added by section 1102(a)(2) of the CARES Act) defines the term "nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt

---

[8] Federal Register Vol. 85, No. 90 at 27288  (May 8, 2020).

from taxation under section 501(a) of such Code" (501(c)(3) nonprofit organizations). In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. The American Rescue Plan Act (ARPA), enacted on March 11, 2021, increased the size eligibility standard for 501(c)(3) nonprofit organizations for First Draw PPP Loans from a total of 500 or fewer employees to no more than 500 employees per physical location of the 501(c)(3) nonprofit organization. On March 22, 2021, SBA published an Interim Final Rule implementing the provisions of ARPA applicable to PPP (86 FR 15083) (ARPA IFR). On May 31, 2022, the SBA Office of Hearings and Appeals (OHA) issued an Initial Decision in the Appeal of Lawndale Christian Health Center, Docket No. PPP-5819168004. In that Initial Decision, the Administrative Law Judge determined that because the applicability date set forth by SBA in the ARPA IFR stated that the ARPA changes to PPP apply to "loans approved, and loan forgiveness applications submitted, on or after March 11, 2021 ," 501(c)(3) nonprofit organizations that received a First Draw PPP Loan before March 11, 2021, but applied for forgiveness on or after March 11, 2021, are entitled to forgiveness of their First Draw PPP Loan if they meet the ARPA increased size eligibility standard. The Final Rule on Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program published by SBA on September 16, 2021 (86 FR 51589) provides that initial decisions rendered by OHA are not precedential. The Administrator has reviewed the OHA decision issued in the Appeal of Lawndale Christian Health Center. Based on the OHA decision and the exercise of her broad discretion under Section 5(b)(7) of the Small Business Act (15 U.S.C. 634(b)(7)), the Administrator has determined that any 501(c)(3) nonprofit organization that received a loan before March 11, 2021, but submits a forgiveness application on or after March 11, 2021, will be eligible for forgiveness on the basis that they have more than 500 employees in multiple physical locations. As a result, a 501(c)(3) nonprofit organization that submits a forgiveness application on or after March 11, 2021, is eligible for forgiveness if the 501(c)(3) nonprofit organization meets the ARPA increased size eligibility standard and has otherwise complied with all applicable PPP rules. [9]

In support of its appeal Appellant additionally points to the detrimental reliance on an email exchange between an SBA employee that reassured the Appellant that additional

---

[9] Question 71 published July 8, 2022. PAYCHECK  PROTECTION  PROGRAM  LOANS Frequently Asked Questions (FAQs) .

guidance on PPP loans would not alter the terms of the Appellant's PPP Loan that was dispersed prior to the regulation going into effect. Shortly after the Appellant's loan application there was an email exchange between Robert Clark, President of Husson University and Keith Lind, Public Affairs Specialist, Main District Office, U.S. Small Business Administration. Appellant emailed on May 13, 2020, at 1:50 PM stating:

> "In reading the guidance for higher education institutions it would seem that use of the FTE that was in effect and approved by our lender prior to the May updates would allow use of the Affordable Care adjustments under Federal Law, which is under the rationale for excluding work study students. This is the approach that Husson followed to determine its employee eligibility and was approved by both our lender and the SBA. I just wanted to verify that this process was still valid after the newer guidance came forward. I appreciate your assistance. Bob Clark" (AR at 8576).

The response to the email from Keith Lind to Robert Clark at 3:37PM as follows:

> "Hi Bob, I can confirm that since Husson's application was made prior to the new guidance being issued, the new guidelines will not impact the terms for your loan" (AR at 8576).

The SBA argues in its Brief in Response to Order Extending Time to File the Administrative Record and For Parties to File Briefs that:

> "OHA should disregard Appellant's argument on this point because that email exchange is not the type of document required in the Record. 13 C.F.R. § 134.1207(b). Section 134.1207(b) defines the contents of the Record as "relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision." Id. That email exchange was not relevant and was not before SBA when it made the final loan review decision. SBA did not consider it when it made the final loan review decision. Therefore, it is not a required part of the Record, and argument should be unavailing." [10]

The Administrative Judge disagrees with SBA's assertion that the email exchange is neither relevant nor should it be considered. Though the email is not required, it is a part of the Administrative Record (AR at 8576-8577) and is directly relevant to the issue at bar.  It is reasonable that given the uncertainty regarding the PPP loan program and the regulations that the Appellant would reach out for further guidance from the U.S. department administering the loans. The IFR specifically states, "SBA may provide further guidance, if

---

[10] SBA's Brief in Response to Order Extending Time To File The Administrative Record And For Parties To File Briefs (*Portal Docket #27 uploaded May 27, 2022*).

needed, through SBA notices that will be posted on SBA's website at www.sba.gov. Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office. The local SBA Field Office may be found at https://www.sba.gov/tools/ local-assistance/district offices." Here, the Appellant reached out to the local SBA field office and was given assurance for which it relied albeit subsequent to the loan application.

There can be little dispute that the need for expeditious legislative and regulatory action during the pandemic height, created a chaotic rush to issue guidance in applying for PPP loans. The rapid fire C.F.R. interim changes were needed but certainly caused more than a little confusion on the part of potential borrowers. Thus, while the Appellant's attempt to seek clarity in its application for a PPP loan is not dispositive of the appeal, it certainly aids their position and early interpretation.

The Appellant has the burden of proving that the final SBA loan review decision is based upon a clear error of fact or law. The record demonstrates SBA has not properly applied the applicable laws, regulations, and policy when denying Appellant's application. Specifically, the SBA did not consider the exception for higher education's ability to exclude work study students and the employee calculation provided by the Appellant when determining the number of employees for PPP loan eligibility. Additionally, the SBA failed to consider the FTE calculation when determining the Appellant's PPP eligibility. I find the reasoning illustrated in the IFR for providing such exceptions to higher education compelling, in particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Here, the record clearly demonstrates that its Part-time student employees far outweigh its full-time employees.

In the course of this appeal the Administrative Judge specifically directed the Appellant to break down the list of part time employees by work hours. The Administrative Judge did this in order to ascertain how many of these "employees" were working minimal hours. Though it has been many decades since the undersigned has been in undergraduate or law school, his experience suggested that most of these "employees" were students being assisted with their financial needs. The response from the Appellant demonstrated that the majority of its part-time student employees work less than ten (10) hours per week and fell into this category. It would be contrary to the intent of the PPP loan program and the administrator to penalize the Appellant for the part-time staff that "dwarfs their full-time

faculty and staff headcounts." Furthermore, the additional guidance in the SBA PPP FAQS published July 08, 2022, regarding nonprofits, was not available to the SBA at the time they made its Final Loan Review Decision. I therefore find the final SBA loan review decision is based on a clear error of fact or law. I hereby GRANT the Appellant's appeal and REVERSE the SBA final loan review decision.

### IV.      **Standard of Review**

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

### V.       **Conclusion**

Appellant, Husson University, has established that the final SBA loan review decision was based on a clear error of law or fact.  I therefore **GRANT** the appeal and **REVERSE** the final SBA loan review decision. It is **HEREBY ORDERED** Husson's University Paycheck Protection Program loan of $ 5,965,000.00 is forgiven in full. The SBA is directed to issue a new final loan review decision providing the terms of this order.

This is an initial agency decision. However, unless a request for reconsideration is filed within 10 calendar days pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

_____

JAMES M CAULFIELD
Administrative Judge

16