**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GORDON COLLEGE, | |
| *Plaintiff*, | |
| v. | No. 1:23-cv-614 (BAH) |
| SMALL BUSINESS ADMINISTRATION *et. al*, | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

BACKGROUND ...........................................................................................................2

    SBA's Section 7(a) Loan Program ...........................................................................2

    The CARES Act and the Paycheck Protection Program .........................................2

    PPP Loan Forgiveness..............................................................................................4

    Gordon's Claims ......................................................................................................5

LEGAL STANDARD ...............................................................................................7

ARGUMENT ..............................................................................................................7

I.    GORDON HAS NOT SUFFICIENTLY ALLEGED A RFRA CLAIM. ...........7

II.    GORDON HAS NOT SUFFICIENTLY ALLEGED A FREE EXERCISE CLAIM.......10

    A.    Gordon fails to make the threshold showing that the 500-employee cap substantially burdens a tenet or practice of its religion. ...........................................................11

    B.    The 500-employee cap meets the neutrality requirement and is not especially harsh…… ...............................................................................................................11

    C.    The PPP is generally applicable. ............................................................................14

    D.    The 500-employee cap withstands rational-basis review.........................................15

III.    GORDON HAS NOT SUFFICIENTLY ALLEGED AN ESTABLISHMENT CLAUSE CLAIM.....................................................................................................................15

    A.    Gordon fails to allege any denominational preference. ...........................................16

    B.    The PPP loan forgiveness requirements are facially neutral and, thus, not subject to strict scrutiny. .........................................................................................................18

IV.    GORDON HAS NOT SUFFICIENTLY ALLEGED A CLAIM FOR IMPROPER INTERFERENCE WITH RELIGIOUS AUTONOMY. ................................................19

V.    GORDON HAS NOT SUFFICIENTLY ALLEGED AN EQUAL PROTECTION CLAIM.....................................................................................................................21

    A.    Gordon's Free Exercise and Equal Protection claims fail together. ........................21

    B.    Gordon does not allege sufficient facts to suggest disparate impact. ......................22

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Abington Sch. Dist. v. Schempp,*
 374 U.S. 203 (1963) ............................................................................................... 15, 16

*Alive Church of the Nazarene, Inc. v. Prince William County,*
 59 F.4th 92 (4th Cir. 2023) ................................................................................... 21

*Ashaheed v. Currington,*
 7 F.4th 1236 (10th Cir. 2021) .............................................................................. 21

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ........................................................................................ 6, 7, 22, 23

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ............................................................................................... 7, 17

*Bernhardt v. Islamic Republic of Iran,*
 47 F.4th 856 (D.C. Cir. 2022) ............................................................................... 7

*Branch Ministries v. Rossotti,*
 211 F.3d 137 (D.C. Cir. 2000) ............................................................................. 8, 10

*Burwell v. Hobby Lobby Stores, Inc.,*
 573 U.S. 682 (2014) ............................................................................................... 7, 9

*Chaplaincy of Full Gospel Churches v. U.S. Navy*
 738 F.3d 425 (D.C. Cir. 2013) ............................................................................. 17, 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.,*
 508 U.S. 520 (1993) .......................................................................................... 10, 11, 12

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,*
 538 U.S. 188 (2003) ............................................................................................... 22

*Comm. on Ways & Means, U.S. House of Reps. v. U.S. Dep't of Treasury,*
 45 F.4th 324 (D.C. Cir. 2022) ............................................................................... 6

*Colorado Christian Univ. v. Weaver,*
 534 F.3d 1245 (10th Cir. 2008) .................................................................... 17, 18, 20

*Demissie v. Starbucks Corp. Off. & Headquarters,*
 19 F.Supp.3d 321 (D.D.C. 2014) ......................................................................... 6

*Emp. Div. v. Smith,*
 494 U.S. 872 (1990) .......................................................................................... 10, 13, 14

*FCC v. Beach Commc'ns, Inc.,*
 508 U.S. 307 (1993) ............................................................................................... 14

*Firewalker-Fields v. Lee*,
    58 F.4th 104 (4th Cir. 2023) ................................................................ 18, 19

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ...................................................................... 13, 14

*Gomillion v. Lightfoot*,
    364 U.S. 33 (1960) ............................................................................... 22

*Haidari v. Mayorkas, No. 22-CV-2939*,
    2023 WL 5487351 (D. Minn. Aug. 24, 2023) ............................................ 16, 17

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
    565 U.S. 171 (2012) ............................................................................. 19, 20

*In re Navy Chaplaincy*,
    928 F. Supp. 2d 26 (D.D.C.) ................................................................. 22, 23

*Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle E.*,
    66 F.4th 1007 (D.C. Cir. 2023) ................................................................ 7

*Jimmy Swaggart Ministries v. Bd. Of Equalization of Cal.*,
    493 U.S. 378 (1990) ............................................................................. 8

*Karmmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008) ................................................................ 7, 11

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. Ct. 2407 (2022) ........................................................................ 17, 18

*Larson v. Valente*,
    456 U.S. 228 (1982) ............................................................................. 15

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ............................................................................. 18

*Levitan v. Ashcroft*,
    281 F.3d 1313 (D.C. Cir. 2002) ....................................................... 10, 11, 13

*Locke v. Davey*,
    540 U.S. at 720 n. (2004) ..................................................................... 20, 21

*McCleskey v. Kemp*,
    481 U.S. 279 (1987) ............................................................................. 21

*Nat'l Cap. Presbytery v. Mayorkas*,
    567 F. Supp. 3d 230 (D.D.C. 2021) ......................................................... 8

*Navy SEAL 1 v. Austin*,
    600 F. Supp. 3d 1 (D.D.C. 2022), *vacated and remanded as moot*, No. 22-5114, 2023 WL
    2482927 (D.C. Cir. Mar. 10, 2023) .......................................................... 20, 21

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    140 S. Ct. 2049 (2020) ................................................................................ 19, 20

*Papasan v. Allain,*
    478 U.S. 265 (1986) .......................................................................................... 7

*Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,*
    393 U.S. 440 (1969) ........................................................................................ 19

*Roman Cath. Archbishop of Washington v. Bowser,*
    531 F. Supp. 3d 22 (D.D.C. 2021) .................................................................. 11

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) ........................................................................................ 11

*Sanchez v. Off. of State Superintendent of Educ.,*
    45 F.4th 388 (D.C. Cir. 2022) ........................................................................ 14

*SBA v. McClellan,*
    364 U.S. 446 (1960) .......................................................................................... 2

*Slovinec v. Georgetown Univ.,*
    268 F. Supp. 3d 55 (D.D.C. 2017) .................................................................... 6

*St. Michael's Media, Inc. v. Mayor & City Council of Balt.,*
    No. CV ELH-21-2337, 2023 WL 2743361 (D. Md. Mar. 31, 2023) ............ 15, 16

*Tandon v. Newson,*
    141 S. Ct. 1294 (2021) .................................................................................... 13

*Thomas v. Review Bd.,*
    450 U.S. 707 (1981) .......................................................................................... 8

*Tilton v. Richardson,*
    403 U.S. 672 (1971) ...................................................................................... 9, 10

*Toussaint v. Dronenburg,*
    No. 23-CV-0256-BAS-WVG, 2023 WL 4305126 (S.D. Cal. June 30, 2023) ...... 17

*Town of Greece v. Galloway,*
    572 U.S. 565 (2014) ........................................................................................ 18

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    582 U.S. 449 (2017) .................................................................................. 12, 13

*Trump v. Hawaii*
    138 S. Ct. 2393 ............................................................................................... 15

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.,*
    76 F.4th 130 (2d Cir. 2023) ............................................................................ 14

*Williams v. City of Jackson,*
    DPJ-20-785, 2022 WL 4715706 (S.D. Miss. Sept. 30, 2022) .............................................. 15

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) ......................................................................................................... 22, 23

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886) ......................................................................................................... 22, 23

**U.S. Constitution**

U.S. Const. amend. I .................................................................................................................. 15

**Statutes**

15 U.S.C. § 631 ........................................................................................................................... 2

15 U.S.C. § 632 ........................................................................................................................... 2

15 U.S.C. § 636 ................................................................................................................... *passim*

15 U.S.C. § 636m ........................................................................................................................ 4

26 U.S.C. § 501 ........................................................................................................................... 8

42 U.S.C. § 2000bb-1 .............................................................................................................. 1, 7

**Regulations**

13 C.F.R. § 120.100 .................................................................................................................... 2

13 C.F.R. § 134.1211 ................................................................................................................. 13

85 Fed. Reg. 20,811 (Small Bus. Admin. Apr. 15, 2020) ....................................................... 3, 4

85 Fed. Reg. 27,287 (Small Bus. Admin. May 8, 2020) ........................................................ 5, 23

85 Fed. Reg. 33,010 (Small Bus. Admin. June 1, 2020) ......................................................... 4, 5

85 Fed. Reg. 38,304 (Small Bus. Admin. June 26, 2020) .......................................................... 4

**Other Authorities**

SBA Release No. 20-30,
    https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-
    businesses-affected-coronavirus-pandemic-launches ........................................................ 3, 4

Small Bus. Admin., *Paycheck Protection Program Loans: Frequently Asked Questions* 10 (June
13, 2023),
    https://www.sba.gov/document/support-faq-ppp-borrowers-lenders .............................. 5, 23

U.S. Small Bus. Admin., *Table of Small Business Size Standards* (Mar. 17, 2023),
    https://www.sba.gov/document/support-table-size-standards ................................................. 3

## INTRODUCTION

In the throes of an economic crisis induced by the COVID-19 pandemic, Congress issued a mandate to the Small Business Administration ("SBA") to promptly make hundreds of billions of dollars in Paycheck Protection Program ("PPP") loans available to millions of American small businesses.  SBA rose to the occasion and disbursed almost $350 billion in PPP loans in less than two weeks' time, and ultimately more than $800 billion in PPP loans, including one to Plaintiff Gordon College ("Gordon").  PPP loans are not only low-interest, and SBA-guaranteed, but borrowers may also obtain forgiveness of their loans if they meet several conditions, including the statutorily imposed requirement that loan recipients employ 500 or fewer persons (the "500-employee cap").  Gordon did not meet that condition—as it, maintains a workforce of over 800 employees—and, thus, did not receive loan forgiveness.  In its PPP application, Gordon calculated a lower number of employees by using a Full-Time Equivalent ("FTE") method, counting many of its staff as partial employees based on the number of hours they worked.  The governing statute does not allow for this method of calculation, however, and SBA properly denied Gordon loan forgiveness as the statute required.

Gordon, a faith-based institution, sued SBA, Isabella Casillas Guzman, in her official capacity as Administrator of SBA, and the United States, alleging SBA's denial of its loan-forgiveness application violates the religion clauses of the First Amendment, the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb-1(c) ("RFRA"), and the equal-protection principles embodied in the Fifth Amendment's Due Process Clause.[1]  Gordon's Free Exercise and RFRA claims should be dismissed because Gordon does not identify a religious exercise that

---

[1] Defendants do not move to dismiss Gordon's Administrative Procedure Act, Declaratory Judgment, or Due Process Claims, counts one, two, and eleven of Gordon's First Amended Complaint.

1

repaying its PPP loan substantially burdens.  Additionally, PPP loan forgiveness requirements are neutral and generally applicable.  Gordon's Establishment Clause claim should be dismissed because Gordon failed to sufficiently allege any denominational preference or intentional denominational discrimination by SBA.  Additionally, Gordon's religious-autonomy claim should also be dismissed because Gordon fails to allege facts showing that using a headcount method to calculate the number of its employees interferes with its right to decide matters of faith and religious doctrine.  Finally, because Gordon's Free Exercise Claim fails, Gordon's Equal Protection claim based on alleged religious discrimination must similarly fail, and Gordon fails to allege sufficient facts to show disparate impact.

For these reasons, detailed below, counts three through ten of Gordon's First Amended Complaint should be dismissed.

## BACKGROUND

### SBA's Section 7(a) Loan Program

The Small Business Act, 15 U.S.C. § 631(a), *et seq.*, confers authority on SBA to "aid and assist small business concerns."  *Id.* § 631; *see also SBA v. McClellan*, 364 U.S. 446, 447 (1960). Relevant here, Section 7(a) of the Act, 15 U.S.C. § 636(a) ("Section 7(a)"), permits SBA to assist small businesses acquire loans from participating private lenders by agreeing to guarantee the loan. *Id.*  Ordinarily, among the requirements to qualify for a Section 7(a) loan, an applicant must be a for-profit business, 13 C.F.R. § 120.100(b), and meet the size standard for a "small" business set forth in the statute and SBA regulations, 15 U.S.C. § 632(a)(1)-(2); 13 C.F.R. § 120.100(d).

### The CARES Act and the Paycheck Protection Program

In March 2020, in wake of the COVID-19 public health crisis, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281

("CARES Act"), to provide emergency economic assistance to American families, workers, and businesses.  Among the numerous measures taken by the CARES Act to address the COVID-19 crisis, at issue here is the Paycheck Protection Program ("PPP"), CARES Act § 1102, enacted to extend relief to small businesses experiencing economic hardship as a result of public-health measures then being taken to minimize the public's exposure to the coronavirus.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,811-12 (Small Bus. Admin. Apr. 15, 2020) (hereinafter "First PPP IFR").  To achieve that objective, the PPP temporarily expanded SBA's pre-existing business-loan authority by providing that, except as the PPP itself otherwise provided, SBA could guarantee PPP loans "under the same terms, conditions, and processes" as ordinary Section 7(a) loans.  15 U.S.C. § 636(a)(36)(B). Among other differences from Section 7(a) loans, SBA could guarantee PPP loans not only to small for-profit businesses, but also to nonprofit organizations that "employ[] not more than. . . 500 employees."[2]  *Id.* § 636(a)(36)(D)(i)(I).  The Act then clarified, "[f]or purposes of determining whether a . . . nonprofit organization . . . employs not more than 500 employees . . . the term 'employee' includes individuals employed on a full-time, part-time, or other basis."  *Id.* § 636(a)(36)(D)(v).

On April 3, 2020, SBA launched the PPP loan program, providing $349 billion of emergency PPP loans that were 100% guaranteed by SBA.  *See* SBA Release No. 20-30, https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-

---

[2] If the industry in which a nonprofit operates has a "size standard in number of employees established by the Administration," the nonprofit may also qualify if it maintains no more than the size standard.  *Id.* § 636(a)(36)(D)(i).  Because Colleges, Universities, and Professional Schools do not have a specific size standard, this provision is not applicable to Gordon.  *See* ECF No. 15-8 at 17; U.S. Small Bus. Admin., *Table of Small Business Size Standards* (Mar. 17, 2023), https://www.sba.gov/document/support-table-size-standards.

affected-coronavirus-pandemic-launches; First Am. Compl. ¶ 33.  PPP loans were distributed at a local level by private banks and credit unions, which received and reviewed the loan applications. *Id.*

**PPP Loan Forgiveness**

CARES Act § 1106, as amended, allows "eligible recipient[s]" of PPP loans to obtain loan forgiveness in whole or in part based on their payroll costs and payments for rent, utilities, mortgage interest, and other allowable expenses.  15 U.S.C. § 636m(b)(1)-(8), (d); First PPP IFR, 85 Fed. Reg. at 20,811, 20,813.  Loans that were not forgiven are to be repaid at a fixed 1% interest rate.  First PPP IFR, 85 Fed. Reg. at 20,813.  To obtain forgiveness, a borrower submits a PPP loan forgiveness application and supporting documentation to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g); Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures, 85 Fed. Reg. 38,304, 38,306 (Small Bus. Admin. June 26, 2020).  SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan.  15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38,306.

Under Congress's directive to meet the immediate economic needs of PPP borrowers as quickly as possible, SBA set forth a highly streamlined application and underwriting requirements for PPP loans.  *See* First PPP IFR, 85 Fed. Reg. at 20,812-15.  The simplified PPP loan application and underwriting process created a heightened risk of loans being erroneously approved by lenders.  To maintain the PPP's fiscal integrity, SBA implemented a system of PPP loan review, wherein if SBA determines that a borrower was ineligible for its PPP loan, it denies loan forgiveness.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program-

SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. 33,010, 33,012 (Small Bus. Admin. June 1, 2020).  Such was the case with Gordon's PPP loan, which exceeded the 500-employee headcount cap.  *See* First Am. Compl. ¶ 3.

Under the CARES Act and SBA regulations, there are several reasons why a higher education institution with over 500 employees may nevertheless receive forgiveness,[3] none of which is applicable to Gordon.  For example, a nonprofit organization may receive forgiveness if although it has over 500 total employees, each of its physical locations has fewer than 500 employees.  *See* 15 U.S.C. § 636(a)(36)(D)(iii)(I); Small Bus. Admin., *Paycheck Protection Program Loans: Frequently Asked Questions* 10 (June 13, 2023), https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (hereinafter "SBA FAQs").  Additionally, a higher education institution may have appropriately excluded work study student employees from its total employee count, as SBA regulation allow.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program—Nondiscrimination and Additional Eligibility Criteria, 85 Fed. Reg. 27,287, 27,288 (Small Bus. Admin. May 8, 2020).  In the event a college mistakenly received loan forgiveness, SBA has expressly reserved the right to claw back such loans.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. at 33,012.

**Gordon's Claims**

Gordon, which identifies as a "religious college," received a PPP loan but was denied PPP loan forgiveness.  First Am. Compl. ¶¶ 1, 3.  In April 2020, Gordon submitted a PPP application

---

[3] Gordon provides an Exhibit of colleges it alleges are similarly situated to it.  First Am. Compl. ¶ 228; ECF No.15-9 ("Exhibit 8").

to its lender, Citizens Bank.  *Id.* ¶ 39.  In its application, Gordon used the FTE method to calculate the number of its employees, counting each of its part-time employees as a fraction of an employee, to arrive at the number 495.67.  *Id.* ¶ 40; ECF No. 15-5 at 2.  Gordon's loan application, submitted at the height of the global pandemic, was nevertheless "quickly approved" under the PPP's streamlined procedures, and Gordon received a loan for $7,046,037.  First Am. Compl. ¶¶ 45, 157.  However, on November 12, 2020, SBA placed a "Hold Code" on Gordon's loan flagging that Gordon's employee count was "indicative of concern – Potential eligibility issue," i.e., that Gordon may have exceeded the 500-employee cap.  ECF No. 15-3 at 3; ECF No. 15-15 at 4, 10.[4]

In September 2021, Gordon submitted its application for PPP loan forgiveness to Citizens Bank, which then submitted the loan forgiveness application to SBA.  First Am. Compl. ¶ 163.  Pursuant to the Hold Code associated with Gordon's PPP loan, SBA requested additional information from Gordon about how many people it employed.  *Id.* ¶ 164-65; ECF No. 15-3 at 2-3.  SBA learned that, at the time of Gordon's PPP loan application, Gordon employed 850 individuals—thereby exceeding the 500-employee cap on eligibility—and denied Gordon loan forgiveness.  ECF No. 15-5 at 8-9; ECF No. 15-17 at 6.  As Gordon's Complaint makes clear, "[t]he bottom line of SBA's decision [denying Gordon loan forgiveness] was a finding that Gordon College exceeded the 500-employee limit for PPP loan eligibility."  First Am. Compl. ¶ 3.  Gordon does not dispute that it employs over 500 employees.  Instead, Gordon alleges it was discriminated

---

[4] These citations refer to Exhibits in Gordon's First Amended Complaint.  "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity."  *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017), *aff'd*, No. 17-7122, 2018 WL 1052650 (D.C. Cir. Jan. 26, 2018) (*quoting Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F.Supp.3d 321, 324 (D.D.C. 2014)).

6

against because it was denied loan forgiveness while similarly situated institutions that also used an FTE calculation received loan forgiveness.  *Id.* at ¶ 7.

## LEGAL STANDARD

Dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face." *Comm. on Ways & Means, U.S. House of Reps. v. U.S. Dep't of Treasury*, 45 F.4th 324, 330 (D.C. Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While a court considering a motion to dismiss must "accept the complaint's factual allegations as true," *id.*, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim cannot survive a motion to dismiss if based on inferences 'unsupported by facts' or legal conclusions disguised as factual allegations." *Keren Kayemeth LeIsrael - Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle E.*, 66 F.4th 1007, 1013 (D.C. Cir. 2023) (quoting *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022)).

## ARGUMENT

## I.  GORDON HAS NOT SUFFICIENTLY ALLEGED A RFRA CLAIM.

Gordon alleges that SBA substantially burdened its religious exercise in violation of RFRA "by pressuring [it] to alter [its] internal management and governance requirements to meet the 500-employee threshold for a PPP loan."  First Am. Compl. ¶ 315.  RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion" unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694-95 (2014) (quoting 42 U.S.C. § 2000bb–1).  Gordon's RFRA claim should be dismissed

because Gordon fails to allege facts plausibly indicating that the PPP's 500-employee cap substantially burdens its religious exercise.

To prevail on a RFRA claim, Gordon must establish that the application of a generally applicable law, such as the 500-employee cap, substantially burdens its sincere religious exercise. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719-20 (2014). "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs,'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)), by either "condition[ing] receipt of an important benefit upon conduct proscribed by a religious faith, or [denying] such a benefit because of conduct mandated by religious belief," *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 242 (D.D.C. 2021) (quoting *Thomas*, 450 U.S. at 717-18). Neither circumstance is present here.

In *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000), the D.C. Circuit addressed an analogous situation where a church argued "that the withdrawal of a conditional privilege for failure to meet the condition is in itself an unconstitutional burden on its free exercise right." *Id.* at 142. In that case, a church challenged the IRS's revocation of its tax-exempt status. *Id.* at 139. Under the Internal Revenue Code, certain organizations are exempt from taxation, including religious organizations, "provided that they do not engage in certain activities, including involvement in 'any political campaign on behalf of (or in opposition to) any candidate for public office.'" *Id.* at 139 (D.C. Cir. 2000) (quoting 26 U.S.C. §§ 501(a), (c)(3)). The IRS revoked the church's tax-exempt status after the church published an advertisement in opposition to a presidential candidate. *Id.* at 139. Like Plaintiff here, the church brought claims under RFRA and the First Amendment arguing that the financial burden of losing its tax-exempt status substantially burdened its religious exercise. *Id.* at 142. The court noted, however, that this would be true "*only*

if the receipt of the privilege . . . is conditioned 'upon conduct proscribed by a religious faith or denied because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 142 (quoting *Jimmy Swaggart Ministries v. Bd. Of Equalization of Cal.*, 493 U.S. 378, 391-92 (1990)) (cleaned up). "The sole effect of the loss of the tax exemption [would] be to decrease the amount of money available to the Church for its religious practices." Such a burden, the court held, "is not constitutionally significant." *Id.* (quoting *Jimmy Swaggart Ministries*, 493 U.S. at 391).

Like the tax-exempt status in *Branch Ministries*, PPP loan forgiveness is a conditional privilege—statutorily conditioned on, among other things, the recipient employing 500 or fewer employees. *See* 15 U.S.C. § 636(a)(36)(D)(i). Gordon did not meet this condition, and thus did not receive forgiveness. ECF No. 15-15 at 9. Just like the church in *Branch Ministries*, Gordon's RFRA claim fails because Gordon does not allege that this condition infringes on a religious belief or is proscribed by its religious faith.

Instead, Gordon argues that "[t]he loss of a seven-million dollar forgivable loan surely qualifies as 'substantial economic consequences' sufficient to trigger RFRA's substantial burden requirement." First Am. Compl. ¶ 320 (quoting *Hobby Lobby*, 573 U.S. at 740). But Gordon misses a critical step in the RFRA analysis. In *Hobby Lobby*, an employer with the sincere religious belief that life begins at conception objected to a mandate that it provide health insurance covering certain birth-control methods. 573 U.S. at 720. If the employer refused to cover the birth control, "the economic consequences [would] be severe." *Id.* at 720. Because the employer was forced to choose between violating its sincere beliefs by funding birth control or facing severe economic consequences, the Supreme Court held the mandate imposed a substantial burden on the employer's belief, in violation of RFRA. *Id.* at 720, 726.

Here, on the other hand, while Gordon alleges it will suffer substantial economic consequences if it must repay its PPP loan, it makes no allegations that doing so is contrary to, or in violation of, a religious belief.  Nor does Gordon claim to hold any religious beliefs relating to the number of people it employs or how they are counted.  Because Gordon fails to identify "any coercion directed at the practice or exercise of [its] religious beliefs," *Hobby Lobby*, 573 U.S. at 726 (quoting *Tilton v. Richardson*, 403 U.S. 672, 689 (1971)), Gordon's RFRA claim must be dismissed.

## II.     GORDON HAS NOT SUFFICIENTLY ALLEGED A FREE EXERCISE CLAIM.

Gordon alleges that SBA's decision to deny Gordon loan forgiveness amounts to an unconstitutional infringement on its right to freely exercise religion, *see* First Am. Compl. at ¶¶ 339-86, and that SBA "singl[ed] out [Gordon] for adverse and especially harsh treatment in its analysis and application of the 500-employee standard," *id.* ¶ 349.  Under the Free Exercise Clause, laws that substantially burden religious practice must withstand strict scrutiny unless they are neutral and generally applicable.  *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 531 (1993).  If a law burdening religious practice is neutral and generally applicable, rational-basis review applies.  *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990).  Gordon's Free Exercise Claim should be dismissed because (A) Gordon fails to make the threshold showing that its religious practice is substantially burdened, (B) the 500-employee cap meets the neutrality requirements, (C) the PPP is generally applicable, and (D) the 500-employee cap withstands rational basis.

**A. Gordon fails to make the threshold showing that the 500-employee cap substantially burdens a tenet or practice of its religion.**

As a threshold matter, Gordon's Free Exercise Claims[5] must fail for the same reason its RFRA claim fails. *See Branch Ministries v. Rossotti*, 211 F.3d 137, 142 (D.C. Cir. 2000).  "To sustain [a] claim under either the Constitution or [RFRA], [a plaintiff] must first establish that its free exercise right has been substantially burdened." *Id.*  The D.C. Circuit's "cases make clear" that litigants must make a "threshold showing" that "a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice . . . before the First Amendment is implicated." *Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002).  Critically, litigants must allege that a challenged rule "burden[s] a central tenet or important practice of the litigant's religion." *Levitan*, 281 F.3d at 1320.

Here, as previously discussed, Gordon makes no such allegations.  Gordon does not point to any of its religious practices or its central tenets that the PPP's 500-employee cap burdens.  Accordingly, the Court's inquiry should end here, and Gordon's Free Exercise Claims should be dismissed. *See Karmmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (holding that a plaintiff did "not allege facts sufficient to state a substantial burden on his religious exercise because he cannot identify any 'exercise' which is the subject of the burden to which he objects").

**B. The 500-employee cap meets the neutrality requirement and is not especially harsh.**

Gordon alleges that SBA violated the Free Exercise Clause by treating other colleges more favorably than it treated Gordon.  First Am. Compl. ¶ 344.  Gordon's non-neutrality and especially

---

[5] Gordon presents three separate causes of action under the Free Exercise Clause (counts 4-6). First Am. Compl. ¶¶ 339–86.  All of Gordon's Free Exercise Claims require the same threshold showing. *See Levitan*, 281 F.3d at 187 ("Our cases make clear that this threshold showing must be made before the First Amendment is implicated.")

harsh treatment claims[6] should be dismissed because the PPP requirements for loan forgiveness are neutral and Gordon does not allege that the object or purpose of the PPP is to suppress religion. *See Church of Lukumi*, 508 U.S. at 533, 542.  The Free Exercise Clause protects against non-neutral laws targeting religious beliefs.  *Id.* at 533.  A law is not neutral if "the object of a law is to infringe upon or restrict practices because of their religious motivation."[7]  *Id.*  "To determine the object of a law, [the Court] must begin with its text" to evaluate whether it "discriminate[s] on its face."  *Church of Lukumi*, 508 U.S. at 533.  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."  *Id.*  Here, the applicable regulations are facially neutral because they do not single out any religious practice. *See generally* 15 U.S.C. § 636(a)(36); *cf. Church of Lukumi*, 508 U.S. at 533 (addressing a statute that prohibits animal "sacrifice" and references "'ritual[s],' words with strong religious connotations").

Even if a law is facially neutral, "[a] law that targets religious conduct for distinctive treatment" is not neutral.  *Church of Lukumi*, 508 U.S. 546.  However, Gordon does not allege that the 500-employee cap was intended to target religious conduct.  Nor does Gordon allege that SBA maintains a policy of targeting religious organizations.  *See generally id.*; *cf. Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017) (finding a constitutional violation when a "Department's policy expressly discriminates against otherwise eligible recipients by

---

[6] While Gordon addresses "especially harsh treatment" as a distinct cause of action, *see* Compl. ¶¶ 337–86, courts have only analyzed this as a part of the neutral treatment inquiry.  *See, e.g.*, *Roman Cath. Archbishop of Washington v. Bowser*, 531 F. Supp. 3d 22, 33 (D.D.C. 2021); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020).

[7] Gordon refers to "non-neutral treatment" under the "non-neutrality aspect of the Free Exercise Clause," First Am. Compl. at ¶ 340, 350, but the cases Gordon cites address only facial neutrality of statutes, regulations, or policies.

disqualifying them from a public benefit solely because of their religious character").  Gordon

alleges that it is a faith-based institution and alleges that it was denied loan-forgiveness, but Gordon

fails to make well-pleaded, nonconclusory factual allegations that plausibly draw a connection

between the two.

Gordon points to the forgiveness of the PPP loan issued to a secular educational institution,

Husson University, in attempt to support an inference that Gordon's use of an FTE employee count

was "discriminator[ily] rejected."  *Id.* ¶¶ 7, 344-49.  Gordon asserts that Husson's case was

"virtually identical to Gordon's case, with one exception: Gordon is a religion college" and Husson

is not.  *Id.* ¶ 346.  But Gordon overlooks the key similarity between the two cases that defeats its

Free Exercise claim.  In both cases, SBA's Office of Capital Access, the SBA program office

responsible for administering the PPP, denied loan forgiveness because the applicants improperly

determined their number of employees using an FTE method and exceeded the statutorily imposed

500-employee cap.  *See* ECF No. 15-17 at 3, 12 (SBA argued on appeal in Husson's case that

Husson "was not eligible for PPP loan forgiveness" because Husson's total headcount "exceed[ed]

the maximum allowable number of employees and the SBA small business size standards").  An

Office of Hearings and Appeals ("OHA") judge disagreed with SBA, reversing its decision to deny

Husson loan forgiveness.  *See generally id.*  SBA sought reconsideration, arguing the OHA

decision was "clearly erroneous," but OHA denied its petition.[8]  ECF No. 15-19 at 1, 4.  That

Husson ultimately received forgiveness and Gordon did not does not alter that SBA took the same

position in both cases.  *See also* 13 C.F.R. § 134.1211(e) (noting that "[n]either initial nor final

---

[8] Instead, OHA held that "SBA did not consider the exception for higher education's ability to
exclude work study students," ECF No. 15-17 at 15—which was not the case for Gordon College,
*see* ECF No. 15-15 at 14—and noted that "SBA failed to consider the FTA calculation when
determining [Husson's] PPP eligibility," ECF No. 15-17 at 15.

decisions rendered by OHA under this subpart are precedential"). Gordon was not "singl[ed] out" by SBA for "especially harsh treatment." First Am. Compl. at 349. In these "virtually identical" cases, *id.* ¶ 346, SBA treated the secular and non-secular applicants exactly the same. Accordingly, Gordon's claim that it received especially harsh treatment or that the 500-employee cap is not neutral should be dismissed.

### C. The PPP is generally applicable.

A law is subject to strict scrutiny under the Free Exercise Clause if it is not generally applicable. *Tandon v. Newson*, 141 S. Ct. 1294, 1296 (2021). Gordon asserts the PPP is not generally applicable because it allegedly "provides opportunities for discretionary decision-making." First Am. Compl. ¶ 368. Again, as a threshold matter, Gordon's general applicability claim should be dismissed because Gordon fails to identify a religious practice SBA's loan forgiveness denial substantially burdens. *Levitan*, 281 F.3d at 1320. This claim further fails because Gordon does not plausibly allege that the PPP is not generally applicable.

A law is not generally applicable if it (1) "prohibits religious conduct while permitting secular conduct" or (2) "'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (quoting *Smith*, 494 U.S. at 884). Gordon does not sufficiently allege either. First, Gordon does not point to any religious conduct that SBA is prohibiting. Moreover, as illustrated in the OHA appeal in Husson University's case, discussed above, SBA took the same approach in "virtually identical cases," First Am. Compl. ¶ 346, involving one religious and one secular college.

Second, Gordon does not point to a provision of the PPP that offers "a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877. The statutorily imposed 500-employee

14

cap (and the headcount method of counting such) is applicable to religious and nonreligious organizations alike. *See* 15 U.S.C. § 636(a)(36)(D)(i). There is no wiggle room in the statute for SBA to consider additional factors, like religious affiliation. *See generally id.*

### D. The 500-employee cap withstands rational-basis review.

Gordon's allegations fail to demonstrate that strict scrutiny is appropriate under either the generally applicable or neutral test. Accordingly, the 500-employee cap is subject only to rational-basis review. *See, e.g.*, *Smith*, 494 U.S. at 879; *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144, 154 (2d Cir. 2023). Rational-basis review affords policy choices "a strong presumption of validity." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022), *cert. denied sub nom.*, 143 S. Ct. 579, 214 L. Ed. 2d 344 (2023) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "To succeed on a rational-basis challenge, a plaintiff must meet a demanding standard." *Id.* at 396. "At the motion-to-dismiss stage, . . . the plaintiff must plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged policy." *Id.* A plaintiff bringing such a claim "thus faces the unenviable task of refuting 'every conceivable basis which might support it.'" *Id.* (quoting *Beach*, 508 U.S. at 315). Gordon does not dispute that the 500-employee cap requirement withstands rational-basis review. *See generally* First Am. Compl. Supporting small businesses is a legitimate governmental interest and limiting eligible borrowers to those that employ no more than 500 employees is rationally related to the goal of assuring businesses receiving aid are indeed small. Accordingly, Gordon's Free Exercise claims should be dismissed.

## III. GORDON HAS NOT SUFFICIENTLY ALLEGED AN ESTABLISHMENT CLAUSE CLAIM.

Gordon asserts that SBA's denial of Gordon's loan forgiveness application amounts to an unconstitutional denominational preference in violation of the Establishment Clause. *See* First

Am. Compl. at ¶¶ 390-91.  Because Gordon fails to make sufficient factual allegations to support

such a claim, the Court should dismiss it.

### A.  Gordon fails to allege any denominational preference.

The Establishment Clause provides that "Congress shall make no law respecting an

establishment of religion."  U.S. CONST. amend. I.  Although Establishment Clause jurisprudence

has been in flux, *see, e.g.*, *St. Michael's Media, Inc. v. Mayor & City Council of Balt.*, No. CV

ELH-21-2337, 2023 WL 2743361, at *20 (D. Md. Mar. 31, 2023) (noting the "legal landscape [of

Establishment Clause cases] has been unsteady" (quoting *Williams v. City of Jackson*, DPJ-20-

785, 2022 WL 4715706, at *9 (S.D. Miss. Sept. 30, 2022))), the fundamental principles of the

doctrine remain constant—namely, "that one religious denomination cannot be officially preferred

over another," *Trump v. Hawaii*, 138 S. Ct. 2393, 2417 (2018) (quoting *Larson v. Valente*, 456

U.S. 228, 244 (1982)), and that the government may play "no favoritism among [religious] sects,"

*Larson*, 456 U.S. at 246 (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 225 (1963)).

Accordingly, Gordon must at minimum make factual allegations sufficient to plausibly support a

finding of a denomination preference.  *See id.* at 246.  Gordon makes no such allegations, and,

therefore, its Establishment Clause claim should be dismissed.

Gordon alleges that it is "a Christian college with religiously and socially conservative

views" and that SBA discriminated against Gordon "by treating other, similarly situated religious

colleges better than it has Plaintiff."  First Am. Compl. ¶ 391.  However, Gordon does not identify

what religious denominations these alleged other colleges belong to.  *See generally id.*  Nor does

Gordon attempt to differentiate its religious sect from any of the other "similarly situated religious

colleges" it alleges were treated better than it.  As such, Gordon's Establishment Clause Claim

should be dismissed.  *See St. Michael's Media*, 2023 WL 2743361, at *21 (dismissing an

Establishment Clause case when a plaintiff failed to assert that the similarly situated group constituted "different religious sects or denominations within the meaning of the Establishment clause").

Moreover, while Gordon alleges that it is a religious institution and that it was wrongfully denied loan forgiveness, Gordon fails to make any allegations of a causal connection between these two facts. Indeed, Gordon does not make a single allegation that SBA was aware of Gordon's religious denomination when it denied Gordon loan forgiveness. Nor does Gordon allege at all, much less plausibly so, that SBA maintains a policy or practice of considering religious affiliation when making a loan forgiveness determination. Gordon's complaint is bare of well-pleaded, nonconclusory allegations suggesting that its religious affiliation had anything to do with SBA denying it loan forgiveness.[9] Absent any such allegations, Gordon does not plausibly show either discrimination on the basis of religious denomination or the existence of a policy of such discrimination. *See Haidari v. Mayorkas*, No. 22-CV-2939, 2023 WL 5487351, at *4 (D. Minn. Aug. 24, 2023) (finding that when a plaintiff "does not allege that Defendants attempted to benefit religion generally or endorse particular religions[,] . . . [t]he claim could be dismissed on just this basis"). Accordingly, Gordon's allegations in this respect are insufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 55. The Court's Establishment Clause inquiry should end here, and Gordon's claim should be dismissed. *See, e.g.*, *Toussaint v. Dronenburg*, No. 23-CV-0256-BAS-WVG, 2023 WL 4305126, at *4 (S.D. Cal. June 30, 2023) (holding a "Complaint does not provide sufficient factual foundation for an Establishment Clause

---

[9] Instead, the exhibits Gordon attaches make clear that the basis for Gordon's denial was that it exceeded the 500-employee cap. *See* ECF No. 15-3 at 1-2; ECF No. 15-15 at 4-5, 8-9; ECF No. 15-7 at 2-3, 6; *see also* First Am. Compl. ¶ 3 ("The bottom line of SBA's decision [denying Gordon loan forgiveness] was a finding that Gordon College exceeded the 500-employee limit for PPP loan eligibility.").

claim" when "the Complaint stops short of alleging defendant exhibited a preference of one religion over another").

### B. The PPP loan forgiveness requirements are facially neutral and, thus, not subject to strict scrutiny.

Under D.C. Circuit case law, Establishment Clause claims brought under *Larson* undergo a two-step inquiry: (1) facial neutrality and (2) the endorsement test. *Chaplaincy of Full Gospel Churches v. United States Navy* (*In Re Navy Chaplaincy*), 738 F.3d 425, 430 (D.C. Cir. 2013). However, last year, the Supreme Court in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022) replaced the endorsement test with a historical practices and understandings analysis. *Id.* at 2428. It is not yet clear how that impacts D.C. Circuit's *Larson* inquiry.

Instead of applying the *Larson* inquiry, whether pre- or post-*Kennedy*, Gordon argues that the Establishment Clause "flatly forbid[s]" "Defendants' actions", which as discussed above in Section II.B and C, is facially neutral and generally applicable. First Am. Compl. ¶ 391-93. But the sole authority Gordon cites for this proposition, *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245 (10th Cir. 2008), does not support such an assertion. Instead, *Colorado Christian* "conclude[s] that statutes involving discrimination on the basis of religion," may be "subject to heightened scrutiny" under *Larson*.[10] *Id.* at 1266. As discussed above, neither the 500-employee cap, nor the headcount methodology, involves religious discrimination of any kind.

Second, to the extent *Larson* is still applicable,[11] it would not invoke strict scrutiny here because the PPP loan forgiveness and eligibility requirements are facially neutral. Gordon's

---

[10] The Tenth Circuit in *Colorado Christian* noted that cases involving "excessive entanglement," "are unconstitutional without further inquiry," 534 F.3d at 1266, but Gordon does not even purport to allege excessive entanglement here.

[11] The role of *Larson* following *Kennedy* is uncertain as "historical practice and understanding 'must' [now] play a central role in teasing out what counts as an establishment of religion." *See Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023).

contention that the headcount method of counting employees is subject to (and fails) strict scrutiny lacks merit.  Under *Larson*, the Establishment Clause requires strict scrutiny of a statute only when it discriminates amongst denominations on its face.  *See In Re Navy Chaplaincy*, 738 F.3d at 430. Again, as described above, the PPP loan forgiveness and eligibility requirements are facially neutral, which Gordon does not dispute.  *See generally* First Am. Compl.  Accordingly, the PPP loan forgiveness and eligibility requirements are not subject to strict scrutiny.

When applying *Larson* to a facially neutral statute, the D.C. Circuit has previously invoked the endorsement test articulated in *Lemon v. Kurtzman,* 403 U.S. 602 (1971), to determine whether facially neutral policies nevertheless violate the principle of denominational neutrality.  *See In Re Navy Chaplaincy*, 738 F.3d at 430.  However, the Supreme Court in *Kennedy* instructed that "[i]n place of *Lemon* and the endorsement test, . . . the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'"  142 S. Ct. 2407, 2428 (2022) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)).  Neither this Court nor the D.C. Circuit has had the opportunity to address how *Kennedy* impacts its *Larson* analysis of facially neutral laws.  The Court need not do so here as Gordon's complaint includes no allegations purporting to show that the PPP's employee cap, or headcount methodology, historically would have been considered an establishment of religion.  *See Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023) (noting that "in Establishment Clause cases, the plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion").

Accordingly, Gordon's Establishment Clause claim should be dismissed.

## IV.   GORDON HAS NOT SUFFICIENTLY ALLEGED A CLAIM FOR IMPROPER INTERFERENCE WITH RELIGIOUS AUTONOMY.

Gordon next asserts that Defendants have "interfered with [its religious] autonomy" by "insisting on certain requirements for determining staffing and employment, including the

definition of 'employee.'"  First Am. Compl. ¶¶ 402-03.  But Gordon fails to allege how a headcount requirement for calculating its number of employees interferes with its right to decide matters of faith and religious doctrine.  The Religion Clauses of the First Amendment "protect the right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion."  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012)).  This includes, for example, a religious organization's "authority to select, supervise, and if necessary, remove a minister."  *Id.* at 2060.  Similarly, "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969).  However, "this does not mean that religious institutions enjoy a general immunity from secular laws."  *Our Lady*, 140 S. Ct. at 2060.  Instead, it "protect[s] their autonomy with respect to internal management decisions that are essential to the institution's central mission."  *Id.* Nowhere does Gordon allege the method of calculating its number of employees is "essential" to its religious mission.  *See generally* First Am. Compl.

Gordon's contention that the government is "categorically barred" from defining "employee," First Am. Compl. ¶¶ 400, 403, is baseless.  While Gordon disputes the meaning of "employee" for purposes of PPP loan eligibility, Gordon fails to explain how the PPP's employee cap or prescribed method of counting employees interferes with the practice of Gordon's faith or with "internal management decisions that are essential to [its] central mission."  *Our Lady*, 140 S. Ct. at 2060.  Gordon's complaint is devoid of any allegations that Defendants interfered with the selection, supervision, or removal of Gordon College employees.  *Cf. Hosanna-Tabor*, 565 U.S. 171, 196 (holding a "church must be free to choose those who will guide it on its way").  Because

religious autonomy does not entitle religious adherents to a "general immunity from secular laws,"

Gordon's claim should be dismissed. *Our Lady*, 140 S. Ct. at 2060.

## V.     GORDON HAS NOT SUFFICIENTLY ALLEGED AN EQUAL PROTECTION CLAIM.

### A.  Gordon's Free Exercise and Equal Protection claims fail together.

Gordon asserts that the "differential treatment of [Gordon]" violates the Equal Protection

component of the Fifth Amendment.  First Am. Compl. ¶ 435.  To the extent Gordon's Equal

Protection claim rests on the same grounds as its Free Exercise claims, *see id.*, its Equal Protection

claim must also be dismissed as the two claims fail together.  "The [Supreme] Court has suggested

that the Equal Protection Clause's requirement is parallel" to that of the Free Exercise Clause.  *See*

*Colo. Christian*, 534 F.3d at 1257 (citing *Locke v. Davey*, 540 U.S. at 720 n. 3 (2004)).  "In the

context of alleged religious discrimination, a plaintiff can make out an Equal Protection claim

either by showing that a law violates the Free Exercise Clause and treats him less favorably than

other similarly situated individuals or that the law involves a religious classification."  *Navy SEAL*

*1 v. Austin*, 600 F. Supp. 3d 1, 20 (D.D.C. 2022), *vacated and remanded as moot*, No. 22-5114,

2023 WL 2482927 (D.C. Cir. Mar. 10, 2023).  "Accordingly, because either route to establishing

an Equal Protection claim based on religious discrimination requires a demonstration of a Free

Exercise violation, it follows that failure to prove such a violation necessarily forecloses an Equal

Protection Claim."  *Id.* at 20 n.10; *see also Alive Church of the Nazarene, Inc. v. Prince William*

*County*, 59 F.4th 92, 112 (4th Cir. 2023) (holding that because a Church's RLUIPA equal terms

claim failed, its "equal protection claim fails as a matter of law"). Because Gordon's Free Exercise Clause claim fails, it's Equal Protection claim is foreclosed, and the Court should dismiss it.[12]

### B.  Gordon does not allege sufficient facts to suggest disparate impact.

Even if the Court determines that Gordon's Free Exercise claim does not foreclose its Equal Protection claim, Gordon's Equal Protection claim nevertheless should be dismissed as Gordon fails to adequately allege facts suggesting that SBA intentionally discriminated against it. *See Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). The party "who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). A party may use "statistics as proof of intent to discriminate in certain limited contexts." *Id.* "Although statistical proof normally must present a 'stark' pattern to be accepted as the sole proof of discriminatory intent under the Constitution." *Id.*

Gordon argues that SBA's "actions need not be motivated by animus to be unconstitutional." First. Am. Compl. ¶ 422; *see also id.* ¶ 437. But the Supreme Court has "made clear that '[p]roof of . . . discriminatory intent or purpose is *required*' to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)) (emphasis added); *see also In re Navy Chaplainc*y, 928 F. Supp. 2d 26, 33 (D.D.C.), *aff'd*, 738 F.3d 425 (D.C. Cir. 2013) ("Where, as here, Plaintiffs specifically claim that Defendants

---

[12] In *Locky v. Davey*, because the Court held "that the program [at issue was] not a violation of the Free Exercise Clause . . . [it] appl[ied] rational-basis scrutiny to [the Plaintiff's] equal protection claims." 540 U.S. at 720 n.3. Similarly, here, because the PPP does not violate the Free Exercise Clause, the Court should apply rational-basis review when evaluating the validity of the PPP's 500-employee cap under Equal Protection principals. As detailed above, the 500-employee cap easily passes rational-basis review, and Gordon's Equal Protection claims should be dismissed.

engaged in 'invidious discrimination in contravention of the First and Fifth Amendments, [the Supreme Court's] decisions make clear that the plaintiff must *plead and prove* that the defendant acted with discriminatory purpose.'" (quoting *Iqbal*, 556 U.S. at 676)).  As previously discussed, the PPP is facially neutral, which Gordon does not dispute.  "It is true that, in exceptional cases, the disparate impact of a facially neutral policy may be so severe that the clear factual pattern is 'unexplainable on grounds other than' purposeful discrimination.'"  *In re Navy Chaplaincy*, 928 F. Supp. 2d at 34 (quoting *Arlington Heights,* 429 U.S. at 266).  "Such cases, however, are 'rare' and '[a]bsent a pattern as stark as that in *Gomillion* [*v. Lightfoot*, 364 U.S. 33 (1960)] or *Yick Wo* [*v. Hopkins*, 118 U.S. 356 (1886)], impact alone is not determinative.'"  *Id.* (quoting *Arlington Heights*, 429 U.S. at 266).  "Accordingly, under Supreme Court precedent, Plaintiffs must either (1) point to evidence establishing the existence of a policy or practice that the government adopted *because of, not merely in spite of* its adverse effect on Plaintiffs or (2) demonstrate disparate impact as stark as that in *Gomillion* or *Yick Wo*."  *Id.* (cleaned up) (internal citations omitted).  Gordon fails to sufficiently allege either.

First, Gordon does not allege that SBA maintains a policy or practice of denying PPP loan forgiveness to institutions that share Gordon's religious beliefs.  *See generally* First Am. Compl. Gordon only alleges that SBA's "differential treatment of" Gordon "*may* be motivated by animus toward [Gordon's] particular religious views, which *might* be considered socially or culturally conservative."  *Id.* ¶ 423 (emphases added).  Second, Gordon does not allege a "clear pattern" of discrimination.  Indeed, Gordon provides just one alleged example of a "virtually identical" case where a secular institution was granted loan forgiveness, First Am. Compl. ¶ 346, namely, Husson University, which as discussed above, SBA argued, like Gordon, was also ineligible for PPP loan forgiveness, ECF No. 15-17 at 3, 12.  Gordon's exhibit of similarly situated colleges, ECF No. 15-

9, is "not nearly 'as stark as [the allegations of disparate treatment] in *Gomillion* or *Yick Wo*,'" and, therefore, there is no plausible basis for "inferring that the pattern of their statistics is 'unexplainable on grounds other than' purposeful discrimination." *In re Navy Chaplaincy*, 928 F. Supp. 2d at 37 (quoting *Arlington Heights*, 429 U.S. at 266); *cf. Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) (finding an equal protection violation when 200 Chinese applicants were denied and eighty non-Chinese applicants were granted laundry permits in which no justification existed "except [for] hostility to the race and nationality to which the petitioners belong"). As previously discussed, there are other explanations for why the institutions Gordon points to received forgiveness. For example, each physical location may have maintained fewer than 500 employees, *see* 15 U.S.C. § 636(a)(36)(D)(iii)(I), or a college appropriately excluded work study student employees from its headcount, *see* Business Loan Program Temporary Changes; Paycheck Protection Program—Nondiscrimination and Additional Eligibility Criteria, 85 Fed. Reg. at 27,288. Between the "obvious alternative explanation" for Gordon's loan forgiveness denial—that Gordon exceeded the 500-employee cap—and the otherwise bare legal conclusion Gordon provides, "discrimination is not a plausible conclusion" on the facts Gordon alleged. *Iqbal*, 556 U.S. at 682.

Accordingly, the Court should dismiss Gordon's Equal Protection claims.

## CONCLUSION

For the foregoing reasons, counts three through ten of Gordon's First Amended Complaint should be dismissed.

Date: October 2, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

JAMES J. GILLIGAN
Special Litigation Counsel

*/s/ Bonnie E. Devany*
BONNIE E. DEVANY
Trial Attorney (Tex. Bar No. 24131173)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8101
Email: bonnie.e.devany@usdoj.gov

*Counsel for United States*

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 2, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.


<u>*/s/ Bonnie E. Devany*</u>
BONNIE E. DEVANY