**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GORDON COLLEGE

  *Petitioner / Plaintiff,*

  v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION, et al.,

  *Respondents / Defendants.*

Civil Action No. 1:23-cv-614 (BAH)

**ORAL ARGUMENT REQUESTED**[*]

**PLAINTIFF GORDON COLLEGE'S SUR-REPLY IN
OPPOSITION TO DEFENDANTS' PARTIAL MOTIONS
FOR SUMMARY JUDGMENT AND TO DISMISS**

---

[*] Gordon respectfully submits that, as this round of briefing underscores, the numerous difficult issues before the Court warrant at least an oral argument if not an evidentiary hearing.

# TABLE OF CONTENTS

A.  Defendants' Frulla Declaration Raises More Questions Than It Answers. ................... 1

    *1. Third-party auto-screening to detect anomalies and assign hold codes.* ................1

    *2. Joint third-party/SBA effort to select and manually review certain loans.* ...............2

    *3. Manual review of Gordon due to (a) inclusion in sample and (b) hold code.* ..........2

    *4. The process used to review the 171 college loans was deeply flawed.* ....................3

    *5. SBA's process as explained by Frulla was arbitrary and capricious.* .......................3

B.  Defendants' Submission of Frulla Shows Material Factual Disputes. .......................... 4

C.  Defendants' Submission of Frulla Goes Beyond the Administrative Record. ............. 5

D.  Frulla and Eskeland Show the Need for More Discovery (Beyond the AR). ................ 5

E.  Both Frulla and Eskeland Support Rule 56(d). ............................................................. 5

In response to Gordon's Opposition Brief (ECF No. 36) ("Pl.Opp."), Defendants submitted a Reply (ECF No. 39) and a Declaration from SBA's Jason Frulla (ECF No. 39-1) ("Frulla"). Gordon submits this Sur-Reply in accordance with this Court's April 3, 2025 Minute Order.[1]

**A.    Defendants' Frulla Declaration Raises More Questions Than It Answers.**

Frulla discloses previously nonpublic information about SBA's PPP loan review generally and its review of Gordon's loan specifically, including its "two-step" review process. Frulla ¶3.[2]

*1.    Third-party auto-screening to detect anomalies and assign hold codes.*

Step one included "automated screening" to identify "anomalies and attributes" that "could be" indicative of "certain, but not all" eligibility "and other" concerns. Frulla ¶7. It used "third-party contractors" to "gather" information from a "variety of internal and public databases." *Id*. ¶8. If a contractor identified a "potential" eligibility issue, it would "refer" the loan to SBA to place a "Hold Code" or "flag." *Id*. ¶9. "Hold Code 21" flagged an "employee count" concern. *Id*. Loans not flagged or "otherwise chosen" for "manual review" received automatic forgiveness. *Id*. ¶10.

Left undisclosed by Frulla are, e.g., *the specific* (a) "anomalies and attributes" at issue, (b) "contractors" used and their credentials, (c) "internal and public databases" used, (d) sources of other "information" gathered (e) "different" or "potential" "concerns" flagged, (f) other "Hold Codes" and "concerns" referenced, (g) duties of SBA versus contractors, and (h) quality assurance guidelines and internal and independent audits (if any and the results) to ensure impartiality and uniformity, including *whether* (i) this process was *always* followed, (j) SBA *always* applied a Hold

---

[1] The Order denied Gordon's request to further brief other issues, e.g., that Gordon's allegations/ inferences related to its Due Process and APA Contrary-to-Law claims gave sufficient notice for its argument that the improper employment of OHA ALJs violated the OHA Statute and the Fifth Amendment. Defendants contest *notice* of that argument. They do not contest its *merits* nor cast the slightest doubt on its *plausibility*. Thus, that argument would justify repleading, in any event.

[2] Frulla's analysis below also appears in argument in Defendants' brief. Defs.Reply at 6-9. Gordon has been seeking all this information since the beginning of the OHA appeal process. JA0005-06.

Code flagged by contractors, and (k) any discrepancies or anomalies in the process were detected.

        **2.**      *Joint third-party/SBA effort to select and manually review certain loans.*

Step two was to "select" certain PPP loans for "manual forgiveness reviews," Frulla ¶12, based on "a statistical sampling" of forgiveness applications, *id*. ¶13. SBA engaged "another" "third-party contractor" that "developed" a "stratified methodology" to sample "certain" higher "risk strata" of loans and that included such "criteria" as "loan size, lender type, and two-digit NAICS sector codes." *Id*. Only "some" loans were "chosen" and "queued" for this review. *Id*. ¶14. Review was "based on" loan and forgiveness applications and "if necessary" "additional" "documentation" "such as" "tax records," "or other records" that "SBA requested." *Id*. This review "prioritized" the "potential issue(s)" by "Hold Code(s) (if any)." *Id*. ¶15. "If" a "potential" eligibility "issue" was "confirmed," SBA "denied forgiveness in full." *Id*.

Left undisclosed by Frulla are, e.g., *the specific* (a) process to "select" "some" loans, (b) "sampling" used, (c) "methodology" "developed," (d) "other" "contractors" used and their credentials, (e) responsibilities of SBA versus contractors, (f) process to decide if/when and what "other records" were "necessary," (g) process to "prioritize" "potential" "issues," (h) process to decide which/why "Hold Code(s)" ("if any") were used, (i) process to decide if/when/how/by whom "potential" "issues" were "confirmed," and (j) quality assurance guidelines/audits (if any and their results), including *whether* (k) this process was *always* followed, (l) "prioritized" issues always resulted in manual review, and (m) problems in the process were ever detected/recorded.

        **3.**      *Manual review of Gordon due to (a) inclusion in sample and (b) hold code.*

SBA manually reviewed Gordon's loan "[b]ecause" its loan (a) "was a part of the statistical sampling" and (b) "had a Hold Code 21" for "employee count." Frulla ¶16. Many questions arise. (1) Are both (a) and (b) always required for manual review? (2) What other Hold Codes exist? (3) Does every Code result in manual review? (4) Can manual review occur under other Codes/facts?

(5) How are issues/concerns "prioritized"? (6) What issues other than "employee count" result in "prioritization"? (7) What different "priority" levels exist? (8) Who/what did the initial flagging?

### 4. *The process used to review the 171 college loans was deeply flawed.*

"Of the 171 colleges identified by" Eskeland, "54 were part of the statistical sampling" and five of those had Code 21. Frulla ¶18. "SBA manually reviewed each."[3] "[T]he 166 other colleges Gordon points to (171 minus the five colleges that were selected as a part of the statistical sample and had a Hold Code 21) would not have undergone the same manual review[.]" Frulla ¶19.

Frulla gives no indication (a) whether there were similarly situated (FTE) colleges beyond the 171 Gordon identified, (b) how or why 54 of the 171 colleges were included in the "statistical sampling," (c) why Gordon was included in that sampling, (d) whether any of the 54 had Hold Codes other than 21, (e) whether any factor other than a Code could have led to manual review, (f) whether the five colleges with Hold Code 21 were the only ones similarly situated to Gordon, and (g) what led SBA to find two of the five colleges subject to post-payment review.

### 5. *SBA's process as explained by Frulla was arbitrary and capricious.*

Nothing in Frulla explains Gordon's extraordinary situation. All 170 other colleges using FTE received forgiveness. Pl.Opp. at 10; Eskeland ¶¶36-40. Frulla would reduce that by 3 to 167 by arguing that Husson was not forgiven by SBA staff but by an OHA judge (also SBA staff under SBA supervision) and that two others which received forgiveness *might* lose it during post-payment review. But Defendants concede that the latter two and ultimately Husson received it. Thus, they concede that *Gordon was the only one of the 171 ultimately denied forgiveness*.

Nothing in Frulla explains how SBA's review missed wild inconsistencies in data reporting among many of the other 170 colleges. For example, five colleges had employee-number reporting

---

[3] SBA found Husson and Gordon exceeded 500 employees. *Id*. Two others received forgiveness but are subject to "post-payment" review. The fifth received full forgiveness. *Id*.

*discrepancies* many times greater than Gordon's. Eskeland ¶¶24, 29. Why did SBA's process not catch *any*? Why were IRS 990s—highly credible and accessible—not requested? *See id*. ¶¶15-35.

Nothing in Frulla explains how or why SBA approved 51 FTE-based college applications submitted *after* SBA's April 26, 2020 clarification that FTE-counting was forbidden, *id*. ¶32, including two submitted a year later in 2021, *id*. ¶33. Nothing explains why *larger* colleges were not *prioritized*. The average 2019 headcount among the 30 colleges (including Gordon) whose PPP loans exceeded $5 million was 1,263; Gordon's was just 867. Eskeland ¶23. Comparing Eskeland and Frulla raises more questions. Was Gordon penalized for honesty in reporting a fractional figure for its employee total on its loan application? Was Gordon the only one of the 171 fractional-employee-counting colleges whose sum of fractional employees (naturally) was a fraction? Any decisionmaking process based on such nonsense must be arbitrary and capricious.

In short, nothing in Frulla contradicts Eskeland's conclusion that "SBA is unfairly and improperly singling out Gordon College by denying Gordon College any PPP loan forgiveness when it is exceedingly clear from the SBA's own records that the SBA has approved loan forgiveness for every other institution of higher education that utilized the same FTE method in certifying its number of employees on the SBA PPP loan application." Eskeland ¶38. This process and result violates not only the APA but Equal Protection and Due Process (and Free Exercise).

**B.    Defendants' Submission of Frulla Shows Material Factual Disputes.**

Previously, it appeared "'most facts [are] agreed' [and] disputes [mostly] 'go to questions of law.'" Defs.Reply at 1. That has changed. Defendants just introduced scores of factual disputes about whether SBA (1) acted arbitrarily or capriciously in violation of the APA or Due Process, (2) treated Gordon differently from comparators, requiring closer Equal Protection scrutiny, and/or (3) treated Gordon at least as well as every secular college, requiring the strictest of scrutiny under *Tandon*. Pl.Opp. at 28-31, 39. The competing Declarations alone prevent summary judgment. *See,*

4

*e.g.*, *DACO Invs., LLC v. U.S. SBA*, 2024 WL 750594, *16 (W.D. La. Feb. 22, 2024).[4]

### C.    Defendants' Submission of Frulla Goes Beyond the Administrative Record.

The Administrative Record ("AR") has 1,774 pages, all about Gordon. Frulla is far outside that AR. By submitting Frulla, Defendants contradicted any "black-letter law that review of agency action under the APA is limited to the [AR], subject to certain limited exceptions.'" Defs.Reply at 10.[5] Defendants also waived any "AR-only" argument by (1) agreeing to the Joint Appendix (ECF No. 42) ("JA"), of whose 1,533 pages only 316 are from the AR, expanding the 1,774-page AR by 1217 pages;[6] (2) not objecting to Eskeland; (3) and submitting Frulla. In sum, Eskeland, Frulla, and 92 PPP appeal decisions provide/dispute many material facts beyond the AR, expanding its quantity. And the quality of all that new evidence massively increases the AR's quality.

### D.    Frulla and Eskeland Show the Need for More Discovery (Beyond the AR).

The discussion above supports additional discovery beyond the AR to probe the questions raised herein. The parties have a demonstrated record of cooperation and can agree on scope.

### E.    Both Frulla and Eskeland Support Rule 56(d).

Frulla's "access to relevant PPP files and records," Frulla at ¶2, his use of such private SBA data in the remainder of his Declaration, and the complete absence of such data in Eskeland's Declaration (necessarily relying wholly on public data) all combine to show that relevant facts remain "unavailable" to Gordon, precluding summary judgment under Fed. R. Civ. P. 56(d). Gordon can provide further specific Declarations on this point, should the Court request.

---

[4] "In short, the parties offer conflicting expert testimony [creating factual disputes over] whether the SBA arbitrarily and capriciously declined to forgive the Plaintiffs' requests for forgiveness while granting the requests of similarly situated" entities, precluding summary judgment. *Id*.

[5] "Exceptions" exist here, such as discovery needed for each constitutional claim. Pl.Opp. 38-44.

[6] Most of these 1,774 pages are mere duplication and IT errors. That the parties agreed to add just 316 pages from the AR to the JA suggests that only those 316 AR pages are relevant. Judged by those 316 relevant AR pages, the AR has been expanded not just by 69% but rather by 385%.

Dated this 11th day of April, 2025 and respectfully submitted,

/s/ *J. Matthew Szymanski*
J. Matthew Szymanski, Esq.
D.D.C. Bar ID: VA157
GAMMON & GRANGE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
(703) 761-5030 (telephone)
(703) 761-5030 (facsimile)
Email: JMS@gg-law.com

Scott J. Ward, Esq.
D.D.C. Bar ID: VA158
GAMMON & GRANGE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
(703) 761-5012 (telephone)
(703) 761-5012 (facsimile)
Email: SJW@gg-law.com
*Counsel for Plaintiff-Petitioner Gordon College*

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I electronically transmitted the attached document

to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

Filing to the CM/ECF registrants for this matter.

/s/ J. Matthew Szymanski
J. MATTHEW SZYMANSKI

7