| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 611310 | Colleges, Universities and Professional Schools | $30.5 | |
| 611410 | Business and Secretarial Schools | $18.0 | |
| 611420 | Computer Training | $14.0 | |
| 611430 | Professional and Management Development Training | $13.0 | |
| 611511 | Cosmetology and Barber Schools | $11.5 | |
| 611512 | Flight Training | $30.0 | |
| 611513 | Apprenticeship Training | $10.0 | |
| 611519 | Other Technical and Trade Schools | $18.5 | |
| 611519 (Exception) | Job Corps Centers[16] | $41.5 | |
| 611610 | Fine Arts Schools | $8.0 | |
| 611620 | Sports and Recreation Instruction | $8.0 | |
| 611630 | Language Schools | $18.0 | |
| 611691 | Exam Preparation and Tutoring | $11.0 | |
| 611692 | Automobile Driving Schools | $9.0 | |
| 611699 | All Other Miscellaneous Schools and Instruction | $14.5 | |
| 611710 | Educational Support Services | $21.0 | |

## Sector 62 – Health Care and Social Assistance

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 621111 | Offices of Physicians (except Mental Health Specialists) | $14.0 | |
| 621112 | Offices of Physicians, Mental Health Specialists | $12.0 | |
| 621210 | Offices of Dentists | $8.0 | |
| 621310 | Offices of Chiropractors | $8.0 | |
| 621320 | Offices of Optometrists | $8.0 | |
| 621330 | Offices of Mental Health Practitioners (except Physicians) | $8.0 | |
| 621340 | Offices of Physical, Occupational and Speech Therapists and Audiologists | $11.0 | |
| 621391 | Offices of Podiatrists | $8.0 | |

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 621399 | Offices of All Other Miscellaneous Health Practitioners | $9.0 | |
| 621410 | Family Planning Centers | $16.5 | |
| 621420 | Outpatient Mental Health and Substance Abuse Centers | $16.5 | |
| 621491 | HMO Medical Centers | $39.0 | |
| 621492 | Kidney Dialysis Centers | $41.5 | |
| 621493 | Freestanding Ambulatory Surgical and Emergency Centers | $16.5 | |
| 621498 | All Other Outpatient Care Centers | $22.5 | |
| 621511 | Medical Laboratories | $36.5 | |
| 621512 | Diagnostic Imaging Centers | $16.5 | |
| 621610 | Home Health Care Services | $16.5 | |
| 621910 | Ambulance Services | $20.0 | |
| 621991 | Blood and Organ Banks | $35.0 | |
| 621999 | All Other Miscellaneous Ambulatory Health Care Services | $18.0 | |
| 622110 | General Medical and Surgical Hospitals | $41.5 | |
| 622210 | Psychiatric and Substance Abuse Hospitals | $41.5 | |
| 622310 | Specialty (except Psychiatric and Substance Abuse) Hospitals | $41.5 | |
| 623110 | Nursing Care Facilities (Skilled Nursing Facilities) | $30.0 | |
| 623210 | Residential Intellectual and Developmental Disability Facilities | $16.5 | |
| 623220 | Residential Mental Health and Substance Abuse Facilities | $16.5 | |
| 623311 | Continuing Care Retirement Communities | $30.0 | |
| 623312 | Assisted Living Facilities for the Elderly | $20.5 | |
| 623990 | Other Residential Care Facilities | $14.0 | |
| 624110 | Child and Youth Services | $13.5 | |
| 624120 | Services for the Elderly and Persons with Disabilities | $13.0 | |
| 624190 | Other Individual and Family Services | $14.0 | |
| 624210 | Community Food Services | $17.0 | |
| 624221 | Temporary Shelters | $12.0 | |
| 624229 | Other Community Housing Services | $16.5 | |

JA0095

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 624230 | Emergency and Other Relief Services | $36.5 | |
| 624310 | Vocational Rehabilitation Services | $13.0 | |
| 624410 | Child Day Care Services | $8.5 | |

## Sector 71 – Arts, Entertainment and Recreation

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 711110 | Theater Companies and Dinner Theaters | $22.0 | |
| 711120 | Dance Companies | $16.0 | |
| 711130 | Musical Groups and Artists | $13.0 | |
| 711190 | Other Performing Arts Companies | $30.0 | |
| 711211 | Sports Teams and Clubs | $41.5 | |
| 711212 | Race Tracks | $41.5 | |
| 711219 | Other Spectator Sports | $14.5 | |
| 711310 | Promoters of Performing Arts, Sports and Similar Events with Facilities | $35.0 | |
| 711320 | Promoters of Performing Arts, Sports and Similar Events without Facilities | $19.5 | |
| 711410 | Agents and Managers for Artists, Athletes, Entertainers and Other Public Figures | $15.5 | |
| 711510 | Independent Artists, Writers, and Performers | $8.0 | |
| 712110 | Museums | $30.0 | |
| 712120 | Historical Sites | $11.5 | |
| 712130 | Zoos and Botanical Gardens | $30.0 | |
| 712190 | Nature Parks and Other Similar Institutions | $17.0 | |
| 713110 | Amusement and Theme Parks | $41.5 | |
| 713120 | Amusement Arcades | $8.0 | |
| 713210 | Casinos (except Casino Hotels) | $30.0 | |
| 713290 | Other Gambling Industries | $35.0 | |
| 713910 | Golf Courses and Country Clubs | $16.5 | |
| 713920 | Skiing Facilities | $31.0 | |
| 713930 | Marinas | $9.5 | |
| 713940 | Fitness and Recreational Sports Centers | $15.5 | |

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 713950 | Bowling Centers | $11.0 | |
| 713990 | All Other Amusement and Recreation Industries | $8.0 | |

## Sector 72 – Accommodation and Food Services

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 721110 | Hotels (except Casino Hotels) and Motels | $35.0 | |
| 721120 | Casino Hotels | $35.0 | |
| 721191 | Bed-and-Breakfast Inns | $8.0 | |
| 721199 | All Other Traveler Accommodation | $8.0 | |
| 721211 | RV (Recreational Vehicle) Parks and Campgrounds | $9.0 | |
| 721214 | Recreational and Vacation Camps (except Campgrounds) | $8.0 | |
| 721310 | Rooming and Boarding Houses, Dormitories, and Workers' Camps | $12.5 | |
| 722310 | Food Service Contractors | $41.5 | |
| 722320 | Caterers | $8.0 | |
| 722330 | Mobile Food Services | $8.0 | |
| 722410 | Drinking Places (Alcoholic Beverages) | $8.0 | |
| 722511 | Full-Service Restaurants | $10.0 | |
| 722513 | Limited-Service Restaurants | $12.0 | |
| 722514 | Cafeterias, Grill Buffets, and Buffets | $30.0 | |
| 722515 | Snack and Nonalcoholic Beverage Bars | $20.0 | |

## Sector 81 – Other Services

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 811111 | General Automotive Repair | $8.0 | |
| 811112 | Automotive Exhaust System Repair | $8.0 | |

SBA_000090

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 811113 | Automotive Transmission Repair | $8.0 | |
| 811118 | Other Automotive Mechanical and Electrical Repair and Maintenance | $8.0 | |
| 811121 | Automotive Body, Paint and Interior Repair and Maintenance | $8.0 | |
| 811122 | Automotive Glass Replacement Shops | $15.5 | |
| 811191 | Automotive Oil Change and Lubrication Shops | $9.5 | |
| 811192 | Car Washes | $8.0 | |
| 811198 | All Other Automotive Repair and Maintenance | $9.0 | |
| 811211 | Consumer Electronics Repair and Maintenance | $22.5 | |
| 811212 | Computer and Office Machine Repair and Maintenance | $30.0 | |
| 811213 | Communication Equipment Repair and Maintenance | $19.5 | |
| 811219 | Other Electronic and Precision Equipment Repair and Maintenance | $22.0 | |
| 811310 | Commercial and Industrial Machinery and Equipment (except Automotive and Electronic) Repair and Maintenance | $11.0 | |
| 811411 | Home and Garden Equipment Repair and Maintenance | $8.0 | |
| 811412 | Appliance Repair and Maintenance | $16.5 | |
| 811420 | Reupholstery and Furniture Repair | $8.0 | |
| 811430 | Footwear and Leather Goods Repair | $8.0 | |
| 811490 | Other Personal and Household Goods Repair and Maintenance | $8.0 | |
| 812111 | Barber Shops | $8.5 | |
| 812112 | Beauty Salons | $8.5 | |
| 812113 | Nail Salons | $8.0 | |
| 812191 | Diet and Weight Reducing Centers | $24.0 | |
| 812199 | Other Personal Care Services | $8.0 | |
| 812210 | Funeral Homes and Funeral Services | $11.0 | |
| 812220 | Cemeteries and Crematories | $22.0 | |
| 812310 | Coin-Operated Laundries and Drycleaners | $11.5 | |
| 812320 | Drycleaning and Laundry Services (except Coin-Operated) | $7.0 | |

JA0098

| NAICS codes | NAICS U.S. industry titles | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 812331 | Linen Supply | $35.0 | |
| 812332 | Industrial Launderers | $41.5 | |
| 812910 | Pet Care (except Veterinary) Services | $8.0 | |
| 812921 | Photofinishing Laboratories (except One-Hour) | $26.0 | |
| 812922 | One-Hour Photofinishing | $16.5 | |
| 812930 | Parking Lots and Garages | $41.5 | |
| 812990 | All Other Personal Services | $13.0 | |
| 813110 | Religious Organizations | $11.5 | |
| 813211 | Grantmaking Foundations | $35.0 | |
| 813212 | Voluntary Health Organizations | $30.0 | |
| 813219 | Other Grantmaking and Giving Services | $41.5 | |
| 813311 | Human Rights Organizations | $30.0 | |
| 813312 | Environment, Conservation and Wildlife Organizations | $17.0 | |
| 813319 | Other Social Advocacy Organizations | $16.0 | |
| 813410 | Civic and Social Organizations | $8.5 | |
| 813910 | Business Associations | $13.5 | |
| 813920 | Professional Organizations | $20.5 | |
| 813930 | Labor Unions and Similar Labor Organizations | $14.5 | |
| 813940 | Political Organizations | $12.5 | |
| 813990 | Other Similar Organizations (except Business, Professional, Labor, and Political Organizations) | $12.0 | |

## Sector 92 – Public Administration[17]

(Small business size standards are not established for this Sector.  Establishments in the Public Administration Sector are Federal, state, and local government agencies which administer and oversee government programs and activities that are not performed by private establishments.)

## Footnotes

1. NAICS code 115310 – Support Activities for Forestry – Forest Fire Suppression and Fuels Management Services are two components of Support Activities for

Forestry.  Forest Fire Suppression includes establishments which provide services to fight forest fires.  These firms usually have fire-fighting crews and equipment.  Fuels Management Services firms provide services to clear land of hazardous materials that would fuel forest fires.  The treatments used by these firms may include prescribed fire, mechanical removal, establishing fuel breaks, thinning, pruning, and piling.

2. <u>NAICS code 237990</u> – Dredging: To be considered small for purposes of Government procurement, a firm or its similarly situated subcontractors must perform at least 40 percent of the volume dredged with their own equipment or equipment owned by another small dredging concern.

3. <u>NAICS code 311421</u> – For purposes of Government procurement for food canning and preserving, the standard of 500 employees excludes agricultural labor as defined in section 3306(k) of the Internal Revenue Code, 26 U.S.C. 3306(k).

4. <u>NAICS code 324110</u> – To qualify as small for purposes of Government procurement, the petroleum refiner, including its affiliates, must be a concern that has either no more than 1,500 employees or no more than 200,000 barrels per calendar day total Operable Atmospheric Crude Oil Distillation capacity.  Capacity includes all domestic and foreign affiliates, all owned or leased facilities, and all facilities under a processing agreement or an arrangement such as an exchange agreement or a throughput.  To qualify under the capacity size standard, the firm, together with its affiliates, must be primarily engaged in refining crude petroleum into refined petroleum products.  A firm's "primary industry" is determined in accordance with 13 CFR § 121.107.

5. <u>NAICS code 326211</u> –For Government procurement, a firm is small for bidding on a contract for pneumatic tires within Census NAICS Product Classification codes 3262111 and 3262113, provided that:

   a. the value of tires within Census NAICS Product Classification codes 3262113 that it manufactured in the United States during the previous calendar year is more than 50 percent of the value of its total worldwide manufacture,

   b. the value of pneumatic tires within Census Classification codes 30111 and 30112 comprising its total worldwide manufacture during the preceding calendar year was less than 5 percent of the value of all such tires manufactured in the United States during that period, and

   c. the value of the principal product that it manufactured, produced, or sold worldwide during the preceding calendar year is less than 10 percent of the

total value of such products manufactured or otherwise produced or sold in the United States during that period.

6. <u>NAICS Subsectors 333, 334, 335 and 336</u> – For rebuilding machinery or equipment on a factory basis, or equivalent, use the NAICS code for a newly manufactured product. Concerns performing major rebuilding or overhaul activities do not necessarily have to meet the criteria for being a "manufacturer" although the activities may be classified under a manufacturing NAICS code. Ordinary repair services or preservation are not considered rebuilding.

7. <u>NAICS code 336413</u> – Contracts for the rebuilding or overhaul of aircraft ground support equipment on a contract basis are classified under NAICS code 336413.

8. <u>NAICS codes 522110, 522120, 522130, 522190, and 522210</u> – A financial institution's assets are determined by averaging the assets reported on its four quarterly financial statements for the preceding year.  "Assets" means the assets defined according to the Federal Financial Institutions Examination Council 041 call report form for NAICS Codes 522110, 522120, 522190, and 522210 and the National Credit Union Administration 5300 call report form for NAICS code 522130.

9. <u>NAICS codes 531110, 531120, 531130, and 531190</u> – Leasing of building space to the Federal Government by Owners: For Government procurement, a size standard of $41.5 million in gross receipts applies to the owners of building space leased to the Federal Government. The standard does not apply to an agent.

10. <u>NAICS codes 488510 (excluding the exception), 531210, 541810, 561510, 561520 and 561920</u> – As measured by total revenues, but excluding funds received in trust for an unaffiliated third party, such as bookings or sales subject to commissions.  The commissions received are included as revenues.

11. <u>NAICS codes 541713, 541714 and 541715</u>:

    a. Research and Development" means laboratory or other physical research and development. It does not include economic, educational, engineering, operations, systems, or other nonphysical research; or computer programming, data processing, commercial and/or "medical laboratory testing.

SBA_000104

b. For research and development contracts requiring the delivery of a manufactured product, the appropriate size standard is that of the manufacturing industry.

c. For purposes of the Small Business Innovation Research (SBIR) and Small Business Transfer Technology (STTR) programs, the term "research" or "research and development" means any activity which is (A) a systematic, intensive study directed toward greater knowledge or understanding of the subject studied; (B) a systematic study directed specifically toward applying new knowledge to meet a recognized need; or (C) a systematic application of knowledge toward the production of useful materials, devices, and systems or methods, including design, development, and improvement of prototypes and new processes to meet specific requirements. See 15 U.S.C. § 638(e)(5) and section 3 of the SBIR and STTR policy directives available at www.sbir.gov. For size eligibility requirements for the SBIR and STTR programs, see § 121.702 of these regulations.

d. "Research and Development" for guided missiles and space vehicles includes evaluations and simulation, and other services requiring thorough knowledge of complete missiles and spacecraft.

12. NAICS code 561210 – Facilities Support Services:

a. If one or more activities of Facilities Support Services as defined in paragraph (b) (below in this footnote) can be identified with a specific industry and that industry accounts for 50% or more of the value of an entire procurement, then the proper classification of the procurement is that of the specific industry, not Facilities Support Services.

b. "Facilities Support Services" requires the performance of three or more separate activities in the areas of services or specialty trade contractors industries. If services are performed, these service activities must each be in a separate NAICS industry. If the procurement requires the use of specialty trade contractors (plumbing, painting, plastering, carpentry, etc.), all such specialty trade contractors activities are considered a single activity and classified as "Building and Property Specialty Trade Services." Since "Building and Property Specialty Trade Services" is only one activity, two additional activities of separate NAICS industries are required for a procurement to be classified as "Facilities Support Services."

13. NAICS code 238990 – Building and Property Specialty Trade Services: If a procurement requires the use of multiple specialty trade contractors (i.e., plumbing, painting, plastering, carpentry, etc.), and no specialty trade accounts for 50% or more of the

SBA_000103

value of the procurement, all such specialty trade contractors activities are considered a single activity and classified as Building and Property Specialty Trade Services.

14. NAICS code 562910 – Environmental Remediation Services:

    a.  For SBA assistance as a small business concern in the industry of Environmental Remediation Services, other than for Government procurement, a concern must be engaged primarily in furnishing a range of services for the remediation of a contaminated environment to an acceptable condition including, but not limited to, preliminary assessment, site inspection, testing, remedial investigation, feasibility studies, regulatory compliance, remedial design, containment, remedial action, removal of contaminated materials, nuclear remediation, storage of contaminated materials and security and site closeouts.  If one of such activities accounts for 50 percent or more of a concern's total revenues, employees, or other related factors, the concern's primary industry is that of the particular industry and not the Environmental Remediation Services Industry.

    b.  For purposes of classifying a Government procurement as Environmental Remediation Services, the general purpose of the procurement must be to restore or directly support the restoration of a contaminated environment. This includes activities such as preliminary assessment, site inspection, testing, remedial investigation, feasibility studies, regulatory compliance, remedial design, remediation services, containment, nuclear remediation, and removal of contaminated materials or security and site closeouts.  The general purpose of the procurement need not necessarily include remedial actions.  Also, the procurement must be composed of activities in three or more separate industries with separate NAICS codes or, in some instances (e.g., engineering), smaller sub-components of NAICS codes with separate and distinct size standards. These activities may include, but are not limited to, separate activities in industries such as: Heavy Construction; Special Trade Contractors; Engineering Services; Architectural Services; Management Consulting Services; Hazardous and Other Waste Collection;  Remediation Services; Testing Laboratories; and Research and Development  in the Physical, Engineering, and Life Sciences.  If any activity in the procurement can be identified with a separate NAICS code, or component of a code with a separate distinct size standard, and that industry accounts for 50 percent or more of the value of the entire procurement, then the proper size standard is the one for that particular industry, and not the Environmental Remediation Service size standard.

JA0103

15. <u>NAICS code 511210</u> – For  purposes of Government procurement, the purchase of software subject to potential waiver of the nonmanufacturer rule pursuant to §121.1203(d) should be classified under this NAICS code.

16. <u>NAICS code 611519</u> – Job Corps Centers.  For classifying a Federal procurement, the purpose of the solicitation must be for the management and operation of a U.S. Department of Labor Job Corps Center.  The activities involved include admissions activities, life skills training, educational activities, comprehensive career preparation activities, career development activities, career transition activities, as well as the management and support functions and services needed to operate and maintain the facility.  For SBA assistance as a small business concern, other than for Federal Government procurements, a concern must be primarily engaged in providing the services to operate and maintain Federal Job Corps Centers.

17. <u>NAICS Sector 92</u> – Small business size standards are not established for this sector. Establishments in the Public Administration sector are Federal, State, and local government agencies which administer and oversee government programs and activities that are not performed by private establishments.  Concerns performing operational services for the administration of a government program are classified under the NAICS private sector industry based on the activities performed.  Similarly, procurements for these types of services are classified under the NAICS private sector industry that best describes the activities to be performed.  For example, if a government agency issues a procurement for law enforcement services, the requirement would be classified using one of the NAICS industry codes under NAICS industry 56161, Investigation, Guard, and Armored Car Services.

18. <u>NAICS code 541519</u> – An Information Technology Value Added Reseller (ITVAR) provides a total solution to information technology acquisitions by providing multi-vendor hardware and software along with significant value added services.  Significant value added services consist of, but are not limited to, configuration consulting and design, systems integration, installation of multi-vendor computer equipment, customization of hardware or software, training, product technical support, maintenance, and end user support.  For purposes of Government procurement, an information technology procurement classified under this exception and 150-employee size standard must consist of at least 15% and not more than 50% of value added services, as measured by the total contract price.  In addition, the offeror must comply with the manufacturing performance requirements, or comply with the non-manufacturer rule by supplying the products of small business concerns, unless SBA has issued a class or contract specific waiver of the non-manufacturer rule.  If the

contract consists of less than 15% of value added services, then it must be classified under a NAICS manufacturing industry.  If the contract consists of more than 50% of value added services, then it must be classified under the NAICS industry that best describes the predominate service of the procurement.

19. [Reserved]

20. [Reserved]

| **Contacts** | |
| --- | --- |
| SBA's Office of Government Contracting has six area offices with an employee designated as a Size Specialist. Below are the office addresses and telephone numbers. | |
| **Area I**<br>Office of Government Contracting<br>**Boston Area Office**<br>U.S. Small Business Administration<br>10 Causeway Street<br>Room 265<br>Boston, MA  02222-1093<br>Tel: (617) 565-5622 | **Area IV**<br>Office of Government Contracting<br>**Chicago Area Office**<br>U.S. Small Business Administration<br>500 West Madison Street<br>Suite 1250<br>Chicago, IL  60661-2511<br>Tel: 312.353.7674 |
| **Area II**<br>Office of Government Contracting<br>**Philadelphia Area Office**<br>U.S. Small Business Administration<br>Parkview Tower<br>1150 First Avenue<br>Suite 1001<br>King of Prussia, PA  19406<br>Tel: (610) 382-3190 | **Area V**<br>Office Government Contracting<br>**Dallas Area Office**<br>U.S. Small Business Administration 4300 Amon Carter Boulevard,<br>Suite 116<br>Fort Worth, TX 76155<br>Tel: (817) 684-5303 |
| **Area III**<br>Office of Government Contracting<br>**Atlanta Area Office**<br>U.S. Small Business Administration<br>233 Peachtree Street, NE<br>Suite 1805<br>Atlanta, GA  30309<br>Tel: (404) 331-7587 | **Area VI**<br>Office of Government Contracting<br>**San Francisco Area Office**<br>U.S. Small Business Administration<br>455 Market Street<br>6th Floor<br>San Francisco, CA 94105<br>Tel: (415) 744-8429 |
| **IN WASHINGTON, DC, THERE ARE TWO OFFICES THAT YOU MAY CONTACT** | |
| **Office of Size Standards**<br>U.S. Small Business Administration<br>409 3rd Street, SW<br>Washington, DC 20416<br>Tel: (202) 205-6618 | **Office of Government Contracting**<br>U.S. Small Business Administration<br>409 3rd Street, SW<br>Washington, DC 20416<br>Tel: (202) 205-6460 |

SBA_000100

Exhibit 11

| | Ending 2018 | Ending 2019 | Ending 2020 | Total |
|---|---|---|---|---|
| ALL 7A TERM | 1765 | 1792 | 1829 | 5386 |
| | 1311 | 1325 | 1390 | 4026 |
| TY | 1187 | 1214 | 1224 | 3625 |
| ERSITY OF SAN ANTONIO | 1324 | 1517 | 1385 | 4226 |
| TY | 1322 | 1295 | | 2617 |
| | 875 | 823 | 420 | 2118 |
| | 996 | 1006 | 973 | 2975 |
| COLLEGE | 1548 | 1255 | 1361 | 4164 |
| ORATION | 1060 | 1107 | 1084 | 3251 |
| MARY'S COLLEGE NOTRE DAME | 1559 | 1517 | 1529 | 4605 |
| | 1094 | 1110 | 1151 | 3355 |
| | 1368 | 1405 | 1453 | 4226 |
| ADVANCEMENT OF SCIENCE AND ART | 1064 | 1059 | 1075 | 3198 |
| | 1361 | 1278 | | 2639 |
| | 1402 | 1354 | 1330 | 4086 |
| | 1819 | 1806 | 1698 | 5323 |
| Y OF MEDICINE AND SCIENCE | 573 | 570 | 550 | 1693 |
| RSITY | 1269 | 1306 | 1260 | 3835 |
| | 604 | 618 | 597 | 1819 |
| S | 1193 | 1175 | 1149 | 3517 |
| KY | 1460 | 1465 | 1432 | 4357 |
| TY | 1545 | 1668 | 1437 | 4650 |
| | 1214 | 1200 | 1143 | 3557 |
| | 1491 | 1503 | 1484 | 4478 |
| | 1571 | 1555 | 1522 | 4648 |
| STEUBENVILLE | 2140 | 2192 | 2178 | 6510 |
| OUTHERN CALIFORNIA | 1086 | 1123 | 1112 | 3321 |
| | 950 | 852 | 867 | 2669 |
| | 2022 | 1920 | 1811 | 5753 |
| YLAND | 1559 | 1517 | 1529 | 4605 |

JA0107

Exhibit 11

| | | J | K | N |
|---|---|---|---|---|
| | | LoanStatusDate | LoanStatus | InitialApprovalAmount |
| | | 5/13/2021 | Paid in Full | 5,820,700 |
| CALIFORNIA | | 6/15/2021 | Paid in Full | 5,035,859 |
| | | 6/16/2021 | Paid in Full | 5,158,000 |
| | | 7/8/2021 | Paid in Full | 6,007,597 |
| | | 7/15/2021 | Paid in Full | 5,154,500 |
| | | 7/16/2021 | Paid in Full | 6,661,697 |
| | | 7/16/2021 | Paid in Full | 5,837,800 |
| | | 7/17/2021 | Paid in Full | 5,302,315 |
| | | 7/20/2021 | Paid in Full | 7,039,103 |
| | | 7/21/2021 | Paid in Full | 5,624,000 |
| LLC | | 7/21/2021 | Paid in Full | 5,373,965 |
| ICINE AND SCIENCE | | 7/22/2021 | Paid in Full | 5,520,000 |
| | | 7/22/2021 | Paid in Full | 5,043,003 |
| VILLE | | 8/17/2021 | Paid in Full | 6,650,000 |
| | | 8/18/2021 | Paid in Full | 5,231,800 |
| EMENT OF SCIENCE AND ART | | 9/25/2021 | Paid in Full | 6,562,500 |
| M | | 9/29/2021 | Paid in Full | 6,500,042 |
| | | 9/29/2021 | Paid in Full | 5,945,442 |
| | | 10/15/2021 | Paid in Full | 5,475,039 |
| | | 10/16/2021 | Paid in Full | 6,559,200 |
| SAN ANTONIO | | 10/23/2021 | Paid in Full | 6,604,600 |
| OLLEGE NOTRE DAME | | 11/17/2021 | Paid in Full | 6,008,100 |
| | | 12/9/2021 | Paid in Full | 5,485,500 |
| | | 1/12/2022 | Paid in Full | 6,800,000 |
| | | 2/18/2022 | Paid in Full | 7,500,000 |
| | | 2/19/2022 | Paid in Full | 5,516,670 |
| | | | Exemption 4 | 7,046,037 |
| | | | Exemption 4 | 6,762,900 |
| | | | Exemption 4 | 6,743,500 |
| | | | Exemption 4 | 6,555,592 |
| | | | Exemption 4 | 5,965,000 |
| | | | Exemption 4 | 5,935,000 |
| | | | Exemption 4 | 5,892,442 |
| | | | Exemption 4 | 5,642,900 |

JA0108

Exhibit 11

| AR | AY | AZ | BA |
|---|---|---|---|
| ...nessType | NonProfit | ForgivenessAmount | ForgivenessDate |
| ...-Profit Organization | Y | 5,879,704 | 4/23/2021 |
| ...-Profit Organization | Y | 5,086,494 | 5/21/2021 |
| ...-Profit Organization | Y | 5,210,993 | 5/13/2021 |
| ...fessional Association | | 6,065,862 | 6/16/2021 |
| ...-Profit Organization | Y | 5,216,068 | 6/28/2021 |
| ...-Profit Organization | Y | 6,735,249 | 6/11/2021 |
| ...-Profit Organization | Y | 5,904,975 | 6/15/2021 |
| ...poration | | 5,990,306 | 6/24/2021 |
| ...-Profit Organization | Y | 7,098,544 | 6/11/2021 |
| ...poration | | 5,688,560 | 6/15/2021 |
| ...ited  Liability Company(LLC) | | 4,122,306 | 6/9/2021 |
| ...-Profit Organization | Y | 5,585,167 | 6/17/2021 |
| ...-Profit Organization | Y | 5,099,597 | 6/24/2021 |
| ...-Profit Organization | Y | 6,729,800 | 7/15/2021 |
| ...-Profit Organization | Y | 5,295,163 | 7/1/2021 |
| ...-Profit Organization | Y | 6,651,108 | 8/20/2021 |
| ...-Profit Organization | Y | 6,583,640 | 8/16/2021 |
| ...-Profit Organization | Y | 6,023,559 | 8/10/2021 |
| ...-Profit Organization | Y | 5,550,017 | 9/13/2021 |
| ...-Profit Organization | Y | 6,652,646 | 9/28/2021 |
| ...-Profit Organization | Y | 6,694,679 | 8/20/2021 |
| ...-Profit Organization | Y | 6,096,219 | 10/5/2021 |
| ...-Profit Organization | Y | 5,574,335 | 11/26/2021 |
| ...-Profit Organization | Y | 6,543,335 | 12/7/2021 |
| ...-Profit Organization | Y | 7,632,708 | 1/24/2022 |
| ...-Profit Organization | Y | 5,615,204 | 1/28/2022 |
| ...-Profit Organization | Y | | |
| ...-Profit Organization | Y | 6,288,489 | 7/7/2021 |
| ...-Profit Organization | Y | 6,554,037 | 2/2/2022 |
| ...-Profit Organization | Y | 6,197,697 | 8/27/2021 |
| ...-Profit Organization | Y | | |
| ...-Profit Organization | Y | 5,366,857 | 11/16/2021 |
| ...-Profit Organization | Y | 5,939,259 | 3/15/2022 |
| ...-Profit Organization | Y | | |

JA0109

Exhibit 11

| K | N | O | AG | AL | AR | AY | AZ | BA |
|---|---|---|---|---|---|---|---|---|
| Status | InitialApprovalAmount | CurrentApprovalAmount | JobsReported | PAYROLL_PROCEED | BusinessType | NonProfit | ForgivenessAmount | ForgivenessDate |
| n Full | 5,820,700 | 5,820,700 | 424 | 5,820,700 | Non-Profit Organization | Y | 5,879,704 | 4/23/2021 |
| n Full | 5,035,859 | 5,035,859 | 484 | 5,035,859 | Non-Profit Organization | Y | 5,086,494 | 5/21/2021 |
| n Full | 5,158,000 | 5,158,000 | 468 | 5,158,000 | Non-Profit Organization | Y | 5,210,993 | 5/13/2021 |
| n Full | 6,007,597 | 6,007,597 | 498 | 6,007,597 | Professional Association | | 6,065,862 | 6/16/2021 |
| n Full | 5,154,500 | 5,154,500 | 470 | 5,154,500 | Non-Profit Organization | Y | 5,216,068 | 6/28/2021 |
| n Full | 6,661,697 | 6,661,697 | 450 | 6,661,697 | Non-Profit Organization | Y | 6,735,249 | 6/11/2021 |
| n Full | 5,837,800 | 5,837,800 | 461 | 5,837,800 | Non-Profit Organization | Y | 5,904,975 | 6/15/2021 |
| n Full | 5,302,315 | 5,922,689 | 395 | 5,922,689 | Corporation | | 5,990,306 | 6/24/2021 |
| n Full | 7,039,103 | 7,039,103 | 471 | 7,039,103 | Non-Profit Organization | Y | 7,098,544 | 6/11/2021 |
| n Full | 5,624,000 | 5,624,000 | 415 | 4,218,000 | Corporation | | 5,688,560 | 6/15/2021 |
| n Full | 5,373,965 | 4,077,730 | 280 | 4,077,730 | Limited  Liability Company(LLC) | | 4,122,306 | 6/9/2021 |
| n Full | 5,520,000 | 5,520,000 | 450 | 5,000,000 | Non-Profit Organization | Y | 5,585,167 | 6/17/2021 |
| n Full | 5,043,003 | 5,043,003 | 400 | 5,043,003 | Non-Profit Organization | Y | 5,099,597 | 6/24/2021 |
| n Full | 6,650,000 | 6,650,000 | 498 | 6,650,000 | Non-Profit Organization | Y | 6,729,800 | 7/15/2021 |
| n Full | 5,231,800 | 5,231,800 | 315 | 5,231,800 | Non-Profit Organization | Y | 5,295,163 | 7/1/2021 |
| n Full | 6,562,500 | 6,562,500 | 427 | 5,250,000 | Non-Profit Organization | Y | 6,651,108 | 8/20/2021 |
| n Full | 6,500,042 | 6,500,042 | 465 | 6,500,042 | Non-Profit Organization | Y | 6,583,640 | 8/16/2021 |
| n Full | 5,945,442 | 5,945,442 | 370 | 5,945,442 | Non-Profit Organization | Y | 6,023,559 | 8/10/2021 |
| n Full | 5,475,039 | 5,475,039 | 488 | 5,475,039 | Non-Profit Organization | Y | 5,550,017 | 9/13/2021 |
| n Full | 6,559,200 | 6,559,200 | 431 | 6,559,200 | Non-Profit Organization | Y | 6,652,646 | 9/28/2021 |
| n Full | 6,604,600 | 6,604,600 | 455 | 5,000,000 | Non-Profit Organization | Y | 6,694,679 | 8/20/2021 |
| n Full | 6,008,100 | 6,008,100 | 417 | 6,008,100 | Non-Profit Organization | Y | 6,096,219 | 10/5/2021 |
| n Full | 5,485,500 | 5,485,500 | 496 | 5,485,500 | Non-Profit Organization | Y | 5,574,335 | 11/26/2021 |
| n Full | 6,800,000 | 6,800,000 | 485 | 6,800,000 | Non-Profit Organization | Y | 6,543,335 | 12/7/2021 |
| n Full | 7,500,000 | 7,500,000 | 429 | 7,500,000 | Non-Profit Organization | Y | 7,632,708 | 1/24/2022 |
| n Full | 5,516,670 | 5,516,670 | 462 | 5,516,670 | Non-Profit Organization | Y | 5,615,204 | 1/28/2022 |
| ption 4 | 7,046,037 | 7,046,037 | 496 | 7,046,037 | Non-Profit Organization | Y | | |
| ption 4 | 6,762,900 | 6,762,900 | 434 | 6,762,900 | Non-Profit Organization | Y | 6,288,489 | 7/7/2021 |
| ption 4 | 6,743,500 | 6,743,500 | 354 | 6,743,500 | Non-Profit Organization | Y | 6,554,037 | 2/2/2022 |
| ption 4 | 6,555,592 | 6,555,592 | 482 | 5,244,473 | Non-Profit Organization | Y | 6,197,697 | 8/27/2021 |
| ption 4 | 5,965,000 | 5,965,000 | 492 | 5,965,000 | Non-Profit Organization | Y | | |
| ption 4 | 5,935,000 | 5,935,000 | 419 | 5,935,000 | Non-Profit Organization | Y | 5,366,857 | 11/16/2021 |
| ption 4 | 5,892,442 | 5,892,442 | 483 | 5,892,439 | Non-Profit Organization | Y | 5,939,259 | 3/15/2022 |
| ption 4 | 5,642,900 | 5,635,300 | 308 | 5,635,300 | Non-Profit Organization | Y | | |

JA0110

**United States Small Business Administration
Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

       Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: June 28, 2022

Docket No. PPP-8289087101

<u>NOTICE AND ORDER</u>

     The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received an appeal petition in the above-captioned matter from Gordon College (Appellant) on May 13, 2022. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## I. **<u>Administrative Record</u>**

     SBA shall file the Administrative Record with OHA electronically, via the OHA Case Portal, no later than **<u>July 18, 2022</u>**. The Administrative Record must contain every document relevant to Appellant's PPP loan that the SBA possessed on the date of its final loan review decision. See 13 C.F.R. § 134.1207.

## II. **<u>Objection to Administrative Record</u>**

     Appellant shall file and serve, on or before **<u>July 28, 2022</u>**, any objections it has to the absence of any document in the Administrative Record. See 13 C.F.R. § 134.1207(e). Any objection not filed by this date will be deemed waived, regardless of any agreements between the parties. Appellant may object to the absence of a document, previously submitted to, or sent by, SBA, which Appellant believes was erroneously omitted from the Administrative Record. An objection to an incomplete Administrative Record must include either a copy or a detailed description of the missing document or other information Appellant believes is missing, and why Appellant believes the Administrative Record should include it.

## III. **<u>Appeal Response</u>**

     SBA may, but is not required to, file a response to this appeal. If SBA files a response to this appeal, it must be filed by no later than **<u>August 12, 2022</u>**, which is the close of record. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. In addition, after review of the appeal petition, OHA may

JA0111

request SBA to respond. Only SBA may respond. If filed, the response should set forth the relevant facts and legal arguments to the issues presented on appeal. *See* 13 C.F.R. § 134.1208.

## IV. <u>Filing and Service Instructions</u>

A party seeking to file and serve any pleading or other submission must do so by utilizing the OHA Case Portal at <u>https://appeals.sba.gov</u>. A filing received by OHA after 5 p.m. eastern time is considered filed on the next business day. See 13 C.F.R. § 134.204(b)(2); § 134.1202.

## V. <u>PPP Loan Deferment</u>

Appellant must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1204(d).

*Gary D. Smith*
_____

GARY D. SMITH
Administrative Judge

SBA_000112

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | |
|---|---|
| _____ )<br>PAYCHECK PROTECTION PROGRAM )<br>APPEAL OF: )<br> )<br>Gordon College )<br> )<br>        Appellant )<br> )<br>Appealed from )<br>SBA PPP Loan No. 8289087101 )<br>_____) | Docket No.  PPP-8289087101 |

**JOINT MOTION FOR EXTENSION OF TIME TO FILE**
**THE ADMINISTRATIVE RECORD AND TO FILE OBJECTIONS TO THE**
**ADMINISTRATIVE RECORD**

Pursuant to 13 C.F.R. § 134.1202(c)(3)(ii), the United States Small Business

Administration ("SBA" or "Agency"), by and through its undersigned counsel, hereby requests

an extension of time to file the Administrative Record in the above-captioned matter.

Pursuant to OHA's Notice and Order entered on June 28, 2022, the Administrative

Record is currently due no later than July 18, 2022.  The undersigned was assigned to the case on

July 8, 2022 and has scheduled leave for July 13 – July 15, 2022.  SBA requests an extension of

30 calendar days from July 18, 2022, to file the Administrative Record.  This extension is

necessary to provide SBA with additional time to compile the Administrative Record.

Pursuant to 13 C.F.R. § 134.211(b), counsel for SBA has consulted with counsel for the

Appellant to ascertain whether Appellant would object or consent to SBA's motion.  Appellant's

counsel noted that Appellant is open to an extension of time to file the Administrative Record but

that the request for 30 days presents a timing problem that would prejudice Appellant and its

counsel.  To address its concern, Appellant seeks a corresponding 30-day extension of time to

file objections to the Administrative Record should SBA's request be granted.  Appellant

JA0113

observes that a 30-day extension granted to SBA would mean that the Administrative Record would be required to be filed no later than on or about August 18, 2022.  The typical 10-day objection deadline would give Appellant and its counsel until on or about August 28th for filing written objections.  However, Appellant's primary responsible client representative has a long-scheduled vacation for that time period and would be unable to review the Administrative Record.  In addition, Appellant's undersigned counsel is scheduled to be out of the office the last two weeks of August, returning to the office on September 5, 2022, after Labor Day.  This means that Appellant would not be able to consent to any schedule that required Appellant's review and response to take place during those last two weeks of August and first few days of September.  An extended due date for filing objections to September 19, 2022 (the first business day 30 days after the filing of the Administrative Record) would ensure Appellant would have the necessary 10 days following the end of all scheduled vacation to review the Administrative Record once filed and to prepare any objections and supplementation.

In short, Appellant would consent to SBA's request for a 30-day extension of time to file the Administrative Record provided Appellant is granted a corresponding 30-day extension of time for Appellant to review of and filing of written objections to the Administrative Record. SBA consents to Appellant's request for a 30-day extension of time to file any objection to the Administrative Record.  SBA would request that the deadline for any response by SBA to the appeal that follows the deadline for filing objections to the record be extended as well by the usual calculation of days.

Respectfully submitted,

/s/ Scott J. Ward                                      /s/ Mark S. O'Brien

_____                      _____
Scott J. Ward, Esq.                                 Mark S. O'Brien
Attorney for Appellant                            Attorney for SBA

2

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) |
| Carr Companies, LLC | ) Docket No.  PPP-4117167205 |
| Appellant | ) ) |
| Appealed from SBA PPP Loan No. 4117167205 | ) ) ) |

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 13, 2022, I filed a copy of the above Joint Motion for Extension of Time to File the Administrative Record and to File Objections to the Administrative Record in the OHA Case Portal.

Respectfully submitted,

/s/ Mark S. O'Brien

Mark S. O'Brien
Agency Counsel
U.S. Small Business Administration
68 Sewall Street
Augusta, ME 04330
Phone          (207) 622-8558
Facsimile     (202) 481-4397

JA0115    SBA_000115

# UNITED STATES SMALL BUSINESS ADMINISTRATION
# OFFICE OF HEARINGS AND APPEALS

|  |  |  |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | Issued: July 13, 2022 |
| | ) | |
| Gordon College | ) | Docket No. PPP- 8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |
| | ) | |

## <u>ORDER GRANTING EXTENSION OF TIME</u>

On July 13, 2022, the SBA filed a Joint Motion for Extension of Time to File the Administrative Record and to File Objections to the Administrative Record. The motion indicated additional time was required for sufficient time to review the file and to compile the Administrative Record as well as provide their Response to Appellant's Objections to the Administrative Record.  Counsel for Appellant likewise requests corresponding extensions of time for filing their Objections to the Administrative Record.

Accordingly, upon the motion filed, and good cause shown, an extension of time shall be granted. **As extended, the dates set forth in the Notice and Order are amended as follows:**

| | |
|---|---|
| **Administrative Record Due** | **August 17, 2022** |
| **Objections to Administrative Record Due** | **August 29, 2022** |
| **SBA Response to the Appeal** | **September 13, 2022** |

**SO ORDERED.**

*Gary D. Smith*
Gary D. Smith
Administrative Judge

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) | |
| | ) | |
| Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from SBA PPP Loan No. 8289087101 | ) ) | |

**JOINT MOTION FOR CLARIFICATION OF ORDER**
**GRANTING EXTENSION OF TIME (ISSUED JULY 13, 2022)**

Pursuant to 13 C.F.R. § 134.1202(c)(3)(ii), Appellant Gordon College ("College" or "Appellant"), by and through its undersigned counsel, jointly and with the consent of United States Small Business Administration ("SBA" or "Agency"), by and through its undersigned counsel, hereby request that the Administrative Law Judge clarify the *Order Granting Extension of Time* issued July 13, 2022, (the "Order") in the above-captioned matter.

The Order states that it grants the SBA's and Appellant's *Joint Motion for Extension of Time to File the Administrative Record and to File Objections to the Administrative Record* (the "Joint Motion"). However, the dates listed in the Order for **Appellant's Objections to Administrative Record Due**, now set for **August 29, 2022**, and for **SBA Response to the Appeal**, now set for **September 13, 2022**, directly conflict with the dates requested in the Joint Motion. Most significantly, setting August 29, 2022 as the date for **Appellant's Objections to Administrative Record Due** actually causes the prejudice to Appellant that the Joint Motion sought to avoid and contradicts the express condition upon which Appellant's consent to SBA's requested 30-day extension was given. This appears to be a simple scrivener's error as the dates in the Order appear inconsistent with the findings in the first paragraph of the Order.

JA0117

Appellant and SBA therefore jointly respectfully request that the Administrative Law Judge clarify the *July 13 Order Granting Extension of Time* to correct and amend the extended dates set forth in the original Notice and Order to be as follows, for the reasons explained below:

| | |
|---|---|
| Administrative Record Due | August 17, 2022 |
| Objections to Administrative Record Due | **September 19**, 2022 |
| SBA Response to the Appeal | **October 5**, 2022 |

First, Appellant's consent to SBA's requested 30-day extension to file the Administrative Record was expressly conditional upon the granting of a corresponding 30-day extension of time – to September 19, 2022 – for Appellant. *See* Joint Motion at p.2.

Second, in the Joint Motion, SBA and Appellant jointly requested corresponding 30-day extension for each party such that the due date for **Appellant's Objections to Administrative Record** would be specifically set for **September 19, 2022**. Currently, the July 13 Order grants SBA a thirty (30) day extension to file the Administrative Record but grants Appellant at most a one (1) day extension, from August 28 to August 29, to file its Objections.

Third, as the Joint Motion explained, to set the due date for Appellant's Objections to Administrative Record on August 29, 2022, as the Order currently provides, would cause the most prejudice to Appellant, and precisely the prejudice that the Joint Motion sought to avoid. Among other things, it requires Appellant to review the full Administrative Record and to prepare and to file its objections and any supplementation during precisely the period of time when Appellant's primary representative and Appellant's counsel of record are both unavailable due to previously scheduled commitments. *See* Joint Motion at p.2.

Pursuant to 13 C.F.R. § 134.211(b), counsel for Appellant has consulted with counsel for SBA and counsel for SBA consents to and joins in this *Joint Motion for Clarification of Order Granting Extension of Time (Issued July 13, 2022)*.

2

For all of these reasons, Appellant and SBA jointly respectfully request that the

Administrative Law Judge clarify the *July 13 Order Granting Extension of Time* to correct and

amend the extended dates set forth in the original Notice and Order to be as follows:

| | |
|---|---|
| Administrative Record Due | August 17, 2022 |
| Objections to Administrative Record Due | **September 19**, 2022 |
| SBA Response to the Appeal | **October 5**, 2022 |

Respectfully submitted,


/s/ Scott J. Ward                              /s/ Mark S. O'Brien


_____            _____
Scott J. Ward, Esq.                              Mark S. O'Brien
Attorney for Appellant                         Attorney for SBA
    Gordon College

3

JA0119

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
|     Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
|        Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |

## CERTIFICATE OF SERVICE

I certify that (after 5:00 pm) on July 14, 2022, I filed a copy of the above *Joint Motion for Clarification of Order Granting Extension of Time (Issued July 13, 2022)* in the OHA Case Portal.

Respectfully submitted,

/s/ Scott J. Ward

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
Phone:      (703) 761-5012
Facsimile:   (703) 761-5023

4

JA0120

# UNITED STATES SMALL BUSINESS ADMINISTRATION
# OFFICE OF HEARINGS AND APPEALS

|  |  |  |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | Issued: July 18, 2022 |
| | ) | |
| Gordon College | ) | Docket No. PPP- 8289087101 |
| | ) | |
|     Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |
| | ) | |

## AMENDED ORDER GRANTING EXTENSION OF TIME

On July 13, 2022, an Order Granting Extension of Time was issued for the above-captioned case in response to the parties' joint motion. The Order extended the time for the filing the Administrative Record but inadvertently failed to address the Appellant's specific request for a corresponding extension of time to file its objections to the Administrative Record.

Accordingly, the dates set forth in that Order are amended as follows:

**Administrative Record Due**                    **August 19, 2022**
**Objections to Administrative Record Due**      **September 19, 2022**
**SBA Response to the Appeal**                   **October 3, 2022**

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

      Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: September 19, 2022

Docket No. PPP-8289087101

<u>NOTICE AND ORDER</u>

    The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received an appeal petition in the above-captioned matter from Gordon College (Appellant) on May 13, 2022. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## I. **Administrative Record**

    SBA shall file the Administrative Record with OHA electronically, via the OHA Case Portal, no later than **October 11, 2022**. The Administrative Record must contain every document relevant to Appellant's PPP loan that the SBA possessed on the date of its final loan review decision. See 13 C.F.R. § 134.1207.

## II. **Objection to Administrative Record**

    Appellant shall file and serve, on or before **October 19, 2022**, any objections it has to the absence of any document in the Administrative Record. See 13 C.F.R. § 134.1207(e). Any objection not filed by this date will be deemed waived, regardless of any agreements between the parties. Appellant may object to the absence of a document, previously submitted to, or sent by, SBA, which Appellant believes was erroneously omitted from the Administrative Record. An objection to an incomplete Administrative Record must include either a copy or a detailed description of the missing document or other information Appellant believes is missing, and why Appellant believes the Administrative Record should include it.

## III. **Appeal Response**

    SBA may, but is not required to, file a response to this appeal. If SBA files a response to this appeal, it must be filed by no later than **November 3, 2022**, which is the close of record. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. In addition, after review of the appeal petition, OHA may

JA0122

request SBA to respond. Only SBA may respond. If filed, the response should set forth the relevant facts and legal arguments to the issues presented on appeal. *See* 13 C.F.R. § 134.1208.

## IV. **Filing and Service Instructions**

A party seeking to file and serve any pleading or other submission must do so by utilizing the OHA Case Portal at https://appeals.sba.gov. A filing received by OHA after 5 p.m. eastern time is considered filed on the next business day. See 13 C.F.R. § 134.204(b)(2); § 134.1202.

## V. **PPP Loan Deferment**

Appellant must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1204(d).

*Gary D. Smith*

GARY D. SMITH
Administrative Judge

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) ) | |
| Gordon College | ) ) | Docket No.  PPP-8289087101 |
| Appellant | ) ) | |
| Appealed from SBA PPP Loan No. 8289087101 | ) ) ) | |

**APPELLANT GORDON COLLEGE'S OBJECTIONS**
**TO SBA ADMINISTRATIVE RECORD (AS FILED AUGUST 19, 2022)**

Pursuant to 13 C.F.R. § 134.1207(e) and to the Administrative Law Judge's ("ALJ") June 28, 2022 *Notice and Order*, and July 18, 2022 *Amended Order Granting Extension of Time* (the "*July 18 Order*"), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its written Objections to the SBA Administrative Record as filed by the Small Business Administration on August 19, 2022 ("Record" or "AR").

As Appellant was about to timely file these Objections on September 19 via the OHA Case Portal, in accordance with the *July 18 Order*, counsel received email notification of a *Notice and Order* issued by the ALJ on September 19, 2022 (today) (the "*September 19 Order*"). Out of the abundance of caution, and desiring to avoid any possible argument that Appellant has waived any Objections to the Administrative Record as filed by SBA on August 19, Appellant has proceeded to timely file these Objections via the OHA Case Portal on September 19, 2022. Appellant will supplement these Objections as appropriate in accordance with the *September 19 Order*, and Appellant will timely file by October 19, 2022 any Objections it may have to any supplemental or new Administrative Record that SBA files pursuant to the *September 19 Order*.

*Appellant Gordon College's Objections to SBA Administrative Record*                                                    1

As detailed further below, Appellant objects to the Administrative Record as filed by SBA on August 19 as incomplete for at least the following reasons:

(a) Documents were submitted by Appellant to its Lender Citizens Bank in the process of determining eligibility for the original Paycheck Protection Program loan (the "Appellant PPP Loan") and Appellant's eligibility for forgiveness of the Appellate PPP loan that are not in the Administrative Record.

(b) Documents are referred to in the SBA Administrative Record but those documents do not actually appear in the Administrative Record as uploaded.

(c) Documents that are directly relevant to or even controlling of the relevant determinations are referred to in the Administrative Record but do not appear in the AR.

(d) Errors or formatting in the Administrative Record make it virtually impossible to read or identify some of the documents included in the Record.

Appellant respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record as explained below.

## 1.    DOCUMENTS MISSING FROM THE ADMINISTRATIVE RECORD.

There are a number of documents that were submitted by Appellant Gordon College to its Lender Citizens Bank to be provided to the SBA (presumably by being uploaded by Citizens Bank through the SBA portal) but that are not included in the Administrative Record.

### 1.1.   Gordon College Paycheck Protection Program Loan Application Form and Supporting Documentation.

Most important, the SBA Administrative Record includes almost none of the documents connected with Gordon's initial PPP Loan Application. Gordon's signed PPP Borrower Application form (on version 1 of SBA Form 2843 (04/20)) and supporting documentation are essential given the SBA reviewers' determination that Gordon was not eligible for a PPP loan *at the time of initial application in April 2020*. Indeed, the SBA reviewers appear to have determined the central issue of whether the College was eligible for a PPP loan at the time of application in early April 2020 using data ambiguously elicited by SBA in 2021. *See* AR pp.1407-15 (PDF pp.1412-20). The specific documents that are missing from the AR are detailed below.

1.1.1. <u>Gordon College PPP Borrower Application Form</u> (four pages) including Instructions that was signed by Stephen Lacorazza for Gordon College on April 6, 2020 and provided in PDF form via email to Janet Sweeney of Citizens Bank on April 13, 2020 ("Loan Application"). This Borrower Application form, with the page 2 certification signed on behalf of Gordon College, was included as Exhibit 3 to Appellant's *Appeal Petition* in this proceeding but does not appear anywhere in the SBA Administrative Record.

1.1.2. <u>Gordon College PPP Loan Application Cover Letter</u> provided via email to Janet Sweeney of Citizens Bank on April 9, 2020.

1.1.3. <u>Gordon College PPP Loan Application Supporting Documentation</u>: *Spreadsheets* submitted by Gordon along with Gordons PPP Loan Application Form, including the following:

    a. Gordon College spreadsheet titled "PPP Workbook" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020. Please note that there are three tabs of relevant data in this spreadsheet.

    b. Gordon College spreadsheet titled "2019 Wages Paid Facstaff" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020.

    c. Gordon College spreadsheet titled "2019 Wages Paid Students" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020.

**<u>Summary</u>**: Gordon's PPP Borrower Application form was signed on April 6, 2020, digitally submitted to Citizens Bank on April 13, 2020, and fully funded on April 24, 2020. The absence from the SBA Administrative Record of *any* documentation whatsoever related to Appellant's original Loan Application and supporting documents is concerning. Gordon understood from Citizens Bank that the Borrower Application and supporting materials would in fact be provided to the SBA as part of the loan approval and funding process.

Moreover, the Record as uploaded demonstrates that the SBA specifically requested by letter to Citizens Bank dated September 7, 2021, that Citizens Bank provide to SBA:

"The Borrower Application Form (SBA Form 2483 or Lender's equivalent form) and all supporting documentation submitted by the borrower with the loan

application, including 2019 or 2020 payroll documents that demonstrate qualifying average monthly payroll costs." (AR p.1008; PDF p.1013)

SBA Form 2843 is the *initial* Borrower Application form, *not* the later Forgiveness Application form.[1] (Gordon submitted version 1 of Form 2843.) It defies logic that there would not be *any* communications from the Lender Citizens Bank to the SBA nor from SBA to the Lender related to the 2020 application, eligibility, approval, or funding of Gordon's PPP loan.

These concerns are magnified further by SBA's later determination that Gordon would not receive *any* loan forgiveness for the specific reason that Gordon was not eligible for a PPP loan *at the time that it first applied*. SBA Determination Letter at AR pp.23-24 (PDF pp.28-29). All of the documents included in the Record under the Table of Contents heading "Loan Application Supporting Docs (Payroll)" were provided in connection with Gordon's **2021** Borrower Forgiveness Application or in response to later 2021 or 2022 requests from SBA. There is nothing in the Record that reflects SBA's receipt of the original **April 2020** Gordon College Borrower Application and supporting materials,[2] even though those materials provide the factual information directly relevant to, if not controlling of, the SBA reviewer's determinations.

Therefore, Appellant Gordon College respectfully requests that the ALJ order the SBA to supplement the Record with all documents related to the submission, processing, approval, funding, and disbursement of funds for the original April 2020 Loan Application, such as application forms, supporting materials, correspondence, reviewer's notes, memoranda, workbooks, worksheets, communications with Citizens Bank, materials created or provided by Citizens Bank, and similar materials related (but not limited) to any of the following areas:

---

[1] *See* https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form

[2] The only documents from the original PPP Borrower Application process that are included in the Administrative Record are the Promissory Note and the Automatic Payment Authorization, both dated April 23, 2020 (AR pp.987-1007; PDF pp.992-1012) that were required to be included as part of Gordon's PPP Forgiveness Application in 2021.

JA0127

a. Citizen Bank's review of the PPP Loan Application and recommendation for approval of the original PPP Loan of Gordon College.

b. The SBA's approval for the disbursement of PPP Loan proceeds to Gordon College.

c. The SBA review and approval of Gordon's PPP Loan Application.

d. Any calculation of employees, whether by SBA or Citizens Bank, for purposes of eligibility for the PPP Loan.

e. Any determination of the eligibility of Gordon College for the PPP Loan under any SBA eligibility or size standard.

f. Any internal SBA communications or communications to Citizens Bank related to funding the Gordon College PPP loan or to disbursement of PPP Loan proceeds to Gordon College.

g. Any documents that indicate the SBA reviewers of the April 2020 Loan Application considered the relevant SBA and/or Department of Treasury FAQs, Interim Final Rules, or other contemporaneous instructions or guidance issued by SBA or the Department of Treasury that are specific to the unique PPP Loan program and were in effect at the time of Gordon's application.

## 1.2.    Gordon College Employer Quarterly Returns for 2019Q3.

Also missing from the SBA Administrative Record are three documents providing Employer Quarterly Return information for Third Quarter ("Q3") 2019 that were provided electronically by Gordon College to Citizens Bank on March 24, 2022, specifically:

a. Gordon College 2019Q3 West Chester PA Employer Quarterly Return Local Earned Income Tax Withholding (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

b. Gordon College 2019Q3 West Chester PA Employer Quarterly Return Local Earned Income Tax Withholding II (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

c. Gordon College 2019Q3 West Chester PA Employer Quarterly Return of Tax Withheld (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

## 1.3.    Gordon College Correspondence with Lender Citizens Bank.

Appellant Gordon College did not have any direct contact with the SBA. Rather, all communications were made through Gordon's lender, Citizens Bank. In general, Gordon College would receive a communication, usually through email, from someone at Citizens Bank forwarding a question or a letter that Citizens Bank had received from the SBA. Gordon would

then respond to the SBA question or request, usually (but not always) via an email to Citizens Bank transmitting a letter or substantive information that Citizens indicated would be communicated to the SBA by uploading it through the "SBA Portal." However, it appears that only some of these communications from Gordon to Citizens are included in the AR.

Only a single email from Gordon College to Citizens Bank is included in the Record. That is the November 5, 2021 email from Stephen Lacorazza of Gordon to Monica Thomas of Citizens responding to SBA's ambiguous request for "a list of locations to include employee count per location" in October and November 2021. *See* AR pp.75-80 (PDF pp.80-85) (Nov. 5, 2021 email); AR pp.1407-15 (PDF pp.1412-20) (SBA correspondence requesting information).

There are **no** other emails included in the Administrative Record uploaded by SBA, even though Mr. Lacorazza of Gordon sent multiple emails to Monica Thomas of Citizens and to Janet Sweeney of Citizens Bank related to Gordon's PPP loan application and forgiveness. For example, as noted in Section 1.2 above, there were at least three documents provided by Stephen Lacorazza of Gordon to Janet Sweeney of Citizens Bank that do not appear anywhere in the AR.

Appellant therefore respectfully requests that the ALJ order SBA to review its electronic systems and files and confirm that any and all materials placed into the SBA portal by Citizens Bank have been included in the Administrative Record.

## 2.    DOCUMENTS REFERENCED BY SBA IN, BUT NOT INCLUDED IN, THE ADMINISTRATIVE RECORD.

There are also materials that are referred to by the SBA in the Administrative Record but that do not appear to have been included in the Administrative Record as uploaded by the SBA. These items include (without limitation) the following categories.

**2.1.    "Guidance" Used by SBA to Determine Loan Eligibility and/or Forgiveness.**

The Administrative Record indicates in several places that SBA reviewers relied upon or consulted specific agency or other legal "guidance" – presumably including internal SBA documents as well as Interim Final Rules, SBA FAQs, regulations, and the like – in their review of Gordon's initial loan eligibility and in their ultimate determination that Gordon was not eligible for a PPP loan nor for PPP loan forgiveness. Just as one example (and without limitation):

> AR. p.20 (PDF p.25) – In an entry dated January 10, 2022, the Reviewer's Notes state that "**SBA size standard tests** were performed on the file and it is still deemed that the hold code cannot be cleared." "Recommend for denial due to **not meeting the size standard** which makes them ineligible for a PPP loan." These Reviewer Notes indicate that the reviewer relied "**guidance which I have been instructed to follow**". [emphasis added] But Appellant has been unable to identify any such "tests" or "guidance" in the Administrative Record.

Other examples of SBA reviewers referencing such "guidance" include (without limitation) those appearing at the following locations in the Administrative Record:

> AR p.3 (PDF p.8)
> AR p.1016 (PDF p.1021)
> AR p.1030 (PDF p.1035)
> AR p.1044 (PDF p.1049)
> AR p.1060 (PDF p.1065)
> AR p.1065 (PDF p.1070)
> AR p.1092 (PDF p.1097)
> AR p.1104 (PDF p.1109)

Despite these repeated references to "guidance," no such guidance appears to be included in the Administrative Record. Appellant Gordon College therefore respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with any documents or materials that constitute any "guidance" referenced, consulted, disregarded, or relied upon by SBA reviewers in evaluating loan eligibility at any time, whether at time of original application or at time of forgiveness review, and any communications or documents related to the same.

JA0130

**2.2.    SBA Spreadsheets, Calculations, Formulas, and the Like Used to Determine Eligibility and/or Forgiveness.**

The SBA Record indicates in several places that SBA reviewers used spreadsheets, formulas, calculations, and similar materials in their review of Gordon's initial eligibility and in their ultimate decision to deny Gordon PPP loan forgiveness. Examples include (without limitation) the following:

> AR p.19 (PDF p.24) – In an entry dated April 8, 2022, SBA reviewer Fredericka Suzanne Phillips notes: "…switched to new assignment. I have **detailed spreadsheet** -basically finished- to pass on to next HAR Reviewer". But Appellant has been unable to identify any such "detailed spreadsheet in the Administrative Record.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with any documents or materials that set forth such formulas, spreadsheets, calculations, tests, size standards, and the like made or used by SBA in evaluating loan eligibility at any time, whether at time of original application or at time of forgiveness review, and any communications or documents related to the same.

**2.3.    Citizens Bank Missing Document.**

By letter dated September 7, 2021 (AR p.1008-09; PDF p.1013-14), the SBA directed Citizens Bank to provide copies of five different documents or sets of documents. It appears that the fifth document, specifically "Any memorandum or other analysis that the lender prepared in making its decision on the forgiveness application," is not included in the Record as uploaded.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with these documents.

**2.4.    SBA Consideration of Gordon College's December 15, 2021 Letter.**

There is no indication in the Administrative Record that SBA considered Gordon College's December 15, 2021 letter brief to the SBA nor that SBA considered or addressed the letter's

discussion of SBA Interim Final Rule Docket No. SBA-2020-0015 (the "IFR").[3] The Record indicates that the December 15, 2021 letter was received by the SBA. But the only SBA reference to this letter appears to be including it – with nothing more than the title "customer response to eligibility" – in the SBA listing of "Supporting Forgiveness Documentation" on AR p.16 (PDF p.21). The December 15, 2021 letter itself is included in the AR at AR pp.1277-78 (PDF pp.1282-83) and again at AR pp.1279-80 (PDF pp.1284-85).

But there is no discussion of or even reference to this letter by SBA anywhere else in the Record. This is very unusual. For example, Gordon College's earlier December 3, 2021 letter, which was uploaded by the Lender to the SBA portal on December 8, is identified and referenced in the SBA reviewer's comments at AR p.20 (PDF p.25). But there is no reference to the December 15, 2021 letter in the same reviewer comments. Indeed, the next entry in the SBA reviewer comments is more than one month later, on January 10, 2022, and does not mention this letter. The absence of any discussion of this letter directly addressing issues that later were foundational to the SBA's forgiveness determination is baffling.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record with any and all documentation of SBA's consideration of the December 15, 2021 Letter and any guidance referenced or related to that letter, or else certify that SBA did not consider the letter and such guidance in making its determination that Gordon is not eligible for a PPP loan and therefore for loan forgiveness.

---

[3] 13 CFR Part 120, RIN 3245-AH34, **Federal Register** Vol. 85 No. 73 at pp. 20811 to 20817, issued April 11, 2020 and effective immediately April 15, 2020. The December 15, 2021 letter notes that this IFR is available at https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=3245-AH34 and at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf.

*Appellant Gordon College's Objections to SBA Administrative Record*

JA0132

**3. Documents That Are Not Fully Readable Due to Formatting of the Record.**

Administrative Record pages 1013 through 1276 (PDF pages 1018 through 1281), inclusive, are not fully readable due to the format in which SBA has incorporated them in the Record. These pages are identified in the Table of Contents simply as “Worksheet”, “Worksheet 2”, and “Worksheet 3” and appear to be SBA reviewer worksheets, but are lacking any further identification. Given this format and lack of identifying information, it is simply not possible for the Appellant, or likely the ALJ, to understand these documents.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record by uploading these documents in a fully readable format and with appropriate filenames, headings, titles, and other information needed to identify what these documents are and how they were used, including (without limitation) specifically the following:

(a) Upload fully readable copies of the following three separate PPP Forgiveness Reviewer Workbooks found at:

AR pp.1118-84

AR pp.1030-75

AR pp.1206-76

(b) Clarify whether these workbooks are just copies of a form manual or workbook, or have any data in them or information in them that may be specific to Appellant.

(c) Confirm whether these are three separate workbooks or three copies of the same workbook.

(d) Clarify whether these three “Reviewer Workbooks” are for internal review at SBA, or for a bank’s review process, or specifically applicable to a review of the Gordon College applications (and which ones – original and/or forgiveness). There are no titles for these worksheets currently visible to clarify these distinctions.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant Gordon College therefore respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record in all the ways set forth above.


Respectfully submitted,


/s/ Scott J. Ward

_____ ___
Scott J. Ward, Esq.
    Gammon & Grange, P.C.
Attorney for Appellant
    Gordon College

JA0134

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
| Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that on September 19, 2022, I filed a copy of the above *Appellant Gordon*

*College's Objections to SBA Administrative Record* in the OHA Case Portal.

Respectfully submitted,

/s/ Scott J. Ward

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:        (703) 761-5012
Facsimile:    (703) 761-5023

*Appellant Gordon College's Objections to SBA Administrative Record*                                12

# UNITED STATES SMALL BUSINESS ADMINISTRATION
# OFFICE OF HEARINGS AND APPEALS

|  |  |  |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | Issued: September 20, 2022 |
| | ) | |
| Gordon College | ) | Docket No. PPP- 8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |

## <u>ORDER VACATING  INADVERTENT NOTICE AND ORDER</u>

On September 19, 2022, a Notice and Order was issued for the above-captioned appeal. That Notice and Order was issued inadvertently based upon erroneous information Appellant had filed a new appeal in the SBA Appeal Portal.

Accordingly, the Notice and Order issued on September 19, 2022 is **HEREBY VACATED.**

**SO ORDERED**.

*Gary D. Smith*
_____
Gary D. Smith
Administrative Judge

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: November 21, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
Mark O'Brien, Esq., for SBA

## DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

### II. Background

#### A.  Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law.  P.L.116-136 (March 27, 2020). Appellant applied for a PPP loan on April 13, 2020. (Portal Doc, *Exh 03 - 2020-04-06 - GC PPP Appl*). PPP loan number 8289087101 ("the Loan") was disbursed to Appellant by the Lender on April 24, 2020 in the amount of $7,046,037. (AR at pp. 30-33).

On July 22, 2021, Appellant executed a PPP Loan Forgiveness Application Form requesting forgiveness of the full amount of the Loan. *Id.* On September 7, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested information regarding the Appellant's Loan. (AR at pp. 1405-06). On October 13, 2021, the SBA sent a letter to the Lender stating:

1

SBA_001704

> We are currently reviewing the Hold Code(s) associated with this PPP Loan. This request is specific to this issue and is not made in the normal course. Please provide the following information so that SBA may decision the Hold Code(s) associated with this loan and it can subsequently be assigned for a forgiveness review. We must receive this information within 10 business days.
>
> The following hold code is attached to your forgiveness application:
>
> 1. Employee Count Threshold - Employee Count indicative of concern – Potential eligibility issue
>
> Please provide the following documentation to clear the above hold:
>
> • Copies of most recent 3 years Federal Tax Returns (2018-2020)

(AR at pp. 1407-08).

On October 27, 2021, SBA sent another letter to Lender, this time requesting a "list of locations to include employee count per location." (AR at pp. 1409-10). SBA reiterated this request on November 3, 2021. (AR at pp. 1411-12). On November 15, 2021, SBA contacted the Lender again:

> We are doing a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):
>
> • Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location.
> • Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
> • The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
>   1. The maximum tangible net worth may not exceed $15 million; AND

JA0138

2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.

The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million.

(AR at pp. 1413-15).

In a December 8, 2021 letter to Lender, SBA stated:

In response to the Borrower's letter dated 12/3/2021. As of the date of the Borrower's PPP Loan Application, April 6, 2020, we had three governing documents, the Standard Operating Procedure (SOP 50 10 5(k)), the CARES Act, and the Borrower's Application Form (SBA Form 2483). SOP 50 10 5(k) contains the most information of the three regarding Eligibility Requirements (Subpart B, Chapter 2, Section II, paragraphs D1 and D4, Page 92).

We are continuing to do a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- Hold Code 21 – Employee Count Threshold; Based on Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location. This reason is under consideration for removal based on Borrower's letter dated 12/3/2021.
- Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
- Per SOP 50 10 5(k), The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
  1. The maximum tangible net worth may not exceed $15 million; AND
  2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal

3

SBA_001706

> years before the application date may not exceed $5.0 million.
>
> The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million, making the Borrower ineligible for SBA assistance.

(AR at pp. 1418-20).

On February 25, 2022, SBA sent another letter to Lender:

> I am currently working on the Forgiveness Request for the above referenced PPP loan. Your forgiveness application has been recommended for a decline or partial decline. All loans that are recommended for less than the requested amount of forgiveness amount must go through a quality control process that requires additional levels of review. This request is specific to this issue. Please provide the following information so that SBA may complete the quality control process and review this loan file. We must receive this information within 20 business days.
>
> - 2019 Q1-Q4 Form 941
> - 2019 Form 940
> - 2019 Q1-Q4 State filings (State Unemployment Insurance-SUI)
> - 2019 Summary report for Employer Health Contributions
> - 2019 Summary report for Employer Retirement Contributions
> - 2019 Payroll summary showing total pay per employee

(AR at pp. 1421-22).

On April 12, 2022, the SBA issued its Final Loan Review Decision denying forgiveness of Appellant's PPP Loan. The Decision stated:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:
>
> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower

4

SBA_001707

is listed as 501 (c)(3), and therefore is not eligible under the
alternative size standard industry qualifications. The Alternative
Size Standard qualifications are limited to for-profit entities, that do
not qualify for a PPP loan under the traditional NAICS Employee-
Based Size Standard Industry criteria.

(Portal Doc, *Final SBA Loan Review Decision*).

## B. Appeal

On May 13, 2022, Appellant filed its appeal. (Portal Doc, *Appeal document*). On June 28,
2022, the Office of Hearings and Appeals (OHA) issued a Notice and Order. (Portal Doc, *Case
Schedule*). SBA filed the Administrative Record on August 19, 2022. (Portal Doc, *Administrative
Record - Gordon College*). The Appellant filed an Objection to the Administrative Record on
September 19, 2022. (Portal Doc, *Objections to Admin Record (09/19/2022)*).[1] In its appeal,
Appellant proposes various arguments for why SBA's Final Loan Review Decision was
mistaken:

First, the Loan Decision makes a clear error by applying the wrong
legal standard. As explained below, the SBA Examiner
retroactively applied a standard for determining the number of
employees for PPP loan eligibility purposes that did not exist at the
time Gordon submitted its application on April 13, 2020 . . .

Second, there is a second clear error by SBA in retroactively
overruling its April 2020 legal and factual determinations. On its
April 13, 2020 Loan Application, and at all times since, Gordon
consistently listed its total number of employees for determining
loan eligibility as 495.67. On its face, that is a precise FTE
calculation, not a "headcount." (No employee has "0.67" of a
"head" to count.). SBA originally determined that Gordon was
eligible for a PPP loan on April 15, 2020 using this FTE calculation
. . .

Third, the SBA Loan Decision under appeal utterly disregards SBA
PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP
FAQ since that time) . . .

Fourth, not only is this a clear error of law, it also causes serious
detrimental reliance harms to Appellant . . .

Fifth, the SBA examiner's final Loan Decision in Appellant's case
contradicts other decisions by other SBA Examiners involving
substantially similar Borrowers and relevant facts . . .

Sixth, it is a separate but extremely serious clear error for SBA to
apply different legal and factual standards to other Borrowers who
are similarly situated to Appellant. On its face, such distinctions are

---

[1] Appellant's various Objections ultimately have no bearing on the outcome of this appeal. To that extent, they are
denied.

SBA_001708

discriminatory and arbitrary, and likely even capricious. But
further, by applying differential standards to Appellant Gordon
College, a nonprofit religious private college, than to similar non-
religious colleges, the SBA Loan Decision may discriminate on the
basis of religion in violation (among others) of the First and
Fourteenth Amendments to the U.S. Constitution and of the federal
Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

## III. DISCUSSION

## A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its
appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review
Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

## B. Analysis

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to
certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep
their workers paid and employed.  PPP was established under section 1102 of the Coronavirus
Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law
on March 27, 2020, and subsequently was revised and expanded by other statutes. In general,
PPP was open to all American small businesses with 500 or fewer employees, including sole
proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. §
636(a)(36)(D).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection
Program provides:

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees
whose principal place of residence is in the United States, or are a
business that operates in a certain industry and meet the applicable
SBA employee-based size standards for that industry, and:
i. You are:
A. A small business concern as defined in section 3 of the
Small Business Act (15 U.S.C. 632), and subject to SBA's
affiliation rules under 13 CFR 121.301(f) unless specifically
waived in the Act; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812.

6

JA0142

In *Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, a document first issued on April 26, 2020, SBA and the Department of the Treasury state:

> **36. Question**: To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?
>
> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "full-time equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

(*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov)).

Appellant correctly points out that the FAQ document was issued 13 days after it applied for the PPP loan. However, pre-existing SBA regulations in place at the time were substantially similar to the method prescribed in the FAQ document. When it comes to calculating a small business concern's number of employees, 13 C.F.R. § 121.106—which was in force at the time Appellant applied for its loan on April 13, 2020—provides:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (*i.e.*, individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.
>
> (b) Where the size standard is number of employees, the method for determining a concern's size includes the following principles:
> (1) The average number of employees of the concern is used (including the employees of its domestic and foreign affiliates) based upon numbers of employees for each of the pay periods for the preceding completed 24 calendar months.
> (2) Part-time and temporary employees are counted the same as full-time employees.

7

JA0143

13 C.F.R. § 121.106 clearly prescribes what Appellant terms a "headcount test" as the proper method by which to calculate a concern's number of employees for loan eligibility purposes. Stephen Lacorazza, Appellant's Vice President for Finance & CFO, stated in a November 5, 2021 email that Appellant has 639 employees (presumably calculated via the "headcount" method) at its Massachusetts location alone. In light of this admission, Appellant understandably focuses on whether it is proper to use the headcount method for counting employees when it comes to determining PPP loan eligibility.

This Court finds that the headcount method is not only appropriate, but required by 13 C.F.R. § 121.106. There is no denying that the speed of the PPP program's implementation—characterized by a rush of Interim Final Rules and a mishmash of interrelated regulations and guidance documents—was a challenging environment for businesses to navigate. Sympathy, however, is not sufficient to grant Appellant's appeal. 13 C.F.R. § 121.106 effectively put Appellant on notice that its employee calculation for eligibility should not use the FTE method.

As noted above, Appellant makes six primary arguments for why it should be deemed eligible for its PPP loan and (accordingly) eligible for loan forgiveness. For ease of reference, they are reproduced below:

> First, the Loan Decision makes a clear error by applying the wrong legal standard. As explained below, the SBA Examiner retroactively applied a standard for determining the number of employees for PPP loan eligibility purposes that did not exist at the time Gordon submitted its application on April 13, 2020 . . .

> Second, there is a second clear error by SBA in retroactively overruling its April 2020 legal and factual determinations. On its April 13, 2020 Loan Application, and at all times since, Gordon consistently listed its total number of employees for determining loan eligibility as 495.67. On its face, that is a precise FTE calculation, not a "headcount." (No employee has "0.67" of a "head" to count.). SBA originally determined that Gordon was eligible for a PPP loan on April 15, 2020 using this FTE calculation . . .

> Third, the SBA Loan Decision under appeal utterly disregards SBA PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP FAQ since that time) . . .

> Fourth, not only is this a clear error of law, it also causes serious detrimental reliance harms to Appellant . . .

> Fifth, the SBA examiner's final Loan Decision in Appellant's case contradicts other decisions by other SBA Examiners involving substantially similar Borrowers and relevant facts . . .

> Sixth, it is a separate but extremely serious clear error for SBA to apply different legal and factual standards to other Borrowers who are similarly situated to Appellant. On its face, such distinctions are discriminatory and arbitrary, and likely even capricious. But further, by applying differential standards to Appellant Gordon

8

College, a nonprofit religious private college, than to similar non-religious colleges, the SBA Loan Decision may discriminate on the basis of religion in violation (among others) of the First and Fourteenth Amendments to the U.S. Constitution and of the federal Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

Arguments 1, 2, and 3 are unavailing in light of 13 C.F.R. § 121.106, which was in force at the time of Appellant's PPP loan application. Arguments 4 and 5 do not allege a clear error or fact or law in the Final Loan Review Decision. With respect to Argument 5, the fact that other allegedly similar PPP loan recipients received loan forgiveness is not itself grounds upon which this Court could permissibly grant Appellant's appeal. As for Argument 6, this Decision does not take a position on the alleged RFRA or constitutional violations. OHA does not have the authority to issue decisions based on its interpretation of RFRA or the Federal Constitution. SBA's Final Loan Review Decision is affirmed.

## C. Conclusion

Based upon the foregoing**,** it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is an initial agency decision. However, unless a request for reconsideration is filed within ten days of this decision date pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211. A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

9

SBA_001712

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
| Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |
| | ) | |

**APPELLANT GORDON COLLEGE'S PETITION FOR RECONSIDERATION OF
SBA ADMINISTRATIVE LAW JUDGE'S DECISION ISSUED NOVEMBER 21, 2022
AND FAILURE TO ADDRESS APPELLANT'S
WRITTEN OBJECTIONS TO THE ADMINISTRATIVE RECORD**

Pursuant to 13 C.F.R. § 134.1211(c), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its *Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022 and Failure to Address Appellant's Written Objections to the SBA Administrative Record* (hereinafter the "Petition"). The SBA Administrative Law Judge's Decision issued November 21, 2022 (hereinafter the "ALJ Decision") commits multiple errors of law and errors of fact that are material to the decision in this appeal, as further set forth below.

**1.      Introduction and Summary of Argument.**

Gordon College submitted its PPP Loan Application on April 13, 2020, in good faith reliance upon the limited SBA guidance that was available at that time, just as SBA represented it was legally entitled to do. Gordon College determined that it was within the threshold number of employees by applying precisely the standard that was referenced in the SBA-issued PPP Loan

Application Form and that was repeated in the April 15, 2020 Interim Final Rule. And Gordon College expended literally every penny of its PPP loan for precisely the primary purpose stated in the CARES Act and the PPP guidance – to keep its existing employees employed and on the payroll during an unprecedented pandemic-caused government-imposed shutdown of the U.S. economy. Gordon did not use the loan proceeds for any other purpose, even permitted ones. But the SBA now invokes later-issued guidance to retroactively apply to tax-exempt nonprofit Gordon College standards that expressly apply to "small business concerns" in a manner contrary to the relevant Interim Final Rules and other SBA guidance. The ALJ Decision reinforces and amplifies the SBA loan examiner's serious errors by making its own multiple errors of law and of fact that are not just material but foundational to its Decision.

Perhaps the most material and most glaring of the ALJ Decision's multiple errors of law and fact is that the Decision cites, quotes, and relies primarily, if not exclusively, upon the *wrong* subsection of the April 15, 2020 Interim Final Rule[1] ("IFR") as the foundation for the Decision's conclusions: (a) that 13 C.F.R. §121.106 applies and controls Gordon College's PPP loan application and this appeal, (b) that §121.106 clearly required use of a headcount method to determine employees for purposes of the PPP Loan Application, and (c) that Gordon College should have known all this at the time of submitting its PPP Loan Application on April 13, 2020, notwithstanding the fact that the SBA-issued PPP Loan Application Form required that Gordon certify, under penalty of perjury, the number of FTEs.

As detailed in section 3 below, the ALJ Decision quotes and relies heavily upon *subsection (A)* of section (2)(a)(i) of the April 15 IFR, which applies only to *for-profit small business concerns*. But the quotation *excludes* – and the entire ALJ Decision completely ignores – the

---

[1] Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20811.

immediately following *subsection (B)* of section (2)(a)(i), which is the portion that specifically applies to *tax-exempt nonprofit organizations*. This obvious error by the ALJ Decision is even more glaring and more concerning because Appellant quoted the correct *subsection (B)* on page 13 of its Appeal Petition. This serious material error of law alone requires reconsideration and affords a sufficient basis to grant Appellant's appeal. But there is more.

This material error of law likely arises at least in part from the ALJ Decision's foundational error of material fact. At no point does the ALJ Decision in any way recognize that Gordon College is in fact a "tax-exempt nonprofit organization described in section 501(c)(3)" – the central factual question governing whether subsection (A) or (B) of section (2)(a)(i)(B) of the April 15, 2020 IFR applies. The ALJ Decision never once refers to Gordon's tax-exempt status. Indeed, the word "exempt" appears nowhere in the entire Decision, and the term "nonprofit" (and variations thereof) appear in the Decision only in the two places where the ALJ quotes from the Appeal Petition's summary of arguments. But the *fact* that Gordon is tax-exempt was ignored by the ALJ as completely irrelevant to the sparse legal reasoning of the ALJ Decision.

This and the other errors of fact material to the ALJ Decision in turn may reflect the Decision's cavalier attitude toward the accuracy of the Administrative Record in this appeal. Appellant filed 12-pages of Objections to Administrative Record identifying serious substantive omissions as well as smaller errors, omissions, and inaccuracies. Gordon's Objections were timely filed by Appellant on September 19, 2022. The ALJ did nothing to address any objection or argument in any way for more than two full months and nothing to address any objection or argument substantively at all. Rather, the ALJ Decision simply dismisses them with a two-line footnote devoid of substantive reasoning. This is another material error of both fact and law.

The most serious (though not the only) omission from the entire Administrative Record is the complete absence of the underlying PPP Loan Application submitted by Appellant Gordon

College on April 13, 2020, on the Form 2843 (04/20) promulgated by SBA, requiring certification under penalty of perjury the number of full-time employees (FTEs) employed by Gordon. It defies logic to think that the PPP Loan Application that is the basis for the loan at issue in this appeal does not need to be part of the Administrative Record. But the ALJ's approach to the Record goes even further given that Gordon's Appeal Petition expressly argued that under the relevant SBA guidance, Gordon was legally entitled to rely upon this language in the SBA-issued PPP Loan Application Form. Indeed, substantially similar language calling for certification of full-time equivalent employees is repeated in Section III(t)(iv) of precisely the April 15, 2020 Interim Final Rule from which the ALJ Decision selectively quotes. Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20814. The failure of the ALJ Decision even to address these controlling authorities and these important arguments is yet another error of law highly material to the Decision.

The importance of a complete and completely accurate Administrative Record is not a mere formality or technicality. Rather, it is essential for Gordon College to be able to obtain meaningful federal court review of the ALJ Decision and the underlying SBA loan examiner decision. And it appears that it will be necessary for Gordon College to resort to the federal courts due both to the ALJ Decision's serious errors and mischaracterizations of the governing law and related guidance and to the ALJ Decision's refusal even to consider addressing the SBA's discriminatory treatment of Gordon College and failure to fulfill its constitutional and statutory nondiscrimination obligations. Whether it arises from negligence or from an intentional effort to narrow the Administrative Record before a reviewing court, the ALJ's decisions are clearly erroneous and highly prejudicial to Appellant.

Appellant hesitates to provide any further summary here. The ALJ Decision quotes the summary statement at the beginning of the Appeal Petition but then uses that to summarily dismiss Gordon's arguments without engaging them substantively. *See* ALJ Decision at p.9. It is

noteworthy that the ALJ Decision in two different places quotes in full the identical section from the Appeal Petition. Those two quotations combined occupy two full pages of the nine-age ALJ Decision. *Compare* ALJ Decision at pp.5-6 *with id.* at pp.8-9. Yet the ALJ Decision devotes only a single paragraph to actually *addressing* any of the six arguments that it twice quotes and that comprise almost one quarter of the total words in the Decision.[2]

The ALJ Decision simply dismisses the first three arguments with a single sentence that cites to 13 C.F.R. §121.106. It never engages the Appeal Petition's substantive arguments that explain why the April 13, 2020 Interim Final Rule, the SBA FAQs (particularly SBA PPP FAQ #17 issued April 6, 2020), and the PPP Loan Application Form 2843 (04/20) promulgated by SBA and completed by Gordon College under penalty of perjury should control. The ALJ Decision makes similar short one or two sentence dismissals of Gordon's fourth, fifth, and sixth arguments, as described further in sections 10 and 11 below.

The ALJ Decision fails to address Gordon's legal arguments in any substantive way beyond simply invoking 13 C.F.R. §121.106. This failure to engage arguments is itself an additional and separate error of law material to the Decision. Most important, the ALJ Decision notably fails to present any counter argument to Appellant's explanations of why the April 13, 2020 Interim Final Rule, the SBA FAQs, and the SBA PPP Loan Application Form signed, certified, and submitted by Appellant on April 13, 2020, all strongly support Appellant's use of the FTE method to calculate the number of employees at that time. The ALJ Decision effectively assumes, *sub silentio*, that its invocation of 13 C.F.R. §121.106 overrides the express language of the required certification on

---

[2] The ALJ Decision spends more than five times as many words quoting (twice) the Appeal Petition as it spends actually addressing any of its arguments. A word count of the text of the ALJ Decision indicates that there are about 3,113 words in the Decision. The two quotations from the Appeal Petition on pages 5-6 and 8-9 add up to about 694 words. Yet the paragraph in which the ALJ Decision dismisses all of these arguments contains at most 132 words.

JA0150

the PPP Loan Application form, but the Decision presents no support for this.

The ALJ Decision's conclusory dismissals of substantive legal arguments are similar to the arbitrary decision to ignore all of Appellant's Objections to the Administrative Record filed September 19, 2022 for more than two months, only to dismiss them *en masse* in a 19-word footnote in the ALJ Decision. Notably, at no point does the ALJ Decision address the conspicuous absence of Gordon's April 13, 2020 PPP Loan Application itself from the Record filed by SBA.

The ALJ Decision's refusal to require supplementation of the Record with that and other key documents is a separate error of law. And not only do these arbitrary, capricious, and unsupported decisions deny Appellant the legally and factually correct resolution of its appeal, they also deny Appellant the fully developed factual and legal record that will be needed to obtain meaningful federal court review of SBA's errors.

For these and the other reasons set forth below, the multiple errors of law and of fact in the ALJ Decision are material to the Decision and seriously prejudicial to Appellant Gordon College. The ALJ Decision must be reconsidered and corrected.

**2.    Standard of Review.**

Under the PPP Appeal Regulations, "The request for reconsideration must clearly show an error of fact or law material to the decision." 13 C.F.R. §134.1211(c)(1).

**3.    The ALJ Decision Commits a Material Error of Law by Relying Upon the Wrong Subsection of the April 15, 2020 Interim Final Rule.**

A clear material error of law is at the heart of the ALJ Decision. The Decision applied the wrong legal standard and its reasoning rests upon this erroneous legal foundation. The ALJ Decision asserts that Gordon College should have known, at the time that it signed, certified, and submitted its PPP Loan Application, that it could only use a "headcount" method to determine the number of employees and must not use an FTE method. The sole and entire basis for that position

is the Decision's mere citation to and reliance upon 13 C.F.R. §121.106. The sole and entire basis

for the ALJ Decision's complete reliance on §121.106 occurs at the bottom of page 6, where the

ALJ Decision quotes section (2)(a)(i) of the April 15, 2020 Interim Final Rule. That portion of the

ALJ Decision and is quoted here in full:

> In relevant part, SBA's first Interim Final Rule implementing the
> Paycheck Protection Program provides:
>
> 2. What do borrowers need to know and do?
>
> a. Am I eligible?
>
> You are eligible for a PPP loan if you have 500 or fewer employees whose
> principal place of residence is in the United States, or are a business that
> operates in a certain industry and meet the applicable SBA employee-
> based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small
> Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules
> under 13 CFR 121.301(f) unless specifically waived in the Act; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812.

This quotation ends with subsection (A) and goes no further. This quotation is the *only reference*

to the April 15, 2020 Interim Final Rule (or to any other Interim Final Rule) in the ALJ Decision,

even though this IFR was discussed on page 13 of the Appeal Petition and attached as Exhibit 7.

The ALJ Decision's selective quotation of the IFR is material – and clearly erroneous –

both for what it includes and for what it excludes. The ALJ's quotation *includes subsection (A)* of

section (2)(a)(i) of the IFR, which is the portion that applies to *for-profit small business concerns*.

But the Decision's quotation *excludes* the immediately following *subsection (B)* of section

(2)(a)(i), which is the portion that specifically applies to *nonprofit organizations*, including

nonprofit religious educational institutions such as Appellant Gordon College. This obvious and

serious error by the ALJ Decision is even more concerning because Appellant quoted the correct

*subsection (B)* on page 13 of its Appeal Petition.

Subsection **(B)** of section (2)(a)(i) directly governs nonprofit organizations, including

Gordon College. The full text of section (2)(a)(i)(B) provides (with highlighting added):

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
   i. You are:
   A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
   B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
   ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099–MISC.

On this basis, the ALJ Decision then invokes and quotes FAQ #36. The Decision

begrudgingly acknowledges that this FAQ #36 was not issued until April 26, 2020, and that this

was 13 days after Gordon College had submitted its PPP Loan Application. The Decision

downplays the importance of this chronology, however, in a number of important ways that will

be discussed separately further below.

**4.    The ALJ Decision Commits a Material Error of Law by Relying Upon Regulations That Do Not Clearly Apply to a Tax-Exempt Nonprofit Organization Such as Appellant Gordon College as the Basis for Retroactive Application of § 121.106.**

The ALJ Decision then immediately uses its selective quotation of section (2)(a)(i)(**A**) as

the sole basis for its retroactive application of (and utter reliance on) 13 C.F.R. § 121.106:

However, pre-existing SBA regulations in place at the time were substantially similar to the method prescribed in the FAQ document. When it comes to calculating a small business concern's number of employees, 13 C.F.R. § 121.106—which was in force at the time Appellant applied for its loan on April 13, 2020— provides:

==(a) In determining a concern's number of employees==, SBA counts all individuals employed on a full-time, part-time, or other basis….

ALJ Decision at p.7 (highlighting added).

The ALJ Decision repeatedly uses the term "small business concern" and it repeatedly attempts to apply to Gordon College – a nonprofit religious institution of higher education that is tax-exempt under IRC § 501(c)(3) – regulations that are expressly and specifically about "small business concerns." The ALJ Decision does this even though section (2)(a)(i) of the April 15, 2020 IFR clearly provides that a "tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)" under subsection (B) is markedly different from a "small business concern" under subsection (A). This distinction in section (2)(a)(i) of the IFR is significant in many ways. One such way is that subsection (A) indicates that a "small business concern" is subject to the SBA rules in 13 C.F.R. Part 121 but subsection (B) refers only to tax-exempt status under IRC § 501(c)(3) and makes no reference whatsoever to 13 C.F.R. Part 121. These contrasts are highlighted in the quotation below:

i. You are:

==A. A small business concern== as defined in section 3 of the Small Business Act (15 U.S.C. 632), ==and subject to SBA's affiliation rules under 13 CFR 121.301(f)== unless specifically waived in the Act; ==or==

==B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)==, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and

The ALJ Decision later amplifies this error in language that reinforces that its error of law is not only material but central and foundational:

This Court finds that the headcount method is not only appropriate, but required by 13 C.F.R. § 121.106. There is no denying that the speed of the PPP program's implementation—characterized by a rush of Interim Final Rules and a mishmash of interrelated regulations and guidance documents—was a challenging environment for businesses to navigate. Sympathy, however, is not sufficient to

grant Appellant's appeal. 13 C.F.R. § 121.106 effectively put Appellant on notice that its employee calculation for eligibility should not use the FTE method.

"Sympathy" may not be a sufficient basis to grant an appeal. *See* ALJ Decision at p.7. But expressly and exclusively relying upon the *wrong subsection* (A) of the Interim Final Rule – and failing to recognize the existence of the immediately following subsection (B) – is not a sufficient basis for an ALJ to deny an appeal. Put another way, the ALJ Decision's reliance upon subsection (A) and its retroactive application of 13 C.F.R. § 121.106 entirely on the basis of subsection (A) is materially erroneous.

We note here that the Appeal Petition was not predicated in any way upon any appeal to "sympathy." The Petition was predicated entirely upon the applicable law and SBA guidance and the relevant facts. The Petition therefore described the challenges that SBA, lenders, and loan applicants were all facing in April 2020, to highlight the importance of a careful review of the limited PPP-specific guidance that was available at the time Gordon filed its PPP Loan Application on April 13, 2020. That guidance included (without limitation) the April 15, 2020 IFR and the SBA-issued PPP Loan Application form as it then existed. *See* Appeal Petition at §§ 6-7.

5.    **The ALJ Decision Commits Clear Error in Failing to Directly Address the PPP Loan Application Form Issued by SBA That Required Gordon College to Certify the Number of Full-Time Equivalent Employees.**

The ALJ Decision also commits a serious error by completely failing to address the PPP Loan Application Form issued by SBA and in use in April 2020. That SBA form expressly required that Gordon certify under penalty of perjury that:[3]

> The applicant will provide to the Lender documentation *verifying the number of* ***full-time equivalent employees*** *on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

---

[3] This was the fourth certification. "Instructions for completing this form" (p.3-4) in April 2020 did not address the formula for how to count number of employees nor in any way suggest that the certification's requirement to verify *full-time equivalent employees* was only for forgiveness and not eligibility purposes.

[emphasis added]

The ALJ Decision never addresses the direct conflict between (a) the Decision's reliance upon the "headcount" method that it retroactively asserts invoking 13 C.F.R. § 121.106 and (b) these SBA PPP Loan Application Form's certification requirements. The certification on the Loan Application form remained unchanged through multiple iterations until January 2021. Lenders and loan applicants were reasonable and acted in good faith in applying the FTE approach for employee count at all times prior to guidance or an Interim Final Rule that directed otherwise.

**6.     The ALJ Decision Commits a Clear Error of Fact in Failing to Recognize That Gordon Is a Nonprofit Religious Organization and Not a Small Business Concern.**

The ALJ Decision's errors of law are compounded by its errors of fact. One material factual error is that the ALJ Decision does not in any way recognize that Gordon College is in fact a "tax-exempt nonprofit organization described in section 501(c)(3)" – the central factual question governing whether subsection (A) or (B) of section (2)(a)(i)(B) of the April 15, 2020 IFR applies. The ALJ Decision never once refers to Gordon's tax-exempt status. Indeed, the word "exempt" appears nowhere in the entire Decision, and the term "nonprofit" (and variations thereof) appear in the Decision only in the two places where the ALJ quotes from the Appeal Petition's summary of arguments. But the *fact* that Gordon is tax-exempt is completely ignored by and irrelevant to the sparse legal analysis in the ALJ Decision. The Decision never actually addresses Gordon's status or any of the arguments in the Appeal Petition where such status is discussed or relevant. The ALJ Decision thereby commits material factual error – as did the SBA Loan Review Decision under appeal – in concluding that Gordon College should have known about and complied with regulations that by their terms apply only to "small business concerns."

7.    **The ALJ Decision Commits a Clear Error of Fact in Relying Upon Gordon's Good Faith November 5, 2021 Reply to the SBA Examiner's Ambiguous November 3, 2021 Question.**

Immediately after concluding that "13 C.F.R. § 121.106 clearly prescribes what Appellant terms a 'headcount test' as the proper method by which to calculate a [small business] concern's number of employees for loan eligibility purposes," the ALJ Decision then relies upon "a November 5, 2021 email that Appellant has 639 employees (presumably calculated via the "headcount" method) at its Massachusetts location alone." The ALJ Decision's reliance upon this November 5, 2021 email as an admission, like the SBA Loan Examiner's underlying misuse of this email response, also constitutes a material error of fact for a number of reasons.

The question posed by the SBA Loan Examiner did not ask that Gordon provide the basis or support for its identification of FTEs on its April 13, 2022 PPP Loan Application form. Rather, the November 3, 2021 email asked generically for Gordon to "[p]lease also provide a list of locations to include employee count per location." The SBA Examiner's question identified neither a purpose, a time period, nor any context for the question asked and information requested. There was no further inquiry or effort by SBA to clarify or understand Gordon's brief response. Yet SBA has relentlessly invoked Gordon's November 5, 2021 email reply, entirely out of context, as the factual basis for SBA's denial of PPP loan forgiveness. The ALJ Decision commits the same error.

The SBA Examiner's question, and indeed the focus of the SBA PPP Loan Forgiveness Application, conflate very different factual analyses. The original SBA PPP Loan Application requests a snapshot in time, specifically "documentation *verifying the number of **full-time equivalent employees** on the Applicant's payroll*…" at the time of the applicant's submission of the PPP Loan Application. The PPP Loan ***Forgiveness*** Application requests information for a different and longer period, the twenty-four week period after the borrower's receipt of the PPP loan funds. The primary purpose for both inquiries is to allow SBA to ascertain whether the PPP

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*    12

loan funds were actually used to keep employees employed and receiving salaries during the government-imposed shutdown that began in March 2022.

Put another way, the PPP Loan Application requested information for a "snapshot" of time and the PPP Loan Forgiveness Application requested information regarding a much longer and later "span" of time. The accurate answer to the second request is different from – and would not be a correct answer to – the first request. The SBA Loan Examiner's ambiguous single sentence question in its November 3, 2022 email to Gordon appears to call for a larger, later, and different set of information.

Yet the SBA Examiner, and now the ALJ Decision, treat this response to a highly ambiguous different question – a question that now appears to have been not just ambiguous but intentionally deceptive – as a conclusive "gotcha" admission that supersedes all other information provided by Gordon and that obviates any need for the SBA Examiner and the ALJ to review carefully the complete Administrative Record or to seek any clarification of Gordon's responses. This position is factually erroneous and fundamentally unfair.

**8.    The ALJ Decision Commits Clear Error By Invoking and Retroactively Applying a Legal Standard That Has No Basis in the Record in the OHA Portal In This Appeal.**

The ALJ Decision does not in any way indicate what led the ALJ to rely upon 13 C.F.R. § 121.106 as the primary basis for its denial of Gordon's appeal. The ALJ Decision cites only the April 15, 2020 IFR but that IFR does not cite § 121.106. Indeed, that IFR includes only *two* citations to 13 C.F.R. Part 121 at all, one of which is the citation specific to a "small business concern" in subsection *(A)* of section (2)(a)(i) of the IFR. Gordon's Appeal Petition never cites to 13 C.F.R. Part 121, let alone § 121.106. And, most significantly, counsel of record for SBA in this appeal never filed any Response or Opposition to the Appeal Petition and never took any action to supplement the Administrative Record and therefore did not provide any legal citation to, let alone

any analysis or argument about, § 121.106. In summary, the documentation submitted and available via the OHA web portal in this appeal provides no basis for the ALJ Decision's invocation of 13 C.F.R. § 121.106.

The only reference to 13 C.F.R. § 121.106 that counsel has been able to identify in any of the materials included on the OHA Portal and thus properly before the ALJ on this appeal is a single reference to "Title 13 Section 121.106" in a "Comment" posted on April 11, **2022** by an SBA examiner engaging with the case for the first time. (SBA Administrative Record, OHA Portal Doc. 18.) That first reference to § 121.106 occurs almost exactly two years after Gordon College submitted its original PPP Loan Application on an SBA form that required Gordon to certify under penalty of perjury the number of FTEs. The SBA examiner's Comment expressly describes this as a "new standard" that will be applied for the first time to "any loan forgiveness application not yet adjudicated…." There is no further reference to § 121.106 in the Administrative Record nor in the Final SBA Loan Review Decision. It is ironic, to put it mildly, that the ALJ Decision concludes that Appellant and all other PPP loan applicants should have recognized in April **2020** that 13 C.F.R. § 121.106 applies not only to a "small business concern" but also to a tax-exempt organization when there is no basis in the Record before this ALJ that SBA itself embraced this position at any time prior to April **2022**, two years later.

**9.    The ALJ Committed Errors of Law and of Fact Material to the Decision by Failing to Rule Upon Appellant's Objections to Administrative Record and to Order Supplementation of the Record.**

Appellant submitted thorough Objections to Administrative Record identifying serious substantive omissions as well as smaller errors, omissions, and inaccuracies. Gordon's Objections were timely filed on September 19, 2022. The ALJ did nothing to address any objection or argument in any way for more than two full months and nothing to address any objection or argument substantively at all. Rather, the ALJ Decision simply dismisses all such Objections *en*

*masse* with a two-line footnote devoid of substantive reasoning. See ALJ Decision at p.

This is another material error of both law and fact. The governing OHA appeal regulations call for the Judge to consider and rule on such objections, not dismiss them as irrelevant. "The Judge will rule upon such objections and may direct or permit that the administrative record be supplemented." 13 C.F.R. § 134.1207(e)(3).

As noted above, the most serious (though not the only) omission from the entire Administrative Record is the complete absence of the underlying PPP Loan Application submitted by Appellant Gordon College on April 13, 2020, on the form promulgated by the SBA certifying under penalty of perjury the number of full-time employees (FTEs) employed by Gordon. It defies logic to think that the PPP Loan Application that is the basis for the loan at issue in this appeal does not need to be part of the Record. But the ALJ's approach to the Administrative Record goes even further given that Gordon's Appeal Petition expressly argued that under the relevant SBA guidance, Gordon was legally entitled to rely upon this language in the SBA-issued PPP Loan Application Form. Indeed, substantially similar language calling for certification of full-time equivalent employees is repeated in Section III(t)(iv) of precisely the April 15, 2020 Interim Final Rule from which the ALJ Decision selectively quotes. Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20814. The failure of the ALJ Decision even to address these controlling authorities and these important arguments is yet another error of law highly material to the Decision.

The ALJ Decision attempts to downplay its error by a passing citation to the PPP Loan Application form that was attached to Appellant's Appeal Petition as Exhibit 3. But that is NOT the version of the Loan Application that was included in the Administrative Record; it is the PDF copy of its PPP Loan Application maintained by Gordon College. Gordon provided its PPP Loan Application to its Lender, Citizens Bank, which then uploaded the Application via an SBA electronic portal. The omission of Gordon's PPP Loan Application as actually received by SBA

and included in SBA's internal records is thus another material error. And that error deprives the ALJ, the Appellant, and ultimately a reviewing federal court of any opportunity to review how the SBA received and processed the PPP Loan Application itself.

The importance of a complete and completely accurate Administrative Record is not a mere formality or technicality. Rather, it is essential for Gordon College to be able to obtain meaningful federal court review of the ALJ Decision and the underlying SBA loan examiner decision. And it appears that it will be necessary for Gordon College to resort to the federal courts due both to the ALJ Decision's serious errors and mischaracterizations of the governing law and related guidance and to the ALJ Decision's refusal even to consider addressing the SBA's discriminatory treatment of Gordon College and failure to fulfill its constitutional and statutory nondiscrimination obligations. Whether it arises from negligence or from an intentional effort to narrow the Administrative Record before a reviewing court, the ALJ's decisions are clearly erroneous and highly prejudicial to Appellant.

**10. The ALJ Decision Commits Material Errors of Law and of Fact in Ignoring Appellant's Evidence of Discriminatory Treatment.**

The ALJ Decision spends less than two sentences mischaracterizing and then dismissing Appellant's undisputed evidence, drawn from the SBA's own publicly available records and undisputed by the SBA. See ALJ Decision at p.9. This undisputed evidence demonstrates that the SBA Examiner's final *Loan Decision* in Appellant's case contradicts other decisions by other SBA Examiners involving other nonprofit college PPP loan applicants and substantially similar facts. These other loan forgiveness decisions reflect SBA using an FTE analysis in April, May, and June 2020 to determine that other nonprofit applicants satisfied all *eligibility* requirements for a PPP loan, and then subsequently determining that the same applicants also satisfied all requirements for PPP loan *forgiveness*. This has occurred even where the other applicants have as many or more

JA0161

employees at time of loan application and at time of loan forgiveness as does Appellant, as determined by the same IRS Form 941 responses that the specific SBA examiner and thus the final *Loan Decision* used here. This comparative data is provided on the spreadsheet attached as Exhibit 11 to Appellant's Appeal Petition.

**11.     The ALJ Decision Commits Material Errors of Law and of Fact in Disregarding Applicable Constitutional and Statutory Requirements.**

The Appeal Petition explained that for SBA to resolve loan eligibility and forgiveness decisions by applying different standards to similarly situated loan recipients would violate both the disfavored applicant's constitutional and statutory rights and SBA's duties as a federal state actor to act in accordance with constitutional and statutory standards. The ALJ Decision simply side-steps these serious issues of discrimination and constitutional duty with a quick and conclusory disclaimer that is has no authority to consider any arguments of constitutional and statutory violations. This is a material error of law for several reasons.

First and foremost, the ALJ, the SBA Loan Examiner, and the SBA itself cannot disclaim their legal duties to faithfully follow and apply the constitution and other federal laws addressing discrimination in government programs. That duty applies at all times and in all contexts. Even if the ALJ does not have authority to definitively interpret the Constitution or federal statutes, the SBA and the OHA, as federal state actors, remain bound to obey completely the Constitution and federal statutes. Discriminatory treatment of any appellant, whether by an SBA loan examiner or by an OHA ALJ, is forbidden by the Constitution and applicable laws. Yet the undisputed evidence shows precisely such discriminatory treatment of Gordon's PPP loan review decision by SBA.

Second, both the CARES Act itself and the most relevant SBA Guidance strongly emphasized that SBA must follow precisely these constitutional and statutory standards throughout the entire PPP loan process. *See* Appeal Petition at pp.5-6. In fact, the only Interim Final Rule

JA0162

referenced in the ALJ Decision expressly required that "All loans guaranteed by the SBA pursuant to the CARES Act will be made consistent with constitutional, statutory, and regulatory protections for religious liberty, including the First Amendment to the Constitution, the Religious Freedom Restoration Act, 42 U.S.C. 2000bb-1 and bb-3, and SBA regulation at 13 C.F.R. 113.3-1h." April 15, 2020 Interim Final Rule, §5, Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20816.

Finally, at minimum this evidence should have caused the ALJ to consider how other SBA loan examiners and ALJs could have reached a conclusion directly opposite to that reached by the SBA Examiner in Gordon's case and by the ALJ Decision. As best counsel can determine, this ALJ Decision is the first time that SBA has ultimately resolved a tax-exempt university's PPP loan review of an application submitted prior to the publication of SBA FAQ #36 by relying upon the 13 C.F.R. § 121.106 standard embraced by this Decision. The publicly available evidence from SBA's own records demonstrates that SBA has forgiven more than thirty such loans in full, yet the ALJ Decision adopts a different standard and reaches a contrary result.

## CONCLUSION

For the foregoing reasons, Appellant Gordon College therefore respectfully requests that the Administrative Law Judge grant *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022l* and reconsider and reverse the Administrative Law Judge's Decision issued November 21, 2022, as set forth above.

Respectfully submitted,

   /s/   Scott J. Ward

| | | |
|---|---|---|
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
| | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
| | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
| | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |
| | *Attorneys for Appellant Gordon College* | |

JA0163

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM ) | |
| APPEAL OF: ) | |
| ) | |
|     Gordon College ) | Docket No.  PPP-8289087101 |
| ) | |
|         Appellant ) | |
| ) | |
| Appealed from ) | |
| SBA PPP Loan No. 8289087101 ) | |

## CERTIFICATE OF SERVICE

I certify that on December 1, 2022, I filed a copy of the above *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022l* in the OHA Case Portal.

Respectfully submitted,


/s/ Scott J. Ward
_____

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:        (703) 761-5012
Facsimile:    (703) 761-5023

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

       Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: December 2, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
                 Mark O'Brien, Esq., for SBA

### ORDER FOR SBA TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Appellant filed the above-captioned appeal on May 13, 2022 and a Petition for Reconsideration on December 1, 2022 following the undersigned issuing an Initial Decision on November 21, 2022. SBA uploaded the Administrative Record for the original appeal on August 19, 2022. The record does not contain a copy of Appellant's Borrower Application Form (SBA Form 2483). The record also contains information about the number of Appellant's employees that Appellant disputes in its PFR. **SBA is hereby ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration.**

**SO ORDERED.**

*Gary D. Smith*
Gary D. Smith
Administrative Judge

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

        Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: December 2, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
                Mark O'Brien, Esq., for SBA

### Notice of Filing Petition for Reconsideration and Date for Response

On November 21, 2022, a Decision was issued for the above-captioned appeal. On December 1, 2022, a Petition for Reconsideration was filed by the Appellant.

To ensure the hearing record is complete, with the positions of both parties fully documented, the SBA shall be given the opportunity to respond to the Appellant's Petition for Reconsideration.

Accordingly, pursuant to 13 C.F.R. §134.207(d), the **SBA shall have until December 16, 2022 to file its response** to the Appellant's Petition for Reconsideration if it intends to do so.

SO ORDERED.

*Gary D. Smith*
Gary D. Smith
Administrative Judge

JA0166

**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>■ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | DBA or Tradename if Applicable |
|---|---|---|

| Business Legal Name | | |
|---|---|---|
| Gordon College | | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 255 Grapevine Rd | 04-2104258 | 978 867 4883 |
| Wenham MA 01984 | **Primary Contact**<br>Stephen Lacorazza | **Email Address**<br>stephen.lacorazza@gordon.edu |

| Average Monthly Payroll: | $ 2,818,415 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 7,046,037 | Number of Employees: 495.67 |
|---|---|---|---|---|

Purpose of the loan (select more than one): ■Payroll ■Lease / Mortgage Interest ■Utilities ☐Other (explain):_____

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Non Profit | Non Profit | 100 | 042104255 | 255 Grapevine Rd Wenham |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ■ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ■ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ■ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ■ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → SDL | ☐ | ■ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → SDL | ☐ | ■ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ■ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ■ |

**JA0167**

SBA Form 2483 (04/20)

1

SBA_001734



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SDL
_____ The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SDL
_____ Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

SDL
_____ The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SDL
_____ The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

SDL
_____ I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

SDL
_____ During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

SDL
_____ I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

SDL
_____ I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Stephen D Lacorazza     Digitally signed by Stephen D Lacorazza
                         Date: 2020.04.12 12:23:21 -04'00'

4/6/2020
_____         _____
Signature of Authorized Representative of Applicant          Date

Stephen D Lacorazza                                Dir of Finance & Controller
_____         _____
Print Name                                          Title

JA0168

SBA Form 2483 (04/20)

SBA_001735



**Paycheck Protection Program**
**Borrower Application Form**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible  or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | |
|---|---|
| _____ ) | |
| PAYCHECK PROTECTION PROGRAM ) | |
| APPEAL OF: ) | |
| ) | |
| Gordon College ) | Docket No.  PPP-8289087101 |
| ) | |
| Appellant ) | |
| ) | |
| Appealed from ) | |
| SBA PPP Loan No. 8289087101 ) | |
| _____) | |

## SUPPLEMENT TO THE ADMINISTRATIVE RECORD

On December 2, 2022, OHA issued an Order for SBA to Supplement the Administrative Record.  Specifically, SBA was ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration.

Appellant's Form 2483 was added to the document portal on December 5, 2022, after SBA was able to retrieve it from Appellant's PPP lender.

SBA now supplies additional pertinent documentation related to how it calculated Appellant's number of employees.  See the Appeal Summary Analysis attached hereto as Exhibit "A".

Respectfully submitted,

/s/ Mark S. O'Brien

_____

Mark S. O'Brien
Attorney for SBA

JA0171

# Exhibit "A"

JA0172

## Appeal Summary Analysis

Loan: **GORDON COLLEGE, 8289087101**
Reviewed by: **Tyler Powell**
Date: **12/5/2022** (initially submitted 9/22/2022)

Basis of appeal:
- UPDATE: Borrower filed a lengthy Petition for Reconsideration (PFR) based on OHA decision dated 11/21/2022.  The primary issues were employee count methodology and applicable regulations at the time of application. (see attachments "Petition for Reconsideration" and "OHA Appeal Decision 11/21/2022")

- Borrower submitted a lengthy letter of appeal essentially arguing the SBA decision was erroneous because the regulations regarding limits on the applicant size, employees and SBA industry size, were not applicable and/or did not apply to them.  (see attachment "Appeal - Borrower Letter")
  - The Letter cited **FAQ #17**, published **April 6, 2020**, indicating that, "**Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application**."
- Borrower also submitted a lengthy Objection to the AR, largely citing the relevant documents that were submitted to the Lender but not added to the AR, such as SBA Form 2483.  (see attachment, "Appeal - Objection to AR")

Loan Information:
- This loan:
  - Is a FIRST draw loan, and the Borrower, a 501c3 nonprofit, has NO other PPP loans.
  - Has active hold codes for the following: 36- general eligibility.  (see Exhibits on page 7)
  - Is an UNKNOWN part of the sample.
- PPP loan application, SBA Form 2483, was signed **April 6, 2020.**  (see attachment "2483")
  - CAFS Submitted Date: **April 15, 2020**
  - Borrower stated application was submitted on **April 13, 2020**.  (see attachment "Appeal - Borrower Letter", page 3)
- OCA denial, issued **April 12, 2022**, stated, "the **Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards**. A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the **borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications**. **The Alternative Size Standard qualifications are limited to for-profit entities**, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria."  (see "Denial Justification Document - Term")

Analysis and conclusion:
- **PFR** contains may issues and concerns from Borrower counsel.   (see attachments "Petition for Reconsideration")

JA0173

SBA_001740

- PFR Items 3 through 8 are essentially regarding employee count and applicable regulations. We address employee count and applicable regulations as they apply to PPP loan eligibility below.
- PFR items 9 regarding objections to the AR is not addressed in our analysis.
- PFR item 10 regarding discriminatory treatment is not addressed in our analysis.
- PFR item 11 regarding constitutional and statutory matters are not addressed in our analysis.

- Borrower had previously submitted a letter stating, "We respectfully submit that **because Gordon College is a nonprofit private religious college** federally tax-exempt under Internal Revenue Code § 501(c)(3), these **SBA size standards do not apply to Gordon College under the CARES Act and related regulations and guidance**." (see "customer response to eligibility")

- **The Core Issue** in this case is eligibility based on EMPLOYEE COUNT and the proper methodology for counting employees.
  - Borrower used an improper methodology when determining employee count by using **full-time equivalents (FTEs)**. (see Exhibits on page 11, "SBA Package 3.24.2022", pages 1-3, and "Appeal - Borrower Letter", page 4)
  - Borrower stated that at the time of application, they had **331 full-time (permanent) employees** and **519 part-time employees**. Therefore, we can conclude that at the time of application, the Borrower had **850** employees. (see Exhibits on page 11)
  - In response to an SBA request for employee count by location, the Borrower submitted an employee count by location having **639** employees in MA location and a total across all locations of, **680** employees. (see Exhibits on page, 10)
  - The **CARES Act** became law on **March 27, 2020**, and is applicable for this Borrower, as well as ALL PPP loan applicants and recipients.

- **An additional Issue** in this case is the Borrower counsel's contention that the PPP Loan Application, Form 2483, required certifying the use of FTEs. This issue also is part of **PFR item #3** regarding the use of 13 CFR § 121.106 How does SBA calculate number of employees.
  - Borrower counsel **incorrectly refers to IFR1.III.2.t.iv**, as a PPP loan eligibility methodology for employee count. That portion of IFR 1 is in reference to certifications and subsequent documentation for the COVERED PERIOD, which seeks to ensure employees are retained during the covered period as a condition of receipt and use of the PPP loan.
  - **IFR1.III.2.a - Am I eligible?,** is the correct portion regarding ELIGIBILITY for first draw PPP loans. This portion of the IFR states, "You are eligible for a PPP loan **if you have 500 or fewer employees** whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:" Further, **IFR1.III.2.a.i.B.** clarifies that this is applicable to nonprofits stating, "**A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and…"
    - See also Form 2483 "CERTIFICATIONS AND AUTHORIZATIONS" bullet point 3 versus "CERTIFICATIONS" item 4. (see Exhibits on pages 12-13)
    - It should be noted the **Borrower SIGNED a Lender "Certifications and Authorizations" affirming they were eligible** for the PPP loan as having "…no more than the greater of 500 or employees or, if applicable, the size standard in

JA0174

number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."  (see Exhibits on page 14)

- **Eligibility - Size Standards:**
  - ○ **Employee Count**
    - ▪ Q1 through Q4 Form 941s have an average of **1,155** employees. (table below)

      2019 From 941 Wages & Employee Count

    - ▪ 

| Period | Amount | Employees | Source |
|---|---|---|---|
| 2019-Q1 | $ 6,158,236.73 | 1,358 | "Gordon College 2019Q1 Federal 941-X" |
| 2019-Q2 | $ 6,761,890.95 | 698 | "Gordon College 2019Q2 Federal 941" |
| 2019-Q3 | $ 6,693,645.70 | 1,305 | "Gordon College 2019Q3 Federal 941-X" |
| 2019-Q4 | $ 6,950,542.31 | 1,258 | "Gordon College 2019Q4 Federal 941" |
| Total Wages | $ 26,564,315.69 | | |
| Average # Employees | | 1,155 | |

  - ○ **Industry Size Standard,** per 13 CFR § 121.201 for NAICS 611310 - Colleges, Universities and Professional Schools.
    - ▪ NAICS 611310 is limited to **$30.5M in Revenue** with **no stated employee count limit** (see Exhibits on page 7)
    - ▪ 2017, 2018, and 2019 Average Annual Receipts: **$109,638,894**
      [($93,390,806+$142,703,285+$92,822,591)/3 = $109,638,894.00 ]
      - • FY 2017: **$93,390,806**  (see "Form 990")
      - • FY 2018: **$142,703,285**  (see "FY19 Form 990")
      - • FY 2019: **$92,822,591**  (see "FY20 Form 990", page 12)

  - ○ **Alternative Size Standard**
    - ▪ In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. Therefore, **the alternative size standard is not applicable to 501c3 nonprofit organizations**.  [ref: IFR 1.III.2, FAQ 3, and FAQ 71]

- Guidance:
  - ○ **CARES Act - Sec 1102.(a).(D)  (effective law March 27, 2020)**
    - ▪ (D) Increased eligibility for certain small businesses and organizations.--
      - • (i) In general.--During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) **shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of--**
        - • ``(I) **500 employees**; or
        - • ``(II) if applicable, **the size  standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization**, veterans organization, or Tribal business concern operates.

JA0175

- (v) <>  Employee.--**For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees** under clause (i)(I), the term `employee' includes individuals employed on a full-time, part-time, or other basis.
  - **13 CFR § 121.106 How does SBA calculate number of employees?**  [61 FR 3286, Jan. 31, 1996, as amended at 69 FR 29203, May 21, 2004; 84 FR 66579, Dec. 5, 2019]
    - (a) In determining a concern's number of employees, **SBA counts all individuals employed on a full-time, part-time, or other basis**. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (i.e., individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.
  - **IFR 1 - Interim Final Rule 1 - III.2.  (originally posted April 2, 2020)**
    - a. Am I eligible? **You are eligible for a PPP loan if you have 500 or fewer employees** whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, **and**:
      - You are:
        - A. **A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f)** unless specifically waived in the Act; or
        - B. **A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and …

  - **IFR 2 - Interim Final Rule on Applicable Affiliation Rules  (originally posted April 3, 2020)**
    - How do SBA's affiliation rules affect my eligibility and apply to me under the PPP?
      - An entity generally is eligible for the PPP if it, combined with its affiliates, is a small business as defined in section 3 of the Small Business Act (15 U.S.C. 632), **or** (1) **has 500 or fewer employees** whose principal place of residence is in the United States or is a business that operates in a certain industry **and** meets applicable SBA employee-based size standards for that industry, **and** (2) is **a tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, a Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business concern. Prior to the Act, the nonprofit organizations listed above were not eligible for SBA Business Loan Programs under section 7(a) of the Small Business

JA0176

SBA_001743

Act; only for-profit small business concerns were eligible. The Act made such nonprofit organizations not only eligible for the PPP, but also subjected them to SBA's affiliation rules. Specifically, section 1102 of the Act provides that the provisions applicable to affiliations under 13 CFR 121.103 apply with respect to nonprofit organizations and veterans organizations in the same manner as with respect to small business concerns.

- **Conclusions:**
  - Core Issue(s):
    1. **Eligibility - Applicable Guidance At Time of Application**
       - **RESOLVED:** It is verified that the **CARES Ac**t (March 27,2020), **13 CFR § 121.106** (January 31, 1996), **IFR 1** (April 2, 2020), and **IFR 2** (April 3, 2020) were are all published PRIOR to the date of application on **April 6, 2020**. Therefore, the Borrower had access to such guidance prior to submission of their PPP loan application. As such, we do not concur with the Borrower's assertation that the guidance was not in place. We further in non-concurrence that the guidance does not apply to them as a 501c3 nonprofit given the CARES Act-Sec 1102.(a)(D), IFR1.III.2, and IFR2, all address nonprofit entites in the context of PPP loan eligibility. Therefore, we agree that adequate and applicable regulations were available to the Borrower PRIOR to loan application and this issue is resolved.
    2. **Eligibility - Employee Count Methodology**
       - **RESOLVED:** It is verified the Borrower used an FTE methodology for counting employees for purposes of PPP loan eligibility. However, per the **CARES Act Sec 1102.(a).(D)(v)**, and **13 CFR § 121.106 - How does SBA calculate number of employees?(a)**, the SBA counts all individuals employed on a full-time, part-time, or other basis.
       - In addition, counsel for the Borrower incorrectly references IFR 1.III(t)(iv) and Form 2483 certifications regarding employee count for eligibility purposes. **Those references apply to the COVERED PERIOD (i.e. loan forgiveness eligibility) to ensure employee headcount was maintained, not loan <u>eligibility</u>**. The Borrower must read past IFR1.III.2.a, and Form 2843 "CERTIFICATIONS AND AUTHORIZATIONS", which both limit employee count to 500. Further, the Borrower also signed another "Certifications and Authorizations" from the Lender certifying the Applicant, "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in **13 C.F.R. 121.201** for the Applicant's industry."
       - Therefore, given these regulations were in place prior to the time of application and the regulations (i.e. The CARES Act) specify, "**the term `employee' includes individuals employed on a full-time, part-time, or other basis.**", we agree the use of FTEs for purposes of determining loan eligibilty is an incorrect methodology and this issue is resolved.

JA0177

3. **Eligibility - Size Standards**
   - **RESOLVED**: It is verified the Borrower averaged 1,155 employees in 2019 per submitted 2019 Form 941s. In addition, the Borrower presented they have 639 employees at just the MA location. Further, the Borrower submitted documentation of having 850 employees at the time of application, **331** full-time (permanent) employees and **519** part-time employees. Consequently, it is verified that during the 2019 reference period AND at the time of PPP loan application, the Borrower exceeded the maximum allowable limit of 500 employees, in violation of the **CARES Act Sec 1102.(a).(D), IFR 1.III.2,** and **SBA Form 2483**.
   - It is further verified that per **13 CFR § 121.201**, the Borrower exceeded the allowable Small Business Size standards for **NAICS 611310 - Colleges, Universities, and Professional Schools**, which is limited to **$30.5M in revenue** and has no other employee limit. Per submitted **Form 990 tax returns**, the 3-year average revenue totaled, $109,638,894. Therefore, we agree the Borrower was not eligible for the PPP loan due to exceeding allowable size standards.

- **Recommendations:**
   - Confirm OCA and OHA DENIAL of forgiveness due to the Borrower, or together with its affiliates, exceeding the maximum allowable number of employees and the SBA small business size standards, in violation of the **CARES Act - Sec 1102.(a).(D)**.

JA0178

SBA_001745

## Exhibits

### Hold Codes

| Delete? | Hold Code | Source | Description | Hold Date | End Date | Created By | Created On | Updated By | Updated On | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | 36 | OCA | General Eligibility | 04/12/2022 1:20 PM | | msmishcon | 04/12/2022 1:20 PM | | | |
| X | 21 | Star | Employee Count Threshold | 11/12/2020 12:08 PM | 02/23/2022 6:03 PM | CADBOps | 11/12/2020 12:08 PM | ForgivenessAPI | 02/23/2022 6:03 PM | |
| X | 10 | Star | Loan Size Meets Special Review Criteria | 11/12/2020 12:08 PM | 01/16/2021 5:27 PM | CADBOps | 11/12/2020 12:08 PM | CADBOps | 01/16/2021 5:27 PM | |

**CAFS search by _EIN: 04-2104258 or Stephen Lacorazza, CFO (x5449):**
<no other loans found>

### CHRON Notes:

| View | Date | Entered By | System | Action | Result |
|---|---|---|---|---|---|
| | **Chron Comment** | | | | |
| View | 04/12/2022 | Mason S. Mishcon [msmishcon] | Centralized Loan Chron System | | |
| | The Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. The previous hold code was removed prematurely. | | | | |

### Industry-Based Size Standard (NAICS Code):

### Sector 61 – Educational Services

| NAICS Codes | NAICS Industry Description | Size standards in millions of dollars | Size standards in number of employees |
|---|---|---|---|
| 611110 | Elementary and Secondary Schools | $17.5 | |
| 611210 | Junior Colleges | $28.5 | |
| 611310 | Colleges, Universities and Professional Schools | $30.5 | |
| 611410 | Business and Secretarial Schools | $18.0 | |
| 611420 | Computer Training | $14.0 | |
| 611430 | Professional and Management Development Training | $13.0 | |
| 611511 | Cosmetology and Barber Schools | $11.5 | |
| 611512 | Flight Training | $30.0 | |
| 611513 | Apprenticeship Training | $10.0 | |
| 611519 | Other Technical and Trade Schools | $18.5 | |

31

JA0179

SBA_001746

**Employee Counts - 2019 Form 941s**

**Q1 ("Gordon College 2019Q1 Federal 941-X", pg 15):**

| Account ID Number WTH-10963780-005 | Tax Filing Period Mar 31, 2019 |
|---|---|
| Number of employees from whom taxes were withheld. | 1,358.00 |
| 1. Amount withheld. | 237,239.26 |
| 2. Previous payments made. | 237,280.97 |
| 3. Credit carryforward from previous period. | 0.00 |
| 4. Total payments and credits. (Add lines 2 and 3.) | 237,280.97 |
| 5. Total tax due. (Subtract line 4 from line 1.) | 0.00 |
| 6. Amount overpaid to be credited to next period. | 0.00 |
| 7. Amount overpaid to be refunded. | 41.71 |

**Q2 ("Gordon College 2019Q2 Federal 941"):**



JA0180

SBA_001747

## Q3 ("Gordon College 2019Q3 Federal 941-X", pg 11):

**WITHHOLDING TAX FORM M-941 - AMEND**
IP Address: **104.129.198.229**
Name: **GORDON COLLEGE**
Period: **30-Sep-2019**
Account ID: WTH-10963780-005
Due Date: 31-Oct-2019

**Review & Submit**

### Return Summary

Confirm this information is accurate and then use the *Submit* button to submit your return. If you notice something was entered incorrectly, use the *Previous* button and correct it before submitting.

| Number of Employees from Whom Taxes Were Withheld | 1,305 |
|---|---|
| 1.  Amount Withheld | 259,919.49 |
| 2.  Previous Payments Made | 260,954.02 |
| 3.  Credit from Previous Period | 0.00 |
| 4.  Total Payment and Credits | 260,954.02 |
| 5.  **Total Amount Overpaid** | 1,034.53 |
| 6.  Amount Overpaid to Be Credited to Next Period | 0.00 |
| 7.  Amount Overpaid to Be Refunded | 1,034.53 |

### Attachments

| Type | Name | Description | Size |
|---|---|---|---|

### Declaration

By clicking the *Submit* button, I declare under the penalties of perjury that I examined the information that I am submitting and it is, to the best of my knowledge and belief, true and complete.

## Q4 ("Gordon College 2019Q4 Federal 941"):



SBA_001748

**Employee Count by State/Location  (see "Dates"):**

| From: | Stephen Lacorazza |
|---|---|
| To: | Thomas, Monica |
| Subject: | RE: SBA Requesting Additional Documentation |
| Date: | Friday, November 5, 2021 12:33:19 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Monica,

Please see the breakout by state below.

| | |
|---|---|
| MA | 639 |
| TX | 2 |
| CA | 8 |
| GA | 4 |
| MO | 1 |
| MN | 1 |
| CT | 6 |
| FL | 2 |
| NY | 3 |
| WA | 1 |
| NC | 2 |
| IA | 1 |
| SC | 1 |
| NH | 2 |
| RI | 1 |
| ND | 1 |
| ME | 1 |
| CO | 2 |
| IL | 1 |
| VA | 1 |
| | 680 |

Have a good weekend,

Stephen

JA0182

SBA_001749

**Borrower Employee Count Methodology (see "SBA Package 3.24.2022", pages 1-3):**
**NUMBER OF EMPLOYEES AT GORDON COLLEGE**

- At the time of its PPP loan application in April 2020, Gordon College had 331 full-time (permanent) employees and 519 part-time employees, including students.

---

[1] All documents requested are provided except for Internal Revenue Service Form 940 because this form does not apply to tax-exempt non-profits like Gordon College.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
1



**GORDON**
COLLEGE

1. Three-hundred thirty-one (331) permanent staff converted to **331 Full Time Equivalent (FTE) positions**.

2. Based on the number of hours worked, 519 part-time employees converted to **159.1 Full-Time Equivalent (FTE) positions**.
   a. Two-hundred sixty-three (263) **non**-*student* part-time employees converted to *123.76 FTEs*.
   b. Two hundred fifty-six (256) part-time *student* employees converted to just *35.34 FTEs* because many of these students worked for only a very limited amount of time each week or for only a short-period of time (project-based).
      1) Fifty-nine (59) percent (or 153 students) were considered 0.10 FTEs or less because they worked so few hours or they received a stipend/award for their service.
      2) Forty-two (42) students participated in the Federal work study program, which was equivalent to 3.35 FTEs; based on SBA guidance issued on May 8, 2020, *after* Gordon College filed its PPP loan application, these students now no longer need to be included in Gordon's overall FTE calculation.
      3) Most of these students could not work anymore on campus as the college went to virtual learning in April 2020 for the rest of the semester and through the summer.

JA0183                                                                    SBA_001750

**Form 2483 (see attachments "2483"):**

### Paycheck Protection Program
### Borrower Application Form

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☑ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable | |
|---|---|---|---|

| Business Legal Name | | | |
|---|---|---|---|
| Gordon College | | | |
| **Business Address** | | **Business TIN (EIN, SSN)** | **Business Phone** |
| 255 Grapevine Rd | | 04-2104258 | 978‑867‑4883 |
| Wenham MA 01984 | | **Primary Contact** | **Email Address** |
| | | Stephen Lacorazza | stephen.lacorazza@gordon.edu |

| Average Monthly Payroll: | $ 2,818,415 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $7,046,037 | Number of Employees: 495.67 |
|---|---|---|---|---|
| Purpose of the loan (select more than one): | ☑ Payroll ☑ Lease / Mortgage Interest ☑ Utilities ☐ Other (explain): _____ | | | |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Non Profit | Non Profit | 100 | 042104258 | 255 Grapevine Rd Wenham |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☑ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☑ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☑ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☑ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → SDL | ☐ | ☑ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → SDL | ☐ | ☑ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☑ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☑ |

SBA Form 2483 (04/20)

1

JA0184

SBA_001751

**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SDL The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SDL Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

SDL The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SDL The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

SDL I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

SDL During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

SDL I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SDL I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Stephen D Lacorazza Digitally signed by Stephen D Lacorazza Date: 2020.04.12 12:23:21 -04'00' | 4/6/2020

Signature of Authorized Representative of Applicant | Date

Stephen D Lacorazza | Dir of Finance & Controller

Print Name | Title

**Lender Form 2483 Equivalent  (see attachment "lender equivalent 2483", pg 6):**

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

 Citizens Bank®

# Certifications and Authorizations

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant:
  - (1) is an independent contractor, eligible self-employed individual, or sole proprietor or
  - (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.



Signed By: _____

Authorized Signer

JA0186

SBA_001753

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM ) | |
| APPEAL OF: ) | |
| ) | |
| Gordon College ) | Docket No.  PPP-8289087101 |
| ) | |
|     Appellant ) | |
| ) | |
| Appealed from ) | |
| SBA PPP Loan No. 8289087101 ) | |

**CERTIFICATE OF SERVICE**

I certify that on December 8, 2022, I filed a copy of the above Supplement to the

Administrative Record in the OHA Case Portal for Appellant's Petition for Reconsideration.


Respectfully submitted,


/s/ Mark S. O'Brien

_____

Mark S. O'Brien
Agency Counsel
U.S. Small Business Administration
68 Sewall Street
Augusta, ME 04330
Phone          (207) 622-8558
Facsimile      (202) 481-4397

2

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

---

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) |
| Gordon College | ) )   Docket No.  PPP-8289087101 |
| Appellant | ) ) |
| Appealed from SBA PPP Loan No. 8289087101 | ) ) ) |

---

**APPELLANT GORDON COLLEGE'S OBJECTIONS TO SBA's**
***SUPPLEMENT TO THE ADMINISTRATIVE RECORD* (FILED DECEMBER 8, 2022)**

Pursuant to 13 C.F.R. § 134.1207(e) and to the Administrative Law Judge's ("ALJ") December 2, 2022 *Order For SBA to Supplement the Administrative Record* ("Order to Supplement"), and December 2, 2022 *Notice of Filing Petition for Reconsideration and Date for Response* ("ALJ Notice"), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its written *Objections* to the *Supplement to the Administrative Record* filed by SBA Counsel on December 8, 2022 ("Supplement" or "SR").[1]

## **INTRODUCTION**

Appellant's primary objection is that SBA's purported "Supplement" to the Administrative Record is improper under the controlling SBA regulations, as explained below. SBA's Supplement is comprised of a document that on its face is dated September 22, 2022, and updated December 5,

---

[1] Appellant has waited to file these *Objections* until after the December 16, 2022 deadline established by the *ALJ Notice* for SBA to file any response to the Appellant's Petition for Reconsideration. The OHA portal indicates that SBA Counsel did not file any response by 5:00 pm on December 16, 2022, nor indeed by December 18, 2022.

---

2022, created by an SBA examiner who was not involved in the April 2020 Final Loan Review Decision that is the subject of this Appeal. SBA's Supplement appears to be an attempt to create a new "record" months after the SBA Final Loan Review Decision under appeal was issued. SBA's submission of its Supplement, and any consideration or inclusion of it in the Administrative Record by the ALJ, would violate 13 CFR § 134.1207 and 13 CFR § 134.1209(a). SBA's Supplement is not properly part of the Administrative Record and should not be included in it nor considered by the ALJ.

SBA continues to urge long-after-the-fact justifications for retroactively applying to Appellant arguments and standards that SBA itself did not articulate, and apparently did not recognize, until two years after Gordon's PPP loan application was submitted, approved, funded, and expended entirely to keep Gordon employees on the payroll. SBA applied a *different standard* to the more then twenty-five other institutions of higher education whose loans it forgave despite their using an FTE analysis and having numbers of employees far beyond the 500-employee maximum if SBA's headcount method is utilized. See below and *Appeal Petition* Exhibit 11. Most significant, if SBA's new position – articulated by SBA for this first time in this entire review and appeal process in its December 5, 2022 Supplement – is adopted, then FAQ #36 issued April 26, 2022 was completely unnecessary and utterly gratuitous. SBA's conduct in this case thus represents the ultimate in "sandbagging" – failing to produce, and apparently even to create, positions, standards, and documents until months after the decision being appealed was made and only after the last scheduled date for any filing by Gordon College has passed.

Contrary to the SBA's December 8, 2022 Supplement, the correct standard for evaluation of Gordon's loan eligibility and forgiveness and for resolution of this appeal is that set forth in Gordon's *Appeal Petition* and Gordon's *Petition for Reconsideration*. SBA FAQ #17 expressly states that Gordon is entitled to rely upon the SBA guidance at the time its PPP loan application

was submitted on April 13, 2020. The PPP Borrower Application Form 2483 created by SBA in March 2020 – and only at last submitted by SBA on December 4, 2022 as part of the Administrative Record as ordered by the ALJ's *Order to Supplement* – specifically requested the "Number of Employees" on page 1 and required that the applicant certify "the number of full-time equivalent employees" on page 2. Nowhere did the SBA Borrower Application Form in any way indicate that the number of employees entered on page 1 should be determined by a different method than the applicant was required to certify under penalty of perjury on page 2. Further, Gordon College's PPP Borrower Application Form 2483 as signed, certified, and submitted on April 13, 2020, lists on page 1 the number of employees as 495.67 employees, clearly indicating at the very outset that Gordon had used the FTE method required by the certification on page 2.

SBA's December 8, 2022 Supplement continues to try to evade what was required on the face of the Form 2483 that SBA itself created and promulgated. Indeed, SBA's Supplement shows even more clearly from that SBA only figured out its current arguments in September 2022. The positions and arguments pressed in the document that SBA now seeks to add to the Administrative Record as a "Supplement" do not appear in the Administrative Record as filed by SBA on August 19, 2022. The SBA clearly did not apply this same position and standard in its Final Loan Review Decisions of the applications of the more than twenty-five (25) other institutions of higher education whose PPP loans it forgave despite having headcounts of more than 500 employees. It was only after Gordon clearly explained the problems with SBA's Final Loan Review Decision that SBA even attempted to articulate – in September and December 2022 – the justification SBA now urges, at this last possible moment, the ALJ impose upon Gordon.

Gordon further objects to SBA introducing in this Supplement a new interpretation of language from the CARES Act. That language has already been fully addressed in Gordon's *Appeal Petition* – and SBA did not even attempt to file any response then. *See, e.g.*, Appeal Petition

at pp.17-18. The CARES Act language quoted by SBA in the Supplement addresses **WHO** a PPP loan applicant should include in determining its number of employees: "the term `employee' includes individuals employed on a full-time, part-time, or other basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition at pp.10. But that language does not address *HOW* such employees should be included. Counting full-time equivalent employees unquestionably "includes" full-time and part-time and other employees. Yet in the Supplement SBA now asserts that "includes" is effectively the same as "headcount.". SBA's interpretation goes beyond the language of the Act that the Supplement relies upon and beyond the language of SBA Form 2483. Until SBA issued FAQ #36 on April 26, 2020, neither the CARES Act nor any SBA PPP guidance in any other way instructed nonprofit religious organizations applying for a PPP loan *HOW* to count – that is, whether to use FTE or headcount to calculate. *See Appeal Petition* § 7.7 at pp.17-18. (Indeed, the term "headcount" comes directly from FAQ #36 not from Appellant.)

## **OBJECTIONS**

**(1)    SBA's "Supplement" Document Was Created *After* Every Relevant Date in the SBA's Final Loan Review Decision and Gordon's Appeal of That Final Decision.**

The document that SBA filed on December 8, 2022, as a purported "Supplement" to the Administrative Record in this Appeal indicates on its face that it is an updated version of an original document titled "Appeal Summary Analysis" that was first submitted – solely internally within the SBA – on September 22, **2022**. That document also indicates that it was updated on December 5, 2022. Only the "updated" December 5, 2022 version of the document has been filed by SBA, not the original September 22, 2022 version. *See generally* Supplement at p.1 (PDF p.3).

The original of this document thus was created:

1. more than twenty-eight (28) months after Gordon's PPP Borrower Application Form 2483 was submitted by Gordon to its lender, approved by the lender, fully funded by the SBA, and expended by Gordon entirely to keep existing Gordon employees employed and on the Gordon payroll;

2. more than five (5) months after SBA issued its Final Loan Review Decision that is the subject of this appeal;

3. more than four (4) months after Gordon filed its Appeal Petition;

4. more than one (1) month after SBA filed the "Administrative Record" in this Appeal; and

5. three (3) days after Gordon College filed its *Objections to Administrative Record* in this Appeal – the last filing of any sort by Gordon that was specifically identified in any of the ALJ's scheduling orders.

SBA could have included that original September 22, 2022 "Appeal Summary Analysis" document as an exhibit to a response brief in this Appeal. Such a response was due by October 3, 2022, under the ALJ's July 18, 2022 *Amended Order Granting Extension of Time*. But SBA did not file *any* response at all. And SBA has never attempted to supplement the Administrative Record until the ALJ's December 2, 2022 *Order to Supplement*.

Of course, it is only speculation whether the original document contains substantially the same analysis as in the "updated" document that SBA only now has filed as a "Supplement." The original document has never been submitted in this Appeal nor disclosed to Gordon. The "updated" document first filed by SBA on December 8, 2022, indicates on its face that it was not "updated" until December 5, 2022 – four days after Gordon's *Petition for Reconsideration* was filed.

Bluntly stated, the document that SBA only now submits to justify its April 2020 Final Loan Review Decision denying forgiveness did not exist in any form until ***after*** the last date any ALJ scheduling order explicitly identified for *any* filing by Gordon. And that document did not exist in the form submitted as a purported "Supplement" until after Appellant had actually filed its *Petition for Reconsideration*. The following table lists the most relevant dates and events:

| **DATE** | **EVENT / DOCUMENT** |
|---|---|
| April 6, 2020 | Gordon College signs PPP Borrower Application Form 2483. |
| April 13, 2020 | Gordon College submits PPP Borrower Application Form 2483. |
| April 15, 2020 | Gordon College PPP loan approved. |

| DATE | EVENT / DOCUMENT |
|---|---|
| April 23, 2020 | Gordon College executes and submits all PPP loan documents. |
|  |  |
| April 13, 2022 | Gordon College receives SBA Final Loan Review Decision (Appeal Petition Exhibit 1) denying PPP loan forgiveness. |
| May 13, 2022 | Gordon College files *Appeal Petition* and Exhibits. |
| August 19, 2022 | SBA files Administrative Record. Record as filed by SBA does not include Gordon College Borrower Application Form 2483. |
| September 19, 2022 | Gordon College files *Objections to Administrative Record.* |
| September 22, 2022 | SBA examiner Tyler Powell "submits" solely within SBA apparent initial draft (not included in SBA Supplement) of document titled "Appeal Summary Analysis." |
| October 3, 2022 | Deadline for SBA to file a response to Gordon College *Appeal Petition.* SBA does not file *any* response and does not seek to supplement Administrative Record in any way. |
| November 21, 2022 | ALJ issues Decision denying Gordon College appeal. |
| December 1, 2022 | Gordon files *Petition for Reconsideration* of ALJ Decision. |
| December 2, 2022 | ALJ issues *Notice of Filing Petition for Reconsideration and Date for Response* giving SBA until December 16, 2022 to file any response to Gordon's *Petition for Reconsideration.* |
| December 2, 2022 | ALJ issues *Order for SBA to Supplement the Administrative Record* stating that "SBA is hereby ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration." |
| December 5, 2022 | SBA files Supplement to Administrative Record comprised of a copy of Gordon College's original PPP Borrower Application Form 2483 that SBA has obtained from the lender. |
| December 5, 2022 | SBA examiner Tyler Powell "updates" document titled "Appeal Summary Analysis." |

| DATE | EVENT / DOCUMENT |
|------|------------------|
| December 8, 2022 | SBA files additional *Supplement to the Administrative Record* comprised of a copy of the "updated" document titled "Appeal Summary Analysis" (but not the original September 22, 2022 "Appeal Summary Analysis"). |

**(2)    SBA's "Supplement" Document Was Created by an SBA Employee Who Was Not Previously Involved in the April 2020 Final Loan Review Decision nor This Appeal.**

The Supplement indicates on its face that the document was created and updated by an SBA employee named "Tyler Powell." But the name "Tyler Powell" does not appear anywhere in the Administrative Record as filed by SBA Counsel on August 19, 2022. Indeed, the words "Tyler" and "Powell" individually only appear within the names of Gordon College employees included in the Administrative Record. It appears that Tyler Powell's first involvement in any way in SBA's review of Gordon's PPP loan occurred only after – apparently several months after – SBA's actual Final Loan Review Decision and after Appellant's last scheduled filing in this Appeal.

**(3)    SBA's Filing the "Supplement" Document Violates 13 CFR § 134.1207 and Including the SBA "Supplement" in the Administrative Record Would Violate 13 CFR § 134.1207 and § 134.1209(a).**

The SBA Supplement violates the regulations that govern this appeal. The requirements for the Administrative Record to be submitted by SBA are clearly established by 13 CFR § 134.1207, which provides in relevant part (emphasis added):

> § 134.1207 The administrative record.
>
> (a) *Time limits.* The administrative record will be due 20 calendar days after issuance of the Notice and Order unless additional time is requested and granted.
>
> (b) *Contents.* The administrative record shall include non‑privileged, relevant documents **that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision**. The administrative record need not, however, contain all documents pertaining to the appellant.

The SBA Supplement did not even exist at the time SBA made its Final Loan Review Decision in April 2022. The Supplement was not "submitted" (and even then only within SBA) until September 22, 2022, more than five months after the SBA's Final Loan Review Decision, more than four months after Gordon filed its *Appeal Petition*, and three days **after** Gordon filed its *Objections to Administrative Record*. It therefore is beyond dispute that the SBA Supplement is **not** a document "that SBA considered in making its final loan review decision or that [was] before SBA at the time of the final loan review decision" as is required by 13 CFR § 134.1207.

Further, any admission or consideration of the SBA's purported "Supplement" by the ALJ would violate not only 13 CFR § 134.1207 but also 13 CFR § 134.1209(a), which provides in full that "[g]enerally, the Judge may not admit evidence beyond the administrative record."

**(4)    Applying the SBA's September 24, 2022 and December 4, 2022 After-The-Fact Justifications for its April 12, 2022 Final Loan Review Decision Results in Unlawful and Unconstitutional Discrimination Against Gordon College.**

Both the Administrative Record as filed by SBA on August 19, 2022, and the purported Supplement filed by SBA on December 8, 2022, further reinforce the fact that SBA profoundly changed its loan review analysis and its justification for the same sometime after March 2022. SBA loan examiners clearly applied a *different standard* to the more then twenty-five (25) other institutions of higher education whose loans SBA forgave despite those institutions having used an FTE analysis and despite their having employees far beyond the 500-employee ceiling if SBA's headcount method is utilized. Those institutions, the relevant public record information from the SBA web site regarding their loans and forgiveness and associated dates, and the relevant public record information regarding their number of employees as determined by the same headcount methods that SBA has applied to Gordon College here are all set forth in Exhibit 11 to Gordon's *Appeal Petition*. For all of the reasons previously explained, such discriminatory treatment by SBA is unlawful under the CARES Act, under the April 15, 2020 Interim Final Rule, under federal

religious freedom and equal protection laws, and under the First and Fifth Amendments to the U.S. Constitution. *See, e.g., Appeal Petition* at pp.5-6; *Petition for Reconsideration* § 11 at pp.17-18.

**(5)      SBA's Submission of Its December 8, 2022 "Supplement" Is an Effort to Improperly Present New Legal Arguments As Though They Were the Basis for SBA's April 12, 2022 Final Loan Review Decision.**

It also appears that the SBA is using its "Supplement to the Administrative Record" as a disguised way to make legal arguments while continuing never to file a response or any other brief in this appeal. Admittedly, SBA is not required to file any response brief. But this appears to be an attempt to "have your cake and eat it too" – to present new legal arguments that were not actually the articulated basis for SBA's April 2022 Final Loan Review Decision under appeal and that therefore do not appear in the Administrative Record as of that date, but to disguise those new arguments as having been the basis for the Final Loan Review Decision being appealed. *Compare* SBA April 2020 Final Loan Review Decision, Exhibit 1 to *Appeal Petition*, *with* SBA Supplement.

**(6)      SBA's December 8, 2022 "Supplement" Improperly Attempts to Retroactively Read New Interpretations Into SBA's April 2022 Final Loan Review Decision.**

Gordon also objects to SBA urging in the Supplement a new interpretation of language from the CARES Act and other guidance. That language has already been fully addressed in Gordon's *Appeal Petition*. *See, e.g.*, Appeal Petition at pp.17-18. The CARES Act language quoted by SBA in the Supplement addresses ***WHO*** a PPP loan applicant should include in determining its number of employees: "the term `employee' includes individuals employed on a full-time, part-time, or other basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition at pp.10. But that quoted language does not address ***HOW*** such employees should be included. Counting full-time equivalent employees unquestionably "includes" full-time and part-time and other employees. Yet in the Supplement SBA now asserts that "includes" is effectively the same as "uses headcount" and necessarily and obviously means "counts each and every full-time, part-time, and other

employee as a single full-time employee." SBA's interpretation goes beyond the language of the Act that the Supplement relies upon and ignores the language of SBA Form 2483.

Until Treasury/SBA issued FAQ #36 on April 26, 2020 – *after* Gordon College's PPP Loan Application was submitted to SBA on April 13, 2020, approved by SBA on April 15, 2020, and all loan documents executed by April 23, 2020 – neither the CARES Act nor any SBA PPP guidance instructed religious nonprofit organizations applying for a PPP loan *HOW* to count – that is, whether to use the FTE or the headcount calculation method. Although the CARES Act did not address headcount or prescribe a formula as to how to count employees for *eligibility* for the PPP loan, FAQ #36 articulated a new formula for how to count the 500-employee threshold for *eligibility*, resulting in two different "counting" formulas – headcount for eligibility and FTE for forgiveness. *See Appeal Petition* at § 7.7 at pp.17-18. FAQ #36 was needed precisely because it was completely reasonable to interpret the CARES Act and the PPP-specific guidance issued by SBA prior to FAQ #36 as permitting, and even requiring, use of the FTE method.

**(7)    SBA's Efforts to Supplement the Record With Documents Created After SBA's April 2020 Final Loan Review Decision Further Demonstrate SBA's Improper Actions in Denying Gordon's PPP Loan Forgiveness and In Contesting Gordon's Appeal.**

Both documents filed by SBA in response to the ALJ's *Order to Supplement* are deeply revealing, but in different and almost opposite, ways.

First, SBA did not file a copy of Gordon's PPP Loan Application Form 2483 until specifically ordered to do so by the ALJ. In filing that Form 2483, SBA revealed that SBA's records did not include SBA's own copy of the Form 2483 as signed and certified under penalty of perjury by Gordon. The foundational document in addressing Gordon's loan eligibility and loan forgiveness is this PPP Borrower Application Form 2483 that the SBA itself created and promulgated to the public in March and early April 2020 and that Gordon College signed and submitted on April 13, 2020. The SBA's Form 2483 expressly requires that Gordon certify the

number of full time equivalent employees (FTEs) – which is exactly what Gordon did. Indeed, Form 2483 affirmatively required a loan applicant to certify that the number of FTEs entered earlier on the applicant's completed Form 2483 was correct, under penalty of perjury. Nowhere does the Form 2483 request the number of employees by headcount or indicate that a headcount method is the correct method to use. Indeed, to have applied the headcount method as the basis for the number of employees entered on page 1 of the Form 2483 would have made it impossible to make the required certification on page 2. Gordon's attestation of 495.67 employees on page 1 clearly indicated that Gordon had used the FTE method required by the certification on page 2. And none of the instructions provided by SBA on pages 3 and 4 of the Form 2483 in any way indicated that an applicant should use a headcount method on page 1 only.

Second, the fact that SBA determined that it was necessary to issue FAQ #36 on April 26, 2020 – after Gordon had submitted its Form 2483 – demonstrates that it was reasonable for any loan applicant, including Gordon, to interpret SBA Form 2483 as establishing that the correct way to count and certify employees was to use the FTE method. And SBA FAQ #17 makes clear that Gordon was entitled to rely upon the guidance available at the time it filed its Form 2483.

**(8)    Page 10 of SBA's "Supplement" Improperly Omits Directly Relevant Information and Therefore Is Misleading.**

In addition to the more general Objections set forth above, Appellant also specifically to Page 10 of SBA's Supplement because it is misleading or deceptive. Page 10 includes part of the document that appears on page 75 (PDF page 80) of the Administrative Record as previously filed by SBA. But it omits the remainder of the page and the following page that are the embedded underlying email from Monica Thomas of Citizens Bank forwarding a question Citizens received from SBA. SBA thus omits the precise question that the quoted email is answering. The likely reason is not surprising – the question that SBA asked was vague, ambiguous, and misleading and

was presented without context or foundation. SBA's denial of forgiveness relies heavily upon this answer to an ambiguous and misleading question, while simultaneously ignoring the most relevant document, the PPP Borrower Application Form 2483 actually submitted by Gordon College.

## **CONCLUSION**

For the reasons set forth above, Appellant Gordon College objects to the SBA's filing of its December 8, 2022, *Supplement to the Administrative Record*. SBA's filing of the December 5, 2022 "updated" analysis document violates 13 CFR § 134.1207. Including that Supplement in the Administrative Record would violate both 13 CFR § 134.1207 and § 134.1209(a). All of the foregoing Objections further demonstrate that the SBA's decision to deny loan forgiveness to Appellant Gordon College was based both on clear errors of fact and on clear errors of law. *See* 13 CFR § 134.1210. Any single error would be sufficient to require reconsideration and reversal of the SBA loan denial and granting of forgiveness to Appellant. Appellant therefore respectfully requests that the Administrative Law Judge grant *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022* and reconsider and reverse the Administrative Law Judge's Decision issued November 21, 2022.

Respectfully submitted,

    /s/  Scott J. Ward

| | | |
|---|---|---|
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
| | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
| | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
| | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |
| | *Attorneys for Appellant Gordon College* | |

JA0199

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
| Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that on December 19, 2022, I filed a copy of the above *Appellant Gordon College's Objections to SBA's Supplement to the Administrative Record (filed December 8, 2022)* in the OHA Case Portal.

Respectfully submitted,


/s/ Scott J. Ward
_____

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:          (703) 761-5012
Facsimile:     (703) 761-5023

JA0200

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College


Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: January 5, 2023

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
Mark O'Brien, Esq., for SBA

## DECISION ON APPELLANT'S PETITION FOR RECONSIDERATION

### I. Background

On November 21, 2022, this Court denied the Appellant's appeal of the SBA's Final Loan Review Decision in which the SBA denied loan forgiveness on the grounds that " . . . the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Portal Doc, *Final SBA Loan Review Decision*). The Appellant timely filed a Petition for Reconsideration on December 1, 2022.

For the reasons set forth below, the Appellant's Petition is **DENIED**.

### II. Discussion

### A. Standard of Review

To prevail on a request for reconsideration, the Petitioner must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

### B. Analysis

### B.i. Appellant's Petition for Reconsideration

As an initial matter, it must be noted that Appellant correctly identifies an error of fact in this Court's November 21, 2022 Initial Decision. Appellant is a tax-exempt nonprofit, not a small business concern. As demonstrated below, that Appellant is a nonprofit changes the analysis but

1

JA0201

not the result of the Initial Decision. Because today's Reconsidered Decision reaches the same outcome as the Initial Decision, the latter is affirmed.

The Payroll Protection Program enabling legislation increased eligibility for certain businesses and set size standards for those businesses. With regard to non-profits, the legislation and regulations are clear. To be eligible for a PPP loan, a nonprofit Appellant must have 500 or fewer employees or meet the SBA employee-based size standards for the industry in which it operates. The legislation provides:

> (D) Increased eligibility for certain small businesses and organizations. —
> (i)In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of—
> (I) 500 employees; or
> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.
>
> . . .
>
> (v) Employee.— For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657(a)(b)(2)(C) of this title employs not more than 500 employees under clause (i)(I) . . . *the term "employee" includes individuals employed on a full-time, part-time, or other basis.*

15 U.S.C. §636(a)(36)(D)(i), 15 U.S.C. §636(a)(36)(D)(v) (emphasis added).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection Program provides:

> 2. What do borrowers need to know and do?
>
> a. Am I eligible?
>
> You are eligible for a PPP loan *if you have 500 or fewer employees* whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
>     i. You are:

2

JA0202

> A. A small business concern as defined in section 3 of the
> Small Business Act (15 U.S.C. 632), and subject to SBA's
> affiliation rules under 13 CFR 121.301(f) unless specifically
> waived in the Act; or
> B. *A tax-exempt nonprofit organization* described in section
> 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt
> veterans organization described in section 501(c)(19) of the
> IRC, Tribal business concern described in section 31(b)(2)(C)
> of the Small Business Act, or any other business; and
> ii. You were in operation on February 15, 2020 and either had
> employees for whom you paid salaries and payroll taxes or paid
> independent contractors, as reported on a Form 1099–MISC.

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812 (emphasis added).

   13 C.F.R. § 121.106(a), which the Initial Decision relied on in upholding the Final Loan
Review Decision, provides:

> (a) In determining a concern's number of employees, SBA counts
> all individuals employed on a full-time, part-time, or other basis.
> This includes employees obtained from a temporary employee
> agency, professional employee organization or leasing concern.
> SBA will consider the totality of the circumstances, including
> criteria used by the IRS for Federal income tax purposes, in
> determining whether individuals are employees of a concern.
> Volunteers (*i.e.*, individuals who receive no compensation,
> including no in-kind compensation, for work performed) are not
> considered employees.

   The CARES Act, as quoted above on Page 2, is very clear: SBA's proposed "headcount"
method—that is, counting every employed individual regardless of full-time or part-time status as
an "employee"—is the proper method with which to determine whether a nonprofit organization
is eligible for a PPP loan based on the 500-employee threshold. In the Initial Decision, this Court
relied heavily on 13 C.F.R. § 121.106, and incorrectly labeled Appellant a small business concern
as opposed to a nonprofit organization. While this was an error of fact, it was not material to the
decision, because the CARES Act's text resolves the employee-counting dispute in a manner
consistent with the Initial Decision. It is worth noting that SBA's *Paycheck Protection Program
Loans, Frequently Asked Questions (FAQs)*, a guidance document first issued on April 26, 2020,
reiterates this Court's interpretation of the CARES Act[1]:

> 36. **Question**: To determine borrower eligibility under the 500-
> employee or other applicable threshold established by the CARES
> Act, must a borrower count all employees or only full-time
> equivalent employees?

---

[1] This guidance was issued after Appellant applied for its loan. It is included in this Reconsidered Decision only to
illustrate that SBA correctly interpreted the CARES Act's unambiguous language regarding how to calculate number
of employees for loan eligibility purposes.

JA0203                                                                                    SBA_001770

**Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold.

*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov).

Appellant argues that the FTE method is proper for calculating its number of employees for loan eligibility purposes because this is the method prescribed by SBA Form 2483, the Borrower Application Form. This is incorrect. Certification #4 on Appellant's Form 2483 reads:

The applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities *for the eight-week period following this loan*.

(Portal Doc, *Form 2483*) (emphasis added).

Certification #4 does indeed instruct borrowers to provide information regarding full-time equivalent employees to their lender. However, this is to ensure that borrowers maintain and continue paying their workforce, which was the dominant purpose of the PPP. This is why certification #4 is limited to the covered period. Stated differently, certification #4 exists to assess Appellant's eligibility for loan forgiveness, not its eligibility for the loan itself. A hypothetical borrower with fewer than 500 employees may be eligible to receive a PPP loan but ineligible to receive loan forgiveness if it fires half of its staff during the covered period. Certification #4 is highly relevant in such a situation. It is not relevant when the sole question is loan eligibility.

Appellant filed an Objection to SBA's Supplement to the Administrative Record. In this Objection, Appellant notes that it addressed the above-quoted provision of the CARES Act in its appeal petition. In the appeal petition, Appellant argued:

There are only three uses of the term "part-time employee" in the CARES Act and none define the term. The term "headcount" is not used in the CARES Act. There is no formula for counting employees provided in the CARES Act. The Act made it clear that part-time employees were "included" in the definition of employee but did not address how to calculate the sum of these full-time and part-time employees into a total number. At least until the issuance of FAQ #36 on April 26, 2020, it was unclear for purposes of determining the 500 maximum number of employees for PPP loan eligibility whether such part-time employees are each counted as one employee (regardless of any specific part-time threshold hours standard) – a "headcount" formula – or whether the full-time equivalent (FTE) calculation was appropriate.

(Portal Doc, *Appeal document*).

4

In its Objection to SBA's Supplement, Appellant argued:

> Gordon further objects to SBA introducing in this Supplement a
> new interpretation of language from the CARES Act. That
> language has already been fully addressed in Gordon's Appeal
> Petition – and SBA did not even attempt to file any response then.
> See, e.g., Appeal Petition Appellant Gordon College's Objections
> to SBA Dec. 8, 2022 Supplement to Administrative Record 4 at
> pp.17-18. The CARES Act language quoted by SBA in the
> Supplement addresses WHO a PPP loan applicant should include in
> determining its number of employees: "the term `employee'
> includes individuals employed on a full-time, part-time, or other
> basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition
> at pp.10. But that language does not address HOW such employees
> should be included. Counting full-time equivalent employees
> unquestionably "includes" full-time and part-time and other
> employees. Yet in the Supplement SBA now asserts that "includes"
> is effectively the same as "headcount.". SBA's interpretation goes
> beyond the language of the Act that the Supplement relies upon and
> beyond the language of SBA Form 2483. Until SBA issued FAQ
> #36 on April 26, 2020, neither the CARES Act nor any SBA PPP
> guidance in any other way instructed nonprofit religious
> organizations applying for a PPP loan HOW to count – that is,
> whether to use FTE or headcount to calculate

(Portal Doc, *Gordon College Objections to Supplement*).

In this Court's view, Appellant's creation of two categories—that is, "who a PPP loan
applicant should include in determining its number of employees" and "how such employees
should be included"—is a distinction without a difference. The CARES Act's text is quite clear:
"For purposes of determining whether a . . . nonprofit organization . . . employs not more than
500 employees under [15 U.S.C. §636(a)(36)(D)(i)(I)] . . . the term 'employee' includes
individuals employed on a full-time, part-time, or other basis." 15 U.S.C. §636(a)(36)(D)(v); *see*
15 U.S.C. §636(a)(36)(D)(i). The Act specifically states that this is the definition of employee *for
the purpose of determining a nonprofit organization's number of employees* under 15 U.S.C.
§636(a)(36)(D)(i), which is a CARES Act provision concerning borrower eligibility. Appellant
asserts that the CARES Act is ambiguous on the question of how to determine if a small business,
nonprofit organization, or other entity exceeds the 500 employee threshold. This is incorrect.
§636(a)(36)(D)(v) provides a definition of employee consistent with the "headcount" method
and—referencing the provision on loan eligibility size standards in the same sub-section—states
that this is the definition to be used in determining whether an entity complies with the 500-
employee limit or not. Under these circumstances, Appellant's arguments concerning the
applicability of 15 U.S.C. §636(a)(36)(D)(v) must be rejected.

There is ample evidence in the record demonstrating that Appellant had more than 500
employees. Appellant's 2019 Form 941s are consistent on this question. (AR at pp. 278, 396,
592, 790). When SBA asked Lender for information regarding Appellant's number of employees
per location and Lender forwarded this request to Appellant, Appellant stated that it had 680
total. (AR at pp. 75, 1411-12). Even ignoring this admission, there is no shortage of alternative

SBA_001772

evidence in the record to conclude that Appellant exceeded the 500-employee threshold and was consequently ineligible for its PPP loan. The Initial Decision is affirmed.

As a final note, Appellant reiterates several arguments that were rejected in the Initial Decision, including (1) allegations of discriminatory treatment based on Appellant's assertions that SBA used the FTE method to count employees to assess PPP eligibility for similar borrowers in past FLRDs, and (2) claims of religious discrimination violating the First Amendment, the Religious Freedom Restoration Act, and SBA regulations. The Initial Decision was correct not to address these arguments. Allegations that SBA has forgiven loans in similar previous cases are not an independent ground upon which OHA may permissibly issue a decision overturning the Final Loan Review Decision at issue. As for the constitutional and statutory claims, OHA's authority to conduct proceedings involving claims of civil rights violations is very narrow and does not extend to any of the violations alleged by Appellant. *See* 13 C.F.R. § 134.102(b). Appellant is free to pursue these claims in an Article III federal court if it wishes to do so.

### B.ii. Appellant's Objection to SBA's Supplement to the AR

Appellant's Objection to SBA's Supplement argues that "SBA's Supplement is not properly part of the Administrative Record and should not be included in it nor considered by the ALJ." It is true that SBA's Supplement does not resemble a typical Supplement to the Administrative Record. It does not provide new documents or new information. Presumably, SBA filed the Supplement in response to this Court's December 2, 2022 Order to Supplement AR, which ordered SBA to "immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration." (Portal Doc, *Order to Supplement AR*). SBA uploaded Appellant's Form 2483 in a separate filing. (Portal Doc, *Form 2483*). Accordingly, SBA's Supplement is best understood as SBA's attempt to respond to this Court's request for "additional pertinent documentation related to how it calculated Appellant's number of employees." Given the substance of the Supplement—essentially, a sequence of legal arguments supporting its use of the "headcount" method to determine that Appellant had more than 500 employees and was therefore not eligible for its PPP loan—it operates identically to a formal SBA response to Appellant's Petition for Reconsideration.

It is unclear why SBA did not simply label the Supplement as a Response. The Supplement was filed on December 8, 2022. SBA had until December 19, 2022 to file its Response to the Petition for Reconsideration. (Portal Doc, *PFR Scheduling Order*). The Supplement presents no new information or documents, and instead summarizes SBA's legal justification for denying loan forgiveness. It is best characterized as SBA's Response to Appellant's Petition for Reconsideration, and the undersigned interprets it as such. Appellant's Objection is therefore overruled.

### C. Conclusion

Based upon the foregoing, it is determined that the Appellant has not proven that the Initial Decision was based upon a clear error of fact or law. **Accordingly, Appellant's Petition for Reconsideration is DENIED. The Initial Decision, dated November 21, 2022, is AFFIRMED because it reached the correct result, with the proper analysis reflected in this Reconsidered Decision.**

6

**SO ORDERED.**

*Gary D. Smith*
—————————————
Gary D. Smith
Administrative Judge

7

SBA_001774

Table of Contents: 8289087101

SBA Review Summary
    Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Denial Justification Document
    Denial Justification Document - Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Loan Application Supporting Docs (Payroll)
    2nd Qtr 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    3508 Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30
    3508 Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38
    3rd Qtr 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46
    4th Qtr 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51
    April Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .56
    August Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .59
    Comparative FTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .62
    Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .75
    Form 990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .77
    FY19  Form 990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .135
    FY20 Form 990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .207
    Gordon College 2019Q1 AZ Quarterly Withholding Tax Return . . . . . . . . . . . . . . . . . . . . . . . . .273
    Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part I . . . . . . . . . . . . . . 275
    Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part II . . . . . . . . . . . . .276
    Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part III . . . . . . . . . . . . .277
    Gordon College 2019Q1 Federal 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .278
    Gordon College 2019Q1 Federal 941 Schedule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .280
    Gordon College 2019Q1 Federal 941-X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .281
    Gordon College 2019Q1 GA Employer Quarterly Tax and Wage Report Part I . . . . . . . . . . . . . . 296
    Gordon College 2019Q1 GA Employer Quarterly Tax and Wage Report Part II . . . . . . . . . . . . . 297
    Gordon College 2019Q1 GA Payment Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .298
    Gordon College 2019Q1 MA Employer Quarterly Report of Wages Paid to Each Employee . 299
    Gordon College 2019Q1 MA Employer Quarterly Wages Paid . . . . . . . . . . . . . . . . . . . . . . . . . . . .375
    Gordon College 2019Q1 MA Quarterly Return of Income Taxes WIthheld for Employer Paying
Weekly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .376
    Gordon College 2019Q1 MA Unemployment Contribution Report . . . . . . . . . . . . . . . . . . . . . . . . . 378
    Gordon College 2019Q1 MA Unemployment Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .379
    Gordon College 2019Q1 ME Employer Quarterly Tax Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . .380
    Gordon College 2019Q1 ME Employer Return of Income Tax Withholding . . . . . . . . . . . . . . . . . .381
    Gordon College 2019Q1 ND Income Tax Withholding Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .383
    Gordon College 2019Q1 NH Employer Quarterly Tax Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . .384
    Gordon College 2019Q1 NJ Employers Quarterly Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .385
    Gordon College 2019Q1 PA Employer Quarterly Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .387

SBA_000122

Gordon College 2019Q2 AZ Quarterly Withholding Tax Return...............................388

Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part I...............390

Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part II..............391

Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part III.............392

Gordon College 2019Q2 CT Employee Quarterly Earnings Report...........................393

Gordon College 2019Q2 CT Employer Contribution Return..................................394

Gordon College 2019Q2 CT Quarterly Reconciliation of Withholding........................395

Gordon College 2019Q2 Federal 941.....................................................396

Gordon College 2019Q2 Federal 941 Schedule B...........................................398

Gordon College 2019Q2 FL Employer Quarterly Report....................................399

Gordon College 2019Q2 FL Employer Quarterly Report Cnntinuation Sheet................400

Gordon College 2019Q2 GA Employer Quarterly Tax and Wage Report Part I...............401

Gordon College 2019Q2 GA Employer Quarterly Tax and Wage Report Part II..............402

Gordon College 2019Q2 GA Payment Voucher.............................................403

Gordon College 2019Q2 MA Employer Quarterly Report of Wages Paid to Each Employee.404

Gordon College 2019Q2 MA Employer Quarterly Report of Wages Paid to Each Employee.485

Gordon College 2019Q2 MA Employer Quarterly Wages Paid...............................566

Gordon College 2019Q2 MA Quarterly Return of Income Taxes WIthheld for Employer Paying Weekly..............................................................................567

Gordon College 2019Q2 MA Unemployment Contribution Report...........................569

Gordon College 2019Q2 MA Unemployment Voucher......................................570

Gordon College 2019Q2 ME Employer Quarterly Tax Report...............................571

Gordon College 2019Q2 ME Employer Return of Income Tax Withholding..................573

Gordon College 2019Q2 ND Income Tax Withholding Return...............................574

Gordon College 2019Q2 NH Employer Quarterly Tax Report...............................575

Gordon College 2019Q2 NJ Employers Quarterly Report..................................576

Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return.......................................................578

Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement I........................................580

Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement II.......................................581

Gordon College 2019Q2 OH Quarterly Summary..........................................582

Gordon College 2019Q2 PA Employer Quarterly Return...................................583

Gordon College 2019Q3 AZ Quarterly Withholding Tax Return............................584

Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part I...............586

Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part II..............587

Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part III.............588

Gordon College 2019Q3 CT Employee Quarterly Earnings Report...........................589

Gordon College 2019Q3 CT Employer Contribution Return..................................590

Gordon College 2019Q3 CT Quarterly Reconciliation of Withholding........................591

Gordon College 2019Q3 Federal 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .592
Gordon College 2019Q3 Federal 941 Schedule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .594
Gordon College 2019Q3 Federal 941-X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .595
Gordon College 2019Q3 FL Employer Quarterly Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .610
Gordon College 2019Q3 FL Employer Quarterly Report Continuation Sheet . . . . . . . . . . . . . . . 611
Gordon College 2019Q3 GA Employer Quarterly Tax and Wage Report Part I . . . . . . . . . . . . .612
Gordon College 2019Q3 GA Employer Quarterly Tax and Wage Report Part II . . . . . . . . . . . . .613
Gordon College 2019Q3 GA Payment Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .614
Gordon College 2019Q3 MA Employer Quarterly Report of Wages Paid to Each Employee . . 615
Gordon College 2019Q3 MA Employer Quarterly Report of Wages Paid to Each Employee . . 688
Gordon College 2019Q3 MA Employer Quarterly Wages Paid . . . . . . . . . . . . . . . . . . . . . . . . . . .761
Gordon College 2019Q3 MA Quarterly Return of Income Taxes WIthheld for Employer Paying
Weekly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .762
Gordon College 2019Q3 MA Unemployment Contribution Report . . . . . . . . . . . . . . . . . . . . . . . 764
Gordon College 2019Q3 MA Unemployment Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .765
Gordon College 2019Q3 ME Employer Quarterly Tax Report . . . . . . . . . . . . . . . . . . . . . . . . . .766
Gordon College 2019Q3 ME Employer Return of Income Tax Withholding . . . . . . . . . . . . . . . .767
Gordon College 2019Q3 ND Income Tax Withholding Return . . . . . . . . . . . . . . . . . . . . . . . . . .769
Gordon College 2019Q3 NH Employer Quarterly Tax Report . . . . . . . . . . . . . . . . . . . . . . . . . .770
Gordon College 2019Q3 NJ Employers Quarterly Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . .771
Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and
Unemployment Insurance Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .773
Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and
Unemployment Insurance Return Attachement I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .775
Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and
Unemployment Insurance Return Attachement II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .776
Gordon College 2019Q3 PA Employer Quarterly Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .777
Gordon College 2019Q3 West Chester PA Employee Local Wage List . . . . . . . . . . . . . . . . . . .778
Gordon College 2019Q4 AZ Quarterly Withholding Reconciliation Return . . . . . . . . . . . . . . . . .779
Gordon College 2019Q4 AZ Quarterly Withholding Tax Return . . . . . . . . . . . . . . . . . . . . . . . . .780
Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part I . . . . . . . . . . . . .782
Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part II . . . . . . . . . . . . .783
Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part III . . . . . . . . . . . . .784
Gordon College 2019Q4 CT Annual Reconciliation of Withholding . . . . . . . . . . . . . . . . . . . . . . .785
Gordon College 2019Q4 CT Employee Quarterly Earnings Report . . . . . . . . . . . . . . . . . . . . . . .787
Gordon College 2019Q4 CT Employer Contribution Return . . . . . . . . . . . . . . . . . . . . . . . . . . . .788
Gordon College 2019Q4 CT Quarterly Reconciliation of Withholding . . . . . . . . . . . . . . . . . . . . .789
Gordon College 2019Q4 Federal 941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .790
Gordon College 2019Q4 Federal 941 Schedule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .792
Gordon College 2019Q4 IN Income Tax Withholding Return . . . . . . . . . . . . . . . . . . . . . . . . . . .793
Gordon College 2019Q4 MA Employer Quarterly Report of Wages Paid to Each Employee . . 795

JA0210

Gordon College 2019Q4 MA Employer Quarterly Report of Wages Paid to Each Employee . .873

Gordon College 2019Q4 MA Employer Quarterly Wages Paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . .951

Gordon College 2019Q4 MA Income Taxes withheld for Employers . . . . . . . . . . . . . . . . . . . . . . .952

Gordon College 2019Q4 MA Quarterly Return of Income Taxes WIthheld for Employer Paying

Weekly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .953

Gordon College 2019Q4 MA Unemployment Contribution Report . . . . . . . . . . . . . . . . . . . . . . . . 955

Gordon College 2019Q4 MA Unemployment Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .956

Gordon College 2019Q4 NY Quarterly Combined Withholding, Wage Reporting, and

Unemployment Insurance Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .957

Gordon College 2019Q4 NY Quarterly Combined Withholding, Wage Reporting, and

Unemployment Insurance Return Attachement I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .959

Gordon College 2019Q4 OH INcome Tax Withheld Voucher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 960

Gordon College 2019Q4 OH Quarterly Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .962

July Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .963

June Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .966

May Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 969

October Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .972

Payroll . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 975

PPP Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 987

PPP Worksheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1007

SBA Loan Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1008

September Payroll 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1010

Worksheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1013

Worksheet 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1101

Worksheet 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1189

Miscellaneous

customer response to eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1277

customer response to eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1279

GORDON COLLEGE SBA letter - 2021-12-03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1281

GORDON COLLEGE SBA letter - 2021-12-03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1295

SBA Package 3.24.2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1309

SBA Correspondence - All documents

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1405

SBA Correspondence - Request Clarifications

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1407

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1409

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1411

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1413

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1416

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1418

SBA Loan Review.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1421

JA0211

SBA Form 3508

3508 Form_1630682389506.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1423

Attachments

GORDON COLLEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1431

2019 tax return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1432

Draft - Deliberative and Pre-Decisional 8289087101.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1526

Reviewer's Workbook . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1527

JA0212

Lender
# Citizens Bank, National Association

Borrower
# GORDON COLLEGE

| Review Type: | R3 Review | |
|---|---|---|
| Assigned to: | Unassigned | Auto Review Failed |
| Workflow Status: | Not Approved | |

## About Request

Draw Type : **First Draw**
SBA # : **8289087101**
Lender PPP Loan # : **880881006961718**
Borrower Name: **GORDON COLLEGE**
Borrower Type: **Non-Profit Organization**
PPP Loan Disbursement Date: **04/24/2020**

NAICS Code: **Colleges, Universities, and Professional Schools (611310)**

| | |
|---|---|
| Initially Submitted on | 09/03/2021 (Sept. 3, 2021, 3:19 p.m.) |
| Lender Decision | Approved in full |
| Last Updated by SBA on | 04/12/2022 |
| Last Updated by Lender on | 10/02/2021 |
| Sent to Auto Review | Sept. 7, 2021, 11:34 a.m. |
| Last Update from Auto Review | Oct. 5, 2021, 1:44 p.m. |
| COVID Flag | N/A |

| Name | Email | Phone |
|---|---|---|
| Adam Bronkella | adam.bronkella@citizensbank.com | 5083614305 |
| Irina Porto | irina.porto@citizensbank.com | 6088862122 |
| Cosmo Gentile | cosmo.gentile@citizensbank.com | 14014745464 |
| Cheryl Grande | cheryl.grande@citizensbank.com | 4016328687 |
| Lorie Lamb | lorie.lamb@citizensbank.com | 6782450542 |
| Donald Newberg | donald.e.newberg@citizensbank.com | 4012586713 |
| Barbara Gaulien | barbara.l.gaulien@citizensbank.com | 4017873872 |

## Forgiveness Results

| | |
|---|---|
| Loan Amount | $7,046,037.00 |
| Lender Requested Unforgiven Amount | - $0.00 (0.00%) |
| Lender Requested Forgiveness Amount | $7,046,037.00 (100.00%) |
| **SBA Final Forgiveness Amount** | **$ 0.00** |

**JA0214**
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000128
Page 2 of 22
2 of 1562

## Review Progress

**Reviewed By**

Frank Lomeli

7 months, 1 week ago

Recommends *Not Approved*

I have reviewed the Paycheck Protection Program (PPP) loan forgiveness application submitted by the borrower, the forgiveness decision submitted by the lender, supporting documentation, and relevant Contractor reports on the loan, for any indications of fraud, abuse, negligence, misrepresentation, misconduct by the lender or borrower, ineligibility or material noncompliance with the PPP and Forgiveness requirements. My recommendation is based upon my review of the preceding items, documentation submitted with the Borrower's PPP loan forgiveness application, and documents submitted by the lender in connection with this loan review. According to guidance which I have been instructed to follow for reviewing and recommending forgiveness, this submission is an acknowledgement of my completion of relevant review and procedural questions, and an attestation that I have made this recommendation in accordance with PPP requirements.

**Accepted By**

Lakeidra McBride_fte_lr

7 months, 1 week ago

Recommends *Not Approved*

**Higher Level Authority Reviewed By**

Frangel Cannizzaro

4 months, 1 week ago

Recommends *Not Approved*

**OCA Reviewed By**

Brittany Reid

4 months, 1 week ago

Recommends *Not Approved*

Decision Letter *Denial Justification Document - Term*

Decision Narrative
SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria.

JA0215
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000129
Page 3 of 22
3 of 1562

## Schedule A Information

| Field | Lender Supplied | SBA Verified |
|---|---|---|
| Cash Compensation (Box 1) | $ 10,165,302.00 | $ |
| Average FTE (Box 2) | 459.3 | |
| Salary/Hourly Wage Reduction (Box 3) | $ 0.00 | $ |
| Cash Compensation (Box 4) | $ 614,593.58 | $ |
| Average FTE (Box 5) | 14.0 | $ |
| Total amount paid by Borrower for employer contributions for employee health insurance | $ 0.00 | $ |
| Total amount paid by Borrower for employer contributions to employee retirement plans | $ 0.00 | $ |
| Total amount paid by Borrower for employer state and local taxes assessed on employee compensation | $ 0.00 | $ |
| Total amount paid to owner-employees/self-employed individual/general partners | $ 0.00 | $ |
| Payroll Costs (add lines 1, 4, 6, 7, 8, and 9) | $ 10,779,895.58 | $ |
| Average FTE during the Borrower's chosen reference period | 422.3 | |
| Total Average FTE (add lines 2 and 5) | 473.3 | |
| FTE Reduction Quotient (divide line 12 by line 11) or enter 1.0 if FTE Safe Harbor is met | 1.000000000 | |

## Payroll and Non-Payroll Expenses

| Field | Lender Supplied | SBA Verified |
|---|---|---|
| Payroll Costs: | $ 10,779,895.58 | $ |
| Business Rent or Lease Payments: | $ 0.00 | $ |
| Business Mortgage Interest Payments: | $ 0.00 | $ |
| Business Utility Payments: | $ 0.00 | $ |
| Covered Operations Expenditures: | $ 0.00 | $ |
| Covered Property Damage Costs: | $ 0.00 | $ |
| Covered Supplier Costs: | $ 0.00 | $ |
| Covered Worker Protection Expenditures: | $ 0.00 | $ |

## Borrower Employment Detail

| Field | Lender Supplied |
|---|---|
| Employees at Time of Loan Application | 496 |
| Employees at Time of Forgiveness Application | 435 |
| EIDL Advance Amount | $ 0.00 |
| EIDL Application Number | |
| Payroll Schedule (Weekly,Biweekly,Twice Per Month, Monthly, Other) | None |
| Covered Period | April 24, 2020 to Oct. 8, 2020 |
| Alternative Covered Period | |

JA0216
08/17/2022 5:04 p.m. UTC    SBA Loan # 8289087101    SBA_000130    Page 4 of 22
File: 8289087101_sba_review_summary.pdf   [2022/08/17 18:05:47]    4 of 1562

**SBA PPP Loan & Forgiveness Review Procedures**

### A. Eligibility

1. **Are the SBA Loan Records free of any indication that special handling may be required during this review? You must answer NO to all three of the following sub-questions, to answer yes to this question.** 

   a. Does the file have a report for further action provided by the Previous Reviewer?

     ◦ If "YES", discontinue work on this loan and contact your supervisor to seek permission to escalate to an R3.
     ◦ If "NO", continue to b.

   b. Are there unresolved Hold Codes/Flags (if applicable)?

     ◦ If "YES", discontinue work on this loan and contact your supervisor to seek permission to escalate to an R3.
     ◦ If "NO", continue to c.

   c. Are there any Chron Entries in the Centralized Loan Chron System (a.k.a. CHRON) that indicate potential misuse of funds or fraud?

     ◦ If "YES", discontinue work on this loan and contact your supervisor to seek permission to escalate to an R3.
     ◦ If "NO", answer YES.
     ◦ If you have any questions, please ask your team lead/supervisor.

2. **In reviewing the SBA Form 2483 Borrower Application Form or Lender's equivalent form, did you find that the form was completed, signed and dated with all certifications initialed by the borrower and that questions (1), (2), (5) and (6) were answered "No"?** 

     ◦ If "YES", continue to the next question.
     ◦ If "NO", recommend denial based on the applicable question. If the Approver concurs with this recommendation, the loan review will be escalated to for a final decision in HQ.

3. **Was the SBA Form 3508 Request for Forgiveness Form or Lender's equivalent form completed, signed, and dated with all attestations completed by the borrower?** 

     **a. If "YES," continue to the next question.**

     **b. If "NO," confirm with the lender that the borrower has correctly completed the form.** If the lender responds that they have, discontinue work on this loan and contact your supervisor to seek permission to escalate to an R3. If the lender can provide an updated form that is properly completed, obtain the updated copy and proceed to the next question.

4. **Is the borrower structure eligible?**

     ◦ C-Corporation, S-Corporation, LLC
     ◦ Sole proprietorship
     ◦ Independent contractor
     ◦ Partnership
     ◦ Nonprofit organization described in IRC § 501(c)(3)
     ◦ Housing cooperative, section 501(c)(6) organization, and destination marketing organizations employing less than 300 people
     ◦ News organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS 511110 or 5151.
     ◦ Faith-based organization that does not have 501(c)(3) status
     ◦ Veterans organization described in IRC § 501(c)(19)
     ◦ IRC 501(c)(12) electric and telephone co-operative
     ◦ Tribal business concern described in 15 USC § 657a(b)(2)(c)
     ◦ Nonprofit hospital owned by governmental entities if they are described in IRC § 501(c)(3) (or otherwise adhere to the parameters of IRC § 501(c)(3) and are tax exempt under IRC § 115) and receive less than 50 percent of their funding from state or local government sources, exclusive of Medicaid.

   a. **If the borrower's legal organization structure is listed above, answer YES to this question and advance to the next question.**

   b. **If the borrower's legal organization structure is not listed above, answer NO to this question and recommend denial of loan eligibility. If the Approver concurs with this recommendation, the loan review will be escalated to Higher Authority Review for a final decision**

5. **Is the answer to question (7) on the 2483 or Lender equivalent form "No"? If so, the amounts paid to any employee whose principal place of residence is outside the U.S must be subtracted from the loan amount eligible for forgiveness during the Loan Amount Analysis.**



6. **Does the Borrower meet all Size Standards requirements if affiliates are being considered? The following steps will guide you through this determination including affiliates.**



   **For R2 & R3 reviews, reference the [Size Standards Affiliation Instructions](#).**

   a. Does the borrower have affiliates? (Reference [Applicable Affiliation Rules](#))

   Affiliates may be identified in:
   ◦ Addendum A to SBA Form 2483 (PPP Borrower Application)
   ◦ During the automated review, or
   ◦ On the Loan Forgiveness Application, if the borrower checked the box to indicate that it, together with its affiliates, received PPP loans in excess of $2 Million.

   **If YES, continue to b.**
   **If NO, continue to c to calculate Borrower's compliance with size standard.**

   b. If the borrower has affiliates, do any of the following affiliate exemptions apply, causing the affiliates to not affect the size standard?

   ◦ Religious Exemption (Religious Addendum Required)
   ◦ Any business concern with not more than 500 employees per location that is assigned a NAICS code beginning with 72, as of the disbursement date of the loan.
   ◦ Any business concern operation as a franchise that is assigned a franchise identifier code by the SBA.
   ◦ Any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958 (15 USC 681).

   **If YES, calculate Borrower's compliance with PPP size standards on standalone basis (do not count affiliates). Continue to c.**
   **If NO, the Borrower's affiliates must be included in the calculation to determine compliance with PPP size standards. Continue to c.**
   **If additional information is required to determine the size of the borrower and its affiliates, issue an RFP for the borrower to complete the Affiliation Worksheet.**
   **If you have any questions, please ask your team lead/supervisor.**

   c. Does the borrower (including any applicable affiliates) have 500 or fewer (or 300 if applicable) employees?

   **If YES, continue to the next question.**
   **If NO, continue to e.**

   d. Does the borrower meet SBA size standards set forth in [13 CFR 121.201](#), including the revenue-based or employee-based industry size standard for the applicant's primary industry ("Industry Size Standard")?

   **If YES, continue to the next question.**
   **If NO, continue to e.**

   e. Does the borrower meet both tests in SBA's Alternative Size Standard?
   Note: Borrowers can qualify for PPP if they meet both tests in SBA's "Alternative Size Standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

   **If YES, continue to the next question.**
   **If NO, answer NO and recommend denial of loan eligibility. If the Approver concurs with this recommendation, the loan review will be escalated to Higher Authority Review for a final decision.**

7. **In reviewing the SBA Form 2483 Borrower Application Form or Lender's equivalent form, did you find that Question (4) was answered "No" - Additional information is required otherwise.**



   ◦ If question (4) is answered "YES", Addendum B is needed. If not provided, request from lender.

JA0218
08/17/2022 5:04 p.m. UTC          SBA Loan # 8289087101          Page 6 of 22
File: 8289087101_sba_review_summary.pdf   [2022/08/17 18:05:47]          6 of 1562
SBA_000132

8.   **Is the borrower eligible under 13 C.F.R. §120.110 (except as modified by PPP requirements)? Reference the Platform Review Guide for the list of ineligible types of businesses and organizations.** 

  ◦ If YES, answer Yes to this question.
  ◦ If NO or if the borrower is listed on the ineligible business list, answer NO to this question and recommend denial of loan eligibility. If the Approver concurs with this recommendation, the loan review will be escalated to Higher Authority Review for a final decision.

9.   **In reviewing the SBA Form 2483 Borrower Application Form or Lender's equivalent form, did you find that Question (3) was answered "No" - Additional information is required otherwise.** 

  ◦ If question (3) is answered "YES", Addendum A is needed. If not provided, request from lender.

10.   **Did the borrower provide information with its application to demonstrate that it was in operation on February 15, 2020 and it had employees to whom it paid salaries or paid independent contractors on that date? For seasonal businesses, did the borrower provide information with its application to demonstrate that it was in operation for any 8-week period between February 15, 2019 and September 15, 2019?** 

  ◦ If YES, continue to the next question.
  ◦ If NO, request from lender.
  ◦ If information provided demonstrates that borrower did not meet operational criteria, loan is ineligible. Answer NO, complete review and Recommend denial. If the Approver concurs with this recommendation, the loan review will be escalated for a final decision in HQ.
  ◦ If you have any questions, please ask your team lead/supervisor.

## B. Loan Amount Analysis

1.   **Was the loan amount supported by sufficient documentation and calculated correctly? Use Maximum Loan Calculator to verify the loan amount to complete analysis. [Reference How to Calculate Loan Amounts.](#)** 

  a. Did the borrower provide payroll documentation to fully support the number of employees on the 2483 (or equivalent) and the loan amount calculation.

  ◦ If YES, continue to b.
  ◦ If NO, request from lender - if lender states it is not available, answer NO to question 1 and recommend denial of loan eligibility. If the Approver concurs with this recommendation, the loan review will be escalated to a Higher Authority Review for a final decision.
  b. Did the borrower accurately calculate the loan amount, including Average Monthly Payroll?

  ◦ If YES, advance to next question.
  ◦ If NO, contact lender in writing to resolve discrepancy. If correction is needed, enter correct Loan Amount in SBA Verified section of the platform. Make notes in platform explaining discrepancies. Continue to next question once the issue is resolved.
  ◦ If you have any questions, please ask your team lead/supervisor.
  **Tolerance Level:**

  If the SBA calculated loan amount is within 5% or $25,000, whichever is less, of the lender loan amount, continue with the review.

  If the SBA calculated loan amount has a greater difference from the lender loan amount than the tolerance variance allows, use notification procedures to notify the lender that SBA will be recommending reduction of the forgiveness amount. Clearly explain the decision in your Platform Notes.

2.   **Was the PPP Note in compliance with PPP Loan Program Requirements?** 

  a. Do the Note amount, disbursed amount, and approved amount all match?

  ◦ If YES, continue to b.
  ◦ If NO, contact the lender for clarification.
  ◦ If you have any questions, please ask your team lead/supervisor.
  b. Does the Note have the correct terms, including the date of the note, interest rate, and maturity?

  ◦ If YES, advance to the next question.
  ◦ If NO, inform lender that terms must comply with PPP rules and regulations if there is an amount remaining after forgiveness and advance to the next question.

**JA0219**
08/17/2022 5:04 p.m. UTC                    SBA Loan # 8289087101                              SBA_000133
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]          Page 7 of 22
                                                                          7 of 1562

3. **Did the Loan Transcript support PPP Loan Program requirements?**   

a. Does the amount disbursed reflected on the Loan Transcript match the Loan Amount supplied by the lender with the forgiveness decision?

- If YES, continue to b.
- If NO, contact lender to resolve discrepancy. If correction is needed, enter correct disbursement date in SBA Verified section of the platform to ensure the interest paid on any amount forgiven is calculated correctly.
- If you have any questions, please ask your team lead/supervisor.

b. Does the disbursement date reflected on transcript match the disbursement date provided with lender's forgiveness decision?

- If YES, continue to c.
- If NO, contact lender to resolve discrepancy. If correction is needed, enter correct disbursement date in SBA Verified section of the platform to ensure the interest paid on any amount forgiven is calculated correctly.
  c. Does the transcript reflect deferment of borrower payments, as required by PPP program rules?

  - If YES, (no borrower payments are reflected), answer YES and continue.
  - If NO, (borrower payments are reflected), request clarification from lender to determine if borrower payments were voluntary and confirmation that loan was deferred as required.
  - If you have any questions, please ask your team lead/supervisor.

4. **Was the refinance of an EIDL loan in compliance with PPP Loan Program Requirements and, if not, was the eligible loan amount adjusted? Note: if there is no EIDL loan that needed to be refinanced, answer YES and continue to the next question.**   

a. Was the EIDL Loan refinanced by the PPP loan approved by SBA between January 31, 2020 and April 3, 2020?

- If YES, advance to b.
- If NO, the EIDL Loan was not eligible to be refinanced by the PPP loan, therefore, the portion of the PPP loan used for the EIDL Loan refinance is not eligible for forgiveness. Contact lender to resolve discrepancy. Once resolved, enter the amount of the loan eligible to be forgiven in the Loan Amount field in SBA Verified section of the platform.
- If you have any questions, please ask your team lead/supervisor.

b. Was the EIDL Loan refinanced by the PPP loan paid in full with PPP loan proceeds?

- If YES, advance to the next question.
- If the proceeds intended to refinance the EIDL loan were disbursed to the borrower and the EIDL Loan isn't paid in full, that portion of the PPP loan is ineligible for forgiveness. Contact lender to resolve discrepancy. Contact lender to resolve discrepancy. Once resolved, enter the amount of the loan eligible to be forgiven in the Loan Amount Field in SBA Verified section of the platform. Continue to the next question.

5. **Were the terms of the PPP Note Correct?**

a. Were fees charged to Borrower (by Lender or an Agent)? Is the Note signed by the Borrower?

- If YES, continue to b.
- If NO, contact the lender for clarification.
- If you have any questions, please ask your team lead/supervisor.

b. Is the Note signed by the Borrower?

- If YES, continue to the next question.
- If NO, request a copy of the signed Note from the lender.
- If you have any questions, please ask your team lead/supervisor.

## C. Forgiveness Amount Analysis

JA0220
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000134
Page 8 of 22
8 of 1562

1. **Was PPP Loan Forgiveness Application Form 3508, 3508EZ, 3508S or Lender equivalent form completed, signed, and dated with all certifications initialed and all required supporting documentation submitted by the Lender?** 

   ○ If YES to the applicable option below, advance to the next question.
   ○ If NO, request from lender.
   ○ If you have any questions, please ask your team lead/supervisor.

   a. If the borrower used SBA Form 3508S, was the PPP loan amount received by the borrower was $150,000 or less?

   ○ If SBA Form 3508s was not used, skip this question.
   ○ If YES, advance to Question b.
   ○ If NO, request the correct form from the lender and appropriate documentation. Do NOT withdraw the forgiveness request.
   ○ If you have any questions, please ask your team lead/supervisor.

   b. If the borrower used SBA Form 3508EZ, was the borrower eligible to use that form (Did the borrower provide documentation to support the certification that salaries and wages were not reduced by more than 25 percent during the covered period, as well as documentation supporting the applicable certification on Page 2 of the forgiveness application)?

   ○ If SBA Form 3508EZ was not used, skip this question.
   ○ If YES, continue to question c.
   ○ If the borrower was not eligible to use this form, or did not provide necessary documentation, do NOT withdraw the application. Ask the Lender to complete the correct form and submit supporting documentation.
   ○ If you have any questions, please ask your team lead/supervisor.

   c. If the borrower used SBA Form 3508 and selected FTE Reduction Safe Harbor 1 or 2 or the TE Reduction Exception, confirm that the borrower provided documentation to support the selected FTE Safe Harbor or the FTE Reduction Exception.

   ○ If SBA Form 3508 was not used, skip this question.
   ○ If documentation provided demonstrates the borrower was eligible to use the form, continue to the next question.
   ○ If supporting documentation was not provided, request from lender.
   ○ If documentation provided demonstrates the borrower doesn't qualify for the selected FTE Safe Harbor, determine if forgiveness reductions are required. Continue to next question.

JA0221
08/17/2022 5:04 p.m. UTC                    SBA Loan # 8289087101                    SBA_000135
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]                    Page 9 of 22
                                                                                    9 of 1562

2.

**Were payroll costs and underlying documents free from inconsistencies, discrepancies, and ineligible expenses when verifying the following? Use Forgiveness Amount Calculator (Deep Dive Calculator) to complete analysis when something in the file causes you to question the accuracy of the borrower's or lender's calculation.** 

a. Verify the payroll records account for the # of employees shown on 3508, 3508EZ, 3508S or Lender equivalent form.

b. Verify that the documentation shows the borrower shown on 3508, 3508EZ, 3508S or Lender equivalent form.

c. Verify that the borrowers 3508, 3508EZ, 3508S, or lender equivalent selected a 24 or 8-week covered period or alternative covered period if elected by the borrower, and that it matches the forgiveness platform. Note that only PPP prior to June 5, 2020, may use the 8-week period.

d. Verify that the payroll eligible cash compensation and non-cash benefit payments from the covered period or the alternative payroll covered period are included in the payroll cost calculation on the 3508, 3508EZ, 3508S, or lender equivalent form. Note: The Payroll records may reflect a time-period shorter than the stated covered period. If the borrower used all the loan proceeds for which the borrower is requesting forgiveness and the borrower's loan forgiveness application accounts for any salary/wage reductions in excess of 25 percent for the full covered period, or FTE reductions if applicable, they may submit the forgiveness request at that time.

e. Verify individual employee cash compensation does not exceed an annual salary of $100,000, as prorated for the Covered Period. For an 8-week Covered Period, that total is $15,385. For a 24-week Covered Period, that total is $46,154. For periods greater than 8 or less than 24 weeks, use the pro-rated salary amount.

f. Verify owner (5% or more ownership) cash compensation in total across all businesses does not exceed allowable caps. For an 8-week Covered Period, the cap is $15,385 or 8/52 of 2019 compensation, whichever is less. For a 24-week Covered Period, the cap is $20,833, or 2.5 months' worth of their 2019 compensation in 2019, whichever is less.

g. Verify all payroll costs incurred or paid during the Covered Period or Alternative Payroll Covered Period, or that the payments were made after the Covered Period or Alternative Payroll Covered Period for costs incurred during the applicable period.

h. Verify that at least 60% of the forgiveness amount as shown on the 3508EZ, 3508S, 3508 or lender equivalent, consists of eligible payroll costs.

◦ If YES, advance to the next question.
◦ If NO, contact the lender to resolve discrepancies. If the amount of Payroll costs supplied with the lender's decision is incorrect, enter the correct amount in the SBA Verified section of the platform.

3.

**Did the borrower accurately calculate the total eligible payroll costs incurred during the Covered Period or Alternative Covered period?** 

◦ If YES, advance to the next Question.
◦ If NO, contact the lender to resolve discrepancies. If the amount of Payroll costs supplied with the lender's decision is incorrect, enter the correct amount in the SBA Verified section of the platform.

4.

**Were non-payroll expenses and documents free from any inconsistencies, discrepancies, and unreasonable or ineligible expenses?** 

**For R2 reviews, reference the Non-payroll expenses.**

◦ a. Verify that the rent obligation, mortgage interest obligation or utility is in the borrower's name.
◦ b. Verify existence prior to Feb. 15, 2020.
◦ c. Verify that the payments made were during the covered period (and applied appropriately, if applicable), or that the payments were made after the covered period for costs incurred during the covered period.
  ■ If YES, advance to the next question.
  ■ If NO, contact the lender to resolve discrepancies.

**JA0222**
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000136
Page 10 of 22
10 of 1562

5.

**Did the borrower accurately calculate the total eligible non-payroll costs incurred during the Covered Period?**

**For R2 reviews, reference the <u>Non-payroll expenses</u>.**



- If YES, advance to the next question.
- If NO, contact the lender to resolve discrepancies. If the amount of Non-payroll costs supplied with the lender's decision is incorrect, enter the correct amount in the SBA Verified section of the platform.

6.

**Do the calculations in lender's loan forgiveness decision agree with supplied decision data and supporting documentation?**



- If YES, complete review.
- If NO, contact lender to resolve discrepancy. If correction is needed, enter correct value in appropriate field in SBA Verified section of the platform. /li>

*If the SBA calculated loan forgiveness amount is within 5% or $25,000, whichever is less, of the lender loan forgiveness amount, please advance.*

*If the SBA calculated loan forgiveness amount has a greater difference from the lender loan forgiveness amount than the tolerance variance allows, use notification procedures to notify the lender that SBA will be recommending reduction of the forgiveness amount. Clearly explain the decision in your Platform Notes.*

7.

**If the borrower used SBA Form 3508 and no safe harbor is applicable, is the borrower calculation as reported on the Schedule A and Schedule A Worksheet consistent with provided supporting documentation?**



- If YES, advance to the next question.
- If NO, contact lender to resolve discrepancy. If correction is needed, enter correct Salaries/Hourly Wage Reduction/FTE reduction quotient in SBA Verified section of the platform. /li>
- If SBA Form 3508 was not used, this question is not applicable.
- If you have any questions, please ask your team lead/supervisor.

8.

**If the borrower used SBA Form 3508S, does the borrower have affiliates that received loans of $2 million or greater in the aggregate?**



- If SBA Form 3508S was not used, skip this question.
- If NO, advance to the next question.
- If YES, inform lender in writing that borrower must reapply using the appropriate form. Please seek concurrence from your team lead/supervisor to withdraw the lender's decision.
- If you have any questions, please ask your team lead/supervisor.

**JA0223**

08/17/2022 5:04 p.m. UTC                    SBA Loan # 8289087101

File: 8289087101_sba_review_summary.pdf     [2022/08/17 18:05:47]

SBA_000137

Page 11 of 22

11 of 1562

## Supporting Forgiveness Documentation

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| Denial Justification Document - Term | April 12, 2022, 4:37 p.m. | Denial Justification Document | View |
| SBA Package 3.24.2022 | March 25, 2022, 4:37 p.m. | Miscellaneous | View |
| Gordon College 2019Q4 OH Quarterly Summary | March 25, 2022, 4:36 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 OH INcome Tax Withheld Voucher | March 25, 2022, 4:36 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return | March 25, 2022, 4:35 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement I | March 25, 2022, 4:35 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 4:35 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 4:35 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Unemployment Voucher | March 25, 2022, 4:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Unemployment Contribution Report | March 25, 2022, 4:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Quarterly Return of Income Taxes WIthheld for Employer Paying Weekly | March 25, 2022, 4:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Income Taxes withheld for Employers | March 25, 2022, 4:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 MA Employer Quarterly Wages Paid | March 25, 2022, 4:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 IN Income Tax Withholding Return | March 25, 2022, 4:32 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 Federal 941 | March 25, 2022, 4:31 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 Federal 941 Schedule B | March 25, 2022, 4:31 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CT Quarterly Reconciliation of Withholding | March 25, 2022, 4:29 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CT Employer Contribution Return | March 25, 2022, 4:29 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CT Employee Quarterly Earnings Report | March 25, 2022, 4:29 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CT Annual Reconciliation of Withholding | March 25, 2022, 4:29 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part III | March 25, 2022, 4:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 4:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 CA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 4:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 AZ Quarterly Withholding Tax Return | March 25, 2022, 4:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q4 AZ Quarterly Withholding Reconciliation Return | March 25, 2022, 4:28 p.m. | Loan Application Supporting Docs (Payroll) | View |

JA0224
08/17/2022 5:04 p.m. UTC                     SBA Loan # 8289087101                     SBA_000138
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]                  Page 12 of 22
                                                                                  12 of 1562

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| Gordon College 2019Q3 West Chester PA Employee Local Wage List | March 25, 2022, 3:43 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 PA Employer Quarterly Return | March 25, 2022, 3:40 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return | March 25, 2022, 3:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement II | March 25, 2022, 3:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement I | March 25, 2022, 3:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 NJ Employers Quarterly Report | March 25, 2022, 3:38 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 NH Employer Quarterly Tax Report | March 25, 2022, 3:38 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 ND Income Tax Withholding Return | March 25, 2022, 3:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 ME Employer Return of Income Tax Withholding | March 25, 2022, 3:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 ME Employer Quarterly Tax Report | March 25, 2022, 3:34 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 3:14 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 3:13 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Unemployment Voucher | March 25, 2022, 3:13 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Unemployment Contribution Report | March 25, 2022, 3:13 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Quarterly Return of Income Taxes WIthheld for Employer Paying Weekly | March 25, 2022, 3:13 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 MA Employer Quarterly Wages Paid | March 25, 2022, 3:13 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 GA Payment Voucher | March 25, 2022, 3:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 GA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 3:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 GA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 3:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 FL Employer Quarterly Report | March 25, 2022, 3:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 FL Employer Quarterly Report Continuation Sheet | March 25, 2022, 3:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 Federal 941-X | March 25, 2022, 3:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 Federal 941 | March 25, 2022, 3:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 Federal 941 Schedule B | March 25, 2022, 3:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 CT Quarterly Reconciliation of Withholding | March 25, 2022, 3:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 CT Employer Contribution Return | March 25, 2022, 3:04 p.m. | Loan Application Supporting Docs (Payroll) | View |

**JA0225**
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf     [2022/08/17 18:05:47]

SBA Loan # 8289087101

SBA_000139
Page 13 of 22
13 of 1562

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| Gordon College 2019Q3 CT Employee Quarterly Earnings Report | March 25, 2022, 2:57 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part III | March 25, 2022, 2:57 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 2:57 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 AZ Quarterly Withholding Tax Return | March 25, 2022, 2:57 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q3 CA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 2:57 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 PA Employer Quarterly Return | March 25, 2022, 2:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 OH Quarterly Summary | March 25, 2022, 2:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return | March 25, 2022, 2:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement II | March 25, 2022, 2:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 NY Quarterly Combined Withholding, Wage Reporting, and Unemployment Insurance Return Attachement I | March 25, 2022, 2:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 NJ Employers Quarterly Report | March 25, 2022, 2:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 NH Employer Quarterly Tax Report | March 25, 2022, 2:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 ND Income Tax Withholding Return | March 25, 2022, 2:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 ME Employer Return of Income Tax Withholding | March 25, 2022, 2:38 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 ME Employer Quarterly Tax Report | March 25, 2022, 2:38 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Unemployment Voucher | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Unemployment Contribution Report | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Quarterly Return of Income Taxes WIthheld for Employer Paying Weekly | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 MA Employer Quarterly Wages Paid | March 25, 2022, 2:37 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 GA Payment Voucher | March 25, 2022, 2:33 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 GA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 2:33 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 GA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 2:33 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 FL Employer Quarterly Report Cnntinuation Sheet | March 25, 2022, 2:32 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 FL Employer Quarterly Report | March 25, 2022, 2:32 p.m. | Loan Application Supporting Docs (Payroll) | View |

JA0226
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000140
Page 14 of 22
14 of 1562

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| Gordon College 2019Q2 Federal 941 | March 25, 2022, 2:31 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 Federal 941 Schedule B | March 25, 2022, 2:31 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CT Quarterly Reconciliation of Withholding | March 25, 2022, 2:31 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CT Employee Quarterly Earnings Report | March 25, 2022, 2:30 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CT Employer Contribution Return | March 25, 2022, 2:30 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part III | March 25, 2022, 2:30 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 2:29 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 CA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 2:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q2 AZ Quarterly Withholding Tax Return | March 25, 2022, 2:28 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 PA Employer Quarterly Return | March 25, 2022, 2:11 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 NJ Employers Quarterly Report | March 25, 2022, 2:11 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 NH Employer Quarterly Tax Report | March 25, 2022, 2:11 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 ND Income Tax Withholding Return | March 25, 2022, 2:11 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 ME Employer Return of Income Tax Withholding | March 25, 2022, 2:11 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 ME Employer Quarterly Tax Report | March 25, 2022, 2:09 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 MA Unemployment Contribution Report | March 25, 2022, 2:09 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 MA Unemployment Voucher | March 25, 2022, 2:09 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 MA Quarterly Return of Income Taxes WIthheld for Employer Paying Weekly | March 25, 2022, 2:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 MA Employer Quarterly Wages Paid | March 25, 2022, 2:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 MA Employer Quarterly Report of Wages Paid to Each Employee | March 25, 2022, 2:07 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 GA Payment Voucher | March 25, 2022, 2:06 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 GA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 2:06 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 GA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 2:06 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 Federal 941-X | March 25, 2022, 2:05 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 Federal 941 | March 25, 2022, 2:05 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 Federal 941 Schedule B | March 25, 2022, 2:05 p.m. | Loan Application Supporting Docs (Payroll) | View |

JA0227
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000141
Page 15 of 22
15 of 1562

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part III | March 25, 2022, 2:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part II | March 25, 2022, 2:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 AZ Quarterly Withholding Tax Return | March 25, 2022, 2:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Gordon College 2019Q1 CA Employer Quarterly Tax and Wage Report Part I | March 25, 2022, 2:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| SBA Loan Review.pdf | Feb. 25, 2022, 2:55 p.m. | SBA Correspondence - Request Clarifications | View |
| customer response to eligibility | Dec. 15, 2021, 3:43 p.m. | Miscellaneous | View |
| customer response to eligibility | Dec. 15, 2021, 3:42 p.m. | Miscellaneous | View |
| SBA Loan Review.pdf | Dec. 8, 2021, 5:14 p.m. | SBA Correspondence - Request Clarifications | View |
| GORDON COLLEGE SBA letter - 2021-12-03 | Dec. 6, 2021, 4:03 p.m. | Miscellaneous | View |
| GORDON COLLEGE SBA letter - 2021-12-03 | Dec. 6, 2021, 4:03 p.m. | Miscellaneous | View |
| SBA Loan Review.pdf | Nov. 18, 2021, 7:40 p.m. | SBA Correspondence - Request Clarifications | View |
| SBA Loan Review.pdf | Nov. 15, 2021, 8:02 p.m. | SBA Correspondence - Request Clarifications | View |
| Dates | Nov. 5, 2021, 6:12 p.m. | Loan Application Supporting Docs (Payroll) | View |
| SBA Loan Review.pdf | Nov. 3, 2021, 2:54 p.m. | SBA Correspondence - Request Clarifications | View |
| SBA Loan Review.pdf | Oct. 27, 2021, 7:47 p.m. | SBA Correspondence - Request Clarifications | View |
| FY20 Form 990 | Oct. 14, 2021, 2:05 p.m. | Loan Application Supporting Docs (Payroll) | View |
| FY19 Form 990 | Oct. 14, 2021, 2:04 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Form 990 | Oct. 14, 2021, 2:03 p.m. | Loan Application Supporting Docs (Payroll) | View |
| SBA Loan Review.pdf | Oct. 13, 2021, 8:27 p.m. | SBA Correspondence - Request Clarifications | View |
| SBA Loan Review | Sept. 9, 2021, 5:45 p.m. | Loan Application Supporting Docs (Payroll) | View |
| PPP Worksheet | Sept. 9, 2021, 5:45 p.m. | Loan Application Supporting Docs (Payroll) | View |
| PPP Documents | Sept. 9, 2021, 5:45 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Comparative FTE | Sept. 9, 2021, 5:44 p.m. | Loan Application Supporting Docs (Payroll) | View |
| September Payroll 2020 | Sept. 9, 2021, 5:44 p.m. | Loan Application Supporting Docs (Payroll) | View |
| October Payroll 2020 | Sept. 9, 2021, 5:43 p.m. | Loan Application Supporting Docs (Payroll) | View |
| May Payroll 2020 | Sept. 9, 2021, 5:43 p.m. | Loan Application Supporting Docs (Payroll) | View |

JA0228
08/17/2022 5:04 p.m. UTC
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]
SBA Loan # 8289087101
SBA_000142
Page 16 of 22
16 of 1562

| Document Name | Document Uploaded | Document Category | Actions |
|---|---|---|---|
| June Payroll 2020 | Sept. 9, 2021, 5:43 p.m. | Loan Application Supporting Docs (Payroll) | View |
| July Payroll 2020 | Sept. 9, 2021, 5:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| August Payroll 2020 | Sept. 9, 2021, 5:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| April Payroll 2020 | Sept. 9, 2021, 5:42 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Payroll | Sept. 9, 2021, 5:41 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Worksheet 3 | Sept. 9, 2021, 5:41 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Worksheet 2 | Sept. 9, 2021, 5:41 p.m. | Loan Application Supporting Docs (Payroll) | View |
| Worksheet | Sept. 9, 2021, 5:40 p.m. | Loan Application Supporting Docs (Payroll) | View |
| 3508 Form | Sept. 9, 2021, 5:40 p.m. | Loan Application Supporting Docs (Payroll) | View |
| 3508 Form | Sept. 9, 2021, 5:40 p.m. | Loan Application Supporting Docs (Payroll) | View |
| 4th Qtr 941 | Sept. 9, 2021, 5:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| 3rd Qtr 941 | Sept. 9, 2021, 5:39 p.m. | Loan Application Supporting Docs (Payroll) | View |
| 2nd Qtr 941 | Sept. 9, 2021, 5:38 p.m. | Loan Application Supporting Docs (Payroll) | View |
| SBA Loan Review.pdf | Sept. 7, 2021, 11:45 a.m. | SBA Correspondence - All documents | View |
| 3508 Form_1630682389506.pdf | Sept. 3, 2021, 3:30 p.m. | SBA Form 3508 | View |

JA0229
08/17/2022 5:04 p.m. UTC                    SBA Loan # 8289087101                    SBA_000143
File: 8289087101_sba_review_summary.pdf    [2022/08/17 18:05:47]                    Page 17 of 22
                                                                                    17 of 1562

**SBA Internal Notes**

| Note | Author | Date |
|---|---|---|
| **Comment**<br>*04/12/2022*<br><br>Final OCA Review:<br><br>We are in concurrence with the recommendation of denial due to the borrower exceeding the maximum employee count of 500 for a 1st draw loan.<br><br>SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:<br><br>After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.<br><br>A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria. | Brittany Reid | April 12, 2022, 4:35 p.m. |

| Note | Author | Date |
|------|--------|------|
| **Comment**<br>HAR 4/11/22: We are in concurrence with the recommendation of Not Approved since the borrower does not meet the definition of a small business concern.<br><br>Pursuant to the IFR titled Affiliations Rules for PPP effective 4/15/2020, subsection titled How do SBA's affiliation rules affect my eligibility and apply to me under the PPP? An entity generally is eligible for the PPP if it, combined with its affiliates, is a small business as defined in section 3 of the Small Business Act (15 U.S.C. 632), or (1) has 500 or more employees whose principal place of residence is in the United States or is a business that operates in a certain industry and meets applicable SBA employee-based size standards for that industry, and (2) is a described in section 501(c)(3) of the Internal Revenue Code (IRC).<br><br>Therefore, the size standard is applicable to non-profits.<br><br>Per the CFR Title 13 Section 121.103, loan programs administered by the SBA are intended for "small business concerns" as determined by the SBA. The criteria used to determine a "small business concern" varies by business activity and the SBA publishes a full table matching a size standard to each NAICS industry code. Typically, but not exclusively, the average number of employees is used to make the small business determination. Per Title 13 Section 121.106 the average number of employees of the concern is used (including all employees of its domestic and foreign affiliates) based upon the number of employees for each of the pay periods for the preceding completed 12 calendar months, including part time and temp employees.<br><br>Therefore, the borrower's cannot use FTE units to determine the number of employees.<br><br>Pursuant to the IFR titled Business Loan Program Temporary Changes: Paycheck Protection Program as Amended by American Rescue Plan Act (Effective March 18, 2021), the subsection titled 1. Eligibility, Size, Affiliation Waivers, and Certifications a. Am I eligible? An entity generally is eligible for the PPP if it, combined with its affiliates, is a small business as defined in section 3 of the Small Business Act (15 U.S.C. 632), or (1) has 500 or fewer employees whose principal place of residence is in the United States or is a business that operates in a certain industry and meets applicable SBA employee-based size standards for that industry, and (2) is a described in section 501(c)(3) of the Internal Revenue Code (IRC).<br><br>Therefore, since non-profit entities were not eligible for an SBA prior to the implementation of the CARES Act, the only applicable size standard is the 500-employee limit per location.<br><br>Consequently, for any loan forgiveness application not yet adjudicated, this new standard applies. The 2019 IRS form 990 confirms that the borrower is a non-profit under 501(c)(3) and that it operates a college at one location at 255 Grapevine Rd., Wenham, MA 01984. As an institution of higher learning, its total employment is expected to fluctuate with the demands of the calendar year. As the 2019 IRS form 941 for the four calendar quarters shows, the number of employees fluctuated from a low of 698 to a high of 1258 with an average of 1,134.5. Although this is not the prescribed way to count the number of employees according to the size standards, it is a means of determining whether or not the matter should be investigated further.<br><br>Based on the foregoing, the borrower is not likely to meet the size criteria and therefore further due diligence is not warranted.<br><br>Lastly, pursuant to the footnotes on the SBA form 3511 a.k.a. Paycheck Protection Program Affiliation Worksheet (page 8), the Alternative size standard is available only to for-profit borrowers, not nonprofit organizations. | Frangel Cannizzaro | April 11, 2022, 8:21 p.m. |
| **Comment**<br>April 8, 2022-HAR-switched to new assignment. I have a detailed spreadsheet-basically finished, can pass on to next HAR reviewer | Fredericka Suzanne Phillips | April 8, 2022, 4:24 p.m. |
| **Comment**<br>02/25/22_HAR_Doc request for 2019 Payroll | Fredericka Suzanne Phillips | Feb. 25, 2022, 2:56 p.m. |

| Note | Author | Date |
|------|--------|------|
| **Comment**<br>*02/23/2022_HAR_As of today, this loan is currently being reviewed by a HAR reviewer. Once the review is complete a final recommendation will be submitted.* | Fredericka Suzanne Phillips | Feb. 23, 2022, 4:38 p.m. |
| **Comment**<br>1/10/22<br><br>This loan has a hold code21(Employee Count Threshold - Employee Count indicative of concern – Potential eligibility issue) that cannot be cleared. SBA size standard tests were performed on the file and it is still deemed that the hold code cannot be cleared.<br><br>Recommended for denial due to not meeting the size standard which makes them ineligible for a PPP loan.<br><br>I have reviewed the Paycheck Protection Program (PPP) loan forgiveness application submitted by the borrower, the forgiveness decision submitted by the lender, supporting documentation, and relevant Contractor reports on the loan, for any indications of fraud, abuse, negligence, misrepresentation, misconduct by the lender or borrower, ineligibility or material noncompliance with the PPP and Forgiveness requirements.<br><br>My recommendation is based upon my review of the preceding items, documentation submitted with the Borrower's PPP loan forgiveness application, and documents submitted by the lender in connection with this loan review. According to guidance which I have been instructed to follow for reviewing and recommending forgiveness, this submission is an acknowledgement of my completion of relevant review and procedural questions, and an attestation that I have made this recommendation in accordance with PPP requirements. | Lakeidra McBride_fte_lr | Jan. 10, 2022, 6:16 p.m. |
| **Comment**<br>Gordon College 8289087101<br><br>Reviewer: Frank Lomeli; Team (R3) 21; Supervisor: Edward Haygood<br><br>Unresolved Hold Code 21 – Employee Count Threshold.<br><br>As per Hold Code Team, because borrower has 639 employees for the Massachusetts location, which is over the maximum 500, hold code 21 cannot be cleared.<br><br>Recommendation is Full Denial / Not Approved, based on employee count, Gross Revenues, Net Worth, and Net Income.<br><br>Please see Reviewer's workbook for additional notes and calculations. | Frank Lomeli | Jan. 10, 2022, 5:57 p.m. |
| **Comment**<br>Response to Borrower's letter dated 12/3/2021 (Denial letter) sent to Lender 12/8/2021. | Frank Lomeli | Dec. 8, 2021, 5:28 p.m. |
| **Comment**<br>Reviewer: Frank Lomeli; Team (R3) 21; Supervisor: Brian Devane<br><br>Unresolved Hold Code 21 – Employee Count Threshold.<br><br>As per Hold Code Team, Because borrower has 639 employees for the Massachusetts location, which is over the maximum 500, hold code 21 cannot be cleared. A letter from the Borrower dated 12/3/2021 and uploaded to the Platform on 12/6/2021 supports an employee count of 495.67. However, the Borrower's letter did Not address Gross Revenues, Net Worth, or Net Income.<br><br>Recommendation continues to be Full Denial / Not Approved. | Frank Lomeli | Dec. 8, 2021, 4:58 p.m. |

| Note | Author | Date |
|------|--------|------|
| **Comment**<br>Reviewer: Frank Lomeli; Team (R3) 21; Supervisor: Brian Devane<br><br>Unresolved Hold Code 21 – Employee Count Threshold.<br><br>As per Hold Code Team, Because borrower has 639 employees for the Massachusetts location, which is over the maximum 500, hold code 21 cannot be cleared.<br><br>Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.<br><br>The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:<br><br>a) The maximum tangible net worth may not exceed $15 million; AND<br><br>b) The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.<br><br>The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million.<br><br>Recommendation is Full Denial / Not Approved, based on employee count, Gross Revenues, Net Worth, and Net Income.<br><br>Please see Reviewer's workbook for additional notes and calculations. | Frank Lomeli | Nov. 15, 2021, 7:51 p.m. |
| **Comment**<br>Hold Code Team<br><br>Not Cleared Code 21 - Borrower provided 3 recent tax returns, however, because they are non profit, a list of employees per location is required. Borrower provided list of locations with employee count. Because borrower has 639 employees for the Massachusetts location, which is over the maximum 500, hold code 21 cannot be cleared. | Holly Everton | Nov. 5, 2021, 6:46 p.m. |
| **Document Upload from Guidehouse**<br>Document Upload from Guidehouse | None | Oct. 2, 2021, 9:02 p.m. |

Internal Attachments

| Attachment Name | Mime Type | Size | Actions |
|-----------------|-----------|------|---------|
| 2019 tax return | application/pdf | 2.3 MB | View |
| GORDON COLLEGE | application/pdf | 962.4 K B | View |
| Reviewer's Workbook | application/vnd.openxmlformats-officedocument.spreadsheetml.sheet | 4.3 MB | View |
| Draft - Deliberative and Pre-Decisional 8289087101.pdf | application/pdf | 26.9 KB | View |

JA0234

08/17/2022 5:04 p.m. UTC               SBA Loan # 8289087101                    SBA_000148
File: 8289087101_sba_review_summary.pdf     [2022/08/17 18:05:47]              Page 22 of 22
                                                                               22 of 1562



**SMALL BUSINESS ADMINISTRATION**
**WASHINGTON, DC 20416**

04/12/2022

VIA FORGIVENESS PLATFORM

Barbara Gaulien

Citizens Bank, National Association

Re: PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION
   Borrower: GORDON COLLEGE
   SBA Loan No.: 8289087101
   Approved Loan Amount: $7,046,037.00
   Loan Approval Date: 04/15/2020
   Lender Forgiveness Decision Submission Date: 09/03/2021
   Lender Forgiveness Decision Amount: $7,046,037.00
   SBA Final Forgiveness Amount: $ 0.00

## Dear: Barbara Gaulien

The U.S. Small Business Administration (SBA) has completed its review of the above-referenced Paycheck Protection Program (PPP) loan.  Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision.

---

**SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:**

**After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.**

**A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria.**

---

**JA0235**

SBA_000149

File: Denial_Justification_Document_-_Term.pdf    [2022/04/12 16:37:01]                    23 of 1562

Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. Additional details regarding the forgiveness payment amount (if any) will be provided in a Notice of Paycheck Protection Program Forgiveness Payment.

Within 5 business days of the date of this letter, you must provide a copy of this final SBA loan review decision to the borrower.

You must continue to service the loan. You must notify the borrower that the remaining balance of the loan after application of the forgiveness payment (if any) must be repaid on or before the maturity date. The notification must include the date on which the first principal and interest payment is due and the amount of the borrower's regular payment. As set forth below, if the borrower files a timely appeal with SBA's Office of Hearings and Appeals (OHA), the deferment period of the loan will be extended pursuant to 13 CFR § 134.1211.

Pursuant to 13 CFR § 134.1201(b), the borrower has the right to appeal to SBA's Office of Hearings and Appeals a final SBA loan review decision that the borrower:

1. was ineligible for a PPP loan;
2. was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
3. is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or
4. is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.

Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program, located at 13 CFR § 134.1201, *et seq*., including but not limited to the following:

• An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 13 CFR § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to Office of Hearings and Appeals.
• Borrower must include, among other things, a copy of this final SBA loan review decision with its appeal. 13 CFR § 134.1204(a).
• Borrower must provide you (the lender) with a copy of the timely appeal petition filed with OHA so that you can extend the deferment period of the loan. 13 CFR § 134.1202(b).
• An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a federal district court. 13 CFR § 134.1201(d).

Thank you for your cooperation.

Sincerely,

Office of Capital Access
U.S. Small Business Administration

JA0236

# Paycheck Protection Program

## Loan Forgiveness Application Form 3508 Revised January 19, 2021

### PPP Loan Forgiveness Calculation Form

| Business Legal Name ("Borrower") | | DBA or Tradename, if applicable | |
|---|---|---|---|
| GORDON COLLEGE | | | |
| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
| 255 GRAPEVINE RD WENHAM | 611310 | 042104258 | 7819295594 |
| | | Primary Contact | E-mail Address |
| Massachusetts 01984 US | | Stephen Lacorazza | stephen.lacorazza@gordon.edu |

✔ **First Draw PPP Loan**  ☐ **Second Draw PPP Loan**

SBA PPP Loan Number:                       8289087101    Lender PPP Loan Number:                       880881006961718

PPP Loan Amount:                       $7,046,037.00    PPP Loan Disbursement Date:    4/24/2020

Amount of PPP Loan Increase (if applicable):

Date of PPP Loan Increase (if applicable):

Employees at Time of Loan Application: 496

Employees at Time of Forgiveness Application:                       435

**Covered Period:** Fri Apr 24 00:00:00 GMT 2020 **to** Thu Oct 08 00:00:00 GMT 2020

**If Borrower (together with affiliates, if applicable) received First Draw PPP Loans of $2 million or more or Second Draw PPP Loans of $2 million or more, check here:** ✔

Forgiveness Amount Calculation:

Payroll and Nonpayroll Costs

Line 1. Payroll Costs (enter the amount from PPP Schedule A, line 10):                       10779895.58

Line 2. Business Mortgage Interest Payments:                       0.00

Line 3. Business Rent or Lease Payments:                       0.00

Line 4. Business Utility Payments:                       0.00

Line 5. Covered Operations Expenditures:                       0.00

Line 6. Covered Property Damage Costs:

Line 7. Covered Supplier Costs:                       0.00

Line 8. Covered Worker Protection Expenditures:                       0.00

Adjustments for Full-Time Equivalency (FTE) and Salary/Hourly Wage Reductions

Line 9. Total Salary/Hourly Wage Reduction (enter the amount from PPP Schedule A, line3):

Line 10. Sum the amounts on lines 1 through 8, then subtract the amount entered in line 9:    10779895.58

Line 11. FTE Reduction Quotient (enter the number from PPP Schedule A, line 13):    1.000000000

Potential Forgiveness Amounts

Line 12. Modified Total (multiply line 10 by line 11):                       10779895.58

JA0237

File: 3508_Form_3.pdf     [2021/09/09 17:40:01]                       30 of 1562

Line 13. PPP Loan Amount:                                                                  7046037.00

Line 14. Payroll Cost 60% Requirement (divide line 1 by 0.60):                             17966492.63

Forgiveness Amount

Line 15. Forgiveness Amount (enter the smallest of lines 12, 13, and 14):                  7046037.00

**JA0238**                                                                      SBA_000157

# Paycheck Protection Program

## Loan Forgiveness Application Form 3508 Revised January 19, 2021

<u>By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:</u>

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

✓ The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

✓ I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

✓ The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

✓ I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.

✓ If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.

✓ The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

✓ The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that

JA0239

the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

✔ I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

✔ If the Borrower has checked the box for FTE Reduction Safe Harbor 1 on PPP Schedule A, the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

Signature of Authorized Representative of Borrower
Print Name : Stephen David Lacorazza
Title :
Date : Thu Jul 22 00:00:00 GMT 2021

JA0240

File: 3508_Form_3.pdf    [2021/09/09 17:40:01]                                    33 of 1562

# Paycheck Protection Program

## Loan Forgiveness Application Form 3508 Revised January 19, 2021

<u>PPP Schedule A</u>

<u>PPP Schedule A Worksheet, Table 1 Totals</u>

Line 1.    Enter Cash Compensation (Box 1) from PPP Schedule A Worksheet, Table 1:    10165302.00

Line 2.    Enter Average FTE (Box 2) from PPP Schedule A Worksheet, Table 1:    459.3

Line 3.    Enter Salary/Hourly Wage Reduction (Box 3) from PPP Schedule A Worksheet, Table 1: If the average annual salary or hourly wage for each employee listed on the PPP Schedule A Worksheet, Table 1 during the Covered Period was at least 75% of such employee's average annual salary or hourly wage between January 1, 2020 and March 31, 2020, check here ✓ and enter 0 on line 3.

<u>PPP Schedule A Worksheet, Table 2 Totals</u>

Line 4.    Enter Cash Compensation (Box 4) from PPP Schedule A Worksheet, Table 2:    614593.58

Line 5.    Enter Average FTE (Box 5) from PPP Schedule A Worksheet, Table 2:    14.0

<u>Non-Cash Compensation Payroll Costs During the Covered Period</u>

Line 6.    Total amount paid or incurred by Borrower for employer contributions for employee health insurance:    0.00

Line 7.    Total amount paid or incurred by Borrower for employer contributions to employee retirement plans    0.00

Line 8.    Total amount paid or incurred by Borrower for employer state and local taxes assessed on employee compensation:    0.00

<u>Compensation to Owners</u>

Line 9.    Total amount paid to owner-employees/self-employed individual/general partners: This amount may not be included in PPP Schedule A Worksheet, Table 1 or 2. If there is more than one individual included, attach a separate table that lists the names of and payments to each.    0.00

<u>Total Payroll Costs</u>

Line 10.    Payroll Costs (add lines 1, 4, 6, 7, 8, and 9):    10779895.58

<u>Full-Time Equivalency (FTE) Reduction Calculation</u>

If you satisfy any of the following three criteria, check the appropriate box, skip lines 11 and 12, and enter 1.0 on line 13; otherwise, complete lines 11, 12, and 13:

JA0241
File: 3508_Form_3.pdf    [2021/09/09 17:40:01]

No reduction in employees or average paid hours: If you have not reduced the number of employees or the average paid hours of your employees between January 1, 2020 and the end of the Covered Period, check here ☐ .

FTE Reduction Safe Harbor 1: If you were unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, with respect to a PPP loan made on or after December 27, 2020, between March 1, 2020 and the last day of the Covered Period with respect to such loan), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration related to the maintenance of standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, check here ☐ .

FTE Reduction Safe Harbor 2: If you satisfy FTE Reduction Safe Harbor 2 (see PPP Schedule A Worksheet), check here ☐ .

| Line 11. | Average FTE during the Borrower's chosen reference period: | 422.3 |
| Line 12. | Total Average FTE (add lines 2 and 5): | 473.30 |
| Line 13. | FTE Reduction Quotient (divide line 12 by line 11) or enter 1.0 if any of the above criteria are met: | 1.000000000 |

JA0242

SBA_000161

Paycheck Protection Program


Loan Forgiveness Application Form 3508 Revised January 19, 2021

<u>PPP Borrower Demographic Information Form (Optional)</u>

<u>Instructions</u>

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
    1. For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
    2. For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
    3. For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
    4. For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
    5. Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
    6. Any trustor (if the Borrower is owned by a trust).
    7. For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Position |
|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed |
| Gender | M=Male; F=Female; X=Not Disclosed |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed |

| Principal Name | |
|---|---|
| Positions | |
| Veteran | |
| Gender | |
| Race (more than 1 may be selected) | |
| Ethnicity | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 180 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

# Paycheck Protection Program

## Loan Forgiveness Application Form 3508 Revised January 19, 2021

### PPP Loan Forgiveness Calculation Form

| Business Legal Name ("Borrower") | | DBA or Tradename, if applicable | |
|---|---|---|---|
| GORDON COLLEGE | | | |
| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
| 255 GRAPEVINE RD WENHAM | 611310 | 042104258 | 7819295594 |
| | | Primary Contact | E-mail Address |
| Massachusetts 01984 US | | Stephen Lacorazza | stephen.lacorazza@gordon.edu |

✔ **First Draw PPP Loan**    ☐ **Second Draw PPP Loan**

| | | | |
|---|---|---|---|
| SBA PPP Loan Number: | 8289087101 | Lender PPP Loan Number: | 880881006961718 |
| PPP Loan Amount: | $7,046,037.00 | PPP Loan Disbursement Date: | 4/24/2020 |
| Amount of PPP Loan Increase (if applicable): | | Date of PPP Loan Increase (if applicable): | |
| Employees at Time of Loan Application: | 496 | Employees at Time of Forgiveness Application: | 435 |

**Covered Period:** Fri Apr 24 00:00:00 GMT 2020 **to** Thu Oct 08 00:00:00 GMT 2020

**If Borrower (together with affiliates, if applicable) received First Draw PPP Loans of $2 million or more or Second Draw PPP Loans of $2 million or more, check here:** ✔

Forgiveness Amount Calculation:

Payroll and Nonpayroll Costs

| | |
|---|---|
| Line 1. Payroll Costs (enter the amount from PPP Schedule A, line 10): | 10779895.58 |
| Line 2. Business Mortgage Interest Payments: | 0.00 |
| Line 3. Business Rent or Lease Payments: | 0.00 |
| Line 4. Business Utility Payments: | 0.00 |
| Line 5. Covered Operations Expenditures: | 0.00 |
| Line 6. Covered Property Damage Costs: | |
| Line 7. Covered Supplier Costs: | 0.00 |
| Line 8. Covered Worker Protection Expenditures: | 0.00 |

Adjustments for Full-Time Equivalency (FTE) and Salary/Hourly Wage Reductions

| | |
|---|---|
| Line 9. Total Salary/Hourly Wage Reduction (enter the amount from PPP Schedule A, line3): | |
| Line 10. Sum the amounts on lines 1 through 8, then subtract the amount entered in line 9: | 10779895.58 |
| Line 11. FTE Reduction Quotient (enter the number from PPP Schedule A, line 13): | 1.000000000 |

Potential Forgiveness Amounts

| | |
|---|---|
| Line 12. Modified Total (multiply line 10 by line 11): | 10779895.58 |

JA0245

Line 13. PPP Loan Amount:                                                                7046037.00

Line 14. Payroll Cost 60% Requirement (divide line 1 by 0.60):                          17966492.63

Forgiveness Amount

Line 15. Forgiveness Amount (enter the smallest of lines 12, 13, and 14):                7046037.00

JA0246

Paycheck Protection Program

Loan Forgiveness Application Form 3508 Revised January 19, 2021

By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

✓ The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

✓ I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

✓ The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

✓ I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.

✓ If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.

✓ The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

✓ The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that

the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

✔ I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

✔ If the Borrower has checked the box for FTE Reduction Safe Harbor 1 on PPP Schedule A, the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

Signature of Authorized Representative of Borrower
Print Name : Stephen David Lacorazza
Title :
Date : Thu Jul 22 00:00:00 GMT 2021

# Paycheck Protection Program

## Loan Forgiveness Application Form 3508 Revised January 19, 2021

### PPP Schedule A

**PPP Schedule A Worksheet, Table 1 Totals**

Line 1.   Enter Cash Compensation (Box 1) from PPP Schedule A Worksheet, Table 1:        10165302.00

Line 2.   Enter Average FTE (Box 2) from PPP Schedule A Worksheet, Table 1:        459.3

Line 3.   Enter Salary/Hourly Wage Reduction (Box 3) from PPP Schedule A Worksheet, Table 1: If the average annual salary or hourly wage for each employee listed on the PPP Schedule A Worksheet, Table 1 during the Covered Period was at least 75% of such employee's average annual salary or hourly wage between January 1, 2020 and March 31, 2020, check here ✓ and enter 0 on line 3.

**PPP Schedule A Worksheet, Table 2 Totals**

Line 4.   Enter Cash Compensation (Box 4) from PPP Schedule A Worksheet, Table 2:        614593.58

Line 5.   Enter Average FTE (Box 5) from PPP Schedule A Worksheet, Table 2:        14.0

**Non-Cash Compensation Payroll Costs During the Covered Period**

Line 6.   Total amount paid or incurred by Borrower for employer contributions for employee health insurance:        0.00

Line 7.   Total amount paid or incurred by Borrower for employer contributions to employee retirement plans        0.00

Line 8.   Total amount paid or incurred by Borrower for employer state and local taxes assessed on employee compensation:        0.00

**Compensation to Owners**

Line 9.   Total amount paid to owner-employees/self-employed individual/general partners: This amount may not be included in PPP Schedule A Worksheet, Table 1 or 2. If there is more than one individual included, attach a separate table that lists the names of and payments to each.        0.00

**Total Payroll Costs**

Line 10.  Payroll Costs (add lines 1, 4, 6, 7, 8, and 9):        10779895.58

**Full-Time Equivalency (FTE) Reduction Calculation**

If you satisfy any of the following three criteria, check the appropriate box, skip lines 11 and 12, and enter 1.0 on line 13; otherwise, complete lines 11, 12, and 13:

JA0249

No reduction in employees or average paid hours: If you have not reduced the number of employees or the average paid hours of your employees between January 1, 2020 and the end of the Covered Period, check here ☐ .

FTE Reduction Safe Harbor 1: If you were unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, with respect to a PPP loan made on or after December 27, 2020, between March 1, 2020 and the last day of the Covered Period with respect to such loan), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration related to the maintenance of standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, check here ☐ .

FTE Reduction Safe Harbor 2: If you satisfy FTE Reduction Safe Harbor 2 (see PPP Schedule A Worksheet), check here ☐ .

| | | |
|---|---|---|
| Line 11. | Average FTE during the Borrower's chosen reference period: | 422.3 |
| Line 12. | Total Average FTE (add lines 2 and 5): | 473.30 |
| Line 13. | FTE Reduction Quotient (divide line 12 by line 11) or enter 1.0 if any of the above criteria are met: | 1.000000000 |

JA0250

SBA_000169

# Paycheck Protection Program

### Loan Forgiveness Application Form 3508 Revised January 19, 2021

<u>PPP Borrower Demographic Information Form (Optional)</u>

<u>Instructions</u>

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
    1. For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
    2. For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
    3. For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
    4. For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
    5. Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
    6. Any trustor (if the Borrower is owned by a trust).
    7. For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Position |
|---|---|
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed |
| Gender | M=Male; F=Female; X=Not Disclosed |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed |

| Principal Name | |
|---|---|
| Positions | |
| Veteran | |
| Gender | |
| Race (more than 1 may be selected) | |
| Ethnicity | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 180 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

JA0252

File: 3508_Form_1630682389506.pdf    [2021/09/09 17:40:17]

| From: | Stephen Lacorazza |
|---|---|
| To: | Thomas, Monica |
| Subject: | RE: SBA Requesting Additional Documentation |
| Date: | Friday, November 5, 2021 12:33:19 PM |

---

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Monica,

Please see the breakout by state below.

| | |
|---|---|
| MA | 639 |
| TX | 2 |
| CA | 8 |
| GA | 4 |
| MO | 1 |
| MN | 1 |
| CT | 6 |
| FL | 2 |
| NY | 3 |
| WA | 1 |
| NC | 2 |
| IA | 1 |
| SC | 1 |
| NH | 2 |
| RI | 1 |
| ND | 1 |
| ME | 1 |
| CO | 2 |
| IL | 1 |
| VA | 1 |
| | 680 |

Have a good weekend,

Stephen

---

**From:** Thomas, Monica <Monica.Thomas@citizensbank.com>
**Sent:** Wednesday, November 3, 2021 11:05 AM
**To:** Stephen Lacorazza <Stephen.Lacorazza@gordon.edu>
**Subject:** SBA Requesting Additional Documentation

---

**CAUTION: External Email:** Do not click links or open attachments unless you recognize sender and know content is safe.

Hello Mr. Lacorassa,

SBA requests the following documents or information from the borrower:

5 business days ago we asked you for information in order to decision the Hold Code(s) associated with this PPP Loan. To date we have not received a response. Please note that if we do not receive the information listed below to clear the codes within the originally allotted 10 business days, we will assign the loan for forgiveness review which will likely result in a full decline of forgiveness.

Please also provide a list of locations to include employee count per location.

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information. Thank you for your cooperation.

Monica Thomas
Credit Admin Analyst
**Citizens**TM
Commercial Real Estate
28 State Street, MS1250
Boston, MA 02109
Ofc: 617.725.5601
Email: monica.thomas@citizensbank.com

This message is confidential and subject to terms at: https://www.citizensbank.com/account-safeguards/overview.aspx. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

09/07/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: Notification of Paycheck Protection Program Loan Review
     Borrower: GORDON COLLEGE
     SBA Loan No. 8289087101
     Loan Approval Amount: $7,046,037.00
     Loan Approval Date: 04/15/2020
     Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is reviewing the above
referenced Paycheck Protection Program (PPP) loan. As detailed below, you
must respond to this request within 15 business days of the date of this
letter. The documentation listed below is necessary and critical to SBA's
ability to decision forgiveness. If SBA does not receive a response within 15
days of the date of this letter, or any other requested documentation is still
outstanding, SBA will make a decision based on available information. Such
a decision may include denial of forgiveness, referral to the Office of Credit
Risk Management, and/or transfer of this matter (borrower and lender) to
the Inspector General.

Within five business days of receipt of this notification, you must notify the
borrower in writing that SBA has undertaken this review and transmit
electronic copies of the following documents to SBA via the [Forgiveness
Platform](). If any of the following documents were not already provided by
the borrower, you must request them from the borrower. Borrowers should
respond to the Lender's request for documents within five business days of
receipt.

  1. The Borrower Application Form (SBA Form 2483 or Lender's equivalent
     form) and all supporting documentation submitted by the borrower
     with the loan application, including 2019 or 2020 payroll documents
     that demonstrate qualifying average monthly payroll costs.

JA0255

2. All supporting documentation that the borrower was required to submit to you with its Loan Forgiveness Application, including payroll documentation*, non-payroll documentation, and full-time equivalent employee documentation, if applicable ("Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application"). You must also request "Documents that Each Borrower Must Maintain but is Not Required to Submit" from the borrower, if the borrower has not already provided these documents.

   *For all loans, the 2019 or 2020 IRS Form 1040, Schedule C or F that the borrower provided at the time of the PPP loan application must be used to determine the amount of net profit or proprietor expenses allocated to the owner for the covered period. Therefore, single-employee Schedule C or F borrowers do not have to resubmit this documentation if it was provided with the loan application.*

3. A signed and certified transcript of account (SBA Form 1149 or lender equivalent).

4. A copy of the executed note evidencing the PPP loan.
5. Any memorandum or other analysis that the lender prepared in making its decision on borrower's Loan Forgiveness Application.

SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information. The borrower should respond to all requests within five business days of receipt.

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above.

Thank you for your anticipated cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

10/13/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
   Borrower: GORDON COLLEGE
   SBA Loan No. 8289087101
   Loan Approval Amount: $7,046,037.00
   Loan Approval Date: 04/15/2020
   Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower.

SBA requests the following documents or information from the borrower:

**We are currently reviewing the Hold Code(s) associated with this PPP Loan. This request is specific to this issue and is not made in the normal course. Please provide the following information so that SBA may decision the Hold Code(s) associated with this loan and it can subsequently be assigned for a forgiveness review. We must receive this information within 10 business days.**

**The following hold code is attached to your forgiveness application:**

1. **Employee Count Threshold - Employee Count indicative of concern – Potential eligibility issue**

**Please provide the following documentation to clear the above hold:**

- **Copies of most recent 3 years Federal Tax Returns (2018-2020)**

---

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

10/27/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
 Borrower: GORDON COLLEGE
 SBA Loan No. 8289087101
 Loan Approval Amount: $7,046,037.00
 Loan Approval Date: 04/15/2020
 Lender Forgiveness Decision Submission Date: 09/03/2021

## *Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower.

---

SBA requests the following documents or information from the borrower:

**Thank you for providing the requested documentation. Please also provide a list of locations to include employee count per location.**

---

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

11/03/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
  Borrower: GORDON COLLEGE
  SBA Loan No. 8289087101
  Loan Approval Amount: $7,046,037.00
  Loan Approval Date: 04/15/2020
  Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower.

**JA0261**

SBA requests the following documents or information from the borrower:

**5 business days ago we asked you for information in order to decision the Hold Code(s) associated with this PPP Loan. To date we have not received a response.  Please note that if we do not receive the information listed below to clear the codes within the originally allotted 10 business days, we will assign the loan for forgiveness review which will likely result in a full decline of forgiveness.**

**Please also provide a list of locations to include employee count per location.**

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

11/15/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
    Borrower: GORDON COLLEGE
    SBA Loan No. 8289087101
    Loan Approval Amount: $7,046,037.00
    Loan Approval Date: 04/15/2020
    Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower.

SBA requests the following documents or information from the borrower:

**We are doing a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):**

- *Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location.*
- *Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.*
- *The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:*
    1. *The maximum tangible net worth may not exceed $15 million; AND*
    2. *The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.*

**The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million.**

**If you have additional information to address the issues mentioned above, PLEASE RESPOND TO THIS MESSAGE IN THE PPP PLATFORM AS SOON AS POSSIBLE WITH THE ADDITIONAL INFORMATION. We would like to have all information before making a recommendation and forwarding for further processing. If this new information alters our current proposed recommendation, you will be notified of the change.**

**Or, if you have no additional information to provide, PLEASE RESPOND IN THE PPP PLATFORM THAT YOU DO NOT HAVE ADDITIONAL INFORMATION. We have sent this same message in an email to a listed lending officer in a user-friendly format.**

JA0264

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

11/18/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
    Borrower: GORDON COLLEGE
    SBA Loan No. 8289087101
    Loan Approval Amount: $7,046,037.00
    Loan Approval Date: 04/15/2020
    Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower.

---

SBA requests the following documents or information from the borrower:

**Rerturning to Lender for additional documentation.**

---

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration



**SMALL BUSINESS
ADMINISTRATION
WASHINGTON, DC 20416**

12/08/2021

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
     Borrower: GORDON COLLEGE
     SBA Loan No. 8289087101
     Loan Approval Amount: $7,046,037.00
     Loan Approval Date: 04/15/2020
     Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 20 business days of the date of this letter. If SBA does not receive a response within the stated period , or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/ or transfer of this matter (borrower and lender) to the Inspector General.

If any of the following documents were not already provided by the borrower, you must request them from the borrower.  The borrower should respond to these requests within 10 business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform.

SBA requests the following documents or information from the borrower:

**In response to the Borrower's letter dated 12/3/2021.  As of the date of the Borrower's PPP Loan Application, April 6, 2020, we had three governing documents, the Standard Operating Procedure (SOP 50 10**

5(k)), the CARES Act, and the Borrower's Application Form (SBA Form 2483). SOP 50 10 5(k) contains the most information of the three regarding Eligibility Requirements (Subpart B, Chapter 2, Section II, paragraphs D1 and D4, Page 92).

We are continuing to do a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- *Hold Code 21 – Employee Count Threshold; Based on Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location. This reason is under consideration for removal based on Borrower's letter dated 12/3/2021.*
- *Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.*
- *Per SOP 50 10 5(k), The Borrower may qualify under either the industry small business size standards or the alternative size standard.  To qualify under the alternative size standard, the Borrower must meet the following:*
    1. *The maximum tangible net worth may not exceed $15 million; AND*
    2. *The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.*

*The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million, making the Borrower ineligible for SBA assistance.  .*

If you have additional information to address the issues mentioned above, PLEASE RESPOND TO THIS MESSAGE IN THE PPP PLATFORM AS SOON AS POSSIBLE WITH THE ADDITIONAL INFORMATION. We would like to have all information before making a recommendation and forwarding for further processing. If this new information alters our current proposed recommendation, you will be notified of the change.

**Or, if you have no additional information to provide, PLEASE RESPOND IN THE PPP PLATFORM THAT YOU DO NOT HAVE ADDITIONAL INFORMATION. We have sent this same message in an email to a listed lending officer in a user-friendly format.**

As noted above, if the SBA does not receive a response within 20 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration

JA0270

SBA_001546



**SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416**

02/25/2022

VIA Forgiveness Platform

Barbara Gaulien

Citizens Bank, National Association

Re: PPP Request for Production of Documents and Information
  Borrower: GORDON COLLEGE
  SBA Loan No. 8289087101
  Loan Approval Amount: $7,046,037.00
  Loan Approval Date: 04/15/2020
  Lender Forgiveness Decision Submission Date: 09/03/2021

*Dear: Barbara Gaulien*

The U.S. Small Business Administration (SBA) is requesting additional documents or information for its review of the above-referenced Paycheck Protection Program (PPP) loan.

This request is in addition to the documentation requested in the Notification of Paycheck Protection Program Loan Review.

As detailed below, you must respond to this request within 20 business days of the date of this letter. If SBA does not receive a response within the stated period , or any other requested documentation is still outstanding, SBA will make a decision based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General.

If any of the following documents were not already provided by the borrower, you must request them from the borrower.  The borrower should respond to these requests within 10 business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform.

SBA requests the following documents or information from the borrower:

**Dear Lender,**

JA0271

**I am currently working on the Forgiveness Request for the above referenced PPP loan. Your forgiveness application has been recommended for a decline or partial decline. All loans that are recommended for less than the requested amount of forgiveness amount must go through a quality control process that requires additional levels of review. This request is specific to this issue. Please provide the following information so that SBA may complete the quality control process and review this loan file. We must receive this information within 20 business days.**

- **2019 Q1-Q4 Form 941**
- **2019 Form 940**
- **2019 Q1-Q4 State filings (State Unemployment Insurance-SUI)**
- **2019 Summary report for Employer Health Contributions**
- **2019 Summary report for Employer Retirement Contributions**
- **2019 Payroll summary showing total pay per employee**

**Thank you**

As noted above, if the SBA does not receive a response within 20 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation.

Sincerely,

Office of Financial Program Operations
U.S. Small Business Administration

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

## ❈ Citizens Bank ®

# Certifications and Authorization

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant:
  - o  (1) is an independent contractor, eligible self-employed individual, or sole proprietor or
  - o  (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

DocuSigned by:

*Stephen D. Lacorazza*

79C78DB4AF2E4BF...

Signed By: _____

Authorized Signer

Information Classification: **EXTERNAL**
4/23/20

**JA0273**

Page **1/20**
SBA_001113

File: PPP_docs.pdf     [2021/09/09 17:45:08]                                                        987 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

# ✖ Citizens Bank ®

# Certifications and Authorizations

**PAYCHECK PROTECTION PROGRAM DISCLOSURES**
**Purpose of this form:**
This form is to be completed by the authorized representative of the Applicant and submitted to your SBA Participating Lender. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**
With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":
• For a sole proprietorship, the sole proprietor;

• For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

• For a corporation, all owners of 20% or more of the corporation;

• For limited liability companies, all members owning 20% or more of the company; and

• Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

Information Classification: **EXTERNAL**
4/23/20

JA0274

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

# ✳ Citizens Bank ®

## Certifications and Authorizations

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial Paycheck Protection Program Borrower Application Form 4 SBA Form 2483 (04/20) institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

Information Classification: **EXTERNAL**
4/23/20

**JA0275**

File: PPP_docs.pdf    [2021/09/09 17:45:08]    989 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

## ❄ Citizens Bank ®

# Certifications and Authorizations

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

Information Classification: **EXTERNAL**
4/23/20

Page **4/20**
SBA_001116

**JA0276**

File: PPP_docs.pdf     [2021/09/09 17:45:08]                                                    990 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

PAYCHECK PROTECTION NOTE

**VIRGINIA BORROWERS: THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE.**

| SBA Loan # | 8289087101 |
|---|---|
| SBA Loan Name | Gordon College |
| Date | 4/23/2020 |
| Loan Amount | $7,046,037.00 |
| Fixed Interest Rate | 1.0% |
| Borrower | Gordon College |
| Lender | Citizens Bank N.A.<br>1 Citizens Plaza<br>Providence, RI 02903 |

1.      PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

7,046,037.00 _____Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2.      DEFINITIONS:

"Forgiveness Period" means the 8-week period beginning on the date of first disbursement of the Loan.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower.

"Program" means the Paycheck Protection Program created by the Coronavirus Aid, Relief, and Economic Security Act, also known as the "CARES Act" (P.L. 116-136).

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.      LOAN FORGIVENESS; PAYMENT TERMS:

A.      *Loan Forgiveness:* Borrower may apply to Lender for forgiveness of the amount due on the Loan in an amount equal to the sum of the following costs incurred by Borrower during the 8-week period beginning on the date of first disbursement of the Loan:

i.      Payroll costs

ii.      Any payment of interest on a covered mortgage obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation)

iii.      Any payment on a covered rent obligation

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

iv.    Any covered utility payment

The amount of loan forgiveness shall be calculated (and may be reduced) in accordance with the requirements of the Program, including the provisions of Section 1106 of the CARES Act. Not more than 25% of the amount forgiven can be attributable to non-payroll costs. If Borrower has received an SBA Economic Injury Disaster Loan ("EIDL") during the period between January 1, 2020 and April 4, 2020 and used the proceeds of that EIDL for payroll costs, that amount shall be subtracted from the loan forgiveness amount.

Forgiveness will be subject to Borrower's submission to Lender of information and documentation as required by the SBA and Lender.

B.    *Submission of Information and Documents:* Forgiveness will be subject to Borrower's submission to Lender of information and documentation as required by the SBA and Lender. Not before July 1, 2020 and by August 15, 2020, Borrower shall provide Lender with information, in form and substance acceptable to Lender, specifying the amount of forgiveness Borrower requests, together with all documentation required by the CARES Act, the SBA and/or Lender to evidence and/or verify such information. Required information shall include, without limitation:

(i)    the total dollar amount of payroll costs during the Forgiveness Period and the dollar amounts of covered mortgage interest payments, covered rent payments and covered utilities for the Forgiveness Period to the extent Borrower seeks forgiveness for these costs.

(ii)    the average number of full-time equivalent employees of Borrower per month during (a) the period from February 15, 2020 through June 30, 2020 (the "Covered Period"); (b) the same period in 2019, and (c) if the average number of full-time equivalent employees is lower than the average number for the period described in subsection (ii)(b) above, the period from January 1, 2020 through February 29, 2020;

(iii)    the number of full-time equivalent employees of Borrower as of February 15, 2020, April 26, 2020 and June 30, 2020;

(iv)    the total amount of salary and wages during the Covered Period and during the fourth calendar quarter of 2019 of each employee who had the amount or rate of such salary and wages reduced by more than 25% during the Covered Period from the amount or rate in the fourth quarter of 2019 (each, a "Lowered Employee");

(v)    the rate of salary and wages of each Lowered Employee as of February 15, 2020, April 26, 2020 and June 30, 2020; and

(v)    such further information and documents as Lender or the SBA shall require.

C.    *Initial Deferment Period*: No payments are due on the Loan for 6 months from the date of first disbursement of the Loan. Interest will continue to accrue during the deferment period.

D.    *Maturity*: This Note will mature two years from date of first disbursement of the Loan.

E.    *Payments from End of Deferment Period through Maturity Date:* To the extent the Loan is not forgiven during the deferment period or thereafter, the outstanding balance of the Loan, and interest thereon, shall be repaid in eighteen substantially equal monthly payments of principal and interest, commencing on the first business day after the end of the deferment period.

F.    *Payment Authorization:* Borrower hereby authorizes Lender to initiate payments from Borrower's bank account, by wire or ACH transfer, for each monthly or other payment required hereunder.

JA0278

SBA_001118

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

In the event any such payment is unsuccessful, Borrower shall remain liable for such payment and shall take all steps required to make such payment.

G.   *Interest Computation; Repayment Terms:* The interest rate on this Note is one percent per year. The interest rate is fixed and will not be changed during the life of the Loan. Interest will be calculated based upon actual days over a 365-day year.

H.   *Payment Allocation:* Lender will apply each installment payment first to pay interest accrued to the day Lender received the payment, then to bring principal current, and will apply any remaining balance to reduce principal.

I.   *Loan Prepayment:* Notwithstanding any provision in this Note to the contrary, Borrower may prepay this Note at any time without penalty. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must: (i) give Lender written notice; (ii) pay all accrued interest; and (iii) if the prepayment is received less than 21 days from the date Lender received the notice, pay an amount equal to 21 days interest from the date Lender received the notice, less any interest accrued during the 21 days and paid under (ii) of this paragraph. If Borrower does not prepay within 30 days from the date Lender received the notice, Borrower must give Lender a new notice.

4.   NON-RECOURSE: Lender and SBA shall have no recourse against any individual shareholder, member or partner of Borrower for non-payment of the loan, except to the extent that such shareholder, member or partner uses the loan proceeds for an unauthorized purpose.

5.   USE OF PROCEEDS:

Borrower represents and warrants that all proceeds of the Loan will be used for the following eligible business purposes, as required by the CARES Act: (I) payroll costs; (II) costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums; (III) employee salaries, commissions, or similar compensations; (IV) payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation); (V) rent (including rent under a lease agreement); (VI) utilities; and (VII) interest on any other debt obligations that were incurred before February 15, 2020, provided that not less than 75% of expended Loan proceeds shall be devoted to items (I)-(III) above.

6.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower:

A.   Fails to do anything required by this Note and other Loan Documents;

B.   Does not disclose, or anyone acting on its behalf does not disclose, any material fact to Lender or SBA;

C.   Makes, or anyone acting on its behalf makes, a materially false or misleading representation to Lender or SBA;

D.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent;

E.   Does any of the following after Lender makes a determination (an "Adverse Forgiveness Determination") that the Loan is not entitled to full forgiveness (or in such other period as specified below):

7

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

(i)     Defaults on any other loan with Lender;

(ii)    Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

(iii)   Fails to pay any taxes when due;

(iv)    Becomes the subject of a proceeding under any bankruptcy or insolvency law;

(v)     Has a receiver or liquidator appointed for any part of their business or property;

(vi)    Makes an assignment for the benefit of creditors;

(vii)   Has any adverse change in financial condition or business operation from the date of this Note that continues after the Adverse Forgiveness Determination and that Lender believes may materially affect Borrower's ability to pay this Note; or

(viii)  Becomes the subject of a civil or criminal action from the date of this Note that continues after the Adverse Forgiveness Determination and that Lender believes may materially affect Borrower's ability to pay this Note.

7.    LENDER'S RIGHTS IF THERE IS A DEFAULT:

Upon a default by Borrower, without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note; or

B.  File suit and obtain judgment.

8.    LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Incur expenses to collect amounts due under this Note and enforce the terms of this Note or any other Loan Document. Among other things, the expenses may include reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance; and

B.  Take any action necessary to collect amounts owing on this Note.

9.    WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

10.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower includes the original Borrower's successors, and Lender includes the original Lender's successors and assigns.

11.   GENERAL PROVISIONS:

A.  All individuals and entities signing this Note are jointly and severally liable.

JA0280

SBA_001120

File: PPP_docs.pdf    [2021/09/09 17:45:08]                                            994 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee or collateral.

12.   STATE-SPECIFIC PROVISIONS:

A. If Borrower's principal place of business is in Delaware, the following provision applies:

**CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW, AFTER THE OCCURRENCE OF A DEFAULT, TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST BORROWER FOR THE UNPAID AMOUNT OF THIS NOTE, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BORROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.**

B. If Borrower's principal place of business is in Maryland, the following provision applies:

**POWER TO CONFESS JUDGMENT. BORROWER HEREBY EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD, AFTER THE OCCURRENCE OF A DEFAULT HEREUNDER, TO APPEAR FOR BORROWER AND, WITH OR WITHOUT COMPLAINT FILED, CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, AGAINST BORROWER IN FAVOR OF LENDER OR ANY HOLDER HEREOF FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE, ALL ACCRUED INTEREST AND ALL OTHER AMOUNTS DUE HEREUNDER, AND FOR DOING SO, THIS NOTE OR A COPY VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT. BORROWER HEREBY FOREVER WAIVES AND RELEASES ALL ERRORS IN SAID PROCEEDINGS AND ALL RIGHTS OF APPEAL AND ALL RELIEF FROM ANY AND ALL APPRAISEMENT, STAY OR EXEMPTION LAWS OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED. BORROWER ACKNOWLEDGES AND AGREES THAT, PURSUANT TO THE FOREGOING POWER TO CONFESS JUDGMENT GRANTED TO LENDER, BORROWER IS VOLUNTARILY AND KNOWINGLY WAIVING ITS RIGHT TO NOTICE AND A HEARING PRIOR TO THE ENTRY OF A JUDGMENT BY LENDER AGAINST BORROWER. NO SINGLE EXERCISE OF THE FOREGOING POWER TO CONFESS JUDGMENT, OR A SERIES OF JUDGMENTS, SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND IT MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS**

9

**JA0281**

SBA_001121

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

**LENDER SHALL ELECT UNTIL SUCH TIME AS LENDER SHALL HAVE RECEIVED PAYMENT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.**

C.  If Borrower's principal place of business is in Missouri, the following provision applies:

> **Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (Borrowers(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

D.  If Borrower's principal place of business is in Oregon, the following provision applies:

> **UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY [BENEFICIARY]/US CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY GRANTOR'S/BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY [AN AUTHORIZED REPRESENTATIVE OF BENEFICIARY]/US TO BE ENFORCEABLE.**

E.  If Borrower's principal place of business is in Pennsylvania, the following provision applies:

> **CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE  AND ALL ACCRUED INTEREST, ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.**

F.  If Borrower's principal place of business is in Virginia, the following provision applies:

> **Upon any default under this Note Borrower authorizes the clerk of any court and any attorney admitted to practice before any court of record in the United States, on behalf of Borrower, to then confess judgment against the Borrower in favor of Lender in the full amount due on this Note. For the purpose of allowing the Lender to file a confession of judgment in the Commonwealth of Virginia, the Borrower hereby duly constitutes and appoints , its true and lawful attorney-in-fact, to confess judgment against it in any court of record in the Commonwealth of Virginia, and Borrower further consents to the jurisdiction of and agrees that venue shall be proper in the Circuit Court of any county or city of the Commonwealth of Virginia and/or in any other court of record in the Commonwealth of Virginia. Borrower waives all errors, defects and imperfections in the**

10

JA0282

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

**entry of judgment as aforesaid or in any proceeding pursuant thereto and the benefit of any and every statute, ordinance or rule of court which may be lawfully waived conferring upon Borrower any right or privilege of exemption, stay of execution, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and to enter judgment against Borrower shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions from time to time, in the same or different courts or jurisdictions, as often as Lender shall deem necessary or advisable until all sums due under this Note have been paid in full.**

G.  If Borrower's principal place of business is in Washington, the following provision applies:

> **Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.**

H.  If Borrower is an individual residing in Wisconsin, the following provision applies:

> Each Borrower who is married represents that this obligation is incurred in the interest of his or her marriage or family.

13.    ARBITRATION CLAUSE:

Borrower agrees to the Arbitration Clause attached as Exhibit A. Lender also agrees to the Arbitration Clause.

14.    BORROWER'S NAME AND SIGNATURE:

By signing below, each individual or entity becomes obligated under this Note as Borrower.


**BORROWER:    Gordon College**


DocuSigned by:

_Stephen D. Lacorazza_

79C78DB4AF2E4BF...

Authorized Signer

11

JA0283

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

**ARBITRATION CLAUSE (EXHIBIT A).**

Lender (together with its "Related Parties," as defined below, "we," "us" and "our") has put this Clause in question and answer form to make it easier to understand. However, this Clause is part of this Agreement and is legally binding on Borrower ("you" and "your").

| Question. | Short Answer. | Further Detail. |
|---|---|---|
| **Background and Scope.** | | |
| **What is arbitration?** | **An alternative to a court case.** | In arbitration, a third party arbitrator ("TPA") solves Claims in a hearing. It is less formal than a court case. |
| **Is it different from court and jury trials?** | **Yes.** | The hearing is private. There is no jury. It is usually less formal, faster and less expensive than a lawsuit. Pre-hearing fact finding (called "discovery") is limited. Appeals are limited. Courts rarely overturn arbitration awards. |
| **What is this Clause about?** | **The parties' agreement to arbitrate Claims.** | You and we agree that any party may elect to arbitrate or require arbitration of any "Claim" as defined below. |
| **Who does the Clause cover?** | **You and us, including certain "Related Parties".** | This Clause governs you and us, including our "Related Parties": (1) any parent, subsidiary or affiliate of ours; (2) our employees, directors, officers, shareholders, members and representatives; and (3) any person or company (but not the SBA) that is involved in a Claim you pursue at the same time you pursue a related Claim with us. |
| **What Claims does the Clause cover?** | **All Claims (except certain Claims about this Clause).** | This Clause governs all "Claims" that would usually be decided in court and are between you and us. In this Clause, the word "Claims" has the broadest reasonable meaning. It includes contract and tort (including intentional tort) claims and claims under constitutions, statutes, ordinances, rules and regulations. It includes all claims even indirectly related to your application and/or supplemental application for the Loan, the Loan and our relationship with you. It includes claims related to any decisions we have made or subsequently make concerning your Loan, including decisions regarding the Loan forgiveness to which you are or are not entitled. It includes claims related to collections, privacy and customer information. It includes claims related to the validity in general of this Note. **However, it does not include disputes about the validity, coverage or scope of this Clause or any part of this Clause. All such disputes are for a court and not the TPA to decide.** |
| **Who handles the arbitration?** | **Usually AAA or JAMS.** | Arbitrations are conducted under this Clause and the rules of the arbitration administrator in effect at the time the arbitration is commenced. However, arbitration rules that conflict with this Clause do not apply. The arbitration administrator will be either:<br>•   The American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org.<br>•   JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, |

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

| **Question.** | **Short Answer.** | **Further Detail.** |
|---|---|---|
| | | www.jamsadr.org<br>•   Any other company picked by agreement of the parties.<br><br>If all the above options are unavailable, a court will pick the administrator. **No arbitration brought on a class basis may be administered without our consent by any administrator that would permit class arbitration under this Clause.**<br><br>The TPA will be selected under the administrator's rules. However, the TPA must be a lawyer with at least ten years of experience or a retired judge unless you and we otherwise agree. |
| **Can Claims be brought in court?** | Sometimes. | Either party may bring a lawsuit if the other party does not demand arbitration. We will not demand arbitration of any lawsuit you bring as an individual action in small claims court. However, we may demand arbitration of any appeal of a small-claims decision or any small-claims action brought on a class basis. |
| **Are you giving up any rights?** | Yes. | **For Claims subject to this Clause, you give up your right to:**<br><br>1.   **Have juries decide Claims.**<br>2.   **Have courts, other than small-claims courts, decide Claims.**<br>3.   **Serve as a private attorney general or in a representative capacity.**<br>4.   **Join a Claim you have with a dispute by other consumers.**<br>5.   **Bring or be a class member in a class action or class arbitration.**<br><br>**We also give up the right to a jury trial and to have courts decide Claims you wish to arbitrate.** |
| **Can you or another business start class arbitration?** | No. | **The TPA is not allowed to handle any Claim on a class or representative basis.** All Claims subject to this Clause must be decided in an **individual** arbitration or an individual small-claims action. This Clause will be void if a court rules that the TPA can decide a Claim on a class basis and the court's ruling is not reversed on appeal. |
| **What happens if part of this Clause cannot be enforced?** | It depends. | If any portion of this Clause cannot be enforced, the rest of this Clause will continue to apply, except that:<br><br>(A)    If a court rules that the TPA can decide a Claim on a class or other representative basis and the court's ruling is not reversed on appeal, only this sentence will apply and the remainder of this Clause will be void. **AND**<br><br>(B)    If a party brings a Claim seeking public injunctive relief and a court determines that the restrictions in this Clause prohibiting the TPA from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and that determination becomes final after all appeals have been exhausted), the Claim for public injunctive relief will be determined in court and any individual Claims seeking monetary relief will be arbitrated. In such a case the parties agree to request that the court stay the Claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court.<br><br>**In no event will a Claim for class relief or public injunctive relief be** |

13

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

| **Question.** | **Short Answer.** | **Further Detail.** |
|---|---|---|
| | | arbitrated. |
| **What law applies?** | **The Federal Arbitration Act ("FAA").** | This Agreement and related sale involve interstate commerce. Thus, the FAA governs this Clause. The TPA must apply substantive law consistent with the FAA. The TPA must honor statutes of limitation and privilege rights. Punitive damages are governed by the constitutional standards that apply in judicial proceedings. |
| **Will anything I do make this Clause ineffective?** | **No.** | This Clause stays in force even if you: (1) cancel this Note; (2) default, renew, prepay or pay the Loan in full; or (3) go into or through bankruptcy. |
| | | **Process.** |
| **What must a party do before starting a lawsuit or arbitration?** | **Send a written Claim notice and work to resolve the Claim.** | Before starting a lawsuit or arbitration, the complaining party must give the other party written notice of the Claim. The notice must explain in reasonable detail the nature of the Claim and any supporting facts. If you are the complaining party, you must send the notice in writing (and not electronically) to our Legal Department, at our normal notice address. You or an attorney you have personally hired must sign the notice and must provide your full name and a phone number where you (or your attorney) can be reached. Once a Claim notice is sent, the complaining party must give the other party a reasonable opportunity over the next 30 days to resolve the Claim on an individual basis. |
| **How does arbitration start?** | **Mailing a notice.** | If the parties do not reach an agreement to resolve the Claim within 30 days after notice of the Claim is received, the complaining party may commence a lawsuit or arbitration, subject to the terms of this Clause. To start arbitration, the complaining party picks the administrator and follows the administrator's rules. If one party begins or threatens a lawsuit, the other party can demand arbitration. This demand can be made in court papers. It can be made if a party begins a lawsuit on an individual basis and then tries to pursue a class action. Once an arbitration demand is made, no lawsuit may be brought and any existing lawsuit must stop. |
| **Will any hearing be held nearby?** | **Yes.** | The TPA may decide that an in-person hearing is unnecessary and that he or she can resolve a Claim based on written filings and/or a conference call. However, any in-person arbitration hearing must be held at a place reasonably convenient to you. |
| **What about appeals?** | **Very limited.** | Appeal rights under the FAA are very limited. Except for FAA appeal rights and except for Claims involving more than $50,000 (including Claims involving requests for injunctive relief that could cost more than $50,000), the TPA's award will be final and binding. For Claims involving more than $50,000, any party may appeal the award to a three-TPA panel appointed by the administrator, which will reconsider from the start anything in the initial award that is appealed. The panel's decision will be final and binding, except for any FAA appeal right. Any appropriate court may enter judgment upon the TPA's award. |

14

SBA_001126

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

| **Question.** | **Short Answer.** | **Further Detail.** |
|---|---|---|
| Do arbitration awards affect other disputes? | No. | No arbitration award involving the parties will have any impact as to issues or claims in any dispute involving anyone who is not a party to the arbitration, nor will an arbitration award in prior disputes involving other parties have any impact in an arbitration between the parties to this Clause. |
| **Arbitration Fees and Awards.** | | |
| Who bears arbitration fees? | Usually, we do. | We will pay all filing, administrative, hearing and TPA's fees if you act in good faith, cannot get a waiver of such fees and ask us to pay. |
| When will we cover your legal fees and costs? | If you win. | If you win an arbitration, we will pay your reasonable fees and costs for attorneys, experts and witnesses. We will also pay these amounts if required under applicable law or the administrator's rules or if payment is required to enforce this Clause. The TPA shall not limit his or her award of these amounts because your Claim is for a small amount. |
| Will you ever owe us for arbitration or attorneys' fees? | Only for bad faith. | The TPA can require you to pay our fees if (and only if): (1) the TPA finds that you have acted in bad faith (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)); and (2) this power does not make this Clause invalid. |
| Can an award be explained? | Yes. | A party may request details from the TPA, within 14 days of the ruling. Upon such request, the TPA will explain the ruling in writing. |

By signing below, we agree to this Arbitration Clause.

**LENDER: CITIZENS BANK, N.A.**

Shannon L Moniz

Vice President

Loan Operations Manager

JA0287

SBA_001127

File: PPP_docs.pdf    [2021/09/09 17:45:08]                    1001 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

**AUTHORIZATION**
**(SBA Paycheck Protection Program Express Loan)**

SBA Loan# **8289087101**

U.S. Small Business Administration          Lender:

**LITTLE ROCK COMMERCIAL            Citizens Bank N.A.
LOAN SERVICING CENTER
OFFICE OF FINANCIAL
PROGRAM OPERATIONS**

**2120 Riverfront Drive                  1 Citizens Plaza**

**Little Rock, AR 72202               Providence, RI 02903**

Lender is issuing this SBA Paycheck Protection Program Express Loan Authorization for SBA to guarantee 100% of a loan in the amount of **$7,046,037.00** to be made by Lender to assist:

Borrower: **Gordon College, 255 Grapevine Rd, Wenham, MA 1984**

Lender must have a valid SBA Loan Guarantee Agreement (SBA Form 750 and a valid SBA Express Supplemental Loan Guaranty Agreement (SBA Form 2424).

Lender's issuance is in accordance with the SBA Express Supplemental Loan Guaranty Agreement between Lender and SBA for an SBA Express Loan and the Paycheck Protection Program created by the Coronavirus Aid, Relief, and Economic Security Act, also known as the "CARES Act" (H.R. 748).

Lender must comply with all SBA Loan Program Requirements, as defined in 13 CFR 120.10, all of which may be amended from time to time.

This Authorization is subject to the application (including SBA Form 2483) submitted by Borrower to the Lender, the Lender's representations to SBA, and the following terms and conditions:

15.     Lender must make complete disbursement of the loan no later than **24** months from the date of this Authorization.

16.     The SBA Guarantee Fee is $0.

17.     Lender must have Borrower execute a Note containing the following repayment terms:

   A.     At the request of the Borrower and on receipt of information and documentation as required by the SBA, Lender will forgive repayment of such portion of the Loan, and interest thereon, as and to the extent required by the CARES Act for loans under the Program. The amount of forgiveness shall not exceed the principal amount of this Note.

   B.     At any time as requested by the Lender, but not later than 90 days after Borrower receives funds pursuant to this Note, Borrower will provide Lender with information, in form and substance acceptable to Lender, specifying the amount of forgiveness Borrower requests, together with all documentation required by the CARES Act, the SBA and/or Lender to evidence and/or verify the information in such report. Required information shall include, without limitation, (i) the number of full-time equivalent employees of Borrower and the dollar amount of payroll costs during all relevant periods (including the Forgiveness Period), as well as (ii) the dollar amounts of covered mortgage interest

Information Classification: **EXTERNAL**
4/23/20
JA0288
File: PPP_docs.pdf     [2021/09/09 17:45:08]

SBA_001128

1002 of 1562

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

payments, covered rent payments and covered utilities for the Forgiveness Period to the extent Borrower seeks forgiveness for these costs.

C.    To the extent the Loan is not forgiven, the outstanding balance of the Loan, and interest thereon, shall be repaid in eighteen substantially equal monthly payments of principal and interest, commencing six (6) months after the date of this Loan and ending two (2) years after the date of this Loan. Borrower hereby authorizes Lender to initiate payments from Borrower's bank account, by wire or ACH transfer, for each monthly or other payment required hereunder. In the event any such payment is unsuccessful, Borrower shall remain liable for such payment and shall take all steps required to make such payment.

D.    Interest will be calculated based upon actual days over a 365-day year.

18.    Lender must develop and maintain evidence of a system or process to reasonably ensure that loan proceeds were used for the following eligible business purposes: (I) payroll costs; (II) costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums; (III) employee salaries, commissions, or similar compensations; (IV) payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation); (V) rent (including rent under a lease agreement); (VI) utilities; and (VII) interest on any other debt obligations that were incurred before February 15, 2020.

19.    Lender must satisfy the following collateral conditions:  None

LENDER

By:    *Shannon L Moniz*                            Date:  4/23/2020

Shannon L Moniz
Vice President
Loan Operations Manager

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

OMB Approval No.: 3245-0200
Expiration Date: 04/30/2022

# SBA FORM 1050, SETTLEMENT SHEET

Purpose: The purpose of this form is to document and verify that loan proceeds have been disbursed in accordance with the Authorization and to document that the Borrower's contribution has been injected into the business prior to the Lender disbursing any loan proceeds.

General Instructions: This form may be used for all 7(a) loans and for all disbursements.  It must be used for the first disbursement on all standard 7(a) loans over $350,000.

This form is to be completed by the Lender and signed by the Lender and the Borrower at the time of the initial loan disbursement. The Lender must retain a copy of the signed form in its loan file. For all disbursements, the Lender must also retain documentation that is acceptable to SBA (such as joint payee checks, cancelled checks, paid receipts or invoices, wire transfer account records, etc.) and that evidences compliance with the Use of Proceeds section of the Authorization.

The Lender must submit the completed form and all supporting documentation to SBA upon request, or, in the event of a loan default, with the Lender's request for guaranty purchase.
Providing this information is required to comply with program requirements; failure to provide it when required may impair the Lender's ability to collect on the SBA loan guaranty.
If additional space is required to complete the form or provide additional details please attach a separate sheet.
Specific Instructions for Completing the Form:
1) In the first section, fill in all identifying information. For "Loan Type," check the box to indicate whether the loan is a term loan or a revolving line of credit.
2) Complete the "Use of Proceeds" section with information related to the initial disbursement.
   a) On the line associated with each applicable use of proceeds, indicate:
      i) The name of the payee (must identify the ultimate recipient, not an intermediary such as a title company);
      ii) Amount disbursed; and
      iii) Remaining amount to be disbursed, in accordance with theAuthorization.
   b) For the "Settlement charges/out of pocket costs" line, insert total amount of settlement charges and other out of pocket costs in the appropriate field within the grid. Attach an itemized list of all charges and costs, including the name of payee and amount paid for each charge or cost. Reminder: SBA Form 159 is required for all fees paid or to be paid by the Lender (except Lender Service Provider fees) and for all fees paid or to be paid by the Applicant to any agent in connection with the SBA loan application.)
   c) For "Other (Explain)," enter any other use of proceeds authorized in the Authorization that is not already listed in the grid, if applicable.
3) Complete the "Borrower's Injection"  section.
   a) For each type of injection, indicate the source.
   b) If the Seller contributed toward required equity, attach a copy of the Note and evidence of full standby for the life of the loan.
   c) Note: The Borrower's Injection must be in the business bank account prior to any disbursement of loan proceeds.
4) The Lender and the Borrower must review the certification and execute the form in the space provided.

SBA Form 1050 (04-19) Previous Editions Obsolete                                    Page 1 of 2

JA0290

SBA_001130

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604

# U.S. Small Business
## Settlement Sheet

OMB APPROVAL NO.: 3245-0200

EXPIRATION DATE: 04/30/2022

| SBA Loan Number<br>8289087101 | Lender Name<br>Citizens Bank N.A. | Lender FIRS Number<br>7060330 |
|---|---|---|
| SBA Loan Name<br>Gordon College | | Note Amount<br>7,046,037.00 |

| Loan Type: | **Term Loan** | Line of Credit | Disbursement Type: | First Disbursement | Subsequent Disbursement | **Full Disbursement** |
|---|---|---|---|---|---|---|

| Authorized Use of Proceeds: | Name of Payee: | Amount Disbursed: | Authorized Amount Remaining: |
|---|---|---|---|
| Land Acquisition: ☐ Raw ☐ Improved | | $ - | $ - |
| Construction: ☐ New ☐ Expansion/Renovation | | $ - | $ - |
| Leasehold Improvements to property owned by others | | $ - | $ - |
| Machinery & Equipment | | $ - | $ - |
| Furniture & Fixtures | | $ - | $ - |
| Inventory Purchase | | $ - | $ - |
| Working Capital | Gordon College<br>Deposit to: 1312713523 | $7,046,037.00 | $ - |
| Acquire Business (Change of Ownership) | | $ - | $ - |
| SBA Guarantee Fee | | $ - | $ - |
| Settlement Charges/Out of Pocket Costs | | $ - | $ - |
| Other (Explain): | | $ - | $ - |
| Total: | | $7,046,037.00 | $ - |

| Borrower's Injection (including any deposit or earnest money): | |
|---|---|
| Cash                    Source: | $ - |
| Assets                  Source: | $ - |
| Seller contribution toward required equity (on full standby for life of loan) | $ - |
| Other (Explain): | $ - |
| Total Borrower Injection: | $ - |

At the time of completion of this form, the Lender and the Borrower certify that:
1. The loan proceeds were disbursed and received and will be used in accordance with the Use of Proceeds section of the Authorization, including any and all SBA/Lender approved modifications, and that all required equity or Borrower injections have been made in accordance with the Authorization and any approved modifications;  and
2. There has been no unremedied adverse change in the Borrower's or Operating Company's financial condition, organization, management, operations or assets since the date of application that would warrant withholding or not making this disbursement or any further disbursement.
**At the time of each subsequent disbursement on this loan, the Lender,  by disbursing  the loan proceeds, and the Borrower by receiving them, are deemed to certify that the above  certifications are true with respect to each and every disbursement made.**

**WARNING:** By signing below you are certifying that the above statements are accurate to the best of your knowledge. Submitting false information to the Government may result in criminal prosecution and fines up to $250,000 and/or imprisonment for up to 5 years under 18 USC § 1001. Submitting false statements to a Federally insured institution may result in fines up to $1,000,000 and/or imprisonment for up to 30 years under 18 USC § 1014, penalties under 15 USC § 645, and/or civil fraud liability.

| Authorized Lender Official | |
|---|---|
| Signature: *Shannon L Moniz* | Signature: *Stephen D. Lacorazza*<br>DocuSigned by:<br>79C7DB4AF2E4BF... |
| Print Name: Shannon L Moniz | Print Name: |
| Title: Vice President and Loan Operations Manager | Title: Authorized Signer |
| Date: 4/23/20 | Date: 04-23-2020 |

NOTE:  According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The  estimated burden for completing this form, including time for reviewing instructions, and gathering data needed, is 30 minutes. Comments or questions on the burden estimates or other aspects of this information collection should be sent to U.S. Small Business Administration, Director, RMD,  409 3rd St., SW, Washington DC 20416 and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503. **PLEASE DO NOT  SEND THE COMPLETED FORMS TO THESE  ADDRESSES.**

**JA0291**

SBA_001131

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604



# ❋ Citizens Bank®

## Automatic Payment Authorization

Borrower Name: Gordon College

Loan: SBA PPP Gordon College (the "Loan")

Checking Account  # : 1312713523 (the "Checking Account")

The undersigned hereby authorizes Citizens Bank to debit their Checking Account in the amount (each a "Payment Amount") of any payment due respecting the Loan.  The undersigned hereby acknowledges and agrees that if a scheduled due date respecting the Loan is not a day on which the Bank is open for processing loans, the debit will be initiated on the next business day on which the Bank is open for processing loans.

This authorization may be terminated by the undersigned upon 30 days prior written notice to the Bank.

By your signature below, you authorize and agree to the terms of this Automatic Payment Authorization.

Authorized Signer: _____ *Stephen D. Lacoragga* _____
                                          79C78DB4AF2E4BF...

Date: ___04-23-2020_____

JA0292

**Gordon College**
**PPP Schedule A Worksheet and Acentis Report Reconciliation**

Acentis PPP Covered Period Payroll Report

| | Cash Compensation | Average FTE |
|---|---|---|
| Grand Totals | $ 10,779,895.58 | 473.28 |
| | | |
| Table 1 | $ 10,165,302.00 | 459.28 |
| Table 2 | $ 614,593.58 | 14.00 |
| Total | $ 10,779,895.58 | 473.28 |
| Variance | $ - | - |

* See directory column on payroll report to determine the Schedule A Worksheet classification between table 1 and 2

JA0293



December 15, 2021

Small Business Administration
Via Citizens Bank [janetsweeney@citizensbank.com]

Re:     SBA Loan Name:  Gordon College
        SBA Loan Number: 8289087101
        Number of Employees:  **495.67**
        SBA Loan Amount:  $7,046,037.00
        *Update to Response to Notice of Preliminary Findings Related to Forgiveness Application*

To Whom It May Concern:

This brief 2-page letter is to update our Response Letter dated December 3, 2021, submitted via our Lender Citizens Bank ("Citizens"), regarding SBA's preliminary review of the Gordon College Loan Forgiveness Application under the CARES Act of 2020 Paycheck Protection Program (PPP).

First, we understand that, based upon our December 3 letter, SBA is considering removal of its earlier reason for possible denial of forgiveness based upon the employee count threshold. Please let us know if there is any additional information we can provide to help fully resolve this reason.

Second, we understand that SBA may have additional questions related to SBA's NAICS Size Standard, industry small business size standards, or alternative size standards per SBA Standard Operating Procedure SOP 50 10 5(k). We respectfully submit that because Gordon College is a nonprofit private religious college federally tax-exempt under Internal Revenue Code § 501(c)(3), these SBA size standards do not apply to Gordon College under the CARES Act and related regulations and guidance. Among other things, the Interim Final Rule Docket No. SBA-2020-0015, 13 CFR Part 120, RIN 3245-AH34, **Federal Register** Vol. 85 No. 73 at pp. 20811 to 20817, issued April 11, 2020 and effective immediately April 15, 2020 (the "IFR"), is directly relevant. (Available at  https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=3245-AH34  and at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf .)

Section III.2.a. of that IFR provides that if the Borrower satisfies the employee count threshold, it is eligible for loan forgiveness if it is a "tax-exempt nonprofit organization described in section

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

**www.gordon.edu**
1

JA0294

SBA_001403

File: GORDON_COLLEGE_SBA_update_re_Size_Rules_-2021-12-15.pdf     [2021/12/15 15:42:28]                    1277 of 1562



501(c)(3) of the Internal Revenue Code (IRC)" without regard to SBA size standards. *See* IFR Section III.2.a.i.B. This is reinforced later in Section III.2.c. of the IFR, which states in full that:

> Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, ***except that nonprofit organizations authorized under the Act are eligible***. (SOP 50 10 can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs.) [emphasis added]

Section III.1 further states that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)."

For these reasons, Gordon College respectfully submits that as a private nonprofit religious college tax-exempt under IRC § 501(c)(3), it is not subject to the referenced SBA size standards.

We trust that this additional information will be helpful. We again respectfully request that the SBA reconsider your preliminary determination regarding denial of forgiveness of the PPP loan and instead grant us forgiveness of the full amount of the Gordon College PPP Loan. Please contact me with any questions at 978-867-4883 or at Stephen.Lacorazza@gordon.edu. Thank you.

Sincerely,

Stephen D. Lacorazza, CPA, MST
Vice President of Finance & CFO
Gordon College

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
2

JA0295

SBA_001404

File: GORDON_COLLEGE_SBA_update_re_Size_Rules_-2021-12-15.pdf    [2021/12/15 15:42:28]    1278 of 1562



# GORDON
## COLLEGE

December 15, 2021

Small Business Administration
Via Citizens Bank [janetsweeney@citizensbank.com]

Re:    SBA Loan Name:  Gordon College
       SBA Loan Number: 8289087101
       Number of Employees:  **495.67**
       SBA Loan Amount:  $7,046,037.00
       *Update to Response to Notice of Preliminary Findings Related to Forgiveness Application*

To Whom It May Concern:

This brief 2-page letter is to update our Response Letter dated December 3, 2021, submitted via our Lender Citizens Bank ("Citizens"), regarding SBA's preliminary review of the Gordon College Loan Forgiveness Application under the CARES Act of 2020 Paycheck Protection Program (PPP).

First, we understand that, based upon our December 3 letter, SBA is considering removal of its earlier reason for possible denial of forgiveness based upon the employee count threshold. Please let us know if there is any additional information we can provide to help fully resolve this reason.

Second, we understand that SBA may have additional questions related to SBA's NAICS Size Standard, industry small business size standards, or alternative size standards per SBA Standard Operating Procedure SOP 50 10 5(k). We respectfully submit that because Gordon College is a nonprofit private religious college federally tax-exempt under Internal Revenue Code § 501(c)(3), these SBA size standards do not apply to Gordon College under the CARES Act and related regulations and guidance. Among other things, the Interim Final Rule Docket No. SBA-2020-0015, 13 CFR Part 120, RIN 3245-AH34, **Federal Register** Vol. 85 No. 73 at pp. 20811 to 20817, issued April 11, 2020 and effective immediately April 15, 2020 (the "IFR"), is directly relevant. (Available at  https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=3245-AH34  and at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf .)

Section III.2.a. of that IFR provides that if the Borrower satisfies the employee count threshold, it is eligible for loan forgiveness if it is a "tax-exempt nonprofit organization described in section

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
1

JA0296

SBA_001405

File: GORDON_COLLEGE_SBA_update_re_Size_Rules_-2021-12-15.pdf    [2021/12/15 15:43:39]        1279 of 1562



501(c)(3) of the Internal Revenue Code (IRC)" without regard to SBA size standards. *See* IFR Section III.2.a.i.B. This is reinforced later in Section III.2.c. of the IFR, which states in full that:

> Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, ***except that nonprofit organizations authorized under the Act are eligible***. (SOP 50 10 can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs.) [emphasis added]

Section III.1 further states that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)."

For these reasons, Gordon College respectfully submits that as a private nonprofit religious college tax-exempt under IRC § 501(c)(3), it is not subject to the referenced SBA size standards.

We trust that this additional information will be helpful. We again respectfully request that the SBA reconsider your preliminary determination regarding denial of forgiveness of the PPP loan and instead grant us forgiveness of the full amount of the Gordon College PPP Loan. Please contact me with any questions at 978-867-4883 or at Stephen.Lacorazza@gordon.edu. Thank you.

Sincerely,

Stephen D. Lacorazza, CPA, MST
Vice President of Finance & CFO
Gordon College

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

2

JA0297

SBA_001406

File: GORDON_COLLEGE_SBA_update_re_Size_Rules_-2021-12-15.pdf    [2021/12/15 15:43:39]    1280 of 1562



**GORDON**
COLLEGE

December 3, 2021

Small Business Administration
Via Citizens Bank[1]

Re:    SBA Loan Name:  Gordon College
       SBA Loan Number: 8289087101
       Number of Employees:  **495.67**
       SBA Loan Amount:  $7,046,037.00
       *Response to Notice of Preliminary Findings Related to Forgiveness Application*

To Whom It May Concern:

We understand that the Small Business Administration (SBA) has conducted a preliminary review of the Gordon College Loan Forgiveness Application under the CARES Act of 2020 Paycheck Protection Program (PPP). We also understand that based on your preliminary review, SBA is considering recommending a Full Denial of the forgiveness amount available for the above-referenced PPP loan. We further understand from the lender's information that your recommendation is preliminary and is undergoing more processing which includes consideration of our response to you by this submission.

The lender indicated that SBA has concerns about whether Gordon College met the 500 employees per location rule for the PPP loan. You have indicated that you believe that Gordon College has 639 employees in its Massachusetts location for purposes of determining PPP loan eligibility.

In this letter, we will provide you information as to how the employee number of 495.67 employees listed in our early April 2020 loan application is reasonable, is fully accurate based on the relevant FTE calculations, and was determined relying on the information under the CARES Act, the Treasury Department and SBA FAQs, and other guidance available at the time of PPP loan application certification and submission.

---

[1] Submitted to Citizens Bank on December 3, 2021 via email from Gordon College to janet.sweeney@citizensbank.com

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

**www.gordon.edu**

1



For these and other reasons, we strongly believe and we respectfully urge (a) that the SBA's preliminary assessment and consideration of a denial is clearly wrong and (b) that SBA should approve and authorize full forgiveness for the PPP loan received by Gordon College.

1.      **Background.**

When the federal lockdowns were ordered in March 2020, rendering the provision of in-person educational services impossible as students were sent home, many colleges were concerned about how they would keep their employees employed. At that time, it was unknown when or if students would return for the spring semester or how long educational institutions would remain shut down.

Thankfully the Paycheck Protection Program (PPP) loan program was introduced as a key element of the federal CARES Act to address the concerns of many affected by this swift and deadly pandemic. There were many moving parts in the loan application and approval process during the first few months of operation of the PPP loan program. The Treasury Department (Treasury) and SBA worked together to clarify many points of confusion and clarifications as the federal government built out this new loan program over the months following its initiation. Treasury and SBA were standing up a program literally overnight that could help keep businesses alive and employees on the payroll in such unprecedented times. It was clear that not all questions would be clarified immediately and much had to be worked out over a period of several weeks and months.

As a direct result of this accelerated implementation under challenging circumstances, there were many points of ambiguity and even confusion related to the PPP program. These included questions surrounding eligibility to apply for the program, the original application process for a PPP loan and subsequent revisions to the application process for lenders and for borrowers, guidance as to how to complete the application, questions from banks about liability, questions from nonprofits – especially religious organizations – about their eligibility for a PPP loan, questions from banks seeking clarification for how to advise and service PPP loans for their clients, bank and SBA portal upload issues as the technology systems were being built to handle the influx of these loan applications, and many others. These points of confusion and the lack of clarity created an enormous burden on the SBA and its staff to service this new program and respond to so many different constituents (such as Treasury and Congress, the private banking sector, public and private employers, and employees who would be kept on payroll as a result of this new loan program).

Treasury and SBA were issuing regulations and FAQs as fast as possible to try to bring clarity and dispel confusion. Indeed, Treasury and SBA issued FAQ #1 on April 6th, the day Gordon College signed our PPP application.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
2

JA0299



This complexity, delay, and lack of clarity continued well into May 2020. On May 12th, the American Institute of CPAs (AICPA), National Federation of Independent business (NFIB), the S Corporation Association (S-CORP), and four other small business advocates issued a statement in response to the lack of clear and consistent guidance from Treasury and SBA about the Paycheck Protection Program, stating in part that:

> . . . changing SBA guidance is causing many small businesses to rethink their participation in the Program. Small businesses need consistency and certainty, and applicants need to know that they will be held to the same guidance that was in place at the time the business applied for a loan.

> Some deserving businesses are returning funds or choosing to forego applying due to the uncertainty created by the SBA. . . .

> This collapse of trust in what ultimately has been a successful program is troublesome and will negatively impact our country's economic recovery. The last thing we need is for deserving businesses to lay off employees and close their doors because ever-changing rules and the threat of civil penalties scared them away from the PPP.

The question becomes what a prudent employer, facing imminent financial threat as a result of a national shelter-in-place order and state shutdown related to the COVID-19 virus pandemic, must do to certify in good faith the information and specific certifications required in the PPP application promulgated by the SBA. Employers across the country analyzed what was available at the time of certification and submission, examined the limited guidance provided by SBA and Treasury, and made reasonable good faith decisions in calculating the maximum loan amount and number of employees.

Much has changed since that initial period of confusion and distress that existed for employers – and especially for nonprofit organizations – at the time the PPP loan program was announced. It might be helpful to walk through what we knew, when we knew it, and how we applied the official guidance available to us at the time of signing the Gordon College PPP loan application in early April 2020. Throughout the rapidly moving process of preparing, certifying, and submitting our PPP loan application, we sought counsel from our accountants and other professional advisors and we carefully studied the guidance as it was released by Treasury and SBA to make sure we were complying in good faith with the rules of the PPP program as set forth at that time.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
3

JA0300



**2.      Timeline of Submission and Approval of Gordon College Loan No. 8289087101.**

April 6, 2020 – Loan application signed by Gordon College and submitted to Citizens Bank

April 6–13, 2020 – Citizens Bank portal problems delaying the upload of the application to SBA

April 13, 2020 – Gordon College's April 6th loan application was submitted via email to Citizens Bank at the request of the Bank Representative after the portal problems persisted

April 13, 2020 – Citizens Bank notified Gordon College that its loan application had been reviewed and approved for funding by SBA

April 17, 2020 – Citizens Bank confirmed that Gordon College's funding is reserved with the SBA

April 24, 2020 – Citizens Bank fully funded the Gordon College SBA loan in the amount of $7,046,037.00

July 22, 2021 – Gordon College submits loan forgiveness application certifying that entire amount of its PPP loan was spent on payroll (See Section 5).

**3.      Timeline of PPP Federal Guidance Available to Gordon College.**

**3.1  <u>Reliance on Guidance at the Time of Application for the PPP Loan</u>**.

Many PPP loan applicants were deeply concerned about signing the legally required good faith certification given the confusion and lack of available federal guidance at the time they filed their applications and the need for clarification on a number of practical points needed to complete the application. The Treasury Department helped ease these fears and concerns among applicants with its FAQ #17 issued on April 6th which stated that:

> "Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application."

Gordon studied all the relevant information available to it, sought professional counsel from its outside accountants and other professionals, and relied in good faith on the published PPP loan application guidance available to it at the time that it submitted its PPP loan application in early April 2020.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

4

JA0301

SBA_001410



The PPP loan guidance that was available to Gordon College during the period in April 6-13, 2020 when we submitted our loan application falls into three primary periods:

- At the time Gordon College signed our PPP loan application and initially submitted our application to Citizens Bank (April 6, 2020)
- At the time the bank accepted the Gordon College PPP loan application via email (April 13th)
- At the time the bank fully funded the Gordon College PPP loan (April 24th).

**3.2  Guidance Available as of the Date Gordon College Signed the Loan Application and Initially Submitted It to Citizens Bank – April 6, 2020.**

**3.2.1  The CARES Act** which authorized the Paycheck Protection Program (PPP) became law on **March 27, 2020**. It did not address the calculation of employees. It simply stated the general definition of "employee" as including "individuals employed on a full-time, part-time, or other basis." The CARES Act did not provide any method to calculate the sum of these full and part-time employees and the Act did not include any reference to "headcount."

**3.2.2  PPP Information Sheet**.  On **March 31, 2020**, Treasury Department issued a four-page information sheet about the PPP loan program. In that document it indicated that the request for forgiveness will include documents that verify the number of "***full-time equivalent employees***".

**3.2.3  PPP Application Form**.
The PPP application form that was in effect when we applied (and therefore the form actually used by Gordon College for its loan application) was issued by SBA/Treasury on **April 2, 2020**:
- On page three of this version of the PPP application form, it provided no instructions for calculating part-time employees for purposes of entering the "Number of Employees" figure on page one of the application. The form did not address how an applicant should calculate employees for purposes of completing the Number of Employees statement.
- Instructions provided as to how to calculate "Average Monthly Payroll" did not reference part-time employees.
- The PPP application form required the applicant to certify that it will provide to the Lender documentation verifying the number of ***full-time equivalent employees*** on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

In the absence of any other guidance, we reasonably trusted that the SBA/Treasury guidance for counting employees for *loan forgiveness* indicated in the application (the FTE standard) would also

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
5

JA0302

SBA_001411

apply for the calculation of employees for *loan eligibility*. Therefore, the figure we provided on the application for number of employees was based on the FTE calculation: **495.67 employees**.

In addition, the figure for "Number of Employees" in our application as submitted on April 6-13, 2020 indicates on its face that it is using this FTE calculation (rather than a "headcount" calculation) as it has a .67 partial employee figure included in the answer.

**3.2.4 Interim Final Rule**. This extensive 31-page document issued on **April 2, 2020** had as its stated purpose to outline "the key provisions of SBA's implementation of sections 1102 and 1106 of the CARES Act in formal Guidance."[2] Although it clarified eligibility for the PPP loan as involving 500 or fewer employees, it made no reference to and provided no guidance on the definition of "employee" or "part-time employee". It did not address the issue of how to count employees for purposes of loan eligibility.

There was however a reference to "***full-time equivalent employees***" in this document at section 2(t)(iv). It again repeats the required certification that the borrower will provide "[d]ocumentation verifying the number of full-time equivalent employees on payroll…"

**3.2.5 Interim Final Rule on Affiliations**. The stated purpose of this Interim Final Rule issued on **April 3, 2020**, was to supplement the "Initial Rule" (see 3.2.4 above) "with additional guidance regarding the application of certain affiliate rules applicable to SBA's implementation of sections 1102 and 1106 of the [CARES] Act".[3] This Interim Final Rule also clarified confusion for Faith Based Organizations regarding their eligibility for SBA PPP loans.

**3.2.6 FAQs.** FAQ #1 and the answer were posted on the Treasury.gov website on **April 3, 2020**. FAQs and answers numbers 2–18 were added on **April 6, 2020**.

None of these FAQs dealt with the calculation of employees based on headcount or any other methodology.

FAQ #17 is especially pertinent to Gordon College's PPP loan and what we understood to be the Treasury/SBA guidance at the time of application: "Borrowers and lenders may rely on the laws, rules, and guidance available *at the time of the relevant application*." (emphasis added).

**No** guidance had been issued by Treasury related to any "headcount" methodology for eligibility at the time of application (signed April 6, submitted to the bank on April 13), notice of approval of

---

[2] Published in the Federal Register, Vol. 85, No. 73 on April 15, 2020 as 13 CFR Part 120 [Docket No. SBA – 2020-0015] RIN 3245-AH34.

[3] Published in the Federal Register, Vol. 85, No. 73 on April 15, 2020 as 13 CFR Part 121 [Docket No. SBA – 2020-0019] RIN 3245-AH35.



the loan (April 13th), or full funding of the Gordon College PPP loan (April 24). In fact, the only references to counting employees involved full-time equivalent calculations for forgiveness.

**3.3  Guidance Available as of the Date the Bank Accepted the Gordon College Loan Application Via Email – April 13, 2020.**

**3.3.1  FAQs #19-20** published on the Treasury.gov website on **April 8, 2020** were not relevant to the employee figure determination issue.

**3.3.2  FAQs # 21-25** published on **April 13, 2020** may or may not have been posted on the Treasury.gov website at the time of the bank's uploading of our application. Nonetheless, none of these FAQs were relevant to the issue of addressing part-time employees.

**3.4  Guidance Available as of the Date the Bank Fully Funded the Gordon College PPP Loan on April 24, 2020.**

**3.4.1  Interim Final Rule Issued April 14, 2020**. This Interim Final Rule was posted on the Treasury.gov website on **April 14, 2020**, and published in the Federal Register on **April 20, 2020**. It is titled: "Business Loan Program Temporary Changes; Paycheck Protection Program – Additional Eligibility Criteria and Requirements for Certain Pledges of Loans."[4] Its stated purpose is to provide guidance for individuals with self-employment income and to address eligibility issues for certain business concerns and requirements for certain pledges of loans. None of these considerations were directly relevant to the Gordon College PPP loan application.

**3.4.2  Interim Final Rule Issued April 24, 2020.** This Interim Final Rule related to the good faith certification of the applicant that "current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."[5] It is not applicable to the issue of calculation of employees on page one of the application.

**3.4.3  Borrower Information Section on Treasury.gov Posted on April 24, 2020**. On April 24, 2020 additional guidance was posted in the Borrower's Information Section on the official Department of Treasury website at www.Treasury.gov titled: *Paycheck Protection Program: How to Calculate Maximum Loan Types – By Business Type*. There were numerous business types addressed (e.g. self-employed, partnerships, LLCs, S Corporations, C corporations). The pertinent sections related to nonprofit organizations included the following:

---

[4] This Interim Final Rule was published in the Federal Register, Vol. 85, No. 76 on April 20, 2020 as 13 CFR Part 120 [Docket No. SBA – 2020-0020] RIN 3245-AH36

[5] This Interim Final Rule was published in the Federal Register, Vol. 85, No. 82 on April 28, 2020 at 13 CFR Parts 120 and 121 [Docket No. SBA – 2020-0021] RIN 3245-AH37

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
7



**Question 6** addressed how the maximum PPP loan amount is calculated for eligible nonprofit organizations. The answer provided a methodology for calculating payroll costs and indicated what kinds of payroll documentation would be required to substantiate the applied for PPP loan amount.

**Question 7** addressed the maximum PPP loan amount calculated for eligible nonprofit religious institutions (among others). The answer provided a methodology for calculating payroll costs and indicated what kinds of payroll documentation would be required to substantiate the applied for PPP loan amount, which was nearly identical to the information in the Answer to Question 6.

This guidance was not available to Gordon College at the time it signed and then submitted its PPP loan application on April 6-13, 2020. It is uncertain whether this guidance would even have been available as late as the date that the PPP loan for Gordon College was actually funded, as that occurred on the same day the guidance was first posted. Regardless, this guidance did not address in any way how a loan applicant should count employees for purposes of answering the question about "Number of Employees" on page one of the PPP loan application.

   **3.4.4**   <u>**FAQs Issued April 14 through April 24, 2020**</u>**.** During the time period between the submission of the Gordon College loan application and the funding of the loan, SBA/Treasury issued ten additional FAQs, but only a few are relevant to the issue at hand. (FAQs #26-30 and #32-35 are not relevant to the issues addressed here.)

**FAQ #31** answered the question whether businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP Loan.

   **Answer**: ". . . all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application."

The Answer then further specified that borrowers should review the required good faith certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

This Answer affirms the FAQ #17 principle that the borrower is held to the laws, rules, and guidance established that could be known by the borrower "at the time of the loan application."

   **3.5.** <u>**Guidance After Gordon College Loan Approved by SBA and Fully Funded**</u>**.**

Due to the widespread confusion about how to count employees for eligibility for the PPP loan, on **April 26, 2020**, the Treasury Department posted FAQ #36 on the Treasury.gov website clarifying

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

JA0305

SBA_001414



the calculation of the 500 employees loan eligibility threshold. This FAQ #36 was posted after the Gordon College PPP Loan had been submitted, reviewed, and approved by SBA, and fully funded by the Bank.

> **FAQ #36.**
> **Question**: To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?
>
> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

It is noteworthy that this FAQ #36, issued on April 26, 2020, represents a substantial change from the CARES Act and the earlier guidance in a number of very important ways. We will briefly highlight just a few here.[6]

Among other things, this Answer to FAQ #36 reads the text of the CARES Act about *eligibility* for PPP loans as representing an intentional *contrast* by Congress to the later text of the CARES Act about *forgiveness* of PPP loans. It is much more normal and reasonable to read those two elements of the CARES Act in a consistent way. In addition, FAQ #36 relies upon the term "employee headcount" even though the term "headcount" does not appear in the CARES Act, in the application form provided by SBA/Treasury, nor in the various Interim Final Rules. And most important for present purposes, the Answer to FAQ #36 was issued on April 26, 2020 and appears to be the first time that Treasury/SBA stated *any* requirement that a PPP loan applicant must treat individuals employed on a "part-time or other basis" equally with full-time employees as each constituting a full "employee" under the CARES Act "when determining their employee headcount for purposes of the eligibility threshold" for PPP loan eligibility.

---

[6] Gordon College reserves our full rights to raise at any point in this process (including any appeals that would follow a denial of full forgiveness) any and all of these considerations and any other concerns about the change that was brought about by FAQ #36.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

9

JA0306

Case 1:23-cv-00614-BAH    Document 42-2    Filed 04/11/25    Page 214 of 241



Gordon College could not have considered this FAQ #36 standard in preparing, certifying, and submitting its PPP loan application, nor even in receiving the loan funds after the loan was awarded, for the simple reason that this standard was not in existence at those times. In good faith, we certified the application at the time of signing on April 6, 2020.

Based on the guidance available to Gordon College at the time of application, it was reasonable and prudent for Gordon College to use full-time equivalent calculations to determine if it met the 500 employee threshold. The FTE calculation, moreover, is a reasonable one and indeed is the standard specifically used calculating loan forgiveness under the CARES Act and referenced in the application that Gordon College relied upon and filed with the SBA. Gordon College calculated and certified in good faith its employee number for purposes of eligibility for the PPP loan relying on the guidance that had been issued by SBA/Treasury as of the date the certification was signed and the loan application was submitted by Gordon College. The College's clear intention and action was to provide in good faith information on its application consistent with the federal guidance available to applicants at that time.

**4.    Gordon College's FTE Calculations at the Time of PPP Loan Application.**

It may be helpful to understand how we reached the figure of 495.67 employees provided in the answer to the "Number of Employees" section on the PPP loan application that Gordon College submitted April 6-13, 2020.

    **4.1  Methodology.**  Gordon College utilized its human resources information system (HRIS) to determine full-time equivalent numbers for the following categories of employees: Section 4.2, Salaried Employees and 4.4, Stipend and Contract Employees. In the HRIS system of record, these categories of employees are assigned a full-time equivalence. The HRIS system does not have the capacity to make this full-time equivalence calculation for other special categories of employees such as Hourly Employees (Section 4.3) or Per Course Instructors (Section 4.5) The HRIS used by Gordon College at the time of loan application was the NuView HRMS system from IgniteTech.

    For the other categories, without any specific guidance available to us from SBA or Treasury at the time our application was submitted on how to calculate the PPP loan employee number, we utilized normal industry-standard methods that calculate full-time equivalents as a unit that indicates the total number of regular straight-time hours (i.e., not including

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
10

JA0307
SBA_001416
File: GORDON_COLLEGE_SBA_letter_-_2021-12-03.pdf    [2021/12/06 16:03:38]    1290 of 1562



overtime or holiday hours) worked by employees divided by the number of compensable hours applicable to a fiscal year. We explain how this calculation was done in Sections 4.3 and 4.5 below.

### 4.2  Salaried Employees: 339.64
Based on the HRIS data, there were **339.64** full-time equivalent salaried employees at the point the application was submitted.

### 4.3  Hourly Employees:
**Hourly Staff: 61.06 FTE**
**Student Employees: 32.10 FTE**
In order to be as precise and accurate as possible, for hourly employees we computed their full-time equivalence by dividing their hours reported for the most recent completed payroll period by a full-time work week. Hourly staff amounted to **61.06** full-time equivalents. Student employee hours amounted to full-time equivalents of **32.10**. This is made up of 257 unique individuals, but they average less than 5 hours per week in the period of reference.

### 4.4  Stipend and Contract Employees: 28.62
For stipend or contract employees, we again used the employee classification from the HRIS. The total full-time equivalence for this category at the time of application was **28.62.**

### 4.5  Per Course Instructors (Adjunct Faculty): 34.25
For per course instructors (adjunct faculty), we assumed that 1 class (4 credit hours for undergraduate or 3 credit hours for graduate) represents .25 full-time equivalence. (This actually overstates the most likely number of hours or percentage of full-time that the per course instructor would have worked.) The spring 2020 semester schedule was used to determine the full-time equivalence amounted to **34.25**.

In all instances above in the categories of employees outlined in Sections 4.2 – 4.5, no individual was assigned more than one full-time equivalence.

Our industry is both cyclical and unique which requires various employment needs. It naturally lends to starting and stopping employment at different points in the year. Part-time and temporary positions in many cases are very few hours that can be sporadic and/or intermittent.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

JA0308

SBA_001417



As mentioned above, our per course instructors for example may teach one or more collegiate level courses and the credit hours vary between graduate and undergraduate. They also vary between semester or quad courses.

Another unique but not uncommon circumstance at certain points in the year would be to hire summer camp staff that may only work one part-time week out of 52 weeks in a year. Their full-time equivalence would be almost infinitesimal yet on certain forms or reports each such worker may appear as though they represent one person paid in any given year or quarter. It would be a serious mistake to classify any such person as a full-time employee or as a full-time employee equivalent.

One more example would be a student that works on campus during the semester for only one or two hours a week. Depending on the role, sometimes they may not work any hours in a pay period. It is important to note that we limit all our full-time undergraduate students to 20 hours of work per week so they can focus on their studies, their primary reason for being on our campus. As stated above in Section 4.3, student full-time equivalents of 32.10 were recorded on the application. This is made up of 257 unique individuals, but they average less than 5 hours per week in the period of reference.

These examples above help explain the perceived discrepancy between the total number of employees paid on any given quarter's Form 941 and the number of employees certified on the Gordon College PPP loan application. Similarly, any references in a periodic form or report (such as the Form 941) that refer to the *total number of individuals paid* during the covered period does not accurately reflect and substantially overstates the *number of full-time employees and full-time employee equivalents* during that period. Among other things, any employee who started employment, ended employment, or both during that time period would appear to be a full-time employee when in fact they would only have been a small percentage of a single full-time equivalent and may have only worked a few hours in the normal course of business during that time.

The methodology we used to determine the total number of employees for purposes of the PPP loan application takes into consideration the various employment arrangements that individuals have with the College. The methodology we employed in good faith to certify the number of employees on the PPP loan application as described above is a reasonable approach in early April 2020, and especially in light of the absence at that time of specific SBA or Treasury guidance as to how to calculate the employee total number. At the time Gordon College submitted its application, or when

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

JA0309

SBA_001418

File: GORDON_COLLEGE_SBA_letter_-_2021-12-03.pdf    [2021/12/06 16:03:38]                    1292 of 1562



SBA reviewed our application and approved it, or when the PPP loan was funded, the "headcount" guidance was not in effect.

**5.    Gordon College's Use of Loan Proceeds to Ensure That Employees Remain Employed.**

As stated in our forgiveness application, we used one hundred percent (100%) of the PPP loan proceeds for Gordon College payroll expenditures to retain our employees. We did not apply those proceeds to any other permitted expense.

Given the high level of anxiety and uncertainty at the time Gordon College signed and submitted its application in early April 2020, we were grateful that the College was able to keep as many employees on the payroll as possible. This was due to the extraordinary measures the Congress took through the CARES Act to try to protect employees in the midst of a global pandemic not experienced in a century. It was a response the country, but more specifically the College desperately needed.

Without almost all of our undergraduate students, who left for spring break and had an uncertain return, management was preparing for significant furlough and layoff plan. It was to be reduction in force that only a global catastrophe such as this pandemic could bring on. The College was experiencing an immediate loss in revenue of approximately $2.4 million in room and board credits, and the possibility (and ultimate outcome) of losing out on much needed summer revenue that is generally in excess of $1 million.

As we looked forward to the fall, the potential of lost revenue and increased expenses was imminent. As stated before, the uncertainty could not have been higher. With the receipt of the PPP loan proceeds, Gordon College used all of the proceeds on payroll. While we could have used the proceeds for other permitted expenses, we did not. The intent of the program, as its title suggests, is to retain employees and that is precisely what the College did during our covered period. In fact, we spent more than $10 million on reportable payroll, much more than the full PPP loan amount. And to retain as many employees in employment as possible during the shutdown, in addition to applying the entire PPP loan proceeds to payroll, senior management of the College took voluntary salary reductions as a means to reduce college expenditures in the midst of the uncertainty.

We are thankful for PPP as it helped our nonprofit educational college endure the pandemic so our faculty and staff could stay employed and continue to serve our students.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu

13



6.    **Conclusion.**

Thank you for considering the fast-moving and unusual circumstances that created a patchwork of official guidance that changed significantly over time – especially as it related to the determination of the 500 employee eligibility threshold. Gordon College operated in good faith to study and understand the official guidance available to it at the time it applied to determine that it met the eligibility standard using full-time equivalent (FTE) calculations. The much later clarification in FAQ #36 about how to count 500 employees for purposes of eligibility was not available to Gordon College (or anyone else) at the time we signed and submitted our PPP loan application. In good faith, we certified the correctness of the number of employees based on the reasonable FTE standard.

We ask you to reconsider your preliminary determination regarding forgiveness of the PPP loan based on these new facts and information provided in this memorandum, and to grant us forgiveness of the full amount of the Gordon College PPP Loan. If you have any questions about any of this or if we may be helpful as you proceed, please don't hesitate to contact us. My phone number is 978-867-4883 and my email address is Stephen.Lacorazza@gordon.edu.

Sincerely,

Stephen D. Lacorazza, CPA, MST
Vice President for Finance & CFO
Gordon College

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
14

JA0311

SBA_001420



## EXECUTIVE SUMMARY

**INTRODUCTION**

- This Executive Summary provides an overview of and context for the documents that you requested and supplements the letter sent on December 3, 2021.[1]

- Gordon College fulfilled all requirements of the Paycheck Protection Program (PPP) of the Small Business Administration (SBA), including the Congressional provision that allowed any small business or non-profit, regardless of the specific industry they were in, to apply for a loan of up to $10 million to cover payroll and other eligible nonpayroll costs if the small entity had **500 or fewer employees**.

- The nature of employment at an educational institution is profoundly different from most typical "for-profit" small businesses in two significant ways:

  1. Schools operate based on an academic year (August-May), not a calendar year; so there is frequent starting and stopping of employment that revolves not only around the academic semesters but also the summers.
  2. Many employees at higher educational institutions like Gordon College work limited hours (particularly students); these jobs are also often associated with a high degree of turnover.
     a. When examining Gordon College's pay summary for 2019, keep in mind that more than one person, such as several adjunct professors or multiple students, may have filled one specific position or role during a calendar year.
     b. In the summer of 2019, Gordon also ran various sports camps, which hired many teen staff to work part-time for as little as one week in the entire year.

**NUMBER OF EMPLOYEES AT GORDON COLLEGE**

- At the time of its PPP loan application in April 2020, Gordon College had 331 full-time (permanent) employees and 519 part-time employees, including students.

---

[1] All documents requested are provided except for Internal Revenue Service Form 940 because this form does not apply to tax-exempt non-profits like Gordon College.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

**www.gordon.edu**

1



1. Three-hundred thirty-one (331) permanent staff converted to **331 Full Time Equivalent (FTE)** positions.

2. Based on the number of hours worked, 519 part-time employees converted to **159.1 Full-Time Equivalent (FTE) positions**.
   a. Two-hundred sixty-three (263) ***non***-*student* part-time employees converted to *123.76 FTEs*.
   b. Two hundred fifty-six (256) part-time *student* employees converted to just *35.34 FTEs* because many of these students worked for only a very limited amount of time each week or for only a short-period of time (project-based).
      1) Fifty-nine (59) percent (or 153 students) were considered 0.10 FTEs or less because they worked so few hours or they received a stipend/award for their service.
      2) Forty-two (42) students participated in the Federal work study program, which was equivalent to 3.35 FTEs; based on <u>SBA guidance</u> issued on May 8, 2020, *after* Gordon College filed its PPP loan application, these students now <u>no longer need to be included in Gordon's overall FTE calculation</u>.
      3) Most of these students could not work anymore on campus as the college went to virtual learning in April 2020 for the rest of the semester and through the summer.

- Throughout all of 2019, 360 full- and part-time employees at Gordon College participated in the health care plan offered to its workers, well below the 500-employee threshold.

- Throughout all of 2019, 423 full- and part-time employees at Gordon College received a contribution from Gordon to their retirement plan, well below the 500-employee threshold.
   1. This number includes 66 persons who left the employment of Gordon College sometime in 2019, well before the onset of the pandemic, representing a 15.8 percent turnover rate.
   2. Seventy (70) percent of this group (or 47 individuals) departed sometime between May through August 2019, which is typical at colleges after the school year ends.

- When Gordon College submitted its PPP application on April 6, 2020, at time when there was much confusion about the PPP program, the College took at face value the fourth certification statement on page 2 of the application form that borrowers should use FTEs in verifying the number of employees on its payroll.[2]  Currently, the PPP loan forgiveness application process

---

[2] "The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll…."

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
2

JA0313

SBA_001436

File: SBA_Package_3.24.2022.pdf    [2022/03/25 16:37:09]

1310 of 1562



allows small entities to use FTEs for part-time workers so the FTE formulation that Gordon College has provided should be considered as germane.

- Gordon College used the entire $7.046 million proceeds from the PPP loan to cover only compensation costs. The College did not use any of these PPP funds to pay for eligible non-payroll costs such as mortgage, rent, or utilities, even though it could have legally done so.

**CONCLUSION**

- When reviewing the loan forgiveness application from Gordon College and other institutions of higher education, there needs to be given consideration to the nature of this specific industry that revolves around a different business and employment cycle than found anywhere else.

- The data supplied by Gordon College must be analyzed within the context of this specific industry.

- Nonetheless, one must not lose sight of the overall goal:  Gordon College kept an average of 473.3 FTEs on the payroll during the covered period at the height of the pandemic, resulting in fewer people filing for unemployment, demonstrating that the PPP accomplished its mission for this institution.

Sincerely,

Stephen D. Lacorazza, CPA, MST
Vice President for Finance & CFO
Gordon College

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
3

JA0314

## SBA PPP Loan Forgiveness Platform Acceptor Checklist
**(Answer the questions and fill in the blanks where indicated.)**

`Reset Form`

| SBA Acceptor Name: Lakeidra McBride | Review Level: R1 ◯   R2 ◯   R3 ⦿ |
|---|---|

**Reviewer Information**

| Who was the Reviewer on the Submission? | Frank Lomeli |
|---|---|

**Loan Information**

| Lender: | Citizens Bank, National Association |
|---|---|
| SBA Loan Number: | 8289087101 |
| Borrower Name: | GORDON COLLEGE |
| Loan Amount: | $7,046,037.00 |

**Lender Forgiveness Decision**

| Lender Decision Result: | Approved ⦿<br>Partially Approved ◯<br>Not Approved ◯ |
|---|---|
| Lender Decision Amount Requested: | $7,046,037.00 |
| SBA Reviewer Decision: | Approved ◯<br>Partially Approved ◯<br>Not Approved ⦿ |
| SBA Reviewer Calculated Amount: | $0.00 |

**Document Review and Verification**  `Reset Section`

| Did the lender attach the completed and signed 2483, 3508/3508EZ and all supporting documents? | Yes ☑    No ☐ |
|---|---|
| Did you request additional documents from the Lender? | Yes ☐    No ☑ |
| What document did you request from the Lender? | N/A                N/A |
| Did you review the SBA Verified information in the Schedule A section? | Yes ☑    No ☐ |
| Did you review the SBA Verified Information in the Payroll and Non-payroll section? | Yes ☑    No ☐ |
| Did you review the Borrower Employment Details? | Yes ☑    No ☐ |

**SBA Forgiveness Decision**

| Did you answer **ALL** questions in the SBA PPP Loan & Forgiveness Review Procedure section? | Yes ☑    No ☐ |
|---|---|
| Did you review the forgiveness results? | Yes ☑    No ☐ |
| What is your recommendation? | Approved ◯   Returned ◯<br>Partially Approved ◯   Escalated ◯<br>Not Approved ⦿ |
| Did you approve a different SBA Calculated Amount? | Yes ☐    No ☑ |
| **If so**, what amount did you approve? | |

Add digital signature here: 

Digitally signed by
Lakeidra McBride
Date: 2022.01.10
12:17:19 -06'00'

_____
If you don't have PIV, use the Sign Function and place it on the line above. Click    on toolbar.

**SAVE YOUR FORGIVENESS CHECKLIST AND UPLOAD A COPY TO THE SUBMISSION AND LRSC**

SBA_001657
JSCM15

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GORDON COLLEGE | ) | Case No. 1:23-cv-614-BAH |
| 255 Grapevine Road | ) | |
| Wenham, MA 01984-1899, | ) | |
| | ) | |
| *Petitioner / Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION; ISABELLA CASILLAS | ) | |
| GUZMAN, *in her Official Capacity as* | ) | |
| *Administrator of the Small Business* | ) | |
| *Administration*; *and* THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| *Respondents / Defendants*. | ) | |
| | ) | |

### FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT 01

JA0316

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College


        Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: January 5, 2023

Docket No. PPP-8289087101

Appearances: Scott Ward, Esq., for Appellant
                Mark O'Brien, Esq., for SBA

## DECISION ON APPELLANT'S PETITION FOR RECONSIDERATION

### I. Background

On November 21, 2022, this Court denied the Appellant's appeal of the SBA's Final Loan Review Decision in which the SBA denied loan forgiveness on the grounds that " . . . the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Portal Doc, *Final SBA Loan Review Decision*). The Appellant timely filed a Petition for Reconsideration on December 1, 2022.

For the reasons set forth below, the Appellant's Petition is **DENIED**.

### II. Discussion

#### A. Standard of Review

To prevail on a request for reconsideration, the Petitioner must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

#### B. Analysis

##### B.i. Appellant's Petition for Reconsideration

As an initial matter, it must be noted that Appellant correctly identifies an error of fact in this Court's November 21, 2022 Initial Decision. Appellant is a tax-exempt nonprofit, not a small business concern. As demonstrated below, that Appellant is a nonprofit changes the analysis but

1

JA0317

not the result of the Initial Decision. Because today's Reconsidered Decision reaches the same outcome as the Initial Decision, the latter is affirmed.

The Payroll Protection Program enabling legislation increased eligibility for certain businesses and set size standards for those businesses. With regard to non-profits, the legislation and regulations are clear. To be eligible for a PPP loan, a nonprofit Appellant must have 500 or fewer employees or meet the SBA employee-based size standards for the industry in which it operates. The legislation provides:

> (D) Increased eligibility for certain small businesses and organizations. —
> (i)In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of—
> (I) 500 employees; or
> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.
>
> . . .
>
> (v) Employee.— For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657(a)(b)(2)(C) of this title employs not more than 500 employees under clause (i)(I) . . . *the term "employee" includes individuals employed on a full-time, part-time, or other basis.*

15 U.S.C. §636(a)(36)(D)(i), 15 U.S.C. §636(a)(36)(D)(v) (emphasis added).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection Program provides:

> 2. What do borrowers need to know and do?
>
> a. Am I eligible?
>
> You are eligible for a PPP loan *if you have 500 or fewer employees* whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
>    i. You are:

2

A. A small business concern as defined in section 3 of the
Small Business Act (15 U.S.C. 632), and subject to SBA's
affiliation rules under 13 CFR 121.301(f) unless specifically
waived in the Act; or

B. *A tax-exempt nonprofit organization* described in section
501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt
veterans organization described in section 501(c)(19) of the
IRC, Tribal business concern described in section 31(b)(2)(C)
of the Small Business Act, or any other business; and

ii. You were in operation on February 15, 2020 and either had
employees for whom you paid salaries and payroll taxes or paid
independent contractors, as reported on a Form 1099–MISC.

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812 (emphasis added).

13 C.F.R. § 121.106(a), which the Initial Decision relied on in upholding the Final Loan
Review Decision, provides:

(a) In determining a concern's number of employees, SBA counts
all individuals employed on a full-time, part-time, or other basis.
This includes employees obtained from a temporary employee
agency, professional employee organization or leasing concern.
SBA will consider the totality of the circumstances, including
criteria used by the IRS for Federal income tax purposes, in
determining whether individuals are employees of a concern.
Volunteers (*i.e.*, individuals who receive no compensation,
including no in-kind compensation, for work performed) are not
considered employees.

The CARES Act, as quoted above on Page 2, is very clear: SBA's proposed "headcount"
method—that is, counting every employed individual regardless of full-time or part-time status as
an "employee"—is the proper method with which to determine whether a nonprofit organization
is eligible for a PPP loan based on the 500-employee threshold. In the Initial Decision, this Court
relied heavily on 13 C.F.R. § 121.106, and incorrectly labeled Appellant a small business concern
as opposed to a nonprofit organization. While this was an error of fact, it was not material to the
decision, because the CARES Act's text resolves the employee-counting dispute in a manner
consistent with the Initial Decision. It is worth noting that SBA's *Paycheck Protection Program
Loans, Frequently Asked Questions (FAQs)*, a guidance document first issued on April 26, 2020,
reiterates this Court's interpretation of the CARES Act[1]:

36. **Question**: To determine borrower eligibility under the 500-
employee or other applicable threshold established by the CARES
Act, must a borrower count all employees or only full-time
equivalent employees?

---

[1] This guidance was issued after Appellant applied for its loan. It is included in this Reconsidered Decision only to
illustrate that SBA correctly interpreted the CARES Act's unambiguous language regarding how to calculate number
of employees for loan eligibility purposes.

3

**Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold.

*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov).

Appellant argues that the FTE method is proper for calculating its number of employees for loan eligibility purposes because this is the method prescribed by SBA Form 2483, the Borrower Application Form. This is incorrect. Certification #4 on Appellant's Form 2483 reads:

The applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities *for the eight-week period following this loan*.

(Portal Doc, *Form 2483*) (emphasis added).

Certification #4 does indeed instruct borrowers to provide information regarding full-time equivalent employees to their lender. However, this is to ensure that borrowers maintain and continue paying their workforce, which was the dominant purpose of the PPP. This is why certification #4 is limited to the covered period. Stated differently, certification #4 exists to assess Appellant's eligibility for loan forgiveness, not its eligibility for the loan itself. A hypothetical borrower with fewer than 500 employees may be eligible to receive a PPP loan but ineligible to receive loan forgiveness if it fires half of its staff during the covered period. Certification #4 is highly relevant in such a situation. It is not relevant when the sole question is loan eligibility.

Appellant filed an Objection to SBA's Supplement to the Administrative Record. In this Objection, Appellant notes that it addressed the above-quoted provision of the CARES Act in its appeal petition. In the appeal petition, Appellant argued:

There are only three uses of the term "part-time employee" in the CARES Act and none define the term. The term "headcount" is not used in the CARES Act. There is no formula for counting employees provided in the CARES Act. The Act made it clear that part-time employees were "included" in the definition of employee but did not address how to calculate the sum of these full-time and part-time employees into a total number. At least until the issuance of FAQ #36 on April 26, 2020, it was unclear for purposes of determining the 500 maximum number of employees for PPP loan eligibility whether such part-time employees are each counted as one employee (regardless of any specific part-time threshold hours standard) – a "headcount" formula – or whether the full-time equivalent (FTE) calculation was appropriate.

(Portal Doc, *Appeal document*).

4

In its Objection to SBA's Supplement, Appellant argued:

> Gordon further objects to SBA introducing in this Supplement a
> new interpretation of language from the CARES Act. That
> language has already been fully addressed in Gordon's Appeal
> Petition – and SBA did not even attempt to file any response then.
> See, e.g., Appeal Petition Appellant Gordon College's Objections
> to SBA Dec. 8, 2022 Supplement to Administrative Record 4 at
> pp.17-18. The CARES Act language quoted by SBA in the
> Supplement addresses WHO a PPP loan applicant should include in
> determining its number of employees: "the term `employee'
> includes individuals employed on a full-time, part-time, or other
> basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition
> at pp.10. But that language does not address HOW such employees
> should be included. Counting full-time equivalent employees
> unquestionably "includes" full-time and part-time and other
> employees. Yet in the Supplement SBA now asserts that "includes"
> is effectively the same as "headcount.". SBA's interpretation goes
> beyond the language of the Act that the Supplement relies upon and
> beyond the language of SBA Form 2483. Until SBA issued FAQ
> #36 on April 26, 2020, neither the CARES Act nor any SBA PPP
> guidance in any other way instructed nonprofit religious
> organizations applying for a PPP loan HOW to count – that is,
> whether to use FTE or headcount to calculate

(Portal Doc, *Gordon College Objections to Supplement*).

In this Court's view, Appellant's creation of two categories—that is, "who a PPP loan
applicant should include in determining its number of employees" and "how such employees
should be included"—is a distinction without a difference. The CARES Act's text is quite clear:
"For purposes of determining whether a . . . nonprofit organization . . . employs not more than
500 employees under [15 U.S.C. §636(a)(36)(D)(i)(I)] . . . the term 'employee' includes
individuals employed on a full-time, part-time, or other basis." 15 U.S.C. §636(a)(36)(D)(v); *see*
15 U.S.C. §636(a)(36)(D)(i). The Act specifically states that this is the definition of employee *for*
*the purpose of determining a nonprofit organization's number of employees* under 15 U.S.C.
§636(a)(36)(D)(i), which is a CARES Act provision concerning borrower eligibility. Appellant
asserts that the CARES Act is ambiguous on the question of how to determine if a small business,
nonprofit organization, or other entity exceeds the 500 employee threshold. This is incorrect.
§636(a)(36)(D)(v) provides a definition of employee consistent with the "headcount" method
and—referencing the provision on loan eligibility size standards in the same sub-section—states
that this is the definition to be used in determining whether an entity complies with the 500-
employee limit or not. Under these circumstances, Appellant's arguments concerning the
applicability of 15 U.S.C. §636(a)(36)(D)(v) must be rejected.

There is ample evidence in the record demonstrating that Appellant had more than 500
employees. Appellant's 2019 Form 941s are consistent on this question. (AR at pp. 278, 396,
592, 790). When SBA asked Lender for information regarding Appellant's number of employees
per location and Lender forwarded this request to Appellant, Appellant stated that it had 680
total. (AR at pp. 75, 1411-12). Even ignoring this admission, there is no shortage of alternative

5

evidence in the record to conclude that Appellant exceeded the 500-employee threshold and was consequently ineligible for its PPP loan. The Initial Decision is affirmed.

As a final note, Appellant reiterates several arguments that were rejected in the Initial Decision, including (1) allegations of discriminatory treatment based on Appellant's assertions that SBA used the FTE method to count employees to assess PPP eligibility for similar borrowers in past FLRDs, and (2) claims of religious discrimination violating the First Amendment, the Religious Freedom Restoration Act, and SBA regulations. The Initial Decision was correct not to address these arguments. Allegations that SBA has forgiven loans in similar previous cases are not an independent ground upon which OHA may permissibly issue a decision overturning the Final Loan Review Decision at issue. As for the constitutional and statutory claims, OHA's authority to conduct proceedings involving claims of civil rights violations is very narrow and does not extend to any of the violations alleged by Appellant. *See* 13 C.F.R. § 134.102(b). Appellant is free to pursue these claims in an Article III federal court if it wishes to do so.

### B.ii. Appellant's Objection to SBA's Supplement to the AR

Appellant's Objection to SBA's Supplement argues that "SBA's Supplement is not properly part of the Administrative Record and should not be included in it nor considered by the ALJ." It is true that SBA's Supplement does not resemble a typical Supplement to the Administrative Record. It does not provide new documents or new information. Presumably, SBA filed the Supplement in response to this Court's December 2, 2022 Order to Supplement AR, which ordered SBA to "immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration." (Portal Doc, *Order to Supplement AR*). SBA uploaded Appellant's Form 2483 in a separate filing. (Portal Doc, *Form 2483*). Accordingly, SBA's Supplement is best understood as SBA's attempt to respond to this Court's request for "additional pertinent documentation related to how it calculated Appellant's number of employees." Given the substance of the Supplement— essentially, a sequence of legal arguments supporting its use of the "headcount" method to determine that Appellant had more than 500 employees and was therefore not eligible for its PPP loan—it operates identically to a formal SBA response to Appellant's Petition for Reconsideration.

It is unclear why SBA did not simply label the Supplement as a Response. The Supplement was filed on December 8, 2022. SBA had until December 19, 2022 to file its Response to the Petition for Reconsideration. (Portal Doc, *PFR Scheduling Order*). The Supplement presents no new information or documents, and instead summarizes SBA's legal justification for denying loan forgiveness. It is best characterized as SBA's Response to Appellant's Petition for Reconsideration, and the undersigned interprets it as such. Appellant's Objection is therefore overruled.

### C. Conclusion

Based upon the foregoing, it is determined that the Appellant has not proven that the Initial Decision was based upon a clear error of fact or law. **Accordingly, Appellant's Petition for Reconsideration is DENIED. The Initial Decision, dated November 21, 2022, is AFFIRMED because it reached the correct result, with the proper analysis reflected in this Reconsidered Decision.**

JA0322

**SO ORDERED.**

_Gary D. Smith_

Gary D. Smith
Administrative Judge

JA0323

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GORDON COLLEGE<br>   255 Grapevine Road<br>   Wenham, MA 01984-1899, | ) ) ) ) | Case No. 1:23-cv-614-BAH |
|        *Petitioner / Plaintiff,* | ) ) ) | |
| v. | ) ) | |
| UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA, | ) ) ) ) ) ) ) | |
|        *Respondents / Defendants.* | ) ) ) ) | |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

# EXHIBIT 02

JA0324

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College


        Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: November 21, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
                        Mark O'Brien, Esq., for SBA

## DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

### II. Background

#### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law.  P.L.116-136 (March 27, 2020). Appellant applied for a PPP loan on April 13, 2020. (Portal Doc, *Exh 03 - 2020-04-06 - GC PPP Appl*). PPP loan number 8289087101 ("the Loan") was disbursed to Appellant by the Lender on April 24, 2020 in the amount of $7,046,037. (AR at pp. 30-33).

On July 22, 2021, Appellant executed a PPP Loan Forgiveness Application Form requesting forgiveness of the full amount of the Loan. *Id.* On September 7, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested information regarding the Appellant's Loan. (AR at pp. 1405-06). On October 13, 2021, the SBA sent a letter to the Lender stating:

1

JA0325

We are currently reviewing the Hold Code(s) associated with this PPP Loan. This request is specific to this issue and is not made in the normal course. Please provide the following information so that SBA may decision the Hold Code(s) associated with this loan and it can subsequently be assigned for a forgiveness review. We must receive this information within 10 business days.

The following hold code is attached to your forgiveness application:

1. Employee Count Threshold - Employee Count indicative of concern – Potential eligibility issue

Please provide the following documentation to clear the above hold:

- Copies of most recent 3 years Federal Tax Returns (2018-2020)

(AR at pp. 1407-08).

On October 27, 2021, SBA sent another letter to Lender, this time requesting a "list of locations to include employee count per location." (AR at pp. 1409-10). SBA reiterated this request on November 3, 2021. (AR at pp. 1411-12). On November 15, 2021, SBA contacted the Lender again:

We are doing a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location.
- Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
- The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
  1. The maximum tangible net worth may not exceed $15 million; AND

2

JA0326

2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.

The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million.

(AR at pp. 1413-15).

In a December 8, 2021 letter to Lender, SBA stated:

In response to the Borrower's letter dated 12/3/2021. As of the date of the Borrower's PPP Loan Application, April 6, 2020, we had three governing documents, the Standard Operating Procedure (SOP 50 10 5(k)), the CARES Act, and the Borrower's Application Form (SBA Form 2483). SOP 50 10 5(k) contains the most information of the three regarding Eligibility Requirements (Subpart B, Chapter 2, Section II, paragraphs D1 and D4, Page 92).

We are continuing to do a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- Hold Code 21 – Employee Count Threshold; Based on Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location. This reason is under consideration for removal based on Borrower's letter dated 12/3/2021.
- Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
- Per SOP 50 10 5(k), The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
  1. The maximum tangible net worth may not exceed $15 million; AND
  2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal

3

years before the application date may not exceed $5.0 million.

The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million, making the Borrower ineligible for SBA assistance.

(AR at pp. 1418-20).

On February 25, 2022, SBA sent another letter to Lender:

I am currently working on the Forgiveness Request for the above referenced PPP loan. Your forgiveness application has been recommended for a decline or partial decline. All loans that are recommended for less than the requested amount of forgiveness amount must go through a quality control process that requires additional levels of review. This request is specific to this issue. Please provide the following information so that SBA may complete the quality control process and review this loan file. We must receive this information within 20 business days.

- 2019 Q1-Q4 Form 941
- 2019 Form 940
- 2019 Q1-Q4 State filings (State Unemployment Insurance-SUI)
- 2019 Summary report for Employer Health Contributions
- 2019 Summary report for Employer Retirement Contributions
- 2019 Payroll summary showing total pay per employee

(AR at pp. 1421-22).

On April 12, 2022, the SBA issued its Final Loan Review Decision denying forgiveness of Appellant's PPP Loan. The Decision stated:

SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.

A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower

4

is listed as 501 (c)(3), and therefore is not eligible under the
alternative size standard industry qualifications. The Alternative
Size Standard qualifications are limited to for-profit entities, that do
not qualify for a PPP loan under the traditional NAICS Employee-
Based Size Standard Industry criteria.

(Portal Doc, *Final SBA Loan Review Decision*).

## B. Appeal

On May 13, 2022, Appellant filed its appeal. (Portal Doc, *Appeal document*). On June 28,
2022, the Office of Hearings and Appeals (OHA) issued a Notice and Order. (Portal Doc, *Case
Schedule*). SBA filed the Administrative Record on August 19, 2022. (Portal Doc, *Administrative
Record - Gordon College*). The Appellant filed an Objection to the Administrative Record on
September 19, 2022. (Portal Doc, *Objections to Admin Record (09/19/2022)*).[1] In its appeal,
Appellant proposes various arguments for why SBA's Final Loan Review Decision was
mistaken:

First, the Loan Decision makes a clear error by applying the wrong
legal standard. As explained below, the SBA Examiner
retroactively applied a standard for determining the number of
employees for PPP loan eligibility purposes that did not exist at the
time Gordon submitted its application on April 13, 2020 . . .

Second, there is a second clear error by SBA in retroactively
overruling its April 2020 legal and factual determinations. On its
April 13, 2020 Loan Application, and at all times since, Gordon
consistently listed its total number of employees for determining
loan eligibility as 495.67. On its face, that is a precise FTE
calculation, not a "headcount." (No employee has "0.67" of a
"head" to count.). SBA originally determined that Gordon was
eligible for a PPP loan on April 15, 2020 using this FTE calculation
. . .

Third, the SBA Loan Decision under appeal utterly disregards SBA
PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP
FAQ since that time) . . .

Fourth, not only is this a clear error of law, it also causes serious
detrimental reliance harms to Appellant . . .

Fifth, the SBA examiner's final Loan Decision in Appellant's case
contradicts other decisions by other SBA Examiners involving
substantially similar Borrowers and relevant facts . . .

Sixth, it is a separate but extremely serious clear error for SBA to
apply different legal and factual standards to other Borrowers who
are similarly situated to Appellant. On its face, such distinctions are

---

[1] Appellant's various Objections ultimately have no bearing on the outcome of this appeal. To that extent, they are
denied.

JA0329

discriminatory and arbitrary, and likely even capricious. But
further, by applying differential standards to Appellant Gordon
College, a nonprofit religious private college, than to similar non-
religious colleges, the SBA Loan Decision may discriminate on the
basis of religion in violation (among others) of the First and
Fourteenth Amendments to the U.S. Constitution and of the federal
Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

## III. DISCUSSION

### A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its
appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review
Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

### B. Analysis

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to
certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep
their workers paid and employed. PPP was established under section 1102 of the Coronavirus
Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law
on March 27, 2020, and subsequently was revised and expanded by other statutes. In general,
PPP was open to all American small businesses with 500 or fewer employees, including sole
proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. §
636(a)(36)(D).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection
Program provides:

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees
whose principal place of residence is in the United States, or are a
business that operates in a certain industry and meet the applicable
SBA employee-based size standards for that industry, and:
i. You are:
A. A small business concern as defined in section 3 of the
Small Business Act (15 U.S.C. 632), and subject to SBA's
affiliation rules under 13 CFR 121.301(f) unless specifically
waived in the Act; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812.

6

In *Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, a document first issued on April 26, 2020, SBA and the Department of the Treasury state:

> **36. Question**: To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?
>
> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "full-time equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

(*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov)).

Appellant correctly points out that the FAQ document was issued 13 days after it applied for the PPP loan. However, pre-existing SBA regulations in place at the time were substantially similar to the method prescribed in the FAQ document. When it comes to calculating a small business concern's number of employees, 13 C.F.R. § 121.106—which was in force at the time Appellant applied for its loan on April 13, 2020—provides:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (*i.e.*, individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.
>
> (b) Where the size standard is number of employees, the method for determining a concern's size includes the following principles:
> (1) The average number of employees of the concern is used (including the employees of its domestic and foreign affiliates) based upon numbers of employees for each of the pay periods for the preceding completed 24 calendar months.
> (2) Part-time and temporary employees are counted the same as full-time employees.

7

13 C.F.R. § 121.106 clearly prescribes what Appellant terms a "headcount test" as the proper method by which to calculate a concern's number of employees for loan eligibility purposes. Stephen Lacorazza, Appellant's Vice President for Finance & CFO, stated in a November 5, 2021 email that Appellant has 639 employees (presumably calculated via the "headcount" method) at its Massachusetts location alone. In light of this admission, Appellant understandably focuses on whether it is proper to use the headcount method for counting employees when it comes to determining PPP loan eligibility.

This Court finds that the headcount method is not only appropriate, but required by 13 C.F.R. § 121.106. There is no denying that the speed of the PPP program's implementation—characterized by a rush of Interim Final Rules and a mishmash of interrelated regulations and guidance documents—was a challenging environment for businesses to navigate. Sympathy, however, is not sufficient to grant Appellant's appeal. 13 C.F.R. § 121.106 effectively put Appellant on notice that its employee calculation for eligibility should not use the FTE method.

As noted above, Appellant makes six primary arguments for why it should be deemed eligible for its PPP loan and (accordingly) eligible for loan forgiveness. For ease of reference, they are reproduced below:

> First, the Loan Decision makes a clear error by applying the wrong legal standard. As explained below, the SBA Examiner retroactively applied a standard for determining the number of employees for PPP loan eligibility purposes that did not exist at the time Gordon submitted its application on April 13, 2020 . . .

> Second, there is a second clear error by SBA in retroactively overruling its April 2020 legal and factual determinations. On its April 13, 2020 Loan Application, and at all times since, Gordon consistently listed its total number of employees for determining loan eligibility as 495.67. On its face, that is a precise FTE calculation, not a "headcount." (No employee has "0.67" of a "head" to count.). SBA originally determined that Gordon was eligible for a PPP loan on April 15, 2020 using this FTE calculation . . .

> Third, the SBA Loan Decision under appeal utterly disregards SBA PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP FAQ since that time) . . .

> Fourth, not only is this a clear error of law, it also causes serious detrimental reliance harms to Appellant . . .

> Fifth, the SBA examiner's final Loan Decision in Appellant's case contradicts other decisions by other SBA Examiners involving substantially similar Borrowers and relevant facts . . .

> Sixth, it is a separate but extremely serious clear error for SBA to apply different legal and factual standards to other Borrowers who are similarly situated to Appellant. On its face, such distinctions are discriminatory and arbitrary, and likely even capricious. But further, by applying differential standards to Appellant Gordon

8

College, a nonprofit religious private college, than to similar non-religious colleges, the SBA Loan Decision may discriminate on the basis of religion in violation (among others) of the First and Fourteenth Amendments to the U.S. Constitution and of the federal Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

Arguments 1, 2, and 3 are unavailing in light of 13 C.F.R. § 121.106, which was in force at the time of Appellant's PPP loan application. Arguments 4 and 5 do not allege a clear error or fact or law in the Final Loan Review Decision. With respect to Argument 5, the fact that other allegedly similar PPP loan recipients received loan forgiveness is not itself grounds upon which this Court could permissibly grant Appellant's appeal. As for Argument 6, this Decision does not take a position on the alleged RFRA or constitutional violations. OHA does not have the authority to issue decisions based on its interpretation of RFRA or the Federal Constitution. SBA's Final Loan Review Decision is affirmed.

### C. Conclusion

Based upon the foregoing**,** it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is an initial agency decision. However, unless a request for reconsideration is filed within ten days of this decision date pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211. A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

### SO ORDERED.

*Gary D. Smith*

Gary D. Smith
Administrative Judge

9

JA0333

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE<br>  255 Grapevine Road<br>  Wenham, MA 01984-1899,<br><br>           *Petitioner / Plaintiff*,<br><br>      v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as<br>Administrator of the Small Business<br>Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>           *Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

# EXHIBIT 03

JA0334