**UNITED STATES SMALL BUSINESS ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) | |
| Gordon College | ) ) | Docket No.  PPP-8289087101 |
| Appellant | ) ) | |
| Appealed from SBA PPP Loan No. 8289087101 | ) ) ) | |

**APPELLANT GORDON COLLEGE'S PETITION FOR RECONSIDERATION OF
SBA ADMINISTRATIVE LAW JUDGE'S DECISION ISSUED NOVEMBER 21, 2022
AND FAILURE TO ADDRESS APPELLANT'S
WRITTEN OBJECTIONS TO THE ADMINISTRATIVE RECORD**

Pursuant to 13 C.F.R. § 134.1211(c), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its *Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022 and Failure to Address Appellant's Written Objections to the SBA Administrative Record* (hereinafter the "Petition"). The SBA Administrative Law Judge's Decision issued November 21, 2022 (hereinafter the "ALJ Decision") commits multiple errors of law and errors of fact that are material to the decision in this appeal, as further set forth below.

**1.      Introduction and Summary of Argument.**

Gordon College submitted its PPP Loan Application on April 13, 2020, in good faith reliance upon the limited SBA guidance that was available at that time, just as SBA represented it was legally entitled to do. Gordon College determined that it was within the threshold number of employees by applying precisely the standard that was referenced in the SBA-issued PPP Loan

JA0335

Application Form and that was repeated in the April 15, 2020 Interim Final Rule. And Gordon College expended literally every penny of its PPP loan for precisely the primary purpose stated in the CARES Act and the PPP guidance – to keep its existing employees employed and on the payroll during an unprecedented pandemic-caused government-imposed shutdown of the U.S. economy. Gordon did not use the loan proceeds for any other purpose, even permitted ones. But the SBA now invokes later-issued guidance to retroactively apply to tax-exempt nonprofit Gordon College standards that expressly apply to "small business concerns" in a manner contrary to the relevant Interim Final Rules and other SBA guidance. The ALJ Decision reinforces and amplifies the SBA loan examiner's serious errors by making its own multiple errors of law and of fact that are not just material but foundational to its Decision.

Perhaps the most material and most glaring of the ALJ Decision's multiple errors of law and fact is that the Decision cites, quotes, and relies primarily, if not exclusively, upon the *wrong* subsection of the April 15, 2020 Interim Final Rule[1] ("IFR") as the foundation for the Decision's conclusions: (a) that 13 C.F.R. §121.106 applies and controls Gordon College's PPP loan application and this appeal, (b) that §121.106 clearly required use of a headcount method to determine employees for purposes of the PPP Loan Application, and (c) that Gordon College should have known all this at the time of submitting its PPP Loan Application on April 13, 2020, notwithstanding the fact that the SBA-issued PPP Loan Application Form required that Gordon certify, under penalty of perjury, the number of FTEs.

As detailed in section 3 below, the ALJ Decision quotes and relies heavily upon *subsection (A)* of section (2)(a)(i) of the April 15 IFR, which applies only to *for-profit small business concerns*. But the quotation *excludes* – and the entire ALJ Decision completely ignores – the

---

[1] Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20811.

JA0336

immediately following *subsection **(B)*** of section (2)(a)(i), which is the portion that specifically applies to *tax-exempt nonprofit organizations*. This obvious error by the ALJ Decision is even more glaring and more concerning because Appellant quoted the correct *subsection **(B)*** on page 13 of its Appeal Petition. This serious material error of law alone requires reconsideration and affords a sufficient basis to grant Appellant's appeal. But there is more.

This material error of law likely arises at least in part from the ALJ Decision's foundational error of material fact. At no point does the ALJ Decision in any way recognize that Gordon College is in fact a "tax-exempt nonprofit organization described in section 501(c)(3)" – the central factual question governing whether subsection (A) or (B) of section (2)(a)(i)(B) of the April 15, 2020 IFR applies. The ALJ Decision never once refers to Gordon's tax-exempt status. Indeed, the word "exempt" appears nowhere in the entire Decision, and the term "nonprofit" (and variations thereof) appear in the Decision only in the two places where the ALJ quotes from the Appeal Petition's summary of arguments. But the *fact* that Gordon is tax-exempt was ignored by the ALJ as completely irrelevant to the sparse legal reasoning of the ALJ Decision.

This and the other errors of fact material to the ALJ Decision in turn may reflect the Decision's cavalier attitude toward the accuracy of the Administrative Record in this appeal. Appellant filed 12-pages of Objections to Administrative Record identifying serious substantive omissions as well as smaller errors, omissions, and inaccuracies. Gordon's Objections were timely filed by Appellant on September 19, 2022. The ALJ did nothing to address any objection or argument in any way for more than two full months and nothing to address any objection or argument substantively at all. Rather, the ALJ Decision simply dismisses them with a two-line footnote devoid of substantive reasoning. This is another material error of both fact and law.

The most serious (though not the only) omission from the entire Administrative Record is the complete absence of the underlying PPP Loan Application submitted by Appellant Gordon

JA0337

College on April 13, 2020, on the Form 2843 (04/20) promulgated by SBA, requiring certification under penalty of perjury the number of full-time employees (FTEs) employed by Gordon. It defies logic to think that the PPP Loan Application that is the basis for the loan at issue in this appeal does not need to be part of the Administrative Record. But the ALJ's approach to the Record goes even further given that Gordon's Appeal Petition expressly argued that under the relevant SBA guidance, Gordon was legally entitled to rely upon this language in the SBA-issued PPP Loan Application Form. Indeed, substantially similar language calling for certification of full-time equivalent employees is repeated in Section III(t)(iv) of precisely the April 15, 2020 Interim Final Rule from which the ALJ Decision selectively quotes. Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20814. The failure of the ALJ Decision even to address these controlling authorities and these important arguments is yet another error of law highly material to the Decision.

The importance of a complete and completely accurate Administrative Record is not a mere formality or technicality. Rather, it is essential for Gordon College to be able to obtain meaningful federal court review of the ALJ Decision and the underlying SBA loan examiner decision. And it appears that it will be necessary for Gordon College to resort to the federal courts due both to the ALJ Decision's serious errors and mischaracterizations of the governing law and related guidance and to the ALJ Decision's refusal even to consider addressing the SBA's discriminatory treatment of Gordon College and failure to fulfill its constitutional and statutory nondiscrimination obligations. Whether it arises from negligence or from an intentional effort to narrow the Administrative Record before a reviewing court, the ALJ's decisions are clearly erroneous and highly prejudicial to Appellant.

Appellant hesitates to provide any further summary here. The ALJ Decision quotes the summary statement at the beginning of the Appeal Petition but then uses that to summarily dismiss Gordon's arguments without engaging them substantively. *See* ALJ Decision at p.9. It is

noteworthy that the ALJ Decision in two different places quotes in full the identical section from the Appeal Petition. Those two quotations combined occupy two full pages of the nine-age ALJ Decision. *Compare* ALJ Decision at pp.5-6 *with id*. at pp.8-9. Yet the ALJ Decision devotes only a single paragraph to actually *addressing* any of the six arguments that it twice quotes and that comprise almost one quarter of the total words in the Decision.[2]

The ALJ Decision simply dismisses the first three arguments with a single sentence that cites to 13 C.F.R. §121.106. It never engages the Appeal Petition's substantive arguments that explain why the April 13, 2020 Interim Final Rule, the SBA FAQs (particularly SBA PPP FAQ #17 issued April 6, 2020), and the PPP Loan Application Form 2843 (04/20) promulgated by SBA and completed by Gordon College under penalty of perjury should control. The ALJ Decision makes similar short one or two sentence dismissals of Gordon's fourth, fifth, and sixth arguments, as described further in sections 10 and 11 below.

The ALJ Decision fails to address Gordon's legal arguments in any substantive way beyond simply invoking 13 C.F.R. §121.106. This failure to engage arguments is itself an additional and separate error of law material to the Decision. Most important, the ALJ Decision notably fails to present any counter argument to Appellant's explanations of why the April 13, 2020 Interim Final Rule, the SBA FAQs, and the SBA PPP Loan Application Form signed, certified, and submitted by Appellant on April 13, 2020, all strongly support Appellant's use of the FTE method to calculate the number of employees at that time. The ALJ Decision effectively assumes, *sub silentio*, that its invocation of 13 C.F.R. §121.106 overrides the express language of the required certification on

---

[2] The ALJ Decision spends more than five times as many words quoting (twice) the Appeal Petition as it spends actually addressing any of its arguments. A word count of the text of the ALJ Decision indicates that there are about 3,113 words in the Decision. The two quotations from the Appeal Petition on pages 5-6 and 8-9 add up to about 694 words. Yet the paragraph in which the ALJ Decision dismisses all of these arguments contains at most 132 words.

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*                    5

JA0339

the PPP Loan Application form, but the Decision presents no support for this.

The ALJ Decision's conclusory dismissals of substantive legal arguments are similar to the arbitrary decision to ignore all of Appellant's Objections to the Administrative Record filed September 19, 2022 for more than two months, only to dismiss them *en masse* in a 19-word footnote in the ALJ Decision. Notably, at no point does the ALJ Decision address the conspicuous absence of Gordon's April 13, 2020 PPP Loan Application itself from the Record filed by SBA.

The ALJ Decision's refusal to require supplementation of the Record with that and other key documents is a separate error of law. And not only do these arbitrary, capricious, and unsupported decisions deny Appellant the legally and factually correct resolution of its appeal, they also deny Appellant the fully developed factual and legal record that will be needed to obtain meaningful federal court review of SBA's errors.

For these and the other reasons set forth below, the multiple errors of law and of fact in the ALJ Decision are material to the Decision and seriously prejudicial to Appellant Gordon College. The ALJ Decision must be reconsidered and corrected.

**2.    Standard of Review.**

Under the PPP Appeal Regulations, "The request for reconsideration must clearly show an error of fact or law material to the decision." 13 C.F.R. §134.1211(c)(1).

**3.    The ALJ Decision Commits a Material Error of Law by Relying Upon the Wrong Subsection of the April 15, 2020 Interim Final Rule.**

A clear material error of law is at the heart of the ALJ Decision. The Decision applied the wrong legal standard and its reasoning rests upon this erroneous legal foundation. The ALJ Decision asserts that Gordon College should have known, at the time that it signed, certified, and submitted its PPP Loan Application, that it could only use a "headcount" method to determine the number of employees and must not use an FTE method. The sole and entire basis for that position

JA0340

is the Decision's mere citation to and reliance upon 13 C.F.R. §121.106. The sole and entire basis

for the ALJ Decision's complete reliance on §121.106 occurs at the bottom of page 6, where the

ALJ Decision quotes section (2)(a)(i) of the April 15, 2020 Interim Final Rule. That portion of the

ALJ Decision and is quoted here in full:

> In relevant part, SBA's first Interim Final Rule implementing the
> Paycheck Protection Program provides:
>
> 2. What do borrowers need to know and do?
>
> a. Am I eligible?
>
> You are eligible for a PPP loan if you have 500 or fewer employees whose
> principal place of residence is in the United States, or are a business that
> operates in a certain industry and meet the applicable SBA employee-
> based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small
> Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules
> under 13 CFR 121.301(f) unless specifically waived in the Act; or . . .
>
> Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812.

This quotation ends with subsection (A) and goes no further. This quotation is the *only reference*

to the April 15, 2020 Interim Final Rule (or to any other Interim Final Rule) in the ALJ Decision,

even though this IFR was discussed on page 13 of the Appeal Petition and attached as Exhibit 7.

The ALJ Decision's selective quotation of the IFR is material – and clearly erroneous –

both for what it includes and for what it excludes. The ALJ's quotation *includes subsection (A)* of

section (2)(a)(i) of the IFR, which is the portion that applies to *for-profit small business concerns*.

But the Decision's quotation *excludes* the immediately following *subsection (B)* of section

(2)(a)(i), which is the portion that specifically applies to *nonprofit organizations*, including

nonprofit religious educational institutions such as Appellant Gordon College. This obvious and

serious error by the ALJ Decision is even more concerning because Appellant quoted the correct

*subsection (B)* on page 13 of its Appeal Petition.

JA0341

Subsection **(B)** of section (2)(a)(i) directly governs nonprofit organizations, including Gordon College. The full text of section (2)(a)(i)(B) provides (with highlighting added):

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
i. You are:
A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099–MISC.

On this basis, the ALJ Decision then invokes and quotes FAQ #36. The Decision begrudgingly acknowledges that this FAQ #36 was not issued until April 26, 2020, and that this was 13 days after Gordon College had submitted its PPP Loan Application. The Decision downplays the importance of this chronology, however, in a number of important ways that will be discussed separately further below.

**4.     The ALJ Decision Commits a Material Error of Law by Relying Upon Regulations That Do Not Clearly Apply to a Tax-Exempt Nonprofit Organization Such as Appellant Gordon College as the Basis for Retroactive Application of § 121.106.**

The ALJ Decision then immediately uses its selective quotation of section (2)(a)(i)(**A**) as the sole basis for its retroactive application of (and utter reliance on) 13 C.F.R. § 121.106:

However, pre-existing SBA regulations in place at the time were substantially similar to the method prescribed in the FAQ document. When it comes to calculating a small business concern's number of employees, 13 C.F.R. § 121.106—which was in force at the time Appellant applied for its loan on April 13, 2020— provides:

(a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis….

ALJ Decision at p.7 (highlighting added).

The ALJ Decision repeatedly uses the term "small business concern" and it repeatedly attempts to apply to Gordon College – a nonprofit religious institution of higher education that is tax-exempt under IRC § 501(c)(3) – regulations that are expressly and specifically about "small business concerns." The ALJ Decision does this even though section (2)(a)(i) of the April 15, 2020 IFR clearly provides that a "tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)" under subsection (B) is markedly different from a "small business concern" under subsection (A). This distinction in section (2)(a)(i) of the IFR is significant in many ways. One such way is that subsection (A) indicates that a "small business concern" is subject to the SBA rules in 13 C.F.R. Part 121 but subsection (B) refers only to tax-exempt status under IRC § 501(c)(3) and makes no reference whatsoever to 13 C.F.R. Part 121. These contrasts are highlighted in the quotation below:

> i. You are:
>
> A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
>
> B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and

The ALJ Decision later amplifies this error in language that reinforces that its error of law is not only material but central and foundational:

> This Court finds that the headcount method is not only appropriate, but required by 13 C.F.R. § 121.106. There is no denying that the speed of the PPP program's implementation—characterized by a rush of Interim Final Rules and a mishmash of interrelated regulations and guidance documents—was a challenging environment for businesses to navigate. Sympathy, however, is not sufficient to

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*          9

grant Appellant's appeal. 13 C.F.R. § 121.106 effectively put Appellant on notice that its employee calculation for eligibility should not use the FTE method.

"Sympathy" may not be a sufficient basis to grant an appeal. *See* ALJ Decision at p.7. But expressly and exclusively relying upon the *wrong subsection* (A) of the Interim Final Rule – and failing to recognize the existence of the immediately following subsection (B) – is not a sufficient basis for an ALJ to deny an appeal. Put another way, the ALJ Decision's reliance upon subsection (A) and its retroactive application of 13 C.F.R. § 121.106 entirely on the basis of subsection (A) is materially erroneous.

We note here that the Appeal Petition was not predicated in any way upon any appeal to "sympathy." The Petition was predicated entirely upon the applicable law and SBA guidance and the relevant facts. The Petition therefore described the challenges that SBA, lenders, and loan applicants were all facing in April 2020, to highlight the importance of a careful review of the limited PPP-specific guidance that was available at the time Gordon filed its PPP Loan Application on April 13, 2020. That guidance included (without limitation) the April 15, 2020 IFR and the SBA-issued PPP Loan Application form as it then existed. *See* Appeal Petition at §§ 6-7.

5.    **The ALJ Decision Commits Clear Error in Failing to Directly Address the PPP Loan Application Form Issued by SBA That Required Gordon College to Certify the Number of Full-Time Equivalent Employees.**

The ALJ Decision also commits a serious error by completely failing to address the PPP Loan Application Form issued by SBA and in use in April 2020. That SBA form expressly required that Gordon certify under penalty of perjury that:[3]

> The applicant will provide to the Lender documentation *verifying the number of* ***full-time equivalent employees*** *on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

---

[3] This was the fourth certification. "Instructions for completing this form" (p.3-4) in April 2020 did not address the formula for how to count number of employees nor in any way suggest that the certification's requirement to verify *full-time equivalent employees* was only for forgiveness and not eligibility purposes.

JA0344

[emphasis added]

The ALJ Decision never addresses the direct conflict between (a) the Decision's reliance upon the "headcount" method that it retroactively asserts invoking 13 C.F.R. § 121.106 and (b) these SBA PPP Loan Application Form's certification requirements. The certification on the Loan Application form remained unchanged through multiple iterations until January 2021. Lenders and loan applicants were reasonable and acted in good faith in applying the FTE approach for employee count at all times prior to guidance or an Interim Final Rule that directed otherwise.

**6.     The ALJ Decision Commits a Clear Error of Fact in Failing to Recognize That Gordon Is a Nonprofit Religious Organization and Not a Small Business Concern.**

The ALJ Decision's errors of law are compounded by its errors of fact. One material factual error is that the ALJ Decision does not in any way recognize that Gordon College is in fact a "tax-exempt nonprofit organization described in section 501(c)(3)" – the central factual question governing whether subsection (A) or (B) of section (2)(a)(i)(B) of the April 15, 2020 IFR applies. The ALJ Decision never once refers to Gordon's tax-exempt status. Indeed, the word "exempt" appears nowhere in the entire Decision, and the term "nonprofit" (and variations thereof) appear in the Decision only in the two places where the ALJ quotes from the Appeal Petition's summary of arguments. But the *fact* that Gordon is tax-exempt is completely ignored by and irrelevant to the sparse legal analysis in the ALJ Decision. The Decision never actually addresses Gordon's status or any of the arguments in the Appeal Petition where such status is discussed or relevant. The ALJ Decision thereby commits material factual error – as did the SBA Loan Review Decision under appeal – in concluding that Gordon College should have known about and complied with regulations that by their terms apply only to "small business concerns."

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*                    11

JA0345

**7.** **The ALJ Decision Commits a Clear Error of Fact in Relying Upon Gordon's Good Faith November 5, 2021 Reply to the SBA Examiner's Ambiguous November 3, 2021 Question.**

Immediately after concluding that "13 C.F.R. § 121.106 clearly prescribes what Appellant terms a 'headcount test' as the proper method by which to calculate a [small business] concern's number of employees for loan eligibility purposes," the ALJ Decision then relies upon "a November 5, 2021 email that Appellant has 639 employees (presumably calculated via the "headcount" method) at its Massachusetts location alone." The ALJ Decision's reliance upon this November 5, 2021 email as an admission, like the SBA Loan Examiner's underlying misuse of this email response, also constitutes a material error of fact for a number of reasons.

The question posed by the SBA Loan Examiner did not ask that Gordon provide the basis or support for its identification of FTEs on its April 13, 2022 PPP Loan Application form. Rather, the November 3, 2021 email asked generically for Gordon to "[p]lease also provide a list of locations to include employee count per location." The SBA Examiner's question identified neither a purpose, a time period, nor any context for the question asked and information requested. There was no further inquiry or effort by SBA to clarify or understand Gordon's brief response. Yet SBA has relentlessly invoked Gordon's November 5, 2021 email reply, entirely out of context, as the factual basis for SBA's denial of PPP loan forgiveness. The ALJ Decision commits the same error.

The SBA Examiner's question, and indeed the focus of the SBA PPP Loan Forgiveness Application, conflate very different factual analyses. The original SBA PPP Loan Application requests a snapshot in time, specifically "documentation *verifying the number of* **full-time equivalent employees** *on the Applicant's payroll*…" at the time of the applicant's submission of the PPP Loan Application. The PPP Loan **Forgiveness** Application requests information for a different and longer period, the twenty-four week period after the borrower's receipt of the PPP loan funds. The primary purpose for both inquiries is to allow SBA to ascertain whether the PPP

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*          12

loan funds were actually used to keep employees employed and receiving salaries during the government-imposed shutdown that began in March 2022.

Put another way, the PPP Loan Application requested information for a "snapshot" of time and the PPP Loan Forgiveness Application requested information regarding a much longer and later "span" of time. The accurate answer to the second request is different from – and would not be a correct answer to – the first request. The SBA Loan Examiner's ambiguous single sentence question in its November 3, 2022 email to Gordon appears to call for a larger, later, and different set of information.

Yet the SBA Examiner, and now the ALJ Decision, treat this response to a highly ambiguous different question – a question that now appears to have been not just ambiguous but intentionally deceptive – as a conclusive "gotcha" admission that supersedes all other information provided by Gordon and that obviates any need for the SBA Examiner and the ALJ to review carefully the complete Administrative Record or to seek any clarification of Gordon's responses. This position is factually erroneous and fundamentally unfair.

**8.     The ALJ Decision Commits Clear Error By Invoking and Retroactively Applying a Legal Standard That Has No Basis in the Record in the OHA Portal In This Appeal.**

The ALJ Decision does not in any way indicate what led the ALJ to rely upon 13 C.F.R. § 121.106 as the primary basis for its denial of Gordon's appeal. The ALJ Decision cites only the April 15, 2020 IFR but that IFR does not cite § 121.106. Indeed, that IFR includes only *two* citations to 13 C.F.R. Part 121 at all, one of which is the citation specific to a "small business concern" in subsection *(A)* of section (2)(a)(i) of the IFR. Gordon's Appeal Petition never cites to 13 C.F.R. Part 121, let alone § 121.106. And, most significantly, counsel of record for SBA in this appeal never filed any Response or Opposition to the Appeal Petition and never took any action to supplement the Administrative Record and therefore did not provide any legal citation to, let alone

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*        13

any analysis or argument about, § 121.106. In summary, the documentation submitted and available via the OHA web portal in this appeal provides no basis for the ALJ Decision's invocation of 13 C.F.R. § 121.106.

The only reference to 13 C.F.R. § 121.106 that counsel has been able to identify in any of the materials included on the OHA Portal and thus properly before the ALJ on this appeal is a single reference to "Title 13 Section 121.106" in a "Comment" posted on April 11, **2022** by an SBA examiner engaging with the case for the first time. (SBA Administrative Record, OHA Portal Doc. 18.) That first reference to § 121.106 occurs almost exactly two years after Gordon College submitted its original PPP Loan Application on an SBA form that required Gordon to certify under penalty of perjury the number of FTEs. The SBA examiner's Comment expressly describes this as a "new standard" that will be applied for the first time to "any loan forgiveness application not yet adjudicated…." There is no further reference to § 121.106 in the Administrative Record nor in the Final SBA Loan Review Decision. It is ironic, to put it mildly, that the ALJ Decision concludes that Appellant and all other PPP loan applicants should have recognized in April **2020** that 13 C.F.R. § 121.106 applies not only to a "small business concern" but also to a tax-exempt organization when there is no basis in the Record before this ALJ that SBA itself embraced this position at any time prior to April **2022**, two years later.

9.    **The ALJ Committed Errors of Law and of Fact Material to the Decision by Failing to Rule Upon Appellant's Objections to Administrative Record and to Order Supplementation of the Record.**

Appellant submitted thorough Objections to Administrative Record identifying serious substantive omissions as well as smaller errors, omissions, and inaccuracies. Gordon's Objections were timely filed on September 19, 2022. The ALJ did nothing to address any objection or argument in any way for more than two full months and nothing to address any objection or argument substantively at all. Rather, the ALJ Decision simply dismisses all such Objections *en*

*masse* with a two-line footnote devoid of substantive reasoning. See ALJ Decision at p.

This is another material error of both law and fact. The governing OHA appeal regulations call for the Judge to consider and rule on such objections, not dismiss them as irrelevant. "The Judge will rule upon such objections and may direct or permit that the administrative record be supplemented." 13 C.F.R. § 134.1207(e)(3).

As noted above, the most serious (though not the only) omission from the entire Administrative Record is the complete absence of the underlying PPP Loan Application submitted by Appellant Gordon College on April 13, 2020, on the form promulgated by the SBA certifying under penalty of perjury the number of full-time employees (FTEs) employed by Gordon. It defies logic to think that the PPP Loan Application that is the basis for the loan at issue in this appeal does not need to be part of the Record. But the ALJ's approach to the Administrative Record goes even further given that Gordon's Appeal Petition expressly argued that under the relevant SBA guidance, Gordon was legally entitled to rely upon this language in the SBA-issued PPP Loan Application Form. Indeed, substantially similar language calling for certification of full-time equivalent employees is repeated in Section III(t)(iv) of precisely the April 15, 2020 Interim Final Rule from which the ALJ Decision selectively quotes. Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20814. The failure of the ALJ Decision even to address these controlling authorities and these important arguments is yet another error of law highly material to the Decision.

The ALJ Decision attempts to downplay its error by a passing citation to the PPP Loan Application form that was attached to Appellant's Appeal Petition as Exhibit 3. But that is NOT the version of the Loan Application that was included in the Administrative Record; it is the PDF copy of its PPP Loan Application maintained by Gordon College. Gordon provided its PPP Loan Application to its Lender, Citizens Bank, which then uploaded the Application via an SBA electronic portal. The omission of Gordon's PPP Loan Application as actually received by SBA

*Appellant Gordon College's Petition for Reconsideration of ALJ Decision*                    15

JA0349

and included in SBA's internal records is thus another material error. And that error deprives the ALJ, the Appellant, and ultimately a reviewing federal court of any opportunity to review how the SBA received and processed the PPP Loan Application itself.

The importance of a complete and completely accurate Administrative Record is not a mere formality or technicality. Rather, it is essential for Gordon College to be able to obtain meaningful federal court review of the ALJ Decision and the underlying SBA loan examiner decision. And it appears that it will be necessary for Gordon College to resort to the federal courts due both to the ALJ Decision's serious errors and mischaracterizations of the governing law and related guidance and to the ALJ Decision's refusal even to consider addressing the SBA's discriminatory treatment of Gordon College and failure to fulfill its constitutional and statutory nondiscrimination obligations. Whether it arises from negligence or from an intentional effort to narrow the Administrative Record before a reviewing court, the ALJ's decisions are clearly erroneous and highly prejudicial to Appellant.

**10.   The ALJ Decision Commits Material Errors of Law and of Fact in Ignoring Appellant's Evidence of Discriminatory Treatment.**

The ALJ Decision spends less than two sentences mischaracterizing and then dismissing Appellant's undisputed evidence, drawn from the SBA's own publicly available records and undisputed by the SBA. See ALJ Decision at p.9. This undisputed evidence demonstrates that the SBA Examiner's final *Loan Decision* in Appellant's case contradicts other decisions by other SBA Examiners involving other nonprofit college PPP loan applicants and substantially similar facts. These other loan forgiveness decisions reflect SBA using an FTE analysis in April, May, and June 2020 to determine that other nonprofit applicants satisfied all *eligibility* requirements for a PPP loan, and then subsequently determining that the same applicants also satisfied all requirements for PPP loan *forgiveness*. This has occurred even where the other applicants have as many or more

JA0350

employees at time of loan application and at time of loan forgiveness as does Appellant, as determined by the same IRS Form 941 responses that the specific SBA examiner and thus the final *Loan Decision* used here. This comparative data is provided on the spreadsheet attached as Exhibit 11 to Appellant's Appeal Petition.

## 11.    The ALJ Decision Commits Material Errors of Law and of Fact in Disregarding Applicable Constitutional and Statutory Requirements.

The Appeal Petition explained that for SBA to resolve loan eligibility and forgiveness decisions by applying different standards to similarly situated loan recipients would violate both the disfavored applicant's constitutional and statutory rights and SBA's duties as a federal state actor to act in accordance with constitutional and statutory standards. The ALJ Decision simply side-steps these serious issues of discrimination and constitutional duty with a quick and conclusory disclaimer that is has no authority to consider any arguments of constitutional and statutory violations. This is a material error of law for several reasons.

First and foremost, the ALJ, the SBA Loan Examiner, and the SBA itself cannot disclaim their legal duties to faithfully follow and apply the constitution and other federal laws addressing discrimination in government programs. That duty applies at all times and in all contexts. Even if the ALJ does not have authority to definitively interpret the Constitution or federal statutes, the SBA and the OHA, as federal state actors, remain bound to obey completely the Constitution and federal statutes. Discriminatory treatment of any appellant, whether by an SBA loan examiner or by an OHA ALJ, is forbidden by the Constitution and applicable laws. Yet the undisputed evidence shows precisely such discriminatory treatment of Gordon's PPP loan review decision by SBA.

Second, both the CARES Act itself and the most relevant SBA Guidance strongly emphasized that SBA must follow precisely these constitutional and statutory standards throughout the entire PPP loan process. *See* Appeal Petition at pp.5-6. In fact, the only Interim Final Rule

referenced in the ALJ Decision expressly required that "All loans guaranteed by the SBA pursuant to the CARES Act will be made consistent with constitutional, statutory, and regulatory protections for religious liberty, including the First Amendment to the Constitution, the Religious Freedom Restoration Act, 42 U.S.C. 2000bb-1 and bb-3, and SBA regulation at 13 C.F.R. 113.3-1h." April 15, 2020 Interim Final Rule, §5, Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20816.

Finally, at minimum this evidence should have caused the ALJ to consider how other SBA loan examiners and ALJs could have reached a conclusion directly opposite to that reached by the SBA Examiner in Gordon's case and by the ALJ Decision. As best counsel can determine, this ALJ Decision is the first time that SBA has ultimately resolved a tax-exempt university's PPP loan review of an application submitted prior to the publication of SBA FAQ #36 by relying upon the 13 C.F.R. § 121.106 standard embraced by this Decision. The publicly available evidence from SBA's own records demonstrates that SBA has forgiven more than thirty such loans in full, yet the ALJ Decision adopts a different standard and reaches a contrary result.

## CONCLUSION

For the foregoing reasons, Appellant Gordon College therefore respectfully requests that the Administrative Law Judge grant *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022l* and reconsider and reverse the Administrative Law Judge's Decision issued November 21, 2022, as set forth above.

Respectfully submitted,

   /s/  Scott J. Ward

| | | |
|---|---|---|
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
| | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
| | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
| | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |
| | *Attorneys for Appellant Gordon College* | |

JA0352

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

|  |  |  |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
|  | ) | |
|     Gordon College | ) | Docket No.  PPP-8289087101 |
|  | ) | |
|     Appellant | ) | |
|  | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |

## CERTIFICATE OF SERVICE

I certify that on December 1, 2022, I filed a copy of the above *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022l* in the OHA Case Portal.

Respectfully submitted,

/s/ Scott J. Ward

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:       (703) 761-5012
Facsimile:   (703) 761-5023

JA0353

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GORDON COLLEGE<br>　255 Grapevine Road<br>　Wenham, MA 01984-1899,<br><br>　　　*Petitioner / Plaintiff*,<br><br>　　v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>　　　*Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

## FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT 04

JA0354



**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>■ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | DBA or Tradename if Applicable |
|---|---|---|

| Business Legal Name | | |
|---|---|---|
| Gordon College | | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 255 Grapevine Rd | 04-2104258 | 978867-4883 |
| Wenham MA 01984 | **Primary Contact**<br>Stephen Lacorazza | **Email Address**<br>stephen.lacorazza@gordon.edu |

| Average Monthly Payroll: | $ 2,818,415 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ 7,046,037 | Number of Employees: | 495.67 |
|---|---|---|---|---|---|

| Purpose of the loan<br>(select more than one): | ■Payroll  ☐Lease / Mortgage Interest  ■Utilities  ☐Other (explain):_____ |
|---|---|

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| Non Profit | Non Profit | 100 | 042104258 | 255 Grapevine Rd Wenham |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ■ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ■ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ■ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ■ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → SDL | ☐ | ■ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → SDL | ☐ | ■ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ■ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ■ |

**JA0355**

SBA Form 2483 (04/20)

1



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SDL
___
The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SDL
___
Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

SDL
___
The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SDL
___
The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

SDL
___
I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

SDL
___
During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

SDL
___
I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

SDL
___
I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Stephen D Lacorazza    Digitally signed by Stephen D Lacorazza
Date: 2020.04.12 12:23:21 -04'00'                                      4/6/2020
_____                  _____
Signature of Authorized Representative of Applicant        Date

Stephen D Lacorazza                                       Dir of Finance & Controller
_____                  _____
Print Name                                                Title

**JA0356**

SBA Form 2483 (04/20)                        2



**Paycheck Protection Program**
**Borrower Application Form**

<u>**Purpose of this form:**</u>

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

<u>**Instructions for completing this form:**</u>

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee.  For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes.  Comments about this time or the information requested should be sent to : Small  Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination.  When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. <u>See</u>, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your  loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants  SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial

JA0357

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

JA0358

SBA Form 2483 (04/20)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GORDON COLLEGE | ) | Case No. 1:23-cv-614-BAH |
| 255 Grapevine Road | ) | |
| Wenham, MA 01984-1899, | ) | |
|  | ) | |
|  | ) | |
| *Petitioner / Plaintiff,* | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION; ISABELLA CASILLAS | ) | |
| GUZMAN, *in her Official Capacity as* | ) | |
| *Administrator of the Small Business* | ) | |
| *Administration*; *and* THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
|  | ) | |
| *Respondents / Defendants.* | ) | |
|  | ) | |
|  | ) | |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 05

**From:** Thomas, Monica
**Sent on:** Thursday, October 28, 2021 11:51:20 AM
**To:** Stephen Lacorazza
**Subject:** SBA Request Additional Documents

---

** CAUTION: External Email: Do not click links or open attachments unless you recognize sender and know content is safe.**

---

Hello Mr. Lacorazza,

SBA requests the following documents or information from the borrower:

Thank you for providing the requested documentation. **Please also provide a list of locations to include employee count per location.**

As noted above, you must respond to this request within 15 business days from the date of this letter. If the SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, the SBA will take further action as indicated above. Further, the SBA may, in the future, request additional information directly from the borrower or require you to contact the borrower in writing to request additional information.

Thank you for your cooperation!

Sincerely, Office of Financial Program O

Monica Thomas
Credit Admin Analyst
**Citizens™**
Commercial Real Estate
28 State Street, MS1250
Boston, MA 02109
Ofc: 617.725.5601
Email: monica.thomas@citizensbank.com

This message is confidential and subject to terms at: https://www.citizensbank.com/account-safeguards/overview.aspx. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GORDON COLLEGE )
   255 Grapevine Road )    Case No. 1:23-cv-614-BAH
   Wenham, MA 01984-1899, )
)
)
      *Petitioner / Plaintiff,* )
)
   v. )
)
UNITED STATES SMALL BUSINESS )
ADMINISTRATION; ISABELLA CASILLAS )
GUZMAN, *in her Official Capacity as* )
*Administrator of the Small Business* )
*Administration; and* THE UNITED STATES OF )
AMERICA, )
)
      *Respondents / Defendants.* )
)
)

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 06

JA0361



**SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416**

04/12/2022

VIA FORGIVENESS PLATFORM

Barbara Gaulien

Citizens Bank, National Association

Re: PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION
    Borrower: GORDON COLLEGE
    SBA Loan No.: 8289087101
    Approved Loan Amount: $7,046,037.00
    Loan Approval Date: 04/15/2020
    Lender Forgiveness Decision Submission Date: 09/03/2021
    Lender Forgiveness Decision Amount: $7,046,037.00
    SBA Final Forgiveness Amount: $ 0.00

## Dear: Barbara Gaulien

The U.S. Small Business Administration (SBA) has completed its review of the above-referenced Paycheck Protection Program (PPP) loan.  Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision.

---

**SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:**

**After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.**

**A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria.**

---

JA0362

Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. Additional details regarding the forgiveness payment amount (if any) will be provided in a Notice of Paycheck Protection Program Forgiveness Payment.

Within 5 business days of the date of this letter, you must provide a copy of this final SBA loan review decision to the borrower.

You must continue to service the loan. You must notify the borrower that the remaining balance of the loan after application of the forgiveness payment (if any) must be repaid on or before the maturity date. The notification must include the date on which the first principal and interest payment is due and the amount of the borrower's regular payment. As set forth below, if the borrower files a timely appeal with SBA's Office of Hearings and Appeals (OHA), the deferment period of the loan will be extended pursuant to 13 CFR § 134.1211.

Pursuant to 13 CFR § 134.1201(b), the borrower has the right to appeal to SBA's Office of Hearings and Appeals a final SBA loan review decision that the borrower:

1. was ineligible for a PPP loan;
2. was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
3. is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or
4. is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.

Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program, located at 13 CFR § 134.1201, *et seq.*, including but not limited to the following:

- An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 13 CFR § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to Office of Hearings and Appeals.
- Borrower must include, among other things, a copy of this final SBA loan review decision with its appeal. 13 CFR § 134.1204(a).
- Borrower must provide you (the lender) with a copy of the timely appeal petition filed with OHA so that you can extend the deferment period of the loan. 13 CFR § 134.1202(b).
- An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a federal district court. 13 CFR § 134.1201(d).

Thank you for your cooperation.

Sincerely,

Office of Capital Access
U.S. Small Business Administration

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GORDON COLLEGE | ) | |
|    255 Grapevine Road | ) | Case No. 1:23-cv-614-BAH |
|    Wenham, MA 01984-1899, | ) | |
| | ) | |
| | ) | |
|      *Petitioner / Plaintiff,* | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION; ISABELLA CASILLAS | ) | |
| GUZMAN, *in her Official Capacity as* | ) | |
| *Administrator of the Small Business* | ) | |
| *Administration*; *and* THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
|      *Respondents / Defendants.* | ) | |
| | ) | |
| | ) | |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 07

JA0364

UNITED STATES SMALL BUSINESS ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS

APPELLANT GORDON COLLEGE'S
APPEAL PETITION FOR REVIEW OF
*PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION*

| | |
|---|---|
| *Borrower:* | GORDON COLLEGE |
| *SBA Loan No.:* | 8289087101 |
| *Approved Loan Amount:* | $7,046,037.00 |
| *Loan Approval Date:* | 04/15/2020 |
| *Lender Forgiveness Decision Submission Date:* | 09/03/2021 |
| *Lender Forgiveness Decision Amount:* | $7,046,037.00 |
| *SBA Final Forgiveness Amount:* | $ 0.00 |

Appellant Gordon College, a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and though its undersigned legal counsel, hereby submits this Appeal Petition to the Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA").

*(1)* **Decision Below**. Appellant seeks review and reversal of the *Paycheck Protection Program Final SBA Loan Review Decision* dated April 12, 2022 (the "*Loan Decision*") and received by Appellant on April 13, 2022. A copy of this *Loan Decision* is attached as Exhibit 01.

*(2)* **Basis for Jurisdiction**. The OHA has jurisdiction of this appeal pursuant to 13 CFR § 134.1204. This appeal is timely filed under 13 CFR § 134.1204 *et seq*. The *Paycheck Protection Program Final SBA Loan Review Decision* is dated April 12, 2022. Appellant Gordon College first received the *Loan Decision* (via its lender, Citizens Bank, National Association) via email the following day on April 13, 2022.[1]  Gordon College is timely filing this appeal on May 12, 2022.

*(3)* **Standard of Review**. The *Loan Decision* was based on a clear error of fact or law and must be reversed. *See* 13 CFR § 134.1210. Review of the evidence in this appeal inexorably leads to a

---

[1] A copy of the email from Citizens Bank, National Office transmitting the SBA Loan Review Decision and dated April 13, 2022, is attached as Exhibit 02.

JA0365

definite and firm conviction that a mistake has been committed by the SBA reviewer.[2]

*(4)*  ***Relief Sought by Appellant***. Appellant Gordon College respectfully requests that the Office of Hearings and Appeals ("OHA") reverse the SBA's final *Loan Decision* and grant Gordon College full forgiveness of its Paycheck Protection Program ("PPP") loan in the Approved Loan Amount of $7,046,037.00. Reversal of the final Loan Decision and granting full forgiveness, rather than remand, is proper because SBA's decision to deny forgiveness was premised upon clear legal and factual errors. Further, when the correct standard is applied, the record demonstrates that Gordon satisfied the applicable requirements for PPP loan eligibility and for PPP loan forgiveness.

*(5)*  ***Statement Of Why the SBA Loan Decision Is Erroneous***. The SBA's final *Loan Decision* retroactively overruled SBA's April 15, 2020 determination that Gordon College was eligible for its PPP loan and on that basis alone denied Gordon's application for forgiveness of its $7,046,037 PPP loan. The entire reason stated in the SBA *Loan Decision* is as follows:

> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower is listed as 501(c)(3), and therefore is not eligible under the alternative size standard industry qualifications. The Alternative Size Standard Qualifications are limited to for-profit entities, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria.

This *Loan Decision* is based on clear errors of fact and of law and must be reversed. *See* 13 CFR § 134.1210. The specific reasons are set forth below and expanded upon in the following sections.

  **First**, the *Loan Decision* makes a clear error by applying the wrong legal standard. As

---

[2] *See, e.g., Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602 (1993); *PGBA, LLC v. United States*, 389 F.3d 1219, 1224 (Fed. Cir. 2004).

JA0366

explained below, the SBA Examiner retroactively applied a standard for determining the number of employees for PPP loan *eligibility* purposes **that did not exist** at the time Gordon submitted its application on April 13, 2020. Rather, Gordon College relied in good faith upon the public guidance provided by SBA and Department of Treasury ("Treasury") at the time, as it was expressly authorized to do under SBA's PPP FAQ #17 (quoted below).

Gordon College's application was completely submitted to the SBA Portal by lender Citizen's Bank by no later than April 13, 2020. The Loan Application thus was beyond Gordon's control by April 13, 2020. The Loan Application was approved by SBA by April 15, 2020. The Loan Agreement was executed by both parties by no later than April 23, 2020.

At each such time, all publicly available SBA/ Treasury guidance either was silent on this or indicated that an applicant should determine its number of employees for purposes of the 500 employee maximum for PPP loan eligibility by calculating full-time equivalent employees ("FTEs"). Indeed, the SBA's Loan Application form at that time required that Gordon certify that:[3]

> The applicant will provide to the Lender documentation *verifying the number of **full-time equivalent employees** on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan. [emphasis added]

The first public guidance even suggesting that SBA would determine number of employees for purposes of PPP loan eligibility by using a "headcount" method was issued on April 26, 2020, **after all** these dates and two weeks after Gordon's loan was submitted to SBA. The certification on the Loan Application form remained unchanged through multiple iterations until January 2021.

**Second**, there is a second clear error by SBA in retroactively overruling its April 2020

---

[3] This was the fourth certification. "Instructions for completing this form" (p.3-4) in April 2020 did not address the formula for how to count number of employees nor in any way suggest that the certification's requirement to verify *full-time equivalent employees* was only for forgiveness and not eligibility purposes.

legal and factual determinations. On its April 13, 2020 Loan Application, and at all times since, Gordon consistently listed its total number of employees for determining loan eligibility as **495.67**. On its face, that is a precise FTE calculation, not a "headcount." (No employee has "0.67" of a "head" to count.). SBA originally determined that Gordon was eligible for a PPP loan on April 15, 2020 using this FTE calculation. This was clearly correct at that time. Yet two years later, the SBA examiner re-visits and retroactively overrules SBA's earlier (correct) determination by retroactively applying *ex post facto* a headcount test not in existence at time of application.

**Third**, the SBA *Loan Decision* under appeal utterly disregards SBA PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP FAQ since that time) which expressly provides:

> **Question**: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?

> **Answer**: No. *Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.* However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs. [emphasis added)]

Gordon College's application was submitted to SBA on April 13, 2020; SBA approved the loan on April 15, 2020; all loan documents were executed on or before April 23, 2020. PPP FAQ #17 requires that SBA determine Gordon's loan eligibility by applying the guidance that existed on April 13, 2020, and not retroactively applying rules that were only subsequently promulgated.

**Fourth**, not only is this a clear error of law, it also causes serious detrimental reliance harms to Appellant. For two full years, Gordon has relied in good faith and to its substantial detriment on FAQ #17, on the SBA Loan Application form, and on all SBA/Treasury regulations and guidance that had been publicly issued by SBA/Treasury when Gordon submitted its Loan Application on April 13, 2020. Gordon College in good faith reliance has expended all of its $7,046,037.00 PPP loan on employee payroll and benefits to retain its employees – precisely the

purposes of the PPP loan program. Gordon fully satisfied all *eligibility* requirements that existed at the time it applied. Gordon satisfies all **forgiveness** requirements that existed at the time it applied for forgiveness and that currently govern the forgiveness determination. Gordon is entitled to rely, and has relied to its great detriment, on the "laws, rules, and guidance available at the time of the relevant application".

**Fifth**, the SBA examiner's final *Loan Decision* in Appellant's case contradicts other decisions by other SBA Examiners involving substantially similar Borrowers and relevant facts. These include SBA using an FTE analysis in April 2020 to determine that other applicants satisfied all *eligibility* requirements for a PPP loan, and then subsequently determining that the same applicants also satisfied all requirements for PPP loan *forgiveness*. This has occurred even where the other applicants have as many or more employees at time of loan application and at time of loan forgiveness as does Appellant, as determined by the same IRS Form 941 responses that the specific SBA examiner and thus the final *Loan Decision* used here. This comparative data is provided on the spreadsheet attached as Exhibit 11 to this Appeal Petition.[4]

**Sixth**, it is a separate but extremely serious clear error for SBA to apply different legal and factual standards to other Borrowers who are similarly situated to Appellant. On its face, such distinctions are discriminatory and arbitrary, and likely even capricious. But further, by applying differential standards to Appellant Gordon College, a nonprofit religious private college, than to

---

[4] This spreadsheet provides data for specific comparable loans and borrowers extracted from SBA's internal records that have been publicly posted at https://data.sba.gov/dataset/ppp-foia and specifically the datafile publicly posted at https://data.sba.gov/dataset/ppp-foia/resource/501af711-1c91-477a-80ce-bf6428eb9253. OHA and its Administrative Law Judges may take judicial notice of SBA's own internal records and databases, particularly when as here those same records have also been made publicly available pursuant to the Freedom of Information Act. Appellant could not have submitted this factual data at any prior stage in these proceedings because until the SBA issued its Loan Decision it was not possible for Gordon to know what, if any, of this information was relevant. And there is no prejudice or even inconvenience to SBA for the OHA ALJ to consider SBA's own internal records.

JA0369

similar non-religious colleges, the SBA *Loan Decision* may discriminate on the basis of religion in violation (among others) of the First and Fourteenth Amendments to the U.S. Constitution[5] and of the federal Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1.[6] Such disparate treatment would also be contrary to the CARES Act itself and to the *Frequently Asked Questions Regarding Participation of Faith-Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)* (April 3, 2020)[7] at Section 2:

> The PPP and EIDL loan programs are neutral, generally applicable loan programs that provide support for nonprofit organizations without regard to whether they are religious or secular.... In addition, the CARES Act does not impose unique burdens or limitations on faith-based organizations.

## 6.  *Factual Background.*

### 6.1.  **The Borrower – Appellant Gordon College**.

Appellant and Borrower here is Gordon College, a private religious college located in Wenham, Massachusetts. Gordon and other colleges were particularly hit hard by the national and state orders to shelter-in-place beginning in March 2020 due to COVID-19. The lockdowns created serious practical, financial, and even existential issues for colleges, particularly those focused on residential undergraduate education, like Gordon. How long would lockdowns last –months, semesters, or (academic) years? How would they impact summer programs that help provide needed year-round revenue? What would be the costs to retool for distance learning? Would colleges have to refund tuition and fees and room and board?

Further, Gordon College, like most colleges, has a vast array of types of employees that

---

[5] *See, e.g.*, *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021) (per curiam) ("government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."). *See also Fulton v. City of Phila.*, 141 S.Ct. 1868 (2021).

[6] RFRA applies to SBA as a federal governmental agency.

[7] Available at https://www.sba.gov/document/support-faq-regarding-participation-faith-based-organizations-ppp-eidl

span full-time, part-time, and those who earn just a few hours of pay each week. Operations of a small college campus require numerous part-time workers in such diverse areas as classroom instruction, groundskeeping, food service, and plant and facility maintenance. Student employees seek part-time work for even a few hours a week to offset their costs of attending the college. Student aid packages often provide for students to work a certain number of hours per semester. Summer programs require seasonal staff and Gordon often hires its own students to serve in those summer programs. In one calendar year, there are two different payrolls given the two different academic years. Employees change frequently at the transition from one school calendar year to another. Part-time turnover is especially frequent. This is typical of most college campus operations. Yet it means that any "headcount" assessment of employees would vastly distort actual employment and payroll at colleges and that FTE assessment is more accurate and realistic.

**6.2.    The Novel Paycheck Protection Program ("PPP")**. The SBA was given an almost impossible task – to administer a brand new Paycheck Protection Program loan program urgently authorized by Congress in a time of national crisis, a worldwide pandemic, and national and state ordered shelter-in-place orders. The duty of establishing rules and guidance to clarify uncertainty and confusion in the loan application and forgiveness process fell to the Treasury and the SBA. SBA and Treasury rolled out new rules, guidance, and clarifications every few days that were eagerly anticipated and devoured by borrowers and their attorneys and CPAs to understand such critical issues as loan eligibility and loan application procedures.

Many faith-based organizations such as Gordon College delayed applying due to needing clarification of their eligibility and the impact on their organizations of receiving federal PPP loans. Other organizations, including Gordon, were held up by the inability of larger banks to develop the technology and systems to receive and process loan applications. Uncertainty abounded.

When the PPP program was announced, the government stated frankly and frequently that

JA0371

funds were limited and the program would operate on first come, first serve until the funds ran out or the program terminated on June 30, 2020. News media compounded this urgency. There was a rush to apply for this limited pool of funds for which applications would open on April 3, 2020, which ran headlong into the need for rules and guidance that was yet to be forthcoming. Both Treasury and SBA were issuing rules and guidance at the same time that PPP applications were flooding in. Interim Final Rules, SBA/Treasury instructions and guidance, and an evolving list of FAQs were cumulative and ongoing throughout the PPP loan application process. Different rules were available to applicants depending on when the applicant applied for the PPP loan.

Lenders – both national and community banks – were also overwhelmed as they were enlisted into the process as well. Some banks halted intake of loan applications due to technological issues of syncing up with the SBA portals, while at the same time media and government representatives were touting the limited funds and the need to hurry up and apply before the PPP funds ran out. Gordon College signed its application on April 6, 2020, yet its bank, Citizens Bank had to halt intake of PPP loan applications due to technical issues, and it was a week until Citizens Bank submitted the Gordon College PPP loan application to SBA on April 13, 2020.

Small businesses and nonprofits were overwhelmed in trying to discern how long, and what the impact national lockdowns would have on their respective businesses and organizations. Executives, business owners, and college administrators were all grappling with the loss of consumers of their goods and services and the loss of operational revenues. For example, Gordon College students were on spring break at the time of the lockdown and would not be returning to campus that semester due to national and state-wide shelter in place orders.

Many aspects of the PPP program are outside of regular SBA experience and jurisdiction. SBA was conscripted to serve as the administrator of a program that had few rules at the beginning and was unprecedented in size, impact, and necessity.  SBA primarily handles loan programs for

small businesses, not nonprofits, let alone religious and educational nonprofits. SBA itself was under enormous pressure to get the program up and running immediately. It was a gargantuan task.

There were many issues that needed clarification and rules and guidance for both borrowers and lenders to be developed, announced, and implemented. However, the urgency factor and the crush of applicants at the beginning due to all the uncertainty of economic survival created a clash between access to a much needed program and the lack of clear guidance. The question in any review of SBA application with two years of hindsight is what a prudent employer, facing the imminent financial threat as a result of a national shelter-in-place order and state shutdown related to the COVID-19 virus pandemic, must do to certify in good faith the information and specific certifications required in the SBA's PPP Loan Application. That should guide what Gordon College should have known when its Loan Application was submitted to SBA on April 13, 2020.

Employers across the country analyzed what was available at the time of certification and submission, examined the limited guidance provided by SBA and Treasury, and made reasonable good faith decisions in calculating the maximum loan amount and number of employees. With burdensome penalties for knowingly making a false statement, it was difficult for loan applicants to secure adequate unambiguous guidance on many issues, even though clear guidance was needed to be absolutely certain that all information provided in the application and supporting documents was true and accurate in all material respects. In fact, early in the PPP program, some lenders had virtually no guidance even as to what documents the applicants were to submit. Additionally, it was unclear whether nonprofit organizations would be eligible as a "small business", what size standards would be applied, and if so what did faith-based nonprofit organizations give up in ways of autonomy or other concerns by applying for a PPP loan.

Thus began a series of Interim Final Rules and sequentially numbered Frequently Asked Questions (FAQs) posted on the PPP Loan website issued by SBA and Treasury. These were

cumulative and rolling in nature and the applicant only had available to it the relevant laws, rules and guidance at the time of completing and filing its application for the PPP loan.

**7.      Timeline of SBA/Treasury PPP Loan Application Guidance.**

The following analysis focuses on the laws, rules and guidance available to Gordon College as of April 13, 2020, the date Appellant's PPP Loan Application was submitted to SBA, particularly related to the size standards, definitions of employees, or how to count employees.

*7.1      The CARES Act - effective 03-27-22*. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was enacted by Congress on March 27, 2020. The CARES ACT provided the definition of "employee" for purposes of this PPP loan program:

> (v) EMPLOYEE. — For purposes of determining whether a business concern, non-profit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees under clause (i)(I), **the term 'employee' includes individuals employed on a full-time, part-time, or other basis**. [emphasis added]

There are only three uses of the term "part-time employee" in the CARES Act and none define the term. The term "headcount" is not used in the CARES Act. There is no formula for counting employees provided in the CARES Act. The Act made it clear that part-time employees were "included" in the <u>definition</u> of employee but did not address how to calculate the sum of these full-time and part-time employees into a total number. At least until the issuance of FAQ #36 on April 26, 2020, it was unclear for purposes of determining the 500 maximum number of employees for PPP loan eligibility whether such part-time employees are each counted as one employee (regardless of any specific part-time threshold hours standard) – a "headcount" formula – or whether the full-time equivalent (FTE) calculation was appropriate. Although the CARES Act did not address the formula for calculation of 500 employee threshold, SBA and Treasury announced that SBA would begin taking applications for the PPP Loan on April 3, 2020.

*7.2      Treasury PPP Website PPP Loan Information -provided 03/31/2020*.  On March 31,

2020, the special PPP section of the Treasury Department website provided four new documents:

- PAYCHECK PROTECTION PROGRAM APPLICATION FORM – OMB Control No.: 3245-0407 Expiration Date: 09/30/2020 [Exhibit 03]
- SMALL BUSINESS PAYCHECK PROTECTION PROGRAM [Exhibit 04]
- PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET LENDERS [Exhibit 05]
- PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET: BORROWERS [Exhibit 06]

In these four documents, the following information is provided about size standards and/or calculation of number of employees.

### 7.2.1 Paycheck Protection Program Application Form. The PPP Application Form itself stated that the Borrower should provide the Lender documentation verifying the number of full-time equivalent employees. The PPP Application Form available in April 2020 and that Gordon used did not state that this was for forgiveness only; it did not even state that it was for forgiveness or any other specific purposes at all. Gordon's PPP Borrower Loan Application Form, including the instructions at that time, was certified by Stephen Lacorazza, Director of Finance and Controller, Gordon College on April 06, 2020, and filed with SBA by Citizens Bank on April 13, 2020.[8] Page two of that Form requires the Borrower to make certifications that include:

> The applicant will provide to the Lender documentation *verifying the number of **full-time equivalent employees** on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan. [emphasis added]

Pages three and four of the form provided "Instructions for completing this form". These instructions did not address any formula for how to count the number of employees, nor undermine the emphasis in the certification on verifying the number of *full-time equivalent employees* on the Applicant's payroll as only for the forgiveness application purposes. At the time of the initial PPP

---

[8] A copy of Gordon's completed Application Form is attached as <u>Exhibit 03</u>. This Application Form consisted of two pages of the application form and applicant certifications and two pages of instructions.

Application Form, the form was stylized for businesses, and not for nonprofits.[9]

### 7.2.2   Small Business Paycheck Protection Program. The only reference to employee numbers or size standards in this one page memo summarizing the PPP program was the following:

All Small Businesses Eligible. Small businesses with 500 or fewer employees—including nonprofits, veterans organizations, tribal concerns, self-employed individuals, sole proprietorships, and independent contractors— are eligible. Businesses with more than 500 employees are eligible in certain industries.

### 7.2.3   Paycheck Protection Program (PPP) Information Sheet: Lenders. There are no references in this document to number of employees or size standards.

### 7.2.4   Paycheck Protection Program (PPP) Information Sheet: Borrowers. Relevant information is found on page 1 and page 3. It answers the question "Who can apply?" by stating:

All businesses – including nonprofits . . . with 500 or fewer employees can apply. Businesses in certain industries can have more than 500 employees if they meet applicable SBA employee-based size standards for those industries.

The question "How can I request loan forgiveness?" receives the following answer:

You can submit a request to the lender that is servicing the loan. The request will include documents that verify *the number of full-time equivalent employees*.... [emphasis added]

On pages 3-4, the document repeats the certifications and informs a borrower applying for forgiveness of a PPP loan that "as part of your application, you will need to certify in good faith. . ." and again references the full-time equivalent documentation that the applicant will provide to the lender for the eight-week period of the loan:

You will provide to the lender documentation that verifies **the number of full-time equivalent employees** on payroll and the dollar amounts of payroll costs. [emphasis added]

---

[9] For example, it asked for Applicant Ownership and required the applicant to "list all owners of Applicant with greater than 20% ownership stakes." Federally tax-exempt organizations such as Gordon College are not required by any individuals or companies. Many of the questions required to have a yes or no answer also applied to businesses and not nonprofit organizations. This Form is available at https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf

JA0376

It was not until April 26, 2020 that SBA clarified that the full-time equivalent employees analysis was *not* to be the standard for PPP loan *eligibility* when counting to 500 employees, but only the standard for *forgiveness* of PPP loans. Prior to April 26, 2020, nothing in these documents or the CARES Act and related FAQs and Interim Final Rules provided by SBA or Treasury stated that the full-time equivalent employee standard would not apply for *eligibility*. To the contrary, the references to full-time equivalent employees and documentation that the applicant had to provide to the lender strongly indicated that full-time equivalent employees were an acceptable form of "counting" to get to 500 employees. In good faith, Gordon College provided its FTE calculations on its Loan Application Form, stating clearing that the number of employees was 495.67.

### 7.3   *Interim Final Rule Issued April 2, 2020*.

This 31-page Interim Final Rule ("IFR") was first posted on April 2, 2020 and published April 15, 2020.[10] Its stated purpose was to outline "the key provisions of SBA's implementation of sections 1102 and 1106 of the Act in formal guidance". It provides (in pertinent part):

> 2. What Do borrowers Need to Know and Do?
> a. Am I eligible?
> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
>> i. You are: …….
>>> B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC) . . .

There is no guidance regarding calculation of number of employees and no reference to a definition of employee or "part-time" employee included. There is, however, a reference to "full-time equivalent employees" at section 2(t)(iv), where it again repeats the required certification that the borrower will provide " [d]ocumentation verifying the number of *full-time equivalent employees*

---

[10] 85 F.R. 20811 (Apr. 15, 2020). Copy attached as Exhibit 07. Also available at:
https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf

*on payroll....*" [emphasis added]

### 7.4    Frequently Asked Questions Regarding Participation of Faith-Based Organizations in the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)– issued April 3, 2020.

On April 3, 2020, the SBA issued specific guidance as to whether nonprofits and faith-based organizations such as Gordon College could apply for the PPP loan without impunity or impact on its tax-exempt status, in its *Frequently Asked Questions Regarding Participation Of Faith-Based Organizations In The Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL)* and provided FAQs #1 –8 (attached as Exhibit 08). Information on size standards for nonprofits was provided at Question 8:

> 8. How do I know where my organization fits in SBA's size standards table? Should I use the table to determine whether my organization is a small business that is eligible to participate in the PPP program?
>
> SBA's size standards can be found at 13 CFR § 121.201. Under the CARES Act, a non-profit organization qualifies as small, and is eligible for assistance, if (1) it has no more than 500 employees or (2) the NAICS code associated with its primary industry has a higher employee-based size standard. Some industries—including "religious organizations"—are currently listed in the size standards table with a monetary cap on annual receipts rather than an employee-based size standards cap. For nonprofit organizations whose primary industry is listed with a monetary cap on annual receipts, the size standards table therefore cannot be used to determine eligibility for the PPP program. Faith-based nonprofit organizations that do not fall under a primary industry that is listed with an employee-based size standard must have 500 employees or fewer to be considered small.[11]

### 7.5    Interim Final Rule on Affiliations Issued April 3, 2020; Effective April 15, 2020.

The stated purpose of this IRF on Affiliations ("IFR-AFF") was to supplement the "Initial Rule" (see 7.3 above) "with additional guidance regarding the application of certain affiliate rules applicable to SBA's implementation of sections 1102 and 1106 of the [CARES] Act".[12]

---

[11] The SBA Loan Decision similarly stated that SBA industry size standards do not apply to Appellant.

[12] This IFR-AFF was published at 85 F.R. 20817 (Apr. 15, 2020) and is also available at:

This IFR-AFF was a significant determination for Faith Based Organizations (FBOs) as it exempted FBOs from the SBA affiliation rules "where the application of the affiliation rules would substantially burden those organizations' religious exercise." Generally, a borrower was considered together with its affiliates for purposes of determining eligibility for the PPP. Affiliates were generally identified by having such factors as stock ownership, overlapping management, and identity of interest. Of particular interest is how the IFR-AFF addressed the conflict between the SBA's existing affiliation rules for small businesses and the application of those rules to FBOs.

Prior to the CARES Act, nonprofits were not eligible for SBA Business Loan Programs under section 7(a) of the Small Business Act. The CARES Act not only made nonprofits eligible for the PPP but subjected them to the SBA affiliation rules (Section 1102 of the Act stated this explicitly). The IFR-AFF exempts FBOs from these SBA affiliation rules listed in 13 CFR part 121 because application of those rules to FBOs would impose a substantial burden on their free exercise of religion. The IFR-AFF further revised Section 121.103(b) by adding subsection (b)(10) addressing those free exercise considerations and explaining both the process for a Faith Based Organization to acknowledge that the FBO would have been an eligible borrower but for the application of the SBA rules and how the FBO can assert that exemption on its loan application.

In this IFR-AFF, SBA/Treasury acknowledged that nonprofits were not eligible for the previously existing SBA Business Loan section 7(a) and that some long-established rules provided for that regular SBA program not open to nonprofits would work to the detriment of the faith-

---

https://www.federalregister.gov/documents/2020/04/15/2020-07673/business-loan-program-temporary-changes-paycheck-protection-program

https://www.govinfo.gov/content/pkg/FR-2020-04-15/pdf/2020-07673.pdf

*See also Affiliations Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* outlining tests for affiliation posted on treasury.gov on April 3, 2020 at Borrower Information at: https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

JA0379

based nonprofit securing the desperately needed PPP loan funds.

### 7.6 *Treasury FAQs Posted as of April 13, 2020 – date of Gordon College PPP Application Submission to SBA*.

To assist borrowers, Treasury posted on its website Frequently Asked Questions (FAQs) and the answers on a continually updated basis. There were 25 FAQs issued as of the date of the filing of the Gordon College loan application with SBA on April 13, 2020. [Exhibit 09] Of these first 25 FAQs publicly available to Gordon at the time of its certifications and submission of its PPP loan application, only two FAQs tangentially reference number of employees:

**FAQ #3** clarified that PPP loans "are also available for qualifying tax-exempt nonprofit organizations described in Section 501(c)(3) of the Internal Revenue Code (IRC). . . *that have 500 or fewer employees whose principal place of residence is in the United States, or meets the SBA employee-based or revenue-based size standards for the industry corresponding to its primary industry*." [emphasis added] There are no SBA employee-based standards for Gordon's industry of higher education (NAICS 611310 Colleges, Universities and Professional Schools).[13] As discussed above in Section 7.4, for those industries with only a compensation standard and not a size standard, the size standards table cannot be used. Additionally, "Faith-based nonprofit organizations that do not fall under a primary industry that is listed with an employee-based size standard must have 500 employees or fewer to be considered small."

As originally posted by SBA/Treasury,[14] **FAQ #14** provided:

**Question**: What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?

---

[13] *See* Size Standards Table, *U. S. Small Business Administration Table of Small Business Size Standards Matched to North American Industry Classification System Codes*, at page 38, attached as Exhibit 10 and also available at: https://www.sba.gov/sites/default/files/2022-05/Table%20of%20Size%20Standards_Effective%20May%202%202022_Final.pdf

[14] The original version of FAQ #14 is no longer posted on the SBA site. Footnote 17 to the version of FAQ #14 currently posted at www.SBA.gov explains the edits to the text.

**Answer**: In general, borrowers can calculate their aggregate payroll costs using data either from the previous 12 months or from calendar year 2019. . . Borrowers may use their *average employment over the same time periods to determine their number of employees*, for the purposes of applying an employee-based size standard. [emphasis added]

The answer addressed which time periods to use when calculating number of employees for purposes of applying an employee-based size standard. However, Gordon College had no such employee-based size standard available to it as a faith-based nonprofit organization.

The most critical of these FAQs to the argument that the SBA decision below failed to take into consideration is the ability of an applicant to rely on the laws, rules, and guidance provided as of the date the employer applies for the PPP loan. **FAQ #17** issued April 06, 2020 provided:

**Question**: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?

**Answer**: No. *Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application.* However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs. [emphasis added]

Gordon College was entitled to rely on the laws, rules and guidance available at the time of its application that was submitted to SBA on April 13, 2020.

### 7.7    *Treasury FAQ #36 – Issued April 26, 2020 -- Clarification on 500 Employee Calculation*.

Only *after* Gordon College's PPP Loan Application was submitted to SBA on April 13, 2020, approved by SBA on April 15, 2020, and all loan documents executed by April 23, 2020, Treasury/SBA issued a new FAQ #36 on April 26, 2020. Although the CARES Act did not address headcount or prescribe a formula as to how to count employees for *eligibility* for the PPP loan, FAQ #36 articulated a new formula for how to count the 500 employee threshold for *eligibility*, resulting in two different "counting" formulas – headcount for eligibility and FTE for forgiveness.

**FAQ #36.**

**Question**: To determine borrower eligibility under the 500-employee or other applicable

threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?

**Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." *A borrower must therefore* calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions. [emphasis added]

When on April 26, 2020 FAQ #36 first became the rule for counting employees to determine PPP loan *eligibility*, Gordon College had already filed two weeks earlier its application listing its number of employees as 495.67, clearly indicating that it had used FTE calculations as the calculation method. On that basis, SBA had already approved its loan application and both Gordon and its lender had fully executed the PPP loan documents. The SBA Loan Review Decision commits clear error by applying the April 26, 2020 headcount eligibility standard retroactively to Gordon College's April 13, 2020 PPP loan application to deny Gordon's forgiveness application.

**8.**   ***Appellant Gordon College's Detrimental Reliance***.

As discussed above, FAQ #17 issued on April 6, 2020, early in the process, but not so early that many borrowers had already submitted their applications and even received PPP loan funding. Nonetheless, SBA/Treasury made it explicit April 06, 2020 in FAQ #17 that an applicant was <u>only</u> to be held to the rules, regulations, and standards there were in effect at the time of application:

**Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application**. …. [emphasis added]

Gordon College relied on FAQ #17 and expended the entire PPP loan proceeds of $7,046,037 entirely on payroll costs for its employees. It had mortgages and utilities, which would have been eligible forgiveness expenses, but its first priority was to keep its people on the payroll – the quintessential reason for the Paycheck Protection Program as designed by Congress. It has

been two years between the time SBA approved Gordon's loan application and the SBA denial of forgiveness. Gordon has relied on the PPP loan proceeds to keep its educational institution afloat during the extraordinarily long and uncertain Covid lockdowns that especially hit colleges hard as they had to comply with laws to keep students off the premises where they offer educational services. The SBA Loan Decision below revokes the eligibility of Gordon College for the PPP loan proceeds based on applying new rules created after the time Gordon had submitted, and SBA had approved, Gordon's application. That is clear error.

In addition, it is inequitable for SBA to treat one institution of higher education differently than others. SBA provides on its website available to the general public detailed data about PPP loans pursuant to FOIA requests. Exhibit 11 is a spreadsheet that gathers FOIA data related to PPP loans ranging from $5 million to $10 million made to institutions of higher education. The chart shows the number of institutions of higher learning (colleges and universities) who received PPP loan funds and loan forgiveness. The chart also captures public information indicates that numerous colleges and universities received the PPP loan forgiveness of amounts between $5 Million and $10 Million with stated number of employees of less than 500 when publicly available government data shows "headcounts" of over 500. To treat Gordon College differently raises serious issues about the SBA's review process and even possible questions of discrimination.

**9.**    *Conclusion*.

To hold Gordon College ineligible now for its PPP loan based on its April 13, 2020 application because of a new SBA rule it established on April 26, 2020 is erroneous and inequitable and contrary to SBA's own rules and guidance established on April 6, 2020 in FAQ #17. To use a college analogy, it is akin to a college granting a four year full scholarship to a qualified student. The student walks across the stage, shakes the hand of the President, receives the hard-earned diploma, and then proudly steps down off the stage. There she is greeted by the Vice-President of

Finance with a letter that says, "We didn't mean it. You now owe us the full amount." Yet she is the only one in the full-ride scholarship cohort who is required now to pay the funds back.

We respectfully request that the SBA decision below be reversed, that Gordon College be found to have been eligible at the time of its submission of its PPP Loan Application as of April 13, 2020, and that Gordon College be granted full forgiveness of its PPP Loan.

**10.  *Signature of Appellant and/or Its Attorney*.**

In compliance with 13 CFR § 134.1202, Appellant Gordon College hereby submits this appeal by and under the signature of its legal counsel, Scott J. Ward, Esq., and Nancy Oliver LeSourd, Esq., of Gammon & Grange, P.C., with the following mailing address, email addresses, and cell and office phone numbers:

|  |  |  |
|---|---|---|
|  | ___/s/___ Scott J. Ward_____ | ___/s/___ Nancy Oliver LeSourd_____ |
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
|  | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
|  | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
|  | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |

JA0384

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GORDON COLLEGE<br>    255 Grapevine Road<br>    Wenham, MA 01984-1899,<br><br>          *Petitioner / Plaintiff,*<br><br>     v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as<br>Administrator of the Small Business<br>Administration; and* THE UNITED STATES OF<br>AMERICA,<br><br>          *Respondents / Defendants.* | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 08

JA0385

Exhibit 11

| EntityName | Ending 2018 | Ending 2019 | Ending 2020 | Total |
|---|---|---|---|---|
| WHEATON COLLEGE-SBA SMALL 7A TERM | 1765 | 1792 | 1829 | 5386 |
| LENOIR-RHYNE UNIVERISTY | 1311 | 1325 | 1390 | 4026 |
| GWYNEDD MERCY UNIVERSITY | 1187 | 1214 | 1224 | 3625 |
| WAYLAND BAPTIST UNIVERSITY | 1324 | 1517 | 1385 | 4226 |
| OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO | 1322 | 1295 | | 2617 |
| JOHNSON C SMITH UNIVERSITY | 875 | 823 | 420 | 2118 |
| GOLDEN GATE UNIVERSITY | 996 | 1006 | 973 | 2975 |
| MARYMOUNT MANHATTAN COLLEGE | 1548 | 1255 | 1361 | 4164 |
| BENNINGTON COLLEGE CORPORATION | 1060 | 1107 | 1084 | 3251 |
| THE CORPORATION OF SAINT MARY'S COLLEGE NOTRE DAME | 1559 | 1517 | 1529 | 4605 |
| MARIETTA COLLEGE | 1094 | 1110 | 1151 | 3355 |
| UNIVERSITY OF DALLAS | 1368 | 1405 | 1453 | 4226 |
| THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART | 1064 | 1059 | 1075 | 3198 |
| ASSUMPTION COLLEGE | 1361 | 1278 | | 2639 |
| MILLS COLLEGE | 1402 | 1354 | 1330 | 4086 |
| WESTMINSTER COLLEGE | 1819 | 1806 | 1698 | 5323 |
| CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE | 573 | 570 | 550 | 1693 |
| TREVECCA NAZARENE UNIVERSITY | 1269 | 1306 | 1260 | 3835 |
| ST. FRANCIS COLLEGE | 604 | 618 | 597 | 1819 |
| UNIVERSITY OF SAINT FRANCIS | 1193 | 1175 | 1149 | 3517 |
| CENTRE COLLEGE OF KENTUCKY | 1460 | 1465 | 1432 | 4357 |
| DELAWARE VALLEY UNIVERSITY | 1545 | 1668 | 1437 | 4650 |
| ROCKHURST UNIVERSITY | 1214 | 1200 | 1143 | 3557 |
| HUSSON UNIVERSITY | 1491 | 1503 | 1484 | 4478 |
| ALBION COLLEGE | 1571 | 1555 | 1522 | 4648 |
| FRANCISCAN UNIVERSITY OF STEUBENVILLE | 2140 | 2192 | 2178 | 6510 |
| VANGUARD UNIVERSITY OF SOUTHERN CALIFORNIA | 1086 | 1123 | 1112 | 3321 |
| GORDON COLLEGE | 950 | 852 | 867 | 2669 |
| ALLEGHENY COLLEGE | 2022 | 1920 | 1811 | 5753 |
| ST MARY'S COLLEGE OF MARYLAND | 1559 | 1517 | 1529 | 4605 |

JA0386

| | A | B | E | J | K | N |
|---|---|---|---|---|---|---|
| 1 | LoanNumber | DateApproved | BorrowerName | LoanStatusDate | LoanStatus | InitialApprovalAmount |
| 1790 | 3537677109 | 4/11/2020 | UNIVERSITY OF DALLAS | 5/13/2021 | Paid in Full | 5,820,700 |
| 2119 | 6489537405 | 5/14/2020 | VANGUARD UNIVERSITY OF SOUTHERN CALIFORNIA | 6/15/2021 | Paid in Full | 5,035,859 |
| 2125 | 1348027202 | 4/15/2020 | UNIVERSITY OF SAINT FRANCIS | 6/16/2021 | Paid in Full | 5,158,000 |
| 2342 | 9067147900 | 6/19/2020 | ALBION COLLEGE | 7/8/2021 | Paid in Full | 6,007,597 |
| 2368 | 1191027105 | 4/10/2020 | CENTRE COLLEGE OF KENTUCKY | 7/15/2021 | Paid in Full | 5,154,500 |
| 2383 | 5682607704 | 5/1/2020 | ST MARY'S COLLEGE OF MARYLAND | 7/16/2021 | Paid in Full | 6,661,697 |
| 2465 | 7255677109 | 4/14/2020 | TREVECCA NAZARENE UNIVERSITY | 7/16/2021 | Paid in Full | 5,837,800 |
| 2487 | 7150427206 | 4/28/2020 | ALVERNIA UNIVERSITY | 7/17/2021 | Paid in Full | 5,302,315 |
| 2531 | 8796348108 | 7/27/2020 | DREW UNIVERSITY | 7/20/2021 | Paid in Full | 7,039,103 |
| 2574 | 5877627002 | 4/6/2020 | ASA COLLEGE, INC. | 7/21/2021 | Paid in Full | 5,624,000 |
| 2581 | 8710977102 | 4/15/2020 | CALIFORNIA NORTHSTATE UNIVERSITY, LLC | 7/21/2021 | Paid in Full | 5,373,965 |
| 2586 | 9753097005 | 4/9/2020 | CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE | 7/22/2021 | Paid in Full | 5,520,000 |
| 2642 | 4895567410 | 5/11/2020 | LENOIR-RHYNE UNIVERISTY | 7/22/2021 | Paid in Full | 5,043,003 |
| 3249 | 4112937201 | 4/27/2020 | FRANCISCAN UNIVERSITY OF STEUBENVILLE | 8/17/2021 | Paid in Full | 6,650,000 |
| 3250 | 4336707103 | 4/13/2020 | JOHNSON C SMITH UNIVERSITY | 8/18/2021 | Paid in Full | 5,231,800 |
| 3307 | 1636537109 | 4/10/2020 | THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART | 9/25/2021 | Paid in Full | 6,562,500 |
| 3328 | 4179517710 | 5/1/2020 | WHEATON COLLEGE-SBA SMALL 7A TERM | 9/29/2021 | Paid in Full | 6,500,042 |
| 3348 | 3949557104 | 4/12/2020 | BENNINGTON COLLEGE CORPORATION | 9/29/2021 | Paid in Full | 5,945,442 |
| 3407 | 6685747210 | 4/28/2020 | ROCKHURST UNIVERSITY | 10/15/2021 | Paid in Full | 5,475,039 |
| 3498 | 9001567110 | 4/15/2020 | MILLS COLLEGE | 10/16/2021 | Paid in Full | 6,559,200 |
| 3537 | 5582417001 | 4/5/2020 | OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO | 10/23/2021 | Paid in Full | 6,604,600 |
| 3811 | 2885397208 | 4/16/2020 | THE CORPORATION OF SAINT MARY'S COLLEGE NOTRE DAME | 11/17/2021 | Paid in Full | 6,008,100 |
| 3846 | 7130567107 | 4/14/2020 | ALLEGHENY COLLEGE | 12/9/2021 | Paid in Full | 5,485,500 |
| 4012 | 3800297209 | 4/27/2020 | HOUSTON BAPTIST UNIVERSITY | 1/12/2022 | Paid in Full | 6,800,000 |
| 4021 | 2643697103 | 4/11/2020 | ASSUMPTION COLLEGE | 2/18/2022 | Paid in Full | 7,500,000 |
| 4101 | 7984257101 | 4/14/2020 | ST. FRANCIS COLLEGE | 2/19/2022 | Paid in Full | 5,516,670 |
| 4118 | 8289087101 | 4/15/2020 | GORDON COLLEGE | | Exemption 4 | 7,046,037 |
| 4316 | 8290497103 | 4/15/2020 | WESTMINSTER COLLEGE | | Exemption 4 | 6,762,900 |
| 4450 | 3607897210 | 4/27/2020 | GOLDEN GATE UNIVERSITY | | Exemption 4 | 6,743,500 |
| 4596 | 3951297402 | 5/8/2020 | MARYMOUNT MANHATTAN COLLEGE | | Exemption 4 | 6,555,592 |
| 4731 | 5931527107 | 4/14/2020 | HUSSON UNIVERSITY | | Exemption 4 | 5,965,000 |
| 4744 | 5416657106 | 4/13/2020 | MARIETTA COLLEGE | | Exemption 4 | 5,935,000 |
| 5006 | 4924879009 | 5/21/2021 | MANHATTANVILLE COLLEGE | | Exemption 4 | 5,892,442 |
| 5028 | 5501498205 | 8/7/2020 | LA SIERRA UNIVERSITY | | Exemption 4 | 5,642,900 |

JA0387

|  | O | AG | AL | AR | AY | AZ | BA |
|---|---|---|---|---|---|---|---|
| 1 | CurrentApprovalAmount | JobsReported | PAYROLL_PROCEED | BusinessType | NonProfit | ForgivenessAmount | ForgivenessDate |
| 1790 | 5,820,700 | 424 | 5,820,700 | Non-Profit Organization | Y | 5,879,704 | 4/23/2021 |
| 2119 | 5,035,859 | 484 | 5,035,859 | Non-Profit Organization | Y | 5,086,494 | 5/21/2021 |
| 2125 | 5,158,000 | 468 | 5,158,000 | Non-Profit Organization | Y | 5,210,993 | 5/13/2021 |
| 2342 | 6,007,597 | 498 | 6,007,597 | Professional Association |  | 6,065,862 | 6/16/2021 |
| 2368 | 5,154,500 | 470 | 5,154,500 | Non-Profit Organization | Y | 5,216,068 | 6/28/2021 |
| 2383 | 6,661,697 | 450 | 6,661,697 | Non-Profit Organization | Y | 6,735,249 | 6/11/2021 |
| 2465 | 5,837,800 | 461 | 5,837,800 | Non-Profit Organization | Y | 5,904,975 | 6/15/2021 |
| 2487 | 5,922,689 | 395 | 5,922,689 | Corporation |  | 5,990,306 | 6/24/2021 |
| 2531 | 7,039,103 | 471 | 7,039,103 | Non-Profit Organization | Y | 7,098,544 | 6/11/2021 |
| 2574 | 5,624,000 | 415 | 4,218,000 | Corporation |  | 5,688,560 | 6/15/2021 |
| 2581 | 4,077,730 | 280 | 4,077,730 | Limited  Liability Company(LLC) |  | 4,122,306 | 6/9/2021 |
| 2586 | 5,520,000 | 450 | 5,000,000 | Non-Profit Organization | Y | 5,585,167 | 6/17/2021 |
| 2642 | 5,043,003 | 400 | 5,043,003 | Non-Profit Organization | Y | 5,099,597 | 6/24/2021 |
| 3249 | 6,650,000 | 498 | 6,650,000 | Non-Profit Organization | Y | 6,729,800 | 7/15/2021 |
| 3250 | 5,231,800 | 315 | 5,231,800 | Non-Profit Organization | Y | 5,295,163 | 7/1/2021 |
| 3307 | 6,562,500 | 427 | 5,250,000 | Non-Profit Organization | Y | 6,651,108 | 8/20/2021 |
| 3328 | 6,500,042 | 465 | 6,500,042 | Non-Profit Organization | Y | 6,583,640 | 8/16/2021 |
| 3348 | 5,945,442 | 370 | 5,945,442 | Non-Profit Organization | Y | 6,023,559 | 8/10/2021 |
| 3407 | 5,475,039 | 488 | 5,475,039 | Non-Profit Organization | Y | 5,550,017 | 9/13/2021 |
| 3498 | 6,559,200 | 431 | 6,559,200 | Non-Profit Organization | Y | 6,652,646 | 9/28/2021 |
| 3537 | 6,604,600 | 455 | 5,000,000 | Non-Profit Organization | Y | 6,694,679 | 8/20/2021 |
| 3811 | 6,008,100 | 417 | 6,008,100 | Non-Profit Organization | Y | 6,096,219 | 10/5/2021 |
| 3846 | 5,485,500 | 496 | 5,485,500 | Non-Profit Organization | Y | 5,574,335 | 11/26/2021 |
| 4012 | 6,800,000 | 485 | 6,800,000 | Non-Profit Organization | Y | 6,543,335 | 12/7/2021 |
| 4021 | 7,500,000 | 429 | 7,500,000 | Non-Profit Organization | Y | 7,632,708 | 1/24/2022 |
| 4101 | 5,516,670 | 462 | 5,516,670 | Non-Profit Organization | Y | 5,615,204 | 1/28/2022 |
| 4118 | 7,046,037 | 496 | 7,046,037 | Non-Profit Organization | Y |  |  |
| 4316 | 6,762,900 | 434 | 6,762,900 | Non-Profit Organization | Y | 6,288,489 | 7/7/2021 |
| 4450 | 6,743,500 | 354 | 6,743,500 | Non-Profit Organization | Y | 6,554,037 | 2/2/2022 |
| 4596 | 6,555,592 | 482 | 5,244,473 | Non-Profit Organization | Y | 6,197,697 | 8/27/2021 |
| 4731 | 5,965,000 | 492 | 5,965,000 | Non-Profit Organization | Y |  |  |
| 4744 | 5,935,000 | 419 | 5,935,000 | Non-Profit Organization | Y | 5,366,857 | 11/16/2021 |
| 5006 | 5,892,442 | 483 | 5,892,439 | Non-Profit Organization | Y | 5,939,259 | 3/15/2022 |
| 5028 | 5,635,300 | 308 | 5,635,300 | Non-Profit Organization | Y |  |  |

JA0388

Gordon College

Exhibit 11

| | LoanNumber | DateApproved | BorrowerName | LoanStatusDate | LoanStatus | InitialApprovalAmount | CurrentApprovalAmount | JobsReported | PAYROLL_PROCEED | BusinessType | NonProfit | ForgivenessAmount | ForgivenessDate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1790 | 3537677109 | 4/11/2020 | UNIVERSITY OF DALLAS | 5/13/2021 | Paid in Full | 5,820,700 | 5,820,700 | 424 | 5,820,700 | Non-Profit Organization | Y | 5,879,704 | 4/23/2021 |
| 2119 | 6489537405 | 5/14/2020 | VANGUARD UNIVERSITY OF SOUTHERN CALIFORNIA | 6/15/2021 | Paid in Full | 5,035,859 | 5,035,859 | 484 | 5,035,859 | Non-Profit Organization | Y | 5,086,494 | 5/21/2021 |
| 2125 | 1348027202 | 4/15/2020 | UNIVERSITY OF SAINT FRANCIS | 6/16/2021 | Paid in Full | 5,158,000 | 5,158,000 | 468 | 5,158,000 | Non-Profit Organization | Y | 5,210,993 | 5/13/2021 |
| 2342 | 9067147900 | 6/19/2020 | ALBION COLLEGE | 7/8/2021 | Paid in Full | 6,007,597 | 6,007,597 | 498 | 6,007,597 | Professional Association | | 6,065,862 | 6/16/2021 |
| 2368 | 1191027105 | 4/10/2020 | CENTRE COLLEGE OF KENTUCKY | 7/15/2021 | Paid in Full | 5,154,500 | 5,154,500 | 470 | 5,154,500 | Non-Profit Organization | Y | 5,216,068 | 6/28/2021 |
| 2383 | 5682607704 | 5/1/2020 | ST MARY'S COLLEGE OF MARYLAND | 7/16/2021 | Paid in Full | 6,661,697 | 6,661,697 | 450 | 6,661,697 | Non-Profit Organization | Y | 6,735,249 | 6/11/2021 |
| 2465 | 7255677109 | 4/14/2020 | TREVECCA NAZARENE UNIVERSITY | 7/16/2021 | Paid in Full | 5,837,800 | 5,837,800 | 461 | 5,837,800 | Non-Profit Organization | Y | 5,904,975 | 6/15/2021 |
| 2487 | 7150427206 | 4/28/2020 | ALVERNIA UNIVERSITY | 7/17/2021 | Paid in Full | 5,302,315 | 5,922,689 | 395 | 5,922,689 | Corporation | | 5,990,306 | 6/24/2021 |
| 2531 | 8796348108 | 7/27/2020 | DREW UNIVERSITY | 7/20/2021 | Paid in Full | 7,039,103 | 7,039,103 | 471 | 7,039,103 | Non-Profit Organization | Y | 7,098,544 | 6/11/2021 |
| 2574 | 5877627002 | 4/6/2020 | ASA COLLEGE, INC. | 7/21/2021 | Paid in Full | 5,624,000 | 5,624,000 | 415 | 4,218,000 | Corporation | | 5,688,560 | 6/15/2021 |
| 2581 | 8710977102 | 4/15/2020 | CALIFORNIA NORTHSTATE UNIVERSITY, LLC | 7/21/2021 | Paid in Full | 5,373,965 | 4,077,730 | 280 | 4,077,730 | Limited Liability Company(LLC) | | 4,122,306 | 6/9/2021 |
| 2586 | 9753097005 | 4/9/2020 | CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE | 7/22/2021 | Paid in Full | 5,520,000 | 5,520,000 | 450 | 5,000,000 | Non-Profit Organization | Y | 5,585,167 | 6/17/2021 |
| 2642 | 4895567410 | 5/11/2020 | LENOIR-RHYNE UNIVERSITY | 7/22/2021 | Paid in Full | 5,043,003 | 5,043,003 | 400 | 5,043,003 | Non-Profit Organization | Y | 5,099,597 | 6/24/2021 |
| 3249 | 4112937201 | 4/27/2020 | FRANCISCAN UNIVERSITY OF STEUBENVILLE | 8/17/2021 | Paid in Full | 6,650,000 | 6,650,000 | 498 | 6,650,000 | Non-Profit Organization | Y | 6,729,800 | 7/15/2021 |
| 3250 | 4336707103 | 4/13/2020 | JOHNSON C SMITH UNIVERSITY | 8/18/2021 | Paid in Full | 5,231,800 | 5,231,800 | 315 | 5,231,800 | Non-Profit Organization | Y | 5,295,163 | 7/1/2021 |
| 3307 | 1636537109 | 4/10/2020 | THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART | 9/25/2021 | Paid in Full | 6,562,500 | 6,562,500 | 427 | 5,250,000 | Non-Profit Organization | Y | 6,651,108 | 8/20/2021 |
| 3328 | 4179517710 | 5/1/2020 | WHEATON COLLEGE-SBA SMALL 7A TERM | 9/29/2021 | Paid in Full | 6,500,042 | 6,500,042 | 465 | 6,500,042 | Non-Profit Organization | Y | 6,583,640 | 8/16/2021 |
| 3348 | 3949557104 | 4/12/2020 | BENNINGTON COLLEGE CORPORATION | 9/29/2021 | Paid in Full | 5,945,442 | 5,945,442 | 370 | 5,945,442 | Non-Profit Organization | Y | 6,023,559 | 8/10/2021 |
| 3407 | 6685747210 | 4/28/2020 | ROCKHURST UNIVERSITY | 10/15/2021 | Paid in Full | 5,475,039 | 5,475,039 | 488 | 5,475,039 | Non-Profit Organization | Y | 5,550,017 | 9/13/2021 |
| 3498 | 9001567110 | 4/15/2020 | MILLS COLLEGE | 10/16/2021 | Paid in Full | 6,559,200 | 6,559,200 | 431 | 6,559,200 | Non-Profit Organization | Y | 6,652,646 | 9/28/2021 |
| 3537 | 5582417001 | 4/5/2020 | OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO | 10/23/2021 | Paid in Full | 6,604,600 | 6,604,600 | 455 | 5,000,000 | Non-Profit Organization | Y | 6,694,679 | 8/20/2021 |
| 3811 | 2885397208 | 4/16/2020 | THE CORPORATION OF SAINT MARY'S COLLEGE NOTRE DAME | 11/17/2021 | Paid in Full | 6,008,100 | 6,008,100 | 417 | 6,008,100 | Non-Profit Organization | Y | 6,096,219 | 10/5/2021 |
| 3846 | 7130567107 | 4/14/2020 | ALLEGHENY COLLEGE | 12/9/2021 | Paid in Full | 5,485,500 | 5,485,500 | 496 | 5,485,500 | Non-Profit Organization | Y | 5,574,335 | 11/26/2021 |
| 4012 | 3800297209 | 4/27/2020 | HOUSTON BAPTIST UNIVERSITY | 1/12/2022 | Paid in Full | 6,800,000 | 6,800,000 | 485 | 6,800,000 | Non-Profit Organization | Y | 6,543,335 | 12/7/2021 |
| 4021 | 2643697103 | 4/11/2020 | ASSUMPTION COLLEGE | 2/18/2022 | Paid in Full | 7,500,000 | 7,500,000 | 429 | 7,500,000 | Non-Profit Organization | Y | 7,632,708 | 1/24/2022 |
| 4101 | 7984257101 | 4/14/2020 | ST. FRANCIS COLLEGE | 2/19/2022 | Paid in Full | 5,516,670 | 5,516,670 | 462 | 5,516,670 | Non-Profit Organization | Y | 5,615,204 | 1/28/2022 |
| 4118 | 8289087101 | 4/15/2020 | GORDON COLLEGE | | Exemption 4 | 7,046,037 | 7,046,037 | 496 | 7,046,037 | Non-Profit Organization | Y | | |
| 4316 | 8290497103 | 4/15/2020 | WESTMINSTER COLLEGE | | Exemption 4 | 6,762,900 | 6,762,900 | 434 | 6,762,900 | Non-Profit Organization | Y | 6,288,489 | 7/7/2021 |
| 4450 | 3607897210 | 4/27/2020 | GOLDEN GATE UNIVERSITY | | Exemption 4 | 6,743,500 | 6,743,500 | 354 | 6,743,500 | Non-Profit Organization | Y | 6,554,037 | 2/2/2022 |
| 4596 | 3951297402 | 5/8/2020 | MARYMOUNT MANHATTAN COLLEGE | | Exemption 4 | 6,555,592 | 6,555,592 | 482 | 5,244,473 | Non-Profit Organization | Y | 6,197,697 | 8/27/2021 |
| 4731 | 5931527107 | 4/14/2020 | HUSSON UNIVERSITY | | Exemption 4 | 5,965,000 | 5,965,000 | 492 | 5,965,000 | Non-Profit Organization | Y | | |
| 4744 | 5416657106 | 4/13/2020 | MARIETTA COLLEGE | | Exemption 4 | 5,935,000 | 5,935,000 | 419 | 5,935,000 | Non-Profit Organization | Y | | |
| 5006 | 4924879009 | 5/21/2021 | MANHATTANVILLE COLLEGE | | Exemption 4 | 5,892,442 | 5,892,442 | 483 | 5,892,439 | Non-Profit Organization | Y | 5,939,259 | 3/15/2022 |
| 5028 | 5501498205 | 8/7/2020 | LA SIERRA UNIVERSITY | | Exemption 4 | 5,642,900 | 5,635,300 | 308 | 5,635,300 | Non-Profit Organization | Y | | |

JA0389

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE<br>    255 Grapevine Road<br>    Wenham, MA 01984-1899,<br><br>            *Petitioner / Plaintiff,*<br><br>    v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>            *Respondents / Defendants.* | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

# EXHIBIT 09

JA0390

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM<br>APPEAL OF:<br><br>   Gordon College<br><br>      Appellant<br><br>Appealed from<br>SBA PPP Loan No. 8289087101 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.  PPP-8289087101 |

## APPELLANT GORDON COLLEGE'S OBJECTIONS
## TO SBA ADMINISTRATIVE RECORD (AS FILED AUGUST 19, 2022)

Pursuant to 13 C.F.R. § 134.1207(e) and to the Administrative Law Judge's ("ALJ") June 28, 2022 *Notice and Order*, and July 18, 2022 *Amended Order Granting Extension of Time* (the "*July 18 Order*"), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its written Objections to the SBA Administrative Record as filed by the Small Business Administration on August 19, 2022 ("Record" or "AR").

As Appellant was about to timely file these Objections on September 19 via the OHA Case Portal, in accordance with the *July 18 Order*, counsel received email notification of a *Notice and Order* issued by the ALJ on September 19, 2022 (today) (the "*September 19 Order*"). Out of the abundance of caution, and desiring to avoid any possible argument that Appellant has waived any Objections to the Administrative Record as filed by SBA on August 19, Appellant has proceeded to timely file these Objections via the OHA Case Portal on September 19, 2022. Appellant will supplement these Objections as appropriate in accordance with the *September 19 Order*, and Appellant will timely file by October 19, 2022 any Objections it may have to any supplemental or new Administrative Record that SBA files pursuant to the *September 19 Order*.

As detailed further below, Appellant objects to the Administrative Record as filed by SBA on August 19 as incomplete for at least the following reasons:

(a) Documents were submitted by Appellant to its Lender Citizens Bank in the process of determining eligibility for the original Paycheck Protection Program loan (the "Appellant PPP Loan") and Appellant's eligibility for forgiveness of the Appellate PPP loan that are not in the Administrative Record.

(b) Documents are referred to in the SBA Administrative Record but those documents do not actually appear in the Administrative Record as uploaded.

(c) Documents that are directly relevant to or even controlling of the relevant determinations are referred to in the Administrative Record but do not appear in the AR.

(d) Errors or formatting in the Administrative Record make it virtually impossible to read or identify some of the documents included in the Record.

Appellant respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record as explained below.

## 1.    DOCUMENTS MISSING FROM THE ADMINISTRATIVE RECORD.

There are a number of documents that were submitted by Appellant Gordon College to its Lender Citizens Bank to be provided to the SBA (presumably by being uploaded by Citizens Bank through the SBA portal) but that are not included in the Administrative Record.

## 1.1.    Gordon College Paycheck Protection Program Loan Application Form and Supporting Documentation.

Most important, the SBA Administrative Record includes almost none of the documents connected with Gordon's initial PPP Loan Application. Gordon's signed PPP Borrower Application form (on version 1 of SBA Form 2843 (04/20)) and supporting documentation are essential given the SBA reviewers' determination that Gordon was not eligible for a PPP loan *at the time of initial application in April 2020*. Indeed, the SBA reviewers appear to have determined the central issue of whether the College was eligible for a PPP loan at the time of application in early April 2020 using data ambiguously elicited by SBA in 2021. *See* AR pp.1407-15 (PDF pp.1412-20). The specific documents that are missing from the AR are detailed below.

1.1.1.  <u>Gordon College PPP Borrower Application Form</u> (four pages) including Instructions that was signed by Stephen Lacorazza for Gordon College on April 6, 2020 and provided in PDF form via email to Janet Sweeney of Citizens Bank on April 13, 2020 ("Loan Application"). This Borrower Application form, with the page 2 certification signed on behalf of Gordon College, was included as Exhibit 3 to Appellant's *Appeal Petition* in this proceeding but does not appear anywhere in the SBA Administrative Record.

1.1.2.  <u>Gordon College PPP Loan Application Cover Letter</u> provided via email to Janet Sweeney of Citizens Bank on April 9, 2020.

1.1.3.  <u>Gordon College PPP Loan Application Supporting Documentation</u>: *Spreadsheets* submitted by Gordon along with Gordons PPP Loan Application Form, including the following:

   a.  Gordon College spreadsheet titled "PPP Workbook" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020. Please note that there are three tabs of relevant data in this spreadsheet.

   b.  Gordon College spreadsheet titled "2019 Wages Paid Facstaff" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020.

   c.  Gordon College spreadsheet titled "2019 Wages Paid Students" provided via email to Janet Sweeney of Citizens Bank on April 12, 2020.

**Summary**: Gordon's PPP Borrower Application form was signed on April 6, 2020, digitally submitted to Citizens Bank on April 13, 2020, and fully funded on April 24, 2020. The absence from the SBA Administrative Record of *any* documentation whatsoever related to Appellant's original Loan Application and supporting documents is concerning. Gordon understood from Citizens Bank that the Borrower Application and supporting materials would in fact be provided to the SBA as part of the loan approval and funding process.

Moreover, the Record as uploaded demonstrates that the SBA specifically requested by letter to Citizens Bank dated September 7, 2021, that Citizens Bank provide to SBA:

"The Borrower Application Form (SBA Form 2483 or Lender's equivalent form) and all supporting documentation submitted by the borrower with the loan

*Appellant Gordon College's Objections to SBA Administrative Record*                    3

application, including 2019 or 2020 payroll documents that demonstrate qualifying average monthly payroll costs." (AR p.1008; PDF p.1013)

SBA Form 2843 is the *initial* Borrower Application form, *not* the later Forgiveness Application form.[1] (Gordon submitted version 1 of Form 2843.) It defies logic that there would not be *any* communications from the Lender Citizens Bank to the SBA nor from SBA to the Lender related to the 2020 application, eligibility, approval, or funding of Gordon's PPP loan.

These concerns are magnified further by SBA's later determination that Gordon would not receive *any* loan forgiveness for the specific reason that Gordon was not eligible for a PPP loan *at the time that it first applied*. SBA Determination Letter at AR pp.23-24 (PDF pp.28-29). All of the documents included in the Record under the Table of Contents heading "Loan Application Supporting Docs (Payroll)" were provided in connection with Gordon's **2021** Borrower Forgiveness Application or in response to later 2021 or 2022 requests from SBA. There is nothing in the Record that reflects SBA's receipt of the original **April 2020** Gordon College Borrower Application and supporting materials,[2] even though those materials provide the factual information directly relevant to, if not controlling of, the SBA reviewer's determinations.

Therefore, Appellant Gordon College respectfully requests that the ALJ order the SBA to supplement the Record with all documents related to the submission, processing, approval, funding, and disbursement of funds for the original April 2020 Loan Application, such as application forms, supporting materials, correspondence, reviewer's notes, memoranda, workbooks, worksheets, communications with Citizens Bank, materials created or provided by Citizens Bank, and similar materials related (but not limited) to any of the following areas:

---

[1] *See* https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form

[2] The only documents from the original PPP Borrower Application process that are included in the Administrative Record are the Promissory Note and the Automatic Payment Authorization, both dated April 23, 2020 (AR pp.987-1007; PDF pp.992-1012) that were required to be included as part of Gordon's PPP Forgiveness Application in 2021.

JA0394

a. Citizen Bank's review of the PPP Loan Application and recommendation for approval of the original PPP Loan of Gordon College.

b. The SBA's approval for the disbursement of PPP Loan proceeds to Gordon College.

c. The SBA review and approval of Gordon's PPP Loan Application.

d. Any calculation of employees, whether by SBA or Citizens Bank, for purposes of eligibility for the PPP Loan.

e. Any determination of the eligibility of Gordon College for the PPP Loan under any SBA eligibility or size standard.

f. Any internal SBA communications or communications to Citizens Bank related to funding the Gordon College PPP loan or to disbursement of PPP Loan proceeds to Gordon College.

g. Any documents that indicate the SBA reviewers of the April 2020 Loan Application considered the relevant SBA and/or Department of Treasury FAQs, Interim Final Rules, or other contemporaneous instructions or guidance issued by SBA or the Department of Treasury that are specific to the unique PPP Loan program and were in effect at the time of Gordon's application.

## 1.2. Gordon College Employer Quarterly Returns for 2019Q3.

Also missing from the SBA Administrative Record are three documents providing Employer Quarterly Return information for Third Quarter ("Q3") 2019 that were provided electronically by Gordon College to Citizens Bank on March 24, 2022, specifically:

a. Gordon College 2019Q3 West Chester PA Employer Quarterly Return Local Earned Income Tax Withholding (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

b. Gordon College 2019Q3 West Chester PA Employer Quarterly Return Local Earned Income Tax Withholding II (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

c. Gordon College 2019Q3 West Chester PA Employer Quarterly Return of Tax Withheld (1 page), provided by Gordon College to Citizens Bank on March 24, 2022 via Microsoft OneDrive upload.

## 1.3. Gordon College Correspondence with Lender Citizens Bank.

Appellant Gordon College did not have any direct contact with the SBA. Rather, all communications were made through Gordon's lender, Citizens Bank. In general, Gordon College would receive a communication, usually through email, from someone at Citizens Bank forwarding a question or a letter that Citizens Bank had received from the SBA. Gordon would

then respond to the SBA question or request, usually (but not always) via an email to Citizens Bank transmitting a letter or substantive information that Citizens indicated would be communicated to the SBA by uploading it through the "SBA Portal." However, it appears that only some of these communications from Gordon to Citizens are included in the AR.

Only a single email from Gordon College to Citizens Bank is included in the Record. That is the November 5, 2021 email from Stephen Lacorazza of Gordon to Monica Thomas of Citizens responding to SBA's ambiguous request for "a list of locations to include employee count per location" in October and November 2021. *See* AR pp.75-80 (PDF pp.80-85) (Nov. 5, 2021 email); AR pp.1407-15 (PDF pp.1412-20) (SBA correspondence requesting information).

There are **no** other emails included in the Administrative Record uploaded by SBA, even though Mr. Lacorazza of Gordon sent multiple emails to Monica Thomas of Citizens and to Janet Sweeney of Citizens Bank related to Gordon's PPP loan application and forgiveness. For example, as noted in Section 1.2 above, there were at least three documents provided by Stephen Lacorazza of Gordon to Janet Sweeney of Citizens Bank that do not appear anywhere in the AR.

Appellant therefore respectfully requests that the ALJ order SBA to review its electronic systems and files and confirm that any and all materials placed into the SBA portal by Citizens Bank have been included in the Administrative Record.

## 2.   DOCUMENTS REFERENCED BY SBA IN, BUT NOT INCLUDED IN, THE ADMINISTRATIVE RECORD.

There are also materials that are referred to by the SBA in the Administrative Record but that do not appear to have been included in the Administrative Record as uploaded by the SBA. These items include (without limitation) the following categories.

JA0396

## 2.1.    "Guidance" Used by SBA to Determine Loan Eligibility and/or Forgiveness.

The Administrative Record indicates in several places that SBA reviewers relied upon or consulted specific agency or other legal "guidance" – presumably including internal SBA documents as well as Interim Final Rules, SBA FAQs, regulations, and the like – in their review of Gordon's initial loan eligibility and in their ultimate determination that Gordon was not eligible for a PPP loan nor for PPP loan forgiveness. Just as one example (and without limitation):

> AR. p.20 (PDF p.25) – In an entry dated January 10, 2022, the Reviewer's Notes state that "**SBA size standard tests** were performed on the file and it is still deemed that the hold code cannot be cleared." "Recommend for denial due to **not meeting the size standard** which makes them ineligible for a PPP loan." These Reviewer Notes indicate that the reviewer relied "**guidance which I have been instructed to follow**". [emphasis added] But Appellant has been unable to identify any such "tests" or "guidance" in the Administrative Record.

Other examples of SBA reviewers referencing such "guidance" include (without limitation) those appearing at the following locations in the Administrative Record:

> AR p.3 (PDF p.8)
> AR p.1016 (PDF p.1021)
> AR p.1030 (PDF p.1035)
> AR p.1044 (PDF p.1049)
> AR p.1060 (PDF p.1065)
> AR p.1065 (PDF p.1070)
> AR p.1092 (PDF p.1097)
> AR p.1104 (PDF p.1109)

Despite these repeated references to "guidance," no such guidance appears to be included in the Administrative Record. Appellant Gordon College therefore respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with any documents or materials that constitute any "guidance" referenced, consulted, disregarded, or relied upon by SBA reviewers in evaluating loan eligibility at any time, whether at time of original application or at time of forgiveness review, and any communications or documents related to the same.

JA0397

## 2.2.    SBA Spreadsheets, Calculations, Formulas, and the Like Used to Determine Eligibility and/or Forgiveness.

The SBA Record indicates in several places that SBA reviewers used spreadsheets, formulas, calculations, and similar materials in their review of Gordon's initial eligibility and in their ultimate decision to deny Gordon PPP loan forgiveness. Examples include (without limitation) the following:

> AR p.19 (PDF p.24) – In an entry dated April 8, 2022, SBA reviewer Fredericka Suzanne Phillips notes: "…switched to new assignment. I have **detailed spreadsheet** -basically finished- to pass on to next HAR Reviewer". But Appellant has been unable to identify any such "detailed spreadsheet in the Administrative Record.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with any documents or materials that set forth such formulas, spreadsheets, calculations, tests, size standards, and the like made or used by SBA in evaluating loan eligibility at any time, whether at time of original application or at time of forgiveness review, and any communications or documents related to the same.

## 2.3.    Citizens Bank Missing Document.

By letter dated September 7, 2021 (AR p.1008-09; PDF p.1013-14), the SBA directed Citizens Bank to provide copies of five different documents or sets of documents. It appears that the fifth document, specifically "Any memorandum or other analysis that the lender prepared in making its decision on the forgiveness application," is not included in the Record as uploaded.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Record with these documents.

## 2.4.    SBA Consideration of Gordon College's December 15, 2021 Letter.

There is no indication in the Administrative Record that SBA considered Gordon College's December 15, 2021 letter brief to the SBA nor that SBA considered or addressed the letter's

discussion of SBA Interim Final Rule Docket No. SBA-2020-0015 (the "IFR").[3] The Record indicates that the December 15, 2021 letter was received by the SBA. But the only SBA reference to this letter appears to be including it – with nothing more than the title "customer response to eligibility" – in the SBA listing of "Supporting Forgiveness Documentation" on AR p.16 (PDF p.21). The December 15, 2021 letter itself is included in the AR at AR pp.1277-78 (PDF pp.1282-83) and again at AR pp.1279-80 (PDF pp.1284-85).

But there is no discussion of or even reference to this letter by SBA anywhere else in the Record. This is very unusual. For example, Gordon College's earlier December 3, 2021 letter, which was uploaded by the Lender to the SBA portal on December 8, is identified and referenced in the SBA reviewer's comments at AR p.20 (PDF p.25). But there is no reference to the December 15, 2021 letter in the same reviewer comments. Indeed, the next entry in the SBA reviewer comments is more than one month later, on January 10, 2022, and does not mention this letter. The absence of any discussion of this letter directly addressing issues that later were foundational to the SBA's forgiveness determination is baffling.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record with any and all documentation of SBA's consideration of the December 15, 2021 Letter and any guidance referenced or related to that letter, or else certify that SBA did not consider the letter and such guidance in making its determination that Gordon is not eligible for a PPP loan and therefore for loan forgiveness.

---

[3] 13 CFR Part 120, RIN 3245-AH34, **Federal Register** Vol. 85 No. 73 at pp. 20811 to 20817, issued April 11, 2020 and effective immediately April 15, 2020. The December 15, 2021 letter notes that this IFR is available at https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=3245-AH34 and at https://www.sba.gov/sites/default/files/2020-04/PPP%20Interim%20Final%20Rule_0.pdf.

*Appellant Gordon College's Objections to SBA Administrative Record*                    9

JA0399

3.      **Documents That Are Not Fully Readable Due to Formatting of the Record.**

Administrative Record pages 1013 through 1276 (PDF pages 1018 through 1281), inclusive, are not fully readable due to the format in which SBA has incorporated them in the Record. These pages are identified in the Table of Contents simply as "Worksheet", "Worksheet 2", and "Worksheet 3" and appear to be SBA reviewer worksheets, but are lacking any further identification. Given this format and lack of identifying information, it is simply not possible for the Appellant, or likely the ALJ, to understand these documents.

Appellant Gordon College respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record by uploading these documents in a fully readable format and with appropriate filenames, headings, titles, and other information needed to identify what these documents are and how they were used, including (without limitation) specifically the following:

(a) Upload fully readable copies of the following three separate PPP Forgiveness Reviewer Workbooks found at:

AR pp.1118-84

AR pp.1030-75

AR pp.1206-76

(b) Clarify whether these workbooks are just copies of a form manual or workbook, or have any data in them or information in them that may be specific to Appellant.

(c) Confirm whether these are three separate workbooks or three copies of the same workbook.

(d) Clarify whether these three "Reviewer Workbooks" are for internal review at SBA, or for a bank's review process, or specifically applicable to a review of the Gordon College applications (and which ones – original and/or forgiveness). There are no titles for these worksheets currently visible to clarify these distinctions.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant Gordon College therefore respectfully requests that the Administrative Law Judge order the SBA to supplement the Administrative Record in all the ways set forth above.


Respectfully submitted,


/s/ Scott J. Ward

_____

Scott J. Ward, Esq.
    Gammon & Grange, P.C.
Attorney for Appellant
    Gordon College

*Appellant Gordon College's Objections to SBA Administrative Record*                    11

JA0401

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM ) <br> APPEAL OF: ) <br> ) <br>     Gordon College ) <br> ) <br>         Appellant ) <br> ) <br> Appealed from ) <br> SBA PPP Loan No. 8289087101 ) | Docket No.  PPP-8289087101 |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 19, 2022, I filed a copy of the above *Appellant Gordon College's Objections to SBA Administrative Record* in the OHA Case Portal.

Respectfully submitted,


/s/ Scott J. Ward

_____

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:          (703) 761-5012
Facsimile:     (703) 761-5023

JA0402

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GORDON COLLEGE<br>   255 Grapevine Road<br>   Wenham, MA 01984-1899,<br><br>      *Petitioner / Plaintiff*,<br><br>   v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>      *Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 10

JA0403

## United States Small Business Administration
## Office of Hearings and Appeals

<table>
<tr>
<td>

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

      Appellant

Appealed from
SBA PPP Loan Number
8289087101

</td>
<td>

Issued: September 19, 2022

Docket No. PPP-8289087101

</td>
</tr>
</table>

### NOTICE AND ORDER

      The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received an appeal petition in the above-captioned matter from Gordon College (Appellant) on May 13, 2022. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

### I. **Administrative Record**

      SBA shall file the Administrative Record with OHA electronically, via the OHA Case Portal, no later than **October 11, 2022**. The Administrative Record must contain every document relevant to Appellant's PPP loan that the SBA possessed on the date of its final loan review decision. See 13 C.F.R. § 134.1207.

### II. **Objection to Administrative Record**

      Appellant shall file and serve, on or before **October 19, 2022**, any objections it has to the absence of any document in the Administrative Record. See 13 C.F.R. § 134.1207(e). Any objection not filed by this date will be deemed waived, regardless of any agreements between the parties. Appellant may object to the absence of a document, previously submitted to, or sent by, SBA, which Appellant believes was erroneously omitted from the Administrative Record. An objection to an incomplete Administrative Record must include either a copy or a detailed description of the missing document or other information Appellant believes is missing, and why Appellant believes the Administrative Record should include it.

### III. **Appeal Response**

      SBA may, but is not required to, file a response to this appeal. If SBA files a response to this appeal, it must be filed by no later than **November 3, 2022**, which is the close of record. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. In addition, after review of the appeal petition, OHA may

request SBA to respond. Only SBA may respond. If filed, the response should set forth the relevant facts and legal arguments to the issues presented on appeal. *See* 13 C.F.R. § 134.1208.

## IV. Filing and Service Instructions

A party seeking to file and serve any pleading or other submission must do so by utilizing the OHA Case Portal at https://appeals.sba.gov. A filing received by OHA after 5 p.m. eastern time is considered filed on the next business day. See 13 C.F.R. § 134.204(b)(2); § 134.1202.

## V. PPP Loan Deferment

Appellant must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1204(d).

*Gary D. Smith*
_____

GARY D. SMITH
Administrative Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GORDON COLLEGE<br>255 Grapevine Road<br>Wenham, MA 01984-1899, | ) ) ) ) | Case No. 1:23-cv-614-BAH |
| *Petitioner / Plaintiff,* | ) ) ) | |
| v. | ) ) | |
| UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as<br>Administrator of the Small Business<br>Administration*; *and* THE UNITED STATES OF<br>AMERICA, | ) ) ) ) ) ) ) | |
| *Respondents / Defendants.* | ) ) ) ) | |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 11

JA0406

# UNITED STATES SMALL BUSINESS ADMINISTRATION
# OFFICE OF HEARINGS AND APPEALS

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM ) APPEAL OF: ) | Issued: September 20, 2022 |
| Gordon College ) | Docket No. PPP- 8289087101 |
| Appellant ) | |
| Appealed from ) SBA PPP Loan No. 8289087101 ) | |

## <u>ORDER VACATING  INADVERTENT NOTICE AND ORDER</u>

On September 19, 2022, a Notice and Order was issued for the above-captioned appeal. That Notice and Order was issued inadvertently based upon erroneous information Appellant had filed a new appeal in the SBA Appeal Portal.

Accordingly, the Notice and Order issued on September 19, 2022 is **HEREBY VACATED.**

**SO ORDERED**.

*Gary D. Smith*

Gary D. Smith
Administrative Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE<br>   255 Grapevine Road<br>   Wenham, MA 01984-1899,<br><br>        *Petitioner / Plaintiff*,<br><br>   v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as<br>Administrator of the Small Business<br>Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>        *Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

# EXHIBIT 12

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

        Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: December 2, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
                 Mark O'Brien, Esq., for SBA

### Notice of Filing Petition for Reconsideration and Date for Response

On November 21, 2022, a Decision was issued for the above-captioned appeal. On December 1, 2022, a Petition for Reconsideration was filed by the Appellant.

To ensure the hearing record is complete, with the positions of both parties fully documented, the SBA shall be given the opportunity to respond to the Appellant's Petition for Reconsideration.

Accordingly, pursuant to 13 C.F.R. §134.207(d), the **SBA shall have until December 16, 2022 to file its response** to the Appellant's Petition for Reconsideration if it intends to do so.

        SO ORDERED.

*Gary D. Smith*
Gary D. Smith
Administrative Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GORDON COLLEGE<br>    255 Grapevine Road<br>    Wenham, MA 01984-1899,<br><br>    *Petitioner / Plaintiff*,<br><br>    v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as<br>Administrator of the Small Business<br>Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>    *Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 13

JA0410

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College

Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: December 2, 2022

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
Mark O'Brien, Esq., for SBA

### ORDER FOR SBA TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Appellant filed the above-captioned appeal on May 13, 2022 and a Petition for Reconsideration on December 1, 2022 following the undersigned issuing an Initial Decision on November 21, 2022. SBA uploaded the Administrative Record for the original appeal on August 19, 2022. The record does not contain a copy of Appellant's Borrower Application Form (SBA Form 2483). The record also contains information about the number of Appellant's employees that Appellant disputes in its PFR. **SBA is hereby ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration.**

**SO ORDERED.**

*Gary D. Smith*
Gary D. Smith
Administrative Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GORDON COLLEGE<br>   255 Grapevine Road<br>   Wenham, MA 01984-1899,<br><br>       *Petitioner / Plaintiff,*<br><br>   v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>       *Respondents / Defendants.* | )<br>)<br>)   Case No. 1:23-cv-614-BAH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 14

JA0412

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM )<br>APPEAL OF: )<br> )<br>Gordon College )<br> )<br>     Appellant )<br> )<br>Appealed from )<br>SBA PPP Loan No. 8289087101 )<br> ) | Docket No.  PPP-8289087101 |

## SUPPLEMENT TO THE ADMINISTRATIVE RECORD

On December 2, 2022, OHA issued an Order for SBA to Supplement the Administrative Record.  Specifically, SBA was ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration.

Appellant's Form 2483 was added to the document portal on December 5, 2022, after SBA was able to retrieve it from Appellant's PPP lender.

SBA now supplies additional pertinent documentation related to how it calculated Appellant's number of employees.  See the Appeal Summary Analysis attached hereto as Exhibit "A".

Respectfully submitted,

/s/ Mark S. O'Brien

Mark S. O'Brien
Attorney for SBA

1

# Exhibit "A"

JA0414

## Appeal Summary Analysis

Loan: **GORDON COLLEGE, 8289087101**
Reviewed by: **Tyler Powell**
Date: **12/5/2022** (initially submitted 9/22/2022)

Basis of appeal:
- UPDATE: Borrower filed a lengthy Petition for Reconsideration (PFR) based on OHA decision dated 11/21/2022.  The primary issues were employee count methodology and applicable regulations at the time of application. (see attachments "Petition for Reconsideration" and "OHA Appeal Decision 11/21/2022")

- Borrower submitted a lengthy letter of appeal essentially arguing the SBA decision was erroneous because the regulations regarding limits on the applicant size, employees and SBA industry size, were not applicable and/or did not apply to them.  (see attachment "Appeal - Borrower Letter")
  - The Letter cited **FAQ #17**, published **April 6, 2020**, indicating that, "**Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application**."
- Borrower also submitted a lengthy Objection to the AR, largely citing the relevant documents that were submitted to the Lender but not added to the AR, such as SBA Form 2483.  (see attachment, "Appeal - Objection to AR")

Loan Information:
- This loan:
  - Is a FIRST draw loan, and the Borrower, a 501c3 nonprofit, has NO other PPP loans.
  - Has active hold codes for the following: 36- general eligibility.  (see Exhibits on page 7)
  - Is an UNKNOWN part of the sample.
- PPP loan application, SBA Form 2483, was signed **April 6, 2020.**  (see attachment "2483")
  - CAFS Submitted Date: **April 15, 2020**
  - Borrower stated application was submitted on **April 13, 2020**.  (see attachment "Appeal - Borrower Letter", page 3)
- OCA denial, issued **April 12, 2022**, stated, "the **Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards**. A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the **borrower is listed as 501 (c)(3), and therefore is not eligible under the alternative size standard industry qualifications**. **The Alternative Size Standard qualifications are limited to for-profit entities**, that do not qualify for a PPP loan under the traditional NAICS Employee-Based Size Standard Industry criteria."  (see "Denial Justification Document - Term")

Analysis and conclusion:
- **PFR** contains may issues and concerns from Borrower counsel.   (see attachments "Petition for Reconsideration")

JA0415

- PFR Items 3 through 8 are essentially regarding employee count and applicable regulations. We address employee count and applicable regulations as they apply to PPP loan eligibility below.
- PFR items 9 regarding objections to the AR is not addressed in our analysis.
- PFR item 10 regarding discriminatory treatment is not addressed in our analysis.
- PFR item 11 regarding constitutional and statutory matters are not addressed in our analysis.

- Borrower had previously submitted a letter stating, "We respectfully submit that **because Gordon College is a nonprofit private religious college** federally tax-exempt under Internal Revenue Code § 501(c)(3), these **SBA size standards do not apply to Gordon College under the CARES Act and related regulations and guidance**." (see "customer response to eligibility")

- **The Core Issue** in this case is eligibility based on EMPLOYEE COUNT and the proper methodology for counting employees.
  - Borrower used an improper methodology when determining employee count by using **full-time equivalents (FTEs)**. (see Exhibits on page 11, "SBA Package 3.24.2022", pages 1-3, and "Appeal - Borrower Letter", page 4)
  - Borrower stated that at the time of application, they had **331 full-time (permanent) employees** and **519 part-time employees**. Therefore, we can conclude that at the time of application, the Borrower had **850** employees. (see Exhibits on page 11)
  - In response to an SBA request for employee count by location, the Borrower submitted an employee count by location having **639** employees in MA location and a total across all locations of, **680** employees. (see Exhibits on page, 10)
  - The **CARES Act** became law on **March 27, 2020**, and is applicable for this Borrower, as well as ALL PPP loan applicants and recipients.

- **An additional Issue** in this case is the Borrower counsel's contention that the PPP Loan Application, Form 2483, required certifying the use of FTEs. This issue also is part of **PFR item #3** regarding the use of 13 CFR § 121.106 How does SBA calculate number of employees.
  - Borrower counsel **incorrectly refers to IFR1.III.2.t.iv**, as a PPP loan eligibility methodology for employee count. That portion of IFR 1 is in reference to certifications and subsequent documentation for the COVERED PERIOD, which seeks to ensure employees are retained during the covered period as a condition of receipt and use of the PPP loan.
  - **IFR1.III.2.a - Am I eligible?,** is the correct portion regarding ELIGIBILITY for first draw PPP loans. This portion of the IFR states, "You are eligible for a PPP loan **if you have 500 or fewer employees** whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:" Further, **IFR1.III.2.a.i.B.** clarifies that this is applicable to nonprofits stating, "**A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and…"
    - See also Form 2483 "CERTIFICATIONS AND AUTHORIZATIONS" bullet point 3 versus "CERTIFICATIONS" item 4. (see Exhibits on pages 12-13)
    - It should be noted the **Borrower SIGNED a Lender "Certifications and Authorizations" affirming they were eligible** for the PPP loan as having "…no more than the greater of 500 or employees or, if applicable, the size standard in

JA0416

number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."  (see Exhibits on page 14)

- **Eligibility - Size Standards:**
  - **Employee Count**
    - Q1 through Q4 Form 941s have an average of **1,155** employees. (table below)



**2019 From 941 Wages & Employee Count**

| Period | Amount | Employees | Source |
|---|---|---|---|
| 2019-Q1 | $ 6,158,236.73 | 1,358 | "Gordon College 2019Q1 Federal 941-X" |
| 2019-Q2 | $ 6,761,890.95 | 698 | "Gordon College 2019Q2 Federal 941" |
| 2019-Q3 | $ 6,693,645.70 | 1,305 | "Gordon College 2019Q3 Federal 941-X" |
| 2019-Q4 | $ 6,950,542.31 | 1,258 | "Gordon College 2019Q4 Federal 941" |
| Total Wages | $ 26,564,315.69 | | |
| Average # Employees | | 1,155 | |

  - **Industry Size Standard,** per 13 CFR § 121.201 for NAICS 611310 - Colleges, Universities and Professional Schools.
    - NAICS 611310 is limited to **$30.5M in Revenue** with **no stated employee count limit** (see Exhibits on page 7)
    - 2017, 2018, and 2019 Average Annual Receipts: **$109,638,894** [($93,390,806+$142,703,285+$92,822,591)/3 = $109,638,894.00 ]
      - FY 2017: **$93,390,806**  (see "Form 990")
      - FY 2018: **$142,703,285**  (see "FY19 Form 990")
      - FY 2019: **$92,822,591**  (see "FY20 Form 990", page 12)

  - **Alternative Size Standard**
    - In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. Therefore, **the alternative size standard is not applicable to 501c3 nonprofit organizations**.  [ref: IFR 1.III.2, FAQ 3, and FAQ 71]

- Guidance:
  - **CARES Act - Sec 1102.(a).(D)  (effective law March 27, 2020)**
    - (D) Increased eligibility for certain small businesses and organizations.--
      - (i) In general.--During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) **shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of--**
        - ``(I) **500 employees**; or
        - ``(II) if applicable, **the size  standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization**, veterans organization, or Tribal business concern operates.

JA0417

- (v) <> Employee.--**For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees** under clause (i)(I), the term `employee' includes individuals employed on a full-time, part-time, or other basis.
  - **13 CFR § 121.106 How does SBA calculate number of employees?** [61 FR 3286, Jan. 31, 1996, as amended at 69 FR 29203, May 21, 2004; 84 FR 66579, Dec. 5, 2019]
    - (a) In determining a concern's number of employees, **SBA counts all individuals employed on a full-time, part-time, or other basis**. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (i.e., individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.
  - **IFR 1 - Interim Final Rule 1 - III.2.  (originally posted April 2, 2020)**
    - a. Am I eligible? **You are eligible for a PPP loan if you have 500 or fewer employees** whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, **and**:
      - You are:
        - A. **A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f)** unless specifically waived in the Act; or
        - B. **A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and …

  - **IFR 2 - Interim Final Rule on Applicable Affiliation Rules  (originally posted April 3, 2020)**
    - How do SBA's affiliation rules affect my eligibility and apply to me under the PPP?
      - An entity generally is eligible for the PPP if it, combined with its affiliates, is a small business as defined in section 3 of the Small Business Act (15 U.S.C. 632), **or** (1) **has 500 or fewer employees** whose principal place of residence is in the United States or is a business that operates in a certain industry **and** meets applicable SBA employee-based size standards for that industry, **and** (2) is **a tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC)**, a tax-exempt veterans organization described in section 501(c)(19) of the IRC, a Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business concern. Prior to the Act, the nonprofit organizations listed above were not eligible for SBA Business Loan Programs under section 7(a) of the Small Business

JA0418

Act; only for-profit small business concerns were eligible. The Act made such nonprofit organizations not only eligible for the PPP, but also subjected them to SBA's affiliation rules. Specifically, section 1102 of the Act provides that the provisions applicable to affiliations under 13 CFR 121.103 apply with respect to nonprofit organizations and veterans organizations in the same manner as with respect to small business concerns.

- **Conclusions:**
  - Core Issue(s):
    1. **Eligibility - Applicable Guidance At Time of Application**
       - **RESOLVED:** It is verified that the **CARES Ac**t (March 27,2020), **13 CFR § 121.106** (January 31, 1996), **IFR 1** (April 2, 2020), and **IFR 2** (April 3, 2020) were are all published PRIOR to the date of application on **April 6, 2020**. Therefore, the Borrower had access to such guidance prior to submission of their PPP loan application. As such, we do not concur with the Borrower's assertation that the guidance was not in place. We further in non-concurrence that the guidance does not apply to them as a 501c3 nonprofit given the CARES Act-Sec 1102.(a)(D), IFR1.III.2, and IFR2, all address nonprofit entites in the context of PPP loan eligibility. Therefore, we agree that adequate and applicable regulations were available to the Borrower PRIOR to loan application and this issue is resolved.
    2. **Eligibility - Employee Count Methodology**
       - **RESOLVED:** It is verified the Borrower used an FTE methodology for counting employees for purposes of PPP loan eligibility. However, per the **CARES Act Sec 1102.(a).(D)(v)**, and **13 CFR § 121.106 - How does SBA calculate number of employees?(a)**, the SBA counts all individuals employed on a full-time, part-time, or other basis.
       - In addition, counsel for the Borrower incorrectly references IFR 1.III(t)(iv) and Form 2483 certifications regarding employee count for eligibility purposes. **Those references apply to the COVERED PERIOD (i.e. loan forgiveness eligibility) to ensure employee headcount was maintained, not loan <u>eligibility</u>**. The Borrower must read past IFR1.III.2.a, and Form 2843 "CERTIFICATIONS AND AUTHORIZATIONS", which both limit employee count to 500. Further, the Borrower also signed another "Certifications and Authorizations" from the Lender certifying the Applicant, "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in **13 C.F.R. 121.201** for the Applicant's industry."
       - Therefore, given these regulations were in place prior to the time of application and the regulations (i.e. The CARES Act) specify, "**the term `employee' includes individuals employed on a full-time, part-time, or other basis.**", we agree the use of FTEs for purposes of determining loan eligibilty is an incorrect methodology and this issue is resolved.

JA0419

3. **Eligibility - Size Standards**
   - **RESOLVED**:  It is verified the Borrower averaged 1,155 employees in 2019 per submitted 2019 Form 941s. In addition, the Borrower presented they have 639 employees at just the MA location. Further, the Borrower submitted documentation of having 850 employees at the time of application, **331** full-time (permanent) employees and **519** part-time employees. Consequently, it is verified that during the 2019 reference period AND at the time of PPP loan application, the Borrower exceeded the maximum allowable limit of 500 employees, in violation of the **CARES Act Sec 1102.(a).(D), IFR 1.III.2, and SBA Form 2483**.
   - It is further verified that per **13 CFR § 121.201**, the Borrower exceeded the allowable Small Business Size standards for **NAICS 611310 - Colleges, Universities, and Professional Schools**, which is limited to **$30.5M in revenue** and has no other employee limit. Per submitted **Form 990 tax returns**, the 3-year average revenue totaled, $109,638,894. Therefore, we agree the Borrower was not eligible for the PPP loan due to exceeding allowable size standards.

- **Recommendations:**
  - Confirm OCA and OHA DENIAL of forgiveness due to the Borrower, or together with its affiliates, exceeding the maximum allowable number of employees and the SBA small business size standards, in violation of the **CARES Act - Sec 1102.(a).(D)**.

JA0420

## Exhibits

**Hold Codes**

| Delete? | Hold Code | Source | Description | Hold Date | End Date | Created By | Created On | Updated By | Updated On | Comments |
|---------|-----------|--------|-------------|-----------|----------|------------|------------|------------|------------|----------|
| ☐ | 36 | OCA | General Eligibility | 04/12/2022 1:20 PM | | msmishcon | 04/12/2022 1:20 PM | | | |
| X | 21 | Star | Employee Count Threshold | 11/12/2020 12:08 PM | 02/23/2022 6:03 PM | CADBOps | 11/12/2020 12:08 PM | ForgivenessAPI | 02/23/2022 6:03 PM | |
| X | 10 | Star | Loan Size Meets Special Review Criteria | 11/12/2020 12:08 PM | 01/16/2021 5:27 PM | CADBOps | 11/12/2020 12:08 PM | CADBOps | 01/16/2021 5:27 PM | |

**CAFS search by _EIN: 04-2104258 or Stephen Lacorazza, CFO (x5449):**
<no other loans found>

**CHRON Notes:**

| View | Date | Entered By | System | Action | Result |
|------|------|------------|--------|--------|--------|
| | **Chron Comment** | | | | |
| View | 04/12/2022 | Mason S. Mishcon [msmishcon] | Centralized Loan Chron System | | |
| | The Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. The previous hold code was removed prematurely. | | | | |

**Industry-Based Size Standard (NAICS Code):**

### Sector 61 – Educational Services

| NAICS Codes | NAICS Industry Description | Size standards in millions of dollars | Size standards in number of employees |
|-------------|---------------------------|--------------------------------------|---------------------------------------|
| 611110 | Elementary and Secondary Schools | $17.5 | |
| 611210 | Junior Colleges | $28.5 | |
| 611310 | Colleges, Universities and Professional Schools | $30.5 | |
| 611410 | Business and Secretarial Schools | $18.0 | |
| 611420 | Computer Training | $14.0 | |
| 611430 | Professional and Management Development Training | $13.0 | |
| 611511 | Cosmetology and Barber Schools | $11.5 | |
| 611512 | Flight Training | $30.0 | |
| 611513 | Apprenticeship Training | $10.0 | |
| 611519 | Other Technical and Trade Schools | $18.5 | |

31

JA0421

**Employee Counts - 2019 Form 941s**

**Q1 ("Gordon College 2019Q1 Federal 941-X", pg 15):**

| Account ID Number | Tax Filing Period |
|---|---|
| WTH-10963780-005 | Mar 31, 2019 |
| Number of employees from whom taxes were withheld. | 1,358.00 |
| 1. Amount withheld. | 237,239.26 |
| 2. Previous payments made. | 237,280.97 |
| 3. Credit carryforward from previous period. | 0.00 |
| 4. Total payments and credits. (Add lines 2 and 3.) | 237,280.97 |
| 5. Total tax due. (Subtract line 4 from line 1.) | 0.00 |
| 6. Amount overpaid to be credited to next period. | 0.00 |
| 7. Amount overpaid to be refunded. | 41.71 |

**Q2 ("Gordon College 2019Q2 Federal 941"):**



JA0422

## Q3 ("Gordon College 2019Q3 Federal 941-X", pg 11):

**WITHHOLDING TAX FORM M-941 - AMEND**

Name: **GORDON COLLEGE**

Account ID: WTH-10963780-005

IP Address: **104.129.198.229**

Period: **30-Sep-2019**

Due Date: **31-Oct-2019**

**Review & Submit**

### Return Summary

Confirm this information is accurate and then use the *Submit* button to submit your return. If you notice something was entered incorrectly, use the *Previous* button and correct it before submitting.

| Number of Employees from Whom Taxes Were Withheld | | 1,305 |
|---|---|---|
| 1. | Amount Withheld | 259,919.49 |
| 2. | Previous Payments Made | 260,954.02 |
| 3. | Credit from Previous Period | 0.00 |
| 4. | Total Payment and Credits | 260,954.02 |
| 5. | **Total Amount Overpaid** | **1,034.53** |
| 6. | Amount Overpaid to Be Credited to Next Period | 0.00 |
| 7. | Amount Overpaid to Be Refunded | 1,034.53 |

### Attachments

Add Additional Files

| Type | Name | Description | Size |
|---|---|---|---|

### Declaration

By clicking the *Submit* button, I declare under the penalties of perjury that I examined the information that I am submitting and it is, to the best of my knowledge and belief, true and complete.

Save and Close      Cancel

Previous    Submit

© 2020 Commonwealth of Massachusetts   Site Policies | Web Browsers

## Q4 ("Gordon College 2019Q4 Federal 941"):



**Employee Count by State/Location  (see "Dates"):**

| From: | Stephen Lacorazza |
|---|---|
| To: | Thomas, Monica |
| Subject: | RE: SBA Requesting Additional Documentation |
| Date: | Friday, November 5, 2021 12:33:19 PM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Monica,

Please see the breakout by state below.

| MA | 639 |
|---|---|
| TX | 2 |
| CA | 8 |
| GA | 4 |
| MO | 1 |
| MN | 1 |
| CT | 6 |
| FL | 2 |
| NY | 3 |
| WA | 1 |
| NC | 2 |
| IA | 1 |
| SC | 1 |
| NH | 2 |
| RI | 1 |
| ND | 1 |
| ME | 1 |
| CO | 2 |
| IL | 1 |
| VA | 1 |
| | 680 |

Have a good weekend,

Stephen

JA0424

**Borrower Employee Count Methodology  (see "SBA Package 3.24.2022", pages 1-3):**
**NUMBER OF EMPLOYEES AT GORDON COLLEGE**

- At the time of its PPP loan application in April 2020, Gordon College had 331 full-time (permanent) employees and 519 part-time employees, including students.

---

[1] All documents requested are provided except for Internal Revenue Service Form 940 because this form does not apply to tax-exempt non-profits like Gordon College.

GORDON COLLEGE | Vice President for Finance & Chief Financial Officer
255 Grapevine Road, Wenham MA 01984-1899
T 978 867 4048

www.gordon.edu
1



1. Three-hundred thirty-one (331) permanent staff converted to **331 Full Time Equivalent (FTE)** positions.

2. Based on the number of hours worked, 519 part-time employees converted to **159.1 Full-Time Equivalent (FTE) positions**.
   a. Two-hundred sixty-three (263) *non-student* part-time employees converted to *123.76 FTEs*.
   b. Two hundred fifty-six (256) part-time *student* employees converted to just *35.34 FTEs* because many of these students worked for only a very limited amount of time each week or for only a short-period of time (project-based).
      1) Fifty-nine (59) percent (or 153 students) were considered 0.10 FTEs or less because they worked so few hours or they received a stipend/award for their service.
      2) Forty-two (42) students participated in the Federal work study program, which was equivalent to 3.35 FTEs; based on SBA guidance issued on May 8, 2020, *after* Gordon College filed its PPP loan application, these students now no longer need to be included in Gordon's overall FTE calculation.
      3) Most of these students could not work anymore on campus as the college went to virtual learning in April 2020 for the rest of the semester and through the summer.

JA0425

**Form 2483 (see attachments "2483"):**



| **Paycheck Protection Program**<br>**Borrower Application Form** | OMB Control No.: 3245-0407<br>Expiration Date: 09/30/2020 |
|---|---|

| **Check One:** | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☑ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | **DBA or Tradename if Applicable** |
|---|---|---|

| **Business Legal Name** | | |
|---|---|---|
| Gordon College | | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 255 Grapevine Rd | 04-2104258 | 978 867 4883 |
| Wenham MA 01984 | **Primary Contact** | **Email Address** |
| | Stephen Lacorazza | stephen.lacorazza@gordon.edu |

| **Average Monthly Payroll:** | $ 2,818,415 | x 2.5 + EIDL, Net of<br>Advance (if Applicable)<br>Equals Loan Request: | $ 7,046,037 | Number of Employees: 495.67 |
|---|---|---|---|---|
| **Purpose of the loan**<br>(select more than one): | ☑ Payroll  ☑ Lease / Mortgage Interest  ☑ Utilities  ☐ Other (explain): _____ | | | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| **Owner Name** | **Title** | **Ownership %** | **TIN (EIN, SSN)** | **Address** |
|---|---|---|---|---|
| Non Profit | Non Profit | 100 | 042104258 | 255 Grapevine Rd Wenham |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| | **Question** | **Yes** | **No** |
|---|---|---|---|
| 1. | Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☑ |
| 2. | Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☑ |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☑ | ☐ |
| 4. | Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☑ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| | **Question** | **Yes** | **No** |
|---|---|---|---|
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 → _SDL_____ | ☐ | ☑ |
| 6. | Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 → _SDL_____ | ☐ | ☑ |
| 7. | Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☑ | ☐ |
| 8. | Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☑ |

1

SBA Form 2483 (04/20)

JA0426



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

**CERTIFICATIONS AND AUTHORIZATIONS**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

**CERTIFICATIONS**

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SDL
    The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SDL
    Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

SDL
    The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SDL
    The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

SDL
    I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

SDL
    During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

SDL
    I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SDL
    I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

Stephen D Lacorazza   Digitally signed by Stephen D Lacorazza Date: 2020.04.12 12:23:21 -04'00'

4/6/2020

Signature of Authorized Representative of Applicant      Date

Stephen D Lacorazza      Dir of Finance & Controller

Print Name      Title

2

SBA Form 2483 (04/20)

JA0427

**Lender Form 2483 Equivalent  (see attachment "lender equivalent 2483", pg 6):**

DocuSign Envelope ID: 4F7294F2-5CC6-4911-B26A-B1195A1E4604



# ﷼ Citizens Bank®

# Certifications and Authorizations

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant:
    - (1) is an independent contractor, eligible self-employed individual, or sole proprietor or
    - (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.



Signed By: _____

Authorized Signer

JA0428

## UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM<br>APPEAL OF: | ) |
|  | ) |
|  | ) |
| Gordon College | ) Docket No.  PPP-8289087101 |
|  | ) |
|     Appellant | ) |
|  | ) |
| Appealed from | ) |
| SBA PPP Loan No. 8289087101 | ) |
|  | ) |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 8, 2022, I filed a copy of the above Supplement to the

Administrative Record in the OHA Case Portal for Appellant's Petition for Reconsideration.


Respectfully submitted,


/s/ Mark S. O'Brien

_____

Mark S. O'Brien
Agency Counsel
U.S. Small Business Administration
68 Sewall Street
Augusta, ME 04330
Phone            (207) 622-8558
Facsimile        (202) 481-4397

2

JA0429

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GORDON COLLEGE                                    )
   255 Grapevine Road                          )    Case No. 1:23-cv-614-BAH
   Wenham, MA 01984-1899,                  )
                               )
                               )
       *Petitioner / Plaintiff*,               )
                               )
   v.                                                )
                               )
UNITED STATES SMALL BUSINESS       )
ADMINISTRATION; ISABELLA CASILLAS   )
GUZMAN, *in her Official Capacity as*      )
*Administrator of the Small Business*        )
*Administration*; *and* THE UNITED STATES OF  )
AMERICA,                                            )
                               )
       *Respondents / Defendants*.             )
                               )
                               )

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 15

JA0430

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
| Gordon College | ) | Docket No.  PPP-8289087101 |
| | ) | |
| Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 8289087101 | ) | |

**APPELLANT GORDON COLLEGE'S OBJECTIONS TO SBA's**
***SUPPLEMENT TO THE ADMINISTRATIVE RECORD* (FILED DECEMBER 8, 2022)**

Pursuant to 13 C.F.R. § 134.1207(e) and to the Administrative Law Judge's ("ALJ") December 2, 2022 *Order For SBA to Supplement the Administrative Record* ("Order to Supplement"), and December 2, 2022 *Notice of Filing Petition for Reconsideration and Date for Response* ("ALJ Notice"), Appellant Gordon College ("Gordon" or "Appellant"), a religious nonprofit institution of higher education located in Wenham, Massachusetts, by and through its undersigned counsel, hereby timely submits its written *Objections* to the *Supplement to the Administrative Record* filed by SBA Counsel on December 8, 2022 ("Supplement" or "SR").[1]

**INTRODUCTION**

Appellant's primary objection is that SBA's purported "Supplement" to the Administrative Record is improper under the controlling SBA regulations, as explained below. SBA's Supplement is comprised of a document that on its face is dated September 22, 2022, and updated December 5,

---

[1] Appellant has waited to file these *Objections* until after the December 16, 2022 deadline established by the *ALJ Notice* for SBA to file any response to the Appellant's Petition for Reconsideration. The OHA portal indicates that SBA Counsel did not file any response by 5:00 pm on December 16, 2022, nor indeed by December 18, 2022.

2022, created by an SBA examiner who was not involved in the April 2020 Final Loan Review Decision that is the subject of this Appeal. SBA's Supplement appears to be an attempt to create a new "record" months after the SBA Final Loan Review Decision under appeal was issued. SBA's submission of its Supplement, and any consideration or inclusion of it in the Administrative Record by the ALJ, would violate 13 CFR § 134.1207 and 13 CFR § 134.1209(a). SBA's Supplement is not properly part of the Administrative Record and should not be included in it nor considered by the ALJ.

SBA continues to urge long-after-the-fact justifications for retroactively applying to Appellant arguments and standards that SBA itself did not articulate, and apparently did not recognize, until two years after Gordon's PPP loan application was submitted, approved, funded, and expended entirely to keep Gordon employees on the payroll. SBA applied a *different standard* to the more then twenty-five other institutions of higher education whose loans it forgave despite their using an FTE analysis and having numbers of employees far beyond the 500-employee maximum if SBA's headcount method is utilized. See below and *Appeal Petition* Exhibit 11. Most significant, if SBA's new position – articulated by SBA for this first time in this entire review and appeal process in its December 5, 2022 Supplement – is adopted, then FAQ #36 issued April 26, 2022 was completely unnecessary and utterly gratuitous. SBA's conduct in this case thus represents the ultimate in "sandbagging" – failing to produce, and apparently even to create, positions, standards, and documents until months after the decision being appealed was made and only after the last scheduled date for any filing by Gordon College has passed.

Contrary to the SBA's December 8, 2022 Supplement, the correct standard for evaluation of Gordon's loan eligibility and forgiveness and for resolution of this appeal is that set forth in Gordon's *Appeal Petition* and Gordon's *Petition for Reconsideration*. SBA FAQ #17 expressly states that Gordon is entitled to rely upon the SBA guidance at the time its PPP loan application

JA0432

was submitted on April 13, 2020. The PPP Borrower Application Form 2483 created by SBA in March 2020 – and only at last submitted by SBA on December 4, 2022 as part of the Administrative Record as ordered by the ALJ's *Order to Supplement* – specifically requested the "Number of Employees" on page 1 and required that the applicant certify "the number of full-time equivalent employees" on page 2. Nowhere did the SBA Borrower Application Form in any way indicate that the number of employees entered on page 1 should be determined by a different method than the applicant was required to certify under penalty of perjury on page 2. Further, Gordon College's PPP Borrower Application Form 2483 as signed, certified, and submitted on April 13, 2020, lists on page 1 the number of employees as 495.67 employees, clearly indicating at the very outset that Gordon had used the FTE method required by the certification on page 2.

SBA's December 8, 2022 Supplement continues to try to evade what was required on the face of the Form 2483 that SBA itself created and promulgated. Indeed, SBA's Supplement shows even more clearly from that SBA only figured out its current arguments in September 2022. The positions and arguments pressed in the document that SBA now seeks to add to the Administrative Record as a "Supplement" do not appear in the Administrative Record as filed by SBA on August 19, 2022. The SBA clearly did not apply this same position and standard in its Final Loan Review Decisions of the applications of the more than twenty-five (25) other institutions of higher education whose PPP loans it forgave despite having headcounts of more than 500 employees. It was only after Gordon clearly explained the problems with SBA's Final Loan Review Decision that SBA even attempted to articulate – in September and December 2022 – the justification SBA now urges, at this last possible moment, the ALJ impose upon Gordon.

Gordon further objects to SBA introducing in this Supplement a new interpretation of language from the CARES Act. That language has already been fully addressed in Gordon's *Appeal Petition* – and SBA did not even attempt to file any response then. *See, e.g.*, Appeal Petition

at pp.17-18. The CARES Act language quoted by SBA in the Supplement addresses *WHO* a PPP loan applicant should include in determining its number of employees: "the term `employee' includes individuals employed on a full-time, part-time, or other basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition at pp.10. But that language does not address *HOW* such employees should be included. Counting full-time equivalent employees unquestionably "includes" full-time and part-time and other employees. Yet in the Supplement SBA now asserts that "includes" is effectively the same as "headcount.". SBA's interpretation goes beyond the language of the Act that the Supplement relies upon and beyond the language of SBA Form 2483. Until SBA issued FAQ #36 on April 26, 2020, neither the CARES Act nor any SBA PPP guidance in any other way instructed nonprofit religious organizations applying for a PPP loan *HOW* to count – that is, whether to use FTE or headcount to calculate. *See Appeal Petition* § 7.7 at pp.17-18. (Indeed, the term "headcount" comes directly from FAQ #36 not from Appellant.)

## OBJECTIONS

**(1)     SBA's "Supplement" Document Was Created *After* Every Relevant Date in the SBA's Final Loan Review Decision and Gordon's Appeal of That Final Decision.**

The document that SBA filed on December 8, 2022, as a purported "Supplement" to the Administrative Record in this Appeal indicates on its face that it is an updated version of an original document titled "Appeal Summary Analysis" that was first submitted – solely internally within the SBA – on September 22, **2022**. That document also indicates that it was updated on December 5, 2022. Only the "updated" December 5, 2022 version of the document has been filed by SBA, not the original September 22, 2022 version. *See generally* Supplement at p.1 (PDF p.3).

The original of this document thus was created:

1.   more than twenty-eight (28) months after Gordon's PPP Borrower Application Form 2483 was submitted by Gordon to its lender, approved by the lender, fully funded by the SBA, and expended by Gordon entirely to keep existing Gordon employees employed and on the Gordon payroll;

2. more than five (5) months after SBA issued its Final Loan Review Decision that is the subject of this appeal;

3. more than four (4) months after Gordon filed its Appeal Petition;

4. more than one (1) month after SBA filed the "Administrative Record" in this Appeal; and

5. three (3) days after Gordon College filed its *Objections to Administrative Record* in this Appeal – the last filing of any sort by Gordon that was specifically identified in any of the ALJ's scheduling orders.

SBA could have included that original September 22, 2022 "Appeal Summary Analysis" document as an exhibit to a response brief in this Appeal. Such a response was due by October 3, 2022, under the ALJ's July 18, 2022 *Amended Order Granting Extension of Time*. But SBA did not file *any* response at all. And SBA has never attempted to supplement the Administrative Record until the ALJ's December 2, 2022 *Order to Supplement*.

Of course, it is only speculation whether the original document contains substantially the same analysis as in the "updated" document that SBA only now has filed as a "Supplement." The original document has never been submitted in this Appeal nor disclosed to Gordon. The "updated" document first filed by SBA on December 8, 2022, indicates on its face that it was not "updated" until December 5, 2022 – four days after Gordon's *Petition for Reconsideration* was filed.

Bluntly stated, the document that SBA only now submits to justify its April 2020 Final Loan Review Decision denying forgiveness did not exist in any form until ***after*** the last date any ALJ scheduling order explicitly identified for *any* filing by Gordon. And that document did not exist in the form submitted as a purported "Supplement" until after Appellant had actually filed its *Petition for Reconsideration*. The following table lists the most relevant dates and events:

| DATE | EVENT / DOCUMENT |
|------|------------------|
| April 6, 2020 | Gordon College signs PPP Borrower Application Form 2483. |
| April 13, 2020 | Gordon College submits PPP Borrower Application Form 2483. |
| April 15, 2020 | Gordon College PPP loan approved. |

| DATE | EVENT / DOCUMENT |
|---|---|
| April 23, 2020 | Gordon College executes and submits all PPP loan documents. |
|  |  |
| April 13, 2022 | Gordon College receives SBA Final Loan Review Decision (Appeal Petition Exhibit 1) denying PPP loan forgiveness. |
| May 13, 2022 | Gordon College files *Appeal Petition* and Exhibits. |
| August 19, 2022 | SBA files Administrative Record. Record as filed by SBA does not include Gordon College Borrower Application Form 2483. |
| September 19, 2022 | Gordon College files *Objections to Administrative Record*. |
| September 22, 2022 | SBA examiner Tyler Powell "submits" solely within SBA apparent initial draft (not included in SBA Supplement) of document titled "Appeal Summary Analysis." |
| October 3, 2022 | Deadline for SBA to file a response to Gordon College *Appeal Petition*. SBA does not file *any* response and does not seek to supplement Administrative Record in any way. |
| November 21, 2022 | ALJ issues Decision denying Gordon College appeal. |
| December 1, 2022 | Gordon files *Petition for Reconsideration* of ALJ Decision. |
| December 2, 2022 | ALJ issues *Notice of Filing Petition for Reconsideration and Date for Response* giving SBA until December 16, 2022 to file any response to Gordon's *Petition for Reconsideration*. |
| December 2, 2022 | ALJ issues *Order for SBA to Supplement the Administrative Record* stating that "SBA is hereby ordered to immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration." |
| December 5, 2022 | SBA files Supplement to Administrative Record comprised of a copy of Gordon College's original PPP Borrower Application Form 2483 that SBA has obtained from the lender. |
| December 5, 2022 | SBA examiner Tyler Powell "updates" document titled "Appeal Summary Analysis." |

JA0436

| DATE | EVENT / DOCUMENT |
|------|------------------|
| December 8, 2022 | SBA files additional *Supplement to the Administrative Record* comprised of a copy of the "updated" document titled "Appeal Summary Analysis" (but not the original September 22, 2022 "Appeal Summary Analysis"). |

**(2)     SBA's "Supplement" Document Was Created by an SBA Employee Who Was Not Previously Involved in the April 2020 Final Loan Review Decision nor This Appeal.**

The Supplement indicates on its face that the document was created and updated by an SBA employee named "Tyler Powell." But the name "Tyler Powell" does not appear anywhere in the Administrative Record as filed by SBA Counsel on August 19, 2022. Indeed, the words "Tyler" and "Powell" individually only appear within the names of Gordon College employees included in the Administrative Record. It appears that Tyler Powell's first involvement in any way in SBA's review of Gordon's PPP loan occurred only after – apparently several months after – SBA's actual Final Loan Review Decision and after Appellant's last scheduled filing in this Appeal.

**(3)     SBA's Filing the "Supplement" Document Violates 13 CFR § 134.1207 and Including the SBA "Supplement" in the Administrative Record Would Violate 13 CFR § 134.1207 and § 134.1209(a).**

The SBA Supplement violates the regulations that govern this appeal. The requirements for the Administrative Record to be submitted by SBA are clearly established by 13 CFR § 134.1207, which provides in relevant part (emphasis added):

§ 134.1207 The administrative record.

(a) *Time limits.* The administrative record will be due 20 calendar days after issuance of the Notice and Order unless additional time is requested and granted.

(b) *Contents.* The administrative record shall include non-privileged, relevant documents **that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision**. The administrative record need not, however, contain all documents pertaining to the appellant.

The SBA Supplement did not even exist at the time SBA made its Final Loan Review Decision in April 2022. The Supplement was not "submitted" (and even then only within SBA) until September 22, 2022, more than five months after the SBA's Final Loan Review Decision, more than four months after Gordon filed its *Appeal Petition*, and three days **after** Gordon filed its *Objections to Administrative Record*. It therefore is beyond dispute that the SBA Supplement is **not** a document "that SBA considered in making its final loan review decision or that [was] before SBA at the time of the final loan review decision" as is required by 13 CFR § 134.1207.

Further, any admission or consideration of the SBA's purported "Supplement" by the ALJ would violate not only 13 CFR § 134.1207 but also 13 CFR § 134.1209(a), which provides in full that "[g]enerally, the Judge may not admit evidence beyond the administrative record."

**(4)     Applying the SBA's September 24, 2022 and December 4, 2022 After-The-Fact Justifications for its April 12, 2022 Final Loan Review Decision Results in Unlawful and Unconstitutional Discrimination Against Gordon College.**

Both the Administrative Record as filed by SBA on August 19, 2022, and the purported Supplement filed by SBA on December 8, 2022, further reinforce the fact that SBA profoundly changed its loan review analysis and its justification for the same sometime after March 2022. SBA loan examiners clearly applied a *different standard* to the more then twenty-five (25) other institutions of higher education whose loans SBA forgave despite those institutions having used an FTE analysis and despite their having employees far beyond the 500-employee ceiling if SBA's headcount method is utilized. Those institutions, the relevant public record information from the SBA web site regarding their loans and forgiveness and associated dates, and the relevant public record information regarding their number of employees as determined by the same headcount methods that SBA has applied to Gordon College here are all set forth in Exhibit 11 to Gordon's *Appeal Petition*. For all of the reasons previously explained, such discriminatory treatment by SBA is unlawful under the CARES Act, under the April 15, 2020 Interim Final Rule, under federal

religious freedom and equal protection laws, and under the First and Fifth Amendments to the U.S. Constitution. *See, e.g., Appeal Petition* at pp.5-6; *Petition for Reconsideration* § 11 at pp.17-18.

**(5)    SBA's Submission of Its December 8, 2022 "Supplement" Is an Effort to Improperly Present New Legal Arguments As Though They Were the Basis for SBA's April 12, 2022 Final Loan Review Decision.**

It also appears that the SBA is using its "Supplement to the Administrative Record" as a disguised way to make legal arguments while continuing never to file a response or any other brief in this appeal. Admittedly, SBA is not required to file any response brief. But this appears to be an attempt to "have your cake and eat it too" – to present new legal arguments that were not actually the articulated basis for SBA's April 2022 Final Loan Review Decision under appeal and that therefore do not appear in the Administrative Record as of that date, but to disguise those new arguments as having been the basis for the Final Loan Review Decision being appealed. *Compare* SBA April 2020 Final Loan Review Decision, Exhibit 1 to *Appeal Petition*, *with* SBA Supplement.

**(6)    SBA's December 8, 2022 "Supplement" Improperly Attempts to Retroactively Read New Interpretations Into SBA's April 2022 Final Loan Review Decision.**

Gordon also objects to SBA urging in the Supplement a new interpretation of language from the CARES Act and other guidance. That language has already been fully addressed in Gordon's *Appeal Petition*. *See, e.g.*, Appeal Petition at pp.17-18. The CARES Act language quoted by SBA in the Supplement addresses ***WHO*** a PPP loan applicant should include in determining its number of employees: "the term `employee' includes individuals employed on a full-time, part-time, or other basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition at pp.10. But that quoted language does not address ***HOW*** such employees should be included. Counting full-time equivalent employees unquestionably "includes" full-time and part-time and other employees. Yet in the Supplement SBA now asserts that "includes" is effectively the same as "uses headcount" and necessarily and obviously means "counts each and every full-time, part-time, and other

JA0439

employee as a single full-time employee." SBA's interpretation goes beyond the language of the Act that the Supplement relies upon and ignores the language of SBA Form 2483.

Until Treasury/SBA issued FAQ #36 on April 26, 2020 – *after* Gordon College's PPP Loan Application was submitted to SBA on April 13, 2020, approved by SBA on April 15, 2020, and all loan documents executed by April 23, 2020 – neither the CARES Act nor any SBA PPP guidance instructed religious nonprofit organizations applying for a PPP loan *HOW* to count – that is, whether to use the FTE or the headcount calculation method. Although the CARES Act did not address headcount or prescribe a formula as to how to count employees for *eligibility* for the PPP loan, FAQ #36 articulated a new formula for how to count the 500-employee threshold for *eligibility*, resulting in two different "counting" formulas – headcount for eligibility and FTE for forgiveness. *See Appeal Petition* at § 7.7 at pp.17-18. FAQ #36 was needed precisely because it was completely reasonable to interpret the CARES Act and the PPP-specific guidance issued by SBA prior to FAQ #36 as permitting, and even requiring, use of the FTE method.

**(7)    SBA's Efforts to Supplement the Record With Documents Created After SBA's April 2020 Final Loan Review Decision Further Demonstrate SBA's Improper Actions in Denying Gordon's PPP Loan Forgiveness and In Contesting Gordon's Appeal.**

Both documents filed by SBA in response to the ALJ's *Order to Supplement* are deeply revealing, but in different and almost opposite, ways.

First, SBA did not file a copy of Gordon's PPP Loan Application Form 2483 until specifically ordered to do so by the ALJ. In filing that Form 2483, SBA revealed that SBA's records did not include SBA's own copy of the Form 2483 as signed and certified under penalty of perjury by Gordon. The foundational document in addressing Gordon's loan eligibility and loan forgiveness is this PPP Borrower Application Form 2483 that the SBA itself created and promulgated to the public in March and early April 2020 and that Gordon College signed and submitted on April 13, 2020. The SBA's Form 2483 expressly requires that Gordon certify the

number of full time equivalent employees (FTEs) – which is exactly what Gordon did. Indeed, Form 2483 affirmatively required a loan applicant to certify that the number of FTEs entered earlier on the applicant's completed Form 2483 was correct, under penalty of perjury. Nowhere does the Form 2483 request the number of employees by headcount or indicate that a headcount method is the correct method to use. Indeed, to have applied the headcount method as the basis for the number of employees entered on page 1 of the Form 2483 would have made it impossible to make the required certification on page 2. Gordon's attestation of 495.67 employees on page 1 clearly indicated that Gordon had used the FTE method required by the certification on page 2. And none of the instructions provided by SBA on pages 3 and 4 of the Form 2483 in any way indicated that an applicant should use a headcount method on page 1 only.

Second, the fact that SBA determined that it was necessary to issue FAQ #36 on April 26, 2020 – after Gordon had submitted its Form 2483 – demonstrates that it was reasonable for any loan applicant, including Gordon, to interpret SBA Form 2483 as establishing that the correct way to count and certify employees was to use the FTE method. And SBA FAQ #17 makes clear that Gordon was entitled to rely upon the guidance available at the time it filed its Form 2483.

**(8)** **Page 10 of SBA's "Supplement" Improperly Omits Directly Relevant Information and Therefore Is Misleading.**

In addition to the more general Objections set forth above, Appellant also specifically to Page 10 of SBA's Supplement because it is misleading or deceptive. Page 10 includes part of the document that appears on page 75 (PDF page 80) of the Administrative Record as previously filed by SBA. But it omits the remainder of the page and the following page that are the embedded underlying email from Monica Thomas of Citizens Bank forwarding a question Citizens received from SBA. SBA thus omits the precise question that the quoted email is answering. The likely reason is not surprising – the question that SBA asked was vague, ambiguous, and misleading and

was presented without context or foundation. SBA's denial of forgiveness relies heavily upon this answer to an ambiguous and misleading question, while simultaneously ignoring the most relevant document, the PPP Borrower Application Form 2483 actually submitted by Gordon College.

## **CONCLUSION**

For the reasons set forth above, Appellant Gordon College objects to the SBA's filing of its December 8, 2022, *Supplement to the Administrative Record*. SBA's filing of the December 5, 2022 "updated" analysis document violates 13 CFR § 134.1207. Including that Supplement in the Administrative Record would violate both 13 CFR § 134.1207 and § 134.1209(a). All of the foregoing Objections further demonstrate that the SBA's decision to deny loan forgiveness to Appellant Gordon College was based both on clear errors of fact and on clear errors of law. *See* 13 CFR § 134.1210. Any single error would be sufficient to require reconsideration and reversal of the SBA loan denial and granting of forgiveness to Appellant. Appellant therefore respectfully requests that the Administrative Law Judge grant *Appellant Gordon College's Petition for Reconsideration of SBA Administrative Law Judge's Decision Issued November 21, 2022* and reconsider and reverse the Administrative Law Judge's Decision issued November 21, 2022.

       Respectfully submitted,

        /s/  Scott J. Ward

| | | |
|---|---|---|
| Name: | Scott J. Ward, Esq. | Nancy Oliver LeSourd, Esq. |
| Address: | Gammon & Grange, P.C., | Gammon & Grange, P.C., |
| | 1945 Old Gallows Road, Suite 650 | 1945 Old Gallows Road, Suite 650 |
| | Vienna, VA 22182 | Vienna, VA 22182 |
| Email: | SJW@GG-Law.com | NOL@GG-Law.com |
| Phone: | 703-298-6088 (cell) | 703-909-7999 (cell) |
| | 703-761-5012 (office – direct) | 703-761-5015 (office – direct) |
| | *Attorneys for Appellant Gordon College* | |

JA0442

**UNITED STATES SMALL BUSINESS ADMINISTRATION
OFFICE OF HEARINGS AND APPEALS**

|  |  |  |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) ) | |
| Gordon College | ) ) | Docket No.  PPP-8289087101 |
| Appellant | ) ) ) | |
| Appealed from SBA PPP Loan No. 8289087101 | ) ) ) | |

## **CERTIFICATE OF SERVICE**

I certify that on December 19, 2022, I filed a copy of the above *Appellant Gordon College's Objections to SBA's Supplement to the Administrative Record (filed December 8, 2022)* in the OHA Case Portal.

Respectfully submitted,

/s/ Scott J. Ward

_____

Scott J. Ward, Esq.
Attorney for Appellant Gordon College
Gammon & Grange, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
SJW@GG-Law.com
Phone:        (703) 761-5012
Facsimile:   (703) 761-5023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE<br>  255 Grapevine Road<br>  Wenham, MA 01984-1899,<br><br>          *Petitioner / Plaintiff*,<br><br>     v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA,<br><br>          *Respondents / Defendants*. | Case No. 1:23-cv-614-BAH |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 16

JA0444

### United States Small Business Administration
### Office of Hearings and Appeals

```
-------------------------------------
PAYCHECK PROTECTION PROGRAM
APPEAL OF:

HUSSON UNIVERSITY                          Issued: August 4, 2022

        Appellant                         Decision No. PPP- 5931527107

Appealed from
SBA PPP Loan Number: 5931527107
-------------------------------------
```

### APPEARANCES

**Janna Gau, Esquire**, Counsel for the Appellant

**Mark O'Brien, Esquire**, Counsel for the Small Business Administration

### DECISION

#### I.   Introduction and Jurisdiction

On December 28, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Husson University (Appellant) is ineligible for a PPP loan.  On January 26, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for full PPP loan forgiveness in the amount of $5,965,000.00. For the reasons discussed *infra*, I GRANT the appeal and REVERSE the SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

#### II.   Background

On April 08, 2020, Appellant, Husson University applied for a PPP Loan with the SBA certified lender, Bangor Savings Bank (Lender).   The loan was approved and on April 23, 2020, SBA disbursed a PPP loan of $ 5,965,000.00 to Appellant through the Lender.  On July 16, 2021, Appellant filed an application for PPP loan forgiveness.

1

JA0445

A.    **Final SBA Review Decision**

On December 28, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan it received and therefore was not eligible for PPP loan forgiveness.  Specifically, the SBA found after review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. SBA has determined that forgiveness in the amount of $0.00 is appropriate.

B.    **Appeal**

On January 26, 2022, Appellant filed the instant appeal arguing that the final SBA loan review decision is clearly erroneous and requests the Office of Hearings and Appeals (OHA) to reverse that decision and find that the Appellant is eligible for PPP loan forgiveness.

On March 07, 2022, the undersigned issued a Notice and Order directing the SBA to file the Administrative Record (AR) by April 12, 2022. On March 25, 2022, counsel for the SBA moved to extend the time to file the Administrative Record (AR) by 30 calendar days. The Administrative Judge found good cause for an extension of time to file the AR and directed counsel for the SBA to file a responsive brief to the Appellant's January 26, 2022, brief on or before the expiration of said extension. Specifically, SBA counsel was directed to address the Appellant's arguments apropos reliance on PPP loan application guidance available on or before the date of Appellant's application. On April 26, 2022, SBA moved to further extend the time to file the AR and a Response for an additional 30 calendar days. The Administrative Judge granted the extension and the SBA had until May 26, 2022, to file the AR.

The AR was filed on May 25, 2022. The SBA filed seven (7) supplements to the Administrative Record on May 25, 2022. On May 25, 2022, the Appellant filed an Addendum to the January 26, 2022, Brief. On May 26, 2022, the SBA filed a Brief in response to the instant appeal.

III.    **Discussion**

The PPP Loan Program is a temporary SBA 7(a) program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis.  Its purpose was to help businesses keep their workers paid and employed.  The program was established under Section 1102 of the Coronavirus Aid Relief, and Economic Security (CARES) Act (Pub. L. 116-136) signed into law March 27, 2020, and subsequently revised and expanded by other statutes.

2

## A.      The Paycheck Protection Program

In general, PPP loans were open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 USC § 636(a)(36)(D).  Other types of entities, such as nonprofit organizations and housing cooperatives could also be eligible under certain circumstances.

Under PPP, borrowers obtain loans through an SBA approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose.  15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  15 U.S.C. § 636(a)(36)(G).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## B.      PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e).  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3).     Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).  In general, a PPP

3

JA0447

borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs.  15 U.S.C. § 636m(d)(8).  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(g).  Following issuance of an initial decision, the Office of Capital Access may issue a final SBA loan review decision.  This official written decision issued by the SBA Office of Capital Access reviews the PPP loan and can find a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program.

4

Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

<div align="center">

C.    **Finding of Fact and Analysis**

</div>

As previously noted herein, the SBA final loan decision stated that the Appellant business was ineligible for a PPP loan.  Specifically, the SBA stated that:

> "SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. A review of the documents provided indicate that the Borrower exceeded 500 employees. Per the certifications on the 2483, the applicant employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 CFR 121.201 for the applicant's industry. The Borrower indicated at the time of the loan application they had 492 employees, however the first quarter 2020 941 shows 1034 employees and second quarter 983. Additionally, the Borrower IRS form 990 confirms ineligibility based on the size standards for gross receipts. Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate."[1]

Appellant states in his appeal in pertinent part:

> "As a non-profit institution of higher education with an approximately two hundred eight (208) acre primary campus in Bangor, Maine which includes classrooms, administrative offices, dormitories, and an athletic complex, Husson was directly affected by the consequences of the COVID-19 virus's

---

[1] SBA Final Loan Review Decision.

<div align="center">5</div>

economic impact and sought a loan under the Paycheck Protection Program. Relying on the context of the SBA's Interim Final Rule dated April 2, 2020, Husson reached out to its bankers (Bangor Savings Bank) and industry resources to determine how to qualify for the program and its terms. See April 2, 2020, Interim Final Rule, attached as Exhibit B. At the time the Paycheck Protection Program was launched in early April, there was a lack of clear guidance as to the definitions and approach to loan eligibility. There was specifically a lack of clarity for institutions of higher education in terms of calculating the number of employees, which is a PPP eligibility requirement. Husson employs part-time adjunct professors and students under the federal and state equivalent work-study programs. While Husson understood that all employees should be included in determining the 500 employee threshold for PPP loan eligibility, Husson sought advice whether eligibility would be determined using an "FTE" (full time equivalent) employee calculation of thirty (30) hours or total headcount. Based on professional advice, it was determined that using the Affordable Care Act ("ACA") definition of FTE (30 hours = 1 FTE), was a reasonable approach. Furthermore, using the FTE basis to determine PPP eligibility was reasonable in the context of the CARES Act since the availability of PPP loans was intended to stabilize the American workforce through forgivable loans. Husson determined it employed 492 FTEs. Faced with the uncertainty of the pandemic and with a workforce intended to service in person learning, Husson in good faith submitted its PPP loan application on April 6, 2020, to its SBA lender, Bangor Savings Bank ("Lender"). Contemporaneous with the submission of its original application, the SBA revised the PPP application and Husson, therefore, re-signed and submitted an application on April 8, 2020. The Lender submitted the loan application to the SBA on April 13, 2020. The SBA approved Husson's PPP loan application on April 14, 2020. Husson closed on the loan on April 23, 2020. Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended)."[2]

In its Addendum the Appellant further argues:

"On April 14, 2020, when the SBA approved Husson's loan application, there was no language or other indication of the intent for a headcount calculation

---

[2] Appellant's Appeal Pleading.

JA0450

in the CARES Act to be used when determining eligibility. See Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, March 27, 2020, 134 Stat. 281 ("CARES Act"). However, there is clear intent and use of an FTE calculation in the CARES Act. Id. at §1106. On April 8, 2020, at the time Husson submitted its PPP loan application to its Lender, coupled with the fact that FTE is the methodology for forgiveness calculation, it was fair and reasonable for Husson to infer that this would be the basis for application. There being no statement to the contrary supports Husson's position that it acted reasonably. Only after Husson's PPP loan had been funded did the SBA issue guidance. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020. Emphasis added.

Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended). See Brief at Exhibit C. Clearly, many institutions of higher education struggled with the calculation basis under the April 2, 2020, Interim Final Rule because on May 8, 2020, the SBA issued another Interim Final Rule specifically addressing this issue. See May 8, 2020, Interim Final Rule. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020 . On May 8, 2020, an Interim Final Rule was issued by the SBA explaining that Federal Work Study student employees could be excluded for the loan eligibility count of 500 employees. Id. Most importantly, the May 8, 2020, Interim Final Rule stated: "Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process." Id. Emphasis added. Based upon Husson's reasonable interpretation of the calculation, and the SBA's indication that it would use an FTE approach for calculating and comparing employee counts during the protection period and the base period, Husson used the ACA definition of FTE (30 hours = 1 FTE), which the Lender concurred was a reasonable approach. Husson then calculated its FTEs under this basis and included all students. The result was 492 employees under this method, including approximately 50 FTE student employees. Husson met the eligibility requirement of having no greater than 500 employees."[3]

---

[3] Appellant's Supplement to Appeal Brief.

On April 2, 2020, the U.S. Small Business Administration (SBA) posted an interim final rule announcing the implementation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). This Rule was in affect at the time of the Appellant's loan application. [4] The CARES Act temporarily adds a new program, titled the ''Paycheck Protection Program,'' to the SBA's 7(a) Loan Program. The CARES Act also provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP). The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID–19). SBA posted additional interim final rules on April 3, 2020, April 14, 2020, April 24, 2020, April 28, 2020, and April 30, 2020, and the Department of the Treasury posted an additional interim final rule on April 28, 2020. This interim final rule supplements the previously posted interim final rules by providing guidance on nondiscrimination obligations and additional eligibility requirements, and requests public comment. The IFR specifically states that, "In addition, as described below, to enable certain eligible small educational institutions to participate in PPP, this interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[5]

The Appellant is identified by NAICS Code: Colleges, Universities, and Professional Schools (611310) and is a nonprofit higher education institution.  A nonprofit organization means a 501(c)(3). In the IFR, III. Paycheck Protection Program Nondiscrimination and Additional Eligibility Criteria,

> **"2. Student Workers and PPP Loan Eligibility**
>  Do student workers count when determining the number of employees for PPP loan eligibility?
>
> Yes, student workers generally count as employees, unless (a) the applicant is an institution of higher education, as defined in the Department of Education's Federal Work-Study regulations, 34 675.2, and (b) the student worker's services are performed as part of a Federal Work-Study Program (as defined in those regulations1) or a substantially similar program of a State or political subdivision thereof. Institutions of higher education must exclude work study students when determining the number of employees for PPP loan eligibility and must also exclude payroll costs for work study students from the calculation of payroll costs used to determine their PPP loan amount.

---

[4] 13 CFR Parts 113 and 120.
[5] Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

JA0452

The Administrator, in consultation with the Secretary, has determined that this is a reasonable interpretation of section 1102(a) of the CARES Act's reference to "individuals employed on a full-time, part-time, or other basis." Such programs generally provide part- time jobs for students with financial need, and their services are incident to and for the purpose of pursuing a course of study. Work study students are excluded from the definition of employees in other areas of federal law. For example, in the regulations implementing the Affordable Care Act, Treasury defined an employee's "hours of service" to exclude work study hours.2 Explaining this exclusion, the regulation's preamble states that "[t]he federal work study program, as a federally subsidized financial aid program, is distinct from traditional employment in that its primary purpose is to advance education."3 Similarly, student work is generally exempt from Federal Insurance Contribution Act (FICA) and Federal Unemployment taxes.

For similar reasons, the Administrator, in consultation with the Secretary of the Treasury, has determined that a limited exception for work study is appropriate here. In particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process."6

The SBA argues that Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020; CARES Act §1102, 134 Stat. at 287 (codified 15 U.S.C. §636(a)(36)(B)). The First IFR, which was available to Lender and Appellant on SBA's website before Appellant submitted its PPP loan application, tracked the CARES Act eligibility language, and advised all PPP lenders and applicants of the basic PPP eligibility criteria. Under the "Am I eligible?" section of the First IFR, it provided that "[y]ou are eligible for a PPP loan if you have 500 or

---

6 Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

JA0453

fewer employees ...or are a business that operates in a certain industry and meet the applicable SBA employee-based size standard for that industry ..." SBA's regulations at 13 CFR § 121.106 captioned "How does SBA calculate number of employees?" states, in pertinent part, "In determining a concerns number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis" and "Where the size standard is number of employees, the method for determining a concern's size included the following principles: ... Part-time and temporary employees are counted the same as full-time employees." (Emphasis added) 13 CFR § 121.106 (a) and (b)(2).

The SBA further argues that pursuant to the SBA's PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs),

> **36.Question**: To determine borrower eligibility under the 500-employee or other applicable threshold for First Draw PPP Loans, or the 300-employee threshold for Second Draw PPP Loans established by the Economic Aid Act, must a borrower count all employees or only full-time equivalent employees? (Question 36 published April 26, 2020, and revised March 3, 2021, to reflect the interim final rule for Second Draw PPP Loans).

> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees.  By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

The SBA calculates number of employees in accordance with 13 CFR 121.106. Employee calculation: This is the average number of people employed for each pay period over the business's latest 12 calendar months. Any person on the payroll must be included as one employee, regardless of hours worked or temporary status. The number of employees of a concern in business less than 12 months is the average for each pay period that it has been in business.[7]

The Appellant does not dispute that it does not qualify as a PPP eligible small business under the total head count method, however the argument relies on the fact that Question 36 that

---

[7] 13 CFR 121.106.

JA0454

offered additional guidance on PPP loan was published after their PPP loan application and loan disbursement. The Appellant argues they used full-time equivalent (FTE) and did not include Federal Work Study employees to determine "employee" amount for the PPP loan application and subsequent loan forgiveness application. Pursuant to Interim Final Rule 13 CFR 120, 85 FR 33004:

> **What does "full-time equivalent employee" mean?** Full-time equivalent employee means an employee who works 40 hours or more, on average, each week. The hours of employees who work less than 40 hours are calculated as proportions of a single full-time equivalent employee and aggregated, as explained further below in subsection d.
>
> The CARES Act does not define the term "full-time equivalent employee," and the Administrator, in consultation with the Secretary, has determined that full-time equivalent is best understood to mean 40 hours or more of work each week. The Administrator considered using a 30-hour standard but determined that 40 hours or more of work each week better reflects what constitutes full-time employment for the vast majority of American workers.

**d. How should a borrower calculate its number of full-time equivalent (FTE) employees?**

Borrowers seeking forgiveness must document their average number of FTE employees during the covered period (or the alternative payroll covered period) and their selected reference period. For purposes of this calculation, borrowers must divide the average number of hours paid for each employee per week by 40, capping this quotient at 1.0. For example, an employee who was paid 48 hours per week during the covered period would be considered to be an FTE employee of 1.0.

For employees who were paid for less than 40 hours per week, borrowers may choose to calculate the full-time equivalency in one of two ways. First, the borrower may calculate the average number of hours a part-time employee was paid per week during the covered period. For example, if an employee was paid for 30 hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.75. Similarly, if an employee was paid for ten hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.25. Second, for administrative convenience, borrowers may elect to use a full-time equivalency of 0.5 for each part-time employee. The Administrator recognizes that not all borrowers maintain hours-worked data, and has decided to afford such borrowers this flexibility in calculating the full-time equivalency of their part-time employees.

Borrowers may select only one of these two methods, and must apply that method consistently to all of their part-time employees for the covered period or the alternative payroll covered period and the selected reference period. In either case,

11

the borrower shall provide the aggregate total of FTE employees for both the selected reference period and the covered period, or the alternative payroll covered period, by adding together all of the employee-level FTE employee calculations. The borrower must then divide the average FTE employees during the covered period, or the alternative payroll covered period by the average FTE employees during the selected reference period, resulting in the reduction quotient.

Given that this guidance was provided at the time of the Appellant's loan application it is reasonable way of calculating number of employees for the PPP loan application and loan forgiveness. The SBA's citation of the PPP FAQs was posted after the Appellant's loan application and approval. Appellant was allowed to exclude Federal Work Study employees from there total employee count. The SBA clearly meant to provide an exception to the general rule as the IFR states "to enable certain eligible small educational institutions to participate in the PPP, the interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[8]

On July 08, 2022, the SBA published an update to the SBA PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs). Pursuant to the updated FAQs The Small Business Administration (SBA), in consultation with the Department of the Treasury, intends to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), including both First Draw PPP Loans and Second Draw PPP Loans. This document will be updated on a regular basis. Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (as amended), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")(link). The U.S. government will not challenge lender PPP actions that conform to this guidance, and to the PPP Interim Final Rules and any subsequent rulemaking in effect at the time the lender's action is taken.

Question 71: Are 501(c)(3) nonprofit organizations with more than 500 employees eligible for PPP Loan Forgiveness?

Answer: Section 7(a)(36)(A)(vii) of the Small Business Act (15 U.S.C. 636(a)(36)(A)(vii)) (as added by section 1102(a)(2) of the CARES Act) defines the term "nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt

---

[8] Federal Register Vol. 85, No. 90 at 27288 (May 8, 2020).

JA0456

from taxation under section 501(a) of such Code" (501(c)(3) nonprofit organizations). In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. The American Rescue Plan Act (ARPA), enacted on March 11, 2021, increased the size eligibility standard for 501(c)(3) nonprofit organizations for First Draw PPP Loans from a total of 500 or fewer employees to no more than 500 employees per physical location of the 501(c)(3) nonprofit organization. On March 22, 2021, SBA published an Interim Final Rule implementing the provisions of ARPA applicable to PPP (86 FR 15083) (ARPA IFR). On May 31, 2022, the SBA Office of Hearings and Appeals (OHA) issued an Initial Decision in the Appeal of Lawndale Christian Health Center, Docket No. PPP-5819168004. In that Initial Decision, the Administrative Law Judge determined that because the applicability date set forth by SBA in the ARPA IFR stated that the ARPA changes to PPP apply to "loans approved, and loan forgiveness applications submitted, on or after March 11, 2021 ," 501(c)(3) nonprofit organizations that received a First Draw PPP Loan before March 11, 2021, but applied for forgiveness on or after March 11, 2021, are entitled to forgiveness of their First Draw PPP Loan if they meet the ARPA increased size eligibility standard. The Final Rule on Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program published by SBA on September 16, 2021 (86 FR 51589) provides that initial decisions rendered by OHA are not precedential. The Administrator has reviewed the OHA decision issued in the Appeal of Lawndale Christian Health Center. Based on the OHA decision and the exercise of her broad discretion under Section 5(b)(7) of the Small Business Act (15 U.S.C. 634(b)(7)), the Administrator has determined that any 501(c)(3) nonprofit organization that received a loan before March 11, 2021, but submits a forgiveness application on or after March 11, 2021, will be eligible for forgiveness on the basis that they have more than 500 employees in multiple physical locations. As a result, a 501(c)(3) nonprofit organization that submits a forgiveness application on or after March 11, 2021, is eligible for forgiveness if the 501(c)(3) nonprofit organization meets the ARPA increased size eligibility standard and has otherwise complied with all applicable PPP rules. [9]

In support of its appeal Appellant additionally points to the detrimental reliance on an email exchange between an SBA employee that reassured the Appellant that additional

[9] Question 71 published July 8, 2022. PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs) .

JA0457

guidance on PPP loans would not alter the terms of the Appellant's PPP Loan that was dispersed prior to the regulation going into effect. Shortly after the Appellant's loan application there was an email exchange between Robert Clark, President of Husson University and Keith Lind, Public Affairs Specialist, Main District Office, U.S. Small Business Administration. Appellant emailed on May 13, 2020, at 1:50 PM stating:

> "In reading the guidance for higher education institutions it would seem that use of the FTE that was in effect and approved by our lender prior to the May updates would allow use of the Affordable Care adjustments under Federal Law, which is under the rationale for excluding work study students. This is the approach that Husson followed to determine its employee eligibility and was approved by both our lender and the SBA. I just wanted to verify that this process was still valid after the newer guidance came forward. I appreciate your assistance. Bob Clark" (AR at 8576).

The response to the email from Keith Lind to Robert Clark at 3:37PM as follows:

> "Hi Bob, I can confirm that since Husson's application was made prior to the new guidance being issued, the new guidelines will not impact the terms for your loan" (AR at 8576).

The SBA argues in its Brief in Response to Order Extending Time to File the Administrative Record and For Parties to File Briefs that:

> "OHA should disregard Appellant's argument on this point because that email exchange is not the type of document required in the Record. 13 C.F.R. § 134.1207(b). Section 134.1207(b) defines the contents of the Record as "relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision." Id. That email exchange was not relevant and was not before SBA when it made the final loan review decision. SBA did not consider it when it made the final loan review decision. Therefore, it is not a required part of the Record, and argument should be unavailing." [10]

The Administrative Judge disagrees with SBA's assertion that the email exchange is neither relevant nor should it be considered. Though the email is not required, it is a part of the Administrative Record (AR at 8576-8577) and is directly relevant to the issue at bar.  It is reasonable that given the uncertainty regarding the PPP loan program and the regulations that the Appellant would reach out for further guidance from the U.S. department administering the loans. The IFR specifically states, "SBA may provide further guidance, if

---

[10] SBA's Brief in Response to Order Extending Time To File The Administrative Record And For Parties To File Briefs (*Portal Docket #27 uploaded May 27, 2022*).

JA0458

needed, through SBA notices that will be posted on SBA's website at www.sba.gov. Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office. The local SBA Field Office may be found at https://www.sba.gov/tools/ local-assistance/district offices." Here, the Appellant reached out to the local SBA field office and was given assurance for which it relied albeit subsequent to the loan application.

There can be little dispute that the need for expeditious legislative and regulatory action during the pandemic height, created a chaotic rush to issue guidance in applying for PPP loans. The rapid fire C.F.R. interim changes were needed but certainly caused more than a little confusion on the part of potential borrowers. Thus, while the Appellant's attempt to seek clarity in its application for a PPP loan is not dispositive of the appeal, it certainly aids their position and early interpretation.

The Appellant has the burden of proving that the final SBA loan review decision is based upon a clear error of fact or law. The record demonstrates SBA has not properly applied the applicable laws, regulations, and policy when denying Appellant's application. Specifically, the SBA did not consider the exception for higher education's ability to exclude work study students and the employee calculation provided by the Appellant when determining the number of employees for PPP loan eligibility. Additionally, the SBA failed to consider the FTE calculation when determining the Appellant's PPP eligibility. I find the reasoning illustrated in the IFR for providing such exceptions to higher education compelling, in particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Here, the record clearly demonstrates that its Part-time student employees far outweigh its full-time employees.

In the course of this appeal the Administrative Judge specifically directed the Appellant to break down the list of part time employees by work hours. The Administrative Judge did this in order to ascertain how many of these "employees" were working minimal hours. Though it has been many decades since the undersigned has been in undergraduate or law school, his experience suggested that most of these "employees" were students being assisted with their financial needs. The response from the Appellant demonstrated that the majority of its part-time student employees work less than ten (10) hours per week and fell into this category. It would be contrary to the intent of the PPP loan program and the administrator to penalize the Appellant for the part-time staff that "dwarfs their full-time

15

faculty and staff headcounts." Furthermore, the additional guidance in the SBA PPP FAQS published July 08, 2022, regarding nonprofits, was not available to the SBA at the time they made its Final Loan Review Decision. I therefore find the final SBA loan review decision is based on a clear error of fact or law. I hereby GRANT the Appellant's appeal and REVERSE the SBA final loan review decision.

<div align="center">

IV.   **<u>Standard of Review</u>**

</div>

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

<div align="center">

V.   **<u>Conclusion</u>**

</div>

Appellant, Husson University, has established that the final SBA loan review decision was based on a clear error of law or fact.  I therefore **GRANT** the appeal and **REVERSE** the final SBA loan review decision. It is **HEREBY ORDERED** Husson's University Paycheck Protection Program loan of $ 5,965,000.00 is forgiven in full. The SBA is directed to issue a new final loan review decision providing the terms of this order.

 This is an initial agency decision. However, unless a request for reconsideration is filed within 10 calendar days pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

_James M. Caulfield_

JAMES M CAULFIELD
Administrative Judge

<div align="center">16</div>

JA0460

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GORDON COLLEGE<br>  255 Grapevine Road<br>  Wenham, MA 01984-1899, | ) ) ) ) ) | Case No. 1:23-cv-614-BAH |
|     *Petitioner / Plaintiff*, | ) ) | |
| v. | ) ) | |
| UNITED STATES SMALL BUSINESS<br>ADMINISTRATION; ISABELLA CASILLAS<br>GUZMAN, *in her Official Capacity as*<br>*Administrator of the Small Business*<br>*Administration*; *and* THE UNITED STATES OF<br>AMERICA, | ) ) ) ) ) ) | |
|     *Respondents / Defendants*. | ) ) ) | |

### FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT 17

JA0461

SUSAN M. COLLINS
MAINE

413 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510–1904
(202) 224–2523
(202) 224–2693 (FAX)

# United States Senate
### WASHINGTON, DC 20510–1904

COMMITTEES:
APPROPRIATIONS
HEALTH, EDUCATION,
LABOR, AND PENSIONS
SELECT COMMITTEE
ON INTELLIGENCE
SPECIAL COMMITTEE
ON AGING

November 1, 2022

The Honorable Isabella Casillas Guzman
Administrator
Small Business Administration
409 3rd Street SW
Washington, DC 20416-0005

Dear Administrator Guzman:

I am writing on behalf of Husson University, a small, nonprofit university in Bangor, Maine, with a request for assistance regarding the University's Paycheck Protection Program (PPP) loan.

It has come to my attention that Husson University received a PPP loan to keep employees on payroll during the COVID-19 pandemic state of emergency and subsequently applied for loan forgiveness. In its final review of the loan, the SBA denied Husson's application for forgiveness based on its revised assessment of Husson's eligibility, a determination that an Administrative Law Judge recently reversed. I understand that that the SBA has chosen to appeal this decision and is seeking to recover $5.965 million from Husson. This would impose a significant financial hardship on this small, nonprofit institution of higher education. I have also been made aware of the disparate treatment that Husson is receiving as compared to other similarly situated institutions of higher education that received PPP loan forgiveness.

I co-authored the Paycheck Protection Program, which was vital to helping small employers stay afloat during the COVID-19 pandemic. The law was intended to help a broad array of borrowers, including nonprofits, many of whom, like Husson, had not worked with the SBA before. In developing its PPP application, the University worked with a lender, reviewed available SBA guidance, kept abreast of updates on the SBA website, including Frequently Asked Questions (FAQ), and sought guidance from the Maine District SBA office.

When the SBA issued an interim final rule regarding PPP eligibility on April 2, 2020, University officials spoke with their lender and consulted other industry resources to determine how to qualify for the program and obtain additional information about the program's terms. They explained the unique nature of employment contracts at small nonprofit institutions of higher education, where it is common for the institution to employ a large number of adjunct staff who may work for only a few hours each week. In fact, it is my understanding that 86% of Husson's part-time employees work five or fewer hours per week. Thus, the University asked whether it would be appropriate to calculate the number of employees using the Full Time Equivalent (FTE) calculation established by the Affordable Care Act of 30 hours to one employee, or if the number of employees should be based on headcount. Based on professional advice, and in the absence of any SBA guidance regarding the employee counting procedure,

The Honorable Isabel Guzman
November 1, 2022
Page 2 of 3

Husson determined that using the FTE calculation was a reasonable approach, and the application was prepared and submitted on April 6, 2020.

As you know, during the same time period, the SBA revised its PPP application form; Husson re-signed and submitted a PPP application on April 8, 2020, and the lender submitted it to the SBA on April 13, 2020. Page two of this application (Form 2483), effective April 2, 2020, required the applicant to certify the number of full time equivalent employees. The application was approved the following day, and Husson University closed on the loan on April 23, 2020.

Shortly thereafter, on May 6, 2020, officials at Husson learned of the SBA FAQ, which included Question #36, clarifying that FTE should not be used to calculate the number of employees. Question 36 was published on April 26, 2020.

On May 8, another interim final rule was issued by SBA, further addressing the proper way to calculate employee count for institutions of higher education by clarifying that work study students should not be included in the count. SBA issued several additional final rules and FAQs to clarify the program terms.

Husson also sought assistance from me in navigating the PPP eligibility requirements. On April 13, 2020, I wrote to Treasury Secretary Mnuchin and SBA Administrator Carranza to bring to their attention the unique employment situation faced by institutions of higher education, specifically with respect to FTE methodology and work-study students. I encouraged the Treasury Department and SBA to adopt a sensible FTE methodology for higher education applicants and to exempt student workers from the employee counts. On May 12, 2020, Frederick Vaughn, the Principal Deputy Assistant Secretary for Legislative Affairs at the Treasury Department, replied to my letter and stated that institutions of higher education must exclude work study students from their employee counts. The letter pointed to additional documents on the Department's website for guidance, but did not indicate any further clarifications to FTE for institutions of higher education.

Husson University President Robert Clark has also alerted me to correspondence that he received from the SBA pertaining to its PPP eligibility. On May 13, President Clark emailed Keith Lind, Public Affairs Specialist at the Maine District Office of the US Small Business Administration, regarding Husson's loan. President Clark wrote,

> In reading the guidance for higher education institutions, it would seem that use of the FTE that was in effect and approved by our lender prior to the May updates would allow use of the Affordable Care Act adjustments under Federal Law, which is under the rationale for excluding work study students. This is the approach that Husson followed to determine its employee eligibility and was approved by both our lender and the SBA. I just wanted to verify that this process was still valid after the newer guidance came forward. I appreciate your assistance.

President Clark received a response from SBA Public Affairs Specialist Keith Lind the same day, which stated, "I can confirm that since Husson's application was made prior to the new guidance being issued, the new guidelines will not impact the terms for your loan." A

The Honorable Isabel Guzman
November 1, 2022
Page 3 of 3

reasonable person would interpret this to mean that Husson's loan would not be affected by any guidance issued after the application had been filed, and Husson relied upon this information provided to them by the agency. Therefore, officials at Husson were surprised and dismayed to learn that their loan would not be forgiven, based on the April 26 FAQ guidance that the FTE should not be used to calculate the number of employees.

I, too, was alarmed by this decision, particularly when I learned that more than 20 other institutions of higher education of similar size that borrowed similar amounts from the PPP program, were successful in having their loans forgiven. As officials at Husson have continued to seek resolution to this matter and forgiveness of Husson's PPP loan, they have reviewed data regarding PPP loans taken out by other institutions of higher education. They provided the enclosed charts, which include both the number of employees reported on each institution's PPP loan application and the number of employees by headcount reported by each of these institutions to the Internal Revenue Service in the three years leading up to the PPP loan applications. PPP loan application data were obtained from publicly available sources on the SBA website. Data reported to the IRS were also publicly available through the Guidestar.org database of IRS Form 990s for the pertinent institutions. These data show a significant discrepancy between the number of employees reported on the PPP application and the IRS 990 form; the data seem to suggest that other institutions of higher education also used the FTE methodology to calculate the number of employees for purposes of applying for PPP and their loans were forgiven, though the number by headcount is in many cases greater than the number of employees by headcount at Husson.

Husson clearly sought advice from officials at the SBA after becoming aware of the guidance regarding the calculation of number of employees, which was issued after the application had been filed and the loan was disbursed. It then relied upon the response received from the SBA District office, a decision that SBA is now attempting to use against it. SBA also appears to be treating Husson differently than other similarly situated institutions of higher education that have applied for PPP loan forgiveness. I am writing to ask that the SBA carefully review this matter and provide any appropriate assistance to ensure that Husson's concerns are addressed, consistent with applicable laws, rules, and regulations.

Thank you for your consideration of this serious issue. If you have any questions, or need additional information, please do not hesitate to contact Carol Woodcock in my Bangor office at (207) 945-0417. I look forward to your response.

Sincerely,

*Susan M. Collins*

Susan M. Collins
United States Senator

CC:      Ms. Diane Sturgeon
         Maine District Director
         U.S. Small Business Administration

Enclosures.

JA0464



SUSAN M. COLLINS
MAINE

413 DIRKSEN SENATE OFFICE BUILDING
WASHINGTON, DC 20510–1904
(202) 224–2523
(202) 224–2693 (FAX)

**United States Senate**

WASHINGTON, DC 20510–1904

COMMITTEES:
SPECIAL COMMITTEE
ON AGING, CHAIRMAN
APPROPRIATIONS
HEALTH, EDUCATION,
LABOR, AND PENSIONS
SELECT COMMITTEE
ON INTELLIGENCE

April 16, 2020

The Honorable Steven T. Mnuchin
Secretary
U.S. Treasury Department
1500 Pennsylvania Avenue, NW
Washington, DC  20220

The Honorable Jovita Carranza
Administrator
Small Business Administration
409 3rd Street, SW
Washington, DC  20416

Dear Secretary Mnuchin and Administrator Carranza:

As you implement the provisions of the Paycheck Protection Program (PPP) established by the *Coronavirus Aid, Relief, and Economic Security (CARES) Act,* I encourage you to use the flexibility provided by the law to adopt a sensible full-time equivalent (FTE) methodology for purposes of determining eligibility under the PPP.  As such, I also encourage you to exempt student workers from the employee counts for institutions of higher education (IHEs).

In addition to educating the nation's future workforce, small colleges and universities are significant employers in their local communities. While these institutions adjust to limiting in-person access to their campuses, many are seeking assistance with supporting their workforce. Several small IHEs are interested in accessing financing through the PPP, but there is uncertainty about whether the 500-employee eligibility cap includes their student workers. Among similarly sized institutions, counting student employees within the eligibility cap may exclude some, but not others, from qualifying for these programs.

The student workforce is a unique population.  On-campus employment helps students pay for tuition, books, transportation, and other expenses, while keeping them on track to earning their degrees.  Students work often just a few hours a week, and many receive compensation through the Federal Work Study Program. The IRS and Treasury have observed the primary educational purpose of the Federal Work Study Program, and have excluded these students from the full-time employee count of the federal health insurance mandate.  Similarly, the Department of Education's Integrated Postsecondary Education Data System excludes undergraduate and work-study students from its employee count survey for IHEs.  Likewise, I encourage you to adopt a sensible means of determining workers for headcount purposes among IHE applicants for the PPP by excluding students.

Supporting colleges and universities, including in their roles as employers, is essential during this pandemic crisis. Thank you for your attention to this matter.

Sincerely,

*Susan M Collins*

Susan M. Collins
United States Senator



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

May 12, 2020

The Honorable Susan M. Collins
United States Senate
Washington, DC 20510

Dear Senator Collins:

I write in reply to your April 16, 2020 letter regarding full-time-equivalent methodology and student worker treatment in the Paycheck Protection Program (PPP) established under the Coronavirus Aid, Relief, and Economic Security Act and extended by the PPP and Health Care Enhancement Act.

The Secretary shares your interest in making the PPP available to as many of America's job creators and their employees as feasible. Treasury has posted to its website a series of documents, including interim final rules that implement the PPP, a set of frequently asked questions, fact sheets, and other documents to address specific lender and borrower questions about eligibility and the application process, among other topics.[1] This includes an interim final rule posted on May 5, 2020, which provided that institutions of higher education must exclude work study students when determining the number of employees for purposes of PPP loan eligibility to enable certain eligible small educational institutions to participate in the program. Treasury will continue to provide further guidance, as appropriate, to help small businesses and other eligible borrowers get the assistance they need.

If you have further questions, please direct your staff to contact the Office of Legislative Affairs.

Sincerely,

Frederick W. Vaughan
Principal Deputy Assistant Secretary
Office of Legislative Affairs

cc:     The Honorable Jovita Carranza

---

[1] *See* https://home.treasury.gov/policy-issues/top-priorities/cares-act/assistance-for-small-businesses.

| LoanNumber | DateApproved | BorrowerName | InitialApprovalAmount | JobsReported | ForgivenessAmount | ForgivenessDate |
|---|---|---|---|---|---|---|
| 3537677109 | 4/11/2020 | UNIVERSITY OF DALLAS | 5,820,700 | 424 | 5,879,704 | 4/23/2021 |
| 6489537405 | 5/14/2020 | VANGUARD UNIVERSITY OF SOUTHERN CALIFORNIA | 5,035,859 | 484 | 5,086,494 | 5/21/2021 |
| 1348027202 | 4/15/2020 | UNIVERSITY OF SAINT FRANCIS | 5,158,000 | 468 | 5,210,993 | 5/13/2021 |
| 9067147900 | 6/19/2020 | ALBION COLLEGE | 6,007,597 | 498 | 6,065,862 | 6/16/2021 |
| 1191027105 | 4/10/2020 | CENTRE COLLEGE OF KENTUCKY | 5,154,500 | 470 | 5,216,068 | 6/28/2021 |
| 5682607704 | 5/1/2020 | ST MARY'S COLLEGE OF MARYLAND | 6,661,697 | 450 | 6,735,249 | 6/11/2021 |
| 7255677109 | 4/14/2020 | TREVECCA NAZARENE UNIVERSITY | 5,837,800 | 461 | 5,904,975 | 6/15/2021 |
| 7150427206 | 4/28/2020 | ALVERNIA UNIVERSITY | 5,302,315 | 395 | 5,990,306 | 6/24/2021 |
| 8796348108 | 7/27/2020 | DREW UNIVERSITY | 7,039,103 | 471 | 7,098,544 | 6/11/2021 |
| 5877627002 | 4/6/2020 | ASA COLLEGE, INC. | 5,624,000 | 415 | 5,688,560 | 6/15/2021 |
| 8710977102 | 4/15/2020 | CALIFORNIA NORTHSTATE UNIVERSITY, LLC | 5,373,965 | 280 | 4,122,306 | 6/9/2021 |
| 9753097005 | 4/9/2020 | CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE | 5,520,000 | 450 | 5,585,167 | 6/17/2021 |
| 4895567410 | 5/11/2020 | LENOIR-RHYNE UNIVERISTY | 5,043,003 | 400 | 5,099,597 | 6/24/2021 |
| 4112937201 | 4/27/2020 | FRANCISCAN UNIVERSITY OF STEUBENVILLE | 6,650,000 | 498 | 6,729,800 | 7/15/2021 |
| 4336707103 | 4/13/2020 | JOHNSON C SMITH UNIVERSITY | 5,231,800 | 315 | 5,295,163 | 7/1/2021 |
| 1636537109 | 4/10/2020 | THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART | 6,562,500 | 427 | 6,651,108 | 8/20/2021 |
| 4179517710 | 5/1/2020 | WHEATON COLLEGE-SBA SMALL 7A TERM | 6,500,042 | 465 | 6,583,640 | 8/16/2021 |
| 3949557104 | 4/12/2020 | BENNINGTON COLLEGE CORPORATION | 5,945,442 | 370 | 6,023,559 | 8/10/2021 |
| 6685747210 | 4/28/2020 | ROCKHURST UNIVERSITY | 5,475,039 | 488 | 5,550,017 | 9/13/2021 |
| 9001567110 | 4/15/2020 | MILLS COLLEGE | 6,559,200 | 431 | 6,652,646 | 9/28/2021 |
| 5582417001 | 4/5/2020 | OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO | 6,604,600 | 455 | 6,694,679 | 8/20/2021 |
| 2885397208 | 4/16/2020 | THE CORPORATION OF SAINT MARY'S COLLEGE NOTRE DAME | 6,008,100 | 417 | 6,096,219 | 10/5/2021 |
| 7130567107 | 4/14/2020 | ALLEGHENY COLLEGE | 5,485,500 | 496 | 5,574,335 | 11/26/2021 |
| 3800297209 | 4/27/2020 | HOUSTON BAPTIST UNIVERSITY | 6,800,000 | 485 | 6,543,335 | 12/7/2021 |
| 2643697103 | 4/11/2020 | ASSUMPTION COLLEGE | 7,500,000 | 429 | 7,632,708 | 1/24/2022 |
| 7984257101 | 4/14/2020 | ST. FRANCIS COLLEGE | 5,516,670 | 462 | 5,615,204 | 1/28/2022 |
| 8289087101 | 4/15/2020 | GORDON COLLEGE | 7,046,037 | 496 | | |
| 8290497103 | 4/15/2020 | WESTMINSTER COLLEGE | 6,762,900 | 434 | 6,288,489 | 7/7/2021 |
| 3607897210 | 4/27/2020 | GOLDEN GATE UNIVERSITY | 6,743,500 | 354 | 6,554,037 | 2/2/2022 |
| 3951297402 | 5/8/2020 | MARYMOUNT MANHATTAN COLLEGE | 6,555,592 | 482 | 6,197,697 | 8/27/2021 |
| 5931527107 | 4/14/2020 | HUSSON UNIVERSITY | 5,965,000 | 492 | | |
| 5416657106 | 4/13/2020 | MARIETTA COLLEGE | 5,935,000 | 419 | 5,366,857 | 11/16/2021 |
| 4924879009 | 5/21/2021 | MANHATTANVILLE COLLEGE | 5,892,442 | 483 | 5,939,259 | 3/15/2022 |
| 5501498205 | 8/7/2020 | LA SIERRA UNIVERSITY | 5,642,900 | 308 | | |

| EntityName | #employees 2018 | #employees 2019 | #employees 2020 | Average |
|---|---|---|---|---|
| WHEATON COLLEGE-SBA SMALL 7A TERM | 1,765 | 1,792 | 1,829 | 1,795 |
| LENOIR-RHYNE UNIVERISTY | 1,311 | 1,325 | 1,390 | 1,342 |
| GWYNEDD MERCY UNIVERSITY | 1,187 | 1,214 | 1,224 | 1,208 |
| WAYLAND BAPTIST UNIVERSITY | 1,324 | 1,517 | 1,385 | 1,409 |
| OUR LADY OF THE LAKE UNIVERSITY OF SAN ANTONIO | 1,322 | 1,295 | 1,294 | 1,304 |
| JOHNSON C SMITH UNIVERSITY | 875 | 823 | 420 | 706 |
| GOLDEN GATE UNIVERSITY | 996 | 1,006 | 973 | 992 |
| MARYMOUNT MANHATTAN COLLEGE | 1,548 | 1,255 | 1,361 | 1,388 |
| BENNINGTON COLLEGE CORPORATION | 1,060 | 1,107 | 1,084 | 1,084 |
| THE CORPORATION OF SAINT MARY'S COLLEGE NOTRE DAME | 1,559 | 1,517 | 1,529 | 1,535 |
| MARIETTA COLLEGE | 1,094 | 1,110 | 1,151 | 1,118 |
| UNIVERSITY OF DALLAS | 1,368 | 1,405 | 1,453 | 1,409 |
| THE COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART | 1,064 | 1,059 | 1,075 | 1,066 |
| ASSUMPTION COLLEGE | 1,361 | 1,278 | 1,288 | 1,309 |
| MILLS COLLEGE | 1,402 | 1,354 | 1,330 | 1,362 |
| WESTMINSTER COLLEGE | 1,819 | 1,806 | 1,698 | 1,774 |
| CHARLES R. DREW UNIVERSITY OF MEDICINE AND SCIENCE | 573 | 570 | 550 | 564 |
| TREVECCA NAZARENE UNIVERSITY | 1,269 | 1,306 | 1,260 | 1,278 |
| ST. FRANCIS COLLEGE | 604 | 618 | 597 | 606 |
| UNIVERSITY OF SAINT FRANCIS | 1,193 | 1,175 | 1,149 | 1,172 |
| CENTRE COLLEGE OF KENTUCKY | 1,460 | 1,465 | 1,432 | 1,452 |
| DELAWARE VALLEY UNIVERSITY | 1,545 | 1,668 | 1,437 | 1,550 |
| ROCKHURST UNIVERSITY | 1,214 | 1,200 | 1,143 | 1,186 |
| HUSSON UNIVERSITY | 1,491 | 1,503 | 1,484 | 1,493 |
| ALBION COLLEGE | 1,571 | 1,555 | 1,522 | 1,549 |
| FRANCISCAN UNIVERSITY OF STEUBENVILLE | 2,140 | 2,192 | 2,178 | 2,170 |
| VANGUARD UNIVERSITY OF SOUTHERN CALIFORNIA | 1,086 | 1,123 | 1,112 | 1,107 |
| ALLEGHENY COLLEGE | 2,022 | 1,920 | 1,811 | 1,918 |
| ST MARY'S COLLEGE OF MARYLAND | 1,559 | 1,517 | 1,529 | 1,535 |
| DREW UNIVERSITY | 1,676 | 1,316 | 1,721 | 1,571 |
| HOUSTON BAPTIST UNIVERSITY | 1,124 | 1,215 | 1,243 | 1,194 |
| LA SIERRA UNIVERSITY | 1,578 | 1,519 | 1,238 | 1,445 |
| GORDON COLLEGE | 950 | 852 | 867 | 890 |
| | | | | |

JA0468

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GORDON COLLEGE | ) | |
|   255 Grapevine Road | ) | Case No. 1:23-cv-614-BAH |
|   Wenham, MA 01984-1899, | ) | |
| | ) | |
| | ) | |
|     *Petitioner / Plaintiff,* | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION; ISABELLA CASILLAS | ) | |
| GUZMAN, *in her Official Capacity as* | ) | |
| *Administrator of the Small Business* | ) | |
| *Administration; and* THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
|     *Respondents / Defendants.* | ) | |
| | ) | |
| | ) | |

**FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# EXHIBIT 18

JA0469

**United States Small Business Administration**
**Office of Hearings and Appeals**

PETITION FOR RECONSIDERATION:

SMALL BUSINESS ASSOCIATION

      Petitioner

Appealed from
SBA PPP Loan Number: 5931527107

Issued: February 7, 2023

Decision No. PPP- 5931527107

**APPEARANCES**

**Janna Gau, Esquire**, Counsel for the Appellant

**Mark O'Brien, Esquire**, Counsel for the Small Business Administration

**DECISION**

I.    **Introduction and Jurisdiction**

On December 28, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Husson University (Appellant) was ineligible for its PPP loan. On January 26, 2022, Appellant filed an appeal from that final SBA loan review decision. Appellant argued that the Final SBA Loan Review Decision was clearly erroneous, and requested that OHA reverse it, and find Appellant was eligible for full PPP loan forgiveness in the amount of $5,965,000.00. On August 4, 2022 the undersigned issued a decision in the appeal Reversing the SBA loan review decision and granting the Appellant full forgiveness of their PPP loan. On August 15, 2022 counsel for the SBA filed the instant Petition for Reconsideration of that decision. My decision of August 4, 2022 is incorporated in this decision on the instant Petition for Reconsideration as if fully written herein. For the reasons discussed in my decision of August 4, 2022, I AFFIRM that initial decision REVERSING the SBA loan review decision and granting the Appellant full forgiveness of their PPP loan.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

1

JA0470

## II. **Background**

On April 08, 2020, Appellant, Husson University applied for a PPP Loan with the SBA certified lender, Bangor Savings Bank (Lender). The loan was approved and on April 23, 2020, SBA disbursed a PPP loan of $ 5,965,000.00 to Appellant through Lender. On July 16, 2021, Appellant filed an application for PPP loan forgiveness.

### A. **Final SBA Review Decision**

On December 28, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan it received and therefore was not eligible for PPP loan forgiveness. Specifically, the SBA found after review of the documentation provided, that the Borrower business, or the Borrower together with its affiliates, exceeded the maximum allowable number of employees and the SBA small business size standards. SBA determined that forgiveness in the amount of $0.00 was appropriate.

### B. **Appeal**

On January 26, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision was clearly erroneous and requested the Office of Hearings and Appeals (OHA) to reverse that decision and find that the Appellant was eligible for PPP loan forgiveness.

On March 07, 2022, the undersigned issued a Notice and Order directing the SBA to file the Administrative Record (AR) by April 12, 2022. On March 25, 2022, counsel for the SBA moved to extend the time to file the Administrative Record (AR) by 30 calendar days. The Administrative Judge found good cause for an extension of time to file the AR and directed counsel for the SBA to file a responsive brief to the Appellant's January 26, 2022, brief on or before the expiration of said extension. Specifically, SBA counsel was directed to address the Appellant's arguments apropos reliance on PPP loan application guidance available on or before the date of Appellant's application. On April 26, 2022, SBA moved to further extend the time to file the AR and a Response for an additional 30 calendar days. The Administrative Judge granted the extension and the SBA had until May 26, 2022, to file the AR.

The AR was filed on May 25, 2022. The SBA filed seven (7) supplements to the Administrative Record on May 25, 2022. On May 25, 2022, the Appellant filed an Addendum to the January 26, 2022, Brief and specifically addressed requested information solicited by the Administrative Judge. On May 26, 2022 the SBA filed a Brief in response to the instant appeal. Thereafter as noted above the undersigned issued a decision Reversing the SBA Final Loan Review Decision and granting full PPP loan forgiveness to the Appellant. It is from that decision that the SBA has filed the instant Petition for Reconsideration.

2

### III.    Discussion & Analysis

As noted above, my original decision of August 4, 2022 is incorporated into this decision as if fully rewritten herein.  While I find the briefs and arguments of both parties to be erudite at both the initial appeal and in the Petition for Reconsideration, I find nothing new or persuasive that alters my logic or rationale for the decision of August 4, 2022.  Specifically, I do not find any clear error of law or fact material to the initial decision.  Accordingly, the SBA's Petition for Reconsideration is **DENIED**.  My initial decision of August 4, 2022 is **Affirmed**, and the Appellant's original Appeal is **Granted**, and the SBA Final Loan Review Decision is Reversed.

### IV.    Standard of Review

A Petitioner for Reconsideration has the burden of clearly showing an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c).

### V.     Conclusion

Petitioner SBA has not established that the Initial decision was based on a clear error of law or fact material to the decision.  I therefore **DENY** the Petition for Reconsideration and **AFFIRM** the Initial Decision reversing the final SBA loan review decision.   The SBA is directed to issue a new final loan review decision providing that Husson University's Paycheck Protection Program loan of $ 5,965,000.00 be forgiven in full.

The discretionary authority of the Administrator to review and/or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. See id. Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d). This decision  is non-precedential but may be published. 13 C.F.R. § 134.1211(e) and (f).

_James M. Caulfield_

JAMES M CAULFIELD
Administrative Judge

3

JA0472

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

3rd GENERATION, INC.

      Appellant

Appealed from
SBA PPP Loan No. 4146537110

Issued: March 09, 2022

Decision No. 4146537110

APPEARANCES

Dixon Gardner, Attorney for Borrower/Appellant, 17702 Mitchell North, Irvine, California 92614

DECISION

On November 05, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding 3rd Generation, Inc. is ineligible for its PPP loan in the amount of $333,400.00. On November 29, 2021, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed *infra*, I find that Appellant is ineligible for the amount PPP loan received because it is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring.

1.  JURISDICTION

In March 2020, in response to the Covid-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). See Nat'l Ass'n of Home Builders v. U.S. SBA, No. 20-11780, 2021 WL 4458660, at *1 (E.D. Mich. Sept. 28, 2021), appeal docketed, No. 21-1765 (6th Cir. Nov. 30, 2021). Section 1102 of the Act established the Paycheck Protection Program (the Program), which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses. Nat'l Ass'n, 2021 WL 4458660, at *1. Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. In re Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1247 (11th Cir. 2020).

Congress placed the Program under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for

4146537110

helping small businesses. Gateway, 983 F.3d at 1248. Through the CARES Act, Congress authorized the SBA to guarantee Program loans "under the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). Congress gave SBA 15 days to issue implementing regulations. CARES Act § 1114 (codified at 15 U.S.C. § 9012). SBA issued several interim final rules under the Program.

OHA adjudicates Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II. Background

3rd Generation, Inc. (Appellant) is a Domestic For-Profit S Corporation incorporated in California, Arizona and New Mexico (AR. 250). 3rd Generation designates itself as DBA California Auto Finance entity, a subprime auto lending company and describes itself as an indirect financier of automobile purchases (AR 255). Its reported gross receipts $14, 543.067 in 2019 and 2020 (AR 250).

On April 07, 2020, 3rd Generation, Inc. applied through its lender, Pacific Enterprise Bank, for a Program loan (AR 407). Corey Leyton, CEO/President, is listed as 100% stock owner of 3rd Generation, Inc., Form 1125-E, Compensation of Officers (AR 278, 292, 411). Also list Leyton children 2012 Trust, fbo(For the Benefit of) Travis Leyton and Corianne Leyton, as shareholders in a Trust (AR 264).

Appellant's CEO completed SBA Form 2483. This Form included his certification that that 3rd Generation, Inc. "is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration … implementing the … Program." (AR 405-411). Form 2483 did not specifically mention 13 C.F.R. § 120.110(b) or its bar on loans for financial businesses. As part of the application process, Pacific Enterprise Bank completed SBA Form 2484. In section F, this form required Pacific Enterprise Bank to attest that 3rd Generation, Inc. had "certified to Pacific Enterprise Bank that 3rd Generation, Inc. is eligible under the Paycheck Protection Program Rule." (AR 405-407). The form explains that Paycheck Protection Program Rule "refers to the rules in effect at the time" the Lender submits the application that the SBA issued implementing the program under the CARES Act. The form did not require Pacific Enterprise Bank to certify that 3rd Generation, Inc. was not a financial business, nor did it draw Pacific Enterprise attention to the financial-business bar. Pacific Enterprise Bank approved the application and disbursed $333,400.00 first PPP Draw . On April 07, 2020, 3rd Generation, Inc. applied for forgiveness of its loan and on September 23, 2021, Pacific Enterprise Bank submitted Appellant's application to the SBA.

The SBA responded with four requests for more information  as follows:

• 10/08/2021 VIA Forgiveness Platform Paulette Silva Pacific Enterprise Bank Re: Notification of Paycheck Protection Program Loan Review. For all loans, the 2019 or 2020 IRS Form 1040, Schedule C or F that the borrower provided at the time of the PPP loan application must be used to determine the amount of net profit or proprietor expenses allocated to the owner for the covered period. Therefore, single employee Schedule C or F borrowers do not have to resubmit this documentation if it was provided with the loan application.

- 2 -

JA0474

4146537110

•10/25/2021 VIA Forgiveness Platform Paulette Silva Pacific Enterprise Bank Re: PPP Request for Production of Documents and Information; We are currently reviewing the Hold Code(s) associated with this PPP Loan. This request is specific to this issue and is not made in the normal course. Please provide the following information so that SBA may decision the Hold Code(s) associated with this loan, and it can subsequently be assigned for a forgiveness review. We must receive this information within 10 business days. The Hold Codes on this loan are: NAICS 522 - Credit Intermediation - Borrower appears to be engaged in lending - Potential eligibility issue Please provide the following for review: 2019 business tax return Description of the business activities 2019 and 2020 Profit and Loss Statements Does the Borrower make and hold loans? How long are loans held in the Borrower's portfolio before being sold? (If applicable) Report for 2019 and 2020 showing all loans funded, including funded date and sold date (if applicable10/29/2021 VIA Forgiveness Platform Paulette Silva Pacific Enterprise Bank Re: PPP Request for Production of Documents and Information.

• 10/29/2021 VIA Forgiveness Platform Paulette Silva Pacific Enterprise Bank Re: PPP Request for Production of Documents and Information.  As detailed below, you must respond to this request within 15 business days of the date of this letter. If SBA does not receive a response within 15 business days of the date of this letter, or any other requested documentation is still outstanding, SBA will decide based on available information. Such a decision may include denial of forgiveness, referral to the Office of Credit Risk Management, and/or transfer of this matter (borrower and lender) to the Inspector General. You must notify the borrower in writing to request the additional documents or information listed below within five business days of your receipt of this request. The borrower should respond to these requests within ten business days of receipt. You must submit the documents and information provided by the borrower to SBA via the Forgiveness Platform within five business days of receipt from the borrower

• 11/05/2021 VIA Forgiveness Platform Paulette Silva Pacific Enterprise Bank Re: PPP Request for Production of Documents and Information.  5 business days ago we asked you for information in order to decision the Hold Code(s) associated with this PPP Loan. To date we have not received a response. Please note that if we do not receive the information listed below to clear the codes within the originally allotted 10 business days, we will assign the loan for forgiveness review which will likely result in a full decline of forgiveness. Hold Codes on the file are: NAICS 522 - Credit Intermediation - Borrower appears to be engaged in lending - Potential eligibility issue Please provide the following for review: Letter of business activities – is the business a broker or a lender? If you are a lender, please provide information to show that you sell loans and how many days do you hold them till you sell them. Provide 2019 P & L (AR 400-404).

The Appellant provided the documents requested. It was determined that the borrower's application is ineligible because its NAICS code (522220) is not eligible. Borrower is involved in lending. See regulations §120.110.  On Form 1120-S, U.S. Income Tax Return for an S Corporation, Appellant's self-designated Business Activity Code listed as 522294 (AR 259).

On April 21, 2020, SBA disbursed a PPP loan to Appellant in the amount of $333,400.00. Appellant filed for forgiveness of the loan on November 29, 202, for the total amount received. The Lender recommended Forgiveness of the total loan amount received by the Borrower.

- 3 -

JA0475

4146537110

**A.** SBA Final Loan Review Decision (FLRD)

SBA determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. Searches in the public domain for 3rd Generation, Inc. DBA California Auto Finance, 311 E Katella Ave, Orange, CA 92867 located the company website which states "Welcome to California Auto Finance. A Family Owned & Relationship Based Lender. Make a Payment. Apply for a Title Loan". A review of financial documents provided show a high percentage (88%) of total revenue from interest income which is consistent with lending activities (AR 2).

**B.** Appeal

On November 29, 2021, Appellant filed the instant appeal arguing the SBA final loan review decision is clearly erroneous.

On January 26, 2022, SBA filed : Pursuant to OHA's Notice and Order entered on January 11, 2022, SBA's deadline for production of the Administrative Record is currently Monday, January 31, 2022. To allow for sufficient time to prepare the Administrative Record for production after the loan number is corrected, SBA requests an extension of 7 calendar days from the date of entry of the Court's Order on this Motion to file the Administrative Record. Pursuant to 13 C.F.R. § 134.211(b), counsel for SBA has contacted counsel for the Appellant and the Appellant consents to the corrections sought in this Motion, as well as to the extension of time to produce the Administrative Record. The following Motion was filed:

CONSENT MOTION FOR CORRECTION OF THE LOAN NUMBER AND APPELLANT'S EMAIL ADDRESS, AND EXTENSION OF TIME FOR THE U.S. SMALL BUSINESS ADMINISTRATION TO PRODUCE THE ADMINISTRATIVE RECORD

On January 27, 2022, OHA issued Order Granting SBA's Motion. Appellant's consenting of Motion expressly allows appeal to proceed.

The First IFR (Interim Final Regulation), which was available to Appellant on SBA's website at the time of its PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible" 85 Fed. Reg. at 20812.

3rd Generation, Inc. DBA as California Auto Finance, *supra*, requests that the SBA approve full forgiveness of its PPP loan.

**III.** Discussion

**A.** Standard of Review

- 4 -

JA0476

4146537110

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

## B. Statutory Authority

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[1], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

On April 15, 2020, the SBA promulgated an interim final rule implementing the Program. See 85 Fed. Reg. at 20,811 (April 15, 202). The Federal Register notice published with this rule explained that the Program's rules incorporated the existing eligibility restrictions for Section 7(a) loans. Id. at 20,812. It also explained that "businesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Id. And § 120.110(b) bars "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans. The same categories of businesses are thus ineligible for Program loans. See 85 Fed. Reg. at 20,812; 13 C.F.R. § 120.110(b).

Congress was presumably aware of the SBA's existing regulations when it gave the Administrator the discretion to "*guarantee covered loans under the same terms, conditions, and processes as ... loan[s] made under*" Section 7(a). Cares Act § 1102(a)(2) (codified at 15 U.S.C. *§ 636(a)(36)(B))* (emphasis added); see Fitzgerald v. Dep't of Homeland Sec., 837 F.3d 1346, 1355 (Fed. Cir. 2016) (discussing the presumption that Congress is "aware of applicable regulations when enacting pertinent legislation"). And those terms and conditions included the ineligibility of loans for entities which were financial businesses primarily engaged in the business of lending. 13 C.F.R. § 120.110(b).

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a)

---

[1] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 et seq.**

- 5 -

JA0477

4146537110

lending program by specifying that "[e]except as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. See Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, Docket No. 9716822710 Page 10 of 13 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP)

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a term and condition of that program, that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)." SBA explained in the Standard Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692 (January 14, 2021)) that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

## C. Analysis

The Appellant by its own admission is engaged in financing car sales as described in its website listed as 3rd Generation, Inc. DBA California Auto Finance, domain website stating, "Welcome to California Auto Finance. A Family Owned & Relationship Based Lender. Make a Payment. Apply for a Title Loan".

Its financial documents provided show a high percentage (88%) of total revenue from interest income which is consistent with lending activities  (AR 2).

The loan origination supporting documentation, has an unresolved Credit Intermediation hold while also identifying the entity as one associated with lending. Per SOP 50 10 5 (k) Subpart B – Chapter 2- III.2.a, SBA declares ineligible loans that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring.

The Appellant provided a description of its business activities stating "3rd Generation, Inc DBA California Auto Finance is an indirect financier of automobile purchases.

Appellant's 2019 federal tax returns confirms they are a Lender given bad debt expenses were $7,187,309 on revenue of $14,723,013 during 2019 and outstanding notes receivables were

- 6 -

4146537110

$25,261,704 at 12/31/2019.

Further, interest income was $13,028,394 representing approximately 88% of revenue for 2019 per 2019 profit and loss statement. Lender was notified of the ineligibility; they did not produce any documents to dispute the denial.

The undisputable fact remains that 3rd Generation, Inc., DBA California Auto Finance customers are the sole source of revenue from the customers retail installment contracts that it derives its substantial profit and business revenue.

Notwithstanding, 3rd Generation, Inc. DBA California Auto Finance claim and justification for PPP loan eligibility in its loan application, it does not bypass the stark reality of being a "business engaging in financing" by its own admission in its domain website, tax statements and documents submitted in this appeal.

3rd Generation, Inc., DBA California Auto Finance by its own admission and documentation established that it holds itself out as being primarily a "business engaging in financing".

In the final analysis, SBA, which Congress authorized to implement the PPP and to issue regulations on the subject, has issued a rule that makes "[b]usinesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Id. And § 120.110(b) bars "[f]financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans. The same sorts of businesses are thus ineligible for Program loans that I determine Appellant to be. See 85 Fed. Reg. at 20812; 13 C.F.R. § 120.110(b). Regardless of meeting of the base CARES Act eligibility requirements and demonstrated proper use of the PPP loan proceeds, the Appellant was ineligible for the PPP Loan to begin with. Appellant's own submission establish it is a financial business primarily engaged in a financing activity. 13 C.F.R. § 120.110.

SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans."

Reiterating, businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812). Appellant's clearly falls within the ineligible businesses under the Act.

I am only authorized to follow SBA's implemented interpretation of policy, rules and regulations as were authorized by Congress. Federal Courts Article III Judges will determine when confronted in foreseeable litigation whether SBA's interpretation of Congress CARES ACT and PPP statutes were reasonable and rational, and whether the agency exceeded its statutory authority. Chevron , U.S.A. , Inc. v Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Friends of the Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1223 (11th Cir. 2009); Animal Legal Def. Fund v. USDA, 789 F.3d 1206, 1215 (11th Cir. 2015).

3rd Generation, Inc., DBA California Auto Finance is a business engaged in the business

- 7 -

4146537110

of lending and is thus ineligible for assistance under the regulations. 3rd Generation, Inc. DBA
California Auto Finance has not carried its burden to show a clear error of fact or law in the Final
SBA Loan Review Decision. 13 C.F.R. § 134.1210.  Therefore, I must **DENY** the appeal.

## IV.  Conclusion

      3rd Generation, Inc., DBA California Auto Finance has not shown that the SBA
committed a clear error of fact or law. I DENY the appeal and AFFIRM the final loan review
decision of the SBA. This is the initial decision of the SBA. Unless a request for reconsideration
is filed under 13 C.F.R. § 134.1211(c), or unless the SBA Administrator elects to review this
decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30
calendar days after it is served. See 13 C.F.R. § 134.1211(b). A party may file a request for
reconsideration within 10 calendar days after service of an initial decision. A request for
reconsideration must clearly show an error of fact or law material to the initial decision. 13
C.F.R. § 134.1211(c)(1)

*Raul Pardo*

RAUL PARDO
Administrative Judge

- 8 -

JA0480

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**Accordius Health at Asheville LLC et al.**

    **APPELLANT**

Appealed from:

**SBA PPP Loan Number 4336458510**

Issued: **February 6, 2023**

Docket No. **PPP-4336458510**

### ORDER - STIPULATIONS & CONSENT ADMINISTRATIVE RECORD

On January 3, 2023, an Order was issued providing that in the interest of judicial economy, this and the 37 appeals set forth in the attached Exhibit A were consolidated for the purpose of the filing of any party motions or briefs, and for any Orders issued by the undersigned.  This appeal, Accordius Health at Asheville LLC PPP No. 4336458510, was ordered the "lead case" for any motions, briefs, and/or Orders.

On February 6, 2023, the Parties filed Consent Stipulations, as follows:

1) SBA denied Appellants' loan forgiveness applications finding, in part, that each of the Appellants "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." (Decision Letter)
2) Appellants' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[1]
6) Appellants disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Appellants complied with SBA's requests for information.
8) Whether Appellants satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal.

---

[1] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and
10 were assigned to ALJ Trunick.

The undersigned acknowledges and **ACCEPTS** the Parties Stipulations, as set forth above.

On February 6, 2023, the Parties filed a joint Motion for leave to file a stipulated, limited Administrative Record in this consolidated appeal.  The parties agree the proposed limited Administrative Record does not contain all documents pertaining to the Appellants, it does contain the documents SBA considered when making its final loan review decisions pursuant to 13 C.F.R. § 134.1207(b) that are relevant to the issue in this consolidated appeal.

Based upon the requirements set forth in 13 C.F.R. § 134.1207(b) and the agreement of the Parties, the Administrative Record proposed by the Parties is **ACCEPTED**.  SBA shall file the proposed Administrative Record within the OHA on-line portal under Docket No. PPP-4336458510.  The Administrative Record filed therein shall apply as the Administrative Record in the 37 appeals set forth in the attached Exhibit A.

**THIS ORDER IS AMENDED TO REFLECT THE CORRECT DATE OF ISSUANCE**.  The prior Order incorrectly listed the same as January 3, 2023.

**SO ORDERED.**

_____

**BRIAN J. HARING**
U.S. Administrative Law Judge

**EXHIBIT A**

| APPELLANT | PPP Loan No./<br>OHA Docket No. PPP- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

USA-000733

| | |
|---|---|
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

USA-000744

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**Accordius Health at Asheville LLC et al.**

   **APPELLANTS**

Appealed from:

 **SBA PPP Loan Number 4336458510**

Issued: **March 8, 2023**

Decision No. **PPP-4336458510**

Appearances:

  Frederick N. Widen, Joshua Klarfeld, & Sara S. Dorland, Ulmer & Berne LLP, for Appellants.
  Sameena Nabijee, Attorney for the Small Business Administration.

## CONSOLIDATED DECISION

After carefully considering the evidence and arguments presented in the Administrative Records, the appeal petitions of Accordius Health at Asheville LLC, et. al. (Appellants) are **DENIED**. For the reasons discussed below, the final SBA loan review decisions are **AFFIRMED**.

## PROCEDURAL HISTORY

The Appellants (Borrowers) submitted Paycheck Protection Program (PPP) Borrower Applications. The Appellants were approved for individual First Draw PPP loans through authorized PPP lenders (Lender) and received the loan proceeds. The Appellants submitted PPP Loan Forgiveness Applications through the Lender that subsequently issued lender decisions concerning loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access issued final PPP loan review decisions finding Appellants ineligible for their respective PPP loans and any subsequent loan forgiveness.

On December 6 & 7, 2022, the Appellants filed appeal Petitions from the final SBA loan review decisions. Appellants argue the final SBA loan review decisions are clearly erroneous, and request the Office of Hearings and Appeals (OHA) reverse them, and find the Appellants eligible for PPP loan forgiveness.

On December 13, 2022, Notice and Orders were issued under their individual appeals requiring the filing of the Administrative Records (AR) by January 3, 2023, providing for the Appellants to file Objections to the same by January 12, 2023, and allowing for SBA to file Responses to the Petitions by January 27, 2023.

USA-000745
JA0485

On December 22, 2022, SBA filed a Consent Motion to consolidate the Appellant's Petitions, as set forth in the attached and incorporated Exhibit A and designate appeal PPP-4336458519 as the "lead case". The Motion further sought an extension of time to file the ARs, Objections, and Responses.

On January 3, 2023, an Order of Consolidation was issued naming Accordius Health at Asheville LLC PPP No. 4336458510, as the "lead case" for any motions, briefs, and orders.

On January 13, 2023, an Amended Notice and Order was issued requiring the filing of the ARs by February 6, 2023, providing for the Appellants to file Objections to the same by February 17, 2023, and allowing for SBA to file Responses to the Petitions by March 3, 2023

On February 6, 2023, SBA filed Joint Stipulation and Motion for Leave to File Consolidated Administrative Record, an Order and Amended Order were issued granting the parties Joint Motion for Leave to File the Stipulations and limited AR for the consolidated appeal, and the AR was filed. The Appellants did not file an Objection to the AR and SBA did not file a Response to the Petitions. The AR was closed on March 3, 2023.

## ISSUES

Whether the final SBA loan review decisions contain clear errors of law or fact to allow Appellants PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

USA-000746

Generally, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(1) and (2)(A)&(B).

SBA established its initial small business size standards on January 1, 1957. 21 Fed. Reg. 9709-9714, December 7, 1956.

Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor. A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture. 13 C.F.R. § 121.105(a)(1) and (b).

The Administrator has established SBA's size standards to define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.201.

Except for the Business Loan and Disaster Loan Programs, a business concern's average annual receipts are calculated by determining the total receipts of the concern over its most recently *completed* 5 fiscal years divided by 5, or over its most recently completed 3 fiscal years divided by 3. 13 C.F.R. § 121.104(c)(1). For the Business Loan and Disaster Loan Programs, annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three. The Business Loan Programs consist of the 7(a) Loan Program. 13 C.F.R. § 121.104(c)(4). Completed fiscal year means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS. 13 C.F.R. § 121.104(b).

The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination. When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts. 13 C.F.R. § 121.104(a)(1-2).

Section 1116 of the Small Business Jobs Act of 2010 directed SBA to establish a new temporary[1] alternative size standard based on tangible net worth and net income for determining size eligibility for its 7(a) and 504 loan programs, as follows: The Administrator shall establish an alternative size standard for applicants for business loans under section 636(a) of this title that uses maximum tangible net worth and average net income as an alternative to the use of industry standards. *See* 15 U.S.C. § 632(a)(5)(A).

This alternative size standard provides a business concern is a small business , if: 1) The maximum tangible net worth of the business concern is not more than $15,000,000; and 2) The average net income after Federal income taxes (excluding any carry-over losses) of the business concern for the 2 full fiscal years before the date of the application is not more than $5,000,000. 15 U.S.C. § 632(a)(5)(B)(i-ii).

Effective September 27, 2010, the new statutory alternative size standard replaced and superseded the existing alternative size standard, based on tangible net worth and net income, for SBA's 7(a) and 504 loan programs set forth in 13 C.F.R. § 121.301(b)(2). This new statutory alternative size standard is effective until such time as SBA establishes a permanent alternative size standard for the 7(a) and 504 loan programs through the rulemaking authority granted the Administrator under §636(a) of the Small Business Act.

A business concern is eligible for a First or Second Draw PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. *See* 13 C.F.R. § 121.301(a and f) and SBA FAQ Questions 2, 4, 5, and/or 63 (in relevant part, below).

## PAYCHECK PROTECTION PROGRAM LOANS
### Frequently Asked Questions (FAQs)[2]

2. **Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?[3]

---

[1] https://www.sba.gov/sites/default/files/files/bank_5000-1175_0.pdf
[2] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[3] Question 2 published April 6, 2020 and revised March 3, 2021 to reflect the consolidated interim final rule

**Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

*Additionally, a business can qualify for a First Draw PPP* Loan as a small business concern *if it met both tests in SBA's "alternative size standard" as of March 27, 2020:* (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. *(Emphasis added)*….

4. **Question**: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?[4]

   **Answer**: No. It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications….

5. **Question**: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?[5]

   **Answer**: Yes. *Borrowers must apply the affiliation rules*, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, *or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable*. *(Emphasis added)*.

63. **Question**: May applicants use SBA's established size standards (either revenue-based or employee-based) or SBA's alternative size standard to qualify for a Second Draw PPP Loan?

   **Answer**: No. Applicants may not use SBA's established size standards (either revenue based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan. In general, the size eligibility requirement for Second Draw PPP Loans are narrower than the size eligibility requirement for First Draw PPP Loans. With some

---

implementing updates to the PPP. This FAQ applies only to First Draw PPP Loans. Different eligibility requirements apply to Second Draw PPP Loans. See FAQ #63 and subsection (c) of the interim final rule for Second Draw PPP Loans.
[4] Question 4 published April 6, 2020.
[5] Question 5 published April 6, 2020 and revised March 3, 2021 to conform to subsections B.1.g.v., B.1.g.vii., and B.1.g.viii of the consolidated interim final rule implementing updates to the PPP and subsection (c) of the interim final rule on Second Draw PPP Loans.

exceptions, an applicant is eligible for a Second Draw PPP Loan only if it, together with its affiliates (if applicable), employs no more than 300 employees. The only exceptions are if an Applicant:
• Is assigned a NAICS code beginning with 72 and employs no more than 300 employees per physical location, or
• Is a news organization that is majority owned or controlled by a business concern that is assigned NAICS code 511110 or a NAICS code beginning with 5151 or is a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, and, in either case, employs no more than 300 employees per physical location.

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

On May 4, 2020, SBA issued Interim Final Rule #7 (IFR #7), which provides that in order to "preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020." 85 Fed. Reg. 26324, 26325 (May 4, 2020).

On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260, was enacted, extending the authority to make PPP loans through March 31, 2021, revising certain PPP requirements, and permitting Second Draw PPP Loans. 86 Fed. Reg. 8283. Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II.    PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(e), § 636m(e)(3), § 636m(f), and § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[6]. 13 C.F.R. §134.1201(b)(1)-(4).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1210 and 13 C.F.R. § 134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

The parties jointly stipulate the following facts:

1) SBA denied Appellants' loan forgiveness applications finding, in part, that each of the Appellants "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate."
2) Appellants' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[7]

---

[6] SBA PPP lender notices are available from **SBA.gov** at   https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.
[7] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and 10 were assigned to ALJ Trunick.

6) Appellants disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Appellants complied with SBA's requests for information.
8) Whether Appellants satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal. (Joint Stipulations).

On March 27, 2020, the CARES Act became law. P.L.116-136. On or about March of 2021, the Appellants submitted First Draw PPP Borrower Application Forms 2483 to the Lender. (Petitions – Denial Justification Document).

The Appellants are owned equally by Simcha Hyman and Naftali Zanziper. The Appellants were approved for PPP loans by the Lender and received the loan proceeds. (Joint Stipulations and Motion for Leave to File Consolidated Administrative Record).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(b), (e) and (f). Here, the Appellants the same to the Lender.

Next, the Lender must review the Loan Forgiveness Application Forms (SBA Form 3508) and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On or about June 29, 2022, the Lenders determined the Appellants should receive full loan forgiveness. (Petitions – "Denial Justification Document").

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

SBA notified the Lender it was reviewing the Appellants' PPP loans. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. Appellants complied with SBA's requests for information. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

On or about November 11, 2022, SBA issued final loan review decisions providing the Appellants with $0.00 of PPP loan forgiveness, finding the Appellants "part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." This

rendered the Appellants ineligible for the PPP loans and precluded them from loan forgiveness. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

The parties agree and stipulate that SBA determined the Appellants (including the 10 entities with appeals pending before OHA Judge Trunick) were small-business concerns eligible to receive the PPP loans under SBA's alternative size standard test. Based upon the same, the Appellants' small business status is not at issue. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).

The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b).

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying loan eligibility during the covered period for the amount of PPP loan received and documentation to support loan forgiveness.

Through written statements, the Appellants argue in favor of full loan forgiveness, as follows: Appellants are separate and distinct operating companies from each other. No Appellant is itself, a holding or parent company. Each Appellant is owned by two individuals, Simcha Hyman and Naftali Zanziper, neither of which holds a majority of the membership interests in any Appellant. No Appellant has a parent company, thus, no Appellant can share a common parent company with any of the other 47 Appellants for which SBA is denying PPP loan forgiveness. Because none of the Appellants has a "common parent," they are not a "single corporate group" for purposes of any purported $20,000,000 limitation on PPP loans. The Appellant essentially argues clear error exists

in the final SBA loan review decisions, as none of the Appellant entities was owned at any time by a corporation or any other type of entity.

The Appellants argue three points for the proposition: 1 ) SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA); 2) Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups; and 3) Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group"/"common parent'. Each argument is individually below.

All three arguments rely upon the language contained in SBA's Interim Final Rule (Docket Number SBA-2020-0023) of April 30, 2020 (IFR #7), which "placed a $20,000,000 limitation on the amount of PPP loans that businesses in a single corporate group can receive", as follows:

> To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. **For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent**. (Emphasis added in Petition).

'

## Argument #1 - SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA)

The Appellants argue this provision cannot be used to deny any of the Appellants PPP Loan Forgiveness Applications, as the same was issued outside of the APA's statutorily mandated processes.

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

USA-000754

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b). 15 U.S.C. § 9012.

The APA is codified in 5 U.S.C. §§ 551–559 and applies to all agencies of the federal government. The APA provides the general procedures for various types of rulemaking. Agencies promulgate rules in a variety of methods that requiring notice-and-comment. 5 U.S.C. § 553.

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See* Camelot Banquet Rooms, Inc., et al. v. SBA, No. 21-2589, 2022 WL 221616 (7th Cir. 2022). Section 1114 of the CARES Act required the SBA Administrator to issue regulations to govern PPP and granted the SBA Administrator emergency rulemaking authority to carry out PPP. The CARES Act specifically waived the SBA Administrators notice and comment requirements under the APA. 15 U.S.C. § 9012. As such, the Appellants' argument that SBA's issuance of the IFR #7 was in violation of the APA is without merit.

## <u>Argument #2</u> - Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups

The Appellants note the Administrator issued IFR #7 imposing a $20,000,000.00 limitation on a corporate group, owned directly or indirectly, by a common parent, where the CARES Act (and subsequent amendments) do not contain this limitation. The argument raised by the Appellants concerns the Administrators authority to issue IFR #7.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v.

*Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied*, 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. §  81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee.  The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. §  556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority.  OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. §  134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. §  120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8.  Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

The Administrator, in consultation with the Secretary of the Treasury, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator concluded that a limitation of $20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints.  The Appellants argument fails,

Docket No. PPP-4336458510 et al.

as the Administrator has established a well-defined rule (IFR #7) and policy interpretation, for which OHA and the undersigned are without authority to invalidate.

**Argument #3** - **Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group'/"common parent'.**

As noted above, the Administrator, in consultation with Secretary of the Treasury, issued IFR #7, which imposed a $20,000,000.00 PPP maximum loan limitation for any corporate group. The Appellants, along with 46 other affiliated entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Appellants' loans, entities affiliated with the Appellants under 13 C.F.R. § 121.301 had already obtained funding for at least 36 PPP loans totaling more than $20,000,000. (Stipulated AR pp. 639-44)

Within IFR #7, the Administrator set forth the authority to create a corporate group maximum loan limitation under the CARES Act grant of authority to create "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act. The Administrator explained that Section 1102 of the CARES Act "provides that the Administrator 'may' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a 'maximum'—but not a minimum—loan amount." *See* 15 U.S.C. 636(a)(36)(B), (E); *see* also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).

The Administrator further stated that in order to "preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate." (IFR #7, footnote 1).

It became the responsibility of an applicant for a PPP loan to notify the lender if the applicant applied for or received PPP loans in excess of the amount permitted by IFR #7 and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. SBA specifically stated that failure by a PPP applicant to do would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.   Additionally, a PPP lender was authorized to rely on an PPP applicant's representation (certification within the PPP Borrower Application Form 2483) concerning the applicant's compliance with IFR #7.

SBA has denied loan forgiveness finding the Appellants are part of a corporate group and the recipients of PPP loan proceeds exceeding the $20,000,000.00 limitation.  The Appellants argue that they do not meet the definition of a corporate group, the $20,000,000.00 limitation does not apply to them, and loan forgiveness is proper.  The Appellants rely on Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1738 (2020) and Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) to assert that due the CARES Act and IFR #7's silence in defining corporate group, the ordinary public meaning for the terms 'corporate group' and 'common parent'

must be applied.  The Appellants focus on the term common parent and argue the ordinary public meaning is "a common parent corporation or common parent holding company."  The Appellants argue that none of Appellants are a common parent holding company and none have a common parent corporation.

SBA argues the AR, Petition, and applicable authorities demonstrate that (1) SBA had the authority to limit the amount of PPP funds a "corporate group" could obtain; (2) Appellants were part of a corporate group with common parent Hyman/Zanziper that received over $20 million in PPP loans in the aggregate, (3) Appellants' loans funded after the January 2021 IFR and after other borrowers within the corporate group had already received more than $20 million in PPP loans; and (4) Appellants were thus ineligible for PPP loan forgiveness. (SBA Response).

The CARES Act subjected PPP borrowers to SBA's 7(a) program affiliation rules, as set forth in 13 C.F.R. § 121.301(f).[8]  Of note, Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to 13 C.F.R. § 121.301, thus PPP borrowers are subject to SBA's 2019 version of 13 C.F.R. § 121.301. (see 81 Fed. Reg. 41423).

Each PPP applicant must aggregate its own number of employees or revenue with that of all of its affiliates for the purposes of determining eligibility for a PPP loan.  PPP applicants are eligible for a First Draw PPP loan, when the applicant: (1) Qualifies as a small business concern as defined in section 3 of the Small Business Act, 15 U.S.C. § 632; (2) Along with its affiliates, have 500 or fewer employees whose principal place of residence is in the United States; (3) Along with its affiliates meet the SBA employee-based size or revenue standards for the industry in which they operate, (including the "alternative standard"; or (4) Is a nonprofit organization, veterans organization, or Tribal business concern as outlined in Section 1102(a)(i) of the CARES Act.[9]

The 2019 version of 13 C.F.R. § 121.301(f)(1-4) sets forth four principles that can establish an affiliate relationship between a PPP borrower and another entity:  1) Equity ownership; 2) Stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest, as follows:

1) Any entity that owns or has the power to control more than 50 percent of the borrower's voting equity is considered an affiliate of the borrower.  Further, SBA deems a minority shareholder exercises "negative control" if it has the ability, under the borrower's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.  If no such entity owns 50 percent of the equity, SBA will deem the Board of Directors, President, or CEO (or other officers, managing members, or partners who control the management of the concern) to be in control of the borrower. 13 C.F.R. § 121.301(f)(1).
2) SBA will consider stock options, convertible securities, and agreements to merge, as though the rights granted have been exercised, for purposes of determining whether an entity owns 50 percent of the borrower,. 13 C.F.R. § 121.301(f)(2).

---

[8] PPP Loan FAQs, No. 5.  While § 121.103 governs the SBA's general principles of affiliation, § 121.103(a)(8) states that "applicants in SBA's Business Loan [including the PPP], Disaster Loan, and Surety Bond Guarantee Programs" are to use "the size standards and bases for affiliation . . . set forth in § 121.301."

[9] PPP Loan FAQs, No. 3.  Our understanding of FAQ No. 3 is that it does not expand eligibility beyond the basic eligibility requirements for all applicants for SBA business loans outlined in 13 C.F.R. § 120.100, but we await further guidance clarifying this point.

3) Affiliation arises where the President or CEO (or other officers, managing members, or partners who control the management of the concern) of the PPP applicant also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern, or entity controls management of the borrower through a management agreement. 13 C.F.R. § 121.301(f)(3).

4) Where close relatives share identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area), those concerns are affiliated. 13 C.F.R. § 121.301(f)(4).

PPP's affiliation rules provide direct policy interpretation concerning what entities are associated with each and count towards the small-business concern size standard. Here, the parties agree the affiliation rules associate the Appellants due to the common ownership existing for all Appellants through Simcha Hyman and Naftali Zanziper. IFR #7 explicitly subjects corporate groups to a $20,000,000.00 maximum loan limitation and takes care to note that this limitation applies, even if, the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Under the Small Business Act, a small-business concern includes, but is not limited to, enterprises that are engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. 15 U.S.C. § 632(a)(1).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A business is eligible for PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, **AND together with its affiliates**, **it meets the size standard** (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. (Emphasis added). *See* 13 C.F.R. § 121.301(a-b).

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. The size standards described in 13 C.F.R. § 121.201 apply to all SBA programs unless otherwise specified within Title 13, Ch. 1, Part 121, Subpart A. 13 C.F.R. § 121.201.

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described in 13 C.F.R. § 121.301(f)(1-4) is sufficient to establish affiliation for applicants for SBA's Business Loan Programs, which includes the 7(a) Loan Program. 13 C.F.R. § 121.301(f).

It is the responsibility of the borrower to determine which entities (if any) are the borrower's affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.[10] Lenders may accept and rely on signatures from a single individual who is authorized to sign on behalf of the borrower.[11] Here, the Appellants certified their PPP eligibility on the PPP Borrower Application Forms 2483 submitted to the Lender. (AR pp. 1-637).

The joint stipulations of the parties reflect the collective Appellants were deemed a small-business concern after application of SBA's alternative size standards. This means the Appellants, as a group, were eligible for one of SBA's 7(a) loan programs, to-wit: PPP. The sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Appellants.

On April 3, 2020, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" to assist PPP applicants/borrowers in understanding the application of SBA's use of affiliation within PPP.[12] SBA explicitly noted the four of the affiliation tests set forth in 13 C.F.R. § 121.301(f) "based on control apply to participants" in PPP.[13] It was clear, prior to submitting borrower applications, the Appellants were subject to at least four of SBA's 7(a) loan program affiliation rules.

---

[10] PPP Loan FAQs, No. 4.
[11] PPP Loan FAQs, No. 11.
[12] https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf
[13] Of note, the four tests applicable to PPP are the same as appearing in 13 C.F.R. § 121.301(f)(1-4).

Docket No. PPP-4336458510 et al.

Since 1996, SBA policy has been that the aggregate amount of the SBA portions of all loans to a single Borrower, including the Borrower's affiliates as defined in 13 C.F.R. § 121.301(f), must not exceed a guaranty amount as otherwise authorized by statute for a specific program. 13 C.F.R. § 120.151 ( *See* 61 FR 3235, Jan. 31, 1996, as amended at 68 FR 51680, Aug. 28, 2003; 76 FR 63546, Oct. 12, 2011; 81 FR 41428, June 27, 2016). In furtherance of this policy, SBA's SOP (effective April 1, 2019) addresses how maximum loan limitation amounts are determined for a small-business concern with affiliates. Specifically, SBA policy states: "**If affiliation exists, SBA's loan maximums apply to the Applicant, including all affiliates, as if all were a single business**." (Emphasis added). SOP 50 10 5(K), Part 2, Section B, Ch. 3, 2.a.[14][15]

Here, the CARES Act created a general maximum loan limitation for individual borrowers, but also authorized the Administrator to set SBA's guaranty of PPP loans. It is important to note that the Administrator's express authority under Section 1102 of the CARES Act to guarantee PPP loans is marked by the term **"may".** The Administrator exercised this authority within IFR #7 and created a $20,000,000.00 corporate group maximum loan limitation, as otherwise authorized by statute.

SBA has denied the Appellants loan forgiveness applications by applying the existing 7(a) loan program policy wherein applicants that are affiliated to meet the definition of a small-business concern remain together, as a group, in applying a maximum loan limitation. Through IFR #7, SBA has identified this grouping as a corporate group. The Appellants should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group. Here, that limitation was set at $20,000,000.00. As such, the meaning of corporate group in IFR #7 has the same meaning as affiliate under existing 7(a) loan program policy.

The final SBA loan review decision relied upon this existing policy. Prior to issuing the decision, SBA found "the 'Naftali Simcha Family et al' (Appellants) are one single corporate group via the 100% common ownership of Naftali Zanziper and Simcha Hyman (50% for each Appellant). SBA interpreted the term corporate group to mean where a majority ownership by a common parent occurs either directly or indirectly. SBA finds that a common parent, for the purposes of PPP financing, can be defined as a being a corporation, trust or person(s.) When a corporation or trust has ownership, an in-depth review of the ownership of the corporation or trust should be completed to determine if an individual(s) has an indirect ownership that establishes a corporate group. Naftali Zanziper and Simcha Hyman each own 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 84 loans. While the affiliated group of Naftali Zanziper and Simcha Hyman are eligible for PPP financing based on the Alternative Size Standard, they exceed the limit of $20,000,000 for a single corporate group established in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and Nonlnsured Depository Institution Lenders." (AR pg. 649).

[14] SBA's Standard Operating Procedures (SOP) are issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov. 13 C.F.R. § 120.10.
[15] https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf

The AR reflects the Appellants, as affiliated under 13 C.F.R. § 121.301(f) with 46 other entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Appellants' loans, entities affiliated with the Appellants had already obtained funding of at least 36 PPP loans totaling more than $20,000,000. (AR pp. 639-644).

As it directly relates to the Appellants argument, SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), but the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Appellants receipt of these PPP loans. This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act. When put together, the same clearly provide that when a 7(a) loan program applicant is required to affiliate entities to meet the definition of a small-business concern, the affiliated group of entities is carried forward when considering if any authorized maximum loan limitation has been reached.

Given the Appellants eligibility under affiliation rules, as defined in 13 C.F.R. § 121.301(f), for these PPP loans, the aggregation of the Appellants, as affiliates, is carried forward in evaluating whether the Appellants reached the $20,000,000.00 PPP corporate group maximum loan limitation. The AR and Joint Stipulations reflect these Appellants had already received $20,000,000.00 in PPP funds, thus were ineligible for the loans at issue.

Overall, the Appellants are affiliates of each other, as defined by 13 C.F.R. § 121.301(f)(1-4). As of the date of applying for the PPP loans at issue, together with its affiliates, the Appellants met the small-business concern alternative size standard. 13 C.F.R. § 121.301(a-b). (Joint Stipulations). The Administrator created a maximum loan limitation for PPP by limiting SBAs guarantee of PPP loans exceeding $20,000,000.00 for corporate groups. Section 1102 of the CARES Act. As affiliation exists among the Appellants, the PPP $20,000,000.00 corporate group maximum loan limitation applies to each Appellant, as if all Appellants were a single business, to-wit: a corporate group. SOP 50 10 5(K), Part 2, Section B, Ch 1: Basic 7(a) Loans, 1.c. At the time of applying for the PPP loans, the aggregate amount of the SBA portions of all PPP loans to the Appellants, including all affiliates as defined in 13 C.F.R. § 121.301(f), exceeded the $20,000,000.00 maximum loan limitation otherwise authorized by IFR #7. *See* 15 U.S.C. 636(a)(36)(E)(ii). The Appellants are a corporate group and were ineligible for the PPP loans at issue.

It was the responsibility of the Appellants to determine which entities (if any) were their affiliates and certify the same to the Lender. The Appellants did determine its affiliates, certified the same to the Lender, and met the definition of small-business concern. The Lender properly relied on the Appellants certifications contained in the PPP Borrower Application Forms 2483 and 3508. Under IFR #7, it was also the Appellants responsibility to notify the Lender if they had applied for or received PPP loans in excess of the $20,000,000.00 maximum loan limitation. The Appellants determined the $20,000,000.00 corporate group maximum loan limitation was not applicable. This led the Appellant to not execute the options available under IFR #7 to withdraw or request cancellation of any pending PPP loan applications or approved PPP loans not in compliance with the maximum loan limitation. SBA specifically advised the Appellants that failure to do so would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

The final SBA loan review decision held the Appellants were ineligible for the PPP loans received having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. Given the foregoing, the final SBA loan review decision did not commit error in determining the Appellants were ineligible for the PPP loans and subsequently precluded from loan forgiveness. SBA did not commit error in denying loan eligibility or forgiveness. The final SBA loan review decisions are well supported by the records and devoid of any clear errors of law or fact. As such, the final SBA loan review decisions are **AFFIRMED**.

## CONCLUSION OF LAW

The Appellants are a corporate group that was ineligible for PPP Loan Numbers 3123528607, 8306238609, 3200798601, 3015918609, 3124028601, 5169688603, 5975278603, 5035908602, 8192158610, 8162528602, 6531908606, 6327628608, 8074818606, 1946638705, 1825438708, 7988958604, 2869798805, 3383808800, 3097548608, 4967028604, 2971158808, 2614148709, 2614318701, 7659928605, 2617258702, 1383928704, 1472948701, 1470638709, 2382638703, 1635078706, 1703648703, 1299808700, 1535178704, 1581268708, 1935708707, 6580538609, & 1993548705 at the time of applying for each PPP loan. The Appellants are ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decisions. I direct SBA to process the loan forgiveness requests in accordance with this decision.

**SO ORDERED.**

_____
**Brian J. Haring**
U.S. Administrative Law Judge

Docket No. PPP-4336458510 et al.

**EXHIBIT A**

| APPELLANT | PPP Loan No./OHA Docket No. PPP- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

**An OHA INITIAL DECISION shall become the final decision of SBA 30 calendar days after its service**. Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(b) and (c)(1-2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).

Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

USA-000765

## United States Small Business Administration
## Office of Hearings and Appeals

PETITION FOR RECONSIDERATION:

**Accordius Health at Asheville LLC**

    Petitioner

RE: *PPP Appeal of Accordius Health at Asheville LLC et al.*, SBA No. PPP-4336458510 (2023)

Issued:  **March 20, 2023**

Docket No. **PFR-4336458510**

## NOTICE OF CONSOLIDATION & ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received a Petition for Reconsideration (PFR) in the above-captioned matter on March 17, 2023.  The PFR was assigned to Administrative Law Judge Brian J. Haring for adjudication.  OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 subpart L.

### I.  Notice to All Parties

I find the PFR to have been timely filed following issuance of Decision No. PPP-4336458510  on March 8, 2023.  To prevail on a PFR, the petitioner must clearly show an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c).

### II.  Instructions to Respondent SBA

SBA may respond to the PFR.  Any such response must be filed and served no later than **April 4, 2023.**

### III.  Filing and Service Instructions

A party seeking to file and serve any pleading or other submission in a PPP case must do so by utilizing the OHA Case Portal.

Docket No. PFR-4336458510

## IV. Order of Consolidation

The undersigned notes that this matter was consolidated with 37 other PPP appeals and a consolidated OHA Initial Decision issued.  Further, all 38 Administrative Records were filed as consent Administrative Records and the parties made joint stipulations of fact.  All 38 appeals have been assigned to the undersigned for reconsideration adjudication.

In the interest of judicial economy, this and the 37 appeals set forth in the attached Exhibit A are consolidated for the purpose of the filing of any party motions or briefs, any Orders, and Decision issued by the undersigned. The consent Administrative Records and joint stipulations of fact remain accepted.

This appeal, Accordius Health at Asheville LLC PPP No. 4336458510, shall be treated as the "lead case" for any motions, briefs, Orders, and Decision.

**SO ORDERED.**

_____
**BRIAN J. HARING**
Administrative Law Judge

USA-000771

Docket No. PFR-4336458510

**EXHIBIT A**

| APPELLANT | PPP Loan No./<br>OHA Docket No. PFR- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

USA-000772

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Accordius Health at Asheville LLC et al.**

Petitioners

RE: *PPP Appeal of Accordius Health at Asheville LLC et al.*, SBA No. PPP-4336458510 et al. (2023)

Issued:  **April 10, 2023**

Decision No. **PFR-4336458510**

Appearances:
 Frederick N. Widen, Joshua Klarfeld, & Sara S. Dorland, Ulmer & Berne LLP, for Appellants.
 Sameena Nabijee, Attorney for the Small Business Administration.

## RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Records, Requests for Reconsideration, and Consolidated Decision No. PPP-4336458510, the appeal petitions of Accordius Health at Asheville LLC et al. (Petitioners/Appellants) remain **DENIED**.  For the reasons discussed below, Petitioners are not entitled to loan forgiveness.

### PROCEDURAL HISTORY

The Petitioners (Borrowers/Appellants) submitted Paycheck Protection Program (PPP) Borrower Applications, which were approved for individual First Draw PPP loans through authorized PPP lenders (Lender) and each received their respective loan proceeds.   The Petitioners submitted PPP Loan Forgiveness Applications through the Lender that received individual lender decisions concerning loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access issued final PPP loan review decisions finding Petitioners ineligible for their respective PPP loans and any precluded from loan forgiveness.

On December 6 & 7, 2022, the Petitioners filed appeal Petitions from their final SBA loan review decisions.  Petitioners argued the final SBA loan review decisions were clearly erroneous, and requested the Office of Hearings and Appeals (OHA) reverse them, and find the Petitioners eligible for PPP loan forgiveness.

USA-000778

On December 13, 2022, Notice and Orders were issued under their individual appeals requiring the filing of the Administrative Records (AR) by January 3, 2023, providing for the Petitioners to file Objections to the same by January 12, 2023, and allowing for SBA to file Responses to the Petitions by January 27, 2023.

On December 22, 2022, SBA filed a Consent Motion to consolidate the Petitioner's Petitions, as set forth in the attached and incorporated Exhibit A and designate appeal PPP-4336458519 as the "lead case". The Motion further sought an extension of time to file the ARs, Objections, and Responses.

On January 3, 2023, an Order of Consolidation was issued naming Accordius Health at Asheville LLC PPP No. 4336458510, as the "lead case" for any motions, briefs, and orders.

On January 13, 2023, an Amended Notice and Order was issued requiring the filing of the ARs by February 6, 2023, providing for the Petitioners to file Objections to the same by February 17, 2023, and allowing for SBA to file Responses to the Petitions by March 3, 2023

On February 6, 2023, SBA filed Joint Stipulation and Motion for Leave to File Consolidated Administrative Record, for which an Order and Amended Order were issued granting the parties Joint Motion for Leave to File the Stipulations and limited AR for the consolidated appeal.  The Consolidated AR was then received.  The Petitioners did not file an Objection to the AR and SBA did not file a Response to the Petitions.  The AR was closed at 5:00 PM Eastern on March 3, 2023.

On March 8, 2023, a Consolidated OHA Initial Decision was issued affirming the final SBA loan review decisions for each Petitioner.

On March 17, 2023, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Consolidated Decision No. PPP-4336458510 et al.

On March 20, 2023, the undersigned issued a Notice of Consolidation & Order allowing for SBA to file a response to the Request for Reconsideration no later than April 4, 2023.  The Order further consolidated the Petitioner's Petitions for Reconsideration for the filing of any party motions or briefs, any Orders, and Decision issued by the undersigned.

SBA filed a Response on April 4, 2023, and the AR was closed at 5:00 PM Eastern that day.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-4336458510 et al.  contains clear error of law or fact to allow the Petitioners their requested PPP loan forgiveness?

**APPLICABLE LAW AND POLICY**

## I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.  As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

Generally, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(1) and (2)(A)&(B).

SBA established its initial small business size standards on January 1, 1957. 21 Fed. Reg. 9709-9714, December 7, 1956.

Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture. 13 C.F.R. § 121.105(a)(1) and (b).

The Administrator has established SBA's size standards to define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for

"small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.201.

Except for the Business Loan and Disaster Loan Programs, a business concern's average annual receipts are calculated by determining the total receipts of the concern over its most recently *completed* 5 fiscal years divided by 5, or over its most recently completed 3 fiscal years divided by 3. 13 C.F.R. § 121.104(c)(1). For the Business Loan and Disaster Loan Programs, annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three.  The Business Loan Programs consist of the 7(a) Loan Program. 13 C.F.R. § 121.104(c)(4).  Completed fiscal year  means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS. 13 C.F.R. § 121.104(b).

The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination. When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts. 13 C.F.R. § 121.104(a)(1-2).

Section 1116 of the Small Business Jobs Act of 2010 directed SBA to establish a new temporary[1] alternative size standard based on tangible net worth and net income for determining size eligibility for its 7(a) and 504 loan programs, as follows: The Administrator shall establish an alternative size standard for applicants for business loans under section 636(a) of this title that uses maximum tangible net worth and average net income as an alternative to the use of industry standards. *See* 15 U.S.C. § 632(a)(5)(A).

---

[1] https://www.sba.gov/sites/default/files/files/bank_5000-1175_0.pdf

Docket No. PFR-4336458510 et al.

This alternative size standard provides a business concern is a small business , if: 1) The maximum tangible net worth of the business concern is not more than $15,000,000; and 2) The average net income after Federal income taxes (excluding any carry-over losses) of the business concern for the 2 full fiscal years before the date of the application is not more than $5,000,000. 15 U.S.C. § 632(a)(5)(B)(i-ii).

Effective September 27, 2010, the new statutory alternative size standard replaced and superseded the existing alternative size standard, based on tangible net worth and net income, for SBA's 7(a) and 504 loan programs set forth in 13 C.F.R. § 121.301(b)(2).  This new statutory alternative size standard is effective until such time as SBA establishes a permanent alternative size standard for the 7(a) and 504 loan programs through the rulemaking authority granted the Administrator under §636(a) of the Small Business Act.

A business concern is eligible for a First or Second Draw PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. *See* 13 C.F.R. § 121.301(a and f) and SBA FAQ Questions 2, 4, 5, and/or 63 (in relevant part, below).

## PAYCHECK PROTECTION PROGRAM LOANS
### Frequently Asked Questions (FAQs)[2]

2. **Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?[3]

   **Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

   ***Additionally, a business can qualify for a First Draw PPP*** Loan as a small business concern ***if it met both tests in SBA's "alternative size standard" as of March 27, 2020:*** (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. ***(Emphasis added)****….*

---

[2] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[3] Question 2 published April 6, 2020 and revised March 3, 2021 to reflect the consolidated interim final rule implementing updates to the PPP. This FAQ applies only to First Draw PPP Loans. Different eligibility requirements apply to Second Draw PPP Loans. See FAQ #63 and subsection (c) of the interim final rule for Second Draw PPP Loans.

Docket No. PFR-4336458510 et al.

4. **Question**: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?[4]
   **Answer**: No. It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications….

5. **Question**: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?[5]
   **Answer**: Yes. ***Borrowers must apply the affiliation rules***, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, ***or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable***. ***(Emphasis added)***.

63. **Question**: May applicants use SBA's established size standards (either revenue-based or employee-based) or SBA's alternative size standard to qualify for a Second Draw PPP Loan?
   **Answer**: No. Applicants may not use SBA's established size standards (either revenue based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan. In general, the size eligibility requirement for Second Draw PPP Loans are narrower than the size eligibility requirement for First Draw PPP Loans. With some exceptions, an applicant is eligible for a Second Draw PPP Loan only if it, together with its affiliates (if applicable), employs no more than 300 employees. The only exceptions are if an Applicant:
   • Is assigned a NAICS code beginning with 72 and employs no more than 300 employees per physical location, or
   • Is a news organization that is majority owned or controlled by a business concern that is assigned NAICS code 511110 or a NAICS code beginning with 5151 or is a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, and, in either case, employs no more than 300 employees per physical location.

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

---

[4] Question 4 published April 6, 2020.
[5] Question 5 published April 6, 2020 and revised March 3, 2021 to conform to subsections B.1.g.v., B.1.g.vii., and B.1.g.viii of the consolidated interim final rule implementing updates to the PPP and subsection (c) of the interim final rule on Second Draw PPP Loans.

On May 4, 2020, SBA issued Interim Final Rule #7 (IFR #7), which provides that in order to "preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020." 85 Fed. Reg. 26324, 26325 (May 4, 2020).

On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260, was enacted, extending the authority to make PPP loans through March 31, 2021, revising certain PPP requirements, and permitting Second Draw PPP Loans. 86 Fed. Reg. 8283. Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II.     PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(e), § 636m(e)(3), § 636m(f), and § 636m(b).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2)

Docket No. PFR-4336458510 et al.

Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA.  The Lender is required to provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[6]. 13 C.F.R. §134.1201(b)(1)-(4).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1210 and 13 C.F.R. § 134.1203.

### III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

## <u>FINDINGS OF FACT AND ANALYSIS</u>

After careful consideration of the entire record, including all pleadings, a preponderance of the evidence establishes:

### I.    Background
### <u>The CARES Act & EAA</u>

On March 27, 2020, the CARES Act became law. P.L.116-136.  It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1).  SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a).  The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

---

[6] SBA PPP lender notices are available from **SBA.gov** at   https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

Docket No. PFR-4336458510 et al.

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses.  For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b)  (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification..  The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(b), (f), and (g).

Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP

loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2).

Thus, the loan forgiveness process includes a two-step review by SBA of the Petitioner's underlying qualification during the covered period for the amount of PPP loan proceeds received (eligibility) and documentation to support approved use of the proceeds (forgiveness).

On December 27, 2020, the EAA became law. P.L.116-260 (December 27, 2020).

## Joint Stipulations

The parties jointly stipulated to the following:

1) SBA denied Petitioners' loan forgiveness applications finding, in part, that each of the Petitioners "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate."
2) Petitioners' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[7]
6) Petitioners disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Petitioners complied with SBA's requests for information.
8) Whether Petitioners satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal. (Joint Stipulations).

## Petitioner's PPP Loan Application and Lender Approval

On or about March of 2021, the Petitioners submitted PPP Borrower Application Forms 2483 through the Lender.  (Petitions – Denial Justification Document)

The Petitioners are owned equally by Simcha Hyman and Naftali Zanziper.   The Petitioners were approved for PPP loans by the Lender and individually received their PPP loan proceeds. 84 entities, owned equally by individuals Hyman and Zanziper, received first-draw PPP loans. (Joint Stipulations and Motion for Leave to File Consolidated Administrative Record).

---

[7] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and
10 were assigned to ALJ Trunick.

Docket No. PFR-4336458510 et al.

**Petitioner's PPP Loan Forgiveness Application and SBA Review**

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).

The Petitioners submitted PPP Loan Forgiveness Application Forms 3508, along with some documentation and the required certifications concerning the validity of expenses through the Lender.

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. On or about June 29, 2022, the Lenders determined the Petitioners should receive full loan forgiveness. (Petitions – "Denial Justification Document").

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision.

SBA notified the Lender it was reviewing the Appellants' PPP loans. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. Appellants complied with SBA's requests for information. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

On or about November 11, 2022, SBA issued final loan review decisions providing the Petitioners with $0.00 of PPP loan forgiveness, finding the Petitioners "part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." This rendered the Appellants ineligible for the PPP loans and precluded them from loan forgiveness. Of note, SBA forgave the first-draw PPP loans for 36 of these entities affiliated with the Petitioners. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

**Petitioner's Argument in Favor of Loan Forgiveness**

The Petitioner had the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Through written statement, the Petitioner argued in favor of full loan forgiveness, as follows:

Petitioners are separate and distinct operating companies from each other. No Petitioner is itself, a holding or parent company. Each Petitioner is owned by two individuals, Simcha Hyman and Naftali Zanziper, neither of which holds a majority of the membership interests in any Petitioner. No Petitioner has a parent company, thus, no Petitioner can share a common parent company with any of the other 47 Petitioners for which SBA is denying PPP loan forgiveness. Because none of the Petitioners has a "common parent," they are not a "single corporate group" for purposes of any purported $20,000,000 limitation on PPP loans. The Petitioners essentially argue clear error exists in the final SBA loan review decisions, as none of the Petitioner entities was owned at any time by a corporation or any other type of entity.

The Petitioners argue three points for the proposition: 1 ) SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA); 2) Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups; and 3) Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group"/"common parent'. Each argument is individually below.

All three arguments rely upon the language contained in SBA's Interim Final Rule (Docket Number SBA-2020-0023) of April 30, 2020 (IFR #7), which "placed a $20,000,000 limitation on the amount of PPP loans that businesses in a single corporate group can receive", as follows:

> To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. **For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent**. (Emphasis added in Petition).

## OHA Initial Decision

On March 8, 2023, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness finding the Petitioners were ineligible for their respective PPP loans having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. The Petitioners requests for Reconsideration uniformly raise assignments of legal and factual error in the prior decision, each addressed below.

Docket No. PFR-4336458510 et al.

## II.      Errors of Fact Asserted by the Petitioner

The Petitioner asserts assignments of error in the final SBA loan review decision and OHA Initial Decision, as follows:

> SBA's argument, and the March 8 Decision is premised on a clearly erroneous conclusion of law that is material to that Decision. Specifically, this Court erred in applying SBA's affiliation rules to the definition of "corporate parent." Nothing in the IFR or other guidance suggests that the affiliation rules apply to the IFR. Nor does the IFR or any related guidance suggest that SBA's Standard Operating Procedures 50 10 5 (f), Part 2, Section B, Ch. 3, 2.a. applies to the IFR (as the Court suggests in the March 8 Decision) or dictates that the affiliation rules should apply in determining the definition of "common parent" here. It appears to be the Court's position that simply by virtue of the fact that Appellant had to apply the SBA's affiliation rules to meet the alternative size test somehow means that Appellant should have assumed the affiliation rules would apply to the definition of "corporate group" as used in the IFR. In sum, there is no guidance on the definition of "common parent" as used in the IFR.2 Nor for that matter, is there any basis in law to conclude that two individuals each with 50% ownership interest in multiple companies meets the definition of "common parent." For the reasons set forth in Accordius' Appeal Petition, Appellant is not part of a "corporate group" with a "common parent" and thus, not subject to the $20,000,000 limitation. (Petition for Reconsideration).

## III.     PPP Loan Eligibility and Forgiveness

SBA denied the Petitioner's loan forgiveness application by holding the Petitioner's having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. The Petitioners argue this decision (and the OHA Initial Decision upholding the same) was in error, based upon the misapplication of the "common parent" to the Petitioners. The Petitioners remain with three arguments in favor of loan eligibility and forgiveness, each addressed below.

**<u>Argument #1</u> - SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA)**

The Petitioners argue this provision cannot be used to deny any of the Petitioners PPP Loan Forgiveness Applications, as the same was issued outside of the APA's statutorily mandated processes.

The APA is codified in 5 U.S.C. §§ 551–559 and applies to all agencies of the federal government. The APA provides the general procedures for various types of rulemaking. Agencies promulgate rules in a variety of methods that requiring notice-and-comment. 5 U.S.C. § 553.

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b). 15 U.S.C. § 9012.

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See* Camelot Banquet Rooms, Inc., et al. v. SBA, No. 21-2589, 2022 WL 221616 (7th Cir. 2022). Section 1114 of the CARES Act required the SBA Administrator to issue regulations to govern PPP and granted the SBA Administrator emergency rulemaking authority to carry out PPP. The CARES Act specifically waived the SBA Administrators notice and comment requirements under the APA. 15 U.S.C. § 9012. As such, the Petitioners' argument that SBA's issuance of the IFR #7 was in violation of the APA is without merit.

## **Argument #2 - Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups**

The Petitioners note the Administrator issued IFR #7 imposing a $20,000,000.00 limitation on a corporate group, owned directly or indirectly, by a common parent, where the CARES Act (and subsequent amendments) do not contain this limitation. The argument raised by the Petitioners concerns the Administrators authority to issue IFR #7.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an

ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Petitioner re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Petitioner*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Petitioner is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8.  Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

The Administrator, in consultation with the Secretary of the Treasury, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator concluded that a limitation of $20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints.  The Petitioners argument fails, as the Administrator has established a well-defined rule (IFR #7) and policy interpretation, for which OHA and the undersigned are without authority to invalidate.

**Argument #3** - **Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group'/"common parent'.**

As noted above, the Administrator, in consultation with Secretary of the Treasury, issued IFR #7, which imposed a $20,000,000.00 PPP maximum loan limitation for any corporate group.  The Petitioners, along with 46 other affiliated entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Petitioners' loans, entities affiliated with the Petitioners under 13 C.F.R. § 121.301 had already obtained funding for at least 36 PPP loans totaling more than $20,000,000. (Stipulated AR pp. 639-44)

Within IFR #7, the Administrator set forth the authority to create a corporate group maximum loan limitation under the CARES Act grant of authority to create "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.   The Administrator explained that Section 1102 of the CARES Act "provides that the Administrator 'may' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a 'maximum'— but not a minimum—loan amount." *See* 15 U.S.C. 636(a)(36)(B), (E); *see* also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).

The Administrator further stated that in order to "preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate." (IFR #7, footnote 1).

It became the responsibility of an applicant for a PPP loan to notify the lender if the applicant applied for or received PPP loans in excess of the amount permitted by IFR #7 and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. SBA specifically stated that failure by a PPP applicant to do would be regarded as a use of PPP funds for unauthorized purposes,

and the loan will not be eligible for forgiveness.   Additionally, a PPP lender was authorized to rely on an PPP applicant's representation (certification within the PPP Borrower Application Form 2483) concerning the applicant's compliance with IFR #7.

SBA has denied loan forgiveness finding the Petitioners are part of a corporate group and the recipients of PPP loan proceeds exceeding the $20,000,000.00 limitation.   The Petitioners argue that they do not meet the definition of a corporate group, the $20,000,000.00 limitation does not apply to them, and loan forgiveness is proper.   The Petitioners rely on Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1738 (2020) and Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) to assert that due the CARES Act and IFR #7's silence in defining corporate group, the ordinary public meaning for the terms 'corporate group' and 'common parent' must be applied.   The Petitioners focus on the term common parent and argue the ordinary public meaning is "a common parent corporation or common parent holding company."   The Petitioners argue that none of Petitioners are a common parent holding company and none have a common parent corporation.

SBA argues the AR, Petition, and applicable authorities demonstrate that (1) SBA had the authority to limit the amount of PPP funds a "corporate group" could obtain; (2) Petitioners were part of a corporate group with common parent Hyman/Zanziper that received over $20 million in PPP loans in the aggregate, (3) Petitioners' loans funded after the January 2021 IFR and after other borrowers within the corporate group had already received more than $20 million in PPP loans; and (4) Petitioners were thus ineligible for PPP loan forgiveness. (SBA Response).

The CARES Act subjected PPP borrowers to SBA's 7(a) program affiliation rules, as set forth in 13 C.F.R. § 121.301(f).[8]  Of note, Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to 13 C.F.R. § 121.301, thus PPP borrowers are subject to SBA's 2019 version of 13 C.F.R. § 121.301. (see 81 Fed. Reg. 41423).

Each PPP applicant must aggregate its own number of employees or revenue with that of all of its affiliates for the purposes of determining eligibility for a PPP loan.  PPP applicants are eligible for a First Draw PPP loan, when the applicant: (1) Qualifies as a small business concern as defined in section 3 of the Small Business Act, 15 U.S.C. § 632; (2) Along with its affiliates, have 500 or fewer employees whose principal place of residence is in the United States; (3) Along with its affiliates meet the SBA employee-based size or revenue standards for the industry in which they operate, (including the "alternative standard"; or (4) Is a nonprofit organization, veterans organization, or Tribal business concern as outlined in Section 1102(a)(i) of the CARES Act.[9]

---

[8] PPP Loan FAQs, No. 5.  While § 121.103 governs the SBA's general principles of affiliation, § 121.103(a)(8) states that "applicants in SBA's Business Loan [including the PPP], Disaster Loan, and Surety Bond Guarantee Programs" are to use "the size standards and bases for affiliation . . . set forth in § 121.301."

[9] PPP Loan FAQs, No. 3.  Our understanding of FAQ No. 3 is that it does not expand eligibility beyond the basic eligibility requirements for all applicants for SBA business loans outlined in 13 C.F.R. § 120.100, but we await further guidance clarifying this point.

The 2019 version of 13 C.F.R. § 121.301(f)(1-4) sets forth four principles that can establish an affiliation relationship between a PPP borrower and another entity: 1) Equity ownership; 2) Stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest, as follows:

1) Any entity that owns or has the power to control more than 50 percent of the borrower's voting equity is considered an affiliate of the borrower.  Further, SBA deems a minority shareholder exercises "negative control" if it has the ability, under the borrower's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.  If no such entity owns 50 percent of the equity, SBA will deem the Board of Directors, President, or CEO (or other officers, managing members, or partners who control the management of the concern) to be in control of the borrower. 13 C.F.R. § 121.301(f)(1).

2) SBA will consider stock options, convertible securities, and agreements to merge, as though the rights granted have been exercised, for purposes of determining whether an entity owns 50 percent of the borrower,. 13 C.F.R. § 121.301(f)(2).

3) Affiliation arises where the President or CEO (or other officers, managing members, or partners who control the management of the concern) of the PPP applicant also controls the management of one or more other concerns.  Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern, or entity controls management of the borrower through a management agreement. 13 C.F.R. § 121.301(f)(3).

4) Where close relatives share identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area), those concerns are affiliated. 13 C.F.R. § 121.301(f)(4).

PPP's affiliation rules provide direct policy interpretation concerning what entities are associated with each and count towards the small-business concern size standard.  Here, the parties agree the affiliation rules associate the Petitioners due to the common ownership existing for all Petitioners through Simcha Hyman and Naftali Zanziper.  IFR #7 explicitly subjects corporate groups to a $20,000,000.00 maximum loan limitation and takes care to note that this limitation applies, even if, the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Under the Small Business Act, a small-business concern includes, but is not limited to, enterprises that are engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. 15 U.S.C. § 632(a)(1).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of

business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800)   553-6847   or   1(703)   605-6000;   or   via   the   Internet   at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A business is eligible for PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, **AND together with its affiliates**, **it meets the size standard** (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. (Emphasis added). *See* 13 C.F.R. § 121.301(a-b).

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small.  The size standards described in 13 C.F.R. § 121.201 apply to all SBA programs unless otherwise specified within Title 13, Ch. 1, Part 121, Subpart A. 13 C.F.R. § 121.201.

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described in 13 C.F.R. § 121.301(f)(1-4) is sufficient to establish affiliation for applicants for SBA's Business Loan Programs, which includes the 7(a) Loan Program.  13 C.F.R. § 121.301(f).

It is the responsibility of the borrower to determine which entities (if any) are the borrower's affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.[10]  Lenders may accept and rely on signatures from a

---

[10] PPP Loan FAQs, No. 4.

Docket No. PFR-4336458510 et al.

single individual who is authorized to sign on behalf of the borrower.[11] Here, the Petitioners certified their PPP eligibility on the PPP Borrower Application Forms 2483 submitted to the Lender. (AR pp. 1-637).

The joint stipulations of the parties reflect the collective Petitioners were deemed a small-business concern after application of SBA's alternative size standards. This means the Petitioners, as a group, were eligible for one of SBA's 7(a) loan programs, to-wit: PPP. The sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Petitioners.

On April 3, 2020, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" to assist PPP applicants/borrowers in understanding the application of SBA's use of affiliation within PPP.[12] SBA explicitly noted the four of the affiliation tests set forth in 13 C.F.R. § 121.301(f) "based on control apply to participants" in PPP.[13] It was clear, prior to submitting borrower applications, the Petitioners were subject to at least four of SBA's 7(a) loan program affiliation rules.

Since 1996, SBA policy has been that the aggregate amount of the SBA portions of all loans to a single Borrower, including the Borrower's affiliates as defined in 13 C.F.R. § 121.301(f), must not exceed a guaranty amount as otherwise authorized by statute for a specific program. 13 C.F.R. § 120.151 ( *See* 61 FR 3235, Jan. 31, 1996, as amended at 68 FR 51680, Aug. 28, 2003; 76 FR 63546, Oct. 12, 2011; 81 FR 41428, June 27, 2016). In furtherance of this policy, SBA's SOP (effective April 1, 2019) addresses how maximum loan limitation amounts are determined for a small-business concern with affiliates. Specifically, SBA policy states: "**If affiliation exists, SBA's loan maximums apply to the Applicant, including all affiliates, as if all were a single business**." (Emphasis added). SOP 50 10 5(K), Part 2, Section B, Ch. 3, 2.a.[14][15]

Here, the CARES Act created a general maximum loan limitation for individual borrowers, but also authorized the Administrator to set SBA's guaranty of PPP loans. It is important to note that the Administrator's express authority under Section 1102 of the CARES Act to guarantee PPP loans is marked by the term **"may".** The Administrator exercised this authority within IFR #7 and created a $20,000,000.00 corporate group maximum loan limitation, as otherwise authorized by statute.

SBA has denied the Petitioners loan forgiveness applications by applying the existing 7(a) loan program policy wherein applicants that are affiliated to meet the definition of a small-business concern remain together, as a group, in applying a maximum loan limitation.

---

[11] PPP Loan FAQs, No. 11.

[12] https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf

[13] Of note, the four tests applicable to PPP are the same as appearing in 13 C.F.R. § 121.301(f)(1-4).

[14] SBA's Standard Operating Procedures (SOP) are issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov. 13 C.F.R. § 120.10.

[15] https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf

Docket No. PFR-4336458510 et al.

Through IFR #7, SBA has identified this grouping as a corporate group. The Petitioners should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group. Here, that limitation was set at $20,000,000.00. As such, the meaning of corporate group in IFR #7 has the same meaning as affiliate under existing 7(a) loan program policy.

The final SBA loan review decision relied upon this existing policy. Prior to issuing the decision, SBA found "the 'Naftali Simcha Family et al' (Petitioners) are one single corporate group via the 100% common ownership of Naftali Zanziper and Simcha Hyman (50% for each Petitioner). SBA interpreted the term corporate group to mean where a majority ownership by a common parent occurs either directly or indirectly. SBA finds that a common parent, for the purposes of PPP financing, can be defined as a being a corporation, trust or person(s.) When a corporation or trust has ownership, an in-depth review of the ownership of the corporation or trust should be completed to determine if an individual(s) has an indirect ownership that establishes a corporate group. Naftali Zanziper and Simcha Hyman each owns 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 84 loans. While the affiliated group of Naftali Zanziper and Simcha Hyman are eligible for PPP financing based on the Alternative Size Standard, they exceed the limit of $20,000,000 for a single corporate group established in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and Nonlnsured Depository Institution Lenders." (AR pg. 649).

The AR reflects the Petitioners, as affiliated under 13 C.F.R. § 121.301(f) with 46 other entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Petitioners' loans, entities affiliated with the Petitioners had already obtained funding of at least 36 PPP loans totaling more than $20,000,000. (AR pp. 639-644).

 As it directly relates to the Petitioners argument, SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), but the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Petitioners receipt of these PPP loans. This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act. When put together, the same clearly provide that when a 7(a) loan program applicant is required to affiliate entities to meet the definition of a small-business concern, the affiliated group of entities is carried forward when considering if any authorized maximum loan limitation has been reached.

Given the Petitioners eligibility under affiliation rules, as defined in 13 C.F.R. § 121.301(f), for these PPP loans, the aggregation of the Petitioners, as affiliates, is carried forward in evaluating whether the Petitioners reached the $20,000,000.00 PPP corporate group maximum loan limitation. The AR and Joint Stipulations reflect these Petitioners had already received $20,000,000.00 in PPP funds, thus were ineligible for the loans at issue.

Overall, the Petitioners are affiliates of each other, as defined by 13 C.F.R. § 121.301(f)(1-4). As of the date of applying for the PPP loans at issue, together with its affiliates, the Petitioners met the small-business concern alternative size standard. 13 C.F.R. § 121.301(a-

b). (Joint Stipulations).  The Administrator created a maximum loan limitation for PPP by limiting SBAs guarantee of PPP loans exceeding $20,000,000.00 for corporate groups. Section 1102 of the CARES Act.  As affiliation exists among the Petitioners, the PPP $20,000,000.00 corporate group maximum loan limitation applies to each Petitioner, as if all Petitioners were a single business, to-wit: a corporate group. SOP 50 10 5(K), Part 2, Section B, Ch 1: Basic 7(a) Loans, 1.c.  At the time of applying for the PPP loans, the aggregate amount of the SBA portions of all PPP loans to the Petitioners, including all affiliates as defined in 13 C.F.R. § 121.301(f), exceeded the $20,000,000.00 maximum loan limitation otherwise authorized by IFR #7. *See* 15 U.S.C. 636(a)(36)(E)(ii).  The Petitioners are a corporate group and were ineligible for the PPP loans at issue.

It was the responsibility of the Petitioners to determine which entities (if any) were their affiliates and certify the same to the Lender.  The Petitioners did determine its affiliates, certified the same to the Lender, and met the definition of small-business concern.  The Lender properly relied on the Petitioners certifications contained in the PPP Borrower Application Forms 2483 and 3508. Under IFR #7, it was also the Petitioners responsibility to notify the Lender if they had applied for or received PPP loans in excess of the $20,000,000.00 maximum loan limitation.  The Petitioners determined the $20,000,000.00 corporate group maximum loan limitation was not applicable.  This led the Petitioner to not execute the options available under IFR #7 to withdraw or request cancellation of any pending PPP loan applications or approved PPP loans not in compliance with the maximum loan limitation.  SBA specifically advised the Petitioners that failure to do so would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

The final SBA loan review decision held the Petitioners were ineligible for the PPP loans received having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness.  Given the foregoing, the final SBA loan review decision did not commit error in determining the Petitioners were ineligible for the PPP loans and subsequently precluded from loan forgiveness.  SBA did not commit error in denying loan eligibility or forgiveness.  The final SBA loan review decisions are well supported by the records and devoid of any clear errors of law or fact.  As such, the final SBA loan review decisions are **AFFIRMED**.

Docket No. PFR-4336458510 et al.

**CONCLUSION OF LAW**

The Petitioners are part of a corporate group that was ineligible for PPP Loan Numbers 3123528607, 8306238609, 3200798601, 3015918609, 3124028601, 5169688603, 5975278603, 5035908602, 8192158610, 8162528602, 6531908606, 6327628608, 8074818606, 1946638705, 1825438708, 7988958604, 2869798805, 3383808800, 3097548608, 4967028604, 2971158808, 2614148709, 2614318701, 7659928605, 2617258702, 1383928704, 1472948701, 1470638709, 2382638703, 1635078706, 1703648703, 1299808700, 1535178704, 1581268708, 1935708707, 6580538609, & 1993548705 at the time of applying for each PPP loan.  The Petitioners are ineligible for PPP loan forgiveness. The final SBA loan review decisions are not based on clear error of fact or law.

**ORDER**

For the reasons discussed above, the appeal petitions remain **DENIED**.

**SO ORDERED.**

_____
**Brian J. Haring**
U.S. Administrative Law Judge

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Anjac Fashion Buildings LLC**

     Appellant

Appealed from
SBA PPP Loan No. 4550359000

Issued: **September 26, 2022**

Decision No. **PPP-4550359000**

Appearances:
   Niv V. Davidovich, Attorney for the Appellant.
   Annette Mouton, Attorney for the Small Business Administration.

## DECISION

    After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of Anjac Fashion Buildings LLC (Appellant) is **DENIED**. For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

    On May 11, 2021, the Appellant (Borrower) submitted a Second Draw Paycheck Protection Program (PPP) Borrower Application. On May 20, 2021, the Appellant was approved for a PPP loan by Loan Source Incorporated (Lender) in the amount of $418,200.00, and received the loan proceeds.

    On December 6, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form through the Lender. On December 6, 2021, the Lender determined the Appellant should receive full loan forgiveness.

    On April 5, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and any subsequent loan forgiveness.

    On May 12, 2022, the Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

JA0532

On July 1, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by July 21, 2022, providing for the Appellant to file an Objection to the same by August 1, 2022, and allowing for SBA to file a Response to the Petition by August 15, 2022.

On July 19, 2022, the AR was filed. The Appellant did not file an Objection to the AR. SBA did not file a Response to the Petition. The AR was closed on August 15, 2022, at 5:00 P.M. Eastern.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $418,200.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

SOPs are SBA Standard Operating Procedures, as issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov in the online library. 13 C.F.R. § 120.10.

"Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible." SOP 50 10 5(K) pg. 105.

JA0533

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

SBA provided step-by-step guidance titled "Second Draw Paycheck Protection Program (PPP) Loans: How to Calculate Revenue Reduction and Maximum Loan Amounts Including What Documentation to Provide"[1]. In relevant part, the guidance provides:

**8. Question:** I am an LLC owner. Which set of instructions applies to me?

**Answer:** LLCs should follow the instructions that apply to their tax filing status in the reference period used to calculate payroll costs (2019 or 2020)—i.e., whether the LLC filed (or will file) as a sole proprietor, a partnership, or a corporation in the reference period....

The Internal Revenue Service (IRS) provides that: "A Limited Liability Company (LLC) is an entity created by state statute. Depending on elections made by the LLC and the number of members, the IRS will treat an LLC either as a corporation, partnership, *or as part of the owner's tax return (a "disregarded entity")*."[2] *(Emphasis added)*.

**2. Question**: I am self-employed and have employees, how do I calculate my maximum First Draw PPP Loan amount (up to $10 million) if I use net profit? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent by the borrower during the covered period following disbursement of the PPP loan.)

**Answer**: The following methodology should be used to calculate the maximum amount that can be borrowed if you are self-employed with employees, including if you are an independent contractor or operate a sole proprietorship and use net profit (but not if you are a partner in a partnership):

• **Step 1**: Compute your 2019 payroll costs by adding the following:

 o 2019 IRS Form 1040 Schedule C line 31 net profit amount:

  • if this amount is over $100,000, reduce it to $100,000,
  • if this amount is less than zero, set this amount at zero;

 o 2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, up to $100,000 per employee, which can be computed using:

  • 2019 IRS Form 941 Taxable Medicare wages & tips (line 5ccolumn 1) from each quarter, • Plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, and

---

[1] https://home.treasury.gov/system/files/136/Second-Draw-PPP-Loans--How-Calculate-Revenue-Reduction-Maximum-Loan-Amounts-Including-Documentation-Provide1192021.pdf
[2] https://www.irs.gov/businesses/small-businesses-self-employed/single-member-limited-liability-companies

JA0534

• Minus (i) any amount paid to any individual employee in excess of $100,000, and (ii) any amounts paid to any employee whose principal place of residence is outside the United States;

o 2019 employer contributions for employee group health, life, disability, vision, and dental insurance (the portion of IRS Form 1040 Schedule C 4 If you are using 2020 payroll costs and have not yet completed a 2020 return, fill it out and compute the value. As of March 12, 2021 line 14 attributable to those contributions); o 2019 employer contributions to employee retirement plans (IRS Form 1040 Schedule C line 19); and o 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

• **Step 2**: Calculate the average monthly payroll costs amount (divide the amount from Step 1 by 12).

• **Step 3**: Multiply the average monthly payroll costs amount from Step 2 by 2.5.

• **Step 4**: Add the outstanding amount of any EIDL made between January 31, 2020 and April 3, 2020 that you seek to refinance. Do not include the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid).

Your 2019 IRS Form 1040 Schedule C, IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with documentation of any retirement or group health, life, disability, vision, and dental contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date.

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

## II. PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. §

JA0535

636m(e).  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3).  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs.  15 U.S.C. § 636m(d)(8).  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(g).  Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[3].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1203.

---

[3] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA0536

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

On March 27, 2020, the CARES Act became law. P.L.116-136. On May 11, 2021, the Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD, which reflects the Appellant is a Limited Liability Company (LLC). (AR pp. 711-716).

On May 20, 2021, the Appellant was approved for a Second Draw PPP loan by the Lender in the amount of $418,200.00, and having executed a PPP Promissory Note received the loan proceeds on May 25, 2021. (AR pp. 19, 21-33, and 717).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). On December 6, 2021, the Appellant has submitted Form 3508EZ, along with some documentation and the required certification concerning the validity of expenses. (AR pp. 717-725).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On December 6, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $418,200.00 (AR pg. 19).

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On December 13, 2021, SBA notified the Lender and Appellant it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and documentation to support loan forgiveness. (AR pp. 700-701).

On December 20, 2021, SBA requested the Appellant's "2019 Q2 and 2020 Q2 P&L statements", all 2019/2020 W2's, 2019/2020 W3, 2019/2020 941's, 2019/2020 tax return, and all 2019/2020 State Quarterly Unemployment reports. (AR pp. 702-703).

JA0537

On January 5, 2022, SBA notified the Lender and Appellant it appeared the Appellant was an ineligible passive entity and requested documentation concerning the matter. (AR pp. 704-706).

In response, the Appellant's CFO, Mark Cohen, stated: "I do not believe that this is the correct Loan Program for the guidelines for a nationwide PPP Loan that was provided to almost every single type of business in this country as long as they were under the limit on number of employees and the funds were used for Payroll, utilities, and mortgage interest expense. I alone know of 18 other real estate businesses just like ours that have received PPP Loans and subsequent loan forgiveness." (AR pg. 689).

After review of the Appellant's loan and responses, SBA found: "100% of the income for ANJAC is rental income, which is passive and therefore ineligible." (AR pg. 710).

On April 5, 2022, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA held the Appellant is "organized as an ineligible Passive Entity." SBA noted the "federal tax returns confirms the majority of Borrower's income is passive rental income." This rendered the Appellant ineligible for the PPP loan and correspondingly ineligible for loan forgiveness. (AR pp. 19-20).

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106. Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. §553(b)  (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of

JA0538

Docket No. PPP-4550359000

business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

The final SBA loan review decision found the Appellant to be a self-described investment company, developer, landlord, and property manager. In denying loan forgiveness, SBA has relied upon the ineligibility provisions within the 7(a) business loan program found at 13 C.F.R. § 120.110(c), IFR #1, and SOP 50 10 5(K).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b).

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

Through written statement, the Appellant makes several arguments in favor of full loan forgiveness, as set forth below:

**Argument 1**: **"I do not believe that this is the correct Loan Program for the guidelines for a nationwide PPP Loan that was provided to almost every single type of business in this country as long as they were under the limit on number of employees and the funds were used for Payroll, utilities, and mortgage interest expense." Further, the Appellant argues the Second Draw Borrower Application Form provides an applicant is generally eligible if it received a First Draw PPP loan, has not more than 300 employees and can document at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.** (AR pg. 689).

JA0539

Within this argument, essentially, the Appellant argues it is a business concern with not more than 300 employees, met Second Draw PPP standards, and SBA lacked authority to apply the additional loan eligibility criteria found at 13 C.F.R. § 120.110(c). Regardless of meeting the base CARES Act eligibility requirements and demonstrated proper use of the PPP loan proceeds, a PPP applicant must meet all SBA 7(a) business loan eligibility requirements. Among these requirements are 13 C.F.R. § 120.110(c), IFR #1, and SOP 50 10 5(K).

Congress created SBA through the Small Business Act of July 30, 1953. SBA is under the general direction and supervision of the President and may not be affiliated with or be within any other agency or department of the Federal Government. The management of SBA is vested in an Administrator who shall be appointed from civilian life by the President, by and with the advice and consent of the Senate. The Administrator is authorized to appoint Associate Administrators (AA) to assist in the execution of the functions vested in the SBA. One such AA is the Chief Hearing Officer, who administers the Office of Hearings and Appeals (OHA). OHA was established to "impartially decide matters relating to program decisions of the Administrator". The AA of OHA is the Chief Hearing Officer and is responsible to the Administrator. The Chief Hearing Officer is responsible for the operation and management of OHA. Pub. L. 85–536 (July 18, 1958); as Amended through Pub. L. 117–6 (March 30, 2021); 15 U.S.C. § 631 et seq.; 72 Stat. 384 et seq.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

JA0540

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

For the foregoing reasons, OHA and the undersigned are without authority to invalidate SBA's regulation or its interpretation of the CARES Act rendering passive business entities ineligible for PPP loans.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. *See* 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new

product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a term and condition of that program, that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)." SBA explained in the Standard Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692 (January 14, 2021) that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

For over the last 25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. *See* Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective at the time of its PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

The 11th Circuit and several district courts have recognized the PPP lending program as a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020); *see United States SBA v. Vestavia Hills, Ltd.*, No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); *Diocese of Rochester v. United States SBA*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."); *In re Penobscot Valley Hosp.*, No.

JA0542

19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021).

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. *See* Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP).

As it relates to SBA applying 7(a) Loan Program requirements to PPP loans, *In re Gateway Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020)*, held that: 1) SBA did not exceed its authority in adopting its bankruptcy exclusion rule for PPP eligibility; 2) the rule was not contrary to the CARES Act and was based on a reasonable interpretation of the Act, and 3) SBA did not act arbitrarily and capriciously in adopting the bankruptcy exclusion rule.

In reaching this conclusion, the Court conducted the two-part analysis set forth in *Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)* and determined that SBA did not exceed its statutory authority. Under *Chevron,* first, the court must determine whether Congress spoke directly to the question at issue. If so, then the court defers to the statute. If Congress did not address the issue in question in the statute itself, then the court must determine if the agency's response to the statute is based on a "permissible" interpretation of the statute. If so, then the court must defer to the agency. Addressing *Chevron* part 1, the Court determined that Congress had not directly spoken on the issue of bankrupt debtors' eligibility for the PPP and that Congress' silence on the issue indicated its delegation of authority to SBA. The Court addressed head-on the argument raised by the Appellant in the instant case that SBA could only consider the eligibility factors expressly listed in the CARES Act:

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. *See* 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.201. And in doing so the Act provides that "any business concern . . . shall be eligible" for a PPP loan if it "employs not more than the greater of . . . 500 employees; or . . . if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II). Of course, "any" typically has an expansive meaning, *see Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, *see Kingdomware*, 136 S. Ct. at 1977.

> But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical

JA0543

because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. *See* 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.

Second, *Gateway* relies on a subsection of the CARES Act that delegates authority to lenders to make PPP loans and requires them to take into account two "considerations" when "evaluating the eligibility of a borrower." See 15 U.S.C. § 636(a)(36)(F)(ii)(II). One is whether the borrower "was in operation on February 15, 2020," and the other is whether it "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors, as reported on a Form 1099-MISC." *Id.* But that provision does not say those two considerations are the only ones. And for reasons we've discussed, it would make little sense if they were the only considerations or criteria for determining eligibility. The Act establishes some eligibility requirements, the size requirement, for example. *See* id. § 636(a)(36)(D)(i). And it waives some generally applicable § 7(a) requirements, such as the inability to obtain credit elsewhere. *See id.* § 636(a)(36)(I). It would render parts of the Act inoperative and superfluous if the two "considerations" were interpreted as the only ones. *See Corley*, 556 U.S. at 314.

. . .

The takeaway is: None of the individual statutory provisions that *Gateway* relies on provides an unambiguous answer to the question of whether bankruptcy debtors are eligible for PPP loans. Nor does the sum of those provisions. *Cf. Friends of the Everglades*, 570 F.3d at 1225 ("The broader context of the statute as a whole does not resolve the ambiguity.") (quotation marks omitted). Instead, the text of the CARES Act shows Congress placing the PPP within § 7(a), leaving intact the sound value requirement, and delegating rulemaking authority to the SBA. That is all the more important because in the Act Congress expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others. *Id.* at 1258-59 and 1261.

The Court then turned to *Chevron* part 2 and determined that SBA's bankruptcy exclusion rule was reasonable and therefore entitled to deference. *Id.* at 1261. When determining reasonableness, the Court is not permitted to substitute its own judgment for SBA's and must only consider "whether the SBA's interpretation is rational." *Id.* at 1261-62.

JA0544

Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic. Even though the purpose of the PPP was to quickly help small businesses in distress or before they became distressed, as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to "all" § 7(a) loans. *See* 15 U.S.C. § 636(a)(6). In that way, it identified "manifestly competing interests" that it "intended to accommodate." *Chevron*, 467 U.S. at 865. But it did not accommodate them with specificity when it came to whether bankruptcy debtors are eligible for PPP loans. It left that to the SBA. The SBA's interpretation of the CARES Act and § 7(a) was a reasonable accommodation of those interests.

The Court found SBA did not act arbitrarily or capriciously in adopting its bankruptcy exclusion rule. The passive entity exclusion found in 13 C.F.R. § 120.110(c) mirrors in all regards the Section 7(a) Loan Program bankruptcy exclusion. While the undersigned lacks authority to ultimately rule on the validity of 13 C.F.R. § 120.110, it is clear the undersigned is required to apply the Section 7(a) Loan Program lender ineligibility regulation of 13 C.F.R. § 120.110(c) to the Appellant's PPP loan.

### **Argument 2: The Appellant is not a Passive Business. (Petition of Appellant).**

The Appellant argues it is not excluded from PPP participation under 13 C.F.R. § 120.110(c), as it "is an active, busy property manager and employs more than 30 people in a variety of property management roles, including maintenance, bookkeeping, finance, and related management activities." (AR pg. 4). The Appellant argues that under SBA regulation 13 C.F.R. § 107.720(b)(1), "A business is passive if (i) it is not engaged in a regular and continuous business operation (for purposes of this paragraph (b), the mere receipt of payments such as dividends, rents, lease payments, or royalties is not considered a regular and continuous business operation); or (ii) its employees are not carrying on the majority of day to day operations, and the company does not provide effective control and supervision, on a day to day basis, over persons employed under contract; or (iii) it passes through substantially all of the proceeds of the Financing to another entity,". (AR pg. 5).

The Appellant argues that none of the hallmarks defining a passive business entity set forth in 13 C.F.R. § 107.720(b)(1) apply to its business operations. The Appellant points out that:

1) "Appellant is actively engaged in the regular and continuous operation of a property management business, providing the range of services typically offered by such enterprises, such as the administration of maintenance of properties, dealing with tenant issues, leasing, disposition of security deposits, negotiating rental terms, and related activities;

2) "the employees are the individuals who do the vast majority of the work of the Appellant, engaging in day to day operations in the various activities listed herein under the supervision of the Appellant's principals and managers"; and

JA0545

3) "the financing (i.e., loan proceeds) was not passed through to any other entity; To the contrary, the funds were used solely to pay for the employees' wages and benefits." (AR pp. 5-6).

The Appellant supports this argument by pointing to the Internal Revenue Code, which defines a passive activity is defined by 26 U.S.C. § 469(c)(1), as an activity "(A) which involves the conduct of any trade or business, and (B) in which the taxpayer does not materially participate." Additionally, for tax purposes, "rental activity is considered "passive activity" unless "(i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (ii) such taxpayer performs more than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates." 26 U.S.C. §§ 469(c)(2), 469(c)(7)(B).

Here, the Appellant disputes the "Passive Business" status placed upon it by SBA. In reviewing the Appellant's loan forgiveness application, SBA requested and received copies of the Appellant's 2019 Federal tax return, Profit and Loss Statement, and other expenses. The SBA review process and decision rely upon the Appellant's self-assigned North American Industry Classification System (NAICS) classification placing the Appellant's business operations as a passive activity. 13 C.F.R. § 120.110. In terms of loan eligibility, the Appellant applied for and received a First Draw PPP loan under 120 U.S.C. § 636(a)(36). Thereafter, Congress authorized Second Draw PPP loans through the enactment of 15 U.S.C. § 636(a)(37). The Appellant applied for and was given a Second Draw PPP Loan. The Appellant's PPP Borrower Application for this Second Draw PPP Loan self-identifies the Appellant's NAICS code as "531120". (AR pg. 711).

NAICS is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy. NAICS was developed under the auspices of the Office of Management and Budget (OMB), and adopted in 1997 to replace the Standard Industrial Classification (SIC) system. It was developed jointly by the U.S. Economic Classification Policy Committee (ECPC), Statistics Canada, and Mexico's Instituto Nacional de Estadistica y Geografia, to allow for a high level of comparability in business statistics among the North American countries. https://www.census.gov/naics/

NAICS codes were revised by the U.S. Census Bureau in 2012, 2017, and 2022. For calendar years 2017 through 2021, NAICS code 531120 was defined as: "Lessors of Nonresidential Buildings (except Miniwarehouses)." Additionally, the "This industry comprises establishments primarily engaged in acting as lessors of buildings (except miniwarehouses and self-storage units) that are not used as residences or dwellings. Included in this industry are: (1) owner-lessors of nonresidential buildings; (2) establishments renting real estate and then acting as lessors in subleasing it to others; and (3) establishments providing full service office space, whether on a lease or service contract

basis. The establishments in this industry may manage the property themselves or have another establishment manage it for them."[4]

Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds are ineligible for SBA business loans. 13 C.F.R. § 120.110(c). PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

The final SBA loan review decision found the Appellant to be a self-described investment company, developer, landlord, and property manager. In denying loan forgiveness, SBA has relied upon the ineligibility provisions within the 7(a) business loan program found at 13 C.F.R. § 120.110(c) and IFR #1. As noted above, the undersigned is required to apply the Section 7(a) Loan Program lender ineligibility regulation of 13 C.F.R. § 120.110(c) through IFR #1 to the Appellant's PPP loan. SBA found the Appellant's primary business operations, as reflected in the financial/tax documentation consistent with the Appellant's self-identified NAICS code of 531120. The Appellant, in essence, argues that it is not a passive business owned by a developer or landlord, nor did it acquire or improve any assets with the loan proceeds it received. Thus, the Appellant argues it does not meet the definition of an ineligible passive entity set forth in 13 C.F.R. § 120.110.

This Appellant's PPP loan eligibility was subject to SBA review. In reviewing the entire AR, the Appellant is an LLC that does not file independent Federal income tax returns. Consistent with IRS guidance and the admissions of the Appellant, the Appellant is a disregarded entity for tax purposes. The Appellant's tax filings occur through the single member owner's 2019 IRS Form 1040. SBA FAQ #8 provides that an LLC's PPP loan eligibility is determined by the LLC's Federal income tax filing status. Here, that status can only be viewed as that of a self-employed individual with employees. This requires PPP eligibility to be determined using FAQ #2 (Self-employed person with employees).

The AR reflects the NAICS code used by the Appellant in securing this PPP loan is, by definition, reflective of business entity that is a lessor of nonresidential buildings. The definition further contemplates the business entity managing the property themselves. Such an entity has been defined by SBA as a passive entity and precluded from SBA 7(a) business loan programs, including PPP. The AR clearly reflects the Appellant manages its nonresidential property and NAICS code 531120 is appropriate. The Appellant is the single member owner who primarily derives his income from nonresidential property leasing.

---

[4] https://www.naics.com/naics-code-description/?code=531120#:~:text=NAICS%20Code%3A%20531120%20Lessors%20of,(except%20Miniwarehouses)%20%7C%20NAICS%20Association

Overall, the final SBA loan review decision is not in error in determining the Appellant was ineligible for this PPP loan pursuant to 13 C.F.R. § 120.110 and IFR #1.

**Argument 3**: **SBA committed an error of law in basing a decision on the personal tax returns of the single member owner.** (Petition of Appellant).

The Appellant argues that SBA committed error in relying upon the personal tax return of the Appellant LLC's single member owner. The Appellant argues it is a separate entity from the single member owner and derives none of its income from any passive income stream. The Appellant argues that SBA must review the Appellant's PPP loan eligibility based upon the borrowing entities financial/tax records and not the single member owner's financial/tax records.

Within the Petition, the Appellant makes the following admissions:

1) "Anjac Fashion Buildings, LLC, does not file tax returns as it is a disregarded entity for federal tax purposes" (Citing 26 C.F.R. § 301.7701-2(c)(2)(i);
2) The entity applying/receiving this PPP loan "did not provide the SBA with a tax return";
3) The Appellant's "only member is Steve Needleman";
4) The Federal income return supplied to the Lender/SBA to support this PPP loan was *"Mr. Needleman's **personal** tax return"*;
5) "Mr. Needleman derives a portion of his income from receipt of rental payments". (Petition pg. 6).

As noted above, this Appellant's PPP loan eligibility was subject to SBA review. In reviewing the entire AR, the Appellant is an LLC that does not file independent Federal income tax returns. Consistent with IRS guidance and the admissions of the Appellant, the Appellant is a disregarded entity for tax purposes. The Appellant's tax filings occur through the single member owner's 2019 IRS Form 1040. SBA FAQ #8 provides that an LLC's PPP loan eligibility is determined by the LLC's Federal income tax filing status. Here, that status can only be viewed as that of a self-employed individual with employees. This requires PPP eligibility to be determined using FAQ #2, which utilizes a borrower's 2019 IRS Form 1040 Schedule C line 31 net profit amount.

The final SBA loan review decision relied upon the Appellant's 2019 IRS Form 1040 Schedule C line 31. As such, SBA did not commit error.

**Argument 4**: *Arguendo,* **the Appellant did not use PPP funds to purchase property and the passive entity exclusion of 13 C.F.R. § 120.110(c) is inapplicable**. (Petition of Appellant).

While still denying the Appellant is a passive business entity and asserting SBA improperly used the sole owners personal tax return to establish PPP loan eligibility, the

JA0548

Docket No. PPP-4550359000

Appellant provides, *arguendo,* that based upon the sole owners personal tax return the Appellant would still be eligible for this Second Draw PPP. The Appellant asserts the proceeds of this PPP loan were used to pay wages and other expenses permitted by the PPP. The Appellant points out it did not use the PPP loan proceeds to purchase land or any other asset.

The Appellant's argument relies upon SBA's general authorization to utilize passive entity exceptions set forth at 13 C.F.R. § 120.120, which provides a Borrower of an SBA business loan may use the loan proceeds from any SBA loan to:

(1) Acquire land (by purchase or lease);
(2) Improve a site (e.g., grading, streets, parking lots, landscaping), including up to 5 percent for community improvements such as curbs and sidewalks;
(3) Purchase one or more existing buildings;
(4) Convert, expand or renovate one or more existing buildings;
(5) Construct one or more new buildings; and/or
(6) Acquire (by purchase or lease) and install fixed assets (for a 504 loan, these assets must have a useful life of at least 10 years and be at a fixed location, although short-term financing for equipment, furniture, and furnishings may be permitted where essential to and a minor portion of the 504 Project).

The Appellant points out that the exclusion of from PPP under 13 C.F.R. § 120.110(c) is for a loan to "passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved **with the loan proceeds**." (Emphasis of Appellant). As set forth in the Petition, the argument is premised on *the rationale set forth in National Association of Home Builders, et al, v. United States Small Business Association*, No. 20-11780, 2021 WL 4458660 (E.D. Mich. August 28, 2021).

Essentially, the Appellant argues that 13 C.F.R. § 120.110(c) would only exclude the Appellant (assuming SBA properly utilized the sole owners personal tax return) from PPP eligibility if the PPP loan proceeds were used to acquire or improve the Appellant's underlying land/building holdings.

The argument is contrary to a plain reading of 13 C.F.R. § 120.110(c). In general, SBA will allow a 7(a) business loan to a passive entity seeking to improve lands/buildings in a passive business under 13 C.F.R. § 120.120. As noted above, PPP is part of SBA's 7(a) business loan program. Within 13 C.F.R. § 120.110(c), the phrase "**improved with the loan proceeds**" further defines "**passive businesses owned by developers and landlords**". The language is used to specifically prohibit PPP loan proceeds from being given to a passive entity and used to improve a passive entities holdings. In terms of the Appellant's loan eligibility, this limitation has no bearing. SBA denied loan eligibility based upon the underlying borrower's primary income source (passive rental income). This regulation would only have bearing upon a determination by SBA that the Appellant misused otherwise validly received PPP loan proceeds.

JA0549

**Argument 5**: "I alone know of 18 other real estate businesses just like ours that have received PPP Loans and subsequent loan forgiveness." (AR pg. 689).

As it relates to the Appellant's argument concerning PPP loan approval for other similarly situated borrowers, it is an argument for estoppel. Estoppel bars a party from doing something different from what has been done before or what has been legally established as true. The United States Supreme Court has determined as a general rule, the Federal Government may not be estopped from enforcing public laws, even though private parties may suffer hardship as a result in a particular case (Office of Personnel Management v. Richmond, 496 U.S. 414 (1990); see also Department of Justice Manual . In other words, in enforcing the applicable PPP law(s) SBA cannot be prevented (i.e. estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application. The applicable laws, regulations, and policy make clear that each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy. *See* 15 U.S.C. § 636(a)(36); 15 U.S.C. § 636m; IFR #1, #15, #20. As such, estoppel is not applicable to this matter.

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant is a passive entity ineligible for PPP Loan Number 4550359000. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 4550359000.

JA0550

Docket No. PPP-4550359000

## ORDER

    For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

### SO ORDERED.

_____
**Brian J. Haring**
U.S. Administrative Law Judge

---

### NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. §1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. §134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA0551

# United States Small Business Administration
# Office of Hearings and Appeals

**PETITION FOR RECONSIDERATION**:

Anjac Fashion Buildings LLC

      Petitioner

RE: *PPP Anjac Fashion Buildings LLC*,
    SBA No. PPP- 4550359000 (2022)

Issued: **October 11, 2022**

Docket No. **PFR-4550359000**

## NOTICE AND ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received a Petition for Reconsideration (PFR) in the above-captioned matter on October 6, 2022. The PFR was assigned to Administrative Law Judge Brian J. Haring for adjudication. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 subpart L.

### I. Notice to All Parties

I find the PFR to have been timely filed following issuance of Decision No. PPP-4550359000 on September 26, 2022. 13 C.F.R. § 134.1211(c). To prevail on a PFR, the Petitioner must clearly show an error of fact or law material to the decision. *Id.*

### II. Instructions to Respondent SBA

SBA may respond to the PFR. Any such response must be filed and served no later than **November 10, 2022,** at which time the record in this matter will close.

### III. Filing and Service Instructions

Ordinarily, a party seeking to file and serve any pleading or other submission in a PPP case must do so by utilizing the OHA Case Portal. The OHA Case Portal, however, cannot currently accommodate PFRs. Therefore, all further filings and service in this case shall be made by e-mail. Parties should check their record addresses on the attached certificate of service. Unless otherwise instructed, that address is where all further papers (including the decision) in these proceedings will be served

Filing is the **RECEIPT** by OHA of the pleading or other submission to OHAPPPinquiries@sba.gov. Service means providing a copy of the submission to other parties (or their attorneys), including OHA. 13 C.F.R. § 134.204(c).

JA0552

Docket No. PFR-4550359000

**All submissions** must contain the Docket Number shown above and **must be e-mailed** to:

Office of Hearings and Appeals
U.S. Small Business Administration
409 Third Street, S.W., 8th Floor
Washington, DC  20416
ATTENTION:  Administrative Law Judge Brian J. Haring
Email:  OHAPPPinquiries@sba.gov

**SO ORDERED.**

_____

**BRIAN J. HARING**
Administrative Law Judge

JA0553

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on October 11, 2022, I served the foregoing Notice and Order by e-mail upon the following:

Anjac Fashion Buildings LLC
PPP# 4550359000
Niv Davidovich, Attorney for Borrower
North Hollywood, CA 91606
Email: niv@davidovichlaw.com

Annette Mouton, General Attorney
U.S. Small Business Administration
Washington, DC
Email: Annette.Mouton@sba.gov
Email: pppappealsogc@sba.gov
Email: olitservice@sba.gov

*Bonnie Riggleman*

Bonnie Riggleman
Office of Hearings and Appeals

JA0554

## United States Small Business Administration
## Office of Hearings and Appeals

**PAYCHECK PROTECTION PROGRAM**
**APPEAL OF**:

**Anjac Fashion Buildings LLC**

      Petitioner

RE:
*PPP Appeal of Anjac Fashion Buildings LLC*,
SBA No. PPP-4550359000 (2022)

Issued: **January 4, 2023**

Decision No. **PFR-4550359000**

Appearances:
      Niv Davidovich, Davidovich Stein Law Group, Attorney for the Appellant.
      Annette Mouton, Attorney for the Small Business Administration.

### RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-4550359000, the appeal petition of Anjac Fashion Buildings LLC (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

### PROCEDURAL HISTORY

On May 11, 2021, the Petitioner submitted a Paycheck Protection Program (PPP) Borrower Application. On May 20, 2021, the Petitioner was approved for a PPP loan by Loan Source Incorporated (Lender) in the amount of $418,200.00, and having executed a PPP Promissory Note received the loan proceeds. On December 6, 2021, the Petitioner submitted a PPP Loan Forgiveness Application through the Lender. On December 6, 2021, the Lender determined the Petitioner should receive full loan forgiveness.

On April 5, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and any subsequent loan forgiveness.

On May 12, 2022, the Petitioner filed an appeal from that final SBA loan review decision. Appellant argued the Final SBA Loan Review Decision was clearly erroneous, and requested the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant eligible for PPP loan forgiveness.

On July 1, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by July 21, 2022, providing for the Petitioner to file an Objection to the same by

JA0555

August 1, 2022, and allowing for SBA to file a Response to the Petition by August 15, 2022.

On July 19, 2022, the AR was filed. The Petitioner did not file an Objection to the AR and SBA did not file a Response to the Petition. The AR was closed on August 15, 2022, at 5:00 PM Eastern.

On September 26, 2022, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness. On October 6, 2022, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-4550359000. On October 11, 2022, the undersigned issued a Notice and Order allowing for SBA to file a Response to the Request for Reconsideration no later than November 10, 2022. SBA did not file a Response and the AR was closed on November 10, 2022, at 5:00 PM Eastern.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-4550359000 contains clear error of law or fact to allow the Appellant $418,200.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.     Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

SOPs are SBA Standard Operating Procedures, as issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov in the online library. 13 C.F.R. § 120.10.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

"Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible." SOP 50 10 5(K) pg. 105.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

SBA provided step-by-step guidance titled "Second Draw Paycheck Protection Program (PPP) Loans: How to Calculate Revenue Reduction and Maximum Loan Amounts Including What Documentation to Provide"[1] (Q&A). In relevant part, the guidance provides:

**8. Question:** I am an LLC owner. Which set of instructions applies to me?

**Answer:** LLCs should follow the instructions that apply to their tax filing status in the reference period used to calculate payroll costs (2019 or 2020)—i.e., whether the LLC filed (or will file) as a sole proprietor, a partnership, or a corporation in the reference period....

The Internal Revenue Service (IRS) provides that: "A Limited Liability Company (LLC) is an entity created by state statute. Depending on elections made by the LLC and the number of members, the IRS will treat an LLC either as a corporation, partnership, ***or as part of the owner's tax return (a "disregarded entity")***."[2] ***(Emphasis added)***.

**2. Question**: I am self-employed and have employees, how do I calculate my maximum First Draw PPP Loan amount (up to $10 million) if I use net profit? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent by the borrower during the covered period following disbursement of the PPP loan.)

**Answer**: The following methodology should be used to calculate the maximum amount that can be borrowed if you are self-employed with employees, including if you are an independent contractor or operate a sole proprietorship and use net profit (but not if you are a partner in a partnership):

• **Step 1**: Compute your 2019 payroll costs by adding the following:

o 2019 IRS Form 1040 Schedule C line 31 net profit amount:

• if this amount is over $100,000, reduce it to $100,000,
• if this amount is less than zero, set this amount at zero;

o 2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, up to $100,000 per employee, which can be computed using:

• 2019 IRS Form 941 Taxable Medicare wages & tips (line 5ccolumn 1) from each quarter, • Plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, and

---

[1] https://home.treasury.gov/system/files/136/Second-Draw-PPP-Loans--How-Calculate-Revenue-Reduction-Maximum-Loan-Amounts-Including-Documentation-Provide1192021.pdf
[2] https://www.irs.gov/businesses/small-businesses-self-employed/single-member-limited-liability-companies

• Minus (i) any amount paid to any individual employee in excess of $100,000, and (ii) any amounts paid to any employee whose principal place of residence is outside the United States;

o 2019 employer contributions for employee group health, life, disability, vision, and dental insurance (the portion of IRS Form 1040 Schedule C 4 If you are using 2020 payroll costs and have not yet completed a 2020 return, fill it out and compute the value. As of March 12, 2021 line 14 attributable to those contributions); o 2019 employer contributions to employee retirement plans (IRS Form 1040 Schedule C line 19); and o 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

• **Step 2**: Calculate the average monthly payroll costs amount (divide the amount from Step 1 by 12).

• **Step 3**: Multiply the average monthly payroll costs amount from Step 2 by 2.5.

• **Step 4**: Add the outstanding amount of any EIDL made between January 31, 2020 and April 3, 2020 that you seek to refinance. Do not include the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid).

Your 2019 IRS Form 1040 Schedule C, IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with documentation of any retirement or group health, life, disability, vision, and dental contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date.

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

## II.    PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e).

JA0558

Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[3].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1203.

### III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

---

[3] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

## FINDINGS OF FACT AND ANALYSIS

### I. Background

### The CARES Act & EAA

On March 27, 2020, the CARES Act became law. P.L.116-136. It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(A) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15,

JA0560

Docket No. PFR-4550359000

2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2). Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

On December 27, 2020, the EAA became law. P.L.116-260 (December 27, 2020).

**Petitioner's PPP Loan Application and Lender Approval**

On May 11, 2021, the Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD, which reflects the Petitioner is a Limited Liability Company (LLC). (AR pp. 711-716).

On May 20, 2021, the Petitioner was approved for a Second Draw PPP loan by the Lender in the amount of $418,200.00, and having executed a PPP Promissory Note received the loan proceeds on May 25, 2021. (AR pp. 19, 21-33, and 717).

**Petitioner's PPP Loan Forgiveness Application and SBA Review**

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. §636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. §636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). On December 6, 2021, the Petitioner submitted Form 3508EZ, along with some documentation and the required certification concerning the validity of expenses. (AR pp. 717-725).

JA0561

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. §636m(b). Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. §636m(g).

On December 6, 2021, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $418,200.00 (AR pg. 19).

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On December 13, 2021, SBA notified the Lender and Petitioner it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and documentation to support loan forgiveness. (AR pp. 700-701).

On December 20, 2021, SBA requested the Petitioner's "2019 Q2 and 2020 Q2 P&L statements", all 2019/2020 W2's, 2019/2020 W3, 2019/2020 941's, 2019/2020 tax return, and all 2019/2020 State Quarterly Unemployment reports. (AR pp. 702-703).

On January 5, 2022, SBA notified the Lender and Petitioner it appeared the Petitioner was an ineligible passive entity and requested documentation concerning the matter. (AR pp. 704-706).

In response, the Petitioner's CFO, Mark Cohen, stated: "I do not believe that this is the correct Loan Program for the guidelines for a nationwide PPP Loan that was provided to almost every single type of business in this country as long as they were under the limit on number of employees and the funds were used for Payroll, utilities, and mortgage interest expense. I alone know of 18 other real estate businesses just like ours that have received PPP Loans and subsequent loan forgiveness." (AR pg. 689).

After review of the Petitioner's loan and responses, SBA found: "100% of the income for ANJAC is rental income, which is passive and therefore ineligible." (AR pg. 710).

On April 5, 2022, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA held the Petitioner is "organized as an ineligible Passive Entity." SBA noted the "federal tax returns confirms the majority of Borrower's income is passive rental income." This rendered the Petitioner ineligible for the PPP loan and correspondingly ineligible for loan forgiveness. (AR pp. 19-20).

JA0562

Docket No. PFR-4550359000

**Petitioner's Argument in Favor of Loan Forgiveness**

Through written statement, the Petitioner made several arguments in favor of full loan forgiveness, as follows:

**Argument 1**: "I do not believe that this is the correct Loan Program for the guidelines for a nationwide PPP Loan that was provided to almost every single type of business in this country as long as they were under the limit on number of employees and the funds were used for Payroll, utilities, and mortgage interest expense." Further, the Appellant argues the Second Draw Borrower Application Form provides an applicant is generally eligible if it received a First Draw PPP loan, has not more than 300 employees and can document at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. (AR pg. 689).

**Argument 2:** The Appellant is not a Passive Business. (Petition of Appellant).

**Argument 3:** SBA committed an error of law in basing a decision on the personal tax returns of the single member owner. (Petition of Appellant).

**Argument 4**: *Arguendo,* the Appellant did not use PPP funds to purchase property and the passive entity exclusion of 13 C.F.R. § 120.110(c) is inapplicable. (Petition of Appellant).

**Argument 5**: "I alone know of 18 other real estate businesses just like ours that have received PPP Loans and subsequent loan forgiveness." (AR pg. 689).

**OHA Initial Decision**

On September 26, 2022, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness finding the Appellant ineligible for the PPP loan. This matter is before the undersigned following a Request for Reconsideration filed by the Petitioner alleging errors of law and/or fact in the OHA Initial Decision, each addressed below.

**II.     Errors of Fact Asserted by the Petitioner**

The Petitioner asserts several assignments of legal and factual error in the OHA Initial Decision, as follows:

**1)  ANJAC QUALIFIES FOR PPP LOAN FORGIVENESS AS "...ANY BUSINESS CONCERN..."**

a.  Anjac Meets the Loan Forgiveness Criteria Required By 15 U.S.C. § 636(A)(36)(D)(I).

The Petitioner argues the language of 15 U.S.C. § 636(a)(36)(D)(i) was not intended by Congress to be governed by the restrictions of Section 7(a) of the Small Business Act. As

JA0563

such, SBA should be precluded from applying any criteria outside of that set forth by Congress given the holding in W. Virginia v. Env't Prot. Agency, 213 L. Ed. 2d 896, 142 S. Ct. 2587, 2608 (2022). Specifically, the Petitioner argues the SBA IFR #1 and SOP 50 10 5(K) run contrary to 15 U.S.C. § 636(a)(36)(D)(i).

### b. The Supreme Court Has Dramatically Limited and Modified the Scope of Chevron

The Petitioner argues that the COVID-19 pandemic represents a once-in-a-century calamity and one of the "extraordinary cases" contemplated by W. Virginia v. Env't Prot. Agency, 213 L. Ed. 2d 896, 142 S. Ct. 2587, 2608 (2022). The Petitioner argues the holding therein precludes SBA from implementing regulations that frustrate the "major questions" doctrine. To that end, the Petitioner argues that any imposed policy from SBA that frustrates the purpose of the PPP loan program under 15 U.S.C. § 636(a)(36)(D) (**keep people employed at any business venture**) would not receive Chevron deference. (emphasis added by Petitioner).

### 2) ANJAC IS NOT A PASSIVE ENTITY PRECLUDED FROM PPP LOAN FORGIVENESS

#### a. Anjac Engages in Regular and Continuous Business Activity

The Petitioner argues the definition of a passive business, as set forth in 13 C.F.R. § 108.720, is refuted by the AR, as follows:

"Indeed, Anjac provided the SBA with documentation showing that, in 2019, Anjac derived approximately $3 million dollars in income from non-rent collection activities by Anjac employees. (See Appendix, Table 1A.) Those activities ranged from actively assisting and being involved in tenant repairs/replacements to landscaping to licensing entertainment events at properties managed by Anjac. (See Appendix, Table 1A.) Similarly, Anjac incurred considerable expenses in connection with managing those properties, including payroll, all manner of property repair and maintenance, and event setup/preparation. (See Appendix, Table 1B.) For 2019, Anjac incurred approximately $5.5 million dollars in expenses. (See Appendix, Table 1B.) Anjac's ability to earn $3 million dollars, and incur expenses of $5.5 million, is simply contrary to any notion that Anjac is a "passive entity" doing nothing more than "the mere receipt of payments such as dividends, rents, lease payments, or royalties…" (13 C.F.R. § 108.720(b).)

The same holds true for Anjac's 2020 revnue and expenses – although the 2020 revenue and expenses show the dramatic impact on the COVID-19 pandemic. Indeed, Anjac's employee related revenue in 2020 dipped to only approximately $1.5 million – down from $3 million the year before. (See Appendix, Table 2A.) In other words, Anjac's employees engaged in the same exact activities as 2019 (i.e. tenant repairs/replacements to landscaping to licensing entertainment events), but garnered half of the income in 2020. (See Appendix, Table 2A.) And as expected, Anjac's expenses showed a similar decline in 2020, dropping to approximately $4.5 million. (See Appendix, Table 2B.) Thus, between 2019 and 2020, Anjac's employees generated

approximately $4.5 million dollars revenue for Anajac while overseeing approximately $10 million dollars in expenses incurred by the company.

The Petitioner continues that with "respect to 13 C.F.R. § 108.720(b)'s requirement that the company's employees be involved in the majority of day-to-day operations, one only needs to look at Anjac's "telecommunications" expenses over the course of 2019 and 2020. Indeed, in 2019, Anjac spent approximately $84,000.00 on telecommunications expenses, while in 2020, Anjac spent approximately $71,000.00 on telecommunications. (See Appendix, Table 1B and 2B.) These telecommunication expenses equate to an expense of over $2,000.00 per year per an employee. Simply put, with that staggering amount of telecommunications expense per an employee, the level of day-to-day involvement the employee must have spent communicating while involved in dayto-day operations is irrefutable. And notably, 13 C.F.R. § 108.720(b)(ii) specifically references "operations"– not "income" – as the defining criteria, thus while an entity may derive the majority of its revenue from rental income, such a condition does not mandate the entity be considered a "passive business" under 13 C.F.R. § 108.720(b)."

### b. Anjac is Entitled to Loan Forgiveness Under 13 C.F.R. § 120.110(c)

The Petitioner argues OHA's Decision states:

"The final SBA loan review decision found the Appellant to be a self-described investment company, developer, landlord, and property manager." (Decision, p. 16.) As explained in the prior section, Anjac's role as property manager is simply irrefutable based on Anjac's own financial statements. Further, SBA's admission that Anjac acts as a "property manager" is – for lack of a better term – dispositive on the issue of PPP Loan forgiveness in Anjac's favor. Under no circumstances can Anjac be considered a passive landlord that does nothing more than cash rent checks from tenants occupying a property under the terms of a triple-net lease that requires no active involvement from the landlord.

Further, 13 C.F.R. § 120.110 is entitled "What businesses are ineligible for SBA business loans?" purportedly precludes the SBA from extending loans to, inter alia, "Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)." (13 C.F.R. § 120.110(c).) Between 2019 and 2020, Anjac spent approximately $10 million dollars maintaining the properties it manages, while deriving $4.5 million dollars in non-rent revenue from those same properties. These non-rental sources of revenue, and corresponding expenses, preclude any notion that Anjac does not "use or occupy" the properties it manages. Indeed, Anjac spent over $1 million dollars on common area maintenance (CAM) in 2019, and over $1.1 million on CAM in 2020. Any claim that Anjac does not "use or occupy" properties, when spending such significant sums on maintenance for those properties, is simply contrary to any understanding or definition of "use or occupy."

Page 11 of 25

JA0565

Further, the Petitioner argues the OHA Decision applies a circular reading of 13 C.F.R. § 120.110(c). The Petitioner argues the phrase "improved with the loan proceeds" cannot possibly further define "passive businesses owned" if passive businesses are never eligible for loan proceeds – as the SBA contends in its denial of Anjac's loan forgiveness request. In other words, with this application, the Petitioner argues the statute would simply say "Passive businesses owned by developers and landlords." – full stop. The Petitioner argues the additional language regarding about use and occupation becomes "surplusage – and such an interpretation must be avoided whenever possible." (Corley v. United States, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009).)

The Petitioner argues to apply 13 C.F.R. § 120.110(c) in a manner that gives effect to the full language of the statute, in that, Anjac – even if considered a "passive business" – must still be found to "use or occupy" the properties it manages and thus 13 C.F.R. § 120.110(c) does not bar Anjac from seeking PPP Loan forgiveness.

c.  NAICS Designations Are Not Controlling For the Purposes of PPP Loan Forgiveness

The Petitioner argues the Initial OHA Decision and SBA have improperly relied upon NAICS codes, which came about due to the direction and guidance of the Office of Management and Budget (OMB) as the standard for use by Federal statistical agencies in classifying business establishments for the collection, tabulation, presentation, and analysis of statistical data describing the U.S. economy. (https://www.census.gov/naics & https://www.naics.com/ufaq/can-a-business-have-more-than-one-naics-code/#:~:text=The%20U.S.%20Census%20Bureau%20assigns)

The Petitioner argues the majority of properties Anjac manages are owned by others – and NAICS 531312 is actually more accurate because 531120 contemplates that the entity owning the property in question is also the entity managing the property. (NAICS Code 531120, "The establishments in this industry may manage the property themselves or have another establishment manage it for them.") The Petitioner points to Income Statements reflecting the Management Fee it collects for these management activities. (Petition for Reconsideration - See Appendix, Table 1B and 2B.)

The Petitioner argues Anjac serves as the property manager for those owners, and that the properties Anjac manages are nonresidential real estate. Accordingly, NAICS Code 531312 is the more apt code for the functions that Anjac serves in managing these properties. This designation is even more appropriate code for the purposes of determining PPP Loan forgiveness eligibility because the property management functions are the same functions that required Anjac to hire employees in the first place, and those same employees were able to remain employed due to the PPP Loan. Accordingly, for the purposes of PPP Loan considerations, Anjac should be considered to have an NAICS designation of 531312, a designation that accounts for Anjac's need to hire employees to manage properties and the corresponding need to obtain PPP Loan assistance to retain those employees.

JA0566

### 3) ANJAC'S TAX FILING STATUS IS IMMATERIAL FOR THE PURPOSES OF PPP LOAN FORGIVENESS

The Petitioner argues, in relevant part 15 U.S.C. § 636(a)(37)(J) states loan forgiveness shall be made available on the following terms: ***An eligible entity shall be eligible for forgiveness*** of indebtedness on a covered loan in an amount equal to the sum of the following ***costs incurred or expenditures made during the covered period...*** (emphasis added by Petitioner).

The Petitioner argues SBA based its determination, and resulting denial, on the fact that "[t]he federal tax return confirms the majority of Borrower's income is passive rental income." However, in reaching this conclusion, the Petitioner argues SBA considered Mr. Needleman's personal tax return, whom is the wrong entity. The Petitioner argues Anjac, not Mr. Needleman, is the entity that incurred the payroll costs, paid the wages, and kept its employees employed during the covered period. In other words, 15 U.S.C. § 636(a)(37)(J) limits loan forgiveness considerations to the entity that actually borrowed the money – i.e. Anjac – not Mr. Needleman. By doing so, the Petitioner argues SBA made its determination based upon a review of the tax status of the wrong entity and Anjac's eligibility for loan forgiveness must be determined based upon the application of 15 U.S.C. § 636(a)(37)(J), irrespective of Mr. Needleman's tax status and filings. And based upon that correct application of 15 U.S.C. § 636(a)(37)(J).

### III.    PPP Loan Eligibility and Forgiveness

SBA denied the Petitioner's loan forgiveness application by holding the Petitioner ""organized as an ineligible Passive Entity." SBA noted the "federal tax returns confirms the majority of Borrower's income is passive rental income." This rendered the Appellant ineligible for the PPP loan and correspondingly ineligible for loan forgiveness."

The Petitioner requests "OHA modify the Decision to reflect: (1) that the SBA lacks the authority to impose additional restrictions on Second Draw PPP Loan forgiveness beyond those expressly set forth in 15 U.S.C. § 636(a)(37); (2) that in the event the SBA can regulate Second Draw PPP Loans – Anjac is not a "passive entity" precluded from obtaining PPP Loan forgiveness; and (3) that Anjac's tax filing status has no bearing on its ability to claim PPP Loan forgiveness. And based upon those findings, Anjac is entitled to $418,200.00 in loan forgiveness on SBA Loan No. 4550359000." (Petition for Reconsideration pg. 9).

As it relates to Petitioner's Argument 1 and Assignment of Error 1(a) and 1(b), Congress created SBA through the Small Business Act of July 30, 1953. SBA is under the general direction and supervision of the President and may not be affiliated with or be within any other agency or department of the Federal Government. The management of SBA is vested in an Administrator who shall be appointed from civilian life by the President, by and with the advice and consent of the Senate. The Administrator is authorized to appoint Associate Administrators (AA) to assist in the execution of the functions vested in the SBA. One such AA is the Chief Hearing Officer, who administers the Office of Hearings and Appeals (OHA). OHA was established to "impartially decide matters relating to program decisions of the

JA0567

Administrator". The AA of OHA is the Chief Hearing Officer and is responsible to the Administrator. The Chief Hearing Officer is responsible for the operation and management of OHA. Pub. L. 85–536 (July 18, 1958); as Amended through Pub. L. 117–6 (March 30, 2021); 15 U.S.C. § 631 et seq.; 72 Stat. 384 et seq.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of

a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

For the foregoing reasons, OHA and the undersigned are without authority to invalidate SBA's regulation or its interpretation of the CARES Act rendering passive business entities ineligible for PPP loans.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. *See* 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a term and condition of that program, that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)." SBA explained in the Standard Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692 (January 14, 2021) that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

JA0569

For over the last 25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. *See Paycheck Protection Program*, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective at the time of its PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

The 11th Circuit and several district courts have recognized the PPP lending program as a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020); *see United States SBA v. Vestavia Hills, Ltd.*, No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); *Diocese of Rochester v. United States SBA*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."); *In re Penobscot Valley Hosp.*, No. 19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021).

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. *See* Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP).

As it relates to SBA applying 7(a) Loan Program requirements to PPP loans, *In re Gateway Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020)*, held that: 1) SBA did not exceed its authority in adopting its bankruptcy exclusion rule for PPP eligibility; 2) the rule was not contrary to

JA0570

the CARES Act and was based on a reasonable interpretation of the Act, and 3) SBA did not act arbitrarily and capriciously in adopting the bankruptcy exclusion rule.

In reaching this conclusion, the Court conducted the two-part analysis set forth in *Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)* and determined that SBA did not exceed its statutory authority. Under *Chevron,* first, the court must determine whether Congress spoke directly to the question at issue. If so, then the court defers to the statute. If Congress did not address the issue in question in the statute itself, then the court must determine if the agency's response to the statute is based on a "permissible" interpretation of the statute. If so, then the court must defer to the agency. Addressing *Chevron* part 1, the Court determined that Congress had not directly spoken on the issue of bankrupt debtors' eligibility for the PPP and that Congress' silence on the issue indicated its delegation of authority to SBA. The Court addressed head-on the argument raised by the Appellant in the instant case that SBA could only consider the eligibility factors expressly listed in the CARES Act:

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. *See* 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.201. And in doing so the Act provides that "any business concern . . . shall be eligible" for a PPP loan if it "employs not more than the greater of . . . 500 employees; or . . . if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II). Of course, "any" typically has an expansive meaning, *see Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, *see Kingdomware*, 136 S. Ct. at 1977.

> But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. *See* 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.

> Second, *Gateway* relies on a subsection of the CARES Act that delegates authority to lenders to make PPP loans and requires them to take into account two "considerations" when "evaluating the eligibility of a borrower." See 15 U.S.C. § 636(a)(36)(F)(ii)(II). One is whether the borrower "was in operation on February 15, 2020," and the other is whether it "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors, as

JA0571

reported on a Form 1099-MISC." *Id.* But that provision does not say those two considerations are the only ones. And for reasons we've discussed, it would make little sense if they were the only considerations or criteria for determining eligibility. The Act establishes some eligibility requirements, the size requirement, for example. *See* id. § 636(a)(36)(D)(i). And it waives some generally applicable § 7(a) requirements, such as the inability to obtain credit elsewhere. *See id.* § 636(a)(36)(I). It would render parts of the Act inoperative and superfluous if the two "considerations" were interpreted as the only ones. *See Corley*, 556 U.S. at 314.

. . .

The takeaway is: None of the individual statutory provisions that *Gateway* relies on provides an unambiguous answer to the question of whether bankruptcy debtors are eligible for PPP loans. Nor does the sum of those provisions. *Cf. Friends of the Everglades*, 570 F.3d at 1225 ("The broader context of the statute as a whole does not resolve the ambiguity.") (quotation marks omitted). Instead, the text of the CARES Act shows Congress placing the PPP within § 7(a), leaving intact the sound value requirement, and delegating rulemaking authority to the SBA. That is all the more important because in the Act Congress expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others. *Id.* at 1258-59 and 1261.

The Court then turned to *Chevron* part 2 and determined that SBA's bankruptcy exclusion rule was reasonable and therefore entitled to deference. *Id.* at 1261. When determining reasonableness, the Court is not permitted to substitute its own judgment for SBA's and must only consider "whether the SBA's interpretation is rational." *Id.* at 1261-62.

Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic. Even though the purpose of the PPP was to quickly help small businesses in distress or before they became distressed, as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to "all" § 7(a) loans. *See* 15 U.S.C. § 636(a)(6). In that way, it identified "manifestly competing interests" that it "intended to accommodate." *Chevron*, 467 U.S. at 865. But it did not accommodate them with specificity when it came to whether bankruptcy debtors are eligible for PPP loans. It left that to the SBA. The SBA's interpretation of the CARES Act and § 7(a) was a reasonable accommodation of those interests.

The Court found SBA did not act arbitrarily or capriciously in adopting its bankruptcy exclusion rule. The passive entity exclusion found in 13 C.F.R. § 120.110(c) mirrors in all regards the Section 7(a) Loan Program bankruptcy exclusion. While the undersigned lacks authority to ultimately rule on the validity of 13 C.F.R. § 120.110, it is clear the undersigned is required to apply the Section 7(a) Loan Program lender ineligibility regulation of 13 C.F.R. § 120.110(c) to the Appellant's PPP loan.

JA0572

Docket No. PFR-4550359000

As it relates to Petitioners Argument 2 and Assignment of Error #2(a-c), The Petitioner argues it is not excluded from PPP participation under 13 C.F.R. § 120.110(c), as it "is an active, busy property manager and employs more than 30 people in a variety of property management roles, including maintenance, bookkeeping, finance, and related management activities." (AR pg. 4). The Petitioner argues that under SBA regulation 13 C.F.R. § 107.720(b)(1), "A business is passive if (i) it is not engaged in a regular and continuous business operation (for purposes of this paragraph (b), the mere receipt of payments such as dividends, rents, lease payments, or royalties is not considered a regular and continuous business operation); or (ii) its employees are not carrying on the majority of day to day operations, and the company does not provide effective control and supervision, on a day to day basis, over persons employed under contract; or (iii) it passes through substantially all of the proceeds of the Financing to another entity,". (AR pg. 5).

The Petitioner argues that none of the hallmarks defining a passive business entity set forth in 13 C.F.R. § 107.720(b)(1) apply to its business operations. The Petitioner points out that:

1) "Appellant is actively engaged in the regular and continuous operation of a property management business, providing the range of services typically offered by such enterprises, such as the administration of maintenance of properties, dealing with tenant issues, leasing, disposition of security deposits, negotiating rental terms, and related activities;

2) "the employees are the individuals who do the vast majority of the work of the Appellant, engaging in day to day operations in the various activities listed herein under the supervision of the Appellant's principals and managers"; and

3) "the financing (i.e., loan proceeds) was not passed through to any other entity; To the contrary, the funds were used solely to pay for the employees' wages and benefits." (AR pp. 5-6).

The Petitioner supports this argument by pointing to the Internal Revenue Code, which defines a passive activity is defined by 26 U.S.C. § 469(c)(1), as an activity "(A) which involves the conduct of any trade or business, and (B) in which the taxpayer does not materially participate." Additionally, for tax purposes, "rental activity is considered "passive activity" unless "(i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (ii) such taxpayer performs more than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates." 26 U.S.C. §§ 469(c)(2), 469(c)(7)(B).

Here, the Petitioner disputes the "Passive Business" status placed upon it by SBA. In reviewing the Petitioner's loan forgiveness application, SBA requested and received copies of the Petitioner's 2019 Federal tax return, Profit and Loss Statement, and other expenses. The SBA review process and decision rely upon the Petitioner's self-assigned North American Industry Classification System (NAICS) classification placing the Petitioner's

JA0573

business operations as a passive activity.  13 C.F.R. § 120.110.  In terms of loan eligibility, the Petitioner applied for and received a First Draw PPP loan under 120 U.S.C. § 636(a)(36).  Thereafter, Congress authorized Second Draw PPP loans through the enactment of 15 U.S.C. § 636(a)(37).   The Petitioner applied for and was given a Second Draw PPP Loan.  The Petitioner's PPP Borrower Application for this Second Draw PPP Loan self-identifies the Petitioner's NAICS code as "531120". (AR pg. 711).

NAICS is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.  NAICS was developed under the auspices of the Office of Management and Budget (OMB), and adopted in 1997 to replace the Standard Industrial Classification (SIC) system. It was developed jointly by the U.S. Economic Classification Policy Committee (ECPC), Statistics Canada, and Mexico's Instituto Nacional de Estadistica y Geografia, to allow for a high level of comparability in business statistics among the North American countries. https://www.census.gov/naics/

NAICS codes were revised by the U.S. Census Bureau in 2012, 2017, and 2022.  For calendar years 2017 through 2021, NAICS code 531120 was defined as: "Lessors of Nonresidential Buildings (except Miniwarehouses)."  Additionally, the "This industry comprises establishments primarily engaged in acting as lessors of buildings (except miniwarehouses and self-storage units) that are not used as residences or dwellings. Included in this industry are: (1) owner-lessors of nonresidential buildings; (2) establishments renting real estate and then acting as lessors in subleasing it to others; and (3) establishments providing full service office space, whether on a lease or service contract basis. The establishments in this industry may manage the property themselves or have another establishment manage it for them."

Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds are ineligible for SBA business loans. 13 C.F.R. § 120.110(c).  PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

The final SBA loan review decision found the Petitioner to be a self-described investment company, developer, landlord, and property manager.  In denying loan forgiveness, SBA has relied upon the ineligibility provisions within the 7(a) business loan program found at 13 C.F.R. § 120.110(c) and IFR #1.  As noted above, the undersigned is required to apply the Section 7(a) Loan Program lender ineligibility regulation  of 13 C.F.R. § 120.110(c) through IFR #1 to the Petitioner's PPP loan.  SBA found the Petitioner's primary business operations, as reflected in the financial/tax documentation consistent with the Petitioner's self-identified NAICS code of 531120.  The Petitioner, in essence, argues that it is not a passive business owned by a developer or landlord, nor did it acquire

JA0574

or improve any assets with the loan proceeds it received. Thus, the Petitioner argues it does not meet the definition of an ineligible passive entity set forth in 13 C.F.R. § 120.110.

This Petitioner's PPP loan eligibility was subject to SBA review. In reviewing the entire AR, the Petitioner is an LLC that does not file independent Federal income tax returns. Consistent with IRS guidance and the admissions of the Petitioner, the Petitioner is a disregarded entity for tax purposes. The Petitioner's tax filings occur through the single member owner's 2019 IRS Form 1040. SBA Q&A #8 provides that an LLC's PPP loan eligibility is determined by the LLC's Federal income tax filing status. Here, that status can only be viewed as that of a self-employed individual with employees. This requires PPP eligibility to be determined using Q&A #2 (Self-employed person with employees).

The AR reflects the NAICS code used by the Petitioner in securing this PPP loan is, by definition, reflective of business entity that is a lessor of nonresidential buildings. The definition further contemplates the business entity managing the property themselves. Such an entity has been defined by SBA as a passive entity and precluded from SBA 7(a) business loan programs, including PPP. The AR clearly reflects the Petitioner manages its nonresidential property and NAICS code 531120 is appropriate. The Petitioner is the single member owner who primarily derives his income from nonresidential property leasing.

Overall, the final SBA loan review decision is not in error in determining the Petitioner was ineligible for this PPP loan pursuant to 13 C.F.R. § 120.110 and IFR #1.

As it relates to Argument 3 and Assignment of Error #3, The Petitioner argues that SBA committed error in relying upon the personal tax return of the Petitioner LLC's single member owner. The Petitioner argues it is a separate entity from the single member owner and derives none of its income from any passive income stream. The Petitioner argues that SBA must review the Petitioner's PPP loan eligibility based upon the borrowing entities financial/tax records and not the single member owner's financial/tax records.

Within the Petition, the Petitioner makes the following admissions:

1) "Anjac Fashion Buildings, LLC, does not file tax returns as it is a disregarded entity for federal tax purposes" (Citing 26 C.F.R. § 301.7701-2(c)(2)(i);
2) The entity applying/receiving this PPP loan "did not provide the SBA with a tax return";
3) The Petitioner's "only member is Steve Needleman";
4) The Federal income return supplied to the Lender/SBA to support this PPP loan was "Mr. Needleman's personal tax return";
5) "Mr. Needleman derives a portion of his income from receipt of rental payments". (Petition pg. 6).

As noted above, this Petitioner's PPP loan eligibility was subject to SBA review. In reviewing the entire AR, the Petitioner is an LLC that does not file independent Federal income tax returns. Consistent with IRS guidance and the admissions of the Petitioner, the Petitioner is a disregarded entity for tax purposes. The Petitioner's tax filings occur through

the single member owner's 2019 IRS Form 1040.  SBA Q&A #8 provides that an LLC's PPP loan eligibility is determined by the LLC's Federal income tax filing status.  Here, that status can only be viewed as that of a self-employed individual with employees.  This requires PPP eligibility to be determined using Q&A #2, which utilizes a borrower's 2019 IRS Form 1040 Schedule C line 31 net profit amount.

The final SBA loan review decision relied upon the Petitioner's 2019 IRS Form 1040 Schedule C line 31.  As such, SBA did not commit error.

As it relates to Argument 4, in denying the Petitioner is a passive business entity and asserting SBA improperly used the sole owners personal tax return to establish PPP loan eligibility, the Petitioner provides, *arguendo,* that based upon the sole owners personal tax return the Petitioner would still be eligible for this Second Draw PPP.  The Petitioner asserts the proceeds of this PPP loan were used to pay wages and other expenses permitted by the PPP.  The Petitioner points out it did not use the PPP loan proceeds to purchase land or any other asset.

The Petitioner's argument relies upon SBA's general authorization to utilize passive entity exceptions set forth at 13 C.F.R. § 120.120, which provides a Borrower of an SBA business loan may use the loan proceeds from any SBA loan to:

(1) Acquire land (by purchase or lease);
(2) Improve a site (e.g., grading, streets, parking lots, landscaping), including up to 5 percent for community improvements such as curbs and sidewalks;
(3) Purchase one or more existing buildings;
(4) Convert, expand or renovate one or more existing buildings;
(5) Construct one or more new buildings; and/or
(6) Acquire (by purchase or lease) and install fixed assets (for a 504 loan, these assets must have a useful life of at least 10 years and be at a fixed location, although short-term financing for equipment, furniture, and furnishings may be permitted where essential to and a minor portion of the 504 Project).

The Petitioner points out that the exclusion of from PPP under 13 C.F.R. § 120.110(c) is for a loan to "passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved **with the loan proceeds**." (Emphasis of Petitioner).  As set forth in the Petition, the argument is premised on **the rationale set forth in** *National Association of Home Builders, et al, v. United States Small Business Association*, No. 20-11780, 2021 WL 4458660 (E.D. Mich. August 28, 2021).

Essentially, the Petitioner argues that 13 C.F.R. § 120.110(c) would only exclude the Petitioner (assuming SBA properly utilized the sole owners personal tax return) from PPP eligibility if the PPP loan proceeds were used to acquire or improve the Petitioner's underlying land/building holdings.

JA0576

The argument is contrary to a plain reading of 13 C.F.R. § 120.110(c).  In general, SBA will allow a 7(a) business loan to a passive entity seeking to improve lands/buildings in a passive business under 13 C.F.R. § 120.120.  As noted above, PPP is part of SBA's 7(a) business loan program.  Within 13 C.F.R. § 120.110(c), the phrase "**improved with the loan proceeds**" further defines "**passive businesses owned by developers and landlords**".  The language is used to specifically prohibit PPP loan proceeds from being given to a passive entity and used to improve a passive entities holdings.  In terms of the Petitioner's loan eligibility, this limitation has no bearing.  SBA denied loan eligibility based upon the underlying borrower's primary income source (passive rental income).  This regulation would only have bearing upon a determination by SBA that the Petitioner misused otherwise validly received PPP loan proceeds.

As it relates to Argument 5, the Petitioner's argument concerning PPP loan approval for other similarly situated borrowers, it is an argument for estoppel.  Estoppel bars a party from doing something different from what has been done before or what has been legally established as true. The United States Supreme Court has determined as a general rule, the Federal Government may not be estopped from enforcing public laws, even though private parties may suffer hardship as a result in a particular case (Office of Personnel Management v. Richmond, 496 U.S. 414 (1990); see also Department of Justice Manual .  In other words, in enforcing the applicable PPP law(s) SBA cannot be prevented (i.e. estopped) from making a different decision on Petitioner's loan forgiveness application than it may have made on another party's application.  The applicable laws, regulations, and policy make clear that each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy.  *See* 15 U.S.C. § 636(a)(36); 15 U.S.C. § 636m; IFR #1, #15, #20.  As such, estoppel is not applicable to this matter.

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).  As the Petitioner is ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

JA0577

Docket No. PFR-4550359000

### IV.     Summary

A small business must meet SBA's ownership, operation, and size standards (15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. § § 121.101(a), 121.102(a), 121.201). The portion of the CARES Act the Appellant relies on (15 U.S.C. § 636(a)(36)(D)(i)) (i.e. Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern...shall be eligible to receive a covered [PPP] loan", if it meets SBA size standards (see 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II)).

Attention is called to Paragraph 36(D)(i) of 15 U.S.C. § 636(a) which begins with two relevant words, "In general—".  These words make clear the paragraph describes general eligibility requirements and does not create an absolute requirement guarantying PPP loan eligibility for any business concern.  Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e. paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act).  Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress.  The Appellant's argument is based on a misreading of Paragraph 36(D)(i), and does not provide a persuasive legal basis to make the extraordinary finding that any business concern meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act.

Eligible recipients of a PPP loan may receive loan forgiveness. 15 U.S.C. § 636(a)(36)(A)(ii) and (iv); 15 U.S.C. § 636m(a)(1) and (10). Here, the AR and admissions of the Petitioner reflect the Petitioner was not eligible to apply for a PPP loan separate as a passive entity.  Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B).  The PPP statute (15 U.S.C. § 636(a)(36) and (37)) does not exempt passive entities included in a First Draw PPP loan from the terms of other 7(A) loan requirements.  Such 7(A) loans include PPP loans. IFR #1, 85 Fed. Reg. Page 20812; 13 C.F.R. § 120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(ii), Page 104 .  The Petitioner was and remains ineligible for a PPP loan at the time of application.

The final SBA loan review decision is well-supported.  The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Appellant's application for loan forgiveness.  Therefore, the final SBA loan review decision is not based on clear error of fact or law.  Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the prior decision.  The final SBA loan review decision remains **AFFIRMED**.

JA0578

## CONCLUSION OF LAW

The Petitioner is a passive entity ineligible for PPP Loan Number 4550359000. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 4550359000.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**


_____
**Brian J. Haring**
U.S. Administrative Law Judge

JA0579

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on January 4, 2023, I served the foregoing Reconsideration Decision by e-mail upon the following:

Anjac Fashion Buildings LLC
PPP# 4550359000
Niv Davidovich, Attorney for Borrower
North Hollywood, CA 91606
Email: niv@davidovichlaw.com

Annette Mouton, General Attorney
U.S. Small Business Administration
Washington, DC
Email: Annette.Mouton@sba.gov
Email: pppappealsogc@sba.gov
Email: olitservice@sba.gov

*Bonnie Riggleman*
Bonnie Riggleman
Office of Hearings and Appeals

JA0580

# United States Small Business Administration
## Office of Hearings and Appeals

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF:<br><br>Anjac Fashion Buildings LLC<br><br>     Appellant<br><br>Appealed from<br>SBA PPP Loan Number<br>4550359000 | Issued: July 1, 2022<br><br>Docket No. PPP-4550359000 |

## NOTICE AND ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received an appeal petition in the above-captioned matter from Anjac Fashion Buildings LLC (Appellant) on May 12, 2022. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## I. **Administrative Record**

SBA shall file the Administrative Record with OHA electronically, via the OHA Case Portal, no later than **July 21, 2022**. The Administrative Record must contain every document relevant to Appellant's PPP loan that the SBA possessed on the date of its final loan review decision. See 13 C.F.R. § 134.1207.

## II. **Objection to Administrative Record**

Appellant shall file and serve, on or before **August 1, 2022**, any objections it has to the absence of any document in the Administrative Record. See 13 C.F.R. § 134.1207(e). Any objection not filed by this date will be deemed waived, regardless of any agreements between the parties. Appellant may object to the absence of a document, previously submitted to, or sent by, SBA, which Appellant believes was erroneously omitted from the Administrative Record. An objection to an incomplete Administrative Record must include either a copy or a detailed description of the missing document or other information Appellant believes is missing, and why Appellant believes the Administrative Record should include it.

## III. **Appeal Response**

SBA may, but is not required to, file a response to this appeal. If SBA files a response to this appeal, it must be filed by no later than **August 15, 2022**, which is the close of record. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. In addition, after review of the appeal petition, OHA may

JA0581

request SBA to respond. Only SBA may respond. If filed, the response should set forth the relevant facts and legal arguments to the issues presented on appeal. *See* 13 C.F.R. § 134.1208.

## IV. **Filing and Service Instructions**

A party seeking to file and serve any pleading or other submission must do so by utilizing the OHA Case Portal at https://appeals.sba.gov. A filing received by OHA after 5 p.m. eastern time is considered filed on the next business day. See 13 C.F.R. § 134.204(b)(2); § 134.1202.

## V. **PPP Loan Deferment**

Appellant must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1204(d).

*Thomas M Burke*

THOMAS BURKE
Administrative Judge

Docket No. PPP-6517827004

## United States Small Business Administration
## Office of Hearings and Appeals

<div style="border:1px solid black">

**EXHIBIT**

**D**

</div>

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

ATHR Management Company, LLC

Appellant

Appealed from
SBA PPP Loan Number
6517827004

Issued: July 6, 2022

Docket No. PPP-6517827004

Appearances: Michael Lockerby, Esq., for Appellant
               Kelle Acock, Esq., for SBA

## DECISION

## I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

## II. Background

### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L.116-136 (March 27, 2020).

Appellant applied for a PPP loan on April 3, 2020. (Administrative Record "AR" pp. 35-38. At the time of its application, Appellant certified it had 16 employees. (AR p. 35). PPP loan number 6517827004 ("the Loan") was disbursed to Appellant by the Lender April 14, 2020 in the amount of $302,197.00. (AR p. 42).

On December 8, 2020, Appellant executed a PPP Loan Forgiveness Application (Form 3508EZ) requesting forgiveness of the full amount of the Loan. (AR pp. 39-41). On its PPP Loan Forgiveness Application, Appellant certified it had 16 employees. (AR p. 39).

1

JA0583

Docket No. PPP-6517827004

On July 1, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested the Lender's analysis of Appellant's Forgiveness Application and information related to the Appellant's Loan (AR p. 27-28).  On September 30, 2021, SBA requested additional information as follows:

Please provide:

2019 941s – all four quarters

2019 payroll summary that separately list each employee year to date totals.

2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms.)

2019 employer retirement contributions (IRS Form 1120 line 23 or IRS Form 1120-S line 17.)

2019 employer health care contributions (IRS Form 1120 line 24 or IRS Form 1120-S line 18.)

Any lender memos or notes that may assist in calculating & verifying the borrower's loan amount.

2020 941 for Q1 and Q4

Payroll summary from 1/1/2020 to 3/31/2020 that separately list each employee and the total compensation during this period.

Payroll summary from 4/17/2020 to 10/1/2020 that separately list each employee and the total compensation during this period. The payroll summary uploaded does not list the individual employees.

IF APPLICABLE: Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause, voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions

IF APPLICABLE: Documentation supporting the certification, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records (AR p. 29-31).

It does appear by documentation in the Administrative Record that Appellant provided the requested documentation. (Administrative Record 2 "AR2" pp. 1-29).

2

Docket No. PPP-6517827004

On November 19, 2021, SBA issued a preliminary decision for full denial, requesting additional information as follows:

> The borrower exceeds the employee size standard.
> The borrower is not eligible for a waiver for employee count. The NAICS Code is 551112. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), All the companies listed on the 3511 are affiliates of one another because they are under the common control and ownership. This means that the employee count of the borrower is determined by adding its employees to those of all the related affiliates. Therefore, the borrower is deemed to have more than 500 employees, together with its affiliates. The employee count for eligibility is 5,330. The affiliates in this group that do have a NAICS Code that begins with 72 may be eligible. See Question 24 of the FAQ, dated July 29, 2021. https://home.treasury.gov/system/files/136/ Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

> Should the borrower believe they're eligible under a waiver for Receipt Based Standard or Alternative Size Standard, a new 3511 would need to be completed for ALL entities – both those that received PPP loans and those that did not receive PPP loans. Additional documentation may be needed after reviewing the requested documentation,

It does not appear by documentation in the Administrative Record that Appellant provided the requested documentation.

On February 9, 2022, after reviewing all the materials contained in the Administrative Record, the SBA issued its Final SBA Loan Review Decision:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.. (AR p.15-16, Dkt No. 2[1])

## B. Appeal

On March 4, 2022, 2021, Appellant filed its Appeal (Dkt No. 1). On April 20, 2022, OHA issued a Notice and Order. (Dkt. No. 18). The AR was timely filed by SBA on May 10, 2022 in two parts. (Dkt. Nos. 19 and 20). On May 20, 2022, the Appellant filed an objection to the AR. (Dkt. No. 21). The SBA filed a Motion to Extend Time to file a response and to extend the

---

[1] Dkt No. (Docket Number) refers to the order in which documents are filed in OHA Case Portal (the Portal).

3

JA0585

Docket No. PPP-6517827004

close of the record on June 6, 2022.  The undersigned granted that motion on June 7, 2022, extending the close of the record to July 5, 2022.  (Dkt No. 23)

Appellant's argument, in relevant part, is as follows:

> Even if the CARES Act permitted the SBA to revisit eligibility for PPP loans after the fact and apply its affiliation rules differently for purposes of loan forgiveness than it did for loan approval, the affiliates of the Restaurant Franchise Management Companies are—for purposes of the PPP Loan Program—exempt from the SBA's affiliation rules because they are franchises listed in the SBA Franchise Directory and/or have been assigned NAICS Code 722511.  (Dkt. No.1)

Essentially, Appellant states that their NAICS code is one of the codes that allows for waiver of SBA's affiliation rules, or in the alternative that they are a franchisee.

SBA submitted a response to the appeal on July 5, 2022, (Dkt. No. 24) arguing as follows, in pertinent part:

### A. OHA is Not the Proper Forum to Invalidate SBA's First Interim Final Rule or Interpretation of the CARES Act

[B]ased on prior OHA case law, the APA, and the Small Business Act, OHA should find that ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA regulations and interpretations. This includes being bound by SBA's First IFR available at the time, which states that businesses with "500 or fewer employees" are eligible if the business meets the "applicable SBA employee-based size standards for that industry, is a "small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act" 85 Fed. Reg. 20812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 121.301(f).6[2] The First IFR reflects SBA's reading of the CARES Act that it applies SBA regulations for the 7(a) Loan Program, including the regulation at 13 C.F.R. § 121.301(f), to the PPP. This interpretation is based on the text of the CARES Act language specifying that "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Therefore, the CARES Act placed the PPP within the 7(a) Loan Program.

---

[2] Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. See 5 U.S.C. §553; A Guide to the Rulemaking Process, p. 8 (www.federalregister.gov).

JA0586

Docket No. PPP-651782T004

In addition to lacking the authority to issue the decision, an OHA decision invalidating SBA's regulations based on district court decisions or circuit court decisions would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States as applied by OHA. For example, presumably, borrowers who exceed size standards in the 6th circuit would receive forgiveness under caselaw in that circuit, but in other circuits where there is caselaw recognizing that the PPP is a part of the existing Section 7(a) Loan, the same type of borrower would presumably not receive forgiveness.7[3] Further adding to the inconsistency, in circuits where there is no relevant case, the same type of borrower could be subject to an OHA judge's interpretation of the CARES Act. Similar to the reasoning in Family Choice, such a result is clearly not what the SBA Administrator intended. The First IFR signed by the Administrator reflects what the SBA Administrator intended and provides for consistent results across the country as the rule applies to all entities.

For the foregoing reasons, OHA should find that it is not the proper forum to invalidate SBA's regulation or its interpretation of the CARES Act.

### B. Under the CARES Act, PPP Loans Were Subject To The SBA 7(a) Loan Program Requirement in 13 CFR 121.301(f) And Therefore Appellant Is Ineligible For PPP Loan Forgiveness

Appellant does not appear to contest that OHA does not have the authority to invalidate SBA's regulations or interpretations of the CARES Act; rather Appellant appears to argue that the Diamond and Home Builders cases preclude SBA's application of the 7(a) loan program size standards to PPP [loans]. Again, Appellant is mistaken. Neither of those cases is dispositive. In addition, SBA continues to apply applicable size standards to all businesses that received a PPP loan. Contrary to any assertion that the Diamond or Home Builders case has invalidated SBA's application of size standards to the CARES Act, that unfounded assertion does not reflect the realty of SBA's current regulations and implementation of the PPP, which OHA does not have the authority to invalidate.

### C. SBA Was Correct In Its Determination That Appellant Exceeded Applicable Size Standards

Appellant does not dispute it exceeds the size standards for its industry. Instead, Appellant argues that it is exempt from SBA's affiliation rules

---

[3] There have been several federal court cases involving challenges to SBA's application of 13 C.F.R. § 120.110 or bankruptcy eligibility to the PPP. Consistent with SBA's First IFR, the D.C. Circuit and Court of Appeals for the 2nd and 11th Circuit and several district courts have recognized that the PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. See USF Fed. Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020); Pharaohs GC, Inc. v. United States Small Business Administration, No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021);American Association of Political Consultants v. U.S. SBA, No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA, 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020) United States SBA v. Vestavia Hills, Ltd., No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); Diocese of Rochester v. United States SBA, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020); In re Penobscot Valley Hosp., No. 19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021.

JA0587

Docket No. PPP-6517827004

because it is a franchise listed in the SBA Franchise Directory and has a NAICS Code of 722511. (Petition for Appeal, Dkt. 1, p. 11). Appellant appears to be relying on the CARES Act's waiver of the affiliation rules contained in 13 C.F.R. § 121.103 for "(1) any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a NAICS code beginning with 72" and "(2) any business concern operating as a franchise that is assigned a franchise identifier code by SBA." 15 U.S.C. 636(a)(36)(D)(iv)(I) and (II); see also SBA's Second IFR Paycheck Protection Program, 85 Fed. Reg. at 20818, Footnote 1 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020). Appellant's reliance on these provisions is mistaken.

### D. Appellant Is Ineligible For PPP Loan Forgiveness Because It Is Ineligible Under the PPP

SBA's eligibility rules have applied to the PPP loan program since the program's inception. The CARES Act and SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. 11 Despite multiple requests, Appellant failed to provide documentation during the loan review process to evaluate whether Appellant met the alternative size standard or SBA's Revenue based size standards. (AR Part 1, 56) Nor did Appellant provide such documentation or information as part of its Appeal. 21 Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). Thus, Appellant is, and has been, ineligible for PPP loan forgiveness and its Appeal seeking to overturn SBA's full denial of its PPP loan forgiveness request should be denied.[4]

---

[4] Although Appellant claims in its Appeal Petition that Lender and SBA approved and disbursed the loan the CARES Act, under the PPP, all PPP Lenders had delegated authority to make, originate and approve PPP loans. See 15 U.S.C. § 636(a)(36)(F)(ii); 85 Fed. Reg. 20811, 20815 (April 15, 2020), Business Loan Program Temporary Changes; Paycheck Protection Program. Therefore, SBA did not provide eligibility determinations for specific PPP applicants or loans. Rather, the Appellant, and all PPP borrowers, self-certified as to their eligibility on the Borrower Application Form (SBA Form 2483, 2483-C, 2483-SD, or 2483-SD-C), and the lender was permitted to rely on the borrower's certification to determine eligibility. 85 Fed.Reg. at 20812-20816. Under the PPP loan making process, a small business seeking a PPP loan submitted an application to an authorized lender which certified as to eligibility, then the lender determined whether the borrower was eligible based, in part, on reliance on the certifications, and whether it wished to make the loan. 85 Fed. Reg. 20812. If so, the lender submitted a guarantee application to the SBA, and upon issuance of an SBA loan number the lender disbursed the loan proceeds to the borrower. Id. at 20814 SBA did not make an eligibility determination. Appellant has provided no documentation indicating that SBA determined or should have determined the Appellant eligible for the Loan at any time. Instead, the Administrative Record and legal authorities demonstrate

6

Docket No. PPP-6517827004

SBA, in conclusion, stated that there is no doubt that the PPP was created by Congress as an additional program under SBA's 7(a) loan program and SBA, with authority from Congress, determined that The CARES Act, the Interim Final Rules, and SBA 7(a) program regulations and policies require businesses to meet applicable small business size standards to be eligible for PPP loans. Appellant has failed to meet its burden to show that SBA's determination, as supported by documents uploaded by the Lender on behalf of the Appellant in the Administrative Record, was based on a clear error of fact or law as required to warrant reversal of SBA's decision. Thus, OHA should affirm the SBA decision.

(SBA added Exhibit A to its brief but see Footnote 5 below.)

The record was closed on July 5, 2022.

### III. DISCUSSION

### A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

### C. Analysis

As stated by SBA in its reply to the appeal, OHA has no authority to invalidate a regulation, policy or rule issued relating to eligibility for PPP loans and forgiveness of them. Accordingly, its analysis is accepted to the extent permitted under the regulations relating to the authority of OHA.[5]

The following analysis emphasizes the pertinent argument by SBA:

### 1. Payroll Protection Program Size Standard

The Payroll Protection Program enabling legislation (CARES Act, Pub. L. 116-136) increased eligibility for certain businesses and set size standards for those businesses. With regard to certain entities, the legislation and regulations are clear. To be eligible for a PPP loan, the Appellant must be a "small business" and have 500 or fewer employees or meet the SBA employee-based size stands for the industry in which it operates. The legislation provides, in pertinent part:

> **(D)** Increased eligibility for certain small businesses and organizations. —

---

that the borrower was responsible for self-certifying its eligibility and the lender was responsible for reviewing the certifications to determine eligibility.

[5] See 13 CFR §134 Subpart L, especially 13 CFR §134.1211(e): Neither initial nor final decisions rendered by OHA under this subpart are precedential.

JA0589

Docket No. PPP-6517827004

**(i)** In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of—

**(I)**
500 employees; or

**(II)**
if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

ATHR Management Company LLC's own employee count was sixteen (16) at the time of the PPP application and the forgiveness application. (AR at p. 35-38 and 39-41, respectively). Thus, at first glance it would seem that Appellant should be entitled to forgiveness.

## 2. Affiliation Rule

SBA also promulgated Affiliation Rules regarding participation in the PPP program. It provides, in relevant part:

(3) Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement…

At Dkt. No. 12, Appellant identifies its affiliates in the affiliate worksheet included with its loan application. If the affiliates rule applies to ATHR Management LLC, the number of employees balloons to 5,330. *Id.* at p. 11. Appellant would thus be ineligible for a PPP loan based on the number of employees.

However, the affiliation rule does have limited exceptions. The rule provides in relevant part:

Waiver. The affiliation rules described above are waived for (1) any business concern with not more than 500 employees that, as of

JA0590

Docket No. PPP-6517827004

the date on which the loan is disbursed, is assigned a **North American Industry Classification System code beginning with 72**; (2) **any business concern operating as a franchise that is assigned a franchise identifier code by the SBA**;*Emphasis added.*

While some of Appellant's affiliates are either identified as franchises or have NAICS codes beginning with 72, Appellant is/does not.

Appellant argues in its appeal that it is eligible for waiver of the affiliation rules because it operates as a franchise and/or has an NAICS code beginning with 72. (Dkt. No. 1) Appellant described the operation of its business as follows:

> The principal business of ATHR was, as of April 3, 2020, the provision of payroll services to the following ATHR-affiliated companies that are APPLEBEE'S® franchisees: Apple Cal, LLC; Apple Texas Restaurants, Inc.; and Apple Houston Restaurants, Inc. ATHR's affiliates (*Id.* At p.3)

This does not appear to refer to a franchise, nor to a restaurant, but rather to a provision of services to other entities.  Notably, the Appellant never specifically identifies its own NAICS number in the appeal document. (Dkt. No. 1) However, documentation submitted by the Appellant reveals that its NAICS code number is actually 561110, which is designated as Office Administrative Services. (Dkt No.12 at p. 4) This conflicts with its implication that its NAICS number begins with 72, like some of its affiliates identified in the appeal. (Dkt. No. 1)

Additionally, there is no documentation in the AR or AR2, or provided by Appellant, that shows Appellant was assigned a franchise identifier code by SBA.   In fact, on its own Affiliation Worksheet, Appellant answered "no" to the question "Is Borrower a franchisee whose franchise identifier code is listed in SBA's Franchise Directory?" (Dkt No. 12 at p.3)

Thus, Appellant is not entitled to the Waiver of Affiliation Rules because the conditions for waiver do not apply.   Its number of affiliated employees (5,330) far exceeds 500, the maximum number required to be considered a small business, thus rendering Appellant ineligible for loan forgiveness.

## **C. Conclusion**

Based upon the foregoing**,** it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b); PPP Procedural Rule.

JA0591

Docket No. PPP-6517827004

A party may file a request for reconsideration within 10 calendar days after service of an initial decision. You can serve your petition via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov.

A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

_Clifford Sturek_
_____
Clifford Sturek
Administrative Judge

JA0592

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**AUTO FINANCE SOLUTIONS, LLC**

    **APPELLANT**

Appealed from:

SBA PPP Loan Number 8232657105

Issued: December 8, 2022

Docket No. PPP-8232657105

## DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

**SBA PPP Loan Number:** 8232657105

**Approved Loan Amount:** $114,200.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 131-133)[1].

SBA issued a final loan review decision denying the application after determining Appellant was ineligible for a PPP loan because it is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring, and that over 50 percent of its revenue comes from financing its sales (AR, Pages 8-9).

Appellant filed an appeal petition with SBA.

On **April 6, 2022**, the **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting filing deadlines for the administrative record, Appellant objections to the administrative record, SBA appeal response, and record closing.

On **April 13, 2022**, OHA granted SBA's motion to correct the Docket Number (i.e., SBA loan number) in this case.

SBA filed the administrative record on **April 22, 2022**.

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision are contained in the case record maintained in the **OHA Case Portal**.

JA0593

Docket No. PPP-8232657105

On **August 23, 2022**, OHA issued an Order modifying and extending the remaining filing deadlines for Appellant objections to the administrative record, SBA appeal response, and record closing, after this appeal was transferred to my (Judge Essmyer's) docket.

Appellant did not file objections to the administrative record.

SBA did not file an appeal response.

The record closed on **September 7, 2022.**

## ISSUE(S)

Is the final SBA loan review decision based on clear error of fact or law?

## APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[2], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36)).**

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m**).

It is the declared policy of Congress that the Federal Government, through the Administrator of SBA, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

---

[2] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq.***

- 2 -

JA0594

Docket No. PPP-8232657105

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

Increased eligibility for certain small business and organizations –

(i)    In general – During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in 15 USC §657(b)(2)(C), shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than greater of –

   (I)    500 employees; or

   (II)   if applicable, the size standard in number of employees established by SBA for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates (15 USC §636(a)(36)(D)(i)(I)-(II)).

For loan forgiveness, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

- 3 -

JA0595

For loan forgiveness, the term **covered period** means the period –

    (A) beginning on the date of the origination of a covered loan; and
    (B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –
        (i)   beginning on the date that is 8-weeks after such date of origination; and
        (ii)  ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

    (1) Payroll costs.
    (2) Any payment of interest on any covered mortgage obligation.
    (3) Any payment on any covered rent obligation.
    (4) Any covered utility payment.
    (5) Any covered operations expenditure.
    (6) Any covered property damage cost.
    (7) Any covered supplier cost.
    (8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

**Hold Harmless**

**(1) Definition**

The term initial or second draw PPP loan means a **covered loan** or loan under 15 USC §636(a), paragraph 37 (15 USC §636m(h)(1)).

**(2) Reliance**

A lender may rely on any certification or documentation submitted by an applicant for an initial or second draw PPP loan or an eligible recipient or eligible entity receiving initial or second draw PPP loan that—

    (A) is submitted pursuant to all applicable statutory requirements, regulations, and guidance related to initial or second draw PPP loan, including under 15 USC §636(a), paragraphs 36 or 37, and 15 USC §636m; and
    (B) attests that the applicant, eligible recipient, or eligible entity, as applicable, has accurately provided the certification or documentation to the lender in accordance with statutory requirements, regulations, and guidance (15 USC §636m(h)(2)(A)-(B)).

**(3) No Enforcement Action**

With respect to a lender that relies on a certification or documentation related to an initial or second draw PPP loan, an enforcement action may not be taken against the lender, and the lender

JA0596

Docket No. PPP-8232657105

shall not be subject to any penalties relating to loan origination or forgiveness of the initial or second draw PPP loan, if—

    (A) the lender acts in good faith relating to loan origination or forgiveness of the initial or second draw PPP loan based on that reliance; and

    (B) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the initial or second draw PPP loan (15 USC §636m(h)(3)(A)-(B)).

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[3] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

To apply for a PPP loan, the applicant must submit **SBA Form 2483** (Paycheck Protection Program Application Form) and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

**The lender must submit SBA Form 2484** (Paycheck Protection Program Lender's Application Form for 7(a) Loan Guaranty) electronically in accordance with program requirements and maintain the forms and supporting documents in its files (IFR #1, 85 Fed. Reg. Page 20814).

**The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs.** The Administrator will hold harmless any lender that relies on such borrower documents and attestation from the borrower (IFR #1, 85 Fed. Reg. Page 20815).

---

[3] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

- 5 -

JA0597

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

   i.    Banks;
   ii.   Life Insurance Companies (but not independent agents);
   iii.  Finance Companies;
   iv.  Factoring Companies;
   v.   Investment Companies;
   vi.  Bail Bond Companies;
   vii.  Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

   i.    A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.
   ii.   A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.
   iii.  A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.
   iv.  A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.
   v.   A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**The purpose of IFR #15** is to inform borrowers and lenders of SBA's process for reviewing PPP loan applications and loan forgiveness applications (IFR #15, 85 Fed. Reg. Page 33010).

*Borrower Eligibility:* SBA may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application (IFR #15, 85 Fed. Reg. Page 33012).

*Loan Amounts and Use of Proceeds:* SBA may review whether the borrower calculated the loan amount correctly and used loan proceeds for the allowable uses specified in the CARES Act (IFR #15, 85 Fed. Reg. Page 33012).

JA0598

Docket No. PPP-8232657105

*Loan Forgiveness Amounts:* SBA may review whether a borrower is entitled to the loan forgiveness amount claimed on the borrower's PPP loan forgives application (IFR #15, 85 Fed. Reg. Page 33012).

If SBA determines a borrower is ineligible for a PPP loan, SBA will direct the lender to deny the loan forgiveness application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The Administrator has determined to be an eligible recipient entitled to forgiveness under Section 1106(b) of the CARES Act, the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

A borrower may appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrow (IFR #15, 85 Fed. Reg. Page 33013).

**The purpose of IFR #20** is to update the First Loan Forgiveness Rule and First Loan Review Rule following passage of the Flexibility Act (IFR #20, 85 Fed. Reg., Page 38306).

To receive loan forgiveness, a borrower must complete and submit the **Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent)** to the lender (or the lender servicing the loan) (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications made in its PPP loan application), the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

OHA is established in SBA –

    (i)     to impartially decide matters related to program decisions of the Administrator; and,
    (ii)    to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)).

JA0599

Docket No. PPP-8232657105

Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

    (i)      a Hearing Officer may hear cases under section 554 of the APA;

    (ii)    a Hearing Officer shall have the powers described in section 556(c) of the APA; and,

    (iii)   the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[4] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

    (1) administer oaths and affirmations;

    (2) issue subpoenas authorized by law;

    (3) rule on offers of proof and receive relevant evidence;

    (4) take depositions or have depositions taken when the ends of justice would be served;

    (5) regulate the course of the hearing;

    (6) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);

    (7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;

    (8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;

    (9) dispose of procedural requests or similar matters;

   (10) make or recommend decisions in accordance with section 557 of the APA; and

   (11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).
When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

---

[4] **Section 556(b) of the APA** requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

- 8 -

JA0600

Docket No. PPP-8232657105

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

The appellant has the burden of proof in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

## FINDINGS OF FACT AND ANALYSIS

Based on the record, I make the following findings of fact (FOF):

1. Appellant's 2019 Federal tax return indicates Appellant is an automobile wholesaler and lists its business activity as NAICS code 423100 (AR Page 89) [5, 6, 7, 8, 9].

2. A 2019 income statement indicates Appellant had income of $1,335,057.26 from finance and debt servicing activities and $721,370.89 from vehicle sales, for a 2019 total gross income of $2,056.428.15 (AR, Pages 125-126).

3. On April 1, 2020, Appellant applied for a PPP loan (SBA Form 2483) in the amount of $121,867.50 (AR, Pages 131-133).

4. On April 24, 2020, the lender approved Appellant's PPP loan for $114,200.00, and disbursed the loan on April 27, 2020 (AR, Pages 1, 10-11).

---

[5] SBA uses the **North American Industry Classification System (NAICS)** to establish small business size standards (*see* 15 USC §632(a)(2)(A)-(B); 13 CFR §§121.101(a) and 102(a)).

[6] The **small business size standards by NAICS used by SBA** are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.20l.

[7] NAICS code **4231: Motor Vehicle and Motor Vehicle Parts and Supplies Merchant Wholesalers**

[8] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

[9] **A searchable NAICS website** is maintained by the U.S. Census Bureau at https://www.census.gov/naics/?99967.

- 9 -

JA0601

Docket No. PPP-8232657105

5. On February 5, 2021, Appellant applied for loan forgiveness (Form 3508S) in the full amount of the PPP loan ($114,200.00) (AR, Pages 134-135).

6. SBA selected Appellant's PPP loan for review (AR, Pages 127-130).

7. SBA denied Appellant's forgiveness application after determining Appellant was ineligible for a PPP loan because it receives over 50 percent of its revenue from sales financing (AR, Pages 9-10).

SBA carries out the policies of the Small Business Act (15 USC §633(a)).

The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)).

Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 USC §636(a)).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m).

The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)).

**Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

**In general**, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or qualified Tribal business concern is eligible to receive a PPP loan if it employs not more than the greater of – (I) 500 employees; or (II) if applicable, SBA's size standard in number of employees (15 USC §636(a)(36)(D)(i)(I)-(II)).

**The lender may rely** on any certification or documentation submitted by the borrower (15 USC §636m(h)(2)(A)-(B)).

No enforcement action may be taken against a lender that acts in good faith in originating a PPP loan (15 USC §636m(h)(3)(A)-(B)).

IFR #1 applies to PPP applications submitted through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

- 10 -

Docket No. PPP-8232657105

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812).

The lender does not have to verify the documentation submitted by the borrower and may rely on documents and attestation from the borrower (IFR #1, 85 Fed. Reg. Page 20815).

Financial businesses primarily engaged in the business of lending are not eligible for SBA business loans (13 CFR §120.110(b)).

SBA cannot guarantee loans to finance companies (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104).

**Limited circumstances** under which certain a lending business is eligible for an SBA loan include: A business that receives less than 50 percent of its revenue from financing its sales (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(ii), Page 104).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)).

For loan forgiveness, **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

If SBA determines a borrower was ineligible for a PPP loan, the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

To be an **eligible recipient** entitled to loan forgiveness the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**The appellant has the burden of proof in an appeal** of the final SBA loan review decision (13 CFR §134.1210).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

**THE RECORD SHOWS** Appellant is an auto wholesaler. The record also shows Appellant applied for and received a PPP loan. The record further shows SBA denied Appellant's PPP loan forgiveness application because Appellant receives more than 50 percent of its revenue from financing its sales and was ineligible to receive a PPP loan (FOF 1-7).

**IT ITS APPEAL PETITION,** Appellant does not dispute it engages in financing but argues its loan forgiveness application should be approved because SBA failed to act in good faith, acted arbitrarily, capriciously, and illegally, and abused its discretion in denying Appellant's application (Appeal Petition (AP), Pages 1-8).

Docket No. PPP-8232657105

I am not persuaded by Appellant's argument(s) for the following reasons:

**The CARES Act does not guarantee every business that meets SBA's size standards is eligible for a PPP loan.** The CARES Act (15 USC §636(a)(36)(D)(i)) (i.e., Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan" if it meets SBA size standards (*see* 15 USC §636(a)(36)(D)(i)(I)-(II)). Paragraph 36(D)(i), however, starts with two words, "In general—" that make clear the paragraph is a general eligibility requirement and not an absolute requirement that if met guarantees PPP loan eligibility for any business concern. A true and close reading of Paragraph 36(D)(i) reveals it as a general eligibility requirement allowing business concerns and other entities, most notably nonprofit organizations, not normally classified as small businesses to be considered PPP loan eligible if size standards are met. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e., paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single portion/paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. Such a reading of Paragraph 36(D)(i) also goes against accepted statutory construction practices[10], and does not provide a persuasive legal basis for me to make the extraordinary finding that any business concern meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[11, 12].

---

[10] **The United States Supreme Court has determined**, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

[11] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, **it is reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements** of Section 1102 of the CARES Act (15 USC §636(a)(36)) to receive a PPP loan.

[12] I note in vacating the Bankruptcy Court's injunction against SBA, **the Eleventh Circuit (11ᵗʰ Cir.) recently examined this provision of the CARES Act (15 USC §636(a)(36)(D)(i)):**

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. See 15 USC §636(a)(36)(D)(i); 13 CFR §121.201. And in doing so the Act provides that "any business concern…shall be eligible" for a PPP loan if it employs not more than the greater of…500 employees; or if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 USC §636(a)(36)(D)(i)-ii. Of course, "any" typically has an expansive meaning, see Jones v. Waffle House, Inc., 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, see Kingdomware, 136 S. Ct. at 1977. But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. See 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and

JA0604

**IFR #1 applies to all PPP loan applications received on or before June 30, 2020.** IFR #1 has both an *effective date* and an *applicability date*. The effective date, April 15, 2020, is the date IFR #1 was published in the *Federal Register* and the applicability date indicates IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted (IFR #1, 85 Fed. Reg. Page 20812). IFR #1 is effective without advance notice and is issued for the immediate implementation of the PPP (IFR #1, 85 Fed. Reg. Page 20812). Despite its immediate effective date, SBA did provide advance notice of IFR #1 by publishing the rule on the U.S. Department of Treasury (USDT's) website on April 2, 2020. IFR #1's applicability date makes clear the rule will apply to all loan applications received under the PPP. The record shows Appellant's PPP loan application was signed and submitted on April 1, 2020. The record also shows the lender approved the application on April 24, 2020 (AR, Pages 1, 10-11, 131-133; *see also* FOF 3-4). Appellant's PPP loan application was submitted and approved when IFR #1 was applicable to all applications. IFR #1 applies to Appellant's application and under IFR #1 financing companies are not eligible for PPP loans (IFR #1, 85 Fed. Reg. Page 20812; *see also* 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104) [13, 14, 15, 16, 17].

**Appellant is an ineligible business.** The record indicates Appellant is a company engaged in sales financing (AR, Pages 125-126; *see also* FOF 1-2). Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt finance and factoring companies from the terms of other 7(A) loans and under SBA regulations, policy, and guidance in effect when Appellant submitted its PPP loan application, finance and factoring companies are ineligible to receive small business loans (i.e., 7(A) loans), **including PPP loans** (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii-iv), Page 104). Although SBA policy allows some limited exceptions for financing companies, including

---

cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria (*In Re: Gateway Radiology Consultants,* 983 F.3d (11th Cir.) (2020).

[13] **IFR #1 was published/released on the USDT's PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[14] **SBA launched the PPP on April 3, 2020, a day after giving advance notice of IFR #1** (Source: SBA.gov at https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches).

[15] **The CARES Act makes clear the PPP will be administered under regulations issued by the SBA Administrator through emergency rulemaking authority (15 USC §9012; 15 USC §636m(k)).**

[16] **Neither the APA nor the applicable regulations** grant an OHA Judge the authority to invalidate or not follow SBA regulations interpreting the CARES Act (*see* 5 USC § 556(c)(1)-(11); 13 CFR Pt. 134, SubPt. L). **OHA Judges must apply IFR #1 to PPP loan applications.**

[17] I note **Appellant lists itself as an inventory finance servicing corporation** on its 2019 Federal tax return (AR, Pages 83-110).

JA0605

Docket No. PPP-8232657105

companies that receive less than 50 percent of their revenue from financing sales[18], Appellant does not dispute SBA's determination that it receives more than 50 percent of its revenue from financing its sales (AP, Pages 1-8; *see also* FOF 1-2; AR, Pages 5, 8-9)[19]. Appellant is a financing company that does not meet SBA's limited exceptions criteria. The record supports Appellant is a financing company that was ineligible to receive a PPP loan and is ineligible to receive PPP loan forgiveness.

**An OHA Judge does not have the authority to find IFR #1 does not apply to a PPP loan application**. The CARES Act makes clear the PPP will be administered under regulations issued by the SBA (15 USC §9012; 15 USC §636m(k)). In administering the PPP, SBA issued IFR #1 and instructed IFR #1 applies to all PPP loan applications. No statute or regulation governing the PPP loan appeals process gives an OHA Judge the authority to not apply IFR #1 to a PPP loan application[20]. As a United States Administrative Law Judge (ALJ) serving as an OHA Judge, I am required to apply IFR #1 to all PPP loan applications; and, in applying IFR #1 to Appellant's loan application I find Appellant is an ineligible financing business[21].

**The lender is not responsible for mistakes in Appellant's PPP loan application**. Under the CARES Act and IFR #1, a lender may rely on the certifications and documents submitted by a PPP loan applicant and no enforcement action can be taken against a lender that acts in good faith in relying on the certifications or documents (15 USC §636m(h)(1)-(3); IFR #1, 85 Fed. Reg. Page 20815). The record does not support, and Appellant has not demonstrated, its lender acted in bad faith in relying on the certifications and documents submitted by Appellant with its loan application or when approving Appellant's PPP loan. Assertions that the lender made errors in approving Appellant's PPP loan by relying on certifications and documentation submitted by Appellant does not provide a basis for me to grant Appellant relief and/or reverse SBA's final loan review decision[22, 23].

---

[18] SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(ii), Page 104

[19] The record shows SBA determined Appellant receives **65 percent of its revenue** from financing its sales: $1,335,057 \div \$2,056,428 = 0.65 \times 100 = 65\%$ (*see* AR, SBA Internal Notes, Page 5).

[20] **13 CFR Part 134, Subpart L** contains the controlling PPP loan appeals regulations.

[21] **Neither the APA nor the applicable regulations grant an OHA Judge the authority to invalidate SBA regulations, including IFR #1** (*see* 5 USC § 556(c)(1)-(11); 13 CFR Pt. 134, SubPt. L). As a U.S. ALJ, I know of no Federal agency or administrative review or hearing system(s) that has given an ALJ, Administrative Judge (AJ), or Hearing Officer the authority to invalidate an agency regulation and/or to ignore the application date and instructions contained in a regulation. **The invalidating of agency regulations or the invalidating of an regulation's stated application date or the limiting of an agency's ability to enforce/apply the application date is a role for the Federal courts** and not for ALJs, AJs, or Hearing Officers, as the traditional, accepted role of ALJs, AJs, and Hearing Officers is to provide parties/appellants due process by ensuring an agency properly applied and followed the applicable laws, regulations, and policy when making its decision(s). **Through IFR #1, the SBA Administrator has instructed IFR #1 applies to all PPP loan applications. The record supports SBA properly applied IFR #1 in determining Appellant was ineligible for a PPP loan and is ineligible for loan forgiveness application.**

[22] **OHA only has jurisdiction to review final SBA loan review decisions** (13 CFR §134.1201(b)(1)-(4)). OHA does not have jurisdiction to review a lender's decision(s) concerning a PPP loan (13 CFR §134.1201(c)).

[23] **Appellant has the option of talking with the SBA Office of Inspector General (SBA OIG) about the lender's actions in this matter.** SBA OIG contact and procedure information can be found at https://www.sba.gov/about-sba/oversight-advocacy/office-inspector-general.

- 14 -

JA0606

Docket No. PPP-8232657105

**A determination that SBA acted arbitrarily and capriciously or abused its discretion is beyond the scope of OHA's review.** The record supports SBA applied the applicable statutes, regulations, and policy in denying Appellant's PPP loan forgiveness application (*see* AR, Pages 1-137). The record also supports Appellant believes SBA abused its discretion by arbitrarily, capriciously, and illegally applying the applicable statutes, regulations, and policy (*see* AP, Pages 1-43). As noted in Appellant's appeal petition, it is the Federal courts, not the OHA Judge, that makes the determination an agency acted arbitrarily and capriciously in interpreting and applying statutes, regulations, or policy (*see* AP, Pages 6-8). I therefore find this portion of Appellant's argument is beyond the scope of OHA's review[24].

The record supports Appellant is an ineligible financing business that receives more than 50 percent of its revenue from financing its sales. The record also supports Appellant was ineligible to receive a PPP loan and is ineligible to receive PPP loan forgiveness. The record demonstrates SBA properly applied the applicable statutes, regulations, and policy in denying Appellant's loan forgiveness application. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decisions is AFFIRMED.

## CONCLUSIONS OF LAW

**Appellant is an ineligible financing business.**

**Appellant was ineligible for the PPP loan it received.**

**Appellant is ineligible for PPP loan forgiveness.**

**The final SBA loan review decision is not based on clear error of fact or law.**

**Appellant remains liable** for the PPP loan (PPP Loan Number 8232657105).

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIRMED.**

Appellant's forgiveness application will be processed in accordance with this decision.

**This is an INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR

---

[24] **The standard of review in a PPP appeal** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210). The standard of review is not whether SBA act arbitrarily and capriciously. Without specific authority (i.e., Federal case law) declaring a certain action(s) taken by SBA on PPP loans and/or forgiveness applications is an act(s) of arbitrariness and capriciousness, there is no basis for an OHA Judge to determine SBA acted arbitrarily or capriciously. Appellant's assertion(s) of abuse of discretion and/or disagreement with how SBA applied the applicable statutes, regulations, and policy, does not by itself provide an OHA Judge with the authority to find wrongdoing (i.e., abuse of discretion and/or illegal actions) by SBA.

- 15 -

Docket No. PPP-8232657105

§134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

Digitally signed by
Joseph K. Essmyer Jr -S

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

JA0608

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)). **Reconsideration petitions should be filed on the OHA Case Portal** at: https://appeals.sba.gov.

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d)).

Neither initial nor final decisions issued by OHA on a PPP loan appeal under Subpart L are precedential (13 CFR §134.1211(e)).

**FINAL DECISIONS may be appealed** to the appropriate Federal district court only (13 CFR §134.1211(g)).

`

JA0609

# United States Small Business Administration
# Office of Hearings and Appeals

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | Issued: March 4, 2022 |
| **AUTO MONEY NORTH, LLC** | Docket No. PPP-4909947005 |
| **APPELLANT** | **Appearances:** |
| Appealed from: | **For Appellant:** Lindsey W. Cooper, Jr., Esq. |
| SBA PPP Loan Number 4909947005 | **For SBA:** Dina G. Boorda, Esq. |

## DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

**SBA PPP Loan Number:** 4909947005

**Approved Loan Amount:** $450,200.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 108-111)[1].

SBA issued a final loan review decision denying the application after determining Appellant was ineligible for a PPP loan because it is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring (AR, Pages 15-16).

Appellant timely filed an appeal petition with SBA.

The **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting filing deadlines for the administrative record, Appellant objections to the administrative record, and SBA response to the appeal.

SBA timely submitted the administrative record.

Appellant did not file objections to the administrative record.

SBA timely filed a response to this appeal.

---

[1] **Unless otherwise indicated, all documents referenced or cited to in this decision are contained in the case record maintained in the <u>OHA Case Portal</u>.**

JA0610

Docket No. PPP-4909947005

The record closed on **January 18, 2022**[2, 3].

<u>**ISSUE(S)**</u>

Is the final SBA loan review decision based on clear error of fact or law?

<u>**APPLICABLE LAW AND POLICY**</u>

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[4], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36)**).

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m**).

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

For the purposes of the Small Business Act, a **small business concern**, including but not limited to enterprises engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation (15 USC §632(a)(1)).

---

[2] **13 CFR §134.1202 provides when determining the time period for filing an appeal petition:**

(c)(1) Do not count the day the time period begins but do count the last day of the time period.

(2) **If the last day is Saturday, Sunday, or a Federal holiday, the time period ends on the next business day** (13 CFR §134.1202(c)(1)-(2)).

[3] **On January 11, 2022**, OHA issued an Administrative Order clarifying **13 CFR §134.1202(c) applies to all filing deadlines in PPP loan appeals** (Source: SBA.gov@https://www.sba.gov/document/support-administrative-order-deadlines-ppp-filings). **I closed the record on January 18, 2022,** because the response and record closing deadline(s) listed in the Notice and Order (January 17, 2022) is a Federal holiday (Martin Luther King, Jr. Day).

[4] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 et seq.**

- 2 -

JA0611

In addition to the criteria specified in 15 USC §632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act (15 USC §632(a)(2)(A)).

The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors (15 USC §632(a)(2)(B)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

JA0612

Increased eligibility for certain small business and organizations –

(i) In general – During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in 15 USC §657(b)(2)(C), shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than greater of –

(I) 500 employees; or

(II) if applicable, the size standard in number of employees established by SBA for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates (15 USC §636(a)(36)(D)(i)(I)-(II)).

For loan forgiveness, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

For loan forgiveness, the term **covered period** means the period –

(A) beginning on the date of the origination of a covered loan; and
(B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –
    (i) beginning on the date that is 8-weeks after such date of origination; and
    (ii) ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

(1) Payroll costs.
(2) Any payment of interest on any covered mortgage obligation.
(3) Any payment on any covered rent obligation.
(4) Any covered utility payment.
(5) Any covered operations expenditure.
(6) Any covered property damage cost.
(7) Any covered supplier cost.
(8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

The term **small business concern** has the meaning given that term under 15 USC §632 (15 USC §636e(6)).

- 4 -

JA0613

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[5] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

To apply for a PPP loan, the applicant must submit **SBA Form 2483 (Paycheck Protection Program Application Form)** and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

**SBA's size standards** define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under the **North American Industry Classification System (NAICS)** (13 CFR §121.101(a)).

In establishing size standards, SBA considers economic characteristics comprising the structure of an industry, including degree of competition, average firm size, start-up costs and entry barriers, and distribution of firms by size. It also considers technological changes, competition from other industries, growth trends, historical activity within an industry, unique factors occurring in the industry which may distinguish small firms from other firms, and the objectives of its programs and the impact on those programs of different size standard levels (13 CFR §121.102(a)).

The **small business size standards by NAICS used by SBA** are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.201[6].

---

[5] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

[6] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

JA0614

Docket No. PPP-4909947005

SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

i. Banks;
ii. Life Insurance Companies (but not independent agents);
iii. Finance Companies;
iv. Factoring Companies;
v. Investment Companies;
vi. Bail Bond Companies;
vii. Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

i. A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.
ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.
iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.
iv. A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.
v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**The purpose of IFR #15** is to inform borrowers and lenders of SBA's process for reviewing PPP loan applications and loan forgiveness applications (IFR #15, 85 Fed. Reg. Page 33010).

If SBA determines a borrower is ineligible for a PPP loan, SBA will direct the lender to deny the loan forgiveness application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The Administrator has determined to be an eligible recipient entitled to forgiveness under Section 1106(b) of the CARES Act, the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**The purpose of IFR #20** is to update the First Loan Forgiveness Rule and First Loan Review Rule following passage of the Flexibility Act (IFR #20, 85 Fed. Reg., Page 38306).

- 6 -

JA0615

To receive loan forgiveness, a borrower must complete and submit the **Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent)** to the lender (or the lender servicing the loan) (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications made in its PPP loan application), the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

OHA is established in SBA –

(i)     to impartially decide matters related to program decisions of the Administrator; and,
(ii)    to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)).

Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

(i)     a Hearing Officer may hear cases under section 554 of the APA;
(ii)    a Hearing Officer shall have the powers described in section 556(c) of the APA; and,
(iii)   the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[7] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

(1) administer oaths and affirmations;
(2) issue subpoenas authorized by law;
(3) rule on offers of proof and receive relevant evidence;

---

[7] **Section 556(b) of the APA** requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

JA0616

    (4)  take depositions or have depositions taken when the ends of justice would be served;

    (5)  regulate the course of the hearing;

    (6)  hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);

    (7)  inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;

    (8)  require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;

    (9)  dispose of procedural requests or similar matters;

  (10) make or recommend decisions in accordance with section 557 of the APA; and

  (11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

The appellant has the burden of proof in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

JA0617

Docket No. PPP-4909947005

## FINDINGS OF FACT (FOF) AND ANALYSIS

Based on the record, I make the following findings of fact (FOF):

1. Appellant is a consumer lending business that makes car title loans (AR, Page 88).

2. On April 3, 2020, Appellant applied for a PPP loan (SBA Form 2483) in the amount of $450,315 (AR, Pages 103-107).

3. Appellant's PPP loan was approved by the lender for $450,200 on April 9, 2020 (AR, Pages 18-22).

4. On October 8, 2020, Appellant applied for loan forgiveness (SBA Form 3508) in the full amount of the PPP loan ($450,200) (AR, Pages 108-111).

5. SBA selected Appellant's PPP loan for review (AR, Pages 96-97).

6. SBA denied Appellant's forgiveness application after determining Appellant was ineligible for a PPP loan because it is a consumer lending business (AR, Pages 15-16).

SBA carries out the policies of the Small Business Act (15 USC §633(a)). The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 USC §636(a)).

For the purposes of the Small Business Act, a **small business concern** is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator (15 USC §632(a)(1)-(2)(A)-(B); 15 USC §636e(6); 13 CFR §§121.101(a), 121.102(a), 121.201).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m). The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)). **Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

**In general**, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or qualified Tribal business concern is eligible to receive a PPP loan if it employs not more than the greater of – (I) 500 employees; or (II) if applicable, SBA's size standard in number of employees (15 USC §636(a)(36)(D)(i)(I)-(II)).

- 9 -

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812). Financial businesses primarily engaged in the business of lending are not eligible for SBA business loans (13 CFR §120.110(b)). SBA cannot guarantee loans to finance companies (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)), and **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

If SBA determines a borrower was ineligible for a PPP loan, the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306). To be an **eligible recipient** entitled to loan forgiveness the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**THE RECORD SHOWS** Appellant is a consumer finance company that applied for and received a PPP loan. The record also shows Appellant's PPP loan forgiveness application was denied by SBA because it is a consumer lending business and was ineligible to receive a PPP loan (FOF 1-6).

It its appeal petition, Appellant does not dispute or challenge SBA's determination that it is a finance company but argues its forgiveness application should be approved because any business concern meeting SBA's size standards is eligible for a PPP loan under 15 USC §636(a)(36)(D)(i) of the CARES Act.

In its response, SBA argues it correctly denied Appellant's PPP loan forgiveness application because Appellant is a finance company and was not eligible for a PPP loan.

I am not persuaded by Appellant's argument. A small business must meet SBA's ownership, operation, and size standards (15 USC §632(a)(1)-(2)(A)-(B); 15 USC §636e(6); 13 CFR §§121.101(a), 121.102(a), 121.201). The portion of the CARES Act Appellant relies on (15 USC §636(a)(36)(D)(i)) (i.e. Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan" if it meets SBA size standards (*see* 15 USC §636(a)(36)(D)(i)(I)-(II)). Paragraph 36(D)(i), however, starts with two words, "In general—" that make clear the paragraph is a general eligibility requirement and not an absolute requirement that if met guarantees PPP loan eligibility for any business concern. A true and close reading of Paragraph 36(D)(i) reveals it as a general eligibility requirement allowing business concerns and other entities, most notably nonprofit organizations, not normally classified as small businesses to be considered PPP loan eligible if size standards are met. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e. paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single portion/paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. Appellant's argument is based on a misreading of Paragraph 36(D)(i), goes against the accepted statutory construction practices, and does not provide a persuasive legal basis for me to make the extraordinary finding that any business concern

- 10 -

meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[8, 9, 10, 11].

The record indicates and Appellant does not dispute that it is a finance company (AR, Pages 88; Appeal Petition, Pages 1-12; *see also* FOF 1). Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt finance companies from the terms of other 7(A) loans and under SBA regulations and policy available to Appellant when it submitted its PPP loan application, finance companies are ineligible to receive small business loans (i.e. 7(A) loans), including PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104)[12, 13]. The record supports Appellant is a finance company that

---

[8] **The United States Supreme Court has determined**, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

[9] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, **it reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements** of Section 1102 of the CARES Act (15 USC §636(a)(36)) to receive a PPP loan.

[10] The court cases Appellant relies on, *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044 (E.D. Wis.) (2020), and *DV Diamond Club of Flint, LLC, v. U.S. Small Bus. Admin.,* 459 F. Supp. 3d 943 (E.D. Mich.) (2020), are **preliminary injunction actions that are only binding on the parties to the cases**. These cases are not final court decisions that invalidate an SBA regulation(s) or bind SBA to a certain application of the CARES Act or SBA regulations in all other PPP cases. **At best the cases cited by Appellant can be viewed as persuasive authority**. **Neither the APA nor the applicable regulations grant an OHA Judge the authority to invalidate or not follow SBA regulations interpreting the CARES Act** (*see* 5 USC § 556(c)(1)-(11); 13 CFR Pt. 134, SubPt. L). The invalidating of an agency regulation is a **role for the Federal courts** and not one an OHA Judge is empowered to undertake. As United States Administrative Law Judge (ALJ), I am not aware of any administrative review or hearing system(s) that grants an ALJ or Hearing Office the authority to overrule or invalidate an agency's regulation(s), as the traditional, accepted role of an ALJ/Hearing Officer is to provide parties/appellants due process by ensuring an agency properly applied and followed the applicable laws, regulations, and policy when making its decision(s). **In this case, I find no error in SBA's application of the CARES Act or its application of SBA regulations and policy.**

[11] I note, the position taken by the Court in *Camelot Banquet Rooms, Inc,* and *DV Diamond Club of Flint, LLC* that Paragraph 36(D)(i) guarantees "any business concern" meeting SBA size standards PPP loan eligibility has been rejected by the Court in multiple decisions/jurisdictions: *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217 (2021); *Bros. Petroleum, LLC v. United States*, E.D. La (2021); *Defy Ventures, Inc. v. U.S. Small Bus. Admin*, 469 F. Supp. 3d 459 (2020). Like the court cases cited by Appellant in support of its position, the listed court cases supporting SBA's position are preliminary injunction actions that are at best persuasive and not binding authority. Consequently, **I have not relied on any court case(s) in reaching my decision in this matter but have based my decision on a close and true reading of the CARES Act and a thorough review of SBA's application of its regulations and policy.**

[12] **IFR #1 was published/released on the U.S. Department of the Treasury (USDT's) PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[13] **The CARES Act makes clear the PPP will be administered under regulations issued by the SBA**

- 11 -

JA0620

Docket No. PPP-4909947005

was ineligible to receive a PPP loan and is ineligible to receive PPP loan forgiveness. The record also demonstrates SBA properly applied the applicable laws, regulations, and policy when denying Appellant's application. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decision is AFFIRMED[14].

## CONCLUSIONS OF LAW

Appellant is a consumer finance company.

**Appellant was ineligible for the PPP loan it received**.

**Appellant is ineligible for PPP loan forgiveness**.

**The final SBA loan review decision is not based on clear error of fact or law**.

**Appellant remains liable** for the PPP loan (PPP Loan Number 4909947005).

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIMED**.

Appellant's forgiveness application will be processed in accordance with this decision.

**This is an INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR §134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

Digitally signed by
Joseph K. Essmyer Jr -S

_____

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

---

**Administrator through emergency rulemaking authority (15 USC §9012; 15 USC §636m(k)).**

**[14] SBA's response contains a rather lengthy discussion arguing an OHA Judge lacks the authority to invalidate SBA regulations (Response, Pages 5-10). I need not address this argument further**, as I have neither found the authority necessary to invalidate an SBA regulation nor invalidated an SBA regulation with this decision (*see* Footnotes 8-11).

JA0621

Docket No. PPP-4909947005

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)).

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion,</u> may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d)).

- 13 -

JA0622

EXHIBIT
G

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Best Money, Inc.

      Appellant

Appealed from
SBA PPP Loan No.
7195057010

DECISION

Issued:  March 8, 2022

Docket No. PPP - 7195057010

## APPEARANCES

*For Appellant*
C. Richard Dobbins, Borrower/Appellant, 725 E Shiloh Rd., Corinth, MS, 38834

*For the Small Business Administration*
Nickolas Wilson, Esq., Office of General Counsel, U.S. Small Business Administration, Washington, D.C.

## DECISION

The U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision finding Appellant ineligible for the full PPP loan forgiveness of $ 24,374.06.  Appellant filed the instant appeal from that Final SBA Loan Review Decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested.  After carefully considering the evidence and arguments presented in the Administrative Record, for the reasons discussed herein, I find that Appellant's appeal does not show the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

### I.  CARES Act , PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020).  Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn.  Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).  Congress first authorized $349 billion in loans.  CARES Act § 1102(b)(1).  One month later, Congress increased this figure to $659

billion. Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress placed the Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. *In Re Gateway Radiology Consultants, P.A.* 983 F.3d 1239, 1248 (2020) (11th Cir.). Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012)

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B) Ineligible types of businesses are identified in 13 CFR § 120.110. These ineligible businesses include, for example, non-profit businesses; financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the

- 2 -

funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G)   PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

*PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m. Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans. The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). *Gateway* at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1.  Was ineligible for a PPP loan;

2.  Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;

3.  Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; or

- 3 -

JA0625

    4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA. 13 CFR §134.1201(b).

I note that these denial bases may be stated on different terms. Thus, forgiveness denial may be because

1. the borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or
2. the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or
3. the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some or all of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or
4. that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L. However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision. 13 CFR §134.1201(a) -- (c). The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans. To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov. 13 CFR §134.1202(a).

*Authority of an SBA OHA Judge*

The undersigned is a former federal government Administrative Law Judge (ALJ) who retired from that civil service position. After retirement I was hired as a "rehired annuitant" employed by the SBA as an Administrative Judge. An Administrative Judge has authority no greater than that of an Administrative Law Judge. The authority of such a judge is limited.

An Administrative Law Judge (ALJ) has no constitutionally based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See e.g.,* 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash* v. *Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan* v. *Department o f Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association o f Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

- 4 -

Thus, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

## II. Loan History

On or about April 3, 2020, Appellant applied for a PPP loan. (AR 98-99) On April 21, 2020, a lender financial institution disbursed an SBA guaranteed PPP loan to Appellant in the amount of $24,374.06. Appellant filed for forgiveness of the full amount of the loan on November 4, 2020. The forgiveness amount requested by the Lender was the same amount of $24,374.06 as the Appellant had requested. The SBA approved Appellant's application for forgiveness in the amount of $0.00, thus wholly denying the application for forgiveness. A Final SBA Loan Review Decision was issued by the SBA's Office of Capital Access dated November 2, 2021. The Final SBA Loan Review Decision was received by Appellant on November 17, 2021.

Appellant appealed SBA's forgiveness amount contending that the balance of $24,374.06 should be forgiven, alleging that SBA has made a clear error of fact or law.

## III. Timeliness and Standing

An appeal of a Final SBA Loan Review Decision must be initiated (on the Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR §134.1202(a). In this case the Final SBA Loan Review Decision (AR 10) was issued on November 2, 2021 (to the lender) and was reported as received by Appellant on October 27, 2021. The appeal was filed by initiation on the Portal on November 17, 2021, which is within the 30-day time requirement. Although, perplexingly, the Final SBA Loan Review Decision was reportedly received before it was issued, since the appeal was initiated within 30 days of both the issuance and the receipt of the Final SBA Loan Review Decision, the appeal is considered timely.

Only the borrower on a loan, or its legal successor in interest, for which SBA has issued a final SBA loan review decision has standing to appeal the final SBA loan review decision to OHA. 13 CFR §134.1203. A party may represent itself, or be represented by an attorney. A partner may represent a partnership; a member may represent a limited liability company; and an officer may represent a corporation, trust, association, or other entity. 13 CFR §134.208.

In this case the borrower is Best Money, Inc. The Final SBA Loan Review Decision was issued to Best Money Inc. The Appellant is Best Money, Inc. Corporation records for the State of Mississippi show John I. Brasher as President of Best Money, Inc. (AR 53)

The appeal petition on the Portal was signed by C. Richard Dobbins, Co-Trustee/Borrower. The record shows that C. Richard Dobbins, was a Co-Trustee of an irrevocable trust established by John I. Brasher in 2012. (AR 55 *et. seq.*) Under the terms of the trust, the trustee is to exercise its powers to appoint C. Richard Dobbins as President of the companies which are assets of the trust. (AR 64-65 and 65-66) Mr. Dobbins signed the PPP loan application as a co-trustee (AR 35), the promissory note as a co-trustee (AR 22), the PPP loan forgiveness application as a co-

- 5 -

JA0627

trustee (AR 35), and the OHA Case Portal as a co-trustee. The trust provisions allow the signature of only one of co-trustees to bind the trust (AR 63) (and thus exercise the powers of an owned corporation's president). Additionally, the record includes (AR 84 *et. seq.*) a General Durable Power of Attorney executed in 2018 by John I. Brasher generally giving all his transferable rights, powers, privileges, and responsibilities to C. Richard Dobbins, including the right to conduct any business in his name. (AR 85) Although it is not explicitly shown from the record that Best Money, Inc. was an asset included in the trust corpus, given the combined effect of the trust and the durable power of attorney, I find that there is sufficient standing for the bringing of the appeal.

## IV. Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a). Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 CFR §134.1210.

The Administrative Record was filed on January 3, 2022. Appellant made no objections or additions to the record, but Appellant did submit additional argument and documents after the record was received. On February 15, 2022, SBA did file a response to the appeal petition. The record closed on February 17, 2022.

## V. Facts of this Case and the Final SBA Loan Review Decision

On November 2, 2021, SBA issued its Final SBA Loan Review Decision finding that Appellant was ineligible for the full PPP loan amount received.

After review of the documentation provided by the Appellant, SBA concluded that Appellant is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring. (AR 10) Such a business is precluded from the PPP by 13 CFR § 120.110(b), which provides that the following types of businesses are ineligible:

> (b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances).

Appellant made substantial arguments in support of its appeal. However, Appellant acknowledged that it is a small loan finance company subject to the consumer lending laws of Mississippi. ("Appellant's Submission," [Portal] 02-10-2022 p 2, 4). Further, Appellant recognized its activities are properly classified under NAICS 52291, Consumer Lender (Id. p 3) Additionally, Appellant conceded that more than fifty percent of its revenue is derived from financing and lending transactions. (Id. p 4)

. . .
. . .

- 6 -

JA0628

## VI. Appeal

On November 17, 2021, , Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous.  Appellant argues that the Final SBA Loan Review Decision is in error because "the SBA exceeded its statutory authority when it applied the Original SBA Ineligibility Rule in reviewing and rejecting Appellant's PPP loan forgiveness application."  (Id. P 3)  Appellant argues that its status as a financial business should not preclude its eligibility to participate in the "first draw" PPP loans as authorized under the CARES Act.  (Id. p 4)  Submissions from Appellant provided several federal court rulings in support of its position.  (Id. p 2-6, and "Addendum to Appeal Letter," [Portal] 02-10-2022

Appellant also argues that other PPP loan recipients had received forgiveness of their loans.  I find references to such other cases inapplicable  See 13 CFR 134.1211(e).

## VII.  Discussion and Analysis

I note Appellant's arguments regarding the inapplicability of the eligibility exclusion provisions of 13 CFR §120.110.  I particularly note the cited federal court decisions supporting Appellant's claim.  However, as noted above, I have no authority to find the eligibility exclusion provisions of 13 CFR §120.110 inapplicable to the present PPP loan.

Moreover, I note that Congress provided that the PPP was to be administered by the SBA and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans.  This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework.  This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking including any public comment period.  See CARES Act §1106 (k).  Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects See CARES Act §1109 (d).  Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational basis to apply the provisions of 13 CFR §120.110 to the PPP eligibility determinations, and their application by the SBA is not arbitrary or capricious.  Therefore, for all these reasons, I find the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

The SBA had previously published and made available to the public, in 2018, its Standard Operating Procedure SOP 50 10 5(k).  The provisions of that document show the procedures applicable to SBA Section 7(a) loans, including ineligible types of businesses.  (SOP 50 10 5(k) III.A.2, at p 104).  [Consistent provisions were carried forward in the updates SOP 50 10 6, issued October 1, 2020.]  Finance companies and lenders, such as Appellant, are excluded from loan eligibility.  This guidance was operative at the time Appellant applied for and received the PPP loan at issue, and, as explained above, these eligibility exclusions were and are applicable to the current PPP loan.

The Appellant has acknowledged that it is in the business of lending.  Such a business is expressly precluded from PPP loan eligibility by 13 CFR §120.110(b), quoted above.  Therefore, it was not a clear error for SBA to conclude that Appellant was ineligible for the PPP loan it

- 7 -

received.  Correspondingly, it was not a clear error toe SBA to conclude that Appellant was not entitled to forgiveness of the loan for which Appellant was not initially eligible.

## VIII.  Conclusion

Best Money, Inc. has not shown that the SBA committed a clear error of fact or law.  Therefore, the APPEAL IS DENIED and the decision of the Final SBA Loan Review Decision is affirmed.

This is the initial decision of the SBA.  Unless a request for reconsideration is filed under 13 CFR §134.1211(c), or unless the SBA Administrator elects to review this decision per 13 CFR §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served.  See 13 CFR §134.1211(b).  In accordance with the regulations, a petition for reconsideration may be made within 10 calendar days after service of a Judge's decision under 13 CFR §134.1211(c)(1).  A petition for reconsideration may be filed via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov.  It is the borrower's responsibility to review the rules and procedures.


*John Trunick*
_____
John Trunick
Sr. Administrative Law Judge

- 8 -

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Bradfield Properties, Inc.**

      Appellant

Appealed from
SBA PPP Loan No. 5644677005

Issued: August 2, 2024

Decision No. **PPP-5644677005**

Jonathan White, Esq., on behalf of Appellant.

Amber Perez, Esq., on behalf of the U.S. Small Business Administration ("SBA").

### DECISION

### I.    INTRODUCTION AND JURISDICTION

Bradfield Properties, Inc., ("Appellant") was approved for Paycheck Protection Program Loan no. 5644677005 in the amount of $1,933,359 (the "PPP Loan"). On April 8, 2024, SBA issued a final SBA loan review decision (the "*FLRD*"). The *FLRD* had an SBA final forgiveness amount of $530,957.78. On May 9, 2024, Appellant filed an appeal petition with the Office of Hearings and Appeals ("OHA") seeking review of the *FLRD*.

OHA has jurisdiction to consider this PPP appeal. (*See* 13 C.F.R. §§ 134.102(w); 134.1201).

After carefully considering the evidence and arguments presented, for the reasons stated below, I **AFFIRM** the *FLRD* indicating an SBA final forgiveness amount of $530,957.78 for PPP Loan no. 5644677005.

### II.    BACKGROUND

#### A.  Paycheck Protection Program

The Paycheck Protection Program was a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses, including sole proprietorships, independent contractors, and self-employed individuals. (15 U.S.C. § 636(a)(36)(D)). Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent payments, and utilities. (15 U.S.C. § 636(a)(36)(F)).

### B. Appellant's PPP Loan and Application For Forgiveness

The Administrative Record ("AR") contains an application for a PPP Loan that appears to have been signed April 3, 2020 (the "PPP Loan Application"). (AR, pp. 1588-89). The PPP Loan Application indicates that Appellant had 39 employees, Appellant's average monthly payroll costs were $773,343.78, and the requested loan amount was $1,933,359.00. (AR, p. 1588).

The PPP Loan in the amount of $1,933,359 was disbursed on April 16, 2020. (AR, pp. 1, 1593).

The AR contains a PPP Loan Forgiveness Application Form through the lender that is signed and dated September 14, 2021. (AR, pp. 1590-92). Appellant requested that $1,465,668.07 of the PPP loan be forgiven. (AR, p. 1590).

The AR contains Appellant's 2019 1120-S tax return. (AR, pp. 1632-97). The 1120-S tax return shows that in 2019, Appellant had $116,000 in compensation to officers, $2,605,873 in salaries and wages, no pension and profit sharing, and $876 in employee benefits programs. (AR, p. 1637).

The AR contains IRS Forms 941 for all four quarters of 2019. (AR, pp. 1604-31). The IRS Form 941 for Q1 2019 shows that Appellant had 50 employees and $822,345.65 in Medicare wages. (AR, p. 1604). The IRS Form 941 for Q2 2019 shows that Appellant had 47 employees and $635,447.01 in Medicare wages. (AR, p. 1611). The IRS Form 941 for Q3 2019 shows Appellant had 46 employees and $730,270.26 in Medicare wages. (AR, p. 1618). Finally, the IRS Form 941 for Q4 2019 shows Appellant had 39 employees and $534,059.86 in Medicare wages. (AR, pp. 1625). In aggregate, these amounts total $2,722,122.78. (See AR, pp. 1604, 1611, 1618, 1625).

The AR has a spreadsheet entitled Payroll Summary, which shows Appellant's payroll for 2019. (AR, pp. 1698-1720). Among other things, it shows seven total employees who made a salary in excess of $100,000: one employee who earned $134,615.81, one who made $112,199.88, one who made $153,323.11, one who made $116,000, one who made $104,000.04, one who made $109,000.04, and one who made $149,999.98. (Id.). In aggregate, the amount of pay for all employees who made in excess of $100,000 annually is $179,138.68. (Id.).

The AR has W-2s for Appellant. The W-2s show the same seven employees made in excess of $100,000. (AR, pp. 1821-54). The amounts on the W-2s are consistent with the Payroll Summary. (Compare AR, pp. 1821-54 with AR, pp. 1698-1720). The Supplemental AR ("SAR") contains Appellant's W-3 for 2019 that shows $2,722,122.78 in Medicare wages. (SAR, p. 1927).

The AR contains several documents related to Texas unemployment taxes. (AR, pp. 1744-94). For Q1 2019, Appellant paid $3,991.26 in Texas unemployment taxes. (AR, pp. 1745, 1751). In Q2, Appellant paid $263.95. (AR, pp. 1758, 1764). In Q3, Appellant paid $384.12. (AR, pp. 1771, 1777). In Q4, Appellant paid $98.04. (AR, pp. 1784, 1789). In sum, Appellant paid $4,737.37 in Texas unemployment taxes.

### C. Final SBA Loan Review Decision

On April 8, 2024, SBA issued the *FLRD*. The *FLRD* states that the SBA Final Forgiveness Amount is $530,957.78:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows:

> After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount. When analyzing the loan origination supporting documentation, it is confirmed that the Borrower's loan origination amount was miscalculated. Gross wages of $2,722,122.78 confirmed with the 2019 W-3 statement, less $179,138.82 of wages more than $100,000.00 annually, and $876.00 employer contributions to health benefits and retirement, and $4,737.37 State/Local taxes. The 2019 total payroll cost equals $2,548,597.33, producing a maximum loan of $530,957.78, which is 2.5 times the average monthly payroll.

> When analyzing the forgiveness documentation, forgiveness of the eligible loan amount of $530,957.78 is justified.

(AR, pp. 23-24).

### D. Appeal

On May 9, 2024, Appellant filed an appeal using the OHA Case Portal (the "*Appeal Petition*"). (*See* OHA Case Portal, "*Bradfield – OHA PPP Appeal*"). In short, Appellant argues that SBA improperly applied its first Interim Final Rule ("*IFR 1*") to Appellant's PPP Loan Application.

In brief, Appellant is a real estate broker. (*Appeal Petition*, p. 5). Appellant applied for a PPP loan April 3, 2020, and it was approved for a loan April 6, 2020. (*Appeal Petition*, p. 9). In calculating the amount of its PPP loan, Appellant included 1099 commissions paid to real estate agents. (*Appeal Petition*, p. 5; Ex. C). The word "commission" is expressly in the definition of "payroll costs" in the CARES Act. (*Appeal Petition*, at pp. 7-10) (citing 15 U.S.C. § 636(a)(36)(A)(viii)). Thus, Appellant calculated its PPP loan based, in part, on commissions paid to real estate agents. (*Appeal Petition*, pp. 7, 10). Although *IFR 1* indicates that amounts paid to independent contractors may not be included when calculating payroll costs, *IFR 1* was effective April 15, 2020, and nothing in the interim regulation speaks to it being effective retroactively. (*Appeal Petition*, pp. 7-8). Appellant summarizes its argument, saying that:

"Based on the explicit words of the SBA published in the Federal Register, the IFR was not in effect at the time Bradfield applied for its Loan nor at the time Bradfield's Loan application was approved by the Lender and the SBA. Nor, based on its own terms, was the IFR retroactively effective." (*Appeal Petition*, at p. 4). Appellant also argues that the real estate agents are employees per the Fair Labor Standards Act. (*Appeal Petition*, pp. 11-14). Finally, Appellant argues that it used its PPP loan proceeds in a permissible way, and should be eligible for PPP loan forgiveness. (*Appeal Petition*, pp. 14-15).

On July 18, 2024, SBA filed a response to the appeal (the "*Response*"). (*See* OHA Case Portal, "*Response to Appeal*"). SBA advances several arguments for why the definition of "payroll costs" in the CARES Act itself should be read to exclude payments made to an independent contractor. Based upon these arguments, SBA requests that OHA affirm the *FLRD*.

The record closed on July 18, 2024.

## III.   DISCUSSION

### A.  Standard of Review

An OHA Judge must review the *FLRD* for whether it was based upon a clear error of fact or law. The Appellant has the burden of proving all elements of the appeal. (13 C.F.R. § 134.1210).

### B.  Analysis

#### 1.  *Relevant Applicable Rules*

The CARES Act states that the SBA may guarantee covered loans. (15 U.S.C. § 636(a)(36)(B)). In general, any business concern, including an independent contractor, that had not more than the greater of 500 employees or the number of employees established by SBA's size standards was eligible to receive a covered loan. (15 U.S.C. § 636(a)(36)(D)(ii)(I)).

The maximum loan is equal to the sum of:

> (aa) the product obtained by multiplying—
> (AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made . . . ; by
> (BB) 2.5; and
> (bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available to be refinanced under the covered loan;

(15 U.S.C. § 636(a)(36)(E)).

The CARES Act defined "payroll costs" as the sum of payments of any compensation with respect to "employees" that is a:

(AA) salary, wage, commission, or similar compensation;
(BB) payment of cash tip or equivalent;
(CC) payment for vacation, parental, family, medical, or sick leave;
(DD) allowance for dismissal or separation;
(EE) payment required for the provisions of group health care benefits, including insurance premiums;
(FF) payment of any retirement benefit; or
(GG) payment of State or local tax assessed on the compensation of employees . . . .

(15 U.S.C. § 636(a)(36)(a)(viii)(I)(aa)). "Payroll costs" were also defied to include: "the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation . . . ." (15 U.S.C. § 636(a)(36)(a)(viii)(I)(bb)). "Payroll costs" were capped at no more than $100,000 annually per independent contractor or employee. (15 U.S.C. §§ 636(a)(viii)(I)(bb)&(II)(aa)).

Congress gave the Administrator of SBA the authority to issue regulations in order to carry out the Paycheck Protection Program. (Section 1114 of the CARES Act). Pursuant to that authority, the Administrator issued several Interim Final Rules ("IFR"). The first IFR, which was available on the Department of the Treasury's website on April 2, 2020 (Paycheck Protection Program | U.S. Department of the Treasury (last visited July 23, 2024), provides the following guidance for calculating the amount of a PPP Loan:

> The following methodology, which is one of the methodologies contained in the Act, will be most useful for many applicants.
> i. Step 1: Aggregate payroll costs (defined in detail below in f.) from the last twelve months for employees whose principal place of residence is the United States.
> ii. Step 2: Subtract any compensation paid to an employee in excess of an annual salary of $100,000 and/or any amounts paid to an independent contractor or sole proprietor in excess of $100,000 per year.
> iii. Step 3: Calculate average monthly payroll costs (divide the amount from Step 2 by 12).
> iv. Step 4: Multiply the average monthly payroll costs from Step 3 by 2.5.
> v. Step 5: Add the outstanding amount of an Economic Injury Disaster Loan (EIDL) made between January 31, 2020 and April 3, 2020, less the amount of any ''advance'' under an EIDL COVID–19 loan (because it does not have to be repaid). . . .

(*Paycheck Protection Program* ("*IFR 1*"), 85 FED. REG. 20811, 20812(III)(1)(e)). The IFR defines "payroll costs" as follows:

> Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer

estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

(*IFR 1*, 85 FED. REG. 20811, 20813(III)(1)(f)).  Independent contractors do not count as employees for purposes of a borrower's PPP loan calculation.  (*IFR 1*, 85 FED. REG. 20811, 20813(III)(1)(h)).

In general, PPP loans may be eligible for forgiveness per the provisions of 15 U.S.C. § 636m. (15 U.S.C. §§ 636m(b)).  The SBA may review any PPP loan.  (*Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act* ("*Loan Forgiveness IFR*"), 86 FED. REG. 8283, 8294(V)(1)(a)).  The SBA reviews whether a borrower is eligible for a PPP loan based on the statutes, rules and guidance available at the time of the borrower's PPP loan application.  (*Loan Forgiveness IFR*, 86 FED. REG. 8283, 8294(V)(1)(b)).  "If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application." (*Loan Forgiveness IFR*, 86 FED. REG. 8283, 8295(V)(1)(e); *see also* 15 U.S.C. § 636m(d)(1) ("The amount of loan forgiveness under this section shall not exceed the principal amount of the financing made available under the applicable covered loan.").

### 2. Application of Rules to This Case

Applying the above rules to the facts of this case, it does not appear that SBA made any clear errors of fact of law in its *FLRD*.

In the *FLRD*, SBA asserts that Appellant had: "Gross wages of $2,722,122.78 confirmed with the 2019 W-3 statement, less $179,138.82 of wages more than $100,000.00 annually, and $876.00 employer contributions to health benefits and retirement, and $4,737.37 State/Local taxes." (AR, p. 23).  SBA asserts that: "The 2019 total payroll cost equals $2,548,597.33, producing a maximum loan of $530,957.78, which is 2.5 times the average monthly payroll." (AR, p. 23).

Per the CARES Act, as well as *IFR 1*, the maximum amount of a PPP Loan is equal to annual monthly payroll costs for the year prior to the loan multiplied by 2.5.  (15 U.S.C. § 636(a)(36)(E); *IFR 1*, 85 FED. REG. 20811, 20812(III)(1)(e)).  Payroll costs do not include amounts in excess of $100,000 per employee.  (15 U.S.C. § 636(a)(36)(A)(viii)(II)((aa)); *IFR 1*, 85 FED. REG. 20811, 20812(III)(1)(e)).  Payroll costs, however, do include employer-made benefit contributions, and employer-paid state taxes that are assessed on compensation of employees.  (15 U.S.C. § 636(a)(36)(A)(viii)(I)((aa)(EE)&(GG)); *IFR 1*, 85 FED. REG. 20811, 20812(III)(1)(f)).

This formula requires a review Appellant's "payroll costs" from 2019. Appellant's IRS Forms 941 for 2019 show Appellant paid a total of $2,722,122.78 in Medicare wages in 2019. (*See* AR, pp. 1604, 1611, 1618, 1625). This is corroborated by Appellant's W-3 for 2019, which also shows that Appellant paid $2,722,122.78 in wages. (SAR, p. 1927). Appellant's W-2s and Payroll Summary collectively show that Appellants had seven employees who made in excess of $100,000. In aggregate, these seven employees collectively made $179,138.68 in excess of $100,000 annually. (*See* AR, pp. 1821-54; 1698-1720). Appellant's IRS Form 1120-S for 2019 shows that Appellant paid $876 in employee benefits programs. (AR, p. 1637). Finally, documents related to Texas unemployment taxes shows that Appellant paid $4,737.37 in Texas unemployment taxes in 2019. (AR, pp. 1744-94).

Based on these numbers, the Appellant's maximum potential PPP loan may be calculated as follows:

| | |
|---|---:|
| 2019 wages paid by Appellant to its employees (i.e. "payroll costs"): | $2,722,122.78 |
| Plus Employee Benefits | $876.00 |
| Plus Texas Unemployment Taxes | + $4,737.37 |
| Subtotal of Additions | $2,727,736.15 |
| Less amounts paid over $100,000 per employee | - $179,138.68 |
| Subtotal Including Both Additions and Subtractions | 2,548,597.47 |
| | ÷ 12 |
| Average Monthly Payroll: | $212,383.12 |
| Average Monthly Payroll: | $212,383.12 |
| | × 2.5 |
| Maximum Potential PPP Loan | **$530,957.80** |

This is almost exactly the same amount as is shown in the *FLRD.* (*See* AR, pp. 23-24). Thus, the *FLRD* does not appear to be based on clear error to the extent that it calculates Appellant's maximum PPP loan amount as $530,957.80.

Appellant's primary argument is that *IFR 1* is inapplicable to this case, and that, under the plain language of the CARES Act, "commissions" are included in payroll costs. (*See* generally, *Appeal Petition*). Although Appellant makes a formidable argument, I respectfully do not find it to be persuasive.

As an initial matter, Appellant's reading of the CARES Act yields too large of a PPP loan. For purposes of calculating the amount of a PPP loan, compensation is limited to $100,000 per employee. (15 U.S.C. § 636(a)(36)(A)(viii)(II)(aa)). Accordingly, the maximum amount of a PPP loan per employee was $20,833 (100,000 ÷ 12 = 8,333 average monthly payroll; 8,333 × 2.5 = 20,833). (15 U.S.C. § 636(a)(36)(E)). Appellant stated in the PPP Loan Application that it had 39 employees. (AR, p. 1588). The maximum amount of a PPP loan to business with 39 employees is $812,487. In other words, simply applying statutory the payroll cost cap of $100,000 per employee for 39 employees, Appellant's PPP Loan Application was over $1.1 million too large.

Appellant's reading of the CARES Act also appears at odds with both the Congressional intent behind the PPP, as well as the structure of the CARES Act. The clear Congressional intent of the CARES Act was "keeping workers paid and employed" (*see* Division A of the CARES Act). To that end, an employer's eligibility for a PPP loan could be established by its number of employees. (*See generally* 15 U.S.C. § 636(a)(36)(D)(1)). Likewise, a PPP loan is calculated, in part, based on an employer's number of employees. (*See generally* 15 U.S.C. § 636(a)(36)(E)). Similarly, the definition of "payroll costs" has a definition specific to "employees." (15 U.S.C. § 636(a)(36)(A)(viii)(aa)(I) (". . . the term 'payroll costs' – (I) means — (aa) the sum of payments of any compensation with respect to *employees* that is A — (AA) salary, wage, commission, or similar compensation . . . .") (emphasis added).

The CARES Act provides expressly that an independent contractor may also receive its own PPP loan. (15 U.S.C. § 636(a)(36)(D)(ii)). Accordingly, there is a separate definition of "payroll costs" specific to sole proprietors and independent contractors. (15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb) (". . . the sum of payments of any compensation to or income of a sole proprietor or *independent contractor* that is a wage, commission . . . .) (emphasis added).

To satisfy Congressional intent of keeping workers paid and employed, it would be unnecessary for both a borrower to obtain a PPP loan on behalf of an independent contractor it utilized, and for the independent contractor itself to obtain a PPP loan based on amounts the independent contractor received from the borrower. Moreover, the CARES Act capped the funds available for PPP loans (though it subsequently increased the amount available). (*See* Section 1102(b) of the CARES Act). Given the limited funds, it is highly unlikely that Congress would have intended the CARES Act to allow for an independent contractor's compensation to be counted twice – first by a borrower who based its PPP loan on amounts it paid to an independent contractor, and then by an independent contractor who could obtain its own PPP loan based on the same amount it earned from the borrower.

In light of this distinction in the CARES Act between employees and independent contractors, as well as the Congressional intent behind the CARES Act, it follows that an employer would calculate its PPP loan based on its employee's payroll costs, as opposed to amounts and employer paid to independent contractors. This conclusion is bolstered by *IFR 1*, which also notes that independent contractors are not considered employees for purposes of calculating a PPP loan amount because independent contractors also had the ability to apply for PPP loans. (*IFR 1*, 85 FED. REG. 20811, 20812(III)(1)(h)).

Appellant argues that *IFR 1* is inapplicable. Appellant notes that *IFR 1* states it was effective April 15, 2020; it was also published in the *Federal Register* on April 15, 2020. *IFR 1*, however, also states that it "applies to applications submitted under the Paycheck Protection Program through June 30, 2020, or until funds made available for this purpose are exhausted." (*IFR 1*, 85 FED. REG. 20811, 20811). Therefore, it was applicable to *all* PPP loan applications – including Appellant's. Further, *IFR 1* was available on the Department of the Treasury's website on April 2, 2020. (*See* Paycheck Protection Program | U.S. Department of the Treasury) (last visited on July 23, 2024). Accordingly, Appellant had notice of *IFR 1* at the time it applied for the PPP loan on April 3, 2020. For these reasons, SBA did not commit clear error in reading the CARES

Act and *IFR 1* to consider only amounts paid to Appellant's employees in calculating payroll costs.

Appellant argues that the real estate agents were employees under Department of Labor regulations. (*Appeal Petition*, pp. 11-14). Respectfully, that argument is not persuasive because it appears that Appellant itself considered the real estate agents to be independent contractors. Appellant's Exhibit C distinguishes between employees and agents that received 1099 commissions. (*Appeal Petition*, Ex. C). Moreover, Appellant did not pay payroll taxes based on the real estate agents. Instead, Appellant's W-3 and IRS Forms 941 show that Appellant paid a total of $2,722,122.78 in employee wages, and based its payroll tax deposits based on those amounts. (*See* SAR, p. 1927; AR, pp. 1604, 1611, 1618, 1625). Employers are required to collect and pay over employee taxes and are liable for employer taxes on wages paid with respect to employment. (26 C.F.R. §§ 31.3102-1(a), 31.3111-1, 31.3111-3-5). Because employee taxes were not withheld for the real estate agents, it appears that Appellant did not treat the real estate agents as employees. Thus, SBA did not commit clear error in considering the real estate agents to be independent contractors.

Appellant also argues it used its PPP loan proceeds properly. It kept its workers employed, and used the loan proceeds on permissible non-payroll expenses. (*Appeal Petition*, pp. 14-15). That does not persuade me that the *FLRD* was based on clear error. The PPP rules make clear that the amount PPP loan forgiveness available is limited to the maximum amount the borrower was eligible to borrow. (*See* 15 U.S.C. § 636m(d) ("The amount of loan forgiveness under this section shall not exceed the principal amount of the financing made available under the applicable covered loan."); *Loan Forgiveness IFR*, 86 FED. REG. 8283, 8294-95(V)(1)(e) ("If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application. Further, if SBA determines that the borrower is ineligible for the loan amount . . . SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate.")). Because Appellant was only eligible for a maximum potential PPP loan of $530,957.78, SBA did not commit clear error in limiting forgiveness to that amount.

For these reasons, I find that the *FLRD* is not based on clear error of law or fact, and I AFFIRM the *FLRD*.

## IV.    **CONCLUSION**

For the reasons discussed above, I AFFIRM the final forgiveness amount of $530,957.78 for PPP Loan no. 5644677005. The *FLRD* is not based on clear error of fact or law.

**SO ORDERED.**

*Richard Ambrow*

**RICHARD AMBROW**
U.S. Administrative Law Judge

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA0640

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Butterfield Health Care Inc.


      Appellant

Appealed from
SBA PPP Loan Number
8187157206

Issued: September 6, 2022

Docket No. PPP-8187157206

Appearances:  Sam Neel, Esq., for Appellant
               Sameena Nabijee, Esq., for SBA

## DECISION

## I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

## II. Background

### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law.  P.L.116-136 (March 27, 2020). Appellant applied for a PPP loan on April 14, 2020. (AR at pp. 19-20). PPP loan number 8187157206 ("the Loan") was disbursed to Appellant by the Lender on April 29, 2020 in the amount of $2,201,640. (AR at pp. 1616-18).

On August 18, 2020, Appellant executed a PPP Loan Forgiveness Application Form requesting forgiveness of the full amount of the Loan. *Id.* On November 21, 2020, the SBA informed the Lender it was undertaking a review of the Loan and requested information regarding the Appellant's Loan. (AR at pp. 1604-05). On January 11, 2022, the SBA sent a letter to the Lender stating the following:

> We are doing a thorough review of all documentation provided for
> the above referenced PPP loan forgiveness application. Based on

1

JA0641

our preliminary findings of the review, we are considering
recommending a Full Denial. Please understand our
recommendation is preliminary and will undergo more processing
before reaching a final decision. We are considering this
recommendation for the following reason(s):

We have an understanding of an affiliation of 14 total loans
through familial ties and/or common management. The borrower
entity in the PPP loan mentioned above combined with all affiliates
listed below exceeds the maximum employee standard size of 500
employees allowed under the PPP Program . . . The list of all
affiliated businesses are below:

1. Oak Brook Medical Management Inc

2. Oak Brook Anesthesiologists LTD

3. Oak Brook Surgical Center Inc

4. 1800 McDonough Road Surgery Center LLC

5. Aiden Center for Day Surgery LLC

6. Oak Brook Medical & Surgical Center, Inc

7. Oak Brook Center for Health LTD

8. Oak Brook X-Ray and Imaging Inc

9. Great Oak Insurance Agency LLC

10. Beaver Creek Construction LLC

11. Butterfield Health Care Inc

12. Butterfield Health Care II, Inc

13. Butterfield Health Care VII, Inc

14. Butterfield Health Care Group, Inc

All these entities have PPP loans whether through your bank or
other banks. I realize that the SBA, through several different teams
and Reviewers, may have inquired about individual loans and
requested documents in the past. I have been assigned to gather and

2

JA0642

review all information as one large, affiliated group or family of
affiliated entities to determine the eligibility of all the loans
originated for this possible affiliation - whether
forgiveness/payment has been completed already or not.

More information is needed regarding the ownership of the
following entities. To continue the review of this family of loans,
please provide the following:

1. Butterfield Health Care Inc
   - Please provide a complete breakdown of ownership,
     including organizational structure, Trustees of each Trust,
     and the percentage of ownership of each Trustee in their
     respective Trust
2. Butterfield Health Care II, Inc
   - Please provide a complete breakdown of ownership,
     including organizational structure, Trustees of each Trust,
     and the percentage of ownership of each Trustee in their
     respective Trust
3. Butterfield Health Care VII, Inc
   - Please provide a complete breakdown of ownership,
     including organizational structure, Trustees of each Trust,
     and the percentage of ownership of each Trustee in their
     respective Trust
4. Butterfield Health Care Group, Inc
   - Please provide a complete breakdown of ownership,
     including organizational structure, Trustees of each Trust,
     and the percentage of ownership of each Trustee in their
     respective Trust
5. Provide an explanation on the exact relationship between
   Kianoosh Jafari (Jafari Family LLC) and Robert Jafari (RBJ
   Investments).

(AR at pp. 1606-09).

On January 19, 2022, SBA sent another letter to the reiterating its requests made in the
January 11, 2022 letter. (AR at pp. 1610-12). SBA internal notes dated March 18, 2022 indicate
that "Borrower is affiliated with 26 other entities. They exceed PPP size standards and have not
provided information to confirm meeting Industry or Alternative Size Standards." (AR at p. 14).
On March 23, 2022, the SBA issued its Final Loan Review Decision denying forgiveness of
Appellant's PPP Loan. The Decision stated:

SBA has determined that the borrower was ineligible for the PPP
loan. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes
the Borrower business, or together with its affiliates, exceeds the

3

JA0643

maximum allowable number of employees and the SBA small business size standards.

The aggregate of loans for this affiliation exceeds the maximum allowable number of employees; therefore, this loan is deemed ineligible.

(Portal Doc, *Ex. 1 - SBA Final Loan Review Decision*).

## B. Appeal

On April 25, 2022, Appellant filed its appeal. (Portal Doc, *Brief in Support of Appeal*). On June 1, 2022, the Office of Hearings and Appeals (OHA) issued a Notice and Order. (Portal Doc, *Butterfield Health Care*). The Administrative Record was timely filed by SBA on June 17, 2022. (Portal Doc, *Record*). OHA issued an Order Granting Time Extension on July 18, 2022, granting SBA more time to file a Response. (Portal Doc, *Order Granting Time Ext.*). The Appellant did not file any objections to the Administrative Record. In its appeal, Appellant argued that it was not affiliated with the Butterfield or Oak Brook entities identified in SBA's letters to Lender on January 11 and January 19, 2022, and that Appellant was therefore entitled to loan forgiveness. (Portal Doc, *Brief in Support of Appeal*).

## III. DISCUSSION

## A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

## B. Analysis

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection Program provides:

2. What do borrowers need to know and do?

a. Am I eligible?

4

You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:

i. You are:

A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and *subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act*; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812 (emphasis added).

13 C.F.R. § 121.301(f) details circumstances under which entities are to be considered affiliated:

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists . . .

(**1**) *Affiliation based on ownership.* For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern . . .

(**4**) *Affiliation based on identity of interes*t. Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area) . . .

Appellant does not dispute that the Oak Brook entities are affiliated, as Kianoosh Jafari is the majority owner of each of them. (AR at p. 1639). As for the Butterfield entities, the Jafari family holds a 50% ownership interest in all four. (AR at pp. 1638, 1640). Kianoosh Jafari is the President of the four Butterfield entities. (Portal Doc, *Brief in Support of Appeal*, at p. 10). As provided in 13 C.F.R. § 121.301(f)(1), this establishes affiliation based on ownership. Accordingly, the Oak Brook entities and the Butterfield entities are affiliates of one another.

Taken together, the entities have a total of 630 employees. This exceeds the maximum of 500 as established in the first IFR implementing the PPP. Appellant was not eligible for its PPP loan and is ineligible for loan forgiveness.

5

### C. Conclusion

Based upon the foregoing**,** it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b); PPP Procedural Rule. A party may file a request for reconsideration within 10 calendar days after service of an initial decision. You can serve your petition via email to OHAPPPinquiries@sba.gov. A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

JA0646

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Butterfield Health Care Inc.

Appellant

Appealed from
SBA PPP Loan Number
8187157206

Issued: October 20, 2022

Docket No. PPP-8187157206

Appearances:  Sam Neel, Esq., for Appellant
Sameena Nabijee, Esq., for SBA

### DECISION ON APPELLANT'S PETITION FOR RECONSIDERATION

#### I. Background

On September 6, 2022, this Court denied the Appellant's appeal of the SBA's Final Loan Review Decision in which the SBA denied loan forgiveness on the grounds that "the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Portal Doc, *Ex. 1 - SBA Final Loan Review Decision*). The Appellant timely filed a Petition for Reconsideration on September 16, 2022.

For the reasons set forth below, the Appellant's Petition is **DENIED**.

#### II. Discussion

#### A. Standard of Review

To prevail on a request for reconsideration, the Petitioner must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

#### B. Analysis

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection Program provides:

2. What do borrowers need to know and do?

1

JA0647

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
  i. You are:
  A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and *subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act*; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812 (emphasis added).

13 C.F.R. § 121.301(f) details circumstances under which entities are to be considered affiliated:

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists . . .

(1) *Affiliation based on ownership.* For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern . . .

(4) *Affiliation based on identity of interes*t. Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area) . . .

Appellant makes numerous arguments in its Petition for Reconsideration: (1) that this Court was mistaken in finding affiliation based on ownership with respect to the Butterfield entities, (2) that this Court was mistaken in finding affiliation based on identity of interest with respect to the Butterfield entities, (3) that SBA previously determined that Butterfield Health Care VII was not affiliated with the Oak Brook entities, and (4) that even taking as true that the Butterfield and Oak Brook entities are affiliated, the Administrative Record indicates that Appellant was eligible for its PPP loan because it qualified under the Alternative Size Standard when considered alongside the other Butterfield entities.

2

Argument #3 is based on a preliminary SBA determination that was later revised. SBA is not bound to every single determination its individual reviewers make en route to SBA issuing a Final Loan Review Decision (FLRD). From OHA's standpoint, it is irrelevant that at some point prior to issuing the Final Loan Review Decision, an individual employed by SBA concluded that Butterfield Health Care VII was not affiliated with the Oak Brook entities. This Court reviews only the FLRD, and the FLRD clearly indicated that SBA had found that Butterfield Health Care VII was affiliated with the Oak Brook and other Butterfield entities.

Arguments #1 and #2 also fail to identify a material error of fact or law. This Court may have been mistaken in concluding that Dr. Jafari is the President of Butterfield Health Care VII, although such an error would be understandable given Appellant's own statement in its appeal brief that "Dr. Jafari is listed on paper as the President of [Appellant] *and the Butterfield entities*." (Portal Doc, *Brief in Support of Appeal*) (emphasis added). If Dr. Jafari is indeed not the president of Butterfield Health Care VII, Appellant would have been wise not to state that he was.

In any event, the Initial Decision did not rest solely on a finding of affiliation based on ownership. It also concluded that the Butterfield and Oak Brook entities were affiliated based on identity of interest. Appellant's primary argument against this finding is that Jafari family interests, taken collectively, did not exercise control over the Butterfield entities because they had only a 50% ownership stake in each of them, as opposed to an outright majority. Appellant proposes far too narrow a definition of "control." The Jafari family, at a minimum, exercises *negative* control over the Butterfield entities. That is to say, business decisions *require* the Jafari family's consent because of their 50% ownership interest. Appellant's reading effectively amends the text of the affiliation rules by inserting the word "majority" in front of "control."

Lastly, Appellant's Alternative Size Standard argument also fails. Appellant accuses SBA of making misleading statements to this Court during the appeal process. SBA has addressed these concerns to this Court's satisfaction in its reply brief to Appellant's Petition for Reconsideration.

As for the substance of Appellant's Alternative Size Standard argument, it is unclear why Appellant did not push this issue on appeal or in an Objection to the Administrative Record. The phrase "alternative size standard" is not present in the appeal brief, and Appellant did not object to the Administrative Record. (Portal Doc, *Brief in Support of Appeal*). As noted in SBA's response brief to the PFR, Appellant has failed to explain why it did not provide SBA with all necessary and requested documents to facilitate the full Alternative Size Standard analysis. By definition, this analysis would require examining Appellant as well as all of its affiliates, not merely the Butterfield entities. That Appellant did not provide (and apparently still has not provided) SBA with all requested Form 3511s is fatal to its case.

Appellant has not identified a clear error of fact or law in the Initial Decision. Accordingly, the Initial Decision is affirmed.

3

## C. Conclusion

Based upon the foregoing, it is determined that the Appellant has not proven that the Initial Decision was based upon a clear error of fact or law. **Accordingly, Appellant's Petition for Reconsideration is DENIED. The Initial Decision, dated September 6, 2022, is AFFIRMED.**

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

4

JA0650

EXHIBIT

I

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Capitol Loans of Mississippi, Inc.

**APPELLANT**

Appealed from:

SBA PPP Loan Number 7301587010

Issued:  March 12, 2022

Docket No. PPP-7301587010

## APPEARANCES

C. Richard Dobbins, Capitol Loans of Mississippi, Pro Se Appellant

Nickolas Wilson, Attorney, Office of General
Counsel, Office of Capitol Access, SBA

## DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

### I.  Introduction and Jurisdiction

In March 2020, in response to the Covid-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). See Nat'l Ass'n of Home Builders v. U.S. SBA, No. 20-11780, 2021 WL 4458660, at *1 (E.D. Mich. Sept. 28, 2021), appeal docketed, No. 21-1765 (6th Cir. Nov. 30, 2021).  Section 1102 of the Act established the Paycheck Protection Program (the Program), which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses. Nat'l Ass'n, 2021 WL 4458660, at *1.  Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan.  In re Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1247 (11th Cir. 2020).  Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1).  One month later, it increased this figure to $659

billion. Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress placed the Program under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. Gateway, 983 F.3d at 1248. Through the CARES Act, Congress authorized the SBA to guarantee Program loans "under the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). And Congress put the SBA on the clock; it gave the SBA 15 days to issue implementing regulations. CARES Act § 1114 (codified at 15 U.S.C. § 9012). Shortly thereafter, SBA implemented and quickly issued several interim final rules under the Program. See Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21,747 (Apr. 20, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450 (Apr. 28, 2020).

Under these rules, small businesses did not apply directly to the SBA for Program loans. Instead, they applied through an approved lender. 85 Fed. Reg. at 20,812. And, given 15 U.S.C. § 636(a)(36)(B), the SBA's Program rules incorporated the existing eligibility restrictions for Section 7(a) loans. See 85 Fed. Reg. at 20,812 ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 ...."). As a result of this cross-reference, "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors," were ineligible for Program loans. See 13 C.F.R. § 120.110(b). Interestingly, or perhaps fatefully, the SBA "allow[ed] lenders to rely on" a borrower's "certifications" when "determin[ing] [borrower] eligibility" for participation in the Program. 85 Fed. Reg. at 20,812. The SBA also allowed lenders to "rely on specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness." Id. Lenders were "held harmless for borrowers' failure to comply with program criteria." Id. Congress later codified language holding lenders harmless when they relied on a borrower's certification or documentation. See Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act § 305(a) (codified at 15 U.S.C. § 636m(h)). The SBA carried the hold-harmless language forward in later rulemaking. See Business Loan Program Temporary Changes; Paycheck Protection Program—Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8294 (Feb. 5, 2021).

## II. Background

### A. Final SBA Loan Review Decision

October 19, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Capitol Loans of Mississippi, Inc. (Appellant) is ineligible for the PPP loan. After review of lender and/or borrower submissions, SBA determined that the borrower was ineligible because the

Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. Based on that determination, SBA determined that forgiveness in the amount of $0.00 is appropriate. In addition, the SBA concluded that there was a failure to respond to SBA's inquiry for request of additional required information.

On November 16, 2021, Appellant filed the Appeal and on January 10, 2022, OHA issued the Notice and Order. In compliance with the Notice and Order, the Administrative Record ("AR") was timely filed by SBA on January 21, 2022. Appellant has not objected to the Administrative Record filed by SBA and the time to object pursuant to the Order has expired.

### B. Appellant's Appeal

On November 16, 2021, Appellant filed the instant appeal from that final SBA Loan Review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find that Appellant is eligible for PPP loan forgiveness. Specifically, appellant argues the Company is licensed by the Mississippi Department of Banking and Finance and licensed also by the Mississippi Department of Insurance. According to Appellant, and among other things, the company makes small personal loans and provides financing in the regular course of its business to finance credit sales for customers purchasing cars, furniture, appliances, lawn mowers and other consumer goods from various and retail stores. Appellant argues that SBA's denial of the Company's loan forgiveness application was based on its regulation codified at SBA SOP 50 10 5(K) Page 104 III. Appellant argues that this regulation was implemented by SBA prior to the enactment of the CARES ACT. Appellant also filed an Addendum letter dated February 9, 2022, in response to the January 9, 2022, Notice and Order and the SBA's Administrative Record.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

For the reasons discussed infra, I Deny the appeal and affirm the final SBA loan review decision.[1].

### III. Discussion

### A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. Title 13 C.F.R. § 134.1210, Standard of review, provides that the standard of review is whether the final SBA loan review

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision are contained in the case record maintained in the **OHA Case Portal**.

decision was based on clear error of fact or law.

## B. Appellant's Argument

Appellant raises on appeal that (1) the ineligibility of businesses engaged in lending found in SOP 50 10 5(K), p. 104 III3 , "was implemented by the SBA prior to the enactment of the CARES Act." and "there are NO Provisions within the CARES Act that...indicate that certain businesses are ineligible [for] PPP," and based on the NAICS Code 522291 for Consumer Lending and Appellant's revenue amount, "Appellant meets the qualifications for PPP loan forgiveness," (2) even if said exclusion found in SOP 50 10 5(K) does apply, "Section A.2. b. ii. of this regulation provides that "A business that provides financing in the regular course of its business (such as a business that finances Credit sales) is eligible."", (3) the Appellant "complied with ALL of the CARES Act provisions." and (4) "many of the PPP loans with the NAICS Code 522291...have been forgiven by the SBA."

As discussed herein, the AR, Appeal and applicable authorities demonstrate that (1) Congress placed the PPP under the SBA's existing Section 7(a) loan program and authorized the SOP section referencing the ineligible types of businesses per SBA Regulation 13 C.F.R. § 120.11 regulation at 13 C.F.R. § 120.110, to the PPP. This interpretation is based on the text of the CARES Act language specifying that "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Therefore, the CARES Act placed the PPP within the 7(a) Loan Program.

The record closed on **February 24, 2022**[2, 3].

There has been no showing in this record that OHA has the authority to issue an OHA decision in violation of SBA's regulations. Such decision would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States as applied by OHA.

---

[2] **13 CFR§134.1202 provides when determining the time period for filing an appeal petition:**

(c)(1) Do not count the day the time period begins but do count the last day of the time period.

**(2) If the last day is Saturday, Sunday, or a Federal holiday, the time period ends on the next business day** (13 CFR §134.1202(c)(1)-(2)).

[3] **On January 11, 2022,** OHA issued an Administrative Order clarifying **13 CFR §134.1202(c) applies to all filing deadlines in PPP loan appeals** (Source: SBA.gov@https://www.sba.gov/document/support-administrative-order-deadlines-ppp-filings). **I closed the record on February 24, 2022,** because the response and record closing deadline(s) listed in the Notice and Order (January 17, 2022) is a Federal holiday (Martin Luther King, Jr. Day).

## ISSUE(S)

Is the final SBA loan review decision based on clear error of fact or law?

## APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[4], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36)**).

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m**).

It is the declared policy of Congress that the Federal Government, through the Administrator of SBA, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business

---

[4] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq.***

Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

For loan forgiveness, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

For loan forgiveness, the term **covered period** means the period –

(A) beginning on the date of the origination of a covered loan; and
(B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –
   (i)    beginning on the date that is 8-weeks after such date of origination; and
   (ii)   ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

(1) Payroll costs.
(2) Any payment of interest on any covered mortgage obligation.
(3) Any payment on any covered rent obligation.
(4) Any covered utility payment.
(5) Any covered operations expenditure.
(6) Any covered property damage cost.
(7) Any covered supplier cost.
(8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

JA0656

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[5] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

To apply for a PPP loan, the applicant must submit **SBA Form 2483** (Paycheck Protection Program Application Form) and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring.  This prohibits SBA loans to:

i.      Banks;
ii.     Life Insurance Companies (but not independent agents);
iii.    Finance Companies;
iv.    Factoring Companies;
v.     Investment Companies;
vi.    Bail Bond Companies;
vii.   Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

---

[5] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

JA0657

i. A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.

iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

iv. A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.

v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**The purpose of IFR #15** is to inform borrowers and lenders of SBA's process for reviewing PPP loan applications and loan forgiveness applications (IFR #15, 85 Fed. Reg. Page 33010).

If SBA determines a borrower is ineligible for a PPP loan, SBA will direct the lender to deny the loan forgiveness application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The Administrator has determined to be an eligible recipient entitled to forgiveness under Section 1106(b) of the CARES Act, the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**The purpose of IFR #20** is to update the First Loan Forgiveness Rule and First Loan Review Rule following passage of the Flexibility Act (IFR #20, 85 Fed. Reg., Page 38306).
To receive loan forgiveness, a borrower must complete and submit the Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent) to the lender (or the lender servicing the loan) (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications made in its PPP loan application), the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

OHA is established in SBA –

(i) to impartially decide matters related to program decisions of the Administrator; and,

(ii) to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC

JA0658

§661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)).

Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

    (i)     a Hearing Officer may hear cases under section 554 of the APA;
    (ii)    a Hearing Officer shall have the powers described in section 556(c) of the APA; and,
    (iii)   the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[6] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

    (1) administer oaths and affirmations;
    (2) issue subpoenas authorized by law;
    (3) rule on offers of proof and receive relevant evidence;
    (4) take depositions or have depositions taken when the ends of justice would be served;
    (5) regulate the course of the hearing;
    (6) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);
    (7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;
    (8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;
    (9) dispose of procedural requests or similar matters;
   (10) make or recommend decisions in accordance with section 557 of the APA; and
   (11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC

---

[6] **Section 556(b) of the APA** requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

§554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

The appellant has the burden of proof in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).
OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

## FINDINGS OF FACT AND ANALYSIS

Based on the record, I make the following findings of fact:

The documentation and evidence in the record supports SBA's determination that the borrower received an ineligible loan amount.

On or about October 20, 2021, following an internal review, the SBA informed First Security Bank ("the Lender") that the loan forgiveness requested by the Appellant was denied in full. SBA issued a final loan review decision denying Capital Loan of

Mississippi's forgiveness application. The basis for SBA's denial is that Appellant was ineligible to receive a PPP loan as follows: After review of the documentation provided, the SBA concluded that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. The SBA concluded that there was a failure to respond to SBA's inquiry for request of additional required information. Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate.

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L.116-136 (March 27, 2020). On April 3, 2020, Appellant submitted an SBA Form 2483, Paycheck Protection Program Borrower Application ("the Application"). Subsequently, PPP loan number 7301587010 ("the Loan") was disbursed to Appellant by the Lender on or about April 21, 2020, in the amount of $94,350.31. On November 4, 2020, Appellant executed a Paycheck Protection Program Application Form 3508EZ requesting forgiveness for the full amount of the Loan. On April 13, 2021, SBA informed the Lender that it was undertaking a review of the Loan and requested information regarding the Appellant. The Lender responded with the forgiveness submission the same day. On June 9, 2021, SBA requested, through the Lender, additional information regarding the Appellant. Specifically, SBA informed Appellant of the following:

SBA Loan Number 7301587010 Requsted [sic] the following documents from the lender: Borrower appears to be engaged in lending. Potential eligibility issue. Please provide proof that the borrower is not involved in lending such as: 1. Verify NAICS Code 2. Description of the business activities 3. Governing business documents; by-laws, partnership agreement, or corporate resolution 4. Tax Return 5. Company Annual Report 6. Company marketing information. In response, Appellant submitted a letter with enclosures from C. Richard Dobbins, CPA of Dobbins & Mitchell, P.A. on June 11, 2021 ("the Letter"). Based on responses contained in the Letter, SBA reissued its request for documentation proving Appellant was not involved in lending on June 15, 2021. No further response was received.

After reviewing Appellant's NAICS (North American Industry Classification System) Code of 522291 - Consumer Lending, Profit & Loss Statements, statements made in the letters and other documentation in the AR, SBA determined that Appellant was a financial business primarily engaged in lending. The CARES Act provides that, "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. 4 at 287 (codified at 15 U.S.C. Section 636(a)(36)(B) Section 7(a) loan program regulation 13 C.F.R. terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. 4 at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Section 7(a) loan program regulation 13 C.F.R. §120.110(b) provides that "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" are ineligible for SBA 7(a) loans. Therefore, SBA determined Appellant was an ineligible business under the PPP and cannot receive

JA0661

forgiveness of the PPP loan in accordance with applicable law. The Appeal was filed on November 16, 2021.

SBA carries out the policies of the Small Business Act (15 USC §633(a)). The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small business (15 USC §636(a)).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m). The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)). **Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)). Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812). Financial businesses primarily engaged in the business of lending are not eligible for SBA business loans (13 CFR §120.110(b)). SBA cannot guarantee loans to finance companies (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(ii), Page 104).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)), and **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

If SBA determines a borrower was ineligible for a PPP loan, the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306). To be an **eligible recipient** entitled to loan forgiveness the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**THE RECORD SHOWS** that Appellant is a consumer finance company that applied for and received a PPP loan. The record also shows Appellant's PPP loan forgiveness application was denied by SBA because it is a consumer lending business and was ineligible to receive a PPP loan.

In its appeal petition, Appellant acknowledges it is a finance company but argues its forgiveness application should be approved because the PPP loans of other finance companies

have been forgiven and precedent has been established for loan forgiveness (*see* Appeal Letter). Therefore, SBA determined Appellant was an ineligible business under the PPP and cannot receive forgiveness of the PPP loan in accordance with applicable law. The Appeal was filed on November 16, 2021.

**I am not persuaded by Appellant's argument.** Appellant acknowledges it is a finance company (AL, Page 1), and the record confirms Appellant is a finance company. Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt finance companies from the terms of other 7(A) loans and under SBA regulations and policy available to Appellant when it submitted its PPP loan application, finance companies are ineligible to receive small business loans (i.e. 7(A) loans), including PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iiI), Page 104)[7]. Further, Appellant does not cite to and I cannot find any statute, regulation, policy, or authority that makes SBA's decision on a loan forgiveness application precedential or binding on other applications[8]. The record supports Appellant is a finance company that was ineligible to receive a PPP loan and is ineligible to receive PPP loan forgiveness. The record also demonstrates SBA properly applied the applicable laws, regulations, and policy when denying Appellant's application. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decision is affirmed.

---

[7] **IFR #1 was published/released on the U.S. Department of the Treasury's PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[8] **Appellant's argument** seeking to prevent SBA from denying its forgiveness application because SBA has or may have approved similar applications in the past and/or in a different case(s) **is an argument for estoppel.** Estoppel bars a party from doing something different from what has been done before or what has been legally established as true (*See* Definition of Estoppel at https://www.law.cornell.edu/wex/estoppel). The United States Supreme Court has determined as a general rule, **the Federal Government may not be estopped from enforcing public laws,** even though private parties may suffer hardship as a result in a particular case (Office of Personnel Management v. Richmond, 496 U.S. 414 (1990); *see also* Department of Justice Manual at https://www.justice.gov/jm/civil-resource-manual-209-estoppel#:~:text=The%20general%20rule%20is%20that,a%20result%20in%20particular%20cases). In other words, **in enforcing the applicable PPP law(s) SBA cannot be prevented (i.e. estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application.** The applicable laws, regulations, and policy make clear that **each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application** to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy (*see* 15 USC §636(a)(36);15 USC §636m; IFR #1, #15, #20).

## CONCLUSIONS OF LAW

**Appellant is a consumer finance company.**

**Appellant was ineligible for the PPP loan it received.**

**Appellant is ineligible for PPP loan forgiveness.**

**The final SBA loan review decision is not based on clear error of fact or law.**

**Appellant remains liable to the lender for the PPP loan (PPP Loan Number 7301587010).**

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIMED.**

Appellant's forgiveness application will be processed in accordance with this decision.

**This is an INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR §134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

*Betty Barbeito*
BETTY J. BARBEITO
Administrative Judge

JA0664

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)).

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d)).

**United States Small Business Administration**
**Office of Hearings and Appeals**

---

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Carolina Finance, LLC

     Appellant

Appealed from
SBA PPP Loan Number
4544647702

Issued: April 18, 2022

Decision No. PPP-4544647702

---

APPEARANCES

James Adams for Appellant; Dina Boorda for SBA

DECISION

I. Introduction and Jurisdiction

On January 5, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Carolina Finance, LLC (Appellant) is ineligible for the PPP Loan received. On February 1, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed infra, I **DENY** the appeal and **AFFIRM** the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

II. Background

On May 8, 2020, SBA disbursed a PPP loan to Appellant.

The Appellant is organized as an LLC. It was organized in North Carolina in 1999 and began operations in 2000. The Company conducts operations from offices in North Carolina, South Carolina, and Virginia. Carolina Finance "primarily originates indirect auto loans". This is confirmed by searches of the Company's web site as well as a State regulatory web search. The Company's loan portfolio primary consists of sales finance receivables. Sales finance receivables consist principally of retail installment sales contracts collateralized by used automobiles which are initiated by and purchased from automobile dealerships, subject to credit approval. The

JA0666

customers of the receivables are generally located in the states where Carolina Finance maintains offices (N.C., S.C., and Va.) and the neighboring states of Tennessee, Georgia, and West Virginia. As of year-end 2019 and 2020, automotive sales finance receivables accounted for 99.9% and 98.8% of total receivables, (AR 660).

Since the borrower provides only auto lending services more than 50% of its revenue is from financing sales. The NAICS code reflected is 522291, description Consumer Lending.

On March 23, 2021, Appellant filed for PPP loan forgiveness.

## A. Final SBA Loan Review Decision

On January 5, 2022, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP Loan received.

In its decision, SBA found SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. It has been determined that the borrower was an ineligible entity at the time of application. Research shows the borrower information such as its NAICS code, name, and/or business activities indicates it to be ineligible per 13 CFR § 120.110 (b), which prohibits the provision of PPP loans to "financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors." The borrower information does not meet any of SBA's exception criteria (e.g. pawn shops, check cashing businesses, mortgage loan servicers, etc.) Per provided documentation, the borrower " primarily originates indirect auto loans". The borrower was not eligible for a PPP loan due to the fact that borrower provides only auto lending services, therefore more than 50% of its revenue is from financing sales.

## B. Appeal

On February 1, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant argues Financial lenders were not excluded for the initial round of PPP loans. Other entities similar to the Appellant had their PPP loans forgiven, so Appellant argues that this violates the Equal Protection under the Due Process clause of t he Fifth Amendment. Even if the Appellant were to be found as a lender, the PPP should apply to "ANY business concern" that meets the size criteria. The SBA erroneously interpreted the CARES Act and this was erroneous as a matter of law.

## III. Discussion

## A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

JA0667

The CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. The SBA has the regulatory authority to determine eligibility under the PPP. Businesses not eligible for program loans are identified in 13 CFR Section 120.110. This includes consumer lenders who are primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. At least three circuit courts (D.C. Circuit and 2nd and 11th Circuit) and several district courts have recognized that the PPP is a part of the existing Section 7(a) Loan Program and thus subject t o the existing conditions and regulations pertaining to that program. USF Fed. Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d 1239(11th Cir. 2020); Pharaohs GC, Inc. v. United States Small Business Administration, No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021); American Association of Political Consultants v. U.S. SBA, No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA, 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020); see also United States SBA v. Vestavia Hills, Ltd., No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); Diocese of Rochester v. United States SBA, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020). The PPP was created by Congress as an additional program under SBA's 7(a) loan program and SBA, with authority from Congress, determined that financial businesses primarily engaged in t he business of lending were ineligible for PPP loans. Appellant admits that it is a lender and a factor. Appellant is in the busindess of factoring since it purchases accounts receivable from businesses that generate accounts receivable from the sale of products or services. (AR 659). Appellant has failed to meet its burden to show that SBA's determination (that Appellant was ineligible for a PPP loan under applicable law because its primary business is a lending activity) was based on a clear error of fact or law as required to warrant reversal of SBA's decision. The PPP statute (15 USC §636(a)(36)) does not exempt finance companies from the terms of other 7(A) loans, and under SBA regulations and policy in effect when Appellant submitted its PPP loan application finance and factoring companies are ineligible to receive small business loans (i.e. 7(A) loans), including PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B. References to other loan recipients who received forgiveness of their loans is inapplicable and SBA has not committed a violation of equal protection. 13 CFR 134.1211(e).

On its Form 1065 Partnership Tax Return for the year 2019 Appellant lists the NAICS Code of 522291 (AR 382) and shows the principal business as Consumer Lending and the principal product as Financing Auto Sales. Appellant is a consumer lending business that purchases discounted accounts receivables from car dealerships. The business activity of purchasing discounted accounts receivable is factoring. Appellant admits it purchases sales finance receivables. Therefore, since Appellant is a consumer lender engaged in factoring and does not meet any of the exceptions to 13 CFR §120.110(b) they are not eligible for a PPP loan or its forgiveness.

## C. Conclusion

Appellant has not established that the final SBA loan review decision is based on a clear error. I **DENY** the appeal and **AFFIRM** the final SBA loan review decision. This is an initial agency decision. However, unless a request f or reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision s hall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

*Michael Breton*

MICHAEL BRETON
Administrative Judge

JA0669

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

CHALLENGE FINANCIAL SERVICES, INC.

      Appellant

Appealed from
SBA PPP Loan No. 5773217101

Issued:  March 10, 2022

Decision No. 5773217101

APPEARANCES

Jonathan Starkenburg, Borrower/Appellant, 1004 W. Taft Ave Ste 100, Orange, CA., 92865

DECISION

On October 31, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Challenge Financial Services, Inc. is ineligible for its PPP loan in the amount of $1,259,500.00. On November 29, 2021, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.  For the reasons discussed *infra*, I find that Appellant is ineligible for the amount PPP loan received because it is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring.

## 1.  JURISDICTION

In March 2020, in response to the Covid-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). See *Nat'l Ass'n of Home Builders v. U.S. SBA*, No. 20-11780, 2021 WL 4458660, at *1 (E.D. Mich. Sept. 28, 2021), appeal docketed, No. 21-1765 (6th Cir. Nov. 30, 2021). Section 1102 of the Act established the Paycheck Protection Program (the Program), which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses. *Nat'l Ass'n*, 2021 WL 4458660, at *1. Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020); *Camelot Banquet Rooms, Inc., et al, v. United States Small Business Administration, et al.,* F. Supp. 3d, 2021 WL 3680369, (E.D. Wis. Aug. 19, 2021)

Congress placed the Program under Section 7(a) of the Small Business Act, making the

JA0670

5773217101

SBA the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. Gateway, 983 F.3d at 1248. Through the CARES Act, Congress authorized the SBA to guarantee Program loans "under the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). Congress gave SBA 15 days to issue implementing regulations. CARES Act § 1114 (codified at 15 U.S.C. § 9012). SBA issued several interim final rules under the Program.

OHA adjudicates Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II. Background

Challenge Financial Services, Corp (Appellant) is a Domestic For-Profit Corporation incorporated and licensed in California (AR 225). Appellant is involved in financial intermediation, is list itself as a family-owned auto lender offering finance services and other consumer financial needs.

Jeffrey Charles Mortis is listed as President with 100% ownership. On December 08, 2020, the business reported 107 employees on its Forgiveness Application. The business financial transaction vehicle with its customers is primarily through a Retail Installment Sales Contract (AR 207).

Challenge Financial Services, Inc. reported in its statement of income and retained earnings of $23,939.411 for year ending December 31, 2019 (AR 206).

On April 13, 2020, Challenge Financial Services, Inc. applied through its lender, Sunwest Bank for a Program loan (AR 226). Appellant's President completed SBA Form 2483. This Form included his certification that Challenge Financial Services, Inc. "is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration … implementing the … Program." Form 2483 did not specifically mention 13 C.F.R. § 120.110(b) or its bar on loans for financial businesses. As part of the application process, Sunwest Bank completed SBA Form 2484. In section F, this form required Sunwest Bank to attest that Challenge Financial Services, Inc. had "certified to Sunwest Bank that Challenge Financial Services, Inc. is eligible under the Paycheck Protection Program Rule." The form explains that Paycheck Protection Program Rule "refers to the rules in effect at the time" the Lender submits the application that the SBA issued implementing the program under the CARES Act. The form did not require Sunwest Bank to certify that Challenge Financial Services, Inc. was not a financial business, nor did it draw Sunwest Bank attention to the financial-business bar. Sunwest Bank approved the application and disbursed $1,259,500.00 on April 26, 2020. Challenge Financial Services, Inc. applied for forgiveness of its loan on December 08, 2020, Sunwest Bank submitted Challenge Financial Services, Inc. application to the SBA.

The SBA notified the Appellant that it was engaged in a thorough review of all documentation provided for the above referenced PPP loan forgiveness application stating that based on their preliminary findings of the review, they were considering recommending a denial. SBA explained that their recommendation is preliminary and will undergo more processing before reaching a final decision. SBA gave the following reasons for their preliminary findings:

• The forgiveness documentation does not fully support the loan amount. Businesses Engaged in Lending: (13 CFR § 120.110 (b)) (including banks, life insurance companies (but not independent agents), finance companies, factoring companies, investment companies, bail bond

- 2 -

companies, other businesses whose stock in trade is money, CDFIs, CDCs and Microloan Intermediaries). Business does not qualify for exception. Section III.2.a. Page 104, list businesses engaged in lending, per 13 CFR § 120.110(b) as ineligible entities for any 7(a)-loan program.

• IFR (Interim Final Regulation)- Paycheck Protection Program – Section III.1.c. further supports this ineligibility by stating: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. (SBA Docket #1 9/30/2021).

The Lender, Sunwest Bank, recommended a full Forgiveness of the Borrower's loan in the amount of $1,259,500.00.

## A. SBA Final Loan Review Decision (FLRD)

On November 01, 2021, via Forgiveness Platform, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan amount received and did not forgive the loan of $1,259,500.00.

The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. A review of the 2019 financial statements shows line items for finance fees, discounts, interest earned and collection fees which are consistent with businesses engaged in lending activities (AR 15)

## B. Appeal

On November 29, 2021, Appellant filed the instant appeal arguing the SBA final loan review decision is clearly erroneous. In its appeal, the Appellant explains that the central error in the SBA Review Decision is that it relies on pre-pandemic rules Congress did not intend to be used with PPP, and then applies those rules unequally to our industry, to retroactively declare Challenge Financial Services, Inc. ineligible for our already approved PPP loan that Challenge Financial Services, Inc. depended on in good faith to maintain employment and support the safety of over 100 employees.

Challenge Financial Services, Inc. elaborated on three (3) legal challenges in support of its appeal:
• **Implied Covenant of Good Faith and Fair Dealing**- Challenge Financial Services, Inc. had a reasonable expectation that loan would be forgiven, and that the SBA did not operate in similar good faith as described by publishing unclear and unsupported rules on April 15, 2020, as referenced in SBA 13 C.F.R. Part 120 Docket Number SBA-2020-0015.

• **Equal Protection**- SBA has chosen to approve forgiveness for other business types under the rule, for which there is no exception in PPP rules, including "Businesses Engaged in Legal Gambling Activities", Businesses Which Restrict Patronage", "Government-Owned Entities", and "Businesses Engaged in Promoting Religion". Neither the CARES Act, PPP Rules, nor SBA

5773217101

Policy offer any support for singling out "Businesses Engaged in Lending" for unequal treatment under PPP.

     • **Executive Actions contrary to the will of Congress**- SBA chose to disregard the will of Congress under the CARES Act, which intended the PPP loans to apply broadly to small business with less than 500 employees in all industries as an emergency measure to combat the unprecedented economic impact of the pandemic. Instead, SBA disregarded Congressional intent under the CARES Act, and operated as if Challenge had applied for a typical SBA 7(a) loan for which our industry has historically not been qualified.[1]

The Appellant in support of his appeal provided several letters from Congressman Williams directly to SBA Administrator, Honorable Isabel Guzman asking for clarification of eligible businesses and its supposedly narrower interpretation of the law leaving legitimate business without the ability to gain needed funds.

Celia Winslow, Senior Vice President of American Financial Services Association (AFSA) wrote letters of support to both Honorable Nydia M. Velazquez, Chairwoman, Committee on Small Business and to Honorable Blaine Luetkemeyer, Ranking Member Committee on Small Business, explaining that Congress must instruct the SBA to fulfill Congress' mandate and clarify that finance companies, particularly vehicle finance companies and installment lenders, are eligible for PPP loan forgiveness.

It wrote, the CARES Act states that any business with under 500 employees is eligible for PPP loans. Despite Congress' clear intent, in mid-April last year the SBA adopted a narrower interpretation, thereby resulting in some SBA lenders questioning the eligibility of vital businesses, such as installment lenders and vehicle finance companies. Traditional installment lenders provide loans to individuals and families. Their customers are medical technicians, teachers, lawn-service employees, lawyers, stay-at-home parents, childcare workers, and farmers. ( Docket # 1 July 09, 2021).

The First IFR, which was available to Appellant on SBA's website at the time of its PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible" 85 Fed. Reg. at 20812.

Based on Challenge Financial Services, Inc. appeal letter and support from congressional Members and organizational support, *supra*, it requests that the SBA approve full forgiveness of its PPP loan

---

[1] The notion that eligibility for CARES PPP loan is exclusive to businesses with less than 500 employees with no other requirements was dispelled in *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020).

JA0673

# III. Discussion

## A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

## B. Statutory Authority

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[2], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

On April 15, 2020, the SBA promulgated an interim final rule implementing the Program. See 85 Fed. Reg. at 20,811 (April 15, 202). The Federal Register notice published with this rule explained that the Program's rules incorporated the existing eligibility restrictions for Section 7(a) loans. Id. at 20,812. It also explained that "businesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Id. And § 120.110(b) bars "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans. The same categories of businesses are thus ineligible for Program loans. See 85 Fed. Reg. at 20,812; 13 C.F.R. § 120.110(b).

Congress was presumably aware of the SBA's existing regulations when it gave the Administrator the discretion to "*guarantee covered loans under the same terms, conditions, and processes as … loan[s] made under*" Section 7(a). *Cares Act § 1102(a)(2) (codified at 15 U.S.C. § 636(a)(36)(B))* (emphasis added); see *Fitzgerald v. Dep't of Homeland Sec.*, 837 F.3d 1346, 1355 (Fed. Cir. 2016) (discussing the presumption that Congress is "aware of applicable regulations when enacting pertinent legislation"). And those terms and conditions included the ineligibility of loans for entities which were financial businesses primarily engaged in the business of lending. 13 C.F.R. § 120.110(b).

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding

---

[2] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq.***

program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan
Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new
product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This
decision was reinforced by Congress placing the PPP lending program within the Section 7(a)
lending program by specifying that "[e]xcept as otherwise provided", the Administrator may
guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under
Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies
and regulations applicable to SBA's 7(a) Loan Program.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP
eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811
(posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020);
CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was
effective at the time of its PPP loan application, advised all PPP lenders and Appellants of the
basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard,
the First IFR informed PPP lenders and Appellants, "Businesses that are not eligible for PPP
loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating
Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized
under the Act are eligible." 85 Fed. Reg. at 20812.

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the
duration of the PPP. See Paycheck Protection Program as Amended by Economic Aid Act, 86
Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates
multiple PPP Interim Final Rules regarding loan program requirements, including incorporation
of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of
the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan
Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3,
Docket No. 9716822710 Page 10 of 13 2021) (consolidates and restates multiple PPP Interim
Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers
will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules
to incorporate the American Rescue Plan Act's amendments to the PPP)

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a
term and condition of that program, that "(b) Financial businesses primarily engaged in the
business of lending, such as banks, finance companies, and factors (pawn shops, although
engaged in lending, may qualify in some circumstances)." SBA explained in the Standard
Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692
(January 14, 2021)) that lenders were ineligible because "[l]enders create and hold interest-
bearing notes. The act of holding such notes for their potential investment income is counter to
SBA's philosophy that a small business should occupy the time, attention, and labor of the
owners/operators in the continual task of providing goods and services and not with enterprises
which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

## C. Analysis

Challenge Financial Services, Inc. tax information, financial documents, utilization of
Retail Installment Sales Contracts, website information and categorization of its business as
"finance intermediation", admission of being a financial business subject to 7(a) SBA loan
criteria establishing ineligibility under the CARES ACT that Appellant is a financial business

- 6 -

primarily engaged in lending, *supra*.

Appellant does not dispute that SBA SOP 50 10 6, Part 2, Section A, Chapter A, and SBA historical 7(a) loans criteria providing those businesses engaged primarily in lending are not eligible for the PPP loans.

The record establishes that Challenge Financial Services, Inc. is engaged in lending, financing automobile and other consumer loan instruments to the public under Retail Installment Sales Contracts (AR 206, 207).  The undisputable fact remains that Challenge Finances Services, Inc. customers are the sole source of revenue from customers retail installment sales contracts from which it derives its substantial profit and business revenue.

Notwithstanding, Challenge Financial Services, Inc. legal defenses cited *supra*. claim and justification for PPP loan eligibility exception as a "business engaging in financing" does not bypass the stark reality of being a "business engaging in financing" by its own admission clearly supported by the evidence in the record.

In the final analysis, SBA, which Congress authorized to implement the PPP and to issue regulations on the subject, has issued a rule that makes "[b]usinesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Id. And § 120.110(b) bars "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans.  The same sorts of businesses are thus ineligible for Program loans that I determine Challenge Financial Services, Inc. to be. See 85 Fed. Reg. at 20812; 13 C.F.R. § 120.110(b). Regardless of meeting of the base CARES Act eligibility requirements and demonstrated proper use of the PPP loan proceeds, the Appellant was ineligible for the PPP Loan to begin with.  Appellant's own admission establish it is a financial business primarily engaged in a financing activity. 13 C.F.R. § 120.110.

SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. Rule 7(a) was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans."

The effective date of SBA SOP 50 10 6 Ch. 3 ¶ 2.b.iii is October 1, 2020.  SBA SOP 50 10 5K, which became effective April 1, 2019, was applicable at the time of the Appellant's loan application.

Appellant's defenses herein mentioned *supra*. are strictly legal challenges that must be made with the proper court having Constitutional jurisdiction to adjudicate and determine legal interpretations of rules, regulations and statutes promulgated by Congress and implemented by federal agencies, specifically the SBA.

*In Rust v. Sullivan*, 500 U.S. 173, 193 (1991) ("The Government can, without violating the Constitution, selectively fund a program to encourage-age certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other."); *Regan v. Taxation With Representation*, 461 U.S. 540, 549 (1983) ("[A] legislature's decision

- 7 -

JA0676

not to subsidize the exercise of a fundamental right does not infringe the right….”); accord, e.g., *Wisconsin Education Ass'n Council v. Walker*, 705 F.3d 640, 646–47 (7th Cir. 2013).

Congress also excluded many other categories of businesses: banks, lenders, finance companies, and some pawn shops; life insurance companies; businesses located in foreign countries; pyramid sale distribution plans; businesses engaged in any illegal activity; private clubs; government-owned businesses; loan packagers; businesses with an “Associate” who is in prison, on probation, on parole, or who has been indicted for a felony or crime of moral turpitude; and businesses that have previously defaulted on SBA or other federally assisted loans. See 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa), incorporating 13 C.F.R. § 120.110, with two exceptions. *Camelot Banquet Rooms, Inc., et al, v. United States Small Business Administration, et al.,* F. Supp. 3d, 2021 WL 3680369, (E.D. Wis. Aug. 19, 2021); *Pharaohs GC, Inc. v. U.S. Small Business Admin.*, 990 F.3d 217 (2d Cir. 2021) (af-firming denial of injunction in similar first-round case brought by adult-entertainment club); *American Ass'n of Polit-ical Consultants v. U.S. Small Business Admin*., 810 F. App'x 8, 9–10 (D.C. Cir. 2020) (affirming denial of injunctive relief in similar First Amendment challenge to first-round exclusion of lobbying and political consulting business.

See *Pharaohs*, 990 F.3d at 229–30, *supra*. (For Program's first round of loans, the prurience exclusion did not “improperly leverage the subsidy to regulate speech”); *American Ass'n of Political Consultants*, 810 F. App'x at *9 (Program's lobbying exclusion did not “seek to leverage funding to regulate speech outside the contours of the [Program] itself,” quoting *Alliance for Open Society*, 570 U.S. at 214–15).

Congress authorized the Payroll Protection Program under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. *supra*.

SBA loan requirements under the Paycheck Protection Program (PPP) were codified in the implementation of rules, regulations and policy in determining the eligibility of any individual, entity or business being “presently involved in any active bankruptcy” as well as many other eligibility requirements. CARES Act § 1114 (codified at 15 U.S.C. § 9012).

The Administrative Procedure Act requires that the Courts hold unlawful and set aside agency action that is “in excess of statutory jurisdiction, authority, or limitations.” 5 U.S.C. §706(2)(C). SBA was given “extraordinary broad powers to accomplish these important objectives, including that of lending money to small businesses whenever they could not get necessary loans on reasonable terms from private lenders” *SBA v. McClellan,* 364 U.S. 446, 447 (1960).

Thus, the Courts must determine the ordinary tools of statutory construction to determine Congress's specific intent and make certain that the agency interpretation of the statute is reasonable, rational and consistent with Congress intent *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837 (1984); *Animal Legal Def. Fund v. USDA*, 789 F.3d 1206, 1215 (11Cir. 2015); *Friends of the Everglades v. S. Fla. Water Mgmt. Dist*., 570 F.3d 1210, 1223 (11th Cir. 2009).

I am only authorized to follow SBA's implemented interpretation of policy, rules and regulations as were authorized by Congress. Courts with proper jurisdiction will determine in foreseeable litigation whether SBA's interpretation of Congress CARES ACT and PPP statutes

- 8 -

JA0677

5773217101

were reasonable and rational, and whether SBA exceeded its statutory authority. <u>Chevron , U.S.A. , Inc. v Nat. Res. Def. Council, Inc.,</u> 467 U.S. 837 (1984); <u>Friends of the Everglades v. S. Fla. Water Mgmt. Dist.,</u> 570 F.3d 1210, 1223 (11th Cir. 2009); <u>Animal Legal Def. Fund v. USDA,</u> 789 F.3d 1206, 1215 (11th Cir. 2015).

Appellant's arguments and defenses, *infra.,* for approving forgiveness of the PPP Loans are legitimate legal challenges. However, this appeal is not the proper forum with constitutional jurisdiction to interpret Congress's intent and whether SBA implementing rules, regulations and policy exceeded its authority.

Challenge Financial Services, Inc. is clearly a business engaged in the "business of lending and financing" is thus ineligible for assistance under the regulations.

Challenge Financial Services, Inc. has not carried its burden to show a clear error of fact or law in the Final SBA Loan Review Decision. 13 C.F.R. § 134.1210.  Therefore, I must **DENY** the appeal.

## IV.  Conclusion

 Challenge Financial Services, Inc. has not shown that the SBA committed a clear error of fact or law. I DENY the appeal and AFFIRM the final loan review decision of the SBA. This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b). A party may file a request for reconsideration within 10 calendar days after service of an initial decision. A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1)

*Raul Pardo*

RAUL PARDO
Administrative Judge

JA0678

# United States
## Small Business Administration
### Office of Hearings and Appeals

PETITION FOR
RECONSIDERATION:

Club Fitness Holdings, Inc.                          Decided: January 12, 2023

     Petitioner                          Decision No. RECON-7464777209

RE: PPP Appeal of Club Fitness
Holdings, Inc.,
SBA No. PPP-7464777209 (2022)

*For Appellant: Angela Kennedy, Attorney*
*For SBA: Lolitha McKinney, Attorney*


Summary Denial
of
Petition for Reconsideration


## I. Introduction and Jurisdiction

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) considers appeals of decisions denying forgiveness of paycheck Protection Program (PPP) loans. OHA has jurisdiction to decide these cases pursuant to 13 C.F.R. Part 134, Subpart L. Once an initial decision has been made by an OHA judge, that decision is subject to reconsideration. If a request for reconsideration is timely filed, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 CFR §134.1211(c).

In the above-entitled matter, Appellant initiated an appeal of the denial of forgiveness of the PPP loan cited in the caption above on August 4, 2022, On November 15, 2022, an Order to Show Cause was issued, noting that the SBA Final Loan Review Decision (FLRD), on which Appellant's appeal was predicated, was withdrawn by the SBA. The Order gave Appellant until November 25, 2022, to show cause why the appeal should not be dismissed because the FLRD had been withdrawn by the SBA. While Appellant filed a number of documents, Appellant did not file any timely response as to why the appeal should not be dismissed. Therefore, on November 28, 2022, an Order Dismissing Appeal was issued finding that the case was dismissed due to lack of jurisdiction. That Order was an Initial Decision for the purposes of a Petition for Reconsideration.

In accord with 13 CFR §134.1211(c)(1), an actionable Petition for Reconsideration (PFR) requires that the Petition

    1. Is timely filed within 10 calendar days after service of the Judge's decision,

    2. Is initiated by either the Appellant or the SBA, and

3.  Is adequate as a Petition, by clearly showing an error of fact or law material to the decision.  For the Petition for Reconsideration to clearly show an error of fact or law material to the decision, the Petition must initially

    a.  clearly identify an error of fact or law in the Initial Decision, and

    b.  clearly show how that error is material to the Initial Decision.

A Petition for Reconsideration that fails to meet these requirements may be summarily denied.  Note that alleging an error in the underlying Final SBA Loan Review Decision is insufficient, rather the Petition must show an error in the Initial Decision.

## II.  Timeliness and Standing

The Initial Decision was issued on November 15, 2022, and the Petition for Reconsideration, was received on November 23, 2022, which is within 10 days after issuance of the decision. 13 CFR §134.1211(c)(1).  The Petition for Reconsideration was filed by the Appellant and was timely filed.

## III.  Evidence, Burden of Proof and Standard of Review

Action on a Petition for Reconsideration is not a *de novo* review but is a review of the Initial Decision.  This, in turn, means that the alleged error must be shown from the record existing at the time of the Initial Decision and/or from the Initial Decision itself.  Generally, the judge may not admit evidence beyond the administrative record.  13 C.F.R. § 134.1209(a).  In the case of a PFR, therefore, the record to be reviewed would include the Initial Decision and the Administrative Record and other pleadings filed prior to the Initial Decision.  Additional evidence proffered with or in relation to the PFR therefore is precluded.  Note that an allegation that evidence was in the possession of a lender and not provided to the borrower-Appellant or otherwise was not included in the record prior to the Initial Decision is insufficient to show an error in the Initial Decision.

Specifically, on a Petition for Reconsideration, the petitioning party "must show clearly show an error of fact or law material to the decision." 13 CFR §134.1211(c)(1)

This is a rigorous standard.  *See Size Appeal of Envtl. Prot. Certification Co., Inc.*, SBA No. SIZ-4935 at 2 (2008).  A petition for reconsideration must be based upon manifest error of law or mistake of fact and is not intended to give an additional opportunity for an unsuccessful party to argue its case.  *Matter of Hazzard's Excavating and Trucking Co.*, SBA No. BDP-364, at 2 (2010).  A petition for reconsideration is "appropriate only in limited circumstances, such as situations where OHA has misunderstood a party, or has made a decision outside the adversarial issues presented by the parties." *Size Appeal of KVA Elec, Inc.,* SBA No. SIZ-5057 at 2 (2009). **A petitioner will not prevail on a petition for reconsideration if it merely repeats arguments OHA already considered in the original decision, or seeks rehearing based upon evidence previously presented.** *Size Appeal of Luke & Assocs., Inc.,* SBA No. SIZ-4993 at 2 (2008). *CVE Protest of Alpha4 Solutions, LLC, (PFR),* SBA No. CVE-137-P, at 3 (2019).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of 13 CFR §134.1211.  The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified  in SBA regulations in this chapter.

## IV.  Allegation of Error, Discussion and Analysis

The Petition for Reconsideration submitted in this case contains no allegations related to the Initial Decision other than arguments made at the time of the Initial Decision.     That is, Petitioner asserts that its original appeal was timely filed because the Lender, while informing the

Petitioner of SBA's Final Loan Review Decision, led Petitioner to delay filing its appeal. Further, it was argued that Petitioner was entitled to consideration of an equitable tolling of the time limit. This issue was addressed in the Initial Decision. Nothing has been presented by the Petitioner to show a clear error of fact or law in the Initial Decision. There was no misunderstanding of Petitioner's argument at the initial decision level.

The mere allegation of error in the Initial Decision, or a mere request for reconsideration with no further allegations, is insufficient. *Size Appeal of Luke & Assocs., Inc.,* SBA No. SIZ-4993 at 2 (2008). Rather, the requirement is that the petitioning party must clearly show a manifest error of law or mistake of fact, based on the record as it existed at the time of the Initial Decision. Thus, the petitioning party, in effect, merely requests reconsideration and repeats arguments OHA already considered in the original decision, or seeks rehearing based upon evidence previously presented. This is an insufficient basis to prevail on a PFR, and warrants summary dismissal of the PFR.

VI. Conclusion and Decision on Petition for Reconsideration

To prevail on a Petition for Reconsideration, the petitioner "must clearly show an error of fact or law material to the [Initial Decision]." 13 C.F.R. § 134.1211(c)(1). Petitioner (Appellant) here has not demonstrated an error meeting this rigorous standard. The Petition for Reconsideration therefore is DENIED.

This is a reconsidered initial OHA decision. Unless the SBA Administrator, solely within her discretion, elects to review and/or reverse this decision per 13 C.F.R. §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b). The discretionary authority of the Administrator to review and/ or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. See id. Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d). This decision is non- precedential but may be published. 13 C.F.R. § 134.1211(e) and (f).

*H. Scott Williams*
H. SCOTT WILLIAMS
Administrative Judge

## United States Small Business Administration Office of Hearings and Appeals

PETITION FOR
RECONSIDERATION:

Club Fitness Holdings, Inc.

Appellant

RE: *PPP Appeal of Club Fitness Holdings, Inc., SBA No. PPP-7464777209 (2022)*

Issued: December 20, 2022 Docket

No. PFR-7464777209

### NOTICE AND ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received a Petition for Reconsideration (PFR) in the above-captioned matter on November 23, 2022. The PFR is assigned to Administrative Judge H. Scott Williams for adjudication. OHA conducts Paycheck Protection Program (PPP) appeals and PFRs under the authority of 13 C.F.R. part 134 subpart L.

- ### Notice To All Parties

I find the PFR to have been timely filed following issuance of Decision No. PPP-7464777209 on November 15, 2022. 13 C.F.R. § 134.1211(c).  To prevail on a PFR, Club Fitness Holdings, Inc. (Petitioner) must clearly show an error of fact or law material to the decision. *Id.*

- ### Instructions To Respondent

The SBA (Respondent) may file a response to the PFR. Any such response should be filed and served no later than January 5, 2023.

- ### Filing Instructions

A party seeking to file and serve any pleading or other submission in a PPP case must do so by utilizing the OHA Case Portal.

*H. Scott Williams*

H. SCOTT WILLIAMS
Administrative Judge

JA0682

# United States Small Business Administration
## Office of Hearings and Appeals

---

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Club Fitness Holdings, Inc.

      Appellant

Appealed from
SBA PPP Loan Number
7464777209

---

Issued: November 15, 2022

Decision No. PPP-7464777209

---

## ORDER DISMISSING APPEAL[1]

On September 19, 2022, Appellant received the Final SBA Loan Review Decision for U.S. Small Business Administration (SBA) Paycheck Protection Program (PPP) Loan No. 7464777209. On October 13, 2022, Appellant filed the above-captioned appeal with SBA's Office of Hearings and Appeals (OHA).

An appeal petition must be filed via the OHA Case Portal within 30 calendar days of the Appellant's receipt of the final SBA loan review decision. 13 C.F.R. § 134.1202(a). A judge may modify any time period or deadline except the time period governing the commencement of case. 13 C.F.R. § 134.1202(c)(3)(i)(A).

On November 7, 2022, I issued an Order to Show Cause as to why this matter should not be dismissed as untimely under 13 C.F.R. §§ 134.1202(a) and 134.1205(a)(2).

Appellant responded to the Order to Show Cause and argued that, while the appeal was filed more than 30 days after issuance of the Final Loan Review Decision, the limitation period should be equitably tolled. Assuming the factual allegations made by Appellant, there is a good case made for an equitable tolling as it seems quite unfair for a Borrower not to able to rely on such representations as were apparently made here. Nevertheless, I am bound by the time constraint contained in the regulation which contains no exception. It explicitly states that a judge cannot modify the time for commencement of an appeal.

Appellant's thirty-day clock began to run on July 26, 2022 and expired 30 days later, on August 25, 2022. Appellant did not file the petition until October 13, 2022, more than 6 weeks late. Since the Appellant has not filed the appeal within the time frame outlined in the regulations, I find the appeal to be untimely.

For the aforementioned reasons, I DISMISS the instant appeal as untimely. 13 C.F.R. § 134.1205(a)(2).

This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at *https://appeals.sba.gov*, this decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b).

---

1 This appeal is decided under the Small Business Act of 1958, 15 U.S.C. § 631 et seq., and 13 C.F.R. Part 134.

JA0683

*H. Scott Williams*

H. SCOTT WILLIAMS
Administrative Judge

JA0684

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Club Fitness Holdings, Inc.

      Appellant

Appealed from
SBA PPP Loan Number
7464777209

Docket No. PPP-7464777209

NOTICE AND ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received an appeal petition in the above-captioned matter from Club Fitness Holdings, Inc. (Appellant) on October 13, 2022. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## I. **Administrative Record**

SBA shall file the Administrative Record with OHA electronically, via the OHA Case Portal, no later than **November 29, 2022**. The Administrative Record must contain every document relevant to Appellant's PPP loan that the SBA possessed on the date of its final loan review decision. See 13 C.F.R. § 134.1207.

## II. **Objection to Administrative Record**

Appellant shall file and serve, on or before **December 9, 2022**, any objections it has to the absence of any document in the Administrative Record. See 13 C.F.R. § 134.1207(e). Any objection not filed by this date will be deemed waived, regardless of any agreements between the parties. Appellant may object to the absence of a document, previously submitted to, or sent by, SBA, which Appellant believes was erroneously omitted from the Administrative Record. An objection to an incomplete Administrative Record must include either a copy or a detailed description of the missing document or other information Appellant believes is missing, and why Appellant believes the Administrative Record should include it.

## III. **Appeal Response**

SBA may, but is not required to, file a response to this appeal. If SBA files a response to this appeal, it must be filed by no later than **December 27, 2022**, which is the close of record**.** If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. In addition, after review of the appeal petition, OHA may

request SBA to respond. Only SBA may respond. If filed, the response should set forth the relevant facts and legal arguments to the issues presented on appeal. *See* 13 C.F.R. § 134.1208.

## IV. <u>Filing and Service Instructions</u>

A party seeking to file and serve any pleading or other submission must do so by utilizing the OHA Case Portal at <u>https://appeals.sba.gov</u>. A filing received by OHA after 5 p.m. eastern time is considered filed on the next business day. See 13 C.F.R. § 134.204(b)(2); § 134.1202.

## V. <u>PPP Loan Deferment</u>

Appellant must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1204(d).

*H. Scott Williams*

H. SCOTT WILLIAMS
Administrative Judge

JA0686

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

CONTINENTAL REAL ESTATE

      Appellant

Appealed from
SBA PPP Loan Number
5457717009

Issued: March 21, 2023

Decision No. PPP-5457717009

### APPEARANCES

Katherine Dodson, Esq., Attorney for Borrower

Samina Nabijee, Esq., Office of General Counsel, SBA

### DECISION

### I. Introduction and Jurisdiction

On December 10, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding CONTINENTAL REAL ESTATE (Appellant) is ineligible for the PPP loan received. On January 6, 2023, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.

For the reasons discussed infra, I DENY the Appeal and AFFIRM the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

### II. Background

On April 17, 2020, Appellant applied for a PPP loan of $2,922,700.00 with The Huntington National Bank ("Lender") Administrative Record "AR" at 2995-3001. On April 23, 2020, Lender approved the loan in full and disbursed the funds. AR at 3002. On September 16, 2021, Appellant applied for PPP loan forgiveness in the amount of $2,872,765.70. Supplemental of Administrative Record "SAR" at Exhibit A, Page 1.

On November 1, 2021, SBA notified Appellant through its lender that it was conducting a review of the loan. AR at 2976-2977. On January 21, 2022, SBA notified Appellant through its lender that it was potentially recommending a full denial based on affiliation rules. AR at 2978-2982. A follow-up request for additional information was sent on February 22, 2022. AR at 2983-2987. Another follow-up request was sent April 4, 2022. AR at 2988-2994.

Documentation was provided to SBA by Appellant, but was deemed insufficient to overcome the affiliation rules it determined applied to the loan.  So, on September 12, 2022, SBA issued a Final Loan Review Decision ("FLRD") denying  PPP loan eligibility based on affiliation. However, SBA withdrew the FLRD  on November 5, 2022, and filed a Motion on November 15, 2022, to dismiss the appeal. I issued an Order of Dismissal on November 15, 2022, based on lack of jurisdiction.

A petition for reconsideration (PFR) of that dismissal was filed by Appellant on November 22, 2022, alleging that it was not given an opportunity to respond to the motion to dismiss, and further questioned SBA's authority to withdraw the FLRD.  I dismissed the PFR on December 12, 2022, as the withdrawal of the FLRD removed jurisdiction from OHA.

After withdrawal of the FLRD, SBA issued a new FLRD on December 10, 2022, which is the subject of the instant appeal.  Dkt. No. 2[1], AR at 27-28.  The AR at 20 reflects that affiliation was no longer considered by SBA as a basis for its determination that Appellant is ineligible for a PPP loan and forgiveness thereof.

On January 6, 2023, Appellant timely filed the instant appeal.  Dkt No. 1.  On January 25, 2023, I issued a Notice and Order requiring SBA to produce the AR by February 14, 2023.  Dkt. No. 10.  The AR, as well as the SAR, were timely filed on February 14, 2023.  Dkt. No. 11 and 12.  Appellant was permitted to object to the AR until February 24, 2023.  No response was filed.  SBA could, but was not required, to respond to the appeal until March 13, 2023.  SBA timely filed its response on March 13, 2023.  Dkt. No. 13. The record was closed on March 13, 2023.

## A. Final SBA Loan Review Decision

On December 10, 2022, SBA issued the current final loan review decision, finding that Appellant was ineligible for the PPP loan received.

The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes that Borrower is organized as an ineligible Passive Entity.

Open-source searches confirm CONTINENTAL REAL ESTATE is a developer, "We are a multidisciplinary, nationwide developer and builder of commercial real estate projects" and further states, "$3 billion+ developed, 30 million sq.ft. developed".

A review of the 2019 financial statements provided report development fees, professional fees and Gain from sale of affiliated  interests.

Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired

---

[1] Docket No. refers to the order in which documents were uploaded to the OHA Case Portal ("the Portal").

JA0688

or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible.

### B. Appeal

On January 6, 2023, Appellant filed the instant appeal, arguing as follows, in pertinent part, that the final SBA loan review decision is clearly erroneous:

> The SBA, on April 2, 2020, issued emergency regulations for the Paycheck Protection Program (PPP), and made the provisions of 13 CFR §120.110 applicable to determine eligibility for the first round PPP loans. See 85 Fed. Reg. 20811-01. The applicable regulation provides that "Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP_ 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible).

> The SBA's Standard Operating Procedure (SOP 50 10 6) provides further clarification on the businesses ineligible for SBA business loans. As is relevant to this appeal, the SOP 50 10 6 defines a passive business as follows:

> a. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds are not eligible, except Eligible Passive Companies under 13 CFR § 120.111. (See Ch. 2, Para. A., Eligible Passive Companies, of this Section for more information.)

> b. Businesses primarily engaged in subdividing real property into lots and developing it for resale on its own account are not eligible.

> c. Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public are not eligible.

> d. Businesses that lease land for the installation of a cell phone tower, solar panels, billboards, or wind turbines also are not eligible. However, the business operating the cell phone tower, solar panel, billboard, or wind turbine is eligible.

> e. Businesses that have entered into a management

3

JA0689

agreement with a third party that gives the management company sole discretion to manage the operations of the business, including control over the employees, the finances and the bank accounts of the business, with no involvement by the owner(s) of the Applicant, are not eligible. (See Chapter 1, Para. D.5, Affiliation Based on Management in this Section for additional guidance on management agreements.)

f. Apartment buildings and mobile home parks are not eligible.

g. Residential facilities that are not licensed as nursing homes or assisted living facilities and do not provide healthcare and/or medical services are not eligible.

h. The limited circumstances under which certain businesses engaged in renting or leasing may be eligible are as follows:

> i. Hotels, motels, recreational vehicle parks, marinas, campgrounds, or similar types of businesses are eligible if more than 50% of the business's revenue for the prior year is derived from transients who stay for 30 days or less at a time and the business complies with all zoning and other legal requirements. If the Applicant is a Start-Up Business, the Applicant's projections must show that more than 50% of the business's revenue will be derived from transients who stay for 30 days or less at a time.

> ii. Businesses that are licensed as nursing homes or assisted living  facilities and provide healthcare and/or medical services are eligible. Healthcare and/or medical services include but are not limited to services such as wellness checks, monitoring and/or helping take medications, monitoring blood sugar levels, having medical staff onsite (even on a part-time basis). The SBA Lender  must consider the terms of the license under which the business operates or will operate when determining eligibility.

> iii. Businesses that are engaged in leasing equipment, household goods or other items are eligible. (See subparagraph A.2. above regarding the eligibility of businesses engaged in lending.)

> iv. Businesses such as barber shops, hair salons, nail salons, and similar types of personal services businesses are eligible, regardless of whether they have employees or contract with individuals to provide the services that the business is

4

providing directly to the public. (See subparagraphs a) and c) above regarding ineligibility of developers and landlords.)

i.      An ineligible passive business cannot obtain an SBA Loan for any purpose, including the purchase or construction of a building for its own use.

SBA SOP 50 10 6, Part 2, Section A, Chapter 3

Continental Real Estate Companies is organized and operates within the State of Ohio. The State of Ohio is within the Federal 6th Circuit. Any appeals related to this SBA Final Loan Review Determination would be appealed to the 6th Circuit Court of Appeals.

The case law precedent in the 6th Circuit is very clear. The limitations and exclusions set forth in 13 CFR §120.110 are NOT applicable or valid for purposes of the first round PPP loan program. Specifically, the 6th Circuit held, in DV Diamond Club of Flint, LLC v. SBA, 960 F.3d 743, 746 (2020), that Congressional intent in the CARES Act was clear that the first round PPP loans were available for "any business concern" that meets the size criteria. The 6th Circuit further held that Congress's enactment of the CARES Act "made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." Id.  …

Although the controlling case precedent makes clear  that the passive business eligibility rule cannot be applied to first round PPP loans, Continental also argues that even if such provisions were found to be applicable, it does not meet the definition of a passive business. Specifically, during the applicable covered period, Continental Real Estate Companies was not a passive investor/developer. Continental Real Estate Companies was an active business that employed many people and provided professional services to its clientele.

There is no reported case law (other than the Eastern District of Michigan case that rejected the use of the  passive business eligibility rule for PPP loans) that interprets the provisions of 13 CFR §120.110(c). Accordingly, what the SBA defines as a passive business must be found in review of administrative agency materials like the SOP 50 10 6 and the general usage and definitions of "passive."

The Merriam-Webster's Dictionary defines "passive" in relation to a business activity to be a business in which the investor does not actively participate in the generation of income. Webster's further defines passive to mean "not active or operating" and "lacking energy or will."

Continental's primary source of income came from fees for services it rendered to customer/ clients. As you will notice from the 2019 tax return, the gross receipts reported are from active business operations including receipts for professional management, legal, accounting services, asset management and other management and development services. As noted in Section III, Subsection B above, the majority of the revenues earned by Continental in 2019 came directly from the day-to-day services rendered by Continental's employees.

Continental was not a primary owner of real estate. The core business functions of Continental were not investments or real estate. Rather, the core business revenues were earned through active, day-to-day work and provision of professional services.

JA0691

Docket No. PPP-5457717009

As set forth in Section IV above, the SBA's Standard Operating Procedure (SOP 50 10 6) provides further clarification on what constitutes a "passive business." Specifically, SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3) provides a listing of seven business types that are considered "passive businesses." Continental does not meet any of the seven business types identified in this section. This is more fully identified below:

1. **Continental Is Not A Developer or Landlord:** Continental did not own any real estate. Continental did not develop any land for itself. Continental was not a landlord. It did not receive rents or royalties. Rather, the majority of the income earned by Continental came from active business operations. The PPP loan proceeds received by Continental were used to pay payroll and other eligible expenses for Continental's active business operations. Accordingly, Continental does not meet the definition of a passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(a).

2. **Continental Does Not Subdivide Real Property Into Lots & Develop for Resale on Its Own Account:** As noted above, Continental did not own any real estate. Continental did not subdivide real property into lots and develop for its own account. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3) (b)..

3. **Continental Does Not Purchase Real Estate or Lease Real Estate:** As noted many times above, Continental did not own real estate. Continental did not lease real estate. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(c)..

4. **Continental Does Not Lease Land for Installation of Cell Phone Towers, Solar Panels, Billboards, or Wind Turbines:** Continental did not own any real estate. Continental did not lease land for installation of anything including cell phones, solar panels, billboards or wind turbines. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(d)..

5. **Continental Did Not Enter into Management Agreements with Third Parties to Run Its Operations:** Continental did not enter into any management agreements with Third Parties to run its operations. Rather, all of Continental's business services were performed, managed, organized, and controlled by Continental's employees. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(e)..

6. **Continental Does Not Own Apartment Buildings or Mobile Home Parks:** Continental did not own any real estate, including apartment buildings or mobile home parks. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(f).

7. **Continental Does Not Own or Operate Residential Facilities:** Continental did not own any real estate, including residential facilities during the covered period. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(g) ..

Continental does not meet any of the definitional provisions identified by the SBA in SOP 50 10 6 to define a passive business. Continental's revenues were earned through day-to-day work of its employees. These are highly paid, highly skilled

6

JA0692

professionals who provided meaningful, hard, and thorough work to Continental's customers. There is nothing "passive" about Continental' s core business services.

<div align="center">

C.    SBA's Response to the Appeal

</div>

On March 13, 2023, SBA filed its response to the Appeal, arguing as follows, in pertinent part:

### A. Under the CARES Act, PPP Loans Were Subject To The SBA 7(a) Loan Program Requirement in 13 C.F.R. § 120.110(c) Which Specifically Defines And Identifies Borrowers Excluded From Eligibility

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See Camelot Banquet Rooms, Inc., et al. v. SBA*, No. 21-2589, 2022 WL 221616 (7th Cir. 2022) (noting that first round PPP legislation "gave the SBA considerable discretion to decide eligibility for the Program.") In addition, the CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) lending program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). The CARES Act expressly modified some of Section 7(a)'s requirements for purposes of PPP loans. *See, e.g.,* 15 U.S.C. 636(a)(36)(I), (R) (exempting PPP from Section 7(a) requirements regarding an applicant's ability to obtain credit elsewhere and prepayment penalties). However, Congress specified that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)).

One Section 7(a) loan program regulation (and therefore, a term and condition of that program) is 13 C.F.R. § 120.110(c), which provides that businesses ineligible to receive 7(a) loans include "(c) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds []." This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program. Neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First Interim Final Rule of the PPP ("First IFR"). *See* Paycheck

<div align="center">7</div>

Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective when Appellant applied for and received its PPP Loan, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812. [Footnote omitted] In turn, SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(3)(a), cites 13 C.F.R. § 120.110(c) for the proposition that loans to passive entities are prohibited.

Three Circuit Courts, the 2nd, 11th, and D.C. Circuit courts, have issued opinions validating SBA's application of 120.110 or bankruptcy eligibility to PPP. *See Pharaohs GC, Inc. v. United States Small Business Administration,* No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021) (upholding the application of 13 C.F.R. §120.110 to prevent adult entertainment establishments from obtaining a PPP loan); *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.,* 983 F.3d 1239 (11th Cir. 2020) (holding that PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program); *American Association of Political Consultants v. U.S. SBA,* No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by *Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA,* 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020) (affirming SBA could apply the provisions of 13 CFR 120.110(r) to prevent a non-profit association primarily engaged in political or lobbying activities from obtaining a PPP loan).

In *Gateway Radiology Consultants,* the 11th Circuit upheld SBA's exclusion of bankrupt borrowers from PPP eligibility. *Id.* at 1264. The Court found that 1) SBA did not exceed its authority in adopting its bankruptcy exclusion rule for PPP eligibility; 2) the rule was not contrary to the CARES Act and was based on a reasonable interpretation of the Act, and 3) SBA did not act arbitrarily and capriciously in adopting the bankruptcy exclusion rule. *Id.* at 1264.

In reaching this conclusion, the Court conducted a 2-part *Chevron* analysis [footnote omitted] and determined that SBA did not exceed its statutory authority. Addressing *Chevron* part 1, the Court determined that Congress had not directly spoken on the issue of bankrupt debtors' eligibility for the PPP and that Congress' silence on the issue indicated its delegation of authority to SBA. The Court rejected the argument that SBA could only consider the eligibility factors expressly listed in the CARES Act:

8

First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. See 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.201. And in doing so the Act provides that "any business concern . . . shall be eligible" for a PPP loan if it "employs not more than the greater of . . . 500 employees; or . . . if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II). Of course, "any" typically has an expansive meaning, *see Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, *see Kingdomware,* 136 S. Ct. at 1977.

But it would be illogical to conclude that this subsection of the CARES Act size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. See 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. *Corley v. United States,* 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.

Second, *Gateway* relies on a subsection of the CARES Act that delegates authority to lenders to make PPP loans and requires them to take into account two "considerations" when "evaluating the eligibility of a borrower." See 15 U.S.C. § 636(a)(36)(F)(ii)(II). One is whether the borrower "was in operation on February 15, 2020," and the other is whether it "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors, as reported on a Form 1099-MISC." *Id.* But that provision does not say those two considerations are the only ones. And for reasons we've discussed, it would make little sense if they were the only considerations or criteria for determining eligibility. The Act establishes some eligibility requirements, the size requirement, for example. See id. § 636(a)(36)(D)(i). And it waives some generally

JA0695

applicable § 7(a) requirements, such as the inability to obtain credit elsewhere. *See id.* § 636(a)(36)(I). It would render parts of the Act inoperative and superfluous if the two "considerations" were interpreted as the only ones. *See Corley*, 556 U.S. at 314. . . .

The takeaway is: None of the individual statutory provisions that *Gateway* relies on provides an unambiguous answer to the question of whether bankruptcy debtors are eligible for PPP loans. Nor does the sum of those provisions. *Cf. Friends of the Everglades,* 570 F.3d at 1225 ("The broader context of the statute as a whole does not resolve the ambiguity.") (quotation marks omitted). Instead, the text of the CARES Act shows Congress placing the PPP within § 7(a), leaving intact the sound value requirement, and delegating rulemaking authority to the SBA. That is all the more important because in the Act Congress expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others.

*Id.* at 1258-59 and 1261.

The Court then turned to *Chevron* part 2 and determined that SBA's bankruptcy exclusion rule was reasonable and therefore entitled to deference. *Id.* at 1261. When determining reasonableness, the Court is not permitted to substitute its own judgment for SBA's and must only consider "whether the SBA's interpretation is rational." *Id.* at 1261-62.

Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic. Even though the purpose of the PPP was to quickly help small businesses in distress or before they became distressed, as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to "all" § 7(a) loans. See 15 U.S.C. § 636(a)(6). In that way, it identified "manifestly competing interests" that it "intended to accommodate." *Chevron*, 467 U.S. at 865. But it did not accommodate them with specificity when it came to whether bankruptcy debtors are eligible for PPP loans. It left that to the SBA.

The SBA's interpretation of the CARES Act and § 7(a) was a reasonable accommodation of those interests.

JA0696

Docket No. PPP-5457717009

Lastly, the Court found that SBA did not act arbitrarily or capriciously in adopting its bankruptcy exclusion rule.

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020), is not dispositive. The *DV Diamond Club* case involved an appeal by SBA from a district court's grant of a preliminary injunction in favor of a sexually oriented business that was seeking a PPP loan. Id. at 745. On appeal, the 6th Circuit merely determined that the sexually oriented business was likely to succeed on the merits of its case (i.e., was likely to succeed in proving PPP eligibility) taking into consideration irreparable harm and public interest, but did not decide the case on its merits. To date, no appellate court has held SBA's 13 C.F.R. § 120.110 regulation or interpretation of the regulation as it applies to passive businesses under the CARES Act invalid.

Appellant relies heavily on *National Ass'n of Home Builders v. SBA*, 2021 U.S. Dist. LEXIS 186548 (E.D. Mich. Sept. 28, 2021), which found that the long-standing 7(a) loan program guidelines regarding eligibility for SBA loans could not be applied to PPP loans. However, *Home Builders* is a district court case with no precedential value. *See Midlock v. Apple Vacations West,* 406 F.3d 453, 457-58 (7th Cir. 2005). An OHA decision invalidating SBA's regulations based on district court decisions would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States as applied by OHA. *See id.* (noting that if district court opinions had precedential value it would create an unmanageable legal system); *see also Colby v. J.C. Penny, Co.,* 811 F.2d 1119, 1124 (7th Cir. 1987) (it is a bedrock principle that "the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges." "Federal district judges in Detroit do not make law that is binding on federal district judges in Chicago.").

SBA appealed to the 6th Circuit following the district court's decision in *Home Builders*, but ultimately moved to dismiss its appeal after granting forgiveness to plaintiffs. Appellant posits that SBA forgave plaintiffs' loans "despite [plaintiffs'] being passive business entities." (Appeal at 8) But the basis for forgiveness is not apparent from the joint motion to dismiss. (Exhibit F – SBA Joint Motion to Dismiss) There is no indication, as Appellant contends, that SBA forgave plaintiffs' loans because it recognized or accepted the district court's conclusion that SBA could not use existing 7(a) program rules and regulations when determining eligibility for PPP loans, itself a subset of the 7(a) program.

Finally, to the extent Appellant argues that SBA's

11

JA0697

forgiveness for the plaintiffs in *Home Builders* entitles Appellant to forgiveness, this is an argument for estoppel. Estoppel bars a party from doing something different from what has been done before or what has been legally established as true. See Definition of Estoppel at https://www.law.cornell.edut/wex/estoppel. The Supreme Court has determined that as a general rule, the federal government may not be estopped from enforcing public laws, even though private parties may suffer hardship as a result in a particular case. *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990); *see also* Department of Justice Manual at https://www.justice.gov/jm/civil-resource-manual-209-estoppel). In other words, in enforcing the applicable PPP law(s), SBA cannot be prevented (*i.e.,* estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application. The applicable laws, regulations, and policy make clear that each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy. *See* 15 U.S.C. § 636(a0(36); 15 U.S.C. § 636m; First IFR.

Based on the above, OHA should uphold SBA's decision to apply the 7(a) loan program passive entity ineligibility policy to the PPP. SBA's decision denying Appellant's forgiveness request is consistent with Congressional intent, the plain language of the CARES Act and the regulations and rules promulgated thereunder. Appellant is ineligible for PPP loan forgiveness and OHA should affirm SBA's decision.

### **B. SBA Was Correct in Its Determination That Appellant, As a Passive Business, Was Ineligible For A PPP Loan.**

A passive entity is owned by a developer or landlord that does not "actively use or occupy the assets acquired or improved with the loan proceeds." SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(3)(a); 13 C.F.R. 120.110(c). On the front page of its own website, Appellant brands itself as a "full service [] developer." https://www.continental-realestate.com/. Under its "Office Development Portfolio" page, Appellant states "Continental's history and affiliation with office furniture made a natural lead-in to a development focus on office parks [] and mid-rise buildings []. *** While remaining diverse with our office development activities; Continental has also purchased, renovated, re-tenanted and sold high-rise office space after stabilizing the performance of the assets." https://www.continentalrealestate.com/projects/office/.

Appellant's Chief Financial Officer, in direct

JA0698

correspondence to SBA, admitted that Appellant "is a real estate developer with 65 employees at the time of it's [sic] PPP loan application." (AR [at] 576) The CFO went on to say "as is typical in real estate – independent 3rd party management companies are engaged to oversee the day to day operations of each facility." (*Id.*) Finally, the 2019 profit and loss statement reveals that Appellant received over $5 million in development and professional fees. (AR 3003)

Now, on appeal, Appellant contradicts its own website, its CFO, and its profit and loss statement, and states "[Appellant] Is Not A Developer" (Appeal, at 10) because it does not own real estate. But a passive entity need not own real estate. Appellant develops land for the benefit of third parties, which means that it does not "actively use or occupy the assets acquired." It earns revenue from the development of real estate, making it a developer. Therefore, it is irrelevant that Appellant does not fit into the other examples of passive businesses, such as those that subdivide real estate or lease property. By its own admission, Appellant is a developer, which is a passive entity under the regulations, and ineligible for a PPP loan.

## C. Appellant Is Ineligible For PPP Loan Forgiveness Because It Is Ineligible Under the PPP

Applying SBA's interpretation of the CARES Act and the First IFR, Appellant is ineligible for PPP loan forgiveness. As stated above, SBA concluded that Appellant was a passive entity. (AR 27-28) As such, it was an ineligible borrower under the PPP.

SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See, e.g., CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)) ("An eligible recipient shall be eligible for forgiveness..."); Paycheck Protection Program – Requirements – Loan Forgiveness, 85 Fed. Reg. 33004-05 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan ... the loan will not be eligible for forgiveness."); Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (Feb. 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). Thus, Appellant is, and has been, ineligible for PPP loan forgiveness and its Appeal seeking to overturn SBA's full denial of its PPP loan forgiveness request should be denied.

## III. Discussion

JA0699

A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

An Administrative Judge or Administrative Law Judge has no constitutionally based judicial power, see Ramspecky. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. See e.g., 20 U.S.C. §1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. See Nash v. Bowen, 869 F.2d 675, 680(2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir.1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985);Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C.1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, an Administrative Judge has no authority to decide the constitutionality of an SBA law, regulation, or policy or to interpret such contrary to SBA's established regulation or policy [emphasis added]. The task at hand is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. Neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

B. Analysis

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of this Act amends 15 U.S.C. § 636(a) to add another special Section 7(a) loan to the SBA's Section 7(a) loan portfolio, the Paycheck Protection Program (PPP) [emphasis added]. CARES Act, Pub. L. No. 116-136, §1102, 134 Stat. 281, 286 (2020) (codified in 15 U.S.C. §636(a) (36)) [emphasis added]. Congress expressly provided that "[e]xcept as otherwise provided in [15U.S.C. §636(a)(36)], the [SBA] Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [15 U.S.C. § 636(a)]." Id. at 287 (codified as 15 U.S.C. 636(a)(36)(B)). The Paycheck Protection Program was aimed at helping businesses meet payroll costs and pay operating expenses to keep people employed through the economic downturn. Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1). One month later, Congress increased this figure to more than $600 billion. Paycheck Protection and Health Care Enhancement Act, Pub.L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress gave the SBA rulemaking power directly related to the PPP,

14

specifying that SBA, not later than 15 days after the passage of the Cares Act "shall issue regulations to carry out this title," and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D).

An Interim Final Rule lays out how one calculates the amount which can be borrowed. As noted above, the Cares Act did not spell out loan restrictions but left it to the SBA to implement rules which would carry out Congressional intent. The First Interim Rule modifies several general Section 7(a) loan eligibility criteria as to PPP loans. This means that Section 1114 of the CARES Act waived the requirement for the First IFR to be published in the Federal Register.

Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required, but SBA did so in furtherance of the intent of the requirement that it issue regulations to carry out the PPP.

The IFR had both an effective date and an applicability date. April 15, 2020 is the date the IFR was published in the Federal Register, and the applicability date indicates that the IFR applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted. 85 Fed. Reg, Page 20812. The IFR went through several revisions, most notably to account for the creation of the second draw PPP loans.

13 C.F.R. § 120.111 sets out a list of conditions that a passive business must meet in order to be considered an Eligible Passive Company. The Appellant asserts that it is not a passive business at all, citing payroll documentation and its tax returns. However, an SBA Standard Operating Procedure (SOP) makes clear that the Appellant is ineligible for a PPP loan:

> III. Ineligible Types of Businesses
>> A. The Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations. Certain business types appearing on this list may be eligible under limited circumstances, as discussed below . . .
>>> 3. Passive Businesses (13 CFR § 120.110(c)):
>>>> a. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds

15

JA0701

(Except Eligible Passive Companies under 13 CFR § 120.111[2]).
. . .

In its appeal, Appellant describes its business operations as follows:

> Continental's revenues were generated from the provision of services related to identifying, securing, helping with finance, bookkeeping and tax preparation, and general administration of real estate development projects in three primary focus areas: (1)hospitality, (2) assisted living facilities, and (3) multi-family apartment complexes (including student housing).

This code section does not require that the developer own the real estate developed, as alleged by Appellant's counsel.  Nor does 13 CFR §120.111 apply, and it is not otherwise contended by Appellant.

Furthermore, Appellant's arguments concerning the issuance of the district court case opinion in N.A. Home Builders v. US Small Business Administration, 2021 U.S. Dist. LEXIS 186548, purportedly favorable to Appellant's position, also fail.  SBA filed an appeal of that opinion to the 6th Circuit Court of Appeals.  A joint motion by Home Builders and SBA "to dismiss for lack of jurisdiction and to vacate the District Court's Opinion and Order" was then filed by the parties. The 6th Circuit granted the motion, 2023 U.S. App. LEXIS 908, the parties to the appeal having agreed that the appeal and the underlying case are now moot because all of the Plaintiff's members who received loans under the program have obtained loan forgiveness. The Joint Motion granted by the 6th Circuit included the language "loan forgiveness to which federal law entitled them." Dkt. No. 9 at 4.

Appellant infers from the dismissal that the appeal was dismissed despite the Appellant's being passive entities, but there is no indication or verification of that position in the record. Dkt. No. 1.

Further, *Home Builders* is a district court case with no precedential value. *See Midlock v. Apple Vacations West*, 406 F.3d 453, 457-58 (7th Cir. 2005). An OHA decision based on district court decisions or interpretations of SBA regulations would have an unpredictable effect on SBA's PPP loan forgiveness process. See *Id.* (noting that if district court opinions had precedential value it would create an unmanageable legal system); *see also Colby v. J.C. Penny, Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ( "the responsibility for maintaining .... uniformity is a responsibility of appellate rather than trial judges).

The applicable laws, regulations, and policy provide that every PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan

---

[2] SBA regulations at 13 CFR §120.111 currently provide an exception to this prohibition on providing financial assistance to passive entities if the passive entity is an Eligible Passive Company that leases real or personal property to an Operating Company for use in the Operating Company's business and complies with the conditions set forth in the regulation.

JA0702

forgiveness and complies with the applicable laws, regulations, and policy. See 15 U.S.C. § 636(a0(36); 15 U.S.C. § 636m; First IFR. Estoppel cited by SBA in its brief (Dkt. No. 13) applies herein.

     Appellant is an ineligible passive entity, and as such, is ineligible for a PPP loan, and as well for forgiveness of a PPP loan. This finding is consistent with the language cited above in the joint motion to the 6th Circuit that loan forgiveness must be based on entitlement under federal law. Such entitlement is not established by the record.

## C. <u>Conclusion</u>

     Appellant has not established that the final SBA loan review decision is based on a clear error. I **DENY** the Appeal and **AFFIRM** the final SBA loan review decision. This is an initial agency decision.

     However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at *https://appeals.sba.gov*, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

     A party may file a request for reconsideration within **10 calendar days** after service of an initial decision.

     A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1). It is the borrower's responsibility to review the rules and procedures.

*Clifford Sturek*

CLIFFORD STUREK
Administrative Judge

JA0703

## United States Small Business Administration
## Office of Hearings and Appeals

---

PETITION FOR
RECONSIDERATION:

CONTINENTAL REAL ESTATE

Petitioner

Decided: April 14, 2023

Decision No. PFR-5457717009

---

APPEARANCES

Katherine Dodson, Esq., Attorney for Petitioner

Sameena Nabijee, Esq., Office of General Counsel, SBA, Respondent

**DECISION**

I. Introduction and Jurisdiction

On March 30, 2023, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a petition for reconsideration (PFR) in the above-captioned matter from CONTINENTAL REAL ESTATE. The PFR seeks OHA's reconsideration pertaining to a Paycheck Protection Program (PPP) Loan No. 5457717009 and OHA's initial decision of March 21, 2023, DENYING the appeal of the same PPP Loan No. 5457717009

OHA has jurisdiction to decide this PFR. See 13 C.F.R. Part 134, Subpart L.

II. Background

A. Cares Act of 2020

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). **Section 1102 of this Act amends 15 U.S.C. § 636(a) to add another special Section 7(a) loan to the SBA's Section 7(a) loan portfolio, the Paycheck Protection Program (PPP)** [emphasis added**]**. CARES Act, Pub. L. No. 116- 136, §1102, 134 Stat. 281, 286 (2020) (codified in 15 U.S.C. §636(a)(36)).

Congress expressly provided that "[e]xcept as otherwise provided in [15 U.S.C. §636(a)(36)], the [SBA] Administrator **may** [ emphasis ad d ed ] guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [15 U.S.C. § 636(a)]." *Id.* at 287 (codified as 15 U.S.C. 636(a)(36)(B)).

The Paycheck Protection Program was aimed at helping businesses meet payroll costs and pay operating expenses to keep people employed through the economic downturn. Congress first authorized $349 billion in loans. *CARES Act* § 1102(b)(1). One month later, Congress increased this figure to more $600 billion. Paycheck Protection and Health Care Enhancement Act, Pub. L. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA, not later than 15 days after the passage of the Cares Act "shall issue regulations to carry out this title," and SBA implemented and issued several interim final rules (IFRs) under the Program. *CARES Act,* § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).

### A. PPP Loan Eligibility

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D).

An Interim Final Rule lays out how one calculates the amount which can be borrowed. Amounts paid to independent contractors are not included in payroll costs. However, an independent contractor is eligible for a PPP loan on their own.

As noted above, the Cares Act did not spell out loan restrictions but left it to the SBA to implement rules which would carry out Congressional intent. The First Interim Rule modifies several general Section 7(a) loan eligibility criteria as to PPP loans.

This means that Section 1114 of the CARES Act waived the requirement for the First IFR to be published in the Federal Register. Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required, but SBA did so in furtherance of the intent of the requirement that it issue regulations to carry out the PPP.

The IFR had both an effective date and an applicability date. April 15, 2020 is the date the IFR was published in the Federal Register, and the applicability date indicates that the IFR applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted. 85 Fed. Reg, Page 20812.

Some individuals are precluded from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

PPP loans were given only if, considering the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States,

2

Docket No. PFR- 5457717009

and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

As to PPP Loan Forgiveness, "[if] the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m.

Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC 636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans.

The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(36)(J)(iv).

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I) -(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). Gateway at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)).

B.    <u>PPP Loan Forgiveness Denial and Appeal</u>

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision, and if there is a denial of forgiveness, then SBA issues a FLRD.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The FLRD will show forgiveness denial because the borrower:

1.    <u>Was ineligible for a PPP loan.</u>

2.    <u>Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses.</u>

3.    <u>Was ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA.</u>

4.    <u>Was ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA. 13 CFR §134.1201(b).</u>

These denial bases may be stated on different terms. Thus, a forgiveness denial may be because:

1.    <u>The borrower was ineligible to have acquire the loan (and thus because of some characteristic of the borrower, all the loan funds were received inappropriately, and no forgiveness is warranted), or</u>

2.    <u>The borrower was ineligible for the full amount received or that some or all</u>

3

loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all the funds received do not warrant forgiveness), or

3.    The lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some, or all the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or

4.    That the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed). [Emphasis added]

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L. However, for OHA to have jurisdiction, SBA must have issued a Final Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision. 13 CFR §134.1201(a) - (c). The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans. To file and manage an appeal of a Final SBA Loan Review Decision with OHA, Petitioners must use the OHA Case Portal (the Portal) at https://appeals.sba.gov. 13 CFR §134.1202(a).

The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations." 13 CFR 134.1204 (a)(2). And further, "[g]enerally, the Judge may not admit evidence beyond the administrative record. 13 CFR 134.1209 (a).

C.    Authority of Administrative or Administrative Law Judges

**An Administrative Judge or Administrative Law Judge has no constitutionally based judicial power**, see Ramspecky. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. See e.g., 20 U.S.C. §1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules [emphasis added]. See Nash v. Bowen, 869 F.2d 675, 680(2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir.1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert.denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985);Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp.1132, 1141 (D.D.C.1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency) [emphasis added].

Thus, an Administrative Judge has **no authority to decide the constitutionality of an SBA law, regulation, or policy or to interpret such contrary to SBA's established regulation or policy** [emphasis added].

The task at hand is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. Neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

JA0707

Docket No. PFR- 5457717009

D.    <u>PPP Loan Application, Forgiveness, FLRD and Appeal</u>

On April 17, 2020, Appellant applied for a PPP loan of $2,922,700.00 with The Huntington National Bank ("Lender") Administrative Record "AR" at 2995-3001. On April 23, 2020, Lender approved the loan in full and disbursed the funds. AR at 3002. On September 16, 2021, Appellant applied for PPP loan forgiveness in the amount of $2,872,765.70. Supplemental Administrative Record "SAR" at Exhibit A, Page 1.

On November 1, 2021, SBA notified Appellant through its lender that it was conducting a review of the loan. AR at 2976-2977. On January 21, 2021, SBA notified Appellant through its lender that it was potentially recommending a full denial based on affiliation rules. AR at 2978-2982. A follow-up request for additional information was sent on February 22, 2022. AR at 2983-2987. Another follow-up was sent April 4, 2022. AR at 2988-2989.

Documentation was provided to SBA, but was deemed insufficient to overcome the affiliation rules. So, on September 12, 2022, SBA issued a Final Loan Review Decision ("FLRD") based on that, which it ultimately dismissed after withdrawal of the decision. (I was the judge assigned to the initial appeal as well).

A petition for reconsideration of that appeal was filed by Appellant alleging that it was not given an opportunity to respond to the motion to dismiss, and further questioned SBA's authority to withdraw the FLRD. I dismissed the Appeal as the withdrawal of the FLRD removed jurisdiction from OHA.

After withdrawal of the FLRD, SBA on December 10, 2022 issued the FLRD which is the subject of the instant appeal. Dkt. No. 2[1] , AR at 27-28.

On January 6, 2023, Appellant timely filed the instant appeal. Dkt No. 1. On January 25, 2023, I issued a Notice and Order requiring SBA to produce the AR by February 14, 2023. Dkt. No. 10. The AR, as well as the SAR, were timely filed on February 14, 2023. Dkt. No. 11 and 12. Appellant was permitted to object to the AR until February 24, 2023. No response was filed. SBA could, but was not required, to respond to the appeal until March 13, 2023. SBA timely filed its response on March 13, 2023. Dkt. No. 13. On March 21, 2023, I issued the initial decision denying the Appeal.

E.    PFR of Petitioner, CONTINENTAL REAL ESTATE

On March 30, 2023, Petitioner timely filed the instant PFR. PFR Dkt. No. 1[2]. Petitioner argued in relevant part:

> The SBA's regulations, in 13 C.F.R. §120.110, set forth a listing of businesses that are ineligible for SBA loans. The OHA's March 21, 2023 Decision determined that the Appellant was ineligible for a PPP loan or related forgiveness pursuant to 13

---

[1] Docket. No. refers to the order in which documents were uploaded to the OHA Case Portal (the Portal) in the original Appeal.
[2] PFR Docket No. refers to the order in which documents were uploaded to the OHA PFR Case Portal ("the PFR Portal").

JA0708

Docket No. PFR- 5457717009

CFR §120.110(c). This regulation provides that the following type of business is ineligible for a SBA loan: "[p]assive business **owned by** developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds." (Emphasis added).

The SBA's Standard Operating Procedure (SOP 50 10 6) provides further clarification on what constitutes a "passive business." Specifically, SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3) provides a listing of seven business types that are considered "passive businesses." The SBA's loan review decision is based upon a finding that the Appellant meets the first definition of a "passive business" set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(a), which defines an ineligible business to include "[p]assive businesses **owned by** developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds are not eligible." (Emphasis added).

The plain language of this regulation, and the SBA's SOP, does NOT identify developers and landlords as ineligible passive entities for the SBA loans. Rather, this regulation (and the SBA's own SOP) precludes SBA's loans to passive businesses OWNED BY developers and landlords. The subject of this exclusion is NOT the developer. It is the passive businesses **owned by** the developer. The plain language of 13 CFR §120.110(c) provides that in order to be deemed ineligible for a SBA loan, the business must (1) be passive, (2) be owned by a developer or landlord, and (3) not actively use or occupy the assets purchased or improved with the loan proceeds.

In its appeal, the Appellant argued that it was not a passive business or developer. As to the passive business argument- the Appellant provided extensive documentation to establish that it[s] business operations were active (i.e.[,] providing proof of substantial wages paid to employees providing professional development services to clientele, identifying and describing the Appellant's sources of income related to providing services to its clients).

With respect to the developer argument, the Appellant distinguished its business operations from a business that merely owns real estate for development. Specifically, the Appellant argued that it was not a developer or landlord, as those terms are contemplated in 13 CFR §120.110, because it does not own real estate or develop land on its own accord. Rather, much like an1 architectural firm, engineering firm, or law firm, the Appellant provides development services, for a fee, to its clientele. So, unlike the "developer or landlord" contemplated in the Regulations, Continental is providing active professional services.

In the March 21, 2023 Decision, the OHA held that the Appellant was a developer and therefore ineligible for the PPP loan or forgiveness. This is an incorrect statement of the regulation. Assuming solely for purposes of this argument that the Appellant is a developer, such finding is <u>not</u> sufficient to

6

end the inquiry as to whether the Appellant is ineligible for the PPP loan or forgiveness. Rather, the regulations set forth in 13 CFR §120.110(c) deem only the passive businesses that are **owned by** the developer to be ineligible. The ineligible business is not the developer. Rather, it is the business <u>owned by</u> the developer, and only if such business is passive. And, then, only if the passive business does not actively use or occupy the assets acquired with the loan proceeds.

The SBA's loan review decision denies the Appellant its loan forgiveness because it deems that Continental is a developer. Specifically, in the SBA's March 13, 2023 Response to the Appeal, the SBA argues "[b]y its own admission, the Appellant is a developer, which is a passive entity under the regulations, and ineligible for a PPP." The SBA's loan review decision and denial of loan forgiveness is solely based upon a finding that the Appellant is a developer. In fact, the SBA's Response to the Appeal agrees that the other examples of passive businesses as set forth in SOP 50 10 6, Section A, Chapter 3(A)(3) do not apply.

The SBA's loan review decision is based upon a clear error of both fact (Continental is not a passive business owned by developer or landlord) and law (developers are not per se passive business that are ineligible for SBA loans,[sic] it is the passive businesses that owned by the developers that do not actively use assets obtained from the loan proceeds that are ineligible). On these grounds, we request that the OHA reconsider its March 21, 2023 Decision.

F.   Respondent's Reply to PFR

SBA, as respondent, was permitted to respond to the PFR until April 17, 2023. PFR Dkt. No. 2. Respondent timely filed its response to the PFR on April 12, 2023. In its reply, SBA argued as follows:

On reconsideration, Appellant alleges material errors of fact and law by OHA, both of which stem from Appellant's erroneous reading of 13 C.F.R. § 120.110(c), which states "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under 120.111)" are ineligible for SBA business loans.

Appellant argues that under this regulation, developers and landlords themselves are not passive entities, but only the businesses that the developers and landlords own. This is a crabbed, nonsensical reading of the provision. The owners of Appellant – Frank Kass and John Luck – are developers, as they own a self-described development company. (AR 2995-97; Response, pp. 10-11; CONTINENTAL REAL ESTATE, p. 16) In other words, Appellant is a passive business owned by two developers, and therefore was ineligible for a PPP loan and loan forgiveness.

7

Finally, for purposes of this appeal, it is irrelevant how Appellant used the loan proceeds. In the PPP context, unlike other SBA business loan programs, loan proceeds are not used to acquire or improve assets: they are used for payroll costs. Therefore, the portion of section 120.110(c) stating that passive businesses do not use the "assets acquired or improved with loan proceeds" is inapplicable in the PPP context. It is sufficient that Appellant does not use or occupy the assets it acquires or improves in the course of its business to render it passive and ineligible. (Response, p. 10)

## III. Discussion

### A. Standard of Review

A PFR may be granted by OHA upon a "clear showing of an error of fact or law material to the decision." *13 CFR §134.1211(c)(1)*.

A PFR does not allow an unsuccessful party an additional opportunity to argue its position, and the PFR must rise from a manifest error of law or mistake of fact. *Size Appeal of Envtl. Prot. Cert. Co., Inc.*, SBA No. SIZ-4935, at 2 (2008) (PFR). "A [PFR] is appropriate only in limited circumstances, such as situations where OHA has misunderstood a party, or has made a decision outside the adversarial issues presented by the parties." *Id.*, citing *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (*quoting Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Thus, "[t]he moving party's argument must leave the Administrative Judge with the definite and firm conviction that key findings of fact or conclusions of law of the earlier decision were mistaken." *Size Appeal of TKTM Corp.*, SBA No. SIZ-4905 (2008) (citing *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775, at 11-12 (2006)); *Size Appeal of KVA Elec., Inc.*, SBA No. SIZ-5057 (2009).

For the reasons set forth below, I **DENY the Petition For Reconsideration** of CONTINENTAL REAL ESTATE and **AFFIRM** the OHA Appeal Decision and the final SBA loan review decision.

### B. Analysis

Regarding the Small Business Act, a Federal Court has stated: "The SBA is a federal agency created by Congress to 'aid, counsel, assist, and protect insofar as it is possible the interests of small-business concerns.' SBA v. McClellan, 364 U.S. 446, 447 (1960) (quoting Small Business Act of 1953, Pub. L. No. 83-163, §202, 67 Stat. 232, 232 (1953)). Among the "extraordinarily broad powers" that Congress gave to the agency to accomplish this objective was "lending money to small businesses whenever they could not get necessary loans on reasonable [**4] terms from private lenders." Id. The primary mechanism through which the SBA does so is a Section 7(a) loan [emphasis added], named after the section of the Small Business Act of 1958 that authorizes its issuance. These loans "may be [*823] made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis." 15 U.S.C. § 636(a). In practice, the SBA prefers the latter, indirect approach. United States v. Kimbell Foods, Inc., 440 U.S. 715, 719 n.3 (1979).

JA0711

Congress created the Small Business Act in 1958, and has periodically amended it, providing a broad statutory regime for Section 7(a) loans. See Small Business Act of 1958, Pub L. No. 85-536, § 7(a), 72 Stat. 384, 387-88 (1958) (codified in 15 U.S.C. § 636(a))." Over time, Congress has also created several special Section 7(a) loans and exempted them from statutory requirements that apply to ordinary Section 7(a) loans." (Emphasis added) 632 B.R. 816- 822.

In addition to the statutes, and as noted above under Section II, Subsection C. of this decision on the PFR, I am bound by all policy directives and rules promulgated by the SBA, including  its interpretation of those rules and policies.

In the instant petition, Petitioner argues that SBA's decision (FLRD) and the initial decision of OHA are clearly erroneous, as it alleges that the documentation it provided established that Petitioner was an active business.  However, that conclusion is simply wrong, pursuant to 13 C.F.R. § 120.110(c), which states "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under 120.111)" are ineligible for SBA business loans.

Petitioner specifically identifies itself as a development company in all of its documentation.  Owners Frank Kass and John Luck are self-identified as developers.  Passive businesses owners like Petitioner are ineligible for PPP loans, pursuant to 13 C.F.R. § 120.110(c).

## C. <u>Conclusion</u>

For the foregoing reasons, the instant PFR is **DENIED**. 13 C.F.R. § 134.1211(c).

Unless the SBA Administrator, solely within her discretion, elects to review and/or reverse this decision per 13 C.F.R. §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b).

The discretionary authority of the Administrator to review and/or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. See id.

Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d).

This decision is non-precedential but may be published.  13 C.F.R. § 134.1211(e) and (f).

*Clifford Sturek*
_____
CLIFFORD STUREK
Administrative Judge

JA0712

United States
Small Business Administration
Office of Hearings and Appeals

| | |
|---|---|
| Paycheck Protection Program Appeal of:<br><br>Continuity Logic, L.L.C.<br>     Appellant<br><br>Appealed from:<br>SBA PPP Loan Number<br>8694278709 | Issued:  July 25, 2023<br><br>Docket No. PPP- 8694278709 |

*Appearances:*

*For the Appellant:  Alexander Tiktin, Attorney*
*For the Small Business Administration: Anthony Davis, Attorney*

## Decision

### 1. *Introduction and Jurisdiction*

On or about April 10, 2021, Continuity (Appellant or Continuity) submitted SBA Form 2483, Paycheck Protection Program Borrower Application (Application). (Administrative Record (AR) 272).  On April 10, 2021, Lender disbursed PPP loan number 8694278709 (Loan) in the amount of $300,000. (AR 253).  On July 28, 2022, Appellant executed a Paycheck Protection Program Loan Forgiveness Application Form 3508, requesting forgiveness for the full amount of the Loan.  (AR 276).

On March 6, 2023, the SBA issued its Final Loan Review Decision (FLRD) denying forgiveness of the Loan.

On April 5, 2023, Continuity filed the present appeal asking the Office of Hearings and Appeals (OHA) reverse the SBA's decision and find that it eligible for the PPP loan disbursed and its forgiveness.  OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. (13 C.F.R. § 134.1201 *et seq.*).

### 2. *Background*

#### A. *Continuity's Loan Application and Request for Loan Forgiveness*

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act (CARES Act) became law, giving businesses the opportunity to apply for potentially forgivable loans through the PPP. P.L.116-136 (March 27, 2020).

On an unknown date, Continuity received a PPP First Draw Loan.  AR 42.

On April 10, 2021, Continuity submitted a Second Draw Borrower Application Form (revised February 17, 2023) in the name of Continuity Logic, LLC, identifying it as having 13 employees and an average monthly payroll of $120,000.00, resulting in a PPP loan amount of

1

JA0713

$300,000.00.  AR 269.

While there are multiple required certifications as part of the PPP application, the first certification, or question 1, asks:

Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by a Federal department or agency, or presently involved in any bankruptcy?

AR 270.  Continuity checked off "No" to that question.[1] The Application notifies the applicant that: *"[i]f questions (1), (2), (4) or (5) are answered "Yes" the loan will not be approved*."  Id.

Continuity also certified at the end of the application that all the information provided is true and correct in all material respects. See below.



I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:

*Peter E Christensen*                                                    04/10/2021

Signature of Authorized Representative of Applicant                    Date

Peter E Christensen                                                    Chairman

Print Name                                                             Title

AR 272.

On April 12, 2021, Lender disbursed the PPP loan amount of $300,000.  AR 2, 290.  When Continuity submitted its Forgiveness application on July 28, 2022, the review process discovered that Continuity was subject to an Involuntary Petition Against a Non-Individual filed on September 24, 2020.  AR 13.   Fision Corporation and others had filed an involuntary chapter 7 bankruptcy petition against Continuity in the United Stated Bankruptcy Court of the District of New Jersey. Docket – Appeal Brief.

On June 28, 2021, the United States Bankruptcy Court dismissed the involuntary petition. AR 14, 159-167.  As part of the dismissal, Continuity, as the Alleged Debtor, was required to pay Fision various amounts, including $466,561.22 plus additional accrued interest for its secured claim. AR, 3.

---

1

*If questions (1), (2), (4), or (5) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | ✗ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | ✗ |

AR 270.

### B.  Final Loan Review Decision

On March 6, 2023, the FLRD denied forgiveness of the loan, with the following:

SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes that the Borrower, or an owner of the Borrower, **was involved in an active bankruptcy at the time of loan origination.**

To be eligible for a PPP loan, each Borrower must certify on the Form 2483, Question 1, that the Borrower or any owner of the Borrower, were not presently involved in any bankruptcy.

AR, p. 18 (emphasis added).

### C.  Continuity's Appeal

On April 5, 2023, Continuity filed its appeal petition.  Continuity argued that the involuntary bankruptcy petition should not exclude it from PPP eligibility -  the involuntary petition was dismissed and it was never adjudicated a debtor in bankruptcy.  Further, it was not insolvent or unable to pay its debts as they came due.  Continuity also asserts that:

> Excluding Continuity from PPP eligibility has no rational relation to the SBA's own regulations; is an unauthorized exercise of administrative powers; and, is contrary to Congressional intent. Notably, the SBA has regulations covering dismissed bankruptcy cases or chapter 11 cases with confirmed plans and those debtors are not excluded from eligibility. Moreover, the Decision violates Section 525(a) of the Bankruptcy Code, which prohibits discrimination against debtors.

Docket - Appeal Brief.  In support of its Appeal, Continuity also filed several documents on April 5, 2023: Exhibit B- Bank Letter and Exhibit C - Christensen Declaration.

### D.  SBA's Response

On June 7, 2023, the SBA filed a Response to the Appeal, arguing that:

(1) SBA correctly determined that Appellant was ineligible for the PPP loan program as it was involved in an active and ongoing bankruptcy case at the time of PPP loan application, and

(2) the Borrower falsely certified on the SBA Form 2483 that it was not presently involved in any  bankruptcy.

The SBA's Brief details the history of the CARES ACT, how the Paycheck Protection Program (PPP) is administered under Section 7(a) of the Small Business Act, which provides that the SBA may guarantee covered [PPP] loans under the same terms, conditions, and processes as other Section 7(a) loans. In regard to the issue of bankruptcy, SBA determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or nonrepayment of unforgiven loans.  Lastly, the Borrower falsely certified on SBA Form

3

2483 that it was not presently involved in any bankruptcy which was incorrect and understood the implications of that false certification.

### 3. Discussion

#### A. Standard of Review

Continuity has the burden of proving all elements of the appeal. Specifically, Continuity must prove that the SBA Final Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

#### B. Analysis

At issue is whether Continuity was eligible for a PPP Loan at the time of the PPP application. Upon review, I affirm the SBA final loan review decision and deny the appeal for the following reasons:

1. Involuntary Bankruptcy Renders a Borrower Ineligible

Continuity argues that the involuntary bankruptcy petition should not exclude it from PPP eligibility. Continuity acknowledges that it was an "alleged involuntary debtor", but there was no active bankruptcy – it was not adjudicated a debtor. Appeal Brief, p. 4.

The Fourth Interim Final Rule informs that a PPP Loan will not be approved if a business in bankruptcy. It does not differentiate between a business that is involved in voluntary or an involuntary proceeding. Rather, there is a blanket denial. The Interim Final Rule provides the following:

**Eligibility of Businesses Presently Involved in Bankruptcy Proceedings**.
*Will I be approved for a PPP loan if my business is in bankruptcy?*

No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.

Paycheck Protection Program – Requirements-Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23450, 23451 (April 28, 2020). The Interim Final Rule also does not differentiate what kind of debtor is involved in a bankruptcy proceeding.

Continuity was involved in an ongoing Chapter 7 bankruptcy case at the time of PPP loan application and, yet, certified on Form 2483 that it was not presently involved in any bankruptcy. The loan application informed Continuity that *"[i]f questions (1), (2), (4) or (5) are answered "Yes" the loan will not be approved*." Id.; See also FLRD filed March 6, 2023 and Appeal Response filed June 6, 2023. Continuity would have been ineligible for the PPP Loan Program as it was involved in a bankruptcy case at the time of Loan application.

4

Continuity argues that "[a]n alleged involuntary debtor – as a credit risk – is categorically no different than a discharged or dismissed debtor and should be treated no worse." Appeal Brief, p. 5. A discharged or dismissed debtor, however, is no longer in bankruptcy. At the time of application, Continuity was involved in a bankruptcy proceeding. Upon dismissal of the bankruptcy proceeding, the Bankruptcy Court ordered Continuity to pay the following to Fision:

- $466,561.22 plus additional accrued interest in satisfaction of its secured claim;
- $466,633.70 plus accrued interest in full satisfaction of its unsecured claim;
- $45,000 for general release of all claims.

AR 162-163. The Order also required Continuity to pay SGRV $6,100, Soles Heynes $30,159, and CMS $20,000, in full satisfaction of its claims. AR 164. Lastly, Continuity was ordered to reclassify $1,300,000 in funds from equity to debt. AR 164.

In applying the above, Continuity was a debtor, albeit involuntary, in a bankruptcy proceeding at the time of the 2nd PPP Loan application – it was ineligible for this loan.

2. False Certifications Renders Continuity Ineligible for Forgiveness

As part of its application, Continuity certified it was not involved in **_any_** bankruptcy proceeding at the time of the application on April 10, 2021. False certifications, intentional or otherwise, is also a basis to deny forgiveness requests:

> If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, or the terms of the borrower's PPP loan application (for example, **because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness**.

Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Federal Register 33004, 33005 (June 1, 2020) (emphasis added).

The record reflects that as of its Application dated April 10, 2021, Continuity was involved in an involuntary chapter 7 petition which was filed against it on September 24, 2020. AR 169. The certification language does not qualify that it be a certain type of bankruptcy, i.e., voluntary versus involuntary. It simply states "presently involved in *any* bankruptcy." See AR 270. Continuity was involved in a bankruptcy at the time of the Application on April 10, 2021, albeit, an involuntary one, that was later dismissed. That it was dismissed on June 28, 2021, however, does not negate Continuity's certification that it was not involved in a bankruptcy proceeding. Right before that certification, the Application informs the applicant that: *"[i]f questions (1), (2), (4) or (5) are answered "Yes" the loan will not be approved*." Had Continuity correctly certified that it *was* presently involved in a bankruptcy, then Continuity would not have been approved for a PPP loan in the amount of $300,000.00. Id.

Continuity then certified at the end of the application that "all the information provided is true and correct in all material respects." See AR 272. This was also a false certification as the information provided in the Application was not true and correct - Continuity was involved in a bankruptcy at the time of the PPP Application.

5

### 3.  OHA Inappropriate Forum for Policy Arguments

Continuity next makes various policy arguments – it argues that SBA overstepped its authority authorized by Congress in excluding involuntary debtors from PPP eligibility. Continuity also argues that the Bankruptcy Code prohibits discrimination against involuntary debtors.

As an independent office of the SBA, OHA has limited authority and jurisdiction to review decisions made by the SBA. Acting within the bounds of that authority and jurisdiction, Administrative Law Judges do not have the authority to invalidate a regulation or interpretation issued by the SBA Administrator. *See Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("[OHA] is not the proper forum for a challenge to the validity of a regulation"); *Family Choice Financial*, Docket No. PPP-8323747201, at 12 (ALJs are "exercising the Administrator's delegated authority and it would be surprising if that delegation included the authority to invalidate an SBA regulation"); *Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings*, 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–2 ("ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules").[2]

Given that limited authority, regulations issued by the SBA Administrator are binding on OHA, and OHA is not the forum for challenges to the SBA's regulations or interpretation of Congressional acts. Any such challenges are more properly made, if at all, in federal court. *Id*

For the above reasons, I find Appellant failed to show that the SBA's determination that Continuity was involved in an active bankruptcy at the time of loan origination was clearly erroneous.

### C.  Conclusion

Continuity failed to show that the SBA Final Loan Review Decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

After reviewing the record and for the reasons set forth above, I DENY Continuity's appeal, and AFFIRM the determination of the Small Business Administration in the Final Loan Review Decision.

This is an initial decision by the SBA.  However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov within 10 calendar days after service, this Decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b).

*Christa Zamora*
_____
Christa Zamora
Administrative Law Judge

---

[2] Available at https://www.justice.gov/file/20131/download (last accessed June 2, 2022).

6

Decision No. PPP-1959867707

## United States Small Business Administration Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Cusano Smith, PLLC

Appellant

Appealed from
SBA PPP Loan Number
1959867707

Issued: May 9, 2022

Decision No. PPP-1959867707

*APPEARANCES*

*Appellant: Stephen Smith*

*SBA, OGC: Jeffrey Schervone, Esq.*

DECISION

### I. Introduction and Jurisdiction

On December 6, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Cusano Smith, PLLC (Appellant) is ineligible for the loan received. On January 2, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed infra, I Deny the Appellant's appeal and Affirm the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 S.

### I. Background

PPP is a temporary SBA 7(a) loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed

1

JA0719

individuals. 15 U.S.C. § 636(a)(36)(D). Other types of entities, such as nonprofit organizations and housing cooperatives, also could be eligible under certain circumstances. Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. Borrowers were permitted to apply for both an Economic Injury Disaster Loan (EIDL) and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F). As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II). Businesses applying for a second PPP loan ("Second Draw") were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

Specifically, regarding the instant appeal, it is significant to note that when submitting an application for a PPP loan, borrowers were required to respond, and certify their responses to, various questions related to the borrower's business and the borrower's background.

Included among the questions was the following:

> 1) Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? SBA Form 2483, *Paycheck Protection Program Borrower Application Form,* Question No. 2.

The Appellant submitted its application for a PPP loan on May 1, 2020. (AR at 55, 65). The Appellant's loan application was approved on May 1, 2020, and its loan, in the amount of $40,625.00, was disbursed on May 4, 2020. (AR at 10). In submitting its application, the Appellant answered the above question related to delinquent or defaulted loans "No." (AR at 54-55).

Clearly, and despite Appellant's answer to this question, the evidence of record shows his response was not true. Whether this false answer was done intentionally or inadvertently is not a matter to be addressed in this forum.

## B. PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is

2

Decision No. PPP-1959867707

true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was eligible for a PPP loan;

(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;

(3) Was ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,

(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the Final SBA Loan Review Decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021.

On May 1, 2020, SBA disbursed a PPP loan to Appellant.

On January 2, 2022, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.

The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that, at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date. To be eligible for a Paycheck Protection Program loan, each Borrower

3

JA0721

Decision No. PPP-1959867707

must certify on the Form 2483, Question 2, that the Borrower and any owner of the Borrower, has not obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government.  (AR at 10, 52-53) Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II. Background

On May 1, 2020, SBA disbursed a PPP loan to Appellant.

SBA Loan No.: 1959867707
Approved Loan Amount: $40,625.00
Loan Approval Date: 05/01/2020
Lender Forgiveness Decision Submission Date: 04/07/2021
Lender Forgiveness Decision Amount: $40,625.00
SBA Final Forgiveness Amount: $ 0.00

The Small Business Administration (SBA) has completed its review of the above referenced Paycheck Protection Program (PPP) loan. Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision. SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concluded that, at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date. To be eligible for a Paycheck Protection Program loan, each Borrower must certify on the Form 2483, Question 2, that the Borrower and any owner of the Borrower, has not obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. (AR at 10) Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate.

On April 7, 2021, Appellant filed for PPP loan forgiveness.

### C. Final SBA Loan Review Decision

On December 6, 2021, SBA issued its final loan review decision  finding that Appellant was ineligible for the loan received.  (AR 10)

The Appellant filed its application for a loan on April 30, 2020. The Appellant

4

Decision No. PPP-1959867707

subsequently filed its application for loan forgiveness (SBA Form 3508 EZ) on May 4, 2021. (AR at 53-55). Subsequently, the SBA requested additional documentation from the Appellant, and after a review of all the documentation, issued its Final SBA Loan Review Decision on December 2, 2021. (AR at 10). In its Final Loan Review Decision, the SBA denied forgiveness of the Appellant's loan, finding:

> SBA has completed its review of the above referenced Paycheck Protection Program (PPP) loan. Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that, at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date.

To be eligible for a Paycheck Protection Program loan, each Borrower must certify on the Form 2483, Question 2, that the Borrower and any owner of the Borrower, has not obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. (AR at 10, 52-53)

## D. Appeal

On January 2, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant argues "I am submitting this statement in support of the appeal of Cusano Smith PLLC of the final SBA Loan Review Decision dated 12/02/2021 which determined that a Borrower was ineligible for the PPP loan listed above. The Decision further states that the Borrower had previously obtained a direct or guaranteed loan from a Federal Agency and was (a) delinquent, or (b) had defaulted with 7 years of the PPP loan application date. The undersigned hereby appeals the decision on several grounds, including but not limited, possessing absolutely no knowledge as to which loan from a Federal Agency was delinquent. Cusano Smith PLLC had never applied for any business loans since its inception. In closing, the Borrower seeks to appeal the erroneous SBA Loan Review Decision in consideration of the fact the Borrower has not obtained a loan from a Federal Agency and without further information, a more detailed statement in support of the appeal cannot be provided.

On March 24, 2022, after receipt of the Administrative Record, Appellant submitted an additional statement in further support of his appeal. Appellant contended that the Administrative Record "submitted by the government fails to identify two of the following: 1) Borrower has no knowledge of any loan from a Federal Agency. No UCC lien was ever filed against Borrower nor did Borrower ever make payments to any Federal Agency during any period over the past ten years. In closing, the Borrower seeks to appeal the erroneous SBA Loan Review Decision in consideration of the fact the Borrower has not obtained a loan from a Federal Agency and without further information, a more detailed statement in support of the

5

Decision No. PPP-1959867707

appeal cannot be provided. Borrower reserves any and all rights with regard to this appeal upon production of further and more specific details."

### III. Discussion

#### A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

#### B. Analysis

Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA made a final loan review decision. SBA determined that the borrower was ineligible for the PPP loan. SBA issued a final decision that after review of the documentation provided, the Appellant, at the time of loan application, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date. Based on these reason(s), SBA determined that forgiveness in the amount of $0.00 is appropriate. (AR at 10)

On December 2, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the loan received. (AR at 10)

SBA Standard Operating Procedure (SOP), 50 10 5(K), eff. April 1, 2019, provides: Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31CFR § 285.13) provides:

Unless waived by SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior Loss to the Government. "Prior Loss" means the dollar amount of any deficiency on a Federal loan or federally assisted financing which has been incurred and recognized by a Federal agency after it has concluded its write-off and/or close-out procedures for the particular account SOP 50 10 5(K), Subpart B, Ch. 2, III.A. at ¶16.

Similarly, 13 C.F.R. §120.110, identifies what businesses are ineligible for SBA loans and provides: Unless waived by SBA for good cause, businesses that have previously defaulted on a Federal loan or Federally assisted financing, resulting in the Federal government or any of its agencies or Departments sustaining a loss in any of its programs, and businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan (or guarantee ed a loan which was defaulted) and caused the Federal government or any of its agencies or Departments to sustain a loss in any of its programs. For purposes of this section, a compromise agreement shall also be considered a loss;. . . . (13 C.F.R. §120.110 at ¶ q). Furthermore, question number 2 on the SBA Form

6

Decision No. PPP-1959867707

2483, Paycheck Protection Program Borrower Application Form, enumerates the following criterion for PPP loan approval:

Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?

In accordance with the forgoing policies and regulations, the following is documented in the Administrative Record as part of the SBA review of this case:

A denial was initially recommended for the PPP loan due to the Appellant having defaulted and caused a loss on a Federal Debt and caused a loss in the past 7 years. (AR at 6 of 9) The documentation provided from the deliberative notes, exhibits a loan charge-off on 1/27/2016 totaling $3,311.50 relevant to SBA Loan (#2549175003) to Stephen M. Smith, Esq., the borrower. The loan was disbursed on 11/5/2015 in the amount of $18,700. It is noted that Stephan M. Smith is principal and 50% owner of the referenced loan. The borrower is deemed ineligible per with SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13), which reads in part as follows: a "Unless waived by the SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior loss to the Government..." Additionally, the Guide House report exhibits that the related loan has an Effective Date of Charge-Off of 1/27/2016, which is within seven (7) years of the PPP loan disbursement date of 5/1/2020 for the referenced loan.

The deliberative notes document a recommendation of Denial for SBA loan application #1959867707. In accordance with SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13) reads in part as follows:

a. "Unless waived by the SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior loss to the Government..."

b. Unless waived by SBA for good cause, SBA cannot provide assistance to an Applicant if there is a Delinquent Federal Debt attributed to the Applicant), and

c. These rules apply to:

i. The Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor);

ii. Any business owned, operated, or controlled by the Applicant, or an Associate of the Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor; and

7

JA0725

Decision No. PPP-1959867707

iii.    For Delinquent Federal Debt only, any individual or entity who will be guaranteeing the loan for the Applicant." (AR at 6)

Therefore, the borrower is deemed ineligible for the loan disbursed per SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13).

On July 16, 2021, an additional deliberative note in the file (AR at 7) states:

We are in concurrence with the recommendation of a Denial by both parties as documentation provided exhibits a loan charge-off on 1/27/2016 totaling $3,311.50 relevant to SBA Loan (#2549175003) to Stephen M. Smith, Esq., the borrower. The loan was disbursed on 11/5/2015 in the amount of $18,700. It is noted that Stephan M. Smith is principal and 50% owner of the referenced loan. The borrower is deemed ineligible per with SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13), which reads in part as follows: a "Unless waived by the SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior loss to the Government..." Additionally, the Guide House report exhibits that the related loan has an Effective Date of Charge-Off of 1/27/2016, which is within seven (7) years of the PPP loan disbursement date of 5/1/2020 for the referenced loan...

Further, pre-decisional deliberative notes indicate "The Hold Code 48 (Do Not Pay - TOP and CAIVRS) cannot be cleared", Loan #1959867707, the principal Stephen Smith has delinquent debt or defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. The borrower's, Cusano Smith, PLLC, loan application date was 04/30/2020. Moreover, due diligence corroborates the 50% principal, Stephen Smith, flagged is the entity with the delinquent federal debt. The LexisNexis Smartlinx report verifies the principal, Stephen Smith, SSN 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 (B3). A CAIVRS query was conducted verifying this SSN is in default (A1). E-Tran showed loan #25491750-03 with the principal as charged off (A2). CHRON indicates the loan was charged off and has an "In Liquidation Date" of 10/20/15. Therefore, Stephen Smith, SSN 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, has defaulted on a loan with the federal government within the last seven years and is ineligible for a PPP loan.

On June 15, 2021, SBA notified Appellant that it was reviewing the above referenced Paycheck Protection Program (PPP) loan and requested electronic copies of the following documents: 1) Borrower Application Form (SBA Form 2483 or Lender's equivalent form) and all supporting documentation provided by the borrower. (AR at 47, 48-50). On July 9, 2021, the SBA requested that the lender/ Appellant to provide additional documentation as follows: "Upon review of this file, there is a hold code that needs to be cleared before the review process can continue. Hold Codes on the filfile are: Do Not Pay - TOP and CAIVRS - Borrower listed in Do Not Pay for delinquent or has defaulted on federal debt and caused a loss within past 7 years - Potential eligibility issue - Borrower has charged off SBA loan 25491750-03 that went into liquidation on 10-20-2015 with a remaining outstanding balance. This is within 7 years of the PPP application date. In order to clear please provide documentation to support either the debt is fully paid off or borrower is on a current repayment plan." (AR at 91011) No response was received by the Appellant/ Lender, nor is any response uploaded to the file. Therefore, the Hold Code could not be cleared. (AR at 10-11).

On April 26, 2020, Appellant completed SBA 2483, Paycheck Protection Program, Borrower Application Form. (AR at 52-53) Upon signing, Appellant claimed 50% Ownership in the company as a partner. Stephen Smith was identified as the

8

Decision No. PPP-1959867707

owner/partner who owned the remaining 50%.[1] Stephen Smith also completed SBA Form 2483 as Appellant's authorized representative, answering several questions. At the top, the questionnaire begins with 'If questions (1) or (2) below are answered "Yes," the loan will not be approved.

(1) Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy.

(2) Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?

Appellant responded "no" to both questions. (AR at 51-52)

### Executive Summary

This loan is being referred to the SBA for further action because the principal was identified to have a delinquent or defaulted federal debt.

Loan #1959867707 has SBA Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Smith showed loan #2549175003 in the amount of $20,000 was charged off on 01/27/2016. The PPP loan application date was 4/30/2020; the charge off date is within seven years of the loan application. Moreover, due diligence corroborates the principal flagged is the individual with the defaulted federal debt. As a result, we are recommending that this loan be referred to the SBA for further analysis. There were no other alerts or flags related to this case.

There are three related loans (including the current case) related to this case:

Loan #1418217708, case 1929569 (status: RFA);
Loan #1959867707, case 1875266 (status: RFA);
Loan #2930827707, case 3023507 (status: NFA Automated Review - Closed).

No additional indicia of potential circumvention of eligibility, ineligibility, potential fraud, and/or abuse was identified. **(AR at 65)**

### A.  Borrower's Background Information

According to the loan and forgiveness applications, Cusano Smith, PLLC, EIN 83-1399153, at 483 Cherry St., Ste 1, Bedford Hills, NY 10507, is listed as the borrower, and established on 07/18/2018.  Gary Cusano, SSN 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, is listed as the 50% owner and Stephen Smith, SSN 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, is listed as the 50% owner. The loan amount was $40,625.00, the monthly average payroll was $16,250, and at the time of the application the borrower listed five employees. The forgiveness application lists Stephen Smith as the primary contact. The amount listed on the forgiveness application was $40,625.00 with five employees also listed at the time of the forgiveness application. LexisNexis (LN) query of the borrower's name returns Cusano Smith, PLLC, operating location at 483 Cherry St Ste 1, Bedford Hills, NY 10507, active,

established in 2018 and lists Gary Cusano as a possible employee. LN does not verify the TIN on the loan application, listing TIN Unavailable (B1). LN verifies Gary Cusano, SSN 085-52-

---

[1] Addendum A
Law Office of Gary Cusano, PC Law Office of Stephen Smith DBA Smith Law Group

9

Decision No. PPP-1959867707

6569 at 2450 Linette Ct, Yorktown Heights, NY 10598 (B2). LN verifies Stephen Smith, SSN 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. LN indicates the borrower was associated with the address provided on the loan application, 592 Long Pond Rd, Mahopac, NY 10541, until 11/2020 (B3). The borrower did not list a NAICS code.

### B.  Alerts, Risk Indicators, and Detailed Findings

SBA Hold Flag 48 (Do Not Pay-TOP and CAIVRS) is not resolved. Loan #1959867707 has SBA Flag 48, indicating the principal, Stephen Smith, has delinquent debt or defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. The borrower's, Cusano Smith, PLLC, loan application date was 04/30/2020. Moreover, due diligence corroborates the 50% principal, Stephen Smith, flagged is the entity with the delinquent federal debt. The LexisNexis Smartlinx report verifies the principal, Stephen Smith, SSN 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 (B3). A CAIVRS query was conducted verifying this SSN is in default (A1). E-Tran showed loan #25491750-03 with the principal as charged off (A2). CHRON indicates the loan was charged off on 01/27/2016 (A3). Therefore, Stephen Smith, SSN 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, has defaulted on a loan with the federal government within the last seven years and may have been ineligible for a PPP loan.  SBA Hold Flag 48 (Do Not Pay-TOP and CAIVRS) is not resolved.

Loan #1959867707 has SBA Flag 48, indicating the principal, Stephen Smith, has delinquent debt or defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. The borrower's, Cusano Smith, PLLC, loan application date was 04/30/2020. Moreover, due diligence corroborates the 50% principal, Stephen Smith, flagged is the entity with the delinquent federal debt. The LexisNexis Smartlinx report verifies the principal, Stephen Smith, SSN 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 (B3). A CAIVRS query was conducted verifying this SSN is in default (A1). E-Tran showed loan #25491750-03 with the principal as charged off (A2). CHRON indicates the loan was charged off on 01/27/2016 (A3). Therefore, Stephen Smith, SSN 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, has defaulted on a loan with the federal government within the last seven years and may have been ineligible for a PPP loan. E-Tran query identified two additional PPP loans associated with the principals related to this case (A4-A7):

NAICS Code Case Disposition 3023507 Law Office of Gary A Cusano, PC Principal – Gary Cusano   2930827707 $22,290 2 541110 NFA Automated Review - Closed 1929569 Stephen M Smith Principal -Stephen Smith 1418217708 $7,500.

### Research and Document Analysis

#### A. Application and Supporting Document
The Level 2 Reviewer analyzed the loan application and forgiveness applications. No other financial documents were available for review.

#### B. Open Source and Database Research
LexisNexis reports did not reveal any criminal history, judgements, bankruptcies or any other adverse information which would have impacted loan eligibility (B1,B2,B3) Open Source and public research utilizing Google searches and Lexis Nexis did not reveal any negative news which would have impacted loan eligibility (C1-C11).

#### C. Requests and Responses to Requests for Information and Document Review
Not applicable.

### V. Conclusion and Recommendation

This loan is being referred to the SBA for further action because the principal was identified to have a delinquent or defaulted federal debt. Loan #1959867707 has SBA Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Smith showed loan #2549175003 in the amount of $20,000 was charged off on 01/27/2016. The PPP loan application date was 4/30/2020; the charge off date is within seven years of the loan application. Moreover, due diligence corroborates the principal flagged is the individual with the defaulted federal debt. As a result, we are recommending that this loan be referred to the SBA for further analysis.

10

JA0728

Decision No. PPP-1959867707

There were no other alerts or flags related to this case.

There are three related loans (including the current case) related to this case:

Loan #1418217708, case 1929569 (status: RFA);
Loan #1959867707, case 1875266 (status: RFA);
Loan #2930827707, case 3023507 (status: NFA Automated Review - Closed).

No additional indicia of potential circumvention of eligibility, ineligibility, potential fraud, and/or abuse was identified. [2]  (AR at 70)

On September 9, 2021, SBA notified the Appellant's lender Chase Bank, that the SBA has submitted a recommendation of Denial for SBA loan application #1959867707. In accordance with SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13).

As explained above, the Final Charge Off, *i.e.,* final confirmation of a loss to the Government, from Appellant's business partner 's previous loan, was uploaded to the file on January 27, 2016. Consequently, all other criteria aside, Appellant would not be eligible under 13 C.F.R. §120.110 for an SBA loan until *after* seven (7) years later, *i.e.,* January 27, 2023. Appellant submitted its application for the PPP loan, which is the subject of this appeal on April 30, 2020, approximately two- and one-half years, prior to the expiration of the seven (7) year look back period. The Appellant was, therefore, ineligible to receive the PPP loan that was disbursed on May 4, 2020, notwithstanding Appellant's claims of "possessing absolutely no knowledge as to which loan from a Federal Agency was delinquent" or not having ever "applied for any business loans since its inception".

As previously noted, it is determined that the above arguments asserted by Appellant whether factually accurate or not, are misguided and irrelevant to the issue in this appeal. The issue is *not* whether the Appellant had, any knowledge "as to which loan from a Federal Agency was delinquent" or whether the Appellant "ever applied for any business loans since its inception." Simply stated, the issue is whether the Appellant or his business partner *defaulted* on a loan and caused a *loss to the Government* within the 7-year period prior to Appellant's PPP loan application.

The unchallenged and undisputed facts are the principal Stephen Smith, was identified to have a delinquent or defaulted federal debt. Loan #1959867707 has SBA Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Stephen Smith showed loan #2549175003 in the amount of $20,000 was charged off on 01/27/2016. The PPP loan application date was 4/30/2020; the charge off date is within seven years of the loan application. Moreover, due diligence corroborates the principal flagged is the individual with the defaulted federal debt. Appellant did default

---

[2] Thursday, September 9, 2021, 1:16 PM, to Chase.com; Loan #1959867707 / Borrower: Cusano Smith, PLLC. The SBA has submitted a recommendation of Denial for SBA loan application #1959867707. In accordance with SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13) reads in part as follows: a. "Unless waived by the SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior loss to the  Government…" b. Unless waived by SBA for good cause, SBA cannot provide assistance to an Applicant if there is a Delinquent Federal Debt attributed to the Applicant), and c. These rules apply to: i. The Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor); ii. Any business owned, operated, or controlled by the Applicant or an Associate of the Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor); and iii. For Delinquent Federal Debt only, any individual or entity who will be guaranteeing the loan for the Applicant." Therefore, the borrower is deemed ineligible for the loan disbursed per SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13).

11

Decision No. PPP-1959867707

on loan number 2549175003 in the amount of $20,000 which was charged off on January 27, 2016, resulting in a loss to the Government. The Appellant is represented by his business partner, a licensed attorney, who is the partner that apparently defaulted on the relevant loan. Therefore, the denial of any knowledge of any loan from a Federal Agency, on behalf of the Appellant, does not appear credible.

## Conclusion

Based upon the foregoing, it is determined that the Final SBA Loan Review Decision correctly concluded that the Appellant was ineligible to receive the PPP loan that was disbursed on May 4, 2020. Therefore, the SBA properly denied forgiveness of said loan pursuant to 13 C.F.R. §134.1201(b)(1). Appellant has not proven an error in fact or law. **Accordingly, the Appellant's appeal is DENIED.**

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b), PPP Procedural Rule. A party may file a request for reconsideration within 10 calendar days after service of an initial decision. You can serve your petition via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov. **A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).**

**SO ORDERED**.

Type text here

*Betty Barbeito*
_____

BETTY J. BARBEITO
Administrative Judge

12

Decision No. PPP-1959867707

### NOTICE OF APPEAL RIGHTS AND
### PROCEDURES

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)).

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)). The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d).

13

JA0731

Decision No. PPP-1959867707

      Appellant established that the final SBA loan review decision is based on a clear error. I 12/02/2021 VIA FORGIVENESS PLATFORM Wendy Lacey JPMorgan Chase Bank, National Association Re: PAYCHECK PROTECTION PROGRAM FINAL SBA LOAN REVIEW DECISION Borrower: CUSANO SMITH, PLLC SBA Loan No.: 1959867707 (AR at 11) Approved Loan Amount:
$40,625.00 Loan Approval Date: 05/01/2020 Lender Forgiveness Decision Submission Date: 04/07/2021 Lender Forgiveness Decision Amount: $40,625.00 SBA Final Forgiveness Amount: $ 0.00 Dear: Wendy Lacey The U.S. Small Business Administration (SBA) has completed its review of the abovereferenced Paycheck Protection Program (PPP) loan. Based on a review of lender and/or borrower submissions, and consideration of the facts and circumstances, SBA has made a final SBA loan review decision. SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that, at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date. To be eligible for a Paycheck Protection Program loan, each Borrower must certify on the Form 2483, Question 2, that the Borrower and any owner of the Borrower, has not obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. File: Denial_Justification_Document_-_Term.pdf [2021/12/02 21:59:37] 10 of 70 Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

 

BETTY BARBEITO
Administrative Judge

14

PFR No. 1959867707

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Cusano Smith, PLLC

**APPELLANT**

Appealed from:

SBA PPP Loan Number 1959867707

Issued: July 20, 2022

Docket No. PPP-1959867707

## APPEARANCES

*Cusano Smith, PLLC for Petitioner*
*Jeffrey Schervone, Esq. for U.S. Small Business Administration, OGC*

## RECONSIDERED INITIAL DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is
**AFFIRMED**.

## ISSUE(S)

Does the reconsideration request clearly show an error of fact or law material to OHA's
initial decision?

## I. INTRODUCTION AND JURISDICTION

On May 17, 2022, the U.S. Small Business Administration (SBA) Office of Hearings and
Appeals (OHA) received a Petition for Reconsideration (PFR) in the above-captioned matter
from Cusano Smith, PLLC (Petitioner). Petitioner seeks OHA's reconsideration pertaining to a
Paycheck Protection Program (PPP) Loan No.1959867707 and OHA's initial decision, denying
the appeal of the same PPP Loan Number.

OHA has jurisdiction to decide this PFR. *See* 13 C.F.R. Part 134, Subpart L.

1

JA0733

## II. BACKGROUND

### A. Cares Act 2020

On March 25, 2020, in response to the economic distress caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, 134 Stat. 281 (2020). Among other provisions, the CARES Act established the PPP at Section 1102. The Program lends money to eligible small businesses to assist them in covering expenses and making payroll for their workers to keep them employed during the pandemic. If the loan funds are used for certain specified expenses, the borrowers can receive full forgiveness of the loan.

### B. Procedural History

On May 1, 2020, SBA disbursed a PPP loan to Appellant in the Amount of $40,625.00. (Administrative Record 02, hereafter, Administrative Record shall be referred to as (AR)).

On April 04. 2021 Appellant executed a PPP Loan Forgiveness Application Form 3508 requesting forgiveness for the full amount of the Loan. (AR at 55-64)

On December 2, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the Loan Received. In the SBA decision, the loan forgiveness requested by Appellant was denied in full because at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date and caused a loss to the Government. (AR at 10 & 11)

On January 2, 2022, Appellant timely filed an appeal petition with the SBA.

The OHA issued a Notice and Order setting filing deadlines for the administrative record, Appellant objections to the administrative record, and SBA response to the appeal.

SBA timely submitted the Administrative Record.

Appellant did not file objections to the Administrative Record. However, Appellant submitted an additional statement in further support of his appeal. Appellant contended that the Administrative Record "submitted by the government fails to identify two of the following: 1) Borrower has no knowledge of any loan from a Federal Agency. No UCC lien was ever filed against Borrower nor did Borrower ever make payments to any Federal Agency during any period over the past ten years. (Appeal, pg. 5).

### C. OHA's Initial Decision

OHA addressed the merits of Appellant's Appeal and concluded that Appellant did default on loan number 2549175003 in the amount of $20,000 which was charged off on January 27, 2016, resulting in a loss to the Government. (Appeal, pg. 11-12). Specifically, Appellant

2

JA0734

contended that the Administrative Record "submitted by the government fails to identify two of the following: 1) Borrower has no knowledge of any loan from a Federal Agency. No UCC lien was ever filed against Borrower, nor did Borrower ever make payments to any Federal Agency during any period over the past ten years." (Appeal, pg. 5).

OHA found that the Final SBA Loan Review Decision correctly concluded that the Appellant was ineligible to receive the PPP loan that was disbursed on May 1, 2020. Stephen Smith, (who is indicated as 50% Owner of Cusano Smith, PLLC (AR 51)) was identified to have a delinquent or defaulted federal debt. Loan #1959867707 has SBA Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Stephen Smith showed loan #2549175003 in the amount of $20,000 was charged off on 01/27/2016. The PPP loan application date was 4/30/2020; the charge off date is within seven years of the loan application. Moreover, due diligence corroborates the principal flagged is the individual with the defaulted federal debt. (Appeal, pg. 11). Thus, Appellant failed to prove an error in fact or law.

**THE RECORD SHOWS** that Appellant applied for and received a PPP loan. The record also shows that Petitioner's (Appellant's) PPP loan forgiveness application was denied by SBA because at the time of the loan application, the Borrower, or an owner of Borrower, had previously obtained a direct or guaranteed loan from a Federal and as (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date and caused a loss to the Government and thus ineligible to receive a PPP loan.

**IN ITS RECONSIDERATION PETITION**, Petitioner alleges that OHA's initial decision contains the following material errors of fact or law:

- "A denial was initially recommended for the PPP loan due to the Appellant having defaulted and caused a loss on a Federal Debt and caused a loss in the past 7 years. (AR at 6 of 9). The documentation provided from the deliberative notes, exhibits a loan charge-off on 1/27/2016 totaling $3,311.50 relevant to SBA Loan (#2549175003) to Stephen M. Smith, Esq., the borrower. The loan was disbursed on 11/5/2015 in the amount of $18,700.00. It is noted that Stephan M. Smith is principal and 50% owner of the reference loan."

- Pursuant to SOP 50 10 5(K) Subpart B.16 Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR §285.13), which reads in part as follows: a "Unless waived by the SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior loss to the Government…", the Appellant herein was deemed ineligible for forgiveness because the alleged default cited in the record was within seven (7) years of the PPP loan disbursement date of 5/1/2020 for the referenced loan.

- Appellant's failure to address a HOLD CODE that was received by the "Appellant/Lender" as another reason for the denial.

3

JA0735

purportedly in default. The Appellant researched same independently in order to support his case. Other than the Administrative Record void of specific details, no other evidence nor information was provided in the administrative record

### B. Analysis

I am not persuaded that Appellant's arguments show a **clear error of fact or law material** to OHA's initial decision.

The initial decision contains a detailed legal analysis explaining why Appellant's position is unsupported by applicable laws, regulation, and policy, and against accepted practices of statutory construction. The initial decision also explains how Appellant has failed to meet its burden of showing the final SBA loan review decision is based on a clear error of fact or law.

Petitioner argues that the loan disbursement date is incorrect. This is irrelevant to any error of law or fact. First, Petitioner has not provided a "correct" disbursement date in his reconsideration other than noting that the date is incorrect, nor did petitioner raise the issue that the AR(s) was incorrect to the loan disbursement date and/or provide documents of the loan during the initial appeal process. Secondly, the date of disbursement of the loan does not go toward the fact that borrower was delinquent or had defaulted on the loan within 7 years of the PPP loan application date. Here the charge off date of 01/27/2016 is within seven years of the PPP loan application date of 04/30/2020. The AR shows that Loan #2549175003 was disbursed on 11/5/2015 and subsequently charged off on 01/27/2016:

> Loan #1959867707 has SBA Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Smith showed loan #2549175003 in the amount of $20,000 was charged off e-on 01/27/2016. (AR at 67).

Petitioner further argues that the AR does not identify any bank or lender for the delinquent account other than an account number #25491750-03. Petitioner is correct that the AR does not identify the bank or lender for the delinquent loan however the AR record shows that the borrower obtained a loan identified throughout the AR as "loan #2549175003" (AR at pgs. 6-7, 65-67). The loan number was provided in communication to the Petitioner on July 09, and 16, 2021, stating:

> A search of CAIVRS, E-Tran and CHRON using the SSN of 50%-owner Smith showed loan #2549175003 in the amount of $20,000 was charged off on 01/27/2016. The PPP loan application date was 4/30/2020 (AR at 65).

Regardless of whether the bank or lender was mentioned, the AR provided the loan number for the Petitioner to identify the loan and to provide documentation in support of the loan prior to either the Final Loan Review Decision(s) or Appeal, were issued. Additionally, "the administrative record need not, however, contain all documents pertaining to the appellant." [13]

JA0736

C.F.R. § 134.1207(b). Thus, the documents in the AR need not contain the bank or lender names of the delinquent loan #25491750-03.

Thus, the above forgoing assertions are not convincing at the PFR level however, because Petitioner failed to raise this fact before the SBA when he was provided a copy of such exhibits and provided an opportunity by the SBA to respond to such exhibits before the Final Loan Review Decision was issued. Neither did Appellant raise these arguments or provide such explanations on Appeal before the OHA initial decision was issued.

Petitioner further notes that the AR misspelled the name Stephan Smith, with an "a" rather than Stephen Smith, with an "e". The Appellant could have confirmed the forgoing by objecting to the AR 13 C.F.R. § 134.1207. Further, Applicant's name is misspelled in the AR for Appellant, Cusano Smith PLLC. The record shows those pages being the SBA's Internal Note section (AR at Pgs. 6&7). This section has various SBA reviewers who had commented on the Appellant's PPP forgiveness application. specifically, stating:

> "We are in concurrence with the recommendation of a Denial by both parties as documentation provided exhibits a loan charge-off on 1/27/2016 totaling $3,311.50 relevant to SBA Loan (#2549175003) to Stephen M. Smith, Esq., the borrower. The loan was disbursed on 11/5/2015 in the amount of $18,700. It is noted that Stephan M. Smith is principal and 50% owner of the referenced loan." (AR at 6&7).

Here, the incorrect spelling, Stephan M Smith, shows up after the correct spelling of Stephen M. Smith, Esq., and highlighting the issue that there was a prior loan charge- off, relevant to SBA Loan (# 2549175003). The issue of the applicant's [1] name being misspelled on only two occasions in the AR for borrower, Cusano Smith, PLLC, does not justify an error of material fact, especially when the record shows that Stephen M. Smith Esq., was the applicant who signed and dated the Borrower Application Form 2483 or Lender's equivalent Form; Stephen M. Smith Esq., is 50% owner of Cusano Smith, PLLC (AR at pgs. 51-54) and; the same Stephen M. Smith Esq., who had previously obtained a direct or guaranteed loan from a federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date and caused a loss to the Government and was therefore denied loan forgiveness on behalf of Cusano Smith PLLC. Thus, there is not material error of fact that presents a basis to find the initial decision contains a *clear error of fact or law and/or is merely an unsupported opinion.*

Petitioner further argues that the "references to CAIVRS, ETRAN and CHRON in the AR is not within the knowledge of Appellant and cannot be relied upon for imputing knowledge of any delinquent status to the Appellant" Here, Petitioner is focused on the entry of CAIVRS, ETRAN and CHRON in the AR. The AR clearly states, throughout the document that CAIVRS, ETRAN and CHRON are paired together with other identifying information that clearly states Petitioner was delinquent or had defaulted on a loan with the federal government.

- Code 48-Not Cleared (Do Not Pay-TOP and CAIVRS)

---

[1] See AR for Cusano Smith PLLC, PPP Borrower Application Form, at page 51-54

JA0737

PFR No. 1959867707

Loan #1959867707 has SBA Flag 48, indicating the principal, Stephen Smith, has delinquent debt or defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan. The borrower's, Cusano Smith, PLLC, loan application date was 04/30/2020. Moreover, due diligence corroborates the 50% principal, Stephen Smith, flagged is the entity with the delinquent federal debt. The LexisNexis Smartlinx report verifies the principal, Stephen Smith, SSN ███████ (B3). A CAIVRS query was conducted verifying this SSN is in default (A1). E-Tran showed loan #25491750-03 with the principal as charged off (A2). CHRON indicates the loan was charged off and has an "In Liquidation Date" of 10/20/15. Therefore, Stephen Smith, SSN 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, has defaulted on a loan with the federal government within the last seven years and is ineligible for a PPP loan. (AR at pg. 7).

In the above referenced paragraph, the phrase "indicating the principle, Stephen Smith, has delinquent debt or defaulted on a loan with the federal government" comes before the words, "CAIVRS", "ETRAN", and "CHRON" that are seen in sentences further down in the referenced paragraph. The first sentence clearly states "50% principal, Stephen Smith...has delinquent debt or defaulted on a loan with the federal government". Further, the language in the AR phrase provided above, in no way rely purely on "CAIVRS", "ETRAN", and "CHRON" to indicate that Petitioner has a delinquent debt or defaulted on a loan with the federal government. To conclude that references to the above words somehow should impute knowledge that Petitioner is delinquent on a loan is erroneous and does not contain a *clear error of fact or law and/or is merely an unsupported opinion.*

Next, Petitioner asserts the AR is incorrect as to Appellant's 50% ownership. As noted in the Cusano Smith, PLLC Appeal "On April 26, 2020, Appellant completed SBA 2483, Paycheck Protection Program, Borrower Application Form. (AR at 52-53) Upon signing, Appellant claimed 50% Ownership in the company as a partner. Stephen Smith was identified as the owner/partner who owned the remaining 50%[2]. Stephen Smith also completed SBA Form 2483 as Appellant's authorized representative" (Appeal, pg. 8-9).

Thus, the forgoing assertion is not convincing at the PFR level, because Petitioner failed to raise this fact before the SBA when he was provided a copy of such exhibits and provided an opportunity by the SBA to respond to such exhibits before the Final Loan Review Decision was issued. Neither did Appellant raise these arguments or provide such explanations on Appeal before the OHA initial decision was issued.

In further support of reconsideration, Petitioner has provided copies of the following documents, attached to his PFR: 1. newly submitted copies of commercial loan statements and 2. e-mail correspondence between the Petitioner and lender. Regarding the commercial loan statements, Petitioner asserts "these statements reflect statements mailed between June and August 2021, over a year after the Appellant moved. The statements do not indicate any reference to a federal agency nor, more importantly, reflect any loss to the company. Further, if the federal government was subject to a loss, how can said loss be imputed to Appellant if he possesses absolutely no knowledge of the delinquency or loss to the government?" As for the

---

[2] Law Office of Gary Cusano, PC Law Office of Stephen Smith DBA Smith Law Group. *See* Addendum to PPP Borrowers Application Form.

8

email correspondence between Petitioner and the lender, Chase Bank, in reference to addressing the HOLD CODE, Petitioner brings attention to emails dated April 12th, 2021, April 14, 2021, May 24th, 2021, and June 22nd, 2021. These are attached to demonstrate the efforts made by Appellant to address the HOLD CODE. Nonetheless, The PFR on review is based upon the administrative record and the judge generally may not admit evidence beyond the administrative record, consistent with 13 C.F.R. § 134.1209(a). However, 13 C.F.R. § 134.1204(a)(2) also requires that the appeal include "a full and specific statement" as to why the decision is erroneous, together with "all factual information and legal·arguments" supporting the appeal. Appellants in PPP appeals should raise all their legal arguments, whether raised before OHA or not, and they should be considered by the judge.

First, the commercial loan statements and the e-mail correspondence provided by Petitioner cannot be admitted, as they are evidence beyond the record. Moreover, Petitioner could have submitted them in his initial appeal petition, or as a filing related to objection to the administrative record.

Secondly, Petitioner's efforts to address the "HOLD CODE" are not convincing at the PFR level however, because Petitioner failed to raise these same arguments or provide such explanations on Appeal before the OHA initial decision was issued. The Appeal does mention the HOLD CODE, as Appellant points out in reference to the AR. As included in the Appeal "Hold Flag 48, indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan." (Appeal, pg. 11). The referencing of the "HOLD CODE" from the AR were used to show the undisputed fact that "principal Stephen Smith, was identified to have a delinquent or defaulted federal debt.....indicating the principal has defaulted on a loan with the federal government, and therefore may have been ineligible for its PPP loan" *Id.*

Lastly, concerning Petitioner's assertions "if the federal government was subject to a loss, how can said loss be imputed to Appellant if he possesses absolutely no knowledge of the delinquency or loss to the government?" Petitioner raises this argument in his Appeal, "undersigned hereby appeals possessing absolutely no knowledge as to which loan from a Federal Agency was delinquent" (Appeal, pg. 5). Appellant also submitted an additional statement in further support of his appeal, asserting "1) Borrower has no knowledge of any loan from a Federal Agency. No UCC lien was ever filed against Borrower nor did Borrower ever make payments to any Federal Agency during any period over the past ten years." *Id.*

Other than Petitioner's attempt to reargue the merits of the OHA Appeal, it is clear from its reconsideration request that Petitioner disagrees with the initial decision and its reasoning. Petitioner's mere disagreement, however, does not present a basis to find the initial decision contains a *clear error of fact or law and/or is merely an unsupported opinion.* As previously stated, the PFR does not allow an unsuccessful party an additional opportunity to reargue its position, and the PFR must rise from a manifest error of law or mistake of fact.

9

As required, OHA's initial decision contains findings of fact (FOFs), conclusions of law, and reasons for the FOFs and conclusions of law (13 CFR §134.1211(a). It is clear from its reconsideration request that Appellant disagrees with the initial decision and its reasoning. Appellant's disagreement, however, does not provide a basis to find the initial decision contains a *clear error of fact or law and/or is merely an unsupported opinion.* The initial decision contains a detailed legal analysis explaining why Appellant's position is unsupported by applicable laws, regulation, and policy, and against accepted practices of statutory construction. The initial decision also explains how Appellant has failed to meet its burden of showing the final SBA loan review decision is based on a clear error of fact or law.

Accordingly, I cannot conclude it was clear error for OHA to conclude that Petitioner was not eligible for loan forgiveness because it determined that at the time of the loan application the Petitioner, had previously obtained a direct or guaranteed loan from a Federal agency and was delinquent, or had defaulted within 7 years of the PPP loan application date. I, therefore, find that the final SBA loan review decision was not based upon a clear error of fact or law.

On reconsideration, I further conclude that Petitioner has not established that the OHA initial decision in this case was based upon a clear error of fact or law **material** to the decision, that OHA issued. Further, OHA did not err in finding Petitioner ineligible for forgiveness, because it determined that "at the time of loan application, the Borrower, or an owner of the Borrower, had previously obtained a direct or guaranteed loan from a Federal agency and was (a) delinquent, or (b) had defaulted within 7 years of the PPP loan application date." This default also caused a loss to the Government. Therefore, I **DENY** Petitioner's PFR, and **AFFIRM** OHA's initial decision.

## Conclusion

For the foregoing reasons, the instant PFR is DENIED. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator elects to review this decision pursuant to 13 C.F.R. § 134.1211(c)(3) & (d), OHA's decision on the request for reconsideration is a reconsidered initial OHA decision and becomes the SBA's final decision thirty (30) calendar days after its service. *See* 13 C.F.R. § 134.1211(c).

*Betty Barbeito*
_____
BETTY J. BARBEITO
ADMINISTRATIVE JUDGE

10

# United States Small Business Administration

# Office of Hearings and Appeals

---

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

DACO Investments LLC

      Appellant

Appealed from
SBA PPP Loan No.
3870138002

DECISION

Issued:  April 15, 2022

Docket No. PPP 3870138002

---

**APPEARANCES**

*For Appellant*

David Link, Borrower and Managing Partner

*For the Small Business Administration*

Tabitha Mangano, Esq., Office of General Counsel

**DECISION**

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a
Paycheck Protection Program (PPP) Final SBA Loan Review Decision on November 22, 2021,

1

JA0741

finding Appellant ineligible for the full PPP loan forgiveness of $ 150,500.00. Appellant timely filed the instant appeal from that Final SBA Loan Review Decision on December 27, 2021.[1]

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested.

After carefully considering the evidence and arguments presented in the Administrative Record (AR) and arguments filed after the AR was added to the record, for the reasons discussed herein, I find that Appellant's appeal does not show that the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

## I. JURISDICTION

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was "intended to help businesses cover expenses and meet payroll costs for their workers in order to keep them employed through the pandemic" by loaning money to eligible small businesses Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).

Congress placed the Program under Section 7(a) of the Small Business Act,[2] making the Small Business Administration (SBA) the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 USC § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. *In Re Gateway Radiology Consultants, P.A.* 983 F.3d 1239, 1248 (2020) (11th Cir.). Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 USC § 9012)

On April 15, 2020, the SBA promulgated an interim final rule implementing the Program. See 85 Fed. Reg. at 20,811 (April 15, 2020). The Federal Register notice published with this rule explained that the Program's rules incorporated the existing eligibility restrictions for Section 7(a) loans. Ibid. at 20,812. It also explained that "businesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Ibid. Also, § 120.110(b) bars "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans. The same categories of businesses are thus ineligible for Program loans. See 85 Fed. Reg. at 20,812; 13 C.F.R. § 120.110(b).

Congress, presumably aware of the SBA's existing regulations, gave the Administrator the discretion to "*guarantee covered loans under the same terms, conditions, and processes as …*

---

[1] The Appellant received a copy of that decision on November 27, 2021

[2] Small Business Act, 15 USC § 631 et. Seq.

JA0742

*loan[s] made under"* Section 7(a). Cares Act § 1102(a)(2) (codified at 15 U.S.C. § 636(a)(36)(B)) (emphasis added); see <u>Fitzgerald v. Dep't of Homeland</u> Sec., 837 F.3d 1346, 1355 (Fed. Cir. 2016) (discussing the presumption that Congress is "aware of applicable regulations when enacting pertinent legislation"). And those terms and conditions included the ineligibility of loans for entities which were financial businesses primarily engaged in the business of lending.   13 C.F.R. § 120.110(b).

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective at the time of its PPP loan application, advised all PPP lenders and Appellants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and Appellants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them.  See 15 USC § 636(a)(36)(D)(I).  The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees.  15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

3

JA0743

However, not all such businesses are eligible for PPP loans.  The statute also provides that:

"the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."  15 USC § 636(a)(36)(B) Ineligible types of businesses are identified in 13 CFR § 120.110.  These ineligible businesses include, for example, non-profit businesses; financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan." 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan.  Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b).  Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.  Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan.  SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments.  15 USC §636(a)(36)(F) and (G)

PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 USC § 636(a)(36)(A)(viii)(II).

*PPP Loan Forgiveness*

4

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m. Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans. The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest  or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). *Gateway* at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision, and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1. Was ineligible for a PPP loan;

JA0745

2.   Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;

3.   Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; or

4.   Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

These denial bases may be more implicitly stated in different terms.  Thus, forgiveness denial may be because:

1.   The borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or
2.   the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or
3.   the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some or all of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or
4.   that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L.  However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal petition is filed from the decision contained in that Final SBA Loan Review Decision.  13 CFR §134.1201(a) -- (c).

The SBA's Office of Capital Access (OCA) issues a Final SBA Loan Review Decision relating to whole or partial denials of forgiveness of PPP loans.  To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov.  13 CFR §134.1202(a).

6

*Authority of an SBA OHA Judge*

SBA OHA Judges include retired Federal Administrative Law Judges (ALJs), such as myself, who now serve as SBA Administrative Judges to adjudicate PPP appeals of final SBA loan review decisions. Other judges adjudicating PPP appeals are active ALJs.

An Administrative Law Judge (ALJ) has no constitutionally-based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See e.g.,* 20 USC § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education) provides that ALJs "shall be officers or employees of the Department").

As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

An Administrative Judge has no authority greater than that of an Administrative Law Judge. The authority of such a judge is limited. Thus, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies of SBA have been appropriately applied to the facts of the case.

Most importantly, neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus, decisions in other PPP cases are not binding or persuasive in this appeal. 13 CFR §134.1211(e).

## II.  BACKGROUND

On June 22, 2020, Appellant applied for a PPP loan of $19,700.00 through Home Bank, National Association.[3] On or about June 25, 2020,[4][5] the loan was approved by the bank and

---

[3] Administrative Record (AR) at 77-78
[4] The docket numbers (Dkt. No.) referred to herein represent the order in which the document was filed in the OHA Case Portal.
[5] Dkt. No. 1; AR 16-17

7

JA0747

guaranteed by SBA.  The proceeds were disbursed on or about June 29, 2020.[6]  Appellant filed an application for full PPP loan forgiveness (Form 3508) on February 19, 2021.[7]

In the final SBA loan review decision[8] it was determined that the borrower was ineligible for the PPP loan. The reason for SBA's decision was:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that the Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring.

> When analyzing the loan origination supporting documentation, it is determined that the borrower was ineligible for the PPP loan. The reason (s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that Borrower is a financial business primary engaged in lending, investments or an ineligible business engaged in financing or factoring.

> Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate.

Appellant argues in its appeal petition[9]:

> I, David Link, as the Managing Member of DACO Investments, LLC do not agree with the SBA denial of my PPP loan# 3870138002.

> Although my company is considered a Consumer Lending institution, we are not a traditional banking institution.  We are a small business with only 17 employees.

> We were deemed essential at the time of the COVID 2019 crisis; however, we suffered from expenses that we incurred to assure that our employees and customers were protected from being infected as we opened with partial crews to service our community.  We also incurred significant losses of income due to the pandemic.  We continued to pay our employees and did not layoff any staff to accommodate our loss in business and income.

> Consumer lenders are not banks and barely survive.  We are essential in the lives of our customers.  We should not be categorized with large financial institutions such as banks.  We are small businesses just trying to survive a situation that was far beyond our control.

---

[6] AR at 81. A Promissory Note was also executed by Appellant on April 27, 2020 (AR 18-20)
[7] AR at 81-82
[8] AR at 16-17; Dkt. No. 1
[9] Dkt. No. 5

JA0748

Attached are my year-end financial statements for 2018 through 2021 as proof of the income losses due to the pandemic.[10] We struggled to continue doing business during the pandemic and are continuing to struggle.

Regarding these contentions, SBA argues that:

### A. OHA is Not the Proper Forum to Invalidate SBA's First Interim Final Rule or Interpretation of the CARES Act[11]

To the extent Appellant challenges the validity of SBA's First Interim Final Rule for the PPP[12] ("First IFR"), which specifically applied 13 C.F.R. § 120.110(b) to PPP loans, or SBA's interpretation that the CARES Act[13] applied 13 C.F.R. § 120.110(b) to PPP loans, ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized that such challenges are not properly before OHA. Therefore, OHA cannot invalidate SBA's regulations and interpretations and should apply those authorities to its review.

OHA has recognized the limited scope of its authority and has repeatedly held that it "is not the proper forum for a challenge to the validity of a regulation." Matter of Cognitive Professional Services, Inc., Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. See 13 C.F.R. § 134.102."); accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc., SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); Nations Incorporated, Appellant re: Technical and Management Services Corporation, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); International Ordinance, Inc., Appellant, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

Consistent with the above OHA case law on non-PPP appeals, OHA recently issued a decision on PPP appeals.[14]

---

[10] Dkt. Nos. 2, 3 and 4

[11] Dkt. No. 12 at 3-7

[12] Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020)

[13] CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)).

[14] As noted above, neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus, decisions in other PPP cases are not binding or persuasive in this appeal. 13 CFR §134.1211(e).

9

OHA should find that ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA regulations and interpretations. This includes being bound by SBA's First IFR available at the time, which states that "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110.5 The First IFR reflects SBA's reading of the CARES Act that it applies SBA regulations for the 7(a) Loan Program, including the regulation at 13 C.F.R. § 120.110, to the PPP. This interpretation is based on the text of the CARES Act language specifying that "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Therefore, the CARES Act placed the PPP within the 7(a) Loan Program. Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule.

**B. Under the CARES Act, PPP Loans Were Subject To The SBA 7(a) Loan Program Requirement in 13 CFR 120.110(b) And Therefore Appellant Is Ineligible For PPP Loan Forgiveness[15]**

Even if OHA reviews the issue of whether SBA should have applied § 120.110 to PPP loans, OHA should find that SBA's interpretation of the CARES Act and First IFR are not clear error of law.

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. In addition, the CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) lending program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). Congress confirmed that its placement of the PPP within the Section 7(a) lending program was deliberate, specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)).

SBA's policy of declining to extend PPP loans to lenders is wholly consistent with the CARES Act and its aims. While there is no question that Congress wanted to protect American workers from unemployment through the CARES Act, it does not follow that

---

[15] Dkt. No. 12 at 9-12

JA0750

Congress expected that objective to be pursued to the exclusion of all other considerations and lending criteria. The CARES Act expressly modified some of Section 7(a)'s requirements for purposes of PPP loans. See, e.g., 15 U.S.C. § 636(a)(36)(I), (R) (exempting PPP from Section 7(a) requirements regarding an applicant's ability to obtain credit elsewhere and prepayment penalties). But 10 Congress made clear that, "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. Id. § 636(a)(36)(B). One section 7(a) loan program regulation (and therefore, a term and condition of that program) is 13 CFR 120.110(b), which provides that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)."

 SBA explained in the Standard Operating Procedure issued after the enactment of the regulation that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29. Over the last 25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)). The First IFR, which was available at the time of Appellant's PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP.[16]

---

[16] See Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021)

JA0751

### III. ANALYSIS

On February 1, 2022, I issued an Order to the Appellant to provide more detail in its appeal petition.[17] While the Appellant did not timely reply, on further review of the appeal petition and financial documents it had filed, I determined that its appeal was sufficient to permit issuance of a Notice and Order on February 9, 2021, requiring SBA to file the Administrative Record (AR) and permitting the Appellant to object to the absence of any document in the AR.[18]

On February 9, 2022, the Appellant did reply to my Order of February 1, 2022, asking for more time to respond to the Order, as it was seeking legal counsel.[19] My Notice and Order required SBA to file the AR by March 1, 2022, and I then extended the time for SBA to file the AR to March 8, 2022, in an Order issued on March 2, 2022,[20] thereby extending the Appellant's time to file any objection to the AR to March 18, 2022.

I also noted in my Order that, as the Appellant had been seeking counsel since at least February 9, 2022, a reasonable period of time had already been allowed for that objective to occur by March 18, 2022. The Appellant did not file an objection to the AR after it was filed on March 2, 2022,[21] although it was permitted to do so by March 18, 2022. SBA filed its response to the appeal petition on March 28, 2022,[22] and I closed the record on April 2, 2022.

The Appellant concedes that it is a consumer lending institution,[23] but argues that it is not a traditional banking institution and was deemed to be essential at the time of the COVID 2019 crisis. It is unquestioned that the pandemic caused wide-spread interruptions in businesses such the Appellant. However, it is clear from my review of the CARES Act and SBA's regulations and policies that lenders such as the Appellant were considered to be ineligible for PPP loans at the time that the Appellant applied for one. I note that:

> Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. In addition, the CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan

---

(consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP).

[17] Dkt. No. 6
[18] Dkt. No. 7
[19] Dkt. No. 8
[20] Dkt. No. 9
[21] Dkt. No. 10
[22] Dkt. No. 12
[23] Dkt. No. 5

12

JA0752

Docket No. PPP-3870138002

Program and subject to the policies and regulations applicable to the 7(a) Loan Program.

SBA's policy of declining to extend PPP loans to lenders is wholly consistent with the CARES Act and its aims. While there is no question that Congress wanted to protect American workers from unemployment through the CARES Act, it does not follow that Congress expected that objective to be pursued to the exclusion of all other considerations and lending criteria.

The CARES Act expressly modified some of Section 7(a)'s requirements for purposes of PPP loans.  See, e.g., 15 U.S.C. § 636(a)(36)(I), (R) (exempting PPP from Section 7(a) requirements regarding an applicant's ability to obtain credit elsewhere and prepayment penalties). But Congress made clear that, "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. Id. § 636(a)(36)(B). One section 7(a) loan program regulation (and therefore, a term and condition of that program) is 13 CFR 120.110(b), which provides that "(b) **Financial businesses primarily engaged in the business of lending** [emphasis added], such as banks, finance companies **[such as the Appellant has admitted it is]**, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)."

SBA explained in the Standard Operating Procedure issued after the enactment of the regulation that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29. Over the last 25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans."

Congress expected that objective to be pursued to the exclusion of all other considerations and lending criteria.

In addition, the CARES ACT – Section 1102 – Paycheck Protection Program – (a) states: 'In general – Section 7(a) of the Small Business Act (15 USC 636(a) is amended[.]' Therefore, the Paycheck Program is classified under the SBA 7(a) loan program and must adhere to the policy intact, unless subsequent guidance has been published to provide revisions to programs policies. At the time of application, the effective SOP 50 10 (5) (k) – Subpart B – Chapter 2 – Section

13

III.2.a. Page 104, list[s] businesses engaged in lending, per 13 CFR § 120.110(b) as ineligible entities for any 7(a)-loan program.  IFR- Paycheck Protection Program."

It is clear that Congress delegated to SBA ruling-making authority which includes, in pertinent part, the power to "make such rules and regulations as it deems necessary to carry out the authority vested in it." 15 USC § 634(b)(6).  In addition, Congress permitted SBA, in pertinent part, "to take any and all actions when it determines such actions are necessary or desirable in making loans.  15 USC § 634(b)(7).

Accordingly, and consistent with its authority granted by Congress under the CARES Act, SBA determined that PPP loans are subject to 13 CFR § 120.110 (What businesses are ineligible for SBA business loans?) at (b), entitled "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors… ."

The jurisdiction of OHA with respect to appeals of certain loan review decisions is set out at 13 CFR § 134.120(w).  13 CFR Subpart L relates to Borrower Appeals of Final SBA Loan Review Decisions under the Paycheck Protection Program.

My authority extends only to determining whether the adopted regulations and policies of the SBA have been appropriately applied to the facts of this case.

I am bound by the regulations and policies promulgated by SBA as they are currently written.

SBA has, by regulation and guidance, stated that lenders, such as the Appellant, are not eligible for receipt of PPP loans, and hence for loan forgiveness.

Moreover, I note that Congress provided that the PPP was to be administered by the SBA, and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans.  This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework.  This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking, including any public comment period.[24]

Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects.[25]

Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational basis to apply the provisions of 13 CFR §120.110 to the PPP eligibility determinations, and that their application by the SBA is not

---

[24] See CARES Act §1106 (k)
[25] See CARES Act §1109 (d)

14

arbitrary or capricious.  Therefore, for all these reasons, I find that the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

The SBA had previously published and made available to the public, in 2018, its Standard Operating Procedure SOP 50 10 5(k).  The provisions of that document show the procedures applicable to SBA Section 7(a) loans, including ineligible types of businesses.[26] Finance companies and lenders, such as Appellant, are excluded from loan eligibility.  This guidance was in effect at the time the Appellant applied for and received the PPP loan at issue. As noted above, these eligibility exclusions were and are applicable to the current PPP loan.

The Appellant is a lender, as that term is construed under the applicable provisions of the CARES Act and the regulations and policies related to it regarding the PPP loan program.

Therefore, it was not a clear error for SBA to conclude that Appellant was ineligible for the PPP loan it received.  Correspondingly, it was not a clear error for SBA to conclude that Appellant was not entitled to forgiveness of the loan for which Appellant was not initially eligible.

Accordingly, the Appellant, DACO Investments LLC, has failed to show that SBA committed a clear error of fact or law in its final loan review decision.

## CONCLUSION OF LAW

**Appellant is primarily involved in the business of lending.**

**Appellant was ineligible for the PPP loan it received.**

**The final SBA loan review decision is not based on clear error of fact or law.**

**Appellant remains liable for the PPP loan (PPP Loan Number 3036057206).**

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIRMED.**

Appellant's loan forgiveness application will be processed in accordance with this decision.

---

[26] SOP 50 10 5(k) III.A.2, at p 104 [Provisions consistent with those were carried forward in the updates SOP 50 10 6, issued October 1, 2020.]

15

This is an **INITIAL DECISION**, pursuant to 13 CFR § 134.1211(b), and shall become the **FINAL DECISION** of SBA thirty (30) calendar days after service, unless a reconsideration request is filed, pursuant to 13 CFR § 134.1211(d).

_Clifford Sturek_

CLIFFORD STUREK
Administrative Judge

16

JA0756

Exhibit 2

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Dunlavy Development Phase I LLC

       Appellant

SBA PPP Loan No. 2308857204

Issued:  April 12, 2022

Decision No. PPP-2308857204

APPEARANCES

Josef Marom, Member of Dunlavy Development Phase I LLC.

DECISION

## I.  Introduction and Jurisdiction

On July 1, 2021, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received an appeal petition in the above captioned matter from Dunlavy Development Phase I LLC (Appellant).[1]  OHA has jurisdiction to adjudicate Paycheck Protection Program (PPP) appeals under the Small Business Act, 15 U.S.C. §§ 631 *et seq*. and 13 C.F.R. Part 134.

## II.  Background

### A.  Cares Act 2020

On March 25, 2020, in response to the economic distress caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act,

---

[1]  On October 1, 2021, I issued an Order Dismissing Appeal (Dismissal) for lack of standing, specificity, and failure to provide information required by the regulations.  *See PPP Appeal of Dunlevy Development Phase I, LLC*, SBA No. PPP-23088-57204 (2021).  Following the service of the Dismissal, Appellant contacted OHA and showed good cause as to his failure to respond to my Order to Show Cause why this appeal should not be dismissed.  In the interest of due process and justice, I vacated the Dismissal and provided Appellant with the opportunity to show it has standing, to state the appeal is specific and to provide the missing information.  Appellant made a timely response to the Order and addressed the remaining issues.  Given its compliance, I determined the Appeal is specific and issued a Notice and Order establishing a schedule for responses and filings.

JA0757

Pub. L. 116-136, 134 Stat. 281 (2020).  Among other provisions, the CARES Act established the PPP at Section 1102.  The Program lends money to eligible small businesses to assist them in covering expenses and making payroll for their workers to keep them employed during the pandemic.  If the loan funds are used for certain specified expenses, the borrowers can receive full forgiveness of the loan.  (*See* 15 U.S.C. § 636m.)

Congress placed the PPP under Section 7(a) of the Small Business Act, making SBA the Agency responsible for administering the Program.  (*See* CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)).)  PPP loans are to be guaranteed "under the same terms, conditions, and processes" as SBA's Section 7(a) loans.  (*See* 15 U.S.C. § 636(a)(36)(B).)

### B.  PPP Loan Application and Forgiveness

On April 9, 2020, Appellant applied for a PPP loan from Spirit of Texas Bank, SSB (Lender) in the amount of $154,000.00.  (Administrative Record (AR), at 164.)  On April 16, 2020, Appellant received approval for the loan.  (*Id.*, at 13.)  On September 16, 2020, Appellant applied for forgiveness of its PPP loan.  (*Id.*, at 11, 166-167.)

### C.  SBA Review and Request for Documentation

On November 9, 2020, SBA notified the Lender that Appellant's application for forgiveness was in review.  SBA asked the Lender to provide copies of all supporting documentation Appellant was required to submit with its PPP application and any memorandum or other analysis that the Lender prepared in making its decision on borrower's Loan Forgiveness Application.  (*Id.*, at 158-159.)

On November 13, 2020, SBA received supporting documentation, including SBA Form 3508 and tax returns.  (*Id.*, at 10.)  In its tax returns for 2018 and 2019, Appellant identified that its principal business activity is Rentals, its principal product or service is Apartments, and its business code number is 531110.  (*Id.*, at 89, 133, 172.)  Appellant's 2019 Tax Form 8879-PE showed that its net rental real estate income (or loss) was -$1,152,832.00 while it had no gross receipts or sales, gross profit, or ordinary business income for 2019.  (*Id.*, at 132, 137-138.)

The record also contained SBA Form 3508, noting that Appellant had 12 employees during the covered period of April 30, 2020, through October 15, 2020.  (*Id.*, at 166.)  Appellant's payroll cost was $286,857.66 and PPP loan amount was $154,000.00.  (*Id.*)

Appellant's Member, Josef Marom, signed and affirmed the terms of SBA Form 3508, which provided:

> The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

-2-

Decision No. PPP-2308857204

SBA undertook a High Authority Review of Appellant's forgiveness application. The review noted that Appellant's North American Industry Classification System (NAICS) code 531110, Lessors of Residential Buildings and Dwellings, is a passive business NAICS code, and this type of business is ineligible to receive a PPP loan. (AR, at 171-72.)

### D. Final SBA Loan Review Decision

On January 21, 2021, SBA issued the Final SBA Loan Review Decision denying forgiveness of the entire loan. (*Id.*, at 11.) SBA stated:

> It is confirmed by analyzing the Form 1065 that the borrowers [*sic*] NAICS code is 531110 which falls under category Lessors of Residential Buildings and Dwellings. This entity is deemed to be a passive business which according [*sic*] [Standard Operating Procedure (SOP)] 50 10 5 (k) Subpart B – Chapter 2-Section III.A.3, are ineligible for any 7(a) loan. Subsequent guidance published in IFR- Paycheck Protection Program – Section III.1.c, reiterates this ineligibility. 2. Per the CARES Act – Section 1106 – (b), only eligible recipients may be awarded forgiveness.

(Final SBA Loan Review Decision, at 12.)

### E. Appeal

On July 1, 2021, Appellant filed the instant appeal (Appeal). Appellant submitted a letter from its Certified Public Accountant (CPA), Dana S. Robertson, dated June 30, 2021, informing OHA of the following:

> This is written to confirm the undersigned assisted the principals of the above referenced entity in making its original [PPP] loan application in 2020 and that the NAICS business code of 531110 was reflected of its 2018 Form 1065 submitted with the original application. [Appellant] is not a passive business because it owns and actively manages the real property and has qualifying employees. In the future, the NAICS code will be changed to 531311.

(Appeal, at 3.)

From Appellant's Exhibits, two Texas Franchise Tax No Tax Due Reports signed and dated in 2018, 2019 and 2020, identifying NAICS code 531311. (*Id.*, at 4-6.) The reports also identified "this entity's annualized total review is below the no tax due threshold." (*Id.*)

On October 5, 2021, Appellant submitted a supplement to its appeal stating:

-3-

000175

JA0759

[Appellant] it is an actively-managed business with a number of on-site employees. The initial confusion was a result of the wrong NAICS code being used on our Form 1065 that was submitted with the original application. The original application used code 531110, however given the active nature of the business, the code that should have been used is 531311 (Residential Property Managers). This code is being corrected on our future filings, and is the code that should be used for this appeal. In addition, our CPA has confirmed that the incorrect code was used, as well as confirmed the correct code that should have been used (this document has been uploaded to the appeals portal).

Given the incorrect use of NAICS code, Appellant asserts that this warrants a reversal of the Final SBA Loan Review Decision. (Appellant's Response, at 1.)

## II. Discussion

### A. Standard of Review

In PPP loan appeals, Appellant has the burden of proof to establish that the FLDR was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. OHA's decision will be based solely on a review of the administrative record and the pleadings filed in the appeal. 13 C.F.R. § 134.1209(c).

### B. Analysis

Pursuant to the CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)), PPP loans are to be guaranteed "under the same terms, conditions, and processes" as SBA's Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). The Administrator of SBA has broad statutory authority to make such rules and regulations as he deems necessary (15 U.S.C. § 634(b)(6)), and to take all actions necessary and desirable in making loans (15 U.S.C. § 634(b)(7)).

Adopting SBA's Section 7(a) loans, the Agency provided rules and guidance through SOPs 50 10 5(J) and 50 10 5 (K), Lender and Development Company Loan Programs. Particularly, SOP 50 10 5(J) identifies ineligible types of businesses, including Passive Businesses under 13 C.F.R. § 120.110(c):

Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible.

SOP 50 10 5(J), Subpart B – Chapter 2, Section III.A.3(a).

Similarly, SOP 50 10 5 (K), Subpart B – Chapter 2, Section III.A.3, clarified that residential facilities that do not provide healthcare and/or medical services are not eligible, and

-4-

JA0760

Decision No. PPP-2308857204

businesses that are licensed as nursing homes or assisted living facilities and provide healthcare and/or medical services are eligible.

On April 15, 2020, SBA issued its first Interim Final Rule (IFR) for administering the PPP program, which incorporated the ineligibility criteria of 13 C.F.R. § 120.110 into the PPP. 85 Fed. Reg. 20811, 20812 (April 15, 2020). One of these ineligibility criteria is:

> Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111)

13 C.F.R. § 120.110(c).

In this case, SBA reviewed Appellant's record and 2019 Tax returns, i.e., Form 1065, in which Appellant identified its business under NAICS code 531110, for Residential Buildings and Dwellings. Section II.C, *supra*. Appellant identified its principal business activity as Rentals of Apartments. *Id.*, *see also*, AR at 89, 133, 172. Appellant also identified its net rental real estate income (loss) was -$1,152,832.00 with no gross receipts or sales, gross profit, or ordinary business income. *Id.*, *see also* AR at 132, 137-138.

SBA correctly applied the regulation to the analysis of Appellant's application and determined that Appellant was a passive business, in accordance with the provisions of the SOP and IFR, and thus not eligible for a PPP loan and forgiveness thereof. Section II.D, *supra*. Appellant disputes the use of NAICS code 531110 as an error that Appellant or its CPA made in filing the 2019 tax returns and offers NAICS code 531311, Residential Property Managers, as the correct NAICS code and as a basis to reverse SBA's final loan review decision. Section II.E, *supra*.

Based upon Appellant's own statements in the record, I cannot find the Final SBA Loan Review Decision was based upon error of fact or law. Ultimately, Appellant borrowed this PPP loan at a time when its principal business was rentals of apartments, and it reported a net loss on rental real estate of -$1,152,832.00 with no other receipts, sales, or profits. Section II.C, *supra*. This evidence supports SBA's ultimate finding that Appellant is a passive business under the regulation, SOP and IFR. Appellant provided its records to the Lender and SBA, and those records were the basis for a denial of full forgiveness.

Appellant's attempt to cure its own error after the fact cannot be the basis of a finding that SBA made an error of fact or law and thus of a reversal of SBA's decision. Even if Appellant were to change its original NAICS code 531110, Residential Buildings and Dwellings, to NAICS code 531311, Residential Property Managers, at the present time, the administrative record before SBA showed Appellant's NAICS code as 531110 at the time it borrowed the PPP loan. That was the basis for SBA's decision and cannot have been clear error for SBA to find Appellant was a passive business, based upon the record which reflected that it was. Section II.C, *supra*.

In review of whether Appellant is an Eligible Passive Company, I conclude that it is not.

-5-

000177

JA0761

Decision No. PPP-2308857204

Appellant filed SBA Form 3508, indicating that it used at least 60% of the PPP loan on payroll cost. *Id.* An "Eligible Passive Company must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more Operating Companies for conducting the Operating Company's business, or to finance a change of ownership between the existing owners of the Eligible Passive Company." 13 C.F.R. § 120.111. Appellant did not assert that it used its proceeds is this manner, consistent with this regulation. Therefore, Appellant does not qualify as an Eligible Passive Company.

Accordingly, I conclude that the record reflects that Appellant was an ineligible passive business under 13 C.F.R. § 120.110(c) and thus Appellant has failed to establish that the Final SBA Loan Review Decision was based upon any error of fact or law, and I must deny the appeal.

### III. Conclusion

I find that Appellant has failed to establish that the Final SBA Loan Review Decision was based upon any error of law or fact, and I therefore must deny this appeal.

This is the initial decision of the Small Business Administration. However, unless a petition for reconsideration is filed under 13 C.F.R. § 134.1213(c), or a request for review by the Administrator is filed under 13 C.F.R. § 134.1213(d), this initial decision will become final after 30 calendar days. *See* 13 C.F.R. § 134.1213(b). This decision is not precedential but may be published. 13 C.F.R. 134.1211(e) and (f). Final OHA decisions issued pursuant to 13 C.F.R. Part 134 Subpart L are not binding precedent but may be cited as persuasive authority for appeals involving the PPP. Final decisions by the Administrator, however, are precedential and are binding in subsequent OHA appeals involving PPP. *See* OHA Administrative Order, Dec. 4, 2020.

*Christopher Holleman*
CHRISTOPHER HOLLEMAN
Administrative Judge

-6-

000178

JA0762

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Eagle Financial Services, Inc.**

      Appellant

Appealed from
SBA PPP Loan No. 9716822710
Decision No. 9716822710

Issued: **March 10, 2022**

Decision No. **PFR-9716822710**

Appearances:
      Maurice L. Shevin (Dentons Sirote, PC), for the Appellant.
      Helen Romanez, for the Small Business Administration.

## RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. 9716822710, the appeal petition of Eagle Financial Services, Inc. (Appellant) remains **DENIED**. For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

On April 21, 2020, the Appellant submitted a Paycheck Protection Program (PPP) Borrower Application. On April 21, 2020, the Appellant was approved for a PPP loan by Texas Capital Bank, National Association (Lender) in the amount of $5,150,572.00 and received the loan proceeds. On May 18, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender. On May 18, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $5,150,572.00.

On September 30, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for a PPP loan as an entity primarily engaged in lending.

On October 28, 2021, the Appellant filed the instant appeal from that final SBA loan review decision. The Appellant's Petition argues the final SBA loan review decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness. On December 3, 2021, the undersigned issued a Notice and Order requiring the filing of the Administrative Record (AR) by December 23, 2021, providing for the Appellant to Object to the same by January 3, 2022, and allowing for SBA to respond to the Petition by January 18, 2022.

JA0763

On December 3, 2021, the Administrative Record was filed. On December 29, 2021, the Appellant filed an Objection to AR providing the application of 13 C.F.R. §120.110(b) to the Appellant's PPP loan was contrary to established law. On January 18, 2022, SBA filed a Response to the objection.

On January 21, 2022, the Appellant filed a Motion to re-open the AR in order to file a Reply to the SBA Response. On January 24, 2022, the undersigned issued an Order denying the Appellant's Motion. The Appellant submitted various Supplemental Pleadings. Following review of the Objection and Response, the undersigned finds the Objection not well taken and admits the AR as submitted.

On January 31, 2022, the Appellant filed a Request for Reconsideration alleging errors of both fact and law in Decision No. 9716822710. On February 2, 2022, the undersigned issued a Notice and Order providing for SBA to file a response to the Request for Reconsideration no later than February 18, 2022. SBA did not file a Response and the AR was closed on February 18, 2022.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. 9716822710 contains clear error of law or fact to allow the Appellant $5,150,572.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. §636(a)(36)(D).

Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

JA0764

"Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)" are ineligible for SBA business loans. 13 C.F.R. §120.110(b).

In terms of who could apply for a PPP loan, on January 14, 2021, SBA published the "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act" at 86 Fed. Reg. 3692 and specifically advised:

"B. What do borrowers need to know and do?

2. What businesses, organizations, and individuals are ineligible?

b. Are businesses that are generally ineligible for 7(a) loans under 13 C.F.R. 120.110 eligible for a PPP loan? [35]

Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 3.[36]"

Footnote 35 of 86 Fed. Reg. 3692 provides: "This subsection replaces the subsection originally published at 85 FR 20811, subsection III.2.c. ("How do I determine if I am ineligible") (April 15, 2020) and modified to conform to the Economic Aid Act.". Footnote 36 of 86 Fed. Reg. 3692 provides: "SOP 50 10 6 can be found at https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs-0. For PPP loans approved before December 27, 2020, see SOP 50 10 5(K), Subpart B, Chapter 2 for ineligible types of businesses. SOP 50 10 5(K) can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs."

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. §636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. §636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. §636(a)(36)(G). PPP funds could not be used for compensation of

JA0765

employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. §636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. §636(a)(37)(A)(iv).

## II.   PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. §636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. §636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. §636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. §636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. §636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. §636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1].

---

[1] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA0766

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. §134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

### III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

### FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire record, a preponderance of the evidence establishes:

### I.    Background

On April 21, 2020, the Appellant submitted SBA Form 2483, Paycheck Protection Program Borrower Application. (AR pp. 1139-1141). The Appellant was approved for a PPP loan by the Lender in the amount of $5,150,572.00, executed a note, and received the loan proceeds on or about April 22, 2020. (AR pg. 1159).

On May 18, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508EZ seeking full forgiveness of the PPP loan amount. On May 18, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $5,150,572.00. (AR pp. 1144-1156).

On May 20, 2021, SBA informed the Lender it was undertaking a review of the Appellant's PPP loan and requested information regarding the Appellant's line of business. (AR pp. 1132-1133). On June 22, 2021 and June 24, 2021, SBA informed the Lender it was requesting documentation to determine if the Appellant was engaged in lending or a loan agency in Florence, Kentucky. (AR pp. 1134-1137).

In response to the SBA request, Allen Griffith, General Counsel, Eagle Financial Services, Inc. provided an e-mail sent to the Lender which states: "Eagle Financial Services, Inc. does engage in lending in Florence, Kentucky." The e-mail attachment contained a copy of Eagle Financial

Services, Inc.'s Kentucky Consumer Finance License Number 1558 and a Certificate of Existence for Eagle Financial Services, Inc. filed in Kentucky. (AR pp. 148-155).

SBA reviewed the Appellant's NAICs code and requested additional documentation from the Appellant. The Appellant responding by confirming it was engaged in the business of lending. (AR pp. 148-155).

On September 30, 2021, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA held the Appellant "is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring." (AR pp. 3 and 18). The Appellant filed a petition for OHA review of this matter on October 28, 2021.

Through various written arguments contained in the Petition and various Supplemental Pleadings, the Appellant argues in favor of full loan forgiveness. The Appellant makes two primary objections: 1) The Appellant has not been provided all "guidance" relied upon by SBA in reviewing the PPP Loan Forgiveness Application; and 2) SBA exceeded the authority granted by the CARES Act in applying 13 C.F.R. §120.110(b) of the SBA 7(a) Loan Program to this PPP loan. The Appellant does dispute the underlying SBA rationale for denying loan forgiveness, that is, the Appellant is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring, but rather objects to the application of the Appellant's status as such a lender to the eligibility requirements for receiving the PPP loan at issue.

On January 25, 2022, an OHA decision was issued denying the Appellant PPP loan forgiveness finding the Appellant ineligible for the PPP loan. This matter is before the undersigned following a Request for Reconsideration filed January 31, 2022, by the Appellant alleging errors of law and fact. The January 25, 2022, OHA decision is adopted and incorporated herein. (Ex. A).

SBA carries out the policies of the Small Business Act (15 U.S.C. §633(a)). The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 U.S.C. §634(b)(6)). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 U.S.C. §636(a)). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator (15 U.S.C. §632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§121.101(a), 121.102(a), 121.201).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 U.S.C. §§636(a)(36) and 636m). The CARES Act grants the Administrator emergency rulemaking authority (15 U.S.C. §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 U.S.C. §9012; 15 U.S.C. §636m(k)).

JA0768

Covered loan means a loan made under the PPP (15 U.S.C. §636(a)(36)(A)(ii)). Eligible recipient means an individual or entity eligible to receive a covered loan (15 U.S.C. §636(a)(36)(A)(iv)). Unless otherwise provided by 15 U.S.C. §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 U.S.C. §636(a)(36)(B)).

In general, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or qualified Tribal business concern is eligible to receive a PPP loan if it employs not more than the greater of – (I) 500 employees; or (II) if applicable, SBA's size standard in number of employees (15 U.S.C. §636(a)(36)(D)(i)(I)-(II)).

Businesses that are not eligible for PPP loans are identified in 13 C.F.R. §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812). Financial businesses primarily engaged in the business of lending are not eligible for SBA business loans (13 C.F.R. §120.110(b)). SBA cannot guarantee loans to finance companies (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(ii), Page 104).

For loan forgiveness, covered loan means a loan guaranteed under the PPP (15 U.S.C. §636m(a)(1)), and eligible recipient means the recipient of a covered loan (15 U.S.C. §636m(a)(10)). If SBA determines a borrower was ineligible for a PPP loan, the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306). To be an eligible recipient entitled to loan forgiveness the borrower must be an "eligible recipient" under 15 U.S.C. §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The prior decision in this matter held SBA properly determined the Appellant was a financial business engaged in the business of lending, not an eligible recipient for a PPP loan, and not eligible for PPP loan forgiveness. The Appellant's request for Reconsideration raises assignments of legal and factual error in the prior decision, each addressed below.

## II.     Legal Error Asserted by the Appellant

The Appellant's first assignment of legal error provides the prior decision erroneously neglected to address 6th Circuit Case Law and a prior decision on "a legal issue virtually identical to the instanter matter". Specifically, the Appellant argues: "…federal courts in the Sixth Circuit, where the Appellant is located, *have clearly and consistently held,* as a matter of law, that under the CARES Act, any business, irrespective of the exclusions in 13 C.F.R. §120.110(b), shall not be denied eligibility for the PPP as long as the business meets the size requirements specified in the CARES Act." (*Emphasis added).*

The Appellant's Petition, Supplemental Filings and request for Reconsideration rely upon the holdings in DV Diamond Club of Flint v. SBA, Case No. 20-cv-10899 (E.D. Mich. May 11, 2020); DV Diamond Club of Flint v. SBA, 960 F.3d 743 (6th Cir. 2020); and, National Assoc. of Home Builders v. SBA, 2021 WL 4458660, Case No. 20-11780 (E.D. Mich. Sept. 28, 2021). (RR pg. 1).

JA0769

DV Diamond Club of Flint v. SBA, Case No. 20-cv-10899 (E.D. Mich. May 11, 2020) involves the issuance of a preliminary injunction against SBA precluding the denial of PPP loans under 13 C.F.R. §120.110(p) for specific Plaintiffs and Intervenors operating businesses of a "prurient sexual nature". DV Diamond Club of Flint v. SBA, 960 F.3d 743 (6th Cir. 2020) involves the denial of SBAs motion before the 6th Circuit to undo the preliminary injunction. No final decision has been reached in the overall matter.

National Assoc. of Home Builders v. SBA, 2021 WL 4458660, Case No. 20-11780 (E.D. Mich. Sept. 28, 2021) is a District Court decision within the 6th Circuit which follows the rationale set forth in DV Diamond Club of Flint v. SBA, for potential PPP loan borrowers being deemed ineligible for a PPP loan by SBA pursuant to 13 C.F.R. §120.110(c), "Passive Businesses". The District Court noted a distinction from the rationale of In re Gateway Consultants, where SBA's ineligibility determination for bankruptcy was upheld in the "co-equal statutory creditworthiness limitation embodied by 15 U.S.C. §636(a)(6). The Court did not find a 'co-equal' aspect to SBAs denial of PPP loans under 13 C.F.R. §120.110(c).

Additionally, the Appellant argues the prior decision failed to follow the decision of ALJ McGinn-Shapiro in PPP Appeal of Reliable Auto Finance Inc., Docket No. PPP-7609937004. In that decision, Judge McGinn-Shapiro accepted the arguments of the Appellant and relied upon DV Diamond Club and National Assoc. of Home Builders in finding that within the 6th Circuit, SBA was precluded from using the ineligibility standards of the SBA 7(a) loan program found in 13 C.F.R. §120.110 et seq. The decision dealt with a similarly situated appellant/lender being denied PPP loan forgiveness.

The Appellant asserts through these two matters and the decision of ALJ McGinn-Shapiro, the established law of the 6th Circuit precludes SBA from applying the eligibility standards of the SBA 7(a) loan program found in 13 C.F.R. §120.110 et seq. to PPP loan forgiveness determinations.

The preliminary injunction in DV Diamond Club specifically limits the scope of the injunction to SBA denials of PPP loans to the Plaintiffs/Intervenors in that action which engage in businesses of a "prurient sexual nature" under 13 C.F.R. §120.110(p). The issuing Court specifically addressed the application of the injunction to other matters within the District/Circuit, as follows: *This is not a "nationwide injunction" and does not affect in any way actions that Defendants may take in connection with applications for PPP loans by any entity other than the Plaintiffs and Intervenors in this action.* (*Emphasis added*).

National Assoc. of Home Builders presents a District Court decision relying upon the rationale of the DV Diamond Club preliminary injunction to preclude SBA from applying a separate 7(a) loan program denial rationale found at 13 C.F.R. §120.110(c).

The Appellant asserts DV Diamond Club and National Assoc. of Home Builders establish the law of the 6th Circuit as precluding SBA from applying 13 C.F.R. §120.110(b) to PPP loans. DV Diamond Club has yet to receive a final decision on the merits, is limited to the parties, and concerns application of 13 C.F.R. §120.110(p). National Assoc. of Home Builders relies on DV Diamond Club and concerns the application of 13 C.F.R. §120.110(c) to PPP loan eligibility. Further, it distinguishes In re Gateway Consultants, where SBA's ineligibility determination for

JA0770

bankruptcy was upheld in the "co-equal statutory creditworthiness limitation embodied by 15 U.S.C. §636(a)(6)" from SBAs application of 7(a) loan eligibility requirements.

Review of the authority relied upon by the Appellant, in no way, *clearly and consistently* holds, *as a matter of law, that under the CARES Act, any business, irrespective of the exclusions in 13 C.F.R. §120.110(b), shall not be denied eligibility for the PPP as long as the business meets the size requirements specified in the CARES Act.* These two matters set forth a direction within the 6th Circuit, but were carefully balanced in the prior decision against the completed cases issuing final decisions in the 2nd, 5th, and 11th Circuits on the specific issue raised by the Appellant.

Further, the prior decision clearly explained the lack of precedence in OHA decisions and U.S. Administrative Law Judge (ALJ) McGinn-Shapiro's decision within the larger scheme of administrative adjudication. Additionally, neither the Administrative Procedure Act (APA) nor the applicable regulations grant an OHA Judge the authority to invalidate SBA regulations (*see* 5 U.S.C. §556(c)(1)-(11); 13 C.F.R. Pt. 134, SubPt. L). Applicable to this matter, 13 C.F.R. §134.1211(e) explicitly provides that: "Neither initial nor final decisions rendered by OHA under this subpart are precedential." The Appellant asserts that "…it would be a non-substantive, perfunctory endeavor to file a PPP appeal to OHA before having to litigate any issue, even if it is settled law."

As set forth in the prior decision, no ALJ, in any administrative review or hearing system(s), has been granted the authority to overrule or invalidate an agency's regulation(s), as the traditional/accepted role of an ALJ/Hearing Officer is to provide parties/appellants due process by ensuring an agency properly applied and followed the applicable laws, regulations, and policy when making its decision(s). As such, failing to apply the rationale from these two matters within the 6th Circuit and ALJ McGinn-Shapiro's prior OHA decision to the Appellant's Petition for PPP loan forgiveness is not an error of law.

The Appellant's second assignment of legal error provides the prior decision "generally fails to address the legal issues raised in the appeal and makes other mistakes of law." This assignment contains six enumerated sentences and three discernable arguments.

In argument one, the Appellant asserts the prior decision failed to address the three primary issues raised in the Petition: ( 1) SBA's eligibility limitations in the IFR are inconsistent with the language of the CARES Act; (2) Congress clearly was aware of the broad reach of the initial PPP eligibility in the CARES Act and could have limited such eligibility but did not; and (3) The federal district and appellate courts of the Sixth Circuit have clearly held, as a matter of law, that the CARES Act eligibility standard is that articulated by Appellant in the Appeal Petition." (RR pg. 4). This assertion is an extension of the first assignment of error. The prior decision specifically addresses the application of 13 C.F.R. §120.110 (SBA eligibility determinations for PPP loans under the SBA 7(a) program eligibility), CARES Act implementation in relation to SBA Interim Final Rules, and the application of relevant case law.

In argument two, the Appellant asserts error in the prior decision failing to use 6th Circuit case law to look beyond SBA regulation and interpretation. As addressed above, there does not exist established case law within the 6th Circuit for the issues raised by the Appellant. Further, the prior

JA0771

decision addressed the scope of ALJ authority in relation to other OHA decisions under the APA, to-wit:

> "ALJs have no constitutionally based judicial power, see Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. See Nash v. Bowen, 869 F.2d 675, 680 (2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert, denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985); Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C. 1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 C.F.R. §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

> ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. §556(c)."

The Appellant asserts an error of law in failing to prevent SBA from denying PPP loan forgiveness because SBA has or may have approved similar applications in the past and/or in a different case(s) is an argument for estoppel. Estoppel bars a party from doing something different from what has been done before or what has been legally established as true. The United States Supreme Court has determined as a general rule, the Federal Government may not be estopped from enforcing public laws, even though private parties may suffer hardship as a result in a particular case (Office of Personnel Management v. Richmond, 496 U.S. 414 (1990); *see also* Department of Justice Manual[2]. In other words, in enforcing the applicable PPP law(s) SBA cannot be prevented (i.e. estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application. The applicable laws, regulations, and policy make clear that each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy. *See* 15 USC §636(a)(36); 15 USC §636m; IFR #1, #15, #20. The prior decision clearly addressed this argument and the Appellant offers no authority to reflect the rationale used in this area was improper.

---

[2] https://www.justice.gov/jm/civil-resource-manual-209-estoppel#:~:text=The%20general%20rule%20is%20that,a%20result%20in%20particular%20cases)

JA0772

In argument three, the Appellant asserts error in the prior decision failing to follow *National Assoc. of Home Builders* and recognize SBA guidance published on January 14, 2021. The SBA guidance was issued following Congressional action and the Appellant asserts is not applicable to first-draw PPP loans, of which the Appellant seeks forgiveness. The Appellant argues the prior decision failed to recognize that the guidance, along with the Congressional expansion of the PPP loan program (second-draw) for certain nonprofits and express incorporation of 13 C.F.R. §120.110 et seq., axiomatically precludes application of 13 C.F.R. §120.110 et seq. for first-draw PPP loans.

Essentially, the Appellant argues that whenever Congress expressly adopts existing regulatory constraints to a benefit (loan) program those same regulations cannot be applied to any applications related to the benefit existing prior to Congressional adoption. In general, the current process/scheme of Executive Branch Agency rule-making/regulatory issuance begins when Congress enacts legislation that either mandates or authorizes agencies to issue regulations. Through the APA and other laws, Congress also establishes the procedures that govern agency rulemaking. Congress may use a variety of processes as part of its oversight of agency action, including holding hearings or informal meetings, issuing reports, or adopting legislation. In addition, Congress, through the Congressional Review Act (CRA) (5 U.S.C. Chapter 8), may review and choose to reject new regulations issued by Federal agencies. The CRA requires Federal agencies to submit all new final rules to both the House and Senate. After submission, Congress may begin a process to reconsider and vote to overturn the rule[3].

The Appellant offers no authority to support a rule that where Congress adopts an existing regulation a presumption is created that the Agency originally issuing the regulation improperly issued the regulation prior to Congressional adoption. Application of such a rule would be wholly inconsistent with the current regulatory and statutory scheme. As the prior decision relies upon the established recognition of Agency/Congressional regulatory adoption, no error of law exists.

### III.    Factual Error Asserted by the Appellant

The Appellant asserts the prior decision contains factual errors within the Procedural History and Finding of Fact/Analysis.

As it relates to the Procedural History, the Appellant points to two perceived errors:

1) "It is stated that the SBA filed a Response to the objection [the Administrative Record Objection] on January 18, 2022. The record reflects that the SBA filed no such Response. The only responsive pleading filed in this matter by the SBA was its Response to Appeal of Appellant.

2) The Procedural History neglected to reference the Second Supplemental Pleading discussed in Part I above."

---

[3] https://www.reginfo.gov/public/jsp/Utilities/faq.myjsp

JA0773

The Procedural History of the prior decision is not designed to be an all-inclusive itemization of the events surrounding an appeal, but rather provide relevant background information within a matter. Any omissions within a Procedural History might give rise to the legal sufficiency of a resulting decision when relevant evidence, argument, or testimony excluded from the Procedural History are not addressed in the rationale behind a decision relative to applicable statutes, regulations, judicial decisions, and other appropriate authorities.

The prior decision incorrectly identifies the responsive pleading filed by SBA as being in response to the Appellant's Objection to the Administrative Record. The arguments set forth by SBA in the Response address the Petition of the Appellant and the prior decision accounted for these arguments within the context of responding to the Petition. While the prior decision incorrectly attributed the SBA Response to the Appellant's Objection, the examination of the document was consistent with the proper role such a document plays within the procedural in place. As such, this error is harmless and does not provide a basis to alter the prior decision.

The prior decision did not itemize the Second Supplemental Pleading of the Appellant within the Procedural History, but did address the arguments contained therein within the body of the decision. The Appellant's arguments received consideration. As such, omission of the Second Supplemental Pleading in the Procedural History is a harmless error that does not provide a basis to alter the prior decision.

As it relates to the Findings of Fact and Analysis, the Appellant points to the following:

"The Finding of Fact and Analysis section of the Decision states that "[t]hrough written argument (Supplemental Pleading) dated December 3, 2021,the Appellant argues in favor of full loan forgiveness" (p.5). This statement is factually erroneous. First, Appellant's primary legal argument was filed in its Appeal Petition on October 28, 2021. Second, the argument is not in favor of full loan forgiveness; rather, the crux of Appellant's argument is the legal issue of eligibility. Third, Appellant's Supplemental Pleading was filed January 18, 2022, not December 3, 2021. There is no December 3, 2021 Supplemental Pleading, and there are not two enumerated or primary objections stated in any of the filings of Appellant in this matter as stated in the Decision. This is another clear error of fact. The objections referenced relate to request for the SBA's "Guidance" to its Reviewers, relating solely to the Objection to Administrative Record filed December 29, 2021. However, those arguments are not the basis of the Appeal Petition or the Second Supplemental Pleading."

Essentially, the Appellant argues as to the specificity of the prior decisions categorization of pleadings and the dates assigned to the same. Review of the prior decision clearly reflects full consideration of all legal arguments put forth by the Appellant. The methodology utilized in the prior decision to identify documents by date does not reflect a failing to consider the significance/arguments/facts contained in the entire administrative record. The Appellant's disagreement with the decision methodology does not rise to the level of presenting a factual error, much less one that would call into question the legal sufficiency of the prior decision.

JA0774

### IV.    Summary

A small business must meet SBA's ownership, operation, and size standards (15 U.S.C. §632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§121.101(a), 121.102(a), 121.201). The portion of the CARES Act the Appellant relies on (15 U.S.C. §636(a)(36)(D)(i)) (i.e. Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan", if it meets SBA size standards (*see* 15 U.S.C. §636(a)(36)(D)(i)(I)-(II)).

Attention is called to Paragraph 36(D)(i) of 15 U.S.C. §636(a) which begins with two relevant words, "In general—". These words make clear the paragraph describes general eligibility requirements and does not create an absolute requirement guarantying PPP loan eligibility for any business concern. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e. paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. The Appellant's argument is based on a misreading of Paragraph 36(D)(i), and does not provide a persuasive legal basis to make the extraordinary finding that any business concern meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[4, 5].

Here, the AR and admissions of the Appellant reflect the Appellant is a finance company. Only an **eligible recipient** of a PPP loan may receive loan forgiveness (15 U.S.C. §636(a)(36)(A)(ii) and (iv); 15 U.S.C. §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 U.S.C. §636(a)(36)(B)). The PPP statute (15 U.S.C. §636(a)(36)) does not exempt finance companies from the terms of other 7(A) loans. Under long-standing SBA regulations and policy in effect when Appellant submitted the PPP loan application, finance companies are ineligible to receive small business loans. Such loans in 7(A) loans and PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 C.F.R. §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(ii), Page 104)[6].

---

[4] The United States Supreme Court has determined, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989)).

[5] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, it reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements of Section 1102 of the CARES Act (15 U.S.C. §636(a)(36)) to receive a PPP loan.

[6] IFR #1 was published/released on the U.S. Department of the Treasury (USDT's) PPP webpage on April 2, **2020** and became effective April 15, 2020. IFR #1 was published on USDT's webpage the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

JA0775

The final SBA loan review decision is well-supported in finding the Appellant is a finance company that was ineligible to receive a PPP loan, thus ineligible to receive PPP loan forgiveness. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Appellant's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Appellant has failed to establish any error of law or fact in the prior decision. The final SBA loan review decision is **AFFIRMED.**

## CONCLUSION OF LAW

The Appellant failed to establish the final SBA loan review decision or the OHA decision related to PPP Loan No. 9716822710 was based on a clear error. The Appellant was not eligible for a PPP loan and is not entitled to PPP loan forgiveness. This is an initial agency decision. Unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse this reconsidered initial OHA decision pursuant to 13 C.F.R. §134.1211(c)(3), this decision shall become the final decision of SBA 30 calendar days following service upon the parties. 13 C.F.R.§134.1211.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED.** The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

*Brian J. Haring*  Digitally signed by Brian J. Haring -S

**Brian J. Haring**
U.S. Administrative Law Judge

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or the Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. §1211(c)(1).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. §134.1211(d). 13 C.F.R. §134.1211(c)(3).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. §134.1211(c)(3).

**Within 30 calendar days after service of an initial or reconsidered OHA decision or reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. §134.1211(d).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. §134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. §134.1211(d).

The SBA Administrator's decision will become the **FINAL DECISION of SBA** upon issuance. 13 C.F.R. §134.1211(d).

JA0777

# Exhibit A

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Eagle Financial Services, Inc.**

     Appellant

Appealed from
SBA PPP Loan No. 9716822710

Issued:  **January 25, 2022**

Decision No. **9716822710**

Appearances:
    Maurice L. Shevin (Dentons Sirote, PC), for the Appellant.
    Helen Romanez, for the Small Business Administration.

## DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of Eagle Financial Services, Inc. (Appellant) is **DENIED**.  For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

On April 21, 2020, the Appellant submitted a Paycheck Protection Program (PPP) Borrower Application. On April 21, 2020, the Appellant was approved for a PPP loan by Texas Capital Bank, National Association (Lender) in the amount of $ 5,150,572.00 and received the loan proceeds. On May 18, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender.  On May 18, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $ 5,150,572.00.

On September 30, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for a PPP loan as an entity primarily engaged in lending.

On October 28, 2021, the Appellant filed the instant appeal from that final SBA loan review decision.  The Appellant's Petition argues the final SBA loan review decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.  On December 3, 2021, the undersigned issued a Notice and Order requiring the filing of the Administrative Record ("AR") by December 23, 2021, providing for the Appellant to Object to the same by January 3, 2022, and allowing for SBA to respond to any objection by January 18, 2022.

JA0778

# Exhibit A

On December 3, 2021, the Administrative Record was filed. On December 29, 2021, the Appellant filed an Objection to AR providing the application of 13 C.F.R. § 120.110(b) to the Appellant's PPP loan was contrary to established law. On January 18, 2022, SBA filed a Response to the objection.

On January 21, 2022, the Appellant filed a Motion to re-open the AR in order to file a Reply to the SBA Response. On January 24, 2022, the undersigned issued an Order denying the Appellant's Motion. Following review of the Objection and Response, the undersigned finds the Objection not well taken and admits the AR as submitted.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Appellant $ 5,150,572.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.     Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

"Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)" are ineligible for SBA business loans. 13 C.F.R. § 120.110(b).

In terms of who could apply for a PPP loan, on January 14, 2021, SBA published the "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act" at 86 Fed. Reg. 3692 and specifically advised:

JA0779

# Exhibit A

"B. What do borrowers need to know and do?

    2. What businesses, organizations, and individuals are ineligible?

b. Are businesses that are generally ineligible for 7(a) loans under 13 C.F.R. 120.110 eligible for a PPP loan? [35]

Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 3.[36]"

Footnote 35 of 86 Fed. Reg. 3692 provides: "This subsection replaces the subsection originally published at 85 FR 20811, subsection III.2.c. ("How do I determine if I am ineligible") (April 15, 2020) and modified to conform to the Economic Aid Act.". Footnote 36 of 86 Fed. Reg. 3692 provides: "SOP 50 10 6 can be found at https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs-0. For PPP loans approved before December 27, 2020, see SOP 50 10 5(K), Subpart B, Chapter 2 for ineligible types of businesses. SOP 50 10 5(K) can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs."

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

JA0780

# Exhibit A

## II.    PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

---

[1] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA0781

# Exhibit A

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire record (Exhibit List attached and incorporated herein), a preponderance of the evidence establishes:

On April 21, 2020, the Appellant submitted SBA Form 2483, Paycheck Protection Program Borrower Application. (AR pp. 1139-1141). The Appellant was approved for a PPP loan by the Lender in the amount of $ 5,150,572.00 and received the loan proceeds on or about April 22, 2020. (AR pg. 1159).

On May 18, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508EZ seeking full forgiveness of the PPP loan amount. On May 18, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $ 5,150,572.00. (AR pp. 1144-1156).

On May 20, 2021, SBA informed the Lender it was undertaking a review of the Appellant's PPP loan and requested information regarding the Appellant's line of business. (AR pp. 1132-1133). On June 22, 2021 and June 24, 2021, SBA informed the Lender it was requesting documentation to determine if the Appellant was engaged in lending or a loan agency in Florence, Kentucky. (AR pp. 1134-1137).

In response to the SBA request, Allen Griffith, General Counsel, Eagle Financial Services, Inc. provided an e-mail sent to the Lender which states: "Eagle Financial Services, Inc. does engage in lending in Florence, Kentucky." The e-mail attachment contained a copy of Eagle Financial Services, Inc.'s Kentucky Consumer Finance License Number 1558 and a Certificate of Existence for Eagle Financial Services, Inc. filed in Kentucky. (AR pp. 148-155).

SBA reviewed the Appellant's NAICs code and requested additional documentation from the Appellant. The Appellant responding by confirming it was engaged in the business of lending. (AR pp. 148-155).

On September 30, 2021, SBA issued a final loan review decision providing the Appellant with $ 0.00 of PPP loan forgiveness. SBA held the Appellant "is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring." (AR pp. 3 and 18). The Appellant filed a petition for OHA review of this matter on October 28, 2021.

Through written argument (Supplemental Pleading) dated December 3, 2021, the Appellant argues in favor of full loan forgiveness. The Appellant makes two primary objections: 1) The Appellant has not been provided all "guidance" relied upon by SBA in reviewing the PPP Loan Forgiveness Application; and 2) SBA exceeded the authority granted by the CARES Act in applying 13 C.F.R. § 120.110(b) of the SBA 7(a) Loan Program to this PPP loan. The Appellant does dispute the underlying SBA rationale for denying loan forgiveness, that is, the Appellant is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring, but rather objects to the application of the Appellant's status as such a lender to the eligibility requirements for receiving the PPP loan at issue.

JA0782

# Exhibit A

**Objection #1: Lack of Receiving All "Guidance"**

The Appellant objects that: "…the Administrative Record filed by the SBA is deficient in that it fails to include guidance, documents, memoranda of law and/or other instructions issued by the SBA, in substantiation or support of the recommendations of SBA Reviewers that are the basis for such Reviewers' determination that Appellant is ineligible for the PPP Loan that Appellant received" and "there is information missing from the Administrative Record." (Objection to the AR, pg. 1).

SBA has published numerous documents constituting guidance concerning review of the PPP lending program and forgiveness applications. These documents are publicly accessible. As it relates to the denial of loan forgiveness (lending), guidance documents include 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness, including requirement that ineligible borrowers will not receive loan forgiveness); and 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP). Beyond these documents, SBA created a detailed webpage for the PPP lending program[2].

Review of the Administrative Record reflects the "guidance" identified by the Appellant is publicly available and not missing from the Administrative Record. As such, the Objection is overruled.

**Objection #2: Application of 13 C.F.R. § 120.110(b) to the Appellant's PPP Loan**

The Appellant challenges to the validity of SBA's First Interim Final Rule for the PPP ("First IFR"), which specifically applied an exclusion to the program for businesses engaged in lending under 13 C.F.R. § 120.110(b) to PPP loans. Essentially, the Appellant argues the SBA's interpretation of the CARES Act requiring the application of 13 C.F.R. § 120.110(b) to PPP loans is inconsistent with the CARES Act and should not preclude loan forgiveness.

**<u>Authority of OHA to determine the Validity of SBA's First Interim Final Rule</u>**

Congress created SBA through the Small Business Act of July 30, 1953. SBA is under the general direction and supervision of the President and may not be affiliated with or be within any other agency or department of the Federal Government. The management of SBA is vested in an Administrator who shall be appointed from civilian life by the President, by and with the advice and consent of the Senate. The Administrator is authorized to appoint Associate Administrators (AA) to assist in the execution of the functions vested in the SBA. One such AA is the Chief Hearing Officer, who administers the Office of Hearings and Appeals (OHA). OHA was established to "impartially decide matters relating to program decisions of the Administrator". The

---

[2] https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program

JA0783

# Exhibit A

Docket No. 9716822710

AA of OHA is the Chief Hearing Officer and is responsible to the Administrator. The Chief Hearing Officer is responsible for the operation and management of OHA. Pub. L. 85–536 (July 18, 1958); as Amended through Pub. L. 117–6 (March 30, 2021); 15 U.S.C. 631 et seq.; 72 Stat. 384 et seq.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen v. Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman v. Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico v. Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.,* Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation,* SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant,* SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

JA0784

# Exhibit A

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. §553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

For the foregoing reasons, OHA and the undersigned are without authority to invalidate SBA's regulation or its interpretation of the CARES Act.

## The CARES Act subjects PPP Loans to the SBA 7(a) Loan Program restrictions in 13 C.F.R. § 120.110(b)

The Appellant argues it is a "business concern" with not more than 500 employees and "SBA lacked authority to apply the additional loan eligibility criteria" found at 13 C.F.R. §120.110(b).

The record reflects the Appellant was able "to re-hire many terminated employees, increase hours for other employees and sustain the viability of Appellant's business during the early days of COVID-19 Pandemic." Further, the record reflects the Appellant met all other conditions of eligibility under the CARES Act. Regardless of meeting of the base CARES Act eligibility requirements and demonstrated proper use of the PPP loan proceeds, the Appellant was ineligible for the PPP Loan. The Appellant was admittedly a financial business primarily engaged in a financing activity. 13 C.F.R. § 120.110.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. *See* 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

JA0785

# Exhibit A

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a term and condition of that program, that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)." SBA explained in the Standard Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692 (January 14, 2021) that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

As noted by SBA in its Response, over the last "25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans."

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. *See* Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective at the time of its PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

The 11th Circuit and several district courts have recognized the PPP lending program as a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020); *see United States SBA v. Vestavia Hills, Ltd.*, No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); *Diocese of Rochester v. United States SBA*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."); *In re Penobscot Valley Hosp.*, No. 19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021).

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. *See* Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3698, 3705–3706, 3708–3709, (January 12, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3,

JA0786

# Exhibit A

2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP).

As it relates to SBA applying 7(a) Loan Program requirements to PPP loans, *In re Gateway Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020)*, held that: 1) SBA did not exceed its authority in adopting its bankruptcy exclusion rule for PPP eligibility; 2) the rule was not contrary to the CARES Act and was based on a reasonable interpretation of the Act, and 3) SBA did not act arbitrarily and capriciously in adopting the bankruptcy exclusion rule.

In reaching this conclusion, the Court conducted the two-part analysis set forth in *Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)* and determined that SBA did not exceed its statutory authority. Under *Chevron,* first, the court must determine whether Congress spoke directly to the question at issue. If so, then the court defers to the statute. If Congress did not address the issue in question in the statute itself, then the court must determine if the agency's response to the statute is based on a "permissible" interpretation of the statute. If so, then the court must defer to the agency. Addressing *Chevron* part 1, the Court determined that Congress had not directly spoken on the issue of bankrupt debtors' eligibility for the PPP and that Congress' silence on the issue indicated its delegation of authority to SBA. The Court addressed head-on the argument raised by the Appellant in the instant case that SBA could only consider the eligibility factors expressly listed in the CARES Act:

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. See 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.201. And in doing so the Act provides that "any business concern . . . shall be eligible" for a PPP loan if it "employs not more than the greater of . . . 500 employees; or . . . if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II). Of course, "any" typically has an expansive meaning, *see Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, *see Kingdomware*, 136 S. Ct. at 1977.
>
> But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. *See* 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.

JA0787

# Exhibit A

Second, *Gateway* relies on a subsection of the CARES Act that delegates authority to lenders to make PPP loans and requires them to take into account two "considerations" when "evaluating the eligibility of a borrower." See 15 U.S.C. § 636(a)(36)(F)(ii)(II). One is whether the borrower "was in operation on February 15, 2020," and the other is whether it "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors, as reported on a Form 1099-MISC." *Id.* But that provision does not say those two considerations are the only ones. And for reasons we've discussed, it would make little sense if they were the only considerations or criteria for determining eligibility. The Act establishes some eligibility requirements, the size requirement, for example. See id. § 636(a)(36)(D)(i). And it waives some generally applicable § 7(a) requirements, such as the inability to obtain credit elsewhere. *See id.* § 636(a)(36)(I). It would render parts of the Act inoperative and superfluous if the two "considerations" were interpreted as the only ones. *See Corley*, 556 U.S. at 314.

. . .

The takeaway is: None of the individual statutory provisions that *Gateway* relies on provides an unambiguous answer to the question of whether bankruptcy debtors are eligible for PPP loans. Nor does the sum of those provisions. *Cf. Friends of the Everglades*, 570 F.3d at 1225 ("The broader context of the statute as a whole does not resolve the ambiguity.") (quotation marks omitted). Instead, the text of the CARES Act shows Congress placing the PPP within § 7(a), leaving intact the sound value requirement, and delegating rulemaking authority to the SBA. That is all the more important because in the Act Congress expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others. *Id.* at 1258-59 and 1261.

The Court then turned to *Chevron* part 2 and determined that SBA's bankruptcy exclusion rule was reasonable and therefore entitled to deference. *Id.* at 1261. When determining reasonableness, the Court is not permitted to substitute its own judgment for SBA's and must only consider "whether the SBA's interpretation is rational." *Id.* at 1261-62.

Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic. Even though the purpose of the PPP was to quickly help small businesses in distress or before they became distressed, as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to "all" § 7(a) loans. *See* 15 U.S.C. § 636(a)(6). In that way, it identified "manifestly competing interests" that it "intended to accommodate." *Chevron*, 467 U.S. at 865. But it did not accommodate them with specificity when it came to whether bankruptcy debtors are eligible for PPP loans. It left that to the SBA.

JA0788

# Exhibit A

Docket No. 9716822710

The SBA's interpretation of the CARES Act and § 7(a) was a reasonable accommodation of those interests.

The Court found SBA did not act arbitrarily or capriciously in adopting its bankruptcy exclusion rule. The lender exclusion found in 13 C.F.R. §120.110 mirror in all regards the Section 7(a) Loan Program bankruptcy exclusion. While the undersigned lacks authority to ultimately rule on the validity of 13 C.F.R. §120.110, it is clear the undersigned is required to apply the Section 7(a) Loan Program lender ineligibility regulation of 13 C.F.R. §120.110 to the Appellant's PPP loan.

The record reflects the Appellant is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring at the time of receiving the PPP Loan. (AR pp. 18-19). The Appellant admits "Eagle Financial Services, Inc. does engage in lending in Florence, Kentucky." (AR pp. 148-151) and holds a Kentucky Consumer Finance License Number 1558 for Eagle Financial Services, Inc. and a Certificate of Existence for Eagle Financial Services, Inc. filed in Kentucky. (AR pp. 152-155) The Appellant affirmed its lending business by stating, "[a]ppellant is a consumer finance company engaged primarily in the lending of money to "consumers" as that term is defined at 15 U.S.C. §1602(i) of the Consumer Credit Protection Act, making fully amortizing, fixed terms loans … holds (i) a Consumer Finance License issued by the Kentucky Department of Financial Institutions, and (ii) licenses under the Ohio General Loan Law and the Ohio General Loan Law and the Ohio Consumer Installment Loan Act."

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are ineligible for SBA business loans, including the PPP lending program. *See* 85 Fed. Reg. at 20812; 13 C.F.R. §120.110(b). The Appellant was ineligible to participate in any SBA 7(a) Loan Program, including the PPP lending program. As such, the final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is upheld and the Appellant is not entitled to loan forgiveness.

## CONCLUSION OF LAW

The Appellant failed to establish the final SBA loan review decision was based on a clear error. The Appellant is not entitled to loan forgiveness. This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days following service upon the parties. 13 C.F.R.§ 134.1211.

JA0789

# Exhibit A

Docket No. 9716822710

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Digitally signed by
Brian J. Haring -S

**Brian J. Haring**
U.S. Administrative Law Judge

JA0790

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Eli's Leasing, Inc.
      Appellant

Appealed from
SBA PPP Loan Number  1398747106

Issued:  November 4, 2022

Docket No. PPP-1398747106

## **DECISION**

*For Appellant*
Theodora McCormick, Esq., 150 College Rd. W., Suite 301, Princeton, NJ 08540

*For the Small Business Administration*
Jeffery Schervone, Esq, Office of General Counsel, U.S. Small Business Administration, Washington, D.C.

On January 31, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision stating that Funding Metrics, LLC (Appellant) is not entitled to forgiveness for the entirety of its PPP Loan in the amount of $59,302.00. (AR 12-13[1]). The SBA determined that Appellant, "together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Id).

Appellant does not deny that together with all of its affiliates it exceeds the maximum number of employees to be considered a "small business concern" pursuant to 13 C.F.R. § 121.301 and the CARES Act. Instead, Appellant argues that it should be exempt from calculating the aggregate of its employees and be permitted to count only employees of its affiliates that are not entitled to a Waiver of Affiliation under the CARES Act.

## I. CARES Act , PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020).  Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn.  Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).  Congress first authorized $349 billion in loans.  CARES Act § 1102(b)(1).  One month later, Congress

---

[1] The pages referenced as "AR" refer to the Administrative Record, and specifically to the page number on the bottom right of each page.

increased this figure to $659 billion.  Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

The Small Business Act had been enacted on July 7, 1953.  Various regulations had been implemented in relation to that Act, including 13 CFR §120.110, which became effective in 1996.  (61 FR 3223, 3235, 3239). Congress placed the Paycheck Protection Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program.  See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)).  Section 7(a) loans are the SBA's main program for helping small businesses.  *In Re Gateway Radiology Consultants, P.A.*  983 F.3d 1239, 1248 (2020) (11th Cir.).  Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program.  CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).

***PPP Loan Eligibility***

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them.  See 15 USC § 636(a)(36)(D)(I).  The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees.  15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans.  The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."  15 USC § 636(a)(36)(B)  Ineligible types of businesses are identified in 13 CFR §120.110.  These ineligible businesses include, for example, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan.  13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan.  Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA.  13 CFR §103.2(b).  Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.  Executive Order 12549, 13 CFR part 145.  Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan.  SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

JA0792

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G)  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee.  15 U.S.C. § 636(a)(36)(A)(viii)(II).  If the borrower was not eligible for a PPP loan, but nevertheless received such a loan, then the loan is not subject to forgiveness.  See 85 FR 33010, 33012- 33013.

### *PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan.  See 15 USC § 636m.  Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan.  Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans.  The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest  or rent payments and utility expenses.  Generally, the amount of the loan that is forgiven is the amount used to pay those costs.  But the bulk of the funds, at least 60 percent, must be spent on payroll.  15 USC §636(a)(36)(J)(iv).

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)].  Only an eligible recipient of a PPP loan may receive loan forgiveness.  15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)).

### *PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds.  The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any.  15 USC §636m (e), (f) and (g).  Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness.  The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1. Was ineligible for a PPP loan.

2. Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses.

3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA, or

4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

JA0793

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L. However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision. 13 CFR §134.1201(a-c). The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans. To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov. 13 CFR §134.1202(a).

### *Authority of an SBA OHA Judge*

An Administrative Judge has authority no greater than that of an Administrative Law Judge. An Administrative Law Judge (ALJ) has no constitutionally based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See e.g.,* 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert. denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, an Administrative Judge has no authority to question or decide the constitutionality of an SBA regulation or policy. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

## II.  Timeliness and Standing

An appeal of a Final SBA Loan Review Decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR §134.1202(a). In this case the Final SBA Loan Review Decision was issued on January 31, 2022 (to the lender) and was reported as received by Appellant on April 12, 2022. (AR 12, Dkt. 3, Ex. B) (See OHA Portal, "About Appeal"). The appeal was filed by initiation on the Portal on April 26, 2022 which is within the 30-day time requirement. (Id). Accordingly, I find that the Appeal was timely filed.

Only the borrower on a loan, or its legal successor in interest, for which SBA has issued a final SBA loan review decision has standing to appeal the final SBA loan review decision to OHA. 13 CFR §134.1203. A party may represent itself or be represented by an attorney. A partner may represent a partnership; a member may represent a limited liability company; and an officer may represent a corporation, trust, association, or other entity. 13 CFR §134.208.

In this case the Appellant/borrower is Eli's Leasing, Inc. (AR 115, 131). The Final SBA

- 4 -

Docket No. 1398747106

Loan Review Decision was issued regarding Eli's Leasing, Inc. (AR 12-13). The appeal petition on the Portal was signed by Theodora McCormick, Esq, authorized counsel for Appellant. (Dkt. 1[2]). (*See also* OHA Portal; "Appellant Point of Contact"). Based on this, I find that there is proper standing to file the appeal.

### III. Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a). Appellant has the burden of proving all elements of the appeal. **Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law**. 13 CFR §134.1210.

### IV. Facts of this Case and the Final SBA Loan Review Decision

On April 10, 2020 the U.S. Small Business Administration (SBA) issued a First Draw Paycheck Protection Program (PPP) Loan in the amount of $59,302.00 to the Appellant. (AR 286). On May 27, 2021, the PPP Loan Forgiveness Application Form 3508S was executed by Appellant, requesting full forgiveness. (AR 285).

The Notice and Order setting dates and deadlines was filed on June 7, 2022. (Dkt. 5). On June 27, 2022, the SBA filed a Consent Motion for Extension of Time to File the Administrative Record. (Dkt. 6). The Motion was granted on the same date, and the Order granting the Motion set new dates and deadlines for the Appeal. (Dkt. 7). The SBA filed the Administrative Record on August 10, 2022. Appellant did not Object to the Administrative Record and the SBA did not file a Response to the Appeal. The record closed on September 6, 2022. (Dkt. 7).

### V. Appeal

On April 26, 2022, Appellant filed the instant appeal arguing the final SBA Final Loan Review Decision should be overturned. Appellant requested forgiveness in the amount of $59,302.00, the full loan amount disbursed.

### VI. Discussion and Analysis

On January 31, 2022, the SBA issued its Final Loan Review Decision denying Appellant forgiveness of its PPP loan as Appellant "together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (AR 12). Specifically, Appellant "did not meet the criteria to pass the small business size standard under the SBA 7(a) program. The borrower did not meet the employee-based size standard, the SBA alternative size standard test, nor the receipt-based size standard."

During the course of its loan forgiveness review, the SBA found the following:

---

[2] The docket numbers referred to herein represent the referenced document in the chronological order in which that document was filed on the OHA case portal.

It is verified that the borrower was an ineligible recipient of the Paycheck Protection Program, associated with NAICS code 812930 (Parking Lots and Garages). A thorough analysis of the addendum A attached to SBA Form 2483 and payroll documentation submitted by the applicant, indicates the borrower has 12 affiliated businesses with 676 total employees. The SBA Form 3511 (signed 01/11/2022) shows total employee count of 282. However, this reduced figure is not supported by the filed payroll documentation – 2019 941s. The 2019 941s payroll documents support the 676 total employees stated on SBA Forms 2483 submitted at time of origination for the affiliated entities. Additionally, the borrower failed to provide the data required to determine eligibility by Alternative Size Standard. (AR 7).

The SBA is clear about the law in this matter. Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)). The First IFR, which was available at the time of Appellant's PPP loan application, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of the Small Business Act's definition of "small business concern" and 13 C.F.R. § 120.301. In that regard, the First IFR informed PPP lenders and applicants that to be eligible, an applicant must have "500 or fewer employees," or must "meet the applicable SBA employee-based size standards for that industry," and be a "small business concern as defined in Section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act" 85 Fed. Reg. 20812 (April 15, 2020).
.

Section 1102(a)(36)(D)(iv) of the CARES Act, *Waiver of Affiliation Rules*, provides that:

During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for—
(I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72…[3]

Appellant acknowledges that it does not have a North American Industry Classification System ("NAICS") code beginning with a 72 but argues that the majority of its affiliates are essentially "NAICS 72 entities" and that should exempt Appellant from counting those affiliates under the SBA's affiliation rules[4]. Appellant also admits that none of its affiliated business are classified with a NACIS code beginning with 72, but rather they "should have been classified" as such. (Dkt. 1, p. 5). A NAICS Code "72" entity is classified as a business whose primary industry is Accommodation and Food Services[5]. Appellant does not dispute that it is an entity that does not have a "72" code, it had an NAICS code of 812930 listed on its loan forgiveness application. (AR 284). NAICS code 812930 is the code for "Parking Lots and Garages"; there is

---

[3] See www.naics.com.
[4] Appellant lists the following entities as affiliates: 1) E.A.T.; 2) Eli's Bread; (3) The Vinegar Factory Inc.; (4) Eli's Manhattan, Inc.; (5) EAT Lexington 87 LLC; (6) EAT Madison LLC (7) Eli Zabar Bread LLC; (8) Eli Zabar's Farm to Market LLC; (9) EAT Madison 91 LLC; (10) EAT Third 79 LLC; (11) 54 Mulberry LLC; and (12) 254 Broome LLC. (Dkt. 1, p.2). Appellant's list is corroborated by the SBA. (AR 296).
[5] www.naics.com.

JA0796

no waiver of affiliation exemption for parking lots and garages. With the Appeal, Appellant's CFO submitted a Declaration stating that that Appellant's correct NAICS code is 532490, "Commercial and Industrial Machinery and Equipment Leasing." (Dkt. 3, para. 11). This corrected code also is listed on the updated Form 3511. (AR 301). [6] The significant point regarding the corrected NAICS code is that Appellant does not fall within retail food service industry (code starting with "72"), and Appellant does not dispute this fact.

Appellant contends "[w]hile Eli's Leasing itself is not in the customer-facing retail food service industry, multiple Eli's Leasing affiliates are, and these affiliates should therefore be considered exempt from the SBA's affiliation rules." (Dkt. 1, p. 5). Affiliates in the food and service industry assigned with an NAICS code beginning with 72 are generally entitled to the waiver of affiliation rules. I find Appellant does not fall within that industry classification and is not eligible for waiver of the affiliation rules.

SBA's Frequently Asked Question Number 24 and its Example 3 are instructive and applicable regarding this issue:

> Question: How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72)?

> Answer: Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan. For Second Draw PPP Loans, a business that is assigned a NAICS code beginning with 72 may have no more than 300 employees per physical location and other eligibility criteria must be met.

> In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan). As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan provided it uses its unique EIN. . .

> Example 3. Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees. The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 § CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. See *SBA Frequently Asked Questions as of July 8, 2022*, www.sba.gov.

---

[6] However, the CFO failed to explain why Appellant listed NAICS code 812930 on the application for loan forgiveness. (AR 285).

The record shows affiliation by ownership. Accordingly, in order to determine the number of employees for Appellant (the entity with majority ownership), all of the employees of its 12 affiliates must be counted, including those that Appellant claims should be classified as "72 entities."[7] Based on the SBA's Affiliation Report, Appellant has a total of 676 employees which exceeds the SBA employee count threshold of 500[8]. (AR 296-298). Appellant's own Form 3511 corroborates that the total number of employees from all of its affiliates exceeds 500. (AR 299-311). In accord with the foregoing, Appellant fails to meet the criteria of the employee based size standard under the SBA PPP program. Further, Appellant's argument to count only the employees from what it deems to be the "non-NAICS 72" entities is incorrectly applied to here. The waiver is inapplicable to Appellant.

Appellant also states when the affiliates in the food and service business were formed, "they were inadvertently classified with an NAICS code of 445299." (Dkt. 1, p. 11). Appellant argues the SBA should consider those affiliates as if they were all assigned an NAICS code of 72. *Assuming arguendo* this is permissible, it has no bearing on Appellant because it is not the entity that would receive the benefit of the "72" NAICS code; it would only benefit the entities who would, on their own, be classified under a "72" NAICS code. Having entities eligible for a NAICS Code "72" affiliation waiver does not change the fact that Appellant itself is not entitled to such a waiver and Appellant has not shown otherwise.

The SBA also found the following:

Borrower originally submitted a 3511 without selecting a size standard. Borrower was informed that the employee size standard exceeded the SBA's size standard on 11/30/21 request to update 3511.

Borrower resubmitted an updated and signed 3511 on 12/14/2021 selecting employee size standard with reduced employee count of approximately 250.This was significantly different from the form 2483 and CAFS balance of 676 employees (excluding the 3 unaffiliated entities); no explanation is provided. (AR 297).

The updated Form 3511 was submitted on June 2, 2022. (AR 301-309). Subsequently, it was followed by a letter of explanation from Appellant's counsel on June 3, 2022. (AR 312-314). Counsel argues that seven of the Eli Zabar entities "are retail food establishments that should have been self-assigned 72 NAICS codes, thus exempting them from SBA's affiliation rules for purposes of determining PPP eligibility." *Id.*

Again, it is noted that Appellant is not a retail food establishment, and it agrees that it is not a business that falls under NAICS "72" classification. Appellant has 12 affiliates, based on affiliation of ownership. (AR 296-309). Appellant is not entitled to waiver of the affiliation rules. It does not meet the employee based size standard as it the number of employees exceeds

---

[7] Appellant argues it should only have to calculate what it considers to be its non "72" affiliates: 1) Eli's Leasing, Inc.; The Vinegar Factory Inc.; Eli's Bread (Eli Zabar), Inc.; and Eli Zabar's Farm to Market LLC. The total number of employees for these entities total 361 according to Appellant.

JA0798

500. Appellant never made the argument that it met the revenue based size standard or the alternative size standard, nor provided any documents to that would substantiate such. (AR 297-298).[9]

I find the SBA did not err in determining that Appellant is an ineligible recipient of a PPP loan per 13 CFR §120.110(b). SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including the requirement that ineligible borrowers will not receive loan forgiveness). Therefore, loan forgiveness is denied.

Appellant has not satisfied its burden of proof to demonstrate that the final SBA loan review decision was based on clear error of fact or law. The SBA final loan review decision is AFFIRMED, and the appeal is DENIED.

## V. Conclusion

For the reasons discussed herein, the SBA final loan review decision is AFFIRMED, and the appeal is DENIED.

This appeal is decided under the Small Business Act of 1958, 15 U.S.C. §631 et seq., and 13 CFR Part 134. This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 CFR §134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 CFR §134.1211(b). In accordance with the regulations, you may file a request for reconsideration within 10 calendar days after service of the Judge's decision under 13 CFR §134.1211(c)(1). You can serve your petition via email to OHAPPPinquiries@sba.gov. It is the borrower's responsibility to review the rules and procedures.

*Joan Knight*

JOAN KNIGHT
Administrative Judge

---

[9] The SBA included a Guidehouse Analysis which indicated these other options for size standards were not met.

JA0799

**United States Small Business Administration**
**Office of Hearings and Appeals**

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | Issued: May 27, 2022 Decision No. PPP-7089217104 |
| Essential Lending, Inc. | |
| Appellant | |
| Appealed from SBA PPP Loan Number 7089217104 | |

APPEARANCES

Hurshell Brown for Appellant; Jeffrey Hsu, Esq. for SBA

DECISION

I. Introduction and Jurisdiction

On January 31, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Essential Lending, Inc. (Appellant) is ineligible for the PPP Loan received. On March 1, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed infra, I Deny the appeal and Affirm the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

II. Background

On April 17, 2020, SBA disbursed a PPP loan to Appellant.

Borrower: Essential Lending, Inc. SBA Loan No.: 7089217104. Approved Loan Amount: $191,700.00. Loan Approval Date: 04/14/2020. Lender Forgiveness Decision Submission Date: 06/04/2021. Lender Forgiveness Decision Amount: $191,700.00. SBA Final Forgiveness Amount: $ 0.00

On January 18, 2021, Appellant filed for PPP loan forgiveness.

JA0800

## A. Final SBA Loan Review Decision

On January 31, 2022, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan received.

In its decision, SBA has determined that the borrower was ineligible for the PPP loan amount. The reason(s) for SBA's decision is as follows: After a review of the documentation provided, the SBA concludes that there was a failure to respond to SBA's inquiry for request of additional required information. SBA has requested the 2019 aging report and clarification on what Services Income and Texas Fees are on Profit & Loss Statements, however no additional documentation was received. And SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. After reviewing the loan, it was identified that the borrower is primarily engaged in lending. Additional information was requested to further evaluate the borrower eligibility, however no additional documentation was received.

## A. Appeal

On March 1, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant argues Appellant's revenues related to three types of business activities: (1) Service Fees related to acting as a marketer, servicer, and collector for third-party lenders (i.e., Texas operations), (2) Lending Activity (i.e., non-Texas operations), and (3) other revenue related to marketing services and underwriting analytics services for third-party companies. For Appellant's Texas operations, Appellant is a licensed Credit Access Business ("CAB") pursuant to Chapter 393 of the Texas Finance Code. Pursuant to Chapter 393, a CAB is strictly prohibited from acting as a lender for any related consumer loans. Therefore, in Texas, Appellant only provides CAB services (non-lending services) to consumers for services related to marketing, servicing, and collection activities. All related loans in Texas are originated by a third-party lender, unrelated to Appellant. The revenue from the CAB service fees represents more than 50% of Appellant's total revenues in all relevant years (2019-2021). For Appellant's operations outside of Texas, Appellant is a direct lender to consumers. In these states, Appellant originates consumer loans, and all revenue earned in these states are from lender interest and fees. In all relevant years, Appellant's lending revenues are less than 50% of its total revenues. Appellant also has a small portion of revenue from marketing (i.e., lead sales) and underwriting analytics services. Appellant does not engage in any other business relating to life insurance, factoring, investment, bail bonds, or any other business whose stock in trade is money. During calendar years 2019, 2020, and 2021, Appellant's revenues were from the following sources:  2019 (%) 2020 (%) 2021 (%): Texas Operations (non-lending) $3,730,329 (49.11%) $7,181,168 (54.76%) $13,242,592 (66.96%). Non-Texas Operations (lending) $3,532,933 (46.51%) $5,406,299 (41.22%) $ 5,945,811 (30.06%). Marketing & Analytics Services $ 331,772 (4.36%) $ 526,505 (4.01%) $ 587,622 (2.97%). Totals $7,595,036 (100%) $13,113,974 (100%) $19,776,027 (100%).

JA0801

Appellant is arguing that it meets the limited circumstance under which certain businesses engaged in lending may be eligible pursuant to 13 CFR 120.110(b)(ii), which provides that a business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

III.    Discussion

A.  Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

B.  Analysis

Based on Appellant's revenues during 2019, 2020, and 2021, more than 50% of Appellant's revenues were from eligible business operations during each respective year, which is summarized as follows: 2019 2020 2021: Eligible Business Operations 53.47% 58.77% 69.93%. Ineligible Business Operations (Lending) 46.51% 41.22% 30.06%. Therefore, less than 50% of revenues were from lending activities. However, as discussed herein, Appellant does not meet the limited circumstance exception in which certain businesses engaged in lending may be eligible under the PPP.

To assist the SBA with its analysis, the SBA requested some additional information from Appellant. Appellant provided a response to the SBA, but it appears that the SBA never originally received the response. The following items were requested, along with Appellant's responses to each item:

A. 2019 Aging Report: The SBA asked how long Appellant holds loans before they are sold? (i) Texas Operations: In Texas, Appellant acts as a Credit Access Business, pursuant to Chapter 393 of the Texas Finance Code, which includes services related to marketing, servicing, and collections. Appellant is strictly prohibited from acting as a lender in Texas. Therefore, for any Texas operations, Appellant does not hold any loans before they are sold. (ii) Non-Texas Operations: For business activity outside of Texas, Appellant is the lender for all consumer loans. Appellant holds these loans for approximately 180 days after default before the loans are sold to a third- party collection firm. At that point, the loans are no longer held by Appellant.

B. Explanation of "Services Income" and "Texas Fees": Appellant uses the terms "Services Income" and "Texas Fees" in its financial statements. Below is an explanation of the revenue related to these terms. (i) Services Income: Appellant includes in Services Income revenue it receives from marketing services from selling consumer leads and underwriting analytics services. This service revenue is unrelated to any type of lending activity. Therefore, all revenue from Services Income is for eligible business activity. (ii) Texas Fees: The term Texas Fees is a reference to the non-lending fees earned by Appellant related to its Texas operations. In Texas, Appellant acts as a licensed Credit Access Business pursuant to Chapter 393 of the Texas Finance Code, which includes services related to marketing, servicing, and collections. The "Texas Fees" reference the CAB fees Appellant earns in Texas related to providing these services. Appellant is strictly prohibited from acting as a lender in Texas. Therefore, all of the Texas Fees are non-lending revenue.

C. NAICS Code: When Appellant first began operating in 2015, Appellant's management began using the NAICS Code 525990 (Other Financial Vehicles) on the company's federal income tax return.

As Appellant's business has evolved and changed over the last several years, the majority of Appellants business relates to brokering and servicing loans for third-party lenders, but the company never changed the NAICS Code in any tax filings. Over the last five years or so, the NAICS Code that better describes Appellant's business activity is NAICS Code 522310 (Nonmortgage Loan Brokers). Appellant is now using this NAICS Code to reflect its business activity. I find that the above additional information and documents in the Docket are all relevant and I admit them into the record.

The CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. The SBA has the regulatory authority to determine eligibility under the PPP. Businesses not eligible for program loans are identified in 13 CFR Section 120.110. This includes consumer lenders who are primarily engaged in lending, investments or ineligible businesses engaged in financing or factoring. At least three circuit courts (D.C. Circuit and 2nd and 11th Circuit) and several district courts have recognized that the PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. USF Fed.Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d1239 (11th Cir. 2020);Pharaohs GC, Inc. v. United States Small Business Administration, No. 20-2170, 990 F.3d 217 (2nd Cir.March 4, 2021); American Association of Political Consultants v. U.S. SBA, No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA, 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 6, 2020); see also United States SBA v. Vestavia Hills, Ltd., No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); Diocese of Rochester v. United States SBA, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020). The PPP was created by Congress as an additional program under SBA's 7(a) loan program and SBA, with authority from Congress, determined that financial businesses primarily engaged in the business of lending were ineligible for PPP loans. Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)). SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to: i. Banks; ii. Life Insurance Companies (but not independent agents); iii. Finance Companies; iv. Factoring Companies; v. Investment Companies; vi. Bail Bond Companies; vii. Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

JA0803

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows: i. A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans. ii. A  business that provides financing in the regular course of its business (such as  a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales. iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible. iv. A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing. v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do not use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

Appellant argues that based upon Appellant's revenues during 2019, 2020, and 2021, more than 50% of Appellant's revenues were from eligible business operations during each respective year, and less than 50% of revenues were from lending, which is summarized as follows: 2019 2020  2021 Eligible Business Operations 53.47% 58.77% 69.93%. Ineligible Business Operations (Lending) 46.51%41.22% 30.06%. Appellant argues that based on the SOP and the guidance provided by the SBA in these procedures, less than 50% of Appellant's revenue was from ineligible businesses (lending) for each of these years. Therefore, Appellant is "primarily engaged" in eligible business activities, and it is clearly eligible for the PPP Loan. This conclusion that Appellant is eligible for the PPP Loan is consistent with the examples listed in SOP 50 10 5(k), Subpart B, Chapter 2, Subchapter III(A)(2).

SBA submitted a response to the Appeal and argues that Appellant's interpretation of the limited circumstances in which certain businesses engaged in lending may be eligible is incorrect. The limited exception at issue reads "A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible provided less than 50% of its revenue is from financing its sales." SOP 50 10 5(K), Subpart B, Chapter 2 at 104. Examples of businesses that finance its own sales are jewelry stores, mattress stores, and pawn shops. Appellant clearly does not have the same business model as these businesses. Appellant does not finance its own sales, as all their income is from lending or CAB related fees. Thus, Appellant does not qualify for the limited exception discussed above. Since Appellant has significant lending revenue and does not qualify for any of the lender eligibility exceptions, Appellant was ineligible for the Loan. A key issue in this matter is whether less than 50% of Appellant's revenue is from financing its own sales and whether Appellant would thereby meet one of the exceptions in which certain businesses engaged in lending may be eligible. Here the Appellant does not finance its own sales as all of their income is either lending or CAB related fees. A credit access business (CAB) under Texas Finance Code Section 393.221(1) is "a credit services organization that obtains for a consumer or assists a consumer in obtaining an extension of consumer credit in the form of deferred presentment

transaction or a motor vehicle title loan". Therefore, Appellant does not finance its own sales, does not meet the exception in 13 CFR 120.110(b) (ii), and is therefore an ineligible business engaged in lending.

## C.  Conclusion

Appellant has not established that the final SBA loan review decision is based on a clear error. I **DENY** the appeal and **AFFIRM** the final SBA loan review decision. This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

*Michael Breton*

MICHAEL BRETON
Administrative Judge

JA0805

## United States Small Business Administration
## Office of Hearings and Appeals

PETITION FOR RECONSIDERATION

Essential Lending, Inc.

Petitioner

RE: PPP Appeal of
Essential Lending Inc.

SBA PPP Loan No.7089217104

Decided: August 9, 2022

Decision No. PFR-7089217104

### APPEARANCES

Jeffrey J. Hsu, Esq., Agency Representative, District of Columbia, for U.S. Small Business Administration.

Hurshell K. Brown Esq. for Appellant

### DECISION

I.    Introduction and Jurisdiction

On or about July 22, 2022, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a Petition For Reconsideration (PFR) in the above-captioned matter from Petitioner, Essential Lending, Inc.. The PFR seeks OHA's reconsideration pertaining to a Paycheck Protection Program (PPP) Loan No. 7089217104 and OHA's initial decision, denying the appeal of the same PPP Loan No.

OHA has jurisdiction to decide this PFR. *See* 13 C.F.R. Part 134, Subpart L. Petitioner's PFR was timely filed.

II.    Background

A.    Cares Act 2020

On March 25, 2020, in response to the economic distress caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, 134 Stat. 281 (2020).  Among other provisions, the CARES Act established the PPP at Section 1102.  The Program lends money to eligible small businesses to assist them in covering expenses and making payroll for their workers to keep them employed during the pandemic.  If the loan funds are used for certain specified expenses, the borrowers can receive full

1

JA0806

forgiveness of the loan.

    B.    <u>PPP Loan Application, Forgiveness, and Appeal</u>

On April 3, 2020, Essential Lending submitted an SBA Form 2483, Borrower Loan application (AR 1034).  On April 17, 2020, Origin Bank disbursed PPP loan #7089217104  (the loan) to Appellant in the amount of $191,700.00. On January 18, 2021, Essential Lending Inc.executed a PPP Loan Forgiveness Application Form 3508 requesting forgiveness for the full amount of the loan.  (AR 967).

On January 31, 2022. SBA issued a final SBA loan review decision, denying Essential Lending, Inc. forgiveness because it found Essential Lending was ineligible to receive a PPP loan.  SBA concluded the Borrower's business was ineligible because Borrower was a financial business primarily engaged in lending.

On March 1, 2022, Essential Lending Inc. filed an appeal with OHA.  On April 6, 2022, OHA issued a Notice and Order.  On April 7, 2022 SBA filed the Administrative Record (AR).  Essential Lending did not object to the record and the time to object expired. On May 20, 2022, the SBA filed its Response to the Appeal.

    C.    <u>OHA's Initial Decision</u>

On May 26, 2022, OHA denied Essential Lending's appeal.  Decision No. PPP 7089217104.  OHA determined that Essential Lending was an ineligible lender and did not meet the limited circumstances under which certain businesses engaged in lending may be eligible, such as a pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans. ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales. iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible. iv. A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing. v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do not use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

OHA determined that Appellant did not meet the limited circumstances above and therefore, was an ineligible business engaged in lending.

<div align="center">2</div>

JA0807

D.   Essential Lending's PFR

Essential Lending argues that the initial OHA Decision was in clear error of law and fact; and that Appellant was "primarily engaged" in "eligible business" activities, since more than 50% of Appellant's revenues are from eligible business operations.

III.   Analysis

The SBA was correct in its determination that Appellant was ineligible for the PPP loan and subsequent loan forgiveness. Appellant is ineligible because it is a financial business primarily engaged in lending. Appellant does not dispute that they are a lender, only that in Texas, their business activity is limited to the non-lending services of a licensed Credit Access Business ("CAB") (Appellant's Appeal Petition) However, Appellant confirms that in 2019, lending related revenue was $3,532,933 (46.51% of total revenue), and in 2020, Appellant had $5,406,299 of lending related revenue (41.22% of total revenue). *Id.* "SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, *or to an otherwise eligible business engaged in financing or factoring*. SOP 50 10 5(K), Subpart B, Chapter 2 at 104 (emphasis added). Both businesses primarily engaged in lending AND otherwise eligible businesses engaged in financing or factoring are ineligible. Appellant's lending related revenue is evidence that Appellant is a lender and a business engaged in financing or factoring. To be eligible for a PPP loan, Appellant would have had to qualify under one of the limited circumstances in which certain businesses engaged in lending may be eligible. Appellant argues that since 50% of its revenue was from an eligible business, Appellant was eligible. (Appellant's Appeal Petition) Appellant's interpretation of the limited circumstances in which certain businesses engaged in lending may be eligible is incorrect. "A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible provided less than 50% of its revenue is from financing its sales." SOP 50 10 5(K), Subpart B, Chapter 2 at 104. Examples of businesses that finance its own sales are jewelry stores, mattress stores, and pawn shops. Appellant does not have the same business model as these businesses. Appellant does not finance its own sales, as all their income is from lending or CAB related fees. Thus, Appellant does not qualify for the limited exception discussed above. Since Appellant has significant lending revenue and does not qualify for any of the lender eligibility exceptions, Appellant was ineligible for the Loan.

In its PFR, Petitioner argues that the other exceptions listed in SOP 50 10 5(K) should also be considered. It argues that its business is more analogous to that of a pawn shop or a check cashing business, since more than 50% of its revenue are from Service Fees, which do not include interest income from financing or lending operations. Since more than 50% of Petitioner's revenues are from eligible business operations and therefore, should be eligible for the PPP loan.

The Undersigned does not agree with the Petitioner's latest argument. The limited circumstances listed in SOP 50 10 5(K) are not met in the instant case and Petitioner is not one of the types of business listed in 13 CFR Section 120.110(b)(ii). The Petitioner does not have a business model similar to a check casher or a pawn shop. All of Petitioner's income is from lending or CAB related fees. Petitioner does not meet any of the exceptions listed in 13 CFR Section 120.110(b)(ii) and is therefore an ineligible business engaged in lending.

3

JA0808

## **Conclusion**

For the foregoing reasons, the Petitioner, Essential Lending Inc., has not met its burden of proof that the SBA's final determination that it was ineligible was based upon a clear error of law or fact, Therefore, the instant PFR is **DENIED**. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator elects to review this decision pursuant to 13 C.F.R. § 134.1211(c)(3) & (d), OHA's decision on the request for reconsideration is a reconsidered initial OHA decision and becomes the SBA's final decision 30 calendar days after its service. *See* 13 C.F.R. § 134.1211(c).

*Michael Breton*

_____
MICHAEL BRETON
Administrative Judge

4

JA0809

**United States Small Business Administration**
**Office of Hearings and Appeals**

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) |
| Essintial Enterprise Solutions, LLC | ) ) |
| Appellant | ) Docket No. PPP-1596507105 ) |
| Appealed from SBA PPP Loan Number 1596507105 | ) ) ) |

<u>**Objection to Order and Notice**</u>

    Appellant Essintial Enterprise Solutions, LLC, filing pro se, files this Objection to the OHA Order and Notice of December 27, 2021.

I.    Essential objects that the following documents were not included with the Administrative Record filed by the SBA and requests there inclusion:

    A. **Exhibit A** - Note from Berkshire Bank ("Lender") to SBA dated 6/14/2021 responding to Notice from SBA referenced on pages 933 and 934 of the Administrative Record. According to Lender this was uploaded onto the SBA forgiveness portal on 6/14/21.

    B. **Exhibit B** – Email note from Appellant to Lender dated 6/10/2021 responding to Notice from SBA. Also uploaded onto SBA forgiveness portal on 6/14/21.

    Essential contends that the above-referenced documents are relevant to this Appeal for the following reasons:

    Essintial relied on instructions provided by its SBA lender, Berkshire Bank ("Lender"), regarding the PPP loan application as well as PPP loan forgiveness. During the application process Essintial believes Lender was receiving regular updates from the SBA which updates were relayed to Appellant both verbally and in email form. Similarly with the forgiveness process, Appellant provided Lender with the requested information who in turn presumably uploaded documents onto SBA's forgiveness portal. These above documents evidence Essintial's compliance with the instructions and advice given by Lender.

1)    According to the SBA's Final Decision and other notes in the Administrative Record, Essintial did not respond to certain requests for information. Essintial is only aware of two requests of the SBA, each of which transmitted via our Lender. Essintial responded to each request by providing information to our Lender who uploaded said information onto the forgiveness portal.

    a.    Request 1 - On February 2, 2021 Essintial received an email from Lender with Notice of Paycheck Protection Program Loan Review

        i.    Essintial was asked by Lender to complete a Loan Necessity Questionnaire

        ii.    Essintial responded timely as instructed by Lender

**JA0810**

      This Order is not to be construed as a grant of appellant's motion to supplement the record, but rather is formal notice to SBA of the motion by the appellant to do so.  Accordingly, SBA must certify by **February 18, 2022**, whether or not the AR and the Supplemental AR is now complete and accurate. I will then rule on the appellant's motion to supplement the record.

      The close of the record is extended as of this date to permit the reply by SBA.

*Clifford Sturek*

CLIFFORD STUREK
Administrative Judge

## UNITED STATES SMALL BUSINESS ADMINISTRATON
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Essintial Enterprise Solutions, LLC
     Appellant

Appealed from
SBA PPP Loan No. 1596507105

Issued:  May 10, 2022

Docket No. PPP-1596507105

### APPEARANCES

For the Appellant:  Robert Kolb, President and CEO

For the Small Business Administration:  Anthony Arroyo, Esq., Office of General Counsel

### DECISION

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision finding the Appellant, Essintial Enterprise Solutions, LLC, ineligible for full forgiveness of its PPP loan of $7,028,000.00 but did forgive $3,703,011.60 of the original loan amount. The amount unforgiven is $3,324,988.40.

Appellant timely filed an appeal from the Final SBA Loan Review Decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it and find that Appellant is eligible for the full amount of PPP loan forgiveness requested.

After carefully considering the evidence and arguments presented in the Updated Administrative Record (UAR) and the Updated Supplemental Administrative Record (USAR), and for the reasons discussed herein, I find that Appellant's appeal does not show that the Final SBA Loan Review Decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

### I.    JURISDICTION

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic

1

JA0812

downturn. Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)). Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1). One month later, Congress increased this figure to $659 billion. Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress placed the Program under Section 7(a) of the Small Business Act,[1] making the Small Business Administration (SBA) the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 USC § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. *In Re Gateway Radiology Consultants, P.A.* 983 F.3d 1239, 1248 (2020) (11th Cir.). Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title," and SBA implemented and issued several interim final rules under the Program. CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 USC § 9012)

PPP Loan Eligibility:

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating a "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and (D).

However, not all such businesses are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B)

Ineligible types of businesses are identified in 13 CFR § 120.110. These ineligible businesses include, for example, non-profit businesses; financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally-assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records,

---

[1] Small Business Act, 15 USC §631 et. Seq.

2

making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G).

PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 USC § 636(a)(36)(A)(viii)(II).

Regarding PPP loan forgiveness, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m.

Application for, and receipt of, a PPP loan is a wholly separate process from the application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is, applicable to non-PPP loans) with limitations specified for PPP loans.

The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). *In Re Gateway* at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

<u>PPP Loan Forgiveness Denial and Appeal:</u>

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision, and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The Final SBA Loan Review Decision will show how the forgiveness denial was based:

3

JA0814

Because the borrower:
    1. Was ineligible for a PPP loan;
    2. Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
    3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; or
    4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA. 13 CFR §134.1201(b).

These denial bases may be stated in different terms. A forgiveness denial may occur because:

1. The borrower was ineligible to have obtained the loan (and thus, because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or

2. The borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or

3. The lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some or all of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or

4. The lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

## 15 U.S. Code § 636 - Additional powers

**(a) LOANS TO SMALL BUSINESS CONCERNS; ALLOWABLE PURPOSES; QUALIFIED BUSINESS; RESTRICTIONS AND LIMITATIONS**

The Administration is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans for plant acquisition, construction, conversion, or expansion, including the acquisition of land, material, supplies, equipment, and working capital, and to make loans to any qualified small business concern, including those owned by qualified Indian tribes, for purposes of this chapter. Such financings may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis. These powers shall be subject, however, to the following restrictions, limitations, and provisions:

**(36) PAYCHECK PROTECTION PROGRAM.—**

    **(D)** Increased eligibility for certain small businesses and organizations.—

    **(v)** Employee.—

For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title employs not more than 500 employees under clause (i)(I), or for purposes of determining the number of employees of a housing cooperative or a business concern or organization made eligible for a loan under this paragraph under subclause (II), (III), or (IV) of clause (iii), subclause (IV) or (V) of clause (iv), clause (vii), or clause (ix), the term "employee" includes individuals employed on a full-time, part-time, or other basis.

4

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L. However, for OHA and its judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision. 13 CFR §134.1201(a) -- (c).

The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans. To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov. 13 CFR §134.1202(a).

<u>Authority of an SBA OHA Judge:</u>

The undersigned is a former federal government Administrative Law Judge (ALJ) who retired from that civil service position. After retirement I was hired as a "rehired annuitant" employed by the SBA as an Administrative Judge.

An Administrative Judge has authority no greater than that of an ALJ. The authority of an ALJ is limited.

An ALJ has no constitutionally- based judicial power (see *Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 132-33 (1953)), but are employees of the executive branch department or agency employing them. See e.g., 20 USC § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education which provides that ALJs "shall be officers or employees of the Department").

As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. See *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir.), cert, denied, 493 U.S. 813 (1989); *Mullen v. Bowen*, 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services*, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); *Goodman v. Svahn*, 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc. v. Heckler*, 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico Docket No. PPP - 8813887102 - 5 - v. Schweiker*, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case.

I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

## II.  Loan History and Development of the Record

JA0816

The Appellant applied for a PPP loan on April 4, 2020, using SBA Form 2483. It reported 359 employees and certified that it was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC. UAR at 413-416.

On April 20, 2020, a lender, Berkshire Bank, disbursed an SBA-guaranteed PPP loan to the Appellant in the amount of $ 7,028,000.00. UAR at 409.

On or about January 5, 2021, the Appellant filed an application for full loan forgiveness of $7,028,000.00. UAR at 417-421. The forgiveness amount requested by the Lender was the same amount as the Appellant had requested. UAR at 432.

The SBA initially approved the Appellant's application for forgiveness only in the amount of $3,469,174.00.  UAR at 18-19 and 376.

A Final SBA Loan Review Decision was issued by the SBA's Office of Capital Access, but was not dated (Dkt. No. 2[2]: UAR at 18-19). It was received by the Appellant on October 7, 2021. Dkt. No. 4.[3]

On November 8, 2021, the Appellant timely appealed SBA's original forgiveness amount of $3,469,174.00, contending that the balance at the time of $3,558,826.00 of the full loan amount of $7,028,000.00 should be forgiven, and alleging that SBA had made a clear error of fact or law. Dkt. No.1.

Following issuance of my Notice and Order on December 27, 2021, (Dkt. No. 5) and a Consent Motion for Extension of Time for Filing the AR (Dkt. No. 6), the original UA and SAR were filed on January 19, 2021 (Dkt. Nos. 7-8). I extended the date for closing the record in my Order of January 21, 2022, so that SBA could amend the Table of Contents to include the documents in the SAR. Dkt. No. 9.

A series of Consent and other Motions and of Orders were filed thereafter (Dkt. Nos. 10-18), resulting in an additional amount of $233,837.60 of the original loan amount being forgiven by SBA. UAR at 377.  The UAR and USAR were filed on March 15, 2022. Dkt Nos. 19 and 20.

Motions and Orders issued thereafter led to extensions of time for filing objections to the UAR and USAR by the Appellant, and a response to the appeal by SBA. Dkt Nos. 21-23. The Appellant filed an "Amended and Restated Appeal" on April 1, 2022 (Dkt. No. 24), and SBA filed its "Response to the Appeal on April 15, 2022 (Dkt. No. 25).  The record was closed on April 16, 2022.

### III.    Timeliness and Standing

---

[2] Dkt. No. refers to the order in which documents are filed in the OHA Case Portal.
[3] The Appellant clarified the date it received the Final SBA Loan Review Decision in relation to the date it filed its Appeal, in response to my Order to Show Cause of December 21, 2021 (Dkt. No. 3).

JA0817

An appeal of a Final SBA Loan Review Decision must be initiated (on the OHA Case Portal [hereinafter the Portal]) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR §134.1202(a). I find that the appeal herein was timely filed.

Only the borrower on a PPP loan for which SBA has issued a final loan review decision has standing to appeal that decision. 13 CFR § 134.1203. The Final SBA Loan Review Decision was issued to the Appellant, and Robert Kolb, its President and CEO, and the person who applied for the loan and forgiveness of the loan, and signed the appeal petition submitted in the Portal on behalf of the Appellant.   Accordingly, I find that there is proper standing for filing the appeal.

## IV.    Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the Administrative Record, the appeal petition, any response, reply or supplemental pleading, and filings related to objections to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal, as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a).

The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 CFR §134.1210.

## V.    The Final SBA Loan Review Decision

In the Final SBA Loan Review Decision it was stated:

> SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason for SBA's decision is as follows:
>
> After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount.
>
> When reviewing the lenders Documentation provided, it is noted that the lender included compensation to independent contractors which cannot be substantiated as an eligible payroll, via the documentation provided.
>
> Gross taxable wages in the amount of $14,764,232 were confirmed with the payroll report submitted. $365,007 were verified in gross pay in excess of $100,000. Employer contributions to health insurance totaled $1,896,223. Additionally, $365,007 in the state unemployment taxes [SUTA] were verified.
>
> The 2019 total payroll cost equals $16,652,036 producing a maximum eligible loan of $3,469,174, which is 2.5 times the average monthly payroll. Additional

7

JA0818

information was requested to further evaluate the borrower eligibility; however, no additional documentation was received.

Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $3,469,174.00 is appropriate.

Dkt. No. 2; UAR at 18-19.

The Office of Capital Access of SBA reviewed additional records now in the Portal and determined on February 16, 2022, that the Appellant was eligible for a loan amount of $3,703,011,60 based on the following analysis:

Trailing March 2019 – February 2020 wages of $14,764,232.20; excess [of wages over $100,00] $365,007.30; SUTA $356,588.08; benefits $1,099,571.49; group health $1,919,071.23; total payroll $17,774,455.70 producing a max loan of $3,703,011.60. The borrower included 1099 wages in the original calculation, which are ineligible costs for the program.

UAR at 14.

A Notice of PPP Reconciliation Payment on February 22, 2022, [based on the SBA calculations of February 16, 2022] documents that additional loan forgiveness of $233,837.60 had been approved. UAR at 377.[4]

## VI.  Appeal

In its appeal petition of November 6, 2021, the Appellant, through its President and Chief Executive Officer, Robert Kolb, argued as follows, in pertinent part:

Essintial's payroll calculation takes into consideration the seasonality of its workforce (due to retail and project nature of its business). Just prior to COVID (January and February 2020) its W'2 gross wages were greater than the average of 2019 due to certain contracts and projects that had recently begun. It needed to use this higher calculation so that it could maintain the requisite headcount to support the business and satisfy PPP requirements of maintaining pre-covid payroll.

It also included independent contractors (IC's) in the payroll calculation, relying on guidance from its lender and information that was publicly available at the time in preparing its PPP application, including the inclusion of IC costs as part of payroll costs. The PPP application was vague, the relevant guidance from the Treasury and the SBA did not restrict or prohibit using IC's, and its application was approved and processed by Berkshire Bank.

---

[4] The total amount of the reconciliation payment to the lender included $3,427.48 in interest. Dkt. No. 24, Exhibit I. at

8

In outline form its payroll calculation, compared to SBA's, was as follows:

|  | Essintial | SBA | Difference |
|---|---|---|---|
| Gross pay: | $3,717,886 | $2,998,085 | $719, 801 |
| SUTA | $226,273 | $76,043 | $150,230 |
| IC's (didn't apply for PPP) | $2,215,040 | $0 | $2,215,040 |
| IC's (uncertain if applied for PPP) | $420,403 | $0 | $420,403 |
| Health costs | $449,198 | $395,046 | $54,151 |
|  | $7,028,800 | $3,469,174 | $3,559,626 |

Full loan forgiveness of $7,028,800 is justified because that amount was requested in good faith. All of the proceeds of the PPP loan were exhausted on allowable and forgivable expenses, and it followed the requirements during the entire forgiveness period.

Dkt. No. 1.

In its Amended and Restated Appeal of April 1, 2022, objecting to the UAR and USAR, the Appellant reiterated its original argument noted above, emphasizing the following, in pertinent part:

Essintial followed guidance and instruction that was provided by its lender Berkshire Bank ("Lender") and that was publicly available at the time of its PPP application. Essintial spent all Loan proceeds on allowable and forgivable expenses consistent with its understanding at the time of application and followed SBA requirements during the entire forgiveness period.

Appellant is seeking full forgiveness of the $7,028,800 PPP loan as it followed existing guidance, instruction, and law at all times during the application process and throughout the forgiveness period.

SBA filed a Revised Administrative Record on March 15, 2022. The Revised Administrative Record includes new documents that were not included in the Administrative Record previously filed on January 19, 2022. Many, if not most, of these documents appear to have no relevance to the issues raised by this Appeal. Other documents contradict the Lender's request for full forgiveness **(Exhibit H, line 6),** which the Lender recently (within the last week) has refuted and communicated to Appellant. Appellant is confident the Lender will attest that it has not changed its request to anything other than full forgiveness as reflected in the Administrative Record.

The Revised Administrative Record does include a Notice of

9

Paycheck Protection Program Reconciliation Payment letter which appears to increase the forgiveness amount paid to the Lender (RAR page 377). Independent of the Revised Administrative Record, Appellant has not been provided a copy of this Notice.

However as recently as March 30, 2022, Appellant received a notice from Lender **(Exhibit** I) stating that the SBA did not approve forgiveness of our loan in full "as there was an EIDL Advance Amount that was taken into consideration." The SBA's claim that Essintial is the recipient of an Economic Injury Disaster Loan ("EIDL") is a false claim as Essintial has never applied for, let alone received any EIDL Loans or Advances.[5]

The Revised Administrative Record does not include a Revised Final Decision and Appellant has not been provided a Revised Final Decision. Appellant is filing this Amended and Restated Appeal to reiterate that it is entitled to full forgiveness of its PPP Loan, and that nothing in the Revised Administrative Record aids the OHA in ruling in this Appeal.

As explained in the Appeal and reiterated below, Appellant contends the SBA improperly determined that Essintial was ineligible in the first instance to receive a PPP loan in the requested and borrowed amount of $7,028,800. Essintial's application for the Loan was prepared, submitted, and approved prior to the release of more specific guidance from the SBA and the Treasury Department, which guidance contradicted and/or qualified guidance and direction provided by the Lender and in effect at the time of application.

Essintial's application fully disclosed that its loan amount calculation included amounts paid to independent contractors (i.e., IRS 1099-MISC). The Lender and the SBA approved the Loan with full knowledge as to how it was calculated. Yet, notwithstanding Essintial's reliance on the Lender's advice and guidance as well as SBA approval, the SBA now takes a revisionary and retroactive interpretation of the rules applicable at the time of Essintial's PPP Loan application. As a result, the very program that was intended to keep Essintial in business during the height of the COVID-19 pandemic could very well cause more harm than good.

As discussed, had Essintial been clairvoyant enough to discern how the SBA might later interpret Loan amount eligibility, it would not have sought the size Loan it pursued. It would also would not have employed the number of people it did employ during this period. Accordingly, Essintial appeals the SBA's decision as improper and inconsistent with the terms of the PPP program which existed at

---

[5] **This has also been refuted by SBA in its response to the appeal set out below and is included herein only to emphasize that the lender's assertion that there was such a loan has been fully refuted by all parties to this appeal.**

JA0821

the time of Essintial's application and loan approval.

Essintial's payroll calculation in its PPP application (summarized in **Exhibit B**)[6] took into consideration the seasonality of its workforce (due to retail and project nature of Essintial's business). Essintial provides technical support, installation projects and staffing solutions to customers in the airport, retail, hotel, and restaurant industries. These were industries especially effected by the various Covid pandemic shutdown orders.

Essintial included all workers when calculating payroll (Essential doesn't differentiate skill sets of W2's vs ICs). ICs are included in Essintial's payroll calculation as they are a critical part of Essintial's workforce and necessary to support various contracts and projects. Essintial referred to guidance from the Lender as well as other publicly available information at the time Essintial were preparing its application, which clearly indicated to include all payroll (regardless of designation). Also, during the process Essintial took steps to validate that the ICs in its payroll calculation did not receive their own PPP proceeds.

Essintial determined that 82% of the ICs did not apply for their own PPP funds, while 7% of ICs did receive PPP and 11% were not able to be verified.

In conclusion, Essintial sought full forgiveness of its $7,028,800 PPP Loan as consistent with its application, the Lender's approval as well as the law and regulations known to Essintial and other borrowers at the time. Essintial would have not applied for or spent the $7,028,800 in Loan proceeds but for the Lender's guidance and SBA guidelines outlining the requirements to receive full forgiveness.

The SBA's decision to not fully forgive Essintial's PPP Loan was not only improper but has put Essintial at a level of economic stress that is counterintuitive to the entire PPP program objectives. The Loan funds have already been spent on wage and compensation cosls. Essintial is not able to ask its employees and other workers to pay back wages in order to pay off the PPP Loan balance.

Essintial acted in good faith by both calculating the costs of its workers (W2's and ICs) and using the PPP Loan proceeds as outlined by the program. In sum, Essintial used the funds as Congress intended, i.e., it kept workers employed throughout the extended loan period, and mitigated the U.S. Government's unemployment benefits liability. This is not a situation where Essintial represented that it spent the funds after receipt in a manner that it did not disclose to the SBA in its application. Rather it did exactly what it said it would do, and exactly as advised by

---

[6] The calculations referred to are those set out in full above in the Appellant's appeal in Dkt. No. 1, page 5, and in Dkt. No. 24, page 11, with no period identified, but the Appellant listed amounts based on a period of two months through February 28, 2020, in calculating its PPP loan amount of $7.028,000 (see Dkt. No. 24, Exhibit F)

11

JA0822

its Lender.

Dkt. No. 24, including Exhibits A -I.

SBA's response to the appeal is as follows, set out in pertinent part[7]:

> During the Appeal, SBA re-reviewed the October 7, 2021, forgiveness determination and issued a Notice of Paycheck Protection Program Reconciliation on February 22, 2022. (UAR 377).
>
> The Reconciliation Payment Notice along with SBA's 2022 re-review notes cited above were included in the Updated Administrative Record that was filed on March 15, 2022. (UAR 14, 377).
>
> In its Appeal, Appellant primarily argues as follows:
>
>> (1) Applicant followed existing guidance and law in calculating monthly payroll at the time of application;
>>
>> (2) Available guidance was unclear as to whether funds paid to 1099 Independent Contractors could be included;
>>
>> (3) The Lender and SBA reviewed my PPP application and payroll, and approved the loan;
>>
>> (4) The funds were used for eligible purposes; (5) Alternative maximum loan Amount calculations available to "seasonal employers" or businesses not in business from February 15, 2019 to June 30, 2019 apply to Appellant.
>
> However,
>
>> (1) OHA is bound by SBA's regulation and its interpretation of the CARES Act;
>>
>> OHA has recognized the limited scope of its authority and has repeatedly held that it "is not the proper forum for a challenge to the validity of a regulation." Matter of Cognitive Professional Services, Inc., Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. See 13 C.F.R. § 134.102."); accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc., SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); Nations Incorporated, Appellant re: Technical and Management Services Corporation, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated

---

[7] SBA states that the reference by the lender to an EIDL advance to the Appellant appears to be in error (Dkt. No. 25, footnote 3 on page 3).

12

JA0823

authority."); International Ordinance, Inc., Appellant, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.").

(2) pursuant to the SBA's Interim Final Rule, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020) ("First IFR"), independent contractors do not count as employees, resulting in those payroll costs not being eligible for PPP funds;

SBA's interpretation of the CARES Act and First IFR are not clear error of law. Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. SBA's policy of declining to count independent contractors as employees is wholly consistent with the CARES Act and its aims. The CARES Act, effective March 27, 2020, specifically section 1102 (a)(2)(36)(A)(viii)(I)(aa), defines "Payroll Costs" as "the sum of payments of any compensation with respect to employees". Based on this language, independent contractors could not be included as employees but were able to obtain their own PPP loan. This is evident in section 1102 (a)(2)(36)(A)(viii)(I)(bb) of the CARES Act which continues with "the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self‐employment" to clarify independent contractors were able to obtain their own PPP loan.

(3) independent contractors do not count as employees for purposes of loan forgiveness;

Appellant does not dispute that it uses independent contractors and that pay is documented by Form 1099s. See "Amended and Restated Appeal" filed on April 1, 2022 & "Appeal" filed on November 8, 2021. As set forth in Section III.2.P. of the First IFR, independent contractors do not count as employees for purposes of forgiveness:

P. DO INDEPENDENT CONTRACTORS COUNT AS EMPLOYEES FOR PURPOSES OF PPP LOAN FORGIVENESS? No, independent contractors have the ability to apply for a PPP loan on their own, so they do not count for purposes of a borrower's PPP loan forgiveness. Fed. Reg. Vol. 85 No. 73 at 20811, 20813 (April 15, 2020). Thus, there is nothing indicating that SBA erred in its determination that

13

Appellant had 1099 payroll that was not eligible for loan forgiveness. While it is unfortunate Appellant expressed confusion as to the exclusion of 1099 payroll, the fact of the matter is the First IFR was posted on SBA's website on April 2, 2020, and this IFR clearly stated in no uncertain terms that independent contractors did not count as employees for purposes of loan forgiveness. Based on the foregoing, SBA's final loan decision should be affirmed.

(4) Appellant and Lender incorrectly calculated the loan amount at origination, and how the funds were used is immaterial when as a threshold it was ineligible to receive a portion of those funds;

Applying SBA's interpretation of the CARES Act and the First IFR, Appellant is ineligible for PPP loan forgiveness as to those payroll costs paid to 1099 employees. As stated above, SBA concluded that Appellant was ineligible for forgiveness of the entire loan amount because the loan calculation at origination included 1099 wages. (UAR 18, UAR 14- reviewer note from February 18, 2022).

As argued above, SBA's eligibility rules have applied to the PPP loan program since the program's inception. The CARES Act and SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

(5) the alternative maximum loan amount calculations for new businesses and seasonal employers do not apply to Appellant.

While not clear from the Appeal, it does appear that Appellant is claiming that it should be able to use alternative forgiveness calculations available to PPP borrowers who qualified under rules meant for either seasonal employers, or for those businesses not in business between February 15, 2019 and June 30, 2019. See Page 9, Paragraph 4(b) of the "Amended and Restated Appeal" filed April 1, 2022. Specifically, Appellant appears to be claiming that their forgiveness calculation should

14

be based on wages, unemployment tax and healthcare costs from either (a) the period between January and February 2020, or (b) the first quarter of 2020. See Id.

Included in the CARES Act section regarding the calculation of the "Maximum Loan Amount" is the following:

> (E) Maximum loan amount.—Except as provided in subparagraph (V), during the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of— (i)

> (I) the sum of— (aa) the product obtained by multiplying— (AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made, except that an applicant that is a seasonal employer shall use the average total monthly payments for payroll for any 12-week period selected by the seasonal employer between February 15, 2019, and February 15, 2020; by (BB) 2.5; and (bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available to be refinanced under the covered loan; or

> (II) if requested by an otherwise eligible recipient that was not in business during the period beginning on February 15, 2019 and ending on June 30, 2019, the sum of— (aa) the product obtained by multiplying—

> (AA) the average total monthly payments by the applicant for payroll costs incurred during the period beginning on January 1, 2020, and ending on February 29, 2020; by

> (BB) 2.5; and

> (bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020, and ending on the date on which covered loans are made available to be refinanced under the covered loan; or

> (ii) $10,000,000.

> 15 U.S.C. § 636(a)(36)(E)

The Appellant has not demonstrated that it was a seasonal employer. Therefore, it was not entitled to use its payroll from any 12-week period between February 15, 2019, and February 15, 2020, to calculate its maximum loan amount.

Therefore, OHA should affirm the SBA decision.

Dkt. No. 25.

15

JA0826

## VII.  Discussion and Analysis

As set out above under **I. JURISDICTION**, Authority of an SBA OHA Judge, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case.

As applicable to this case, I have to determine what, if any, SBA regulation or policy was in effect at the time of the Appellant's PPP loan application on April 4, 2020, which resolves the issue of whether payments to independent contractors were permissible expenses of the Appellant in determining the applicable loan amount.

The version of Form 2483[8] the Appellant used in applying for the loan is 04-20. It described itself on the form as a "C-Corp," but its "business legal name" was stated as Essintial Enterprise Solutions, LLC. It contends, in effect, that there was no clear guidance it was aware of that precluded it at that time from including payments to independent contractors in computing its PPP loan amount.  Review of the form shows that the instructions for completion of the form include the following guidance:

> With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; **and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation** [emphasis added].

Were independent contractors then intended to be included as "employees," it would seem to be unnecessary to include the text I highlighted above in bold to include them in the calculation of the PPP loan amount.

While the Appellant argues further that the exclusion of independent contractors in computing PPP loans didn't occur until April 15, 2020, when the First Interim Final Rule was enacted, it would be expected that the instructions to Form 2483 and the form itself would have been modified to reflect that independent contractors are no longer to be counted as "employees" in calculating the loan amount. However, there was no such change when the next version of the form was issued on June 20, 2020. The instructions for completing the forms are the same in

---

[8]  The version of the form used by Appellant (04/20) is found in the UAR at 414-416, and includes the instructions on page 3 for completing the form.  Form 2483 was revised on June 12, 2020. A copy of both versions of the form, including the instructions for completing the form, can be downloaded at https://www.sba.gov/document/sba-form-2483-ppp-first draw-borrower-application forms.  Version 1 was effective 4/2/2020; Version 2 was effective 6/12/2020.

16

JA0827

Docket No. PPP-1596507105

both versions (see footnote 8).

However, more analysis is needed than simply comparing the version of the borrower application used by the Appellant to the one which replaced it.

Section 1114, Emergency Rulemaking Authority, was part of the first version of the CARES Act which was enacted on March 27, 2020. It stated that:

> Not later than 15 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code.

On April 2, 2020, SBA posted its first PPP Interim Final Rule (IFR) (85 FR 20811) on SBA and Department of the Treasury websites. It poses and answers a number of questions regarding PPP loans. Pertinent to this appeal is the following:

> p. Do independent contractors count as employees for purposes of PPP loan forgiveness? No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan forgiveness.

The Appellant argues because that rule did not become effective until after its PPP loan application was filed on April 4, 2020, it is not determinative of this appeal. While the first IFR became effective on April 15, 2020, notice of its pending effective date was posted on April 2, 2020. The loan was not disbursed by the lender until April 20, 2022 (UAR at 409).

However, that rule merely clarified how independent contractors were to be treated in calculating PPP loan amounts. As I noted above, neither the loan application form itself nor the instructions for filing it changed after the first IFR became effective, indicating that SBA's policy had not changed regarding the exclusion of independent contractors in determining countable payroll costs. Pertinent instructions for completing both versions of the form are set out above (see page 16). SBA acted, consistent with the authority granted it by the CARES Act, to create and employ the version of the loan application form which Appellant used in applying for its PPP loan.

I conclude that the Appellant's expenses related to utilizing independent contractors are not countable in determining the amount of its PPP loan.

The Appellant also argues, in effect, that the nature of its business permits it to use a forgiveness rule intended for an entity not in business between February 15, 2019, and June 30, 2019, or for seasonal employers. However, there is no valid basis for either argument.

As to the first argument, the Appellant admitted in its appeal that it met one of the qualifications for a PPP loan because "it had less than $5 million of net income during the two fiscal years (2018 and 2019) prior to the PPP application." Dkt. No. 1, page 2. See also copies of commercial leases dating as far back as 2010, as well as in 2019. UAR at 75-124.

17

JA0828

As to the second argument, IRS Form 941 for each quarter of 2019 shows the following:

1st Quarter: 376 employees; wages of over $3.2 million
2nd Quarter: 359 employees; wages of over $2.8 million
3rd Quarter: 333 employees; wages of over $3.2 million
4th Quarter: 385 employees; wages of over $3.4 million

UAR at 125-136.

It is clear from the Appellant's tax records that there was no significant variation in either the number of employees or wages throughout the year 2019. The following definition is illustrative:

"Seasonal employer" means an employer, other than an employer in the construction industry, who applies to the unemployment agency for designation as a seasonal employer and who the unemployment agency determines is an employer whose operations and business require employees engaged in seasonal employment. www.lawinsider.com/dictionary/seasonal-employer

There is nothing in the record before me which establishes that the Appellant's business meets that definition. The Appellant has the burden of proving all elements of its appeal (13 CFR § 134.1210) but has failed to do so as to its assertion that it qualifies as a seasonal business.

I have reviewed the documents which the SBA referenced in determining that the Appellant is only entitled to a PPP loan of $3,703,011.60 and forgiveness of that amount. I find that the calculations accurately reflect the allowable amount of the PPP loan. Therefore, forgiveness of more than the amount calculated by SBA, $3,703,011.60, is not warranted.

The Appellant's argument regarding the AR and SAR, and updated versions thereof containing irrelevant documents is noted, but the record before me is intended to include non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision. The Administrative Record need not, however, contain all documents pertaining to the appellant. 13 CFR §134.1207(b).

The Appellant's attention is also directed to the comments regarding a purported EIDL loan advance to the Appellant, as reported by its lender. That assertion has no validity (see footnote 5 on page 11).

### VII. Conclusion

The Appellant, Essintial Enterprise Solutions, LLC, has not shown that the SBA committed a clear error of fact or law.

Therefore, the **APPEAL IS DENIED**, and the Final SBA Loan Review Decision is **AFFIRMED**.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 CFR §134.1211(c), or unless the SBA Administrator elects to review this decision, per 13 CFR §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 CFR §134.1211(b).

In accordance with the regulations, a petition for reconsideration may be made within 10 calendar days after service of a Judge's decision under 13 CFR §134.1211(c)(1). The petition for reconsideration must clearly show an error of fact or law material to the decision.

A petition for reconsideration may be filed via email to OHAPPPinquiries@sba.gov. It is the borrower's responsibility to review the rules and procedures.

*Clifford Sturek*

CLIFFORD STUREK
Administrative Judge

19

JA0830

United States Small Business Administration
Office of Hearings and Appeals

> **EXHIBIT F**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

1st Financial Services of MS, Inc. (also known
as 1st Financial Services of Mississippi, Inc.)

     Appellant

Appealed from
SBA PPP Loan No.
7978367005

DECISION

Issued: March 9, 2022

Docket No. PPP - 7978367005

## APPEARANCES

*For Appellant*
C. Richard Dobbins, Borrower/Appellant, 725 E Shiloh Rd., Corinth, MS, 38834

*For the Small Business Administration*
Nickolas Wilson, Esq., Office of General Counsel, U.S. Small Business Administration, Washington, D.C.

## DECISION

The U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision finding Appellant ineligible for the full PPP loan forgiveness of $120,728.70. Appellant filed the instant appeal from that Final SBA Loan Review Decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested. After carefully considering the evidence and arguments presented in the Administrative Record, for the reasons discussed herein, I find that Appellant's appeal does not show the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

### I.  CARES Act , PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn. Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)). Congress first authorized $349 billion

JA0831

in loans.  CARES Act § 1102(b)(1).  One month later, Congress increased this figure to $659 billion.  Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress placed the Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program.  See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)).  Section 7(a) loans are the SBA's main program for helping small businesses.  *In Re Gateway Radiology Consultants, P.A.*  983 F.3d 1239, 1248 (2020) (11th Cir.).  Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program.  CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012)

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them.  See 15 USC § 636(a)(36)(D)(I).  The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees.  15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans.  The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."  15 USC § 636(a)(36)(B)  Ineligible types of businesses are identified in 13 CFR § 120.110.  These ineligible businesses include, for example, non-profit businesses; financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan.  13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan.  Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA.  13 CFR §103.2(b).  Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.  Executive Order 12549, 13 CFR part 145.  Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan.  SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

- 2 -

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G)  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

*PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan.  See 15 USC § 636m.  Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan.  Loan forgiveness is provided for under a different, but related, statutory provision.  See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans.  The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses.  Generally, the amount of the loan that is forgiven is the amount used to pay those costs.  But the bulk of the funds, at least 60 percent, must be spent on payroll.  15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)].  Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable.  For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven.  See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII).  *Gateway* at 1247.  Only an eligible recipient of a PPP loan may receive loan forgiveness.  15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds.  The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any.  15 USC §636m (e), (f) and (g).  Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness.  The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1.  Was ineligible for a PPP loan;

2.  Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;

3.  Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; or

- 3 -

    4.  Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

I note that these denial bases may be stated on different terms.  Thus, forgiveness denial may be because

    1.  the borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or

    2.  the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or

    3.  the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some or all of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or

    4.  that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L.  However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision.  13 CFR §134.1201(a) -- (c).  The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans.  To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov.  13 CFR §134.1202(a).

*Authority of an SBA OHA Judge*

The undersigned is a former federal government Administrative Law Judge (ALJ) who retired from that civil service position.  After retirement I was hired as a "rehired annuitant" employed by the SBA as an Administrative Judge.  An Administrative Judge has authority no greater than that of an Administrative Law Judge.  The authority of such a judge is limited.

An Administrative Law Judge (ALJ) has no constitutionally based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them.  *See e.g.,* 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department").  As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules.  *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department o f Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association o f Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

- 4 -

Thus, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

## II. Loan History

On or about April 3, 2020, Appellant applied for a PPP loan. (AR 98-99) On April 21, 2020, a lender financial institution disbursed an SBA guaranteed PPP loan to Appellant in the amount of $120,728.70. (AR 102) Appellant filed for forgiveness of the full amount of the loan on November 4, 2020. (AR 102-103) The forgiveness amount requested by the Lender was the same amount of $120,728.70 as the Appellant had requested. The SBA approved Appellant's application for forgiveness in the amount of $0.00, thus wholly denying the application for forgiveness. A Final SBA Loan Review Decision was issued by the SBA's Office of Capital Access dated October 22, 2021. (AR 10-11) The Final SBA Loan Review Decision was received by Appellant on November 17, 2021. (OHA Case Portal)

Appellant appealed SBA's forgiveness amount contending that the balance of $120,728.70 should be forgiven, alleging that SBA has made a clear error of fact or law.

## III. Timeliness and Standing

An appeal of a Final SBA Loan Review Decision must be initiated (on the Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR §134.1202(a). In this case the Final SBA Loan Review Decision (AR 10) was issued on October 22, 2021 (to the lender) and was reported as received by Appellant on October 24, 2021. The appeal was filed by initiation on the Portal on November 17, 2021, which is within the 30-day time requirement. Since the appeal was initiated within 30 days of both the issuance and the receipt of the Final SBA Loan Review Decision, the appeal is considered timely.

Only the borrower on a loan, or its legal successor in interest, for which SBA has issued a final SBA loan review decision has standing to appeal the final SBA loan review decision to OHA. 13 CFR §134.1203. A party may represent itself, or be represented by an attorney. A partner may represent a partnership; a member may represent a limited liability company; and an officer may represent a corporation, trust, association, or other entity. 13 CFR §134.208.

In this case the promissory note shows that the borrower is 1st Family Financial Services, Inc. Appellant reports (AR 12) that the note has a clerical error, in that the word "Family" should not appear as part of the name of the borrower. Thus, the borrower appears to be 1st Financial Services, Inc. and this is apparently a reference to 1st Financial Services of Mississippi, Inc. (AR 60). The Final SBA Loan Review Decision was issued to 1st Financial Services of MS, Inc. The Appellant is 1st Financial Services of MS, Inc. Corporation records for the State of Mississippi show John I. Brasher as President of 1st Financial Services of Mississippi, Inc. (AR 60, 62)

The appeal petition on the Portal was signed by C. Richard Dobbins, Co-Trustee/Borrower. The

- 5 -

JA0835

Docket No. PPP - 7978367005

record shows that C. Richard Dobbins, was a Co-Trustee of an irrevocable trust established by John I. Brasher in 2012. (AR 65 *et. seq.*) Under the terms of the trust, the trustee is to exercise its powers to appoint C. Richard Dobbins as President of the companies which are assets of the trust. (AR 74-75 and 75-76) Mr. Dobbins signed the PPP loan application as a co-trustee (AR 99), the promissory note as a co-trustee (AR 22), the PPP loan forgiveness application as a co-trustee (AR 101), and the OHA Case Portal as a co-trustee. The trust provisions allow the signature of only one of co-trustees to bind the trust (AR 72) (and thus exercise the powers of an owned corporation's president). Additionally, the record includes (AR 53 *et. seq.*) a General Durable Power of Attorney executed in 2018 by John I. Brasher generally giving all his transferable rights, powers, privileges, and responsibilities to C. Richard Dobbins, including the right to conduct any business in his name. (AR 54) Although it is not explicitly shown from the record that 1st Financial Services of Mississippi, Inc. was an asset included in the trust corpus, given the combined effect of the trust and the durable power of attorney, I find that there is sufficient standing for the bringing of the appeal.

### IV. Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a). Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 CFR §134.1210.

The Administrative Record was filed on January 4, 2022. Appellant made no objections or additions to the record, but Appellant did submit additional argument and documents after the record was received. On February 15, 2022, SBA did file a response to the appeal petition. The record closed on February 17, 2022.

### V. Facts of this Case and the Final SBA Loan Review Decision

On October 22, 2021, SBA issued its Final SBA Loan Review Decision finding that Appellant was ineligible for the full PPP loan amount received.

After review of the documentation provided by the Appellant, SBA concluded that Appellant is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring. (AR 10) Such a business is precluded from the PPP by 13 CFR § 120.110(b), which provides that the following types of businesses are ineligible:

> (b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances).

Appellant made substantial arguments in support of its appeal. However, Appellant acknowledged that it is a small loan finance company subject to the consumer lending laws of Mississippi. ("Appellant's Submission," [Portal] 02-10-2022 p 2, 4). Further, Appellant recognized its activities are properly classified under NAICS 52291, Consumer Lender (Id. p 3)

- 6 -

Additionally, Appellant conceded that more than fifty percent of its revenue is derived from financing and lending transactions. (Id. p 4)

## VI. Appeal

On November 17, 2021, , Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant argues that the Final SBA Loan Review Decision is in error because "the SBA exceeded its statutory authority when it applied the Original SBA Ineligibility Rule in reviewing and rejecting Appellant's PPP loan forgiveness application." (Id. p 3) Appellant argues that its status as a financial business should not preclude its eligibility to participate in the "first draw" PPP loans as authorized under the CARES Act. (Id. p 4) Submissions from Appellant provided several federal court rulings in support of its position. (Id. p 2-5, and "Addendum to Appeal Letter," [Portal] 02-10-2022

Appellant also argues that other PPP loan recipients had received forgiveness of their loans. I find references to such other cases inapplicable See 13 CFR 134.1211(e).

## VII. Discussion and Analysis

I note Appellant's arguments regarding the inapplicability of the eligibility exclusion provisions of 13 CFR §120.110. I particularly note the cited federal court decisions supporting Appellant's claim. However, as noted above, I have no authority to find the eligibility exclusion provisions of 13 CFR §120.110 inapplicable to the present PPP loan.

Moreover, I note that Congress provided that the PPP was to be administered by the SBA and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans. This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework. This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking including any public comment period. See CARES Act §1106 (k). Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects See CARES Act §1109 (d). Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational basis to apply the provisions of 13 CFR §120.110 to the PPP eligibility determinations, and their application by the SBA is not arbitrary or capricious. Therefore, for all these reasons, I find the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

The SBA had previously published and made available to the public, in 2018, its Standard Operating Procedure SOP 50 10 5(k). The provisions of that document show the procedures applicable to SBA Section 7(a) loans, including ineligible types of businesses. (SOP 50 10 5(k) III.A.2, at p 104). [Consistent provisions were carried forward in the updated SOP 50 10 6, issued October 1, 2020.] Finance companies and lenders, such as Appellant, are excluded from loan eligibility. This guidance was operative at the time Appellant applied for and received the PPP loan at issue, and, as explained above, these eligibility exclusions were and are applicable to the current PPP loan.

- 7 -

The Appellant has acknowledged that it is in the business of lending. Such a business is expressly precluded from PPP loan eligibility by 13 CFR §120.110(b), quoted above. Therefore, it was not a clear error for SBA to conclude that Appellant was ineligible for the PPP loan it received. Correspondingly, it was not a clear error for SBA to conclude that Appellant was not entitled to forgiveness of the loan for which Appellant was not initially eligible.

## VIII.  Conclusion

1st Financial Services of MS, Inc. (1st Financial Services of Mississippi, Inc.) has not shown that the SBA committed a clear error of fact or law. Therefore, the APPEAL IS DENIED, and the decision of the Final SBA Loan Review Decision is affirmed.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 CFR §134.1211(c), or unless the SBA Administrator elects to review this decision per 13 CFR §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 CFR §134.1211(b). In accordance with the regulations, a petition for reconsideration may be made within 10 calendar days after service of a Judge's decision under 13 CFR §134.1211(c)(1). A petition for reconsideration may be filed via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov. It is the borrower's responsibility to review the rules and procedures.

*John Trunick*

John Trunick

Sr. Administrative Law Judge

- 8 -

JA0838

EXHIBIT 2

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Franklin Capital Holdings LLC

    Appellant

Appealed from:

SBA PPP Loan Number 7738557004

Issued: July 10, 2022

Docket No. PPP-7738557004

APPEARANCES

Jonathan White, Esq., Clark Hill PLC, for Franklin Capital Holdings LLC
Lolitha McKinney, Esq., Office of General Counsel, for the U.S. Small Business Administration

DECISION

## I. Introduction and Jurisdiction

On January 31, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision that found Franklin Capital Holdings LLC (Appellant) ineligible for its PPP loan, because "[Appellant] is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring." Administrative Record (AR) at 20.

On March 7, Appellant, through counsel, filed a timely appeal petition in this matter with the Office of Hearings and Appeals (OHA) of SBA; OHA conducts PPP appeals under the authority of 13 C.F.R. Part 134, Subpart L, and the appeal petition was assigned to me.

For the reasons discussed below, I **DENY** Appellant's appeal petition and **AFFIRM** the final SBA loan review decision.

## II. Background

On April 19, I issued a Notice and Order to establish: (a) a deadline for SBA's production of the administrative record; (b) a deadline for any objections to the administrative record by Appellant; (c) a deadline for SBA's response, if any, to the appeal petition; and (d) the date for the closing of the record. *See* 13 C.F.R. § 134.1206.

On April 28, SBA filed the administrative record, and on May 19 Appellant filed an objection to the record stating that the record contained duplicate documents and requesting that it be corrected or clarified. On May 20, I denied Appellant's request for the reasons set forth in my docketed order. *See* Order Denying Appellant's Request to Correct or Clarify the Administrative Record.

SBA did not file a response to Appellant's appeal petition and the record was closed on June 3.

Docket No. PPP-7738557004

### A. The Final SBA Loan Review Decision

As stated above, SBA found that Appellant, as a financial business primarily engaged in lending, was ineligible for its $295,100 PPP loan under 13 C.F.R. § 120.110(b), noting that the prohibition against the issuance of Section 7(a) loans to financial business was to be found in SBA's Standard Operating Procedure (SOP) 50 10 5(K), Apr. 1, 2019, as well as in SBA's first Interim Final Rule, 85 Fed. Reg. 20811, 20812, Apr. 15, 2020.  *See* AR at 20-21.

SBA therefore "determined that forgiveness in the amount of $0.00 is appropriate."  AR at 21.

### B. The Appeal Petition

Appellant's March 7 appeal petition does not dispute that Appellant is engaged in the business of lending, *see generally* Appeal of Forgiveness Denial of Paycheck Protection Program Loan (hereinafter "Appeal"), but instead argues that:

1.  Although PPP loans are "a form of 7(a) loan," *id.* at 4, the prohibition of lending to financial businesses applicable to Section 7(a) loans does not apply to PPP loans because "the CARES Act made no reference to the applicability of . . . the SBA regulations related to 7(a) program loan eligibility."  *Id.* at 6.

2.  SBA approved the issuance of Appellant's loan.  *Id*. at 7.

3.  The April 15, 2020, Interim Final Rule, which stated that "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10," 85 Fed. Reg. 20812, was made effective after Appellant applied for and received its loan.  *See* Appeal at 6-8.

### III. Discussion

### A. Standard of Review

Appellant has the burden of proving all elements of its appeal.  Specifically, Appellant must show that the final SBA loan review decision was based on a clear error of fact or law.  *See* 13 C.F.R. § 134.1210.

### B. Analysis

### 1. The Fact That the CARES Act Made No Reference to the Applicability of 13 C.F.R. § 120.110 to PPP Loans Is Irrelevant.

The CARES Act, 15 U.S.C. § 36a(36)(B), stated: "Except as otherwise provided in this paragraph, the Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [Section 7(a)]."

There then followed a number of relaxations of Section 7(a) eligibility criteria that would otherwise be applicable to PPP loans, *see, e.g.*, *id.* § 36a(36)(D), but there was no provision that made 13 C.F.R. § 120.110 inapplicable to PPP loans.  Thus Appellant has it exactly backwards; to pre-

Docket No. PPP-7738557004

clude the regulation's applicability to PPP loans, the CARES Act would have had to do so expressly, and it did not – that is, it was not "otherwise provided" in the Act that 13 C.F.R § 120.110 did not apply to PPP loans.

Compliance with the regulation therefore remained an applicable "condition" for the guarantee of PPP loans, as for all Section 7(a) loans.  *See* Lender and Development Company Loan Programs, SOP 50 10 5(K), Apr. 1, 2019, at 104, citing 13 C.F.R. § 120.110(b): "SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending or investment."

## 2. SBA Did Not Approve Appellant's Loan.

Appellant asserts that SBA approved its loan:

> (a) "SBA understood that Franklin was in the business the SBA now claims is an ineligible business when it approved the Loan Application."  Appeal at 7.

> (b) "[t]he SBA approved . . . the Loan Application . . . ."  *Id.*

SBA did not approve Appellant's loan, nor did it determine Appellant's eligibility to receive its PPP loan before the loan was made.  As provided by the CARES Act, Appellant's lender approved, made, and funded the loan, based on Appellant's self-certifications and exclusive of any SBA involvement.  *See* 15 U.S.C. § 636(a)(36)(F) (ii)(I): "[A] lender . . . shall be deemed to have been delegated authority by the [SBA] Administrator to make and approve [PPP loans]."

## 3. 13 C.F.R. § 120.110(b) Was Applicable at the Time of Appellant's Loan Application.

Appellant applied for its PPP loan on April 4, 2020, *see* AR at 325, that is, before the April 15, 2020, effective date of the first Interim Final Rule, 85 Fed. Reg. 20811, which specified the applicability of 13 C.F.R. § 120.110 to PPP loans, *id.* at 20812.

Nevertheless, in its March 27, 2020, enactment of the CARES Act, Congress placed the PPP under Section 7(a) of the Small Business Act, as Appellant concedes.  *See* CARES Act § 1102(a) (adding paragraph 36 to 15 U.S.C. § 636(a)).  Thus, the preexisting ineligibility rules of 13 C.F.R. § 120.110 applicable to other Section 7(a) loans also applied to PPP loans, even before the issuance of the April 15 Interim Final Rule: "[T]he Administrator may guarantee [PPP loans] under the same terms, conditions, and processes as a loan made under [Section 7(a)]."  15 U.S.C. § 636(a)(36)(B).  Despite Appellant's assertion, *see* Appeal at 6, there is therefore no "retroactivity" entailed in the application of 13 C.F.R. § 120.110 to PPP loans.

Consequently, there was also no 11-day gap in the applicability of 13 C.F.R. § 120.110(b) to PPP loans for Appellant hurriedly to exploit; the Interim Final Rule simply confirmed the preexisting applicability of this regulation to PPP loans, which dated from March 27, 2020, i.e., the enactment of the CARES Act.

## IV.  Conclusion

Appellant did not show that SBA's final loan review decision denying Appellant forgiveness of its PPP loan was based on a clear error of fact or law; Appellant was ineligible for its loan under 13 C.F.R. § 120.110(b) and a PPP loan for which a borrower was ineligible cannot be forgiven.  *See* Interim Final Rule, 85 Fed. Reg. 33010, 33012, June 1, 2020, Section III, para. 1(E).

EXHIBIT 2

Docket No. PPP-7738557004

Accordingly, Appellant's appeal petition is **DENIED** and SBA's final loan review decision denying Appellant forgiveness of its loan is **AFFIRMED**.

This is an initial decision. Appellant may request reconsideration of my decision by e-mailing a petition for reconsideration to OHAPPPInquiries@sba.gov no later than <u>Wednesday, July 20, 2022</u>. <u>The petition for reconsideration must clearly show an error of fact or law material to my decision.</u> *See* 13 C.F.R. § 134.1211(c)(1).

However, unless a petition for reconsideration is filed, or the SBA Administrator, solely within her discretion, decides to review or reverse my decision, this decision shall become the final decision of SBA on <u>Tuesday, August 9, 2022</u>. *See id.* § 134.1211(b).

**SO ORDERED**.

_____
Roger W. Mehle
Administrative Judge

369

COMPOSITE EXHIBIT C

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Management Services Inc.,**

      Appellant

Appealed from
SBA PPP Loan No. 4087497306

Issued: **July 31, 2024**

Decision No. **PPP-4087497306**

Appearances:
    William Barrett and Allen Gross, Borrowers, for the Appellant.
    Shamia Stewart, Attorney for the Small Business Administration.

## **INITIAL DECISION**

    After carefully considering the evidence and arguments presented in the Administrative Record (AR), the appeal petition of GFI Management Services Inc. (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## **PROCEDURAL HISTORY**

    The Appellant (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by Cross River Bank (Lender) in the amount of $100,382.00 on April 29, 2020. The Lender subsequently approved the Appellant's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

    On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

    On May 23, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024. The Appellant did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA0843

**ISSUES**

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $100,382.00 in requested First Draw PPP loan forgiveness?

**APPLICABLE LAW AND POLICY**

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
- **-15 U.S.C. § 636(a)(36)(A), (D), (F), (G) and (Q)**
- **-15 U.S.C. § 636m(b), (d), (e), (f), and (g)**

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. §§ 121.101(a), 121.102(a); 121.201; and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**

- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]

- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0844

### FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and all relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0845

2)  Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0846

Docket No. PPP-4087497306

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "*with respect to eligibility*" for a "*covered loan*" for any "*business…assigned a North American Industry Classification System code beginning with 72*". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "*eligible recipient*" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees *when combined with affiliated entities*, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "*eligible recipient*" means an individual or entity that is eligible to receive a covered loan.  The term "*covered loan*" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period.  The term "*covered period*" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

   1) Ownership;
   2) Under stock options, convertible securities, and agreements to merge;
   3) Management; and
   4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

JA0847

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the First Draw 500 employee size or revenue size limitations.

### Appellant's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms of establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form .

On April 28, 2020, the Appellant submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is an "S-Corp"; 2) Has an average monthly payroll of $40,152.83.00 for 4 employees; and Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4401-4404).

On April 29, 2020, the Appellant was approved for First Draw PPP Loan Number 4087497306 by the Lender in the amount of $100,382.00, and received the loan proceeds on May 1, 2020. (AR pp. 19 and 4407).

### Appellant's PPP Loan Forgiveness Application – Lender Review

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

JA0848

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On July 7, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Appellant certified having a NAICS Code of 531311, having spent $100,382.00 on "Payroll Costs", and having 4 employees. The Appellant elected a Covered Period of May 1, 2020, through October 15, 2020. (AR pp. 4405-4406).

On July 14, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $100,382.00. (AR p. 19).

## Appellant's PPP Loan Forgiveness Application – SBA Review

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4360-4361).

JA0849

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Appellant. SBA specifically requested the Appellant provide:

1) SBA Form 3511 (Affiliation Worksheet);

2) Comprehensive Organizational charts for any identified entity; and

3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4362-4365).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. (AR pp. 4349-4537).

The Appellant identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Appellant's Form 3511 (1/17/23) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Borrower | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA0850

Docket No. PPP-4087497306

On August 30, 2022, SBA further requested the Appellant provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4366-4367).

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 4368-4372).

On November 14, 2022, the Appellant responded to SBA. The Appellant sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities. The Appellant provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 1693-1702).

On May 1, 2023, May 12, 2023, June 12, 2023, and July 14, 2023, SBA requested the Appellant provide additional detail concerning potential affiliated entities. (AR pp. 4375-4400).

On May 11, 2023, the Appellant, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR pp. 4359).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*" SBA noted the Appellant's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 19-21).

### **Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

JA0851

Of note, the Appellant alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Appellant and Supplement to Petition).

The Appellant states that it is a New York corporation that specializes in multi-family property management.  The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | **GFI Management Services Inc.** | Borrower | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards.  The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

JA0852

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's First Draw PPP Loan.  The Appellant would be relying upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10.  That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO.  The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size.  Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

## SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

## Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a First Draw PPP Borrower Application Form 2483 on April 28, 2020.  The Appellant received the proceeds 3 days later with the Lender relying upon the Appellant's certifications that it:  1) Was an S-Corp; 2) Had an average monthly payroll of $40,152.83 for 4 employees; and 3) Had 4 affiliated entities with a total of less than 500 combined employees.

The Appellant's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of May 1, 2020, through October 15, 2020; noted assigned NAICS code 531311; and had full expended all loan proceeds.  Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

JA0853

Docket No. PPP-4087497306

SBA found that at the time of applying for this loan, the Appellant, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Appellant did not meet any existing alternative size standard and the Appellant admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant). Within this affiliation family, SBA found the Appellant was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR pp. 4408-4460).

SBA requested the Appellant produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

The certified Form 3511 Affiliation Worksheet submitted by the Appellant identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24, as follows:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Management Services Inc.** | **Borrower** | **100% Owned – A. Gross** | **236116** | **3** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 531311 | 13 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |

JA0854

Docket No. PPP-4087497306

| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Appellant had at least 14 affiliates.  This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate.  The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard.

The Appellant certified 7 entities being affiliated for purpose of SBA's size determination.  The Appellant argues these 7 specific entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72", to-wit: 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC.  The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count.  The Appellant argues that by removing the employees from such affiliates, it meets the 500 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider.  In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

JA0855

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return.  In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities.  The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns.  Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

JA0856

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this First Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC.

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv).

In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA's FAQs provide:

5.   **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. **For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. (Notwithstanding the foregoing, housing cooperatives, eligible 501(c)(6) organizations, and eligible destination marketing organizations, are eligible for a First Draw PPP Loan only if they employ no more than 300 employees.)...** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). *(Emphasis added).*

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees.  As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN.....

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

• ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are***

JA0858

*under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.*

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation. The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size. The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

The record reflects the Appellant far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Appellant was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

## PPP Loan Forgiveness

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 4087497306. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 4087497306.

JA0859

## <u>ORDER</u>

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision.  I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

**Brian J. Haring**
**U.S. Administrative Law Judge**

JA0860

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, _solely within the Administrator's discretion_, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA0861

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Hospitality LLC,**

      Appellant

Appealed from
SBA PPP Loan No. 8855987106

Issued: **July 31, 2024**

Decision No. **PPP-8855987106**

Appearances:
> William Barrett and Allen Gross, Borrowers, for the Appellant.
> Shamia Stewart, Attorney for the Small Business Administration.

## INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record (AR), the appeal petition of GFI Hospitality LLC (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

The Appellant (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by Manufacturers and Traders Trust Company (Lender) in the amount of $140,832.00 on April 15, 2020. The Lender subsequently approved the Appellant's request for full PPP loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision.

On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024.

Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

JA0862

On June 21, 2024, SBA filed the AR.  The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024.

On June 25, 2024, the Order was further amended to allow the Appellant to file an Objection to the AR by July 3, 2024, and allowing SBA to file a Response to the Petitioner by July 18, 2024. The Appellant did not file an Objection to the AR.  SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $140,832.00 in requested First Draw PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
    **-15 U.S.C. § 636(a)(36)(A), (D), (F), (G) and (Q)**
    **-15 U.S.C. § 636m(b), (d), (e), (f), and (g)**

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. §§ 121.101(a), 121.102(a); 121.201; and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450);**
 **#7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
    - **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
    - **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

## **FINDINGS OF FACT AND ANALYSIS**

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### **SBA and The Small Business Act**

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0864

2)  Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors.  Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed.  PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis.  Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0865

Docket No. PPP-8855987106

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business…assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "**eligible recipient**" means an individual or entity that is eligible to receive a covered loan.  The term "**covered loan**" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period.  The term "**covered period**" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

JA0866

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the First Draw 500 employee size or revenue size limitations.

### Appellant's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms of establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs consisting of: "...*compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.*"

On or about April 15, 2020, the Appellant submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $56,333.00 for 36 employees; 3) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4565-4569).

JA0867

The Appellant's PPP Borrower Application Form 2483 was supplemented by an Addendum A, in which the Appellant certified the following 4 affiliated entities and their respective 75 employees:

**Affiliates (if applicable)**

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

(AR pp. 17).

On April 15, 2020, the Appellant was approved for First Draw PPP Loan Number 8855987106 by the Lender in the amount of $140,832.00, and having executed a PPP Promissory Note, received the loan proceeds on April 26, 2020. (AR pp. 14, 18-24, and 4582).

**<u>Appellant's PPP Loan Forgiveness Application – Lender Review</u>**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness.

JA0868

The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On July 7, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Appellant certified having an assigned NAICS Code of 541611, having spent $140,832.00 on "Payroll Costs", and having 5 employees. The Appellant elected a Covered Period of April 26, 2020, through October 10, 2020. (AR pp. 4572-4581).

On July 8, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $140,832.00. (AR p. 14).

### **Appellant's PPP Loan Forgiveness Application – SBA Review**

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4532-4533).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Appellant. SBA specifically requested the Appellant provide:

1) SBA Form 3511 (Affiliation Worksheet);

2) Comprehensive Organizational charts for any identified entity; and

3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4534-4537).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. (AR pp. 4502-4512).

JA0869

The Appellant identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 30, 2022, SBA further requested the Appellant provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4538-4539).

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 4540-4546).

On November 14, 2022, the Appellant responded to SBA. The Appellant sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities. The Appellant provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 4513-4522).

On May 1, 2023, June 12, 2023, and July 14, 2023, SBA requested the Appellant provide additional detail concerning potential affiliated entities. (AR pp. 4547-4564).

On May 11, 2023, the Appellant, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR p. 4636).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness.

SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Appellant's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 14-16).

## **Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.

Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 22, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Appellant alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Appellant and Supplement to Petition).

The Appellant states that it is a Delaware LLC specializing in hotel asset management and development.

JA0871

The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | **GFI Hospitality LLC** | **Borrower** | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards.  The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's First Draw PPP Loan.  The Appellant would be relying upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10.  That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

**SBA's Response to the Appeal Petition**

SBA did not file a Response to the Petition.

**Appellant's PPP Loan Eligibility and Forgiveness**

The Appellant submitted a First Draw PPP Borrower Application Form 2483 on April 15, 2020. The Appellant received the proceeds 11 days later with the Lender relying upon the Appellant's certifications that it: 1) Was a LLC; 2) Had an average monthly payroll of $56,333.00 for 5 employees; and 3) Had only had 4 affiliated entities with a total of 75 combined employees.

The Appellant's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of April 26, 2020, through October 10, 2020; noted assigned NAICS code 541611; and had full expended all loan proceeds.. Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Appellant, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Appellant did not meet any existing alternative size standard and the Appellant admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant). Within this affiliation family, SBA found the Appellant was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR p. 4583-4631).

SBA requested the Appellant produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA0874

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Appellant had at least 14 affiliates. This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard.

The Appellant certified 7 entities being affiliated for purpose of SBA's size determination. The Appellant argues these 7 specific entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72", to-wit: 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count. The Appellant argues that by removing the employees from such affiliates, it meets the 500 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return. In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities. The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns. Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this First Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

JA0876

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC. (AR pp. 17, 1718, 4524, and 4572-4581).

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv). In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA's FAQs provide:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation,… **For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. (Notwithstanding the foregoing, housing cooperatives, eligible 501(c)(6) organizations, and eligible destination marketing organizations, are eligible for a First Draw PPP Loan only if they employ no more than 300 employees.)…** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). *(Emphasis added).*

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

    **Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees.  As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN.....

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

- ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.***

    The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation.   The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.  The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

JA0878

The record reflects the Appellant far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Appellant was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

## PPP Loan Forgiveness

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 8855987106. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 8855987106.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

JA0879

---

### <u>NOTICE OF APPEAL RIGHTS AND PROCEDURES</u>

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA0880

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Development Company LLC,**

     Appellant

Appealed from
SBA PPP Loan No. 8839147101

Issued:  **July 31, 2024**

Decision No. **PPP-8839147101**

Appearances:
     William Barrett and Allen Gross, Borrowers, for the Appellant.
     Shamia Stewart, Attorney for the Small Business Administration.

## <u>INITIAL DECISION</u>

After carefully considering the evidence and arguments presented in the Administrative Record (AR), the appeal petition of GFI Development Company LLC (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## <u>PROCEDURAL HISTORY</u>

The Appellant (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $294,750.00 on April 15, 2020.   The Lender subsequently approved the Appellant's request for full PPP loan forgiveness.  The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision.  On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024.  Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

On May 24, 2024, SBA filed the AR.  The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024.  The Appellant did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA0881

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $294,750.00 in requested First Draw PPP loan forgiveness?


## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
    **-15 U.S.C. § 636(a)(36)(A), (D), (F), (G) and (Q)**
    **-15 U.S.C. § 636m(b), (d), (e), (f), and (g)**

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. §§ 121.101(a), 121.102(a); 121.201; and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**

    - **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]

    - **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0882

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0883

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37). Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0884

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business…assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "**eligible recipient**" means an individual or entity that is eligible to receive a covered loan.  The term "**covered loan**" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "**covered period**" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

JA0885

Docket No. PPP-8839147101

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the First Draw 500 employee size or revenue size limitations.

## Appellant's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms of establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs consisting of: "*…compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.*"

On April 7, 2020, the Appellant submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $117,900.00 for 13 employees; and 3) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4076-4079).

JA0886

On April 15, 2020, the Appellant was approved for First Draw PPP Loan Number 8839147101 by the Lender in the amount of $294,750.00, and having executed a PPP Promissory Note, received the loan proceeds on April 20, 2020. (AR pp. 21, 39-44, and 4084).

**Appellant's PPP Loan Forgiveness Application – Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On July 19, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508 to the Lender. The Appellant certified being assigned NAICS Code of 236116, having spent $672,647.00 on "Payroll Costs" for 9 employees. The Appellant elected a Covered Period of April 20, 2020, through October 3, 2020. (AR pp. 4084-4096).

On July 19, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $294,750.00. (AR p. 21).

JA0887

Docket No. PPP-8839147101

## Appellant's PPP Loan Forgiveness Application – SBA Review

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4036-4037).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender.  SBA identified 20 possible affiliated entities of the Appellant.  SBA specifically requested the Appellant provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4038-4041).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. (AR pp. 824-832).

The Appellant identified the following entities, NAICS codes, and employee counts:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **236116** | **13** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |

JA0888

| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
|---|---|---|---|---|
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 30, 2022, SBA further requested the Appellant provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4042-4043).

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 4046-4051).

On November 14, 2022, the Appellant responded to SBA. The Appellant sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities. The Appellant provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 3579-3588).

On May 1, 2023, June 12, 2023, and July 14, 2023, SBA requested the Appellant provide additional detail concerning potential affiliated entities. (AR pp. 4058-4075).

On May 11, 2023, the Appellant, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR pp. 3249).

On July 14, 2023, the Appellant provided SBA with further written explanation concerning affiliation. (AR pp. 3599-3609).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Appellant's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 21-23).

### **Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Appellant alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Appellant and Supplement to Petition).

The Appellant states that it is a New York LLC and admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | **GFI Development Company LLC** | **Borrower** | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's First Draw PPP Loan. The Appellant would be relying upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

**SBA's Response to the Appeal Petition**

SBA did not file a Response to the Petition.

**Appellant's PPP Loan Eligibility and Forgiveness**

The Appellant submitted a First Draw PPP Borrower Application Form 2483 on April 7, 2020. The Appellant received the proceeds 7 days later with the Lender relying upon the Appellant's certifications that it:  1) Was a LLC; 2) Had an average monthly payroll of $117,900.00 for 13 employees; and 3) Had had 4 affiliated entities with a total of less than 500 employees.

The Appellant's certified PPP Loan Forgiveness Application Form 3508, elected a Covered Period of April 20, 2020, through October 3, 2020; noted assigned NAICS code 236116; and over $600,000.00 in authorized expenditures. Following review, the Lender determined the Appellant should receive full loan forgiveness.

Docket No. PPP-8839147101

Consistent with its obligation to review the Appellant's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Appellant, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Appellant did not meet any existing alternative size standard and the Appellant admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant). Within this affiliation family, SBA found the Appellant was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR pp. 4097-4198).

SBA requested the Appellant produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 236116 | 5 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **541611** | **13** |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |

JA0892

| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Appellant had at least 14 affiliates. This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard.

The Appellant certified 7 entities being affiliated for purpose of SBA's size determination. The Appellant argues these 7 specific entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72", to-wit: 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count. The Appellant argues that by removing the employees from such affiliates, it meets the 500 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "**payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.**" **(Emphasis added)**.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return.  In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities.  The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns.  Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this First Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC.

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv). In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA's FAQs provide:

JA0895

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation,… **For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. (Notwithstanding the foregoing, housing cooperatives, eligible 501(c)(6) organizations, and eligible destination marketing organizations, are eligible for a First Draw PPP Loan only if they employ no more than 300 employees.)…** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). **(Emphasis added).**

**24**. Question:

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees. As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN.….

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

• **The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.**

JA0896

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation. The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.

The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

The record reflects the Appellant far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard.

As such, SBA did not commit error in determining the Appellant was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

## PPP Loan Forgiveness

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 8839147101.

The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law.

The Appellant remains liable for the PPP Loan Number 8839147101.

JA0897

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision.  I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

JA0898

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Capital Resources Group Inc.,**

      Appellant

Appealed from
SBA PPP Loan No. 8837037110

Issued:  **August 12, 2024**

Decision No. **PPP-8837037110**

Appearances:
      William Barrett and Allen Gross, Borrowers, for the Appellant.
      Denise Grugan, Attorney for the Small Business Administration.

## INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record (AR), the appeal petition of GFI Capital Resources Group Inc. (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

The Appellant (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $405,884.00 on April 15, 2020.   The Lender subsequently approved the Appellant's request for full PPP loan forgiveness.   The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision.   On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024.

Following Consent Motions, the Notice and Order was amended to require the filing of the AR by July 15, 2024, any Objection by July 25, 2024, and any Response to the Petition by August 9,, 2024.

On July 15, 2024, SBA filed the AR.  The Appellant did not file an Objection to the AR. SBA filed a Response to the Petition on August 9, 2024, and the AR was closed.

JA0899

Docket No. PPP-8837037110

**ISSUES**

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $405,884.00 in requested First Draw PPP loan forgiveness?

**APPLICABLE LAW AND POLICY**

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
    **-15 U.S.C. § 636(a)(36)(A), (D), (F), (G) and (Q)**
    **-15 U.S.C. § 636m(b), (d), (e), (f), and (g)**

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. §§ 121.101(a), 121.102(a); 121.201; and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450);**
 **#7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
    **- AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
    **- "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0900

**FINDINGS OF FACT AND ANALYSIS**

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

**SBA and The Small Business Act**

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).  Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act.  The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0901

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business...assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "**eligible recipient**" means an individual or entity that is eligible to receive a covered loan. The term "**covered loan**" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "**covered period**" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

    1) Ownership;
    2) Under stock options, convertible securities, and agreements to merge;
    3) Management; and
    4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

JA0903

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the First Draw 500 employee size or revenue size limitations.

### Appellant's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms of establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs consisting of: "*...compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.*"

On April 13, 2020, the Appellant submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is an "S-Corp"; 2) Had an average monthly payroll of $162,354.00 for 14 employees; 3) Was 100% owned by Allen Gross, CEO; 4) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 7241-7244).

On April 15, 2020, the Appellant was approved for First Draw PPP Loan Number 8837037110 by the Lender in the amount of $405,884.00, and having executed a PPP Promissory Note, received the loan proceeds on April 19, 2020. (AR pp. 25, 43-50, and 7257).

**Appellant's PPP Loan Forgiveness Application – Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  Salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures and certify all PPP funds were utilized for authorized purposes.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On July 12, 2021, the Appellant submitted PPP Loan Forgiveness Application Form 3508 to the Lender.  The Appellant certified having a NAICS Code of 531390, having spent $541,769.00 on "Payroll Costs", and having 14 employees. The Appellant elected a Covered Period of April 19, 2020, through October 3, 2020. (AR pp. 7257-7269).

On July 13, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $405,884.00. (AR p. 25).

**Appellant's PPP Loan Forgiveness Application – SBA Review**

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

JA0905

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified Lender it was reviewing the Appellant's Loan and requested documentation used to secure the loan. (AR pp. 7212-7213).

Subsequently, SBA sent the Appellant detailed requests on August 2, 2022, August 30, 2022, October 31, 2022, January 3, 2023, March 1, 2023, June 12, 2023, and July 13, 2023, to produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organization information, operating agreements books, records, and management agreements). SBA made these requests. (AR 7214-7247).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. (AR pp. 835-843).

The Appellant identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | **BORROWER** | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA0906

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Appellant's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 25-27).

## Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.

The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations". Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, .1203, .1204(a)(2), and .1209(a).

On March 21, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Appellant alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Appellant and Supplement to Petition).

Along with the certified applications (loan and forgiveness), the Appellant argues that it is a New York corporation with no more than 409 employees and operates with 45 West Orchard Park Drive LLC as a PEO or PEO like entity.

Further, the Appellant has previously admitted through document production and its certified Form 3511, it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |

JA0907

Docket No. PPP-8837037110

| 8 | Broadway Development Group LLC | Not Identified | 236220 |
|---|---|---|---|
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | **GFI Capital Resources Group Inc.** | **Not Identified** | **531390** |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Hospitality | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had 500 employees at the time of applying for this First Draw PPP loan. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's First Draw PPP Loan. The Appellant would be relying upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

JA0908

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

## SBA's Response to the Appeal Petition

SBA filed a Response to the Petition arguing that no PEO has been demonstrated and the final SBA loan review decision is without error.

## Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a First Draw PPP Borrower Application Form 2483 on April 13, 2020. The Appellant received the proceeds 2 days later with the Lender relying upon the Appellant's certifications that it:  1) Was an "S-Corp"; 2) Had an average monthly payroll of $162,354.00 for 14 employees; and 3) Had 4 affiliated entities with less than a total of 500 combined employees.

The Appellant's certified PPP Loan Forgiveness Application Form 3508 certified it did not qualify for "72" waiver of affiliation.  Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Appellant, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.  That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation.  This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness.  Of note, SBA found the Appellant did not meet any existing alternative size standard and the Appellant admits the same.

SBA defined an affiliation family consisting of forty-four (44)  entities and labeled the same "Gross et al".  SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest  (close familial relations) of Allen I. Gross (100% owner of Appellant).  Within this affiliation family, SBA found the Appellant was among 17 affiliated entities receiving First Draw loans.  All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR pp. 7270-7280).

Docket No. PPP-8837037110

SBA requested the Appellant produce documentation to clarify affiliation and the size of the Appellant.  SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.  The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | **BORROWER** | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Appellant had at least 14 affiliates.  This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate.  The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

JA0910

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard.

The Appellant certified 7 entities being affiliated for purpose of SBA's size determination. The Appellant argues these 7 specific entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72", to-wit: 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC.

The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count. The Appellant argues that by removing the employees from such affiliates, it meets the 500 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return. In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

JA0911

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities. The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns. Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

The Appellant relies upon the Operating Agreement existing between 45 West Orchard Park Drive LLC and Crescent Hotel Management Services, LLC, to reflect how it operates under PPP's qualifying PEO arrangements. Accepting the Appellant's argument in the absence of other supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this First Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

JA0912

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC.

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creating PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv). In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA's FAQs provide:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. **For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. (Notwithstanding the foregoing, housing cooperatives, eligible 501(c)(6) organizations, and eligible destination marketing organizations, are eligible for a First Draw PPP Loan only if they employ no more than 300 employees.)...** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). *(Emphasis added).*

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees. As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN…..

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

- ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2***.

 The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation. The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.

 The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

JA0914

The record reflects the Appellant far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant. As such, SBA did not commit error in determining the Appellant was an ineligible entity for this First Draw PPP loan.

**PPP Loan Forgiveness**

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

<div align="center">

**CONCLUSION OF LAW**

</div>

The Appellant was ineligible for PPP Loan Number 8837037110. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 8837037110.

<div align="center">

**ORDER**

</div>

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

JA0915

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA0916

COMPOSITE EXHIBIT D

# United States Small Business Administration
## Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**: | Decision No. **PFR-4087497306** |
| **GFI Management Services Inc.,** | |
| Petitioner | Issued: **September 6, 2024** |
| RE: *PPP Appeal of GFI Management Services Inc.*, SBA No. PPP-4087497306 (2024) | |

Appearances:

William Barrett and Allen Gross, Borrowers, for the Petitioner.
Shamia Stewart, Attorney for the Small Business Administration.

## RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-4087497306, the appeal petition of GFI Management Services Inc. (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

The Petitioner (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by Cross River Bank (Lender) in the amount of $100,382.00 on April 29, 2020. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed the instant appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Petitioner to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

On May 23, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Petitioner to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024. The Petitioner did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA0917

On July 31, 2024, OHA Initial Decision No. PPP-4087497306 was issued affirming the final SBA loan review decision.

On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-4087497306.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $100,382.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0918

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0919

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

**The CARES Act & Economic Aid Act**

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it met the PPP 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry **when, together with its affiliates**, the business met those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the better result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0920

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

    1) Ownership;
    2) Under stock options, convertible securities, and agreements to merge;
    3) Management; and
    4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns.  Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business...assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "*eligible recipient*" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees *when combined with affiliated entities*, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "*eligible recipient*" means an individual or entity that is eligible to receive a covered loan. The term "*covered loan*" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "*covered period*" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the First Draw 500 employee-size or revenue size limitations.

### Petitioner's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

On April 28, 2020, the Petitioner submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Petitioner: 1) Is an "S-Corp"; 2) Has an average monthly payroll of $40,152.83.00 for 4 employees; and Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4401-4404).

On April 29, 2020, the Petitioner was approved for First Draw PPP Loan Number 4087497306 by the Lender in the amount of $100,382.00, and received the loan proceeds on May 1, 2020. (AR pp. 19 and 4407).

JA0922

**Petitioner's PPP Loan Forgiveness Application and Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

On July 7, 2021, the Petitioner submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Petitioner certified having a NAICS Code of 531311, having spent $100,382.00 on "Payroll Costs", and having 4 employees. The Petitioner elected a Covered Period of May 1, 2020, through October 15, 2020. (AR pp. 4405-4406).

On July 14, 2021, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $100,382.00. (AR p. 19).

**SBA - Final Loan Review Decision**

Following issuance of the Lender's decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or

JA0923

partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4360-4361).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Petitioner. SBA specifically requested the Petitioner provide:

1) SBA Form 3511 (Affiliation Worksheet);

2) Comprehensive Organizational charts for any identified entity; and

3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4362-4365).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 4349-4537).

The Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Appellant's Form 3511 (1/17/23) | | | |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| --- | --- | --- | --- | --- |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Borrower | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |

JA0924

| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
|---|---|---|---|---|
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 30, 2022, SBA further requested the Petitioner provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4366-4367).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 4368-4372).

On November 14, 2022, the Petitioner responded to SBA.  The Petitioner sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities.  The Petitioner provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 1693-1702).

On May 1, 2023, May 12, 2023, June 12, 2023, and July 14, 2023, SBA requested the Petitioner provide additional detail concerning potential affiliated entities. (AR pp. 4375-4400).

On May 11, 2023, the Petitioner, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR pp. 4359).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness.  SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"  SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 19-21).

**Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

JA0925

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

The Petitioner states that it is a New York corporation that specializes in multi-family property management. The Petitioner admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

|    | Entity                             | Business Sector?    | NAICS  |
|----|------------------------------------|---------------------|--------|
| 1  | 1186 BROADWAY TENANT LLC           | Hospitality         | 721110 |
| 2  | 45 West Orchard Park Drive LLC     | Hospitality         | 721110 |
| 3  | 5 Beekman Master Tenant LLC        | Hospitality         | 721110 |
| 4  | 5 Beekman Hotel Owner LLC          | Hospitality         | 721110 |
| 5  | 701 East Palm Canyon Lessee LLC    | Hospitality         | 721110 |
| 6  | Adara Buyer IV LLC                 | Multi-Family Housing | 531110 |
| 7  | Breslin Restaurant Group LLC       | Hospitality         | 722511 |
| 8  | Broadway Development Group LLC     | Not Identified      | 236220 |
| 9  | Deerfield Beach Apartments LLC     | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc.   | Not Identified      | 531390 |
| 11 | GFI Development Company LLC         | Not Identified      | 236116 |
| 12 | GFI Hospitality LLC                | Not Identified      | 541611 |
| 13 | **GFI Management Services Inc.**   | Borrower            | 531311 |
| 14 | River Market West LLC              | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72". To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103*

JA0926

*and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan)."*

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner. The Petitioner relies upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count.

Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

**SBA's Response to the Appeal Petition**

SBA did not file a Response to the Petition.

**OHA Review and Initial Decision**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 500 EMPLOYEE SIZE STANDARD. (PFR pp. 6-7);

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR. In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue. Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs. To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan. Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) Operating Company Affiliates - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;

2) Multi-Family Housing Affiliates - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;

3) Hospitality Affiliates - Breslin Restaurant Group; and

4) Hotel Owners - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

JA0928

Docket No. PFR-4087497306

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners. The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination. The Petitioner admits the following concerning each Hotel Owner:

- **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

- **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

- **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

- **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

- **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

- **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 500 employees at the time of applying for this PPP loan.

JA0929

**PPP Loan Eligibility**

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

SBA's review and the AR supports that the Petitioner submitted a First Draw PPP Borrower Application Form 2483 on April 28, 2020, and received the proceeds 3 days later. The Lender approved the loan relying upon the Petitioner's certifications that it: 1) Was an S-Corp; 2) Had an average monthly payroll of $40,152.83 for 4 employees; and 3) Had 4 affiliated entities with a total of less than 500 combined employees.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of May 1, 2020, through October 15, 2020; noted assigned NAICS code 531311; and had full expended all loan proceeds. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation. This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Petitioner). Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR p. 4408-4460).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner. SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

JA0930

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-**lists Borrower and its affiliates**, the applicable NAICS classification, and the number of employees at the time of the loan application*" ***(Emphasis added)***. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard.   The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 531311. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "*...a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs. When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count. In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider). PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees*". In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic.*" The CARES Act support was limited to businesses with no more than 500 employees. It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan. Failure to consider the number of PEO employees supported would allow an entity to support more than 500 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan. For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates. In this way, Congress provided an exception to the 500 employee limitation by waving existing SBA affiliation rules. No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees. Review of the AR reflects all Hotel Owners secured PPP First Draw loans. Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First Draw PPP loan. As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size. (AR p. 4409).

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules. SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard.  As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

**PPP Loan Forgiveness**

The CARES Act provides forgiveness of both First Draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact.  The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness.  Therefore, the final SBA loan review decision is not based on clear error of fact or law.  Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision.  The final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 4087497306.

The Petitioner is ineligible for PPP loan forgiveness.

The final SBA loan review decision is not based on clear error of fact or law.

The Petitioner remains liable for the PPP Loan Number 4087497306.

JA0934

## **ORDER**

For the reasons discussed above, this appeal petition remains **DENIED**.

<div align="center">

**SO ORDERED.**

</div>

Brian J. Haring
U.S. Administrative Law Judge

JA0935

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Hospitality LLC,**

    Petitioner

RE: *PPP Appeal of GFI Hospitality LLC*,
SBA No. PPP-8855987106 (2024)

Decision No. **PFR-8855987106**

Issued: **September 6, 2024**

Appearances:
    William Barrett and Allen Gross, Borrowers, for the Petitioner.
    Shamia Stewart, Attorney for the Small Business Administration.

### RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-8855987106, the appeal petition of GFI Hospitality LLC (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

### PROCEDURAL HISTORY

The Petitioner was approved for a First Draw Paycheck Protection Program (PPP) loan by Manufacturers and Traders Trust Company (Lender) in the amount of $140,832.00 on April 15, 2020. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied loan forgiveness. On March 21, 2024, the Petitioner filed the instant appeal from that final SBA loan review decision.

On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Petitioner to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

On June 21, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Petitioner to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024.

JA0936

On June 25, 2024, the Order was further amended to allow the Petitioner to file an Objection to the AR by July 3, 2024, and allowing SBA to file a Response to the Petition by July 18, 2024. The Petitioner did not file an Objection to the AR.  SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

On July 31, 2024, OHA Initial Decision No. PPP-8855987106 was issued affirming the final SBA loan review decision.

On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in the final SBA loan review decision and Decision No. PPP-8855987106.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $140,832.00  in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36) & 15 U.S.C. § 636m
**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**
**The Small Business Jobs Act of 2010 (P.L. 111-240)**
**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**
**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**
**13 C.F.R. part 121 and part 134 Subpart L**
**21 Fed. Reg. 9709-9714,** December 7, 1956
**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**
**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM,** April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0937

Docket No. PFR-8855987106

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

## SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1)   The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0938

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it met the PPP 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry **when, together with its affiliates**, the business met those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the better result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0939

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans only "***with respect to eligibility***" for a "***covered loan***" for any "***business...assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "***eligible recipient***" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees ***when combined with affiliated entities***, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "***eligible recipient***" means an individual or entity that is eligible to receive a covered loan. The term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the First Draw 500 employee-size or revenue size limitations.

## **Petitioner's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

On or about April 15, 2020, the Appellant submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $56,333.00 for 36 employees; 3) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4565-4569).

The Petitioner's PPP Borrower Application Form 2483 was supplemented by an Addendum A, in which the Petitioner certified the following 4 affiliated entities and their respective 75 employees:

**Affiliates (if applicable)**

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

(AR pp. 17).

On or about April 15, 2020, the Petitioner was approved for a First Draw PPP Loan Number 8855987106 by the Lender in the amount of $140,832.00, and having executed a PPP Promissory Note, received the loan proceeds on April 26, 2020. (AR pp. 14, 18-24, and 4582).

## Petitioner's PPP Loan Forgiveness Application and Lender Review

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without

JA0942

appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

On July 7, 2021, the Petitioner submitted PPP Loan Forgiveness Application Form 3508S to the Lender.  The Petitioner certified having an assigned NAICS Code of 541611, having spent $140,832.00 on "Payroll Costs", and having 5 employees.  The Petitioner elected a Covered Period of April 26, 2020, through October 10, 2020. (AR pp. 4572-4581).

On July 8, 2021, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $140,832.00. (AR p. 14).

## SBA - Final Loan Review Decision

Following issuance of the Lender's decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4532-4533).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender.  SBA identified 20 possible affiliated entities of the Petitioner.  SBA specifically requested the Petitioner provide:

1) SBA Form 3511 (Affiliation Worksheet);

2) Comprehensive Organizational charts for any identified entity; and

3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4534-4537).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 4502-4512).

JA0943

The Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 30, 2022, SBA further requested the Petitioner provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4538-4539).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 4540-4546).

On November 14, 2022, the Petitioner responded to SBA.  The Petitioner sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities.  The Petitioner provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 4513-4522).

On May 1, 2023, June 12, 2023, and July 14, 2023, SBA requested the Petitioner provide additional detail concerning potential affiliated entities. (AR pp. 4547-4564).

On May 11, 2023, the Petitioner, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR p. 4636).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness.

SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*."  SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 14-16).

### Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 22, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

The Petitioner states that it is a Delaware LLC specializing in hotel asset management and development.  The Petitioner admits it has "NAICS Code 72 affiliates and non-NAICS Code 72 affiliates", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |

JA0945

Docket No. PFR-8855987106

| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
|---|---|---|---|
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | **GFI Hospitality LLC** | **Borrower** | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72". To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner. The Petitioner relies upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count.

Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

JA0946

**SBA's Response to the Appeal Petition**

SBA did not file a Response to the Petition.

**OHA Review and Initial Decision**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 500 EMPLOYEE SIZE STANDARD. (PFR pp. 6-7);
2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

JA0947

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR.  In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue.  Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs.  To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan.  Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;
2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;
3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and
4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners.  The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee-size determination.  The Petitioner admits the following concerning each Hotel Owner:

• **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

• **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

• **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

• **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 500 employees at the time of applying for this PPP loan.

## **PPP Loan Eligibility**

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

SBA's review and the AR supports that the Petitioner submitted a First Draw PPP Borrower Application Form 2483 on April 15, 2020, and received the loan proceeds 11 days later. The Lender approved the loan relying upon the Petitioner's certifications that it: 1) Was a LLC; 2) Had an average monthly payroll of $56,333.00 for 5 employees; and 3) Had 4 affiliated entities with less than 500 combined employees.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of April 26, 2020, through October 10, 2020; noted assigned NAICS code 541611; and had full expended all loan proceeds.. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

JA0949

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.  That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation.  This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness.  Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44)  entities and labeled the same "Gross et al".  SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest  (close familial relations) of Allen I. Gross (100% owner of Petitioner).  Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans.  All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR p. 4583-4631).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner.  SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.  The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |

| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-__lists Borrower and its affiliates__, the applicable NAICS classification, and the number of employees at the time of the loan application*" **__(Emphasis added)__**. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 541611. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

JA0951

SBA considers the totality of the circumstances when making an employee size determination.  SBA counts all individuals employed on a full-time, part-time, or other basis.  SBA includes the number of employees from any affiliates.  PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program".  SBA explicitly stated that affiliation by management exists when: "*...a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs.  This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO.  This relationship supports affiliation by management between the Hotel Owners and their respective PEOs.  When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4).  Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size.   As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count.  In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider).  PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees".*  In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic.*" The CARES Act support was limited to businesses with no more than 500 employees. It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan. Failure to consider the number of PEO employees supported would allow an entity to support more than 500 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan. For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates. In this way, Congress provided an exception to the 500 employee limitation by waving existing SBA affiliation rules. No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees. Review of the AR reflects all Hotel Owners secured PPP First Draw loans. Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First Draw PPP loan. As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size. (AR p. 4584).

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules. SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

## **PPP Loan Forgiveness**

The CARES Act provides forgiveness of both First Draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36).

JA0953

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact.  The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness.  Therefore, the final SBA loan review decision is not based on clear error of fact or law.  Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision.  The final SBA loan review decision is **AFFIRMED**.

## <u>CONCLUSION OF LAW</u>

The Petitioner was ineligible for PPP Loan Number 8855987106.

The Petitioner is ineligible for PPP loan forgiveness.

The final SBA loan review decision is not based on clear error of fact or law.

The Petitioner remains liable for the PPP Loan Number 8855987106.

## <u>ORDER</u>

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

JA0954

# United States Small Business Administration
## Office of Hearings and Appeals

**PAYCHECK PROTECTION PROGRAM APPEAL OF**:

**GFI Development Company LLC,**

Petitioner

RE: *PPP Appeal of GFI Development Company LLC*, SBA No. PPP-8839147101 (2024)

Decision No. **PFR-8839147101**

Issued: **September 6, 2024**

Appearances:

William Barrett and Allen Gross, Borrowers, for the Petitioner.
Shamia Stewart, Attorney for the Small Business Administration.

## RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-8839147101, the appeal petition of GFI Development Company LLC (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

The Petitioner (Borrower) was approved for a First Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $294,750.00 on April 15, 2020. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed the instant appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Petitioner to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, any Objection by May 28, 2024, and any Response to the Petition by June 10, 2024.

On May 24, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Petitioner to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024. The Petitioner did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA0955

On July 31, 2024, OHA Initial Decision No. PPP-8839147101 was issued affirming the final SBA loan review decision.

On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-8839147101.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $294,750.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM, April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0956

## <u>FINDINGS OF FACT & ANALYSIS</u>

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### <u>SBA and The Small Business Act</u>

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1)   The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0957

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

**The CARES Act & Economic Aid Act**

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it met the PPP 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry **when, together with its affiliates**, the business met those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the better result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0958

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

    1) Ownership;
    2) Under stock options, convertible securities, and agreements to merge;
    3) Management; and
    4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns.  Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans only "***with respect to eligibility***" for a "***covered loan***" for any "***business…assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

JA0959

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "***eligible recipient***" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees ***when combined with affiliated entities***, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "***eligible recipient***" means an individual or entity that is eligible to receive a covered loan. The term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the First Draw 500 employee-size or revenue size limitations.

## **Petitioner's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

On April 7, 2020, the Petitioner submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Petitioner: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $117,900.00 for 13 employees; and 3) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4076-4079).

On April 15, 2020, the Petitioner was approved for First Draw PPP Loan Number 8839147101 by the Lender in the amount of $294,750.00, and having executed a PPP Promissory Note, received the loan proceeds on April 20, 2020. (AR pp. 21, 39-44, and 4084).

JA0960

**Petitioner's PPP Loan Forgiveness Application and Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).  The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

On July 19, 2021, the Petitioner submitted PPP Loan Forgiveness Application Form 3508 to the Lender.  The Petitioner certified being assigned NAICS Code of 236116, having spent $672,647.00 on "Payroll Costs" for 9 employees.  The Petitioner elected a Covered Period of April 20, 2020, through October 3, 2020. (AR pp. 4084-4096).

On July 19, 2021, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $294,750.00. (AR p. 21).

**SBA - Final Loan Review Decision**

Following issuance of the Lender's decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or

partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Petitioner. SBA specifically requested the Petitioner provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4038-4041).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 824-832).

The Petitioner identified the following entities, NAICS codes, and employee counts:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **236116** | **13** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned – A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA0962

On August 30, 2022, SBA further requested the Petitioner provide it 2020 IRS Forms 941 and 2020 payroll, benefits and business tax documents. (AR pp. 4042-4043).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 4046-4051).

On November 14, 2022, the Petitioner responded to SBA. The Petitioner sought an extension of time until December 15, 2022, to file an updated Form 3511 and provided explanation concerning affiliation of other entities. The Petitioner provided SBA with a spreadsheet containing First Draw PPP funding for all entities inquired about by SBA. (AR pp. 3579-3588).

On May 1, 2023, June 12, 2023, and July 14, 2023, SBA requested the Petitioner provide additional detail concerning potential affiliated entities. (AR pp. 4058-4075).

On May 11, 2023, the Petitioner, through William Barrett, sought an extension of time until June 15, 2023, to respond to SBA. (AR pp. 3249).

On July 14, 2023, the Petitioner provided SBA with further written explanation concerning affiliation. (AR pp. 3599-3609).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 21-23).

**Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

The Petitioner states that it is a New York LLC and admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | **GFI Development Company LLC** | **Borrower** | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72". To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

JA0964

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner.  The Petitioner relies upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count. Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

## SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

## OHA Review and Initial Decision

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and  § 134.1203.

On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

## Petition for Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).  A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

JA0965

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 500 EMPLOYEE SIZE STANDARD. (PFR pp. 6-7);

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR. In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue. Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs. To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan. Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;

2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;

3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and

4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners. The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination.

The Petitioner admits the following concerning each Hotel Owner:

• **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

• **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

• **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

• **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 500 employees at the time of applying for this PPP loan.

## PPP Loan Eligibility

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

JA0967

SBA's review and the AR supports that the Petitioner submitted a First Draw PPP Borrower Application Form 2483 on April 7, 2020, and received the proceeds 7 days later. The Lender approved the loan relying upon the Petitioner's certifications that it: 1) Was a LLC; 2) Had an average monthly payroll of $117,900.00 for 13 employees; and 3) Had had 4 affiliated entities with a total of less than 500 employees.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508, elected a Covered Period of April 20, 2020, through October 3, 2020; noted assigned NAICS code 236116; and over $600,000.00 in authorized expenditures. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation. This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Petitioner). Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR p. 4097-4194).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner. SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.

The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Development Company LLC** | **Borrower** | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-__lists Borrower and its affiliates__, the applicable NAICS classification, and the number of employees at the time of the loan application*" __*(Emphasis added)*__. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Petitioner had at least 14 affiliates.  This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate.  The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 236116. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "*...a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count. In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider). PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees*". In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic*." The CARES Act support was limited to businesses with no more than 500 employees. It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan. Failure to consider the number of PEO employees supported would allow an entity to support more than 500 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan. For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates. In this way, Congress provided an exception to the 500 employee limitation by waving existing SBA affiliation rules. No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees. Review of the AR reflects all Hotel Owners secured PPP First Draw loans. Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First Draw PPP loan. As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size. (AR p. 4151).

JA0971

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules. SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

## PPP Loan Forgiveness

The CARES Act provides forgiveness of both First Draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision.

The final SBA loan review decision is **AFFIRMED**.

JA0972

### CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 8839147101.

The Petitioner is ineligible for PPP loan forgiveness.

The final SBA loan review decision is not based on clear error of fact or law.

The Petitioner remains liable for the PPP Loan Number 8839147101.

### ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**

**Brian J. Haring**
**U.S. Administrative Law Judge**

JA0973

# United States Small Business Administration
## Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**: | Decision No. **PFR-8837037110** |
| **GFI Capital Resources Group Inc.,** | |
| Petitioner | Issued: **September 6, 2024** |
| RE: *PPP Appeal of GFI Capital Resources Group Inc.*, SBA No. PPP-8837037110 (2024) | |

Appearances:

William Barrett and Allen Gross, Borrowers, for the Petitioner.
Denise Grugan, Attorney for the Small Business Administration.

## RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-8837037110, the appeal petition of GFI Capital Resources Group Inc. (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

The Petitioner was approved for a First Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $405,884.00 on April 15, 2020. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed an appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the AR by April 15, 2024, providing for the Petitioner to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024.

Following Consent Motions, the Notice and Order was amended to require the filing of the AR by July 15, 2024, any Objection by July 25, 2024, and any Response to the Petition by August 9,, 2024.

On July 15, 2024, SBA filed the AR. The Petitioner did not file an Objection to the AR and SBA filed a Response to the Petition on August 9, 2024, the close of the AR.

JA0974

On August 12, 2024, OHA Initial Decision No. PPP-8837037110 was issued affirming the final SBA loan review decision.

On August 16, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-8837037110.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-8837037110 contains clear error of law or fact to allow the Petitioner $405,884.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); and #26 (86 Fed. Reg. 3692).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0975

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA0976

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it met the PPP 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry **when, together with its affiliates**, the business met those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the better result. 15 U.S.C. § 636(a)(36)(D)(v).

JA0977

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans only "*with respect to eligibility*" for a "*covered loan*" for any "*business…assigned a North American Industry Classification System code beginning with 72*". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "***eligible recipient***" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees ***when combined with affiliated entities***, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "***eligible recipient***" means an individual or entity that is eligible to receive a covered loan. The term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Thus, the regulations governing affiliation at the time the Petitioner applied for this First Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the First Draw 500 employee-size or revenue size limitations.

## Petitioner's PPP Loan Application and Lender Approval

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

On April 13, 2020, the Petitioner submitted a First Draw PPP Borrower Application Form 2483 to the Lender which certifies the Petitioner: 1) Is an "S-Corp"; 2) Had an average monthly payroll of $162,354.00 for 14 employees; 3) Was 100% owned by Allen Gross, CEO; 4) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 7241-7244).

On April 15, 2020, the Petitioner was approved for First Draw PPP Loan Number 8837037110 by the Lender in the amount of $405,884.00, and having executed a PPP Promissory Note, received the loan proceeds on April 19, 2020. (AR pp. 25, 43-50, and 7257).

JA0979

**Petitioner's PPP Loan Forgiveness Application and Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness.  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

On July 12, 2021, the Petitioner submitted PPP Loan Forgiveness Application Form 3508 to the Lender.  The Petitioner certified having a NAICS Code of 531390, having spent $541,769.00 on "Payroll Costs", and having 14 employees.  The Petitioner elected a Covered Period of April 19, 2020, through October 3, 2020. (AR pp. 7257-7269).

On July 13, 2021, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $405,884.00. (AR p. 25).

JA0980

**SBA - Final Loan Review Decision**

Following issuance of the Lender's decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified Lender it was reviewing the Petitioner's Loan and requested documentation used to secure the loan. (AR pp. 7212-7213).

Subsequently, SBA sent the Petitioner detailed requests on August 2, 2022, August 30, 2022, October 31, 2022, January 3, 2023, March 1, 2023, June 12, 2023, and July 13, 2023, to produce documentation to clarify affiliation and the size of the Petitioner. SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organization information, operating agreements books, records, and management agreements). SBA made these requests. (AR 7214-7247).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 835-843).

The Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts:

| Entity | Petitioner's Certified Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |

JA0981

| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
|---|---|---|---|---|
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | **BORROWER** | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 500 employee limitation for First Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 25-27).

**<u>Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition</u>**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 500 employees when it applied for its First Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

Along with the certified applications (loan and forgiveness), the Petitioner argues that it is a New York corporation with no more than 409 employees and operates with 45 West Orchard Park Drive LLC as a PEO or PEO like entity.

JA0982

Further, the Petitioner has previously admitted through document production and its certified Form 3511, it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | **GFI Capital Resources Group Inc.** | **Not Identified** | **531390** |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Hospitality | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 500 employees at the time of applying for this First Draw PPP loan and/or whether it met SBA's alternative size standards. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner. The Petitioner relies upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such

an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count.

Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

**SBA's Response to the Appeal Petition**

SBA filed a Response to the Petition arguing that no PEO has been demonstrated and the final SBA loan review decision is without error.

**OHA Review and Initial Decision**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On August 12, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

JA0984

On August 16, 2024, the Petitioner filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 500 EMPLOYEE SIZE STANDARD. (PFR pp. 6-7);

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR. In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue. Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs. To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan. Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;

2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;

3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and

4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners. The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination.

JA0985

The Petitioner admits the following concerning each Hotel Owner:

- **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

- **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

- **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

- **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

- **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

- **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 500 employees at the time of applying for this PPP loan.

## PPP Loan Eligibility

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

JA0986

SBA's review and the AR supports that the Petitioner submitted a First Draw PPP Borrower Application Form 2483 on April 13, 2020, and received the proceeds 2 days later. The Lender approved the loan relying upon the Petitioner's certifications that it:  1) Was an "S-Corp"; 2) Had an average monthly payroll of $162,354.00 for 14 employees; and 3) Had 4 affiliated entities with less than 500 combined employees.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508 certified it did not qualify for "72" waiver of affiliation.  Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this First Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.  That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded First Draw PPP's 500 employee limitation.  This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness.  Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44)  entities and labeled the same "Gross et al".  SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest  (close familial relations) of Allen I. Gross (100% owner of Petitioner).  Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans.  All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 500 employee First Draw PPP limit. (AR pp. 7270-7280).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner.  SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.

The following summarizes the Form 3511:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| **GFI Capital Resources Grp. Inc.** | **BORROWER** | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-__lists Borrower and its affiliates__, the applicable NAICS classification, and the number of employees at the time of the loan application*" __*(Emphasis added)*__. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this First Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

JA0988

First Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 500 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 531390. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "*...a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count. In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider). PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees*". In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic.*" The CARES Act support was limited to businesses with no more than 500 employees. It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan. Failure to consider the number of PEO employees supported would allow an entity to support more than 500 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan. For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates. In this way, Congress provided an exception to the 500 employee limitation by waving existing SBA affiliation rules. No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees. Review of the AR reflects all Hotel Owners secured PPP First Draw loans. Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First Draw PPP loan. As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size. (AR pp. 7271-7272).

JA0990

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules. SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's First Draw 500 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this First Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

**PPP Loan Forgiveness**

The CARES Act provides forgiveness of both First Draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision. The final SBA loan review decision is **AFFIRMED**.

JA0991

## CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 8837037110.

The Petitioner is ineligible for PPP loan forgiveness.

The final SBA loan review decision is not based on clear error of fact or law.

The Petitioner remains liable for the PPP Loan Number 8837037110.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**

**Brian J. Haring**
**U.S. Administrative Law Judge**

JA0992

# COMPOSITE EXHIBIT F

## United States Small Business Administration
## Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**: <br><br> **GFI Management Services Inc.,** <br><br> Appellant <br><br> Appealed from <br> SBA PPP Loan No. 3546578504 | Issued: **July 31, 2024** <br><br> Decision No. **PPP-3546578504** |

Appearances:

William Barrett and Allen Gross, Borrowers, for the Appellant.
Denise Grugan, Attorney for the Small Business Administration.

### DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of GFI Management Services Inc. (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

### PROCEDURAL HISTORY

The Appellant (Borrower) was approved for a Second Draw Paycheck Protection Program (PPP) loan by Cross River Bank (Lender) in the amount of $60,245.00 on February 8, 2021. The Lender subsequently approved the Appellant's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 22, 2024, the Appellant filed the instant appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, providing for the Appellant to file an Objection to the same by May 28, 2024, and allowing for SBA to file a Response to the Petition by June 10, 2024.

On May 22, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024. The Appellant did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA0993

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $60,245.00 in requested Second Draw PPP loan forgiveness for PPP Loan Number 3546578504?

## APPLICABLE LAW AND POLICY

**- The Coronavirus Aid, Relief, and Economic Security (CARES) Act (P. L. 116–136)**
**- 15 U.S.C. § 636(a)(36)&(37)**
**- 15 U.S.C. § 636m(g)**
**- Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (P.L. 116–142)**
**-The Small Business Jobs Act of 2010 (P.L. 111-240)**
**- Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260**, December 27, 2020
**- 15 U.S.C. § 632(a)**
**- 21 Fed. Reg. 9709-9714,** December 7, 1956
**- PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450);**
**#7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692); and #27 (86 Fed. Reg. 3712).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**
**-SBA – Paycheck Protection Program Loan – Frequently Asked Questions (FAQ) 5, 10, 24, 63, and 72**[1]
    **- AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
    **- "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]
**-13 C.F.R. part 134 Subpart L - 13 C.F.R. §134.1201 et. seq.**

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA0994

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

JA0995

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed.  PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meet the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. 15 U.S.C. § 636(a)(36)(D)(v).

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business…assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

JA0996

The term "***eligible recipient***" means an individual or entity that is eligible to receive a covered loan. The term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Section 311 of the Economic Aid Act created a second temporary 7(a) Business Loan Program, "Paycheck Protection Program Second Draw Loans", but narrowed eligibility to applicants that: 1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses; 2) Has no more than 300 employees; and 3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

The Economic Aid Act altered the affiliation rules applicable to Second Draw PPP Loans through the creation of paragraph 7(a)(37)(E) of the Small Business Act. The same reduced the maximum employee count for a waiver of affiliation for an otherwise "***eligible entity***"[4] assigned NAICS code 72 applying for a Second Draw PPP from not more than 500 employees to not more than 300 employees.

For Second Draw PPP loans, the term "eligible entity" means any business concern, nonprofit organization, housing cooperative, veterans organization, Tribal business concern, eligible self-employed individual, sole proprietor, independent contractor, or small agricultural cooperative that:

1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses;
2) Has no more than 300 employees; and
3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, #26, and #27.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

---

[4] The term "***eligible recipient***" in First Draw loans was changed to "***eligible entity***" for Second Draw loans.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the Second Draw 300 employee size limitation.

## **Appellant's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms establishing eligibility for a PPP loan, on April 15, 2020, SBA published IFR #1, which provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs.

IFR #1 explained payroll costs consist of: "*...compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.*"

On February 25, 2021, the Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender which certifies the Appellant: 1) Is an S-Corp; 2) Has an average monthly payroll of $24,098.17 for 4 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $318,374.00 vs. Q3 2019 - $471,263.00; 4) Is identified by NAICS code 531311; and 5) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4625-4627).

The Appellant's PPP Borrower Application Form 2483 was supplemented by an Addendum A (AR p. 18), in which the Appellant certified the following 4 affiliated entities:

**GFI Management Services Inc.**
**Addendum A**

| EIN | Entity | Ownership % | First Name | Last Name | Owner's SS/EIN |
|-----|--------|-------------|------------|-----------|----------------|
| 133697176 | GFI Management Services Inc | 100.00% | Allen | Gross | 733 |
| 208961018 | GFI Development Company LLC | 99.00% | Allen | Gross | 733 |
| 208961018 | GFI Development Company LLC | 1.00% | GFI Capital Resources Group Inc | | 990 |
| 133697990 | GFI Capital Resources Group Inc | 100.00% | Allen | Gross | 733 |
| 810998455 | GFI Hospitality LLC | 99.00% | Allen | Gross | 733 |
| 810998455 | GFI Hospitality LLC | 1.00% | GFI Capital Resources | | 990 |

(AR pp. 18).

On February 24, 2021, the Appellant was approved for Second Draw PPP Loan Number 3546578504 by the Lender in the amount of $60,245.00, and having executed a PPP Promissory Note, received the loan proceeds on February 25, 2021. (AR pp. 16, 4638-4640, and 4654).

JA0999

**Appellant's PPP Loan Forgiveness Application – Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On February 25, 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Appellant certified having a NAICS Code of 531311, having spent $60,245.00 on "Payroll Costs", and having 4 employees. The Appellant elected a Covered Period of March 25, 2021, through August 11, 2021. (AR pp. 4647-4653).

On March 4, 2022, the Lender determined the Appellant should receive full loan forgiveness in the amount of $60,245.00. (AR p. 16).

**Appellant's PPP Loan Forgiveness Application – SBA Review**

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

JA1000

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4606-4607).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Appellant. SBA specifically requested the Appellant provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4608-4611).

On September 1, 2022, SBA requested the Appellant provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) 2020 state quarterly unemployment taxes for all quarters; 3) Please provide a list of employees by name with their yearly gross wages over $100K for 2020; 4) Business tax return and all supporting documentation for 2020; 5) End of year Payroll Summary for entire year 2020; 6) Payroll report for the covered period; and 7) Proof of health and retirement benefits for 2020. (AR pp. 4612-4613).

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 4614-4620)

On January 17, 2023, the Appellant provided SBA with documentation, including an updated Affiliation Worksheet Form 3511 and ".zip files" containing 38 income tax returns for affiliated entities. (AR pp. 2857-2858, 2859-2869, and *see* 19-2856).

The Appellant identified the following affiliated entities, along with associated NAICS codes/employee counts. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. The following summarizes Mr. Gross' certified Form 3511: (AR pp. 2859-2869).

| Entity | Appellant's Form 3511 (1/17/23) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Borrower | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |

JA1001

Docket No. PPP-3546578504

| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
|---|---|---|---|---|
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"

SBA noted the Appellant's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans. Further, SBA acknowledged the Appellant attempted to qualify as a small business through the industry-receipt based and/or alternative size standards, but these alternate methods of determining size are not available for Second Draw PPP loans. (AR pp. 16-17).

## **Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

JA1002

On March 22, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing "*the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan*". (Petition of Appellant).

The Appellant states that it is New York Corporation specializing in multi-family property management.  The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

|    | Entity | Business Sector? | NAICS |
|----|--------|------------------|-------|
| 1  | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2  | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3  | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4  | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5  | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6  | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7  | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8  | Broadway Development Group LLC | Not Identified | 236220 |
| 9  | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | **GFI Management Services Inc.** | Borrower | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan.  The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan.  The Appellant would be relying upon <u>Appeal of Windsor Court Hotel Partners,</u>

LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10.  That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO.  The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size.  Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

## SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

## Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD on February 25, 2021.  The Appellant received the proceeds 13 days later with the Lender relying upon the Appellant's certifications that it:  1) Was an S-Corp; 2) Had an average monthly payroll of $24,098.17.00 for 4 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $318,374.00 vs. Q3 2019 - $471,263.00; 4) Was assigned NAICS code 531311; and 5) Only had 4 affiliates.

In March of 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender, which elected a Covered Period of February 25, 2021, through August 11, 2021.  Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.  SBA found that at the time of applying for this loan, the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*."  That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation.   This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness.

JA1004

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant).

Within this affiliation family, SBA found:

1) The Appellant was among 17 affiliated entities receiving First Draw loans;

2) 12 of the affiliated entities, including the Appellant, received Second Draw loans;

3) All 12 of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother); and

4) The total employee count amount for the 12 entities exceeded the 300 employee Second Draw PPP limit. (AR p. 4921-4970).

Subsequent to the filing of the appeal petition, SBA sent detailed requests for the Appellant to produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

The Appellant submitted an updated certified Form 3511 Affiliation Worksheet to SBA. The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.

The following summarizes Mr. Gross' certified Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Management Services Inc.** | **Borrower** | **100% Owned – A. Gross** | **236116** | **3** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 531311 | 13 |

JA1005

| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
|---|---|---|---|---|
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Appellant had at least 14 affiliates.  This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate.  The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

As noted above, Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if: 1) They individually met the 300 employee limitation; 2) Received a First Draw loan; and 3) Could demonstrate a 25% reduction between comparable quarters from 2019 to 2020.

The Appellant's certified 7 entities as being affiliated for purpose of SBA's size determination. The Appellant argues these 7 entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72": 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. (AR p. 1672-1680).

The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count.  The Appellant argues that by removing the employees from such affiliates, it meets the 300 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider.

In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" *(Emphasis added)*.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return. In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities. The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns. Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |

| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
|---|---|
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this Second Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC. (AR p. 1766).

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross.  This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK

PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv).

In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA published the following FAQs:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. ... ***For a Second Draw PPP Loan, that certification means the borrower has no more than 300 employees, after applying the affiliation rules, if applicable, and the borrower meets the other eligibility requirements in subsection (c) of the interim final rule for Second Draw PPP Loans.*** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). ***(Emphasis added).***

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan. For Second Draw PPP Loans, a business that is assigned a NAICS code beginning with 72 may have no more than 300 employees per physical location and other eligibility criteria must be met.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan). As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan provided it uses its unique EIN.....

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

- ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR***

*121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.*

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation.  The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.  The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

Given the foregoing, SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

Overall, the record reflects the Appellant far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates.  As such, SBA did not commit error in determining the Appellant was an ineligible entity for this Second Draw PPP loan.

## PPP Loan Forgiveness

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).  As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact.  As such, the final SBA loan review decision is **AFFIRMED**.

JA1010

Docket No. PPP-3546578504

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 3546578504. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 3546578504.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
U.S. Administrative Law Judge

---

### NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

JA1011

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Hospitality LLC,**

     Appellant

Appealed from
SBA PPP Loan No. 5203288410

Issued:  **July 31, 2024**

Decision No. **PPP-5203288410**

Appearances:
     William Barrett and Allen Gross, Borrowers, for the Appellant.
     Shamia Stewart, Attorney for the Small Business Administration.

## DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of GFI Hospitality LLC (Appellant) is **DENIED**.  For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

The Appellant (Borrower) was approved for a Second Draw Paycheck Protection Program (PPP) loan by Manufacturers and Traders Trust Company (Lender) in the amount of $140,832.00 on February 8, 2021.   The Lender subsequently approved the Appellant's request for full PPP loan forgiveness.  The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision.  On March 26, 204, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024.  Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, providing for the Appellant to file an Objection to the same by May 28, 2024, and allowing for SBA to file a Response to the Petition by June 10, 2024.

On May 22, 2024, SBA filed the AR.  The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024.  The Appellant did not file an Objection to the AR.  SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

Page 1 of 20

JA1012

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $140,832.00 in requested Second Draw PPP loan forgiveness for PPP Loan Number 5203288410?

## APPLICABLE LAW AND POLICY

**- The Coronavirus Aid, Relief, and Economic Security (CARES) Act (P. L. 116–136)**
**- 15 U.S.C. § 636(a)(36)&(37)**
**- 15 U.S.C. § 636m(g)**
**- Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (P.L. 116–142)**
**-The Small Business Jobs Act of 2010 (P.L. 111-240)**
**- Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260**, December 27, 2020
**- 15 U.S.C. § 632(a)**
**- 21 Fed. Reg. 9709-9714,** December 7, 1956
**- PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692); and #27 (86 Fed. Reg. 3712).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**
**-SBA   – Paycheck Protection Program Loan – Frequently Asked Questions (FAQ) 5, 10, 24, 63, and 72**[1].
  **- AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
  **- "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]
**-13 C.F.R. part 134 Subpart L - 13 C.F.R. §134.1201 et. seq.**

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1013

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act.  The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1)   The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**
2)   Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors.  Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

JA1014

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

### The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meet the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. 15 U.S.C. § 636(a)(36)(D)(v).

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business...assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "*eligible recipient*" means an individual or entity that is eligible to receive a covered loan.  The term "*covered loan*" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period.  The term "*covered period*" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Section 311 of the Economic Aid Act created a second temporary 7(a) Business Loan Program, "Paycheck Protection Program Second Draw Loans", but narrowed eligibility to applicants that: 1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses; 2) Has no more than 300 employees; and 3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

The Economic Aid Act altered the affiliation rules applicable to Second Draw PPP Loans through the creation of paragraph 7(a)(37)(E) of the Small Business Act.  The same reduced the maximum employee count for a waiver of affiliation for an otherwise "*eligible entity*"[4] assigned NAICS code 72 applying for a Second Draw PPP from not more than 500 employees to not more than 300 employees.

For Second Draw PPP loans, the term "eligible entity" means any business concern, nonprofit organization, housing cooperative, veterans organization, Tribal business concern, eligible self-employed individual, sole proprietor, independent contractor, or small agricultural cooperative that:

1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses;
2) Has no more than 300 employees; and
3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, #26, and #27.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

---

[4] The term "*eligible recipient*" in First Draw loans was changed to "*eligible entity*" for Second Draw loans.

Docket No. PPP-5203288410

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the Second Draw 300 employee size limitation.

### **Appellant's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

JA1017

Docket No. PPP-5203288410

In terms establishing eligibility for a PPP loan, on April 15, 2020, SBA published IFR #1, which provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs.

IFR #1 explained payroll costs consist of: "*...compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.*"

On January 26, 2021, the Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender which certifies the Appellant: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $56,333.00 for 36 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $266,522.00 vs. Q3 2019 - $510,592.00; 4) Is identified by NAICS code 541611; and 5) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 1713-1718).

The Appellant's PPP Borrower Application Form 2483 was supplemented by an Addendum A, in which the Appellant certified the following 4 affiliated entities and their respective 75 employees:

**Affiliates (if applicable)**

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

(AR pp. 13-14).

On February 8, 2021, the Appellant was approved for Second Draw PPP Loan Number 5203288410 by the Lender in the amount of $140,832.00, and having executed a PPP Promissory Note, received the loan proceeds on February 17, 2021. (AR pp. 11, 15-23, and 1729).

JA1018

**Appellant's PPP Loan Forgiveness Application – Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On March 14, 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Appellant certified having a NAICS Code of 541611, having spent $211,704.75 on "Payroll Costs", and having 5 employees. The Appellant elected a Covered Period of February 17, 2021, through August 2, 2021. (AR pp. 1722-1728).

On March 15, 2022, the Lender determined the Appellant should receive full loan forgiveness in the amount of $140,832.00. (AR p. 11).

**Appellant's PPP Loan Forgiveness Application – SBA Review**

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

JA1019

Docket No. PPP-5203288410

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 1697-1698).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender.  SBA identified 20 possible affiliated entities of the Appellant.  SBA specifically requested the Appellant provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 1699-1702).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Appellant identified the following affiliating entities, along with associated NAICS codes/employee counts.  The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.  The following summarizes Mr. Gross' certified Form 3511: (AR pp. 1672-1680).

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA1020

On August 18, 2022, SBA requested the Appellant provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) 2020 state quarterly unemployment taxes for all quarters; 3) Please provide a list of employees by name with their yearly gross wages over $100K for 2020; 4) Business tax return and all supporting documentation for 2020; 5) End of year Payroll Summary for entire year 2020; 6) Payroll report for the covered period; and 7) Proof of health and retirement benefits for 2020. (AR pp. 1703-1705).

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 1706-1712)

On November 15, 2022, the Appellant, through William Barrett, provided a response to an SBA request for additional information concerning affiliated entities. Mr. Barrett requested until December 15, 2022, to file a response, given the scope of SBA's request. (AR pp. 1681-1691).

On December 14, 2022, the Appellant requested additional time (until January 15, 2023) to respond to SBA's request for a supplemental Form 3511. (AR pp. 1832-1833).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness.  SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"

SBA noted the Appellant's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans.  Further, SBA acknowledged the Appellant attempted to qualify as a small business through the industry-receipt based and/or alternative size standards, but these alternate methods of determining size are not available for Second Draw PPP loans. (AR pp. 11-12).

### Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision.  The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

JA1021

On March 21, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing "*the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan*". (Petition of Appellant).

The Appellant states that it is a Delaware LLC specializing in hotel asset management and development. The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | **GFI Hospitality LLC** | **Borrower** | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

JA1022

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan. The Appellant would be relying upon Appeal of Windsor Court Hotel Partners, LLC, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

### SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

### Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD on January 26, 2021. The Appellant received the proceeds 13 days later with the Lender relying upon the Appellant's certifications that it: 1) Was a LLC; 2) Had an average monthly payroll of $56,333.00 for 36 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $266,522.00 vs. Q3 2019 - $510,592.00; 4) Was assigned NAICS code 541611; and 5) Only had 4 affiliates with 75 employees.

In March of 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508S to the Lender, which elected a Covered Period of February 17, 2021, through August 2, 2021. Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

JA1023

SBA found that at the time of applying for this loan, the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant).

Within this affiliation family, SBA found:

1) The Appellant was among 17 affiliated entities receiving First Draw loans;

2) 12 of the affiliated entities, including the Appellant, received Second Draw loans;

3) All 12 of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother); and

4) The total employee count amount for the 12 entities exceeded the 300 employee Second Draw PPP limit. (AR p. 1734-1735).

Subsequent to the filing of the appeal petition, SBA sent detailed requests for the Appellant to produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.

JA1024

Docket No. PPP-5203288410

The following summarizes Mr. Gross' certified Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Appellant had at least 14 affiliates. This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

As noted above, Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if: 1) They individually met the 300 employee limitation; 2) Received a First Draw loan; and 3) Could demonstrate a 25% reduction between comparable quarters from 2019 to 2020.

The Appellant's certified 7 entities as being affiliated for purpose of SBA's size determination. The Appellant argues these 7 entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being

JA1025

assigned NAICS code "72": 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. (AR p. 1672-1680).

The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count.  The Appellant argues that by removing the employees from such affiliates, it meets the 300 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return.  In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities.  The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns.  Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this Second Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC. (AR p. 1766).

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv).

In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA published the following FAQs:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. ... ***For a Second Draw PPP Loan, that certification means the borrower has no more than 300 employees, after applying the affiliation rules, if applicable, and the borrower meets the other eligibility requirements in subsection (c) of the interim final rule for Second Draw PPP Loans.*** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). ***(Emphasis added).***

### 24. Question:

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan. For Second Draw PPP Loans, a

business that is assigned a NAICS code beginning with 72 may have no more than 300 employees per physical location and other eligibility criteria must be met.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan). As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan provided it uses its unique EIN…..

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

- ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.***

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation.   The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.  The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

Given the foregoing, SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

Overall, the record reflects the Appellant far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates.  As such, SBA did not commit error in determining the Appellant was an ineligible entity for this Second Draw PPP loan.

JA1029

**PPP Loan Forgiveness**

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 5203288410. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 5203288410.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA1031

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Development Company LLC,**

      Appellant

Appealed from
SBA PPP Loan No. 5323228408

Issued: **July 31, 2024**

Decision No. **PPP-5323228408**

Appearances:
      William Barrett and Allen Gross, Borrowers, for the Appellant.
      Shamia Stewart, Attorney for the Small Business Administration.

## DECISION

    After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of GFI Development Company LLC (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

    The Appellant (Borrower) was approved for a Second Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $294,750.00 on February 8, 2021. The Lender subsequently approved the Appellant's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

    On March 21, 2024, the Appellant filed the instant appeal from that final SBA loan review decision. On March 26, 204, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by April 15, 2024, providing for the Appellant to file an Objection to the same by April 25, 2024, and allowing for SBA to file a Response to the Petition by May 10, 2024. Following a Consent Motion, the Notice and Order was amended to require the filing of the AR by May 15, 2024, providing for the Appellant to file an Objection to the same by May 28, 2024, and allowing for SBA to file a Response to the Petition by June 10, 2024.

    On May 23, 2024, SBA filed the AR. The Notice and Order was further amended to allow for the Appellant to file an Objection to the AR by June 3, 2024, and allowing SBA to file a Response to the Petition by June 17, 2024. The Appellant did not file an Objection to the AR. SBA did not file a Response to the Petition and the AR was closed at 5:00 pm Eastern on June 17, 2024.

JA1032

Docket No. PPP-5323228408

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $294,750.00 in requested Second Draw PPP loan forgiveness for PPP Loan Number 5323228408?

## APPLICABLE LAW AND POLICY

**- The Coronavirus Aid, Relief, and Economic Security (CARES) Act (P. L. 116–136)**
**- 15 U.S.C. § 636(a)(36)&(37)**
**- 15 U.S.C. § 636m(g)**
**- Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (P.L. 116–142)**
**- The Small Business Jobs Act of 2010 (P.L. 111-240)**
**- Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260**, December 27, 2020
**- 15 U.S.C. § 632(a)**
**- 21 Fed. Reg. 9709-9714,** December 7, 1956
**- PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692); and #27 (86 Fed. Reg. 3712).**
**-13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301**
**-SBA   – Paycheck Protection Program Loan – Frequently Asked Questions (FAQ) 5, 10, 24, 63, and 72**[1].
  **- AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
  **- "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]
**-13 C.F.R. part 134 Subpart L - 13 C.F.R. §134.1201 et. seq.**

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1033

Docket No. PPP-5323228408

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act.  The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1)  The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**
2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors.  Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

JA1034

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

### The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meet the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. 15 U.S.C. § 636(a)(36)(D)(v).

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans only "**with respect to eligibility**" for a "**covered loan**" for any "**business...assigned a North American Industry Classification System code beginning with 72**". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

Specifically, Section 1102(a)(1)(D)(iv) of the CARES Act modified the definition of an "**eligible recipient**" by waiving the existing 7(a) Business Loan Program rules requiring a First Draw PPP loan applicant to establish it had no more than 500 employees **when combined with affiliated entities**, if on the date the First Draw loan was disbursed, the applicant was assigned NAICS code beginning with 72. 15 U.S.C. § 636(a)(36)(D)(iv).

The term "**eligible recipient**" means an individual or entity that is eligible to receive a covered loan. The term "**covered loan**" means a loan made under 15 U.S.C. § 636(a)(36) (a

PPP loan) during the covered period.  The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Section 311 of the Economic Aid Act created a second temporary 7(a) Business Loan Program, "Paycheck Protection Program Second Draw Loans", but narrowed eligibility to applicants that: 1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses; 2) Has no more than 300 employees; and 3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

The Economic Aid Act altered the affiliation rules applicable to Second Draw PPP Loans through the creation of paragraph 7(a)(37)(E) of the Small Business Act.  The same reduced the maximum employee count for a waiver of affiliation for an otherwise "***eligible entity***"[4] assigned NAICS code 72 applying for a Second Draw PPP from not more than 500 employees to not more than 300 employees.

For Second Draw PPP loans, the term "eligible entity" means any business concern, nonprofit organization, housing cooperative, veterans organization, Tribal business concern, eligible self-employed individual, sole proprietor, independent contractor, or small agricultural cooperative that:

1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses;
2) Has no more than 300 employees; and
3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, #26, and #27.

SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

---

[4] The term "***eligible recipient***" in First Draw loans was changed to "***eligible entity***" for Second Draw loans.

JA1036

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any its affiliates, exceed the Second Draw 300 employee size limitation.

## **Appellant's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms establishing eligibility for a PPP loan, on April 15, 2020, SBA published IFR #1, which provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower

JA1037

Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll costs.

IFR #1 explained payroll costs consist of: "...*compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation*."

On January 20, 2021, the Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender. The Appellant's PPP Borrower Application Form 2483 was supplemented by an Attachment B, in which the Appellant certified the following 4 affiliated entities and their respective 75 employees:

**Affiliates (if applicable)**

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

(AR p. 949).

On February 5, 2021, Allen I. Gross certified Affiliation Worksheet 3511. (AR pp. 1007-1010).

On February 8, 2021, the Appellant was approved for Second Draw PPP Loan Number 5323228408 by the Lender in the amount of $294,750.00, and having executed a PPP Promissory Note, received the loan proceeds on February 10, 2021. (AR pp. 18, 29-34, and 978).

## Appellant's PPP Loan Forgiveness Application – Lender Review

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary

JA1038

Docket No. PPP-5323228408

expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

On March 28, 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508EZ to the Lender. The Appellant certified having a NAICS Code of 236116, having spent $436,735.00 on "Payroll Costs", and having 12 employees. The Appellant elected a Covered Period of February 10, 2021, through July 28, 2021. (AR pp. 978-990).

On April 5, 2022, the Lender determined the Appellant should receive full loan forgiveness in the amount of $294,750.00. (AR p. 18).

## Appellant's PPP Loan Forgiveness Application – SBA Review

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

JA1039

Docket No. PPP-5323228408

On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 950-951).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender.  SBA identified 20 possible affiliated entities of the Appellant.  SBA specifically requested the Appellant provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 952-955).

On February 5, 2021, Allen I. Gross, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  Along with the previously certified Attachment B, the Appellant identified the following affiliated entities, along with associated NAICS codes/employee counts.  The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.  The following summarizes the Appellant's certified affiliates:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **236116** | **13** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 18, 2022, SBA requested the Appellant provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) State taxes; and 3) Business tax return for 2020. (AR pp. 956-957).

JA1040

On October 31, 2022, SBA requested the Appellant provide a revised Form 3511, having identified additional entities likely affiliated with the Appellant and other records (missing tax returns, for example). (AR pp. 985-964)

On November 14, 2022, the Appellant, through William Barrett, provided a response to an SBA request for additional information concerning affiliated entities. Mr. Barrett requested until December 15, 2022, to file a response, given the scope of SBA's request. (AR pp. 940-943).

On January 17, 2023, the Appellant provided SBA with documentation. (*See* AR pp. 1093 and 35-939).

On May 11, 2023, the Appellant requested additional time (until June 15, 2023) to respond to SBA's request for a supplemental Form 3511. (AR p. 1093).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness.  SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"

SBA noted the Appellant's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans.  Further, SBA acknowledged the Appellant attempted to qualify as a small business through the industry-receipt based and/or alternative size standards, but these alternate methods of determining size are not available for Second Draw PPP loans. (AR pp. 11-12).


## **Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision.  The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Appellant filed an appeal petition with OHA seeking full loan forgiveness, arguing "*the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan*". (Petition of Appellant).

The Appellant states that it is a New York LLC specializing in residential, hospitality, commercial and retail constructions projects.  The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

|   | Entity | Business Sector? | NAICS |
|---|--------|------------------|-------|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | **GFI Development Company LLC** | **Borrower** | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Appellant frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan.  The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan.  The Appellant would be relying upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10.  That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

JA1042

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

## SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

## Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD on January 26, 2021. The Appellant received the proceeds with the Lender relying upon the Appellant's certifications that it was an eligible entity, including that it only had 4 affiliates.

On March 28, 2022, the Appellant submitted PPP Loan Forgiveness Application to the Lender, which certified the Appellant having a NAICS Code of 236116, having spent $436,735.00 on "Payroll Costs", and having 12 employees. The Appellant elected a Covered Period of February 10, 2021, through July 28, 2021. Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Appellant).

Within this affiliation family, SBA found:

1) The Appellant was among 17 affiliated entities receiving First Draw loans;
2) 12 of the affiliated entities, including the Appellant, received Second Draw loans;
3) All 12 of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother); and
4) The total employee count amount for the 12 entities exceeded the 300 employee Second Draw PPP limit. (AR p. 1043-1092).

Subsequent to the filing of the appeal petition, SBA sent detailed requests for the Appellant to produce documentation to clarify affiliation and the size of the Appellant. SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.

The following summarizes Mr. Gross' certified Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 236116 | 5 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **541611** | **13** |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |

| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Appellant had at least 14 affiliates. This is seen through the Appellant's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Appellant certified and later identified that when combined with its affiliates, the Appellant had, at least, 902 employees.

As noted above, Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if: 1) They individually met the 300 employee limitation; 2) Received a First Draw loan; and 3) Could demonstrate a 25% reduction between comparable quarters from 2019 to 2020.

The Appellant's certified 7 entities as being affiliated for purpose of SBA's size determination. The Appellant argues these 7 entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72": 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. (AR p. 1672-1680).

The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count. The Appellant argues that by removing the employees from such affiliates, it meets the 300 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

JA1045

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return. In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities. The Appellant's submissions included, among other documents, organizational charts and Federal income tax returns. Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC; Lana 5 Beekman AT LLC; Lana Acquisition LLC; or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or 701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this Second Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;

JA1046

2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;

3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;

4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;

5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.

6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC. (AR p. 1766).

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv).

In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA published the following FAQs:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second

Draw PPP Loans. … **For a Second Draw PPP Loan, that certification means the borrower has no more than 300 employees, after applying the affiliation rules, if applicable, and the borrower meets the other eligibility requirements in subsection (c) of the interim final rule for Second Draw PPP Loans.** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). **(Emphasis added).**

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

  **Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan. For Second Draw PPP Loans, a business that is assigned a NAICS code beginning with 72 may have no more than 300 employees per physical location and other eligibility criteria must be met.

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan). As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees (or 300 employees for a Second Draw PPP loan) is permitted to apply for a separate PPP loan provided it uses its unique EIN…..

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

• **The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.**

JA1048

Docket No. PPP-5323228408

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation. The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size. The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

Given the foregoing, SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

Overall, the record reflects the Appellant far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates. As such, SBA did not commit error in determining the Appellant was an ineligible entity for this Second Draw PPP loan.

**PPP Loan Forgiveness**

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 5323228408. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 5323228408.

JA1049

Docket No. PPP-5323228408

## **ORDER**

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision.  I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

**Brian J. Haring**
**U.S. Administrative Law Judge**

JA1050

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA1051

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Broadway Construction Group LLC,**

      Appellant

Appealed from
SBA PPP Loan No. 9408398410

Issued: **August 8, 2024**

Decision No. **PPP-9408398410**

Appearances:
> William Barrett and Allen Gross, Borrowers, for the Appellant.
> Lorena Solis, Attorney for the Small Business Administration.

## INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record (AR), the appeal petition of Broadway Construction Group LLC (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## SUMMARY OF DECISION

The Appellant (Borrower) was approved for a Second Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $1,028,307.00 on February 17, 2021. The Lender subsequently approved the Appellant's request for full PPP loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Appellant filed the instant appeal with the SBA Office of Hearings and Appeals (OHA) from that final SBA loan review decision.

The Appellant was an ineligible entity at the time of applying for this Second Draw PPP loan due to exceeding the 300 employee count when considered along with its affiliated entities. The Appellant, as an ineligible entity, is precluded from PPP loan forgiveness.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $1,028,307.00 in requested Second Draw PPP loan forgiveness?

Page 1 of 18

JA1052

Docket No. PPP-9408398410

## APPLICABLE LAW AND POLICY

- The Coronavirus Aid, Relief, and Economic Security (CARES) Act (P. L. 116–136)
- 15 U.S.C. § 636(a)(36)&(37)
- 15 U.S.C. § 636m(g)
- Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (P.L. 116–142)
- The Small Business Jobs Act of 2010 (P.L. 111-240)
- Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260, December 27, 2020
- 15 U.S.C. § 632(a)
- 21 Fed. Reg. 9709-9714, December 7, 1956
- PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692); and #27 (86 Fed. Reg. 3712).
- 13 C.F.R. § 121.101-.106; 13 C.F.R. § 121.201 & 13 C.F.R. §121.301
- SBA   – Paycheck Protection Program Loan – Frequently Asked Questions (FAQ) 5, 10, 24, 63, and 72[1].
  - AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM, April 3, 2020[2]
  - "Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act" (January 14, 2021)[3]
- 13 C.F.R. part 134 Subpart L - 13 C.F.R. §134.1201 et. seq.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1).

The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1053

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the NAICS Manual-United States, which includes definitions for each industry and assigns codes to all economic activity within twenty broad sectors. 13 C.F.R. § 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. Annually, SBA publishes a full table matching a size standard with each NAICS Industry in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

JA1054

**The CARES Act & Economic Aid Act**

On March 27, 2020, the CARES Act became law. P.L.116-136 with Section 1102 amending Section 7(a) of the Small Business Act to establish the PPP and Section 1106 amending Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP is a temporary SBA 7(a) Business Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis by helping businesses keep their workers paid and employed. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) Business Loans. 15 U.S.C. § 636(a)(36)(B).

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it met the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the size standard yielding the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

The CARES Act waived SBA's 7(a) Business Loan Program affiliation rules for PPP loans for an "***eligible recipient***" only "***with respect to eligibility***" for a "***covered loan***" for any "***business…assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I).

The term "***eligible recipient***" means an individual or entity that is eligible to receive a covered loan. The term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. The term "***covered period***" means the period beginning on February 15, 2020 and ending on June 30, 2021. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Section 311 of the Economic Aid Act created Second Draw PPP loans as an additional temporary 7(a) Business Loan Program. The term "***eligible recipient***" from First Draw loans was changed to "***eligible entity***" for Second Draw loans.

JA1055

Second Draw PPP loan eligibility was narrowed to only include applicants that: 1) Previously received a First Draw PPP loan and will or has used the full amount only for authorized uses; 2) Has no more than 300 employees; and 3) Can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

The Economic Aid Act created paragraph 7(a)(37)(E) of the Small Business Act to alter the affiliation rules applicable to Second Draw PPP loans. The same reduced the maximum employee count for the limited waiver of affiliation for an otherwise "***eligible entity***" assigned NAICS code 72 to no more than 300 employees. 15 U.S.C. § 636(a)(37)(A)(iv) and (O).

Prior to accepting applications for PPP loans, SBA noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers. SBA defined how all PPP borrowers size would be evaluated, as follows: 1) Ownership; 2) Under stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest. "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM".

SBA reinforced use of these 4 tests through subsequent issuance of IFRs #4, #7, and #26.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

JA1056

Docket No. PPP-9408398410

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceeded the Second Draw 300 employee size or revenue size limitations.

**Appellant's PPP Loan Application and Lender Approval**

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

In terms of establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form with a PPP lender.

On or about February 17, 2021, the Appellant submitted a Second Draw PPP Borrower Application Form 2483 to the Lender which certifies the Appellant: 1) Is a Limited Liability Company (LLC); 2) Had 41 employees; 3) Had a 25% reduction in gross receipts between comparable quarters of 2020 and 2019; 4) Is assigned by NAICS code 236220; and 5) Answered "NO" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 1584, 1595 and *see* 1569).

On February 17, 2021, the Appellant was approved for Second Draw PPP Loan Number 9408398410 by the Lender in the amount of $1,028,307.00, and having executed a PPP Promissory Note, received the loan proceeds on February 18, 2021. (AR pp. 18, 29-34, 1569, and Supplement to AR Exhibit C).

**Appellant's PPP Loan Forgiveness Application – Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

JA1057

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b) and (g). On March 25, 2022, the Appellant submitted PPP Loan Forgiveness Application Form 3508 to the Lender. The Appellant certified having a NAICS Code of 236220, having spent $1,696,653.005 on "Payroll Costs", and having 38 employees. The Appellant elected a Covered Period of February 18, 2021, through August 5, 2021. (AR pp. 1569-1581).

On March 25, 2022, the Lender determined the Appellant should receive full loan forgiveness in the amount of $1,028,307.00. (AR p. 18).

## **Appellant's PPP Loan Forgiveness Application – SBA Review**

Following issuance of a lender decision, the SBA OCA may issue a final SBA loan review decision, which is an official written decision issued by the SBA OCA which may find, among other reasons, the Appellant was ineligible for the PPP loan amount received, is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision, or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2-3).

JA1058

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2). On June 21, 2022, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 1554-1555).

Between August 2, 2022, and October 31, 2022, SBA made several requests through Lender for additional information to support Appellant's request for forgiveness. (AR 1556-1568).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Appellant, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Appellant argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24. (AR pp. 893-901). The Appellant identified the following affiliated entities among the entities identified by SBA, along with each entities associated NAICS code/employee count:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

The Appellant submitted to SBA its 2018 and 2019 IRS Forms 1065. The forms reflect the Appellant uses a calendar year and certify, on both tax years Schedule K-1, that Allen Gross owned 70% of the Appellant in 2018 and 2019. (AR p. 940 and 973).

On February 20, 2024, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness. SBA found the Appellant, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*" SBA noted the Appellant's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 18-19).

### Appellant's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Appellant filed an appeal petition seeking full loan forgiveness, arguing the final SBA loan review decision was in error, as it did not have more than 300 employees when it applied for this loan. The Appellant states that it is a New York LLC specializing in residential, hospitality, commercial and retail construction projects. The Appellant admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Hospitality | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

JA1060

The Appellant frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Appellant frames the issue as being solely related to whether it had no more than 300 employees at the time of applying for this Second Draw PPP loan. The Appellant argues that under SBA's affiliation rules, SBA cannot attribute to its employee count any employees of its affiliated entities when the affiliated entity is conducting business under assigned NAICS codes beginning with "72".

The Appellant relies on FAQ #24, which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Appellant appears to argue the employees of the hotel management companies (those with a NAICS code of "72) should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan. The Appellant would be relying upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Appellant argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Appellant's employee count.

Essentially, the Appellant argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Appellant for purposes of determining size. Of note, the Appellant does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

JA1061

## SBA's Response to the Appeal Petition

SBA filed a Response to the Petition which argues the Appellant was ineligible for this Second Draw PPP loan. SBA notes the AR supports the Appellant, when considered with its affiliates, far exceeded the 300 employee limit for Second Draw PPP loan eligibility. SBA points to FAQ #24 to support the decision in the final SBA loan review decision that a borrower must count the employees of its affiliates even when the affiliate is individually excluded from affiliation under PPP. SBA further argues that when a PPP borrower utilizes a management company, the employees of the management company are employees of the PPP borrower for purposes of payroll costs (eligibility/loan amount) and affiliation when the management company does not seek a PPP loan.

## Appellant's PPP Loan Eligibility and Forgiveness

The Appellant submitted a Second Draw PPP Borrower Application Form 2483-SD and received the proceeds on March 18, 2021. The Lender approved the loan by relying upon the Appellant's certifications that it: 1) Is a LLC; 2) Had 41 employees; 3) Had a 25% reduction in gross receipts between comparable quarters of 2020 and 2019; 4) Is assigned by NAICS code 236220; and 5) Had no affiliates.

The Appellant's certified PPP Loan Forgiveness Application Form 3508 certified the Appellant's assignment of NAICS code of 236220, having spent $1,696,653.005 on "Payroll Costs", having 38 employees, and a Covered Period of February 18, 2021, through August 5, 2021. Following review, the Lender determined the Appellant should receive full loan forgiveness.

Consistent with its obligation to review the Appellant's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Appellant with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Appellant, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Appellant, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Appellant ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Appellant did not meet any existing alternative size standard and the Appellant admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest of Allen I. Gross (70% owner of Appellant). Within this affiliation family, SBA found the Appellant was among 17 affiliated entities receiving Second Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeds the 300 employee Second Draw PPP limit. (AR pp. 1582-1631).

JA1062

SBA requested the Appellant produce documentation to clarify affiliation and the size of the Appellant.  SBA specifically sought specific and detailed information about the Appellant and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Appellant identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Appellant per SBA issued PPP FAQ #24.  The following summarizes the Form 3511:

| Entity | Appellant's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

Based upon the Appellant's certified Form 3511, PPP Borrower Application Form 2483, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Appellant had at least 15 affiliates.  This is seen through the Appellant's majority owner, Allen I. Gross (70%), having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate.  The Appellant certified and later identified that when combined with its affiliates, the Appellant had more than 900 employees.

JA1063

Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if: 1) They individually met the 300 employee limitation; 2) Received a First Draw loan; and 3) Could demonstrate a 25% reduction between comparable quarters from 2019 to 2020.

The Appellant certified 7 entities being affiliated for purpose of SBA's size determination. The Appellant argues these 7 specific entities must be excluded for purposes of determining the number of employees affiliated with the Appellant due to each being assigned NAICS code "72", to-wit: 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC. The Appellant argues that as these 7 entities are operated by a Professional Employer Organization (PEO) or similar organization, they should not be included in its affiliated employee count. The Appellant argues that by removing the employees from such affiliates, it meets the 300 employee limitation.

In terms of PPP eligibility, SBA recognized that some eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In those cases, the payroll documentation provided by the payroll provider indicating the amount of wages and payroll taxes reported to the IRS by the payroll provider for the otherwise eligible borrower's employees will be considered acceptable PPP loan payroll documentation. *See* FAQ #10.

SBA further clarified through FAQ #72, that "***payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.***" ***(Emphasis added)***.

That is, when a PPP borrower utilizes a PEO or similar payroll provider, SBA will accept those expenses related to employees paid for by the borrower as PPP qualifying payroll costs. SBA specifically identified the following "relevant information" needed to establish qualifying PEO payroll costs from a borrower, as follows: 1) Schedule R (Form 941); 2) Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941); and 3) Employer's Quarterly Federal Tax Return. In recognizing the potential for a lack of such documentation from similar payroll providers, SBA allows a borrower to submit a statement from the payroll provider documenting the amount of wages, payroll, and tax. (*Id.*).

SBA made it clear to all PPP applicants that when they include the expenses of PEO employees as their own PPP qualifying payroll costs, the employees generating the payroll costs are not considered employees of the PEO, especially when the PEO utilized the employees to obtain a PPP loan.

The record reflects the Appellant submitted voluminous documents to SBA concerning the Appellant's potential for affiliation with 43 other entities. The Appellant's submissions

included, among other documents, organizational charts and Federal income tax returns. Of note, the Appellant did not submit for any of its "72" affiliates Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers (attached to PEO's Form 941), or a statement from the payroll provider documenting the amount of wages, payroll, and tax.

Accepting the Appellant's argument in the absence of supporting documentation, SBA's review reflects the following concerning the potential name and ownership of any possible PEOs for the Appellant's identified 7 NAICS code "72" affiliated entities:

| Entity | Possible PEO(s) |
|---|---|
| 1186 BROADWAY TENANT LLC | 1186 Broadway II, LLC |
| 45 West Orchard Park Drive LLC | 45 West Orchard Park JV LLC |
| 5 Beekman Master Tenant LLC<br>5 Beekman Hotel Owner LLC | 5 Beekman JV LLC; Lana 5 Beekman LLC;<br>Lana 5 Beekman AT LLC; Lana Acquisition LLC;<br>or 5 Beekman AT LLC |
| 701 East Palm Canyon Lessee LLC | 701 East Palm Canyon Pledgor LLC; or<br>701 East Palm Canyon Associates LLC |
| Breslin Restaurant Group LLC | 1186 Broadway II, LLC |
| Idlewild Realty LLC | Idlewild JV LLC; Idlewild Mezz LLC or<br>Idlewild Realty Associates LLC |

The documentation submitted by the Appellant concerning these possible PEOs reflects that, at the time of applying for this Second Draw PPP loan:

1) 1186 Broadway II, LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 1186 Broadway Tenant LLC;
2) 45 West Orchard Park JV LLC was majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 45 West Orchard Park JV LLC;
3) 5 Beekman JV LLC, Lana 5 Beekman LLC, Lana 5 Beekman AT LLC, Lana Acquisition LLC, and 5 Beekman AT LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 5 Beekman Master Tenant LLC and 5 Beekman Hotel Owner LLC;
4) 701 East Palm Canyon Pledgor LLC and 701 East Palm Canyon Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC;
5) Idlewild JV LLC is 75% owned by GFI Capital Holdings LLC, which is 100% owned by GFI Real Estate Limited, which is 100% owned by GFI Properties Holdings LLC, which is 98.1355% owned by Allen I. Gross.
6) Idlewild Mezz LLC and Idlewild Realty Associates LLC were majority owned substantially similar (majority control/ownership by Allen I. Gross) to Appellant's admitted affiliate 701 East Palm Canyon Lessee LLC.

JA1065

The record clearly reflects that each and every possible PEO for 1186 BROADWAY TENANT LLC; 45 West Orchard Park Drive LLC; 5 Beekman Master Tenant LLC; 5 Beekman Hotel Owner LLC; 701 East Palm Canyon Lessee LLC; Breslin Restaurant Group LLC; and Idlewild Realty LLC are majority owned in almost exactly the same percentages or at least majority owned/managed/controlled by Allen I. Gross. This renders any potential PEO entity as an affiliate of the Appellant by virtue of the common majority ownership of Allen I. Gross.

The limited affiliation exclusion found at 13 C.F.R. § 121.103(b)(4) applies only when affiliation is found because a company is using the services of a Professional Employer Organization (PEO), not when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726.

The affiliation exclusion under 13 C.F.R. § 121.103(b)(4) is applicable to PPP, as seen through the CARES Act creation of PPP as a temporary 7(a) loan program, SBA's published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM (April 3, 2020), FAQ 5, FAQ 24, FAQ 63, and most importantly, 15 U.S.C. § 636(a)(36)(D)(iv). In order to help clarify expanded PPP eligibility and the role of affiliation in determining the size of a PPP applicant, SBA's FAQs provide:

5. **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

**Answer:** Yes. Borrowers must apply the affiliation rules, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. ... ***For a Second Draw PPP Loan, that certification means the borrower has no more than 300 employees, after applying the affiliation rules, if applicable, and the borrower meets the other eligibility requirements in subsection (c) of the interim final rule for Second Draw PPP Loans.*** SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2). *(Emphasis added).*

**24**. **Question:**

How do the $10 million cap (or $2 million cap for a Second Draw PPP Loan) and affiliation rules work for hotels and restaurants (and any business assigned a North American Industry Classification System (NAICS) code beginning with 72?

**Answer:**

Any single business entity that is assigned a NAICS code beginning with 72 (including hotels and restaurants) and that employs not more than 500 employees per physical location is eligible to receive a First Draw PPP Loan.

JA1066

In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees. As a result, if each hotel or restaurant location owned by a parent business is a separate legal business entity, each hotel or restaurant location that employs not more than 500 employees is permitted to apply for a separate PPP loan provided it uses its unique EIN.....

**Example 3.** Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.

- ***The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y. Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards, as explained in FAQ #2.***

The Appellant relies upon FAQ #24 and matches, exactly, Company Z in FAQ #24. Whether their affiliate operates as a PEO or not is irrelevant, given the previously identified independent basis for affiliation. The Appellant's argument concerning the exclusion of PEO employees from its NAICS code "72" affiliates fails to account for the clear affiliation of each PEO to the majority ownership, managerial control, and/or close familial relationship of owners underlying the SBA determination of its size.

The PEO employees must be counted towards the size of the Appellant given their independent affiliation with the Appellant through common majority stock ownership/managerial control. 13 C.F.R. § 121.103(a-c) and 15 U.S.C. § 636(a)(D)(iv).

The record reflects the Appellant far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard.

As such, SBA did not commit error in determining the Appellant was an ineligible entity for this Second Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Appellant.

JA1067

**PPP Loan Forgiveness**

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact.  As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 9408398410. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 9408398410.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision.  I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Brian J. Haring
**U.S. Administrative Law Judge**

JA1068

---

### NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, _solely within the Administrator's discretion_, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA1069

# COMPOSITE EXHIBIT G

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Management Services Inc.,**

    Petitioner

RE: *PPP Appeal of GFI Management Services Inc.*, SBA No. PPP-3546578504 (2024)

Decision No. **PFR-3546578504**

Issued: **September 11, 2024**

Appearances:
    William Barrett and Allen Gross, Borrowers, for the Petitioner.
    Denise Grugan, Attorney for the Small Business Administration.

### RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-3546578504, the appeal petition of GFI Management Services Inc. (Petitioner/Appellant/Borrower) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

### SUMMARY OF DECISION

The Petitioner was approved for a Second Draw Paycheck Protection Program (PPP) loan by Cross River Bank (Lender) in the amount of $60,245.00 on February 8, 2021. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 22, 2024, the Petitioner filed an appeal from that final SBA loan review decision arguing the Final SBA Loan Review Decision was clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

On July 31, 2024, OHA Initial Decision No. PPP-9408398410 was issued affirming the final SBA loan review decision. On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-9408398410.

The Petitioner was an ineligible entity at the time of applying for this Second Draw PPP loan due to exceeding the 300 employee count when considered along with its affiliated entities. The Petitioner, as an ineligible entity, is precluded from PPP loan forgiveness.

JA1070

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $60,245.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
 -15 U.S.C. § 636(a)(36 & 37) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692), and #27 (86 Fed. Reg. 3712).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24**[1]**.**
 - **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
 - **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1071

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). Through the Administrator, SBA is authorized to make rules and regulations to carry out the policies and provisions of the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 634(b)(6).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA1072

2)  Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors.  Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136.  Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).  The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

Section 7(a) of the Small Business Act authorizes SBA to make general business loans to qualified small businesses. 15 U.S.C. § 636(a) and 13 C.F.R. § 120.1.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act:

1)  To establish the PPP, a temporary SBA 7(a) business loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. 15 U.S.C. § 636(a)(36), (37); and
2)  Provides the Administrator "may" guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a "maximum"—but not a minimum—loan amount. See 15 U.S.C. 636(a)(36)(B), (E).

Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

JA1073

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F) and (37).

Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012). The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

For Second Draw loans, a borrower was generally eligible if it received a First Draw loan, had 300 or fewer employees, could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020, and used/will use the full amount of the First Draw loan prior to receipt of the Second Draw loan proceeds. 15 U.S.C. § 636(a)(36-37), IFR #26 and #27.

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

Accordingly, SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

JA1074

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act and corresponding amendments through the Economic Aid Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans for eligible recipients or eligible entities only "***with respect to eligibility***" for a "***covered loan***" for any "***business...assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (37)..

The CARES Act defines a First Draw PPP "covered loan" as a "loan made under" 15 U.S.C. § 636(a)(36), while a Second Draw PPP "covered loan" is one "made under" 15 U.S.C. § 636(a)(37). 15 U.S.C. § 636(a)(36)(A)(ii) and 15 U.S.C. § 636(a)(37)(A)(ii).

The CARES Act defines an "eligible recipient" as an individual or entity that is eligible to receive a First Draw PPP covered loan. 15 U.S.C. § 636(a)(36)(A)(iv).

The Economic Aid Act amended the CARES Act to define an "eligible entity" as a "business concern" eligible for a Second Draw PPP loan that "employes not more than 300 employees" and demonstrates a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv).

For First Draw PPP loans, the term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. For Second Draw PPP loans, term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(37) (a PPP loan) during the covered period. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

JA1075

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the Second Draw 300 employee-size limitation.

## Petitioner's PPP Loan Application and Lender Approval

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

Businesses applying for a Second Draw PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and IFR #27.

On February 25, 2021, the Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender which certifies the Petitioner: 1) Is an S-Corp; 2) Has an average monthly payroll of $24,098.17 for 4 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $318,374.00 vs. Q3 2019 - $471,263.00; 4) Is identified by NAICS code 531311; and 5) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 4625-4627).

The Petitioner's PPP Borrower Application Form 2483 was supplemented by an Addendum A (AR p. 18), in which the Petitioner certified the following 4 affiliated entities:

**GFI Management Services Inc.**
**Addendum A**

| EIN | Entity | Ownership % | First Name | Last Name | Owner's SS/EIN |
|-----|--------|-------------|------------|-----------|----------------|
| 133697176 | GFI Management Services Inc | 100.00% | Allen | Gross | 733 |
| 208961018 | GFI Development Company LLC | 99.00% | Allen | Gross | 733 |
| 208961018 | GFI Development Company LLC | 1.00% | GFI Capital Resources Group Inc | | 990 |
| 133697990 | GFI Capital Resources Group Inc | 100.00% | Allen | Gross | 733 |
| 810998455 | GFI Hospitality LLC | 99.00% | Allen | Gross | 733 |
| 810998455 | GFI Hospitality LLC | 1.00% | GFI Capital Resources | | 990 |

(AR pp. 18).

JA1076

In terms establishing eligibility for a PPP loan, IFR #1 provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483.

On February 24, 2021, the Petitioner was approved for Second Draw PPP Loan Number 3546578504 by the Lender in the amount of $60,245.00, and having executed a PPP Promissory Note, received the loan proceeds on February 25, 2021. (AR pp. 16, 4638-4640, and 4654).

**Petitioner's PPP Loan Forgiveness Application and Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

On February 25, 2022, the Petitioner submitted PPP Loan Forgiveness Application Form 3508S to the Lender. The Petitioner certified having a NAICS Code of 531311, having spent $60,245.00 on "Payroll Costs", and having 4 employees. The Petitioner elected a Covered Period of March 25, 2021, through August 11, 2021. (AR pp. 4647-4653).

On March 4, 2022, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $60,245.00. (AR p. 16).

JA1077

## SBA - Final Loan Review Decision

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request. SBA's loan forgiveness review process includes a simultaneous review of the Appellant's underlying eligibility for the amount of PPP loan received (loan eligibility) and documentation to support authorized expenditures to allow forgiveness (loan forgiveness). 13 C.F.R. § 134.1201(b)(2)&(3).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4606-4607).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Petitioner. SBA specifically requested the Petitioner provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4608-4611).

On September 1, 2022, SBA requested the Petitioner provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) 2020 state quarterly unemployment taxes for all quarters; 3) Please provide a list of employees by name with their yearly gross wages over $100K for 2020; 4) Business tax return and all supporting documentation for 2020; 5) End of year Payroll Summary for entire year 2020; 6) Payroll report for the covered period; and 7) Proof of health and retirement benefits for 2020. (AR pp. 4612-4613).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 4614-4620)

On January 17, 2023, the Petitioner provided SBA with documentation, including an updated Affiliation Worksheet Form 3511 and ".zip files" containing 38 income tax returns for affiliated entities. (AR pp. 2857-2858, 2859-2869, and *see* 19-2856).

The Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. The following summarizes Mr. Gross' certified Form 3511: (AR pp. 2859-2869).

| Entity | Petitioner's Form 3511 (1/17/23) |
| --- | --- |

Docket No. PFR-3546578504

| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
|---|---|---|---|---|
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Borrower | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"

SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans. Further, SBA acknowledged the Petitioner attempted to qualify as a small business through the industry-receipt based and/or alternative size standards, but these alternate methods of determining size are not available for Second Draw PPP loans. (AR pp. 16-17).

## **Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

An appeal of a final SBA loan review decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 C.F.R. §134.1202(a). Here, the final SBA loan review decision was issued to the Lender and received by the Petitioner on March 4, 2022. The appeal petition was filed by initiation on the OHA Portal on March 22, 2024, which is within the 30-day time requirement. Accordingly, the appeal petition was timely.

JA1079

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).  Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

On March 22, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing "*the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan*". (Petition of Appellant).

The Petitioner states that it is New York Corporation specializing in multi-family property management.  The Petitioner admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | **GFI Management Services Inc.** | Borrower | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

JA1080

Docket No. PFR-3546578504

The Petitioner frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner appears to argue the employees of the hotel management companies (those with a NAICS code of "72) should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan. The Petitioner would be relying upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Petitioner argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Petitioner's employee count.

Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size. Of note, the Petitioner does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

SBA did not file a Response to the Petition.

## <u>OHA Review and Initial Decision</u>

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203. On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

JA1081

## Petition for Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 300 EMPLOYEE SIZE STANDARD. (PFR pp. 6-8);
2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR. In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue. Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs. To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan.

Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;
2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;
3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and
4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners. The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination. The Petitioner admits the following concerning each Hotel Owner:

• **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

• **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

• **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

• **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

JA1083

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 300 employees at the time of applying for this PPP loan.

**PPP Loan Eligibility**

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

SBA's review and the AR supports that the Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD on February 25, 2021, and received the proceeds 13 days later. The Lender approved the loan relying upon the Petitioner's certifications that it: 1) Was an S-Corp; 2) Had an average monthly payroll of $24,098.17.00 for 4 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $318,374.00 vs. Q3 2019 - $471,263.00; 4) Was assigned NAICS code 531311; and 5) Only had 4 affiliates.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of March 25, 2021, through August 11, 2021; noted assigned NAICS code 531311; and had full expended all loan proceeds. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

SBA's loan forgiveness review process includes an evaluation of both the applicant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness. *See* 13 C.F.R. § 134.1201(b)(2).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 4606-4607).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Petitioner. SBA specifically requested the Petitioner provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 4608-4611).

On September 1, 2022, SBA requested the Petitioner provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) 2020 state quarterly unemployment taxes for all quarters; 3) Please provide a list of

employees by name with their yearly gross wages over $100K for 2020; 4) Business tax return and all supporting documentation for 2020; 5) End of year Payroll Summary for entire year 2020; 6) Payroll report for the covered period; and 7) Proof of health and retirement benefits for 2020. (AR pp. 4612-4613).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 4614-4620)

On January 17, 2023, the Petitioner provided SBA with documentation, including an updated Affiliation Worksheet Form 3511 and ".zip files" containing 38 income tax returns for affiliated entities. (AR pp. 2857-2858, 2859-2869, and *see* 19-2856).

The Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts.  The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.  The following summarizes Mr. Gross' certified Form 3511: (AR pp. 2859-2869).

| Entity | Petitioner's Form 3511 (1/17/23) | | | |
| --- | --- | --- | --- | --- |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Borrower | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA1085

Consistent with its obligation to review the Petitioner's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Petitioner). Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans.

All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 300 employee Second Draw PPP limit.

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner. SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. The following summarizes the Form 3511:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |

| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
|---|---|---|---|---|
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-__lists Borrower and its affiliates__, the applicable NAICS classification, and the number of employees at the time of the loan application*" __*(Emphasis added)*__. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 300 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination __only occurs__ when the __borrower is assigned NAICS code 72__. Here, the Petitioner certified its NAICS code as 531311. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "*…a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs. When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count. In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider). PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees".* In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic.*"  The CARES Act support was limited to businesses with no more than 500 employees.  It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan.  Failure to consider the number of PEO employees supported would allow an entity to support more than 300 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan.  For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates.  In this way, Congress provided an exception to the 300 employee limitation by waving existing SBA affiliation rules.  No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees.  Review of the AR reflects all Hotel Owners secured PPP First Draw loans.  Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First or Second Draw PPP loan.  As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size.

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules.  SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard.  As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this Second Draw PPP loan.  SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

JA1089

**PPP Loan Forgiveness**

The CARES Act provides forgiveness of Second Draw PPP loans to an eligible entity on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36-37).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision. The final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 3546578504. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 3546578504.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

SO ORDERED.

Brian J. Haring
U.S. Administrative Law Judge

JA1090

# United States Small Business Administration
## Office of Hearings and Appeals

---

**PAYCHECK PROTECTION PROGRAM
APPEAL OF**:

**GFI Hospitality LLC,**

     Petitioner

RE: *PPP Appeal of GFI Hospitality LLC*,
SBA No. PPP-5203288410 (2024)

Decision No. **PFR-5203288410**

Issued: **September 11, 2024**

---

Appearances:
>William Barrett and Allen Gross, Borrowers, for the Petitioner.
>Shamia Stewart, Attorney for the Small Business Administration.

## RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-5203288410, the appeal petition of GFI Hospitality LLC (Petitioner/Appellant/Borrower) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## SUMMARY OF DECISION

The Petitioner was approved for a Second Draw Paycheck Protection Program (PPP) loan by Manufacturers and Traders Trust Company (Lender) in the amount of $140,832.00 on February 8, 2021. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed an appeal from that final SBA loan review decision arguing the Final SBA Loan Review Decision was clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

On July 31, 2024, OHA Initial Decision No. PPP-9408398410 was issued affirming the final SBA loan review decision. On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-9408398410.

The Petitioner was an ineligible entity at the time of applying for this Second Draw PPP loan due to exceeding the 300 employee count when considered along with its affiliated entities. The Petitioner, as an ineligible entity, is precluded from PPP loan forgiveness.

JA1091

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $140,832.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36 & 37) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692), and #27 (86 Fed. Reg. 3712).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1092

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). Through the Administrator, SBA is authorized to make rules and regulations to carry out the policies and provisions of the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 634(b)(6).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136. Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012). The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

Section 7(a) of the Small Business Act authorizes SBA to make general business loans to qualified small businesses. 15 U.S.C. § 636(a) and 13 C.F.R. § 120.1.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act:

1) To establish the PPP, a temporary SBA 7(a) business loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. 15 U.S.C. § 636(a)(36), (37); and
2) Provides the Administrator "may" guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a "maximum"—but not a minimum—loan amount. See 15 U.S.C. 636(a)(36)(B), (E).

Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

JA1094

Docket No. PFR-5203288410

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F) and (37).

Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).  The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis.  Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

For Second Draw loans, a borrower was generally eligible if it received a First Draw loan, had 300 or fewer employees, could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020, and used/will use the full amount of the First Draw loan prior to receipt of the Second Draw loan proceeds. 15 U.S.C. § 636(a)(36-37), IFR #26 and #27.

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

Accordingly, SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

JA1095

Docket No. PFR-5203288410

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns.  Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act and corresponding amendments through the Economic Aid Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans for eligible recipients or eligible entities only "***with respect to eligibility***" for a "***covered loan***" for any "***business…assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (37)..

The CARES Act defines a First Draw PPP "covered loan" as a "loan made under" 15 U.S.C. § 636(a)(36), while a Second Draw PPP "covered loan" is one "made under" 15 U.S.C. § 636(a)(37). 15 U.S.C. § 636(a)(36)(A)(ii) and 15 U.S.C. § 636(a)(37)(A)(ii).

The CARES Act defines an "eligible recipient" as an individual or entity that is eligible to receive a First Draw PPP covered loan. 15 U.S.C. § 636(a)(36)(A)(iv).

The Economic Aid Act amended the CARES Act to define an "eligible entity" as a "business concern" eligible for a Second Draw PPP loan that "employes not more than 300 employees" and demonstrates a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv).

For First Draw PPP loans, the term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. For Second Draw PPP loans, term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(37) (a PPP loan) during the covered period. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

JA1096

Docket No. PFR-5203288410

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the Second Draw 300 employee-size limitation.

**Petitioner's PPP Loan Application and Lender Approval**

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

Businesses applying for a Second Draw PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and IFR #27.

On January 26, 2021, the Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender which certifies the Petitioner: 1) Is a Limited Liability Company (LLC); 2) Has an average monthly payroll of $56,333.00 for 36 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $266,522.00 vs. Q3 2019 - $510,592.00; 4) Is identified by NAICS code 541611; and 5) Answered "YES" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 1713-1718).

The Petitioner's PPP Borrower Application Form 2483 was supplemented by an Addendum A, in which the Petitioner certified the following 4 affiliated entities and their respective 75 employees: (AR pp. 13-14).

Affiliates (if applicable)

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

JA1097

On February 8, 2021, the Petitioner was approved for Second Draw PPP Loan Number 5203288410 by the Lender in the amount of $140,832.00, and having executed a PPP Promissory Note, received the loan proceeds on February 17, 2021. (AR pp. 11, 15-23, and 1729).

## Petitioner's PPP Loan Forgiveness Application and Lender Review

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

On March 25, 2022, the Petitioner submitted PPP Loan Forgiveness Application Form 3508 to the Lender.  The Petitioner certified having a NAICS Code of 236220, having spent $1,696,653.005 on "Payroll Costs", and having 38 employees.  The Petitioner elected a Covered Period of February 18, 2021, through August 5, 2021. On March 25, 2022, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $1,028,307.00. (AR pp. 1569-1581 and 18).

## SBA - Final Loan Review Decision

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision.

SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request. SBA's loan forgiveness review process includes a simultaneous review of the Appellant's underlying eligibility for the amount of PPP loan received (loan eligibility) and documentation to support authorized expenditures to allow forgiveness (loan forgiveness). 13 C.F.R. § 134.1201(b)(2)&(3).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. Between August 2, 2022, and October 31, 2022, SBA made several requests through Lender for additional information to support Petitioner's request for forgiveness. (AR 1554-1568).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 893-901). The Petitioner identified the following affiliated entities among the entities identified by SBA, along with each entities associated NAICS code/employee count:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

JA1099

Docket No. PFR-5203288410

The Petitioner submitted to SBA its 2018 and 2019 IRS Forms 1065. The forms reflect the Petitioner uses a calendar year and certify, on both tax years Schedule K-1, that Allen Gross owned 70% of the Petitioner in 2018 and 2019. (AR p. 940 and 973).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards*." SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 18-19).

## **Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

An appeal of a final SBA loan review decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 C.F.R. §134.1202(a). Here, the final SBA loan review decision was issued to the Lender and received by the Petitioner on February 20, 2024. The appeal petition was filed by initiation on the OHA Portal on March 21, 2024, which is within the 30-day time requirement. Accordingly, the appeal petition was timely.

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

The Petitioner states that it is a New York LLC specializing in residential, hospitality, commercial and retail construction projects.

JA1100

The Petitioner admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

|  | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Hospitality | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 300 employees at the time of applying for this Second Draw PPP loan and/or whether it met SBA's alternative size standards. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72". To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner. The Petitioner relies upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

Docket No. PFR-5203288410

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count. Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

**SBA's Response to the Appeal Petition**

SBA did not file a Response to the Petition.

**OHA Review and Initial Decision**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.

The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR).

JA1102

The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 300 EMPLOYEE SIZE STANDARD. (PFR pp. 6-8);

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR.  In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue.  Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs.  To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan.  Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;

2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;

3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and

4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners.  The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination.

JA1103

The Petitioner admits the following concerning each Hotel Owner:

• **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

• **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

• **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

• **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 300 employees at the time of applying for this PPP loan.

**PPP Loan Eligibility**

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

JA1104

SBA's review and the AR supports that the Petitioner submitted a Second Draw PPP Borrower Application Form 2483SD on January 26, 2021, and received the proceeds 13 days later.  The Lender approved the loan relying upon the Petitioner's certifications that it:  1) Was a LLC; 2) Had an average monthly payroll of $56,333.00 for 36 employees; 3) Had a 25% reduction in gross receipts, as follows: Q3 2020 - $266,522.00 vs. Q3 2019 - $510,592.00; 4) Was assigned NAICS code 541611; and 5) Only had 4 affiliates with 75 employees.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of February 17, 2021, through August 2, 2021; noted assigned NAICS code 541611; and had full expended all loan proceeds.  Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.  That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation.  This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness.  Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44)  entities and labeled the same "Gross et al".  SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest  (close familial relations) of Allen I. Gross (100% owner of Petitioner).  Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans.  All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 300 employee Second Draw PPP limit. (AR pp. 1672-1680).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner.  SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.

Docket No. PFR-5203288410

The following summarizes the Form 3511:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| **GFI Hospitality LLC** | **Borrower** | **100% Owned – A. Gross** | **541611** | **5** |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-__lists Borrower and its affiliates__, the applicable NAICS classification, and the number of employees at the time of the loan application*" **__(Emphasis added)__**. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 300 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

JA1106

Docket No. PFR-5203288410

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 531311. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "...*a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs. When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

JA1107

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size.   As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count.  In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider).  PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees".*  In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic*."  The CARES Act support was limited to businesses with no more than 500 employees.  It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan.  Failure to consider the number of PEO employees supported would allow an entity to support more than 300 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan.  For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates.  In this way, Congress provided an exception to the 300 employee limitation by waving existing SBA affiliation rules.  No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees.  Review of the AR reflects all  Hotel Owners secured PPP First Draw loans.  Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First or Second Draw PPP loan.  As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size.

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules.  SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this Second Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

## PPP Loan Forgiveness

The CARES Act provides forgiveness of Second Draw PPP loans to an eligible entity on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36-37).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness.

Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision. The final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 5203288410. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 5203288410.

**ORDER**

For the reasons discussed above, this appeal petition remains **DENIED**.

SO ORDERED.

Brian J. Haring
U.S. Administrative Law Judge

JA1110

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**GFI Development Company LLC,**

    Petitioner

RE: *PPP Appeal of GFI Development Company LLC*, SBA No. PPP-5323228408 (2024)

Decision No. **PFR-5323228408**

Issued: **September 11, 2024**

Appearances:

    William Barrett and Allen Gross, Borrowers, for the Petitioner.
    Shamia Stewart, Attorney for the Small Business Administration.

### RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-5323228408, the appeal petition of GFI Development Company LLC (Petitioner/Appellant/Borrower) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

### SUMMARY OF DECISION

The Petitioner was approved for a Second Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $294,750.00 on February 8, 2021. The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness. The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed an appeal from that final SBA loan review decision arguing the Final SBA Loan Review Decision was clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

On July 31, 2024, OHA Initial Decision No. PPP-9408398410 was issued affirming the final SBA loan review decision. On August 12, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-9408398410.

The Petitioner was an ineligible entity at the time of applying for this Second Draw PPP loan due to exceeding the 300 employee count when considered along with its affiliated entities. The Petitioner, as an ineligible entity, is precluded from PPP loan forgiveness.

JA1111

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $294,750.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36 & 37) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692), and #27 (86 Fed. Reg. 3712).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
  - **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
  - **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1112

Docket No. PFR-5323228408

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). Through the Administrator, SBA is authorized to make rules and regulations to carry out the policies and provisions of the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 634(b)(6).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA1113

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136. Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012). The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

Section 7(a) of the Small Business Act authorizes SBA to make general business loans to qualified small businesses. 15 U.S.C. § 636(a) and 13 C.F.R. § 120.1.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act:

1) To establish the PPP, a temporary SBA 7(a) business loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. 15 U.S.C. § 636(a)(36), (37); and
2) Provides the Administrator "may" guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a "maximum"—but not a minimum—loan amount. See 15 U.S.C. 636(a)(36)(B), (E).

Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F) and (37).

Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012). The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee -based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis. Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

For Second Draw loans, a borrower was generally eligible if it received a First Draw loan, had 300 or fewer employees, could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020, and used/will use the full amount of the First Draw loan prior to receipt of the Second Draw loan proceeds. 15 U.S.C. § 636(a)(36-37), IFR #26 and #27.

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020. SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

Accordingly, SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

JA1115

Docket No. PFR-5323228408

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person.*" 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act and corresponding amendments through the Economic Aid Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans for eligible recipients or eligible entities only "***with respect to eligibility***" for a "***covered loan***" for any "***business…assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (37)..

The CARES Act defines a First Draw PPP "covered loan" as a "loan made under" 15 U.S.C. § 636(a)(36), while a Second Draw PPP "covered loan" is one "made under" 15 U.S.C. § 636(a)(37). 15 U.S.C. § 636(a)(36)(A)(ii) and 15 U.S.C. § 636(a)(37)(A)(ii).

The CARES Act defines an "eligible recipient" as an individual or entity that is eligible to receive a First Draw PPP covered loan. 15 U.S.C. § 636(a)(36)(A)(iv).

The Economic Aid Act amended the CARES Act to define an "eligible entity" as a "business concern" eligible for a Second Draw PPP loan that "employes not more than 300 employees" and demonstrates a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv).

For First Draw PPP loans, the term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. For Second Draw PPP loans, term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(37) (a PPP loan) during the covered period. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

JA1116

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the Second Draw 300 employee-size limitation.

## Petitioner's PPP Loan Application and Lender Approval

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

Businesses applying for a Second Draw PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and IFR #27.

On January 20, 2021, the Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD to the Lender. The Petitioner's PPP Borrower Application Form 2483 was supplemented by an Attachment B, in which the Petitioner certified the following 4 affiliated entities and their respective 75 employees:

**Affiliates (if applicable)**

| Business Legal Name | Number of Employees | Description of Relationship |
|---|---|---|
| GFI Development Company LLC | 14 | Common owners |
| GFI Capital Resources Group Inc. | 16 | Common Owner |
| GFI Management Services Inc. | 4 | Common ownership |
| Broadway Construction Group LLC | 41 | Common ownership through spouse |

(AR p. 949).

On February 5, 2021, Allen I. Gross certified Affiliation Worksheet 3511. (AR pp. 1007-1010).

JA1117

Docket No. PFR-5323228408

On February 8, 2021, the Petitioner was approved for Second Draw PPP Loan Number 5323228408 by the Lender in the amount of $294,750.00, and having executed a PPP Promissory Note, received the loan proceeds on February 10, 2021. (AR pp. 18, 29-34, and 978).

### Petitioner's PPP Loan Forgiveness Application and Lender Review

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness.  Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.

Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

On March 28, 2022, the Petitioner submitted PPP Loan Forgiveness Application Form 3508EZ to the Lender.  The Petitioner certified having a NAICS Code of 236116, having spent $436,735.00 on "Payroll Costs", and having 12 employees.  The Petitioner elected a Covered Period of February 10, 2021, through July 28, 2021. (AR pp. 978-990).

On April 5, 2022, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $294,750.00. (AR p. 18).

## SBA - Final Loan Review Decision

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request. SBA's loan forgiveness review process includes a simultaneous review of the Appellant's underlying eligibility for the amount of PPP loan received (loan eligibility) and documentation to support authorized expenditures to allow forgiveness (loan forgiveness). 13 C.F.R. § 134.1201(b)(2)&(3).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 950-951).

On August 2, 2022, SBA requested documentation concerning the PPP loan through the Lender. SBA identified 20 possible affiliated entities of the Petitioner. SBA specifically requested the Petitioner provide: 1) SBA Form 3511 (Affiliation Worksheet); 2) Comprehensive Organizational charts for any identified entity; and 3) 2018/2018 Federal Income Tax returns for any identified entity. (AR pp. 952-955).

On February 5, 2021, Allen I. Gross, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. Along with the previously certified Attachment B, the Petitioner identified the following affiliated entities, along with associated NAICS codes/employee counts. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. The following summarizes the Petitioner's certified affiliates:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| **GFI Development Company LLC** | **Borrower** | **100% Owned – A. Gross** | **236116** | **13** |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |

JA1119

| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
|---|---|---|---|---|
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

On August 18, 2022, SBA requested the Petitioner provide the following additional documentation to support this PPP loan: 1) 2019 and 2020 IRS Form 941 for all quarters; 2) State taxes; and 3) Business tax return for 2020. (AR pp. 956-957).

On October 31, 2022, SBA requested the Petitioner provide a revised Form 3511, having identified additional entities likely affiliated with the Petitioner and other records (missing tax returns, for example). (AR pp. 985-964)

On November 14, 2022, the Petitioner, through William Barrett, provided a response to an SBA request for additional information concerning affiliated entities. Mr. Barrett requested until December 15, 2022, to file a response, given the scope of SBA's request. (AR pp. 940-943).

On January 17, 2023, the Petitioner provided SBA with documentation. (*See* AR pp. 1093 and 35-939). On May 11, 2023, the Petitioner requested additional time (until June 15, 2023) to respond to SBA's request for a supplemental Form 3511. (AR p. 1093).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*"

SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans. Further, SBA acknowledged the Petitioner attempted to qualify as a small business through the industry-receipt based and/or alternative size standards, but these alternate methods of determining size are not available for Second Draw PPP loans. (AR pp. 11-12).

**Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

An appeal of a final SBA loan review decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 C.F.R. §134.1202(a). The final SBA loan review decision was issued to the Lender and received by the Petitioner on February 20, 2024. The appeal petition was filed by initiation on the OHA Portal on March 21, 2024, which is within the 30-day time requirement. Accordingly, the appeal petition was timely.

Docket No. PFR-5323228408

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing "*the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan*". (Petition of Appellant).

The Petitioner states that it is a New York LLC specializing in residential, hospitality, commercial and retail constructions projects. The Petitioner admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

|   | Entity | Business Sector? | NAICS |
|---|--------|------------------|-------|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |
| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
| 8 | Broadway Development Group LLC | Not Identified | 236220 |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | **GFI Development Company LLC** | **Borrower** | 236116 |
| 12 | GFI Hospitality LLC | Not Identified | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

JA1121

The Petitioner frames the issue as being solely related to whether it had 300 employees at the time of applying for this Second Draw PPP loan. The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".

The Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner appears to argue the employees of the hotel management companies (those with a NAICS code of "72") should not be considered employees of the Hospitality Affiliates and, thus, not calculated in the total employee count for Borrower's Second Draw PPP Loan. The Petitioner would be relying upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10. That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

This argument provides that a non-NAICS code "72" PPP borrower should not to have to add a PEOs employees to its employee count when the borrowers NAICS code "72" affiliated entity obtained a PPP loan by utilizing the payroll costs incurred by the employees of the PEO. The Petitioner argues that SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106 and when doing so, SBA cannot include the employees of its NAICS code "72" affiliates attributable to a PEO in determining the Petitioner's employee count.

Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size. Of note, the Petitioner does not address whether it utilized the payroll costs of the employees of any PEO in establishing eligibility for any PPP loan for any of its hospitality sector (NAICS code "72") affiliates.

## SBA's Response to the Appeal Petition

SBA did not file a Response to the Petition.

## OHA Review and Initial Decision

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On July 31, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 12, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR).  The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 300 EMPLOYEE SIZE STANDARD. (PFR pp. 6-8); and

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR.  In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue.  Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

JA1123

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs.  To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan.  Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;
2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;
3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and
4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners.  The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination.  The Petitioner admits the following concerning each Hotel Owner:

**• 1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

**• 701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

**• Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

**• 88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

JA1124

Docket No. PFR-5323228408

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 300 employees at the time of applying for this PPP loan.

**PPP Loan Eligibility**

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

SBA's review and the AR supports that the Petitioner submitted a Second Draw PPP Borrower Application Form 2483 on January 26, 2021, and received the proceeds days later. The Lender approved the loan relying upon the Petitioner's certifications that it: 1) Was a New York Limited Liability Company (LLC); 2) Had an average monthly payroll of $428,554.00 for 110 employees; and 3) Had 4 affiliated entities with a total of less than 300 combined employees. (AR p. 18 and 940).

The Petitioner's certified PPP Loan Forgiveness Application Form 3508S, elected a Covered Period of February 10, 2021, through July 28, 2021; noted assigned NAICS code 236116; and had full expended all loan proceeds. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

JA1125

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan forgiveness. Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44) entities and labeled the same "Gross et al". SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest (close familial relations) of Allen I. Gross (100% owner of Petitioner). Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans. All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 300 employee Second Draw PPP limit. (AR pp. 1043-1092).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner. SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).

On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. The following summarizes the Form 3511:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| **GFI Management Services Inc.** | **Borrower** | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned – A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |

JA1126

Docket No. PFR-5323228408

| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
|---|---|---|---|---|
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-**lists Borrower and its affiliates**, the applicable NAICS classification, and the number of employees at the time of the loan application*" **(Emphasis added)**. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 300 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 531311. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

JA1127

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "...*a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs. When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count.  In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider).  PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees*".  In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic.*"  The CARES Act support was limited to businesses with no more than 500 employees.  It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan.  Failure to consider the number of PEO employees supported would allow an entity to support more than 300 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan.  For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates.  In this way, Congress provided an exception to the 300 employee limitation by waving existing SBA affiliation rules.  No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees.  Review of the AR reflects all Hotel Owners secured PPP First Draw loans.  Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First or Second Draw PPP loan.  As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size.

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules.  SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard.  As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this Second Draw PPP loan.  SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

**PPP Loan Forgiveness**

The CARES Act provides forgiveness of Second Draw PPP loans to an eligible entity on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36-37).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision. The final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioner was ineligible for PPP Loan Number 5323228408. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 5323228408.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

SO ORDERED.

Brian J. Haring
**U.S. Administrative Law Judge**

JA1130

# United States Small Business Administration
# Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**: | Decision No. **PFR-9408398410** |
| **Broadway Construction Group LLC,** | |
| Petitioner | Issued: **September 11, 2024** |
| RE: *PPP Appeal of Broadway Construction Group LLC*, SBA No. PPP-9408398410 (2024) | |

Appearances:

William Barrett and Allen Gross, Borrowers, for the Petitioner.
Lorena Solis, Attorney for the Small Business Administration.

## RECONSIDERED INITIAL DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-9408398410, the appeal petition of Broadway Construction Group LLC (Petitioner/Appellant/Borrower) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## SUMMARY OF DECISION

The Petitioner was approved for a Second Draw Paycheck Protection Program (PPP) loan by HSBC Bank USA, National Association (Lender) in the amount of $1,028,307.00 on February 17, 2021.

The Lender subsequently approved the Petitioner's request for full PPP loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and denied in full loan forgiveness.

On March 21, 2024, the Petitioner filed an appeal from that final SBA loan review decision arguing the Final SBA Loan Review Decision was clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

JA1131

On August 8, 2024, OHA Initial Decision No. PPP-9408398410 was issued affirming the final SBA loan review decision.  On August 16, 2024, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-9408398410.

The Petitioner was an ineligible entity at the time of applying for this Second Draw PPP loan due to exceeding the 300 employee count when considered along with its affiliated entities.  The Petitioner, as an ineligible entity, is precluded from PPP loan forgiveness.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow the Petitioner $1,028,307.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)**
-15 U.S.C. § 636(a)(36 & 37) & 15 U.S.C. § 636m

**Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116–142)**

**The Small Business Jobs Act of 2010 (P.L. 111-240)**

**Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) (Pub. L. 116-260)**

**15 U.S.C. §§ 631; 632(a)(1)-(2)(A)-(B); 634(b)(6); 636e(6); and 9012**

**13 C.F.R. part 121 and part 134 Subpart L**

**21 Fed. Reg. 9709-9714,** December 7, 1956

**PPP Interim Final Rule (IFR) #1 (85 Fed. Reg. 20811); #4 (85 Fed. Reg. 23450); #7 (85 Fed. Reg. 21747); #26 (86 Fed. Reg. 3692), and #27 (86 Fed. Reg. 3712).**

**SBA Paycheck Protection Program Loan Frequently Asked Questions (FAQ) 5 and 24[1].**
- **AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM**, April 3, 2020[2]
- **"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"** (January 14, 2021)[3]

---

[1] https://www.sba.gov/document/support-faq-ppp-borrowers-lenders
[2] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[3] https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act

JA1132

## FINDINGS OF FACT & ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

### SBA and The Small Business Act

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 631(b)(1). Through the Administrator, SBA is authorized to make rules and regulations to carry out the policies and provisions of the Small Business Act. 15 U.S.C. § 633(a) and 15 U.S.C. § 634(b)(6).

Under the Small Business Act, a small business concern is one which is: 1) Independently owned and operated; 2) Not dominant in its field of operation; and 3) Meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

In addition to this criteria, the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA interprets the statutory definition of a small business to require, in certain circumstances, the inclusion of other entities (Affiliates) owned by the applicant or an owner of the applicant in determining the size of the applicant. 13 C.F.R. § 121.301.

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified, with these standings reflecting the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.101 and 13 C.F.R. § 121.201.

In general, an applicant for a 7(a) Business Loan must meet one of the following size standards to be eligible for a loan:

1) The size of the applicant alone (without affiliates) must not exceed the size standard, as set forth in 13 C.F.R. § 121.201, designated for the industry in which the applicant is primarily engaged; and the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher; **or**

JA1133

2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million. 13 C.F.R. § 121.301(b)(1-2).

Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which includes definitions for each industry. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A concern that submits an application for financial assistance, including PPP, is deemed to have certified that it is small under the applicable size standard. SBA may question the concern's status based on information supplied in the application or from any other source. A preferred lender may accept as true the size information provided by an applicant, unless credible evidence to the contrary is apparent. 13 C.F.R. § 121.303(a-e), IFR #1 and *See* 13 C.F.R. § 121.302.

## The CARES Act & Economic Aid Act

On March 27, 2020, the CARES Act became law. P.L.116-136. Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012). The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

Section 7(a) of the Small Business Act authorizes SBA to make general business loans to qualified small businesses. 15 U.S.C. § 636(a) and 13 C.F.R. § 120.1.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act:

1) To establish the PPP, a temporary SBA 7(a) business loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. 15 U.S.C. § 636(a)(36), (37); and
2) Provides the Administrator "may" guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a "maximum"—but not a minimum—loan amount. See 15 U.S.C. 636(a)(36)(B), (E).

Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

JA1134

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F) and (37).

Section 1114 of the CARES Act granted the Administrator emergency rulemaking authority to issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).  The Administrator was given authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in [her] by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.

PPP was available to qualifying small businesses in two separate draws: First and Second Draw. 15 U.S.C. § 636(a)(36) and (37).

A business was eligible for a First Draw PPP loan if, on its own, it meets the 500 employee-based size standard or receipts-based size standard established by SBA for the NAICS code applicable to its primary industry and **when, together with its affiliates**, meets those same size standards (employee-based or receipts-based) on a combined basis.  Businesses were allowed to choose the standard which yielded the higher result. 15 U.S.C. § 636(a)(36)(D)(v).

For Second Draw loans, a borrower was generally eligible if it received a First Draw loan, had 300 or fewer employees, could demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020, and used/will use the full amount of the First Draw loan prior to receipt of the Second Draw loan proceeds. 15 U.S.C. § 636(a)(36-37), IFR #26 and #27.

Prior to receiving any PPP loan applications, SBA specifically noticed all potential PPP borrowers that 4 affiliation tests were applicable to all PPP borrowers through publication of "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" on the U.S. Treasury Department's website on April 3, 2020.  SBA reinforced us of these test through subsequent issuance of IFR #4, #7, and #26.

Accordingly, SBA's review of the Appellant's size is governed by applying all of the following affiliation tests to a PPP application at the time the application is submitted:

1) Ownership;
2) Under stock options, convertible securities, and agreements to merge;
3) Management; and
4) Identity of interest.

In order to show affiliation based on ownership: "a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50% of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern." IFR #4 and 13 C.F.R. § 121.301(f)(1).

JA1135

In order to show affiliation based on management: "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." IFR #4 and *See* 13 C.F.R. § 121.301(f).

In order to show affiliation based on identity of interest: "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interest (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). SBA has defined a close relative as "*a spouse; a parent; or a child or sibling, or the spouse of any such person*." 13 C.F.R. § 120.10.

Where SBA determines that interest should be aggregated, an individual or firm may rebut that determination with evidence showing that the interest deemed to be one are in fact separate." IFR #4 and *See* 13 C.F.R. § 121.301(f).

The CARES Act and corresponding amendments through the Economic Aid Act waived existing SBA 7(a) Business Loan Program affiliation rules for PPP loans for eligible recipients or eligible entities only "***with respect to eligibility***" for a "***covered loan***" for any "***business…assigned a North American Industry Classification System code beginning with 72***". 15 U.S.C. § 636(a)(36)(D)(iv)(I) and (37)..

The CARES Act defines a First Draw PPP "covered loan" as a "loan made under" 15 U.S.C. § 636(a)(36), while a Second Draw PPP "covered loan" is one "made under" 15 U.S.C. § 636(a)(37). 15 U.S.C. § 636(a)(36)(A)(ii) and 15 U.S.C. § 636(a)(37)(A)(ii).

The CARES Act defines an "eligible recipient" as an individual or entity that is eligible to receive a First Draw PPP covered loan. 15 U.S.C. § 636(a)(36)(A)(iv).

The Economic Aid Act amended the CARES Act to define an "eligible entity" as a "business concern" eligible for a Second Draw PPP loan that "employes not more than 300 employees" and demonstrates a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. *See* 15 U.S.C. § 636(a)(37)(A)(iv).

For First Draw PPP loans, the term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(36) (a PPP loan) during the covered period. For Second Draw PPP loans, term "***covered loan***" means a loan made under 15 U.S.C. § 636(a)(37) (a PPP loan) during the covered period. 15 U.S.C. § 636(a)(36)(ii-iii) and 15 U.S.C. § 636(a)(37)(A)(ii).

Thus, the regulations governing affiliation at the time the Petitioner applied for this Second Draw PPP loan require SBA to verify whether the Appellant, along with any of its affiliates, exceed the Second Draw 300 employee-size limitation.

**Petitioner's PPP Loan Application and Lender Approval**

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

IFR #1 provides that PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483 and noticed all PPP lenders/applicants that the amount of a PPP loan would be derived from an applicant's eligible payroll.

Businesses applying for a Second Draw PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv) and IFR #27.

On or about February 17, 2021, the Petitioner submitted a Second Draw PPP Borrower Application Form 2483 to the Lender which certifies the Petitioner:

1) Is a Limited Liability Company (LLC);
2) Had 41 employees;
3) Had a 25% reduction in gross receipts between comparable quarters of 2019-20;
4) Is assigned by NAICS code 236220; and
5) Answered "NO" to question #3 reflecting it had affiliation/ownership in common with other businesses. (AR pp. 1584, 1595 and *see* 1569).

On February 17, 2021, the Petitioner was approved for Second Draw PPP Loan Number 9408398410 by the Lender in the amount of $1,028,307.00, and having executed a PPP Promissory Note, received the loan proceeds on February 18, 2021. (AR pp. 18, 29-34, 1569, and Supplement to AR Exhibit C).

**Petitioner's PPP Loan Forgiveness Application and Lender Review**

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000.00 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

The Flexibility Act changed key provisions of the PPP, including the provisions relating to PPP loan forgiveness. Section 3(b) amended the requirements regarding forgiveness of PPP loans to reduce, from 75 percent to 60 percent, the portion of PPP loan proceeds that must be used for payroll costs for the full amount of the PPP loan to be eligible for forgiveness. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(e)(3), (f), (g), and (b).

On March 25, 2022, the Petitioner submitted PPP Loan Forgiveness Application Form 3508 to the Lender. The Petitioner certified having a NAICS Code of 236220, having spent $1,696,653.005 on "Payroll Costs", and having 38 employees. The Petitioner elected a Covered Period of February 18, 2021, through August 5, 2021. On March 25, 2022, the Lender determined the Petitioner should receive full loan forgiveness in the amount of $1,028,307.00. (AR pp. 1569-1581 and 18).

### SBA - Final Loan Review Decision

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request. SBA's loan forgiveness review process includes a simultaneous review of the Appellant's underlying eligibility for the amount of PPP loan received (loan eligibility) and documentation to support authorized expenditures to allow forgiveness (loan forgiveness). 13 C.F.R. § 134.1201(b)(2)&(3).

On June 21, 2022, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and support the Lender's forgiveness decision. (AR pp. 1554-1555).

Between August 2, 2022, and October 31, 2022, SBA made several requests through Lender for additional information to support Petitioner's request for forgiveness. (AR 1556-1568).

On August 10, 2022, Allen I. Gross, as "Authorized Signatory" of the Petitioner, certified and submitted to SBA a completed Form 3511 Affiliation Worksheet. The Petitioner argued that any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24. (AR pp. 893-901). The Petitioner identified the following affiliated entities among the entities identified by SBA, along with each entities associated NAICS code/employee count:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
|---|---|---|---|---|
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned - A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| Broadway Dev. Grp LLC | Affiliated | 70% Owned-A. Gross wife | 236220 | 41 |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

The Petitioner submitted to SBA its 2018 and 2019 IRS Forms 1065. The forms reflect the Petitioner uses a calendar year and certify, on both tax years Schedule K-1, that Allen Gross owned 70% of the Petitioner in 2018 and 2019. (AR p. 940 and 973).

On February 20, 2024, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA found the Petitioner, "*together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.*" SBA noted the Petitioner's affiliated entity employee count exceeded PPP's 300 employee limitation for Second Draw PPP loans and it did not meet SBA's industry-receipt based and/or alternative size standards. (AR pp. 18-19).

**Petitioner's Argument in Favor of Loan Eligibility/Forgiveness – Appeal Petition**

An appeal of a final SBA loan review decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 C.F.R. §134.1202(a).   Here, the final SBA loan review decision was issued to the Lender and received by the Petitioner on February 20, 2024. The appeal petition was filed by initiation on the OHA Portal on March 21, 2024, which is within the 30-day time requirement. Accordingly, the appeal petition was timely.

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L.  The Petitioner has the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The appeal petition must include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with all factual information and legal arguments supporting the allegations".

Generally, the reviewing OHA Judge may not admit evidence beyond the administrative record. 13 C.F.R. § 134.1210, 13 C.F.R. § 134.1203, 13 C.F.R. § 134.1204(a)(2), and 13 C.F.R. § 134.1209(a).

On March 21, 2024, the Petitioner filed an appeal petition with OHA seeking full loan forgiveness, arguing the decision by SBA denying Borrower's request for loan forgiveness should be reversed because Borrower did not have more than 300 employees when it applied for its Second Draw PPP Loan.

Of note, the Petitioner alternatively argued it met a revenue base size standard, but upon review, withdrew the argument admitting it did not meet any such standard. (Petition of Petitioner and Supplement to Petition).

The Petitioner states that it is a New York LLC specializing in residential, hospitality, commercial and retail construction projects. The Petitioner admits it has "*NAICS Code 72 affiliates and non-NAICS Code 72 affiliates*", as follows:

| | Entity | Business Sector? | NAICS |
|---|---|---|---|
| 1 | 1186 BROADWAY TENANT LLC | Hospitality | 721110 |
| 2 | 45 West Orchard Park Drive LLC | Hospitality | 721110 |
| 3 | 5 Beekman Master Tenant LLC | Hospitality | 721110 |
| 4 | 5 Beekman Hotel Owner LLC | Hospitality | 721110 |
| 5 | 701 East Palm Canyon Lessee LLC | Hospitality | 721110 |
| 6 | Adara Buyer IV LLC | Multi-Family Housing | 531110 |

JA1140

Docket No. PFR-9408398410

| 7 | Breslin Restaurant Group LLC | Hospitality | 722511 |
|---|---|---|---|
| **8** | **Broadway Development Group LLC** | **Not Identified** | **236220** |
| 9 | Deerfield Beach Apartments LLC | Multi-Family Housing | 531110 |
| 10 | GFI Capital Resources Group Inc. | Not Identified | 531390 |
| 11 | GFI Development Company LLC | Not Identified | 236116 |
| 12 | GFI Hospitality LLC | Hospitality | 541611 |
| 13 | GFI Management Services Inc. | Not Identified | 531311 |
| 14 | River Market West LLC | Multi-Family Housing | 531110 |

The Petitioner frames the issue as being solely related to whether it had no more than 300 employees at the time of applying for this Second Draw PPP loan and/or whether it met SBA's alternative size standards.  The Petitioner argues that under SBA's affiliation rules, SBA cannot attribute to it any employees of its affiliated entities when the affiliated entity is conducting business under NAICS codes beginning with "72".  To support this argument, the Petitioner points to FAQ #24 which states: "*In addition, SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan).*"

The Petitioner also argues the number of employees supported by the PPP loans secured by its affiliated Hotel Owners should not be included when calculating the size of the Petitioner.  The Petitioner relies upon <u>Appeal of Windsor Court Hotel Partners, LLC</u>, SBA Docket No. PF-5292997209 and the Administrator's subsequent clarification of FAQ #10.  That decision relates to a PPP applicant operating under NAICS code "72" and allows for such an applicant to include the cost of employees when the employees are under the control of a PEO (professional employer organization) or similar payroll provider, but only if the employees were not counted towards payroll costs on a PPP loan received by the PEO.

The Petitioner argues as SBA is required to view this application under the "totality of the circumstances" criteria set forth in 13 C.F.R. § 121.106, SBA cannot include the employees from its affiliate's PEO employee count when determining the Petitioner's employee count.  Essentially, the Petitioner argues that because each of its affiliates are involved in the hospitality sector (NAICS code "72") and/or are operated by under a PEO (or similar payroll provider), the employees of the PEO should not count as employees of the Petitioner for purposes of determining size.

**<u>SBA's Response to the Appeal Petition</u>**

SBA did not file a Response to the Petition.

**OHA Review and Initial Decision**

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1201 and § 134.1203.

On August 8, 2024, an OHA Initial Decision was issued upholding the final SBA loan review decision.

**Petition for Reconsideration**

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

On August 16, 2024, the Petitioner timely filed a Petition for Reconsideration (PFR). The Petitioner reiterates its arguments from the Appeal Petitioner, clarifies the same, and asserts the following errors of law or fact:

1) THE ALJ CLEARLY ERRED IN CONCLUDING THAT "POSSIBLE" PEOS ARE AFFILIATES OF BORROWER AND, THUS, MUST BE INCLUDED IN THE EMPLOYEE COUNT TO DETERMINE IF BORROWER MET THE 300 EMPLOYEE SIZE STANDARD. (PFR pp. 6-8);

2) THE ALJ CLEARLY ERRED IN CONCLUDING THAT THE HOTEL EMPLOYEES, WHO ARE NEITHER EMPLOYED NOR CONTROLLED BY THE HOTEL OWNERS, SHOULD BE CONSIDERED EMPLOYEES OF THE HOTEL OWNERS AND THUS INCLUDED IN THE TOTAL EMPLOYEE COUNT FOR PURPOSES OF EVALUATING BORROWER'S EMPLOYEE SIZE STANDARD. (PFR pp. 8-11).

As it relates to the first assignment of error, the Petitioner points out the OHA Initial Decision identified possible Professional Employer Organizations (PEO) and the same are inconsistent with the AR. In addition to the AR, the Petitioner provided evidence attached to the PFR, which reflects the possible PEOs are in fact not PEOs at issue.

JA1142

Given the evidence, the identification of the possible PEOs was in error; however, the error was in the nature of trying to determine the Petitioner's sparse argument and are irrelevant to the ultimate outcome of this matter, as set forth below.

For the second assignment of error, the PFR clarifies the Petitioner's argument concerning PEOs. To begin, the Petitioner admits it has 14 affiliates with a total employee count of 902 employees at the time of applying for this loan. Having established 902 possible employees, the Petitioner identifies 4 categories of affiliated entities based upon the NAICS code certified by Allen Gross (Form 3511), as follows:

1) <u>Operating Company Affiliates</u> - GFI Development Company LLC, GFI Hospitality LLC, Broadway Construction Group LLC, and GFI Management Services LLC;
2) <u>Multi-Family Housing Affiliates</u> - Adara Buyer IV LLC, Deerfield Beach Apartments, and River Market;
3) <u>Hospitality Affiliates</u> - Breslin Restaurant Group; and
4) <u>Hotel Owners</u> - 1186 Broadway Tenant LLC, 701 East Palm Canyon Lessee LLC, 5 Beekman Master Tenant LLC, 5 Beekman Hotel Owner LLC, Idlewild Realty LLC, and 45 West Orchard Park Drive LLC West. (PFR pp. 2-3).

The Petitioner provided Operating Agreements and payroll reports (or IRS Forms 941) for each of the Hotel Owners. The Petitioner argues this evidence reflects each Hotel Owner has a PEO or similar payroll provider and the employees of the PEOs should not count towards the Petitioner's employee size determination. The Petitioner admits the following concerning each Hotel Owner:

• **1186 Broadway LLC** owns the Ace Hotel New York in New York City. The Ace Hotel is managed pursuant to a Hotel Management Agreement between 1186 Broadway and Ace Hotel Group. The Ace Hotel Group employed **96 hotel staff** at the time of Borrower's loan application.

• **701 East Palm Canyon Lessee** owns the Ace Hotel and Swim Club in Palm Springs, California. The Ace Hotel and Swim Club is managed pursuant to a Hotel Management Agreement between 701 East Palm Canyon Lessee and Ace Hotel Group. The Ace Hotel Group employed **171 hotel staff** at the time of Borrower's loan application.

• **Idlewild Realty LLC** owns the Crowne Plaza JFK Airport in New York City. The Crowne Plaza is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC and Idlewild Realty LLC. Crescent Hotel Management Services employed **111 hotel staff** at the time of the application.

• **88 Madison Hotel Operator LLC** owns the James Hotel New York- Nomad. The James Hotel New York- Nomad is currently managed pursuant to a Hotel Management Agreement between Highgate Hotels, L.P. and 88 Madison Hotel Operator LLC. 5 Highgate Hotels employed **141 hotel staff** at the time of Borrower's loan application.

JA1143

• **5 Beekman JV LLC** owns The Beekman Hotel and Residences in New York City. The Beekman Hotel and Residences is managed pursuant to a Hotel Management Agreement between Thompson Hotels and 5 Beekman JV LLC. Thompson Hotels, a subsidiary of Hyatt Corporation, employed **118 hotel staff** at the time of the Borrower's loan application.

• **45 West Orchard Park Drive LLC** owns the Hilton Greenville in Greenville, South Carolina. The Hilton Greenville is managed pursuant to a Hotel Management Agreement between Crescent Hotel Management Services, LLC, and 45 West Orchard Park Drive LLC. Crescent Hotel Management Services employed **98 hotel staff** at the time of Borrower's loan application.

The Petitioner argues that the appropriate count of total employees across all applicable affiliates must include Breslin Restaurant Group, but remove employees working for any Hospitality Entities (NAICS code "72") and the employees from the Hotel Owners PEOs. In doing so, it can only be concluded that the Petitioner had less than 300 employees at the time of applying for this PPP loan.

## PPP Loan Eligibility

In terms of loan eligibility, pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request under the CARES Act, SBA/Department of Treasury's IFRs.

The Petitioner submitted a Second Draw PPP Borrower Application Form 2483-SD and received the proceeds on March 18, 2021. The Lender approved the loan by relying upon the Petitioner's certifications that it: 1) Is a LLC; 2) Had 41 employees; 3) Had a 25% reduction in gross receipts between comparable quarters of 2020 and 2019; 4) Is assigned by NAICS code 236220; and 5) Had no affiliates.

The Petitioner's certified PPP Loan Forgiveness Application Form 3508 certified the Petitioner's assignment of NAICS code of 236220, having spent $1,696,653.005 on "Payroll Costs", having 38 employees, and a Covered Period of February 18, 2021, through August 5, 2021. Following review, the Lender determined the Petitioner should receive full loan forgiveness.

Consistent with its obligation to review the Petitioner's underlying qualification for this Second Draw PPP loan under 13 C.F.R. § 134.1201(b)(2), SBA reviewed the Lender's decision and ultimately provided the Petitioner with $0.00 of PPP loan forgiveness.

SBA found that at the time of applying for this loan, the Petitioner, together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. That is, SBA found the Petitioner, along with its affiliated entities, had an employee count that far exceeded Second Draw PPP's 300 employee limitation. This rendered the Petitioner ineligible for the PPP loan and precluded it from any loan

JA1144

forgiveness.  Of note, SBA found the Petitioner did not meet any existing alternative size standard and the Petitioner admits the same.

SBA defined an affiliation family consisting of forty-four (44)  entities and labeled the same "Gross et al".  SBA evaluated the entities for affiliation through the common ownership, management, and identity of interest  (close familial relations) of Allen I. Gross (100% owner of Petitioner).  Within this affiliation family, SBA found the Petitioner was among 17 affiliated entities receiving First Draw loans.  All of the entities are affiliated because they are more than 50% owned by Allen I. Gross and/or close relatives Edith Gross (wife), Michael Weiser (son-in-law), Brian Gross (presumed son), and Jonathan Gross (presumed brother). The total employee count amount for the entities exceeded the 300 employee Second Draw PPP limit.  (AR p. 1582-1631).

SBA requested the Petitioner produce documentation to clarify affiliation and the size of the Petitioner.  SBA specifically sought specific and detailed information about the Petitioner and each of the identified potential affiliates (tax/financial records, organizational information, operating agreements, books, records, and management agreements).   On August 10, 2022, Allen I. Gross , as "Authorized Signatory", certified and submitted to SBA a completed Form 3511 Affiliation Worksheet.  The Petitioner identified affiliated entities, along with their respective NAICS codes/employee counts arguing any affiliated entity with a NAICS code beginning with "72" was excluded from the total employee count for the Petitioner per SBA issued PPP FAQ #24.  The following summarizes the Form 3511:

| Entity | Petitioner's Form 3511 (8/10/22) | | | |
|---|---|---|---|---|
| | Statement on Affiliation | Affiliation Relationship | NAICS | Employees |
| 1186 BROADWAY TENANT LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 96 |
| GFI Development Company LLC | Affiliated | 100% Owned – A. Gross | 236116 | 13 |
| GFI Hospitality LLC | Affiliated | 100% Owned – A. Gross | 541611 | 5 |
| GFI Management Services Inc. | Affiliated | 100% Owned – A. Gross | 531311 | 3 |
| Idlewild Realty LLC | Affiliated/FAQ 24 exclude | 50.1% Owned – A. Gross | 721110 | 111 |
| Breslin Restaurant Group LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 722511 | 77 |
| 701 E. Palm Canyon Lessee LLC | Affiliated/FAQ 24 exclude | 100% Owned – A. Gross | 721110 | 171 |
| 88 Madison Hotel Operator LLC | Affiliated/FAQ 24 exclude | 100% Managed - A. Gross | 721110 | 141 |
| **Broadway Dev. Grp LLC** | **Affiliated** | **70% Owned-A. Gross wife** | **236220** | **41** |
| 45 West Orchard Park Drive LLC | Affiliated/FAQ 24 exclude | 35.8% Owned by A. Gross | 721110 | 98 |
| 5 Beekman Master Tenant LLC | Affiliated/FAQ 24 exclude | 100% Managed – A. Gross | 721110 | 118 |
| GFI Capital Resources Grp. Inc. | Affiliated | 100% Owned – A. Gross | 531390 | 14 |
| Adara Buyer IV LLC | Affiliated | 90.6% Owned – A. Gross | 531110 | 4 |
| Deerfield Beach Apts. LLC | Affiliated | 98.3% Owned – A. Gross | 531110 | 6 |
| River Market West LLC | Affiliated | 97.9% Owned – A. Gross | 531110 | 4 |

In the PFR, the Petitioner admits the above chart "*which is based on Borrower's August 10, 2022 Form 3511-**lists Borrower and its affiliates***, *the applicable NAICS classification, and the number of employees at the time of the loan application*" **(Emphasis added)**. (PFR pp. 2-3).

Based upon the Petitioner's certified Form 3511, PPP Borrower Application Form 2483 Addendum A, admissions, and document production, the record reflects, at the time of applying for this Second Draw PPP loan, the Petitioner had at least 14 affiliates. This is seen through the Petitioner's majority owner, Allen I. Gross, having majority ownership, managerial control, and/or a close familial relationship with the majority owner for each affiliate. The Petitioner certified and later identified that when combined with its affiliates, the Petitioner had, at least, 902 employees.

Second Draw PPP loan applicants assigned NAICS code 72 were permitted to individually qualify for a loan regardless of the number employees attributable to any of its affiliates, if they individually met the 300 employee limitation or revenue based size standard. The Petitioner argues under FAQ #24, 13 C.F.R. § 121.103, and 13 C.F.R. § 121.301, SBA must subtract the employee count of its affiliates bearing a NAICS code 72.

As clearly set forth in FAQ #24, the exclusion of employees from a PPP borrower's size determination **only occurs** when the **borrower is assigned NAICS code 72**. Here, the Petitioner certified its NAICS code as 531311. As such, the Petitioner's size must be determined by counting its employees, along with the number of employees from all affiliates.

The Petitioner certified 6 affiliated entities (Hotel Owners) as being affiliated for purpose of SBA's size determination. The Petitioner argues these 6 specific entities have no employees by virtue of being operated by a PEO. The Petitioner argues the PEOs employees are not the Hotel Owners employees. Of note, the Petitioner originally asserted Breslin Restaurant Group LLC should be excluded from the count, but admits it should be included within the PFR.

SBA considers the totality of the circumstances when making an employee size determination. SBA counts all individuals employed on a full-time, part-time, or other basis. SBA includes the number of employees from any affiliates. PEOs may be deemed affiliates of an entity. 13 C.F.R. § 121.106(a), 13 C.F.R. § 121.103(a)(6) and 13 C.F.R. § 121.103(b)(4).

Pursuant to the NAICS Manual, a PEO is an establishment "primarily engaged in providing human resources and human resource management services to client businesses and households." NAICS Manual at 489. Size Appeal of Junius J. Dion D/B/A Risen Video Production, SBA No. SIZ-6306, 2024 (S.B.A.), 2024 WL 3914860 (Footnote 2).

PEOs are deemed affiliates of an entity only when there is an independent basis for affiliation. MISSION SOLUTIONS, INC., SBA No. SIZ-4828 (S.B.A.), 2006 WL 4008726 and *see* 13 C.F.R. § 121.103(b)(4).

On April 3, 2020, prior to the Petitioner's submission of its PPP Loan Application Form 2438, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program". SBA explicitly stated that affiliation by management exists when: "...*a single individual, concern or entity controls the management of the applicant concern through a management agreement.*"[4]

The Operating Agreements existing at the time the Petitioner applied for this loan reflect the Hotel Owners contractually delegated all aspects of running their respective hotels to their respective PEOs. This relationship exceeds the mere leasing of employees and/or HR management functioning contemplated by the NAICS definition of PEO. This relationship supports affiliation by management between the Hotel Owners and their respective PEOs. When looking at the employee count of the Hotel Owners, their respective PEOs do not qualify for the limited affiliation exception set forth in 13 C.F.R. § 121.103(b)(4). Thus, in determining the employee count of the Hotel Owners, SBA must include the employee count of the Hotel Owners respective PEOs.

Through the pleadings, the Petitioner admits: 1) The Hotel Owners are affiliates of the Petitioner; and 2) The Hotel Owners employee count is includable in determining the Petitioner's employee size. As the Hotel Owners employee count includes their respective PEO's employee count, the Petitioner must also include the PEO's employee count.

Even if affiliation by management did not exist between the Hotel Owners and their respective PEOs, a unique feature of the CARES Act and PPP would require the inclusion of the PEO's employees in the Hotel Owner's employee count. In establishing eligibility, PPP borrowers were authorized to include the amount the borrower expended on employees of a PEO (or similar payroll provider). PPP applicants were given the "*ability*" to secure a PPP loan and continue to "*pay payroll for those employees".* In support of the underlying purpose of the CARES Act, PPP allows a borrower to continue operations by paying the costs associated with a certain number of employees of the PEO. *See* FAQ #72.

The stated purpose of the CARES Act was to "...*provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic*." The CARES Act support was limited to businesses with no more than 500 employees. It would be patently contrary to the CARES Act to allow a borrower to qualify for a PPP loan by including its expenses directly related to a certain number of PEO employees, but not consider the actual number of PEO employees supported by the loan. Failure to consider the number of PEO employees supported would allow an entity to support more than 300 employees.

Through the CARES Act, Flexibility Act, and Economic Aid Act, Congress has explicitly identified circumstances where an entity with an affiliated employee count above 500 could receive a PPP loan. For example, entities in the hospitality sector (NAICS codes beginning with 72) may qualify for a PPP loan without consideration of its affiliates. In this way,

---

[4] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf

JA1147

Congress provided an exception to the 300 employee limitation by waving existing SBA affiliation rules. No such exception or waiver exists for PEOs.

The Petitioner admits the Hotel Owners are its affiliates, but seeks to have the Hotel Owners deemed without employees. Review of the AR reflects all Hotel Owners secured PPP First Draw loans. Accepting the Petitioner's argument concerning a lack of employees for the Hotel Owners, the record can only be viewed as reflecting the Hotel Owners used the payroll costs of their respective PEOs to secure each First or Second Draw PPP loan. As such, the Hotel Owners expenses directly related to the certain number of PEO employees used to secure their respective loans must be tied to the actual number of PEO employees supported by their loan when determining size.

The Petitioner's argument to remove employees from its certified affiliated employee count of 902 is inconsistent with existing SBA 7(a) Loan Program and PPP rules. SBA did not commit error in determining the Petitioner's size by including the employees attributable to the Petitioner's affiliated entities (Hotel Owners) from their respective PEOs.

The record reflects the Petitioner far exceeded PPP's Second Draw 300 employee size limitation, when considered with its affiliates and, admittedly, did not meet any alternative (revenue or otherwise) size standard. As such, SBA did not commit error in determining the Petitioner was an ineligible entity for this Second Draw PPP loan. SBA did not commit error in including the employees of any possible PEO in determining the size (employee count) of the Petitioner.

## **PPP Loan Forgiveness**

The CARES Act provides forgiveness of Second Draw PPP loans to an eligible entity on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36-37).

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

As the Petitioner was ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

JA1148

The final SBA loan review decision is well-supported by the administrative record and devoid of any clear error of law or fact. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness.

Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the OHA Initial Decision. The final SBA loan review decision is **AFFIRMED**.

## <u>CONCLUSION OF LAW</u>

The Petitioner was ineligible for PPP Loan Number 9408398410. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 9408398410.

## <u>ORDER</u>

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**

Brian J. Haring
U.S. Administrative Law Judge

JA1149

# UNITED STATES SMALL BUSINESS ADMINISTRATION
# OFFICE OF HEARINGS AND APPEALS

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) ) |
| Global Values, Inc. | ) Docket No.  PPP-8895107007 |
| Appellant | ) ) ) |
| Appealed from SBA PPP Loan No. 8895107007 | ) ) ) ) |

## DECISION

Issued: June 23, 2022

*For Appellant*
Anand Anadan, 582 E. Home Ave, Palatine, IL 60074

*For the Small Business Administration*
Sameena Nabijee., Esq, Office of General Counsel, U.S. Small Business Administration, Washington, D.C.

The U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision finding Appellant Global Values, Inc. ineligible for PPP loan forgiveness for the full loan amount of $1,123,486.00 but eligible for only a maximum loan of $1,035,127.00 and forgiveness for that same amount.  Appellant filed the instant appeal from that Final SBA Loan Review Decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested.  After carefully considering the regulations, and evidence and arguments presented in the Administrative Record, for the reasons discussed herein, I find that Appellant's appeal does not show the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

## I.  CARES Act , PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act),

Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn. Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)). Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1). One month later, Congress increased this figure to $659 billion. Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

The Small Business Act had been enacted on July 7, 1953. Various regulations had been implemented in relation to that Act, including 13 CFR §120.110, which became effective in 1996. (61 FR 3223, 3235, 3239) Congress placed the Paycheck Protection Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. *In Re Gateway Radiology Consultants, P.A.* 983 F.3d 1239, 1248 (2020) (11th Cir.). Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012)

***PPP Loan Eligibility***

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B) Ineligible types of businesses are identified in 13 CFR §120.110. These ineligible businesses include, for example, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a

2

JA1151

borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G) PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II). If the borrower was not eligible for a PPP loan, but nevertheless received such a loan, then the loan is not subject to forgiveness. See 85 FR 33010, 33012- 33013.

### PPP Loan Forgiveness

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m. Application for, and receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans. The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). *Gateway* at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

### PPP Loan Forgiveness Denial and Appeal

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan amount. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1. Was ineligible for a PPP loan.

3

JA1152

2. Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses.

3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA, or

4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA. 13 CFR §134.1201(b).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L. However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision. 13 CFR §134.1201(a-c). The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans. To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov. 13 CFR §134.1202(a).

## II. Authority of an SBA OHA Judge

An Administrative Judge has authority no greater than that of an Administrative Law Judge. The authority of such a judge is limited, as noted below.

An Administrative Law Judge (ALJ) has no constitutionally based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See e.g.,* 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash* v. *Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, an Administrative Judge has no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, the Judge's role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

## III. Timeliness and Standing

An appeal of a Final SBA Loan Review Decision must be initiated (on the OHA Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR

JA1153

§134.1202(a). In this case the Final SBA Loan Review Decision was issued on December 20, 2021, (to the lender) and was reported as received by Appellant on December 21, 2021. The appeal was filed by initiation on the Portal on January 17, 2022, which is within the 30-day time requirement. (Dkt. #1- #2[1]) The appeal is timely.

Only the borrower on a loan, or its legal successor in interest, for which SBA has issued a final SBA loan review decision has standing to appeal the final SBA loan review decision to OHA. 13 CFR §134.1203. A party may represent itself or be represented by an attorney. A partner may represent a partnership; a member may represent a limited liability company; and an officer may represent a corporation, trust, association, or other entity. 13 CFR §134.208.

In this case the Appellant/borrower is Global Values, LLC. (AR 23). The Final SBA Loan Review Decision was issued regarding Global Values, LLC. (AR 19-20). The Appellant's authorized representative is Anand Anandan. The appeal petition on the Portal was signed by Anand Anandan. (Portal Appellant Point of Contact). The record shows that Anand Anandan is president and 50% owner of the Appellant, an LLC. (AR 21). Based on this, I find that there is proper standing to file the appeal.

Appellant's petition consists of a one-page Appeal. (Dkt. #1). Appellant's petition asserts that Global Values, LLC should have been classified as a "seasonal business" when the SBA calculated the amount of loan forgiveness. The Administrative Record was filed on March 11, 2022. (AR is in Dkt. #4) Appellant made no timely objection or additions to the record. On April 8, 2022, the SBA submitted a timely response to the Appeal, stating that Global Values, LLC does not meet the requirements of being a "seasonal business," therefore, the SBA decision should be affirmed. (Dkt #5).

On April 24, 2022 Global Values, LLC filed a supplemental Reply to the SBA's response to the Appeal (Dkt #6). However, this response was filed after the close of the record and Appellant did not file any pleading to have the Reply deemed timely. Accordingly, the Reply was not filed timely and will not be considered in this decision.[2]

## IV.  Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a). Appellant has the burden of proving all elements of the appeal. **Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law**.  13 CFR §134.1210.

## V.  Facts of this Case and the Final SBA Loan Review Decision

The SBA authorized only partial approval of Appellant's Forgiveness Application based

---

[1] The docket numbers referred to herein represent the referenced document in the chronological order in which that document was filed on the OHA case portal.

[2] The untimely supplement adds no material facts that would lead to a different outcome in this appeal. Appellant admits it does not satisfy the definition of a seasonal employer.

JA1154

on the borrower receiving an ineligible loan amount of $1,123,486.00. Prior to their final determination, the SBA informed the Appellant's lender that it was undertaking a review of the loan and requested supporting documentation on January 21, 2021. (AR 461-62).

When the SBA reviewed Appellant's supporting documentation, the SBA used the Appellant's trailing 12 month calculation for April 2019 – March 2020 to maximize the loan amount. (AR 13). Using the quarterly wage reports, the SBA calculated an annual payroll of $3,790,639.57, with the maximum eligible loan amount of $1,035,127.00. Only this amount was forgiven, not the original loan amount. (AR 19). The SBA issued the Final Loan Review Decision on December 20, 2021. (Id).

## VI. Appeal

On January 17, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant requested forgiveness in the amount of $1,123,486.00, the full loan amount disbursed. The lender initially approved full forgiveness.

## VII. Discussion and Analysis

In the SBA's Final Loan Review Decision, they found the Appellant was not eligible for the entirety of the loan amount it received and therefore the Appellant was denied the forgiveness amount requested. Specifically:

SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount.

It was determined that the disbursed loan was incorrectly calculated by annualizing fourth quarter 2019 payroll costs. The loan has been recalculated using the trailing 12 month calculation for April 2019-March 2020 to maximize the loan amount. Utilizing the quarterly wage reports, total wages in the amount of $3,790,639.57; excess wages in the amount of $14,595.24; SUTA in the amount of $89,093.84; employer benefits totaling $1,103,472.58; trailing payroll costs total $4,968,611 which produces a maximum loan amount of $1,035,127 vs. the disbursed amount of $1,123,486.00. (AR at p. 19).

The SBA based their calculations on Appellant being a non-seasonal employer, despite Appellant's contentions to the contrary. Specifically:

The Economic Aid Act (EAA) became law on December 27, 2020, and amended the CARES Act to define a seasonal employer as
(1) an eligible recipient that does not operate for more than 7 months in any calendar year; or
(2) during the preceding calendar year, had gross receipts of any 6 months of that year that were not more than 33.33 percent of the gross receipts of the employer for the other 6 months of that year. (15 U.S.C. § 636(a)(36)(A)(xiii)).

Appellant asserts that the entire loan amount should be forgiven because the numbers the

6

SBA used to calculate forgiveness should have been premised upon the "seasonal business" calculation listed above. However, the record shows that Appellant does not meet the definition of a "seasonal business" as defined by the SBA and as such the SBA decision contains no clear error of fact or law.

When applying the two factors of 15 U.S.C. § 636(a)(36)(A)(xiii) to Global Values, LLC, the Appellant readily admits it does not meet the first factor as the business operates for more than 7 months in a year. According to Appellant, its business manufactures granite monuments to be installed in cemeteries. Specifically:

> [M]ost of our customers do not accept deliveries in the winter months, so we shut down our manufacturing plant and lay off all the manufacturing employees for 10 weeks to 12 weeks, except for a couple of them who are involved in maintaining the machines. (Dkt #1).

> The main product we manufacture is granite monuments to be installed in cemeteries. Our main manufacturing plant is in Barre, VT. Our Barre plant primarily serve customers in the Northeastern states. During the winter months of January and February and until spring, while there is snow on the ground, cemeteries in the Northeast do not allow monument installations." (Id).

Accordingly, by Appellant's own admission, it fails to meet the 7 month maximum operational requirement imposed by the rule. At most, Appellant's "shut down" period is for 3 months or less and Appellant operates for at least 9 months or more every year.

Appellant also fails to meet the second factor in the definition of a "seasonal business" based on the calculation method established in 15 U.S.C. § 636(a)(36)(A)(xiii). As counsel for the SBA pointed out in the Response,

> Appellant's gross receipts for the lowest six months for calendar year 2019 were $3,996,243.25. Its gross receipts for the highest six months of the calendar year were $7,684,043.20. The lowest six months of gross receipts were 52% of the highest months; therefore, Appellant does not fit within the 33.33% exception. (Dkt #5, page 4).[3]

Based on the foregoing, Global Values, LLC does not meet either of the two options to be considered a "seasonal business" under 15 U.S.C. § 636(a)(36)(A)(xiii). As Appellant's entire argument to have the full amount of the loan forgiven is premised upon being a "seasonal business," Appellant is unable to meet the burden of proof to show clear error in the SBA's decision.

In calculating the original loan, Appellant should have followed the instructions that apply to their tax filing status as an LLC. The instructions for an LLC apply whether the LLC filed (or will file) as a sole proprietor, a partnership, or a corporation in the reference period of 2019-2020. The following methodology should be used to calculate the maximum amount that can be borrowed for corporations, including S and C corporations:

• Step 1: Compute 2019 payroll costs by adding the following:  2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, which can be computed

---

[3] During the appeal, Counsel for SBA contacted Appellant for 2019 monthly gross receipts, however, these figures still did not support a finding that Appellant is a seasonal employer. (Dkt. #5, p. 3-4, Exhibit A).

JA1156

7

using 2019 IRS Form 941 Taxable Medicare wages & tips (line 5c-column 1) from each quarter plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, subtracting any amounts paid to any individual employee in excess of $100,000 and any amounts paid to any employee whose principal place of residence is outside the U.S; 2019 employer health insurance contributions (portion of IRS Form 1120 line 24 or IRS Form 1120-S line 18 attributable to health insurance); 2019 employer retirement contributions (IRS Form 1120 line 23 or IRS Form 1120-S line 17); and 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

 • Step 2: Calculate the average monthly payroll costs (divide the amount from Step 1 by 12).

• Step 3: Multiply the average monthly payroll costs from Step 2 by 2.5.

• Step 4: Add the outstanding amount of any EIDL made between January 31, 2020, and April 3, 2020, that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid). The corporation's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with the filed business tax return (IRS Form 1120 or IRS 1120-S) or other documentation of any retirement and health insurance contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020, must be provided to establish you were in operation and had employees on that date.

In this case, Appellant's lender provided evidence of how the loan was calculated; however, the SBA determined the maximum amount was miscalculated using only Q4 payroll numbers (annualized) for the loan request. (AR 13).

The SBA finally calculated the maximum eligible loan amount as follows:

1) Utilizing the state tax contribution reports for the trailing 12-month period of 2019 Q2 to 2020 Q1, gross wages total to $3,790,639.57. (Total wages that exceeded $100k annually were reduced by $14,595.24).
2) Total employer fringe benefit contributions for healthcare and pension combined: $1,103,472,58. (SUTA (State Unemployment Tax) was confirmed in the amount of $89,093.84).
3) Based on the above the total payroll cost for the trailing 12-month period equals $4,968,610.75.
4) Based on the foregoing, the maximum eligible loan is $1,035,127.00 which is 2.5 times the average monthly payroll. ($4,968,610.75/12 = $414,050.90 x 2.5 = $1,035,127.00).

 Further, Appellant's tacit reliance on the advice and initial approval of the Lender fails to consider that the SBA  is authorized to make a final loan decision on PPP loans at the time of forgiveness consideration. The Economic Aid Act (EAA) became law on December 27, 2020 and amended the CARES Act to define a seasonal employer as "an eligible recipient that – (I) does not operate for more than 7 months in any calendar year; or (II) during the preceding calendar year, had gross receipts of any 6 months of that year that were not more than 33.33 percent of the gross receipts of the employer for the other 6 months of that year." P.L. 116-260, pg. 831 (Dec. 27, 2020) This amendment was effective as if included in the CARES Act and made applicable to any loan

8

made pursuant to the CARES Act, "before, on, or after the date of enactment of this Act, including forgiveness of such a loan." *Id.* The SBA final loan review decision applied the EAA definition of a seasonal employee when issuing the decision for the loan forgiveness application for this Appellant.

Accordingly, there is no clear error in the SBA decision that Global Values, LLC is only eligible for forgiveness in the amount of $1,035,127. The documentation supports the SBA decision and finding that Appellant had received more than the maximum eligible loan amount in 2020. The SBA found that the documentation justifies partial loan forgiveness. (AR 13). Forgiveness is limited to the maximum eligible loan amount, here, it is $1,035,127.00.[4] The Appellant has failed to sustain the burden of proof to demonstrate the SBA's calculation and decision is based on a clear error. I find no clear error of fact or law in the SBA final loan review decision.

Appellant has not satisfied its burden of proof to demonstrate that the final SBA loan review decision was based on clear error of fact or law. The SBA final loan review decision is AFFIRMED.

## VIII. Conclusion

Appellant has failed to establish that the final SBA loan review decision is based on a clear error of law or fact. I therefore Deny the appeal and affirm the final SBA loan review decision.

This is an initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b), PPP Procedural Rule. A party may file a request for reconsideration within 10 calendar days after service of an initial decision. You can serve your petition via email to OHAPPPinquiries@sba.gov. A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

*Joan Knight*
_____
JOAN KNIGHT
Administrative Judge

---

[4] Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules. Fed. Reg., Vol. 85, No. 202, p. 66216-66217, effective October 14, 2020. At p. 66217, "The amount of loan forgiveness that a borrower may receive cannot exceed the principal amount of the PPP loan."

9

JA1158

## UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

| | |
|---|---|
| | ) |
| | ) |
| PETITION FOR RECONSIDERATION: | ) |
| | ) |
| Global Values, Inc. | ) P F R  Docket No.  PPP-8895107007 |
|     Petitioner | )   Issued: July 6, 2022 |
| | ) |
| Appealed from | ) |
| SBA PPP Loan No. 8895107007 | ) |
| | ) |

## DECISION

*For Petitioner*
Anand Anadan, 582 E. Home Ave, Palatine, IL 60074

*For the Small Business Administration*
Sameena Nabijee., Esq, Office of General Counsel, U.S. Small Business Administration,
Washington, D.C.

### I. Background

On June 23, 2022, this Court denied the Petitioner's Appeal of the SBA's Final Loan Review Decision, finding Global Values, Inc. ineligible for PPP loan forgiveness for the full loan amount of $1,123,486.00; but eligible for only a maximum loan of $1,035,127.00 and forgiveness for that same amount. Petitioner filed the instant Petition for Reconsideration (PFR) from the decision of the Office of Hearings and Appeals (OHA) on June 24, 2022.

### II.   Timeliness and Standard of Review

Petitioner filed its PFR within ten days of service of Order of Dismissal, so the PFR is timely. 13 C.F.R. § 134.1211(c)(1). A PFR may be granted by OHA upon a "clear showing of an error of fact or law material to the decision." (Id).

Petitioner must still prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 CFR §134.1210.

### III.   Law and Analysis

The Petition for Reconsideration "must clearly show an error of fact or law material to the decision". 13 C.F.R. § 134.1211(c)(1). In the PFR, Petitioner focuses on the fact that there was little guidance on what qualifies as a "seasonal business" at the time it applied for the PPP Loan on April 5, 2022. As a result, Petitioner used its own "conventional understanding of a seasonal business." (PFR at p. 2).

Petitioner did not correctly calculate the maximum eligible loan amount when it applied. The SBA had issued guidance on how to calculate maximum loan amounts based upon business type. When Petitioner applied for the loan, it listed the business as an S corporation with 75 employees. (AR 470).  Petitioner does not dispute that it fails to meet the SBA definition of a seasonal employer. Petitioner does not argue there is an error in  the accuracy of the figures used in the recalculation (AR at p. 19 recalculation, PFR).  Petitioner's argument is that the SBA should consider it a seasonal employer based upon Petitioner 's own definition and the limited available guidance by the SBA when Petitioner applied.

Specifically, the Petitioner states:
My main argument is based on the definition of the date of the law. The law defines the seasonal business only in December 27, 2020 and at the time of the application in the first of April 2020, there was no such definition. (PFR  at p. 2).

The problem with this argument is that it is based on an erroneous premise. As discussed in detail in the original OHA decision, Petitioner acknowledges it fails to meet the definition of a seasonal business pursuant to 15 U.S.C. § 636(a)(36)(A)(xiii).[1] Accordingly, Petitioner is unable to prove there is a clear error of fact or law in the SBA final loan review decision. The Petitioner additionally argues that as a result of the alleged lack of guidance on how to calculate the PPP loan eligibility amount, it relied on its' own definition of a seasonal business. Petitioner argued that it shut down manufacturing every year for 10 -12 weeks, thus it considered itself a seasonal business. A seasonal business could then use payroll from any 12 week period between February 15, 2019 and February 15, 2020, for the loan calculation. Petitioner used a 12 week period for the loan calculation.

Petitioner's unfortunate reliance on its own definition and the reported advice from the Lender fails to consider that the SBA has authority to issue a final loan decision on PPP loans at the time it considers forgiveness applications. The SBA's definition of a seasonal employer is effective as if included in the original CARES Act signed into law on March 27, 2020 and made applicable to any loan made pursuant to the CARES Act, "before, on, or after the date of enactment of this Act, including forgiveness of such a loan." P.L. 116-260 (Dec. 27, 2020). Petitioner applied for the PPP loan as an S corporation with employees and failed to use the correct method to calculate the maximum loan amount based on its' business type. The Office of Capital Access recalculated the maximum eligible amount in the manner most advantageous to Petitioner. (AR at p. 13 and 19, Decision of June 23, 2022 at p.7-8).

Congress provided that the PPP was to be administered by the SBA, and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans.  This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework.  This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking, including any public comment period.

It is clear that Congress delegated to SBA rule making authority which includes, in

---

[1] The Economic Aid Act (EAA) became law on December 27, 2020 and amended the CARES Act to define a seasonal employer as (1) an eligible recipient that does not operate for more than 7 months in any calendar year; or (2) during the preceding calendar year, had gross receipts of any 6 months of that year that were not more than 33.33 percent of the gross receipts of the employer for the other 6 months of that year. (15 U.S.C. § 636(a)(36)(A)(xiii)).

pertinent part, the power to "make such rules and regulations as it deems necessary to carry out the authority vested in it." 15 USC § 634(b)(6). In addition, Congress permitted SBA, in pertinent part, "to take any and all actions when it determines such actions are necessary or desirable in making loans. 15 USC § 634(b)(7). OHA is bound by the regulations and policies promulgated by SBA as they are currently written. Accordingly, the decision of June 23, 2022 is be affirmed and this instant PFR is denied.

Although it has been shown that Petitioner has already failed to meet its burden of proof based on the evidence or lack thereof, it may be noted that there is no credible evidence of record to conclude that the Petitioner is a "seasonal business." Petitioner concedes it does not meet the specific definition of a seasonal employer, as specifically discussed in the SBA Response (Dkt. 5 and 6). I agree with the SBA Response, based upon the figures and additional documents submitted by Petitioner, that Petitioner does not fall within the definition of a seasonal employer.[2] (Dkt. 5). Global Values, Inc.'s own tax records and receipts show it made significant sales during the winter months when Appellant claims they are "shut down." Apparently, it is only the manufacturing part of the business that is shut down for 10-12 weeks, and the entire business operates more than 7 months per year.

Petitioner's 2019 Federal tax forms (2019 tax return, 2019 and 2020 941s) not only show the payment of wages indicating continuing employment at Global, but monthly gross receipts document the ongoing sales and revenue. (AR 40, Dkt. 5 with Ex. A). Based on the foregoing records, there is no single month where Global Values, LLC is not taking orders from customers or not receiving income.

However, it is the SBA's definition and rules that are dispositive, and as noted in the initial Decision, Petitioner has the burden of proof. Specifically, Petitioner must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. §143.1210. Pursuant to 13 C.F.R. §134.1211(c)(1), a Request for Reconsideration must clearly show an error of fact or law material to the decision. Petitioner has failed to do so.

## IV. Conclusion

Based upon the foregoing, it is determined that the Petitioner has not proven that there was a clear error of fact or law material to the decision. Accordingly, the Petition for Reconsideration is **DENIED**.

For the foregoing reasons, the instant PFR is DENIED. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator elects to review this decision pursuant to 13 C.F.R. § 134.1211(c)(3) & (d), OHA's decision on the request for reconsideration is a reconsidered initial OHA decision and becomes the SBA's final decision 30 calendar days after its service. See 13 C.F.R. § 134.1211(c).

*Joan Knight*
_____
JOAN KNIGHT
Administrative Judge

---

[2]Petitioner 's gross receipts for the lowest six months for calendar year 2019 were $3,996,243.25. Its gross receipts for the highest six months of the calendar year were $7,684,043.20. The lowest six months of gross receipts were 52% of the highest months; therefore, Petitioner does not fit within the 33.33% exception. Further, Petitioner reports it only shut down manufacturing for 10-12 weeks each year.

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College


Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: November 21, 2022

Docket No. PPP-8289087101

Appearances: Scott Ward, Esq., for Appellant
Mark O'Brien, Esq., for SBA

## DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

### II. Background

#### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L.116-136 (March 27, 2020). Appellant applied for a PPP loan on April 13, 2020. (Portal Doc, *Exh 03 - 2020-04-06 - GC PPP Appl*). PPP loan number 8289087101 ("the Loan") was disbursed to Appellant by the Lender on April 24, 2020 in the amount of $7,046,037. (AR at pp. 30-33).

On July 22, 2021, Appellant executed a PPP Loan Forgiveness Application Form requesting forgiveness of the full amount of the Loan. *Id.* On September 7, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested information regarding the Appellant's Loan. (AR at pp. 1405-06). On October 13, 2021, the SBA sent a letter to the Lender stating:

1

JA1162

We are currently reviewing the Hold Code(s) associated with this PPP Loan. This request is specific to this issue and is not made in the normal course. Please provide the following information so that SBA may decision the Hold Code(s) associated with this loan and it can subsequently be assigned for a forgiveness review. We must receive this information within 10 business days.

The following hold code is attached to your forgiveness application:

1. Employee Count Threshold - Employee Count indicative of concern – Potential eligibility issue

Please provide the following documentation to clear the above hold:

- Copies of most recent 3 years Federal Tax Returns (2018-2020)

(AR at pp. 1407-08).

On October 27, 2021, SBA sent another letter to Lender, this time requesting a "list of locations to include employee count per location." (AR at pp. 1409-10). SBA reiterated this request on November 3, 2021. (AR at pp. 1411-12). On November 15, 2021, SBA contacted the Lender again:

We are doing a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location.
- Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
- The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
  1. The maximum tangible net worth may not exceed $15 million; AND

<div align="center">2</div>

2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal years before the application date may not exceed $5.0 million.

The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million.

(AR at pp. 1413-15).

In a December 8, 2021 letter to Lender, SBA stated:

In response to the Borrower's letter dated 12/3/2021. As of the date of the Borrower's PPP Loan Application, April 6, 2020, we had three governing documents, the Standard Operating Procedure (SOP 50 10 5(k)), the CARES Act, and the Borrower's Application Form (SBA Form 2483). SOP 50 10 5(k) contains the most information of the three regarding Eligibility Requirements (Subpart B, Chapter 2, Section II, paragraphs D1 and D4, Page 92).

We are continuing to do a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a Full Denial. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):

- Hold Code 21 – Employee Count Threshold; Based on Borrower has 639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location. This reason is under consideration for removal based on Borrower's letter dated 12/3/2021.
- Borrower had Total Revenue of $92.8 Million (6/30/20) $142.7 Million (6/30/19), and $93.4 Million (6/30/18), which exceeds SBA's NAICS Size Standard of $30 million in annual Gross Revenue. A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs.
- Per SOP 50 10 5(k), The Borrower may qualify under either the industry small business size standards or the alternative size standard. To qualify under the alternative size standard, the Borrower must meet the following:
  1. The maximum tangible net worth may not exceed $15 million; AND
  2. The average net income after Federal income taxes (excluding any carry-over losses) for the two full fiscal

3

years before the application date may not exceed $5.0 million.

The Borrower's Net Worth as of 6/30/2019 is $147.9 million, AND the average net income for the two full fiscal years before the application date is $45.8 million, making the Borrower ineligible for SBA assistance.

(AR at pp. 1418-20).

On February 25, 2022, SBA sent another letter to Lender:

I am currently working on the Forgiveness Request for the above referenced PPP loan. Your forgiveness application has been recommended for a decline or partial decline. All loans that are recommended for less than the requested amount of forgiveness amount must go through a quality control process that requires additional levels of review. This request is specific to this issue. Please provide the following information so that SBA may complete the quality control process and review this loan file. We must receive this information within 20 business days.

- 2019 Q1-Q4 Form 941
- 2019 Form 940
- 2019 Q1-Q4 State filings (State Unemployment Insurance-SUI)
- 2019 Summary report for Employer Health Contributions
- 2019 Summary report for Employer Retirement Contributions
- 2019 Payroll summary showing total pay per employee

(AR at pp. 1421-22).

On April 12, 2022, the SBA issued its Final Loan Review Decision denying forgiveness of Appellant's PPP Loan. The Decision stated:

SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.

A thorough analysis of the IRS 941 reports and additional supporting documentation confirms that the borrower exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a Paycheck Protection Program loan. Furthermore, the borrower

4

is listed as 501 (c)(3), and therefore is not eligible under the
alternative size standard industry qualifications. The Alternative
Size Standard qualifications are limited to for-profit entities, that do
not qualify for a PPP loan under the traditional NAICS Employee-
Based Size Standard Industry criteria.

(Portal Doc, *Final SBA Loan Review Decision*).

## B. Appeal

On May 13, 2022, Appellant filed its appeal. (Portal Doc, *Appeal document*). On June 28,
2022, the Office of Hearings and Appeals (OHA) issued a Notice and Order. (Portal Doc, *Case
Schedule*). SBA filed the Administrative Record on August 19, 2022. (Portal Doc, *Administrative
Record - Gordon College*). The Appellant filed an Objection to the Administrative Record on
September 19, 2022. (Portal Doc, *Objections to Admin Record (09/19/2022)*).[1] In its appeal,
Appellant proposes various arguments for why SBA's Final Loan Review Decision was
mistaken:

First, the Loan Decision makes a clear error by applying the wrong
legal standard. As explained below, the SBA Examiner
retroactively applied a standard for determining the number of
employees for PPP loan eligibility purposes that did not exist at the
time Gordon submitted its application on April 13, 2020 . . .

Second, there is a second clear error by SBA in retroactively
overruling its April 2020 legal and factual determinations. On its
April 13, 2020 Loan Application, and at all times since, Gordon
consistently listed its total number of employees for determining
loan eligibility as 495.67. On its face, that is a precise FTE
calculation, not a "headcount." (No employee has "0.67" of a
"head" to count.). SBA originally determined that Gordon was
eligible for a PPP loan on April 15, 2020 using this FTE calculation
. . .

Third, the SBA Loan Decision under appeal utterly disregards SBA
PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP
FAQ since that time) . . .

Fourth, not only is this a clear error of law, it also causes serious
detrimental reliance harms to Appellant . . .

Fifth, the SBA examiner's final Loan Decision in Appellant's case
contradicts other decisions by other SBA Examiners involving
substantially similar Borrowers and relevant facts . . .

Sixth, it is a separate but extremely serious clear error for SBA to
apply different legal and factual standards to other Borrowers who
are similarly situated to Appellant. On its face, such distinctions are

---

[1] Appellant's various Objections ultimately have no bearing on the outcome of this appeal. To that extent, they are
denied.

JA1166

discriminatory and arbitrary, and likely even capricious. But
further, by applying differential standards to Appellant Gordon
College, a nonprofit religious private college, than to similar non-
religious colleges, the SBA Loan Decision may discriminate on the
basis of religion in violation (among others) of the First and
Fourteenth Amendments to the U.S. Constitution and of the federal
Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

## III. DISCUSSION

### A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its
appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review
Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

### B. Analysis

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to
certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep
their workers paid and employed.  PPP was established under section 1102 of the Coronavirus
Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law
on March 27, 2020, and subsequently was revised and expanded by other statutes. In general,
PPP was open to all American small businesses with 500 or fewer employees, including sole
proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. §
636(a)(36)(D).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection
Program provides:

2. What do borrowers need to know and do?

a. Am I eligible?

You are eligible for a PPP loan if you have 500 or fewer employees
whose principal place of residence is in the United States, or are a
business that operates in a certain industry and meet the applicable
SBA employee-based size standards for that industry, and:
　i. You are:
　A. A small business concern as defined in section 3 of the
　Small Business Act (15 U.S.C. 632), and subject to SBA's
　affiliation rules under 13 CFR 121.301(f) unless specifically
　waived in the Act; or . . .

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812.

6

In *Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, a document first issued on April 26, 2020, SBA and the Department of the Treasury state:

> **36. Question**: To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?
>
> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "full-time equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

(*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov)).

Appellant correctly points out that the FAQ document was issued 13 days after it applied for the PPP loan. However, pre-existing SBA regulations in place at the time were substantially similar to the method prescribed in the FAQ document. When it comes to calculating a small business concern's number of employees, 13 C.F.R. § 121.106—which was in force at the time Appellant applied for its loan on April 13, 2020—provides:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (*i.e.*, individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.
>
> (b) Where the size standard is number of employees, the method for determining a concern's size includes the following principles:
> (1) The average number of employees of the concern is used (including the employees of its domestic and foreign affiliates) based upon numbers of employees for each of the pay periods for the preceding completed 24 calendar months.
> (2) Part-time and temporary employees are counted the same as full-time employees.

JA1168

13 C.F.R. § 121.106 clearly prescribes what Appellant terms a "headcount test" as the proper method by which to calculate a concern's number of employees for loan eligibility purposes. Stephen Lacorazza, Appellant's Vice President for Finance & CFO, stated in a November 5, 2021 email that Appellant has 639 employees (presumably calculated via the "headcount" method) at its Massachusetts location alone. In light of this admission, Appellant understandably focuses on whether it is proper to use the headcount method for counting employees when it comes to determining PPP loan eligibility.

This Court finds that the headcount method is not only appropriate, but required by 13 C.F.R. § 121.106. There is no denying that the speed of the PPP program's implementation—characterized by a rush of Interim Final Rules and a mishmash of interrelated regulations and guidance documents—was a challenging environment for businesses to navigate. Sympathy, however, is not sufficient to grant Appellant's appeal. 13 C.F.R. § 121.106 effectively put Appellant on notice that its employee calculation for eligibility should not use the FTE method.

As noted above, Appellant makes six primary arguments for why it should be deemed eligible for its PPP loan and (accordingly) eligible for loan forgiveness. For ease of reference, they are reproduced below:

> First, the Loan Decision makes a clear error by applying the wrong legal standard. As explained below, the SBA Examiner retroactively applied a standard for determining the number of employees for PPP loan eligibility purposes that did not exist at the time Gordon submitted its application on April 13, 2020 . . .

> Second, there is a second clear error by SBA in retroactively overruling its April 2020 legal and factual determinations. On its April 13, 2020 Loan Application, and at all times since, Gordon consistently listed its total number of employees for determining loan eligibility as 495.67. On its face, that is a precise FTE calculation, not a "headcount." (No employee has "0.67" of a "head" to count.). SBA originally determined that Gordon was eligible for a PPP loan on April 15, 2020 using this FTE calculation . . .

> Third, the SBA Loan Decision under appeal utterly disregards SBA PPP FAQ #17 issued April 6, 2020 (and repeated in every PPP FAQ since that time) . . .

> Fourth, not only is this a clear error of law, it also causes serious detrimental reliance harms to Appellant . . .

> Fifth, the SBA examiner's final Loan Decision in Appellant's case contradicts other decisions by other SBA Examiners involving substantially similar Borrowers and relevant facts . . .

> Sixth, it is a separate but extremely serious clear error for SBA to apply different legal and factual standards to other Borrowers who are similarly situated to Appellant. On its face, such distinctions are discriminatory and arbitrary, and likely even capricious. But further, by applying differential standards to Appellant Gordon

8

College, a nonprofit religious private college, than to similar non-religious colleges, the SBA Loan Decision may discriminate on the basis of religion in violation (among others) of the First and Fourteenth Amendments to the U.S. Constitution and of the federal Religious Freedom Restoration Act of 1993 . . .

(Portal Doc, *Appeal document*).

Arguments 1, 2, and 3 are unavailing in light of 13 C.F.R. § 121.106, which was in force at the time of Appellant's PPP loan application. Arguments 4 and 5 do not allege a clear error or fact or law in the Final Loan Review Decision. With respect to Argument 5, the fact that other allegedly similar PPP loan recipients received loan forgiveness is not itself grounds upon which this Court could permissibly grant Appellant's appeal. As for Argument 6, this Decision does not take a position on the alleged RFRA or constitutional violations. OHA does not have the authority to issue decisions based on its interpretation of RFRA or the Federal Constitution. SBA's Final Loan Review Decision is affirmed.

## C. Conclusion

Based upon the foregoing**,** it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is an initial agency decision. However, unless a request for reconsideration is filed within ten days of this decision date pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211. A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

*Gary D. Smith*
Gary D. Smith
Administrative Judge

JA1170

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Gordon College


Appellant

Appealed from
SBA PPP Loan Number
8289087101

Issued: January 5, 2023

Docket No. PPP-8289087101

Appearances:  Scott Ward, Esq., for Appellant
Mark O'Brien, Esq., for SBA

### DECISION ON APPELLAN S PE I ION FOR RECONSIDERA ION

### I. Background

On November 21, 2022, this Court denied the Appellant's appeal of the SBA's Final Loan Review Decision in which the SBA denied loan forgiveness on the grounds that " . . . the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Portal Doc, *Final SBA Loan Review Decision*). The Appellant timely filed a Petition for Reconsideration on December 1, 2022.

For the reasons set forth below, the Appellant's Petition is **DENIED**.

### II. Discussion

### A. Standard of Review

To prevail on a request for reconsideration, the Petitioner must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

### B. Analysis

### B.i. Appellant s Petition for Reconsideration

As an initial matter, it must be noted that Appellant correctly identifies an error of fact in this Court's November 21, 2022 Initial Decision. Appellant is a tax-exempt nonprofit, not a small business concern. As demonstrated below, that Appellant is a nonprofit changes the analysis but

1

JA1171

not the result of the Initial Decision. Because today's Reconsidered Decision reaches the same outcome as the Initial Decision, the latter is affirmed.

The Payroll Protection Program enabling legislation increased eligibility for certain businesses and set size standards for those businesses. With regard to non-profits, the legislation and regulations are clear. To be eligible for a PPP loan, a nonprofit Appellant must have 500 or fewer employees or meet the SBA employee-based size standards for the industry in which it operates. The legislation provides:

> (D) Increased eligibility for certain small businesses and organizations. —
> (i)In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of—
> (I) 500 employees; or
> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.
>
> . . .
>
> (v) Employee.— For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657(a)(b)(2)(C) of this title employs not more than 500 employees under clause (i)(I) . . . *the term "employee" includes individuals employed on a full-time, part-time, or other basis.*

15 U.S.C. §636(a)(36)(D)(i), 15 U.S.C. §636(a)(36)(D)(v) (emphasis added).

In relevant part, SBA's first Interim Final Rule implementing the Paycheck Protection Program provides:

> 2. What do borrowers need to know and do?
>
> a. Am I eligible?
>
> You are eligible for a PPP loan *if you have 500 or fewer employees* whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
>    i. You are:

<center>2</center>

JA1172

> A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
> B. *A tax-exempt nonprofit organization* described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
> ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099–MISC.

Fed. Reg. Vol. 85, No. 73, April 15, 2020 at p. 20812 (emphasis added).

13 C.F.R. § 121.106(a), which the Initial Decision relied on in upholding the Final Loan Review Decision, provides:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. Volunteers (*i.e.*, individuals who receive no compensation, including no in-kind compensation, for work performed) are not considered employees.

The CARES Act, as quoted above on Page 2, is very clear: SBA's proposed "headcount" method—that is, counting every employed individual regardless of full-time or part-time status as an "employee"—is the proper method with which to determine whether a nonprofit organization is eligible for a PPP loan based on the 500-employee threshold. In the Initial Decision, this Court relied heavily on 13 C.F.R. § 121.106, and incorrectly labeled Appellant a small business concern as opposed to a nonprofit organization. While this was an error of fact, it was not material to the decision, because the CARES Act's text resolves the employee-counting dispute in a manner consistent with the Initial Decision. It is worth noting that SBA's *Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, a guidance document first issued on April 26, 2020, reiterates this Court's interpretation of the CARES Act[1]:

> 36. **Question**: To determine borrower eligibility under the 500-employee or other applicable threshold established by the CARES Act, must a borrower count all employees or only full-time equivalent employees?

---

[1] This guidance was issued after Appellant applied for its loan. It is included in this Reconsidered Decision only to illustrate that SBA correctly interpreted the CARES Act's unambiguous language regarding how to calculate number of employees for loan eligibility purposes.

JA1173

**Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold.

*Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)*, April 26, 2020, Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov).

Appellant argues that the FTE method is proper for calculating its number of employees for loan eligibility purposes because this is the method prescribed by SBA Form 2483, the Borrower Application Form. This is incorrect. Certification #4 on Appellant's Form 2483 reads:

> The applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities *for the eight-week period following this loan*.

(Portal Doc, *Form 2483*) (emphasis added).

Certification #4 does indeed instruct borrowers to provide information regarding full-time equivalent employees to their lender. However, this is to ensure that borrowers maintain and continue paying their workforce, which was the dominant purpose of the PPP. This is why certification #4 is limited to the covered period. Stated differently, certification #4 exists to assess Appellant's eligibility for loan forgiveness, not its eligibility for the loan itself. A hypothetical borrower with fewer than 500 employees may be eligible to receive a PPP loan but ineligible to receive loan forgiveness if it fires half of its staff during the covered period. Certification #4 is highly relevant in such a situation. It is not relevant when the sole question is loan eligibility.

Appellant filed an Objection to SBA's Supplement to the Administrative Record. In this Objection, Appellant notes that it addressed the above-quoted provision of the CARES Act in its appeal petition. In the appeal petition, Appellant argued:

> There are only three uses of the term "part-time employee" in the CARES Act and none define the term. The term "headcount" is not used in the CARES Act. There is no formula for counting employees provided in the CARES Act. The Act made it clear that part-time employees were "included" in the definition of employee but did not address how to calculate the sum of these full-time and part-time employees into a total number. At least until the issuance of FAQ #36 on April 26, 2020, it was unclear for purposes of determining the 500 maximum number of employees for PPP loan eligibility whether such part-time employees are each counted as one employee (regardless of any specific part-time threshold hours standard) – a "headcount" formula – or whether the full-time equivalent (FTE) calculation was appropriate.

(Portal Doc, *Appeal document*).

4

In its Objection to SBA's Supplement, Appellant argued:

> Gordon further objects to SBA introducing in this Supplement a new interpretation of language from the CARES Act. That language has already been fully addressed in Gordon's Appeal Petition – and SBA did not even attempt to file any response then. See, e.g., Appeal Petition Appellant Gordon College's Objections to SBA Dec. 8, 2022 Supplement to Administrative Record 4 at pp.17-18. The CARES Act language quoted by SBA in the Supplement addresses WHO a PPP loan applicant should include in determining its number of employees: "the term employee' includes individuals employed on a full-time, part-time, or other basis." SBA Supplement at p.4 (PDF p.6); Gordon Appeal Petition at pp.10. But that language does not address HOW such employees should be included. Counting full-time equivalent employees unquestionably "includes" full-time and part-time and other employees. Yet in the Supplement SBA now asserts that "includes" is effectively the same as "headcount.". SBA's interpretation goes beyond the language of the Act that the Supplement relies upon and beyond the language of SBA Form 2483. Until SBA issued FAQ #36 on April 26, 2020, neither the CARES Act nor any SBA PPP guidance in any other way instructed nonprofit religious organizations applying for a PPP loan HOW to count – that is, whether to use FTE or headcount to calculate

(Portal Doc, *Gordon College Objections to Supplement*).

In this Court's view, Appellant's creation of two categories—that is, "who a PPP loan applicant should include in determining its number of employees" and "how such employees should be included"—is a distinction without a difference. The CARES Act's text is quite clear: "For purposes of determining whether a . . . nonprofit organization . . . employs not more than 500 employees under 15 U.S.C. §636(a)(36)(D)(i)(I) . . . the term employee' includes individuals employed on a full-time, part-time, or other basis." 15 U.S.C. §636(a)(36)(D)(v); *see* 15 U.S.C. §636(a)(36)(D)(i). The Act specifically states that this is the definition of employee *for the purpose of determining a nonprofit organization's number of employees* under 15 U.S.C. §636(a)(36)(D)(i), which is a CARES Act provision concerning borrower eligibility. Appellant asserts that the CARES Act is ambiguous on the question of how to determine if a small business, nonprofit organization, or other entity exceeds the 500 employee threshold. This is incorrect. §636(a)(36)(D)(v) provides a definition of employee consistent with the "headcount" method and—referencing the provision on loan eligibility size standards in the same sub-section—states that this is the definition to be used in determining whether an entity complies with the 500-employee limit or not. Under these circumstances, Appellant's arguments concerning the applicability of 15 U.S.C. §636(a)(36)(D)(v) must be rejected.

There is ample evidence in the record demonstrating that Appellant had more than 500 employees. Appellant's 2019 Form 941s are consistent on this question. (AR at pp. 278, 396, 592, 790). When SBA asked Lender for information regarding Appellant's number of employees per location and Lender forwarded this request to Appellant, Appellant stated that it had 680 total. (AR at pp. 75, 1411-12). Even ignoring this admission, there is no shortage of alternative

5

evidence in the record to conclude that Appellant exceeded the 500-employee threshold and was consequently ineligible for its PPP loan. The Initial Decision is affirmed.

As a final note, Appellant reiterates several arguments that were rejected in the Initial Decision, including (1) allegations of discriminatory treatment based on Appellant's assertions that SBA used the FTE method to count employees to assess PPP eligibility for similar borrowers in past FLRDs, and (2) claims of religious discrimination violating the First Amendment, the Religious Freedom Restoration Act, and SBA regulations. The Initial Decision was correct not to address these arguments. Allegations that SBA has forgiven loans in similar previous cases are not an independent ground upon which OHA may permissibly issue a decision overturning the Final Loan Review Decision at issue. As for the constitutional and statutory claims, OHA's authority to conduct proceedings involving claims of civil rights violations is very narrow and does not extend to any of the violations alleged by Appellant. *See* 13 C.F.R. § 134.102(b). Appellant is free to pursue these claims in an Article III federal court if it wishes to do so.

### B.ii. Appellant s O ection to SBA s Supplement to the AR

Appellant's Objection to SBA's Supplement argues that "SBA's Supplement is not properly part of the Administrative Record and should not be included in it nor considered by the ALJ." It is true that SBA's Supplement does not resemble a typical Supplement to the Administrative Record. It does not provide new documents or new information. Presumably, SBA filed the Supplement in response to this Court's December 2, 2022 Order to Supplement AR, which ordered SBA to "immediately upload its copy of Appellant's Form 2483, as well as any additional pertinent documentation related to how it calculated Appellant's number of employees, to the Document Portal for Appellant's Petition for Reconsideration." (Portal Doc, *Order to Supplement AR*). SBA uploaded Appellant's Form 2483 in a separate filing. (Portal Doc, *Form 2483*). Accordingly, SBA's Supplement is best understood as SBA's attempt to respond to this Court's request for "additional pertinent documentation related to how it calculated Appellant's number of employees." Given the substance of the Supplement— essentially, a sequence of legal arguments supporting its use of the "headcount" method to determine that Appellant had more than 500 employees and was therefore not eligible for its PPP loan—it operates identically to a formal SBA response to Appellant's Petition for Reconsideration.

It is unclear why SBA did not simply label the Supplement as a Response. The Supplement was filed on December 8, 2022. SBA had until December 19, 2022 to file its Response to the Petition for Reconsideration. (Portal Doc, *PFR Scheduling Order*). The Supplement presents no new information or documents, and instead summarizes SBA's legal justification for denying loan forgiveness. It is best characterized as SBA's Response to Appellant's Petition for Reconsideration, and the undersigned interprets it as such. Appellant's Objection is therefore overruled.

### C. Conclusion

Based upon the foregoing, it is determined that the Appellant has not proven that the Initial Decision was based upon a clear error of fact or law. **Accordingly, Appellant s Petition for Reconsideration is DENIED.  he Initial Decision, dated Novem er   ,    , is AFFIRMED   ecause it reached the correct result, with the proper analysis reflected in this Reconsidered Decision.**

6

**SO ORDERED.**

*Gary D. Smith*
_____
Gary D. Smith
Administrative Judge

7

JA1177

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

HUNT SERVICES, INC.

      APPELLANT

Appealed from:

SBA PPP Loan Number 7203287108

Issued: October 19, 2023

Docket No. PPP-7203287108

## ORDER DENYING PETITION FOR RECONSIDERATION

On September 28, 2023, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received Appellant's Petition for Reconsideration (PFR) of my September 18, 2023, order dismissing the Paycheck Protection Program (PPP) loan forgiveness appeal as untimely.

If a request for reconsideration is filed and the SBA administrator does not exercise discretion to review or reverse the initial decision, OHA will decide the request for reconsideration. 13 C.F.R. § 134.1211(c). A request for reconsideration must clearly show an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c).

"An appeal petition must be filed with OHA within 30 calendar days after the appellant's receipt of the final SBA loan review decision." 13 C.F.R. § 134.1202(a). "An appellant is required to use the OHA Case Portal [at https://appeals.sba.gov] to file and manage their appeal." *Id*. A judge may not modify the time period for filing the appeal petition. 13 C.F.R. § 134.1202(c)(3)(i)(A). A judge must dismiss an untimely appeal. 13 C.F.R. § 134.1205(a)(2).

As I noted is the dismissal order, the appeal petition challenges the December 2, 2021, final SBA loan review decision (FLRD) received by Appellant on January 26, 2022, and OHA received the appeal petition via the online OHA Case Portal on August 23, 2023. In finding the appeal untimely, I rejected arguments that Appellant timely filed the appeal by mailing a letter to OHA's Washington, D.C. office on January 31, 2022; that I could extend the time to file an appeal petition to August 23, 2023, when OHA received the appeal petition via the online Case Portal; and that the circumstances of the appeal warrant extension of the time to file the appeal petition.

The PFR contains the following arguments. "First, the SBA explicitly permitted the filing of a PPP Loan Forgiveness Decision Appeal by mail for over a year, between August 2020 and September 2021. Second, the Appellant has made a prima facie case that it timely submitted the appeal. Finally, the circumstances at hand require an equitable, merits-based decision." SBA responds that the appeal is untimely, and the dismissal order is correct.

I find that the PFR does not clearly show an error of fact or law material to the dismissal order. When Appellant received a copy of the FLRD on January 26, 2022, the regulations required appellants to file appeal petitions within 30 days of receipt of the copy of the FLRD and to use the OHA Case Portal to file and manage their appeals. 13 C.F.R. § 134.1202(a); 86 Fed. Reg. 51592. In addition, the regulations prohibit me from extending the time period for filing the appeal petition. 13 C.F.R. § 134.1202(c)(3)(i)(A). Appellant concedes it did not use the OHA Case Portal to file the appeal petition within 30 days of receiving a copy of the FLRD.

Appellant argues that prior to September 16, 2021, OHA previously accepted PPP appeal petitions by mail for over a year, and OHA continues to accept other pleadings and filings by mail, as provided in 13 C.F.R. § 134.204(b)(1). PFR at 2-3. The filing and service rules of 13 C.F.R. § 134.204 do not apply to PPP loan forgiveness appeals under 13 C.F.R., Part 134, Subpt. L. 13 C.F.R. § 134.1201(h). Reference to OHA's outdated and otherwise inapplicable filing and service rules does not demonstrate that I clearly erred in relying on the OHA filing and service rule applicable to Appellant's appeal.

I disagree that Appellant made a prima facie case that it timely submitted the appeal "such that SBA should be directed to respond." PFR at 2. In any event, SBA has filed a Response to the PFR taking the position that the appeal is untimely for the same reasons explained in the dismissal order. Response to PFR.

Finally, Appellant's argument that "the circumstances at hand require an equitable, merits-based decision" does not show clear error material to the dismissal order. Publication in the federal register provided notice that appellants are required to file appeal petitions within 30 days of receipt of the copy of the FLRD and to use the OHA Case Portal to file and manage their appeals. *See* 86 Fed. Reg. 51592. Language on SBA's website quoted by Appellant could not reasonably have misled Appellant to submit an appeal petition by mail. The language includes the sentence, "Appeals must be filed at appeals.sba.gov," referring to the OHA Case Portal. *See* PFR at 4. The bank letter and FLRD informed Appellant that,

> Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program located at 13 C.F.R. § 134.1201 *et seq*, including, but not limited to the following:
>
> - An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 14 C.F.R. § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to Office of Hearings and Appeals.

Exhibits B & C to Appeal. There is no evidence that SBA misled Appellant.

//

//

JA1179

Appellant does not demonstrate that the dismissal order results from an error material to the decision. Therefore, the Petition for Reconsideration is DENIED, and this appeal remains DISMISSED.

Gerald J. Hill -S
Digitally signed by Gerald J. Hill - S

Gerald J. Hill
Administrative Law Judge

3

JA1180