# United States Small Business Administration
# Office of Hearings and Appeals

```
PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Hunt Services, Inc.


            Appellant

Appealed from
 SBA PPP Loan Number
7471828401
```

Issued: June 7, 2023

Docket No. PPP-7471828401

## DECISION ON APPELLANT'S PETITION FOR RECONSIDERATION

### I. Background

Appellant filed its appeal in the above-captioned case on November 22, 2022. On April 13, 2023, the Office of Hearings and Appeals (OHA) issued a decision denying Appellant's appeal. (Appeal Portal Doc, *Decision*). On April 24, 2023, Appellant timely filed a Petition for Reconsideration (PFR). (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf*). In its PFR, Appellant sets forth a detailed factual history of Appellant's First Draw and Second Draw PPP loans which is incorporated herein by reference. (*Id.*, pp. 1-4).

Appellant's PFR is premised upon the following assertions:

> Was the SBA's Second FLRD [Final Loan Review Decision] the result of a clear error of fact or law where (1) the Second FLRD decision was based on the SBA's flawed First FLRD; (2) the SBA's First FLRD and Second FLRD were premised on a finding that Appellant was ineligible for its First and Second Draw PPP loans and forgiveness because of an indictment of Appellant's then-owner that was later dismissed; and (3) the SBA failed to docket and adjudicate Appellant's timely appeal of the First FLRD, thereby denying Appellant the opportunity to seek both an appellate review and reconsideration of that decision?

(*Id.*, p. 4). For the reasons set forth below, the Appellant's Petition is **DENIED.**

1

JA1181

## II. Discussion

### A. Standard of Review

To prevail on a request for reconsideration, the Petitioner must clearly show an error of fact or law material to the initial decision. (13 C.F.R. § 134.1211(c)(1)).

### B. Analysis

The legal conclusion reached in the Initial Decision was explained as follows:

> As a matter of law, this case is quick to resolve: Appellant was deemed ineligible for its First Draw loan, and it did not appeal the decision. Accordingly, because eligibility for a First Draw loan is a prerequisite for Second Draw eligibility, Appellant was also ineligible for its Second Draw PPP loan.

(Appeal Portal Doc, *Decision*, p. 5). This conclusion was based upon the SBA's published Interim Final Rule on Second Draw PPP loans that provides:

> *C. Excluded Entities*
>
> An entity that is ineligible to receive a First Draw PPP Loan under the CARES Act or Consolidated First Draw PPP IFR is also ineligible for a Second Draw PPP Loan . . .
>
> *(e) Who is not eligible for a Second Draw PPP Loan?*
>
> An applicant is not eligible for a Second Draw PPP Loan, even if it meets the eligibility requirements of subsection (c) of this section, if the applicant is: (1) Excluded from eligibility under the Consolidated First Draw PPP IFR . . .

(*Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, Fed. Reg. Vol. 86, No. 9, January 12, 2021, at p. 3715, 3718).

Significantly, in its PFR, Appellant does not dispute the legal conclusion that an entity that is ineligible for a first draw PPP loan is likewise ineligible for a second draw PPP loan. Rather, Appellant argues that it is now foreclosed from proving it was eligible for its second draw loan because of the erroneous determination it was ineligible for its first draw loan.

In its PFR, Appellant makes a compelling equitable argument that the FLRD on its first draw loan was in error and that error resulted in the denial of forgiveness of its second draw PPP loan. The problem is, Appellant did not properly appeal its first draw FLRD and thus lost the opportunity to present its argument. For whatever reason, Appellant ignored the instructions on how to file an appeal. The Appellant was provided these instructions in the letter it received from its lender on January 26, 2022, on the FLRD that was issued, on the SBA website and in the PPP loan regulations. (*see, Recon Portal Doc, Hunt 2d Draw Request for Reconsideration or,*

2

*Alternatively, to Extend Time to Appeal.pdf* at Exhibit E and Exhibit C; PPP appeals (sba.gov); 13 C.F.R. §134.1202(a)). The FLRD dated December 2, 2021, concluding Appellant was ineligible for the loan, informed the Appellant:

> Pursuant to 13 CFR § 134.1201(b), the borrower has the right to appeal to SBA's Office of Hearings and Appeals a final SBA loan review decision that the borrower:
>
> 1. was ineligible for a PPP loan;
> 2. was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;
> 3. is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or
> 4. is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.
>
> Any appeal must be made in accordance with the SBA Rules of Practice for Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program, located at 13 CFR § 134.1201, et seq., including but not limited to the following:
>
> - An appeal petition must be filed with SBA's Office of Hearings and Appeals (OHA) within 30 calendar days after the borrower's receipt of the final SBA loan review decision. 13 CFR § 134.1202(a). To file and manage an appeal of a final SBA loan review decision with OHA, refer to Office of Hearings and Appeals.
> - Borrower must include, among other things, a copy of this final SBA loan review decision with its appeal. 13 CFR § 134.1204(a). Borrower must provide you (the lender) with a copy of the timely appeal petition filed with OHA so that you can extend the deferment period of the loan. 13 CFR § 134.1202(b).
> - An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a federal district court. 13 CFR § 134.1201(d).

(Appeal Portal Doc, *SBA Supplemental AR*, Exhibit B)(emphasis in original). Appellant's lender separately reiterated these appeal instructions in its letter to the Appellant dated January 26, 2022 which forwarded the first draw loan FLRD. (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf* at Exhibit E). On its "PPP Appeals" website, the SBA provides clear instructions on "Where to file" an appeal, stating:

3

JA1183

Appeals must be filed at appeals.sba.gov. Filings for PPP appeals received in any other manner may be rejected and not docketed for processing.

(*PPP appeals* (sba.gov)). Likewise, with regard to the appeal process, the regulations clearly inform a borrower:

**Commencement of appeals of final SBA loan review decisions.**

(a) An appeal petition must be filed with OHA within 30 calendar days after the appellant's receipt of the final SBA loan review decision. To file and manage an appeal of a final SBA loan review decision with OHA, refer to the OHA Case Portal at *https://appeals.sba.gov*. **An appellant is required to use the OHA Case Portal to file and manage their appeal.**

(13 C.F.R. §134.1202(a)) (emphasis added).

In its PFR, Appellant alleges it did submit a timely appeal of the first draw loan FLRD. Appellant, however, acknowledges the appeal was sent by regular U.S. mail to an address in Washington, D.C.[1] The Appellant alleges "the SBA failed to docket and adjudicate Appellant's timely appeal of the first FLRD." (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf,* p. 4). Contrary to the Appellant's assertion that the SBA *failed* to docket its appeal, it was the Appellant that *failed* to follow the abundant instructions and directions it was provided on how to properly file an appeal when it knew, or should have known, that an improper filing would result in the appeal not being received and docketed. Furthermore, and curiously, for over ten months (January 31, 2022 to at least November 22, 2022, when Appellant *properly* filed its appeal of its second draw PPP loan), Appellant took no action to confirm the receipt of the purported first draw loan appeal or to inquire about the status of the appeal, despite not receiving any communication from the SBA during that time.

As an alternative request for relief in its PFR, Appellant "requests an indefinite extension of its deadline to seek reconsideration of the Second FLRD pursuant to 13 C.F.R. § 134.1202(c)(3)(i)(A) so Appellant may petition the SBA to docket and issue a ruling on its timely appeal of the First FLRD." (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf,* p. 8). Unfortunately, this request for alternative relief is beyond the authority and jurisdiction of the court. Title 13 C.F.R. §134.1202(a) mandates "[a]n appeal petition must be filed with OHA within 30 calendar days after the appellant's receipt of the final SBA loan review decision." It appears from the record that Appellant first received the FLRD on its first draw loan on January 26, 2022 when it was forwarded by its lender. (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf,* Exhibit E). Therefore, if timely filed, Appellant's appeal was due on or before February 26, 2022.Without the timely filing of an appeal of a FLRD this court has no jurisdiction to proceed with a case. Furthermore, 13 C.F.R. §134.1202(c) expressly proscribes any modification by a judge of the 30-day filing deadline, providing:

---

[1] It appears from the documents submitted by Appellant that its purported appeal was not sent by the Appellant but rather by "Steele Martin Jones, CPAs and Business Advisors", presumably Appellant's accountant. (Recon Portal Doc, *Hunt 2d Draw Request for Reconsideration or, Alternatively, to Extend Time to Appeal.pdf* at Exhibit F).

4

(i) A Judge may modify any time period or deadline, *except*:

(A) The time period governing commencement of a case (*i.e.,* when the appeal petition may be filed); . . . .

(13 C.F.R. §134.1202(c)(3)(i)(A)) (emphasis added).

Aside from providing additional information regarding the unique circumstances surrounding Appellant's first draw and second draw PPP loans, the Appellant's PFR does not allege any specific error of fact or law in the initial decision. Appellant does not dispute the legal conclusion that if a borrower's first draw loan is determined to be ineligible, its second draw loan will likewise be held to be ineligible. The SBA's laws, regulations and policies are clear in this regard. Because the Appellant failed to properly and timely appeal the FLRD on its first draw loan, this court has no authority or jurisdiction to address that FLRD. And, as concluded in the initial decision, because Appellant was determined to be ineligible for its first draw loan, the applicable law, regulations, and policies mandate that it is ineligible for a second draw PPP loan.

The undersigned is not unmindful of the unique circumstances and alleged injustice claimed by Appellant and does not disregard the equitable arguments made by Appellant in its PFR. Nonetheless, the undersigned is bound by the agency's laws, regulations and policies and does not possess equitable jurisdiction powers. As an independent office of the SBA, OHA has limited authority and jurisdiction to review regulations and policies made by the SBA. Acting within the bounds of that authority and jurisdiction, Administrative Judges do not have the authority to invalidate a regulation, or an interpretation issued by the SBA Administrator. (*See Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at p. 3 (March 10, 2015) ("[OHA] is not the proper forum for a challenge to the validity of a regulation"); *Family Choice Financial*, Docket No. PPP-8323747201, at p. 12 (ALJs are "exercising the Administrator's delegated authority and it would be surprising if that delegation included the authority to invalidate an SBA regulation"); *Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings*, 14 U.S. Op. Off. Legal Counsel pp. 1, 2–3 (1990), 1990 WL 750326, at pp. 1–2 ("ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules")). Given that limited authority, regulations issued by the SBA Administrator are binding on OHA, and OHA is not the forum for challenges to the SBA's regulations or interpretation of Congressional acts. OHA's authority is set out in 13 CFR 134.1211 and no equitable authority is granted. Only the Administrator has equitable authority, as set out in 15 USC 634(b)(7). Any such challenges are more properly made, if at all, in federal court or before the Agency's Administrator, pursuant to the procedure set forth at 13 CFR 134.1211(d).

## C. Conclusion

Based upon the foregoing, it is determined that the Appellant has failed to prove that the Initial Decision was based upon a clear error of fact or law. Accordingly, Appellant's Petition for Reconsideration is **DENIED**.

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

## United States Small Business Administration
## Office of Hearings and Appeals

```
------------------------------------------
PAYCHECK PROTECTION PROGRAM
APPEAL OF:

HUSSON UNIVERSITY                              Issued: August 4, 2022

        Appellant                             Decision No. PPP- 5931527107

Appealed from
SBA PPP Loan Number: 5931527107
------------------------------------------
```

### APPEARANCES

**Janna Gau, Esquire**, Counsel for the Appellant

**Mark O'Brien, Esquire**, Counsel for the Small Business Administration

### DECISION

### I.   Introduction and Jurisdiction

On December 28, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Husson University (Appellant) is ineligible for a PPP loan.  On January 26, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for full PPP loan forgiveness in the amount of $5,965,000.00. For the reasons discussed *infra*, I GRANT the appeal and REVERSE the SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

### II.   Background

On April 08, 2020, Appellant, Husson University applied for a PPP Loan with the SBA certified lender, Bangor Savings Bank (Lender).   The loan was approved and on April 23, 2020, SBA disbursed a PPP loan of $ 5,965,000.00 to Appellant through the Lender.  On July 16, 2021, Appellant filed an application for PPP loan forgiveness.

JA1186

A.    **Final SBA Review Decision**

On December 28, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan it received and therefore was not eligible for PPP loan forgiveness.  Specifically, the SBA found after review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. SBA has determined that forgiveness in the amount of $0.00 is appropriate.

B.    **Appeal**

On January 26, 2022, Appellant filed the instant appeal arguing that the final SBA loan review decision is clearly erroneous and requests the Office of Hearings and Appeals (OHA) to reverse that decision and find that the Appellant is eligible for PPP loan forgiveness.

On March 07, 2022, the undersigned issued a Notice and Order directing the SBA to file the Administrative Record (AR) by April 12, 2022. On March 25, 2022, counsel for the SBA moved to extend the time to file the Administrative Record (AR) by 30 calendar days. The Administrative Judge found good cause for an extension of time to file the AR and directed counsel for the SBA to file a responsive brief to the Appellant's January 26, 2022, brief on or before the expiration of said extension. Specifically, SBA counsel was directed to address the Appellant's arguments apropos reliance on PPP loan application guidance available on or before the date of Appellant's application. On April 26, 2022, SBA moved to further extend the time to file the AR and a Response for an additional 30 calendar days. The Administrative Judge granted the extension and the SBA had until May 26, 2022, to file the AR.

The AR was filed on May 25, 2022. The SBA filed seven (7) supplements to the Administrative Record on May 25, 2022. On May 25, 2022, the Appellant filed an Addendum to the January 26, 2022, Brief. On May 26, 2022, the SBA filed a Brief in response to the instant appeal.

III.    **Discussion**

The PPP Loan Program is a temporary SBA 7(a) program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis.  Its purpose was to help businesses keep their workers paid and employed.  The program was established under Section 1102 of the Coronavirus Aid Relief, and Economic Security (CARES) Act (Pub. L. 116-136) signed into law March 27, 2020, and subsequently revised and expanded by other statutes.

2

JA1187

## A.    <u>The Paycheck Protection Program</u>

In general, PPP loans were open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 USC § 636(a)(36)(D). Other types of entities, such as nonprofit organizations and housing cooperatives could also be eligible under certain circumstances.

Under PPP, borrowers obtain loans through an SBA approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## B.    <u>PPP Loan Forgiveness</u>

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP

JA1188

borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the Office of Capital Access may issue a final SBA loan review decision. This official written decision issued by the SBA Office of Capital Access reviews the PPP loan and can find a borrower:

   (1) <u>Was ineligible for a PPP loan;</u>
   (2) <u>Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;</u>
   (3) <u>Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,</u>
   (4) <u>Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).</u>

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program.

JA1189

Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

### C.  __Finding of Fact and Analysis__

As previously noted herein, the SBA final loan decision stated that the Appellant business was ineligible for a PPP loan.  Specifically, the SBA stated that:

> "SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. A review of the documents provided indicate that the Borrower exceeded 500 employees. Per the certifications on the 2483, the applicant employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 CFR 121.201 for the applicant's industry. The Borrower indicated at the time of the loan application they had 492 employees, however the first quarter 2020 941 shows 1034 employees and second quarter 983. Additionally, the Borrower IRS form 990 confirms ineligibility based on the size standards for gross receipts. Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate."[1]

Appellant states in his appeal in pertinent part:

> "As a non-profit institution of higher education with an approximately two hundred eight (208) acre primary campus in Bangor, Maine which includes classrooms, administrative offices, dormitories, and an athletic complex, Husson was directly affected by the consequences of the COVID-19 virus's

---

[1] SBA Final Loan Review Decision.

JA1190

economic impact and sought a loan under the Paycheck Protection Program. Relying on the context of the SBA's Interim Final Rule dated April 2, 2020, Husson reached out to its bankers (Bangor Savings Bank) and industry resources to determine how to qualify for the program and its terms. See April 2, 2020, Interim Final Rule, attached as Exhibit B. At the time the Paycheck Protection Program was launched in early April, there was a lack of clear guidance as to the definitions and approach to loan eligibility. There was specifically a lack of clarity for institutions of higher education in terms of calculating the number of employees, which is a PPP eligibility requirement. Husson employs part-time adjunct professors and students under the federal and state equivalent work-study programs. While Husson understood that all employees should be included in determining the 500 employee threshold for PPP loan eligibility, Husson sought advice whether eligibility would be determined using an "FTE" (full time equivalent) employee calculation of thirty (30) hours or total headcount. Based on professional advice, it was determined that using the Affordable Care Act ("ACA") definition of FTE (30 hours = 1 FTE), was a reasonable approach. Furthermore, using the FTE basis to determine PPP eligibility was reasonable in the context of the CARES Act since the availability of PPP loans was intended to stabilize the American workforce through forgivable loans. Husson determined it employed 492 FTEs. Faced with the uncertainty of the pandemic and with a workforce intended to service in person learning, Husson in good faith submitted its PPP loan application on April 6, 2020, to its SBA lender, Bangor Savings Bank ("Lender"). Contemporaneous with the submission of its original application, the SBA revised the PPP application and Husson, therefore, re-signed and submitted an application on April 8, 2020. The Lender submitted the loan application to the SBA on April 13, 2020. The SBA approved Husson's PPP loan application on April 14, 2020. Husson closed on the loan on April 23, 2020. Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended)."[2]

In its Addendum the Appellant further argues:

"On April 14, 2020, when the SBA approved Husson's loan application, there was no language or other indication of the intent for a headcount calculation

---

[2] Appellant's Appeal Pleading.

JA1191

in the CARES Act to be used when determining eligibility. See Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, March 27, 2020, 134 Stat. 281 ("CARES Act"). However, there is clear intent and use of an FTE calculation in the CARES Act. Id. at §1106. On April 8, 2020, at the time Husson submitted its PPP loan application to its Lender, coupled with the fact that FTE is the methodology for forgiveness calculation, it was fair and reasonable for Husson to infer that this would be the basis for application. There being no statement to the contrary supports Husson's position that it acted reasonably. Only after Husson's PPP loan had been funded did the SBA issue guidance. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020. Emphasis added.

Subsequent to the funding of the loan, Husson learned of the SBA FAQs on May 6, 2020, which included Question #36 contradicting Husson's understanding of how to compute the employee count for loan eligibility: it clarified to use total headcount and not use a full-time equivalent basis. See SBA FAQ (first published on April 26, 2020, as amended). See Brief at Exhibit C. Clearly, many institutions of higher education struggled with the calculation basis under the April 2, 2020, Interim Final Rule because on May 8, 2020, the SBA issued another Interim Final Rule specifically addressing this issue. See May 8, 2020, Interim Final Rule. See Brief at Exhibit D; see also 13 CFR Part 113 and 120, Vol. 85, No. 90, May 8, 2020 . On May 8, 2020, an Interim Final Rule was issued by the SBA explaining that Federal Work Study student employees could be excluded for the loan eligibility count of 500 employees. Id. Most importantly, the May 8, 2020, Interim Final Rule stated: "Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process." Id. Emphasis added. Based upon Husson's reasonable interpretation of the calculation, and the SBA's indication that it would use an FTE approach for calculating and comparing employee counts during the protection period and the base period, Husson used the ACA definition of FTE (30 hours = 1 FTE), which the Lender concurred was a reasonable approach. Husson then calculated its FTEs under this basis and included all students. The result was 492 employees under this method, including approximately 50 FTE student employees. Husson met the eligibility requirement of having no greater than 500 employees."[3]

---

[3] Appellant's Supplement to Appeal Brief.

On April 2, 2020, the U.S. Small Business Administration (SBA) posted an interim final rule announcing the implementation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). This Rule was in affect at the time of the Appellant's loan application. [4] The CARES Act temporarily adds a new program, titled the ''Paycheck Protection Program,'' to the SBA's 7(a) Loan Program. The CARES Act also provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program (PPP). The PPP is intended to provide economic relief to small businesses nationwide adversely impacted by the Coronavirus Disease 2019 (COVID–19). SBA posted additional interim final rules on April 3, 2020, April 14, 2020, April 24, 2020, April 28, 2020, and April 30, 2020, and the Department of the Treasury posted an additional interim final rule on April 28, 2020. This interim final rule supplements the previously posted interim final rules by providing guidance on nondiscrimination obligations and additional eligibility requirements, and requests public comment. The IFR specifically states that, "In addition, as described below, to enable certain eligible small educational institutions to participate in PPP, this interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[5]

The Appellant is identified by NAICS Code: Colleges, Universities, and Professional Schools (611310) and is a nonprofit higher education institution.  A nonprofit organization means a 501(c)(3). In the IFR, III. Paycheck Protection Program Nondiscrimination and Additional Eligibility Criteria,

> **"2. Student Workers and PPP Loan Eligibility**
>  Do student workers count when determining the number of employees for PPP loan eligibility?
>
> Yes, student workers generally count as employees, unless (a) the applicant is an institution of higher education, as defined in the Department of Education's Federal Work-Study regulations, 34 675.2, and (b) the student worker's services are performed as part of a Federal Work-Study Program (as defined in those regulations1) or a substantially similar program of a State or political subdivision thereof. Institutions of higher education must exclude work study students when determining the number of employees for PPP loan eligibility and must also exclude payroll costs for work study students from the calculation of payroll costs used to determine their PPP loan amount.

---

[4] 13 CFR Parts 113 and 120.
[5] Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

JA1193

The Administrator, in consultation with the Secretary, has determined that this is a reasonable interpretation of section 1102(a) of the CARES Act's reference to "individuals employed on a full-time, part-time, or other basis." Such programs generally provide part- time jobs for students with financial need, and their services are incident to and for the purpose of pursuing a course of study. Work study students are excluded from the definition of employees in other areas of federal law. For example, in the regulations implementing the Affordable Care Act, Treasury defined an employee's "hours of service" to exclude work study hours.2 Explaining this exclusion, the regulation's preamble states that "[t]he federal work study program, as a federally subsidized financial aid program, is distinct from traditional employment in that its primary purpose is to advance education."3 Similarly, student work is generally exempt from Federal Insurance Contribution Act (FICA) and Federal Unemployment taxes.

For similar reasons, the Administrator, in consultation with the Secretary of the Treasury, has determined that a limited exception for work study is appropriate here. In particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Educational institutions that filed loan applications prior to the issuance of the regulation are not bound by this interpretation but may rely on it. Lenders may continue to rely on borrower certifications as part of their good faith review process."6

The SBA argues that Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020; CARES Act §1102, 134 Stat. at 287 (codified 15 U.S.C. §636(a)(36)(B)). The First IFR, which was available to Lender and Appellant on SBA's website before Appellant submitted its PPP loan application, tracked the CARES Act eligibility language, and advised all PPP lenders and applicants of the basic PPP eligibility criteria. Under the "Am I eligible?" section of the First IFR, it provided that "[y]ou are eligible for a PPP loan if you have 500 or

---

6 Federal Register Vol. 85, No. 90 at 27290 Friday, May 8, 2020.

JA1194

fewer employees …or are a business that operates in a certain industry and meet the applicable SBA employee-based size standard for that industry …" SBA's regulations at 13 CFR § 121.106 captioned "How does SBA calculate number of employees?" states, in pertinent part, "In determining a concerns number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis" and "Where the size standard is number of employees, the method for determining a concern's size included the following principles: … Part-time and temporary employees are counted the same as full-time employees." (Emphasis added) 13 CFR § 121.106 (a) and (b)(2).

The SBA further argues that pursuant to the SBA's PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs),

> **36.Question**: To determine borrower eligibility under the 500-employee or other applicable threshold for First Draw PPP Loans, or the 300-employee threshold for Second Draw PPP Loans established by the Economic Aid Act, must a borrower count all employees or only full-time equivalent employees? (Question 36 published April 26, 2020, and revised March 3, 2021, to reflect the interim final rule for Second Draw PPP Loans).

> **Answer**: For purposes of loan eligibility, the CARES Act defines the term employee to include "individuals employed on a full-time, part-time, or other basis." A borrower must therefore calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold. For example, if a borrower has 200 full-time employees and 50 part-time employees each working 10 hours per week, the borrower has a total of 250 employees. By contrast, for purposes of loan forgiveness, the CARES Act uses the standard of "fulltime equivalent employees" to determine the extent to which the loan forgiveness amount will be reduced in the event of workforce reductions.

The SBA calculates number of employees in accordance with 13 CFR 121.106. Employee calculation: This is the average number of people employed for each pay period over the business's latest 12 calendar months. Any person on the payroll must be included as one employee, regardless of hours worked or temporary status. The number of employees of a concern in business less than 12 months is the average for each pay period that it has been in business.[7]

The Appellant does not dispute that it does not qualify as a PPP eligible small business under the total head count method, however the argument relies on the fact that Question 36 that

---

[7] 13 CFR 121.106.

10

offered additional guidance on PPP loan was published after their PPP loan application and loan disbursement. The Appellant argues they used full-time equivalent (FTE) and did not include Federal Work Study employees to determine "employee" amount for the PPP loan application and subsequent loan forgiveness application. Pursuant to Interim Final Rule 13 CFR 120, 85 FR 33004:

> **What does "full-time equivalent employee" mean?** Full-time equivalent employee means an employee who works 40 hours or more, on average, each week. The hours of employees who work less than 40 hours are calculated as proportions of a single full-time equivalent employee and aggregated, as explained further below in subsection d.

> The CARES Act does not define the term "full-time equivalent employee," and the Administrator, in consultation with the Secretary, has determined that full-time equivalent is best understood to mean 40 hours or more of work each week. The Administrator considered using a 30-hour standard but determined that 40 hours or more of work each week better reflects what constitutes full-time employment for the vast majority of American workers.

> **d. How should a borrower calculate its number of full-time equivalent (FTE) employees?**

> Borrowers seeking forgiveness must document their average number of FTE employees during the covered period (or the alternative payroll covered period) and their selected reference period. For purposes of this calculation, borrowers must divide the average number of hours paid for each employee per week by 40, capping this quotient at 1.0. For example, an employee who was paid 48 hours per week during the covered period would be considered to be an FTE employee of 1.0.

> For employees who were paid for less than 40 hours per week, borrowers may choose to calculate the full-time equivalency in one of two ways. First, the borrower may calculate the average number of hours a part-time employee was paid per week during the covered period. For example, if an employee was paid for 30 hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.75. Similarly, if an employee was paid for ten hours per week on average during the covered period, the employee could be considered to be an FTE employee of 0.25. Second, for administrative convenience, borrowers may elect to use a full-time equivalency of 0.5 for each part-time employee. The Administrator recognizes that not all borrowers maintain hours-worked data, and has decided to afford such borrowers this flexibility in calculating the full-time equivalency of their part-time employees.

> Borrowers may select only one of these two methods, and must apply that method consistently to all of their part-time employees for the covered period or the alternative payroll covered period and the selected reference period. In either case,

the borrower shall provide the aggregate total of FTE employees for both the selected reference period and the covered period, or the alternative payroll covered period, by adding together all of the employee-level FTE employee calculations. The borrower must then divide the average FTE employees during the covered period, or the alternative payroll covered period by the average FTE employees during the selected reference period, resulting in the reduction quotient.

Given that this guidance was provided at the time of the Appellant's loan application it is reasonable way of calculating number of employees for the PPP loan application and loan forgiveness. The SBA's citation of the PPP FAQs was posted after the Appellant's loan application and approval. Appellant was allowed to exclude Federal Work Study employees from there total employee count. The SBA clearly meant to provide an exception to the general rule as the IFR states "to enable certain eligible small educational institutions to participate in the PPP, the interim final rule provides that institutions of higher education shall exclude work study students when determining the number of employees for purposes of PPP loan eligibility."[8]

On July 08, 2022, the SBA published an update to the SBA PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs). Pursuant to the updated FAQs The Small Business Administration (SBA), in consultation with the Department of the Treasury, intends to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), including both First Draw PPP Loans and Second Draw PPP Loans. This document will be updated on a regular basis. Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (as amended), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")(link). The U.S. government will not challenge lender PPP actions that conform to this guidance, and to the PPP Interim Final Rules and any subsequent rulemaking in effect at the time the lender's action is taken.

Question 71: Are 501(c)(3) nonprofit organizations with more than 500 employees eligible for PPP Loan Forgiveness?

Answer: Section 7(a)(36)(A)(vii) of the Small Business Act (15 U.S.C. 636(a)(36)(A)(vii)) (as added by section 1102(a)(2) of the CARES Act) defines the term "nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt

---

[8] Federal Register Vol. 85, No. 90 at 27288 (May 8, 2020).

from taxation under section 501(a) of such Code" (501(c)(3) nonprofit organizations). In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. The American Rescue Plan Act (ARPA), enacted on March 11, 2021, increased the size eligibility standard for 501(c)(3) nonprofit organizations for First Draw PPP Loans from a total of 500 or fewer employees to no more than 500 employees per physical location of the 501(c)(3) nonprofit organization. On March 22, 2021, SBA published an Interim Final Rule implementing the provisions of ARPA applicable to PPP (86 FR 15083) (ARPA IFR). On May 31, 2022, the SBA Office of Hearings and Appeals (OHA) issued an Initial Decision in the Appeal of Lawndale Christian Health Center, Docket No. PPP-5819168004. In that Initial Decision, the Administrative Law Judge determined that because the applicability date set forth by SBA in the ARPA IFR stated that the ARPA changes to PPP apply to "loans approved, and loan forgiveness applications submitted, on or after March 11, 2021 ," 501(c)(3) nonprofit organizations that received a First Draw PPP Loan before March 11, 2021, but applied for forgiveness on or after March 11, 2021, are entitled to forgiveness of their First Draw PPP Loan if they meet the ARPA increased size eligibility standard. The Final Rule on Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program published by SBA on September 16, 2021 (86 FR 51589) provides that initial decisions rendered by OHA are not precedential. The Administrator has reviewed the OHA decision issued in the Appeal of Lawndale Christian Health Center. Based on the OHA decision and the exercise of her broad discretion under Section 5(b)(7) of the Small Business Act (15 U.S.C. 634(b)(7)), the Administrator has determined that any 501(c)(3) nonprofit organization that received a loan before March 11, 2021, but submits a forgiveness application on or after March 11, 2021, will be eligible for forgiveness on the basis that they have more than 500 employees in multiple physical locations. As a result, a 501(c)(3) nonprofit organization that submits a forgiveness application on or after March 11, 2021, is eligible for forgiveness if the 501(c)(3) nonprofit organization meets the ARPA increased size eligibility standard and has otherwise complied with all applicable PPP rules. [9]

In support of its appeal Appellant additionally points to the detrimental reliance on an email exchange between an SBA employee that reassured the Appellant that additional

---

[9] Question 71 published July 8, 2022. PAYCHECK PROTECTION PROGRAM LOANS Frequently Asked Questions (FAQs) .

JA1198

guidance on PPP loans would not alter the terms of the Appellant's PPP Loan that was dispersed prior to the regulation going into effect. Shortly after the Appellant's loan application there was an email exchange between Robert Clark, President of Husson University and Keith Lind, Public Affairs Specialist, Main District Office, U.S. Small Business Administration. Appellant emailed on May 13, 2020, at 1:50 PM stating:

> "In reading the guidance for higher education institutions it would seem that use of the FTE that was in effect and approved by our lender prior to the May updates would allow use of the Affordable Care adjustments under Federal Law, which is under the rationale for excluding work study students. This is the approach that Husson followed to determine its employee eligibility and was approved by both our lender and the SBA. I just wanted to verify that this process was still valid after the newer guidance came forward. I appreciate your assistance. Bob Clark" (AR at 8576).

The response to the email from Keith Lind to Robert Clark at 3:37PM as follows:

> "Hi Bob, I can confirm that since Husson's application was made prior to the new guidance being issued, the new guidelines will not impact the terms for your loan" (AR at 8576).

The SBA argues in its Brief in Response to Order Extending Time to File the Administrative Record and For Parties to File Briefs that:

> "OHA should disregard Appellant's argument on this point because that email exchange is not the type of document required in the Record. 13 C.F.R. § 134.1207(b). Section 134.1207(b) defines the contents of the Record as "relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision." Id. That email exchange was not relevant and was not before SBA when it made the final loan review decision. SBA did not consider it when it made the final loan review decision. Therefore, it is not a required part of the Record, and argument should be unavailing." [10]

The Administrative Judge disagrees with SBA's assertion that the email exchange is neither relevant nor should it be considered. Though the email is not required, it is a part of the Administrative Record (AR at 8576-8577) and is directly relevant to the issue at bar.  It is reasonable that given the uncertainty regarding the PPP loan program and the regulations that the Appellant would reach out for further guidance from the U.S. department administering the loans. The IFR specifically states, "SBA may provide further guidance, if

---

[10] SBA's Brief in Response to Order Extending Time To File The Administrative Record And For Parties To File Briefs (*Portal Docket #27 uploaded May 27, 2022*).

JA1199

needed, through SBA notices that will be posted on SBA's website at www.sba.gov. Questions on the Paycheck Protection Program may be directed to the Lender Relations Specialist in the local SBA Field Office. The local SBA Field Office may be found at https://www.sba.gov/tools/ local-assistance/district offices." Here, the Appellant reached out to the local SBA field office and was given assurance for which it relied albeit subsequent to the loan application.

There can be little dispute that the need for expeditious legislative and regulatory action during the pandemic height, created a chaotic rush to issue guidance in applying for PPP loans. The rapid fire C.F.R. interim changes were needed but certainly caused more than a little confusion on the part of potential borrowers. Thus, while the Appellant's attempt to seek clarity in its application for a PPP loan is not dispositive of the appeal, it certainly aids their position and early interpretation.

The Appellant has the burden of proving that the final SBA loan review decision is based upon a clear error of fact or law. The record demonstrates SBA has not properly applied the applicable laws, regulations, and policy when denying Appellant's application. Specifically, the SBA did not consider the exception for higher education's ability to exclude work study students and the employee calculation provided by the Appellant when determining the number of employees for PPP loan eligibility. Additionally, the SBA failed to consider the FTE calculation when determining the Appellant's PPP eligibility. I find the reasoning illustrated in the IFR for providing such exceptions to higher education compelling, in particular, the Administrator recognizes that requiring institutions of higher education to count work study students towards employee headcount would result in an anomalous outcome in two respects. First, it would prevent some small educational institutions from receiving PPP loans due solely to their provision of financial aid to students in the form of work study. Second, it would result in the exclusion of small educational institutions whose part-time work study headcount dwarfs their full- time faculty and staff headcounts. Here, the record clearly demonstrates that its Part-time student employees far outweigh its full-time employees.

In the course of this appeal the Administrative Judge specifically directed the Appellant to break down the list of part time employees by work hours. The Administrative Judge did this in order to ascertain how many of these "employees" were working minimal hours. Though it has been many decades since the undersigned has been in undergraduate or law school, his experience suggested that most of these "employees" were students being assisted with their financial needs. The response from the Appellant demonstrated that the majority of its part-time student employees work less than ten (10) hours per week and fell into this category. It would be contrary to the intent of the PPP loan program and the administrator to penalize the Appellant for the part-time staff that "dwarfs their full-time

15

faculty and staff headcounts." Furthermore, the additional guidance in the SBA PPP FAQS published July 08, 2022, regarding nonprofits, was not available to the SBA at the time they made its Final Loan Review Decision. I therefore find the final SBA loan review decision is based on a clear error of fact or law. I hereby GRANT the Appellant's appeal and REVERSE the SBA final loan review decision.

<p style="text-align:center">IV.     **<u>Standard of Review</u>**</p>

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

<p style="text-align:center">V.     **<u>Conclusion</u>**</p>

Appellant, Husson University, has established that the final SBA loan review decision was based on a clear error of law or fact.  I therefore **GRANT** the appeal and **REVERSE** the final SBA loan review decision. It is **HEREBY ORDERED** Husson's University Paycheck Protection Program loan of $ 5,965,000.00 is forgiven in full. The SBA is directed to issue a new final loan review decision providing the terms of this order.

 This is an initial agency decision. However, unless a request for reconsideration is filed within 10 calendar days pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.


_____
JAMES M CAULFIELD
Administrative Judge

JA1201

**United States Small Business Administration**
**Office of Hearings and Appeals**

PETITION FOR RECONSIDERATION:

SMALL BUSINESS ASSOCIATION

      Petitioner

Appealed from
SBA PPP Loan Number: 5931527107

Issued: February 7, 2023

Decision No. PPP- 5931527107

**APPEARANCES**

**Janna Gau, Esquire**, Counsel for the Appellant

**Mark O'Brien, Esquire**, Counsel for the Small Business Administration

**DECISION**

I.    **Introduction and Jurisdiction**

On December 28, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Husson University (Appellant) was ineligible for its PPP loan. On January 26, 2022, Appellant filed an appeal from that final SBA loan review decision. Appellant argued that the Final SBA Loan Review Decision was clearly erroneous, and requested that OHA reverse it, and find Appellant was eligible for full PPP loan forgiveness in the amount of $5,965,000.00. On August 4, 2022 the undersigned issued a decision in the appeal Reversing the SBA loan review decision and granting the Appellant full forgiveness of their PPP loan. On August 15, 2022 counsel for the SBA filed the instant Petition for Reconsideration of that decision. My decision of August 4, 2022 is incorporated in this decision on the instant Petition for Reconsideration as if fully written herein. For the reasons discussed in my decision of August 4, 2022, I AFFIRM that initial decision REVERSING the SBA loan review decision and granting the Appellant full forgiveness of their PPP loan.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

1

JA1202

## II. **Background**

On April 08, 2020, Appellant, Husson University applied for a PPP Loan with the SBA certified lender, Bangor Savings Bank (Lender).   The loan was approved and on April 23, 2020, SBA disbursed a PPP loan of $ 5,965,000.00 to Appellant through Lender.  On July 16, 2021, Appellant filed an application for PPP loan forgiveness.

### A. **Final SBA Review Decision**

On December 28, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP loan it received and therefore was not eligible for PPP loan forgiveness.  Specifically, the SBA found after review of the documentation provided, that the Borrower business, or the Borrower together with its affiliates, exceeded the maximum allowable number of employees and the SBA small business size standards. SBA determined that forgiveness in the amount of $0.00 was appropriate.

### B. **Appeal**

On January 26, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision was clearly erroneous and requested the Office of Hearings and Appeals (OHA) to reverse that decision and find that the Appellant was eligible for PPP loan forgiveness.

On March 07, 2022, the undersigned issued a Notice and Order directing the SBA to file the Administrative Record (AR) by April 12, 2022. On March 25, 2022, counsel for the SBA moved to extend the time to file the Administrative Record (AR) by 30 calendar days. The Administrative Judge found good cause for an extension of time to file the AR and directed counsel for the SBA to file a responsive brief to the Appellant's January 26, 2022, brief on or before the expiration of said extension.  Specifically, SBA counsel was directed to address the Appellant's arguments apropos reliance on PPP loan application guidance available on or before the date of Appellant's application. On April 26, 2022, SBA moved to further extend the time to file the AR and a Response for an additional 30 calendar days. The Administrative Judge granted the extension and the SBA had until May 26, 2022, to file the AR.

The AR was filed on May 25, 2022. The SBA filed seven (7) supplements to the Administrative Record on May 25, 2022. On May 25, 2022, the Appellant filed an Addendum to the January 26, 2022, Brief and specifically addressed requested information solicited by the Administrative Judge.  On May 26, 2022 the SBA filed a Brief in response to the instant appeal.  Thereafter as noted above the undersigned issued a decision Reversing the SBA Final Loan Review Decision and granting full PPP loan forgiveness to the Appellant.  It is from that decision that the SBA has filed the instant Petition for Reconsideration.

JA1203

### III.    Discussion & Analysis

As noted above, my original decision of August 4, 2022 is incorporated into this decision as if fully rewritten herein.  While I find the briefs and arguments of both parties to be erudite at both the initial appeal and in the Petition for Reconsideration, I find nothing new or persuasive that alters my logic or rationale for the decision of August 4, 2022. Specifically, I do not find any clear error of law or fact material to the initial decision. Accordingly, the SBA's Petition for Reconsideration is **DENIED**.  My initial decision of August 4, 2022 is **Affirmed**, and the Appellant's original Appeal is **Granted**, and the SBA Final Loan Review Decision is Reversed.

### IV.    Standard of Review

A Petitioner for Reconsideration has the burden of clearly showing an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c).

### V.    Conclusion

Petitioner SBA has not established that the Initial decision was based on a clear error of law or fact material to the decision.  I therefore **DENY** the Petition for Reconsideration and **AFFIRM** the Initial Decision reversing the final SBA loan review decision.   The SBA is directed to issue a new final loan review decision providing that Husson University's Paycheck Protection Program loan of $ 5,965,000.00 be forgiven in full.

The discretionary authority of the Administrator to review and/or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. See id. Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d). This decision  is non-precedential but may be published. 13 C.F.R. § 134.1211(e) and (f).

_James M. Caulfield_

JAMES M CAULFIELD
Administrative Judge

3

JA1204

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Hustle Ova Everything
Entertainment LLC

Appellant

Appealed from
SBA PPP Loan Number
5511277304

Issued: August 29, 2023

Decision No. PPP-5511277304

## ORDER DISMISSING APPEAL[1]

On August 1, 2023, the U.S. Small Business Administration (SBA) issued a Final Loan Review Decision for SBA Paycheck Protection Program (PPP) Loan No. 5511277304. On August 14, 2023, Appellant filed the above-captioned appeal with SBA's Office of Hearings and Appeals (OHA).

On August 29, 2023, SBA moved for dismissal of the Appeal. In its motion, SBA stated that, "SBA moves for dismissal of the Appeal because SBA has withdrawn the Agency's final SBA loan review decision…" Docket at 26. "SBA withdrew that decision because it determined that it is necessary to complete a further review of the Loan." *Id.*

OHA has jurisdiction over cases where a final SBA loan review decision has been made in the borrower's case. 13 C.F.R. § 134.1201(b). As there is no longer any final SBA loan review decision, the appeal is DISMISSED for lack of jurisdiction under 13 C.F.R. § 134.1201(b).

This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) of this section, this decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b).

*Constance T. O'Bryant*

CONSTANCE T. O'BRYANT
Administrative Judge

---

[1] This appeal is decided under the Small Business Act of 1958, 15 U.S.C. § 631 et seq., and 13 C.F.R. Part 134.

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Lawndale Christian Health Center

      Appellant

Appealed from:

SBA PPP Loan Number 5819168004

Issued: May 31, 2022

Docket No. PPP - 5819168004

Appearances:

           Christopher Dons, Chief Financial Officer, Chicago, IL, and Nick Jellum, Esq., Stillwater, MN, for Lawndale Christian Health Center

           Sameena Nabijee, Esq., Small Business Administration, Office of the General Counsel, Washington, DC, for the Small Business Administration.

Before:      Daniel J. McGinn-Shapiro, Administrative Law Judge

## <u>DECISION</u>

On December 8, 2021, Lawndale Christian Health Center (Appellant) received a final Paycheck Protection Program (PPP) loan review decision issued by the U.S. Small Business Administration (SBA).[1] That decision concluded that Appellant was ineligible for the PPP loan it had received and, therefore, ineligible for the forgiveness of any portion of that PPP loan. SBA's Office of Hearings and Appeals (OHA) received Appellant's timely appeal petition and the undersigned was assigned to preside over this matter. OHA conducts PPP appeals under the authority of 13 C.F.R. part 134, Subpart L. Appellant requests that OHA reverse the final SBA

---

[1] *See* Lawndale Christian Health Center's Response to Order to Show Cause

loan review decision and find that Appellant is eligible for PPP loan forgiveness.  For the reasons discussed below, SBA's final loan review decision is reversed, and Appellant's request is granted.

## I.    Facts and Procedural History

### A.  Background

Appellant is designated as an organization that is exempt from paying income taxes under Section 501(c)(3) of the Internal Revenue Code.[2]  It applied for, and was approved for, a PPP loan in the amount of $5,476,200.[3]  CRF Small Business Loan Company, LLC (Lender) disbursed the loan and, later, Appellant applied for forgiveness of the PPP loan.[4]  The Lender recommended that entirety of the PPP loan be forgiven.[5]

SBA reviewed the PPP loan made to Appellant and issued a final loan review decision (FLRD).  In the FLRD, SBA does not accept the Lender's determination but rather concludes that none of the loan will be forgiven.[6]  SBA explains that it determined that Appellant was ineligible for the PPP loan because SBA concluded that Appellant "exceeds the maximum allowable number of employees and the SBA small business size standards."[7]

### B.  Appeal Proceeding

Appellant submitted its appeal petition to OHA.  After the matter was assigned to me and Appellant submitted additional necessary information, as ordered, I issued a Notice and Order directing SBA to file the administrative record and providing both parties opportunities to submit other filings.  SBA filed the administrative record.  SBA also filed a response to Appellant's petition.  The record is now closed, and this matter is now ready for a decision.

In its appeal petition, Appellant contends that when it submitted its application for a PPP

---

[2] *See* Admin. Record at 4839, 4851, 4859, 4871, 4887, 4892, 4954, 4961, 4972, 6115, 6120.
[3] Final SBA Loan Review Decision at 1; Administrative Record at 2, 21, 6115-6116.
[4] Final SBA Loan Review Decision at 1; Admin. Record at 1, 21, 6120, 6122-6124.
[5] Final SBA Loan Review Decision at 1, Admin. Record at 2.
[6] *See* Id.
[7] Final SBA Loan Review Decision at 1.

JA1207

loan, it made a "good faith determination that it had ▆ employees."[8]  Appellant, however, also acknowledges that it counted only full-time employees, and that if it had known to count "individuals employed on a full-time, part-time, or other basis separately," it had an average of ▆ employees during the time used in its PPP loan application.[9]

Appellant asserts that, even if it should have counted part-time employees and, therefore, had a total of approximately ▆ employees in total, SBA should forgive the PPP loan that it received.  Appellant's argument is based on an Interim Final Rule (IFR) that SBA published in the Federal Register on March 22, 2021 (March 2021 IFR), which directed that a 501(c)(3) entity "that employs not more than 500 employees per physical location of the organization is eligible to receive a [PPP] loan."  Appellant asserts that it has at all times been a 501(c)(3) organization and that, at the time of its application, Appellant had ▆ physical locations and did not employ more than 500 employees per location.  While acknowledging that this IFR was published after Appellant's application and loan origination, Appellant asserts that it met this requirement for eligibility at all times between when it applied for a PPP loan through when it applied for forgiveness of the loan.  Appellant notes that there were many changes to the rules governing the PPP in the effort to maximize the benefit to businesses and their employees and to "carry out Congressional intent of [PPP]."[10]  Appellant argues that it is eligible for a PPP loan under the rules published in the IFR in March 2021 and it should not be penalized "simply due to the timing of the rule change."[11]

In its response to the Petition, SBA argues that Appellant was ineligible for a PPP loan when it applied for its PPP loan because it had more than 500 employees.  Specifically, SBA asserts that (1) Appellant has acknowledged that it had more than 500 employees counting both

---

[8] Appeal Pet. at 1.
[9] Id.
[10] Appeal Pet. at 2.
[11] Id.

JA1208

full time and part time employees; (2) although Appellant contends that it was not aware that it was required to count both full-time and part-time employees, the Frequently Asked Questions that were publicly available instructed that both should be counted; and (3) regardless of Appellant's actual knowledge, it is charged with notice of the provision. SBA additionally argues that the March 2021 IFR is inapplicable to the PPP loan that Appellant applied for in June 2020. SBA asserts that the March 2021 IFR "explicitly states" that the IFR was effective March 18, 2021 and SBA did not intend for the rule to be retroactive.[12] SBA further contends that Appellant's "equity argument" fails, stating that accepting the argument would "effectively invalidate SBA regulations and interpretations thereof," which SBA attests OHA cannot do. Additionally, SBA asserts that it would be inequitable to reward Appellant for applying for a PPP loan when it was ineligible at the time of application because there were businesses that did not apply for a PPP loan in June 2020 because they had too many employees. Finally, SBA argues that under the CARES Act and the regulations implementing the Act, because Appellant was ineligible for the PPP loan it received, it is ineligible for forgiveness of that loan.

## II.    Issue

The issue to be addressed is:

**Whether SBA's determination that the number of employees that Appellant employed at the relevant time made it ineligible for a PPP loan was based on a clear error of fact or law.**

## III.    Summary of Decision

Because Appellant submitted its application for loan forgiveness after March 11, 2021, the changes to the PPP program articulated in the American Rescue Plan Act of 2021 and the Interim Final Rule published on March 22, 2021 apply to Appellant's PPP loan. Under those changes, it was a clear error to conclude that Respondent was ineligible for a PPP loan because it employed

---

[12] SBA's Resp. to Appeal Pet. at 6.

JA1209

too many individuals.

## IV.    History of PPP Program and Statement of Law

In March 2020, in response to economic challenges resulting from the COVID-19 pandemic, Congress created the PPP under the CARES Act to provide small businesses with access to low-interest, forgivable loans to pay their employees and meet other costs during the COVID-19 crisis.[13]  The CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and placed administration of the PPP under the SBA.  PPP loans were made by private lenders but guaranteed by the SBA.  15 U.S.C. § 636(a)(36)(B).

PPP loans were made available to borrowers, through lenders, in two draws.  The first draw PPP loans were made pursuant to 15 U.S.C. § 636(a)(36).  The second draw PPP loans were made pursuant to 15 U.S.C. § 636(a)(37).  Congress authorized SBA to forgive the first draw loans under 15 U.S.C. § 636m and the second draw loans under 15 U.S.C. § 636(a)(37)(J).  A borrower of PPP loans is required to apply for forgiveness with the private lender who was servicing the loan.[14]  Borrowers cannot appeal a decision made by a lender directly to OHA.[15]  Rather, the lenders' decisions and the PPP loans are reviewed by SBA's Office of Capital Access and that office issues a final loan review decision.  The SBA's final loan review decision can then be appealed to OHA if the decision finds that the borrower:

> (1) Was ineligible for a PPP loan; (2) Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses; (3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; and/or (4) Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA."[16]

The standard of review for this proceeding is to determine whether the Appellant has shown

---

[13] See P.L. 116-136 (March 27, 2020).
[14] See 15 USC §§ 636m(e), 636m(f), and 636m(l).
[15] See 13 C.F.R.§ 134.1201(c).
[16] 13 C.F.R. § 134.1201(b).

JA1210

that the final SBA loan review decision was based on clear error of fact or law.[17]

## V.    Analysis

The CARES Act states that for first draw PPP loans, like the loan that Appellant received:

> During the covered period, in addition to small business concerns, any business concern, nonprofit organization. . . shall be eligible to receive a covered loan if the business concern, nonprofit organization . . . employs not more than the greater of—
>
> **(I)** 500 employees; or
>
> **(II)** if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization . . . operates.[18]

The Statute then further defines "covered period" as the period between February 15, 2020 and June 30, 2021.[19]

13 CFR § 121.201 lists the size standards for different industries. Appellant lists different NAICS codes on different forms and documents, including specific NAICS codes for different aspects of business.[20]  On its PPP loan application, however, it uses NAICS code 621498.[21]  13 CFR § 121.201 does not indicate an alternative number of employees for any of the NAICS codes listed by Appellant, including 621498.  Because there is no applicable alternative number of employees for the industry which Appellant operates within, Appellant is eligible if it employs 500 employees or less.

13 CFR § 121.106 addresses how SBA calculates how many people a business employs. The current version of the regulation has been in effect since January 6, 2020.  It states that the "the method for determining a concern's size includes the following principles . . . Part-time and

---

[17] *See* 13 C.F.R. § 134.1210.
[18] 15 U.S.C. § (a)(36)(D)(i).
[19] 15 U.S.C. § 636(a)(36)(A)(iii).  Initially, "covered period" was defined as the time between February 15, 2020 and June 30, 2020.  *See* P.L. 116-136 (March 27, 2020).
[20] *See* Admin Record at 4970, 4981-4982
[21] *See* Admin. Record at 6122.

JA1211

temporary employees are counted the same as full-time employees."[22]    In other words, when Appellant applied for a PPP loan on June 30, 2020[23] and when Lender disbursed a PPP loan to Appellant on July 9, 2020[24] the law was clear that full-time and part-time employees are counted to determine the total number of people that a business employs.

On its application, Appellant stated that it had ▮ employees at the time it applied for a PPP loan.[25]  Appellant states, however, that when it provided that number, it believed that it was only to count full time employees and that if both full time and part time employees are counted, it employed an average of ▮ employees per pay period for the time period used in completing Appellant's PPP loan application.[26]  In short, under the law at that time, Appellant employed more than 500 people in total across its business when it applied for a PPP loan.

As Appellant notes, however, in the IFR promulgated on March 22, 2021 (March 2021 IFR), SBA stated that a non-for-profit entity organized under 501(c)(3) of the Internal Revenue Code (a 501(c)(3) entity) with more than 500 total employees could be eligible for a PPP loan if the entity had multiple locations and none of the locations employed more than 500 employees. Specifically, that IFR states that "a tax-exempt non-profit organization described in section 501(c)(3) of the Internal Revenue Code that employs not more than 500 employees per physical location of the organization" is eligible for a PPP loan.[27]  As noted, Appellant is a 501(c)(3) entity.[28]

The March 2021 IFR revised the PPP rules to incorporate the American Rescue Plan Act of 2021's (ARPA) amendments to the PPP.[29]  One of the amendments to the PPP that ARPA made

---

[22] 13 C.F.R. § 121.106(b).
[23] *See* Admin. Record at 6116.
[24] *See* Admin Record at 2.
[25] *See* Admin Record at 6115.
[26] *See* Appeal Pet. at 1.
[27] 86 Fed. Reg. at 15085.
[28] *See* Admin. Record at 4839, 4851, 4859, 4871, 4887, 4892, 4954, 4961, 4972, 6115, 6120.
[29] 86 Fed. Reg. at 15083.

JA1212

was to add that "a nonprofit organization shall be eligible to receive a covered loan if the nonprofit organization employs not more than 500 employees per physical location of the organization." [30]

SBA argues that the changes in the March 2021 IFR do not apply to Appellant's PPP loan because Appellant applied for its loan in June 2020.  SBA notes that the "Effective date" provision in the March 2021 IFR states that "the provisions of this interim final rule are effective March 18, 2021."[31]  SBA argues that, therefore, the March 2021 IFR is "not retroactive and is not applicable to this appeal."[32]  The question is not whether the changes are retroactively applied, however, but rather what event or events control whether the changes apply.  The IFR also contains an "Applicability date" provision that states that "[t]he provisions of this interim final rule incorporating the American Rescue Plan Act changes to the PPP apply to PPP loans approved, **and loan forgiveness applications submitted**, on or after March 11, 2021."[33]  Appellant applied for a PPP loan on June 30, 2020[34] and Lender disbursed a PPP loan to Appellant on July 9, 2020,[35] both dates which fall before March 11, 2021. Appellant, however, applied for forgiveness of the loan on August 25, 2021, five months after March 11, 2021.[36]

The critical issue then is whether the changes articulated in the ARPA and the March 2021 IFR apply to Appellant, whose loan was approved before March 11, 2021, but whose loan forgiveness application was submitted after March 11, 2021.  In the "Applicability date" clause of the March 2021 IFR there is a comma before the phrase "and loan forgiveness applications submitted" and another comma before the modifier "on or after March 11, 2021."   When

---

[30] P.L. 117-2, Title V, Sec. 5001(a)(1)(B), 135 STAT. 82 (March 11, 2021)
[31] 86 Fed. Reg. at 15083.
[32] SBA's Resp. to Appeal Pet. at 6.
[33] 86 Fed. Reg. at 15084 (emphasis added).
[34] *See* Admin. Record at 6116.
[35] *See* Admin Record at 2.
[36] *See* Admin Record at 6124; SBA's Resp. to Appeal Pet. at 2.

JA1213

examining the effect of commas, the United States Court of Appeals for the Second Circuit has said:

> One of the methods by which a writer indicates whether a modifier that follows a list of nouns or phrases is intended to modify the entire list, or only the immediate antecedent, is by punctuation—specifically by whether the list is separated from the subsequent modifier by a comma. When there is no comma, as in the statute considered in [*Barnhart v. Thomas,* 540 U.S. 20 (2003)] the subsequent modifier is ordinarily understood to apply only to its last antecedent. When a comma is included, as in the [] provision [at issue in the case], the modifier is generally understood to apply to the entire series.[37]

The existence of the comma before the modifier "on or after March 11, 2021," dictates that the March 2021 IFR, and the changes therein, apply to PPP loans that were approved on or after March 11, 2021 and to PPP loans for which the business applied for forgiveness on or after March 11, 2021.  In short, because Appellant did not apply for loan forgiveness until after March 11, 2021, the change to the rule that allowed an entity to have 500 employees per location apply to Appellant.

Interpreting the "Applicability date" provision in the March 2021 IFR to apply the changes in the IFR to all PPP loans for which the business applied for forgiveness on or after March 11, 2021, regardless of when the PPP loan was approved, also follows the basic rule of construction that a provision should be interpreted in a way that avoids rendering any part of the provision superfluous.[38]  An entity could not apply for loan forgiveness before its application for a PPP loan is approved.[39]  It follows that for any PPP loan approved on or after March 11, 2021, the application for forgiveness would necessarily also be submitted after that date.  Interpreting the "Applicability date" provision to mean that the changes promulgated in the March 2021 IFR only applied to PPP

---

[37] *American Intern. Group, Inc. v. Bank of America Corp.*, 712 F.3d 775, 781-782 (2d. Cir. 2013) (further citations omitted).

[38] *See Gillespie v. Trans Union, LLC*, 433 F. Supp. 2d, 908, 913-914 (N.D. Ill. 2006) (further citations omitted) (stating that courts "are to avoid interpretations" of "agency regulations" and "agency's interpretive rules . . . which render words superfluous.").

[39] *See* 15 U.S.C. § 636m (stating that a borrower is eligible for forgiveness of indebtedness of a "covered loan," which in turn is defined as a loan that has been "guaranteed" under the PPP program).

JA1214

loans approved on or after March 11, 2021 would render the words "and loan forgiveness applications submitted" superfluous.

SBA argues in this case a different interpretation of its own IFR than the language of the "Applicability date" provision dictates.  SBA stated that the IFR only applies to PPP loans applied for after March 11, 2021.  Accountability to the public requires that agencies be bound by the language of a regulation or rule that they promulgate, not an interpretation the agency later advances.[40]

Appellant asserts that it has ▮ physical locations, and no single location employs more than 500 employees.[41]  SBA does not dispute this assertion, which was made in the appeal petition that, by its submission, Appellant attested was "true to the best of [the author's] knowledge," and under risk of criminal penalties for a false statement.[42]   It is also supported by Appellant's 2019 payroll information.  The document lists approximately ▮ employees spread over ▮ locations, including corporate headquarters, none of which have more than ▮ employees listed.[43]

In short, because Appellant is a 501(c)(3) entity with multiple locations, none of which employs more than 500 employees, it is eligible for the PPP loan that it received.  SBA explicitly based its determination that Appellant was ineligible on the erroneous conclusion that Appellant "exceed[ed] the maximum allowable number of employees and the SBA small business size standards."[44]

## VI.    Order

It is **HEREBY ORDERED** that Appellant's appeal is **Granted** and the final SBA loan review decision is **Reversed**.

---

[40] *See Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1098 (9th Cir. 2007).
[41] Appeal Pet. at 1.
[42] 13 C.F.R. § 134.209' 13 C.F.R. § 134.1201(h).
[43] *See* Admin. Record at 3696-3707.
[44] Final SBA Loan Review Decision at 1.

JA1215

This is an initial decision. This decision, however, will become SBA's final decision 30 calendar days after it is served unless a request for reconsideration is filed or the SBA Administrator decides to exercise discretionary authority to review or reverse this decision.[45]

Either the SBA or Appellant may request reconsideration of this Initial Decision by filing with OHA and serving a petition for reconsideration within 10 calendar days after service of this decision.[46] The request for reconsideration must clearly show an error of fact or law material to the decision.[47]   A petition for reconsideration should be filed via email to OHAPPPinquiries@sba.gov.

Final decisions may be appealed to the appropriate Federal district court only.  13 C.F.R. §134.1211(g).

Daniel
McGinn
Shapiro

Digitally signed by
Daniel McGinn Shapiro
Date: 2022.05.31
13:31:43 -04'00'

Daniel J. McGinn-Shapiro
Administrative Law Judge

---

[45] *See* 13 C.F.R. § 134.1211(b).
[46] If SBA files a petition for reconsideration, SBA shall serve a copy of the petition on the Appellant. If the Appellant files a petition for reconsideration, a copy of the petition shall be served upon SBA at pppappealsogc@sba.gov.
[47] *See* 13 C.F.R. §134.1211(c).

JA1216

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Marjer Inc

      Appellant

Appealed from
SBA PPP Loan Number
5024688809

Issued: October 3, 2023

Decision No. PPP-5024688809

### APPEARANCES

For the Appellant: Mark Gawron, Borrower

For the Small Business Administration: Denise Grugan, Attorney

### DECISION

### I. Introduction and Jurisdiction

On June 30, 2023, Marjer Inc (Appellant) received the final loan review decision finding it ineligible for the Paycheck Protection Program Loan it received. On July 29, 2023, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the final SBA loan review decision is clearly erroneous, requests that OHA reverse it, and find Appellant eligible for Paycheck Protection Program loan forgiveness. For the reasons discussed infra, I deny the appeal and affirm the final SBA loan review decision.

OHA conducts Paycheck Protection Program appeals under the authority of 13 C.F.R. part 134 Subpart L.

### II. Background

On March 17, 2021, Appellant submitted a Second Draw Borrower Application Form, requesting $20,759. AR 117-123. Although the application requested the borrower identify the comparison quarters that showed at least a 25% decrease in gross receipts, Appellant left that portion of the application blank. AR 117. On April 21, 2021, Appellant executed a note for $20,750. AR 16-28. On April 22, 2021, PNC Bank (Lender) disbursed the loan. AR 126. as

On May 2, 2022, Appellant submitted a forgiveness application, requesting full forgiveness. AR 124-125. Appellant identified the covered period as April 22, 2021 to October 1, 2021. AR 124.

Starting May 11, 2022, SBA begin requesting documents from Appellant through the Lender that supported loan origination and forgiveness eligibility. AR

JA1217

96-116.

## A. Final SBA Loan Review Decision

On June 28, 2023, SBA issued a final loan review decision, stating the following:

> After review of the forgiveness submission, the SBA concludes that the documentation provided is insufficient to determine if the PPP loan was eligible, was calculated correctly and/or whether forgiveness is supported.
>
> The SBA requested the following information to calculate the origination amount, determine the borrower's eligibility, and/or support forgiveness, however, sufficient documentation was not provided:
> Valid (unexpired) Picture ID for all principals (Driver's License or State ID Card).
> Business Tax Returns including all Schedules signed and filed with the IRS for tax years 2018, 2019 and 2020.
> Business IRS Tax Transcript obtained from IRS.gov for tax year 2018, 2019 and 2020.
> Business Bank Statements May 2021
> Filed copy of the DBA documentation or Secretary of State filing.
> IRS Form 1099s for the Years 2018/2019/2020.
> Business Bank Account Statement for the month of May 2021.
> As the requested required information was not returned in full, eligibility could not be confirmed, and this therefore forgiveness cannot be supported

AR 14- 15.

## B. Appeal

On July 29, 2023, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous.  Appellant contends that the "forgiveness should not be denied just because the lender made a mistake and sent the wrong information to the borrower."  Docket Entry – Appeal letter. Appellant argues that it provided documents to Lender and it would prejudicial to not include it.

On August 7, 2023, OHA issued a Notice and Order.  On August 2023, SBA filed the Administrative Record and a bank statement from February 2020.

On September 6, 2023, Appellant filed an Objection, as the Administrative Record was missing an email from PNC to Appellant, dated April 27, 2023, requesting various documents from Appellant. Docket entry – Objection to Administrative Record. Among the documents requested in this email was "a voided check from BNT Bank, but Appellant does not bank with NBT bank." Id. Appellant felt it would be prejudicial to not include the email. Id.

On September 17, 2023, SBA filed the omitted email from Lender to Appellant and a Response.  Docket Entries - AR Supplement PNC EM and

2

Appeal Response-failure to provide docs. Appellant then filed additional documents, with the following docket entries: 2018, 2019, and 2020 tax return, tax transcript, Payroll doc 2020, Payroll doc 2019, pnc bank email.

## III. Discussion

### A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

### B. Analysis

At issue is whether Appellant was eligible for the Paycheck Protection Program loan. SBA's final loan review decision determined that, due to the missing documents, it was unable to determine Appellant's eligibility and or support forgiveness.

To be eligible for a Second Draw Loan, a borrower must have experienced a revenue reduction of 25% or greater in 2020 relative to 2019. Paycheck Protection Program, Second Draw Loans – Interim Final Rule, 86 Fed. Reg. 3712, 3713 (Jan. 14, 2021).

While Appellant provided additional documents, the record is still missing documents. The forgiveness application informed Appellant that it:

> must retain all records necessary to provide compliance with Paycheck Protection Program Rules for four years for employment records and for three years for all other records. SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or in a denial of the Borrower's loan forgiveness application.

AR 124. Among the documents missing include tax transcripts for 2018, 2019, and 2020. Although there is a docket entry entitled tax transcript, that entry does not contain the tax transcripts, but rather a completed Form 4506-T, which is a request for tax transcripts, dated September 20, 2022. Appellant's business bank statement from May 2021 and IRS Form 1099s are also missing. The documents are necessary to determine eligibility for the Second Draw loan. For example, Appellant identified the covered period as April 22, 2021 to October 1, 2021, however, the file is missing business bank statement from May 2021.

Appellant mainly bases its appeal on PNC's request for a voided check provided to NBT Bank, a bank that Appellant does not bank with. SBA acknowledges that this appeared to have been sent in error by its Lender. Docket Entry – AR Supplement EM. Regardless, the final loan review decision does not request documents relating to NBT Bank. See AR 14-15. The documents identified in the final loan review decision are not specific to NBT Bank, but rather to Appellant's bank statements and tax transcripts.

3

The record is still missing the records requested by SBA. Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower is an "eligible recipient." The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 1106(b), the borrower must be an eligible recipient" under 15 U.S.C. 636(a)(36)(A)(iv) of the rules and guidance available at the time of borrower's loan application. Paycheck Protection Program – SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. 33010 (June 1, 2020). As the documentation is insufficient to determine if Appellant was an eligible recipient, Appellant would not be eligible for forgiveness.

For the above reasons, Appellant failed to show that SBA's final loan review decision was clearly erroneous.

<div align="center">C. <u>Conclusion</u></div>

Appellant has not established that the final SBA loan review decision is based on a clear error. I deny the appeal and affirm the final SBA loan review decision. This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at *https://appeals.sba.gov* within 10 calendar days after service of the Judge's decision, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.


*Christa Zamora*
_____

CHRISTA ZAMORA
Administrative Law Judge

JA1220

## United States Small Business Administration
## Office of Hearings and Appeals

PETITION FOR
RECONSIDERATION:

Marjer Inc

      Petitioner

Appealed from
SBA PPP Loan Number
5024688809

Decided: November 16, 2023

Decision No. PFR-5024688809

### DECISION; ORDER DENYING EXTENSION OF TIME TO FILE ADDITIONAL DOCUMENTS

### I. Introduction and Jurisdiction

On October 13, 2023, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a petition for reconsideration (PFR) in the above-captioned matter from Marjer Inc. The PFR seeks OHA's reconsideration pertaining to OHA's initial decision, denying the appeal of the Paycheck Protection Program Loan No. 5024688809. Appellant also requests an extension to file additional documents.

OHA has jurisdiction to decide this PFR. See 13 C.F.R. Part 134, Subpart L.

### II. Background

On June 30, 2023, SBA issued the final loan review decision, with the following:

> After review of the forgiveness submission, the SBA concludes that the documentation provided is insufficient to determine if the PPP loan was eligible, was calculated correctly and/or whether forgiveness is supported. The SBA requested the following information to calculate the origination amount, determine the borrower's eligibility, and/or support forgiveness, however, sufficient documentation was not provided:
> Valid (unexpired) Picture ID for all principals (Driver's License or State ID Card).
> Business Tax Returns including all Schedules signed and filed with the IRS for tax years 2018, 2019 and 2020.
> Business IRS Tax Transcript obtained from IRS.gov for tax year 2018, 2019 and 2020.
> Business Bank Statements May 2021 Filed copy of the DBA documentation or Secretary of State filing. IRS Form 1099s for the Years 2018/2019/2020.
> Business Bank Account Statement for the month of May 2021.

1

JA1221

As the requested required information was not returned in full, eligibility could not be confirmed, and this therefore forgiveness cannot be supported.

Administrative Record (AR) at 14-15.

On July 29, 2023, Appellant filed an appeal, arguing that PNC Bank made an error in requesting information from the Borrower that it did not have.

On October 3, 2023, OHA issued its decision, denying the appeal and affirming the final SBA loan review decision. Requested documents still remained missing at the appeal stage.

### III. Discussion

### A. Standard of Review

Pursuant to 13 C.F.R. § 134.1211(c), "an initial decision of the Judge may be reconsidered . . . Either SBA or appellant may request reconsideration by filing with the Judge and serving a petition for reconsideration within 10 calendar days after service of the Judge's decision. The request for reconsideration must clearly show an error of fact or law material to the decision."

### B. Analysis

Although Appellant filed a timely petition for reconsideration, it failed to show that OHA's decision was clearly erroneous in law or fact.

Appellant first requests reconsideration as the Administrative Record does not contain a copy of the email from PNC Bank to it, dated April 27, 2023, requesting a voided check from NBT Bank, 2019 and 2020 941s, and a business license. Motion for Reconsideration. The email, however, is part of the record and was considered in issuing the OHA decision. See Decision at 3. Appellant uploaded the email in filing its appeal petition. While this email was not included the original Administrative Record, it was subsequently included in SBA's later filing, "AR Supplement PNC EM".

Appellant next argues that it retained all records as part of the Paycheck Protection Program but does not obtain tax transcripts of its returns as a customary practice. It requests that the record remain open "to obtain the documents necessary and to obtain the May 2021 bank statement." Appellant, however, included its May 2021 bank statement as part of its petition for reconsideration.

Appellant had many opportunities to provide the missing documents. The same email, dated April 27, 2023, that Appellant described as "missing" also informs it of documents that needed to be provided, specifically tax return transcripts for year 2018, 2019 and 2020. AR Supplement PNC EM. Requests for missing documents were also made by SBA through PNC Bank on seven different occasions: August 19, 2022, September 19, 2022, March 31, 2023, April 13, 2023, April 27, 2023, May 16, 2023, and May 17, 2023. AR 98-116. While the record contains a completed Form 4506-T, signed on September 22, 2022, requesting tax transcripts, it appears it was never sent. Docket Entry - tax transcript. Given the many past opportunities, Appellant's request for an

2

extension of time to file additional documents is denied.

Appellant's acknowledging that documents are missing supports the basis of the OHA decision. As such, Appellant failed to show that the OHA decision was clearly erroneous.

<div align="center">C. <u>Conclusion</u></div>

For the foregoing reasons, the instant petition for reconsideration is denied. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator, solely within her discretion, elects to review and/or reverse this decision per 13 C.F.R. §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b). The discretionary authority of the Administrator to review and/or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. See Id. Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d). This decision is non-precedential but may be published. 13 C.F.R. § 134.1211(e) and (f).

_Christa Zamora_
_____

CHRISTA ZAMORA
Administrative Law Judge

<div align="center">3</div>

JA1223

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**MOTORISTS ACCEPTANCE
CORPORATION**

      **APPELLANT**

Appealed from:

SBA PPP Loan Number 4347567202

Issued: March 3, 2022

Docket No. PPP-4347567202

**Appearances:**

**For Appellant:** Donald A. Baughman

**For SBA:** Susan Chang, Esq.

## DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

**SBA PPP Loan Number:** 4347567202

**Approved Loan Amount:** $186,300.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 165-167)[1].

SBA issued a final loan review decision denying the application after determining Appellant was ineligible for a PPP loan because it is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring (AR, Pages 19-20).

Appellant timely filed an appeal petition with SBA.

The **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting filing deadlines for the administrative record, Appellant objections to the administrative record, and SBA response to the appeal.

SBA timely submitted the administrative record.

Appellant did not file objections to the administrative record.

SBA did not file a response to this appeal.

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision are contained in the case record maintained in the **OHA Case Portal.**

Docket No. PPP-4347567202

The record closed on **January 18, 2022**[2, 3].

## ISSUE(S)

Is the final SBA loan review decision based on clear error of fact or law?

## APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[4], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March 27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36)**).

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m**).

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

For the purposes of the Small Business Act, a **small business concern**, including but not limited to enterprises engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation (15 USC §632(a)(1)).

---

[2] **13 CFR §134.1202 provides when determining the time period for filing an appeal petition:**

> (c)(1) Do not count the day the time period begins but do count the last day of the time period.

> (2) **If the last day is Saturday, Sunday, or a Federal holiday, the time period ends on the next business day** (13 CFR §134.1202(c)(1)-(2)).

[3] **On January 11, 2022**, OHA issued an Administrative Order clarifying **13 CFR §134.1202(c) applies to all filing deadlines in PPP loan appeals** (Source: SBA.gov@https://www.sba.gov/document/support-administrative-order-deadlines-ppp-filings). **I closed the record on January 18, 2022,** because the response and record closing deadline(s) listed in the Notice and Order (January 17, 2022) is a Federal holiday (Martin Luther King, Jr. Day).

[4] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq*.**

- 2 -

JA1225

In addition to the criteria specified in 15 USC §632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act (15 USC §632(a)(2)(A)).

The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors (15 USC §632(a)(2)(B)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

JA1226

Increased eligibility for certain small business and organizations –

   (i)   In general – During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in 15 USC §657(b)(2)(C), shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than greater of –

      (I)   500 employees; or

      (II)   if applicable, the size standard in number of employees established by SBA for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates (15 USC §636(a)(36)(D)(i)(I)-(II)).

For loan forgiveness, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

For loan forgiveness, the term **covered period** means the period –

   (A) beginning on the date of the origination of a covered loan; and
   (B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –
      (i)   beginning on the date that is 8-weeks after such date of origination; and
      (ii)   ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

   (1) Payroll costs.
   (2) Any payment of interest on any covered mortgage obligation.
   (3) Any payment on any covered rent obligation.
   (4) Any covered utility payment.
   (5) Any covered operations expenditure.
   (6) Any covered property damage cost.
   (7) Any covered supplier cost.
   (8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

The term **small business concern** has the meaning given that term under 15 USC §632 (15 USC §636e(6)).

- 4 -

JA1227

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[5] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

To apply for a PPP loan, the applicant must submit **SBA Form 2483 (Paycheck Protection Program Application Form)** and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

**SBA's size standards** define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under the **North American Industry Classification System (NAICS)** (13 CFR §121.101(a)).

In establishing size standards, SBA considers economic characteristics comprising the structure of an industry, including degree of competition, average firm size, start-up costs and entry barriers, and distribution of firms by size. It also considers technological changes, competition from other industries, growth trends, historical activity within an industry, unique factors occurring in the industry which may distinguish small firms from other firms, and the objectives of its programs and the impact on those programs of different size standard levels (13 CFR §121.102(a)).

The **small business size standards by NAICS used by SBA** are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.201[6].

---

[5] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

[6] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

JA1228

SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

i. Banks;
ii. Life Insurance Companies (but not independent agents);
iii. Finance Companies;
iv. Factoring Companies;
v. Investment Companies;
vi. Bail Bond Companies;
vii. Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

i. A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.
ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.
iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.
iv. A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.
v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**The purpose of IFR #15** is to inform borrowers and lenders of SBA's process for reviewing PPP loan applications and loan forgiveness applications (IFR #15, 85 Fed. Reg. Page 33010).

If SBA determines a borrower is ineligible for a PPP loan, SBA will direct the lender to deny the loan forgiveness application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The Administrator has determined to be an eligible recipient entitled to forgiveness under Section 1106(b) of the CARES Act, the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**The purpose of IFR #20** is to update the First Loan Forgiveness Rule and First Loan Review Rule following passage of the Flexibility Act (IFR #20, 85 Fed. Reg., Page 38306).

JA1229

To receive loan forgiveness, a borrower must complete and submit the **Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent)** to the lender (or the lender servicing the loan) (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications made in its PPP loan application), the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

OHA is established in SBA –

    (i)        to impartially decide matters related to program decisions of the Administrator; and,
    (ii)       to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)).

Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

    (i)        a Hearing Officer may hear cases under section 554 of the APA;
    (ii)       a Hearing Officer shall have the powers described in section 556(c) of the APA; and,
    (iii)    the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[7] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

    (1) administer oaths and affirmations;
    (2) issue subpoenas authorized by law;
    (3) rule on offers of proof and receive relevant evidence;

---

[7] **Section 556(b) of the APA** requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

JA1230

Docket No. PPP-4347567202

(4) take depositions or have depositions taken when the ends of justice would be served;
(5) regulate the course of the hearing;
(6) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);
(7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;
(8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;
(9) dispose of procedural requests or similar matters;
(10) make or recommend decisions in accordance with section 557 of the APA; and
(11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

The appellant has the burden of proof in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

JA1231

Docket No. PPP-4347567202

## **FINDINGS OF FACT (FOF) AND ANALYSIS**

Based on the record, I make the following findings of fact (FOF):

1.  Appellant purchases subprime car loans from auto dealers then notifies the purchaser/borrower to make payments on the loan to Appellant (AR, Page 133).

2.  On April 25, 2020, Appellant applied for a PPP loan in the amount of $186,300, using a combination of a Lender Equivalent Form and SBA Form 2483 (AR, Pages 152-164).

3.  Appellant's PPP loan was approved by the lender on May 2, 2020 (AR, Pages 20-24).

4.  On July 27, 2020, Appellant applied for loan forgiveness (Form 3508EZ) in the full amount of the PPP loan ($186,300) (AR, Pages 165-167).

5.  SBA selected Appellant's PPP loan for review (AR, Pages 146-147).

6.  A loan review report indicates SBA determined Appellant engages in **factoring**[8] (AR, Pages 169-172).

7.  SBA denied Appellant's forgiveness application after determining Appellant was ineligible for a PPP loan because it is a business engaged in financing or factoring (AR, Pages 16-17).

SBA carries out the policies of the Small Business Act (15 USC §633(a)). The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 USC §636(a)).

For the purposes of the Small Business Act, a **small business concern** is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator (15 USC §632(a)(1)-(2)(A)-(B); 15 USC §636e(6); 13 CFR §§121.101(a), 121.102(a), 121.201).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m). The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

---

[8] **Factoring**- the selling of a firm's accounts receivables to a third party known as a **factor**. If a firm is not confident in its ability to collect on its credit sales, it may sell the right to receive payment to the factor at a discount. The factor then assumes the credit risk associated with the accounts receivable. This allows the firm to access working capital immediately, which is important if the firm might otherwise have a cash flow problem. The price of accounts receivable financing is determined by the creditworthiness of the firm's customer not the firm itself (Source: Financial Dictionary at https://financial-dictionary.thefreedictionary.com/factoring).

- 9 -

JA1232

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)). **Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

**In general**, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or qualified Tribal business concern is eligible to receive a PPP loan if it employs not more than the greater of – (I) 500 employees; or (II) if applicable, SBA's size standard in number of employees (15 USC §636(a)(36)(D)(i)(I)-(II)).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812). Financial businesses primarily engaged in the business of factoring are not eligible for SBA business loans (13 CFR §120.110(b)). SBA cannot guarantee loans to factoring companies (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)), and **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

If SBA determines a borrower was ineligible for a PPP loan, the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306). To be an **eligible recipient** entitled to loan forgiveness the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

**THE RECORD SHOWS** Appellant is a factoring company that applied for and received a PPP loan. The record also shows Appellant's PPP loan forgiveness application was denied by SBA because factoring companies are ineligible to receive PPP loans (FOF 1-7).

It its appeal petition, Appellant acknowledges it is a finance/factoring company but argues its forgiveness application should be approved because the CARES Act does exclude any industry based on its NAICS code and the PPP loans of gambling casinos have been forgiven (*see* Appeal Letter (AL), Pages 1-2).

I am not persuaded by Appellant's argument. A small business must meet SBA's ownership, operation, and size standards (15 USC §632(a)(1)-(2)(A)-(B); 15 USC §636e(6); 13 CFR §§121.101(a), 121.102(a), 121.201). **SBA uses NAICS to establish size standards** (13 CFR §§121.101(a) and 121.201)[9]. The CARES Act does indicate at 15 USC §636(a)(36)(D)(i)) (i.e. Paragraph (36)(D)(i)) in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan" if it meets SBA size standards (*see* 15 USC §636(a)(36)(D)(i)(I)-(II)). Paragraph 36(D)(i), however, starts with two words, "In general—" that make clear the paragraph is a general eligibility requirement and not an absolute requirement that if met guarantees PPP loan eligibility for any business concern. A true and close reading of Paragraph 36(D)(i) reveals it as a general eligibility requirement allowing business concerns and

---

[9] **A searchable NAICS website** is maintained by the U.S. Census Bureau at https://www.census.gov/naics/?99967.

other entities, most notably nonprofit organizations, not normally classified as small businesses to be considered PPP loan eligible if size standards are met. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e. paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single portion/paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress[10], [11]. The record supports SBA denied Appellant's loan forgiveness application not because of its NAICS code but because of its factoring activity[12]. The NAICS portion of Appellant's argument is misplaced and does not provide a persuasive legal basis for me to find Appellant meets the PPP loan eligibility or PPP loan forgiveness requirements of the CARES Act.

Appellant acknowledges it is financial business (AL, Page 2), and the record confirms Appellant is a financial business engaged in factoring through the purchase of car loans (AR, Pages 133, 169-172; *see also* FOF 1 and 6). Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt finance companies from the terms of other 7(A) loans and under SBA regulations and policy in effect when Appellant submitted its PPP loan application, finance/factoring companies are ineligible to receive small business loans (i.e. 7(A) loans), including PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(b); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(iii), Page 104)[13]. Further, Appellant does not cite to and I cannot find any statute, regulation, policy, or authority that makes SBA's decision on a loan forgiveness application for other business concerns precedential or binding on all applications[14]. The record supports

---

[10] **The United States Supreme Court has determined**, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

[11] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, **it reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements** of Section 1102 of the CARES Act (15 USC §636(a)(36)) to receive a PPP loan.

[12] I note, **Appellant's NAICS code is not included in the final SBA loan review decision** (AR, Pages 16-17). The record supports SBA simply used the NAICS code as a business type identifier in loan review communications between SBA and the lender (*see* AR, Pages 150-151).

[13] **IFR #1 was published/released on the U.S. Department of the Treasury (USDT's) PPP webpage on April 2, 2020 and became effective April 15, 2020. IFR #1 was published on USDT's webpage the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[14] **Appellant's argument** seeking to prevent SBA from denying its forgiveness application because SBA has or may have approved the loan forgiveness applications of casinos or other businesses **is an argument for estoppel**. **Estoppel** bars a party from doing something different from what has been done before or what has been legally established as true (*See* Definition of Estoppel at https://www.law.cornell.edu/wex/estoppel). The United States Supreme Court has determined as a general rule, **the Federal Government may not be estopped from enforcing**

Docket No. PPP-4347567202

Appellant is a factoring company that was ineligible to receive a PPP loan and is ineligible to receive PPP loan forgiveness. The record also demonstrates SBA properly applied the applicable laws, regulations, and policy when denying Appellant's application. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decision is AFFIRMED.

## CONCLUSIONS OF LAW

Appellant is a factoring company.

**Appellant was ineligible for the PPP loan it received**.

**Appellant is ineligible for PPP loan forgiveness**.

**The final SBA loan review decision is not based on clear error of fact or law**.

**Appellant remains liable** for the PPP loan (PPP Loan Number 4347567202).

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIMED**.

Appellant's forgiveness application will be processed in accordance with this decision.

**This is an INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR §134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

Digitally signed by
Joseph K. Essmyer Jr -S

_____

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

---

**public laws**, even though private parties may suffer hardship as a result in a particular case (*Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990); *see also* Department of Justice Manual at https://www.justice.gov/jm/civil-resource-manual-209-estoppel#:~:text=The%20general%20rule%20is%20that,a%20result%20in%20particular%20cases). In other words, **in enforcing the applicable PPP law(s) SBA cannot be prevented (i.e. estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application.** The applicable laws, regulations, and policy make clear that **each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application** to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy (*see* 15 USC §636(a)(36); 15 USC §636m; IFR #1, #15, #20).

JA1235

Docket No. PPP-4347567202

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)).

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d)).

- 13 -

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**PILLAR INCOME ASSET MANAGEMENT, INC.**

    **APPELLANT**

Appealed from:

SBA PPP Loan Number 5445887202

Issued: December 27, 2022

Docket No. PPP-5445887202

### NOTICE AND ORDER

Appellant filed an appeal petition in this matter.

The **U.S. Small Business Administration (SBA)** received the petition on **December 14, 2022**.

The **Office of Hearings and Appeals (OHA)** conducts **Paycheck Protection Program (PPP)** appeals under the authority of **Title 13, Part 134, Subpart L of the Code of Federal Regulations (CFR)**[1, 2].

**Unless an appeal is dismissed, the Judge will issue a Notice and Order,** utilizing the <u>OHA Case Portal</u>, establishing a deadline for production of the administrative record and specifying a date SBA may respond to the appeal (13 CFR §134.1206).

### ADMINISTRATIVE RECORD

*Time Limits.* **The administrative record is due twenty (20) calendar days after issuance of the Notice and Order** unless additional time is requested and granted (13 CFR §1207(a)).

*Contents.* The administrative record shall include non-privileged, relevant documents SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision. The administrative record need not contain all documents pertaining to the appellant (13 CFR §1207(b)).

*Non-Wavier.* In the event privileged or confidential information is disclosed in the administrative record, such disclosure shall not operate as a waiver of any claim of privilege or confidentiality by SBA (13 CFR §1207(c)).

---

[1] The final version of Subpart L became effective on **September 14, 2021** (*Federal Register,* Vol. 86, No. 1177, Pgs. 51589-51597, Sept. 16, 2021, *effective September 14, 2021*).

[2] The most recent version of 13 CFR Part 134 is available from the National Archives at https://www.ecfr.gov/current/title-13/chapter-I/part-134?toc=1.

Docket No. PPP-5445887202

*Filing.* SBA will file the administrative record with **OHA** and serve it on the appellant utilizing the <u>OHA case portal</u> (13 CFR §1207(d)).

*Objections.* **(1) Any objection to the administrative record must be filed with OHA and served on SBA no later than thirty (30) calendar days** after the issuance of the Notice and Order, utilizing the <u>OHA Case Portal</u>. **If an extension to file the administrative record was granted by the Judge,** the appellant will have **ten (10) calendar days** from the date SBA is required to file the administrative record under the extension order to file an objection to the administrative record.

**(2) An appellant may object to the absence of any document from the administrative record** the appellant believes should have been included in the administrative record.

**(3) The Judge will rule upon such objection(s)** and may direct or permit the administrative record be supplemented (13 CFR §134.1207(e)(1)-(3)).

## RESPONSE TO AN APPEAL PETITION

*Who May Respond.* <u>Only SBA</u> may respond to an appeal petition. **SBA** may respond at its discretion but **is not required to respond.** <u>If SBA elects not to respond</u>, it shall not be interpreted as an admission or waiver of any allegation of law or fact. After review of the appeal petition, **OHA may request SBA respond to the petition for good cause** shown by OHA. **Any response filed by SBA should set forth the relevant facts and legal arguments** to the issue(s) presented on appeal (13 CFR §134.1208(a)).

*Time Limit.* **If SBA files a response,** it must be filed **within 45 calendar days** after the issuance of the Notice and Order (13 CFR §134.1208(b)).

*Close of Record.* **The record will close 45 calendar days from the issuance of the Notice and Order,** unless the Judge decides otherwise. <u>Generally, filings after the close of the record will not be considered</u> (13 CFR §134.1208(c)).

*Service.* **If SBA files a response,** SBA must file its response with OHA and serve a copy of the response on the appellant or its attorney, as applicable, using the <u>OHA Case Portal</u> (13 CFR §134.1208(d)).

*Reply to Response.* <u>Generally, a reply to a response is not permitted</u> unless the Judge directs otherwise (*see* 13 CFR §134.206(e))[3, 4]. **On motion (*see* 13 CFR §134.211),** and under terms needed to avoid prejudice to any non-moving party, **the Judge may permit the filing and service of a supplemental pleading** after review of SBA's response and/or the administrative

---

[3] A reply to a response is not permitted unless the Judge, upon motion or on his or her own initiative, orders a reply to be filed and served. A party moving for leave to reply should file and serve the proposed reply with its motion (13 CFR §134.206(e)).

[4] In addition to the provisions of 13 CFR Part 134, Subpart B specifically referenced in 13 CFR, Part 134, Subpart L, the following regulations from Subpart B also apply to Subpart L: 13 CFR §§134.207 (Amendments and Supplemental Pleadings); 134.208 (Representation In Cases Before OHA); 134.209 (Requirements Of Signature); 134.211 (Motions); 134.212 (Summary Judgment); 134.217 (Settlement); 134.218 (Judges); 134.219 (Sanctions); 134.220 (Prohibition On Ex Parte Communications) (13 CFR §1201(h)).

- 2 -

JA1238

Docket No. PPP-5445887202

record.  **The supplemental pleading must be filed and served with the motion** <u>utilizing the</u> <u>OHA Case Portal</u> (13 CFR §134.1208(e)).

## AMENDMENTS AND SUPPLEMENTAL PLEADINGS

*Amendments.*  Upon motion (*see* 13 CFR §134.211), and under terms needed to avoid prejudice to any non-moving party, the Judge may permit the filing and service of amendments to pleadings.  **An amendment will not be permitted if it would cause unreasonable delay in the determination of the matter**.  The proposed amendment must be filed and served with the motion.  The Judge, on his or her own initiative, may order a party to file and serve an amendment to a pleading (13 CFR §134.207(a)).

*Supplemental Pleadings.*  Upon motion (*see* 13 CFR §134.211), and under terms needed to avoid prejudice to any non-moving party, **the Judge may permit the filing and service of a supplemental pleading setting forth relevant transactions or occurrences that have taken place since the filing of the original pleading.**  <u>The proposed supplemental pleading must be</u> <u>filed and served with the motion</u>.  The Judge, on his or her own initiative, may order a party to file and serve a supplemental pleading (13 CFR §134.207(b)).

*8(a) Appeals.*  In 8(a) programs appeals, amendments to pleadings and supplemental pleadings will be permitted by the Judge only on a showing of good cause (13 CFR §134.207(c))[5].

*Answer or Response.*  In an order permitting the filing and service of an amended or supplemental petition or order to show cause, **the Judge will establish the time for filing and serving an answer or response** (13 CFR §134.207(d)).

## MOTIONS

*Contents.*  **All motions must state the relief being requested**, as well as the grounds and any authority for that relief.  A motion must be filed and served [through the <u>OHA Case Portal</u>] (13 CFR §134.211(a))[6].

*Statement of Whether Motion is Opposed.*  **Except when filing a motion to dismiss or a motion for summary decision,** <u>the moving party must make reasonable efforts</u> before filing the motion <u>to contact any non-moving party</u> and determine whether it will oppose the motion and must state in the motion whether each non-moving party will oppose the motion, the moving party must describe in the motion the efforts made to contact the non-moving party (13 CFR §134.211(b)).

*Response.*  All non-moving parties must file and serve a response to the motion or be deemed to have consented to the relief sought.  <u>The response is due no later than fifteen (15)</u> <u>days after the motion is served</u>, unless the Judge sets a different deadline.  On motion, or on his or her own initiative, the Judge may permit a reply to a response on the motion (13 CFR §134.211(c)).

---

[5] The Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136) authorizes SBA to establish PPP loans as <u>7(a)</u> loans under Section 7(a)(36) of the Small Business Act.

[6] *See* 13 CFR §134.1208(e)

- 3 -

JA1239

Docket No. PPP-5445887202

*Service of Orders.* OHA will serve upon all parties any written order issued in response to a motion (13 CFR §134.211(d)).

*Motion to Dismiss.* [The] respondent [(SBA)] may file a motion to dismiss any time before a decision is issued. If an answer or response to the appeal petition has not yet been filed, the motion to dismiss stays SBA's time to answer or respond (13 CFR §134.211(e))[7].

*Motion for an Extension of Time.* Except for good cause shown, a motion for an extension of time must be filed at least two (2) business days before the original deadline (13 CFR §134.211(f)).

## EVIDENCE BEYOND THE RECORD, DISCOVERY, AND ORAL HEARINGS

Generally, **the Judge may not admit evidence beyond the administrative record** (13 CFR §134.1209(a)).

**Neither discovery nor oral hearings will be permitted** in appeals from final SBA loan review decisions (13 CFR §134.2109(b)).

**All appeals will be decided solely on a review of** the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection(s) to the administrative record (13 CFR §134.1209(c)).

## STANDARD OF REVIEW

**The standard of review is** whether the final SBA loan review decision was based on **clear error of fact or law.** The <u>appellant has the burden of proof</u> (13 CFR §134.1210).

## DECISION ON APPEAL

**The Judge will issue his or her decision within 45 calendar days after the close of the record, as practicable.** The decision will contain findings of fact (FOFs) and conclusions of law, the reasons for such FOFs and conclusions, and any relief ordered. The decision will be served on the appellant and SBA utilizing the <u>OHA Case Portal</u> (13 CFR §134.1211(a)).

## PPP LOAN DEFERMENT

**A timely filed appeal by a PPP bower of a final SBA loan review decision extends the deferment period of the PPP loan** until a final decision is issued under 13 CFR §134.1211 (13 CFR §1202(d)). **An appellant must** <u>provide their lender a copy of the timely filed appeal</u> **to extend the deferment period** of the PPP loan until a final decision is issued under 13 CFR §134.1211 (13 CFR §1202(b)).

---

[7] For PPP loan appeals, SBA is the only respondent (i.e. the only party that can respond to the appellant's appeal petition) (*see* 13 CFR §134.1208(a)).

- 4 -

JA1240

Docket No. PPP-5445887202

## FILING AND SERVICE INSTRUCTIONS

The filing and serving of any pleading or other submission must be done through the <u>OHA Case Portal</u> at <u>https://appeals.sba.gov</u> (13 CFR §1202).  **A filing received by OHA after 5:00 PM, Eastern Standard Time (EST) is considered filed the next business day** (13 CFR §134.204(b)(2)).

## ORDER

THE FOLLOWING IS ORDERED:

1.  **SBA** shall file the **administrative record** with OHA, <u>using the OHA Case Portal</u>, **no later than <u>January 17, 2023</u>**.

2.  **Appellant** shall file with OHA and serve on SBA **any objection(s) to the administrative record**, <u>using the OHA Case Portal</u>, **no later than <u>January 26, 2023</u>**.

3.  SBA may but is not required to file a response to this appeal.  **If SBA elects to file a response in this appeal,** the response must be filed, <u>using the OHA Case Portal</u>, **no later than <u>February 10, 2023</u>**.

4.  **The record shall close <u>February 10, 2023</u>.**


Digitally signed by
Joseph K. Essmyer Jr -S

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

- 5 -

JA1241

United States Small Business Administration
Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**PILLAR INCOME ASSET
MANAGEMENT INC.**

**APPELLANT**

Appealed from:

SBA PPP Loan Number 5445887202

Issued: November 2, 2023

Docket No. PPP-5445887202

DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

PROCEDURAL HISTORY

**SBA PPP Loan Number:** 5445887202

**Approved Loan Amount:** $1,891,160.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 627-629)[1].

SBA issued a final loan review decision denying the application after determining Appellant is a passive real estate entity that holds itself out to the public as a multifamily and commercial real estate developer (AR, Pages 17-18).

Appellant filed an appeal petition.

The **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting deadlines for the administrative record, Appellant objections to the administrative record, SBA appeal response, and record closing.

SBA filed the administrative record.

Appellant did not file objections.

SBA did not file a response.

The record closed **February 10, 2023**.

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision are contained in the case record maintained in the OHA <u>Case Portal</u>.

Docket No. PPP-5445887202

### ISSUE(S)

Is the final SBA loan review decision based on clear error of fact or law?

### APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[2], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #4 (*Federal Register*, Vol. 85, No. 82, Pages 23450-23452) (effective April 28, 2020), and IFR #28 (*Federal Register*, Vol. 86, No. 23, Pages 8283-8299) (effective February 3, 2021)[3] contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) and *Paycheck Protection Program Loans Frequently Asked Questions (FAQs)* (PPP-FAQs) (effective April 8, 2020)[4] contain applicable policy and guidance.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36))**.

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m)**[5, 6, 7, 8].

It is the declared policy of Congress that the Federal Government, through the Administrator of SBA, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

---

[2] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001 *et seq.***

[3] **IFR #28 applies to PPP loan forgiveness applications** submitted after enactment of the Economic Aid Act (December 27, 2020) (*see* Footnotes 5-8).

[4] **This guidance is available from SBA's website** at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[5] The CARES Act initially authorized lending under the PPP for **February 15, 2020 – June 30, 2020** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted March 27, 2020).

[6] The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the **Economic Aid Act**) (P. L. 116-260) reauthorized lending under the PPP (15 USC §636(a)(36) through **March 31, 2021** (P. L. 116-260, Section 323) (enacted December 27, 2020).

[7] The Economic Aid Act also authorizes Second Draw PPP loans under 15 USC §636(a)(37) (P. L. 116-260, Section 311).

[8] The CARES Act was amended to authorize lending for First Draw and Second Draw PPP loans for **February 15, 2020 – June 30, 2021** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted December 10, 2021)).

- 2 -

JA1243

Docket No. PPP-5445887202

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

Increased eligibility for certain small business and organizations –

    (i)    In general – During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in 15 USC §657(b)(2)(C), shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than greater of –

        (I)    500 employees; or

        (II)    if applicable, the size standard in number of employees established by SBA for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal

- 3 -

JA1244

Docket No. PPP-5445887202

business concern operates (15 USC §636(a)(36)(D)(i)(I)-(II)).

**Payroll costs** –

**(I)    means-**

(aa) the sum of payments of any compensation with respect to employees that is a-

(AA) salary, wage, commission, or similar compensation;

(BB) payment of cash tip or equivalent;

(CC) payment for vacation, parental, family, medical, or sick leave;

(DD) allowance for dismissal or separation;

(EE) payment required for the provisions of group health care or group life, disability, vision, or dental benefits, including premiums;

(FF) payment of any retirements benefits;

(GG) payment of State or local tax assessed on the compensation of employees;

and

(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make payments is incurred; and

**(II)    shall not include—**

(aa) the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which compensation is paid or the obligation to pay the compensation is incurred;

(bb) Federal employment taxes imposed or withheld under Title 26 USC Chapters 21, 22, or 24 during the applicable period;

(cc) any compensation to an employee whose principal place of residence is outside of the United States;

(dd) qualified sick leave wages for which credit is allowed under Section 7001 of the Families First Coronavirus Response Act (Public Law 116-127);

(ee) qualified family leave wages for which a credit is allowed under Section 7003 of the Families First Coronavirus Response Act (Public Law 116-127) (15 USC §636(a)(36)(A)(viii).

**Maximum loan amount.**—Except as provided in subparagraph (V), during the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of—

(i)

(I) the sum of—

(aa) the product obtained by multiplying—

(AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is

- 4 -

JA1245

Docket No. PPP-5445887202

made, except that an applicant that is a <u>seasonal employer</u> shall use the average total monthly payments for payroll for any 12-week period selected by the <u>seasonal employer</u> between February 15, 2019, and February 15, 2020; by

**(BB)** 2.5; and

**(bb)** the outstanding amount of a loan [i.e., **Economic Injury Disaster Loan (EIDL)**] under 15 USC §636(b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which <u>covered loans </u>are made available to be refinanced under the <u>covered loan;</u> or

**(II)** if requested by an otherwise eligible recipient that was not in business during the period beginning on February 15, 2019 and ending on June 30, 2019, the sum of—

**(aa)** the product obtained by multiplying—

**(AA)** the average total monthly payments by the applicant for <u>payroll costs</u> incurred during the period beginning on January 1, 2020 and ending on February 29, 2020; by

**(BB)** 2.5; and

**(bb)** the outstanding amount of a loan [[i.e., EIDL)] under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which <u>covered loans </u>are made available to be refinanced under the <u>covered loan;</u> or

**(ii)** $10,000,000 (15 USC §636(a)(36)(E)(i)-(ii)).

Allowable uses of covered loans –

**(i)**    In general – during the covered period, an eligible recipient may, in addition to the allowable uses of loan made under the PPP, use the proceeds of the covered loan for-

**(I)**    payroll costs;

**(II)**    costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

**(III)**    employee salaries, commission, or similar compensations;

**(IV)**    payments of interest of any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

**(V)**    rent (including rent under a lease agreement);

**(VI)**    utilities;

**(VII)**    interest on any other debt obligations that were incurred before the covered period;

**(VIII)**    covered operations expenditures;

**(IX)**    covered property damage costs;

**(X)**    covered supplier costs;

**(XI)**    covered worker protection expenditures (15 USC §636(a)(36)(F)(i)(I)-(XI)).

**For loan forgiveness**, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

- 5 -

JA1246

Docket No. PPP-5445887202

**For loan forgiveness,** the term **covered period** means the period –

(A) beginning on the date of the origination of a covered loan; and
(B) ending on a date selected by the eligible recipient of the covered loan that occurs during
the period –
  (i)    beginning on the date that is 8-weeks after such date of origination; and
  (ii)   ending on the date that is 24-weeks after such date of origination (15 USC
         §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC
§636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the
sum of the following costs and payments made during the covered period:

(1) Payroll costs.
(2) Any payment of interest on any covered mortgage obligation.
(3) Any payment on any covered rent obligation.
(4) Any covered utility payment.
(5) Any covered operations expenditure.
(6) Any covered property damage cost.
(7) Any covered supplier cost.
(8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

**Hold Harmless**

**(1) Definition**

The term initial or second draw PPP loan means a **covered loan** or loan under 15 USC §636(a),
paragraph 37 (15 USC §636m(h)(1)).

**(2) Reliance**

A lender may rely on any certification or documentation submitted by an applicant for an initial
or second draw PPP loan or an eligible recipient or eligible entity receiving initial or second
draw PPP loan that—

(A) is submitted pursuant to all applicable statutory requirements, regulations, and guidance
    related to initial or second draw PPP loan, including under 15 USC §636(a), paragraphs
    36 or 37, and 15 USC §636m; and
(B) attests that the applicant, eligible recipient, or eligible entity, as applicable, has accurately
    provided the certification or documentation to the lender in accordance with statutory
    requirements, regulations, and guidance (15 USC §636m(h)(2)(A)-(B)).

**(3) No Enforcement Action**

With respect to a lender that relies on a certification or documentation related to an initial or
second draw PPP loan, an enforcement action may not be taken against the lender, and the lender

- 6 -

JA1247

Docket No. PPP-5445887202

shall not be subject to any penalties relating to loan origination or forgiveness of the initial or second draw PPP loan, if—

(A) the lender acts in good faith relating to loan origination or forgiveness of the initial or second draw PPP loan based on that reliance; and

(B) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the initial or second draw PPP loan (15 USC §636m(h)(3)(A)-(B)).

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[9] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

**Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110** and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

Under the PPP, the maximum loan amount is the lesser of $10 million or an amount that you will calculate using a payroll based formula specified in the CARES Act (IFR #1, 85 Fed. Reg. Page 20812).

The following methodology, which is one of the methodologies contained in the CARES Act, will be most useful to many applicants;

(i)  **Step 1:** Aggregate payroll costs from the last twelve (12) months for employees whose principal place of residence is in the United States.

(ii)  **Step 2:** Subtract any compensation paid to an employee in excess of an annual salary of $100,000 and/or any amounts paid to an independent contractor or sole proprietor in excess of $100,000 per year.

(iii)  **Step 3:** Calculate average monthly payroll costs (divide the amount from Step 2 by 12).

(iv)  **Step 4:** Multiply the average monthly payroll costs from Step 3 by 2.5.

---

[9] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

- 7 -

JA1248

Docket No. PPP-5445887202

(v)    **Step 5:** Add the outstanding amount of an **Economic Injury Disaster Loan (EIDL)** made between January 31, 2020, and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan (because it does not have to be repaid) (IFR #1, 85 Fed. Reg. Page 20812).

**Payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage,** including insurance premiums, and retirement; **payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #1, 85 Fed. Reg. Page 20813).

The **CARES Act expressly excludes the following from payroll costs:**

(i)    Any compensation of an employee whose principal place of residence is outside the United States;

(ii)    The compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary;

(iii)    Federal employment taxes imposed or withheld between February 15, 2020, and June 30, 2020;

(iv)    Qualified sick and family wages for which credit is allowed under Sections 7001 and 7003 of the Families First Coronavirus Response Act (Public Law 116-127) (IFR #1, 85 Fed. Reg. Page 20813).

The proceeds of a PPP loan are to be used for:

(i)    **Payroll costs** (as defined in the CARES Act and IFR #1);

(ii)    **Costs related to the continuation of group health care benefits** during periods of paid sick, medical, or family leave, and insurance premiums;

(iii)    **Mortgage interest payments** (but not mortgage prepayments or principal payments);

(iv)    **Rent payments;**

(v)    **Utility payments;**

(vi)    **Interest payment on any other debt obligations that were incurred before February 15, 2020;** and/or

(vii)    **Refinancing an SBA EIDL loan made between January 31, 2020, and April 3, 2020.** If your EIDL loan was not sued for payroll costs, it does not affect your PPP eligibility for a PPP loan. If your EIDL loan was used for payroll costs, your PPP loan must be used to refinance your EIDL loan. Proceeds from any advance up to $10,000 on the EIDL loan will be deducted from the loan forgiveness amount on the PPP loan (IFR #1, 85 Fed. Reg. Page 20814).

To apply for a PPP loan, the applicant must submit **SBA Form 2483** (Paycheck Protection Program Application Form) and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

- 8 -

JA1249

Docket No. PPP-5445887202

**The lender must submit SBA Form 2484** (Paycheck Protection Program Lender's Application Form for 7(a) Loan Guaranty) electronically in accordance with program requirements and maintain the forms and supporting documents in its files (IFR #1, 85 Fed. Reg. Page 20814).

**The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs.** The Administrator will hold harmless any lender that relies on such borrower documents and attestation from the borrower (IFR #1, 85 Fed. Reg. Page 20815).

**SBA may provide further guidance for the PPP,** if needed, through SBA notices and a program guide which will be posted on SBA's website at www.sba.gov (IFR #1, 85 Fed. Reg. Page 20816).

**Borrowers who use a payroll provider or Professional Employer Organization (PEO)**[10] may uses statements from the payroll provider or PEO to document payroll costs. Employees of the eligible borrower will not be considered employees of the payroll provider or PEO (PPP-FAQs, Question 10).

**Borrowers who filed a PPP loan application based on** the version of the PPP Interim Final Rule published on April 2, 2020 [**IFR #1**], may rely on the laws, rules, and guidance available at the time of application (PPP-FAQs, Question 17).

**Financial businesses** primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

**SBA cannot guarantee a loan that provides funds to** businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

i. Banks;
ii. Life Insurance Companies (but not independent agents);
iii. Finance Companies;
iv. Factoring Companies;
v. Investment Companies;
vi. Bail Bond Companies;
vii. Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

---

[10] **A PEO** is a third-party firm that operates under a co-employment agreement to provide a company's payroll administration and human resources (HR) services. The PEO partner technically becomes the employer but with the company still controlling hiring and firing of employees and daily operations, and the PEO paying the company's employees and providing benefits (Source: Business News Daily at https://www.businessnewsdaily.com/16180-peo-vs-payroll.html).

- 9 -

JA1250

Docket No. PPP-5445887202

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

i.  A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

ii.  A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.

iii.  A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

iv.  A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.

v.  A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**Passive businesses** owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under 13 CFR §120.111) are not eligible for 7(a) business loans (13 CFR §120.110(c)).

An **Eligible Passive Company (EPC)** must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more **Operating Companies (OCs)** for conducting OC business, or to finance a change of ownership between the existing owners of the EPC (13 CFR §120.111).

**(a) Conditions that apply to all legal forms:**

(1) The OC must be an eligible small business, and the proposed use of the proceeds must be an eligible use if the OC were obtaining the financing directly;

(2) The EPC (with the exception of a trust) and the OC must be small under the appropriate size standards;

(3) The lease between the EPC and the OC must be in writing and must be subordinate to SBA's mortgage, trust deed lien, or security interest on the property. The EPC (as landlord) must furnish as collateral for the loan an assignment of all rents paid under the lease. The rent or lease payments cannot exceed the amount necessary to make the loan payment to the lender, and an additional amount to cover the EPC's direct expenses of holding the property, such as maintenance, insurance, and property taxes;

(4) The lease between the EPC and the OC, including options to renew exercisable solely by the OC, must have a remaining term at least equal to the term of the loan;

- 10 -

JA1251

Docket No. PPP-5445887202

(5) The OC must be a guarantor or co-borrower with the EPC. In a 7(a) loan that includes working capital and/or the purchase of other assets, including intangible assets, for the OC's use, the OC must be a co-borrower.

(6) Each holder of an ownership interest constituting at least 20 percent of either the EPC or the OC must guarantee the loan. The trustee shall execute the guaranty on behalf of any trust. When deemed necessary for credit or other reasons, SBA or, for a loan processed under an SBA Lender's delegated authority, the SBA Lender may require other appropriate individuals or entities to provide full or limited guarantees of the loan without regard to the percentage of their ownership interest, if any (13 CFR §120.111(a)(1)-(6)).

(b) **Additional conditions that apply to trusts.** The eligibility status of the trustor will determine trust eligibility. All donors to the trust will be deemed to have trustor status for eligibility purposes. A trust qualifying as an EPC may engage in other activities as authorized by its trust agreement. The trustee must warrant and certify that the trust will not be revoked or substantially amended for the term of the loan without the consent of SBA. The trustor must guarantee the loan. For purposes of this section, the trustee shall certify to SBA that:

(1) The trustee has authority to act;

(2) The trust has the authority to borrow funds, pledge trust assets, and lease the property to the OC;

(3) The trustee has provided accurate, pertinent language from the trust agreement confirming the above; and

(4) The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors (13 CFR §120.111(b)(1)-(4)).

## Passive Businesses (13 CFR §120.110(c))

Passive businesses that are not eligible for 7(a) business loans include:

(a) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Companies under 13 CFR §120.111).

(b) Businesses primarily engaged in subdividing real property into lots and developing it for resale on its own account are not eligible.

(c) Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public.

- 11 -

JA1252

Docket No. PPP-5445887202

(d) Businesses that lease land for the installation of a cell phone tower, solar panels, billboards, or wind turbine are not eligible. However, the business operating the cell phone tower, solar panel, billboard, or wind turbine is eligible.

(e) Businesses that have entered into a management agreement with a third party that gives the management company sole discretion to manage the operations of the business, including control over the employees, finances, and bank accounts of the business, with no involvement by the owner(s) of the Applicant business.

(f) Apartment buildings and mobile home parks are not eligible.

(g) Residential facilities that do not provide healthcare and/or medical services.

(h) The limited circumstances under which certain businesses engaged in renting or leasing may be eligible are:

  i. Hotels, motels, recreational vehicle parks, marinas, campgrounds, or similar type businesses are eligible if more than 50 percent of the business's revenue for the prior year is derived from transients who stay for 30 days or less at a time and business complies with all zoning and other legal requirements. If the Applicant is a start-up, the Applicant's projections must show that more than 50 percent of the business's revenue will be derived from transients who stay for 30 days or less at a time.

  ii. Businesses that are licensed as nursing homes or assisted living facilities (ALFs) and provide healthcare and/or medical services.

  iii. Businesses that are engaged in leasing equipment, household goods, or other items.

  iv. Businesses such as barber shops, hair salons, nail salons, and similar types of personal services are eligible, regardless of whether they have employees or contract with individuals to provide services.

  i. An ineligible passive business cannot obtain an SBA loan (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(a)-(i), Pages 105-106).

**Eligible Passive Company (EPC) Rule (13 CFR §120.11)**

The EPC Rule is an exception to SBA regulations that prohibit financing assets which are held for their passive income (13 CFR 120.130(d)). (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122).

**Because the EPC Rule is an exception**, the EPC and the OC must comply with all the conditions in 13 CFR §120.111 and **each condition is interpreted strictly** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122).

**If all conditions in 13 CFR §120.111 are not complied with,** in the event of default, SBA may deny liability on the guaranty (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122).

- 12 -

JA1253

Docket No. PPP-5445887202

**SBA will not authorize** nor may a Borrower use loan proceeds for investments in real or personal property acquired and held primarily for sale, lease, or investment (13 CFR §120.130(d)).

**The purpose of IFR #4** is to supplement previous regulations and guidance issued and to allow for the immediate implementation of the PPP (IFR #4, 85 Fed. Reg. Page 23450).

IFR #4 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #4, 85 Fed. Reg. Page 23450).

**Limited Safe Harbor.** Any borrower that applied for a PPP loan prior to the issuance of this regulation [on April 28, 2020] and repays the loan in full by May 7, 2020, will be deemed by SBA to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

The Administrator determined safe harbor is necessary and appropriate to ensure borrowers promptly repay PPP loan funds the borrower obtained based on a misunderstanding or misapplication of the required certification standard (IFR #4, 85 Fed. Reg. Pages 23451-23452).

**The purpose of IFR #28** is to implement the **Economic Aid Act** requirements for PPP loan forgiveness (IFR #28, 86 Fed. Reg., Pages 8283-8284).

For forgiveness, eligible **Payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage,** including insurance premiums, and retirement; **payment of state and local taxes assessed on compensation of employees**; and **for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(1), Page 8286).

For forgiveness, eligible **Non-payroll costs** consist of:

(2) Any payment of interest on any covered mortgage obligation.
(3) Any payment on any covered rent obligation.
(4) Any covered utility payment.
(5) Any covered operations expenditure.
(6) Any covered property damage cost.
(7) Any covered supplier cost.
(8) Any covered worker protection expenditure (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(2)-(8), Page 8286).

**Eligible nonpayroll costs cannot exceed 40 percent** of the loan forgiveness (IFR #28, 86 Fed. Reg., Pt. IV, Para. 1(a)(8)(C), Page 8287).

**The loan forgiveness form details the documentation** each borrower must submit with its Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S as applicable, or lender equivalent (IFR #28, 86 Fed. Reg., Pt. IV, Para. 6, Page 8293).

- 13 -

JA1254

Docket No. PPP-5445887202

**An enforcement action cannot be taken against a lender** that relies on a borrower certification or documentation if:

(i) The lender acted in good faith relating to loan origination or forgiveness of the PPP loan based on that reliance; and

(ii) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the PPP loan (IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294).

SBA may review any PPP loan the Administrator deems appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), Page 8294).

*Borrower Eligibility:* SBA may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Act, rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Amounts and Use of Proceeds:* SBA may review whether the borrower calculated the loan amount correctly and used loan proceeds for the allowable uses specified in the CARES Act (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Forgiveness Amounts:* SBA may review whether a borrower is entitled to the loan forgiveness amount claimed on the borrower's PPP loan forgives application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

During its review of a PPP loan, **SBA may request additional information from the borrower** by requiring the lender to contact the borrower in writing to request additional information. SBA may also request information directly from the borrower (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(d), Page 8295).

**Failure to respond to SBA's inquiry** may result in a determination the borrower was ineligible for a PPP loan or ineligible to receive the loan amount or loan forgiveness amount claimed by the borrower (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(d), Page 8295).

An SBA determination a borrower is ineligible for a First Draw PPP loan may also result in an SBA determination the borrower is ineligible for any Second Draw PPP loan, and SBA may direct the lender to deny any loan forgiveness application submitted for the Second Draw PPP loan (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

If SBA determines the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

SBA may seek repayment of the outstanding PPP loan balance or pursue other available remedies (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

- 14 -

JA1255

Docket No. PPP-5445887202

A borrower may appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrow (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(f), Page 8295).

OHA is established in SBA –

(i)   to impartially decide matters related to program decisions of the Administrator; and,
(ii)  to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)). The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)). Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

(i)    a Hearing Officer may hear cases under section 554 of the APA;
(ii)   a Hearing Officer shall have the powers described in section 556(c) of the APA; and,
(iii)  the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[11] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

(1) administer oaths and affirmations;
(2) issue subpoenas authorized by law;
(3) rule on offers of proof and receive relevant evidence;
(4) take depositions or have depositions taken when the ends of justice would be served;
(5) regulate the course of the hearing;
(6) hold conferences for the settlement or simplification of the issues by consent of the parties or by use of alternative dispute resolution (ADR);
(7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;
(8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;

---

[11] **Section 556(b) of the APA** requires an **Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

- 15 -

JA1256

Docket No. PPP-5445887202

(9) dispose of procedural requests or similar matters;
(10) make or recommend decisions in accordance with section 557 of the APA; and
(11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

**The appellant has the burden of proof in an appeal** of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

- 16 -

JA1257

Docket No. PPP-5445887202

## <u>FINDINGS OF FACT AND ANALYSIS</u>

Based on the record, I make the following findings of fact (FOF):

1. A 2019 Federal tax return (Form 1120) for May Realty Holdings, Inc. (MRHI) indicates Appellant is a subsidiary corporation of MRHI, and that MRHI provides various real estate services and operates under business activities/NAICS code **531390** (AR, Pages 461-594)[12, 13, 14, 15, 16].

2. MRHI's 2019 Federal tax return lists a **total income of $151,690,586.00** (Form 1120, Line 11) consisting of **$22,501.500.00** gross profit (Form 1120, Line 3), **$39,813,817.00** interest (Form 1120, Line 5), **$43,310,252.00** gross rents (Form 1120, Line 6), **$5,532,159.00** gross royalties (Form 1120, Line7), **$10,610,194.00** capital gains (Form 1120, Line 8), and **$29,922,664** other income (Form 1120, Line 10; Form 1120, Statement 1) (AR, Page 461).

3. MRHI's 2019 Federal tax return lists **$14,824,541.00** in other income for Appellant consisting of **$9,215,936.00** management fees, **$855,101.00** other income, and **$4,753,504.00** reimbursements (Form 1120, Statement 1, Page 2) (AR, Page 545).

4. A 2020 pro forma (i.e., projected) Federal tax return (Form 1120) lists **$14,005,339.00** in other income (i.e., Statement 1 income) for Appellant consisting of **$9,524,392.00** management fees, **$270,577.00** other income, and **$4,210,370.00** reimbursements, and indicates Appellant provides investment services and operates under business activities/NAICS code **523900** (AR, Pages 74-95)[17].

5. On April 8, 2020, Appellant applied for a First Draw PPP loan (Form 2483) in the amount of **$1,891,160.50** (AR, Pages 625-626).

6. On April 28, 2020, the lender approved and disbursed Appellant's PPP loan for **$1,891,160.00** (AR, Pages 2, 20-22, 630).

7. On December 30, 2021, Appellant applied for loan forgiveness (Form 3508EZ) in the full amount of the PPP loan ($1,891,160.00) (AR, Pages 627-629).

---

[12] SBA uses the **North American Industry Classification System (NAICS)** to establish small business size standards (*see* 15 USC §632(a)(2)(A)-(B); 13 CFR §§121.101(a) and 102(a)).

[13] The **small business size standards by NAICS** used by SBA are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.20l.

[14] NAICS code **531390: Real estate asset management services (except property management)**

[15] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

[16] A searchable NAICS website is maintained by the U.S. Census Bureau at https://www.census.gov/naics/?99967.

[17] NAICS code **5239: Other financial investment activities (including portfolio management (523920) and investment advice (523930))**

- 17 -

JA1258

Docket No. PPP-5445887202

8. SBA selected Appellant's PPP loan for review (AR, Pages 616-624).

9. SBA denied PPP loan forgiveness after determining Appellant is a passive real estate entity that advertises itself as a developer of multifamily and commercial real estate (AR, Pages 17-18).

SBA carries out the policies of the Small Business Act (15 USC §633(a)).

The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)).

Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 USC §636(a)).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m).

The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)).

**Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

**The maximum PPP loan amount is** the lesser of $10 million or payroll costs calculated as follows: **Step 1:** Aggregate payroll costs from the last twelve (12) months for employees; **Step 2:** Subtract any compensation paid to an employee in excess of an annual salary of $100,000; **Step 3:** Calculate average monthly payroll costs (divide the amount from Step 2 by 12); **Step 4:** Multiply the average monthly payroll costs from Step 3 by 2.5; **Step 5:** Add the outstanding amount of an EIDL made between January 31, 2020, and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan (15 USC §636(a)(36)(E)(i)-(ii); IFR #1, 85 Fed. Reg. Page 20812).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812).

**To apply for a PPP loan,** the applicant must submit SBA Form 2483 and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

**Borrowers may use payroll provider and PEO statements** to document payroll costs (PPP-FAQs, Question 10).

- 18 -

JA1259

Docket No. PPP-5445887202

**Borrowers may rely on IRF #1** and the laws, rules, and guidance available at the time of their PPP loan application (PPP-FAQs, Question 17).

**Financial businesses** primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for 7(a) business loans (13 CFR §120.110(c)).

SBA cannot guarantee a loan to an otherwise eligible business engaged in financing or factoring, including **investment companies** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(v), Page 104).

**Passive businesses** owned by developers and landlords, except EPCs, are not eligible for 7(a) business loans (13 CFR §120.110(c)).

**Passive businesses** that are not eligible for 7(a) business loans **include:**

(a) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds.

(c) Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(a) and (c), Page 105).

**An ineligible passive business cannot obtain an SBA loan** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(i), Page 106).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)).

For loan forgiveness, **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

**Lenders may rely on any certification or documentation submitted by an applicant** and no enforcement action may be taken against a lender that acts in good faith in relying on the certification or documentation for loan origination or forgiveness (15 USC §636m(h)(1)-(3); IFR #1, 85 Fed. Reg. Page 20815; IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294).

**SBA may review** any PPP loan it deems appropriate, including borrower eligibility, loan amounts and use of proceeds, and loan forgiveness amount (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), 1(b), and 1(d), Pages 8294-8295).

**SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

Any borrower that applied for a PPP loan prior to IFR #4 and repays the loan in full by May 7, 2020, is be deemed to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

**The appellant has the burden of proof** in a PPP appeal (13 CFR §134.1210).

- 19 -

JA1260

Docket No. PPP-5445887202

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

**THE RECORD SHOWS** Appellant is subsidiary of MRHI, and that MRHI provides real estate asset management services. The record also shows Appellant generates other income for MRHI consisting of management fees, other income, and reimbursements. The record further shows Appellant received a First Draw PPP loan ($1,891,160.00) and applied for loan forgiveness. SBA selected Appellant's loan for review. SBA denied loan forgiveness after determining Appellant is a passive real estate entity that advertises itself to be a developer of multifamily and commercial real estate (FOF 1-9).

**IN ITS APPEAL PETITION,** Appellant argues its PPP loan should be forgiven for the following reasons:

- Appellant does not own, purchase, lease, or invest in real estate and is not a passive real estate entity.

- Appellant provides asset management services for a gross asset fee of 0.0625 percent.

- SBA erred by aggregating the real estate activities of businesses listed on Appellant's website to Appellant.

- Appellant has no managerial control over the businesses it services.

- All PP loan funds were used for eligible costs (Appeal Petition (AP), Pages 1-3).

I am not persuaded by Appellant's argument(s) for the following reasons:

**The CARES Act does not guarantee every business that meets SBA's size standards is eligible for a PPP loan.** The CARES Act (15 USC §636(a)(36)(D)(i)) (i.e., Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern...shall be eligible to receive a covered [PPP] loan" if it meets SBA size standards (*see* 15 USC §636(a)(36)(D)(i)(I)-(II)). Paragraph 36(D)(i), however, starts with two words, "In general—" that make clear the paragraph is a general eligibility requirement and not an absolute requirement that if met guarantees PPP loan eligibility for any business concern. A true and close reading of Paragraph 36(D)(i) reveals it as a general eligibility requirement allowing business concerns and other entities, most notably nonprofit organizations, not normally classified as small businesses to be considered PPP loan eligible if size standards are met. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e., paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single portion/paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. Such a reading of Paragraph 36(D)(i) also goes against accepted statutory construction practices[18], and does not provide a persuasive legal basis to make the extraordinary finding that any business concern

---

[18] **The United States Supreme Court has determined,** "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury,* 489 US 803, 809 (1989).

- 20 -

JA1261

Docket No. PPP-5445887202

meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[19, 20].

**The CARES Act does not authorize SBA to provide PPP loans to ineligible businesses.** With the CARES Act, Congress amended the Small Business Act to include PPP loans as part of the **7(a) business loan** program (P.L. 116-36, §1102; *see also* 15 USC §636(a)(36)). SBA carries out the policies of the Small Business Act (15 USC §633(a)); and, in carrying out these policies the Administrator may make rules and regulations (15 USC §634(b)(6))). Except as otherwise provided by the CARES Act in 15 USC §636(a)(36), PPP loans are guaranteed under the same terms and conditions as other 7(a) business loans (15 USC §636(a)(36)(B)). SBA regulations establish the types of businesses that are ineligible for 7(a) business loans (13 CFR §120.110(a)-(s))[21]. Financial businesses and passive real estate entities have been listed as ineligible businesses since **March 1, 1996**[22]. The CARES Act does not change SBA's barring of ineligible businesses, including financial and passive businesses, from receiving 7(a) business loans. PPP loans are 7(a) business loans (15 USC §636(a);15 USC §636(a)(36)), and regardless of whether a borrower applied for a PPP loan before or after the April 15, 2020 effective date of

---

[19] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, **it is reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements** of Section 1102 of the CARES Act (15 USC §636(a)(36)) to receive a PPP loan.

[20] I note in vacating the Bankruptcy Court's injunction against SBA, the Eleventh Circuit (11th Circuit) thoroughly examined this provision of the CARES Act (15 USC §636(a)(36)(D)(i)):

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. See 15 USC §636(a)(36)(D)(i); 13 CFR §121.201. And in doing so the Act provides that "any business concern...shall be eligible" for a PPP loan if it employs not more than the greater of...500 employees; or if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 USC §636(a)(36)(D)(i)-(ii). Of course, "any" typically has an expansive meaning, see <u>Jones v. Waffle House, Inc., 866 F.3d 1257, 1267 (11th Cir. 2017),</u> and "shall" is an imperative, see <u>Kingdomware, 136 S. Ct. at 1977</u>. But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. See 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. <u>Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009)</u>. And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria (*In Re: Gateway Radiology Consultants*, 983 F.3d (11th Cir.) (2020) (*see also* SAR, Pages 11-14).

[21] *Federal Register*, Vol. 61, No. 21, Pages 3326-3266 (effective **March 1, 1996**).

[22] *Federal Register*, Vol. 61, No. 21, Page 3339.

JA1262

Docket No. PPP-5445887202

IFR #1, financial businesses and passive entities remain ineligible for any type of 7(a) business loan, including PPP loans.

**IFR #1 applies to PPP loan applications.** IFR #1 has both an *effective date* and an *applicability date*. The effective date, April 15, 2020, is the date IFR #1 was published in the *Federal Register*. The applicability date indicates IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted (IFR #1, 85 Fed. Reg. Page 20812). IFR #1 is effective without advance notice and is issued for the immediate implementation of the PPP (IFR #1, 85 Fed. Reg. Page 20812). Despite its immediate effective date, SBA did provide advance notice of IFR #1 by publishing the rule on the U.S. Department of Treasury (USDT's) website on April 2, 2020. IFR #1's applicability date makes clear the rule will apply to all loan applications received under the PPP through June 30, 2020. The record shows Appellant's PPP loan application was submitted on April 8, 2020. The record also shows the loan was approved and disbursed on April 28, 2020 (AR, Pages 2, 20-22, 625-626, 630; FOF 3-4). Appellant's PPP loan application was submitted and approved when IFR #1 was applicable to all applications. IFR #1 applies to Appellant's PPP loan application. Under IFR #1, financial businesses and passive entities are not eligible for PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(c); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Paras. A(2)(a)(iii-iv) and A(3)(a)-(g) and (i), Pages 104-106)[23, 24, 25, 26].

**Appellant is an ineligible business.** Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(a) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt financial or passive businesses from the terms of other 7(a) loans and under SBA regulations, policy, and guidance in effect when Appellant submitted its PPP loan application, financial businesses and passive entities involved in the investment, development, or leasing of residential and/or commercial real estate are ineligible to receive small business loans (i.e., 7(a) loans), **including PPP loans** (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(c); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Paras. A(2)(a)(iii-iv) and A(3)(a)-(g) and (i), Pages 104-106). The record shows Appellant holds itself out to the public to be a real estate developer with the following description of its business activities:

---

[23] IFR #1 was published/released on the USDT's PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[24] SBA launched the PPP on April 3, 2020, a day after giving advance notice of IFR #1 (Source: SBA.gov at https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches).

[25] The CARES Act makes clear the PPP will be administered under regulations issued by the SBA Administrator through emergency rulemaking authority (15 USC §9012; 15 USC §636(m)(k)).

[26] The record shows Appellant's representative signed the SBA promissory note on **April 28, 2020** (AR, Pages 20-22; FOF 6). The representative had **26 days** after IFR #1 was released on the USDT's webpage and **13 days** after IFR #1 was published in the *Federal Register* to review the rule before accepting the PPP loan (Source: Time and Date at www.timeanddate.com).

- 22 -

JA1263

Docket No. PPP-5445887202

[Appellant] is a national real estate company that specializes in the acquisition, development, and management of multifamily and commercial real estate in the Southern United States.  [Appellant] also develops raw land for single family home communities and various commercial applications.  Through its affiliated client companies, [Appellant] operates a portfolio of over 115 properties, which include over 18,000 units of multifamily properties, over 1,800,000 square feet of commercial properties and over 4,500 acres of raw land holdings. [Appellant] also provides financing and capital management services for its affiliate companies, including HUD, Fannie Mae, FreddieMac, CMBS Loans, and non-convertible bonds (AR, Pages 623, 635; *see also* https://pillarincome.com/).

**Through its own words,** Appellant acknowledges it is a passive real estate entity specializing in the development of multifamily and commercial real estate[27, 28, 29, 30, 31, 32].  **Through its own words,** Appellant also acknowledges it provides investment and finance services.  The record also shows Appellant is primarily engaged in financial and investment activities.  In its projected tax return, Appellant lists its primary business activity as **investment services (523900)** (AR, Pages 461-594; FOF 1).  Security and Exchange Commission (SEC) filings also indicate Appellant provides financial and investment services:

[Appellant's] duties include, but are not limited to, locating, evaluating, and recommending real estate and real estate-related investment opportunities.  [Appellant] also arranges our debt and equity financing with third party lenders and investors.  [Appellant] is compensated under an Advisory Agreement…we compete with related parties of [Appellant] having similar investment objectives

---

[27] **Appellant's argument SBA erroneously applied its "aggregation rules"** to find Appellant engages in the real estate development activities of the company affiliates listed on its website (American Realty Investors (ARI), Income Opportunity Realty Investors (IORI), Regis Property Management, LLC (RML), Sothern Properties Capital (SPC), Transcontinental Realty Investors (TRI)) **is not persuasive.** The record shows **SBA did not find Appellant exceeded the size limit(s) of its affiliation rules and did not deny PPP loan forgiveness based on its affiliation rules** (AR, Pages 17-18, 634-638).  Further, **the affiliation test relied on by Appellant,** *affiliation based on totality of the circumstances* (13 CFR §121.103(a)(5); *see also* 13 CFR §121.301(f)(6)), **does not apply to PPP loans.**

[28] **ARI, IORI, and TRI are MRHI subsidiaries** listed in MRHI's 2019 Federal tax return (AR, Pages 461-594).

[29] **SBA has determined the four (4) tests for affiliation in 13 CFR §121.301(f)(1)-(4) apply to PPP loans:** (1) Affiliation based on ownership; (2) Affiliation arising under stock options, convertible securities, and agreements to merger; (3) Affiliation based on management; (4) Affiliation based on identity of interest (Source: SBA.gov, *Affiliation Rules for Paycheck Protection Program* @ https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program).

[30] **If SBA's affiliation rules did apply in this case, the record supports Appellant would be affiliated with MRHI based on ownership,** as MRHI is a real estate investment corporation that owns 100 percent of Appellant's voting stock (AR, Pages 82, 461-594).

[31] The record indicates SBA notified Appellant during its review that SBA's Higher Authority Team determined Appellant is a passive entity based in part on the business description contained on Appellant's website (AR, Pages 622-624).  The record also indicates this business description is a basis for SBA denying PPP loan forgiveness (AR, Pages 17-18, 634-638).  To date, Appellant has not provided an adequate explanation of its business description (*see* Footnote 27).  **To publicly advertise oneself as a real estate developer that provides finance and investment services but represent oneself to SBA as simply a real estate agent (531210) on the PPP loan forgiveness application (Form 3508EZ (AR, Page 627) is underlined disingenuous at best.**

[32] NAICS code **531210: Agents, real estate**

- 23 -

JA1264

Docket No. PPP-5445887202

related to the acquisition, development, disposition, leasing and financing or real estate and real estate-related investments (AP, SEC Filing, Pages 4, 18, 33, 61).

[Appellant] is compensated for advisory services (AP, SEC Filing, Page 47).

Notes receivable include amounts held by…[Appellant] (AP, SEC Filing, Page 47).

Interest expense on notes payable to [Appellant] was $1,621, $1,581 and $1,999 for the years ended December 31, 2021, 2020, and 2019, respectively (AP, SEC Filing, Page 47).

Related party receivables represent amounts outstanding from [Appellant] for loans and advances, net of unreimbursed fees, expenses and costs….(AP, SEC Filing, Page 47).

The Advisory Agreement provides for [Appellant] to be responsible for our day-to-day operations and to receive, as compensation for basic management and advisory services, a gross asset fee of 0.0625% per month (0.75% per annum) of the average of the gross asset value (total assets less allowance for amortization, depreciation or depletion and valuation reserves) (AP, SEC Filing, Page 62).

In addition to base compensation, [Appellant] receives the following forms of additional compensation:

(1) an annual net income fee equal to 7.5% of our net income as an incentive for successful investment and management of our assets (AP, SEC Filing, Page 62).

Appellant has the burden of proof in this appeal (13 CFR §134.1210). The record supports Appellant advertises itself as a passive real estate entity (i.e., real estate developer) and is primarily engaged in financial and investment activities when providing advisory services. The record also supports Appellant is an ineligible business that was ineligible to receive a First Draw PPP loan and is ineligible to receive PPP loan forgiveness[33, 34, 35, 36, 37].

---

[33] **The SEC filing is for TRI, an MRHI subsidiary** (AP, SEC Filing, Pages 1-71; *see also* Footnote 28).

[34] The record shows Appellant is engaged in financing activities by holding notes receivables and receiving interest on the notes (AP, SEC Filing, Page 47). These activities alone make Appellant an ineligible business, as **SBA cannot provide 7(a) business loans to "an otherwise eligible business engaged in financing or factoring"** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a), Page 104).

[35] **The gross asset fee (0.0625%) received by Appellant is an ongoing investment advisory fee** for the management of investment portfolios (SEC.gov@ https://www.sec.gov/investor/alerts/ib_fees_expenses.pdf).

[36] Appellant's management and advisory services are the same type of investment services offered by larger better known firms/businesses, such as Merrill Lynch and Morgan Stanley (*see* Forbes@ https://www.forbes.com/lists/top-wealth-management-teams-high-net-worth/?sh=168addb023e1).

[37] **The record shows Appellant considers its primary business activity to be investment services (523900)** (AR, Pages 74-95; FOF 4). Like the business activity described on its website, this business activity is inconsistent with the business activity (real estate agent (**531210**)) reported on Appellant's PPP loan forgiveness application (AR, Page 627; *see also* Footnotes 31-32).

- 24 -

JA1265

Docket No. PPP-5445887202

**Appellant had notice IFR #1 would apply to its PPP loan application.** IFR #1's applicability date makes clear it applies to all PPP loan applications received through June 30, 2020 (IFR #1, 85 Fed. Reg. Page 20812). SBA released IFR#1 to the public on April 2, 2020 (*see* Footnotes 23-25), and SBA guidance available to Appellant when it applied for a PPP loan makes clear IFR #1 applies to all PPP loan applications:

> **17. Question:** I filed or approved a loan application based on the version of the PPP Interim Final Rule published on **April 2, 2020**. Do I need to take any action based on the updated guidance in the FAQs?
>
> **Answer:** No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs (PPP-FAQs, Question 17 (April 8, 2020)).

This guidance clarifies **IFR #1** published on **April 2, 2020**, applies to all PPP loan applications. The guidance also informs borrowers they can revise unprocessed applications to correct the applications based on this guidance[38].

**Appellant's use of PPP loan funds does not make Appellant an eligible business.** Even if Appellant used its PPP loan for approved payroll and nonpayroll costs, this does not make Appellant an eligible business. Appellant is an ineligible business because its primarily business purpose is to engage in financial and investment activities involving multifamily and commercial real estate; and, neither the CARES Act nor the applicable regulations, policy, or guidance allows an ineligible business to receive a PPP loan simply because it may have properly spent PPP loan funds.

**Safe harbor was available to Appellant.** With IFR #4, SBA offered borrowers that applied for a PPP loan prior to April 28, 2020, and incorrectly certified their eligibility for the loan a **safe harbor though May 7, 2020, to repay the loan** (IFR #4, 85 Fed. Reg. Pages 23450- 23451). IFR #4 provided Appellant an additional nine (9) days to review IFRs #1 and 4 and take advantage of the safe harbor provisions. There is no evidence in the record Appellant sought to use IFR #4's safe harbor provisions to review its PPP loan application for compliance with SBA's regulations and guidance or to repay the loan during the safe harbor period[39, 40, 41].

---

[38] If Appellant chose to review this guidance when applying for a PPP loan, **Appellant knew or should have known IFR #1 applied to its loan application, including the provisions prohibiting ineligible businesses from receiving PPP loans.**

[39] Like IFR #1, IFR #4 has an applicability date that indicates **IFR #4 applies to all loan applications submitted under the PPP through June 30, 2020**, or until funds are exhausted (IFR #4, 85 Fed. Reg. Page 23450).

[40] SBA extended the repayment deadline to **May 14, 2020** (*see* IFR #9, 85 Fed. Reg., No. 97, Page 29846).

[41] SBA extended the repayment deadline a second time to **May 18, 2020** (*see* IFR #13, 85 Fed. Reg., No. 101, Page 31358), which gave Appellant an additional 20 days to review IFRs #1 and 4, as well as applicable SBA policy and guidance, and take advantage of SBA's safe harbor provisions.

- 25 -

JA1266

Docket No. PPP-5445887202

**The lender is not responsible for mistakes in Appellant's PPP loan application**. Under the CARES Act, IFR #1, and IFR #28, a lender may rely on the certifications and documents submitted by a borrower and no enforcement action can be taken against a lender that acts in good faith in relying on the certifications or documents (15 USC §636m(h)(1)-(3); IFR #1, 85 Fed. Reg. Page 20815; IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294). The record does not support, and Appellant has not demonstrated, its lender acted in bad faith in relying on the certifications and documents submitted by Appellant with its loan application or when approving Appellant's PPP loan. Any errors made by the lender in approving Appellant's PPP loan by relying on certifications and documentation submitted by Appellant does not provide a basis to grant Appellant relief and/or reverse SBA's final loan review decision[42, 43].

**OHA Judges must apply IFR #1 to PPP loan applications**. The CARES Act makes clear the PPP will be administered under regulations issued by the SBA (15 USC §9012; 15 USC §636m(k)). In administering the PPP, SBA issued IFR #1 and instructed IFR #1 applies to all PPP loan applications received by June 30, 2020. No statute or regulation governing the PPP loan appeals process gives an OHA Judge the authority to not apply IFR #1 to PPP loan applications[44]. As a United States Administrative Law Judge (ALJ) serving as an OHA Judge, I am required to apply IFR #1 to PPP loan applications. In applying IFR #1, I find Appellant is an ineligible business that was ineligible for a PPP loan and is ineligible for loan forgiveness.

The record supports Appellant is an ineligible business that was ineligible to receive a First Draw PPP loan and is ineligible to receive PPP loan forgiveness. The record also supports SBA properly applied the applicable laws, regulations, policy, and guidance when denying Appellant's forgiveness application. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decision is AFFIRMED[45].

## CONCLUSIONS OF LAW

**Appellant holds itself out to the public as a passive real estate entity.**

**Appellant's primary business activity is investment services.**

**Appellant engages in financing activities.**

---

[42] **OHA only has jurisdiction to review final SBA loan review decisions** (13 CFR §134.1201(b)(1)-(4)). OHA does not have jurisdiction to review a lender's decision(s) concerning a PPP loan (13 CFR §134.1201(c)).

[43] **If Appellant believes the lender acted in bad faith in approving its PPP loan, Appellant has the option of talking with the SBA Office of Inspector General (SBA OIG) about the lender's actions in this matter.** SBA OIG contact and procedure information can be found at https://www.sba.gov/about-sba/oversight-advocacy/office-inspector-general.

[44] **13 CFR Part 134, Subpart L** contains the controlling PPP loan appeals regulations.

[45] The record supports SBA took a holistic approach in reviewing MRHI's 2019 Federal tax return (AR, Pages 461-594) to find Appellant is a passive real estate entity. SBA's determination is supported by Appellant's own business description. A more detailed review of the record looking beyond Appellant's own business description supports Appellant's primarily business activity is to provide investment and finance services to MRHI subsidiaries (AR, Pages 1-699; AP, SEC Filing, Pages 1-71). **The record demonstrates Appellant is an ineligible business.**

- 26 -

JA1267

Docket No. PPP-5445887202

**Appellant is an ineligible business.**

**Appellant was ineligible for the First Draw PPP loan it received.**

**Appellant is ineligible for PPP loan forgiveness.**

The final SBA loan review decision is not based on clear error of fact or law.

**Appellant remains liable** for the PPP loan (PPP Loan Number 5445887202)[46].

## ORDER

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIRMED.**

Appellant's forgiveness application will be processed in accordance with this decision.

**This is an INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR §134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

# Joseph K. Essmyer Jr -S

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

---

[46] **SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

- 27 -

JA1268

Docket No. PPP-5445887202

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**An INITIAL DECISION** and shall become the FINAL DECISION of SBA thirty (30) calendar days after service unless a reconsideration request is filed pursuant to 13 CFR §134.1211(c) or the SBA Administrator decides to review or reverse the decision pursuant to 13 CFR §134.1211(d) (**13 CFR §134.1211(b)**).

**Either SBA or Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision (13 CFR §1211(c)(1)).  **Reconsideration petitions should be filed on the OHA Case Portal at:** https://appeals.sba.gov

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision (13 CFR §134.1211(c)(2)).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 CFR §134.1211(d) (**13 CFR §134.1211(c)(3)**).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision (13 CFR §134.1211(d)).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 CFR §134.1211(c)(1), the Administrator will consider the reconsideration request (13 CFR §134.1211(d)).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance (13 CFR §134.1211(d)).

Neither initial nor final decisions issued by OHA on a PPP loan appeal under Subpart L are precedential (13 CFR §134.1211(e)).

**FINAL DECISIONS may be appealed** to the appropriate Federal district court only (13 CFR §134.1211(g)).

JA1269

## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**PILLAR INCOME ASSET
MANAGEMENT INC.**

    **APPELLANT**

Appealed from:

SBA PPP Loan Number 5445887202

Issued: November 17, 2023

Docket No. PPP-5445887202

### RECONSIDERED INITIAL DECISION

The final **U.S. Small Business Administration (SBA)** loan review decision is **AFFIRMED**.

### PROCEDURAL HISTORY

**SBA PPP Loan Number:** 5445887202

**Approved Loan Amount:** $1,891,160.00

**SBA Final Forgiveness Amount:** $0.00

Appellant filed a **Paycheck Protection Program (PPP)** loan forgiveness application (Administrative Record (AR), Pages 627-629)[1, 2, 3].

SBA issued a final loan review decision denying the application after determining Appellant is a passive real estate entity that holds itself out to the public as a multifamily and commercial real estate developer (AR, Pages 17-18).

Appellant filed an appeal petition.

The **Office of Hearings and Appeals (OHA)** issued a Notice and Order setting deadlines for the administrative record, Appellant objections to the administrative record, SBA appeal response, and record closing.

SBA filed the administrative record.

---

[1] Unless otherwise indicated, all documents referenced or cited to in this decision, **except Appellant's petition for reconsideration (PFR)**, are contained in the **case record** maintained in the OHA <u>Case Portal</u> for Appellant's **original appeal filed on December 17, 2022.**

[2] The PFR is contained in the **case record** maintained in the OHA <u>Case Portal</u> for Appellant's **reconsideration request/appeal filed on November 10, 2023.**

[3] A copy of **this decision will be filed in both case records** maintained in the OHA <u>Case Portal</u>.

JA1270

Docket No. PPP-5445887202

Appellant did not file objections.

SBA did not file a response.

The record closed **February 10, 2023**.

OHA issued an initial decision affirming the final SBA loan review decision.

Appellant filed a **petition for reconsideration (PFR)**[4].

## ISSUE(S)

Does the PFR clearly show an error of fact or law material to OHA's initial decision?

## APPLICABLE LAW AND POLICY

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[5], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #4 (*Federal Register*, Vol. 85, No. 82, Pages 23450-23452) (effective April 28, 2020), and IFR #28 (*Federal Register*, Vol. 86, No. 23, Pages 8283-8299) (effective February 3, 2021)[6] contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) and *Paycheck Protection Program Loans Frequently Asked Questions (FAQs)* (PPP-FAQs) (effective April 8, 2020)[7] contain applicable policy and guidance.

**Section 1102** of the **CARES Act** amends **Section 7(A) of the Small Business Act (15 USC §636(a))** to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* **15 USC §636(a)(36))**.

---

[4] **SBA did not file a reconsideration request.**

[5] The portion(s) of the CARES Act not amending other laws/acts is codified at **15 USC, Chapter 116, Section 9001** *et seq*.

[6] **IFR #28 applies to PPP loan forgiveness applications** submitted after enactment of the Economic Aid Act (December 27, 2020) (*see* Footnotes 8-11).

[7] **This guidance is available from SBA's website at** https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

- 2 -

JA1271

Docket No. PPP-5445887202

**Section 1106** of the **CARES Act** amends **Section 7 of the Small Business Act (15 USC §636)** to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* **15 USC §636m)**[8, 9, 10, 11].

It is the declared policy of Congress that the Federal Government, through the Administrator of SBA, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act (15 USC §631(b)(1)).

SBA is to carry out the policies of the Small Business Act (15 USC §633(a)).

The management of SBA is vested in an Administrator appointed by the President, by and with the advice and consent of the Senate (15 USC §633(b)(1)).

The **Loan Policy Board (LPB)** of SBA, shall consist of the Administrator, as Chairman, the Secretary of the Treasury, and Secretary of Commerce (15 USC §633(d)).

The LPB shall establish general policies which shall govern the granting and denial of applications for financial assistance by the SBA (15 USC §633(d)).

The Administrator may make such rules and regulations as (s)he deems necessary to carry out the authority vested in him or her by or pursuant to the Small Business Act (15 USC §634(b)(6)).

SBA is empowered to the extent and in such amounts as provided in advance in appropriation Acts to make loans to any **qualified small business concern** for purposes of the Small Business Act (15 USC §636(a)).

SBA small business loans may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed basis) (15 USC §636(a)).

**Covered loan** means a loan made under **Paycheck Protection Program (PPP)** during the covered period (15 USC §636(a)(36)(A)(ii)).

**Covered period** means the period beginning on February 15, 2020, and ending on June 30, 2021 (15 USC §636(a)(36)(A)(iii)).

**Eligible recipient** means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

---

[8] The CARES Act initially authorized lending under the PPP for **February 15, 2020 – June 30, 2020** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted March 27, 2020).

[9] The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the **Economic Aid Act**) (P. L. 116-260) reauthorized lending under the PPP (15 USC §636(a)(36) through **March 31, 2021** (P. L. 116-260, Section 323) (enacted December 27, 2020).

[10] The Economic Aid Act also authorizes Second Draw PPP loans under 15 USC §636(a)(37) (P. L. 116-260, Section 311).

[11] The CARES Act was amended to authorize lending for First Draw and Second Draw PPP loans for **February 15, 2020 – June 30, 2021** (P. L. 116-36, Section 1102, Paragraph (b)) (enacted December 10, 2021)).

- 3 -

JA1272

Docket No. PPP-5445887202

Except as otherwise provided in paragraph 36 (i.e. 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7A of the Small Business Act (i.e. 15 USC §636(a)) (15 USC §636(a)(36)(B)).

Increased eligibility for certain small business and organizations –

    (i)    In general – During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in 15 USC §657(b)(2)(C), shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than greater of –

        (I)    500 employees; or

        (II)    if applicable, the size standard in number of employees established by SBA for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates (15 USC §636(a)(36)(D)(i)(I)-(II)).

**Payroll costs** –

    (I)    **means-**
        (aa) the sum of payments of any compensation with respect to employees that is a-
            (AA) salary, wage, commission, or similar compensation;
            (BB) payment of cash tip or equivalent;
            (CC) payment for vacation, parental, family, medical, or sick leave;
            (DD) allowance for dismissal or separation;
            (EE) payment required for the provisions of group health care or group life, disability, vision, or dental benefits, including premiums;
            (FF) payment of any retirements benefits;
            (GG) payment of State or local tax assessed on the compensation of employees;
      and

        (bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make payments is incurred; and

    (II)    **shall not include—**

        (aa) the compensation of an individual employee in excess of $100,000 on an annualized basis, as prorated for the period during which compensation is paid or the obligation to pay the compensation is incurred;

        (bb) Federal employment taxes imposed or withheld under Title 26 USC Chapters 21, 22, or 24 during the applicable period;

- 4 -

JA1273

Docket No. PPP-5445887202

(cc) any compensation to an employee whose principal place of residence is outside of the United States;

(dd) qualified sick leave wages for which credit is allowed under Section 7001 of the Families First Coronavirus Response Act (Public Law 116-127);

(ee) qualified family leave wages for which a credit is allowed under Section 7003 of the Families First Coronavirus Response Act (Public Law 116-127) (15 USC §636(a)(36)(A)(viii).

**Maximum loan amount**.—Except as provided in subparagraph (V), during the <u>covered period</u>, with respect to a <u>covered loan</u>, the maximum loan amount shall be the lesser of—

(i) **(I)** the sum of—

**(aa)** the product obtained by multiplying—

**(AA)** the average total monthly payments by the applicant for <u>payroll costs</u> incurred during the 1-year period before the date on which the loan is made, except that an applicant that is a <u>seasonal employer</u> shall use the average total monthly payments for payroll for any 12-week period selected by the <u>seasonal employer</u> between February 15, 2019, and February 15, 2020; by

**(BB)** 2.5; and

**(bb)** the outstanding amount of a loan [i.e., **Economic Injury Disaster Loan (EIDL)**] under 15 USC §636(b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which <u>covered loans</u> are made available to be refinanced under the <u>covered loan</u>; or

**(II)** if requested by an otherwise eligible recipient that was not in business during the period beginning on February 15, 2019 and ending on June 30, 2019, the sum of—

**(aa)** the product obtained by multiplying—

**(AA)** the average total monthly payments by the applicant for <u>payroll costs</u> incurred during the period beginning on January 1, 2020 and ending on February 29, 2020; by

**(BB)** 2.5; and

**(bb)** the outstanding amount of a loan [[i.e., EIDL]] under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which <u>covered loans</u> are made available to be refinanced under the <u>covered loan</u>; or

(ii) $10,000,000 (15 USC §636(a)(36)(E)(i)-(ii)).

Allowable uses of covered loans –

(i) In general – during the covered period, an eligible recipient may, in addition to the allowable uses of loan made under the PPP, use the proceeds of the covered loan for-

**(I)** payroll costs;

- 5 -

JA1274

Docket No. PPP-5445887202

**(II)** costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

**(III)** employee salaries, commission, or similar compensations;

**(IV)** payments of interest of any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

**(V)** rent (including rent under a lease agreement);

**(VI)** utilities;

**(VII)** interest on any other debt obligations that were incurred before the covered period;

**(VIII)** covered operations expenditures;

**(IX)** covered property damage costs;

**(X)** covered supplier costs;

**(XI)** covered worker protection expenditures (15 USC §636(a)(36)(F)(i)(I)-(XI)).

**For loan forgiveness**, the term **covered loan** means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

**For loan forgiveness**, the term **covered period** means the period –

(A) beginning on the date of the origination of a covered loan; and

(B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –

(i) beginning on the date that is 8-weeks after such date of origination; and

(ii) ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

An eligible recipient shall be eligible for forgiveness of a covered loan in an amount equal to the sum of the following costs and payments made during the covered period:

(1) Payroll costs.

(2) Any payment of interest on any covered mortgage obligation.

(3) Any payment on any covered rent obligation.

(4) Any covered utility payment.

(5) Any covered operations expenditure.

(6) Any covered property damage cost.

(7) Any covered supplier cost.

(8) Any covered worker protection expenditure (15 USC §636m(b)(1)-(8)).

## Hold Harmless

### (1) Definition

The term initial or second draw PPP loan means a **covered loan** or loan under 15 USC §636(a), paragraph 37 (15 USC §636m(h)(1)).

- 6 -

JA1275

Docket No. PPP-5445887202

**(2) Reliance**

A lender may rely on any certification or documentation submitted by an applicant for an initial or second draw PPP loan or an eligible recipient or eligible entity receiving initial or second draw PPP loan that—

(A) is submitted pursuant to all applicable statutory requirements, regulations, and guidance related to initial or second draw PPP loan, including under 15 USC §636(a), paragraphs 36 or 37, and 15 USC §636m; and

(B) attests that the applicant, eligible recipient, or eligible entity, as applicable, has accurately provided the certification or documentation to the lender in accordance with statutory requirements, regulations, and guidance (15 USC §636m(h)(2)(A)-(B)).

**(3) No Enforcement Action**

With respect to a lender that relies on a certification or documentation related to an initial or second draw PPP loan, an enforcement action may not be taken against the lender, and the lender shall not be subject to any penalties relating to loan origination or forgiveness of the initial or second draw PPP loan, if—

(A) the lender acts in good faith relating to loan origination or forgiveness of the initial or second draw PPP loan based on that reliance; and

(B) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the initial or second draw PPP loan (15 USC §636m(h)(3)(A)-(B)).

No later than 30 days after March 27, 2020, the Administrator shall issue guidance and regulations implementing the loan forgiveness section (i.e. paragraph 636m) of the Small Business Act (15 USC §636m(k)).

**Section 1114 of the CARES Act** grants the Administrator **emergency rulemaking authority** and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 USC §553(b)[12] (15 USC §9012).

**The purpose of IFR #1** is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

**Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110** and described further in SBA's Standard Operating Procedure (SOP) 50, 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

---

[12] Federal rulemaking regulations require notice of a proposed rule be published in the *Federal Register* (5 USC §553(b)).

JA1276

Docket No. PPP-5445887202

Under the PPP, the maximum loan amount is the lesser of $10 million or an amount that you will calculate using a payroll based formula specified in the CARES Act (IFR #1, 85 Fed. Reg. Page 20812).

The following methodology, which is one of the methodologies contained in the CARES Act, will be most useful to many applicants;

(i)     **Step 1:** Aggregate payroll costs from the last twelve (12) months for employees whose principal place of residence is in the United States.

(ii)    **Step 2:** Subtract any compensation paid to an employee in excess of an annual salary of $100,000 and/or any amounts paid to an independent contractor or sole proprietor in excess of $100,000 per year.

(iii)   **Step 3:** Calculate average monthly payroll costs (divide the amount from Step 2 by 12).

(iv)    **Step 4:** Multiply the average monthly payroll costs from Step 3 by 2.5.

(v)     **Step 5:** Add the outstanding amount of an **Economic Injury Disaster Loan (EIDL)** made between January 31, 2020, and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan (because it does not have to be repaid) (IFR #1, 85 Fed. Reg. Page 20812).

**Payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage,** including insurance premiums, and retirement; **payment of state and local taxes assessed on compensation of employees;** and **for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #1, 85 Fed. Reg. Page 20813).

The **CARES Act expressly excludes the following from payroll costs:**

(i)     Any compensation of an employee whose principal place of residence is outside the United States;

(ii)    The compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary;

(iii)   Federal employment taxes imposed or withheld between February 15, 2020, and June 30, 2020;

(iv)    Qualified sick and family wages for which credit is allowed under Sections 7001 and 7003 of the Families First Coronavirus Response Act (Public Law 116-127) (IFR #1, 85 Fed. Reg. Page 20813).

The proceeds of a PPP loan are to be used for:

(i)     **Payroll costs** (as defined in the CARES Act and IFR #1);

(ii)    **Costs related to the continuation of group health care benefits** during periods of paid sick, medical, or family leave, and insurance premiums;

(iii)   **Mortgage interest payments** (but not mortgage prepayments or principal payments);

(iv)    **Rent payments;**

- 8 -

JA1277

Docket No. PPP-5445887202

(v)     **Utility payments;**
(vi)    **Interest payment on any other debt obligations that were incurred before February 15, 2020;** and/or
(vii)   **Refinancing an SBA EIDL loan made between January 31, 2020, and April 3, 2020.** If your EIDL loan was not sued for payroll costs, it does not affect your eligibility for a PPP loan. If your EIDL loan was used for payroll costs, your PPP loan must be used to refinance your EIDL loan. Proceeds from any advance up to $10,000 on the EIDL loan will be deducted from the loan forgiveness amount on the PPP loan (IFR #1, 85 Fed. Reg. Page 20814).

To apply for a PPP loan, the applicant must submit **SBA Form 2483** (Paycheck Protection Program Application Form) and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

**The lender must submit SBA Form 2484** (Paycheck Protection Program Lender's Application Form for 7(a) Loan Guaranty) electronically in accordance with program requirements and maintain the forms and supporting documents in its files (IFR #1, 85 Fed. Reg. Page 20814).

**The lender does not need to conduct any verification if the borrower submits documentation supporting its request for loan forgiveness and attests that it has accurately verified the payments for eligible costs.** The Administrator will hold harmless any lender that relies on such borrower documents and attestation from the borrower (IFR #1, 85 Fed. Reg. Page 20815).

**SBA may provide further guidance for the PPP,** if needed, through SBA notices and a program guide which will be posted on SBA's website at www.sba.gov (IFR #1, 85 Fed. Reg. Page 20816).

**Borrowers who use a payroll provider or Professional Employer Organization (PEO)**[13] may uses statements from the payroll provider or PEO to document payroll costs. Employees of the eligible borrower will not be considered employees of the payroll provider or PEO (PPP-FAQs, Question 10).

**Borrowers who filed a PPP loan application based on** the version of the PPP Interim Final Rule published on April 2, 2020 [**IFR #1**], may rely on the laws, rules, and guidance available at the time of application (PPP-FAQs, Question 17).

**Financial businesses** primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

---

[13] **A PEO** is a third-party firm that operates under a co-employment agreement to provide a company's payroll administration and human resources (HR) services. The PEO partner technically becomes the employer but with the company still controlling hiring and firing of employees and daily operations, and the PEO paying the company's employees and providing benefits (Source: Business News Daily at https://www.businessnewsdaily.com/16180-peo-vs-payroll.html).

- 9 -

JA1278

Docket No. PPP-5445887202

**SBA cannot guarantee a loan that provides funds to** businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

i.     Banks;
ii.     Life Insurance Companies (but not independent agents);
iii.     Finance Companies;
iv.     Factoring Companies;
v.     Investment Companies;
vi.     Bail Bond Companies;
vii.     Other businesses whose stock in trade is money (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(i)-(vii), Page 104).

The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

i.     A pawn shop that provides financing is eligible if more than 50 percent of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.
ii.     A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50 percent of its revenue is from financing its sales.
iii.     A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of serving loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.
iv.     A check cashing business is eligible if it received more than 50 percent of its revenue from the service of check cashing.
v.     A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do no use loan proceeds to invest in their own portfolio of investments (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. B(2)(b)(i)-(v), Pages 104-105).

**Passive businesses** owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under 13 CFR §120.111) are not eligible for 7(a) business loans (13 CFR §120.110(c)).

An **Eligible Passive Company (EPC)** must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more **Operating Companies (OCs)** for conducting OC business, or to finance a change of ownership between the existing owners of the EPC (13 CFR §120.111).

    **(a) Conditions that apply to all legal forms:**

      (1) The OC must be an eligible small business, and the proposed use of the proceeds must be an eligible use if the OC were obtaining the financing directly;

      (2) The EPC (with the exception of a trust) and the OC must be small under the appropriate size standards;

- 10 -

JA1279

Docket No. PPP-5445887202

(3) The lease between the EPC and the OC must be in writing and must be subordinate to SBA's mortgage, trust deed lien, or security interest on the property. The EPC (as landlord) must furnish as collateral for the loan an assignment of all rents paid under the lease. The rent or lease payments cannot exceed the amount necessary to make the loan payment to the lender, and an additional amount to cover the EPC's direct expenses of holding the property, such as maintenance, insurance, and property taxes;

(4) The lease between the EPC and the OC, including options to renew exercisable solely by the OC, must have a remaining term at least equal to the term of the loan;

(5) The OC must be a guarantor or co-borrower with the EPC. In a 7(a) loan that includes working capital and/or the purchase of other assets, including intangible assets, for the OC's use, the OC must be a co-borrower.

(6) Each holder of an ownership interest constituting at least 20 percent of either the EPC or the OC must guarantee the loan. The trustee shall execute the guaranty on behalf of any trust. When deemed necessary for credit or other reasons, SBA or, for a loan processed under an SBA Lender's delegated authority, the SBA Lender may require other appropriate individuals or entities to provide full or limited guarantees of the loan without regard to the percentage of their ownership interest, if any (13 CFR §120.111(a)(1)-(6)).

(b) **Additional conditions that apply to trusts.** The eligibility status of the trustor will determine trust eligibility. All donors to the trust will be deemed to have trustor status for eligibility purposes. A trust qualifying as an EPC may engage in other activities as authorized by its trust agreement. The trustee must warrant and certify that the trust will not be revoked or substantially amended for the term of the loan without the consent of SBA. The trustor must guarantee the loan. For purposes of this section, the trustee shall certify to SBA that:

(1) The trustee has authority to act;

(2) The trust has the authority to borrow funds, pledge trust assets, and lease the property to the OC;

(3) The trustee has provided accurate, pertinent language from the trust agreement confirming the above; and

(4) The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors (13 CFR §120.111(b)(1)-(4)).

**Passive Businesses (13 CFR §120.110(c))**

Passive businesses that are not eligible for 7(a) business loans include:

(a) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Companies under 13 CFR §120.111).

- 11 -

JA1280

Docket No. PPP-5445887202

(b) Businesses primarily engaged in subdividing real property into lots and developing it for resale on its own account are not eligible.

(c) Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public.

(d) Businesses that lease land for the installation of a cell phone tower, solar panels, billboards, or wind turbine are not eligible. However, the business operating the cell phone tower, solar panel, billboard, or wind turbine is eligible.

(e) Businesses that have entered into a management agreement with a third party that gives the management company sole discretion to manage the operations of the business, including control over the employees, finances, and bank accounts of the business, with no involvement by the owner(s) of the Applicant business.

(f) Apartment buildings and mobile home parks are not eligible.

(g) Residential facilities that do not provide healthcare and/or medical services.

(h) The limited circumstances under which certain businesses engaged in renting or leasing may be eligible are:

    i. Hotels, motels, recreational vehicle parks, marinas, campgrounds, or similar type businesses are eligible if more than 50 percent of the business's revenue for the prior year is derived from transients who stay for 30 days or less at a time and business complies with all zoning and other legal requirements. If the Applicant is a start-up, the Applicant's projections must show that more than 50 percent of the business's revenue will be derived from transients who stay for 30 days or less at a time.

    ii. Businesses that are licensed as nursing homes or assisted living facilities (ALFs) and provide healthcare and/or medical services.

    iii. Businesses that are engaged in leasing equipment, household goods, or other items.

    iv. Businesses such as barber shops, hair salons, nail salons, and similar types of personal services are eligible, regardless of whether they have employees or contract with individuals to provide services.

i. An ineligible passive business cannot obtain an SBA loan (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(a)-(i), Pages 105-106).

- 12 -

JA1281

Docket No. PPP-5445887202

**Eligible Passive Company (EPC) Rule (13 CFR §120.11)**

The EPC Rule is an exception to SBA regulations that prohibit financing assets which are held for their passive income (13 CFR 120.130(d)). (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122).

**Because the EPC Rule is an exception,** the EPC and the OC must comply with all the conditions in 13 CFR §120.111 and **each condition is interpreted strictly** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122).

**If all conditions in 13 CFR §120.111 are not complied with,** in the event of default, SBA may deny liability on the guaranty (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. D, Page 122). **SBA will not authorize** nor may a Borrower use loan proceeds for investments in real or personal property acquired and held primarily for sale, lease, or investment (13 CFR §120.130(d)).

**The purpose of IFR #4** is to supplement previous regulations and guidance issued and to allow for the immediate implementation of the PPP (IFR #4, 85 Fed. Reg. Page 23450).

IFR #4 applies to applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #4, 85 Fed. Reg. Page 23450).

**Limited Safe Harbor.** Any borrower that applied for a PPP loan prior to the issuance of this regulation [on April 28, 2020] and repays the loan in full by May 7, 2020, will be deemed by SBA to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

The Administrator determined safe harbor is necessary and appropriate to ensure borrowers promptly repay PPP loan funds the borrower obtained based on a misunderstanding or misapplication of the required certification standard (IFR #4, 85 Fed. Reg. Pages 23451-23452).

**The purpose of IFR #28** is to implement the **Economic Aid Act** requirements for PPP loan forgiveness (IFR #28, 86 Fed. Reg., Pages 8283-8284).

For forgiveness, eligible **Payroll costs** consist of **compensation to employees** (whose principal place of residence is the United States in the form of **salary, wages, commissions, or similar compensation; cash tips or the equivalent** (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); **payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage,** including insurance premiums, and retirement; **payment of state and local taxes assessed on compensation of employees;** and **for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation** (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(1), Page 8286).

For forgiveness, eligible **Non-payroll costs** consist of:

    (2) Any payment of interest on any covered mortgage obligation.
    (3) Any payment on any covered rent obligation.
    (4) Any covered utility payment.

- 13 -

JA1282

Docket No. PPP-5445887202

(5) Any covered operations expenditure.
(6) Any covered property damage cost.
(7) Any covered supplier cost.
(8) Any covered worker protection expenditure (IFR #28, 86 Fed. Reg., Pt. IV, Para 1(a)(2)-(8), Page 8286).

**Eligible nonpayroll costs cannot exceed 40 percent** of the loan forgiveness (IFR #28, 86 Fed. Reg., Pt. IV, Para. 1(a)(8)(C), Page 8287).

**The loan forgiveness form details the documentation** each borrower must submit with its Loan Forgiveness Application (SBA Form 3508, 3508EZ, 3508S as applicable, or lender equivalent (IFR #28, 86 Fed. Reg., Pt. IV, Para. 6, Page 8293).
**An enforcement action cannot be taken against a lender** that relies on a borrower certification or documentation if:

(i) The lender acted in good faith relating to loan origination or forgiveness of the PPP loan based on that reliance; and

(ii) all other relevant Federal, State, local, and other statutory and regulatory requirements applicable to the lender are satisfied with respect to the PPP loan (IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294).

SBA may review any PPP loan the Administrator deems appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), Page 8294).

*Borrower Eligibility:* SBA may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Act, rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Amounts and Use of Proceeds:* SBA may review whether the borrower calculated the loan amount correctly and used loan proceeds for the allowable uses specified in the CARES Act (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

*Loan Forgiveness Amounts:* SBA may review whether a borrower is entitled to the loan forgiveness amount claimed on the borrower's PPP loan forgives application (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(b), Page 8294).

During its review of a PPP loan, **SBA may request additional information from the borrower** by requiring the lender to contact the borrower in writing to request additional information. SBA may also request information directly from the borrower (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(d), Page 8295).

**Failure to respond to SBA's inquiry** may result in a determination the borrower was ineligible for a PPP loan or ineligible to receive the loan amount or loan forgiveness amount claimed by the borrower (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(d), Page 8295).

- 14 -

JA1283

Docket No. PPP-5445887202

An SBA determination a borrower is ineligible for a First Draw PPP loan may also result in an SBA determination the borrower is ineligible for any Second Draw PPP loan, and SBA may direct the lender to deny any loan forgiveness application submitted for the Second Draw PPP loan (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

If SBA determines the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

SBA may seek repayment of the outstanding PPP loan balance or pursue other available remedies (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

A borrower may appeal SBA's determination that the borrower is ineligible for a PPP loan or ineligible for the loan amount or the loan forgiveness amount claimed by the borrow (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(f), Page 8295).

OHA is established in SBA –

    (i)    to impartially decide matters related to program decisions of the Administrator; and,
    (ii)   to handle Freedom of information Act requests (15 USC §634(i)(1)(A)(i)-(ii)).

OHA shall hear appeals of agency actions under or pursuant to the Small Business Act (15 USC §661 et seq) and Title 13 of the CFR and shall hear such other matters as the Administrator may determine appropriate (15 USC §634(i)(1)(B)(i)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)). The head of OHA shall be the Chief Hearing Officer, who shall be responsible to the Administrator (15 USC §634(i)(1)(C)).

OHA shall appoint Hearing Officers to carry out the duties of OHA (15 USC §634(i)(3)(A)). Notwithstanding section 556(b) of the **Administrative Procedures Act (APA)** (5 USC §556(b))—

    (i)    a Hearing Officer may hear cases under section 554 of the APA;
    (ii)   a Hearing Officer shall have the powers described in section 556(c) of the APA; and,
    (iii)  the relevant provisions of subchapter II of chapter 5 of the APA (except for section 555(b) of the APA)[14] shall apply to the Hearing Officer (15 USC §634(i)(3)(C)(i)-(iii)).

**Hearing Officer** means an individual appointed or redesignated under the Small Business Act who is an attorney licensed by a State, commonwealth, territory, or possession of the United States, or District of Columbia (15 USC §634(i)(4)).

---

[14] **Section 556(b) of the APA requires an Administrative Law Judge (ALJ)** preside over agency hearings (*see* 5 USC §556(b)(3)).

JA1284

Docket No. PPP-5445887202

Subject to published rules of the agency and within its powers, employees presiding at hearings may—

    (1) administer oaths and affirmations;
    (2) issue subpoenas authorized by law;
    (3) rule on offers of proof and receive relevant evidence;
    (4) take depositions or have depositions taken when the ends of justice would be served;
    (5) regulate the course of the hearing;
    (6) hold conferences for the settlement or simplification of the issues by consent of the parties or by the use of alternative dispute resolution (ADR);
    (7) inform the parties as to the availability of one or more ADR methods, and encourage use of such methods;
    (8) require the attendance at any conference of at least one representative of each party who has authority to negotiate resolution of issues in controversy;
    (9) dispose of procedural requests or similar matters;
  (10) make or recommend decisions in accordance with section 557 of the APA; and
  (11) take other action authorized by agency rule (5 USC § 556(c)(1)-(11)).

The employee who presides at the reception of evidence pursuant to section 556 of the APA shall make the recommended decision or initial decision required by section 557 of the APA (5 USC §554(d)).

When the agency did not preside at the reception of the evidence, the employee presiding at the hearing shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record be certified to it for decision (5 USC §557(b)).

When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency (5 USC §557(b)).

On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule (5 USC §557(b)).

OHA shall not adjudicate disputes that require a hearing on the record, except disputes pertaining to the small business programs described in the Small Business Act (15 USC §634(i)(1)(B)(ii)).

**The standard of review** is whether the final SBA loan review decision was based on a clear error of fact or law (13 CFR §134.1210).

**The appellant has the burden of proof** in an appeal of the final SBA loan review decision (13 CFR §134.1210).

The Judge will issue a decision within 45 calendar days after the close of record, as practicable (13 CFR §134.1211(a)).

The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered (13 CFR §134.1211(a)).

- 16 -

JA1285

Docket No. PPP-5445887202

The Judge's decision on the appeal is an initial decision (13 CFR §134.1211(a)).

Either SBA or Appellant may request reconsideration of an initial decision (13 CFR §1211(c)(1)).

The reconsideration request must clearly show an error of fact or law material to the decision (13 CFR §1211(c)(1)).

SBA does not have to file a response to a borrower's reconsideration request (13 CFR §1211(c)(1)).

Neither initial nor final decisions rendered by OHA on final SBA loan review appeals are precedential (13 CFR §134.1211(e)).
OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

If remanded, OHA no longer has jurisdiction over the matter unless a new appeal is filed as a result of a new final SBA loan review decision (13 CFR §134.1212).

## <u>FINDINGS OF FACT AND ANALYSIS</u>

Based on the record, I make the following findings of fact (FOF):

1. A 2019 Federal tax return (Form 1120) for May Realty Holdings, Inc. (MRHI) indicates Appellant is a subsidiary corporation of MRHI, and that MRHI provides various real estate services and operates under business activities/NAICS code **531390** (AR, Pages 461-594)[15, 16, 17, 18, 19].

2. MRHI's 2019 Federal tax return lists a **total income of $151,690,586.00** (Form 1120, Line 11) consisting of **$22,501.500.00** gross profit (Form 1120, Line 3), **$39,813,817.00** interest (Form 1120, Line 5), **$43,310,252.00** gross rents (Form 1120, Line 6), **$5,532,159.00** gross royalties (Form 1120, Line7), **$10,610,194.00** capital gains (Form 1120, Line 8), and **$29,922,664** other income (Form 1120, Line 10; Form 1120, Statement 1) (AR, Page 461).

3. MRHI's 2019 Federal tax return lists **$14,824,541.00** in other income for Appellant consisting of **$9,215,936.00** management fees, **$855,101.00** other income, and **$4,753,504.00** reimbursements (Form 1120, Statement 1, Page 2) (AR, Page 545).

---

[15] SBA uses the **North American Industry Classification System (NAICS)** to establish small business size standards (*see* 15 USC §632(a)(2)(A)-(B); 13 CFR §§121.101(a) and 102(a)).

[16] The **small business size standards by NAICS used by SBA** are listed in a table "Small Business Size Standards by NAICS Industry" at 13 CFR §121.201.

[17] NAICS code **531390: Real estate asset management services (except property management)**

[18] The **NAICS table** and **13 CFR Part 121** are available through the National Archives eCFR system at https://www.ecfr.gov/current/title-13/chapter-I/part-121#121.201.

[19] **A searchable NAICS website** is maintained by the U.S. Census Bureau at https://www.census.gov/naics/?99967.

- 17 -

JA1286

Docket No. PPP-5445887202

4.  A 2020 pro forma (i.e., projected) Federal tax return (Form 1120) lists **$14,005,339.00** in other income (i.e., Statement 1 income) for Appellant consisting of **$9,524,392.00** management fees, **$270,577.00** other income, and **$4,210,370.00** reimbursements, and indicates Appellant provides investment services and operates under business activities/NAICS code **523900** (AR, Pages 74-95)[20].

5.  On April 8, 2020, Appellant applied for a First Draw PPP loan (Form 2483) in the amount of **$1,891,160.50** (AR, Pages 625-626).

6.  On April 28, 2020, the lender approved and disbursed Appellant's PPP loan for **$1,891,160.00** (AR, Pages 2, 20-22, 630).

7.  On December 30, 2021, Appellant applied for loan forgiveness (Form 3508EZ) in the full amount of the PPP loan ($1,891,160.00) (AR, Pages 627-629).

8.  SBA selected Appellant's PPP loan for review (AR, Pages 616-624).

9.  SBA denied PPP loan forgiveness after determining Appellant is a passive real estate entity that advertises itself as a developer of multifamily and commercial real estate (AR, Pages 17-18).

SBA carries out the policies of the Small Business Act (15 USC §633(a)).

The SBA Administrator makes rules and regulations to carry out the Small Business Act (15 USC §634(b)(6)).

Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses (15 USC §636(a)).

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness (P.L. 116-36, §1102; *see also* 15 USC §§636(a)(36) and 636m).

The CARES Act grants the Administrator emergency rulemaking authority (15 USC §9012).

The CARES Act instructs the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, and to issue guidance and regulation to implement loan forgiveness within 30 days of March 27, 2020 (15 USC §9012; 15 USC §636m(k)).

**Covered loan** means a loan made under the PPP (15 USC §636(a)(36)(A)(ii)).

**Eligible recipient** means an individual or entity eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Unless otherwise provided by 15 USC §636(a)(36)), SBA guarantees covered (i.e. PPP) loans under the same terms, conditions, and processes as other 7(A) loans (15 USC §636(a)(36)(B)).

---

[20] NAICS code **5239: Other financial investment activities (including portfolio management (523920) and investment advice (523930))**

- 18 -

JA1287

Docket No. PPP-5445887202

**The maximum PPP loan amount is** the lesser of $10 million or payroll costs calculated as follows: **Step 1:** Aggregate payroll costs from the last twelve (12) months for employees; **Step 2:** Subtract any compensation paid to an employee in excess of an annual salary of $100,000; **Step 3:** Calculate average monthly payroll costs (divide the amount from Step 2 by 12); **Step 4:** Multiply the average monthly payroll costs from Step 3 by 2.5; **Step 5:** Add the outstanding amount of an EIDL made between January 31, 2020, and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan (15 USC §636(a)(36)(E)(i)-(ii); IFR #1, 85 Fed. Reg. Page 20812).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described in SBA's SOP (IFR #1, 85 Fed. Reg. Page 20812).

**To apply for a PPP loan**, the applicant must submit SBA Form 2483 and required payroll documentation (IFR #1, 85 Fed. Reg. Page 20814).

**Borrowers may use payroll provider and PEO statements** to document payroll costs (PPP-FAQs, Question 10).

**Borrowers may rely on IRF #1** and the laws, rules, and guidance available at the time of their PPP loan application (PPP-FAQs, Question 17).

**Financial businesses** primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for 7(a) business loans (13 CFR §120.110(c)).

SBA cannot guarantee a loan to an otherwise eligible business engaged in financing or factoring, including **investment companies** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a)(v), Page 104).

**Passive businesses** owned by developers and landlords, except EPCs, are not eligible for 7(a) business loans (13 CFR §120.110(c)).

**Passive businesses** that are not eligible for 7(a) business loans **include:**

(a) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds.

(c) Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(a) and (c), Page 105).

**An ineligible passive business cannot obtain an SBA loan** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(3)(i), Page 106).

For loan forgiveness, **covered loan** means a loan guaranteed under the PPP (15 USC §636m(a)(1)).

For loan forgiveness, **eligible recipient** means the recipient of a covered loan (15 USC §636m(a)(10)).

- 19 -

JA1288

Docket No. PPP-5445887202

**Lenders may rely on any certification or documentation submitted by an applicant** and no enforcement action may be taken against a lender that acts in good faith in relying on the certification or documentation for loan origination or forgiveness (15 USC §636m(h)(1)-(3); IFR #1, 85 Fed. Reg. Page 20815; IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294).

**SBA may review** any PPP loan it deems appropriate, including borrower eligibility, loan amounts and use of proceeds, and loan forgiveness amount (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(a), 1(b), and 1(d), Pages 8294-8295).

**SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

Any borrower that applied for a PPP loan prior to IFR #4 and repays the loan in full by May 7, 2020, is be deemed to have made the required certification in good faith (IFR #4, 85 Fed. Reg. Page 23451).

**The appellant has the burden of proof** in a PPP appeal (13 CFR §134.1210).

Either SBA or Appellant may request reconsideration of an initial decision (13 CFR §1211(c)(1)).

The reconsideration request must clearly show an error of fact or law material to the decision (13 CFR §1211(c)(1)).

OHA may affirm, reverse, or remand a final SBA loan review decision (13 CFR §134.1212).

**THE RECORD SHOWS** Appellant is subsidiary of MRHI, and that MRHI provides real estate asset management services. The record also shows Appellant generates other income for MRHI consisting of management fees, other income, and reimbursements. The record further shows Appellant received a First Draw PPP loan ($1,891,160.00) and applied for loan forgiveness. SBA selected Appellant's loan for review. SBA denied loan forgiveness after determining Appellant is a passive real estate entity that advertises itself to be a developer of multifamily and commercial real estate (FOF 1-9).

**APPELLANT'S PFR** contains new argument(s) of error and restates the arguments contained in Appellant's appeal petition (PFR, Pages 1-4).

**THE PFR DOES NOT** provide a basis to reverse OHA's initial decision[21], [22]. The reasoning of OHA's initial decision is incorporated herein (i.e., reissued) in support of this reconsideration decision:

---

[21] There are no new arguments in Appellant's PFR, and the facts of this case remain unchanged. SBA is entitled to summary judgment on the PFR and a response from SBA to the PFR is not necessary or required (13 CFR §§134.212(b), 134.1201(h); 134.1211(c)(1)).

[22] In addition to the provisions of 13 CFR Part 134, Subpart B specifically referenced in 13 CFR, Part 134, Subpart L, the following regulations from Subpart B also apply to Subpart L: 13 CFR §§134.207 (Amendments and Supplemental Pleadings); 134.208 (Representation In Cases Before OHA); 134.209 (Requirements Of Signature); 134.211 (Motions); 134.212 (Summary Judgment); 134.217 (Settlement); 134.218 (Judges); 134.219 (Sanctions); 134.220 (Prohibition On Ex Parte Communications) (13 CFR §1201(h)).

- 20 -

JA1289

Docket No. PPP-5445887202

**IN ITS APPEAL PETITION**, Appellant argues its PPP loan should be forgiven for the following reasons:

- Appellant does not own, purchase, lease, or invest in real estate and is not a passive real estate entity.

- Appellant provides asset management services for a gross asset fee of 0.0625 percent.

- SBA erred by aggregating the real estate activities of businesses listed on Appellant's website to Appellant.

- Appellant has no managerial control over the businesses it services.

- All PP loan funds were used for eligible costs (Appeal Petition (AP), Pages 1-3).

I am not persuaded by Appellant's argument(s) for the following reasons:

**The CARES Act does not guarantee every business that meets SBA's size standards is eligible for a PPP loan.** The CARES Act (15 USC §636(a)(36)(D)(i) (i.e., Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan" if it meets SBA size standards (*see* 15 USC §636(a)(36)(D)(i)(I)-(II)). Paragraph 36(D)(i), however, starts with two words, "In general—" that make clear the paragraph is a general eligibility requirement and not an absolute requirement that if met guarantees PPP loan eligibility for any business concern. A true and close reading of Paragraph 36(D)(i) reveals it as a general eligibility requirement allowing business concerns and other entities, most notably nonprofit organizations, not normally classified as small businesses to be considered PPP loan eligible if size standards are met. Paragraph 36(D)(i) does not exempt any business concern or entity from all other PPP loan eligibility requirements; and, like all statutes one cannot read a single portion (i.e., paragraph) of the CARES Act to the exclusion of all other portions of the statute (Act). Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the requirement(s) of a single portion/paragraph of the CARES Act the borrower selects, which would undermine the purpose of the Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. Such a reading of Paragraph 36(D)(i) also goes against accepted statutory construction practices[23], and does not provide a persuasive legal basis to make the extraordinary finding that any business concern meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[24, 25].

---

[23] **The United States Supreme Court has determined**, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

[24] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, **it is reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements** of Section 1102 of the CARES Act (15 USC §636(a)(36)) to receive a PPP loan.

- 21 -

JA1290

Docket No. PPP-5445887202

**The CARES Act does not authorize SBA to provide PPP loans to ineligible businesses.**
With the CARES Act, Congress amended the Small Business Act to include PPP loans as part of
the **7(a) business loan** program (P.L. 116-36, §1102; *see also* 15 USC §636(a)(36)). SBA
carries out the policies of the Small Business Act (15 USC §633(a)); and, in carrying out these
policies the Administrator may make rules and regulations (15 USC §634(b)(6))). Except as
otherwise provided by the CARES Act in 15 USC §636(a)(36), PPP loans are guaranteed under
the same terms and conditions as other 7(a) business loans (15 USC §636(a)(36)(B)). SBA
regulations establish the types of businesses that are ineligible for 7(a) business loans (13 CFR
§120.110(a)-(s))[26]. Financial businesses and passive real estate entities have been listed as
ineligible businesses since **March 1, 1996**[27]. The CARES Act does not change SBA's barring of
ineligible businesses, including financial and passive businesses, from receiving 7(a) business
loans. PPP loans are 7(a) business loans (15 USC §636(a);15 USC §636(a)(36)), and regardless
of whether a borrower applied for a PPP loan before or after the April 15, 2020 effective date of
IFR #1, financial businesses and passive entities remain ineligible for any type of 7(a) business
loan, including PPP loans.

**IFR #1 applies to PPP loan applications.** IFR #1 has both an *effective date* and an *applicability
date*. The effective date, April 15, 2020, is the date IFR #1 was published in the *Federal
Register*. The applicability date indicates IFR #1 applies to applications submitted under the PPP
through June 30, 2020, or until funds are exhausted (IFR #1, 85 Fed. Reg. Page 20812). IFR #1
is effective without advance notice and is issued for the immediate implementation of the PPP
(IFR #1, 85 Fed. Reg. Page 20812). Despite its immediate effective date, SBA did provide
advance notice of IFR #1 by publishing the rule on the U.S. Department of Treasury (USDT's)
website on April 2, 2020. IFR #1's applicability date makes clear the rule will apply to all loan

---

[25] I note in vacating the Bankruptcy Court's injunction against SBA, the Eleventh Circuit (11th Circuit) thoroughly
examined this provision of the CARES Act (15 USC §636(a)(36)(D)(i)):

> First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements,
> which are regulated in detail by the SBA. See 15 USC §636(a)(36)(D)(i); 13 CFR §121.201. And
> in doing so the Act provides that "any business concern...shall be eligible" for a PPP loan if it
> employs not more than the greater of...500 employees; or if applicable, the size standard in
> number of employees established by" the SBA for that business concern's industry. 15 USC
> §636(a)(36)(D)(i)-(ii). Of course, "any" typically has an expansive meaning, see Jones v. Waffle
> House, Inc., 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative,
> see Kingdomware, 136 S. Ct. at 1977. But it would be illogical to conclude that this subsection of
> the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical
> because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility
> requirements. See 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable
> to obtain credit elsewhere). If the sole eligibility requirement were size, then those other
> provisions would be pointless. We try hard not to interpret statutory provisions in a way that will
> result in them having no purpose or effect. Corley v. United States, 556 U.S. 303, 314, 129 S.Ct.
> 1558, 173 L.Ed.2d 443 (2009). And there is a more reasonable and obvious reading of the revision
> of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and
> cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of
> employees, and it relaxes the size requirement for businesses in many industries. It does not
> prohibit the SBA from establishing other, non-size related eligibility criteria (*In Re: Gateway
> Radiology Consultants,* 983 F.3d (11th Cir.) (2020) (*see also* SAR, Pages 11-14).

[26] *Federal Register,* Vol. 61, No. 21, Pages 3326-3266 (effective **March 1, 1996**).

[27] *Federal Register,* Vol. 61, No. 21, Page 3339.

- 22 -

JA1291

Docket No. PPP-5445887202

applications received under the PPP through June 30, 2020. The record shows Appellant's PPP loan application was submitted on April 8, 2020. The record also shows the loan was approved and disbursed on April 28, 2020 (AR, Pages 2, 20-22, 625-626, 630; FOF 3-4). Appellant's PPP loan application was submitted and approved when IFR #1 was applicable to all applications. IFR #1 applies to Appellant's PPP loan application. Under IFR #1, financial businesses and passive entities are not eligible for PPP loans (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(c); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Paras. A(2)(a)(iii-iv) and A(3)(a)-(g) and (i), Pages 104-106)[28, 29, 30, 31].

**Appellant is an ineligible business.** Only an eligible recipient of a PPP loan may receive loan forgiveness (15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(a) loans (15 USC §636(a)(36)(B)). The PPP statute (15 USC §636(a)(36)) does not exempt financial or passive businesses from the terms of other 7(a) loans and under SBA regulations, policy, and guidance in effect when Appellant submitted its PPP loan application, financial businesses and passive entities involved in the investment, development, or leasing of residential and/or commercial real estate are ineligible to receive small business loans (i.e., 7(a) loans), **including PPP loans** (IFR #1, 85 Fed. Reg. Page 20812; 13 CFR §120.110(c); SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Paras. A(2)(a)(iii-iv) and A(3)(a)-(g) and (i), Pages 104-106). The record shows Appellant holds itself out to the public to be a real estate developer with the following description of its business activities:

> [Appellant] is a national real estate company that specializes in the acquisition, development, and management of multifamily and commercial real estate in the Southern United States. [Appellant] also develops raw land for single family home communities and various commercial applications. Through its affiliated client companies, [Appellant] operates a portfolio of over 115 properties, which include over 18,000 units of multifamily properties, over 1,800,000 square feet of commercial properties and over 4,500 acres of raw land holdings. [Appellant] also provides financing and capital management services for its affiliate companies, including HUD, Fannie Mae, FreddieMac, CMBS Loans, and non-convertible bonds (AR, Pages 623, 635; *see also* https://pillarincome.com/).

---

[28] **IFR #1 was published/released on the USDT's PPP webpage on April 2, 2020, the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage** (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

[29] **SBA launched the PPP on April 3, 2020, a day after giving advance notice of IFR #1** (Source: SBA.gov at https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches).

[30] **The CARES Act makes clear the PPP will be administered under regulations issued by the SBA Administrator through emergency rulemaking authority (15 USC §9012; 15 USC §636m(k)).**

[31] The record shows Appellant's representative signed the SBA promissory note on **April 28, 2020** (AR, Pages 20-22; FOF 6). The representative had **26 days** after IFR #1 was released on the USDT's webpage and **13 days** after IFR #1 was published in the *Federal Register* to review the rule before accepting the PPP loan (Source: Time and Date at www.timeanddate.com).

- 23 -

JA1292

Docket No. PPP-5445887202

**Through its own words,** Appellant acknowledges it is a passive real estate entity specializing in the development of multifamily and commercial real estate[32, 33, 34, 35, 36, 37]. **Through its own words,** Appellant also acknowledges it provides investment and finance services. The record also shows Appellant is primarily engaged in financial and investment activities. In its projected tax return, Appellant lists its primary business activity as **investment services (523900)** (AR, Pages 461-594; FOF 1). Security and Exchange Commission (SEC) filings also indicate Appellant provides financial and investment services:

> [Appellant's] duties include, but are not limited to, locating, evaluating, and recommending real estate and real estate-related investment opportunities. [Appellant] also arranges our debt and equity financing with third party lenders and investors. [Appellant] is compensated under an Advisory Agreement...we compete with related parties of [Appellant] having similar investment objectives related to the acquisition, development, disposition, leasing and financing or real estate and real estate-related investments (AP, SEC Filing, Pages 4, 18, 33, 61).

> [Appellant] is compensated for advisory services (AP, SEC Filing, Page 47).

> Notes receivable include amounts held by...[Appellant] (AP, SEC Filing, Page 47).

> Interest expense on notes payable to [Appellant] was $1,621, $1,581 and $1,999 for the years ended December 31, 2021, 2020, and 2019, respectively (AP, SEC Filing, Page 47).

---

[32] Appellant's argument SBA erroneously applied its "aggregation rules" to find Appellant engages in the real estate development activities of the company affiliates listed on its website (American Realty Investors (ARI), Income Opportunity Realty Investors (IORI), Regis Property Management, LLC (RML), Sothern Properties Capital (SPC), Transcontinental Realty Investors (TRI)) **is not persuasive.** The record shows **SBA did not find Appellant exceeded the size limit(s) of its affiliation rules and did not deny PPP loan forgiveness based on its affiliation rules** (AR, Pages 17-18, 634-638). Further, **the affiliation test relied on by Appellant,** *affiliation based on totality of the circumstances* (13 CFR §121.103(a)(5); *see also* 13 CFR §121.301(f)(6)), **does not apply to PPP loans.**

[33] ARI, IORI, and TRI are MRHI subsidiaries listed in MRHI's 2019 Federal tax return (AR, Pages 461-594).

[34] **SBA has determined the four (4) tests for affiliation in 13 CFR §121.301(f)(1)-(4) apply to PPP loans:** (1) Affiliation based on ownership; (2) Affiliation arising under stock options, convertible securities, and agreements to merger; (3) Affiliation based on management; (4) Affiliation based on identity of interest (Source: SBA.gov, *Affiliation Rules for Paycheck Protection Program* @ https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program).

[35] **If SBA's affiliation rules did apply in this case, the record supports Appellant would be affiliated with MRHI based on ownership,** as MRHI is a real estate investment corporation that owns 100 percent of Appellant's voting stock (AR, Pages 82, 461-594).

[36] The record indicates SBA notified Appellant during its review that SBA's Higher Authority Team determined Appellant is a passive entity based in part on the business description contained on Appellant's website (AR, Pages 622-624). The record also indicates this business description is a basis for SBA denying PPP loan forgiveness (AR, Pages 17-18, 634-638). To date, Appellant has not provided an adequate explanation of its business description (*see* Footnote 27). **To publicly advertise oneself as a real estate developer that provides finance and investment services but represent oneself to SBA as simply a real estate agent (531210) on the PPP loan forgiveness application (Form 3508EZ (AR, Page 627) is** disingenuous at best.

[37] NAICS code **531210:** Agents, real estate

- 24 -

JA1293

Docket No. PPP-5445887202

Related party receivables represent amounts outstanding from [Appellant] for loans and advances, net of unreimbursed fees, expenses and costs....(AP, SEC Filing, Page 47).

The Advisory Agreement provides for [Appellant] to be responsible for our day-to-day operations and to receive, as compensation for basic management and advisory services, a gross asset fee of 0.0625% per month (0.75% per annum) of the average of the gross asset value (total assets less allowance for amortization, depreciation or depletion and valuation reserves) (AP, SEC Filing, Page 62).

In addition to base compensation, [Appellant] receives the following forms of additional compensation:

(1) an annual net income fee equal to 7.5% of our net income as an incentive for successful investment and management of our assets (AP, SEC Filing, Page 62).

Appellant has the burden of proof in this appeal (13 CFR §134.1210). The record supports Appellant advertises itself as a passive real estate entity (i.e., real estate developer) and is primarily engaged in financial and investment activities when providing advisory services. The record also supports Appellant is an ineligible business that was ineligible to receive a First Draw PPP loan and is ineligible to receive PPP loan forgiveness[38, 39, 40, 41, 42]. **Appellant had notice IFR #1 would apply to its PPP loan application.** IFR #1's applicability date makes clear it applies to all PPP loan applications received through June 30, 2020 (IFR #1, 85 Fed. Reg. Page 20812). SBA released IFR#1 to the public on April 2, 2020 (*see* Footnotes 23-25), and SBA guidance available to Appellant when it applied for a PPP loan makes clear IFR #1 applies to all PPP loan applications:

**17. Question:** I filed or approved a loan application based on the version of the PPP Interim Final Rule published on **April 2, 2020**. Do I need to take any action based on the updated guidance in the FAQs?

**Answer:** No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose

---

[38] **The SEC filing is for TRI, an MRHI subsidiary** (AP, SEC Filing, Pages 1-71; *see also* Footnote 28).

[39] The record shows Appellant is engaged in financing activities by holding notes receivables and receiving interest on the notes (AP, SEC Filing, Page 47). These activities alone make Appellant an ineligible business, as **SBA cannot provide 7(a) business loans to "an otherwise eligible business engaged in financing or factoring"** (SOP, 50 10 5(K), Subpt. B, Ch. 2, Pt. III, Para. A(2)(a), Page 104).

[40] **The gross asset fee (0.0625%) received by Appellant is an ongoing investment advisory fee** for the management of investment portfolios (SEC.gov@ https://www.sec.gov/investor/alerts/ib_fees_expenses.pdf).

[41] Appellant's management and advisory services are the same type of investment services offered by larger better known firms/businesses, such as Merrill Lynch and Morgan Stanley (*see* Forbes@ https://www.forbes.com/lists/top-wealth-management-teams-high-net-worth/?sh=168addb023e1).

[42] **The record shows Appellant considers its primary business activity to be investment services (523900)** (AR, Pages 74-95; FOF 4). Like the business activity described on its website, this business activity is inconsistent with the business activity (real estate agent (**531210**)) reported on Appellant's PPP loan forgiveness application (AR, Page 627; *see also* Footnotes 36-37).

- 25 -

JA1294

Docket No. PPP-5445887202

previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs (PPP-FAQs, Question 17 (April 8, 2020)).

This guidance clarifies **IFR #1** published on **April 2, 2020**, applies to all PPP loan applications. The guidance also informs borrowers they can revise unprocessed applications to correct the applications based on this guidance[43].

**Appellant's use of PPP loan funds does not make Appellant an eligible business.** Even if Appellant used its PPP loan for approved payroll and nonpayroll costs, this does not make Appellant an eligible business. Appellant is an ineligible business because its primarily business purpose is to engage in financial and investment activities involving multifamily and commercial real estate; and, neither the CARES Act nor the applicable regulations, policy, or guidance allows an ineligible business to receive a PPP loan simply because it may have properly spent PPP loan funds.

**Safe harbor was available to Appellant.** With IFR #4, SBA offered borrowers that applied for a PPP loan prior to April 28, 2020, and incorrectly certified their eligibility for the loan a **safe harbor though May 7, 2020, to repay the loan** (IFR #4, 85 Fed. Reg. Pages 23450- 23451). IFR #4 provided Appellant an additional nine (9) days to review IFRs #1 and 4 and take advantage of the safe harbor provisions. There is no evidence in the record Appellant sought to use IFR #4's safe harbor provisions to review its PPP loan application for compliance with SBA's regulations and guidance or to repay the loan during the safe harbor period[44, 45, 46].

**The lender is not responsible for mistakes in Appellant's PPP loan application.** Under the CARES Act, IFR #1, and IFR #28, a lender may rely on the certifications and documents submitted by a borrower and no enforcement action can be taken against a lender that acts in good faith in relying on the certifications or documents (15 USC §636m(h)(1)-(3); IFR #1, 85 Fed. Reg. Page 20815; IFR #28, 86 Fed. Reg., Pt. IV, Para. 7(a)(i)-(ii), Page 8294). The record does not support, and Appellant has not demonstrated, its lender acted in bad faith in relying on the certifications and documents submitted by Appellant with its loan application or when approving Appellant's PPP loan. Any errors made by the lender in approving Appellant's PPP loan by relying on certifications and documentation submitted by Appellant does not provide a basis to grant Appellant relief and/or reverse SBA's final loan review decision[47, 48].

---

[43] If Appellant chose to review this guidance when applying for a PPP loan, **Appellant knew or should have known IFR #1 applied to its loan application, including the provisions prohibiting ineligible businesses from receiving PPP loans.**

[44] Like IFR #1, IFR #4 has an applicability date that indicates **IFR #4 applies to all loan applications submitted under the PPP through June 30, 2020,** or until funds are exhausted (IFR #4, 85 Fed. Reg. Page 23450).

[45] SBA extended the repayment deadline to **May 14, 2020** (*see* IFR #9, 85 Fed. Reg., No. 97, Page 29846).

[46] SBA extended the repayment deadline a second time to **May 18, 2020** (*see* IFR #13, 85 Fed. Reg., No. 101, Page 31358), **which gave Appellant an additional 20 days to review IFRs #1 and 4, as well as applicable SBA policy and guidance, and take advantage of SBA's safe harbor provisions.**

[47] **OHA only has jurisdiction to review final SBA loan review decisions** (13 CFR §134.1201(b)(1)-(4)). OHA does not have jurisdiction to review a lender's decision(s) concerning a PPP loan (13 CFR §134.1201(c)).

- 26 -

JA1295

Docket No. PPP-5445887202

**OHA Judges must apply IFR #1 to PPP loan applications.** The CARES Act makes clear the PPP will be administered under regulations issued by the SBA (15 USC §9012; 15 USC §636m(k)). In administering the PPP, SBA issued IFR #1 and instructed IFR #1 applies to all PPP loan applications received by June 30, 2020. No statute or regulation governing the PPP loan appeals process gives an OHA Judge the authority to not apply IFR #1 to PPP loan applications[49]. As a United States Administrative Law Judge (ALJ) serving as an OHA Judge, I am required to apply IFR #1 to PPP loan applications. In applying IFR #1, I find Appellant is an ineligible business that was ineligible for a PPP loan and is ineligible for loan forgiveness.

The record supports Appellant is an ineligible business that was ineligible to receive a First Draw PPP loan and is ineligible to receive PPP loan forgiveness. The record also supports SBA properly applied the applicable laws, regulations, policy, and guidance when denying Appellant's forgiveness application. The reasoning of OHA's initial decision remains supported by the record. I therefore find the final SBA loan review decision is not based on clear error of fact or law. The final SBA loan review decision is AFFIRMED[50].

## CONCLUSIONS OF LAW

**Appellant holds itself out to the public as a passive real estate entity.**

**Appellant's primary business activity is investment services.**

**Appellant engages in financing activities.**

**Appellant is an ineligible business.**

**Appellant was ineligible for the First Draw PPP loan it received**.

**Appellant is ineligible for PPP loan forgiveness**.

The final SBA loan review decision is not based on clear error of fact or law.

**OHA's initial decision does not contain** a clear error of fact or law material to the decision.

**Appellant remains liable** for the PPP loan (PPP Loan Number 5445887202)[51].

---

[48] **If Appellant believes the lender acted in bad faith in approving its PPP loan, Appellant has the option of talking with the SBA Office of Inspector General (SBA OIG) about the lender's actions in this matter.** SBA OIG contact and procedure information can be found at https://www.sba.gov/about-sba/oversight-advocacy/office-inspector-general.

[49] **13 CFR Part 134, Subpart L** contains the controlling PPP loan appeals regulations.

[50] The record supports SBA took a holistic approach in reviewing MRHI's 2019 Federal tax return (AR, Pages 461-594) to find Appellant is a passive real estate entity. SBA's determination is supported by Appellant's own business description. A more detailed review of the record looking beyond Appellant's own business description supports Appellant's primarily business activity is to provide investment and finance services to MRHI subsidiaries (AR, Pages 1-699; AP, SEC Filing, Pages 1-71). **The record demonstrates Appellant is an ineligible business.**

[51] **SBA may seek repayment** of the outstanding PPP loan balance (IFR #28, 86 Fed. Reg., Pt. V, Para. 1(e), Page 8295).

- 27 -

JA1296

Docket No. PPP-5445887202

## ORDER

The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is **AFFIRMED**.

Appellant's forgiveness application will be processed in accordance with this decision.

This is a **RECONSIDERED INITIAL DECISION** and shall become the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the decision under 13 CFR §134.1211(d) **(13 CFR §134.1211(c)(3))**.

Joseph K. Essmyer Jr -S

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

- 28 -

JA1297

Docket No. PPP-5445887202

## <u>NOTICE OF APPEAL RIGHTS AND PROCEDURES</u>

A **RECONSIDERED INITIAL DECISION** becomes the **FINAL DECISION of SBA** 30 calendar days after service unless the SBA Administrator decides to review or reverse the decision (13 CFR §134.1211(c)(3)).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L (13 CFR §134.1211(c)(3)).

**Within 30 calendar days after service of a reconsidered initial OHA decision,** the SBA Administrator, <u>solely within the Administrator's discretion,</u> may elect to review and/or reverse a reconsidered initial decision (13 CFR §134.1211(d)).

**If the SBA Administrator issues a decision, it will become the FINAL DECISION of SBA upon issuance** (13 CFR §134.1211(d)).

Neither initial nor final decisions issued by OHA on a PPP loan appeal under Subpart L are precedential (13 CFR §134.1211(e)).

**FINAL DECISIONS may be appealed** to the appropriate Federal district court only (13 CFR §134.1211(g)).

- 29 -

JA1298

Docket No. PPP-5445887202

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify on **November 17, 2023**, this RECONSIDERED INITIAL DECISION was uploaded to the <u>OHA Case Portal</u> and **served by the <u>OHA Case Portal</u>** on the following:

**Pillar Income Asset Management, Inc.**
Attn: Mark Cooper, Esq.
Dallas, TX

**David Higgs, General Attorney**
U.S. Small Business Administration
Washington, DC

Joseph K. Essmyer Jr - S

_____

J. KEITH ESSMYER, JR.
U.S. Administrative Law Judge

- 30 -

JA1299

# United States Small Business Administration Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**: | Issued: May 24, 2022 |
| Pilot Finance, Inc. | Decision No. **PPP-1021077106** |
| Appellant | |
| Appealed from SBA PPP Loan No. 1021077106 | |

APPEARANCES:

> Mary Claire Davis and Jared M. Tully, Frost Brown Todd LLC, on behalf of Appellant, Pilot Finance, Inc.

> Pedro Lopez-Bergollo, Esq., Office of General Counsel, for The United States Small Business Administration

## **JURISDICTION**

In March 2020, in response to the Covid-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). See Nat'l Ass'n of Home Builders v. U.S. SBA, No. 20-11780, 2021 WL 4458660, at *1 (E.D. Mich. Sept. 28, 2021), appeal docketed, No. 21-1765 (6th Cir. Nov. 30, 2021). Section 1102 of the Act established the Paycheck Protection Program (the Program), which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses. Nat'l Ass'n, 2021 WL 4458660, at *1. Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. In re Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1247 (11th Cir. 2020).

Congress placed the Program under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. Gateway, 983 F.3d at 1248. Through the CARES Act, Congress authorized the SBA to guarantee Program loans "under the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B). Congress gave SBA 15 days to issue implementing regulations. CARES Act § 1114 (codified at 15 U.S.C. § 9012). SBA issued several interim final rules under the Program.

OHA adjudicates Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

JA1300

EXHIBIT B

## DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the final SBA loan review decision is AFFIRMED.  For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

On April 15, 2020, the Appellant submitted a Paycheck Protection Program (PPP) Borrower Application. (Exhibit 3). On April 15, 2020, the Appellant was approved for a PPP loan by First Midwest Bank (Lender) in the amount of $ 61,552.50 and received the loan proceeds.  On December 11, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form 3508EZ through the Lender. (Exhibit 4). The Lender determined the Appellant should not receive loan forgiveness.

On January 14, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding Appellant ineligible for PPP loan forgiveness.

On February 11, 2022, the Appellant filed the instant appeal from that final SBA loan review decision.  Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for PPP loan forgiveness.

On March 23, 2022, the undersigned issued a Notice and Order requiring the filing of the Administrative Record by April 12, 2022, providing for the Appellant to Object to the same by April 22, 2022, and allowing for SBA to respond to any objection by May 9, 2022.

On April 12, 2022, the Administrative Record ("AR") was filed.  On April 20, 2022, the Appellant filed any objections to the AR. On April 20, 2022, I issued an Order on Objections, noting that instead of objections to the contents of the AR, Appellant merely restated its arguments on appeal. Therefore, the AR was not supplemented. The undersigned admits the AR as filed, as well as Appellant's Exhibits 1 through 6.

On May 9, 2022, SBA filed its Response to the appeal. (Response).

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $ 61,552.50 in requested PPP loan forgiveness? 13 CFR 134.1210.

JA1301

EXHIBIT B

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) loan program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).  Other types of entities, such as nonprofit organizations and housing cooperatives, also could be eligible under certain circumstances.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan (EIDL) and a PPP loan, but could not utilize the loans for the same purpose.  15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  15 U.S.C. § 636(a)(36)(G).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee.  15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan ("Second Draw") were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.  15 U.S.C. § 636(a)(37)(A)(iv).

### II.    PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).  In general, a PPP borrower may obtain forgiveness, up to the

JA1302

EXHIBIT B

full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

## <u>FINDINGS OF FACT AND ANALYSIS</u>

After careful consideration of the entire record (Exhibit List attached and incorporated herein), a preponderance of the evidence establishes:

---

[1] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1303

<u>EXHIBIT B</u>

On April 15, 2020, Appellant's application was approved for a PPP loan by Lender in the amount of $61,552.50 and the loan was dispersed to Appellant.

On December 11, 2021, Appellant filed PPP Loan Forgiveness Application Form 3508EZ, seeking full loan forgiveness of the PPP loan.

SBA reviewed the matter and issued its Final SBA Loan Review Decision to the Lender who subsequently provided the decision to Appellant on January 14, 2022. That decision recommended $0.00 of the loan be forgiven. SBA provided the following reasons and rational for its decision:

**SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. When reviewing the uploaded documentation, it is noted that the Borrower is engaged in lending. From the Borrower business description, the Borrower is "in the business of acquiring qualified Retail Installment Contracts for flight training programs (primarily Private Pilot and Instrument training) which are sold by flight schools". Additionally, the 2019 Business Tax Return demonstrates $5,209,322 in notes receivable. Further, the 2019 Profit and Loss Statement shows 90% of revenue derives from Finance Charge Income. As a result, the borrower has been deemed ineligible to participate in the Paycheck Protection Program due to engaging in credit intermediation.** (AR pg 13).

SBA further detailed the reasons for its denial as follows:

After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. When reviewing the uploaded documentation, it is noted that the Borrower is engaged in lending. From the Borrower business description, the Borrower is "in the business of acquiring qualified Retail Installment Contracts for flight training programs (primarily Private Pilot and Instrument training) which are sold by flight schools". Additionally, the 2019 Business Tax Return demonstrates $5,209,322 in notes receivable. Further, the 2019 Profit and Loss Statement shows 90% of revenue derives from Finance Charge Income. As a result, the borrower has been deemed ineligible to participate in the Paycheck Protection Program due to engaging in credit intermediation. (AR at 7).

In its Appeal Petition, Appellant makes the following statement: "[T]he SBA's use of the Lending Exclusion is manifestly contrary to the CARES Act. When a court reviews an agency's construction of a statute it administers, it should first ask whether Congress "has directly spoken on the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S.

JA1304

EXHIBIT B

837, 842 (1984). If "the intent of Congress is clear, that is the end of the matter." Id. To be sure, Congress delegated authority to the SBA to issue regulations in accordance with the CARES Act. See 15 U.S.C. § 9012. But such agency guidance cannot be "given controlling weight [if it is] manifestly contrary to the statute." Mylan Pharms., Inc. v. U.S. Food & Drug Admin., 454 F.3d 270, 274 (4th Cir. 2006) (quoting Chevron, 467 U.S. at 843–844). "

"The CARES Act is clear that in determining eligibility for PPP loans, "any business concern… shall be eligible…if the business employs less than 500 employees." 15 U.S.C. § 636(a)(36)(D) (emphasis added). The term "'any' naturally carries an expansive meaning." SAS Inst., Inc. v. Iancu, 138 S. Ct. 1348, 1354 (2018). It "refers to a member of a particular group or class without distinction or limitation" and, in this way, "implies every member of the class or group." Id. (emphasis in original) (quoting Oxford English Dictionary (3d ed., Mar. 2016) (alterations omitted)). And by specifying "any business concern," Congress made clear that "the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." DV Diamond Club of Flint, LLC v. Small Bus. Admin., 960 F.3d 743, 747 (6th Cir. 2020) (denying stay of district court's grant of injunction in favor of plaintiffs challenging SBA first-draw loan denial)."

(App-1 at 5-6)

Appellant further argues:" Denying forgiveness on the ground that Borrower was ineligible for a PPP Loan in the first place violates notions of fundamental fairness and due process, and the SBA should be estopped from relying on such grounds. The fact that Borrower already received approval of its PPP Loan (necessarily meaning Borrower was eligible), and then was denied forgiveness on the basis that it was not eligible violates notions of fundamental fairness and due process. The SBA should be estopped from relying on this ground in the SBA Decision. Courts have held that where an administrative agency has established a system for review, it "is constitutionally bound to administer that system in a manner consistent with established concepts of due process." Brandt v. Hickel, 427 F.2d 53, 56 (9th Cir. 1970) (discussing the Bureau of Land Management). Due process requires that a party who is adversely affected by a

JA1305

EXHIBIT B

decision by such agency "be afforded proper notice of action to be taken or which has been taken." Id. (citing Best v. Humboldt Placer Mining Co., 371 U.S. 334 (1963); Shields v. Utah Idaho Central R.R., 305 U.S. 177 (1938)). It also requires that "notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests." 11 Id. The same protections should apply to the SBA's review of PPP Loan forgiveness applications. Here, Borrower filed its forgiveness application in December 2020. After hearing nothing for over a year, it then received the SBA Decision denying forgiveness without Borrower having notice of, or a chance to challenge, the SBA's abrupt and unilateral ineligibility determination."

(App-1 at 10-11).

On May 9, 2022, SBA filed its response to the appeal. 13 CFR 134.1208. That response addresses the two points in Appellant's Appeal Petition: "To the extent Appellant challenges the validity of SBA's First Interim Final Rule for the PPP14 ("First IFR"), which specifically applied 13 C.F.R. § 120.110(b) to PPP loans, or SBA's interpretation that the CARES Act 5 applied 13 C.F.R. § 120.110(b) to PPP loans, ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized that such challenges are not properly before OHA. Therefore, OHA cannot invalidate SBA's regulations and interpretations and should apply those authorities to its review. OHA has recognized the limited scope of its authority and has repeatedly held that it "is not the proper forum for a challenge to the validity of a regulation." Matter of Cognitive 4 Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020). 5 CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B). 6 Professional Services, Inc., Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. See 13 C.F.R. § 134.102."); accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc., SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); Nations Incorporated, Appellant re: Technical and Management Services Corporation, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); International Ordinance, Inc., Appellant, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")"

(Response at 5-6).

JA1306

EXHIBIT B

Case 1:23-cv-00948-EDA Document 24-4 Filed: 07/26/24 Page 25 of 12 PageID #:353
Case 1:22-cv-08948-DA Document 24 Filed: 07/26/24 Page 25 of 12 PageID #:353

Docket No. 1021077106

Further, the SBA went on to address Appellant's assertion that SBA had already approved the loan., as follows:" Appellant's second argument is that, since it "already received approval of its PPP Loan (necessarily meaning [Appellant] was eligible)" SBA should now be "estopped" from denying full forgiveness on the basis that Appellant was not eligible for a PPP loan. (Dkt. No. 1, p. 10) However, these assertions, are incorrect as a matter of fact and law. Because Congress intended that the PPP provide relief to America's small businesses as expeditiously as possible, for purposes of the PPP, Congress explicitly placed the PPP under the SBA's existing Section 7(a) loan program and stated that PPP loans are to be provided "under the same terms, conditions, and processes" as other Section 7(a) loans unless otherwise specified. CARES Act, § 1102(a), 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B))." (Response at 16).

…

"Under the PPP loan making process, a small business seeking a PPP loan submitted an application to an authorized lender which certified as to eligibility, then the lender determined whether the borrower was eligible based, in part, on reliance on the certifications, and whether it wished to make the loan. 85 Fed. Reg. 20812. If so, the lender submitted a guarantee application to the SBA, and upon issuance of an SBA loan number the lender disbursed the loan proceeds to the borrower. Id. at 20814 SBA did not make an eligibility determination. Appellant has provided no documentation indicating that SBA determined the Appellant eligible for the Loan at any time. Instead, the Administrative Record and legal authorities demonstrate that the borrower was responsible for self-certifying its eligibility, the lender was responsible for reviewing the certifications to determine eligibility, and that from the time the loan forgiveness application was submitted by the Lender to SBA (which is when eligibility came under SBA's purview to review), SBA questioned Appellant's eligibility to receive the Loan. (AR 7-11, 13-14, 116-121). Based on the authorities cited, OHA should find that SBA did not determine Appellant to be eligible." (Response at 17).

Appellant describes its business as follows:" Borrower has been licensed and operated since 1999 as a Sales Finance Agency (License #904) by the State of Illinois Department of Financial and Professional Regulation ("IDFPR"). See Exhibit 5 (most recent license).

"Sales finance agency" is defined as "a person engaged, in whole or in part, in the business of purchasing or making loans upon the security of retail installment contracts or retail charge agreements. The term includes, but is not limited to, banks, trust companies, private bankers and industrial banks authorized to do business and to accept deposits in this State, if so engaged."

JA1307

EXHIBIT B

815 Ill. Comp. Stat. § 405/2.13. Borrower acts only as a purchaser of retail installment contracts and does not "mak[e] loans" upon the security of such contracts. Borrower manages installment contract repayment terms strictly in accordance with Illinois State Finance statutes and regulations. Moreover, Borrower does not now and has never held a Consumer Loan License, nor has Borrower made loans to originators of retail installment contracts. Therefore, the SBA committed a clear error of fact, as Borrower's main purpose is not lending.

And crucially, the SBA's Decision did not provide any reasoning or cite to any source for the concept that Borrower should have known it was ineligible for its PPP Loan in April 2020. (App-1 at 13-14)

After review of the record, I find that Appellant is the holder of notes payable which it has purchased from various flight instruction companies. As such, it falls under the prohibition in 13 CFR 120.110(b). Further, although that provision was already in effect via the SBA 7(a) program requirements (see below), the First IFR was also in effect on the date of the application and disbursement of the loan occurred. (85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020). Additionally, the notion that SBA approved the loan at the time of loan dispersal is totally inconsistent with the purposes and operation, as pointed out in **APPLICABLE LAW AND POLICY, above;** and in the SBA Response.

I take note of the fact that the CARES Act does identify PPP loans as falling under the SBA 7(a) loan programs as described above. P.L. 116-136 (March 27, 2020), §1102. 7(a) Loan Program. Thus, the rules and regulations attendant upon 7(a) loans, except as modified by the PPP specific rules and regulations must govern PPP loans.

Eligibility is defined by the Administrator of the Small Business Administration pursuant to the Emergency Rulemaking Authority conferred by Section 1114 of the CARES Act. That section states that the Administrator shall issue regulations to carry out this title, thereby delegating the rulemaking authority for the PPP loan program to the Administrator. Thereafter, pursuant to the

JA1308

EXHIBIT B

Administrative Procedures Act, (5 USC Section 500, et seq.) the Administrator has applied the existing SBA loan regulations and has promulgated additional rules and regulations to implement the PPP loan program. The SBA says that it has applied those rules and regulation to the instant loan.

Those rules and regulations show that Appellant is ineligible to receive a PPP loan. SBA, using its loan eligibility rules (SBA SOP 50 10 6 Part 2, Section A, Chapt. 3 effective 10/1/2020, 13 CFR §110) has placed limitation on what kinds of business entities may receive loans, including PPP loans. Moreover, when Congress reauthorized and re-funded the PPP program in December 2020, and again in March 2021, it added to the business types that could qualify for PPP loans. (Coronavirus Response and Relief Supplemental Appropriations Act, Pub.L. 116-260 (12/27/2020); and American Rescue Plan Act of 2021, Pub.L. 117-2 (3/11/2021). In this manner, Congress implicitly recognized that SBA rules and regulations provided for limitations in the type of entities that might qualify for PPP loans. Congress added to the types of businesses were charitable non-profit organizations, housing cooperatives, and destination marketing organizations. However, Congress did not add the category of financial businesses primarily engaged in lending, investments, or engaged in financing or factoring. That type of entity remains generally ineligible for PPP loans.

I find that the SBA has correctly applied its rules and regulations in its finding that the Appellant was and is ineligible to receive a PPP loan because an entity in the business in which it is engaged is ineligible to receive such a loan. Therefore, the loan at issue in this appeal is not eligible for forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any error of law or fact. As such, the final SBA loan review decision is upheld. Appellant is not entitled to loan forgiveness.

## CONCLUSION OF LAW

The Appellant failed to establish that the final SBA loan review decision was based on a clear error. Appellant is not entitled to loan forgiveness. This is an initial agency decision. However,

JA1309

EXHIBIT B

unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service.  13 C.F.R.§ 134.1211. In accordance with the regulations, you may file a request for reconsideration within 10 calendar days after service of the Judge's decision under 13 C.F.R. § 134,1211©(1). You can serve your petition via email to OHAPPPInquiries@sba.gov. It is borrower's responsibility to review the rules and procedures.

## **ORDER**

For the reasons discussed above, the final SBA loan review decision is AFFIRMED.  The Appellant is not entitled to PPP loan forgiveness.  The final SBA loan review decision is upheld. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

_John L. Shailer_
**John L. Shailer**
Administrative Judge

EXHIBIT B

Docket No. 1021077106

## EXHIBIT LIST

1.  Administrative Record (AR pg ___)

2.  Appeal Petition (App. -1 at ____)

3.  SBA Response to Appeal (Response at ___)

4.  Exhibits 1 through 6 provided by Appellant (Exhibit ___)

JA1311

EXHIBIT B

# United States Small Business Administration  Office of Hearings and Appeals

PETITION FOR RECONSIDERATION

Pilot Finance, Inc,                                   Issued:  June 30, 2022

      Petitioner                          Decision No. PFR-1021077106

RE: Appeal of Pilot Finance, Inc.,
No. PPP-1021077106

## DECISION

### APPEARANCES

Jared Tully, Esq. Frost Brown Todd, LLC on behalf of Pilot Finance, Inc., for Petitioner.

Pedro Lopez-Bergollo, Esq., Office of General Counsel, for Respondent Small Business Administration

## DECISION

### I.  Introduction and Jurisdiction

On June 2, 2022, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a petition for reconsideration (PFR) in the above-captioned matter from SBA (Petitioner).  The PFR seeks OHA's reconsideration pertaining to a Paycheck Protection Program (PPP) Loan No. 1021077106 and OHA's initial decision, denying the appeal of the same PPP Loan No.

OHA has jurisdiction to decide this PFR.  *See* 13 C.F.R. Part 134, Subpart L.

On February 11, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision that found Pilot Finance, Inc. (Petitioner) to be ineligible for forgiveness of its PPP loan of $61,552.50.  *See* Administrative Record (hereinafter "AR") at Supp. Pg. 1-2.

JA1312

EXHIBIT D

Petitioner filed a timely appeal petition in this matter with the Office of Hearings and Appeals (OHA) of SBA, which received the petition on February 11, 2022. Petitioner's appeal was assigned to me, and on May 24, 2022, I denied the appeal petition. ( Decision).

On June 2, 2022, Petitioner filed a petition for reconsideration of my decision, which petition was also assigned to me; OHA decides petitions for reconsideration under the authority of 13 C.F.R. Part 134, Subpart L. (Petition).

Accordingly, I issued a Notice and Order on June 8, 2022, that established procedures for adjudication of the petition.

SBA did not file a response to the PFR.

## II. Background

### A. Cares Act 2020

On March 25, 2020, in response to the economic distress caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, 134 Stat. 281 (2020). Among other provisions, the CARES Act established the PPP at Section 1102. The Program lends money to eligible small businesses to assist them in covering expenses and making payroll for their workers to keep them employed during the pandemic. If the loan funds are used for certain specified expenses, the borrowers can receive full forgiveness of the loan.

### B. PPP Loan Application, Forgiveness, and Appeal

In April 2020, the Appellant submitted a Paycheck Protection Program (PPP) Borrower Application. On April 30, 2020, the Appellant was approved for a PPP loan by First Midwest Bank (Lender) in the amount of $ 61,552.50 and received the loan proceeds. On December 8, 2020, the Appellant submitted a PPP Loan Forgiveness Application Form 3508S through the Lender. The Lender determined the Appellant should not receive loan forgiveness.

On December 2, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding Appellant ineligible for PPP loan forgiveness.

On December 15, 2021, the Appellant filed its appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for PPP loan forgiveness.

JA1313

EXHIBIT D

On January 18, 2022, the undersigned issued a Notice and Order requiring the filing of the Administrative Record by February 8, 2022, providing for the Appellant to Object to the same by February 18, 2022, and allowing for SBA to respond to any objection by March 7, 2022.

On January 24, 2022, the Administrative Record ("AR") was filed. The Appellant did not object to the AR, which preclude SBA from filing a Response. In the absence of an Objection, the undersigned admits the AR as filed.

On March 30, 2022, I issued the initial Decision in this matter, AFFIRMING the Final SBA Loan Review Decision, which is summarized as follows. See, Decision.

On April 9, 2022, Petitioner timely filed its petition for reconsideration. (PFR)

SBA's denial of forgiveness was described in the Final SBA Loan Review Decision:

**SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:**
**After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring.**
**When reviewing the uploaded documentation, it is noted that the Borrower is engaged in lending. From the Borrower business description, the Borrower is "in the business of acquiring qualified Retail Installment Contracts for flight training programs (primarily Private Pilot and Instrument training) which are sold by flight schools". Additionally, the 2019 Business Tax Return demonstrates $5,209,322 in notes receivable. Further, the 2019 Profit and Loss Statement shows 90% of revenue derives from Finance Charge Income. As a result, the borrower has been deemed ineligible to participate in the Paycheck Protection Program due to engaging in credit intermediation.** ( AR pg. 13)).

In Petitioner's appeal letter, it, *inter alia,* averred that: .
"[T]he SBA's use of the

Lending Exclusion is manifestly contrary to the CARES Act. When a court reviews an agency's construction of a statute it administers, it should first ask whether Congress "has directly spoken on the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). If "the intent of Congress is clear, that is the end of the matter." Id. To be sure, Congress delegated authority to the SBA to issue regulations in accordance with the CARES Act. See 15 U.S.C. § 9012. But such agency guidance cannot be "given controlling weight [if it is] manifestly contrary to the statute." Mylan Pharms., Inc. v. U.S. Food & Drug Admin., 454 F.3d 270, 274 (4th Cir. 2006) (quoting Chevron, 467 U.S. at 843–844). "

JA1314

<u>EXHIBIT D</u>

"The CARES Act is clear that in determining eligibility for PPP loans, "any business concern…

shall be eligible…if the business employs less than 500 employees." 15 U.S.C. § 636(a)(36)(D)

(emphasis added). The term "'any' naturally carries an expansive meaning." SAS Inst., Inc. v.

Iancu, 138 S. Ct. 1348, 1354 (2018). It "refers to a member of a particular group or class without

distinction or limitation" and, in this way, "implies every member of the class or group." Id.

(emphasis in original) (quoting Oxford English Dictionary (3d ed., Mar. 2016) (alterations

omitted)). And by specifying "any business concern," Congress made clear that "the SBA's

longstanding ineligibility rules are inapplicable given the current circumstances." DV Diamond

Club of Flint, LLC v. Small Bus. Admin., 960 F.3d 743, 747 (6th Cir. 2020) (denying stay of

district court's grant of injunction in favor of plaintiffs challenging SBA first-draw loan

denial)."

(App-1 at 5-6)

In my Decision, I explained that:
(Decision at 6).

 SBA filed its response to the appeal. (13 CFR 134.1208). That response addresses the two
points in Appellant's Appeal Petition: "To the extent Appellant challenges the validity of
SBA's First Interim Final Rule for the PPP14 ("First IFR"), which specifically applied 13
C.F.R. § 120.110(b) to PPP loans, or SBA's interpretation that the CARES Act 5 applied 13
C.F.R. § 120.110(b) to PPP loans, ALJs are bound by SBA regulation and interpretation of its
governing statutes and regulations. OHA has consistently recognized that such challenges are
not properly before OHA. Therefore, OHA cannot invalidate SBA's regulations and
interpretations and should apply those authorities to its review. OHA has recognized the
limited scope of its authority and has repeatedly held that it "is not the proper forum for a
challenge to the validity of a regulation." Matter of Cognitive 4 Paycheck Protection Program,
85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and
effective April 15, 2020). 5 CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. §
636(a)(36)(B). 6 Professional Services, Inc., Case No. BDPE-545 at *3 (March 10, 2015)
("Questions about the validity or constitutionality of regulations do not fall within the
jurisdiction of the Office of Hearings and Appeals, and I may not consider them. See 13 C.F.R.
§ 134.102."); accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc., SBA No. 3838 at *2
(October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be

JA1315

EXHIBIT D

"beyond the jurisdiction of this Office."); Nations Incorporated, Appellant re: Technical and Management Services Corporation, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); International Ordinance, Inc., Appellant, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")"

(Response at 5-6).

Further, the SBA went on to address Appellant's assertion that SBA had already approved the loan., as follows:" Appellant's second argument is that, since it "already received approval of its PPP Loan (necessarily meaning [Appellant] was eligible)" SBA should now be "estopped" from denying full forgiveness on the basis that Appellant was not eligible for a PPP loan. (Dkt. No. 1, p. 10) However, these assertions, are incorrect as a matter of fact and law. Because Congress intended that the PPP provide relief to America's small businesses as expeditiously as possible, for purposes of the PPP, Congress explicitly placed the PPP under the SBA's existing Section 7(a) loan program and stated that PPP loans are to be provided "under the same terms, conditions, and processes" as other Section 7(a) loans unless otherwise specified. CARES Act, § 1102(a), 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B))." (Response at 16).

…

"Under the PPP loan making process, a small business seeking a PPP loan submitted an application to an authorized lender which certified as to eligibility, then the lender determined whether the borrower was eligible based, in part, on reliance on the certifications, and whether it wished to make the loan. 85 Fed. Reg. 20812. If so, the lender submitted a guarantee application to the SBA, and upon issuance of an SBA loan number the lender disbursed the loan proceeds to the borrower. Id. at 20814 SBA did not make an eligibility determination. Appellant has provided no documentation indicating that SBA determined the Appellant eligible for the Loan at any time. Instead, the Administrative Record and legal authorities demonstrate that the borrower was responsible for self-certifying its eligibility, the lender was responsible for reviewing the certifications to determine eligibility, and that from the time the loan forgiveness application was submitted by the Lender to SBA (which is when eligibility came under SBA's purview to review), SBA questioned Appellant's eligibility to receive the Loan. (AR 7-11, 1314, 116-121). Based on the authorities cited, OHA should find that SBA did not determine Appellant to be eligible." (Response at 17).

In its Petition for Reconsideration (Petition), Petitioner makes the following assertions:

JA1316

EXHIBIT D

**(FIRST) I. The OHA Made a Legal and Factual Error in Determining that the Lending Exclusion was Applicable to Borrower.**

In the Initial Decision, the OHA responded to Borrower's argument that the Lending Exclusion set forth in 13 C.F.R. § 120.110(b) is inapplicable to its PPP Loan application. It reasoned that (1) the Lending Exclusion was "already in effect via the SBA 7(a) program requirements"; and (2) the First Interim Final Rule ("FIFR") – which, for the first time, incorporated the Lending Exclusion into the PPP and CARES Act – "was also in effect on the date of the application and disbursement of the loan occurred." Initial Decision at 9. Both of these reasons are erroneous.

First, the CARES Act provides, "Except as otherwise provided in this paragraph, the Administrator *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection [Section 7(a)]." 15 U.S.C. § 636(a)(36)(B) (emphasis added); *see* SBA Response at 10. But the OHA fails to acknowledge the operative word in this statute: the Administrator *may* guarantee PPP Loans pursuant to the procedures of the Section 7(a) Program. Contrary to the Initial Decision, the word "may" indicates that Section 7(a) rules and regulations are not *automatically* applicable to the PPP Program; rather, the Administrator has the discretion to decide which ones are applicable. *See United States v. Rodgers,* 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). And the Administrator did not do so with respect to § 120.110 until April 15, 2020.

**(SECOND) II.   The OHA's Justification for the SBA's Loan Approval Process is Unfounded.**

In the Initial Decision, the OHA disavowed any notion that the SBA "approved the loan at the time of loan dispersal," explaining that any such notion is "totally inconsistent with the purposes and operation" of the CARES Act. Initial Decision at 9. Rather, both the SBA and OHA

JA1317

EXHIBIT D

explain that Borrowers are required to "self-certify" their eligibility for a PPP Loan. However, based on the language of the PPP Loan documents, this claim is arbitrary, capricious, and unsupportable.

## ANALYSIS

The documents cited refer to documents found in the docket of the underlying appeal, and the Petition for Reconsideration (PFR). Those documents are listed in the Exhibit List at the end of this Decision on Reconsideration.

### A. Standard of Review

A PFR may be granted by OHA upon a "clear showing of an error of fact or law material to the decision." *Id*. A PFR does not allow an unsuccessful party an additional opportunity to argue its position, and the PFR must rise from a manifest error of law or mistake of fact. *Size Appeal of Envtl. Prot. Cert. Co., Inc.*, SBA No. SIZ-4935, at 2 (2008) (PFR). "A [PFR] is appropriate only in limited circumstances, such as situations where OHA has misunderstood a party, or has made a decision outside the adversarial issues presented by the parties." *Id.*, citing *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (*quoting Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Thus, "[t]he moving party's argument must leave the Administrative Judge with the definite and firm conviction that key findings of fact or conclusions of law of the earlier decision were mistaken." *Size Appeal of TKTM Corp.*, SBA No. SIZ-4905 (2008) (citing *Size Appeal of Taylor Consultants, Inc.*, SBA No. SIZ-4775, at 11-12 (2006)); *Size Appeal of KVA Elec., Inc.*, SBA No. SIZ-5057 (2009).

### ANALYSIS SPECIFIC TO PETITION

Petitioner argues the meaning of the word "may". Applying the rules and regulations as they apply to Section 7(a) loans is exactly what SBA did, thus assuring that rules and regulations were in place at the beginning of the PPP loan program. The "may" is for use by SBA, and does not inure to the benefit of Petitioner. SBA did issue the First IFR in which it restated many of the 7(a) regulations and modified others to make them more specific to the PPP. To adopt Petitioner's position is to say that there were no rules or regulations in place until April 15, 2020, and that it was just the wild west before that time. That is not the case.

With Petitioner's second point, Petitioner fails to understand the self-certification concept inherent in the PPP loan program. That process was clearly described in the implementing

JA1318 EXHIBIT D

legislation, and was clearly necessary to achieve the legislative goal of quickly getting the PPP funds into the hands of those qualifying businesses. The detailed review was deferred until the forgiveness stage of the program.

I note that these same arguments were essentially put forth in the initial appeal, and Petitioner has not made any new arguments.

Accordingly, I cannot find any clear showing of an error of fact or law material to the decision. say it was clear error of fact or law material to the Decision below.

Therefore, I DENY Petitioner's Petition for Reconsideration.

This is a final decision by the agency.

## C. Conclusion

For the foregoing reasons, the instant PFR is DENIED. 13 C.F.R. § 134.1211(c). Unless SBA Administrator elects to review this decision pursuant to 13 C.F.R. § 134.1211(c)(3)&(d), this decision becomes the SBA's final decision 30 calendar days after its service. *See* 13 C.F.R. § 134.1211(c).

**SO ORDERED,**

*John L. Shailer*

**JOHN L. SHAILER**
**Administrative Judge**

JA1319

EXHIBIT D

**EXHIBIT LIST**

1. Administrative Record (AR at __)
2. Initial Decision issued May 24, 2022, 2022 (Decision at __)
3. Petitioner's/Appellant's below Appeal Document (App-1)
4. Petition for Reconsideration filed, June 2, 2022 (Petition)
5. Supplemental Administrative Record Filed April 12, 2022 (Supp.)

**United States Small Business Administration**
**Office of Hearings and Appeals**

---

**PAYCHECK PROTECTION PROGRAM**
**APPEAL OF**:

**Ramey & Schwaller, LLP**

      Petitioner

Appealed from
SBA PPP Loan No. 8297247700
*Ramey & Schwaller, LLP,* Decision No. PPP-
8297247700 (2022)

Issued: **October 31, 2022**

Decision No. **PFR-8297247700**

---

Appearances:
      William P. Ramey, III, Ramey LLP, for the Petitioner.
      Arlene Embrey, Attorney for the Small Business Administration.

## RECONSIDERATION DECISION

    After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-8297247700, the appeal petition of Ramey & Schwaller, LLP (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

    On April 16, 2020, the Petitioner (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application. On May 1, 2020, the Petitioner was approved for a PPP Loan Number 8297247700 by Zions Bancorporation, N.A. dba Amegy Bank (Lender) in the amount of $249,300.00, and having executed a PPP Promissory Note received the loan proceeds.

    The Petitioner submitted a PPP Loan Forgiveness Application Form 3508 through the Lender. On April 23, 2021, the Lender determined the Petitioner should receive no loan forgiveness.

    On February 24, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and any subsequent loan forgiveness.

    On March 15, 2022, the Petitioner filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Petitioner is

JA1321

eligible for PPP loan forgiveness.

On May 3, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by May 24, 2022, providing for the Petitioner to file an Objection to the same by June 6, 2022, and allowing for SBA to file a Response to the Petition by June 20, 2022.

On May 22, 2022, the AR was filed. On June 1, 2022, the Petitioner filed an Objection to the AR. On June 2, 2022, an Order was issued amending the AR to include Exhibit A and Exhibit B attached to the Petitioner's Motion to Supplement the Record.

On June 16, 2022, SBA moved for extension of time to file a Response. On June 16, 2022, an Order was issued providing for SBA to file a Response to the Petition no later than June 30, 2022.

On June 28, 2022, SBA filed a Response to the Petition. The AR was closed on June 30, 2022, at 5:00 PM Eastern.

On August 11, 2022, an initial OHA decision was issued affirming the SBA denial of PPP loan forgiveness.

On August 22, 2022, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-8297247700. On August 22, 2022, the undersigned issued a Notice and Order allowing for SBA to file a response to the Request for Reconsideration no later than September 9, 2022. SBA did not file a Response and the AR was closed on September 9, 2022, at 5:00 PM Eastern.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-8297247700 contains clear error of law or fact to allow the Appellant $249,300.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

JA1322

Pursuant to the CARES Act, SBA promulgated regulations concerning PPP eligibility, including Interim Final Rule (IFR) #1.[1] *See* 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020, which addresses PPP ineligibility of an applicant with an owner of 20 percent or more of the equity of the applicant is presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction. 85 Fed. Reg. at 20812.

The SBA 7(a) loan program provides that businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude are ineligible for SBA business loans. 13 C.F.R. § 120.110(n)

Through issuance of Standard Operating Procedures (SOP), sub-regulatory guidance, SBA issued SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(13) which further clarifies that SBA cannot provide financial assistance to businesses with associates who are "currently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction." SOPs are SBA Standard Operating Procedures, as issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov in the online library. 13 C.F.R. § 120.10.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

## II.     PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. §

---

[1] https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program

JA1323

636m(e)(3).  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs.  15 U.S.C. § 636m(d)(8).  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(g).  Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan; (2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; (3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, (4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. § 134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[2].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law.  13 C.F.R. § 134.1210.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1203.

## III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. § 134.1211(c).

---

[2] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1324

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. § 134.1211(c)(3).

## FINDINGS OF FACT AND ANALYSIS

### I.     Background

### The CARES Act & EAA

On March 27, 2020, the CARES Act became law. P.L.116-136.  It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1).  SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a).  The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).  For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(A) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b)  (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15,

2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2). Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

On December 27, 2020, the EAA became law. P.L.116-260 (December 27, 2020).

## Petitioner's PPP Loan Application and Lender Approval

William Ramey is the managing partner and 100% owner of the Petitioner. (AR pp. 14, 1086, 1075, and 1090). On April 16, 2020, the Petitioner submitted a PPP Borrower Application Form 2483 to the Lender. (AR pp. 1074-1082).

On May 1, 2020, the Petitioner was approved for a PPP loan by the Lender in the amount of $249,300.00, and having executed a PPP Promissory Note received the loan proceeds on May 11, 2020. (AR pp. 19, 21-42, and 1084).

## Petitioner's PPP Loan Forgiveness Application and SBA Review

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. §636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. §636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).

The Petitioner submitted a PPP Loan Forgiveness Application Form 3508 to the Lender, along with some documentation and the required certification concerning the validity of expenses. (AR pg. 1083).

JA1326

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On April 23, 2021, the Lender determined the Petitioner should receive no loan forgiveness. (AR pg. 19).

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Petitioner was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On May 24, 2021, SBA notified the Lender it was reviewing the Petitioner's PPP loan and requested documentation in support of the loan. (AR pp. 1072-1073). After review of the Appellant's loan documentation, Lender decision rationale, and responses, SBA found: "that William Ramey, the managing partner of the law firm, was charged with a felony charge of attempted sexual assault in December 2019. That charge remained open as of October 2020." (AR pg. 14).

On February 24, 2022, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness. SBA held "the Borrower, or a 20% owner of the Borrower, was subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or was incarcerated, or on probation or parole, at the time of loan application. To be eligible for a PPP loan, each Borrower must certify on the Form 2483, Question 5, that the Borrower and any owner of the Borrower did not have a criminal record which would cause the loan to be ineligible." (AR pp. 19-20).

**<u>Petitioner's Argument in Favor of Loan Forgiveness</u>**

Through written statement, the Petitioner argued in favor of full loan forgiveness, as follows:

1) William Ramey is not under indictment (Petition – Attachment 1)
2) William Ramey is likewise not "under a criminal information" (Petition – Attachment
3) There is no waiver of indictment for the complaint filed against William Ramey and the same cannot be and is not a charging instrument for the felony alleged" (Petition – citing *State v. Drummond, 501 S.W.3d 78, 81-82 (Tex. Crim. App. 2016)*)
4) The regulatory language cited by SBA cannot properly be construed to encompass the complaint filed against William Ramey
5) The Appellant answered question #5 on the PPP Borrower Application truthfully, as a judicial finding determined the allegation against William Ramey was false (Petition – Attachment 3). (Petition of Appellant).

**SBA Response**

In a Response, argued the Appellant's existing felony indictment at the time of applying for this PPP loan precluded eligibility and any subsequent loan forgiveness. (Response of SBA).

As it relates the felony indictment noted by SBA, on December 13, 2021, the U.S. District Court, Southern District of Texas, Houston Division issued an Order granting summary judgment in Case No. 4:20-cv-02890 for the Lender against William Ramey finding William Ramey was "subject to [a] criminal information" on September 25, 2019. (AR pp. 14, 1086, 1075, and 1090) and that prior to April 16, 2020, William Ramey had been arrested, an emergency protective order was issued, and the arraignment of William Ramey was postponed 3 times. (AR pp. 1086-1098).

On February 28, 2022, William Ramey, through counsel, filed a notice of appeal for the summary judgement granted in Case No. 4:20-cv-02890. (AR – Objection Ex. A).

**Initial OHA Decision**

On August 11, 2022, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness finding the Appellant ineligible for the PPP loan. This matter is before the undersigned following a Request for Reconsideration filed by the Petitioner alleging errors of law and/or fact.

The Initial Decision in this matter held SBA properly determined the Appellant was an ineligible recipient for a PPP loan, and not eligible for PPP loan forgiveness. The Appellant's request for Reconsideration raises assignments of legal and factual error in the prior decision, each addressed below.

## II. Errors of Fact Asserted by the Petitioner

The Petitioner asserts an assignment of legal/factual error in the Initial Decision, in relevant part, as follows:

-"A criminal complaint issued in aid of an arrest warrant (like the one here) is not a charging instrument for a felony under Texas law. But all the words used in the regulation are charging instruments, as the catch-all provision makes clear. If the SBA intended to disqualify individuals subject to arrest or arrest warrants from PPP loans, it would have said so. Thus, the criminal complaint here was not an information because an information is a charging instrument for a felony under Texas law. And a criminal complaint is likewise not an "other means" by which to "formally charge" Ramey in Texas. It is at the opposite end of the spectrum in criminal law." (Petition for Reconsideration pg. 3).

JA1328

-" *The criminal information is no-billed.* In fall of 2021, a grand jury convened in Harris County, Texas, returned a no bill, finding there was no probable cause that Ramey committed the charge of attempted sexual assault. **Ramey was never indicted, arraigned, or made subject to a criminal information."** (Petition for Reconsideration pg. 8).

-"R&S sued Amegy in Texas state court, seeking damages for breach of fiduciary duty, breach of contract, conversion, money had and received, and quasi-estoppel. Amegy removed the case to federal court based on diversity jurisdiction. The parties then engaged in discovery, and each moved for summary judgment.

The district court granted Amegy summary judgment, concluding that R&S falsely answered the question on the Amegy loan agreement intended to track the SBA's disqualification rules: that is, whether Ramey was "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction." It held that Ramey was subject to an "information" under Texas law, and therefore did not answer the disqualification question on the Amegy loan form truthfully. In this opinion, the district court did not address whether Ramey was subject to "any other means by which formal criminal charges are brought in any jurisdiction." The district judge entered final judgment dismissing "this case."

R&S moved for reconsideration. Because of Judge Gilmore's retirement, that motion was assigned to a new district judge, the Honorable Kenneth Hoyt. Judge Hoyt apparently implicitly rejected the "information" theory, and instead stated that Ramey was subject to an "other means by which formal criminal charges are brought." In Judge Hoyt's view, the regulatory was a "catch-all" phrase to ensure "complete candor" from the applicant for the loan. Thus, Amegy was justified in accelerating R&S's loan." (Petition for Reconsideration pp. 8-9).

-"**The complaint filed against Ramey is not an "Information**."…"The complaint could never serve as an information as there was no waiver of indictment." Petition for Reconsideration pp. 12-16).

-"**The Criminal Complaint also does not qualify as an "other means" by which formal criminal charges can be brought**."… ""Other means" by which "formal criminal charges can be brought"" is not defined anywhere in the regulation. There are several strong indications, however, that it is not a capacious provision designed to ensure "complete candor" that Judge Hoyt seems to have believed. First, the regulatory history of the provision shows that the "other means" language was not intended to expand the scope of the exclusion to non-indictments, but to make sure that outlier states who call those documents something else were captured. *See Global Cross Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 48 (2007) (holding that regulatory history can illuminate meaning of clauses)." Petition for Reconsideration pp. 16-17).

JA1329

### III. PPP Loan Eligibility and Forgiveness

SBA denied the Petitioner's loan forgiveness application by holding the Petitioner's "that William Ramey, the managing partner of the law firm, was charged with a felony charge of attempted sexual assault in December 2019. That charge remained open as of October 2020."

The Petitioner's initial and Reconsideration argument finds error, based upon the following rationale: The District Court hearing the civil action filed by the Petitioner was wrong when it decided the Petitioner was ineligible for this PPP loan, as the owner of the Petitioner was subject to an "other means by which formal criminal charges are brought" when applying for this PPP loan.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including IFR #1.[3] *See* 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020). IFR #1 advised all PPP lenders and applicants of the basic PPP eligibility criteria and explicitly stated: "**You are ineligible for a PPP loan if, for example *** iii. [a]n owner of 20 percent or more of the equity of the applicant is ... presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction ***."** **(Emphasis added)** 85 Fed. Reg. at 20812.

IFR #1 further informed all PPP lenders and applicants that: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.3

13 C.F.R. § 120.110(n) renders "**businesses with an Associate who** is incarcerated, on probation, on parole, or **has been indicted for a felony or a crime of moral turpitude**" ineligible for SBA business loans. **(Emphasis added).**

SBA SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(13), cites 13 C.F.R. § 120.110(n) in affirming SBA cannot provide financial assistance to businesses with associates who are "**currently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction**." **(Emphasis added).**

Under SBAs 7(a) business loan program, these rules were applicable when the PPP program was promulgated and were a component of PPP eligibility to the extent they weren't inconsistent with the criminal history questions on the PPP loan application. *See* CARES Act §1102, 134 Stat. at 287 (codified at 15 U.S.C. §636(a)(36)(B)) (providing that "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans).

---

[3] https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program

JA1330

Here, the record clearly reflects that at the time of applying for the PPP loan, William Ramey, the managing partner and 100% owner of the Petitioner, was "subject to [a] criminal information". The pending felony indictment/charge precluded the Petitioner from PPP loan eligibility pursuant to IFR #1 and 13 C.F.R. § 120.110(n)

SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. *See, e.g.*, CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)) ("An eligible recipient shall be eligible for forgiveness…"); Paycheck Protection Program – Requirements – Loan Forgiveness, 85 Fed. Reg. 33004-05 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan … the loan will not be eligible for forgiveness."); Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (Feb. 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

Here, the Petitioner's PPP loan was seized by the Lender. The Petitioner sued the Lender in Federal District Court to recover the PPP loan proceeds. Judge Kenneth Hoyt issued a decision in Cause No. 4:20-cv-02890 which found that Ramey (owner of Petitioner) was subject to an "other means by which formal criminal charges are brought." In Judge Hoyt's decision, the regulation prohibiting the Petitioner from PPP loan eligibility was a "catch-all" phrase to ensure "complete candor" from the applicant for the loan. Thus, Judge Hoyt found the Lender justified in accelerating the Petitioner's PPP loan. Further, this issue raised by the Petitioner has been reviewed by the District Court in Houston, Texas, and resolved consistent with the final SBA loan review decision. (*See* Objection – Ex. A).

The eligibility requirements set forth in IFR #1 and 13 C.F.R. § 120.110(n) precluded the Petitioner from PPP loan eligibility. SBA denied PPP loan forgiveness for these very reasons. The AR and decision of Judge Hoyt clearly reflect this Petitioner was not eligible for this PPP loan or any loan forgiveness due to a pending felony indictment when the Petitioner applied for this PPP loan.

The final SBA loan review decision is well-supported in finding the Appellant is a finance company that was ineligible to receive a PPP loan, thus ineligible to receive PPP loan forgiveness. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law.

Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the final SBA loan review decision. The final SBA loan review decision is **AFFIRMED.**

JA1331

## CONCLUSIONS OF LAW

The Petitioner had an owner subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges were brought in in the State of Texas prior to applying for the PPP loan.

The Petitioner was ineligible for PPP Loan Number 8297247700 and is precluded from receiving PPP loan forgiveness.

The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for PPP Loan Number 8297247700.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

SO ORDERED.

_____

**Brian J. Haring**
U.S. Administrative Law Judge

JA1332

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

SOUTHERN HILLS ACCEPTANCE, INC.,

     Appellant.

Appealed from
  SBA PPP Loan No. 6549117008

Issued: September 23, 2022

Docket No. PPP-6549117008

| | |
|---|---|
| Appearances: | Dean Morrow, Self-represented for the Appellant<br>Wesley Nell, Office of the General Counsel, for the U. S. Small Business Administration |
| Before: | Angela J. Miranda, Administrative Law Judge |

## DECISION

### I.    Introduction

#### A. Summary of This Decision

This decision AFFIRMS the United States Small Business Administration's (SBA) final loan review decision in which the SBA's Office of Capital Access (OCA) denied forgiveness of the Payroll Protection Program (PPP) loan in the amount of $263,235.00 (Loan) that the Appellant received from The Park National Bank (Lender). SBA determined that the Appellant was ineligible for forgiveness of the PPP loan because the Appellant was not eligible for a PPP loan in the first instance. The OCA determined the Appellant was a business primarily engaged in lending, investments, or financing or factoring and therefore not eligible for a PPP loan based on SBA's application of 13 C.F.R. § 120.110 and an Interim Final Rule (IFR) published in April 2020. The Appellant has not established that the final SBA loan review decision was based on clear error of fact or law (13 C.F.R. § 134.1210).

#### B. Procedural History

On October 26, 2021, the Appellant, Southern Hills Acceptance, Inc., filed an appeal petition challenging a final SBA loan review decision, that is undated but found a final forgiveness amount of $0.00 on a PPP loan of $263,235.00. On December 6, 2021, I issued an Amended Notice and Order that established a schedule of submissions for this appeal. Pursuant to the Amended Notice and Order, SBA was to file the administrative record no later than December 27, 2021, the Appellant was allowed until January 5, 2022 to file any objections to the administrative record, and the SBA was allowed until January 20, 2022 to file a response to the appeal petition. The administrative record was filed on December 22, 2021. SBA filed its response to the Appellant's

Docket No. PPP-6549117008

appeal petition on January 20, 2022.

No further filings were allowed by the schedule in the Notice and Order. No further filings were received after January 20, 2022. This record is now closed and ready for a decision.

## II.    Jurisdiction

SBA's Office of Hearings and Appeals (OHA) has authority to hear appeals filed by borrowers to challenge final SBA loan review decisions that deny forgiveness of a loan to a borrower (12 C.F.R. §§ 134.102(w) and 134.1202(a)). Appeals are available after the issuance of a final SBA loan review decision that finds a borrower was ineligible for a PPP loan, or portion thereof or was ineligible for forgiveness of that loan, or any portion thereof (C.F.R. § 134.1201(b)). An appeal must be filed within 30 days of a borrower's receipt of the decision (13 C.F.R. § 134.1202(a)).

Appellant asserted it received the final SBA loan review decision on September 27, 2021, and timely filed the appeal petition on October 26, 2021. In the appeal petition, as more fully addressed below, the Appellant challenges SBA's denial of its loan forgiveness application based on SBA's determination that Appellant was ineligible for the Loan. Accordingly, jurisdiction is established, and OHA has authority to hear this appeal.

## III.    Legal Framework/Statement of Law

### A. Background of the Paycheck Protection Program

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law (P.L. 116-136, March 20, 2020, 134 Stat. 281). The CARES Act provided economic relief from the impact of the Coronavirus Disease 2019 (COVID-19). Section 1102 created the Paycheck Protection Program (PPP) to provide small businesses with access to low-interest loans to pay their employees and meet other costs during the COVID-19 crisis (15 U.S.C. § 636(a)(36)).[1] In passing the CARES Act, Congress amended Section 7(a) of 15 U.S.C. § 636(a) (the Small Business Act) and placed administration of the PPP under the SBA. The PPP provided fully guaranteed SBA loans for eligible small businesses, individuals, and nonprofit organizations (15 U.S.C. § 636(a)(36)(B)). PPP loans were made by private lenders (15 U.S.C. § 636(a)(36)(F)(ii) and (iii)). If the loan proceeds were used as required, an eligible recipient of a PPP loan would be eligible for forgiveness of the indebtedness of a covered loan (15 U.S.C. § 636m(b)). Forgiveness of the indebtedness is allowed when the loan funds are used for specified costs that were incurred and payments that were made during the covered period ((15 U.S.C. § 636m(b)(1)-(8)). Those specified costs include payroll costs (15 U.S.C. § 636m(b)(1)). Other payments include the payment of interest on any covered mortgage obligation, covered rent obligation, and covered utility payments (15 U.S.C. § 636m(b)(2)-(4)).

Congress amended the PPP multiple times.[2] Most noteworthy were the changes made in the

---

[1] The CARES Act provided $349 billion for the Paycheck Protection Program.

[2] The first amendment was the passage of the Paycheck Protection Program and Healthcare Enhancement (PPP Enhancement) Act (P.L. 116-139, April 24, 2022, 134 Stat 620) about one month after the CARES Act was signed into law. The PPP Enhancement Act provided an additional $310 billion funding for the PPP and included additional enhancements to target certain small business. Shortly thereafter, the Paycheck Protection Program Flexibility (PPP Flexibility) Act of 2020 was enacted, changing key provisions of the PPP by extending the period to use the PPP funds

2

Docket No. PPP-6549117008

Consolidated Appropriations Act, 2021, (P.L.116-260, December 27, 2020, 134 Stat. 1182), which included the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues (Economic Aid) Act. In the Economic Aid Act, Congress amended the CARES Act by substituting the term "eligible recipient" with "eligible entity," by increasing appropriations for the PPP,[3] allowing a portion of that increase for new first draw PPP loans and establishing second draw loans, and by unambiguously stating that 13 C.F.R. § 120.110 specifically applied to the PPP.

PPP loans were made available to borrowers, through lenders, in two draws, first through the CARES Act as originally enacted and then through amendment to the CARES Act. First draw PPP loans were made pursuant to 15 U.S.C. § 636(a)(36). Second draw loans were made pursuant to 15 U.S.C. § 636(a)(37).

### B. Increased Eligibility for Paycheck Protection Program Loans (First Draw Loans)

Although the PPP was deemed by Congress to be a temporary program under the Small Business Act, upon its enactment, the CARES Act provided for increased eligibility for certain small businesses and organizations (15 U.S.C. § 636(a)(26)(D)). The increased eligibility applied not only to small business concerns, but to any business concern, nonprofit organization, housing cooperative, veterans organization and certain Tribal business concerns that employed not more than the greater of 500 employees or, if applicable the size standard in number of employees established by the Administration for the industry in which the business concern and those additionally eligible entities operates (15 U.S.C. § 636(a)(36)(D)(i)(I) and (II)). Additionally, eligibility for PPP loans was extended to sole proprietors, independent contractors, and eligible self-employed individuals (15 U.S.C. § 636(a)(36)(D)(ii)).

The CARES Act allowed guarantee of covered loans made loans under the same terms, conditions, and processes as under SBA's already existing 7(a) loan program, except as otherwise provided in the Act (15 U.S.C. § 636(a)(36)(B)).

### C. Rules Promulgated Under the Paycheck Protection Program

Upon enacting the PPP on March 27, 2020, Congress required the SBA to issue implementing regulations within fifteen days and allowed it to do so on an emergency basis (Pub. L. 116-136, Sec. 1114; 134 Stat. 281; codified at 15 U.S.C. § 9012). Prior to January 2021, SBA published twenty-three (23) interim final rules.[4] Some were jointly issued with the Department of Treasury.[5] The Department of Treasury published one interim final rule (IFR).[6] In January 2021, SBA published an IFR implementing the provisions of the Economic Aid Act (86 Fed. Reg. 3692 (January 14, 2021)). To date, SBA has published a total of 32 IFRs.[7]

### D. Rules Promulgated Under the Paycheck Protection Program and the Small Business

---

from eight-weeks to 24 weeks provided funds are used by December 31, 2020, by extending the loan maturity date from two years to five years for loans made after June 5, 2020, and by reducing the threshold for payroll costs from 75% to 60% (P.L 116-142, June 5, 2020, 134 Stat. 641)

[3] With passage of the Economic Aid Act, Congress authorized a total program level of $806,450,000,000 to SBA to provide guaranteed loans under the PPP.

[4] 85 Fed. Reg. 3692, 3692.

[5] *Id.*

[6] *Id.*

[7] *See,* PPP lender information (sba.gov) (last visited August 3, 2022).

3

JA1335

Docket No. PPP-6549117008

### Administration's Ineligibility Rule in Title 13 of the Code of Federal Regulations (13 C.F.R. § 120.110)

In accordance with Congress's requirement to issue implementing regulations for the PPP, the SBA promulgated an IFR, which became effective April 15, 2020 (85 Fed. Reg. 20811 (April 15, 2020)). This IFR, commonly referred to as SBA's First IFR, applied to applications submitted under the PPP through June 30, 2020 (*Id*.). Among other things,[8] this IFR specifically provided that "(b)usinesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110."[9]

Section 120.110 of the Title 13 regulations, which was in effect prior to passage of the CARES Act, excluded certain types of businesses from participation in SBA business loans (13 C.F.R. § 120.110(a)-(s)). One type of business that was excluded by this regulation, non-profit businesses, was specifically designated in the CARES Act as eligible for PPP loans (15 U.S.C. § 636(a)(36)(D)(i)). Consistent with the CARES Act, SBA immediately made an exception for non-profit concerns consistent with the CARES Act.[10]

In a subsequent IFR (85 Fed. Reg. 23450 (April 28, 2020)), SBA further modified the applicability of 13 C.F.R. § 120.110 to PPP loans when it waived the requirement of subparagraph (j) and determined government owned hospitals would be eligible for PPP loans.[11] In that same IFR, the SBA determined that subparagraph (g) would also be waived and businesses that receive revenue from legal gaming would be eligible for PPP loans.[12] When deciding to waive these provisions of the ineligibility regulation at 13 C.F.R. 120.110, the Administrator, in consultation with the Secretary of the Treasury, deemed these waivers were appropriate to effectuate the purposes of the CARES Act.[13]

The SBA again modified the applicability of 13 C.F.R. § 120.110, when the Administrator relaxed the exclusion related to subparagraph (n), excluding businesses with an Associate who has a criminal history, with the publication of another IFR (85 Fed. Reg. 38301 (June 26, 2020) that made changes to its First IFR.[14]

Congress did not expressly exclude entities listed in 13 C.F.R. §120.110 from eligibility for PPP loans until December 27, 2020, with the passage of the Consolidated Appropriations Act, 2021 (P.L. 116-260 December 27, 2020, 134 Stat 1182). As indicated earlier, the Economic Aid Act was included in the Consolidated Appropriations Act wherein Congress amended the "Definitions" section of 15 U.S.C. § 636(a)(37), which covers second draw loans, to exclude from eligibility any entity that is a type of business concern described in 13 C.F.R. §120.110 (P.L. 116-260, Sections 301 – 348; 134 Stat. 1182, codified at 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa)).

Amendments to the PPP contained in the Economic Aid Act established different effective dates. Section 348 of the Economic Aid Act, which is entitled "Effective Date; Applicability,"

---

[8] This First IFR referenced SBA's SOP 20 10 5(K) found at https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf, which is SBA's policy statement regarding its interpretation of 13 C.F.R. § 120.110.
[9] 85 Fed. Reg.20811, 20812.
[10] *Id.*
[11] 85 Fed. Reg. 23450, 23451.
[12] *Id.*
[13] *Id.*
[14] 85 Fed. Reg. 38301, 38302.

4

Docket No. PPP-6549117008

states, "Except as otherwise provided in this Act, this Act and the Amendments made by this Act shall take effect on the date of enactment of this Act and apply to loans and grants made after the date of enactment of this Act." Many of the amendments covering 7(a) loans in the Economic Aid Act, including those addressed in Sections 304, 305, 308, 310, 313, and 314, provided that their effective date was as if they had been included in the CARES Act (Public Law 116-36; 134 Stat. 281), thus rendering them effective March 27, 2020. Section 311, the Section that excluded entities listed in 13 C.F.R. § 120.110 from eligibility for PPP loans, contained no provision on its effective date and thus became effective on December 27, 2020, the effective date of the Economic Aid Act.

After the passage of the CARES Act, as small businesses applied for PPP loans some applicants were denied loans based on 13 C.F.R. § 120.110 and some of those businesses sued in federal courts challenging SBA's reliance on this regulation to determine eligibility for PPP loans. As a result of those challenges, some Courts of Appeals, and many Federal District Courts, issued rulings related to SBA's application of 13 C.F.R. § 120.110 to PPP loans. As discussed below, it appears a split may be developing among the circuits that have specifically ruled on this issue.

On May 15, 2020, the Court of Appeals for the Sixth Circuit issued an Order in *DV Diamond Club of Flint, LLC v. Small Business Administration* (*DV Diamond Club of Flint, LLC*), wherein the Court addressed the question of the proper interpretation of recent legislation that was intended to alleviate economic hardship caused by the COVID-19 pandemic.[15] Basing its decision on 15 U.S.C. § 636(a)(36)(D) and its finding that Congress intended to increase PPP loan eligibility for certain small businesses and organizations during the covered time, the Court found the SBA Administrator exceeded its authority when it adopted the "ineligibility rule" of 34 C.F.R. § 120.110 and applied that rule to PPP loans. The Court applied the *Chevron*[16] test, finding that Congress was unambiguous when it determined "any business concern" is eligible for a PPP loan so long as it met the size criteria specified in 15 U.S.C. § 636(a)(39)(D)(i)(I) and (II).

About ten months later, on March 4, 2021, the Court of Appeals for the Second Circuit, issued an Opinion that also addressed the applicability of this regulation to PPP loans in *Pharaohs GC v. United States Small Business Administration* (*Pharaohs GC*).[17] This Court also applied the *Chevron* test but found that the SBA Administrator did not exceed its authority when it adopted the "ineligibility rule" of 34 C.F.R. § 120.110. This Court determined the CARES Act unambiguously gave the SBA administrator the discretion to adopt the long-standing rules applicable to loans under the Small Business Act Section 7(a) because Congress indicated that PPP loans were to be made under the "same terms, conditions, and processes" as 7(a) loans, except as otherwise provided in the CARES Act and because the SBA Administrator was given emergency rule making authority under the CARES Act.[18]

This question was also addressed in the Seventh Circuit in a series of court cases, starting in the United States District Court for the Eastern District of Wisconsin. On May 1, 2020, the District Court ruled, in its Decision and Order in *Camelot Banquet Rooms, Inc. v. United States Small*

---

[15] *DV Diamond Club of Flint, LLC v. Small Business Administration*, 960F.3d 743 (6th Cir., May 15, 2020).

[16] *Chevron, U.S.A., Inc., V. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed. 694 (June 25, 1984).

[17] *Pharaohs GC v. United States Small Business Administration*, 990 F. 3d 217 (2nd Cir., March 4, 2021).

[18] The Second Circuit, like the Sixth Circuit, determined that only the first step in the *Chevron* test was necessary in its analysis. However, the Second Circuit added that even if Congress's intent was ambiguous, its outcome in the decision would not change because the second step in the *Chevron* test would also be met, as SBA's interpretation was permissible within the limits imposed by its statutory and regulatory context.

5

JA1337

Docket No. PPP-6549117008

*Business Administration* (*Camelot Banquet Rooms, Inc.*) that the SBA Administrator exceeded its authority when it applied the ineligibility rule of 13 C.F.R. § 120.110(p) to deny an applicant's application for a PPP loan.[19] In this case the Court looked broadly at the purpose of the PPP, the Small Business Act, and the regulation itself. Having identified the purposes of these statutes and regulation, the Court found that Congress did not single out any industry for ineligibility under the CARES Act and while it occasionally identifies some specific provisions of the Small Business Act that were removed and some specific regulations that were specifically addressed in the CARES Act, it cannot be inferred that Congress combed through all SBA 7(a) regulations that it did not expressly address in the CARES Act. Therefore, the Court found that SBA exceeded its statutory authority when it applied the ineligibility regulation at 13 C.F.R. § 120.110(p) to PPP loans.

Although the SBA appealed the District Court's decision to the Court of Appeals for the Seventh Circuit, SBA subsequently filed a joint motion to dismiss the appeal, which was granted by the Court Appeals on August 5, 2020.[20] SBA's joint motion to dismiss the appeal at the Court of Appeals is an indication that the SBA was no longer challenging the District Court's ruling in the Seventh Circuit and the SBA approved the business's applications for PPP loans. After the dismissal of the appeal at the Court of Appeals, the SBA agreed to process these business's applications for forgiveness without regard to 13 C.F.R. § 120.110(p).[21]

When the CARES Act was amended to allow second draw PPP loans, some of these same applicants applied for and were denied second draw loans. When Congress amended the CARES Act, making second draw loans available, Congress explicitly indicated that the ineligibility regulation at 13 C.F.R. § 120.110 applied to second draw PPP loans.[22] The Seventh Circuit eventually explained, the challenges to SBA's application of this ineligibility regulation to PPP loans based on statutory and administrative law were no longer viable claims with the amendment to the CARES Act and the Constitutional claim that was based on a First Amendment challenge was not likely to succeed.[23] Therefore, the Court ruled it was unlikely the PPP loan applicant could establish the SBA exceeded its authority by applying the ineligibility regulation to second draw loans.

This series of cases in the Seventh Circuit establish, through clearly defined case law, that the SBA Administrator exceeded its statutory authority when it applied the ineligibility regulation, at 13 C.F.R. § 120.110, to first draw PPP loans. As such, it is expected that the Administrator accept this ruling and acquiesce to the rule of law established in the Seventh Circuit, or appeal to a higher court, namely, the United States Supreme Court. Although review of these cases in the Seventh Circuit clearly establish the Administrator acquiesced to this interpretation when it filed a motion to dismiss this appeal, accepted the rulings of the District Court, approved PPP loans for these businesses, and agreed to process the businesses' applications for forgiveness without regard to 13

---

[19] *Camelot Banquet Rooms, Inc., v. United States Small Business Administration,* 458 F.Supp.3d 1044 (E.D. Wisc., May 1, 2020).

[20] *Camelot Banquet Rooms, Inc. v. United States Small Business Administration,* 2020 WL 6481792 (7th Cir., August 5, 2020).

[21] *Camelot Banquet Rooms, Inc. v. United States Small Business Administration,* 555 F.Supp.3d 598, 603 (E.D. Wisc., August 19, 2021).

[22] *Camelot Banquet Rooms, Inc. v. United States Small Business Administration,* 14 F.4th 624 (7th Cir., September 15, 2021).

[23] *Camelot Banquet Rooms, Inc. v. United States Small Business Administration,* 14 F.4th 640 (7th Cir., January 26, 2022).

6

C.F.R. § 120.110, the SBA's subsequent refusal to follow the circuit law in this circuit is evidence of agency intracircuit nonacquiescence.[24]

In May 2020, the DC Circuit Court of Appeals reviewed the applicability of 13 C.F.R. § 120.110(r) to PPP loans in *American Association of Political Consultants v. United States Small Business Administration*.[25] However, that decision was made on constitutional challenges based on First and Fifth Amendments challenges, and the Court found those constitutional challenges were not likely to succeed. This Court's decision was not based on statutory and administrative law claims as were the decisions in the Second, Sixth, and Seventh Circuits, and therefore this ruling is distinguishable from other Court of Appeals rulings.

The SBA often cites a December 22, 2022, Eleventh Circuit Court of Appeals Decision as relevant to this analysis, *In Re Gateway Radiology Consultants*.[26] However, the SBA's reliance on that case is misplaced. In that appeal, the Eleventh Circuit addressed the application of 13 C.F.R. § 120.150, commonly known as the non-bankruptcy eligibility rule to PPP loans.

### E. Eligibility for Second Draw Payroll Protection Program loans

The availability for second draw PPP loans was established with the passage of the Economic Aid Act on December 27, 2020. This Act provided additional funding for second draw loans available to prior recipients of PPP loans (now referred to as first draw PPP) and for some new first draw loans (86 Fed. Reg.3692, 3693). The eligibility for second draw PPP loans was modified as related to size of the business entity, reducing the maximum number of employees from 500 to 300 and added a condition based on a reduction of gross receipts of the entity during a comparable or specified quarter from 2019 (15 U.S.C. § 636(a)(37)(A)(iv)(I)).

The requirement in the CARES Act, to use payroll costs incurred during the one-year period prior to the application carried over for second draw and new first draw loans, but in the interim rule related to the PPP as amended by the Economic Aid Act, new PPP borrowers who obtained a loan in 2021 were allowed to use 2019 or 2020 as the base period to determine the maximum loan amount (86 Fed. Reg.3692, 3693).

### F. Forgiveness for Payroll Protection Loans

Upon enactment of the CARES Act, Congress authorized the SBA to forgive PPP loans (15 U.S.C. § 636m). Loan forgiveness is available to eligible loan recipients provided loan proceeds were spent on allowable business-related costs (*Id*.). To apply for forgiveness, PPP loan borrowers were required to apply through the private lender servicing their loan (15 USC §§ 636m(e), 636m(f), and 636m(l)). On about August 4, 2021, SBA launched a direct forgiveness portal which allowed borrowers whose lender was participating in direct forgiveness to apply for forgiveness directly with SBA.[27]

---

[24] *See, Administrative Agency Intracircuit Nonacquiescence,* 85 Colum. L. Rev. 582 (April 1985).
[25] 810 Fed. Appx 8 (May 26, 2020).
[26] 983 F.3d 1239 (11th Cir., December 22, 2020).
[27] SBA PPP loan forgiveness, PPP loan forgiveness (sba.gov), (last visited March 7, 2022).

7

JA1339

Docket No. PPP-6549117008

## G. Borrower Appeals of Decisions Denying Eligibility and Forgiveness

Borrowers may not directly appeal a decision made by a lender to the OHA (13 C.F.R. § 134.1201(c)). A borrower may appeal to the OHA only after the SBA's Office of Capital Access (OCA) issues a final loan review decision that finds that the borrower: (1) was ineligible for a PPP loan, (2) was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses, (3) is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA, and/or (4) is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA (13 C.F.R. § 134.1201(b)).

Lenders disbursed PPP loans expeditiously, based upon the certification of a borrower that the loan amount conformed with the CARES Act and its amendments, without review by SBA. Lenders were responsible for conducting reviews of forgiveness applications and submitting that review to SBA. If SBA decided to review a Lender's PPP forgiveness determination, SBA included a review of eligibility as part of SBA's forgiveness review.

SBA published an IFR on June 1, 2020, whereby the SBA Administrator provided notice regarding loan review procedures and related borrower and lender responsibilities (85 Fed. Reg. 33010 (June 1, 2020)).

## IV. Issue(s)

Whether the Appellant has demonstrated that the SBA erred, as a matter of fact or law, in determining that Appellant was excluded from eligibility for a first draw PPP loan by application of 13 C.F.R. §120.110(b), which provides financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors, are ineligible for SBA loans and by the application of SBA's First IFR, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, published on April 15, 2020, wherein, SBA announced this regulation is applicable to PPP loans.

## V. Arguments

### A. Appellant's Appeal Petition and Supporting Documents

The Appellant presents two arguments in challenging the final SBA loan review decision. First, the Appellant argues that the ineligibility rule at 13 C.F.R. § 120.110 conflicts with the CARES Act and is not in accordance with law, thereby violating section 706(2)(A) the Administrative Procedure Act (APA). Second, the Appellant argues that SBA acted arbitrarily and capriciously in violation of the APA by failing to contemporaneously (or even subsequently) articulate a rational foe applying the ineligibility rule to PPP loans and then granting exemptions from the rule for some PPP borrowers but not companies engaged in the business of lending.

In support of those arguments, the Appellants points to the CARES Act itself that directed that during the covered period, any small business concerns including nonprofit organizations, veterans organizations or Tribal businesses, **shall be eligible** to receive a covered loan if the business concern or other designated organization meets the specified size requirements related to number of employees. The Appellant also cites case law from multiple courts, including the U.S. Supreme

8

Docket No. PPP-6549117008

Court, that have ruled administrative agencies must comply with the APA by providing evidence that relevant date was examined, and that the agency articulated a satisfactory explanation for its action that includes a rational connection between the facts found and the choice made. Furthermore, the agency must be able to articulate adequate reasons for its decisions.

The Appellant argues the SBA never articulated why it chose to apply its normal rules for Section 7(a) loans to PPP loans, why it specifically decided that 13 C.F.R. § 120.110(b) should be applied, and why it then decided that some of the enumerated businesses included in the ineligibility rule were later deemed some business types eligible for PPP loans when those businesses were not specifically addressed in the CARES Act as were nonprofit organizations. The Appellant essentially argues SBA's action of waiving the ineligibility rules for some of the enumerated business types but not all of them is evidence of SBA's arbitrariness and capriciousness when administering the PPP loan program.

### B. Objections

The Appellant did not file any objections to the administrative record.

### C. SBA's Response

Although SBA is not required to file a response in these appeals (13 C.F.R. § 134.1208(a)), a response to the Appellant's appeal petition was timely filed. The response in this appeal mirrors the response filed in other appeals wherein SBA argues that OHA has no authority to invalidate SBA's regulations or interpretation of the CARES Act, the Appellant has failed to meet its burden of proof to demonstrate that the final SBA loan review decision was based on clear error of fact or law, and the Appellant has acknowledged it operates a business in lending. Therein, SBA argued that Congress placed the PPP under SBA's existing Section 7(a) loan program, businesses engaged in lending have always been ineligible for Section 7(a) loans, and since the Appellant did not dispute it is a business in lending it was ineligible for a PPP loan and therefore ineligible for forgiveness of that loan.

In support of its argument that OHA is not the proper forum to invalidate SBA's First IFR or its interpretation of the CARES Act, SBA contends OHA's ALJs are bound by SBA's regulation and interpretation of its governing statutes and regulations and OHA has consistently recognized that such challenges are not properly before the OHA. SBA cites numerous SBA cases that recite that assertion and cites a PPP loan decision that followed that reasoning, *Family Choice Financial*.[28] In conclusion SBA argued that an OHA decision "invalidating SBA's regulations based on district court decision or circuit court decisions would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness."

In support of its argument that the Appellant failed to meet its burden of proof that SBA committed an error or law of fact, SBA argued that Congress placed the PPP under SBA's existing Section 7(a) loan program, businesses engaged in lending have always been ineligible for Section 7(a) loans, and since the Appellant did not dispute it is a business engaged in lending it was ineligible for a PPP loan and therefore ineligible for forgiveness of that loan. SBA asserts Congress

---

[28] SBA only gives the docket number for this decision, PPP-8323747201, and does not provide a date of decision or a copy of the decision. The decision does not appear to be posted by OHA (OHA Decisions (sba.gov), last visited September 12, 2022) and it is unknown if the Appellant is able to access a copy of that decision.

9

Docket No. PPP-6549117008

gave it broad authority to make rules and regulations governing the granting and denial of applications for financial assistance by the administration and Congress specifically placed the PPP loan program under SBA's Section 7(a) loan program. In so doing, PPP loans under the CARES Act are to be guaranteed under the same terms, conditions, and processes as a loan under Section 7(a). One term and condition of loans under Section 7(a) is the application of the regulation at 13 C.F.R. § 120.110, which was made applicable to PPP loans with the publication of the First IFR for PPP loans.

Subparagraph (b) of that regulation establishes financial businesses, primarily engaged in the business of lending, such as banks, finance companies, and factors, are ineligible for Section 7(a) loans and SBA argues that those businesses are also ineligible for PPP loans. SBA contends it's rational for limitation is found in its Standard Operating Procedure 50 10 4, Subpart A, chapter 2, at 29, which explains, lender businesses are excluded because they "create and hold interest-bearing notes" for income/earnings, which is contrary to SBA's philosophy that a "small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property."

In support of this argument, SBA relies upon an Eleventh Circuit Court of Appeals case, other cases decided by Federal district courts, and at least one bankruptcy court. The Circuit Court case is *In Re Gateway Radiology Consultants, PA*. The District Court decisions are from a case in the Southern District of California and the Western District of New York.[29] The Bankruptcy Court was in the District of Maine.[30] None of these court rulings address the issue of the ineligibility rule at 13 C.F.R. § 120.110, but each address the non-bankruptcy eligibility rule at 13 C.F.R. § 120.150.

SBA argued the Appellant's reliance on the Sixth Circuit Court of Appeals Decision in *DV Diamond Club of Flint, LLC* was misplaced as that decision is not dispositive since it was an appeal by the SBA from a district court's grant of a preliminary injunction. SBA further argued and the Sixth Circuit merely determined that the sexually oriented business in that case was likely to succeed on the merits of its case but did not decide the case on its merits.

SBA focused its argument on the conclusion that the appellant was ineligible for forgiveness because the Appellant was ineligible for the PPP loan due to its operating a business that is specifically excluded from eligibility. Furthermore, the SBA points out the Appellant has not denied it is a finance business. In conclusion, the SBA asserts that the Appellant has failed to meet its burden of proof to demonstrate that the final SBA loan review decision was based on a clear error of fact or law and OHA should affirm the SBA's decision.

**D. Administrative Record**

The hearing record includes the Appellant's appeal petition, the administrative record filed by SBA, and SBA's response to the Appellant's appeal petition.

The administrative record shows the Appellant applied for a PPP loan on April 6, 2020

---

[29] *United States SBA v. Vestavia Hills, Ltd,* 2021 U.S. Dist. Lexis 58373 (March 26, 2021) and D*iocese of Rochester v. United States SBA,* 466 F. Supp.3d 363 (W.D.N.Y 2020).

[30] *In Re Penobscot Valley Hosp*., 626 B.R. 350, (Bankr. D. Me. 2020)

10

Docket No. PPP-6549117008

(Administrative Record (AR), pp. 2379-2384, duplicated at 2401-2406).[31] It also includes a Lender Application, which is identified as an application used to collect identifying information about the Lender, the Applicant, loan guaranty request, sources and uses of funds, and the proposed structure [of the loan] (AR, pp. 2419-2420). The direct instruction on the form indicates "no paper version of this form is required or permitted to be submitted." (AR, p. 2419). Neither the administrative record nor SBA's response to the Appellant's appeal petition explains why SBA included this document as part of the administrative record. The administrative record includes what appears to be a printed copy of an online PPP Loan forgiveness application (AR, pp.2421-2426). This forgiveness application is dated July 13, 2020, a date before the closing date of the Appellant's covered period (April 24, 2020 to October 8, 2020) (AR, pp. 2426 and 2422).

On January 5, 2021, the SBA notified the Lender it was undertaking a review of the Appellant's PPP loan (AR, pp. 2369-2370).[32] On January 29, 2021, the Lender provided a response to the SBA's PPP Request for Production of Documents and Information, dated January 25, 2021 (AR, pp. 2371-2372). In that email response, the Lender indicated that a copy of the Appellant's audited financial statement for 2019 was attached and the narrative of the email indicated that "Southern Hills is a private consumer finance company located in Southern California" with the purpose to "purchase auto retail instalment contracts from car dealerships." (AR, p. 2362).

## VI.  Findings of Fact

1. The Appellant applied for a PPP loan on April 6, 2020, in the amount of $263,235.00, which was approved by the Lender.

2. The Appellant submitted an application for forgiveness of the PPP loan on July 13, 2020, requesting forgiveness in the amount of $263,235.00.

3. Upon review of the forgiveness application, the Lender recommended that the full loan be forgiven.

4. SBA undertook a review of the Appellant's application for forgiveness, which included a review of eligibility for the PPP loan.

5. SBA issued a final loan review decision that is not dated, but which denied forgiveness of the PPP loan. Instead, the final loan review decision found the Appellant was not eligible for a PPP loan when the loan application was accepted by the Lender and when the Lender disbursed the loan proceeds to the Appellant.

## VII.  Analysis

### A. SBA's Final Loan Review Decision

The SBA's Office of Capital Access denied Appellant's loan forgiveness application after

---

[31] The administrative record includes 2,432 pages and a two-page Table of Contents that is unnumbered. The number in the cites to the administrative record are identified by the page number associated with the PDF document electronically filed, which is two pages more than the numbered page indicated in the Table of Contents.
[32] This notice indicates the Lender submitted it Lender Forgiveness Decision to the SBA on September 8, 2020, also a date prior to the close of the Appellant's covered period (AR, p. 2369).

11

Docket No. PPP-6549117008

determining that Appellant was not eligible for forgiveness because it was ineligible for the Loan in the first instance. In its determination, the SBA concluded that Appellant was ineligible for the Loan because a review of the documentation provided led SBA to conclude that the borrower is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring (AR, pp. 19-20).

### B. Burden of Proof and Standard of Review

The Appellant's appeal is properly before me pursuant to 13 C.F.R. § 134.1201(b)((1). Appellant bears the burden of proving that the final SBA loan review decision was based on clear error of fact or law (13 C.F.R. § 134.1210).

### C. Analysis

This appeal involves a first draw PPP loan; therefore, the controlling statute is 15 U.S.C. § 636(a)(36). As indicated previously in this decision, although the CARES Act provided for increased eligibility to small businesses, certain organizations, and other individuals, Congress delegated rulemaking authority to the SBA and the SBA Administrator was authorized to proceed with that rule making on an emergency basis. In its First IFR, the Administrator determined that a long-standing regulation (13 C.F.R. § 120.110) applicable to other SBA Section 7(a) loans also applied to the temporary PPP loan program.

Generally, the authority of administrative law judges in administrative proceedings is limited to determining the applicability of statutes and regulations and applying applicable statutes and regulations to the facts of the cases. Consistent with the general principles of administrative law, an administrative agency is required to follow the dictates of the statute. An agency's regulations, which implement, and may supplement the statute, are to be consistent with and no more restrictive than the statute. Although an administrative law judge's authority does not generally include the authority to waive, disregard, or invalidate an agency regulation, once a rule or regulation has been successfully challenged in the appropriate forum (court), an administrative tribunal, like OHA, is bound to follow that forum's decision.[33]

Once a United States Court of Appeals rejects an agency's interpretation of a regulation, the agency is not free to simply ignore the ruling within that court's jurisdiction.[34] If an agency chooses not to follow or apply the law as determined by a Court of Appeals, that agency is operating outside the law.[35] While an ALJ's authority is limited, an ALJ at SBA's OHA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case[36] and this authority includes following the law in a jurisdiction where the Court of Appeals has rendered a decision on a matter before the OHA.

---

[33] *See, e.g. Jones and Laughlin Steel Corp. v. Marshall,* 636 F.2d 32, 33 (3rd Cir. 1980) (directing that when a [Court of Appeals announces a standard in a case that is controlling in a subsequent controversy] that standard is binding on all tribunals and litigants within the jurisdiction of that Court and an agency is not free to apply its own view of the statute in contravention of the precedent of [the] Court).

[34] *Id.; Grant Medical Center v. Hargan,* 875 F.3d 701, 708 (D.C. Cir. 2017); *see also Reich v. Contractors Welding of Western New York, Inc.,* 996 F.2d 1409, 1413 (2d Cir. 1993); *Anderson v. Heckler,* 756 F.2d 1011, 1013 (4th Cir. 1985); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984); *Mary Thompson Hospital v. NLRB,* 621 F.2d 858, 864 (7th Cir. 1980).

[35] *Lopez v. Heckler,* 572 F. Supp. 26, 30 (C.D. Cal. 1984).

[36] 13 C.F.R. §§ 134.218 and 134.1201.

12

Consistent with 13 C.F.R. §§ 134.218 and 134.1201, the authority as an ALJ is to take all appropriate actions to ensure a fair determination of this case. In doing so, the ALJ must consider not only the CARES Act, and its amendments, but also SBA's regulations and rules, even the rules passed under the emergency authority granted by Congress. The ALJ must also consider the relevant interpretations of the law by the appropriate Court of Appeals. Only the Second, Sixth, and Seventh Circuits rendered rulings on the applicability of 13 C.F.R. § 120.110 to the CARES Act, to date. As discussed previously, although the rulings in the Sixth and Seventh Circuits are consistent on this issue, the Second Circuit reached an opposite ruling. In the absence of a ruling by a particular Court of Appeals, SBA's interpretation and application of its regulations and rules is to be recognized as having the force and effect of law unless a federal district court that would otherwise have jurisdiction has rendered a ruling contrary to the SBA's interpretation and application.

In this matter, based on the Appellant's business address, the Appellant operates its business within the Ninth Circuit. The Appellant has not argued that the Ninth Circuit Court of Appeals or any federal court in the Ninth Circuit has ruled that SBA exceeded its authority when it applied 13 C.F.R. § 120.110, and its First IFR, to determine that the Appellant was not eligible for a PPP loan and therefore not eligible for forgiveness of the PPP loan received from the Lender. The Appellant instead relies upon the court rulings in *DV Diamond Club of Flint, LLC, Camelot Banquet Rooms, Inc.,* and *National Association of Home Builders.* As noted earlier in this decision, the Appellant argued that SBA's failure to articulate a reason it decided to apply 13 C.F.R. § 120.110 to PPP loans and it subsequent action of granting waivers for some business types enumerated in that regulation and not others is evidence that the SBA acted and continues to act arbitrarily and capriciously in review of PPP loan forgiveness applications

In contrast, SBA has maintains it argument that the application of this regulation as well as the First IFR to the paycheck protection loan program was within SBA's authority since Congress placed the PPP under the Small Business Act Section 7(a) loan program, and the CARES Act specifically provides that the Administrator may guarantee PPP loans under the same terms, conditions, and processes of that loan program.

In support of its position, SBA's arguments were considered. SBA's argument that OHA has no authority to invalidate SBA's First IFR and its interpretation of the CARES Act is consistent with the limited authorities of ALJs, but it fails to consider the authority of an OHA ALJ as indicated in 13 C.F.R. §§ 134.218 and 134.1201 as discussed previously. SBA's reliance on the PPP decision issued in *Family Choice Financial* to support its argument of limited authority of ALJs is unpersuasive as PPP decisions are not precedential per 13 C.F.R. § 134.1211(e).

SBA's argument that OHA's ALJs should not follow precedents established in district courts or circuit courts because doing so would have an "inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States" is unpersuasive because it disregards the generally accepted principles of our federal judicial system. Despite its advocacy of this rationale, SBA then disregards its own argument by citing federal district court and Court of Appeals decisions in support of its position that SBA's implementation of its First IFR and its interpretation of the CARES Act was within its delegated authority. In so doing, SBA seems to argue established case law from a federal court should be followed only when that case law is consistent with SBA's own interpretations, otherwise the case law should be disregarded as

13

JA1345

irrelevant.[37] For all these reasons, the arguments in SBA's response to the Appellant's appeal petition, are given only limited consideration.

Despite SBA's promotion of some court decisions that support its arguments and the request to disregard any court decisions that does not support its arguments, SBA has failed to cite any court decisions within the Ninth Circuit that have ruled on the application of 13 C.F.R. § 120.110. Instead, SBA relies on the Eleventh Circuit case, *In Re Gateway Radiology*. As stated earlier in this decision, *In Re Gateway Radiology* considers SBA's bankruptcy ineligibility rule and not 13 C.F.R. § 120.110, and SBA's reliance on that case in this administrative appeal is misplaced and unpersuasive.

I have carefully considered the Appellant's arguments and have reviewed the District Court decision, *National Association of Home Builders* as cited by the Appellant. The Court's decision follows the prior Sixth Circuit cases that have found SBA's application of 13 C.F.R. § 120.110 to first draw PPP loans was contrary to the CARES Act. Contrary to SBA's disregard of the Sixth circuit case law, the decision recognizes the prior Sixth Circuit Court of Appeals decision as precedent that is the controlling law in the Sixth Circuit, however, until this interpretation is adopted by other circuits or the Supreme Court it is only guidance within a circuit that has not yet addressed this issue.

The Court in *National Association of Home Builders* addresses SBA's arguments that are presented in this administrative proceeding, and the Court rejects those arguments with sound reasoning. Notably, the Court considered SBA's reliance on the portion of the CARES Act that Congress conferred upon SBA the ability to guarantee covered loans under the same terms, conditions, and processes as other Section 7(a) loans but dismissed that as likely "a catch-all governing procedure otherwise unaffected by the mandate of the CARES Act and the PPP" which does not detract from the broad grant of eligibility.[38] This Court also opines that SBA's reliance on *Gateway Radiology* is not persuasive because that decision addressed a distinct and readily distinguishable question from the issue of applicability of 13 C.F.R. § 120.110.[39] Lastly, this Court's recognition that *DV Diamond of Flint, LLC* as precedent in the Sixth Circuit, undercuts SBA's argument that the ruling in *DV Diamond of Flint, LLC* should not be given any weight because it was merely a ruling on an injunction.[40]

Nonetheless, in the absence of a ruling by a Court of Appeals within an applicable circuit, there is no other relevant interpretation of law to follow consistent with 13 C.F.R. §§ 134.218 and 134.1201 to ensure a fair determination of this appeal. That leaves just SBA's interpretation and application of its regulations and rules to be followed unless and until appealed to a court of proper jurisdiction. Although there appears a split is developing among the Circuits that have addressed this issue, unless and until the issue of the application of 13 C.F.R. § 120.110 is addressed in the Eleventh Circuit, or by the Supreme Court, SBA's interpretation in this appeal cannot be determined to be an error of law or fact **in jurisdictions who have not made rulings on that issue.** Therefore, this record does not establish that the SBA has erred as a matter of law of fact

---

[37] In an email the OHA Assistant Administrator distributed a decision on a Petition for Reconsideration in an appeal of PPP Loan number 7609937004, dated March 10, 2022. That decision on reconsideration deemed the Sixth Circuit's precedent that 13 C.F.R. § 120.110 is not applicable to first draw PPP loans, is irrelevant. Pursuant to 13 C.F.R. § 134.1211(e), the March 10, 2022, decision is not precedential.

[38] *National Association of Home Builders v. United States Small Business Administration,* 2021 WL 4458660 at 8.

[39] *Id.*

[40] *Id.* at 1.

14

Docket No. PPP-6549117008

when it denied the Appellant's application for forgiveness of the first draw PPP loan it received. In the absence of a change in interpretation by the SBA Administrator regarding the applicability of 13 C.F.R. § 120.110 to first draw PPP loans, in jurisdictions where there is no case law to the contrary, the ALJ's authority is limited to the Administrator's interpretation. The relief requested by this Appellant can only be granted by a court with appropriate jurisdiction.

## VIII. Conclusion

Based on the forgoing findings of fact and analysis, the final SBA loan review decision, dated October 26, 2021, is **AFFIRMED.** The Appellant has not established that the final SBA loan review decision was based on clear error of fact or law. The Appellant has not established that the final SBA loan review decision was based on clear error of fact or law. The Appellant was not eligible for a PPP loan and therefore is not eligible for forgiveness of that loan.

## IX. Notice

**This is an INITIAL DECISION.** This decision shall become the **FINAL DECISION** of SBA 30 calendar days after its service unless a request for reconsideration is filed or if the SBA Administrator decides to exercise discretionary authority to review or reverse this decision (13 C.F.R. § 134.1211(b)).

A request for reconsideration may be filed by an Appellant or SBA[41] and must be filed with a petition for reconsideration within 10 calendar days after service of the Judge's decision (13 C.F.R. § 134.1211(c)(1)). A petition for reconsideration should be filed via email sent to OHAPPPinquiries@sba.gov. If a request for reconsideration is received and the SBA Administrator does not exercise discretion to review or reverse the initial decision, OHA will decide the request for reconsideration (13 C.F.R. § 134.1211(c)). The SBA Administrator has the discretion to review or reverse this decision or a reconsidered decision within 30 calendar days after service of this decision or the reconsidered decision (13 CFR §134.1211(d)).

Final decisions may be appealed to the appropriate Federal district court. 13 C.F.R. § 134.1211(g).

**SO ORDERED,** this 23rd day of September 2022.

ANGELA MIRANDA Digitally signed by ANGELA MIRANDA
Date: 2022.09.23 13:33:58 -04'00'

Angela J. Miranda
Administrative Law Judge

---

[41] If SBA files a petition for reconsideration, SBA shall serve a copy of the petition on the Appellant. If the Appellant files a petition for reconsideration, a copy of the petition shall be served upon SBA at pppappealsogc@sba.gov.

15

Docket No. PPP-6523467010

# United States Small Business Administration
# Office of Hearings and Appeals

EXHIBIT
C

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

SSCP Management, Inc.


Appellant

Appealed from
SBA PPP Loan Number
6523467010

Issued: July 6, 2022

Docket No. PPP-6523467010

Appearances: Michael Lockerby, Esq., for Appellant
Kelle Acock, Esq., for SBA

## DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

### II. Background

#### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law.  P.L.116-136 (March 27, 2020).

Appellant applied for a PPP loan on April 3, 2020. (Administrative Record "AR" pp. 38-41).  At the time of its application, Appellant certified it had 24 employees. (AR p. 38). PPP loan number 6523467010 ("the Loan") was disbursed to Appellant by the Lender April 17, 2020 in the amount of $496,742.00. (AR p. 58).

On December 16, 2020, Appellant executed a PPP Loan Forgiveness Application (Form 3508EZ) requesting forgiveness of the full amount of the Loan. (AR pp. 46-48). On its PPP Loan Forgiveness Application, Appellant certified it had 20 employees. (AR p. 46).

1

JA1348

Docket No. PPP-6523467010

On July 1, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested the Lender's analysis of Appellant's Forgiveness Application and information related to the Appellant's Loan (AR p. 26-27).  On July 21, 2021, SBA requested through the lender additional information from the borrower as follows:

Affiliations through ownership were previously reported by the borrower in its SBA Form 2483, Addendum A. The affiliations reported were:

COMPANIES THAT OPERATE RESTAURANTS
OS Pacific, LLC – EIN 59-3595565
OS Pacific I, LLC – EIN 83-0756954
Let's Shake, LLC – EIN 81-4227295
Apple Cal, LLC – EIN 83-2392698
Apple Texas Restaurants, Inc. – EIN 26-3378669
Apple Houston Restaurants, Inc. – EIN 12-5874218
Apple Grapevine, Inc. – EIN 27-4181854

COMPANIES THAT HOLD LIQUOR PERMITS
Synergy Restaurant Management, LLC – EIN 26-3668670
Synergy Restaurant Management - Houston, LLC – EIN 45-5362672
Synergy Restaurant Management – Cannon, LLC – EIN 45-5288492
Roy's of Baltimore, LLC – EIN 55-0800800
Roy's Beverages, LLC – EIN 74-3012573

MARKETING AND EXECUTIVE MANAGEMENT COMPANIES
SSCP Management, LLC – EIN 27-4937438
ATHR Management Company, LLC – EIN 46-1487473

REAL ESTATE INVESTMENT COMPANIES
Huge American Real Estate, Inc. – EIN 75-2639650
SDharod Enterprises, Inc. – EIN 03-0511175
Z's American Properties, LLP – EIN 41-1843694
C-span I Property - 1, LLC – EIN 20-0457896
C-span Property – 2, LLC – EIN 20-0457984
SD Apple Properties I, LLC – EIN 27-3752023
SD Apple Properties II, LLC – EIN 45-1211167
SD Apple Properties III, LLC – EIN 27-3752746
SD Apple Properties IV, LLC – EIN 27-3752802
SD Apple Properties XI, LLC – EIN 47-4907844
SD Apple Properties XII, LLC – EIN 84-3794503
SD Apple Properties VIII, LLC – EIN 46-5056628
SD Apple Properties VII, LLC -
SDSS Properties, LLC – EIN 81-4854032
Apple Manteca, LLC – EIN 83-2407596
Apple Atwater, LLC – EIN 84-2501679

JA1349

Docket No. PPP-6523467010

6524 Old Gate, LLC – EIN 84-4591747
PDRE I, LLC – EIN 82-3106468
PDRE II, III, IV, LLC – EIN 82-4452419
PDRE V, LLC – EIN 82-4465263
PDRE VI, LLC – EIN 83-1119775
PDRE VII, LLC – EIN 83-1560891 PDRE VIII, LLC – EIN 83-
1621951
PDRE IX, LLC – EIN 83-2604336
PDRE X, LLC – EIN 83-2508605 PDRE Bandera, LLC – EIN 83-
3064104
PDRE 121 Bandera, LLC – EIN 85-0616771
Apple Houston Restaurants I, LLC – EIN 20-1759025

COMPANIES OWNING INVESTMENTS/MINORITY
INTERESTS IN OTHER BUSINESSES
Red Bees, LLC – EIN 47-4907844
SD Apple Properties, VI – EIN 47-1432829
SD Ranch, LLC – EIN 83-1790699
SSCP Refactor, LLC – EIN 84-2576900
SSCP Rustic, LLC – EIN 84-2507030
Let's Shake On It, LLC – EIN 81-4259042

COMPANY THAT OWNS INTELLECTUAL PROPERTY SSCP
– IP Management, LLC

HOLDING COMPANIES United Ohana, LLC – EIN 47-2295932
Let's Shake On It, LLC – EIN 81-4259042
World of Apple, LLC – EIN 82-3664410

The following is requested:
1.  Please fully complete an SBA Form 3511 that reports each of
    the above entities. Using the form, please indicate whether the
    Employee-Based Size Standard, Receipt-Based Size Standard
    or Alternative Size Standard is applicable and complete the
    form accordingly. An addendum to the form (a spreadsheet)
    may be used due to the number of entities listed. If an
    addendum is utilized, please ensure it addresses all the items
    listed on Form 3511 for the appropriate size standard. (AR p.
    28-31).

On September 30, 2021, SBA requested even more documentation as follows:

Please provide:
2019 941s – all four quarters
2019 payroll summary that separately list each employee year to
date totals.
2019 employer state and local taxes assessed on employee
compensation, primarily state unemployment insurance tax
(from state quarterly wage reporting forms.)
2019 employer retirement contributions (IRS Form 1120 line 23

3

JA1350

Docket No. PPP-6523467010

or IRS Form 1120-S line 17.)
2019 employer health care contributions (IRS Form 1120 line 24
or IRS Form 1120-S line 18.)
Any lender memos or notes that may assist in calculating &
verifying the borrower's loan amount.
2020 941 for Q1 and Q4
Payroll summary from 1/1/2020 to 3/31/2020 that separately list
each employee and the total compensation during this period.
Payroll summary from 4/17/2020 to 10/1/2020 that separately
list each employee and the total compensation during this
period. The payroll summary uploaded does not list the
individual employees.
Completed 3511 - a blank copy was email to Pat Harris on
9/29/21. A copy can also be found on the portal under Additional
Resources.
Correct transcript. The transcript uploaded to the portal is for
Authentic Labs.
IF APPLICABLE: Documentation regarding any employee job
offers and refusals, refusals to accept restoration of reductions
in hours, firings for cause, voluntary resignations, written
requests by any employee for reductions in work schedule, and
any inability to hire similarly qualified employees for unfilled
positions (AR p.32-34)

It does appear by documentation in the Administrative Record that
Appellant provided the requested documentation. (Administrative Record 2
"AR2" pp. 1-30).

On November 19, 2021, SBA issued a preliminary decision for full denial,
requesting additional information as follows:

1.  The borrower exceeds the employee size standard.

The borrower is not eligible for a waiver for employee count. The
NAICS Code is 551112. Under SBA's affiliation rules, 13 CFR
121.301(f)(1) and (3), All the companies listed on the 3511 are
affiliates of one another because they are under the common
control and ownership. This means that the employee count of the
borrower is determined by adding its employees to those of all the
related affiliates. Therefore, the borrower is deemed to have more
than 500 employees, together with its affiliates. The employee
count for eligibility is 5,330. The affiliates in this group that do
have a NAICS Code that begins with 72 may be eligible. See
Question 24 of the FAQ, dated July 29, 2021.
https://home.treasury.gov/system/files/136/
Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

Should the borrower believe they're eligible under a waiver for
Receipt Based Standard or Alternative Size Standard, a new 3511
would need to be completed for ALL entities – both those that

4

Docket No. PPP-6523467010

received PPP loans and those that did not receive PPP loans.
Additional documentation may be needed after reviewing the
requested documentation.  (AR at 35-37)

It does not appear by documentation in the Administrative Record that Appellant
provided the requested documentation.

On February 3, 2022, after reviewing all the materials contained in the Administrative
Record, the SBA issued its Final SBA Loan Review Decision:

SBA has determined that the borrower was ineligible for the
PPP loan. The reason(s) for SBA's decision is as follows:
After review of the documentation provided, the SBA concludes
the Borrower business, or together with its affiliates, exceeds
the maximum allowable number of employees and the SBA
small business size standards. (AR p.14-15, Dkt No. 2[1])

## B. **Appeal**

On March 4, 2022, 2021, Appellant filed its Appeal (Dkt No. 1). On April 20, 2022, OHA
issued a Notice and Order. (Dkt. No. 18). The AR was timely filed by SBA on May 10, 2022 in
two parts. (Dkt. Nos. 19 and 20). On May 20, 2022, the Appellant filed an objection to the AR.
(Dkt. No. 21). The SBA filed a Motion to Extend Time to file a response and to extend the
close of the record on June 6, 2022.  The undersigned granted that motion on June 7, 2022,
extending the close of the record to July 5, 2022.  (Dkt No. 23)

Appellant's argument, in relevant part, is as follows:

Even if the CARES Act permitted the SBA to revisit
eligibility for PPP loans after the fact and apply its affiliation rules
differently for purposes of loan forgiveness than it did for loan
approval, the affiliates of the Restaurant Franchise Management
Companies are—for purposes of the PPP Loan Program—exempt
from the SBA's affiliation rules because they are franchises listed
in the SBA Franchise Directory and/or have been assigned NAICS
Code 722511.  (Dkt. No.1)

Essentially, Appellant states that their NAICS code is one of the codes that
allows for waiver of SBA's affiliation rules, or that they are a franchisee.

SBA submitted a response to the appeal on July 5, 2022, (Dkt. No. 24)
arguing as follows, in pertinent part:

---

[1] Dkt No. (Docket Number) refers to the order in which documents are filed in OHA Case Portal (the Portal).

JA1352

Case 1:23-cv-00614-BAH    Document 42-4    Filed 04/11/25    Page 173 of 353
Case 3:22-cv-02807-X    Document 1-3    Filed 12/15/22    Page 6 of 11    PageID 32
Docket No. PPP-6523467010

### A. OHA is Not the Proper Forum to Invalidate SBA's First Interim Final Rule or Interpretation of the CARES Act

[B]ased on prior OHA case law, the APA, and the Small Business Act, OHA should find that ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA regulations and interpretations. This includes being bound by SBA's First IFR available at the time, which states that businesses with "500 or fewer employees" are eligible if the business meets the "applicable SBA employee-based size standards for that industry, is a "small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act" 85 Fed. Reg. 20812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 121.301(f).[2] The First IFR reflects SBA's reading of the CARES Act that it applies SBA regulations for the 7(a) Loan Program, including the regulation at 13 C.F.R. § 121.301(f), to the PPP. This interpretation is based on the text of the CARES Act language specifying that "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Therefore, the CARES Act placed the PPP within the 7(a) Loan Program.

In addition to lacking the authority to issue the decision, an OHA decision invalidating SBA's regulations based on district court decisions or circuit court decisions would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States as applied by OHA. For example, presumably, borrowers who exceed size standards in the 6th circuit would receive forgiveness under caselaw in that circuit, but in other circuits where there is caselaw recognizing that the PPP is a part of the existing Section 7(a) Loan, the same type of borrower would presumably not receive forgiveness.[7][3] Further adding to the inconsistency, in circuits where there is no relevant case, the same type of borrower could be subject to an OHA judge's interpretation of the CARES Act. Similar to the reasoning in Family Choice, such a result is clearly not what the SBA Administrator intended. The First IFR signed by the Administrator reflects

---

[2] Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. See 5 U.S.C. §553; A Guide to the Rulemaking Process, p. 8 (www.federalregister.gov).

[3] There have been several federal court cases involving challenges to SBA's application of 13 C.F.R. § 120.110 or bankruptcy eligibility to the PPP. Consistent with SBA's First IFR, the D.C. Circuit and Court of Appeals for the 2nd and 11th Circuit and several district courts have recognized that the PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. See USF Fed. Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020); Pharaohs GC, Inc. v. United States Small Business Administration, No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021);American Association of Political Consultants v. U.S. SBA, No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA, 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020) United States SBA v. Vestavia Hills, Ltd., No. 20-cv-01308-GPC-LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); Diocese of Rochester v. United States SBA, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020); In re Penobscot Valley Hosp., No. 19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021).

JA1353

Docket No. PPP-6523467010

what the SBA Administrator intended and provides for consistent results across the country as the rule applies to all entities.

For the foregoing reasons, OHA should find that it is not the proper forum to invalidate SBA's regulation or its interpretation of the CARES Act.

**B. Under the CARES Act, PPP Loans Were Subject To The SBA 7(a) Loan Program Requirement in 13 CFR 121.301(f) And Therefore Appellant Is Ineligible For PPP Loan Forgiveness**

Appellant does not appear to contest that OHA does not have the authority to invalidate SBA's regulations or interpretations of the CARES Act; rather Appellant appears to argue that the Diamond and Home Builders cases preclude SBA's application of the 7(a) loan program size standards to PPP [loans]. Again, Appellant is mistaken. Neither of those cases are dispositive. In addition, SBA continues to apply applicable size standards to all businesses that received a PPP loan. Contrary to any assertion that the Diamond or Home Builders case has invalidated SBA's application of size standards to the CARES Act, that unfounded assertion does not reflect the realty of SBA's current regulations and implementation of the PPP, which OHA does not have the authority to invalidate.

**C. SBA Was Correct In Its Determination That Appellant Exceeded Applicable Size Standards**

Appellant does not dispute it exceeds the size standards for its industry. Instead, Appellant argues that it is exempt from SBA's affiliation rules because it is a franchise listed in the SBA Franchise Directory and has a NAICS Code of 722511. (Petition for Appeal, Dkt. 1, p. 11). Appellant appears to be relying on the CARES Act's waiver of the affiliation rules contained in 13 C.F.R. § 121.103 for "(1) any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a NAICS code beginning with 72" and "(2) any business concern operating as a franchise that is assigned a franchise identifier code by SBA." 15 U.S.C. 636(a)(36)(D)(iv)(I) and (II); see also SBA's Second IFR Paycheck Protection Program, 85 Fed. Reg. at 20818, Footnote 1 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020). Appellant's reliance on these provisions is mistaken. …

[As t]here is nothing indicating that SBA erred in its determination that Appellant exceeds the maximum 20 allowable number of employees. [it] is therefore ineligible for a PPP loan.[4]

**D. Appellant Is Ineligible For PPP Loan Forgiveness Because It Is Ineligible Under the PPP**

---

[4] Despite multiple requests, Appellant failed to provide documentation during the loan review process to evaluate whether Appellant met the alternative size standard or SBA's Revenue based size standards. (AR Part 1, 65) Nor did Appellant provide such documentation or information as part of its Appeal.

JA1354

Docket No. PPP-6523467010

Appellant claims it is eligible for forgiveness because it received a PPP loan. (Petition for Appeal, Dkt. 1, p. 2-3) Appellant argues that "SBA has not issued any regulations that permit 'the recipient of a covered loan' not to be an 'eligible recipient' for purposes of PPP loan forgiveness." Appellant is mistaken. Any argument that the CARES Act criteria for loan forgiveness do not include a requirement to show eligibility for the PPP loan to be forgiven and that the SBA lacks authority to impose such a requirement is flawed.

As stated above, SBA concluded that Appellant was ineligible for a PPP loan because Appellant exceeds the maximum allowable number of employees and the SBA small business size standards. (AR Part 1 [and] 2 [at] 11-12, 14-15, 59-72) Appellant does not dispute it exceeds these standards. (Petition for Appeal, Dkt. 1) Nor has Appellant demonstrated it is entitled to a waiver of applicable affiliation rules. Appellant is, and always has been, an ineligible PPP borrower.

As argued above, SBA's eligibility rules have applied to the PPP loan program since the program's inception. The CARES Act and SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

In conclusion, SBA stated that there is no doubt that the PPP was created by Congress as an additional program under SBA's 7(a) loan program and SBA, with authority from Congress, determined that The CARES Act, the Interim Final Rules, and SBA 7(a) program regulations and policies require businesses to meet applicable small business size standards to be eligible for PPP loans.

Appellant has failed to meet its burden to show that SBA's determination, as supported by documents uploaded by the Lender on behalf of the Appellant in the Administrative Record, was based on a clear error of fact or law as required to warrant reversal of SBA's decision.

Thus, OHA should affirm the SBA decision.

(SBA added Exhibit A to its brief but see Footnote 5 below.)

The record was closed on July 5, 2022.

8

JA1355

Docket No. PPP-6523467010

## III. DISCUSSION

### A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

### B. Analysis

As stated by SBA in its reply to the appeal, OHA has no authority to invalidate a regulation, policy or rule issued relating to eligibility for PPP loans and forgiveness of them. Accordingly, its analysis is accepted to the extent permitted under the regulations relating to the authority of OHA.[5]

The following analysis emphasizes the pertinent argument by SBA:

### 1. Payroll Protection Program Size Standard

The Payroll Protection Program enabling legislation (CARES Act, Pub. L. 116-136) increased eligibility for certain businesses and set size standards for those businesses. With regard to certain entities, the legislation and regulations are clear. To be eligible for a PPP loan, the Appellant must be a "small business" and have 500 or fewer employees or meet the SBA employee-based size stands for the industry in which it operates. The legislation provides, in pertinent part:

> **(D) Increased** eligibility for certain small businesses and organizations. —
> **(i)** In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of—
> **(I)**
> 500 employees; or…
> **(II)**
> if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

---

[5] See 13 CFR §134 Subpart L., especially 13 CFR §134.1211(e):  Neither initial nor final decisions rendered by OHA under this subpart are precedential.

JA1356

Docket No. PPP-6523467010

SSCP Management Inc.'s own employee count was twenty-four (24) at the time of the PPP application.  (AR at p. 38).  Thus, at first glance it would seem that Appellant should be entitled to forgiveness.

## 2. Affiliation Rule

SBA also promulgated Affiliation Rules (13 CFR §121.301) regarding participation in the PPP program.  It provides, in relevant part:

> (3) Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

At Dkt No. 12, Appellant identifies its affiliates in the affiliate worksheet included with its loan application. If the affiliates rule applies to SSCP Management, Inc., the number of employees balloons to 5,330.  *Id.* at p. 11.  Appellant would thus be ineligible for a PPP loan based on the number of employees.

However, the affiliation rule does have limited exceptions.  The rule provides in relevant part:

> Waiver. The affiliation rules described above are waived for (1) any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a **North American Industry Classification System code beginning with 72**; (2) **any business concern operating as a franchise that is assigned a franchise identifier code by the SBA**;*Emphasis added.*

While some of Appellant's affiliates are either identified as franchises or have NAICS codes beginning with 72, Appellant does not.

Appellant argues in its appeal that it is eligible for waiver of the affiliation rules because it operates as a franchise and/or has an NAICS code beginning with 72.  (Dkt. No. 1) Appellant described the operation of its business as follows:

> The principal business of SSCP was, as of April 3, 2020, management of franchised restaurants operated by SSCP-affiliated companies that are licensed to use the APPLEBEE'S® and

10

JA1357

Docket No. PPP-6523467010

SONIC® trademarks and another SSCP-affiliated company, OS
Pacific, LLC ("OS Pacific").  OS Pacific is the owner of the
ROY'S® trademark and restaurant concept and also operates 4
ROY'S® restaurants itself. (*Id.* At p.3)

This description does not appear to refer to a franchise, nor to a restaurant, but rather to
off-site management of those entities.  Notably, the Appellant never specifically identifies its
own NAICS number in the appeal document. (Dkt. No. 1) However, documentation submitted
by the Appellant reveals that its NAICS code number is actually 561110, which is designated as
Office Administrative Services. (Dkt No.12 at p. 4) This conflicts with its implication that its
NAICS number begins with 72, like some of its affiliates identified in the appeal. (Dkt. No. 1)

Additionally, there is no documentation in the AR or AR2, or provided by Appellant, that
shows that SSCP was assigned a franchise identifier code by SBA.   In fact, on its own
Affiliation Worksheet, Appellant answered "no" to the question "Is Borrower a franchisee whose
franchise identifier code is listed in SBA's Franchise Directory?" (Dkt No. 12 at p.3)

Thus, Appellant is not entitled to the Waiver of Affiliation Rules because the conditions
for waiver do not apply.   Its number of affiliated employees (5,330) exceeds far exceeds 500, the
maximum number required to be considered a small business, thus rendering Appellant ineligible
for loan forgiveness.

## C. Conclusion

Based upon the foregoing**,** it is determined that the Appellant has failed to establish that
the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the
Appellant's **appeal is DENIED**.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under
13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per
13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days
after it is served. See 13 C.F.R. § 134.1211(b); PPP Procedural Rule.

A party may file a request for reconsideration within 10 calendar days after service of an
initial decision. You can serve your petition via email to OHAFilings@sba.gov or
OHAPPPinquiries@sba.gov.

A request for reconsideration **must clearly show an error of fact or law** material to the
initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

Clifford Sturek

Clifford Sturek
Administrative Judge

11

JA1358

Docket No. PPP-9871777107

# United States Small Business Administration

## Office of Hearings and Appeals

---

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Sunrise Finance Company


　　　　Appellant


Appealed from

SBA PPP Loan No.

9871777107

DECISION


Issued:  April 2, 2022


Docket No. PPP - 9871777107

---

## APPEARANCES

*For Appellant*

Maurice L. Shevin, Esq., Dentons Sirote, PC.

*For the Small Business Administration*

David W. Higgs, Esq., Office of General Counsel

## DECISION

The U.S. Small Business Administration (SBA) Office of Capital Access (OCA) issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision on November 30, 2021, finding Appellant ineligible for the full PPP loan forgiveness of $ 386,389.  Appellant timely filed the instant appeal from that Final SBA Loan Review Decision on December 9, 2021.

1

JA1359

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested.

After carefully considering the evidence and arguments presented in the Administrative Record (AR) and arguments filed after the AR was added to the record, for the reasons discussed herein, I find that Appellant's appeal does not show that the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

## I.  JURISDICTION

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020).  Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was "intended to help businesses cover expenses and meet payroll costs for their workers in order to keep them employed through the pandemic" by loaning money to eligible small businesses Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).

Congress placed the Program under Section 7(a) of the Small Business Act,[1] making the Small Business Administration (SBA) the agency entrusted to administer the Program.  See CARES Act § 1102(a) (adding Paragraph (36) to 15 USC § 636(a)).  Section 7(a) loans are the SBA's main program for helping small businesses.  *In Re Gateway Radiology Consultants, P.A.* 983 F.3d 1239, 1248 (2020) (11th Cir.).  Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several interim final rules (IFRs) under the Program.  CARES Act § 1114 CARES Act, § 1114, 134 Stat. at 312 (codified at 15 USC § 9012)

On April 15, 2020, the SBA promulgated an interim final rule implementing the Program. See 85 Fed. Reg. at 20,811 (April 15, 2020).  The Federal Register notice published with this rule explained that the Program's rules incorporated the existing eligibility restrictions for Section 7(a) loans. Ibid. at 20,812. It also explained that "businesses that are not eligible for [Program] loans are identified in 13 CFR 120.110." Ibid. Also, § 120.110(b) bars "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" from receiving Section 7(a) loans.  The same categories of businesses are thus ineligible for Program loans. See 85 Fed. Reg. at 20,812; 13 C.F.R. § 120.110(b).

Congress, presumably aware of the SBA's existing regulations, gave the Administrator the discretion to *"guarantee covered loans under the same terms, conditions, and processes as … loan[s] made under"* Section 7(a). *Cares Act § 1102(a)(2) (codified at 15 U.S.C. § 636(a)(36)(B))* (emphasis added); see Fitzgerald v. Dep't of Homeland Sec., 837 F.3d 1346, 1355 (Fed. Cir. 2016) (discussing the presumption that Congress is "aware of applicable

---

[1] Small Business Act, 15 USC § 631 et. Seq.

regulations when enacting pertinent legislation"). And those terms and conditions included the ineligibility of loans for entities which were financial businesses primarily engaged in the business of lending. 13 C.F.R. § 120.110(b).

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]except as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. See Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020, and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective at the time of its PPP loan application, advised all PPP lenders and Appellants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and Appellants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812.

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans. The statute also provides that:

3

JA1361

"the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B) Ineligible types of businesses are identified in 13 CFR § 120.110.  These ineligible businesses include, for example, non-profit businesses; financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan".  13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan.  Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA.  13 CFR §103.2(b).  Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property.  Executive Order 12549, 13 CFR part 145.  Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan.  SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments.  15 USC §636(a)(36)(F) and (G)

PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 USC § 636(a)(36)(A)(viii)(II).

*PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan.  See 15 USC § 636m.  Application for, and

4

receipt of, a PPP loan is a wholly separate process from application for, and receipt of, forgiveness of that loan.  Loan forgiveness is provided for under a different, but related, statutory provision.  See 15 USC §636(a)(36)(J) which makes applicable the provisions of 15 USC §636m, (that is applicable to non-PPP loans) with limitations specified for PPP loans.  The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses.  Generally, the amount of the loan that is forgiven is the amount used to pay those costs.  But the bulk of the funds, at least 60 percent, must be spent on payroll.  15 USC §636(a)(36)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)].  Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable.  For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven.  See 15 USC §636(a)(36)(F)(i)(I)-(VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII).  *Gateway* at 1247.  Only an eligible recipient of a PPP loan may receive loan forgiveness.  15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds.  The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any.  15 USC §636m (e), (f) and (g).  Thereafter, SBA reviews the lender's decision, and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness.  The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1.  Was ineligible for a PPP loan;

2.  Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses;

5

3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA; or

4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

These denial bases may be more implicitly stated in different terms.  Thus, forgiveness denial may be because:

1. The borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or

2. the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or

3. the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some or all of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or

4. that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L.  However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal petition is filed from the decision contained in that Final SBA Loan Review Decision.  13 CFR §134.1201(a) -- (c).

The SBA's Office of Capital Access (OCA) issues a Final SBA Loan Review Decision relating to whole or partial denials of forgiveness of PPP loans.  To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov.  13 CFR §134.1202(a).

*Authority of an SBA OHA Judge*

SBA OHA Judges include retired Federal Administrative Law Judges (ALJs), such as myself, who now serve as SBA Administrative Judges to adjudicate PPP appeals of final SBA loan review decisions. Other judges adjudicating PPP appeals are active ALJs.

6

An Administrative Law Judge (ALJ) has no constitutionally-based judicial power, *see Ramspeck* v. *Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See e.g.,* 20 USC § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education) provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

An Administrative Judge has no authority greater than that of an Administrative Law Judge. The authority of such a judge is limited. Thus, I have no authority to question or decide the constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies of SBA have been appropriately applied to the facts of the case.

Most importantly, neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus, decisions in other PPP cases are not binding or persuasive in this appeal. 13 CFR §134.1211(e).

## II. BACKGROUND

In its appeal petition (Dkt. No. 1)[2] Appellant, through its attorney, described itself as "a consumer finance company engaged primarily in the lending of money to 'consumers' as that term is defined at 15 U.S.C. § 1602(i) of the Consumer Credit Protective Act, making fully amortizing, fixed term loans in amounts of $1,000 to $10,000. Appellant is a licensed lender by the Indiana Department of Financial Institutions. Appellant has been in continuous operation for more than 8 years."

On April 14, 2020,[3] Appellant applied for a PPP loan of $386,389.00 through Texas Capital Bank, National Association. On April 15, 2020,[4] the loan was approved by the bank and

---

[2] The docket numbers referred to herein represent the referenced document in the order in which that document was filed in the OHA Case Portal.

[3] This is the date noted in Appellant's Appeal (Dkt. No. 1 at 3), as well as the Final SBA Loan Review Decision, AR at 15, and Forgiveness Review documents at 233, and other documents in the AR, but April 21, 2020, is the date on the PPP application (Form 2483) in the AR at 236-238.

[4] AR at 15

JA1365

guaranteed by SBA. The proceeds were received on April 22, 2020. Appellant filed an application for full PPP loan forgiveness (Form 3508) on April 21, 2021.[5]

In the final SBA loan review decision it was determined that the borrower was ineligible for the PPP loan. The reason for SBA's decision was as follows:

> After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring. In response to an inquiry to determine eligibility, the borrower provided a statement in which they [sic] describe the business as a company "which makes traditional installment consumer loans" which are not sold or brokered. The 2019 Profit and Loss statement provided supports the description of the operations provided by the borrower. Based on the above stated reason(s), SBA has determined that forgiveness in the amount of $0.00 is appropriate. AR at 15.

Appellant argues as follows in its appeal petition[6]:

### A. The eligibility limitations in the IFR are inconsistent with the language of the CARES Act.

The key eligibility provision added to the Small Business Act by the CARES Act states that **"any business concern... shall be eligible** to receive a covered loan" if the size requirements are met. 15 USC § 636(a)(36)(D)(i). This is a fundamentally different construction of the language of the law, than that which is presented by the ABA in the IFR.

Appellant's argument in its appeal petition essentially means that I must decide the merits of the appeal based solely on the language it cited in the CARES Act, and, further, that I have the authority to do so, and therefore can invalidate the provision of the IFR precluding eligibility of a lender (such as Appellant attests it is) for receipt of a PPP loan. Appellant set out text and citations of Court and other decisions in support of its argument.[7]

Regarding this contention, SBA argues that:

> **Under the CARES Act, PPP loans were subject to the SBA 7(a) loan program requirement in 13 CFR 120.110(b) and that Appellant is ineligible for PPP Loan Forgiveness.**

---

[5] AR at 15 and 241-253
[6] Dkt. No. 1
[7] Ibid.

8

SBA set out text and citations of Court and other decisions in support of its argument.[8]

## Analysis

I disagree with Appellant's contention that I have the authority to overturn regulations and rules by the SBA in deciding appeals of final SBA loan review decisions.

Congress delegated to SBA ruling-making authority which includes, in pertinent part, the power to "make such rules and regulations as it deems necessary to carry out the authority vested in it." 15 USC § 634(b)(6). In addition, Congress permitted SBA, in pertinent part, "to take any and all actions when it determines such actions are necessary or desirable in making loans. 15 USC § 634(b)(7).

As noted above in this decision under the heading **JURISDICTION**, and consistent with SBA's argument in its brief,[9] Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the Paycheck Protection Program (PPP) and make it the agency entitled to administer the PPP loan program. Consistent with its authority granted by Congress under the CARES Act, SBA determined that PPP loans are subject to 13 CFR § 120.110 (What businesses are ineligible for SBA business loans?) at (b), entitled "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors… ."

The jurisdiction of OHA with respect to appeals of certain loan review decisions is set out at 13 CFR § 134.120(w). 13 CFR Subpart L relates to Borrower Appeals of Final SBA Loan Review Decisions under the Paycheck Protection Program. My authority extends only to determining whether the adopted regulations and policies of the SBA have been appropriately applied to the facts of this case.

I conclude that I have no authority to limit the application of the CARES Act, as contended by Appellant, such as to permit me to ignore or redefine regulations and policies applicable to the instant case. I also conclude that the regulations and policies of SBA pertinent to this appeal are consistent with its authority as established by Congress.

In its Surreply,[10] Appellant argues in the alternative:

## B. **OHA is Not Prohibited from Granting the Appeal in the Event of a Clear Error of Law.**

---

[8] Dkt. No. 7, citing cases
[9] Ibid.
[10] Dkt. No. 10

Appellant states in its Surreply that it is not asking OHA to invalidate SBA's regulations or interpretation thereof (i.e., guidance), but contends that SBA's position in relying on the IFR has already been "successfully challenged in the appropriate forum," again citing several Federal court cases in support of its position.

## Analysis

Appellant's argument is simply another way of contending that, even though SBA has not amended or rescinded any of its regulations or guidance as a result of the court decisions cited finding that the CARES Act does not prohibit lenders, such as Appellant, from eligibility for PPP loan, and hence forgiveness of the loans, I must follow those decisions and find in favor of the Appellant.

I am not persuaded by this argument because, as I noted earlier in this decision, I am bound by the regulations and policies promulgated by SBA as they are currently written. Appellant has made substantial arguments in support of its appeal.

However, Appellant has acknowledged that it is a licensed lender in Indiana, and it follows that it is subject to the consumer lending laws of Indiana, as well as the Federal Consumer Credit Protection Act. Therefore, it is undisputed that Appellant is a lender.[11]

SBA has, by regulation and guidance, stated that lenders are not eligible for receipt of PPP loans, and hence for loan forgiveness. However, while both Appellant and SBA have also referred to other OHA decisions in PPP cases, references to other such cases have no precedential value in the instant case.[12]

I note Appellant's arguments regarding the inapplicability of the eligibility exclusion provisions of 13 CFR §120.110, as they were formulated decades ago. I particularly note the cited Federal court decisions supporting Appellant's claim. However, as noted above, I have no authority to find the eligibility exclusion provisions of 13 CFR §120.110 inapplicable to the present PPP loan.

Moreover, I note that Congress provided that the PPP was to be administered by the SBA, and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans. This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework. This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking including any public comment period.[13]

---

[11] Dkt. No. 1 at 1
[12] 13 CFR 134.1211(e)
[13] See CARES Act §1106 (k)

10

JA1368

Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects.[14]

Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational basis to apply the provisions of 13 CFR §120.110 to the PPP eligibility determinations, and that their application by the SBA is not arbitrary or capricious. Therefore, for all these reasons, I find that the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

The SBA had previously published and made available to the public, in 2018, its Standard Operating Procedure SOP 50 10 5(k). The provisions of that document show the procedures applicable to SBA Section 7(a) loans, including ineligible types of businesses.[15] Finance companies and lenders, such as the Appellant, are excluded from loan eligibility. This guidance was in effect at the time the Appellant applied for and received the PPP loan at issue. As noted above, these eligibility exclusions were and are applicable to the current PPP loan.

Both the Appellant and SBA have referred to OHA decisions in PPP loan cases, but they have no precedential value, as noted above under Jurisdiction.

It is again noted that the Appellant has acknowledged that it is in the business of lending. Such a business is expressly precluded from PPP loan eligibility by 13 CFR §120.110(b), as noted above.

Therefore, it was not a clear error for SBA to conclude that Appellant was ineligible for the PPP loan it received. Correspondingly, it was not a clear error for SBA to conclude that the Appellant was not entitled to forgiveness of the loan for which the Appellant was not initially eligible.

Accordingly, the Appellant, Sunrise Finance Company, has failed to show that SBA committed a clear error of fact or law in its final loan review decision.

## CONCLUSIONS OF LAW

**Appellant is a consumer finance company.**

**Appellant was ineligible for the PPP loan it received.**

---

[14] See CARES Act §1109 (d)
[15] SOP 50 10 5(k) III.A.2, at p 104 [Provisions consistent with those were carried forward in the updates SOP 50 10 6, issued October 1, 2020.]

11

JA1369

**The final SBA loan review decision is not based on clear error of fact or law.**

**Appellant remains liable for the PPP loan (PPP Loan Number 9871777107).**

**ORDER**

**The final SBA loan review decision denying Appellant's application for PPP loan forgiveness is AFFIRMED.**

Appellant's loan forgiveness application will be processed in accordance with this decision.

This is an **INITIAL DECISION**, pursuant to 13 CFR § 134.1211(b), and shall become the **FINAL DECISION** of SBA thirty (30) calendar days after service, unless a reconsideration request is filed, pursuant to 13 CFR § 134.1211(d).

*Clifford Sturek*

CLIFFORD STUREK
Administrative Judge

12

**United States Small Business Administration Office of
Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Tavrida and Vigorosis LLC

        Appellant

Appealed from
SBA PPP Loan Number
2058717803

Issued: November 14, 2022 Decision

No. PPP-2058717803

### ORDER DISMISSING APPEAL[1]

On July 8, 2022, Appellant received the Final SBA Loan Review Decision for U.S. Small Business Administration (SBA) Paycheck Protection Program (PPP) Loan No. 2058717803. On September 2, 2022, Appellant filed the above-captioned appeal with SBA's Office of Hearings and Appeals (OHA).

On November 1, 2022, I issued an Order to Show Cause as to why this matter should not be dismissed for lack of jurisdiction under 13 C.F.R. § 134.1205(a)(1).

OHA only has jurisdiction over cases where SBA has issued a final loan review decision that determined the borrower is ineligible for a PPP loan, ineligible for the PPP loan amount received, used the PPP loan proceeds for unauthorized uses, is ineligible for the PPP loan forgiveness amount determined by the lender in its full or partial approval decision issued to SBA, or is ineligible for PPP loan forgiveness when the lender has issued a full denial decision to SBA. 13 C.F.R. § 134.1201(b). OHA does not have jurisdiction over decisions made by lenders concerning a PPP loan. 13 C.F.R. 134.1201(c). Nor does OHA have jurisdiction over determinations made by SBA's Office of Inspector General concerning a PPP loan. 13 C.F.R. § 134.1201(e).

**The Appellant responded to the Order to Show Cause with a question regarding the ability to "appeal again," and asked for partial forgiveness. The effect of this dismissal Order is the same as if the Final Loan Review Decison was never issued. I am without jurisdiction to make any other findings.**

**As this appeal does not fall within OHA's jurisdiction outlined in 13 C.F.R. § 134.1201, I herewith DISMISS the instant appeal for lack of jurisdiction. 13 C.F.R. § 134.1205(a)(1).**

This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at *https://appeals.sba.gov*, this decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b).

H. SCOTT WILLIAMS
Administrative Judge

---

1 This appeal is decided under the Small Business Act of 1958, 15 U.S.C. § 631 et seq., and 13 C.F.R. Part 134.

JA1372

United States
Small Business Administration
Office of Hearings and Appeals

| | |
|---|---|
| Paycheck Protection Program Appeal of:<br><br>Tavrida and Vigorosis LLC<br>    Appellant<br><br>Appealed from:<br>SBA PPP Loan Number 2058717803 | Issued: June 30, 2023<br><br>Docket No. PPP- 2058717803 |

*Appearances:*
*For the Appellant: Ivan Terez*
*For the Small Business Administration: Edward Bentley, Attorney*

### Decision

### 1. *Introduction and Jurisdiction*

On or about May 23, 2020, Tavrida and Vigorosis LLC (Appellant or TVLLC) submitted SBA Form 2483, Paycheck Protection Program Borrower Application ("the Application"). (AR 384) Subsequently, PPP loan number 2058717803 ("the Loan") was disbursed to Appellant by the Lender on or about November 22, 2022, in the amount of $367,296.00. (AR 22). On November 23, 2021, Appellant executed a Paycheck Protection Program PPP Loan Forgiveness Application Form 3508, requesting forgiveness for the full amount of the Loan. (AR 389)

On February 15, 2023, the SBA issued its Final Loan Review Decision (FLRD) denying forgiveness of the Loan. It is this decision that TVLLC has appealed.

Thereafter, on March 10, 2023, TVLLC filed an appeal asking the Office of Hearings and Appeals (OHA) reverse the SBA's decision and find that TVLLC is eligible for the PPP loan disbursed and its forgiveness. OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. (13 C.F.R. § 134.1201 *et seq.*)

### 2. *Factual Background*

### A. *Tavrida's Loan Application and Request for Loan Forgiveness*

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act (CARES Act) became law, giving businesses the opportunity to apply for potentially forgivable loans through the PPP. P.L.116-136 (March 27, 2020). As a result, Tavrida applied for and received a loan in the amount of $367,296.00, for which it asked for forgiveness.

### B. *TVLLC's Appeal and the SBA's Response*

The FLRD denied forgiveness of the loan and stated:

> "SBA has determined that the borrower was ineligible for

the PPP loan. The reason(s) for SBA's decision is as follows:

> After review of the documentation provided, the SBA concludes that the borrower **did not have any eligible payroll cost at the time of loan application**. Additionally, **it has been determined that the borrower has received more than one PPP loan**. A borrower may receive only one First Draw PPP Loan and one Second Draw PPP Loan.

> The Borrower submitted the **2019 tax return reflecting 3 Schedule C businesses for Vigorosis LLC, DT Technologies Americas LLC, and Renascent Energy Management LLC;** the two subsequent Schedule C businesses reflect no eligible payroll with an amount of $0 in salaries and wages and a negative net income. The principal owner claims the subject loan is connected to his SSN, using a DBA of "TAVRIDA" while also including "and Vigorosis LLC", **however all payroll appears to be connected to Vigorosis LLC, ending in #9938. The eligible Schedule C Business, Vigorosis LLC ending in EIN #9938 has two additional PPP loans funded 1/31/2021 and 4/30/2021 as first and second draw."** Emphasis added.

On March 10, 2023, TVLLC submitted a statement in connection with this Appeal and stated in relevant part:

> "I received SBA note "Denial_Justification_2058717803" dated 06/08/2022 on 09-02-2022 via K-Servicing. I appealed this decision, and SBA decided to withdraw the denial for further internal review. SBA sent the Final Denial Justifications on 02/16/2023 with a final SBA loan review decision of the loan forgiveness in the amount of $0.00.

> At the onset the of the pandemic, all my related businesses collapsed completely in March of 2020 due to a total and what tuned out artificial meltdown in oil prices and, as a result, a total cutoff in project expenditures by all energy companies and broken out already negotiated deals with the investors for the energy tech startup company as well. In addition, I lost more than 95% of my personal and retirement investments in a stock market in March of 2020 as they were mostly energy related and nobody could possibly predict artificially produced negative oil prices in April of 2020. Most of revenue producing business activities were in December of 2019 and in January and February of 2020 and all came to zero in March of 2020. The nature of our engineering consulting businesses is to pass all possible revenue minus required office, software, and computer equipment costs to the owners (employed as well), employees and contractors. It is quite often, the reporting net profit is slightly positive, zero or negative in this type of business. This is in a reference to SBA's comments about zero or negative numbers

on Schedule C (which would also not show any January- February 2020 business revenues at the time of PPP loan application).

My main business banking institution, Comerica Bank didn't setup the PPP application portal until the end of May of 2020, and it still didn't work for me, so I was forced to look for other PPP loan applications such as with Kabbage (now K-Servicing under American Express). Kabbage portal software asked me to answer some questions on the login screen and apparently incorrectly prorated them into the yearly average rather than calculated current monthly average numbers which it was impossible to modify later.

Additional confusion was with the taxpayers' codes as Comerica bank explained to me that time that since I was a single member in one primary LLC businesses, so my social security number had to be used in their banking applications and, hence, in PPP portals instead of the EIN numbers.

In addition, my other business of DT Technologies Americas LLC was expecting an older contract settlement payment with would be corresponding back payroll if that happened. In all good faith, I don't see any duplicate PPP loans as they meant to be applied to somewhat different businesses and in completely different covered payroll periods.

I should say that it was a total chaos that time with absolutely zero help for small businesses and a total inability of even getting any qualified help navigating the PPP process. I was nearly suicidal because I was deadly concerned for my family to be kicked out of my house and myself not to be able to provide food to my five children (minors at that time) and that the collapse in oil and gas industry would reduce my 21 years of respectable and valuable experience and my successful career in the energy industry and what seemed to be a good start for the energy tech entrepreneur to essentially nothing.

The PPP loan covered period ended 11/16/2020, and we pursued loan forgiveness application process starting in December of 2020. K-servicing suddenly shut-down the loan forgiveness portal in March 2021 with the comments to wait for new instructions, then K-servicing has introduced a brand-new portal in July of 2021 and asked to restart the loan forgiveness process. Again, I diligently submitted all required documentation for the loan forgiveness process and worked on numerous questions and requested for additional information until November 23, 2021, when I was totally exhausted and signed PPP Loan Forgiveness Form with the K-Servicing's reduced forgiveness amount of $269,679.54. We provided loan forgiveness supporting documents enclosed earlier showing a request for the forgiveness amount of $355,095.18 based

on payroll expenses and actual 401K contributions which were cut arbitrarily by K-serving (401K employer's contribution is a part of payroll costs and per SBA's guidelines) and certain business expenses and rents that were cut again by K-Servicing without any explanation and not according to the SBA guidelines.

## BUSINESSES AND CURRENT SITUATION

I am a Ph.D. educated engineer, researcher, and entrepreneur and a first generation Ukrainian-American born in Ukraine but of Spanish descent on my father's side. All my related business entities in places are listed below. All small, minority owned companies and economically disadvantaged according to the SBA's definition. DT Technologies Americas LLC

It is Oil and Gas Services and Equipment Provider company registered as Texas LLC in May 2017. DT Technologies Americas LLC conducted a lot of work in USA and Ukraine in 2018 and 2019 to bring services of Fiber Glass Systems L.P. (100% owned by NOV Inc.) to Ukraine. Several fraudulent letters and documentation of representation and other major mishandling by Fiber Glass Products L.P. happened, thus the contracts were unjust fully terminated by Fiber Glass Systems L.P. with no success of business-friendly settlement with Fiber Glass Systems L.P. in early 2020. As a result, DT Technologies Americas LLC filed a lawsuit against Fiber Glass Systems L.P. and NOV Inc., in December of 2021, and it is still pending expecting a trial. Upon successful settlement and/or favorable judgement, DDT Technologies plans to have a retroactive payroll for four US based people and one in Ukraine for 2018-2019 with amendments of all tax returns for 2018 and 2019 if possible.

There were two original partners in DT Technologies LLC. The second partner was removed due to his abuse of the company business bank account and business credit cards in 2020. No current bank accounts for DT Technologies LLC. Pending costs recovery for 2018-2019 business activities via pre-trial settlement or a trial below:

CAUSE NO. 21-DCV-290000 DT TECHNOLOGIES AMERICAS LLC (Plaintiff), v. NOV INC. and FIBER GLASS SYSTEMS, L.P. (Defendants) filed in Dec 2021 in the DISTRICT COURT of FORT BEND COUNTY, TEXAS 400th JUDICIAL DISTRICT (set for trial on 7/19/2023

### Vigorosis LLC

It is an Energy Consultancy firm registered as Texas LLC in December 2010 and generated revenue since 2011. The business came to a complete stop in March 2020 due to a total energy business collapse and re-started revenue again in the second half of

2022. Most recently with fourfive people on payroll (including me). The normal payroll with 4 employees (include himself) was stopped in Aug 2021 because the company revenue was significantly reduced, and it generated only about $40,000 since Aug 2021 in early part of 2022. Comerica business bank account – $42.34 (as of Feb 28, 2023)

<u>Renascent Energy Management LLC</u>

It is an Energy Tech startup registered as Texas LLC in May 2019. LLC started generating revenue in June 2021 on a sizable contract (Phase I) prepared partly by Vigorosis LLC's activities in 2020 that was finished in March 2022 due to funds majorly shifting to the energy transition areas away for the fossil fuels and our Phase II proposal was declined due to lack of funds. Two people of payroll (myself and CTO) filed for unemployment benefits in March 2022. I've been also putting personal money for the business lease as it is under the contract that I cannot get out right now.

PNC business bank account – $446.83 (as of Feb 28, 2023)

TAVRIDA – DBA for unincorporated person, IVAN E. TEREZ (Fort Bend County, Texas)

Personal situation Credit cards debt - $83,215 (as od 02-02-2023)

Mortgage balance - $327,571 (as of 02-02-2022)

SBA loan for hurricane relief with the house lien (property damages by hurricane Harvey in Sep 2017) balance - $64,000 (approximately)

Real estate owned:

1) Apartment in Kyiv, Ukraine (inherited from my parents as 50%/50% with my brother) – no resale value now due to the current war situation in Ukraine.

2) My residential house (Sugar Land, Texas) – $527,110 (2022 appraised value) Personal brokerage accounts - $0.00 Personal bank accounts– about $900

<u>Employment situation</u>

I've been unemployed since the end of March of 2022 when the contract of Renascent Energy Management LLC was finished with my unemployment benefits ended September 26, 2022. Since September 2022, I was able to secure only limited funds to cover NovemberDecember 2022 already severely reduced payroll expenses in Renascent Energy Management LLC and zero payroll after January 1, 2023.

Since March of 2022, I've been working for 70-80 hours per

week desperately looking for any investment in start-up, consultancy projects, or even a standard employment, basically anything to feed my family as my wife is home schooling our youngest daughter of 6 years diagnosed with autism, so my income is the only source of my family survival. I recently cashed out the remaining small Roth IRA of $23,000 to sustain my family in this terrible situation.

As you can see, neither business not myself can in any situation pay the full amount of the outstanding PPP loan. Based on information provided, I was eligible the PPP loan according to the SBA's rules and spent money on business wisely and in accordance with SBA's guidelines during the covered period.

REQUEST FOR RELIEF

For these reasons, I ask the Honorable Judge to accept the loan partial forgiveness in the amount of $355,095 per documentation and explanation provided. DATED March 10, 2023.

By: Ivan E. Terez
FOR: TAVRIDA (DBA)

Tavrida and Vigorosis LLC
Tavrida and DT Technologies America LLC

Ivan E. Terez and Engineering Consultants

Uploaded to the docket:

▪ State unemployment filing in March 2022

▪ Vigorosis LLC payroll register during covered period of 06/01/2020-    11/16/2020.

▪ Renascent Energy Management LLC payroll with end in March 2022

▪ Business bank statement (Feb 2022) for Comerica bank - Vigorosis LLC

▪ Business bank statement (Feb 2022) for PNC bank - Renascent Energy    Management LLC

▪ Tavrida PPP Loan Forgiveness Cover Letter 09-02-2022

▪ Tavrida DBA Certificate for unincorporated person (Fort Bend County, Texas)"

The SBA did file an Appeal Response on June 6, 2023, and stated in relevant part:

"The actual borrower on the Loan is Ivan Terez Doing Business As ("DBA") "Tavrida". The named Appellant, "Tavrida and Vigorosis LLC", is not the borrower and is not the name of an organized entity. Ivan Terez applied for the Loan on May 23, 2020.

Form 2483 (AR 383)[fntn 1]. On the Form 2483 Loan Application, he applied under his social security number, and entered "Tavrida" as the business legal name. Id. He also entered "Tavrida" in the "DBA or Tradename if Applicable" field. Id. Three months after applying for the Loan, on August 11, 2020, Mr. Terez applied to register "Tavrida" as a DBA for himself as an unincorporated individual, in the County Clerk's Office of Fort Bend County, Texas. Screenshot from Fort Bend County Clerk's Office website showing date filed as 08/11/2020, Exhibit 1; Assumed Name Certificate for Certain Unincorporated Persons (Supp AR 492). Then, when Mr. Terez filed the Form 3508EZ Forgiveness Application on November 23, 2021, he entered a name other than the borrower on the Loan; he entered the "business legal name" as "Tavrida and Vigorosis LLC" while keeping "Tavrida" in the "DBA or Tradename, if applicable" field. Form 3508EZ (AR 389).

This Appeal involves a tangled snarl of incorrect accounting, but once the various threads are disentangled, it becomes clear that Borrower had no eligible payroll and received more than one first draw PPP loan. Both of these grounds provide independent justifications for the complete denial of forgiveness.

Mr. Terez controlled several different business entities. One of these was Vigorosis LLC.[ftnt 2] Evidently, Mr. Terez decided that he could use payments he claimed were wage payments made by Vigorosis LLC to support a PPP loan to the Borrower, Tavrida – that is, himself – as an unincorporated independent contractor, even though he was clearly a separate entity from Vigorosis LLC. As if combining two entities to try to support a PPP loan made to entity "A" with claimed wage payments made by entity "B" was not problematic enough, he did this retroactively – the loan was originally applied for on Form 2483 only under the DBA Tavrida (AR 383), but forgiveness was applied for under the name Tavrida and Vigorosis LLC (AR 389)

The loan was applied for under the DBA Tavrida and it was granted to Tavrida, however. In other words, it was granted to Mr. Terez himself, and not to Vigorosis LLC. Vigorosis LLC was not the borrower here, and Mr. Terez's attempt to insert Vigorosis LLC into this matter to support the loan to Tavrida at the forgiveness stage must fail. The true "borrower" here is Ivan Terez DBA Tavrida, and Tavrida and Mr. Terez will be referenced as such throughout. Travrida and Vigorosis LLC will be referred to as "Appellant". Vigorosis LLC itself will be referred to by its own name when specifically discussed.

To make matters worse, on the Form 2483 Loan Application, Mr. Terez answered "no" to Certification #3, which asks: Is the Applicant or any owner of the Applicant an owner of any other

business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as Addendum A. Form 2483 (AR 383) (bolding and italics added). This is clearly incorrect. Mr. Terez admits in his own petition that he has three businesses, Vigorosis LLC, DT Technologies Americas LLC3 and Renascent Energy Management LLC, in addition to his DBA Tavida. Appeal [ftnt 4] p. 3-5, Docket.

At this point it should be noted that not only was Vigorosis LLC a different entity than Borrower, but Vigorosis LLC received two loans of its own. Vigorosis LLC received both a first draw PPP loan of $79,882.50 and a second draw PPP loan of $46,369.00 in its own name. Mr. Terez's use of Vigorosis LLC's financials to take out a PPP loan in the name of the unincorporated individual Ivan Terez as TAVRIDA, while later taking out a first draw loan for Vigorosis LLC directly, created an impermissible duplicate first draw loan situation even before Mr. Terez grouped these two entities to support a forgiveness application on a loan that was issued to only one of these entities. [ftnt 5]

There are large numbers of material discrepancies scattered throughout Borrower's documentation, but at the very least, Borrower used the same financials to support three different loans, and the borrowing entity had no eligible payroll of its own. These were the reasons given in the current Final SBA Loan Review Decision for completely denying forgiveness, and Borrower has not borne his burden of showing a clear error of fact or law on the part of SBA. Final SBA Loan Review Decision of February 16, 2023 ("New FLRD"), (AR 18-19). The New FLRD should be sustained."

### 3. *Discussion*

#### A. *Applicable Law and Policy*

##### 1) *Standard of Review*

TAVRIDA has the burden of proving all elements of the appeal. Specifically, TAVRIDA must prove that the SBA Final Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

##### 2) *Scope of OHA and ALJ Decisions*

As an independent office of the SBA, OHA has limited authority and jurisdiction to review decisions made by the SBA. Acting within the bounds of that authority and jurisdiction, Administrative Law Judges or Administrative Judges do not have the authority to invalidate a regulation or interpretation issued by the SBA Administrator. *See Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("[OHA] is not the proper forum for a challenge to the validity of a regulation"); *Family Choice Financial*, Docket No. PPP-8323747201, at 12 (ALJs are "exercising the Administrator's delegated authority and it would be surprising if

that delegation included the authority to invalidate an SBA regulation"); *Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings*, 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–2 ("ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules").[1]

Given that limited authority, regulations issued by the SBA Administrator are binding on OHA, and OHA is not the forum for challenges to the SBA's regulations or interpretation of Congressional acts. Any such challenges are more properly made, if at all, in federal court. *Id.*

### 3) The CARES Act and PPP Loans

As noted above, in March 2020, in response to the COVID-19 pandemic and the resulting economic conditions, Congress passed the Coronavirus Aid, Relief and Economic Security Act (CARES Act), Pub. L 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program, which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses through verified lenders. If those loans met certain conditions, they would be forgiven through funding from the SBA. Congress placed the PPP under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. See CARES Act section 1102(a) (adding Paragraph (36) to 15 U.S.C.§ 636(a)).

Under the CARES Act, the SBA was granted Emergency Rulemaking Authority under Section 1114, requiring that:

> Not later than 15 days after the date of enactment of this Act the
> Administrator shall issue regulations to carry out this title and the
> amendments made by this title without regard to the notice
> requirements under section 553(b) of title 5, United States Code.

(Emphasis added). Subsection (b) of section 553 requires that "General notice of proposed rulemaking *shall be published in the Federal Register* . . .) (emphasis added). Section 1114 of the CARES Act waived the requirement for SBA's rules and regulations pertaining to the Cares Act to be published first in the Federal Register before they could become effective. Thus, the First Interim Final Rule at 85 FR 20811 was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required.

### 4) PPP Loan Eligibility

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D).

Not all such businesses, however, are eligible for PPP loans. The statute also provides that

---

[1] Available at https://www.justice.gov/file/20131/download (last accessed June 2, 2022).

"the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B). Ineligible types of businesses are identified in 13 CFR § 120.110. These ineligible businesses include, for example, non-profit businesses; passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111[2]); financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

### 5) *Application Certification Errors*

Rules pertaining to forgiveness of PPP loans provide that false certification, intentional or otherwise, can be fatal to forgiveness applications:

"III. Paycheck Protection Program Requirements for Loan Forgiveness

> . . . .

> 2    *If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on* the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, or *the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness.*"

85 Federal Register 33,004, 33,005.

### 6) *Borrower's Documentation Requirements*

What must borrowers submit for forgiveness of their PPP loans?

The loan forgiveness application form details the documentation requirements; specifically, documentation each borrower must submit with its Loan Forgiveness Application (SBA Form 3508 or a lender equivalent), *documentation each borrower is required to maintain and make available upon request,* and documentation each borrower may voluntarily submit with its loan forgiveness application. Section 1106(e) of the Act requires borrowers to submit to their lenders an application, which includes certain documentation, and section 1106(f) provides that *the borrower shall not receive*

---

[2] "An Eligible Passive Company must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), **that it leases to one or more Operating Companies** for conducting the Operating Company's business, or to finance a change of ownership between the existing owners of the Eligible Passive Company." 120 CFR 120.111. Emphasis added.

*forgiveness without submitting the required documentation.* For purposes of administrative convenience for both lenders and borrowers, the Administrator, in consultation with the Secretary, has determined that requiring borrowers to submit certain documentation, maintain certain documentation, and choose whether to submit additional documentation will reduce initial reporting burdens on borrowers and reduce initial recordkeeping burdens on lenders." Emphasis added.

85 Federal Register 33,004, 33009.

### 7) *PPP Loan Calculation*

On *April 24, 2020*, the SBA and Department of Treasury issued guidance titled "Paycheck Protection Program, *How to Calculate* Maximum Loan Amounts – By Business Types." The entire document can be found at https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program. The portion of the guidance applicable to Appellant's situation follows:

1. Question: I am self-employed and have no employees, how do I calculate my maximum PPP loan amount? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent during the eight-week period following the first disbursement of the PPP loan.)

Answer: The following methodology should be used to calculate the maximum amount that can be borrowed if you are self-employed and have no employees, and your principal place of residence is in the United States, including if you are an independent contractor or operate a sole proprietorship (but not if you are a partner in a partnership):

· Step 1: Find your 2019 IRS Form 1040 Schedule C line 31 net profit amount (if you have not yet filed a 2019 return, fill it out and compute the value). If this amount is over $100,000, reduce it to $100,000. If this amount is zero or less, you are not eligible for a PPP loan.

· Step 2: Calculate the average monthly net profit amount (divide the amount from Step 1 by 12).

· Step 3: Multiply the average monthly net profit amount from Step 2 by 2.5.

· Step 4: Add the outstanding amount of any Economic Injury Disaster Loan (EIDL) made between January 31, 2020 and April 3, 2020 that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid).Your 2019 IRS Form 1040 Schedule C must be provided to substantiate the applied-for PPP loan amount. You must also provide a 2019 IRS Form 1099-MISC detailing nonemployee compensation received (box 7), invoice, bank statement, or book of record establishing you were self-employed in 2019 and a 2020 invoice, bank statement, or book of record establishing you were in operation on February 15, 2020.

See https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program

### B. *Application of Law*

The issue is whether Tavrida had eligible payroll costs at the time of the PPP loan application to support the PPP loan amount of $367,296.00. Ivan Terez submitted his application on May 23, 2020, as a self-employed individual and listed his business name was Tavrida, DBA Tavrida, his Business TIN(EIN,SSN) as 631323926 (his social security number), with three employees and a monthly payroll of $146,919, that resulted in a PPP loan amount of $367,296. See below.

Sign Envelope ID: 7124E44E-92DE-4F9F-B2BF-8D665B18D08E



| | Paycheck Protection Program<br>Borrower Application Form | OMB Control No.: 3245-0407<br>Expiration Date: 09/30/2020 |
|---|---|---|

| Check One: ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC ☐ Independent contractor ☒ Eligible self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable<br><br>Tavrida |
|---|---|

| Business Legal Name | | |
|---|---|---|
| Tavrida | | |
| Business Address: | | |
| 3514 Hidden Creek Dr. | Business TIN (EIN, SSN)<br>631323926 | Business Phone<br>(713) 855-2466 |
| Sugar Land TX 77479 | Primary Contact<br>Ivan Terez | Email Address<br>ivan.edward.terez@gm |

| Average Monthly Payroll: | $ 146919 | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $367296.00 | Number of Employees: 3 |
|---|---|---|---|---|

See AR 383.

However, it was not the individual Ivan Terez under business name Tavrida DBA Tavrida, that submitted the PPP loan forgiveness application, but the business legal name of Tavrida and Vigorosis LLC (also with a DBA of Tavrida). It will be discussed later how this discrepancy became a factor in the denial of the forgiveness application, as noted in the FLRD. See below.



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

OMB Control No: 3245-0407
Expiration Date: 01/31/2022

| Business Legal Name ("Borrower") | | DBA or Tradename, if applicable | |
|---|---|---|---|
| Tavrida and Vigorosis LLC | | Tavrida | |
| Business Address | NAICS Code | Business TIN (EIN, SSN, ITIN) | Business Phone |
| 3134, Sugar Land | 541690 | 63-1323926 | (713) 855-2466 |
| TX, 77479 | | Primary Contact: Ivan E. Terez | E-mail Address ivan.edward.terez@gmail.com |

☑ First Draw PPP Loan ☐ Second Draw PPP Loan (check one)

SBA PPP Loan Number: 2058717803          Lender PPP Loan Number: 2058717803

PPP Loan Amount: $ 367,296          PPP Loan Disbursement Date: 05/22/2020
Amount of PPP Loan Increase (if applicable): _____          Date of PPP Loan Increase (if applicable): _____

Employees at Time of Loan Application: 3          Employees at Time of Forgiveness Application: 5

Covered Period: 06/01/2020          to 11/15/2020

See AR 389.

> To determine the proper methodology one uses to calculate the maximum PPP loan amount, one looks to 2019 tax return filing status. In this case, Ivan Terez filed a 1040 individual 2019 tax return. See below.

**Form 1040** Department of the Treasury—Internal Revenue Service (99)
**U.S. Individual Income Tax Return 2019** OMB No. 1545-0074 IRS Use Only—Do not write or staple in this space.

Filing status: ☐ Single ☒ Married filing jointly ☐ Married filing separately (MFS) ☐ Head of household (HOH) ☐ Qualifying widow(er) (QW)
Check only one box. If you checked the MFS box, enter the name of spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent. ▶

| Your first name and middle initial | | Last name | | Your social security number |
|---|---|---|---|---|
| Ivan | E | Terez | | 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 |
| If joint return, spouse's first name and middle initial | | Last name | | Spouse's social security number |
| Claudia | P. | Morales | | 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 |

Home address (number and street). If you have a P.O. box, see instructions.     Apt. no.
3134 Colony Crossing Dr.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).
Sugar Land          TX          77479

Foreign country name          Foreign province/state/county          Foreign postal code

Presidential Election Campaign
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.     ☐ You     ☐ Spouse

Standard     Someone can claim: ☐ ...     ☐ ...

See AR 347.

> Attached to his 1040 individual 2019 tax return were three 2019 Schedule Cs, Profit or Loss from Business (sole proprietorship). The three businesses he lists on each of the three Schedule Cs are (all Schedule Cs are shown below):

1. Vigorosis LLC, EIN 32- 0329938, Line 31 net profit: $1,320  (AR 352)

2. DT Technologies Americas LLC, EIN 82-2421663, Line 31net profit -65,240 (AR 355)

3. Renascent Energy Management LLC, EIN 87-1785487, Line 31 net profit: -23,895 (AR 357)

JA1385

**SCHEDULE C**
(Form 1040 or 1040-SR)

Department of the Treasury
Internal Revenue Service (99)

## Profit or Loss From Business
(Sole Proprietorship)

⬜ Go to www.irs.gov/ScheduleC for instructions and the latest information.
⬜ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

**2019**

Attachment
Sequence No. **09**

| Name of proprietor | Social security number (SSN) |
|---|---|
| Ivan    E  Terez | 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 |

| A | Principal business or profession, including product or service (see instructions) | B Enter code from instructions |
|---|---|---|
| | CONSULTANCY | ⬜ 541330 |

| C | Business name. If no separate business name, leave blank. | D | Employer ID number (EIN) (see instr.) |
|---|---|---|---|
| | VIGOROSIS  LLC | | 32-0329938 |

E  Business address (including suite or room no.) ▶  3134 Colony Crossing Dr.
City, town or post office, state, and ZIP code  Sugar Land TX 77479

F  Accounting method:   (1) [X] Cash   (2) ⬜ Accrual   (3) ⬜ Other (specify) ▶

| G | Did you "materially participate" in the operation of this business during 2019? If "No," see instructions for limit on losses | [X] Yes | ⬜ No |
|---|---|---|---|
| H | If you started or acquired this business during 2019, check here ▶ ⬜ | | |
| I | Did you make any payments in 2019 that would require you to file Form(s) 1099? (see instructions) | ⬜ Yes | [X] No |
| J | If "Yes," did you or will you file required Forms 1099? | ⬜ Yes | ⬜ No |

### Part I  Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked ▶ ⬜ | 1 | 416,843 |
| 2 | Returns and allowances | 2 | 0 |
| 3 | Subtract line 2 from line 1 | 3 | 416,843 |
| 4 | Cost of goods sold (from line 42) | 4 | 0 |
| 5 | Gross profit. Subtract line 4 from line 3 | 5 | 416,843 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) | 6 | 0 |
| 7 | Gross income. Add lines 5 and 6 ▶ | 7 | 416,843 |

### Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | | 18 | Office expense (see instructions) | 18 | |
| 9 | Car and truck expenses (see instructions) | 9 | 25,305 | 19 | Pension and profit-sharing plans | 19 | |
| 10 | Commissions and fees | 10 | | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | 11 | | a | Vehicles, machinery, and equipment | 20a | 0 |
| 12 | Depletion | 12 | | b | Other business property | 20b | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) | 13 | 0 | 21 | Repairs and maintenance | 21 | |
| | | | | 22 | Supplies (not included in Part III) | 22 | |
| | | | | 23 | Taxes and licenses | 23 | |
| 14 | Employee benefit programs (other than on line 19) | 14 | | 24 | Travel and meals: | | |
| 15 | Insurance (other than health) | 15 | | a | Travel | 24a | 16,328 |
| 16 | Interest (see instructions): | | | b | Deductible meals (see instructions) | 24b | 6,247 |
| a | Mortgage (paid to banks, etc.) | 16a | | 25 | Utilities | 25 | |
| b | Other | 16b | | 26 | Wages (less employment credits) | 26 | 341,390 |
| 17 | Legal and professional services | 17 | 16,364 | 27a | Other expenses (from line 48) | 27a | 960 |
| | | | | b | Reserved for future use | 27b | |

| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27a | 28 | 406,594 |
|---|---|---|---|
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 | 29 | 10,249 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions).
Simplified method filers only: enter the total square footage of: (a) your home: _____
and (b) the part of your home used for business: _____ Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 | 30 | 9,019 |
| 31 | Net profit or (loss). Subtract line 30 from line 29. 
If a profit, enter on both Schedule 1 (Form 1040 or 1040-SR), line 3 (or Form 1040NR, line 13) and on Schedule SE, line 2. If you checked the box on line 1, see instructions). Estates and trusts, enter on Form 1041, line 3. } | 31 | 1,230 |

See AR 352.

JA1386

# SCHEDULE C
(Form 1040 or 1040-SR)

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
(Sole Proprietorship)

☐ Go to *www.irs.gov/ScheduleC* for instructions and the latest information.
☐ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

## 2019

Attachment
Sequence No. **09**

| | |
|---|---|
| Name of proprietor | Social security number (SSN) |
| Ivan   E   Teroz | 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 |

| | | | |
|---|---|---|---|
| **A** | Principal business or profession, including product or service (see instructions) <br> energy services | **B** Enter code from instructions ☐ | 425120 |
| **C** | Business name. If no separate business name, leave blank. <br> DT Technologies Americas LLC | **D** Employer ID number (EIN) (see instr.) | 82-2421663 |
| **E** | Business address (including suite or room no.) ▶   3134 Colony Crossing Dr. <br> City, town or post office, state, and ZIP code   Sugar Land TX 77479 | | |

| | | | |
|---|---|---|---|
| **F** | Accounting method: | (1) ☒ Cash    (2) ☐ Accrual    (3) ☐ Other (specify) ☐ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| **G** | Did you "materially participate" in the operation of this business during 2019? If "No," see instructions for limit on losses | ☒ Yes ☐ No | |
| **H** | If you started or acquired this business during 2019, check here | ▶ ☐ | |
| **I** | Did you make any payments in 2019 that would require you to file Form(s) 1099? (see instructions) | ☐ Yes ☒ No | |
| **J** | If "Yes," did you or will you file required Forms 1099? | ☐ Yes ☐ No | |

## Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked | ☐ | **1** | 0 |
| 2 | Returns and allowances | | **2** | |
| 3 | Subtract line 2 from line 1 | | **3** | 0 |
| 4 | Cost of goods sold (from line 42) | | **4** | 0 |
| 5 | Gross profit. Subtract line 4 from line 3 | | **5** | 0 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) | | **6** | |
| 7 | Gross income. Add lines 5 and 6 | ▶ | **7** | 0 |

## Part II   Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | **8** | | 18 | Office expense (see instructions) | **18** | |
| 9 | Car and truck expenses (see instructions) | **9** | 0 | 19 | Pension and profit-sharing plans | **19** | |
| 10 | Commissions and fees | **10** | 2,000 | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | **11** | 43,204 | a | Vehicles, machinery, and equipment | **20a** | 0 |
| 12 | Depletion | **12** | | b | Other business property | **20b** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) | **13** | 0 | 21 | Repairs and maintenance | **21** | |
| | | | | 22 | Supplies (not included in Part III) | **22** | |
| | | | | 23 | Taxes and licenses | **23** | |
| 14 | Employee benefit programs (other than on line 19) | **14** | | 24 | Travel and meals: | | |
| | | | | a | Travel | **24a** | 19,800 |
| 15 | Insurance (other than health) | **15** | | b | Deductible meals (see instructions) | **24b** | 0 |
| 16 | Interest (see instructions): | | | 25 | Utilities | **25** | |
| a | Mortgage (paid to banks, etc.) | **16a** | | 26 | Wages (less employment credits) | **26** | |
| b | Other | **16b** | | 27a | Other expenses (from line 48) | **27a** | 240 |
| 17 | Legal and professional services | **17** | | b | Reserved for future use | **27b** | |

| | | | |
|---|---|---|---|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27a | ▶ | **28** | 65,244 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 | | **29** | -65,244 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). <br> Simplified method filers only: enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____ Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 | | **30** | 0 |
| 31 | Net profit or (loss). Subtract line 30 from line 29. <br> • If a profit, enter on both Schedule 1 (Form 1040 or 1040-SR), line 3 (or Form 1040NR, line 13) and on Schedule SE, line 2. (If you checked the box on line 1, see instructions). Estates and trusts, enter on Form 1041, line 3. | } | **31** | -65,240 |

See AR 355.

JA1387

**SCHEDULE C**
(Form 1040 or 1040-SR)

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Business
(Sole Proprietorship)

▶ Go to www.irs.gov/ScheduleC for instructions and the latest information.
▶ Attach to Form 1040, 1040-SR, 1040-NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

**2019**

Attachment
Sequence No. **09**

| Name of proprietor | Social security number (SSN) |
|---|---|
| Ivan E Terez | 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 |

| A | Principal business or profession, including product or service (see instructions) | B | Enter code from instructions |
|---|---|---|---|
| | energy consulting | ▶ | 561720 |

| C | Business name. If no separate business name, leave blank. | D | Employer ID number (EIN) (see instr.) |
|---|---|---|---|
| | Renascent Energy Management LLC | | 87-1785487 |

| E | Business address (including suite or room no.) ▶ 3514 Hidden Creek Dr. |
|---|---|
| | City, town or post office, state, and ZIP code Sugar Land TX 77479 |

F  Accounting method: (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ▶

| G | Did you "materially participate" in the operation of this business during 2019? If "No," see instructions for limit on losses | [X] Yes [ ] No |
|---|---|---|
| H | If you started or acquired this business during 2019, check here . . . . . . . . . . . . . . . . . . ▶ [ ] | |
| I | Did you make any payments in 2019 that would require you to file Form(s) 1099? (see instructions) . . . . . | [ ] Yes [X] No |
| J | If "Yes," did you or will you file required Forms 1099? . . . . . . . . . . . . . . . . . . . . . | [ ] Yes [ ] No |

**Part I   Income**

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . . . . ▶ [ ] | 1 | 0 |
| 2 | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 0 |
| 4 | Cost of goods sold (from line 42) . . . . . . . . . . . . . . . . . . . . . . . | 4 | 0 |
| 5 | Gross profit. Subtract line 4 from line 3 . . . . . . . . . . . . . . . . . . . . | 5 | 0 |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . | 6 | |
| 7 | Gross income. Add lines 5 and 6 . . . . . . . . . . . . . . . . . . . . . . ▶ | 7 | 0 |

**Part II   Expenses.** Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising . . . . . . | 8 | 4,525 | 18 | Office expense (see instructions) | 18 | |
| 9 | Car and truck expenses (see instructions) . . . . . . | 9 | 0 | 19 | Pension and profit-sharing plans . | 19 | |
| | | | | 20 | Rent or lease (see instructions): | | |
| 10 | Commissions and fees . . | 10 | | a | Vehicles, machinery, and equipment | 20a | 0 |
| 11 | Contract labor (see instructions) | 11 | 0 | b | Other business property . . . . | 20b | |
| 12 | Depletion . . . . . . | 12 | | 21 | Repairs and maintenance . . . . | 21 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) . . . . . . | 13 | 0 | 22 | Supplies (not included in Part III) . | 22 | |
| | | | | 23 | Taxes and licenses . . . . . . | 23 | |
| | | | | 24 | Travel and meals: | | |
| 14 | Employee benefit programs (other than on line 19) . . | 14 | | a | Travel . . . . . . . . . | 24a | 0 |
| 15 | Insurance (other than health) | 15 | | b | Deductible meals (see instructions) . . . . . . . . | 24b | 0 |
| 16 | Interest (see instructions): | | | 25 | Utilities . . . . . . . . . | 25 | |
| a | Mortgage (paid to banks, etc.) | 16a | | 26 | Wages (less employment credits) . | 26 | |
| b | Other . . . . . . | 16b | | 27a | Other expenses (from line 48) . . | 27a | 0 |
| 17 | Legal and professional services . | 17 | | b | Reserved for future use . . . . | 27b | |

| | | | |
|---|---|---|---|
| 28 | Total expenses before expenses for business use of home. Add lines 8 through 27a . . . . . . ▶ | 28 | 4,525 |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . . | 29 | -4,525 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). | | |
| | Simplified method filers only: enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30 . . . . . . . . | 30 | 19,370 |
| 31 | Net profit or (loss). Subtract line 30 from line 29. | | |
| | • If a profit, enter on both Schedule 1 (Form 1040 or 1040-SR), line 3 (or Form 1040-NR, line 13) and on Schedule SE, line 2. (If you checked the box on line 1, see instructions). Estates and trusts, enter on Form 1041, line 3. | 31 | -23,895 |
| | • If a loss, you must go to line 32. | | |

See AR 357.

JA1388

According to the guidelines set forth by the SBA and Treasury Department (issued April 24, 2020), the correct PPP maximum loan calculation used to determine the eligible payroll costs for 2019, is detailed in Steps 1 – 4, titled "Paycheck Protection Program, *How to Calculate* Maximum Loan Amounts – By Business Types." See *Section 7) PPP Loan Calculation,* above. As stated, for a Sole Proprietor, Steps 1-4 are as follows:

> 1. Question: I am self-employed and have no employees, how do I calculate my maximum PPP loan amount? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent during the eight-week period following the first disbursement of the PPP loan.)

Answer: The following methodology should be used to calculate the maximum amount that can be borrowed if you are self-employed and have no employees, and your principal place of residence is in the United States, including if you are an independent contractor or operate a sole proprietorship (but not if you are a partner in a partnership):

> · Step 1: Find your 2019 IRS Form 1040 Schedule C line 31 net profit amount (if you have not yet filed a 2019 return, fill it out and compute the value). If this amount is over $100,000, reduce it to $100,000. If this amount is zero or less, you are not eligible for a PPP loan.

> · Step 2: Calculate the average monthly net profit amount (divide the amount from Step 1 by 12).

> · Step 3: Multiply the average monthly net profit amount from Step 2 by 2.5.

> Step 4: Add the outstanding amount of any Economic Injury Disaster Loan (EIDL) made between January 31, 2020 and April 3, 2020 that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid). **Your 2019 IRS Form 1040 Schedule C must be provided to substantiate the applied-for PPP loan amount.** You must also provide a 2019 IRS Form 1099-MISC detailing nonemployee compensation received (box 7), invoice, bank statement, or book of record establishing you were self-employed in 2019 and a 2020 invoice, bank statement, or book of record establishing you were in operation on February 15, 2020. Emphasis added.

See https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program.

Hence, if you are applying for a PPP loan application as a sole proprietor, as Tavrida did

in this case, the first step is to look at the 2019 IRS for 1040 Schedule C line 31, net profit amount. It is that amount listed on line 31, that becomes the basis of determining the eligible payroll costs, as that line 31 amount is divided by 12 (for 12 months) then multiplied by 2.5, which results in the total payroll costs, or PPP loan amount. For Tavrida, as noted above, the amounts listed on the three Schedule Cs, line 31, are:

1. Vigorosis LLC, EIN 32- 0329938, Line 31 net profit: 1,320 (AR 352)

2. DT Technologies Americas LLC, EIN 82-2421663, Line 31net profit -65,240 (AR 355)

3. Renascent Energy Management LLC, EIN 87-1785487, Line 31 net profit: -23,895

(AR 357).

It appears that since two Schedule Cs listing DT Technologies Americas and Renascent Energy had a negative amount listed on line 31 (which provides a net amount of "0"), and Vigorosis LLC only had 1,320 listed, that this is not nearly enough to substantiate a PPP loan amount of $367,296.00. It is not clear how Tavrida calculated his eligible payroll costs to arrive at the amount of $367,296.00, but, thus far, it has been unsubstantiated. This fact alone, would be enough to deny the forgiveness application, *however, as noted above, Ivan Terez, or Tavrida, is not the entity that applied for forgiveness of this loan, but rather it was Tavrida and Vigorosis LLC, a different business entity all together.*

As the SBA noted in its FLRD:

"The Borrower submitted the 2019 tax return reflecting 3 Schedule C businesses for Vigorosis LLC, DT Technologies Americas LLC, and Renascent Energy Management LLC; the two subsequent Schedule C businesses reflect no eligible payroll with an amount of $0 in salaries and wages and a negative net income. The principal owner claims the subject loan is connected to his SSN, using a DBA of "TAVRIDA" while also including "and Vigorosis LLC", however all payroll appears to be connected to Vigorosis LLC, ending in #9938. The eligible Schedule C Business, Vigorosis LLC ending in EIN #9938 has two additional PPP loans funded 1/31/2021 and 4/30/2021 as first and second draw."

See FLRD filed February 13, 2023.

This crucial difference, as who applied for the actual PPP loan versus who applied for forgiveness of that loan, was also discussed during the review process. See below the discussion on this matter. In addition, through this review process, it was also discovered that the borrower had received more than one PPP loan and as noted in the FLRD: "a borrower may receive only one First Draw PPP Loan and one Second Draw PPP Loan." See FLRD filed February 13, 2023. See below.

| Note | Aut |
|---|---|

**Comment**          Shi

The 2483 Business Name Tavrida The platform the borrower Name is Tavrida and Vigoriosis LLC. The Borrower type in the Platform is Self-Employed Individuals for Borrower type. Only "one" 1099 self employed person can file for a PPP loan not individuals.

The 3508EZ Business Name is Tavrida and Vigoriosis LLC vs the 2483 business name is Tavrida. The 3508 EZ show 3 employees at time of application and 5 employees at time of forgiveness.

Upon review and comments above, I am concurring with the hold code team. My recommendation is to Deny this loan. Please see notes below.

**Comment**          rob

HOLD CODE TEAM - The Hold Code 7 (Mismatch of TIN (EIN/SSN), Hold Code 8 (Mismatch of Entity Name) and Hold Code 91 (Maximum Loan Size) - cannot be cleared. The Borrower per CAFS and Form 2483 is Tavrida (no EIN provided) and the Principal is Ivan Terez. Documents (federal tax returns, IRS SS-4 letters, doing business as certificates) were requested twice and the Borrower did not provide sufficient information to clear the Holds. The Borrower provided complete 2019 federal tax returns which identifies three Schedule C businesses owned (none named Tavrida) and the only business that paid wages was Vigorosis LLC (EIN 32-0329938). Manual CAFS search reflects that Vigorosis LLC (EIN 32-0329938) has 1st draw PPP loan 9563138304 and 2nd draw PPP loan 5508918900 (both already forgiven). ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ A Hold Code 35 (Potential Duplicate Loan) is also being added as loan 9563138304 was identified as a potential duplicate 1st draw loan. A Hold Code 70 (Potential Clawback) is being added to loan 9563138304 as the duplicate was already forgiven.

AR 16

       Lastly, I find the SBA correctly described the dilemma that was created by this Appeal and Forgiveness application:

    "This Appeal involves a tangled snarl of incorrect accounting, but once the various threads are disentangled, it becomes clear that Borrower had no eligible payroll and received more than one first draw PPP loan. Both of these grounds provide independent justifications for the complete denial of forgiveness.

       Mr. Terez controlled several different business entities. One of these was Vigorosis LLC.[ftnt 2] Evidently, Mr. Terez decided that he could use payments he claimed were wage payments made by Vigorosis LLC to support a PPP loan to the Borrower, Tavrida – that is, himself – as an unincorporated independent contractor, even though he was clearly a separate entity from Vigorosis LLC. As if combining two entities to try to support a PPP loan made to entity "A" with claimed wage payments made by entity "B" was not problematic enough, he did this retroactively – the loan was

originally applied for on Form 2483 only under the DBA Tavrida (AR 383), but forgiveness was applied for under the name Tavrida and Vigorosis LLC (AR 389)

The loan was applied for under the DBA Tavrida and it was granted to Tavrida, however. In other words, it was granted to Mr. Terez himself, and not to Vigorosis LLC. Vigorosis LLC was not the borrower here, and Mr. Terez's attempt to insert Vigorosis LLC into this matter to support the loan to Tavrida at the forgiveness stage must fail. The true "borrower" here is Ivan Terez DBA Tavrida, and Tavrida and Mr. Terez will be referenced as such throughout. Travrida and Vigorosis LLC will be referred to as "Appellant". Vigorosis LLC itself will be referred to by its own name when specifically discussed.

To make matters worse, on the Form 2483 Loan Application, Mr. Terez answered "no" to Certification #3, which asks: Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as Addendum A. Form 2483 (AR 383) (bolding and italics added). This is clearly incorrect. Mr. Terez admits in his own petition that he has three businesses, Vigorosis LLC, DT Technologies Americas LLC3 and Renascent Energy Management LLC, in addition to his DBA Tavrida. Appeal [ftnt 4] p. 3-5, Docket.

At this point it should be noted that not only was Vigorosis LLC a different entity than Borrower, but Vigorosis LLC received two loans of its own. Vigorosis LLC received both a first draw PPP loan of $79,882.50 and a second draw PPP loan of $46,369.00 in its own name. Mr. Terez's use of Vigorosis LLC's financials to take out a PPP loan in the name of the unincorporated individual Ivan Terez as TAVRIDA, while later taking out a first draw loan for Vigorosis LLC directly, created an impermissible duplicate first draw loan situation even before Mr. Terez grouped these two entities to support a forgiveness application on a loan that was issued to only one of these entities. [ftnt 5]"

See the SBA's Appeal's Response, filed June 6, 2023.

TVLLC does not address the issues raised in the SBA's FLRD, hence, I agree with the SBA's conclusion from its Appeal:

"There are large numbers of material discrepancies scattered throughout Borrower's documentation, but at the very least, Borrower used the same financials to support three different loans, and the borrowing entity had no eligible payroll of its own. These were the reasons given in the current Final SBA Loan Review Decision for completely denying forgiveness, and Borrower has not

borne his burden of showing a clear error of fact or law on the part of SBA. Final SBA Loan Review Decision of February 16, 2023 ("New FLRD"), (AR 18-19). The New FLRD should be sustained." *Id.*

### C. Conclusion

Tavrida and Vigorosis LLC must prove that the SBA Final Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210. It has not done so.

After reviewing the record and for the reasons set forth above, I DENY Tavrida and Vigorosis LLC's appeal, and AFFIRM the determination of the Small Business Administration in the Final Loan Review Decision (FLRD).

This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov within 10 calendar days after service, this Decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b).

H. Scott Williams
Administrative Judge

## United States Small Business Administration
### Office of Hearings and Appeals

PETITION FOR
RECONSIDERATION:

Tavrida and Vigorosis LLC, Petitioner

Decided: July 11, 2023 Decision

No. PFR-2058717803

### APPEARANCES

Ivan E. Terez d/b/a Tavrida, pro se, for Appellant Tavrida and Vigorosis LLC.

Edward Bentley, Esq., Agency Representative, U.S. Small Business Administration.

### DECISION

#### I. Introduction and Jurisdiction

On July 10, 2023, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a petition for reconsideration (PFR) in the above-captioned matter from Ivan Edward Terez d/b/a Tavrida purportedly on behalf of "Tavrida and Vigorosis LLC." The PFR seeks OHA's reconsideration pertaining to a Paycheck Protection Program (PPP) Loan No. 2058717803 and OHA's initial decision, DENYING the appeal of the same PPP Loan No. 2058717803.

At the outset, I fear that modifying the caption and the name of Appellant in the OHA appeals system at this stage of the proceedings may be more disruptive to the e-filing system than beneficial. I am clarifying that the first-draw PPP loan at issue was issued to Ivan Edward Terez d/b/a Tavrida using Ivan Edward Terez's social security number. There is no entity called "Tavrida and Vigorosis LLC." This adjudication of this case does not impact the adjudication of the separate PPP loans issued to Vigorosis LLC.

OHA has jurisdiction to decide this PFR. See 13 C.F.R. Part 134, Subpart L.

#### II. Background

Ivan Edward Terez is a Ph.D. educated engineer, researcher, and entrepreneur. (Appeal Addendum e-filed April 20, 2023).

On May 23, 2020, Ivan Terez applied for the instant first-draw PPP loan as an "eligible self-employed individual" d/b/a Tavrida with business tax ID number 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. (R. at 386).

JA1394 Ivan Terez claimed that he owned 100% of Tavrida, and Tavrida is his assumed name. (R. at 390, 379).

Ivan E. Terez's social security number is 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. (R. at 279, 280, 350).

On October 25, 2022, Ivan E. Terez explained that "Tavrida" is a tradename for Ivan E. Terez. (R. at 420).

On November 23, 2021, Ivan E. Terez applied for forgiveness for the instant loan (no. 2058717803, issued to Ivan E. Terez as Tavrida) in the name of "Tavrida and Vigorosis LLC" with Ivan E. Terez's social security number 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. (R. at 392).

Vigorosis LLC has its own EIN, 32-0329938. (R. at 135).

Vigorosis LLC runs its own payroll and files its own form 941s using its EIN. (R. at 30-119, 135-213).

In 2019, Ivan Terez received W-2 income from Ecopetrol America, Inc., and Vigorosis LLC (TIN ending 9938) received a form 1099 from Rock Flow Dynamics Inc. (R. at 228).

On a 2019 schedule C, Ivan Terez reported a net profit of $1,230 from his single-member limited liability company, Vigorosis LLC. (R. at 355).

On a 2019 schedule C, Ivan Terez reported zero gross income and a net loss for DT Technologies Americas LLC. (R. at 358).

On a 2019 schedule C, Ivan Terez reported zero gross income and a net loss for Renascent Energy Management LLC. (R. at 360).

In 2020, Ivan Terez reported a net profit of $3,043 from Vigorosis LLC on his schedule C. (R. at 247).

Vigorosis LLC (EIN ending 9938) has two additional PPP loans funded January 31, 2021, and April 30, 2021. (R. at 21-22; PFR at 4).

Appellant appealed the final SBA loan review decision concerning the Ivan E. Terez/Tavrida loan to OHA, and on June 30, 2023, an Administrative Judge affirmed SBA's decision. Appellant filed the instant PFR on July 10, 2023.

### III.   Discussion

#### A.   Standard of Review

A request for reconsideration must clearly show an error of fact or law material to the decision.  13 C.F.R. § 134.1211(c)(1).

#### B.   Analysis

Appellant's petition for reconsideration does not establish clear error in the initial decision rendered by the prior Judge.  The PFR merely rehashes Appellant's original arguments on appeal.  I empathize with Appellant's financial and family situation, however, I am bound to follow federal law and regulations. I have carefully examined the administrative record and I conclude that SBA's final decision and the initial decision from OHA were both without clear error.

JA1395

This appeal concerns Ivan Edward Terez individually and his tradename

SBA and Appellant have indicated that Vigorosis LLC has two PPP loans, and those are not before me. (R. at 17-18; PFR at 4).

It appears that the thrust of Mr. Terez's arguments relate to Vigorosis LLC, which are at best tangentially relevant to this proceeding. In this case, Mr. Terez confesses that he used his social security number when using banking applications and the SBA appeals portal. (PFR at 1). Mr. Terez confesses that he also applied for a second first-draw PPP loan in the name of Vigorosis LLC which he asserts that he later cancelled, although there is no documentation in the record to support this assertion. (PFR at 2, 4). Mr.
Terez "didn't think of any differences of Vigorosis LLC and TAVRIDA in terms of continued work and payroll." (PFR at 2).

For PPP loan purposes, Mr. Terez erred when he failed to think of differences between his limited liability company Vigorosis LLC and himself as Tavrida. Vigorosis LLC has its own EIN. Tavrida only operated using Mr. Terez's social security number. Mr. Terez used his social security number to apply for the instant PPP loan for his tradename Tavrida. Unfortunately, Mr. Terez also used his own social security number to apply for a second first- draw PPP loan for Vigorosis LLC. (PFR at 4). This means that Ivan Edward Terez obtained more than one first-draw PPP loan, which is prohibited and consequently makes Ivan Edward Terez d/b/a Tavrida ineligible for the
instant loan. 85 Fed. Reg. 20811, 20813 (Apr. 15, 2020) ("no eligible borrower may receive more than one First Draw PPP Loan.").

Next, although Mr. Terez would like to use the March 2021 guidance concerning gross income, this is not available to him for two reasons. (PFR at 3). First, Mr. Terez applied for the instant loan on May 23, 2020. (R. at 387). The guidance cited by Mr. Terez explains that "[a] borrower whose PPP loan has already been approved as of the effective date of this rule cannot increase its PPP loan amount based on the new calculation methodology." 86 Fed.
Reg. 13149, 13150 (Mar. 8, 2021). Mr. Terez cannot use the March 2021 guidance to retroactively support the instant first-draw loan. Second, Tavrida had no 2019 net income based on what I have found in the administrative record. *See generally* Administrative Record; *cf.* PFR at 3.

More specifically, Mr. Terez's tax return for 2019 does not support any eligible amount for a PPP loan because Mr. Terez d/b/a Tavrida did not have any eligible payroll costs or owner compensation. If I had to speculate, I would guess that if Mr. Terez had eligible payroll expenses, they would be accounted for in the loans to Vigorosis LLC. I think that SBA reached a similar conclusion. (R. at 17). But in this case, because Tavrida was without net income, Tavrida had no eligible payroll costs or owner compensation.
Tavrida's maximum eligible loan amount was zero dollars. *See* 15 U.S.C. § 636(a)(36)(E) (explaining how to calculate the maximum eligible loan amount).

In short, Ivan Edward Terez d/b/a Tavrida was both (1) ineligible for the instant loan because he obtained more than one first-draw PPP loan using his social security number, and (2) ineligible for the amount of the instant loan because he had no eligible payroll costs or net income for himself doing business as Tavrida. I have reached the same conclusions that SBA reached in its final loan review decision. I conclude that SBA's conclusions are well-supported by this administrative record.
Appellant has failed to show any clear error in OHA's initial decision or in SBA's

JA1396

Finally, I have no knowledge of how Mr. Terez is proceeding with his Vigorosis LLC loans or forgiveness applications, but those are entirely separate matters from the instant $367,296 loan for which Ivan Edward Terez d/b/a Tavrida is not eligible for forgiveness of any amount. *See* 15 U.S.C. § 636(d)(1) (forgiveness requires an eligible recipient and covered loan).

<p style="text-align:center">IV.   <u>Conclusion</u></p>

For the foregoing reasons, Appellant's petition for reconsideration is denied. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator, solely within her discretion, elects to review and/or reverse this decision per 13 C.F.R. §134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. *See* 13 C.F.R. § 134.1211(b). The discretionary authority of the Administrator to review and/ or reverse a decision does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. *See id*. Once the OHA decision becomes final or the Administrator issues a final decision, the final decision may be appealed to the appropriate Federal district court. 13 C.F.R. §134.1211(d). This decision is non- precedential but may be published. 13 C.F.R. § 134.1211(e) and (f).

James C. Plott -S
Digitally signed by James C. Plott -S
Date: 2023.07.11 06:31:06 -07'00'

JAMES PLOTT
Administrative Law Judge

EXHIBIT

J

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Third Union Finance, Inc.

Appellant

Appealed from
SBA PPP Loan Number
6096027001

Issued: March 28, 2022

Docket No. PPP-6096027001

Appearances: Thomas Conner, President, for Appellant
Tabitha Mangano, Esq., for SBA

### DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED** and the decision by the SBA to deny Appellant's request for loan forgiveness is upheld.

### II. Background

### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L.116-136 (March 27, 2020). Appellant applied for a PPP loan on April 6, 2020. (AR 36-37). PPP loan number 6096027001 ("the Loan") was disbursed to Appellant by the Lender effective April 16, 2020 in the amount of $77,654.67. (AR 31). On April 26, 2021, Appellant executed a PPP Loan Forgiveness Application (Form 3508EZ) requesting forgiveness of the full amount of the Loan. (AR 31-32). On June 29, 2021, the SBA informed the Lender it was undertaking a review of the Loan and requested the Lender's analysis of Appellant's Forgiveness Application and information regarding the Appellant's Loan (AR 49-50). On July 22, 2021, SBA requested additional information as follows:

> We are currently reviewing the Hold Code(s) associated with this
> PPP Loan. This request is specific to this issue and is not made in
> the normal course. Please provide the following information so that
> SBA may decision the Hold Code(s) associated with this loan and

1

it can subsequently be assigned for a forgiveness review. We must
receive this information within 10 business days.
The Hold Codes on this loan are: NAICS 522 - Credit
Intermediation - Borrower appears to be engaged in lending -
Potential eligibility issue.
Please provide one (or more if applicable) of the following for
review:
Verification of NAICS Code
Description of the business activities
2019-2020 Profit and Loss Statement to evaluate for an exception
(see SOP 50 10 6)

(AR 51-52). No response was received to the SBA's request for information, so the SBA
requested the same information again on July 29, 2021. (AR 53-54).

After reviewing Appellant's materials contained in the Administrative Record, SBA
determined that Appellant was a financial business primarily engaged in lending, investments
or an ineligible business engaged in financing or factoring. (AR 5-6). On December 15, 2021,
the SBA informed Guaranty Bank & Trust Company, the Appellant's Lender, that the loan
forgiveness requested by the Appellant was denied in full. (AR 9-10). The basis for SBA's
denial was that Appellant was a "financial business primarily engaged in lending, investments
or an ineligible business engaged in financing or factoring." *Id*. The Final SBA Loan Review
Decision that stated:

> SBA has determined that the borrower was ineligible for the PPP
> loan. The reason(s) for SBA's decision is as follows:
>
> After review of the documentation provided, the SBA concludes
> that Borrower is a financial business primarily engaged in lending,
> investments or an ineligible business engaged in financing or
> factoring.
>
> It has been determined that the borrower was an ineligible entity at
> the time of application. Research shows the borrower information
> such as its NAICS code, name, and/or business activities indicates it
> to be ineligible per 13 CFR § 120.110 (b), which prohibits the
> provision of PPP loans to "financial businesses primarily engaged
> in the business of lending, such as banks, finance companies, and
> factors." The borrower information does not meet any of SBA's
> exception criteria (e.g., pawn shops, check cashing businesses,
> mortgage loan servicers, etc.).

### B. Appeal

On December 29, 2021, Appellant filed its Appeal (Dkt. No. 11). On January 31, 2022,
OHA issued a Notice and Order. (Dkt. No. 1). The Administrative Record was timely filed by
SBA on February 10, 2022. (Dkt. No. 12). On February 11, 2022, Appellant objected to the
Administrative Record in two filings, one titled *Addendum to Appeal Letter – Two Pages* (Dkt.

JA1399

No. 13) and one titled *Appellant's Submission Pursuant to N&O-6P* (Dkt. No. 10). The SBA
filed a *Response* on March 16, 2022. (Dkt. No. 2).

In its appeal, Appellant does not dispute that it is a commercial loan business. Appellant
explained the nature of its business as follows:

> The Company makes small personal loans and provides financing
> in the regular course of its business to finance credit sales for
> customers purchasing cars, furniture, appliances, lawn mowers
> and other consumer goods from various retail stores. The
> Company also makes other loans directly to existing customers
> and new customers to finance cars, furniture, appliances, lawn
> mowers and other consumer goods that is loaned directly to the
> customer to purchase these goods directly from the retail store,
> and the Company then has these consumer goods as collateral for
> the loan. The Company has [*sic*] make a limited amount of real
> estate loans and only makes a very limited amount (1% or less) of
> unsecured personal loans with NO security.

Instead, the Appellant argues that the regulation prohibiting businesses primarily engaged in
lending from being eligible for PPP loans is a "pre-Cares Act regulation" that does not apply to
PPP loans, and that its application contradicts the intent of Congress. Appellant argues:

> By attempting to enforce Pre-CARES Act regulations in a manner
> that narrows the scope of small businesses that are eligible to
> receive a PPP loan, the SBA is acting in a manner that contradicts
> the stated intent of Congress. Respectfully, the SBA lacks the
> legal authority to override congressional intent as expressed in the
> CARES Act. Moreover, this position has been upheld by at least
> two Federal Courts confronted by similar SBA actions to enforce
> its administrative regulations that precede the CARES Act in a
> manner intended to exclude certain small businesses from PPP
> eligibility (see Case No. 20-cv-10899 in the US District Court —
> Eastern District of Michigan — Southern Division — DV
> Diamond Club of Flint, LLC and thirty-two other Plaintiffs V
> United States Small Business Administration, et al, and Case No.
> 20-C-0601 and Case No. 20-C-634 in the US District Court —
> Eastern District of Wisconsin — Camelot Banquet Rooms, Inc.
> and three other Plaintiffs V U.S. Small Business Administration.
> et al.).

(Dkt. No. 11, *Appeal Letter-Two Pages*, p.2).

### III. DISCUSSION

### A. Standard of Review

3

At the outset, it is noted that the Appellant has the burden of proving all elements of its appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. §134.1210.

## B. Analysis

### 1. Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations. "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)" are *ineligible* for SBA business loans. 13 C.F.R. § 120.110(b).

In terms of who could apply for a PPP loan, on January 14, 2021, SBA published the *"Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act"* at 86 Fed. Reg. 3692 that explained:

> b. *Are businesses that are generally ineligible for 7(a) loans under 13 C.F.R. 120.110 eligible for a PPP loan?*[35]
> Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 3.[36]

Footnote 35 states: "This subsection replaces the subsection originally published at 85 FR 20811, subsection III.2.c. ("How do I determine if I am ineligible") (April 15, 2020) and

4

modified to conform to the Economic Aid Act.". Footnote 36 state: "SOP 50 10 6 can be found at https://www.sba.gov/document/sop-50-10-lenderdevelopment-company-loan-programs-0. For PPP loans approved before December 27, 2020, see SOP 50 10 5(K), Subpart B, Chapter 2 for ineligible types of businesses. SOP 50 10 5(K) can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loanprograms."

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q). PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F). As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II). Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## 2. PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a Final SBA Loan Review Decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1)     Was ineligible for a PPP loan;

5

(2)      Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;

(3)      Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,

(4)      Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021).

The SBA Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal.  Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law.  13 C.F.R. § 134.1210.  Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

### 3. The CARES Act subjects PPP Loans to the SBA 7(a) Loan Program restrictions in 13 C.F.R. § 120.110(b)

The Appellant argues that it meets all loan forgiveness qualifications – that it experienced staffing challenges, a decrease in gross receipts, a decrease in customers, had less than 500 employees, and that it properly used the loaned funds. (Dkt. No. 11 at p. 2). Nonetheless, regardless of meeting the base CARES Act eligibility requirements and demonstrating proper use of the PPP loan proceeds, the Appellant is ineligible for the PPP Loan.  The Appellant is admittedly a financial business primarily engaged in a financing activity. 13 C.F.R. § 120.110(b).

Congress granted SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," 15 U.S.C. § 633(d). This authority extends to the PPP lending program. Additionally, the CARES Act expressly provides the PPP lending program as being a part of SBA's 7(a) Loan Program.  Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) Loan Program. *See* 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). This decision was reinforced by Congress placing the PPP lending program within the Section 7(a) lending program by specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). 15 U.S.C. § 636(a)(36)(B). This subjects the PPP lending program to the policies and regulations applicable to SBA's 7(a) Loan Program.

6

Within the Section 7(a) Loan Program, 13 C.F.R. § 120.110(b) specifically provides as a term and condition of that program, that "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)" *are ineligible*. The SBA explained in the Standard Operating Procedure issued after the enactment of the regulation (and noted in 86 Fed. Reg. 3692 (January 14, 2021) that lenders were ineligible because "[l]enders create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises which merely hold property." SOP 50 10 4, Subpart A, Chapter 2 at 29.

As noted by SBA in its *Response*, "over the last 25 years, SBA has maintained the lender exclusion policy and provided sound reasoning and rationale behind that policy. This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans." (Dkt. No. 2, at p. 9).

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First IFR. *See* Paycheck Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury website on April 2, 2020); CARES Act § 1102, 134 Stat. at 287 (15 U.S.C. § 636(a)(36)(B)). The First IFR advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg., Vol. No. 73 at 20812.

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. *See* Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg., at 3692, 3698, (January 14, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding loan program requirements, including incorporation of 13 C.F.R. § 120.110, its related SOP provisions, and the borrower certification requirement of the First Interim Rule); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness); 86 Fed. Reg. 15083 (among other things, revises the PPP rules to incorporate the American Rescue Plan Act's amendments to the PPP).

The record establishes the Appellant is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring at the time of receiving the PPP Loan. The Appellant acknowledges "The Company makes small personal loans and provides financing in the regular course of business . . . ." Furthermore, Appellant concedes "more than fifty percent (50%) of its revenue is derived from financing and lending transactions." (*See Appellant's Submission Pursuant to Notice and Order,* Dkt. No. 10, at p. 4.).

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are ineligible for SBA business loans, including the PPP lending

7

JA1404

program. *See* 85 Fed. Reg. at 20812; 13 C.F.R. §120.110(b). The Appellant was ineligible to participate in any SBA 7(a) Loan Program, including the PPP lending program. As such, the final SBA loan review decision is well supported by the record and devoid of any clear error of fact or law.

### 4. OHA Judges Are Bound by the SBA's Regulations and Policies

In its appeal, Appellant points out some Federal district courts and court of appeal have reached a contrary conclusion with respect to the SBA's prohibition against loan companies being ineligible for PPP loans. (Dkt. No. 10, at pp. 4-6). Appellant argues OHA should follow the precedent of those decisions. However, at least three circuit courts (the D.C. Circuit, and 2nd and 11th Circuit) and several district courts have recognized that the PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program. USF Fed. Credit Union v. Gateway Radiology Consultants, P.A., 983 F.3d 1239 (11th Cir. 2020); see Pharaohs GC, Inc. v. United States Small Business Administration, No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021); American Association of Political Consultants v. U.S. SBA, No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA, 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020); see also United States SBA v. Vestavia Hills, Ltd., No. 20-cv-01308-GPC- LL, 2021 U.S. Dist. LEXIS 58373 (S.D. Cal. Mar. 26, 2021); Diocese of Rochester v. United States SBA, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."); In re Penobscot Valley Hosp., No. 19-10034, 626 B.R. 350, 2021 Bankr. LEXIS 124, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021).

Despite these decisions, it must be noted that OHA is a creature of statute, the Small Business Act. 15 U.S.C. § 634(i). The statute provides that OHA judges are employees of SBA. 15 U.S.C. § 634(i)(3)(B). OHA judges may hear cases arising under 5 U.S.C. § 554 and shall have powers described under 5 U.S.C. § 556(c). *See* 15 U.S.C. § 634(i)(3)(C)(ii). That is, OHA judges have the powers of ALJs. The Small Business Act thus incorporates by reference that provision of the Administrative Procedure Act providing the power of employees presiding at agency hearings is "Subject to the published rules" of the employing agency. 5 U.S.C. § 556(c). Further, as the Department of Justice (DOJ) OLC has found, ALJs have no constitutionally based judicial power, but are semi-independent subordinate hearing officers, and employees of the executive branch department or agency employing them. *Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings*, 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–2, https://www.justice.gov/file/20131/download; *Ramspeck v. Federal Trial Examiners Conference* 345 U.S. 128, 132-33 (1953). As such, the judges are bound by all policy directives and rules promulgated by their agency, including their agency's interpretations of those policies and rules. ALJs are creatures of statute and are thus subordinates to the Administrator on matters of policy and law. *Nash v. Bowen,* 869 F.2d 675, 680 (2d, Cir.) *cert. den.*, 493 U.S. 813 (1989). In fact, "[o]n matters of law and policy however, ALJs are entirely subject to the Agency." *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984).

Therefore, OHA's Administrative Judges and ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as executive branch officials

8

who perform quasi-judicial functions within their agencies, and in that capacity, they owe the same allegiance to the Administrator's policies and regulations as any other Agency employee. *Auth.of Educ. Dep't Admin. L. Judges in Conducting Hearings*, *supra*, at *1–2. Consequently, OHA judges are bound by the SBA's regulations, directives and policies, including the prohibition of loan companies being eligible for PPP loans. 13 C.F.R. § 120.110(b).

### C. Conclusion

Based upon the foregoing, it is determined that the Appellant has failed to establish the Final SBA Loan Review Decision was based on a clear error of fact or law. Therefore, the Appellant's **appeal is DENIED**.

This is the initial decision of the SBA. Unless a request for reconsideration is filed under 13 C.F.R. § 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision will become the SBA's final decision 30 calendar days after it is served. See 13 C.F.R. § 134.1211(b); PPP Procedural Rule. A party may file a request for reconsideration within 10 calendar days after service of an initial decision. You can serve your petition via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov. A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

*Gary D. Smith*

Gary D. Smith
Administrative Judge

9

## EX 4

### United States Small Business Administration
### Office of Hearings and Appeals

**PAYCHECK PROTECTION PROGRAM APPEAL OF**:

**Thompson Services**

　　Appellant

Appealed from
SBA PPP Loan No. 1490337202

Issued:  **March 14, 2022**

Decision No. **1490337202**

Appearances:
　　Paul Degenhart (Degenhart & Degenhart Law, LLC) for the Appellant.
　　Dina Boorda, for the Small Business Administration.

## DECISION

　　After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of Thompson Services (Appellant) is **DENIED**.  For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

　　On April 6, 2020, the Appellant (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application. On April 20, 2020, the Appellant was approved for a PPP loan by Business Development Corporation of South Carolina (Lender) in the amount of $407,192.00 and received the loan proceeds.  On September 24, 2020, the Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender.  On September 24, 2020, the Lender determined the Appellant should receive full loan forgiveness in the amount of $407,192.00.

　　Subsequently, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding Appellant ineligible for the amount of PPP loan received and limiting PPP loan forgiveness to $89,679.00.

　　On November 5, 2021, the Appellant filed the instant appeal from that final SBA loan review decision.  Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for PPP loan forgiveness.

　　On December 6, 2021, the undersigned issued a Notice and Order requiring the filing of the Administrative Record (AR) by December 27, 2021, providing for the Appellant to Object to the same by January 7, 2022, and allowing for SBA to respond to the Petition by January 24, 2022.

Page 1 of 8

JA1407

On December 20, 2021, the AR was filed.  On December 29, 2021, the Appellant filed an Objection to AR.  SBA did not file a Response to the Petition.  The AR was closed on January 24, 2022.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $407,192.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.     Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

"Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)" are ineligible for SBA business loans. 13 C.F.R. § 120.110(b).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose.  15 U.S.C. § 636(a)(36)(Q).

JA1408

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II. PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

JA1409

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1]).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire record (Exhibit List attached and incorporated herein), a preponderance of the evidence establishes:

On April 6, 2020, the Appellant submitted a PPP Borrower Application. Addendum A of the Application provides the Appellant's Tax ID # is 57-0846820 and provides the Appellant "are the owners" of Rental Resource, Inc. (Tax ID # 57-1078414) (AR pp. 674-680).

On February 1, 1999, the Appellant entered into an "Operating Agreement" with Rental Resource, Inc. The agreement provides the "…business and affairs" of Rental Resource, Inc. "shall be conducted under the name of Thompson Services, Inc." The agreement provides the Appellant "…is responsible for all payroll related governmental filings and requirements. Rental Resource Inc. will reimburse its appropriate share of all personnel resources." (AR pg. 666).

The Appellant was approved for a PPP loan by the Lender in the amount of $407,192.00, executed a PPP Promissory Note, and received the loan proceeds on April 20, 2020. (AR pp. 17-21 and 681-682).

On September 24, 2020, the Appellant submitted PPP Loan Forgiveness Application Form 3508EZ. (AR pp. 677-680). The Lender determined the Appellant should receive full loan forgiveness in the amount of $407,192.00. (AR pp. 15 and 247-250).

On October 16, 2020, SBA requested the Lender provide additional documentation to evaluate the Appellant's loan forgiveness request. (AR pp. 668-669). On November 24, 2020, and December 31, 2020, SBA requested the Lender provide: IRS Forms 941; State 3rd Quarter payroll information; all payroll information for the 'covered period'; salaries for certain employees, and Form 1120 for 2019. (AR pp. 670-673). The Appellant supplied all of the requested forms and has provided the Federal IRS Form 1120-S for Rental Resource, Inc. (AR pp. 56-59, 235-241, and Petition Ex. 1120-S Rental Resource, Inc.).

---

[1] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1410

Following receipt of the requested documentation, SBA found:

"Per the borrower accountant's letter included in Appendix B, the borrower compiles payroll statements, and files federal and state employment tax forms on a consolidated basis with Rental Resource, Inc., an affiliated company. In other words, the IRS Form 941, SUTA statements, and payroll statements include wages paid to Rental Resource, Inc. employees in addition to the borrower's employees. However, per the accountant, these amounts are subsequently reimbursed so that the wages and compensation are properly allocated on their respective IRS Form 11205 used for the filing of the income tax.

To illustrate this point, note that the payroll statement for the borrower (Thompson Services. Inc.) included herein as Appendix C shows total gross wages $1,564,634. These are the gross wages incorrectly used by the Acceptor/Reviewer in their maximum loan calculation. This figure differs materially from the wages and officer compensation of $418,444 reported on lines 7 and 8 of the 2019 IRS Form 11205 for the borrower.

The accountants letter together with the aforementioned forms infer that $1,146,190 (73.25%) in payroll costs reported on the 2019 form 941 and SUTA filings, and in the 2019 payroll statements are actually a wage expense for Rental Resource, Inc. and not for the borrower. Accordingly, the HARG maximum loan calculation uses the $418,44 in wages and adds $12,017 in retirement benefits derived from line 17 of the same form to conclude total Payroll Costs of $430,461 and a maximum loan amount of $89,679. These wages include pay of $65,275 to the two Owner-employees.

As mentioned earlier, the borrower does not prepare separate payroll statements and forms for the two entities. There is in file an IRS Form 941 for the 3rd quarter 2020 showing the combined Medicare wages of both firms. Although the form only encompasses a portion of the Covered Period that spans from 4/10/2020 through 8/2/2020, the application of the aforementioned 26.75% to the reported $390,636 in Medicare Wages would imply that $104,495 pertains to the borrower. This supports a loan forgiveness amount of $89,679 as delimited by the maximum loan calculation.". (AR pg. 1010).

Following review, SBA issued a final loan review decision providing the Appellant with $89,679.00 of PPP loan forgiveness. SBA determined the Appellant was only eligible a PPP loan in the amount of $89,679.00 and entitled to that same amount in a PPP loan forgiveness. (AR pp. 15-16 and 664).

Through written argument the Appellant argues in favor of full loan forgiveness, as follows: The payroll costs for the Appellant are split on two tax returns - Thompson Services Inc. 57-0846820 and Rental Resource Inc. 57-1078414. When combined, the two tax returns reflect with the 941's, which are all filed under one EIN#. Payroll for Rental Resource Inc. is merely processed through Thompson for both companies. (AR pp. 12-51 and Petition Ex. 1120-S Rental Resource, Inc.).

JA1411

Thompson Service, Inc. and Rental Resource, Inc. filed separate Federal and State (South Carolina) Income Tax returns in 2019. (AR pg. 22 and Petition Ex. 1120-S Rental Resource, Inc.)

SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness. P.L. 116-36, §1102; *see* also 15 U.S.C. §§ 636(a)(36) and 636m. The CARES Act grants the Administrator emergency rulemaking authority and instructed the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, along with the issuance of guidance and regulation to implement loan forgiveness within 30 days. 15 U.S.C. § 9012 and 15 U.S.C. § 9012; 15 U.S.C. § 636m(k).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

The Appellant argues "SBA denied based on only the tax return for Thompson Services which had salaries of $418,444 (per line 7 & 8) and benefit of $12,017. Based on this information the calculation would be a total of $430,461 / 12 = 35,872 x 2.5 = $89,679 9 which is the amount that was paid/forgiven. Copy of tax return provided. The correct calculation should also have considered the wages and salaries of Rental Resource also. Rental is a sister company to Thompson and processes payroll for Thompson. See Operating Agreement statement attached which dates back to February 1, 1999. The tax return for Rental is also provided which shows wages and salaries of an additional $1,146,219."

To support the argument, the Appellant enclosed a timeline prepared by the lender Business Development Corporation of SC explaining the two tax returns and the various attempts to correct this error. The Appellant further argues the information used by SBA to "determine Forgiveness was based on payroll detail from 4/10/2020 through 8/28/2020 which had payroll of $557,019 after reduction of salaries over $100M."

JA1412

Docket No. PPP-1490337202

Review of the entire AR and Objection reflects SBA fully considered the Operating Agreement and Tax Filings of the Appellant. In addressing the records, SBA noted the wages and compensation of these 'sister' companies is properly allocated on their respective IRS Form 11205 used for the filing of the income tax. SBA relied upon the Appellant's CPA in reaching this conclusion. Further, SBA reviewed the 941's and applied the roughly 73%/27% payroll allocation between the two companies (Appellant being 27%). The AR reflects the two companies make separate tax filings, the Operating Agreement only provides for the Appellant to operate the sister company, and the Appellant company applied for the SBA PPP loan. Using all of the documentation provided by the Appellant, SBA properly recalculated the maximum PPP loan the Appellant was entitled to receive. Allowing PPP loan forgiveness to the full extent of loan eligibility was proper.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is upheld. Appellant is not entitled to additional loan forgiveness.

## CONCLUSION OF LAW

The Appellant was eligible for a PPP loan in the amount of $89,679.00. The Appellant was ineligible $317,513.00 of the $407,192.00 amount received from PPP Loan Number 1490337202. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for $317,513.00 from the proceeds of PPP Loan Number 1490337202.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Digitally signed by Brian J. Haring -S

**Brian J. Haring**
U.S. Administrative Law Judge

JA1413

# EX 5

## United States Small Business Administration
## Office of Hearings and Appeals

PETITION FOR RECONSIDERATION:

**Thompson Services**

      Petitioner

RE: *PPP Appeal of Thompson Services*, SBA
No. PPP-1490337202 (2022)

Issued: **4/13/2022**

Docket No. **PFR-1490337202**

Appearances:
      Paul V. Degenhart, Degenhart & Degenhart Law. LLC, for the Appellant.
      Dina G. Boorda, for the Small Business Administration.

### RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. 1490337202, the appeal petition of Thompson Services (Appellant) remains **DENIED**. For the reasons discussed below, Appellant is not entitled to loan forgiveness.

### PROCEDURAL HISTORY

On April 6, 2020, the Appellant (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application. On April 20, 2020, the Appellant was approved for a PPP loan by Business Development Corporation of South Carolina (Lender) in the amount of $407,192.00 and received the loan proceeds. On September 24, 2020, the Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender. On September 24, 2020, the Lender determined the Appellant should receive full loan forgiveness in the amount of $407,192.00.

Subsequently, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding Appellant ineligible for the amount of PPP loan received and limiting PPP loan forgiveness to $89,679.00.

On November 5, 2021, the Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for PPP loan forgiveness.

On December 6, 2021, the undersigned issued a Notice and Order requiring the filing of the Administrative Record (AR) by December 27, 2021, providing for the Appellant to Object to the same by January 7, 2022, and allowing for SBA to respond to the Petition by January 24, 2022.

JA1414

On December 20, 2021, the AR was filed.  On December 29, 2021, the Appellant filed an Objection to AR.  SBA did not file a Response to the Petition.  The AR was closed on January 24, 2022.

On March 14, 2022, the undersigned issued a Decision upholding the final SBA loan review which held the Appellant was eligible for a PPP loan in the amount of $89,679.00 making it ineligible $317,513.00 of the $407,192.00 amount received from PPP Loan Number 1490337202.  The decision upheld the denial of PPP loan forgiveness beyond the amount of PPP loan the Appellant was eligible to receive.

On March 23, 2022, the Appellant filed a Request for Reconsideration alleging errors of both fact and law in Decision No. 1490337202.  On March 23, 2022, the undersigned issued a Notice and Order providing for SBA to file a response to the Request for Reconsideration no later than April 5, 2022.  SBA filed a Response on April 4, 20202, and the AR was then closed.

## ISSUES

Whether the final SBA loan review decision or OHA decision contains clear error of law or fact to allow the Appellant $407,192.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.   Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).

Subject to other PPP requirements, Sections B.1.d and B.1.g permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

JA1415

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II.    PPP Loan Forgiveness

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. §636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. §636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. §636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. §636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. §636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. §636m(g).

JA1416

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower:

(1) Was ineligible for a PPP loan;
(2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses;
(3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or,
(4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. §134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. §134.1203.

## III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. §134.1211(c).

A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

---

[1] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1417

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire record (Exhibit List attached and incorporated herein), a preponderance of the evidence establishes:

### I.   Background

On April 6, 2020, the Appellant submitted a PPP Borrower Application.  Addendum A of the Application provides the Appellant's Tax ID # is 57-0846820 and provides the Appellant "are the owners" of Rental Resource, Inc. (Tax ID # 57-1078414) (AR pp. 674-680).

On February 1, 1999, the Appellant entered into an "Operating Agreement" with Rental Resource, Inc.  The agreement provides the "…business and affairs" of Rental Resource, Inc. "shall be conducted under the name of Thompson Services, Inc."  The agreement provides the Appellant "…is responsible for all payroll related governmental filings and requirements. Rental Resource Inc. will reimburse its appropriate share of all personnel resources." (AR pg. 666).

The Appellant was approved for a PPP loan by the Lender in the amount of $407,192.00, executed a PPP Promissory Note, and received the loan proceeds on April 20, 2020. (AR pp. 17-21 and 681-682).

On September 24, 2020, the Appellant submitted PPP Loan Forgiveness Application Form 3508EZ. (AR pp. 677-680).  The Lender determined the Appellant should receive full loan forgiveness in the amount of $407,192.00. (AR pp. 15 and 247-250).

On October 16, 2020, SBA requested the Lender provide additional documentation to evaluate the Appellant's loan forgiveness request. (AR pp. 668-669).  On November 24, 2020, and December 31, 2020, SBA requested the Lender provide: IRS Forms 941; State 3rd Quarter payroll information; all payroll information for the 'covered period'; salaries for certain employees, and Form 1120 for 2019. (AR pp. 670-673).  The Appellant supplied all of the requested forms and has provided the Federal IRS Form 1120-S for Rental Resource, Inc. (AR pp. 56-59, 235-241, and Petition Ex. 1120-S Rental Resource, Inc.).

Following receipt of the requested documentation, SBA found:

"Per the borrower accountant's letter included in Appendix B, the borrower compiles payroll statements, and files federal and state employment tax forms on a consolidated basis with Rental Resource, Inc., an affiliated company. In other words, the IRS Form 941, SUTA statements, and payroll statements include wages paid to Rental Resource, Inc. employees in addition to the borrower's employees. However, per the accountant, these amounts are subsequently reimbursed so that the wages and compensation are properly allocated on their respective IRS Form 1120S used for the filing of the income tax.

To illustrate this point, note that the payroll statement for the borrower (Thompson Services. Inc.) included herein as Appendix C shows total gross wages $1,564,634.

JA1418

These are the gross wages incorrectly used by the Acceptor/Reviewer in their maximum loan calculation. This figure differs materially from the wages and officer compensation of $418,444 reported on lines 7 and 8 of the 2019 IRS Form 11205 for the borrower.

The accountants letter together with the aforementioned forms infer that $1,146,190 (73.25%) in payroll costs reported on the 2019 form 941 and SUTA filings, and in the 2019 payroll statements are actually a wage expense for Rental Resource, Inc. and not for the borrower. Accordingly, the HARG maximum loan calculation uses the $418,44 in wages and adds $12,017 in retirement benefits derived from line 17 of the same form to conclude total Payroll Costs of $430,461 and a maximum loan amount of $89,679. These wages include pay of $65,275 to the two Owner-employees.

As mentioned earlier, the borrower does not prepare separate payroll statements and forms for the two entities. There is in file an IRS Form 941 for the 3rd quarter 2020 showing the combined Medicare wages of both firms. Although the form only encompasses a portion of the Covered Period that spans from 4/10/2020 through 8/2/2020, the application of the aforementioned 26.75% to the reported $390,636 in Medicare Wages would imply that $104,495 pertains to the borrower. This supports a loan forgiveness amount of $89,679 as delimited by the maximum loan calculation.". (AR pg. 1010).

Following review, SBA issued a final loan review decision providing the Appellant with $89,679.00 of PPP loan forgiveness. SBA determined the Appellant was only eligible a PPP loan in the amount of $89,679.00 and entitled to that same amount in a PPP loan forgiveness. (AR pp. 15-16 and 664).

Through written argument the Appellant argues in favor of full loan forgiveness, as follows: The payroll costs for the Appellant are split on two tax returns - Thompson Services Inc. 57-0846820 and Rental Resource Inc. 57-1078414. When combined, the two tax returns reflect with the 94l's, which are all filed under one EIN#. Payroll for Rental Resource Inc. is merely processed through Thompson for both companies. (AR pp. 12-51 and Petition Ex. 1120-S Rental Resource, Inc.).

Thompson Service, Inc. and Rental Resource, Inc. filed separate Federal and State (South Carolina) Income Tax returns in 2019. (AR pg. 22 and Petition Ex. 1120-S Rental Resource, Inc.)

On March 14, 2022, the undersigned issued a Decision upholding the final SBA loan review which held the Appellant was eligible for a PPP loan in the amount of $89,679.00 making it ineligible $317,513.00 of the $407,192.00 amount received from PPP Loan Number 1490337202. The decision upheld the denial of PPP loan forgiveness beyond the amount of PPP loan the Appellant was eligible to receive.

On March 23, 2022, the Appellant filed a Request for Reconsideration alleging errors of both fact and law in Decision No. 1490337202. On March 23, 2022, the undersigned issued a Notice

JA1419

and Order providing for SBA to file a response to the Request for Reconsideration no later than April 5, 2022. SBA filed a Response on April 4, 20202, and the AR was then closed.

SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness. P.L. 116-36, §1102; *see* also 15 U.S.C. §§ 636(a)(36) and 636m. The CARES Act grants the Administrator emergency rulemaking authority and instructed the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, along with the issuance of guidance and regulation to implement loan forgiveness within 30 days. 15 U.S.C. § 9012 and 15 U.S.C. § 9012; 15 U.S.C. § 636m(k).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv). The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

## II.    Legal Error Asserted by the Appellant

The Appellant argues the Decision contain an error of law, when corrected entitles the Appellant to PPP loan forgiveness in the amount of PPP loan received. Specifically, the Appellant argues: "The correct calculation should have considered the wages and salaries of Rental Resource also since Rental is a sister company and statutory affiliate to Thompson which processed and was responsible for the aggregate payroll for both Thompson and Rental as explained above. The final SBA loan review decision is inconsistent with the affiliation and aggregation statutes. Thompson and Rental were affiliated companies, and the aggregate payroll must be reported under a single employer." (Request for Reconsideration pg. 9). Essentially, the Appellant's assignment of error provides any finding failing to aggregate and treat wages/salaries of the Appellant and its 'sister' entity Rental Resources is inconsistent with 13 C.F.R. §121.103 (f), 13 C.F.R. §121.301 (f) (4), 26 C.F.R. § 1.1563 (a) (3) (i) and 26 U.S. Code § 414.

The Decision identifies documentation in the AR concerning the affiliation of the Appellant and Rental Resources. Specifically, the Decision refers to Appellant's written argument concerning this issue and noted "Rental is a sister company to Thompson and processes payroll for Thompson". (Decision pg. 6).

JA1420

The AR reflects SBA's analysis of the "affiliation" of Thompson and Rental Resource as follows: "The Acceptor & the Reviewer calculated the maximum loan amount using payroll statements that, although titled under the borrower's name, mostly contain payroll expenses for an affiliate of the borrower." (AR pg. 12).

The Decision addresses the payroll expenses of the Appellant and 'sister' entity, as follows:

"The accountants letter together with the aforementioned forms infer that $1,146,190 (73.25%) in payroll costs reported on the 2019 form 941 and SUTA filings, and in the 2019 payroll statements are actually a wage expense for Rental Resource, Inc. and not for the borrower. Accordingly, the HARG maximum loan calculation uses the $418,44 in wages and adds $12,017 in retirement benefits derived from line 17 of the same form to conclude total Payroll Costs of $430,461 and a maximum loan amount of $89,679. These wages include pay of $65,275 to the two Owner-employees." (Decision pg. 5).

The AR includes the SBA PPP Loan & Forgiveness Review Procedures, ("Review Procedures") which pose in Question A3, specific eligibility questions and statutory references applied to determine whether the "Borrower meets all Size Standard requirements." (AR pg. 4). Additionally, the document addresses statutory eligibility regarding affiliation in Question A5 of the Review Procedures. (AR pg. 5). The guidance provided is seen directly in the final SBA loan review decision and affirmed in the outcome of the Decision. SBA determined the Appellant met the size standard and eligibility requirements with consideration of the Rental Resources affiliation.

Within the SBA 7(a) PPP loan program, the affiliation regulation is found at 13 C.F.R. § 121.301 and titled "What size standards and affiliation principles are applicable to financial assistance programs." The regulation is contained in Part 121 ("Small Business Size Regulations") under 13 CFR Subpart A ("Size Eligibility Provisions and Standards."). SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). 13 C.F.R. § 121.101(a). The affiliation rules are solely applicable for purposes of determining size eligibility. SBA does not take into consideration affiliation when determining any other requirement for 7(a) loan eligibility.

The AR and Decision reflect SBA determined the payroll for employees of the "sister company", Rental Resource Inc., was not eligible for a PPP loan under Thompson Services, Inc.'s PPP loan application. The Appellant's PPP Borrower Application and PPP Loan Forgiveness Application Form 3508EZ were submitted for "Thompson Services Inc." Both forms reflect the Appellant's Federal Employer Tax Identification Number (EIN) as 57-0846820. (AR pp. 312 and 64). As noted above, Rental Resources has a separate EIN. A PPP application is only for one entity, and eligibility for a PPP loan is based on that applicant entity's EIN. Rental Resource Inc. would be eligible for a separate PPP loan in its own name and under its own EIN. As such, the final SBA loan review decision and OHA decision do not contain an error of law.

JA1421

## III.    Summary

A small business must meet SBA's ownership, operation, and size standards (15 U.S.C. §632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§121.101(a), 121.102(a), 121.201). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received. 13 C.F.R. §134.1201(b)(2).

The portion of the CARES Act the Appellant relies on (15 U.S.C. §636(a)(36)(D)(i)) (i.e. Paragraph (36)(D)(i)) does indicate in addition to small business concerns "any business concern…shall be eligible to receive a covered [PPP] loan", if it meets SBA size standards (see 15 U.S.C. §636(a)(36)(D)(i)(I)-(II)). Attention is called to Paragraph 36(D)(i) of 15 U.S.C. §636(a) which begins with two relevant words, "In general—". These words make clear the paragraph describes general eligibility requirements and does not create an absolute requirement guarantying PPP loan eligibility for any business concern.

Such a reading would allow any borrower to claim PPP loan eligibility simply by meeting the SBA size requirements set forth in 13 C.F.R. §121.101 and .301, which would undermine the purpose of the CARES Act, public trust, and SBA's ability to administer the Act in the manner directed by Congress. The Appellant's argument is based on a misreading of the role affiliation/aggregation of entities, and does not provide a persuasive legal basis to make the extraordinary finding that any business concern meeting SBA's size requirements is guaranteed PPP loan eligibility to the exclusion of all other portions of the CARES Act[2, 3].

Here, the AR and Decision clearly identify the affiliated nature of the Appellant and the 'sister' entity. Only an **eligible recipient** of a PPP loan may receive loan forgiveness (15 U.S.C. §636(a)(36)(A)(ii) and (iv); 15 U.S.C. §636m(a)(1) and (10)). Unless otherwise provided, PPP loans are guaranteed under the same terms, conditions, and processes as other 7(A) loans (15 U.S.C. §636(a)(36)(B)). The PPP statute (15 U.S.C. §636(a)(36)) does not allow for the application of size requirements set forth in 13 C.F.R. §121.101 and .301 to carry-over and allow the maximum loan eligibility to be established by combining affiliated entities income and

---

[2] The United States Supreme Court has determined, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

[3] To say "In general" any business concern meeting SBA's size requirements is eligible for a PPP loan is akin to saying "In general" any person 16 years of age or older is eligible for a driver's license. No reasonable person would expect an individual to be granted a driver's license simply because (s)he meets the age requirement. To the contrary, a reasonable person would expect the individual to also meet all other applicable requirements, including driver's education and testing requirements. Similarly, it reasonable to expect a business concern to not only meet the size requirements for a PPP loan but all other applicable requirements of Section 1102 of the CARES Act (15 U.S.C. §636(a)(36)) to receive a PPP loan.

JA1422

expenses. Under long-standing SBA regulations and policy in effect when Appellant submitted the PPP loan application, the Appellant is not able to establish a maximum PPP loan amount in combination with an affiliated entity. (IFR #1, 85 Fed. Reg. Page 20812; 13 C.F.R. §121.101 and 13 C.F.R. §121.301)[4].

The final SBA loan review decision is well-supported in finding the Appellant could not combine an affiliated entity for purposes of establishing the Appellant's maximum PPP loan eligibility. The Appellant was ineligible to receive $317,513.00 of the $407,192.00 in proceeds received from PPP Loan Number 1490337202. PPP loan forgiveness is only available up to an amount equal to a borrowers maximum eligibility for a PPP loan. The Appellant is ineligible to receive PPP loan forgiveness for the excess $317,513.00 in proceeds received from the Lender. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Appellant's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Appellant has failed to establish any error of law or fact in the Decision. The final SBA loan review decision is **AFFIRMED.**

## CONCLUSION OF LAW

The Appellant failed to establish the final SBA loan review decision or the OHA decision related to PPP Loan No. 1490337202was based on a clear error of law or fact. The Appellant was not eligible for the amount of PPP loan received and is not entitled to PPP loan forgiveness for that excess amount. This is an initial agency decision. Unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse this reconsidered initial OHA decision pursuant to 13 C.F.R. §134.1211(c)(3), this decision shall become the final decision of SBA 30 calendar days following service upon the parties. 13 C.F.R.§134.1211.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED.** The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

Digitally signed by Brian J. Haring -S

**Brian J. Haring**
U.S. Administrative Law Judge

---

[4] IFR #1 was published/released on the U.S. Department of the Treasury (USDT's) PPP webpage on April 2, **2020** and became effective April 15, 2020. IFR #1 was published on USDT's webpage the same day the PPP Borrower Application Form (SBA Form 2483) became available on the webpage (https://home.treasury.gov/system/files/136/PPP-Borrower-Application-Form-Fillable.pdf).

JA1423

Docket No. PFR-1490337202

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

**Either SBA or the Appellant may request reconsideration of an initial decision** by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).

**The Judge may also reconsider an initial decision on his or her own initiative** within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A **RECONSIDERED INITIAL DECISION** becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. §134.1211(d). 13 C.F.R. § 134.1211(c)(3).

**The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant** not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).

**Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision,** the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

**In the event the SBA Administrator elects to review and/or reverse an initial OHA decision** and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).

The SBA Administrator's decision will become the FINAL DECISION of SBA upon issuance. 13 C.F.R. § 134.1211(d).

Page 11 of 11

JA1424

**United States Small Business Administration**
**Office of Hearings and Appeals**

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

Treasurer Loans of Batesville, Inc.

Appellant

Appealed from
SBA PPP Loan Number
7143927009

Issued: April 1, 2022

Docket No. PPP-7143927009

APPEARANCES

For SBA Nickolas Wilson, Office of General Counsel. C. Richard Dobbins, CPA, Co-Trustee for Treasurer Loans of Batesville, Inc.

DECISION

I. Introduction and Jurisdiction

On October 21, 2021, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Treasurer Loans of Batesville, Inc. (Appellant) is ineligible for the PPP Loan received. On November 17, 2021, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed infra, I Deny the appeal and affirm the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

II. Background

On April 20, 2020, SBA disbursed a PPP loan to Appellant. On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L. 116-136 (March 27, 2020). On April 3, 2020, Appellant submitted an SBA Form 2483, Paycheck Protection Program Borrower Application ("the Application"). (AR 177-180) Subsequently, PPP loan number 7143927009 ("the Loan") was disbursed to Appellant by the Lender on or about April 21, 2020, in the amount of $141,666.49. (AR 12, 181, 183, 186) On November 4, 2020, Appellant executed a Paycheck Protection Program PPP Loan Forgiveness Application Form 3508EZ requesting forgiveness for the full amount of the Loan. (AR 181-184)

On November 3, 2020, Appellant filed for PPP loan forgiveness. On April 13, 2021, SBA informed the Lender that it was undertaking a review of the Loan and requested information regarding the Appellant. (AR 169-170) Lender responded with the forgiveness submission the same day. (AR 5) On June 9, 2021, SBA requested, through the Lender, additional information regarding the Appellant. Specifically, SBA informed Appellant of

the following: Borrower appears to be engaged in lending. Potential eligibility issue. Please provide proof that the borrower is not involved in lending such as: 1. Verify NAICS Code 2. Description of the business activities 3.Governing business documents; by-laws, partnership agreement, or corporate resolution 4. Tax Return.

## A. Final SBA Loan Review Decision

On October 21, 2021, SBA issued its final loan review decision finding that Appellant was ineligible for PPP Loan received.

In its decision, SBA found after reviewing Appellant's NAICS (North American Industry Classification System) Code of 522291 - Consumer Lending, 2019 Profit & Loss Statements, statements made in the letters and other documentation in the AR, that Appellant was a financial business primarily engaged in lending. (AR 2, 6-8, 10-11, 187-190) The CARES Act provides that, "[e]xcept as otherwise provided," "the [SBA] Administrator may guarantee" PPP loans "under the same terms, conditions,and processes" as other Section 7(a) loans. See CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)). Section 7(a) loan program regulation 13 C.F.R. §120.110(b) provides that "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" are ineligible for SBA 7(a) loans. Therefore, SBA determined Appellant was an ineligible business under the PPP and cannot receive forgiveness of the PPP loan in accordance with applicable law. (AR 2, 6-8, 10).

## B. Appeal

On November 17, 2021, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous. Appellant raises on appeal that (1) the ineligibility of businesses engaged in lending found in SOP 50 10 5(K), p. 104 III, "was implemented by the SBA prior to the enactment of the CARES Act." and "there are NO Provisions within the CARES Act that...indicate that certain businesses are ineligible [for] PPP," and based on the NAICS Code 522291 for Consumer Lending and Appellant's revenue amount, "Appellant meets the qualifications for PPP loanforgiveness," (2) even if said exclusion found in SOP 50 10 5(K) does apply, "Section A.2. b. ii. of this regulation provides that "A business that provides financing in the regular course of its business (such as a business that that finances Credit sales) is eligible."", (3) the Appellant "complied with ALL of the CARES Act provisions." and (4) "many of the PPP loans with the NAICS Code 522291...have been forgiven by the SBA." (Dkt. Appeal Letter filed on November 17, 2021, hereinafter Dkt. 1)

## III. Discussion

## A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision isbased upon a clear error of fact or law. 13 C.F.R. § 134.1210.

## B. Analysis and Conclusions of Law

Congress places the PPP loan program within the 7(a)-loan program "under the same terms, conditions and processes" 15 USC 636 (a)(36)(B). The long-standing guidance in resolving such an issue is found in Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984). In Chevron the Court stated: "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. At 843. In addressing an ambiguity, the agency's "... regulations are given controlling weight unless they are

arbitrary, capricious, or manifestly contrary to the statute." Id.
In Pharaohs GC, Inc. v. United States SBA, 990 F.3d 217 (2nd Cir. 2021) the Circuit Court stated:

> We reject Pharaohs' argument because the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding "terms, conditions, and processes" of the 7(a) program. Subparagraph D's statement that "any business concern . . . shall be eligible" is not to the contrary when read in its statutory context—specifically, its foundation in the Small Business Act's 7(a) loan program. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (citations omitted).

Id. at 226-227. I find that the SBA regulations are appropriate under Chevron and consistent with Congressional intent in enacting the CARES Act.

As addressed in the SBA response, Appellant states that it is "a Mississippi Small Loan Finance Company," and "makes small personal loans and provides financing in the regular course of its business to finance credit sales for customers purchasing...consumer goods from various retail stores." (Dkt. No. 1, p. 1) In like manner, Appellant also makes "loans directly to...customers...to finance...consumer goods that is loaned directly to the customer to purchase these goods directly from the retail store, and...then has these consumer goods as collateral." Id. Appellant believes this information allows it to fit within an exception for some entities that provide financing in the regular course of its business, provided less than 50% of its revenue is from financing its own sales. SOP 50 10 5(K), Subpart B, Ch. 2, Sec. III(A)(2)(b)(ii) at 104. I concur that Appellant has not shown that it conducts "its own sales" as the SOP provision requires. In fact, Appellant has admitted that consumers purchase goods directly from a retail store.

I also agree that, even if Appellant was selling its own goods, SBA determined from the 2019 Profit & Loss Statement that Appellant is engaged in lending and a review of those statements shows that most of the Appellant's revenue is from interest income. (AR 2, 6-8, 10). I find that SBA requested information from the Appellant to disprove its findings on three occasions during the loan review with no adequate response. (AR 171-176) There is nothing in the AR, or in the Appeal, indicating that SBA erred in its determination that Appellant is primarily engaged in lending, making it ineligible for a PPP loan.

I do not find any support for this position in other administrative decisions of the agency, nor have I considered such decisions as cited in the SBA Response. I do not reach the issue of the inherent decisional authority of Administrative Judges within an agency. Likewise, I do not believe that any of the U.S. Court cases cited by the Appellant give support for overruling the agency's regulations pertaining to PPP Loans. As correctly addressed in the SBA Response, the matter of DV Diamond Club of Flint, LLC v. SBA, 960 F.3d 743 (6th Cir. 2020) the Circuit Court merely passed on a motion to stay an injunction and did not decide the merits of the argument. I do not agree that the lower Court opinions in DV Diamond Club of Flint, LLC v. United States SBA, 459 F. Supp. 3d 943 (USDC EDMI 2020) and Nat'l Ass'n of Home Builders v. United States SBA, 2021 U.S. Dist. LEXIS 186548 Camelot Banquet Rooms v. SBA, 458 F. Supp.3d 1044 (E.D. Wisc.

2020) directs the SBA to cease application of otherwise legally permissible regulations. Likewise, the case of on <u>In re Gateway Radiology Consultants, P.A.</u>, 983 F.3d 1239 (11th Cir. 2020) does not directly provide support for the issue before me but is consistent with my analysis in this matter.

<div align="center">C. <u>Conclusion</u></div>

Title 13 C.F.R 134.1210, Standard of review, provides that the standard of review is whether the final SBA loan review decision was based on clear error of fact or law. The Appellant fails to meet the burden of proof to establish that the final SBA loan review decision is based on a clear error. I **Deny** the appeal and **affirm** the final SBA loan review decision. This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

In accordance with the regulations, you may file a request for reconsideration within 10 calendar days after service of the Judge's decision under 13 C.F.R. § 134.1211(c)(1). See PPP procedural rule. You can serve your petition via email to OHAFilings@sba.gov or OHAPPPinquiries@sba.gov. It is the borrower's responsibility to review the rules and procedures.

**Judge Thomas L. English**

Digitally signed by Judge Thomas L. English
Date: 2022.04.01 15:40:44 -06'00'

THOMAS ENGLISH
Administrative Judge

United States
Small Business Administration
Office of Hearings and Appeals

<table>
<tr>
<td>

Paycheck Protection Program Appeal of:

Twinco, Inc.
      Appellant

Appealed from:
SBA PPP Loan Number 5046657206

</td>
<td>

Issued:  January 24 , 2023

Docket No. PPP- 5046657206

</td>
</tr>
</table>

*Appearances:*
*For the Appellant:  Ryan Espegard, Attorney*
*For the Small Business Administration: Jayson Pang, Attorney*

## *Decision*

### 1. *Introduction and Jurisdiction*

Twinco, Inc. (Twinco or Appellant) submitted SBA Form 2483, Paycheck Protection Program Borrower Application ("the Application") dated April 7, 2020. (AR 153-54).

Subsequently, PPP loan number 5046657206 ("the Loan") was disbursed to Twinco by the Lender on or about April 30, 2020, in the amount of $332,863.62. (AR 35).

On July 22, 2021, Twinco executed a Paycheck Protection Program PPP Loan Forgiveness Application Form 3508EZ requesting forgiveness for the full amount of the Loan. (AR 155).

On or about October 21, 2022, the SBA issued its Final Loan Review Decision (FLRD) denying forgiveness of the Loan.  Loan Decision (Dkt. 02) (AR 15- 16).  It is this decision that Twinco has appealed.

On November 18, 2022, Twinco filed an appeal asking the Office of Hearings and Appeals (OHA) reverse the SBA's decision and find that Twinco is eligible for the PPP loan disbursed and its forgiveness. (Appeal Petition Dkt. 1).

On November 29, 2022, OHA issued the Order. (Dkt. 4). The Administrative Record ("AR") was filed by the SBA on December 17, 2022. (Dkt. 5). Twinco filed an Objection to Administrative Record December 26, 2022. (Dkt. 6).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. (13 C.F.R. § 134.1201 *et seq.*)

### 2. *Factual Background*

#### A. *Twinco's Loan Application and Request for Loan Forgiveness*

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act (CARES Act) became law, giving businesses the opportunity to apply for potentially forgivable loans through the PPP. P.L.116-136 (March 27, 2020).  As a result, Twinco applied for and received a loan in the amount

1

JA1429

of $332,863.62, for which it asked for forgiveness.

*B. Twinco's Appeal and the SBA's Response*

The FLRD denied forgiveness of the loan and stated:

> "After review of the documentation provided, the SBA concludes that, the Borrower or any owner of the Borrower, was suspended, debarred, proposed for debarment, declared ineligible, or voluntarily excluded from participation by a Federal department or agency within the past three years.

> To be eligible for a PPP loan, by submitting the loan application the Borrower certifies that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this Certification.

> ***Principal Jasmel Sing Singha with SS# ending in 9526 a 51% owner of Twinco, Inc. was reported on SAM.gov due to a notice of suspension issued on February 16, 2018.*** The Office of Credit Risk Management confirms the suspension was terminated as of July 19, 2022. The borrower is confirmed to be ineligible since they were suspended within 3 years of the application date of April 7, 2020. Additionally, the suspension was in place at the time of the application." Emphasis added.

On November 18, 2022, Twinco submitted an Appeal Petition. It later submitted a Reply on January 19, 2023, in reply to SBA's Response filed on January 10, 2023.

**Twinco stated** it is a corporation that operates several Wendy's restaurant franchise locations in Washington State. Twinco is owned by Jasmel Sangha and Susheel Sangha. Noting that the SBA previously withdrew another FLRD regarding the same loan, it asserts that the indefinite suspension violates regulations governing suspension and debarment, violates due process, is clearly erroneous and should be reversed.

Twinco acknowledged that the SBA issued a Notice of Suspension to Jasmel Sangha on February 16, 2018. The Notice of Suspension explained that it was because Jasmel Sangha was facing pending criminal charges and that it was temporary in nature. Those charges were resolved when Sangha pleaded guilty to a misdemeanor and the corresponding Judgment and Sentence was entered on June 22, 2018.

Twinco asserts that the SBA's temporary suspension was supposed to terminate on that date, with the SBA then having the option to pursue debarment if it felt debarment was appropriate. The SBA did not pursue debarment.

Jasmel Sangha did not inform Susheel Sangha or Tanveer Sangha of the Notice of Suspension when he was managing Twinco. Susheel Sangha and Tanveer Sangha first learned of the suspension

JA1430

after Jasmel Sangha's stroke and during the appeal of the Original Decision.

Twinco argues that its suspension should have ended on its own when a criminal case was concluded in June 2018, without any action on its part, i.e., the suspension was self-executing once the judgement was entered concluding the case. It further stated that "[i]f legal proceedings were not initiated, 'a suspension may not exceed 12 months.'" 2 CFR 180.760(a). In other words, without the legal proceedings that concluded in June 2018, the suspension would necessarily have terminated in 12 months after the date of the suspension, or by February 16, 2019. Thus, either way, the suspension was terminated pursuant 2 CFR 180.760 prior to the Application's submission in April 2020.

It then argues that the SBA never proposed debarment and never provided Sangha the corresponding minimum due process associated with the proceedings. In lieu of debarment, the SBA apparently maintained an indefinite suspension in violation of OMB guidelines and without due process. Had debarment been proposed and Sangha given due process, then Sangha would have presented evidence and argument resulting in any debarment concluding prior to the April 2020 application. Sangha's wrongdoing was limited to a single occasion, which was promptly corrected by Sangha without any loss to the government. He also took responsibility with a guilty plea to a misdemeanor and promptly completed his required community service.

**The SBA, in its Response**, notes that Twinco's "Appeal Petition adequately recounts the events that gave rise to Jasmel Sangha ("Sangha"), a 51% owner of Appellant, being suspended via the Notice of Suspension to Jasmel Sangha on February 16, 2018."

The Notice of Suspension states, in part,

> You, Jasmel Singh Sangha, face a number of charges listed in the attached Criminal Information. Specifically, you were charged in the State of Washington with the intent to deprive another of property, wrongfully obtaining such property belonging to Bank of the West and SBA by color of aid of deception (RCW 9A.56.020(1)). You were also specifically charged in the State of Washington with the appropriation of lost and misdelivered property with value that did exceed $5,000, such property belonging to Bank of the West and SBA (RCW 9A.56.030). **These actions are grounds for suspension from participation in federal government programs.**

Emphasis added. Suspension Letter – Ex. C - Dkt 3, Ex A - Dkt 6. Furthermore, not only had Sangha been suspended, Twinco had as well.

Sangha was convicted of Attempted Theft In the Second Degree on June 22, 2018. Judgement and Sentence, Non-Felony, Ex. D - Dkt 3, Ex B - Dkt 6.

On July 19, 2022, SBA issued a Notice of Termination of Suspension. AR 331, Exhibit J Dkt 3. The termination applied to Sangha, Twinco, Inc., Sangha Top Hat LLC, and Jus Liquor LLC.

The SBA sets forth the suspension framework:

> Executive Order 12549, the basis for the subject certifications in Form 2483, was issued with the intent to "curb fraud, waste, and abuse in Federal programs, increase agency accountability and ensure consistency among agency regulations concerning debarment and suspension of participants in Federal programs[.]" Exec. Order No. 12549, 51 FR 6370 (Feb. 18, 1986).

3

Loans and loan guarantees are considered covered transactions and the principals and participants in those transactions are subject to the prohibitions therein. 2 C.F.R. § 180.970. Pursuant to 2 C.F.R. Part 2700.10, SBA has adopted the guidance in Part 180 as regulation. The purpose of the non-procurement debarment and suspension system is to protect the public interest and ensure the integrity of the federal government by conducting business only with responsible persons. 2 C.F.R. § 180.125.

The SBA highlights the fact that in the Paycheck Protection Program Borrower Application Form includes the self-certification question No. 1 that stated:

Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?

In its application for the PPP Loan, Appellant responded "No" to question No. 1. (AR 153). In addition, by submitting the PPP loan application, Twinco certified, consistent with EO 12549, that the owner of Appellant was not debarred, suspended, declared ineligible or voluntary excluded from participation in a transaction by any Federal agency.

The SBA argues that the Notice of Suspension did not provide an expiration date. Nor was there a basis for inferring an expiration date from the mere criminal judgment.

Furthermore, SBA asserts that, even if SBA should have ended the suspension earlier, it did not do so, and the answer to the Question 1 was false. That alone is fatal to forgiveness.

The SBA points out there is no basis for understanding that the criminal proceedings did not conclude until the satisfaction of judgment was filed on July 13, 2022, even though a conviction was entered June 22, 2018, well after the date of the loan application.

At the time of the loan application (April 2, 2020), approximately two years and two months had passed since the Notice of Suspension had been issued (February 16, 2018). Appellant provided no documents that would support suspension having been terminated prior to the date of the loan application. The satisfaction of the criminal judgment was not filed until July 13, 2022, and SBA did not issue a notice of termination of the suspension until July 29, 2022.

Finally, because Sangha was suspended and a 51% owner of Twinco, Twinco was ineligible for the PPP loan.

**Twinco filed a rebuttal** and asserted it was essentially unlawful to have an "indefinite suspension." It further claims that an SBA "3-year rule" for suspension duration is not authorized by issuance of a regulation. The three-year language cited by the SBA is contained in the last page of the instructions, but not on the application itself. Additionally, the instructions do not state any consequence for a suspension occurring in the prior three years. While claiming a certification is being made, there is no language stating that a prior suspension in the preceding three years makes an applicant ineligible.

Twinco cites "2 CFR §180.760(a) provides that a temporary suspension 'may continue until the conclusion of those proceedings,'" and argues that the proceedings ended on the sentencing date, not the Satisfaction of Judgment entered in 2022.

Finally, Twinco argues that the term of the suspension is governed by 2 CFR §180.760, which

4

answers the question "How long will my suspension last?" The rule is clear that a temporary suspension "may continue until the conclusion of those proceedings." 2 CFR §180.760(a) (emphasis added). The only reasonable interpretation of this rule is that suspensions end upon the conclusion of the proceedings on which they are based. Twinco highlights "until" to support the end date. It further claims that placing the burden of lifting a suspension on Twinco is arbitrary and capricious.

<div align="center">3.  <em>Discussion</em></div>

<div align="center">A.  <em>Applicable Law and Policy</em></div>

### 1)  *Standard of Review*

Twinco has the burden of proving all elements of the appeal. Specifically, Twinco must prove that the SBA Final Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

### 2)  *Scope of OHA and ALJ Decisions*

As an independent office of the SBA, OHA has limited authority and jurisdiction to review decisions made by the SBA. Acting within the bounds of that authority and jurisdiction, Administrative Law Judges or Administrative Judges do not have the authority to invalidate a regulation or interpretation issued by the SBA Administrator. *See Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("[OHA] is not the proper forum for a challenge to the validity of a regulation"); *Family Choice Financial*, Docket No. PPP-8323747201, at 12 (ALJs are "exercising the Administrator's delegated authority and it would be surprising if that delegation included the authority to invalidate an SBA regulation"); *Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings*, 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–2 ("ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules").[1]

Given that limited authority, regulations issued by the SBA Administrator are binding on OHA, and OHA is not the forum for challenges to the SBA's regulations or interpretation of Congressional acts. Any such challenges are more properly made, if at all, in federal court. *Id.*

### 3)  *The CARES Act and PPP Loans*

As noted above, in March 2020, in response to the COVID-19 pandemic and the resulting economic conditions, Congress passed the Coronavirus Aid, Relief and Economic Security Act (CARES Act), Pub. L 116-136, 134 Stat. 281 (2020). Section 1102 of the Act established the Paycheck Protection Program, which was "intended to help businesses cover expenses and make payroll for their workers to keep them employed during the pandemic" by loaning money to eligible small businesses through verified lenders. If those loans met certain conditions, they would be forgiven through funding from the SBA. Congress placed the PPP under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. See CARES Act section 1102(a) (adding Paragraph (36) to 15 U.S.C.§ 636(a)).

Under the CARES Act, the SBA was granted Emergency Rulemaking Authority under Section 1114, requiring that:

> Not later than 15 days after the date of enactment of this Act the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements

---

[1] Available at https://www.justice.gov/file/20131/download (last accessed June 2, 2022).

JA1433

under section 553(b) of title 5, United States Code.

(Emphasis added). Subsection (b) of section 553 requires that "General notice of proposed rulemaking *shall be published in the Federal Register . . .*) (emphasis added). Section 1114 of the CARES Act waived the requirement for SBA's rules and regulations pertaining to the Cares Act to be published first in the Federal Register before they could become effective. Thus, the First Interim Final Rule at 85 FR 20811 was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required.

4) PPP Loan Eligibility

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D).

Not all such businesses, however, are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B). Ineligible types of businesses are identified in 13 CFR § 120.110. These ineligible businesses include, for example, non-profit businesses; passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111[2]); financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons suspended or "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they previously were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

On the Paycheck Protection Program application, an applicant must certify that:

---

[2] "An Eligible Passive Company must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), **that it leases to one or more Operating Companies** for conducting the Operating Company's business, or to finance a change of ownership between the existing owners of the Eligible Passive Company." 120 CFR 120.111. Emphasis added.

6

> The information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C.1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

85 CFR 20814.

Furthermore,

> If SBA determines in the course of its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, *or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness.*

Emphasis added.  85 CFR 33005.

The regulatory provision regarding the length of a suspension states as follows:

> **§ 180.760 How long may my suspension last?**
>
> (a) If legal or debarment proceedings are initiated at the time of, or during your suspension, the *suspension may continue until the conclusion of those proceedings.* However, *if proceedings are not initiated, a suspension may not exceed 12 months.*
>
> (b) The suspending official *may extend the 12 month limit* under paragraph (a) of this section for an additional 6 months if an office of a U.S. Assistant Attorney General, U.S. Attorney, or other responsible prosecuting official requests an extension in writing. *In no event may a suspension exceed 18 months without initiating proceedings under paragraph (a) of this section.*
>
> (c) The suspending official must notify the appropriate officials under paragraph (b) of this section of an impending termination of a suspension at least 30 days before the 12 month period expires to allow the officials an opportunity to request an extension.

Emphasis added.  2 CFR 180.760.

## B. *Application of Law*

The SBA Final Loan Review Decision must be reversed if it contains clear error of fact or law material to the decision.  The central issue is whether Twinco's partial owner was subject to a suspension which rendered it ineligible for a PPP loan and, if so, ineligible for forgiveness of such loan.

The threshold question is whether Twinco was under suspension at the time of the PPP

7

application. Twinco must show that the SBA made a clear error in this fact. There is nothing in the record to show that the suspension issued to Twinco was actively terminated by the SBA until its action on July 19, 2022. Therefore, when Twinco answered "No" in the application form to the question as to whether it is "presently suspended . . . from participation in this transaction by any Federal department or agency . . . ." its answer was false only if the suspension expired by operation of law.

Twinco asserts the more fundamental question is whether the SBA erred in not terminating the suspension well before July 2022, claiming it had no authority to extend the suspension out as long as it did. Twinco has asserted it ended with the entry of a guilty plea in June 2018. It cites 2 CFR §180.760(a) as providing that a temporary suspension "may continue until the conclusion of those proceedings."

The suspension and debarment structure envisions that a government agency, upon learning of a party's misdeeds, may initiate a suspension to immediately stop such party from further business with the federal government. 2 CFR §180.760(a) addresses the question as to "How long may my suspension last?" The "suspension may continue until the conclusion of" "legal or debarment proceedings."

If one assumes that the proceeding against Sangha ended in dropping the charges or a not guilty verdict, then if that were the only basis for the suspension (i. e., no debarment or other charges pending), then the suspension would end on that date, unless extended pursuant to 2 CFR 180.760(b) for another 6 months "if an office of a U.S. Assistant Attorney General, U.S. Attorney, or other responsible prosecuting official requests an extension in writing." However, even under that extension, the suspension would not exceed 18 months without initiating proceedings (further prosecution or debarment).

In this case, the criminal case concluded in June 2018 with a conviction. The SBA took no affirmative action to end the suspension, however, more importantly, it did not extend the suspension for an additional 6 months under 2 CFR 180.760(b) by obtaining a prosecuting official request for an extension or initiating any other "legal or debarment proceedings."

Further enlightenment as to the suspension structure is the fact that in absence of initiating a proceeding, "a suspension may not exceed 12 months." 2 CFR 180.760(b).

The statute thus makes clear that the February 2018 suspension could not extend beyond 12 months unless the SBA either (1) initiated debarment proceedings or (2) obtained a 6-month extension from a prosecuting official. Neither of these occurred. Nor did the SBA initiate a new suspension for other reasons.

However, while Twinco's owner was not under suspension at the time of the application, he was within 3 years of the PPP application and that status made Twinco ineligible for a PPP loan. Twinco asserts there is no regulatory authority for the 3-year rule. This is SBA's policy and interpretation of its applicable law and regulations. Administrative Law Judges or Administrative Judges do not have the authority to invalidate a regulation or interpretation issued by the SBA Administrator. *See Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015).

The following statement is contained in the PPP application:

> Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700) – ***By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the***

8

> *past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency;* (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

Emphasis added.

Based on the foregoing, I conclude that the SBA did not make a clear error of fact or law in concluding that Twinco's owner was under suspension within 3 years of filing its PPP application and thus was ineligible for a PPP loan and its forgiveness.

## C.  Conclusion

Twinco must prove that the SBA Final Loan Review Decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.  It has not done so.

After reviewing the record and for the reasons set forth above, I DENY Twinco, Inc.'s appeal, and AFFIRM the determination of the Small Business Administration in the Final Loan Review Decision (FLRD).

Neither initial nor final decisions rendered by SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 C.F.R. § 134.1212. This is an initial agency decision.

However, unless a request for reconsideration is filed pursuant to 13 C.F.R. section 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. section 134.1211(d), this decision shall become the final agency decision of SBA 30 calendar days after its service. 13 C.F.R. § 134.1211. In accordance with the regulations, a party may file a request for reconsideration within 10 calendar days after service of this decision under 13 C.F.R. section 134.1211(c)(1). See PPP procedural rule. The requesting party may serve its petition via email to OHAPPPinquiries@sba.gov. It is each party's responsibility to review applicable rules and procedures. 13 C.F.R. 134.1211 (c)(1). A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).


*H. Scott Williams*
H. Scott Williams
Administrative Judge

9

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Utah Trailways Charter Bus Company LLC,
and 15 other consolidated cases

      Appellants

Appealed from
SBA PPP Loan Number
1780087404, *et al.*

DECISION

Issued:  May 6, 2024

Docket No. PPP – 1780087404-CONS

## APPEARANCES

*For Appellant*
    Lathan & Watkins, LLP:

| | |
|---|---|
| Dean W. Baxtresser | dean.baxtresser@lw.com |
| Alexandra M. Gersdorf | allie.gersdorf@lw.com |
| Kyle R. Jefcoat | kyle.jefcoat@lw.com |
| Nathan A. Sandals | nathan.sandals@lw.com |

    Kyle R. Jefcoat was designated as lead counsel for serving of documents, notices and all communications.

*For the Small Business Administration*

| | |
|---|---|
| Anthony Davis | pppappealsogc@sba.gov |
| Tanner Hatch | pppappealsogc@sba.gov |
| Caitlin Kelly | pppappealsogc@sba.gov |
| Lane Siems | pppappealsogc@sba.gov |

    Caitlin Kelly was designated as lead counsel for serving of documents, notices and all communications.

## INTRODUCTORY NOTE REGARDING
## CONSOLIDATION OF CASES

On or about September 28, 2023, and also November 3, 2023, Appellants listed below, and each of them, filed separate Appeals from denials of forgiveness of their respective PPP loans.  Each appeal was timely filed.

JA1438

|    | Appellant Name | SBA PPP Loan Number and Docket Number PPP- | Contact Counsel for Appellant | Contact Counsel for SBA |
|----|----------------|--------------------------------------------|-------------------------------|-------------------------|
| 1  | Utah Trailways Charter Bus Company LLC | 1780087404 | Dean Baxtresser | Lane Siems |
| 2  | Maverick Kirkland II LLC | 4428507208 | Kyle Jefcoat | Anthony Davis |
| 3  | WENDOVER NUGGET OPERATOR LLC | 4468727209 | Dean Baxtresser | Lane Siems |
| 4  | NG Washington III LLC | 5037217201 | Kyle Jefcoat | Tanner Hatch |
| 5  | Maverick Lakewood LLC | 5418357201 | Kyle Jefcoat | Caitlin Kelly |
| 6  | Maverick Kirkland LLC | 5562707204 | Kyle Jefcoat | Lane Siems |
| 7  | MVFTWO SERIES THREE | 5637097304 | Dean Baxtresser | Tanner Hatch |
| 8  | Red Garter Operator LLC | 6523817204 | Kyle Jefcoat | Anthony Davis |
| 9  | Johnny Z Casino Operator LLC | 6547757204 | Kyle Jefcoat | Caitlin Kelly |
| 10 | Gold Country Operator LLC | 6796977201 | Kyle Jefcoat | Anthony Davis |
| 11 | MVFTWO | 7277087709 | Dean Baxtresser | Tanner Hatch |
| 12 | TROPICALSMOOTHIEAZ2 | 8195517708 | Dean Baxtresser | Caitlin Kelly |
| 13 | TROPICALSMOOTHIEAZ3 | 8265277704 | Dean Baxtresser | Tanner Hatch |
| 14 | VERITASFAYTHE INC | 8343317710 | Dean Baxtresser | Lane Siems |
| 15 | VERITASFAYTHESEVEN LLC | 8426507300 | Kyle Jefcoat | Caitlin Kelly |

In a Revised Notice and Order issued on November 29, 2023, I found that:

1. substantially similar Final SBA Loan Review Decisions were issued denying loan forgiveness regarding each of the above-identified PPP loans,
2. each of the above identified appeals was timely filed,
3. all of the Appellants are represented by the same counsel, specifically Latham & Watkins, LLP,
4. all of the Appeals have been assigned to the same (undersigned) Administrative Law Judge (ALJ),
5. all of the Appeals deal with the same issues; namely, SBA's finding that all of the Appellants are part of a corporate group with Eric Persson as its common owner, and that the corporate group exceeded the maximum $20,000,000.00 loan amount allowed, and
6. that in the interests of judicial economy, these appeals should be consolidated.

Thereupon, on November 29, 2023, the above-listed PPP appeals were Consolidated, with Utah Trailways Charter Bus Company, LLC, docket no. 1780087404, treated as the "lead case" for the purposes of scheduling, filing and deadlines for filings, such that a filing or other action in that lead case would apply for all of the cases.

I note that a previously consolidated appeal regarding 15743 AMBAUM LLC (PPP loan number 5548647203) was dismissed on December 5, 2023.

Unless otherwise indicated from the wording and context herein, for ease in drafting and reading this Decision, hereafter the case will be described as regarding only one case, and one "Appellant," being Utah Trailways Charter Bus Company, LLC, docket no. 1780087404. Thus, the language "Appellants, and each of them" will not be used, but a reference to "Appellant" will

nevertheless apply to each and all Appellants.  Further, the use herein of a dollar amount or date applicable to Utah Trailways Charter Bus Company, LLC may not be specifically applicable to another of the consolidated appeals.  Nevertheless, the given dollar amounts and dates are intended to be representative of the amounts and dates, and sequencing of events, for each Appellant and applied so as to make a meaningful, consistent, and uniform decision applicable to each Appellant, despite differences in the specific amounts and dates used in this Decision.  Thus, this Decision is intended to and does apply with the same force and effect to each of the above-listed cases and Appellants as applied to the specific facts of each respective appeal.

The parties were directed that a single Administrative Record agreed upon by the parties would be the procedure expected to be adopted, unless objected to by any party.  The Agreed Administrative Record (hereafter "AAR") shall include non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision.  The administrative record need not, however, contain all documents pertaining to the appellant.  13 CFR §134.1207(b).  Thus, the Agreed Administrative Record was to contain actual documents from one case (*e.g.*, Utah Trailways) that are representative of all the cases such that substantially duplicate documents, in terms of the issues involved on appeal, need not be included multiple times.  Documents that are relevant to the issues on appeal and unique to a specific case and not the others, if any, shall be so identified.

The Office of Hearings and Appeals (OHA) conducts Paycheck Protection Program (PPP) appeals under the authority of Title 13, Part 134, Subpart L of the Code of Federal Regulations (CFR)[1, 2].

Per regulations, including 13 CFR §134.1211(c)(1), a request for reconsideration may be made only within 10 calendar days after service of a Judge's decision.  A request for reconsideration may be filed on the OHA Case Portal.  It is the borrower's responsibility to review the rules and procedures.

## DECISION

The U.S. Small Business Administration (SBA) Office of Capital Access issued a Paycheck Protection Program (PPP) Final SBA Loan Review Decision that found Appellant ineligible for the full PPP loan forgiveness of $100,405.00.  Appellant filed the instant appeal from that Final SBA Loan Review Decision, dated August 30, 2023.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that SBA's Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for the full PPP loan forgiveness requested.  After carefully considering the evidence and arguments presented in the Agreed Administrative Record and the evidence and arguments in the record on appeal, for the reasons discussed herein I find that Appellant's appeal does not show the SBA's decision was based on a clear error of fact or law, and therefore the appeal is denied, and the Final SBA Loan Review Decision is affirmed.

---

[1] The final version of Subpart L became effective on September 14, 2021 (*Federal Register,* Vol. 86, No. 1177, Pgs. 51589-51597, Sept. 16, 2021, *effective September 14, 2021).*

[2] The most recent version of 13 CFR Part 134 is available from the National Archives at https://www.ecfr.gov/current/title-13-chapter-I/part-134?toc=1.

JA1440

## I.  CARES Act, PPP Loans and OHA Jurisdiction

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020).  Section 1102 of the Act established the Paycheck Protection Program (the Program, or PPP), which was aimed at helping businesses meet payroll costs and pay operating expenses in order to keep people employed through the economic downturn.  Id. § 1102, 134 Stat. at 286 (codified at 15 USC § 636(a)(36)).  Congress first authorized $349 billion in loans.  CARES Act § 1102(b)(1).  One month later, Congress increased this figure to $659 billion.  Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

The Small Business Act had been enacted on July 7, 1953.  Various regulations had been implemented in relation to that Act, including 13 CFR §120.110, which became effective in 1996.  (61 Fed. Reg. 3223, 3235, 3239.)  Congress placed the Paycheck Protection Program under Section 7(a) of the Small Business Act, making the Small Business Administration (SBA) the agency entrusted to administer the Program.  See CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)).  Section 7(a) loans are the SBA's main program for helping small businesses.  In Re Gateway Radiology Consultants, P.A.  983 F.3d 1239, 1248 (2020) (11th Cir.).  Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title" and SBA implemented and issued several Interim Final Rules (IFRs) under the Program.  CARES Act, § 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012)

I note that Congress provided that the PPP was to be administered by the SBA and the PPP legislation was placed within the provisions of pre-existing law regarding SBA loans.  This is an indication that the PPP statutory provisions were to be interpreted as fitting into the pre-existing law, and the regulations supporting that statutory framework.  This is further supported in that Congress gave the SBA only 30 days to issue regulations to implement the PPP loan forgiveness legislation, which time appears insufficient for traditional rulemaking including any public comment period.  See CARES Act §1106 (k).  Additionally, any regulations the SBA issued regarding eligibility for PPP loans were to be, "to the maximum extent practicable," consistent with traditional loans made under section 7(a) of the Small Business Act, with regard to borrower eligibility, maximum loan amount, allowable uses of loaned funds, and other aspects.  See CARES Act §1109 (d).  Given these statutory provisions and how the PPP was intentionally placed within the pre-existing law, I conclude that there is a rational and substantial basis to apply the provisions of pre-existing law and regulations (such as 13 CFR §120.110) to the PPP eligibility determinations, and that their application by the SBA is not arbitrary or capricious.  In addition to the placement of the PPP into the pre-existing regulatory structure, the applicability of these regulations was published on the SBA's website on April 2, 2020, and additionally in the Federal Register on April 15, 2020, as the first Interim Final Rule for the program.  See Interim final rule, "Business Loan Program Temporary Changes; Paycheck Protection Program," RIN 3245-AH34, p 7, and see 85 Fed. Reg. 36717 and 85 Fed. Reg. 20811.  These publications gave public notice that the provisions and limitations of 13 CFR §120.110 applied to PPP loans.  Therefore, for all these reasons, I find the provisions of 13 CFR §120.110 are applicable to the present loan (and its forgiveness).

- 4 -

*PPP Loan Eligibility*

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, as long as they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a)(36)(D).

However, not all such businesses are eligible for PPP loans. The statute also provides that "the [SBA] Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 USC § 636(a)(36)(B). Ineligible types of businesses are identified in 13 CFR §120.110. These ineligible businesses include, for example, financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors; life insurance companies; pyramid sale distribution plans; businesses deriving more than one-third of gross annual revenue from legal gambling activities; businesses engaged in any illegal activity; businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or a crime of moral turpitude; businesses that have previously defaulted on a Federal loan or Federally assisted financing; businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted on a Federal loan. 13 CFR §120.110.

Additionally, there are limitations that preclude some individuals from receiving PPP loans or being a participant in receiving a PPP loan. Thus, for example, persons "debarred" under the SBA or Government-wide debarment regulations may not conduct business with SBA. 13 CFR §103.2(b). Individuals are precluded if they recently were convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with a public transaction or contract, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification, or destruction of records, making false statements, or receiving stolen property. Executive Order 12549, 13 CFR part 145. Also, if a borrower or 20% or more owner of a borrower is presently involved in a bankruptcy proceeding, the borrower is ineligible for a PPP loan. SBA Form 2483-SD or SBA Form 2483-SD-C; FAQ issued April 9, 2021.

Moreover, the PPP loans were given only if, in light of the COVID-19 pandemic, the borrowed funds were necessary to support the ongoing operations of the eligible recipient; and that the funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments. 15 USC §636(a)(36)(F) and (G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States, and, further, salary expenditures were capped at the equivalent of no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II). If the borrower was not eligible for a PPP loan, but nevertheless received such a loan, then the loan is not subject to forgiveness. See 85 Fed. Reg. 33010, 33012- 33013.

*PPP Loan Forgiveness*

Importantly, "if the loaned funds are used for specified expenses," the borrowing business could receive forgiveness of its loan. See 15 USC § 636m. Application for, and receipt of, a PPP loan

- 5 -

is a wholly separate process from application for, and receipt of, forgiveness of that loan. Loan forgiveness is provided for under a different, but related, statutory provision. See 15 USC §636(a)(36)(K) which makes applicable the provisions of 15 USC §636m (that is applicable to non-PPP loans), with limitations specified for PPP loans. The PPP loan recipient can receive loan forgiveness if it uses the funds to cover payroll and certain other expenses like mortgage interest or rent payments and utility expenses. Generally, the amount of the loan that is forgiven is the amount used to pay those costs. But the bulk of the funds, at least 60 percent, must be spent on payroll. 15 USC §636(a)(37)(J)(iv)

The list of allowable uses for PPP loan funds [15 USC § 636(a)(36)(F)] is not the same as the list of uses eligible for loan forgiveness [15 USC § 636(a)(36)(J)]. Significantly, the statutory list of allowable uses of loan funds is different from the list of uses that qualify for loan forgiveness; thus, all forgivable uses are allowable, but not all allowable uses are forgivable. For example, payments related to health care benefits and interest on debt obligations are allowable uses of loan funds, but the portion of the loan used for those payments will not be forgiven. See 15 USC §636(a)(36)(F)(i)(I) - (VII); and 15 USC §636(a)(36)(J)(iii)(I)-(VIII). See Gateway Radiology Consultants, cited above, at 1247. Only an eligible recipient of a PPP loan may receive loan forgiveness. 15 USC §636(a)(36)(A)(ii) and (iv); 15 USC §636m(a)(1) and (10))

The PPP was a loan program that included an assessment of the borrower and a decision regarding whether the borrower met the loan eligibility requirements and was not precluded by ineligibility rules. The independent forgiveness aspect of the program also involved a decisional process, initially requiring the borrower to apply for loan forgiveness (indicating that forgiveness was not automatic), which forgiveness could be for less that the full loan amount. The forgiveness process also calls for an assessment of the borrower's eligibility for the loan, since an ineligible loan may not be forgiven. Also, an assessment was to be made regarding how the loaned funds were used, in order to determine the proper forgiveness amount, if any. Indeed, the PPP was not a grant program whereby the government guaranteed funds handed to those who asked for it, but instead it was clearly a loan program whereby loans could be denied, and even if granted, then forgiveness of the loan could nevertheless be denied in whole or in part. The SBA's regulations were adopted or, if pre-existing, were made applicable so as to guide the deliberative processes in issuing and in forgiving the PPP loans.

*PPP Loan Forgiveness Denial and Appeal*

The PPP loan forgiveness process includes an application for forgiveness for a specified dollar amount, which may be less than the full loan proceeds. The forgiveness application is made to the lender, which issues a decision on the amount of forgiveness, if any. 15 USC §636m (e), (f) and (g). Thereafter, SBA reviews the lender's decision and if there is a denial of forgiveness, then SBA issues a Final SBA Loan Review Decision.

There are four possible bases for appeal of a denial of PPP loan forgiveness. The Final SBA Loan Review Decision will show forgiveness denial based because the borrower:

1. Was ineligible for a PPP loan.

2. Was ineligible for the PPP loan amount received or used the PPP loan proceeds for unauthorized uses.

- 6 -

3. Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to SBA, or

4. Is ineligible for PPP loan forgiveness in any amount when the lender has issued a full denial decision to SBA.  13 CFR §134.1201(b).

I note that these denial bases may be stated on different terms.  Thus, forgiveness denial may be because.

1. the borrower was ineligible to have obtained the loan (and thus because of some characteristic of the borrower, all of the loan funds were received inappropriately, and no forgiveness is warranted), or
2. the borrower was ineligible for the full amount received or that some or all loan proceeds were used for a non-forgivable purpose (and thus because of some characteristic of the amount or use of the funds received, some or all of the funds received do not warrant forgiveness), or
3. the lender found that forgiveness was warranted (in full or in part), but the SBA found that the borrower was ineligible for some, or all, of the amount allowed by the lender (and thus the amount of allowable forgiveness is smaller than the lender determined), or
4. that the lender found that forgiveness was not warranted in any amount, and the SBA also found that the borrower was ineligible for forgiveness in any amount (and thus no amount of forgiveness is allowed).

The SBA's Office of Hearings and Appeals (OHA) conducts PPP appeals under the authority of 13 CFR Part 134 Subpart L.  However, for OHA and its Judges to have jurisdiction, SBA must have issued a Final SBA Loan Review Decision regarding the loan at issue, as the appeal is taken from the decision contained in that Final SBA Loan Review Decision.  13 CFR §134.1201(a-c).  The SBA's Office of Capital Access issues a Final SBA Loan Review Decision on whole or partial denials of forgiveness of PPP loans.  To file and manage an appeal of a Final SBA Loan Review Decision with OHA, appellants must use the OHA Case Portal (the Portal) at https://appeals.sba.gov.  13 CFR §134.1202(a).

*Authority of an SBA OHA Judge*

The undersigned is a former federal government Administrative Law Judge (ALJ) who retired from that civil service position.  After retirement I was hired as a "rehired annuitant" employed by the SBA as an Administrative Judge.  An Administrative Judge has authority no greater than that of an Administrative Law Judge.  The authority of such a judge is limited.

An Administrative Law Judge (ALJ) has no constitutionally based judicial power, see Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them.  See e.g., 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department").  As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules.  See Nash v. Bowen, 869 F.2d 675, 680 (2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985); Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C. 1984); cf

D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, I have no authority to question or decide the validity or constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

## II.  Loan History

Appellant, a Limited Liability Company, completed an application for a First Draw PPP loan on April 27, 2020. (AAR 890 ff.) A promissory note was signed on May 5, 2020, with Utah Trailways Charter Bus Company LLC as the borrower. (AAR 23 ff.) On May 5, 2020, a lender financial institution disbursed an SBA guaranteed PPP loan to Appellant in the amount of $100,405.00. (AAR 4, 890.)

On January 11, 2021, Appellant filed for forgiveness of $100,405.00, being the full loan amount received. (AAR 894.) The Lender requested forgiveness (to Appellant, with payment to the lender per the SBA's guarantee) in the amount of $100,405.00. (AAR 17.)

The SBA approved Appellant's application for forgiveness in the amount of $0.00. (AAR 17.) A Final SBA Loan Review Decision was issued by the SBA's Office of Capital Access dated August 30, 2023. (AAR 17.) The Final SBA Loan Review Decision was reportedly received by Appellant on August 30, 2023. (Portal About Appeal.)

Appellant has appealed SBA's forgiveness decision, contending instead that the full loan amount of $100,405.00 should be forgiven, and alleging that SBA has made a clear error of fact or law.

## III.  Timeliness and Standing

In this case the Final SBA Loan Review Decision was issued on August 30, 2023 (to the lender) and on the Portal was certified by Appellant as having been first received by Appellant on August 30, 2023. The appeal was filed by initiation on the Portal on September 28, 2023, which is within the 30-day time requirement. The appeal is timely.

In this case the borrower is Utah Trailways Charter Bus Company LLC. (Promissory Note, AAR 23.) The Final SBA Loan Review Decision was issued regarding the above-cited PPP loan and Utah Trailways Charter Bus Company LLC. (AAR 17.) The Appellant is identified on the Portal as Utah Trailways Charter Bus Company LLC. (Portal About Appeal.)

Appellant appears to be a limited liability company (LLC). (Portal About Appeal, AAR 890.) The appeal petition on the Portal was signed by Dean Baxtresser. (Portal Appellant Point of Contact.) The record shows that Dean Baxtresser is an attorney, with the firm of Latham & Watkins LLP. (Portal Docket, Utah Trailways Appeal, filed September 28, 2023.) Further, the record shows that Dean Baxtresser is an attorney representing Appellant. (Portal Docket, Utah Trailways Appeal, filed September 28, 2023.)

Based on this, I find that Dean Baxtresser is a proper representative for the Appellant entity.

JA1445

Additionally, I find that there is sufficient evidence of record to establish proper standing to pursue the appeal.

## IV. Burden of Proof and Standard of Review

All PPP appeals will be decided solely on a review of the administrative record, the appeal petition, any response, any reply or supplemental pleading, and filings related to objection to the administrative record. 13 CFR §134.1209. SBA may respond to an appeal as determined in its discretion, but SBA is not required to respond. If SBA elects not to respond, such election shall not be interpreted as an admission or waiver of any allegation of law or fact. 13 CFR §134.1208(a). Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. 13 CFR §134.1210.

The Administrative Record was filed on March 11, 2024. Appellant made objections to the Administrative Record, but in regard to the objections, all requests were denied in an Order issued March 20, 2024. SBA did file a response to the appeal petition, received April 5, 2024. The record closed on April 5, 2024. However, on March 25, 2024, an Order was issued granting the parties time after the close of the record to file additional argument and points and authorities in support of their positions, with the last submission timely filed on April 29, 2024

## V. Facts of this Case and the Final SBA Loan Review Decision

SBA wholly denied Appellant's Forgiveness Application because the SBA concluded that each Borrower business is part of a corporate group that has received more than $20,000,000 of PPP loans in the aggregate. This exceeds the allowable loan limit, rendering Appellants ineligible for the PPP loans. Because the Appellants were ineligible for a PPP loan, the loan is not eligible for any forgiveness. 85 Fed. Reg. 33010, 33012- 33013.

In particular, SBA found that each loan recipient is part of one Corporate Group of business concerns with common ownership by Eric Persson, and the total of all affiliated loans exceeded the $20 million corporate maximum limit found in Interim Final Rule 7 by loan disbursement on April 30, 2020. SBA found that there are 38 separate PPP loans with which Eric Persson is affiliated, for a total of $32,905,957.79, thus exceeding the limit by $12,905,957.79.[3] (See AAR 10-11.)

On May 4, 2020, the SBA published the single corporate group limitation (SCGL) regulation at issue in this appeal in the seventh Interim Final Rule (IFR 7) which reads in pertinent part:

1. Can a single corporate group receive unlimited PPP loans?
   No. To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate.[1] For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

---

[3] There are other indications in the record that these dollar amounts were related to 40 business concerns in which Mr. Persson has a majority ownership interest. I find these differences are not material. Rather, the point is that there were a number of such businesses that received PPP loans, and the issue is whether any of them exceeded the single corporate group limitation contained in IFR 7.

JA1446

This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020.[2]

It is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule . . ..  Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness. . . .  Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Fn 1.  The Administrator has authority to issue ''such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to'' 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.  Section 1102 provides that the Administrator ''may'' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a ''maximum''—but not a minimum—loan amount.  See 15 U.S.C. 636(a)(36)(B), (E); see also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).  To preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate.

Fn 2.  For loans that have been partially disbursed, this limitation applies to any additional disbursement that would cause the total PPP loans to a single corporate group to exceed $20 million.

85 Fed. Reg. 26324, 26325 (Effective May 4, 2020; footnotes included as in the original.)

On August 30, 2023, SBA issued its Final SBA Loan Review Decision that found Appellant was wholly ineligible for the PPP loan.  The stated basis for the forgiveness denial was:

After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group [that] has received more than $20,000,000 of PPP loans in the aggregate.

The applicant is part of a corporate group with Eric Persson as its common owner and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020.  It is confirmed that Eric Persson is the majority indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner of all entities via direct or indirect ownership as attested to on the borrower's organizational chart and 2483's.  Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority ownership in each business.  As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.

## VI.  Appeal

On September 28, 2023, Appellant filed the instant appeal arguing the Final SBA Loan Review Decision is clearly erroneous.  In the record on appeal (see Portal Docket, Utah Trailways Appeal and Exhibit B, both filed September 28, 2023, Portal Docket, Appellant Additional Filing

- 10 -

in Support, filed September 28, 2023, and Portal Docket, Reply, filed April 22, 2024. Appellant argues that the Final SBA Loan Review Decision) Appellant argues that there is clear error in the Final SBA Loan Review Decision for the following reasons:

**A. *Validity of the SCGL IFR provision in general and as applied to this case.***

    *1.    The SBA's "single corporate group" rule exceeds the agency's statutory authority and is therefore unenforceable.*

    *2.    The SBA's reliance on the rule with respect to the PPP Loan is misplaced because the SBA cannot apply that rule retroactively.*

**B. *Meaning of the Single Corporate Group Limit (SCGL) Interim Final Rule (IFR)***

    *3.    Is there ambiguity in the IFR*

    *4.    The Administrative Record does not include any statement, position, guidance, or policy documents indicating why or how the SBA can interpret IFR 7 (such that the term "corporate parent" can mean an individual).*

    *5.    The absence of a reasoned explanation for denial renders the SBA's decision erroneous.*

    *6.    IFR 7 did not include an indication that it would apply to an individual as the corporate parent.*

    *7.    A reading of IFR 7 that defines a Single Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned') is inappropriate.*

**C. *Factual Inapplicability of IFR 7 to Appellant***

    *8.    The "single corporate group limit" is inapplicable to the corporate group in which Appellant sits.*

    *9.    The SBA Applied Its Affiliation Rules Rather Than a Review for a Corporate Group under a Common Parent*

    *10.    Additional matter of which of the several PPP loans are ineligible for forgiveness.*

## VII.  Discussion and Analysis

**A. *Validity of the SCGL IFR provision in general and as applied to this case.***

*1.    The SBA's "single corporate group" rule exceeds the agency's statutory authority and is therefore unenforceable.*

Appellant asserts (Portal Docket, Utah Trailways Appeal, filed September 28, 2023, p 8) that:

> The SBA exceeded its authority in promulgating the "single corporate group" maximum loan amount in IFR 7. Again, "[a]dministrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." Nat'l Fed'n of Indep. Bus., 142 S. Ct. at 665. An agency's interpretation of a governing statute is not accorded deference when "Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). The agency claims that it promulgated the "single corporate group" $20 million limit "[t]o preserve the limited resources available to the PPP program." See 85 Fed. Reg. 26325 (May 4, 2020). However, Congress had already determined the manner in which PPP resources were to be preserved. See CARES Act § 1102(a)(E), 134 Stat. 289 (Mar. 27, 2020), codified at 15 U.S.C. § 636(a)(36)(E) (setting maximum loan amount under PPP). The SBA exceeded its delegation of authority where it imposed a separate maximum loan

JA1448

limit absent express delegation from Congress. See Aid Ass'n for Lutherans v. U.S. Postal Service, 321 F.3d 1166, 1175 (D.C. Cir. 2003) (striking down regulation of reduced rates for mailings based on "types of insurance" where statute precisely delegated authority to regulate rates only as to "coverage provided" by an insurance policy).

Here, Congress directly addressed the question the SBA sought to answer in IFR 7: how should the agency preserve limited resources for PPP loans? The statutory text answers the question: by applying the statutory maximum loan amount. Congress did not state that the "maximum loan amount" under PPP could also be some other amount determined by the SBA through exercise of its rulemaking authority. The SBA's creation of a discrete maximum loan amount, without statutory authorization, was *ultra vires*.

I initially note that the SBA is empowered in the U.S. Code, Title 15 – Commerce and Trade, Chapter 14A-Aid to Small Business; (a) to make rules and regulations the necessary to carry out the authority vested in the SBA by or pursuant to this chapter [14A], (b) to take actions that "are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans made under the provisions of this chapter, and (c) to establish general policies to govern the granting and denial of applications for financial assistance by the Administration. (15 U.S.C. §§ 633(d), 634(b)(6)-(7)). Further, in Section 1114 of the CARES Act, Congress established in the SBA Administrator the duty and broad authority to issue regulations to carry out the Act, and to do so without regard to the notice requirements typically required when issuing regulations.

Pursuant to SBA's rule-making authority, SBA issued several Interim Final Rules ("IFRs"). The single corporate group limit was established to preserve limited PPP funds so as to promote the availability of loans to the largest possible number of borrowers. Thus, to preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group could in no event receive more than $20,000,000 of PPP loans in the aggregate. (IFR 7, 85 Fed. Reg. 26324, 26325(III)(1)). SBA later repeated this rule after the Economic Aid Act was passed. (See Consolidated First Draw PPP IFR, 86 Fed. Reg. 3692, 3702, (III)(B)(4)(f) (footnote omitted)).

Appellant argues, nevertheless, that because the CARES Act sets the maximum loan amount, that the SBA could not impose the SCGL as a further limit on the most a borrower could obtain. (Reply, p 8.) Indeed, the Act describes the calculation of the maximum loan amount in three places, once for the general cases, with a limit of $10,000,000 (15 USC §636 (a)(36)(E)(i)(I) and (ii)), once for businesses not having been in operation during February 15 to June 30, 2019, with a limit of $10,000,000 ((15 USC §636 (a)(36)(E)(i)(II) and (ii)), and once again for farmers and ranchers, with a limit of $2,000,000 for a farmer or rancher loan recipient with no employees (15 USC §636 (a)(36)(V)).

I note that pursuant to these statutory provisions, SBA issued guidance on "How to Calculate First Draw PPP Loan Amounts – By Business Type." This guidance was first published on June 26, 2020, and updated and supplemented on January 17, 2021, and again on March 13, 2021. These publications included step-by-step directions on how to calculate the maximum loan amount from pertinent lines of tax returns and other information depending on the form of business of the borrower, whether a self-employed individual with or without employees, or a

JA1449

farmer, or a partnership, or various types of corporations, or a non-profit entity, or a Limited Liability Company, and related information.

Appellant would have me consider whether the statutory provisions are so precise and exclusive as to preclude SBA from exercising its regulatory authority with an additional limitation (the SCGL) designed to effectuate the CARES Act's overall purposes, and then to invalidate the SCGL as being outside the SBA's regulatory authority.

I decline to make any ruling on such an argument. As noted in Section **I. CARES Act, PPP Loans and OHA Jurisdiction**, *Authority of an SBA OHA Judge,* above, the OHA judges are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. Thus, I have no authority to question or decide the validity of an SBA regulation or policy. Rather, my role is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. I find that it was appropriate for SBA to apply the law, in this case the SCGL regulation from IFR7, as it presently exists. Correspondingly, in this regard, I find Appellant's argument that the SCGL was inappropriately promulgated does not show a clear error of law of fact in the making of the FLRD in this case.

*2.      The SBA's reliance on the rule with respect to the PPP Loan is misplaced because the SBA cannot apply that rule retroactively.*

Appellant argues that the SBA had no authority to retroactively change the conditions of Appellant's PPP Loan after Appellant submitted its loan application. Appellant explained in its appeal that Appellant submitted the application for a PPP Loan before May 4, 2020, the effective date of IFR7 and the SCGL, and therefore the SCGL ought not to apply to Appellant. Further, Appellant reports that SBA did not address this claim and has therefore waived this argument. (Reply, p 3.)

SBA responded in its Rebuttal (Portal Docket, Rebuttal, filed April 29, 2024) that the regulation in IFR 7 indicates on its face that it is "immediately effective with respect to any loan that **has not yet been fully disbursed** as of April 30, 2020." SBA points out, therefore, that since the loan in question funded on May 5, 2020, (AAR 4, 890) the limitation does indeed apply to this loan and the SCGL is not being retroactively or inappropriately applied to Appellant's loan. In effect SBA correctly argues that Appellant had notice (by publication on May 4, 2020) of the SCG Limitation and its applicability in advance of the disbursement of funds on May 5, 2020. I find this argument by SBA to be persuasive, and dispositive on this issue of applicability of IFR 7 to Appellant's loan and Appellant's application for forgiveness.

Additionally, I note that in making the retroactivity argument, Appellant fails to recognize the basic structure of the Paycheck Protection Program. First and foremost, the PPP is a loan program. It is perfectly conceivable that a PPP borrower would be grateful to receive the loan at 1% interest, and after a deferment period begin to repay the loan as scheduled. Seeking loan forgiveness is not required. In general, PPP loans were issued based on the lender's decision without an SBA assessment of the borrower's eligibility. Seeking forgiveness requires a separate application and decision-making process, which includes a review of the borrower's eligibility for the loan (for the first time by the SBA).

Since the earliest days of the Program, by a publication on April 6, 2020, SBA has been clear

JA1450

about what rules were applicable at what times. The issuance that day of the Frequently Asked Questions (FAQs) included:

> 17. Question: I filed or approved a loan application based on the version of the PPP Interim Final Rules published at the time of the application. Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.
>
> See https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf. (Emphasis added.)

Appellant here fails to recognize that the "relevant application" is not the loan application, but is instead the application for forgiveness, dated January 11, 2021. This date is well after the issuance and effective date of IFR 7 and the SCGL on May 4, 2020. Simply put, therefore, the SCGL was established prior to the forgiveness application (AAR 894) and the SCGL is therefore applicable to that application. There is no retroactivity involved in applying the SCGL to Appellant's application for forgiveness.

Appellant cites three regulations 86 Fed. Reg. 8283, 8288 (Feb. 5, 2021); 85 Fed. Reg. 38304, 38306 (June 26, 2020), and 85 Fed. Reg. 33004, 33005 (June 1, 2020) in support of its position. These cited regulations contain pertinent language that is the same or similar in each regulation. The earliest of these regulations, 85 Fed. Reg. 33004, 33005 (June 1, 2020), describes the process to obtain loan forgiveness:

> To receive loan forgiveness, a borrower must complete and submit the Loan Forgiveness Application (SBA Form 3508 or lender equivalent) to its lender (or the lender servicing its loan). As a general matter, the lender will review the application and make a decision regarding loan forgiveness. The lender has 60 days from receipt of a complete application to issue a decision to SBA. If the lender determines that the borrower is entitled to forgiveness of some or all of the amount applied for under the statute and applicable regulations, the lender must request payment from SBA at the time the lender issues its decision to SBA. SBA will, subject to any SBA review of the loan or loan application, remit the appropriate forgiveness amount to the lender, plus any interest accrued through the date of payment, not later than 90 days after the lender issues its decision to SBA. . . . If SBA determines in the course of its review that the borrower **was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application,** or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness. The lender is responsible for notifying the borrower of the forgiveness amount. If only a portion of the loan is forgiven, or if the forgiveness request is denied, any remaining balance due on the loan must be repaid by the borrower on or before the two-year maturity of the loan. If the amount remitted by SBA to the lender exceeds the remaining principal balance of the PPP loan (because the borrower made scheduled payments on the loan after the initial deferment period), the

lender must remit the excess amount, including accrued interest, to the borrower.

The general loan forgiveness process described above applies only to loan forgiveness applications that are not reviewed by SBA prior to the lender's decision on the forgiveness application. **In a separate interim final rule on SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, SBA will describe its procedures for reviewing PPP loan applications and loan forgiveness applications.**

(86 Fed. Reg. 33004, 33005-06.) (Emphasis added.)

Appellant asserts that the emphasized language requires an assessment of the borrower's eligibility based on the rules operative at the loan application date. However, the Appellant disregards the reference to other regulations (that were apparently "to be" issued). Those referenced forthcoming regulations were published, indeed, on the same day, as the Federal Register document immediately following the above quoted selection. This second publication regarding "SBA Loan Review Procedures and Related Borrower and Lender Responsibilities" included:

Section 1106(b) of the CARES Act provides for **forgiveness of a PPP loan only if the borrower is an "eligible recipient."** The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 1106(b), the borrower must be an "eligible recipient" under 15 U.S.C. 636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application. This requirement promotes the public interest, aligns SBA's functions with other governmental policies, and appropriately carries out the CARES Act's PPP provisions, including by preventing evasion of the requirements for PPP loan eligibility and ensuring program integrity with respect to this emergency financial assistance program. It is also consistent with the CARES Act's nonrecourse provision, 15 U.S.C. 636(a)(36)(F)(v), which limits SBA's recourse against individual shareholders, members, or partners of a PPP borrower for nonpayment of a PPP loan only if the borrower is an eligible recipient of the loan. Accordingly, the PPP Loan Forgiveness Application (SBA Form 3508 or lender's equivalent form) notes that **SBA may direct a lender to disapprove a borrower's loan forgiveness application if SBA determines that the borrower does not qualify as an eligible recipient for the PPP loan.**

(86 Fed. Reg. 33010, 33012-13.) (Emphasis added.)

Note that 15 U.S.C. 636(a)(36)(A)(iv) declares that "(iv) the term "eligible recipient" means an individual or entity that **is** eligible to receive a covered loan." (Emphasis added.)

The emphasized selection from 85 Fed. Reg. 3305-06 clearly indicates that in the review for loan forgiveness, SBA must make an assessment of loan eligibility based on rules in effect at the time of the loan application. This is shown from the use of the words "was" and "rules or guidance available at the time of the borrower's loan application." This is, therefore, an assessment of initial loan eligibility, or eligibility *ab initio*.

However, the emphasized selections from 85 Fed. Reg. 33012-13 also clearly show that in the review for loan forgiveness, SBA must make an assessment of loan eligibility based on rules in

- 15 -

JA1452

effect at the time of the forgiveness application.  This is shown from the use of the word "is" (not "was") and that the borrower "does" (not "did") not qualify as an eligible recipient.  Also, an "eligible recipient" is one who "is eligible" (not "was eligible").

A careful reading of these regulations and the tenses used discloses or infers a process whereby the lender makes a decision on the forgiveness application, based on the rules in effect at the time of that forgiveness application.  SBA may then review that lender decision, based on forgiveness application date rules, including the first assessment by SBA of the borrower's eligibility for the loan and for forgiveness, both based on the rules applicable at the "relevant" application's date, being the forgiveness application date.  Forgiveness may be denied by SBA for failure to meet the rules including eligibility for the loan based on rules at the time of the forgiveness application.  Additionally, in this first review by SBA, SBA conducts a retrospective review of the borrower's eligibility under rules in effect at the time of the loan application, and if SBA finds the borrower was initially ineligible, then loan forgiveness is also denied.

Remembering that the eligibility for a loan and its issuance is wholly separate from eligibility for and granting of forgiveness, note the consequences of a change in the rules after the loan application date.  If the borrower initially met the rules at the time of loan application but does not meet the loan eligibility rules operative at the forgiveness application date, then forgiveness is denied (thus, the loan remains intact, and the borrower must repay the loan).  Additionally, retrospectively, if it is found that the borrower did not meet the eligibility rules existing at the loan application date, then too the loan is denied forgiveness.  The consequence in this second case, when the borrower was ineligible *ab initio*, is not an immediate cancellation or calling for the immediate full repayment and closing of the loan.  Rather, the loan is continued despite initial ineligibility, and repayment according to the agreed terms is continued, although forgiveness is precluded.

I add that it is quite logical that the government might grant one benefit (the granting or guaranteeing of a loan on very favorable terms) under rules operative at the time of making the loan), and grant another wholly different though related benefit (forgiveness of that loan) based on different rules in effect at the time of the request for that possible second, forgiveness benefit.

In review then, Appellant argued that the SBA had no authority to retroactively change the conditions of Appellant's PPP loan after Appellant submitted its loan application.  However, SBA did not "retroactively change" the **loan conditions** by adopting the SCGL after Appellant's loan application and issuance.  Instead, the applicable loan conditions have remained constant since the application date.  Rather, Appellant's forgiveness application was submitted under a different set of rules than those that applied to the separate loan initiation rules.  This was consistent with the applicable law.  Appellant therefore in this regard has not shown a clear error by SBA in making the FLRD denying forgiveness.

### B.  Meaning of the Single Corporate Group Limit (SCGL) Interim Final Rule (IFR)

*3.        Is there ambiguity in the IFR*

Appellant argues that there is no ambiguity in IFR 7 effective May 4, 2020, and therefore SBA is not free to construe a single corporate group as including common ownership of multiple businesses by one individual person.

The critical text regarding the single corporate group limit from IFR 7 reads:

> For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

Appellant argues (Additional Filing, p 6) that a regulation with a plain meaning must be interpreted within that plain meaning.  See Kisor v. Wilkie, 139 S. Ct. 2400, 2419 (2019) ("If uncertainty does not exist, there is no plausible reason for deference.  The regulation then just means what it means—and the court must give it effect, as the court would any law."). "Common parent" has an "ordinary, contemporary, common meaning" in the context of grouping businesses—a parent corporation—and that ordinary meaning governs interpretation of IFR 7.  See Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2362 (2019) (holding that "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning").  Appellant asserts that because IFR 7 is unambiguous that a "common parent" cannot be an "individual," the SBA is not entitled to deference in construing its own (post hoc) definition of "single corporate group."

Appellant clarifies (Additional Filing, p 1-2) that the individual in question here, Mr. Persson, is not a "common parent" under IFR 7 because he is an individual and can only be the parent of other persons, not corporations.  In other words, according to Appellant, an individual cannot, as a matter of definition, be a "common parent" of corporations or other types of businesses.  To be sure, individuals may own or invest in corporations, as Mr. Persson does here, but that status does not make Mr. Persson the parent to such entities.  "Common parent" has an "ordinary, contemporary, common meaning" in the context of grouping businesses—a parent corporation— and that ordinary meaning governs interpretation of IFR 7.  (*Id.*)

However, in asserting that a "common parent" in IFR 7 unambiguously means a parent corporation, Appellant disregards the context and overall setting of the IFR 7 as applying to the PPP.  The PPP clearly permits individuals operating as sole proprietorships to receive PPP loans. It is well known that a single individual may operate multiple sole proprietorships.  Each sole proprietorship business may be eligible for a PPP loan subject to relevant limitations and exclusions.  Such multiple businesses would have a common parent, the sole proprietor, which is not a corporation.

I find no wording in IFR 7 that precludes finding the single, individual owner of those multiple sole proprietorships from being subject to the SCGL.  Indeed, I find that such a construction of IFR 7 and limiting the amount available to such a borrower is in keeping with its stated purpose, to preserve the limited resources available to the PPP and to promote the availability of loans to the largest possible number of borrowers.

Similarly, a partnership is eligible to receive a PPP loan.  I note that a partnership might have subordinate businesses in the form of LLCs as a business structure to limit liability.  It appears that SBA may indeed have intended to limit the overall loan amount to such a group of businesses, in addition to affiliation rules that might be applicable (or waived), even though not involving one corporation as the "parent" of another corporation.

Thus, I find that the allegedly unambiguous "ordinary, contemporary, common meaning" of the words "common parent" as meaning a "parent corporation" in the context of grouping businesses is simply not accurate when considered in the context of the Paycheck Protection Program.

Thus, I find that the words "common parent" do not necessarily mean a "parent corporation." Rather, I find the IFR 7 regulation's use of the words "single corporate group" to be an unfortunate and inartful choice of words, or "name" for this limitation, since there may be no corporations involved in the identified collection of businesses. However, I find the wording "common parent" to make sense when considered in the context of the PPP and would include a corporation, an LLC, a partnership, and an individual owner (or part owner) of multiple businesses.

I note that if the regulators had intended the limitation to apply to corporations only, as is suggested in Appellant's argument, then it would have been appropriate to use the words "corporate parent" in the quoted sentence from IFR 7. However, the broader "common parent" was used, and one therefore concludes from that construction that the broader meaning was intended, and that the limitation does not apply to just "corporate parents."

Thus, using the language of the CARES Act which addresses "business concerns" (see *e.g.*, 15 USC 636(a)(36)(D)), the quoted sentence from IFR 7 reasonably can be understood to mean:

> For purposes of this limit, businesses are part of a single <u>business concern</u> group if they are majority owned, directly or indirectly, by a common <u>owner</u>.

In summary on the point, therefore, I find that the wording of IFR 7 when considered in the context of the Paycheck Protection Program is sufficiently imprecise as to allow me to consider and interpret its meaning. Therefore, I find that the meaning of the application of the SCGL in IFR 7 is not intended to be limited to parent "corporations" but that other entities and business formats, including individuals, may be a "common parent" subject to the limitation.

Appellant put forth several arguments that an individual person cannot be a "corporate parent" of a corporate group, and that therefore IFR 7 does not apply when (as in this case) an individual is a majority owner of the multiple business concerns at issue.

Again, the critical language from IFR 7 is:

> For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.

In light of what has been said, I have found, above, that the limitation is sufficiently broad as to apply to a single individual person who is a majority owner of multiple business concerns.

Nevertheless, I will address Appellant's arguments that such a finding is in error.

4.    *The Administrative Record does not include any statement, position, guidance, or policy documents indicating why or how the SBA can interpret IFR 7 (such that the term "corporate parent" can mean an individual).*

"The administrative record shall include non-privileged, relevant documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision. The administrative record need not, however, contain all documents pertaining to the appellant." 13 CFR §134.1207(b).

The cited rule is understood, however, to operate within the context of the PPP. Therefore, the CARES Act, the pertinent sections of the Code of Federal Regulations, and any other applicable regulations, Interim Final Rules and notices published by SBA (or the U.S. Treasury) which are generally applicable need not be included in the Administrative Record but are nevertheless applicable to each PPP appeal. Also, as noted above, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. However, the ALJ's function is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. Necessarily that process may involve an assessment of the meaning and interpretation of the regulations. No specific authority is needed to be included in the Administrative Record because the very nature of an appeal is to consider the rules and their meaning as applied to the facts of the case at hand.

I note that Appellant argued (Additional Filing, p 6) for the applicability of the rulings in Kisor v. Wilkie, 139 S. Ct. 2400, 2419 (2019). Appellant indicated that the case found that a regulation with a plain meaning must be interpreted within that plain meaning. However, the necessary precursor to such a conclusion is that the Judge or tribunal must assess the meaning of the pertinent rule to determine whether there is (or is not) a plain meaning. Thus, the interpretation of applicable rules is within the purview of the decision-maker in all cases.

5.  *The absence of a reasoned explanation for denial renders the SBA's decision erroneous.*

The Final SBA Loan Review Decision in this case states that:

> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate. The applicant is part of a corporate group with Eric Persson as its common owner and the group exceeded the maximum $20,000,000 allowed via subject loan disbursement date after April 30, 2020. It is confirmed that Eric Persson is the majority indirect owner of those multiple entities; therefore, it is confirmed that Eric Persson is the majority owner of all entities via direct or indirect ownership as attested to on the borrower's organizational chart and 2483's. Based on the language in IFR #7, there is only one Corporate Group consisting of Eric Persson due to his majority ownership in each business. As a result, this Corporate Group exceeds $20,000,000 in aggregate PPP loans.

I find that this explanation is an appropriate explanation of the basis for denial of forgiveness and clearly shows that the SBA's decision was not "arbitrary and capricious." The denial decision sets forth the reliance on IFR 7 and the single corporate group limitation, that there was a common group of businesses with a majority owner, giving the name of that owner as Eric Persson, referred to an organizational chart provided by Appellant, and that the group's loans exceed the limitation.

Moreover, in describing the basis for the denial decision, the decision necessarily indicates that SBA reviewed the submitted materials, including the organizational chart and information regarding the ownership interests of Mr. Persson. Thus, the FLRD indicated that there was an assessment and evaluation by SBA in arriving at the FLRD and that the denial decision was neither arbitrary nor capricious.

Further, Appellant was sufficiently informed by this explanation so at to be able to prepare a

cogent and thorough objection to the denial of forgiveness as presented in Appellant's appeal petition (Portal Docket, Utah Trailways Appeal, filed September 28, 2023).

Thus, I find that Appellant's claim that absence of a reasoned explanation for denial renders the SBA's decision erroneous is without merit.

*6.     IFR 7 did not include an indication that it would apply to an individual as the corporate parent.*

Appellant argues that the Administrative Record contains, and by inference SBA relied upon, a reference to 31 C.F.R. § 148.2(c), a Treasury Department definition section on recordkeeping requirements for the Federal Deposit Insurance Corporation, which has no connection to PPP loan forgiveness under the CARES Act, and which the SBA did not cite, reference, or otherwise allude to in IFR 7.  See AAR 5209.  The cited record indicates that Treasury defines a "corporate group" as an "entity and all affiliates of that entity."

Firstly, I note that the cited worksheet (AAR 5209) is an undated draft document and that the citation to the Treasury Department regulation therein is not included in the Final SBA Loan Review Decision.  Further, the cited worksheet indicates that, in addition to the Treasury regulation, IFR 7 provides the definition of a single corporate group as has been indicated above, with a common parent, which is Eric Persson.  The document then reports, "As indicated by the majority ownership of Eric Persson, all members of this affiliate family are part of a single corporate group being affiliates of each other under the common control of Mr. Persson."  (*Id.*) This statement shows no reliance on the Treasury department regulation.

Therefore, it does not clearly appear that the Treasury regulation was relied upon in arriving at the FLRD.  Appellant's burden of proof to show clear error of fact or law in the FLRD is not met in this regard.

*7.     A reading of IFR 7 that defines a Single Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned') is inappropriate.*

Appellant asserts that, in separate communications via two PPP lenders to other entities within the purported "corporate group" owned by Mr. Persson, the SBA is now attempting to enforce a different definition of "common parent" for purposes of defining a "single corporate group." See Exhibit A (Email from Lexicon Bank) and Exhibit B (Email from U.S. Bank), both filed April 5, 2024.  Thus, apparently, SBA now defines "a Corporate Group as any single individual or multiple investors that invest more than once together and own more than 50% of entities ('commonly owned')." Appellant asserts that this new definition is conspicuously divorced from the text of IFR 7, and that SBA's arbitrary redefinition is a clear overstep of its regulatory boundaries and a disregard for its own rules.  (Portal Docket, Appellant Additional Filing in Support, filed April 5, 2024, p 7.)

What I have said above shows my finding that in the context of the PPP, the critical provision of IFR 7 is sufficiently imprecise and broad as to allow me to consider its meaning.  I thereupon concluded that the nomenclature as a "corporate group" limitation was too narrow, since not all PPP borrowers are corporations or are in groups of corporations.  I found that a single individual could indeed be the majority of multiple business concerns with PPP loans and would therefore

be considered a parent owner of those business concerns and the single group limitation intended by IFR 7 would properly apply to the group of business concerns.

I also found, above, that SBA was within its regulatory power to issue regulations regarding the PPP, including the limitation on single groups of business concerns found in IFR 7.

Appellant's claim that such a construction as I suggested, above, and the similar construction indicated by SBA in the emails cited above, is "conspicuously divorced from the text of IFR 7" misses the point. Appellant's construction of IFR 7 would construe the limitation as applying only to corporations. Appellant specifically noted that "the term 'common parent' also does not include LLCs, which are distinct entities from corporations as a matter of law." (Portal Docket, Utah Trailways Appeal, filed September 28, 2024, p 4, fn. 1.) This narrow construction (limiting the SCGL to corporations only) is clearly not the intent of IFR 7 as broader language was used in the IFR 7 text and is illogical when considered in the context of the PPP. Such a narrow reading of the rule as applying only to corporations would permit unlimited lending to partnerships, LLCs, and sole proprietorships, when operating with a common majority owner, and as long as other rules, including affiliation rules, were satisfied. (See 13 CFR §121.103 and 301.) Such a construction is contrary to the stated purpose of IFR 7 to "to promote the availability of loans to the largest possible number of borrowers."

Thus, I find appropriate a reading of IFR 7 that defines a Single Corporate Group as the collection of business concerns in which any single individual or multiple investors invest more than once together and own more than 50% of each of those multiple business concerns. Correspondingly, in this regard, I find no showing by Appellant meeting the burden of proof that SBA made a clear error of law or fact in making the Final SBA Loan Review Decision in this case.

### C. Factual Inapplicability of the IFRs to Appellant

*8. The "single corporate group limit" is inapplicable to the corporate group in which Appellant sits.*

In Appellant's Additional Filing in Support of Appeal, filed April 5, 2024, Appellant asserts that there are six separate "corporate groups" in which most of the consolidated Appellants are grouped, plus some of the consolidated Appellants do not fit in any of the six groups. (See also AAR 6043-6044.) I note that Appellant does not identify the basis for separation of the entities into the six groups, or as not in a group. However, from the organizational chart (*Id.*) it appears that there are six groups defined by which entities (corporations and LLCs) are subordinates of other entities. The organizational chart shows that LLCs are subordinates of other LLCs and of corporations, and corporations are subordinates of other corporations and of LLCs.

However, Appellant (Utah Trailways) recognizes that Mr. Persson as an individual is a direct or indirect owner of a majority interest in each of the consolidated appellants (AAR 6043 -6044), but only certain of the consolidated appellants are under Mr. Persson's direct ownership, as reflected in the master organizational chart. (Additional Filing in Support of Appeal, p 2.) From the ownership interests shown in the organizational chart (AAR 6043 -6044) and in the Eric Presson Affiliate Family spreadsheet (filed March 11, 2024) I find that Mr. Persson does have a majority interest of not less than 57%, directly or indirectly, in each of the consolidated Appellants.

- 21 -

Therefore, for Mr. Perssons business purposes and convenience, the separate entities may be organized into six separate ownership, reporting and logistical structures; however, such an organizational structure does not preclude the grouping of all the entities into one "single corporate group" for the purposes of assessment in relation to the group limitation in IFR 7.

IFR7 states that:

> . . . businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. . . . Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

I have found, above, that an individual (in this case Mr. Eric Persson) can be a common parent of multiple business concerns for the purposes of assessment in relation to the single corporate group limitation. Since each of the consolidated Appellants is majority owned by Mr. Persson, directly or indirectly, as shown in the record, each of the consolidated Appellants is considered a part of a "single corporate group" for application of the single corporate group limitation. Correspondingly, that limitation applies to each of the consolidated Appellants. Therefore, to the extent that the PPP loan to each of the consolidated Appellants does or would exceed the $20,000,000.00 limitation, that loan would be a loan for which the borrower was ineligible (per the SCGL), and the loan would not be forgivable (per IFR 7).

Relatedly, in this regard, I find no showing by Appellant meeting the burden of proof that SBA made a clear error of law or fact in making the Final SBA Loan Review Decision in this case.

9. *The SBA Applied Its Affiliation Rules Rather Than a Review for a Corporate Group under a Common Parent*

Appellant asserts that the:

> Administrative Record makes clear that the SBA's limited internal analyses merged the concepts of affiliation and common parent under a corporate group to deny loan forgiveness. Plainly, the SBA applied its affiliation rules to determine which of the consolidated appellants encompassed a "corporate group." In review of IFR #7 it is noted in clause 1. with the heading "Can a single corporate group receive unlimited PPP loans?" there is a reference to SBA's affiliation rules indicating the recognition ***that affiliation equates to a corporate group***. See [AAR at 5209] (emphasis as quoted).

I note that the record reflects that affiliation rules were considered regarding the business concerns majority owned by Mr. Persson. Apparently, some businesses were granted a waiver of the affiliation rules because the business activity of those businesses was identified with an NAICS code beginning with 72. The other businesses not warranting waiver were denied forgiveness based on only the Single Corporate Group Limitation. However, it appears that SBA concluded that the unwaived businesses were "affiliates" of each other based on common, majority ownership by Mr. Persson. Although SBA found these businesses comprised 3,743 employees and thus may have exceeded the size standards, as shown in the Final SBA Loan

- 22 -

Review Decision, SBA did not base the forgiveness denials on the affiliation rules.  See AAR 8.

Further, IFR 7 states that:

> Businesses are subject to this [single corporate group] limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Thus, the single corporate group limitation applies to the consolidated Appellants whether or not those entities are or are not affiliates, and whether or not the affiliation limitations for each entity was or could be waived.  The single corporate group limitation is a wholly independent limiting rule.

The FLRD in the current appeal is clear that the denial of forgiveness was based solely on the single corporate group limitation, and the affiliation rules are not a basis for the denials.  This is especially clear where a prior appeal was based on affiliation as indicated in the FLRD dated January 18, 2022, which FLRD was withdrawn by SBA and the appeal was dismissed.  (See Portal Duplicate/Refiled Appeals, filed February 17, 2022.)

Thus, I find Appellant's assertion, that SBA applied its affiliation rules rather than only the single corporate group rules, is without merit, and that Appellant has not, in this regard, met its burden of proof of an error of law or fact in the making of the Final SBA Loan Review Decision.

*10.    Additional matter of which of the several PPP loans are ineligible for forgiveness.*

The record shows that there were at least 38 PPP loans made to entities majority owned by Mr. Persson.  I have found that those loans that caused the $20,000,000.00 single corporate group limitation to be exceeded are ineligible for loan forgiveness.  The question arises, then, as to which of the loans may be forgiven and which may not.

One could argue that those first in time (whether the date of loan application, date of loan issuance, or date of forgiveness application) should be granted until the limit is reached.  One could also argue that of all the loans, the smallest first should be granted so as to promote loans and forgiveness to the greatest number of borrowers, consistent with the stated purposes of the single corporate group limitation in IFR 7.

However, since the forgiveness application is optional and the time between loan issuance and submission of a forgiveness application is variable, it is not realistically possible to forgive loans on a smallest first basis.

SBA has indicated (AAR 5209) that the order of forgiveness for loans in the group are taken chronologically to determine which were disbursed first.  Thus, those loans first in time based on the date of loan issuance are granted forgiveness, if otherwise eligible, until the single corporate group limit is reached.

I find that such a procedure is rational and not arbitrary or capricious.  It allows for an orderly and methodical assessment of loans in relation to the limitation.

In this case the record (AAR 5210) shows that there are 40 loans in the single corporate group.

Of those, 10 loans have been granted forgiveness, for a total of $19,710,548.00 forgiveness. The remaining 30 loans, for $32,963,685.00 combined, exceed the limitation in IFR 7 and are precluded from forgiveness by the single corporate group limitation as issued in IFR 7.

## VIII. Conclusion

This case boils down to whether the single corporate group limitation in Interim Final Rule 7 is operative regarding Appellant, and a further determination of whether a single corporate group may have a "corporate parent" that is an individual. I conclude that the provisions of IFR 7 are binding upon Appellant, Appellant's PPP loan, and Appellant's application for forgiveness of that loan. I further find that the single corporate group limitation promulgated in IFR 7 includes the situation wherein a group of business concerns are majority owned by a single individual, and that therefore the combined forgiveness allowed to the group of businesses cannot exceed the $20,000,000 limitation.

Utah Trailways Charter Bus Company LLC, Appellant herein, has not shown that the SBA committed a clear error of fact or law in making the Final SBA Loan Review Decision. Therefore, the APPEAL IS DENIED, and the decision of the Final SBA Loan Review Decision is affirmed.

Additionally, this decision applies to each of the consolidated Appellants identified in the Introductory Note near the beginning of this Decision, and each of their respective appeals is hereby denied on the same Agreed Administrative Record, factual findings, reasoning and conclusions of law as indicated herein.

This appeal is decided under the Small Business Act of 1958, 15 U.S.C. §631 et seq., and 13 CFR Part 134. This is an initial decision by the SBA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at https://appeals.sba.gov, this decision shall become the final decision of SBA 30 calendar days after its service. See 13 C.F.R. § 134.1211(b). Per regulations, including 13 CFR §134.1211(c)(1), a request for reconsideration may be made only within 10 calendar days after service of a Judge's decision. It is the borrower's responsibility to review the rules and procedures.

*John Trunick*
John Trunick
Sr. Administrative Law Judge

- 24 -

JA1461

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Venice Family Clinic**

      Appellant

Appealed from
SBA PPP Loan No. 6472417201

Issued:  **October 20, 2022**

Decision No. **PPP-6472417201**

Appearances:
      Mindy B. Pava, Feldesman Tucker Leifer Fidell LLP, for the Appellant.
      John Baker, Attorney for the Small Business Administration.

## DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of Venice Family Clinic (Appellant) is **DENIED**.  For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

On April 17, 2020, the Appellant (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application to Comerica Bank (Lender). On April 28, 2020, the Appellant was approved for a PPP loan by the Lender in the amount of $6,672,100.00, and received the loan proceeds.

The Appellant submitted a PPP Loan Forgiveness Application through the Lender.  On September 2, 2021, the Lender determined the Appellant should receive full loan forgiveness.

On February 16, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and any subsequent loan forgiveness.

On March 17, 2022, the Appellant filed the instant appeal from that final SBA loan review decision.  Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

JA1462

Docket No. PPP-6472417201

On May 4, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by May 25, 2022, providing for the Appellant to file an Objection to the same by June 6, 2022, and allowing for SBA to file a Response to the Petition by June 20, 2022.

On May 25, 2022, the AR was filed.

On June 6, 2022, the Appellant filed an Objection, in which the Appellant states it " does not object to the "absence" of any document from the Administrative Record." The Objection sought to have certain documents re-formatted and redact personally identifiable information (PII) in the form a certain individuals "Drivers License and Social Security Card". Additionally, the Appellant attached three documents for clarification/inclusion in the AR. Review of the AR reflects the same contains all of the documents relied upon by SBA in rendering a final SBA loan review decision. The formatting of the documents in the AR, while challenging, does not preclude the ascertainment of relevant information necessary to argue or decide this matter. As such, the Objection is **OVERRULED**. See 13 C.F.R. § 134.1207(e).

In terms of PII, confidential business and financial information; source selection sensitive information; income tax returns; and other exempt information, the appeal file is not available to the public pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. 552. 13 C.F.R. § 134.205(c). A party in a pending PPP appeal may examine and copy the party's own submissions as well as any information in the appeal file that is not exempt from disclosure under the FOIA. Party access to the appeal file in a pending appeal does not require a FOIA request or a protective order. 13 C.F.R. § 134.205(e). Here, the Borrower is the Appellant and has standing to appeal the final SBA loan review decision for a PPP loan. PPP appeals before OHA do not have opposing private parties. The only parties to a PPP appeal are the Borrower/Appellant and SBA. Therefore, any confidential business, PII of any owners, and financial information pertaining to the Appellant in this appeal is inherently protected.

OHA decisions may be published without redactions on OHA's Web site. A decision may contain confidential business and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision. 13 C.F.R. § 134.205(f). The issue presented relates solely to the Appellant's eligibility for and possible debt forgiveness of a PPP loan. It does not appear that any decision issued in this matter would rely upon any confidential business, PII of any owners, and/or financial information of the Appellant contained in the AR. As such, if SBA chooses to publish any subsequent decision issued in this matter, redaction of the Appellant's confidential business, owners PII, and/or financial information is unnecessary. **If the decision issued in this matter contains confidential business, PII of the owners and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision & SBA chooses to publish the decision, said decision shall be redacted to exclude any confidential business, PII of the owners, and/or financial information of the Appellant prior to publishing the decision.**

On June 15, 2022, SBA moved to extend the close of record until August 19, 2022. By Order dated June 15, 2022, SBA was granted until August 19, 2022, to file a Response to the Petition.

JA1463

On August 17, 2022, SBA moved to extend the close of record until September 2, 2022, to allow for the parties to consider the Amended Administrative Record and for SBA to file a more complete Response.  By Order dated August 18, 2022, SBA was granted until September 2, 2022, to file a Response to the Petition.

On September 2, 2022, SBA filed a Response to the Petition.

On October 11, 2022, the Appellant filed a Motion requesting leave to a Reply to address alleged inconsistencies and discrepancies in Appellant's Loan Forgiveness Application.  The Appellant attached its proposed Reply to the Motion.  By Order dated October 12, 2022, the Appellant's Motion was granted and the Reply, as set forth in the Motion requesting leave, was accepted as the Appellant's Reply.  The AR was closed on October 12, 2022.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $6,672,100.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.    Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).  Subject to other PPP requirements, Sections B.1.d and B.1.g of the CARES Act permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose. 15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. 15 U.S.C. § 636(a)(36)(G). PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

## II. PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. 15 U.S.C. § 636m(d)(8). The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

JA1465

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1].

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

On March 27, 2020, the CARES Act became law. P.L.116-136. On April 17, 2020, the Appellant submitted a PPP Borrower Application Form 2483, which reflects the Appellant is a 501(c)(3) non-profit entity with EIN \*\*-\*\*\*9432. (AR pp. 1477-1482 and 1465).

On April 28, 2020, the Appellant was approved for a PPP loan by the Lender in the amount of $6,672,100.00, and having executed a PPP Promissory Note received the loan proceeds on May 8, 2020. (AR pp. 20, 27-33, and 1485).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). The Appellant submitted Form 3508EZ, along with some documentation and the required certification concerning the validity of expenses. (AR pp. 1483-1484).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On September 2, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $6,672,100.00. (AR pg. 20).

---

[1] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1466

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On September 9, 2021, SBA notified the Lender and Appellant it was reviewing the Appellant's PPP loan. (AR pp. 1466-1467).  On October 13 and 20, 2021, , SBA requested documentation concerning the PPP loan through the Lender. SBA specifically requested the Appellant provide an SS-4 for Venice Family Clinic and a copy of the principals, Elizabeth Forer, Social Security Card." SBA noted receipt of these records. (AR pp. 1468-1471).

The Appellant provided SBA with the following: operating agreement with UCLA, 2019 IRS Form 941s, State quarterly wage unemployment insurance tax reporting forms, 2019 3rd party payroll reports, and an explanation of Employer Identification Number (EIN) usage. The Appellant attached "Exhibits" with the following information: "Clinics, Administrative and Operation Sites"; "Staffing Titles/Positions"; "Executive Director" (named person with contact information); "Executive Director Job Description"; "Executive Director Compensation"; and "Disclosure of Litigation". (AR pp. 15 and 815-863).  The Appellant also provided SBA with evidence/documentation concerning the expenditure of PPP funds. (AR pp. 146-713).

On October 28, 2021, SBA notified the Lender and Appellant it would likely decline the forgiveness application.  SBA noted the 2019 IRS Forms 941 did not reflect the Appellant as the employer and requested 2019 IRS Forms that reflect the same. (AR pp. 1472-1476).

On February 16, 2022, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness, finding the Appellant "did not have any eligible payroll cost at the time of loan application." SBA noted that the Appellant "was an ineligible recipient of the Paycheck Protection Program, due to the university (UCLA) being the employer of record for the leased employees to Venice Family Clinic. All tax documents are in the name of the university, Regents of the University of California. Therefore, the borrower has no eligible payroll.ineligible for a PPP loan. (AR pp. 20-21).

Throughout the Petition and in its Reply, the Appellant argues that: (1) It had employees "employed on [an] other basis" under 15 U.S.C. § 636(a)(36), 13 C.F.R. 121.106 and SBA Size Policy Statement No. 1; 2) It applied "for the SBA loan in question very early in its initial offering stage in late March 2020"; (3) Under California law, the pertinent personnel would likely be found to be dual employed by VFC and UCLA; 4) The final SBA loan review decision contains errors of law and fact due to SBA's use of SBA FAQ #10; and 5) SBA FAQ #10 is inconsistent with existing SBA 7(a) business loan program rules and the CARES Act. (Petition of Appellant and Reply).

JA1467

## SBA FAQ #10

The CARES Act contains the following definition: "(viii) the term `payroll costs'--``(I) means--`(aa) the sum of payments of any compensation with respect to employees that is a--``(AA) salary, wage, commission, or similar compensation; …"

On April 2, 2020[2], SBA published Interim Final Rule (IFR) #1 on the United States Department of Treasury website[3] for the "implementation of sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act)."  IFR #1 noted that Section 1102 of the CARES Act temporarily added a new product, titled the "Paycheck Protection Program," to SBA's 7(a) Loan Program.  Pursuant to Section 1114 of the CARES Act, IFR #1 became immediately effective, without advance notice and public comment.

Within IFR #1, item 2(f) provides the following definition: "Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation."

SBA, in consultation with the Department of the Treasury, produced Frequently Asked Questions (FAQ) "to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), including both First Draw PPP Loans and Second Draw PPP Loans."  The FAQ document was noticed as one that would "be updated on a regular basis."  Of note, the FAQ specifically stated that: "Borrowers and lenders may rely on the guidance provided in this document **as SBA's interpretation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act)** (as amended), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")."[4] **(EMPHASIS added)**.

On April 6, 2020, SBA published FAQ #10 on the United States Department of Treasury website, which states:

---

[2] IFR #1 was published in the Federal Register on April 15, 2020. 85 Fed. Reg. 73, 20811-20817.
[3] https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf
[4] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

10. **Question**: What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?

**Answer**: SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation. Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes. In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO.

The Appellant argues the final SBA loan review decision contains errors of law and fact due to SBA's use of SBA FAQ #10.  The Appellant argues FAQ #10 is inconsistent with existing SBA 7(a) business loan program rules and the CARES Act, as follows:

1) The PPP statute specifically defines employees as including personnel "employed on [an] other basis,"; and
2) SBA policy on the factors to be considered in determining whether personnel are employees "employed on [an] other basis" has been long established via SBA Size Policy Statement No. 1. (*See* 51 Fed. Reg. 6099, Feb. 20, 1986). (Petition of Appellant).

This argument challenges to the validity of SBA's FAQ #10 through IFR #1, in which SBA concluded that for purposes of the PPP program, an employee is someone who gets paid to work for a person or company, and in the case of a PEO is confirmed with IRS Form 941-R (Form 941 or Schedule R).  The Schedule R is meant to provide the IRS with client-specific information to support the totals reported on an aggregate Form 941 filed on behalf of the PEO's customer with the form containing the PEO customer's Employer Identification Number (EIN).

SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a).  The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).  Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).  For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness. P.L. 116-36, § 1102; see also 15 U.S.C. § § 636(a)(36) and 636m. The CARES Act grants the Administrator emergency rulemaking authority and instructed the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, along with the issuance of guidance and regulation to implement loan forgiveness within 30 days. 15 U.S.C. § 9012 and 15 U.S.C. § 9012; 15 U.S.C. § 636m(k).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

Congress created SBA through the Small Business Act of July 30, 1953. SBA is under the general direction and supervision of the President and may not be affiliated with or be within any other agency or department of the Federal Government. The management of SBA is vested in an Administrator who shall be appointed from civilian life by the President, by and with the advice and consent of the Senate. The Administrator is authorized to appoint Associate Administrators (AA) to assist in the execution of the functions vested in the SBA. One such AA is the Chief Hearing Officer, who administers the Office of Hearings and Appeals (OHA). OHA was established to "impartially decide matters relating to program decisions of the Administrator". The AA of OHA is the Chief Hearing Officer and is responsible to the Administrator. The Chief Hearing Officer is responsible for the operation and management of OHA. Pub. L. 85–536 (July 18, 1958); as Amended through Pub. L. 117–6 (March 30, 2021); 15 U.S.C. § 631 et seq.; 72 Stat. 384 et seq.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's IFR #1, available at the time the Appellant applied for this PPP loan, as well as SBA's interpretation that the CARES Act. Section 1114 of the CARES Act waived the notice and comment requirement for Interim Final Rules, thus IFR #1 has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program. For the foregoing reasons, OHA and the undersigned are without authority to invalidate SBA's IFR #1 or its interpretation of the CARES Act through FAQ #10 in defining payroll costs (and by default 'employee') for purpose of eligibility for PPP loans.

## SBA PPP Loan No. 6472417201

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106. Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. §553(b) (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b).

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

In terms of loan eligibility, the AR reflects the Appellant is a 501(c)(3) non-profit entity. Following the issuance of IFR #4[5], in consultation with the Department of the Treasury, produced "How to Calculate Maximum Loan Amount - By Business Type" to "guidance to assist businesses in calculating their payroll costs for purposes of determining the amount of a Paycheck Protection Program (PPP) loan businesses can apply for." SBA stated that this guidance is "SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules."[6] Within this guidance, SBA Q&A #6 sets forth how a 501(c)(3) non-profit entity calculates its PPP loan eligibility amount, as follows:

**6. Question**: How is the maximum PPP loan amount calculated for eligible nonprofit organizations[7] (up to $10 million)? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent during the 24-week period following the first disbursement of the PPP loan.)

**Answer**: The following methodology should be used to calculate the maximum amount that can be borrowed for eligible nonprofit organizations (eligible nonprofit religious institutions, see the next question):

• Step 1: Compute 2019 payroll costs by adding the following:

o 2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, which can be computed using 2019 IRS Form 941 Taxable Medicare wages & tips (line 5c-column 1) from each quarter plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, subtracting any amounts paid to any individual employee in excess of $100,000 and any amounts paid to any employee whose principal place of residence is outside the U.S;

o 2019 employer health insurance contributions (portion of IRS Form 990 Part IX line 9 attributable to health insurance);

---

[5] IFR #4 was published April 24, 2020.
[6] https://home.treasury.gov/system/files/136/How-to-Calculate-Loan-Amounts.pdf
[7] SBA defined "Eligible nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code."

JA1473

o 2019 employer retirement contributions (IRS Form 990 Part IX line 8); and

o 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

• Step 2: Calculate the average monthly payroll costs (divide the amount from Step 1 by 12).

• Step 3: Multiply the average monthly payroll costs from Step 2 by 2.5.

• Step 4: Add the outstanding amount of any EIDL made between January 31, 2020 and April 3, 2020 that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid).

The nonprofit organization's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with the filed IRS Form 990 Part IX or other documentation of any retirement and health insurance contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date. Eligible nonprofits that do not file an IRS Form 990, typically those with gross receipts less than $50,000, should see the next question.

For this Appellant, 2019 payroll costs begin with determining this Appellant's direct employees gross wages and tips from IRS Forms 941 (line 5c-column 1). The AR does not contain 2019 IRS Forms 941 from this Appellant. The AR contains 2019 IRS Forms 941 from the "Regents of the University of California" with a 2019 four quarter total from line 5c-column 1 of $ 6,541,254,776.80. (AR pp. 34-43). Pursuant to Q&A #6, the Appellant has failed to document any PPP eligible wages and tips for its employees.

The Appellant argues that its 2019 wages and tips are reflected in the Regents of the University of California's 2019 IRS Forms 941. The Appellant's argument would render the Regents of the University of California as the Appellant's PEO and place examination of the Appellant's PPP loan eligibility under FAQ #10.

The Appellant provides a letter from the University of California, Executive Vice President – Chief Financial Officer dated August 15, 2022, which states "it would be appropriate under the circumstances for UC to include VFC's payroll information on UC's Form 941, Schedule R." (Reply – "Attach 2 to Motion" pg. 3). Through this letter, the Appellant seeks to utilize already submitted 3rd party payroll documentation as an alternative means to establish the Appellant's 2019 wages and tips under Q&A #6.

The AR also contains a letter from the University of California, Executive Vice President – Chief Financial Officer dated October 7, 2022. In this correspondence, the Appellant was advised that beginning in tax year 2023, the Regents of the University of California would include the Appellant its IRS Form 941, Schedule R. The correspondence further states:

JA1474

"With respect to retroactive filing of additional or amended Forms 941R for tax years 2020, 2021, and 2022, the matter remains under review. Although, for the reasons stated above and in the attached letter, the UC could have filed a Form 941R including VFC in those periods, we are not yet certain of all the administrative implications and impacts of retroactive filing or amendment at this point. If retroactive filing or amendment is feasible and will not entail costly additional filings or impacts, we are happy to work with VFC to proceed with doing so."  As such, the Regents of the University of California have not included the Appellant on its IRF Form 941, Schedule R for tax years 2019, 2020, 2021 or 2022. (Reply – "Attach 2 to Motion" pg. 2).

Accepting the Appellant's argument that the Regents of the University of California are the Appellant's PEO, pursuant to FAQ #10, the Appellant has failed to document its listing on the Regents of the University of California IRS Form 941, Schedule R.  In the absence of the same, the Appellant cannot provide an "Allocation Schedule" for itself from the Regents of the University of California (an aggregate Form 941 filer).

Given this absence, the Appellant seeks, under FAQ #10, to use a statement from its 3rd party payroll provider to document the amount of wages and payroll taxes attributable to the Appellant on the Regents of the University of California's 2019 IRS Forms 941. This interpretation of FAQ #10 is inconsistent with plain language of FAQ #10.  SBA will allow a PPP applicant/borrower to seek 3rd party payroll documentation only when the applicant/borrower appears on the PEOs IRS Form 941, Schedule R and cannot obtain an "Allocation Schedule".  As noted above, the Appellant does not appear on the purported PEO's 2019 IRS Form 941, Schedule R and the purported PEO has specifically declined to add the Appellant to the same.  As such, the Appellant has failed to document PPP payroll costs through its purported PEO.

Pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request.  The PPP Loan Forgiveness Application Form 3508 signed by the Appellant notes the Appellant may be required to provide "Other Records" that are "necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements."

Here, the Appellant has failed to supply SBA with the documentation necessary to support this PPP loan under the applicable Q&A #6 and/or FAQ #10.  The Appellant was obligated to provide the information requested by SBA pursuant to 15 U.S.C. § 636m(b), (e), and (f).  Given the foregoing, SBA issued a final loan review decision precluding PPP loan eligibility.  The AR reflects this Appellant did not have PPP qualifying payroll costs (no employee wages or tips).  In the absence of the Appellant meeting it's documentary obligation under Q&A #6 and/or FAQ #10, the final SBA loan review decision could only result in a full denial PPP loan eligibility.  SBA did not commit error in finding the same.

Docket No. PPP-6472417201

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 6472417201. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 6472417201.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**If the decision issued in this matter contains confidential business, PII of the owners and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision & SBA chooses to publish the decision, said decision shall be redacted to exclude any confidential business, PII of the owners, and/or financial information of the Appellant prior to publishing the decision.**

**SO ORDERED.**

_____
**Brian J. Haring**
U.S. Administrative Law Judge

Page 15 of 16

JA1476

Docket No. PPP-6472417201

---

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, underlined solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA1477

# United States Small Business Administration
## Office of Hearings and Appeals

**PAYCHECK PROTECTION PROGRAM
APPEAL OF**:

**The Vinegar Factory Inc**

      Appellant

Appealed from
SBA PPP Loan No. 9911087009

Issued: **March 31, 2023**

Decision No. **PPP-9911087009**

Appearances:
      Theodora McCormick, Epstein, Becker & Green, P.C., for the Appellant.
      Todd Henderson, Attorney for the Small Business Administration.

## DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of The Vinegar Factory Inc (Appellant) is **DENIED**. For the reasons discussed below, the final SBA loan review decision is **AFFIRMED**.

## PROCEDURAL HISTORY

On April 6, 2020, the Appellant (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application.

On April 9, 2020, the Appellant was approved for a PPP loan by JPMorgan Chase Bank, National Association (Lender) in the amount of $1,076,682.00, and having executed a PPP Promissory Note received the loan proceeds.

On July 16, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender.

On July 23, 2021, the Lender determined the Appellant should receive no loan forgiveness.

On January 10, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and any subsequent loan forgiveness.

JA1478

On February 9, 2022, the Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

On March 29, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by April 18, 2022, providing for the Appellant to file an Objection to the same by April 28, 2022, and allowing for SBA to file a Response to the Petition by May 13, 2022.

On July 7, 2022, an Order to Show Cause was issued requiring SBA to file the AR within seven days, seek an extension of the deadline, or provide an argument as to why the matter should not be remanded. On July 14, 2022, SBA provided a written explanation and requested additional time to prepare the AR.

On July 15, 2022, an Amended Notice and Order was issued requiring the filing of the AR by August 29, 2022, providing for the Appellant to file an Objection to the same by September 8, 2022, and allowing for SBA to file a Response to the Petition by September 16, 2022.

On October 4, 2022, an Amended Notice and Order was issued requiring the filing of the AR by November 15, 2022, providing for the Appellant to file an Objection to the same by November 25, 2022, and allowing for SBA to file a Response to the Petition by December 9, 2022.

On November 28, 2022, a 2nd Amended Notice and Order was issued requiring the filing of the AR by January 2, 2023, providing for the Appellant to file an Objection to the same by January 12, 2023, and allowing for SBA to file a Response to the Petition by February 2, 2023.

On January 3, 2023, a Consent Amended Notice and Order was issued requiring the filing of the AR by March 2, 2023, providing for the Appellant to file an Objection to the same by March 13, 2023, and allowing for SBA to file a Response to the Petition by March 27, 2023.

On January 27, 2023, the AR was filed. The Appellant did not file an Objection to the AR and SBA did not file a Response to the Petition. The AR was closed at 5:00 PM Eastern on March 27, 2023.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $1,076,682.00 in requested PPP loan forgiveness?

JA1479

## APPLICABLE LAW AND POLICY

### I.  Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.  In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  15 U.S.C. § 636(a)(36)(G).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

Generally, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. 15 U.S.C. § 632(a)(1).  In addition to the criteria specified in 15 USC § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA established its initial small business size standards on January 1, 1957. 21 Fed. Reg. 9709-9714, December 7, 1956.

Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture. 13 C.F.R. § 121.105(a)(1) and (b).

JA1480

The Administrator has established SBA's size standards to define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). 13 C.F.R. § 121.101(a).

NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(b).

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.201.

P.L. 111-240, the Small Business Jobs Act of 2010, §1344 requires SBA to conduct a detailed review of not less than one-third of the SBA's industry size standards during the 18-month period beginning on the date of enactment (September 27, 2010) and during every 18-month period thereafter.  Additionally, the Small Business Jobs Act of 2010 requires SBA to review each size standard at least once every five years. The SBA completed its first five-year review of all SBA industry size standards in 2016.[1]

Except for the Business Loan and Disaster Loan Programs, a business concern's average annual receipts are calculated by determining the total receipts of the concern over its most recently **completed** 5 fiscal years divided by 5, or over its most recently completed 3 fiscal years divided by 3. 13 C.F.R. § 121.104(c)(1).

For the Business Loan and Disaster Loan Programs, annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three.  The Business Loan Programs consist of the 7(a) Loan Program. 13 C.F.R. § 121.104(c)(4).  Completed fiscal year  means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS. 13 C.F.R. § 121.104(b).

---

[1]
https://www.sba.gov/sites/default/files/articles/Size_Standards_Review_Report_to_Congress_Final_With_Cover_Letters.pdf

JA1481

The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination. When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts. 13 C.F.R. § 121.104(a)(1-2).

Section 1116 of the Small Business Jobs Act of 2010 directed SBA to establish a new temporary[2] alternative size standard based on tangible net worth and net income for determining size eligibility for its 7(a) and 504 loan programs, as follows: The Administrator shall establish an alternative size standard for applicants for business loans under section 636(a) of this title that uses maximum tangible net worth and average net income as an alternative to the use of industry standards. *See* 15 U.S.C. § 632(a)(5)(A).

This alternative size standard provides a business concern is a small business , if: 1) The maximum tangible net worth of the business concern is not more than $15,000,000; and 2) The average net income after Federal income taxes (excluding any carry-over losses) of the business concern for the 2 full fiscal years before the date of the application is not more than $5,000,000. 15 U.S.C. § 632(a)(5)(B)(i-ii).

Effective September 27, 2010, the new statutory alternative size standard replaced and superseded the existing alternative size standard, based on tangible net worth and net income, for SBA's 7(a) and 504 loan programs set forth in 13 C.F.R. § 121.301(b)(2). This new statutory alternative size standard is effective until such time as SBA establishes a permanent alternative size standard for the 7(a) and 504 loan programs through the rulemaking authority granted the Administrator under §636(a) of the Small Business Act.

SBA published a "Table of Small Business Size Standards". [3]  The table lists small business size standards matched to industries described in the North American Industry Classification System (NAICS), as modified by the Office of Management and Budget, effective January 1, 2022.  The size standards are for the most part expressed in either millions of dollars (those preceded by "$") or number of employees (those without the "$"). A size standard is the largest that a concern can be and still qualify as a small business for Federal Government programs. For the most part, size standards are the average annual receipts or the average employment of a firm. How to calculate average annual receipts and average employment of a firm can be found in 13 C.F.R. § 121.104 and 13 C.F.R. § 121.106, respectively.  SBA also includes the table of size standards in the Small Business Size Regulations, 13 C.F.R. § 121.201.

---

[2] https://www.sba.gov/sites/default/files/files/bank_5000-1175_0.pdf
[3] https://www.sba.gov/sites/default/files/2022-12/Table%20of%20Size%20Standards_Effective%20December%2019%2C%202022_508%20%281%29_0.pdf

JA1482

A business concern is eligible for a PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS Code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS Code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. *See* 13 C.F.R. § 121.301(a and f) and SBA FAQ Questions 2, 4, 5, and/or 63 (in relevant part, below).

## PAYCHECK PROTECTION PROGRAM LOANS

Frequently Asked Questions (FAQs)[4]

2. **Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?[5]

   **Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

   ***Additionally, a business can qualify for a First Draw PPP*** Loan as a small business concern ***if it met both tests in SBA's "alternative size standard" as of March 27, 2020:*** (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. ***(Emphasis added)***....

4. **Question**: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?[6]

   **Answer**: No. It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications....

---

[4] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[5] Question 2 published April 6, 2020 and revised March 3, 2021 to reflect the consolidated interim final rule implementing updates to the PPP. This FAQ applies only to First Draw PPP Loans. Different eligibility requirements apply to Second Draw PPP Loans. See FAQ #63 and subsection (c) of the interim final rule for Second Draw PPP Loans.
[6] Question 4 published April 6, 2020.

JA1483

5. **Question**: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?[7]

**Answer**: Yes. ***Borrowers must apply the affiliation rules***, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, ***or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. (Emphasis added)***.

63. **Question**: May applicants use SBA's established size standards (either revenue-based or employee-based) or SBA's alternative size standard to qualify for a Second Draw PPP Loan?

**Answer**: No. Applicants may not use SBA's established size standards (either revenue based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan. In general, the size eligibility requirement for Second Draw PPP Loans are narrower than the size eligibility requirement for First Draw PPP Loans. With some exceptions, an applicant is eligible for a Second Draw PPP Loan only if it, together with its affiliates (if applicable), employs no more than 300 employees. The only exceptions are if an Applicant:

• Is assigned a NAICS code beginning with 72 and employs no more than 300 employees per physical location, or

• Is a news organization that is majority owned or controlled by a business concern that is assigned NAICS code 511110 or a NAICS code beginning with 5151 or is a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, and, in either case, employs no more than 300 employees per physical location.

---

[7] Question 5 published April 6, 2020 and revised March 3, 2021 to conform to subsections B.1.g.v., B.1.g.vii., and
B.1.g.viii of the consolidated interim final rule implementing updates to the PPP and subsection (c) of the interim
final rule on Second Draw PPP Loans.

JA1484

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302. On April 15, 2020, SBA published Interim Final Rule (IFR) #1, which clarifies PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483. [8] 85 FR 21747.

## II.     PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct.  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification.  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  15 U.S.C. § 636m(e), § 636m(e)(3), § 636m(f), and § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs.  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

The lender reviews the application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(g).  Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA.  The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[9]. 13 C.F.R. §134.1201(b)(1)-(4).

---

[8] https://www.federalregister.gov/documents/2020/04/20/2020-08257/business-loan-program-temporary-changes-paycheck-protection-program-additional-eligibility-criteria

[9] SBA PPP lender notices are available from **SBA.gov** at  https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1485

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1210; and 13 C.F.R. § 134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

On March 27, 2020, the CARES Act became law. P.L.116-136. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[th]

New York, NY 10028 using NAICS Code 445299. The Appellant "*has twelve (12) affiliated entities (the "Eli Zahar Entities"). These entities are a collection of restaurants, wine bars, bakeries, cafe's, one specialty grocery store, one commercial leasing business and one wholesale bread seller. All of the entities (except for Eli's Leasing) were assigned an NAICS code of 445299 (All Other Specialty Food Stores). Eli's Leasing, Inc. was correctly assigned a NAICS code of 532490 (Commercial and Industrial Machinery and Equipment Leasing).*" (AR p. 76 and Petition – Robert Shaloff Certification w/ Exhibits).

On April 9, 2020, the Appellant was approved for a PPP loan by the Lender in the amount of $1,076,682.00, and having executed a PPP Promissory Note received the loan proceeds on April 10, 2020. (AR pp. 17, 50-55, and 239).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3) and (f).

On July 16, 2021, the Appellant submitted Form 3508 and Form 3511 (Affiliation Worksheet), along with some documentation and the required certification concerning the validity of expenses. (AR pp. 397-411).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

JA1486

Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).  On July 23, 2021, the Lender determined the Appellant should receive no loan forgiveness. (AR p. 17).

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On August 6, 2021, SBA notified the Lender it was reviewing the Appellant's PPP loan. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. (AR pp. 391-392).

On November 30, 2021, SBA requested documentation concerning the PPP loan through the Lender. SBA specifically requested the Appellant respond to the following SBA/Lender findings: 1) "*Employee size standard exceeds the maximum SBA employee size standard of 500 employees*"; ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ This information was vital to SBAs review. (AR pp. 393-394).

After review of the Appellant's loan and responses, SBA found: "*The Borrower/Eli Zabar affiliates have 676 employees. exceeding the 500 SBA employee count threshold. With over twelve affiliates applying for the PPP loans, all entities and in aggregate exceeded SBA's size standards. Based on the information g for the PPP loans. all entities and in aggregate exceeded SBA's size standards. Based on the information in file and that provided by the borrower entities. the family of 12 loans are ineligible. In addition. as per management this loan is to be denied based on Potential ineligible business size. CFR-2020-title13-voll-secl21-104; SBA Table of Size Standards. Under section 3 of the Small Business Act. 15 U.S.C. 632 the applicant did not satisfy the requirements by the number of employees greater than 500.*" (AR p. 14).

Further, SBAs Loan Exception Report found the Appellant: "*received one loan for $1,076,682 for 158 employees. Per loan documentation, the total employee count for all of the borrower's loan group is 676* ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

On January 10, 2022, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness, finding the Appellant "*business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.  Borrower is ineligible due to exceeding size stand for employee count due to several affiliations.*"  This rendered the Appellant ineligible for this PPP loan and precluded from loan forgiveness. (AR pp. 17-18).

The Appellant has the burden of proving all elements of the appeal and must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210.  Through written statement, the Appellant argues in favor of full loan forgiveness, as follows:

> The Appellant has twelve affiliated entities (the "Eli Zahar Entities"). These entities are a collection of restaurants, wine bars, bakeries, cafe's, one specialty grocery store, one commercial leasing business and one wholesale bread seller. All of the entities (except for Eli's Leasing) were assigned an NAICS code of 445299 (All Other Specialty Food Stores). Eli's Leasing, Inc. was correctly assigned a NAICS code of 532490 (Commercial and Industrial Machinery and Equipment Leasing).  The majority of the Eli Zahar Entities should have been classified with an NAICS code beginning with 72 (Accommodation and Food Service Industries). When these Eli Zahar Entities were formed, they were inadvertently classified with a NAICS code of 445299, despite the fact that they are all restaurants or other eating places that are primarily engaged in preparing and/or providing food services to patrons who pay after eating or pay before eating (at a counter) or consume specialty snacks on or near the premises where they were purchased.  None of the Eli Zabar Entities, on their own, have more than 500 employees.

> PPP waives affiliation and excludes from size consideration entities with NAICS category of 72.  Application of the correct NAICS Codes, as set forth in the Affiliation Worksheet (Form 3511), renders the Appellant, along with its affiliates, with less than 500 employees at the time the Appellant applied for this PPP loan.  The Appellant is therefore eligible for this PPP loan.

> The Appellant and the other Eli Zabar Entities used their PPP loan funds appropriately to fund payroll and otherwise ensure the continuity of their operations during the Covid-19 pandemic consistent with the permitted uses set forth by the SBA. The Appellant is therefore entitled to PPP loan forgiveness. (*See* Petition of Appellant).

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act.  SBA carries out the policies of the Small Business Act.  The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 631(b)(1); 15 U.S.C. § 633(a); and 15 U.S.C. § 634(b)(6).

JA1488

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 636(a); 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 15 U.S.C. § 636m(b), (f) and (g); and 13 C.F.R. § 134.1201(b).

JA1489

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

The CARES Act waived the affiliation rules with respect to eligibility of a PPP applicant that is one of the following:

- A business within NAICS category 72 that has no more than 500 employees.
- A franchise with a franchise identifier code assigned by SBA in the SBA Franchise Directory.
- A business that receives financial assistance from a small business investment company licensed by SBA ("SBIC"). Small Business Act § 7(a)(36)(D)(iv).

On April 3, 2020, SBA published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM[10]. Within this policy guidance, SBA's set forth the four tests for affiliation based on control of the entity under 13 C.F.R. § 121.301(f)[11] applicable to participants in the PPP. 13 C.F.R. § 121.103. SBA provides that: "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described below is sufficient to establish affiliation for applicants for the Paycheck Protection Program."

SBA identified the four tests, as follows: 1) Affiliation based on ownership; 2) Affiliation arising under stock options, convertible securities, and agreements to merge; 3) Affiliation based on management; and 4) Affiliation based on identity of interest.

SBA set forth a "Waiver" of the affiliation rules for (1) any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a North American Industry Classification System code beginning with 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the SBA; and (3) any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958.

---

[10] https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[11] A revised 13 C.F.R. § 121.301(f) promulgated by SBA took effect on March 11, 2020, but was revoked by the CARES Act, which restored the previous version of 13 C.F.R. § 121.301(f).

JA1490

In terms of loan eligibility, the U.S. Office of Statistical Standards developed the idea of classifying businesses by industry in 1934, after receiving a recommendation from another governmental agency. After four years of discussion, debate and planning, the Office of Statistical Standards released the first list of businesses classified by standardized code in 1938, known as Standardized Industry Classification codes, or SIC codes.  The Bureau of the Budget, which absorbed the Office of Statistical Standards, published and printed the first complete edition of SIC codes in 1941. SIC codes served as the primary classification system used by various agencies for nearly 50 years. The U.S. Census Bureau adopted the North American Industry Classification System, or NAICS, in 1997, which slowly began to replace the previous SIC system[12].

In general, no government agency assigns NAICS Codes, as each business self-assigns the code that most closely resembles its industry. In other words, the business will look through the NAICS industry categories and decide on the code that best fits its business. NAICS Codes consist of six digits, include an extra digit for further classification and one extra digit for a country code.  The first two digits define the business' economic sector, with each additional digit narrowing the classification.

Every business tax return filed in the U.S. is required to have a principal business activity code, including sole proprietorships, partnerships, S corporations and C corporations.  For S Corporations, IRS requires the code be a NAICS Code set forth in Box B **on Form 1120-S. Internal Revenue Manual, Part 3, §** 3.11.217.8, *see* 2019 Instructions for Form 1120-S[13] and 2019 IRS Form 1120-S[14].

Several federal agencies, including the SBA, U.S. Census Bureau and U.S. Department of the Treasury (including the Internal Revenue Service), use NAICS information for economic information and comparisons.

SBA has adopted the use of NAICS Codes for several reasons: (1) Federal Government contracting data and related statistics will be more consistent and comparable with past data for analyzing future small business activity if implementation of the revised table of size standards occurs at the beginning of a new fiscal year; (2) users of size standards, for instance, Federal prime contractors, who may use the size standards for developing their subcontracting plans, can have more consistent data to examine the past and future Federal contracting trends; and (3) small business size standards apply to most Federal agencies and their programs involving small businesses.[15] *See* 87 FR 59240 (Sept. 29, 2022).

---

[12] https://www.naics.com/what-is-a-naics-code-why-do-i-need-one/#:~:text=A%20NAICS%20(pronounced%20NAKES)%20Code,related%20to%20the%20US%20Economy.

[13] https://www.irs.gov/pub/irs-prior/i1120s--2019.pdf

[14] https://www.irs.gov/pub/irs-prior/f1120s--2019.pdf

[15] https://www.federalregister.gov/documents/2022/09/29/2022-20513/small-business-size-standards-adoption-of-2022-north-american-industry-classification-system-for

JA1491

In general, size standards define the largest size a business can be to participate in government contracting programs and compete for contracts reserved or set aside for small businesses within the programs administered by SBA. SBA size standards vary by industry and are generally based on the number of employees or the amount of annual receipts of the business. SBA determines a concern's primary industry by considering the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets. 13 C.F.R. § 121.107.

For certain SBA programs, a contracting officer designates a NAICS Code for a contract according to 13 C.F.R. § 121.402. Any interested party adversely affected by a NAICS Code designation may appeal the designation to OHA. 13 C.F.R. § 121.1103. For such matters, the ability to appeal and the rules governing those appeals are set forth in 13 C.F.R. § 134.301 et seq.

A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, *after applying the affiliation rules*, if applicable. (Emphasis added) (SBA PPP FAQ 4).

Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Additionally, a business can qualify for a First Draw PPP Loan as a small business concern if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. (SBA PPP FAQ 2).

The Appellant submitted to the Lender a PPP Borrower Application Form 2483 on April 6, 2020. The PPP Loan Forgiveness Application Form 2483 effective from April 2, 2020, through June 11, 2020[16], required the Appellant to certify that it "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry." Further, the Appellant was required to certify that the information in the form, along with all other supporting documentation, was "is true and accurate in all material respects." Of note, Form 2483 was later amended to require the inclusion of a PPP applicants NAICS Code. The version of the form submitted by the Appellant did not require the self-assignment of a NAICS Code.

---

[16] https://www.sba.gov/sites/default/files/2022-02/PPP-Borrower-Application-Form-Fillable.pdf

The Appellant submitted a PPP Loan Forgiveness Application Form 3508 through the Lender on July 16, 2021.  The PPP Loan Forgiveness Application Form 3508 effective from May 24, 2021, through July 29, 2021[17], required the inclusion of the applicants self-assigned NAICS Code.  The form specifically advises that: "If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable."  Here, the Appellant self-assigned NAICS Code 445299 on its certified Form 3508.

The AR reflects the Appellant's NAICS Code is 445299 (with 158 employees), which does not meet the established standards for a waiver of the affiliation rules.

In its certified PPP Borrower Application, the Appellant identified eleven affiliated entities.  Later, the Appellant submitted an Affiliation Worksheet (Form 3511) for the same eleven entities and added a twelfth affiliated entity, to-wit: 254 Broome LLC.  The Affiliation Worksheet certifies NAICS Codes and number of employees for all twelve entities, as follows (with the Appellant's NAICS Code and number of employees as certified in the PPP Loan Forgiveness Application Form 3508):

| Affiliated Entity | NAICS Code | # Employees |
|---|---|---|
| EAT Is Owned by Eli Zabar, Inc | 722513 | 80 |
| Eli's Bread (Eli Zabar), Inc | 311812 | 162 |
| Eli's Leasing, Inc | 532490 | 7 |
| Eli's Manhattan Inc | 722511 | 140 |
| EAT Lexington 87 LLC | 722513 | 15 |
| EAT Madison LLC | 722513 | 6 |
| Eli Zabar Bread LLC | 722515 | 7 |
| Eli Zabar's Farm to Market LLC | 445299 | 34 |
| EAT Madison 91 LLC | 722513 | 40 |
| Eat Third 79 LLC | 722513 | 17 |
| 54 Mulberry LLC | 722511 | 19 |
| 254 Broome LLC | 722513 | 6 |
| The Vinegar Factory Inc | 445299 | 158 |

(AR pp. 38 and 415-427).

The Appellant, along with its affiliates, has 691 employees, which exceeds the 500 employee limitation of the CARES Act.  The Appellant asserts that upon application of the CARES Act waiver of the affiliation rules with respect to any affiliated business entity within NAICS category 72, it only has 361 employees.  Of note, the Appellant has not argued for application of SBA's alternative size standards.  The Appellant argues it meets the PPP size standard.

---

[17] https://www.sba.gov/sites/default/files/2021-05/PPP%20-
-%20Forgiveness%20Application%20and%20Instructions%20--%203508%20%285.24.2021%29-508.pdf

JA1493

When SBA was reviewing the Appellant's loan forgiveness application, it also reviewed the individual PPP loans for the Appellant's twelve affiliated entities.  SBA's review found the Appellant certified the NAICS Codes on each of the twelve's PPP Loan Forgiveness Form 3508s, were, as follows:

| Affiliated Entity | NAICS Code |
|---|---|
| EAT Is Owned by Eli Zabar, Inc | 445299 |
| Eli's Bread (Eli Zabar), Inc | 311812 |
| Eli's Leasing, Inc | 812930 |
| Eli's Manhattan Inc | 445299 |
| EAT Lexington 87 LLC | 445299 |
| EAT Madison LLC | 445299 |
| Eli Zabar Bread LLC | 445299 |
| Eli Zabar's Farm to Market LLC | 445230 |
| EAT Madison 91 LLC | 445299 |
| Eat Third 79 LLC | 445299 |
| 54 Mulberry LLC | 445299 |
| 254 Broome LLC | 445299 |
| The Vinegar Factory Inc | 445299 |

(AR p. 441).

The AR reflects all of these entities are affiliated and at the time of applying for their respective PPP loan, none of them meet the established standards for a waiver of the affiliation rules.

The Appellant argues the self-assigned NAICS Codes 445299 for EAT Is Owned by Eli Zabar, Inc, Eli's Manhattan Inc, EAT Lexington 87 LLC, EAT Madison LLC, Eli Zabar Bread LLC, EAT Madison 91 LLC, Eat Third 79 LLC, 54 Mulberry LLC, and 254 Broome LLC do not accurately reflect the actual NAICS Code (primary line of business) for those entities.  The Appellant seeks to re-assign these entities under NAICS Codes category 72, which would qualify them for a waiver of the affiliation rules.  If a waiver is applied to these entities, the Appellant argues it meets the size standards for PPP and loan eligibility/forgiveness is established by the record.

Within PPP, an applicant self-assigns a NAICS Code on the PPP Borrower Application Form 2483 and/or the PPP Loan Forgiveness Application Form 3508.  As such, the Rules of Practice for Appeals From Size Determinations and NAICS Code Designations set forth above "**do not apply to appeals of final SBA loan review decisions or to the PPP**." (Emphasis added).  That means the NAICS Code appeal process generally available within SBA programs is not available to PPP applicants. 13 C.F.R. § 134.1201.

The size status of an applicant for SBA financial assistance, which includes review of affiliation, is determined as of the date the application for financial assistance is accepted for processing by SBA.  For PPP, IFR #1 established this date as the time of filing a PPP Borrower Application Form 2483.  13 C.F.R. § 121.302; and 85 FR 21747.

JA1494

Here, the Appellant's self-assigned NAICS Codes can only be viewed as of the date of the PPP Borrower Application Forms submitted by the Appellant and its affiliated businesses. As the Form 2483 in existence at the time of application did not include a NAICS Code designation, a review of the record is required to determine what NAICS Codes the Appellant and affiliated entities represented as being their primary line of business when submitting the respective loan applications.



there exists no mechanism to appeal or dispute a NAICS Code for a PPP applicant. Where SBA allows the appeal or dispute of an assigned NAICS Code, the same is determined by an SBA contract officer. Within PPP, the applicant makes a self-assignment of a NAICS Code, certifies the choice as representing their primary line of business, and supports the choice through its certified Federal income tax return. Their exists no rationale basis to appeal or dispute ones own choice of primary line of business within PPP. Given the foregoing, neither the Appellant nor any of its affiliated entities meet the requirements for a waiver of the affiliation rules.

The Appellant, along with its affiliated entities clearly reflects the affiliated entity group had 691 employees at the time the Appellant applied for this PPP loan. Further, the AR reflects the Appellant, along with its affiliated entities, exceed the revenue limitations to meet SBA's PPP alternative size standards. The AR clearly reflects the Appellant, along with its affiliated entities do not meet the PPP requirements of a small-business concern. As such, the record reflects the Appellant was and is ineligible for the PPP loan at issue. The final SBA loan review decision made the same conclusion, thus is without error in determining the Appellant was ineligible for this PPP loan.

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including

Docket No. PPP-9911087009

requirement that ineligible borrowers will not receive loan forgiveness). As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact. As such, the final SBA loan review decision is **AFFIRMED**.

## <u>CONCLUSION OF LAW</u>

The Appellant did not meet the small-business concern size standards for PPP and was ineligible for PPP Loan Number 9911087009. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 9911087009.

## <u>ORDER</u>

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision. I direct SBA to process the loan forgiveness request in accordance with this decision.

**SO ORDERED.**

_____

**Brian J. Haring**
U.S. Administrative Law Judge

JA1496

---

### NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1). The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3). Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, _solely within the Administrator's discretion_, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

---

JA1497

# United States Small Business Administration
# Office of Hearings and Appeals

---

**PAYCHECK PROTECTION PROGRAM
APPEAL OF:**

**The Vinegar Factory Inc.**

Petitioner

RE: *PPP Appeal of The Vinegar Factory Inc.,*
SBA No. PPP-9911087009 (2023)

Issued: **April 24, 2023**

Decision No. **PFR-9911087009**

Appearances:

> Theodora McCormick, Epstein, Becker & Green, P.C., for the Appellant.
> Todd Henderson, Attorney for the Small Business Administration.

## RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Record, Request for Reconsideration, and Decision No. PPP-9911087009, the appeal petition of The Vinegar Factory Inc. (Petitioner/Appellant) remains **DENIED**. For the reasons discussed below, Petitioner is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

On April 6, 2020, the Petitioner (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application.

On April 9, 2020, the Petitioner was approved for a PPP loan by JPMorgan Chase Bank, National Association (Lender) in the amount of $1,076,682.00, and having executed a PPP Promissory Note received the loan proceeds.

On July 16, 2021, the Petitioner submitted a PPP Loan Forgiveness Application Form through the Lender.

On July 23, 2021, the Lender determined the Petitioner should receive no loan forgiveness.

On January 10, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Petitioner ineligible for the PPP loan and any subsequent loan forgiveness.

JA1498

On February 9, 2022, the Petitioner filed an appeal arguing the Final SBA Loan Review Decision was clearly erroneous, and requested the Office of Hearings and Appeals (OHA) reverse it, and find the Petitioner eligible for PPP loan forgiveness.

On March 29, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by April 18, 2022, providing for the Petitioner to file an Objection to the same by April 28, 2022, and allowing for SBA to file a Response to the Petition by May 13, 2022.

On July 7, 2022, an Order to Show Cause was issued requiring SBA to file the AR within seven days, seek an extension of the deadline, or provide an argument as to why the matter should not be remanded. On July 14, 2022, SBA provided a written explanation and requested additional time to prepare the AR.

On July 15, 2022, an Amended Notice and Order was issued requiring the filing of the AR by August 29, 2022, providing for the Petitioner to file an Objection to the same by September 8, 2022, and allowing for SBA to file a Response to the Petition by September 16, 2022.

On October 4, 2022, an Amended Notice and Order was issued requiring the filing of the AR by November 15, 2022, providing for the Petitioner to file an Objection to the same by November 25, 2022, and allowing for SBA to file a Response to the Petition by December 9, 2022.

On November 28, 2022, a 2nd Amended Notice and Order was issued requiring the filing of the AR by January 2, 2023, providing for the Petitioner to file an Objection to the same by January 12, 2023, and allowing for SBA to file a Response to the Petition by February 2, 2023.

On January 3, 2023, a Consent Amended Notice and Order was issued requiring the filing of the AR by March 2, 2023, providing for the Petitioner to file an Objection to the same by March 13, 2023, and allowing for SBA to file a Response to the Petition by March 27, 2023.

On January 27, 2023, the AR was filed. The Petitioner did not file an Objection to the AR and SBA did not file a Response to the Petition. The AR was closed on March 27, 2023.

On March 31, 2023, an OHA Initial Decision was issued affirming the final SBA loan review decision.

On April 10, 2023, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Decision No. PPP-9911087009. On April 10, 2023, the undersigned issued a Notice and Order allowing for SBA to file a response to the Request for Reconsideration no later than April 25, 2023. SBA filed a Response on April 20, 2023.

JA1499

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-9911087009 contains clear error of law or fact to allow the Appellant $1,076,682.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

**PPP Loan Eligibility**

Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136)

15 U.S.C. § 636(a)(36)

15 U.S.C. § 632(a)

21 Fed. Reg. 9709-9714, December 7, 1956

13 C.F.R. § 121.105

13 C.F.R. § 121.101

13 C.F.R. § 121.201

P.L. 111-240, the Small Business Jobs Act of 2010, §1344

13 C.F.R. § 121.104

13 C.F.R. § 121.301

13 C.F.R. § 121.106

PAYCHECK PROTECTION PROGRAM LOANS, Frequently Asked Questions (FAQs) [1]

13 C.F.R. § 121.302

85 Fed. Reg. 21747

**PPP Loan Forgiveness**

15 U.S.C. § 636m

SBA Procedural Notice #5000-20077, effective January 15, 2021 [2]

**OHA Appeal**

13 C.F.R. part 134 Subpart L - 13 C.F.R. § 134.1201, et seq.

---

[1] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[2] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

JA1500

## FINDINGS OF FACT AND ANALYSIS

### The CARES Act & EAA – PPP Loan Eligibility

On March 27, 2020, the CARES Act became law. P.L.116-136.  It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1).  SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a).  The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a).  For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(A) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b)  (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

The Petitioner is a kitchen and pastry production facility located at 431 East 9th Street, New York, NY 10028 using NAICS Code 445299.  The Petitioner "*has twelve (12) affiliated entities (the "Eli Zahar Entities"). These entities are a collection of restaurants, wine bars, bakeries, cafe's, one specialty grocery store, one commercial leasing business and one wholesale bread seller. All of the entities (except for Eli's Leasing) were assigned an NAICS code of 445299 (All Other Specialty Food Stores). Eli's Leasing, Inc. was correctly assigned a NAICS code of 532490 (Commercial and Industrial Machinery and Equipment Leasing).*" (AR p. 76 and Petition – Robert Shaloff Certification w/ Exhibits).

JA1501

On April 9, 2020, the Petitioner was approved for a PPP loan by the Lender in the amount of $1,076,682.00, and having executed a PPP Promissory Note received the loan proceeds on April 10, 2020. (AR pp. 17, 50-55, and 239).

## PPP Loan Forgiveness

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification.. The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b), (f), and (g).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(e)(3) and (f).

On July 16, 2021, the Petitioner submitted Form 3508 and Form 3511 (Affiliation Worksheet), along with some documentation and the required certification concerning the validity of expenses. (AR pp. 397-411).

Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2). Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On July 23, 2021, the Lender determined the Petitioner should receive no loan forgiveness. (AR p. 17).

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Petitioner was ineligible for the PPP loan amount received

JA1502

or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On August 6, 2021, SBA notified the Lender it was reviewing the Petitioner's PPP loan. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. (AR pp. 391-392).

On November 30, 2021, SBA requested documentation concerning the PPP loan through the Lender. SBA specifically requested the Petitioner respond to the following SBA/Lender findings: 1) *"Employee size standard exceeds the maximum SBA employee size standard of 500 employees"*; ███████████████████████████████████████████████
███████████████ This information was vital to SBAs review. (AR pp. 393-394).

After review of the Petitioner's loan and responses, SBA found: *"The Borrower/Eli Zabar affiliates have 676 employees. exceeding the 500 SBA employee count threshold. With over twelve affiliates applying for the PPP loans, all entities and in aggregate exceeded SBA's size standards. Based on the information g for the PPP loans. all entities and in aggregate exceeded SBA's size standards. Based on the information in file and that provided by the borrower entities. the family of 12 loans are ineligible. In addition. as per management this loan is to be denied based on Potential ineligible business size. CFR-2020-title13-voll-secl21-104; SBA Table of Size Standards. Under section 3 of the Small Business Act. 15 U.S.C. 632 the applicant did not satisfy the requirements by the number of employees greater than 500."* (AR p. 14).

Further, SBAs Loan Exception Report found the Petitioner: *"received one loan for $1,076,682 for 158 employees. Per loan documentation, the total employee count for all of the borrower's loan group is 676.* ██████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

On January 10, 2022, SBA issued a final loan review decision providing the Petitioner with $0.00 of PPP loan forgiveness, finding the Petitioner *"business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards. Borrower is ineligible due to exceeding size stand for employee count due to several affiliations."* This rendered the Petitioner ineligible for this PPP loan and precluded from loan forgiveness. (AR pp. 17-18).

## OHA Appeal and Petitioner's Argument in Favor of Loan Forgiveness

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. Only a PPP borrower, or its legal successor in interest, has standing to appeal a final SBA loan review decision. The Appellant (now the Petitioner) has the burden of proving all elements of the appeal. Specifically, the Petitioner must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1203; and 13 C.F.R. § 134.1210.

Through written statement, the Petitioner argued in favor of full loan forgiveness, as follows:

The Petitioner has twelve affiliated entities (the "Eli Zahar Entities"). These entities are a collection of restaurants, wine bars, bakeries, cafe's, one specialty grocery store, one commercial leasing business and one wholesale bread seller. All of the entities (except for Eli's Leasing) were assigned an NAICS code of 445299 (All Other Specialty Food Stores). Eli's Leasing, Inc. was correctly assigned a NAICS code of 532490 (Commercial and Industrial Machinery and Equipment Leasing). The majority of the Eli Zahar Entities should have been classified with an NAICS code beginning with 72 (Accommodation and Food Service Industries). When these Eli Zahar Entities were formed, they were inadvertently classified with a NAICS code of 445299, despite the fact that they are all restaurants or other eating places that are primarily engaged in preparing and/or providing food services to patrons who pay after eating or pay before eating (at a counter) or consume specialty snacks on or near the premises where they were purchased. None of the Eli Zabar Entities, on their own, have more than 500 employees.

PPP waives affiliation and excludes from size consideration entities with NAICS category of 72. Application of the correct NAICS Codes, as set forth in the Affiliation Worksheet (Form 3511), renders the Petitioner, along with its affiliates, with less than 500 employees at the time the Petitioner applied for this PPP loan. The Petitioner is therefore eligible for this PPP loan.

The Petitioner and the other Eli Zabar Entities used their PPP loan funds appropriately to fund payroll and otherwise ensure the continuity of their operations during the Covid-19 pandemic consistent with the permitted uses set forth by the SBA. The Petitioner is therefore entitled to PPP loan forgiveness. (*See* Petition of Appellant).

## OHA Initial Decision

The OHA judge will issue his or her decision within 45 calendar days after the close of record, as practicable. 13 C.F.R. § 134.1211(a). The decision will contain findings of fact and conclusions of law, the reasons for such findings and conclusions, and any relief ordered.

On March 31, 2023, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness finding the Appellant ineligible for the PPP loan. This matter is before the undersigned following a Request for Reconsideration filed by the Petitioner alleging errors of law and/or fact.

## Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. 13 C.F.R. § 134.1211(c).

## Errors of Fact Asserted by the Petitioner and SBA Response

The Petitioner asserts an assignment of error in the final SBA loan review decision and the OHA Initial Decision, as follows:

OHA failed to consider the fact that several of its food service affiliates, which were not NAICS code 72 entities at the time of application, were granted reclassification at later dates. Appellant asserts that employees employed by the entities classified as NAICS code beginning with 72 (the "NAICS 72 Entities") should be excluded from the employee count in determining the satisfaction of the 500-employee size requirement. (Petition for Reconsideration).

In Response, SBA provides: "In the present case, the records show that Appellant is a business, which is not classified under NAICS code 72. (AR 166) Accordingly, the 330 employees employed by the affiliated entities with NAICS code beginning with 72, claimed by Appellant in the PFR, must be included in Appellant's size determination. *See* PFR. Therefore, the total number of employees employed by Appellant was determined to be 691 employees, which exceeds the size requirement for eligible borrowers. *See* 15 U.S.C. § 636(a)(36)(B); *see also* Fed. Reg. at 20811."

Further, SBA argues affiliated entities "like Appellant, which do not have the NAICS code beginning with 72, must include all of the employees of all the affiliated entities, including those employed by entities with NAICS code beginning with 72, in their size determination. *See* FAQ for PPP Borrowers and Lenders - Question 24 ("FAQ #24"), available at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders (last visited April 19, 2023)." (SBA PFR Response).

JA1505

**Petitioner's PPP Loan Eligibility and Forgiveness**

SBA denied the Petitioner's loan forgiveness application by holding the documentation used to support the loan and forgiveness application reflect the Petitioner exceeds the small-business concern employee limitation (500 employees) and precludes PPP eligibility.

The Petitioner argues this decision was in error, based upon the argument that several of the affiliated entities should properly be viewed as being associated with NAICS code 72, which excludes the employees of those entities from the small-business concern calculation resulting in the Petitioner meeting the small-business concern 500 employee limitation. Of note, the Petitioner does not challenge OHA's holding that the Petitioner and its affiliated entities also exceeded the revenue limitations to meet SBA's PPP alternative size standards making Petitioner ineligible for the PPP Loan.

In general, SBA provides that: "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described below is sufficient to establish affiliation for applicants for the Paycheck Protection Program." On April 3, 2020, SBA published AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM[3].

Within this policy guidance, SBA's set forth the four tests for affiliation based on control of the entity under 13 C.F.R. § 121.301(f)[4] applicable to participants in the PPP, as follows: 1) Affiliation based on ownership; 2) Affiliation arising under stock options, convertible securities, and agreements to merge; 3) Affiliation based on management; and 4) Affiliation based on identity of interest. 13 C.F.R. § 121.103.

SBA set forth a "Waiver" of the affiliation rules for (1) any business concern with not more than 500 employees that, as of the date on which the loan is disbursed, is assigned a North American Industry Classification System code beginning with 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the SBA; and (3) any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958. Thus, the CARES Act waives (excludes from the employee calculation of affiliated entities) all employees of a PPP applicant operating a "business within NAICS category 72 that has no more than 500 employees." Small Business Act § 7(a)(36)(D)(iv).

---

[3]
https://home.treasury.gov/system/files/136/Affiliation%20rules%20overview%20%28for%20public%29.pdf
[4] A revised 13 C.F.R. § 121.301(f) promulgated by SBA took effect on March 11, 2020, but was revoked by the CARES Act, which restored the previous version of 13 C.F.R. § 121.301(f).

JA1506

Docket No. PFR-9911087009

SBA's basis for denying the Petitioner PPP loan forgiveness is based upon the Petitioner exceeding the 500 employee small-business concern PPP limitation applied to the Petitioner through the affiliation of all related entities. With regard to making this 500 employee size determination, SBA has calculated the number of employees across all affiliated entities and not excluded any employees for which the Petitioner argues NAICS Code 72 should apply and remove those employees from small-business concern size determination.

In terms of loan eligibility, the U.S. Office of Statistical Standards developed the idea of classifying businesses by industry in 1934, after receiving a recommendation from another governmental agency. After four years of discussion, debate and planning, the Office of Statistical Standards released the first list of businesses classified by standardized code in 1938, known as Standardized Industry Classification codes, or SIC codes. The Bureau of the Budget, which absorbed the Office of Statistical Standards, published and printed the first complete edition of SIC codes in 1941. SIC codes served as the primary classification system used by various agencies for nearly 50 years. The U.S. Census Bureau adopted the North American Industry Classification System, or NAICS, in 1997, which slowly began to replace the previous SIC system[5].

In general, no government agency assigns NAICS Codes, as each business self-assigns the code that most closely resembles its industry. In other words, the business will look through the NAICS industry categories and decide on the code that best fits its business. NAICS Codes consist of six digits, include an extra digit for further classification and one extra digit for a country code. The first two digits define the business' economic sector, with each additional digit narrowing the classification.

Every business tax return filed in the U.S. is required to have a principal business activity code, including sole proprietorships, partnerships, S corporations and C corporations. For S Corporations, IRS requires the code be a NAICS Code set forth in Box B **on Form 1120-S. Internal Revenue Manual, Part 3, §** 3.11.217.8, *see* 2019 Instructions for Form 1120-S[6] and 2019 IRS Form 1120-S[7].

Several federal agencies, including the SBA, U.S. Census Bureau and U.S. Department of the Treasury (including the Internal Revenue Service), use NAICS information for economic information and comparisons.

SBA has adopted the use of NAICS Codes for several reasons: (1) Federal Government contracting data and related statistics will be more consistent and comparable with past data for analyzing future small business activity if implementation of the revised table of size standards occurs at the beginning of a new fiscal year; (2) users of size standards, for instance, Federal prime contractors, who may use the size standards for developing their

---

[5] https://www.naics.com/what-is-a-naics-code-why-do-i-need-one/#:~:text=A%20NAICS%20(pronounced%20NAKES)%20Code,related%20to%20the%20US%20Economy.

[6] https://www.irs.gov/pub/irs-prior/i1120s--2019.pdf

[7] https://www.irs.gov/pub/irs-prior/f1120s--2019.pdf

JA1507

subcontracting plans, can have more consistent data to examine the past and future Federal contracting trends; and (3) small business size standards apply to most Federal agencies and their programs involving small businesses.[8] *See* 87 Fed. Reg. 59240 (Sept. 29, 2022).

In general, size standards define the largest size a business can be to participate in government contracting programs and compete for contracts reserved or set aside for small businesses within the programs administered by SBA. SBA size standards vary by industry and are generally based on the number of employees or the amount of annual receipts of the business. SBA determines a concern's primary industry by considering the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets. 13 C.F.R. § 121.107.

For certain SBA programs, a contracting officer designates a NAICS Code for a contract according to 13 C.F.R. § 121.402. Any interested party adversely affected by a NAICS Code designation may appeal the designation to OHA. 13 C.F.R. § 121.1103. For such matters, the ability to appeal and the rules governing those appeals are set forth in 13 C.F.R. § 134.301 et seq.

A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, ***after applying the affiliation rules***, if applicable. (Emphasis added) (SBA PPP FAQ 4).

Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Additionally, a business can qualify for a First Draw PPP Loan as a small business concern if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. (SBA PPP FAQ 2).

The Petitioner submitted to the Lender a PPP Borrower Application Form 2483 on April 6, 2020. The PPP Loan Forgiveness Application Form 2483 effective from April 2, 2020, through June 11, 2020[9], required the Petitioner to certify that it "employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry." Further, the

---

[8] https://www.federalregister.gov/documents/2022/09/29/2022-20513/small-business-size-standards-adoption-of-2022-north-american-industry-classification-system-for

[9] https://www.sba.gov/sites/default/files/2022-02/PPP-Borrower-Application-Form-Fillable.pdf

JA1508

Petitioner was required to certify that the information in the form, along with all other supporting documentation, was "is true and accurate in all material respects." Of note, Form 2483 was later amended to require the inclusion of a PPP applicants NAICS Code. The version of the form submitted by the Petitioner did not require the self-assignment of a NAICS Code.

The Petitioner submitted a PPP Loan Forgiveness Application Form 3508 through the Lender on July 16, 2021. The PPP Loan Forgiveness Application Form 3508 effective from May 24, 2021, through July 29, 2021[10], required the inclusion of the applicants self-assigned NAICS Code. The form specifically advises that: "If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable." Here, the Petitioner self-assigned NAICS Code 445299 on its certified Form 3508.

The AR reflects the Petitioner's NAICS Code is 445299 (with 158 employees), which does not meet the established standards for a waiver of the affiliation rules.

In its certified PPP Borrower Application, the Petitioner identified eleven affiliated entities. Later, the Petitioner submitted an Affiliation Worksheet (Form 3511) for the same eleven entities and added a twelfth affiliated entity, to-wit: 254 Broome LLC. The Affiliation Worksheet certifies NAICS Codes and number of employees for all twelve entities, as follows (with the Petitioner's NAICS Code and number of employees as certified in the PPP Loan Forgiveness Application Form 3508):

| Affiliated Entity | NAICS Code | # Employees |
|---|---|---|
| EAT Is Owned by Eli Zabar, Inc | 722513 | 80 |
| Eli's Bread (Eli Zabar), Inc | 311812 | 162 |
| Eli's Leasing, Inc | 532490 | 7 |
| Eli's Manhattan Inc | 722511 | 140 |
| EAT Lexington 87 LLC | 722513 | 15 |
| EAT Madison LLC | 722513 | 6 |
| Eli Zabar Bread LLC | 722515 | 7 |
| Eli Zabar's Farm to Market LLC | 445299 | 34 |
| EAT Madison 91 LLC | 722513 | 40 |
| Eat Third 79 LLC | 722513 | 17 |
| 54 Mulberry LLC | 722511 | 19 |
| 254 Broome LLC | 722513 | 6 |
| The Vinegar Factory Inc | 445299 | 158 |

(AR pp. 38 and 415-427).

---

[10] https://www.sba.gov/sites/default/files/2021-05/PPP%20-
-%20Forgiveness%20Application%20and%20Instructions%20--%203508%20%285.24.2021%29-508.pdf

The Petitioner, along with its affiliates, has 691 employees, which exceeds the 500 employee limitation of the CARES Act. The Petitioner asserts that upon application of the CARES Act waiver of the affiliation rules with respect to any affiliated business entity within NAICS category 72, it only has 361 employees. Of note, the Petitioner has not argued for application of SBA's alternative size standards. The Petitioner argues it meets the PPP size standard.

When SBA was reviewing the Petitioner's loan forgiveness application, it also reviewed the individual PPP loans for the Petitioner's twelve affiliated entities. SBA's review found the Petitioner certified the NAICS Codes on each of the twelve's PPP Loan Forgiveness Form 3508s, were, as follows:

| Affiliated Entity | NAICS Code |
| --- | --- |
| EAT Is Owned by Eli Zabar, Inc | 445299 |
| Eli's Bread (Eli Zabar), Inc | 311812 |
| Eli's Leasing, Inc | 812930 |
| Eli's Manhattan Inc | 445299 |
| EAT Lexington 87 LLC | 445299 |
| EAT Madison LLC | 445299 |
| Eli Zabar Bread LLC | 445299 |
| Eli Zabar's Farm to Market LLC | 445230 |
| EAT Madison 91 LLC | 445299 |
| Eat Third 79 LLC | 445299 |
| 54 Mulberry LLC | 445299 |
| 254 Broome LLC | 445299 |
| The Vinegar Factory Inc | 445299 |

(AR p. 441).

The AR reflects all of these entities are affiliated and at the time of applying for their respective PPP loan, none of them meet the established standards for a waiver of the affiliation rules.

The Petitioner argues the self-assigned NAICS Codes 445299 for EAT Is Owned by Eli Zabar, Inc, Eli's Manhattan Inc, EAT Lexington 87 LLC, EAT Madison LLC, Eli Zabar Bread LLC, EAT Madison 91 LLC, Eat Third 79 LLC, 54 Mulberry LLC, and 254 Broome LLC do not accurately reflect the actual NAICS Code (primary line of business) for those entities. The Petitioner seeks to re-assign these entities under NAICS Codes category 72, which would qualify them for a waiver of the affiliation rules. If a waiver is applied to these entities, the Petitioner argues it meets the size standards for PPP and loan eligibility/forgiveness is established by the record.

Within PPP, an applicant self-assigns a NAICS Code on the PPP Borrower Application Form 2483 and/or the PPP Loan Forgiveness Application Form 3508. As such, the Rules of Practice for Appeals From Size Determinations and NAICS Code Designations set forth above "**do not apply to appeals of final SBA loan review decisions or to the PPP.**" (Emphasis added). That means the

Docket No. PFR-9911087009

NAICS Code appeal process generally available within SBA programs is not available to PPP applicants. 13 C.F.R. § 134.1201.

The size status of an applicant for SBA financial assistance, which includes review of affiliation, is determined as of the date the application for financial assistance is accepted for processing by SBA. For PPP, IFR #1 established this date as the time of filing a PPP Borrower Application Form 2483. 13 C.F.R. § 121.302; and 85 Fed. Reg. 21747.

Here, the Petitioner's self-assigned NAICS Codes can only be viewed as of the date of the PPP Borrower Application Forms submitted by the Petitioner and its affiliated businesses. As the Form 2483 in existence at the time of application did not include a NAICS Code designation, a review of the record is required to determine what NAICS Codes the Petitioner and affiliated entities represented as being their primary line of business when submitting the respective loan applications.



While other SBA programs allow for the appeal or dispute of an assigned NAICS Code, there exists no mechanism to appeal or dispute a NAICS Code for a PPP applicant. Where SBA allows the appeal or dispute of an assigned NAICS Code, the same is determined by an SBA contract officer. Within PPP, the applicant makes a self-assignment of a NAICS Code, certifies the choice as representing their primary line of business, and supports the choice through its certified Federal income tax return. Their exists no rationale basis to appeal or dispute ones own choice of primary line of business within PPP. Given the foregoing, neither the Petitioner nor any of its affiliated entities meet the requirements for a waiver of the affiliation rules. NAICS Code 72 cannot applied to the Petitioner's loan application or forgiveness application.

The Petitioner, along with its affiliated entities clearly reflects the affiliated entity group had 691 employees at the time the Petitioner applied for this PPP loan. Further, the AR reflects the Petitioner, along with its affiliated entities, exceed the revenue limitations to meet SBA's PPP alternative size standards. The AR clearly reflects the Petitioner, along with its affiliated entities do not meet the PPP requirements of a small-business concern. As such, the record reflects the Petitioner was and is ineligible for the PPP loan at issue. The final SBA loan review decision made the same conclusion, thus is without error in determining the Petitioner was ineligible for this PPP loan.

JA1511

Docket No. PFR-9911087009

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). As the Petitioner is ineligible for the PPP loan at issue, the Petitioner may not receive loan forgiveness. SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well-supported. The AR demonstrates SBA properly applied all applicable laws, regulations, and policy for PPP loans when denying Petitioner's application for loan forgiveness. Therefore, the final SBA loan review decision is not based on clear error of fact or law. Based upon the foregoing, the Petitioner has failed to establish any error of law or fact in the prior decisions. The final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioner did not meet the small-business concern size standards for PPP and was ineligible for PPP Loan Number 9911087009. The Petitioner is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Petitioner remains liable for the PPP Loan Number 9911087009.

## ORDER

For the reasons discussed above, this appeal petition remains **DENIED**.

**SO ORDERED.**

**Brian J. Haring**
U.S. Administrative Law Judge

JA1512

# United States Small Business Administration
# Office of Hearings and Appeals

<table>
<tr><td>

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

Westside Credit Corporation
      Appellant

Appealed from
SBA PPP Loan No. 5679997105

</td><td>

Issued:  May 6, 2022

Decision No. 5679997105

</td></tr>
</table>

## APPEARANCES

D. Mark Dyer, Metairie, LA, on behalf of Westside Credit Corporation.

Tabitha Mangano, Esq., Office of General Counsel, on behalf of the U.S. Small Business Administration, Washington, D.C.

## DECISION

### I.  Introduction and Jurisdiction

On January 13, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding Westside Credit Corporation (Appellant) is ineligible for the PPP loan, thus, loan forgiveness was denied. (AR 13-15[1]).  On January 17, 2022, Appellant filed the instant appeal from that final SBA loan review decision.  Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.  For the reasons discussed *infra*, I affirm the SBA Final Loan Review Decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

### Applicable Law and Policy

The Coronavirus Aid, Relief, And Economic Security Act (CARES Act) (Public Law 116-36) (enacted March 27, 2020), Small Business Act (15 United States Code (USC), Chapter 14A, Section 631 *et seq*)[2], and Administrative Procedure Act (APA) (5 USC, Chapter 5, Section 500 *et seq*) contain the controlling statutes; Title 13 of the Code of Federal Regulations (CFR), Interim Final Rule (IFR) #1 (*Federal Register*, Vol. 85, No. 73, Pages 20811-20817) (effective April 15, 2020), IFR #15 (*Federal Register*, Vol. 85, No. 105, Pages 33010-33015) (effective May 28, 2020), and IFR #20 (*Federal Register*, Vol. 85, No. 124, Pages 38304-38312) (effective March

---

[1] AR refers to the Administrative Record, page numbers listed in the bottom right corner. The Table of Contents page is not part of the AR.
[2] The portion(s) of the CARES Act not amending other laws/acts is codified at 15 USC, Chapter 116, Section 9001 *et seq*.

Docket No. 5679997105

27, 2020) contain the controlling regulations; SBA Standard Operating Procedure, *Lender and Development Company Loan Programs,* (SOP 50 10 5(K)) (effective April 1, 2019) contains applicable policy.

Section 1102 of the CARES Act amends Section 7(a) of the Small Business Act (15 USC §636(a)) to establish the Paycheck Protection Program (PPP) (P.L. 116-36, §1102; *see also* 15 USC §636(a)(36)).

Section 1106 of the CARES Act amends Section 7(a) of the Small Business Act (15 USC §636) to establish PPP loan forgiveness (P.L. 116-36, §1106; *see also* 15 USC §636m).
Covered loan means a loan made under Paycheck Protection Program (PPP) during the covered period (15 USC §636(a)(36)(A)(ii)).

Eligible recipient means an individual or entity that is eligible to receive a covered loan (15 USC §636(a)(36)(A)(iv)).

Except as otherwise provided in paragraph 36 (i.e., 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7(a) of the Small Business Act (i.e., 15 USC §636(a)) (15 USC §636(a)(36)(B)).

For loan forgiveness, the term covered loan means a loan guaranteed under the PPP (15 USC §636(a)(36) (15 USC §636m(a)(1)).

For loan forgiveness, the term covered period means the period –
    (A) beginning on the date of the origination of a covered loan; and
    (B) ending on a date selected by the eligible recipient of the covered loan that occurs during the period –
        (i)     beginning on the date that is 8-weeks after such date of origination; and
        (ii)    ending on the date that is 24-weeks after such date of origination (15 USC §636m(a)(4)(A)-(B)).

For loan forgiveness, the term eligible recipient means the recipient of a covered loan (15 USC §636m(a)(10)).

The purpose of Interim Final Rule #1 (IFR #1) is to implement Sections 1102 and 1106 of the CARES Act (IFR #1, 85 Fed. Reg. Page 20811).

IFR #1 applies to loan applications submitted under the PPP through June 30, 2020, or until available funds are exhausted (IFR #1, 85 Fed. Reg. Page 20811).

Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50, 10 5, Subpart B, Chapter 2, except that nonprofit organizations authorized under the CARES Act are eligible (IFR #1, 85 Fed. Reg. Page 20812).

Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors are not eligible for SBA business loans (pawn shops, although engaged in lending, may qualify in some circumstances) (13 CFR §120.110(b)).

- 2 -

JA1514

The purpose of IFR #15 is to inform borrowers and lenders of SBA's process for reviewing PPP loan applications and loan forgiveness applications (IFR #15, 85 Fed. Reg. Page 33010).

If SBA determines a borrower is ineligible for a PPP loan, SBA will direct the lender to deny the loan forgiveness application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The Administrator has determined to be an eligible recipient entitled to forgiveness under Section 1106(b) of the CARES Act, the borrower must be an "eligible recipient" under 15 USC §636(a)(36)(A)(iv) and rules and guidance available at the time of the borrower's loan application (IFR #15, Para. 1(e), 85 Fed. Reg. Page 33012).

The purpose of IFR #20 is to update the First Loan Forgiveness Rule and First Loan Review Rule following passage of the Flexibility Act (IFR #20, 85 Fed. Reg., Page 38306).

To receive loan forgiveness, a borrower must complete and submit the Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent) to the lender (or the lender servicing the loan) (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

If SBA determines during its review that the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications made in its PPP loan application), the loan will not be eligible for loan forgiveness (IFR #20, Para. 2(a), 85 Fed. Reg., Page 38306).

## II. Background

Appellant applied for a PPP loan on April 3, 2020. (AR 85-87). PPP loan number 5679997105 ("the Loan") was approved by First Horizon Bank (Lender) in the amount of $33,989.00; the Loan was disbursed on April 15, 2020. (AR 2, 91). On May 4, 2021, Appellant submitted a PPP Loan Forgiveness Application requesting forgiveness of the full amount of the Loan. (AR 88). The Lender recommended forgiveness of the full amount. (AR 3, 13-15). On September 7, 2021, SBA informed the Lender that it was undertaking a review of the Loan. (AR 276). The SBA Final Loan Review Decision of January 13, 2022, denied Loan forgiveness, finding Appellant was ineligible to receive the Loan. (AR 13-15).

## Timeliness and Standing

An appeal of a Final SBA Loan Review Decision must be initiated (on the OHA Case Portal) within 30 calendar days after the appellant's receipt of the final SBA loan review decision. 13 CFR §134.1202(a). In this case the Final SBA Loan Review Decision was issued on January 13, 2022 (to the Lender) and received by Appellant on the same date. The appeal was filed in the OHA Case Portal on January 17, 2022, which is within the 30-day time requirement. The appeal is timely.

Only the borrower on a loan, or its legal successor in interest, for which SBA has issued a final SBA loan review decision, has standing to appeal the final SBA loan review decision to OHA. 13 CFR §134.1203. A party may represent itself or be represented by an attorney. A partner may represent a partnership; a member may represent a limited liability company; and an officer may represent a corporation, trust, association, or other entity. 13 CFR §134.208.

Docket No. 5679997105

The borrower is  D. Mark Dyer, authorized representative for Westside Credit Corporation. (Appellant).  The appeal petition on the Portal was signed by D. Mark Dyer. (Dkt. #2[3]).  D. Mark Dyer is the President of this C-Corporation, with 100% ownership. (AR 85-87).  Based on this, I find that there is proper standing to bring the appeal.

On February 17, 2022, I issued a Notice and Order, setting deadlines for this appeal to proceed. (Dkt. #4).  The Administrative Record was filed on March 8, 2022. (Dkt. #5). Appellant did not submit any objections, and the time to object has expired.  The SBA did file a response on April 4, 2022.  (Dkt. #6).  The record closed on April 4, 2022.

### A.  Final SBA Loan Review Decision

On January 13, 2022, SBA issued its final loan review decision finding that Appellant was ineligible for the Loan of $33,989.00; thus, Loan forgiveness was denied.

After review of the documentation provided by the Appellant, SBA concluded that Appellant "is a financial business primarily engaged in lending, investments, or an ineligible business engaged in financing or factoring. The Borrower appears to be in the industry of credit-intermediation (lender) which is an ineligible business type. Borrower appears to be engaged in lending per the document(s):  • Borrower's email dated 1/7/22 (business activities): o "We are indeed a small consumer finance company" ......" We lend funds and collect from working class folks who have been turned down for loans by Bank and Credit Unions etc." • 2019 and 2020 Tax Return – NAICS code 522291 – Consumer Finance/Loans. It is noted a denial notification was sent on 1/3/22, to which the lender supplied the following documents: 2019 and 2019 Tax Return and the Borrower's memo of explanation of business description. After reviewing the documentation, it is determined the borrower is an ineligible business type. It is further noted a full denial notification was sent 1/7/22." (AR 13-15).

### B.  Appeal

On January 17, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous.  Appellant argues:

- Appellant argues that its application for the PPP loan was made pursuant to the terms of the CARES Act, not the SBA 7(a) loan program;  that 13 CFR §120.110 exclusions and SBA business 7(a) provisions are inapplicable.
- Appellant is an eligible entity because any business with less than 500 employees is eligible.
- SBA's interpretation of the PPP requirements is contrary to the intent of the CARES Act.

### III.  Discussion

### A.  Standard of Review

Appellant has the burden of proving all elements of the appeal.  Specifically, Appellant must

---

[3] The docket numbers referred to herein represent the referenced document in the chronological order in which that document was filed on the OHA portal.

JA1516

prove that the final SBA loan review decision is based upon a clear error of fact or law.  13 C.F.R. § 134.1210.

## B.  Analysis

Appellant acknowledges that it is a financial business, primarily in the business of financing or lending.  (AR 272-273, Dkt. #2). In response to SBA's requests for information regarding Appellant's business activity, Appellant replied, "We are indeed a small consumer finance company"  and " Per our tax return our NAICS code is 522291."  ( AR 272-273, Dkt. # 2).  A business code of NAICS 522291 is in the consumer lending group.[4]  The 2019 and 2020 corporate tax returns list this NAICS code,  with the business activity of "CONSUMER FINANCE' and the product or service is "CONSUMER LOANS." (AR 230-246, 290-307, 334-350).

Appellant has not established a clear error of fact regarding the finding that it is a business primarily engaged in financing/lending.  Appellant concedes this is the correct designation.

*Applicability of 13 CFR §120.110, PPP as Part of SBA 7(a) and Congressional Intent*

Appellant has not established there is a clear error of law.  Appellant is precluded from PPP loan eligibility by 13 CFR § 120.110(b), which provides that the following types of businesses are ineligible: (b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances).

If the borrower was not eligible for a PPP loan, then the loan is not subject to forgiveness.  (85 FR 33010, 33012-33013).

Appellant's primary argument is that the CARES Act PPP Loan is not part of the SBA 7(a) business loan program; further, that 13 CFR §120.110 exclusions are inapplicable.  Neither argument is supported by the Act, regulations or policy.

The CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) lending program. (See 85 Fed. Reg. at 20811, recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). Congress confirmed that its placement of the PPP within the Section 7(a) lending program was deliberate, specifying that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)).  One section 7(a) loan program regulation, and therefore, a term and condition of that program, is 13 CFR § 120.110(b), provides that types of ineligible businesses include, "(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)."  This regulation was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program, and neither

---

[4] www.naics.com

- 5 -

JA1517

Docket No. 5679997105

Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

The SBA's first interim final rule (IFR #1), which was posted on the SBA website on April 2, 2020, and published in the Federal Register on April 15, 2020, specifically indicated that "Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, . . . ." (Vol. 85 FR No. 73, 20811 at 20812). Later revisions to IFR #1 also state: "On April 2, 2020, the U.S. Small Business Administration (SBA) posted on its website an interim final rule relating to the implementation of sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act) (published in the Federal Register on April 15, 2020).[5]

Appellant references a portion of the CARES Act to cite that any business with less than 500 employees is eligible for a PPP loan. However, Appellant fails to refer to the implementing IFRs and SBA policy for business loans. IFR#1, Part III.2.a.[6] covers general eligibility factors, only part of this section is what Appellant argues is the sole PPP criteria. (Dkt. #2). Significantly, IFR#1, Part III. b. poses the question, "Could I be ineligible even if I meet the eligibility requirements in (a) above?" The answer is affirmative, and some examples are listed. Even more on point, Part III. c., "How do I determine if I am ineligible? Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible," (id., at 20812). The IFR #1 clearly states that the 7(a) loan exclusions under 13 CFR 120.110 are applicable to the PPP loan program.

Appellant does not meet any exception to 13 CFR §120.110(b). Appellant acknowledges it is primarily in the business of financing or lending. (Dkt. #2, AR 272-273). Nothing in the record indicates any exception is applicable.

Finally, the argument by Appellant that "any business" with less than 500 employees is eligible is misplaced. (Dkt. #2 and #3). Appellant is an ineligible business. Appellant cannot assert eligibility by citing it falls within distinct, selected parts of the CARES Act. The implementing rules state, "Section 1102 of the Act temporarily adds a new product, titled the ''Paycheck Protection Program,'' to the U.S. Small Business Administration's (SBA's) 7(a) Loan Program."[7] Congress authorized the SBA to streamline the requirements of the regular 7(a) loan program. Although the PPP loan process was streamlined and some additional entities became eligible, not every 7(a) requirement was amended, expanded, or deleted, only where "otherwise provided."[8] The CARES Act and regulations must be read as a whole.[9] Appellant's argument would allow any borrower to claim PPP loan eligibility simply by meeting the requirements of a select portion/paragraph of the CARES Act, which would undermine the purpose of the Act, and SBA's ability to administer the Act in the manner directed by Congress. Accordingly, SBA

---

[5] Vol. 85 FR, No. 118, 36717, confirming that the interim final rule of the April 15, 2020, Federal Register had been posted on the SBA website on April 2, 2020. This IFR was published on June 18, 2020.
[6] IFR #1, 85 Fed. Reg. Page 20812, "a. Am I eligible?"
[7] IFR #1, 85 Fed. Reg. Page 20811.
[8] Except as otherwise provided in paragraph 36 (i.e., 15 USC §636(a)(36)), the Administrator may guarantee covered loans under same terms, conditions, and processes as a loan made under Section 7(a) of the Small Business Act (i.e., 15 USC §636(a)) (15 USC §636(a)(36)(B)).
[9] The United States Supreme Court has determined, "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (*Davis v. Mich. Dept. of Treasury*, 489 US 803, 809 (1989).

- 6 -

JA1518

applied the Act, regulations, and policy to find a business that primarily engages in financing/lending is ineligible for a PPP loan. 13 CFR §120.110; SOP 50 10 5(k), Subpart B, Chapter 2; IFR #1, Vol. 85 FR No. 73, 20811 at 20812.

In essence, Appellant challenges the validity of SBA's interpretation the CARES Act, SBA SOP, and the First Interim Final Rule for the PPP ("IFR #1"), which specifically applied 13 C.F.R. § 120.110(b) to PPP loans. (Dkt. #2). However, OHA adjudicators are bound by SBA regulations and its' interpretation of the governing statutes and regulations. The SBA response covers this issue in great detail. (Dkt. #6).

As an Administrative Judge, I am an employee of the SBA and bound to follow the rules of the agency. The Department of Education, Office of Legal Counsel issued an opinion cited by OHA in *Family Choice*[10] (a PPP decision) which provides the rationale for why ALJs are bound by agency regulation and interpretation. (Dkt. #6). That opinion states, in part, that, "Administrative law judges have no constitutionally based judicial power, see *Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them." The APA explicitly provides that the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency at 5 U.S.C. § 556(c).

The IFR #1 published by SBA reflects what the Administrator intended and provides for consistent results, as the rule applies to all entities. OHA is not the proper forum to challenge the validity of SBA's interpretation of the Act and regulations.

*PPP Loan Forgiveness*

Appellant does not dispute that it is a consumer finance company (AR 272-273, 2019 and 2020 tax returns, and Dkt. #2). Appellant is an ineligible recipient of a PPP loan per 13 CFR §120.110(b). SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). Therefore, loan forgiveness is denied.

Appellant has not satisfied its burden of proof to demonstrate that the final SBA loan review decision was based on clear error of fact or law. The SBA final loan review decision is AFFIRMED.

## C.  Conclusion

The final SBA loan review decision is not based on clear error of fact or law, it is affirmed.

---

[10] Attached as Exhibit A.  *Family Choice Financial*, Docket No. PPP-8323747201, at 12 (citing Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings, 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–2, https://www.justice.gov/file/20131/download.)

Docket No. 5679997105

Appellant was ineligible for the PPP loan it received.

Appellant is ineligible for PPP loan forgiveness.

This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c), this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R. § 134.1211. In accordance with the regulations, you may file a request for reconsideration within 10 calendar days after service of the Judge's decision under 13 C.F.R. § 134.1211(c)(1). You can serve your petition via email to OHAPPPInquiries@sba.gov. It is borrower's responsibility to review the rules and procedures. A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).

*Joan Knight*
JOAN KNIGHT
Administrative Judge

- 8 -

**United States Small Business Administration**
**Office of Hearings and Appeals**

| | |
|---|---|
| PETITION FOR RECONSIDERATION | Issued: September 13, 2022 |
| SMALL BUSINESS ADMINISTRATION | Docket No. PFR-5292997209 |
| Petitioner | |
| *Appeal of Windsor Court Hotel Partners LLC,* SBA No. PPP-5292997209 | |

APPEARANCES

Tabitha Mangano, Esq., Agency Representative, District of Columbia, for Petitioner U.S. Small Business Administration.

Edward Bukaty, Esq. for Appellant, Windsor Court Hotel Partners, LLC.

DECISION

I.  Introduction and Jurisdiction

On or about August 26, 2022, the U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) received a Petition For Reconsideration (PFR) in the above-captioned matter from Petitioner, the Small Business Administration. The PFR seeks OHA's reconsideration pertaining to a Paycheck Protection Program (PPP) Loan No. 5292997209 and OHA's initial decision, denying the appeal of the same PPP Loan No.

OHA has jurisdiction to decide this PFR. *See* 13 C.F.R. Part 134, Subpart L.

II.  Background

A.  Cares Act 2020

On March 25, 2020, in response to the economic distress caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, 134 Stat. 281 (2020). Among other provisions, the CARES Act established the PPP at Section 1102. The Program lends money to eligible small businesses to assist them in

1

JA1521

covering expenses and making payroll for their workers to keep them employed during the pandemic. If the loan funds are used for certain specified expenses, the borrowers can receive full forgiveness of the loan.

     B.    <u>PPP Loan Application, Forgiveness, and Appeal</u>

On or about March 6, 2021, Lender disbursed PPP Loan Number 5292997209 ("PPP Loan") in the amount of $2,000,000.00.

On or about April 29, 2021 Windsor Court Hotel Partners LLC (hereinafter referred to as "Windsor Court") executed a PPP Loan Forgiveness Application Form 3508 requesting forgiveness for the full amount of the loan (Administrative Record, also referred to herein as "AR") pp. 2043-2045).

On or about April 11, 2022, SBA issued a final SBA loan review decision ("FLRD"), denying Windsor Court forgiveness because it found Windsor Court was ineligible to receive a PPP loan. SBA concluded ineligible payroll costs were used to calculate the PPP loan amount (AR 19-20).

On May 3, 2022, Appellant filed an appeal with OHA. On June 20, 2022, OHA issued a Notice and Order. On August 22, 2022, OHA filed its Initial Decision granting the appeal and reversing the Final Loan Review Decision. SBA now submits its Petition For Reconsideration seeking the reversal of the Initial Decision.

     C.    <u>OHA's Initial Decision</u>

       The Undersigned Administrative Judge found that Appellant had established that the final SBA loan review decision was based on a clear error and thereby granted the appeal and reversed the FLRD.

     D.    <u>SBA's PFR</u>

       The SBA argues that the Initial OHA Decision is erroneous and should be reversed because ALJs are bound by the SBA's regulations and SBA's interpretation of its governing statutes and regulations.

On August 26, 2022, SBA timely filed its petition for reconsideration within the ten (10) day requirement.

III.    <u>Analysis</u>

   In its decision, SBA found SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:

<div align="center">2</div>

JA1522

After review of the documentation provided, the SBA concludes that the borrower did not have any eligible payroll cost at the time of loan application. When reviewing the loan origination calculation sheet, it is noted that ineligible payroll costs were utilized to calculate the PPP Loan Amount. Per IFR #1 – Paycheck Protection Program (section III.2.e-f); lenders are required to calculate the applicant max loan amount utilizing IRS forms. Utilizing the 2020 IRS 1065 Partnership Tax Return report, a ███████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████ Resulting in a maximum eligible loan amount of $0.00, which is 2.5 times the average monthly payroll.

Windsor Court owns the Windsor Court Hotel and uses workers who are technically employed by a management company, known as Aimbridge Hospitality (hereinafter referred to as "Aimbridge") to operate the Hotel. Windsor Court has a contract/Management Agreement with Aimbridge by which Windsor Court pays all of the payroll costs associated with the employment of Hotel employees.

The key issue in this case is the definition of "Employee". The term "Employee" is addressed when computing size determinations (i.e. for number of employees) and means any full-time, part-time or any other basis (emphasis added). 15 USC Section 636(a)(36)(D)(v)). SBA shall consider the totality of the circumstances. 13 C.F.R. § 121.106(a).

 The SBA argues that these workers are independent contractors and therefore cannot be included in the payroll costs of Windsor Court. SBA further argues that Aimbridge is not a PEO.

The SBA has issued its own guidance in this area with its Frequently Asked Questions, dated July 29, 2021.  Question No. 10 reads as follows:

10. Question:

What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?

 Answer:

SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer  Identification Number (EIN) of the PEO or other payroll provider. In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation. Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form

3

941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes. In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO.

The SBA Petition For Reconsideration argues that OHA made a clear error of fact and law in the Initial Decision by determining that the Management Agreement constituted a PEO Agreement and by concluding that Aimbridge is a PEO (Professional Employer Organization), and thereby misinterpreted the SBA Frequently Asked Question, #10.

Windsor Court has recently filed amended tax returns in an attempt to simplify and clarify this issue.  The fact of the matter is that Windsor Court incurred payroll costs to operate its Hotel. The Manager, Aimbridge, technically hired the employees and was paid pursuant to the contract with Windsor Court.  Aimbridge did not and could not attempt to apply for a PPP loan for itself and claim the employee cost as payroll expenses.  Contrary to SBA's assertion, these employees were not independent contractors.  They were employed by Aimbridge to perform work at Windsor Court and their work is controlled by Aimbridge.

SBA argues that Aimbridge is not a PEO and relies upon IRS definitions of independent contractors. Even if this was correct, Aimbridge can be considered a "similar  payroll provider" as set forth in SBA's FAQ #10.

In light of the above, and considering the totality of the circumstances, I find that the leased employees are includable as payroll costs of the business concern (Windsor Court) and that the payroll costs associated with the leased workers is attributable to Windsor Court, who incurred their expense and not the payroll provider/PEO. Therefore, as noted in SBA FAQ #10, these costs are includible in Windsor Court's maximum loan calculation and would not be includable in any payroll costs of Aimbridge if that entity were to apply for a PPP loan.

### Conclusion

For the foregoing reasons, the Petitioner, the SBA, has not met its burden of proof that the Initial OHA Decision was erroneous and based upon a clear showing of an error of fact or law material to the decision.

Therefore, the instant PFR is **DENIED**. 13 C.F.R. § 134.1211(c). Unless the SBA Administrator elects to review this decision pursuant to 13 C.F.R. § 134.1211(c)(3) & (d), OHA's decision on the request for reconsideration is a reconsidered initial OHA decision and becomes the SBA's final decision 30 calendar days after its service. *See* 13 C.F.R. § 134.1211(c).

JA1524

*Michael Breton*

MICHAEL BRETON
Administrative Judge

5

JA1525

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

William C. Smith & Co., Inc.

      Appellant

Appealed from
SBA PPP Loan Number
7310038410

Issued: December 9, 2022

Decision No. PPP-7310038410

### APPEARANCES

Daniel Moreno, CFO, Appellant-Borrower, Washington, DC, 20003.

Juan Romero-Sanchez, Attorney for SBA.

### DECISION

## I. Introduction and Jurisdiction

On February 15, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding William C. Smith & Co., Inc. (Appellant) is ineligible for the PPP Loan received. On February 28, 2022, Appellant filed the instant appeal from that final SBA loan review decision. Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find Appellant is eligible for PPP loan forgiveness. For the reasons discussed *infra*, I deny the appeal and affirm the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

## II. Background

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L. 116-136 (March 27, 2020). Per its NAICS Code (531311), Appellant is a Residential Property Management company in Washington, D.C. *See* Administrative Record (AR) at 1 (Docket #8). PPP loan number 7310038410 ("the Loan") was approved on February 11, 2021, and disbursed to Appellant by Lender on or about February 15, 2021, in the amount of $9,026,082.00. *See* Final Loan Review Decision (FLRD) (Docket #1); (AR 1, 1973). On September 29, 2021, Appellant executed a PPP Loan Forgiveness Application requesting forgiveness of the full amount of the Loan. (AR 1965-72). On October 6, 2021, SBA notified the Lender that the Loan had been selected for SBA review and requested additional documentation. (AR 1956-57). On two (2) separate occasions, SBA requested, through the Lender, specific documents and information from Appellant to address, *inter alia*, the ineligibility of certain subsidiaries of Appellant and the need to recalculate Appellant's maximum loan forgiveness based on the Alternative

JA1526

7310038410

Size Standard. October 29, 2021 (AR 1958-59); November 12, 2021 (AR 1960-61).

The Appeal was filed on February 28, 2022, along with the Final SBA Loan Review Decision (FLRD). *See generally* Appeal Petition (Docket #2); FLRD (Docket #1). On April 5, 2022, OHA issued the Notice and Order for, *inter alia*, SBA to file the Administrative Record. *See* William C. Smith & Co., Inc. (Docket #3). After SBA twice filed a motion to extend the deadline to file the AR (Docket #4, 6) and OHA granted those motions (Docket #5, 7), SBA timely filed the AR on August 17, 2022. *See* Administrative Record (Docket #8). Appellant did not object to the AR filed by SBA. These foregoing documents constitute the record from which this decision was determined.

## A. Final SBA Loan Review Decision

On February 15, 2022, SBA issued its final loan review decision finding that Appellant was ineligible for the PPP Loan received.

SBA has determined that the borrower was ineligible for the PPP loan amount received. The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount.

It is verified that the borrower received an ineligible loan amount, due to a miscalculation of eligible payroll at loan origination. Here is the eligible loan amount calculation: A review of the 2019 payroll reports confirms wages in the amount of $32,799,517 with a reduction for Wages Paid over $100K per Annum of $7,853,130.62. Employer paid health benefits total $2,672,936 and retirement benefits totaled $203,603. The 2019 State & Local Taxes total $264,196. The 2019 eligible payroll costs total $28,097,121.40, resulting in a maximum loan amount of $5,851,483.63 which is 2.5 times monthly payroll.

It appears the discrepancy with the original disbursed loan calculation was inclusion of payroll for WCS Properties, Dunkin Maxwell and JETU which are deemed ineligible since these businesses are organized as passive entities.

(AR 23-24); Docket #1.

## B. Appeal

On June 20, 2022, Appellant filed the instant appeal arguing the final SBA loan review decision is clearly erroneous.

Per its petition, Appellant's arguments are as follows:

We are appealing the decision to not include the payroll for WCS Properties, Dunkin Maxwell and JETU in the forgiveness amount calculated for William C. Smith & Co., Inc. (the applicant). We believe that the interpretation of the information we provided led to an incorrect conclusion that these entities produce passive income. We will explain in the paragraphs that follow; the relationship between these entities and the applicant, what each entity does and confirm the NAICS code used and how it applies to the entity.

2

7310038410

WCS Properties is the property management company for the applicant. It provides property management services for both related and 3rd party companies for a fee. Employees of this company are located at the property locations and in the corporate office depending on position. The NAICS code that was listed on the application for this entity was 531110 but should have been 53130 (managing real property for others).[1] We believe this led to an incorrect conclusion that this is a passive entity.

Dunkin Maxwell and JETU are both entities wholly owned by the applicant, that own real estate and lease space to tenants. They are actively managed and operated by the applicant on a day-to-day basis. The NAICS code that was listed on the application for these entities was 531110 (lessors of residential buildings). We believe this led to an incorrect conclusion that these entities produced only passive rental income while they are actively managed and operated.

Based on the information provided, we believe that William C. Smith & Co., Inc. should receive full forgiveness of their SBA loan amount of $9,026,082. This SBA loan covered 307 staff employed by WCS Properties, Dunkin Maxwell and JETU.

Docket #2.

## C. SBA Arguments

Prior to issuing its FLRD, the SBA recalculated Appellant's maximum loan amount based on the determination that three (3) of its subsidiaries were ineligible businesses organized as passive entities. *See* (AR 1975-1979, 1980-2011); *see also* (AR 23-24); Docket #1.

At the end of that recalculation, the loan reviewer issued this statement in support of SBA's conclusion as part of its review summary:

I agree with the recommendation for partial approval. WCS Properties, Inc, Dunkin Maxwell, Inc. and Jetu, Inc. have a NAICS code of 531110 indicating a passive business. Parent company is involved in property management and development. Upon review of the 2019 financial statements total income for those entities is primarily from gross rents. Removing those entities when calculating the loan amount results in a partial approval.

(AR 17, 2010).

Shortly after, SBA added the following comment to its review summary:

We are in concurrence with the reviewer's recommendation of partial forgiveness. The reviewer identified that some of the businesses attached to William C. Smith Inc had a NAICS code of 531110 which corresponds to a passive business, which is ineligible for PPP. Therefore, the following businesses were removed form [sic] the PPP loan payroll calculations: WCS Properties Inc, Dunkin Maxwell Inc. and Jetu Inc.

---

[1] Appellant is likely referring to NAICS Code 53131 (Real Estate Property Managers), which is defined as an industry that "comprises establishments primarily engaged in *managing real property for others*." https://www.naics.com/naics-code-description/?code=53131 (emphasis added).

3

JA1528

7310038410

Gross wages in the amount of $32,799,517 were confirmed from payroll reports and acceptor calculator uploaded. Total wages that exceeded 100k annually, were reduced by $7,853,130.62. Fringe benefits for health were confirmed at $2,672,935.63, retirement at $ 203,602.60, and SUTA at $264,196.00. The 2019 total payroll cost equals $28,087,121.40, producing a maximum eligible loan of $5,851,483.63, which is 2.5 times the average monthly payroll. When evaluating payroll documentation, partial forgiveness of eligible loan amount is justified.

(AR 16).

## III. <u>Discussion</u>

### A. <u>Standard of Review</u>

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

### B. <u>Analysis</u>

1. Authority of an SBA OHA Judge

In its June 21, 2018, opinion in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018), the United States Supreme Court held that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" under the Appointments Clause of the U.S. Constitution, and are not mere employees.

The Supreme Court has recognized that the role of a federal Administrative Law Judge (ALJ) is "functionally comparable" to that of an Article III judge. An ALJ's powers are often, if not generally, comparable to those of a trial judge: The ALJ may issue subpoenas, rule on proffers of evidence, and engage in other like legal filings and procedural undertakings.

However, it should be noted that an ALJ has no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. *See,* e.g., 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir.), cert, denied, 493 U.S. 813 (1989); *Mullen v. Bowen*, 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services*, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); *Goodman v. Svahn*, 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc. v. Heckler*, 594 F. Supp. 1132, 1141 (D.D.C. 1984); *cf. D'Amico v. Schweiker*, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, I have no authority to question or decide the validity or constitutionality of an SBA regulation or policy. Rather, my role is to determine whether the adopted

4

7310038410

regulations and policies have been appropriately applied to the facts of the case. I also note that neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential. 13 CFR §134.1212.

2. Findings and Decision

For the following reasons, I deny the appeal and affirm the final SBA loan review decision.

I agree with SBA and find that the provisions of 13 CFR § 120.110(c) are applicable to PPP loans, and that Congress so intended. I note that the applicability of the limitations contained in 13 CFR § 120.110 was published on the SBA's and Treasury's websites on April 2, 2020, in the form of SBA's First Interim Final Rule (IFR). The First IFR, which was effective on April 15, 2020, well before Appellant's application submission, advised all PPP lenders and Appellants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and Appellants, "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. 20811 at 20812 (IFR). Pursuant to SBA's SOP 50 10 5(K) Subpart B, Chapter 2, section III.A.3.c, "Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible."

Furthermore, per Addendum A to its Borrower Application Form, Appellant's NAICS Code, the classification of businesses by primary type of economic activity, for the three subsidiaries in question is listed as 531110. (AR 1088-1094). That code is titled "Lessors of Residential Buildings and Dwellings" and is described as follows:

> This industry comprises establishments primarily engaged in acting as lessors of buildings used as residences or dwellings, such as single-family homes, apartment buildings, and town homes. Included in this industry are owner-lessors and establishments renting real estate and then acting as lessors in subleasing it to others. **The establishments in this industry may manage the property themselves or have another establishment manage it for them**.

https://www.naics.com/naics-code-description/?code=531110 (emphasis added). Appellant's Application Form, which included Addendum A, was initialed and signed by an authorized representative of Appellant and attests to the accuracy and truthfulness of its contents. (AR 1089). For that reason, in its loan review summary, SBA refers to these subsidiaries as businesses organized as passive entities as evidenced by Appellant's own descriptive NAICS Code 531110. (AR 16, 17, 19, 1959, 2010, 2028).

However, in its appeal letter, Appellant references multiple "incorrect conclusions" that it appears, albeit implicitly, to attribute to SBA. Docket #2 at 1. It would seem the real source of these conclusions is the NAICS Code given to the subsidiaries by Appellant, not to mention Appellant's own words: "Dunkin Maxwell and JETU are both entities wholly owned by the applicant, **that own real estate and lease space to tenants**." *Id*. (emphasis added).

It is clear from a review of SBA's notes found in the AR that SBA's decision was heavily influenced by the NAICS Code 531110 appearing in the PPP-related filing. (AR That code is alleged to be wrong in the initial appeal letter filed by Appellant. Docket #2.

JA1530

7310038410

That code was selected by Appellant as best describing its subsidiaries' business activities. SBA is entitled to rely on Appellant's own understanding of its subsidiaries' primary business activities unless there is objective proof that is incorrect. No such proof has been provided.

It is important to note that Congress placed the PPP under Section 7(a) of the Small Business Act, making the SBA the agency entrusted to administer the Program. *See* CARES Act § 1102(a) (adding Paragraph (36) to 15 U.S.C. § 636(a)). Section 7(a) loans are the SBA's main program for helping small businesses. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020). Through the CARES Act, Congress authorized the SBA to guarantee PPP loans "under the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

As cited above, one section 7(a) loan program regulation (and therefore, a term and condition of that program) is 13 CFR § 120.110(c), which provides that "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds" are ineligible for SBA 7(a) loans. The "acquired or improved with the loan proceeds" language in 120.110(c) is included in the regulation because that is a typical use of 7(a) proceeds. SBA's Standard Operating Procedure explains that such language is not determinative of the applicability of the purpose of the regulation, which is to exclude passive business engaged in owning or purchasing real estate and leasing. SBA policy issued on this regulation explains that "[b]usinesses that are primarily engaged in **owning or purchasing real estate and leasing it for any purpose are not eligible**." SOP 50 10 5(K) Subpart B, Chapter 2, section III.A.3.c (emphasis added).

For PPP loan purposes, the phrase "passive businesses" is used in 13 CFR 120.110(c) and further explained in SOP 50 10 5(K) Subpart B, Chapter 2, section III.A.3.c (as discussed above). Active management is not a consideration. A business is considered passive simply because it is engaged in owning and leasing real estate.

Moreover, I find that when Congress gave the SBA rulemaking power directly related to the PPP, specifying that SBA "shall issue regulations to carry out this title," this rulemaking power included the ability of SBA to make pre-existing rules applicable to the PPP. I find that SBA did just that, with the announcement that the eligibility exclusions in 13 CFR § 120.110 were applicable to the PPP, which announcement was published on April 2, 2020 (on the SBA's and Treasury's websites). Correspondingly, I find that 13 CFR § 120.110 and its accompanying SOP are both legally and factually applicable to Appellant and serves to bar Appellant's three enumerated subsidiaries from eligibility for a PPP loan, and similarly the loan may not be fully forgiven.

SBA has retained the application of 13 C.F.R. § 120.110 and the SOP throughout the duration of the PPP. In the recent case of *Springfield Hosp., Inc. v. Guzman*, 2022 U.S. App. LEXIS 6741 the application of the Section 7(a) loan rules, including Rule 120.110 and the accompanying SOP, has been approved ("Rather than establishing the PPP as a standalone program, the CARES Act places the PPP under Section 7(a) of the Small Business Act, providing that the SBA may guarantee covered PPP loans under the same terms, conditions, and processes as other Section 7(a) loans." 15 U.S.C.S. § 636(a)(36)(B)).

Lastly, as noted *infra*, SBA points out that, "[u]pon review of the 2019 financial statements, total income for those entities is primarily from gross rents." (AR 17, 2010);

6

7310038410

*see also* (AR 768-69). In fact, the percentage of total income from gross rents of Dunkin Maxwell ($2,895,425/$2,897,489) and JETU ($5,012,621/$5,037,074) are virtually 100%. These percentages are highly indicative of income earned from passive entities.

Appellant's three subsidiaries referenced in the FLRD are clearly ineligible passive entities. Therefore, Appellant is eligible only for the recalculation of its maximum PPP loan amount and for its corresponding partial forgiveness.

C.  <u>Conclusion</u>

For the foregoing reasons, I find that Appellant has not established that SBA's final loan review decision was clearly erroneous in fact or in law. Therefore, I DENY the appeal and AFFIRM the final SBA loan review decision.

This is the Initial Decision rendered by OHA. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at <u>https://appeals.sba.gov</u>, or unless the SBA Administrator elects to review this decision per 13 C.F.R. § 134.1211(d), this decision shall become the final decision of SBA 30 calendar days after its service. *See* 13 C.F.R. § 134.1211(b).

It is the borrower's responsibility to review the rules and procedures. A request for reconsideration must clearly show an error of fact or law material to the initial decision. 13 C.F.R. § 134.1211(c)(1).


IT IS SO ORDERED.


*Raul Pardo*
RAUL PARDO
Administrative Judge

7

JA1532

This loan is being referred for further action by the SBA because of an unresolved automated screening alert(s) and/or flag(s) that indicate a potential eligibility issue only. These loans may be subject to a manual fraud review by Guidehouse post the completed eligibility review consistent with the risk prioritization process.

JA1533