APPEAL,CLOSED,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:23–cv–00614–BAH</u>
### *Internal Use Only*

| | |
|---|---|
| GORDON COLLEGE v. SMALL BUSINESS ADMINISTRATION et al | Date Filed: 03/06/2023 |
| Assigned to: Judge Beryl A. Howell | Date Terminated: 05/29/2025 |
| Cause: 05:0701 Judicial Review of Agency Decision | Jury Demand: None |
| | Nature of Suit: 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **GORDON COLLEGE** | represented by | **John Matthew Szymanski** |
| | | GAMMON & GRANGE, P.C. |
| | | 1945 Old Gallows Road |
| | | Suite 650 |
| | | Vienna, VA 22182 |
| | | 703–761–5030 |
| | | Email: jms@gg–law.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Scott J. Ward** |
| | | GAMMON & GRANGE, P.C. |
| | | 1945 Old Gallows Road |
| | | Suite 650 |
| | | Vienna, VA 22182 |
| | | 703–761–5012 |
| | | Email: sjw@gg–law.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **John R. Flores , Sr.** |
| | | GAMMON & GRANGE, PC |
| | | 1945 Old Gallows Road |
| | | Suite 650 |
| | | Vienna, VA 22182 |
| | | 703–761–5007 |
| | | Fax: 703–761–5021 |
| | | Email: JRF@GG–law.com |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES SMALL BUSINESS ADMINISTRATION** | represented by | **Bonnie Devany** |
| | | Department of Justice, Federal Programs |

Branch
1100 L Street NW
Washington, DC 20005
202−616−8101
Email: bonnie.e.devany@usdoj.gov
*TERMINATED: 04/14/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch
1100 L St. NW
Washington, DC 20530
202−616−8488
Email: Indraneel.Sur@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ISABELLA CASILLAS GUZMAN**
*in her Official Capacity as Administrator*
*of the Small Business Administration*

represented by **Bonnie Devany**
(See above for address)
*TERMINATED: 04/14/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES OF AMERICA**

represented by **Bonnie Devany**
(See above for address)
*TERMINATED: 04/14/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2023 | 1 | COMPLAINT *and Petition for Judicial Review* against ISABELLA CASILLAS GUZMAN, SMALL BUSINESS ADMINISTRATION, UNITED STATES ( Filing fee $ 402 receipt number ADCDC−9905519) filed by Gordon College. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Flores, John) (Attachment 1 |

| | | |
|---|---|---|
| | | replaced on 3/7/2023) (zrtw). (Entered: 03/06/2023) |
| 03/07/2023 | | NOTICE OF ERROR re 1 Complaint; emailed to JRF@GG–law.com, cc'd 0 associated attorneys –– The PDF file you docketed contained errors: 1. Missing summonses–government. When naming a government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue., 2. No signature. Please file the signed document using the event Errata. All filings must have an original signature or *'/s/ Attorney Name'* to represent an electronic signature of the filer., 3. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zrtw, ) (Entered: 03/07/2023) |
| 03/07/2023 | 2 | ERRATA *COMPLAINT and Petition for Judicial Review* by GORDON COLLEGE re 1 Complaint,. (Flores, John) (Entered: 03/07/2023) |
| 03/07/2023 | | Case Assigned to Chief Judge Beryl A. Howell. (zrtw) (Entered: 03/07/2023) |
| 03/07/2023 | 3 | REQUEST FOR SUMMONS TO ISSUE *AS TO ALL DEFENDANTS* by GORDON COLLEGE filed by GORDON COLLEGE.(Flores, John) (Entered: 03/07/2023) |
| 03/09/2023 | 4 | STANDING ORDER. Signed by Chief Judge Beryl A. Howell on March 9, 2023. (lcbah4) (Entered: 03/09/2023) |
| 03/09/2023 | 5 | SUMMONS (3) Issued Electronically as to ISABELLA CASILLAS GUZMAN, UNITED STATES SMALL BUSINESS ADMINISTRATION and U.S. Attorney. (Attachment: # 1 Notice and Consent)(zed) (Entered: 03/09/2023) |
| 03/14/2023 | 6 | NOTICE of Appearance by John Matthew Szymanski on behalf of All Plaintiffs (Szymanski, John) (Main Document 6 replaced on 3/14/2023) (zjm). (Entered: 03/14/2023) |
| 03/14/2023 | 7 | NOTICE of Appearance by Scott J. Ward on behalf of GORDON COLLEGE (Ward, Scott) (Entered: 03/14/2023) |
| 06/05/2023 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/5/2023. Answer due for ALL FEDERAL DEFENDANTS by 8/4/2023. (Ward, Scott) (Entered: 06/05/2023) |
| 06/06/2023 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES SMALL BUSINESS ADMINISTRATION served on 6/6/2023 (Ward, Scott) (Entered: 06/06/2023) |
| 06/06/2023 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ISABELLA CASILLAS GUZMAN served on 6/6/2023 (Ward, Scott) (Entered: 06/06/2023) |

| 06/07/2023 | 11 | SUMMONS (1) Issued Electronically as to U.S. Attorney General. (zed) (Entered: 06/07/2023) |
|---|---|---|
| 07/25/2023 | 12 | NOTICE of Appearance by Bonnie Devany on behalf of All Defendants (Devany, Bonnie) (Entered: 07/25/2023) |
| 07/25/2023 | 13 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed Order)(Devany, Bonnie) (Entered: 07/25/2023) |
| 07/26/2023 | | MINUTE ORDER (paperless) GRANTING the government's 13 Unopposed Motion for Extension of Time, and DIRECTING the government to answer or otherwise respond to plaintiff's 1 Complaint by August 25, 2023. Signed by Judge Beryl A. Howell on July 26, 2023. (lcbah4) (Entered: 07/26/2023) |
| 07/27/2023 | | Set/Reset Deadlines: Answer to the Complaint due by 8/25/2023. (ztg) (Entered: 07/27/2023) |
| 08/10/2023 | 14 | Joint MOTION for Order *Regarding Amendment of and Response to Complaint* by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed Order)(Devany, Bonnie) (Entered: 08/10/2023) |
| 08/23/2023 | | MINUTE ORDER (paperless) GRANTING the parties' 14 Joint Motion Regarding Amendment of and Response to Complaint; DIRECTING plaintiffs to file any amended complaint by September 1, 2023; and DIRECTING defendants to answer or otherwise respond to plaintiffs amended complaint by October 2, 2023. Signed by Judge Beryl A. Howell on August 23, 2023. (lcbah4) (Entered: 08/23/2023) |
| 08/24/2023 | | Set/Reset Deadlines: Plaintiff Amended Complaint due by 9/1/2023. Defendants Answer Or Otherwise Response To Plaintiffs Amended Complaint due by 10/2/2023. (mac) (Entered: 08/24/2023) |
| 09/01/2023 | 15 | AMENDED COMPLAINT *and Petition for Judicial Review* against All Defendants filed by GORDON COLLEGE. (Attachments: # 1 Exhibit Exhibit Index, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Exhibit Exhibit 6, # 8 Exhibit Exhibit 7, # 9 Exhibit Exhibit 8, # 10 Exhibit Exhibit 9, # 11 Exhibit Exhibit 10, # 12 Exhibit Exhibit 11, # 13 Exhibit Exhibit 12, # 14 Exhibit Exhibit 13, # 15 Exhibit Exhibit 14, # 16 Exhibit Exhibit 15, # 17 Exhibit Exhibit 16, # 18 Exhibit Exhibit 17, # 19 Exhibit Exhibit 18)(Ward, Scott) (Entered: 09/01/2023) |
| 10/02/2023 | 16 | MOTION to Dismiss *Plaintiff's First Amended Complaint* by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Memorandum in Support of Motion to Dismiss)(Devany, Bonnie) (Entered: 10/02/2023) |

| 10/06/2023 | 17 | Joint MOTION for Extension of Time to File Response/Reply *to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed Order)(Devany, Bonnie) (Entered: 10/06/2023) |
| --- | --- | --- |
| 10/10/2023 |  | MINUTE ORDER (paperless) GRANTING the parties' 17 Joint Motion Regarding Response and Reply to Defendants' Motion to Dismiss; DIRECTING plaintiff to file any opposition to defendants' 16 Motion to Dismiss by November 1, 2023; and FURTHER DIRECTING defendants to file any reply in support of their 16 Motion to Dismiss by December 1, 2023. Signed by Judge Beryl A. Howell on October 10, 2023. (lcbah4) (Entered: 10/10/2023) |
| 10/11/2023 |  | Set/Reset Deadlines: Plaintiff's Response due by 11/1/2023. Defendants' Reply due by 12/1/2023. (zalh) (Entered: 10/16/2023) |
| 11/01/2023 | 18 | RESPONSE re 16 MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by GORDON COLLEGE. (Attachments: # 1 Text of Proposed Order)(Ward, Scott) (Entered: 11/01/2023) |
| 11/20/2023 | 19 | Unopposed MOTION for Extension of Time to File Response/Reply as to 16 MOTION to Dismiss *Plaintiff's First Amended Complaint* by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed Order)(Devany, Bonnie) (Entered: 11/20/2023) |
| 11/21/2023 |  | MINUTE ORDER (paperless) GRANTING defendants' 19 Unopposed Motion For Extension of Time, and DIRECTING defendants to file, by December 11, 2023, any reply in support of defendants' 16 motion to dismiss. Signed by Judge Beryl A. Howell on November 21, 2023. (lcbah4) (Entered: 11/21/2023) |
| 11/21/2023 |  | Set/Reset Deadlines: Defendants Reply In Support Of Defendants' 16 Motion to Dismiss due by 12/11/2023. (mac) (Entered: 11/21/2023) |
| 12/11/2023 | 20 | REPLY to opposition to motion re 16 MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Devany, Bonnie) (Entered: 12/11/2023) |
| 12/13/2023 | 21 | NOTICE OF SUPPLEMENTAL AUTHORITY by GORDON COLLEGE (Ward, Scott) (Entered: 12/13/2023) |
| 05/24/2024 | 22 | NOTICE OF SUPPLEMENTAL AUTHORITY by GORDON COLLEGE (Ward, Scott) (Entered: 05/24/2024) |
| 07/18/2024 | 23 | ORDER GRANTING defendants' 16 Partial Motion to Dismiss. See Order for further details. Signed by Judge Beryl A. Howell on July 18, 2024. (lcbah1) (Entered: 07/18/2024) |
| 07/18/2024 | 24 |  |

| | | |
|---|---|---|
| | | MEMORANDUM OPINION regarding defendants' <u>16</u> Partial Motion to Dismiss. Signed by Judge Beryl A. Howell on July 18, 2024. (lcbah1) (Entered: 07/18/2024) |
| 07/22/2024 | | Set/Reset Deadlines: Meet & Confer Report due by 8/1/2024. (mac) (Entered: 07/22/2024) |
| 07/23/2024 | 25 | Unopposed MOTION for Extension of Time to File Answer re <u>15</u> Amended Complaint,, by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Attachments: # <u>1</u> Text of Proposed Order)(Devany, Bonnie) (Entered: 07/23/2024) |
| 07/23/2024 | | MINUTE ORDER (paperless) GRANTING defendants' <u>25</u> Unopposed Motion for Extension of Time, and DIRECTING defendant to file, by September 2, 2024, any answer to the <u>15</u> Amended Complaint. Signed by Judge Beryl A. Howell on July 23, 2024. (lcbah1) (Entered: 07/23/2024) |
| 07/24/2024 | | Set/Reset Deadlines: Defendant Answer To <u>15</u> Amended Complaint due by 9/2/2024. (mac) (Entered: 07/24/2024) |
| 08/05/2024 | | MINUTE ORDER (paperless) DIRECTING plaintiff to SHOW CAUSE, by August 12, 2024, why this case should not be dismissed for failure to prosecute, pursuant to Local Civil Rule 83.23. The parties have yet to file their Joint Meet and Confer Report, which was due on August 1, 2024, pursuant to the Court's <u>23</u> Order. Signed by Judge Beryl A. Howell on August 5, 2024. (lcbah1) (Entered: 08/05/2024) |
| 08/06/2024 | 26 | MEET AND CONFER STATEMENT. (Szymanski, John) (Entered: 08/06/2024) |
| 08/07/2024 | | MINUTE ORDER (paperless) DIRECTING the parties to file, by August 23, 2024, a Joint Meet and Confer Report as required by paragraph 4(a) of the Court's <u>4</u> Standing Order, proposing a schedule for further proceedings to address plaintiff's remaining claims. Signed by Judge Beryl A. Howell on August 7, 2024. (lcbah1) (Entered: 08/07/2024) |
| 08/08/2024 | | Set/Reset Deadlines: Plaintiff Show Cause due by 8/12/2024. Parties Joint Meet & Confer Statement due by 8/23/2024. (mac) (Entered: 08/08/2024) |
| 08/23/2024 | 27 | MEET AND CONFER STATEMENT. (Szymanski, John) (Entered: 08/23/2024) |
| 08/26/2024 | | MINUTE ORDER (paperless) upon consideration of the parties' <u>27</u> Second Joint Meet and Confer Report, DISCHARGING the Court's August 5, 2024 Order to Show Cause; DIRECTING defendants to provide, by September 23, 2024, a supplemental administrative record; and DIRECTING the parties to file, by October 23, 2024, a joint status report, proposing a schedule for further proceedings, including a briefing schedule for summary judgment motions, if the parties determine that such motions are necessary. Signed by Judge |

| | | |
|---|---|---|
| | | Beryl A. Howell on August 26, 2024. (lcbah1) (Entered: 08/26/2024) |
| 08/27/2024 | | Set/Reset Deadlines: Supplemental Administrative Record due by 9/23/2024. Joint Status Report due by 10/23/2024. (zalh) (Entered: 08/27/2024) |
| 08/27/2024 | 28 | Unopposed MOTION for Extension of Time to File Answer re 15 Amended Complaint,, by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION. (Devany, Bonnie) (Entered: 08/27/2024) |
| 08/28/2024 | 29 | NOTICE *OF FILING OF CERTIFIED INDEX TO ADMINISTRATIVE RECORD* by ISABELLA CASILLAS GUZMAN, UNITED STATES OF AMERICA, UNITED STATES SMALL BUSINESS ADMINISTRATION (Devany, Bonnie) (Entered: 08/28/2024) |
| 08/28/2024 | | MINUTE ORDER (paperless) GRANTING defendants' 28 Unopposed Motion for Extension of Time, and DIRECTING defendants to file, if necessary, any answer to the 15 Amended Complaint, within 30 days of the Court's ruling on any summary judgment motions. Signed by Judge Beryl A. Howell on August 28, 2024. (lcbah1) (Entered: 08/28/2024) |
| 10/22/2024 | 30 | Third MEET AND CONFER STATEMENT by GORDON COLLEGE. (Szymanski, John) Modified event on 10/23/2024 (mg). (Entered: 10/22/2024) |
| 10/23/2024 | | MINUTE ORDER (paperless), upon consideration of the parties' 30 Joint Status Report, DIRECTING plaintiff to file any second amended complaint by November 27, 2024; defendants to file any responsive pleading or motion by January 8, 2025; and the parties to submit a proposed schedule for further proceedings within 30 days of the defendants' filing of any responsive pleading or the Court's resolution of any pending motions. Signed by Judge Beryl A. Howell on October 23, 2024. (lcbah1) (Entered: 10/23/2024) |
| 10/24/2024 | | Set/Reset Deadlines: Plaintiff Amended Complaint due by 11/27/2024. Defendants Responsive Pleading Or Motion due by 1/9/2025. (mac) (Entered: 10/24/2024) |
| 11/27/2024 | 31 | AMENDED COMPLAINT *SECOND and Petition for Judicial Review* against All Defendants filed by GORDON COLLEGE. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18)(Ward, Scott) (Entered: 11/27/2024) |
| 01/08/2025 | 32 | MOTION for Partial Summary Judgment , Partial MOTION to Dismiss *Plaintiff's Second Amended Complaint* by ISABELLA CASILLAS GUZMAN, UNITED STATES SMALL BUSINESS ADMINISTRATION, UNITED STATES OF AMERICA. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Memorandum in Support)(Devany, Bonnie) (Entered: 01/08/2025) |
| 01/13/2025 | 33 | Joint STATUS REPORT *and Scheduling Request* by GORDON COLLEGE. (Szymanski, John) (Entered: 01/13/2025) |
| 01/14/2025 | | MINUTE ORDER (paperless), upon consideration of the parties' 33 Joint Status Report, ISSUING the following SCHEDULING ORDER: (1) plaintiff's response to defendants' 32 Motion for Partial Summary Judgment and Partial Motion to Dismiss is due by February 28, 2025; and (2) defendants' reply to plaintiff's response is due by March 28, 2025. Signed by Judge Beryl A. Howell on January 14, 2025. (lcbah1) (Entered: 01/14/2025) |
| 02/28/2025 | 34 | Memorandum in opposition to re 32 Motion for Partial Summary Judgment,, Motion to Dismiss, *Motion to Supplement Response Brief with Eskeland Declaration* filed by GORDON COLLEGE. (Attachments: # 1 Affidavit Eskeland Declaration, # 2 Exhibit Eskeland Dec. Ex. 1 of 1)(Szymanski, John) (Entered: 02/28/2025) |
| 02/28/2025 | 35 | RESPONSE to re 32 Motion for Partial Summary Judgment,, Motion to Dismiss, *Plaintiff's Statement of Disputed Facts in Response to Motion for Summary Judgment* filed by GORDON COLLEGE. (Szymanski, John) Modified event on 3/7/2025 (mg). (Entered: 02/28/2025) |
| 02/28/2025 | 36 | Memorandum in opposition to re 32 Motion for Partial Summary Judgment,, Motion to Dismiss, *Plaintiff's Opposition to Motion for Summary Judgment* filed by GORDON COLLEGE. (Szymanski, John) (Entered: 02/28/2025) |
| 02/28/2025 | 37 | Memorandum in opposition to re 32 Motion for Partial Summary Judgment,, Motion to Dismiss, *Exhibit 1 to Opposition Brief* filed by GORDON COLLEGE. (Szymanski, John) (Entered: 02/28/2025) |
| 02/28/2025 | 38 | DECLARATION to re 37 Memorandum in Opposition *Exhibit 2 to Opposition Brief* filed by GORDON COLLEGE. (Attachments: # 1 Affidavit Eskeland Decl. Ex. 1 of 1)(Szymanski, John) Modified event and link on 3/7/2025 (mg)(nmw). (Entered: 03/01/2025) |
| 03/28/2025 | 39 | REPLY to opposition to motion re 32 Motion for Partial Summary Judgment,, Motion to Dismiss, filed by ISABELLA CASILLAS GUZMAN, UNITED STATES SMALL BUSINESS ADMINISTRATION, UNITED STATES OF AMERICA. (Attachments: # 1 Declaration of Jason Frulla)(Devany, Bonnie) (Entered: 03/28/2025) |
| 04/01/2025 | 40 | MOTION for Leave to File *Sur−Reply to Defendants' Partial Motions to Dismiss and for Summary Judgment* by GORDON COLLEGE. (Ward, Scott). (Entered: 04/01/2025) |
| 04/03/2025 | | NOTICE OF ERROR re 40 Motion for Leave to File; emailed to sjw@gg−law.com, cc'd 4 associated attorneys −− The PDF file you docketed contained errors: 1. **Please note the following for future filings; do not refile document**, 2. Signature on Filing must match |

| | | |
|---|---|---|
| | | PACER account (mg, ) (Entered: 04/03/2025) |
| 04/03/2025 | | MINUTE ORDER (paperless) GRANTING IN PART and DENYING IN PART plaintiff's 40 Motion for Leave to file Sur–Reply ("Pl.'s Mot."). Plaintiff may file a sur–reply of not more than 5 pages "addressing 'the evidence in the Frulla Declaration' (and the corresponding arguments of counsel)," Pl.'s Mot. &para 1, by April 11, 2025. Plaintiff's motion is denied insofar as it seeks to respond to defendant's arguments regarding the "ALJ appointment/employment," *id.* &para2, because, as plaintiff concedes, it has "preemptively (and briefly) address[ed]" those arguments already, *id.* Plaintiff's motion is further denied insofar as it seeks to respond to "new characterization of pre–existing issues," *id.* &para 3, in defendant's reply because a sur–reply is used to address arguments or issues [raised] for the first time" on reply and not merely new characterizations of arguments. *United States v. Mejia*, 657 F. Supp. 3d 123, 130 n.3 (D.D.C. 2023) (quoting *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014)). Signed by Judge Beryl A. Howell on April 3, 2025. (lcbah1) (Entered: 04/03/2025) |
| 04/04/2025 | | Set/Reset Deadlines: Plaintiff Sur–Reply due by 4/11/2025. (mac) (Entered: 04/04/2025) |
| 04/11/2025 | 41 | SURREPLY to re 32 MOTION for Partial Summary Judgment Partial MOTION to Dismiss *Plaintiff's Second Amended Complaint* filed by GORDON COLLEGE. (Szymanski, John) (Entered: 04/11/2025) |
| 04/11/2025 | 42 | JOINT APPENDIX by GORDON COLLEGE. (Attachments: # 1 Joint Appendix – Part 1 of 4 – JA0001–0093, # 2 Joint Appendix – Part 2 of 4 – JA0094–0334, # 3 Joint Appendix – Part 3 of 4 – JA0335–1180, # 4 Joint Appendix – Part 4 of 4 – JA1181–1533)(Szymanski, John) (Entered: 04/11/2025) |
| 04/14/2025 | 43 | NOTICE OF SUBSTITUTION OF COUNSEL by Indraneel Sur on behalf of All Defendants Substituting for attorney BONNIE E. DEVANY (Sur, Indraneel) (Entered: 04/14/2025) |
| 05/28/2025 | 44 | ORDER GRANTING defendants' 32 Partial Motion for Summary Judgment and Partial Motion to Dismiss. See Order for further details. The Clerk of the Court is directed to close this case. Signed by Judge Beryl A. Howell on May 28, 2025. (lcbah1) (Entered: 05/28/2025) |
| 05/28/2025 | 45 | MEMORANDUM OPINION regarding defendants' 32 Partial Motion for Summary Judgment and Partial Motion to Dismiss. Signed by Judge Beryl A. Howell on May 28, 2025. (lcbah1) (Entered: 05/28/2025) |
| 06/27/2025 | 46 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 44 Order on Motion for Partial Summary Judgment, Order on Motion to Dismiss by GORDON COLLEGE. Filing fee $ 605, receipt number ADCDC–11783577. Fee Status: Fee Paid. Parties have been notified. (Szymanski, John) (Entered: 06/27/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GORDON COLLEGE | |
| *Petitioner / Plaintiff,* | Civil Action No. 1:23-cv-614 (BAH) |
| v. | NOTICE OF APPEAL |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., | |
| *Respondents / Defendants.* | |

**PLAINTIFF GORDON COLLEGE'S NOTICE OF APPEAL**

Notice is hereby given this 27th day of June, 2025, that Petitioner/Plaintiff Gordon College hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from: (1) this Court's Order Granting Defendants' Partial Motion for Summary Judgment, Partial Motion to Dismiss, **and Final Judgment** (Dkt. #44) entered on the 28th day of May, 2025, in favor of Respondents/Defendants and against Petitioner/Plaintiff Gordon College; (2) this Court's Order Granting Defendants' Partial Motion to Dismiss (Dkt. #23) entered on the 18th day of July, 2024; and (3) any Decisions/Orders materially related to the above two Orders and subject to this appeal.

Dated this 27th day of June, 2025 and respectfully submitted,

 /s/ *J. Matthew Szymanski*
J. Matthew Szymanski, Esq.
D.D.C. Bar ID: VA157
(703) 761-5030 (telephone) / (703) 761-5030 (fax)
Email: JMS@gg-law.com
Scott J. Ward, Esq.
D.D.C. Bar ID: VA158
(703) 761-5012 (telephone) / (703) 761-5012 (fax)
Email: SJW@gg-law.com
GAMMON & GRANGE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, VA 22182
*Counsel for Plaintiff-Petitioner Gordon College*

1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, I electronically transmitted the attached **NOTICE OF APPEAL** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

/s/ J. Matthew Szymanski
J. MATTHEW SZYMANSKI

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GORDON COLLEGE, | |
| Plaintiff, | |
| v. | Civil Action No. 23-614 (BAH) |
| | Judge Beryl A. Howell |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

In response to the COVID-19 "public health emergency," *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 96 (D.C. Cir. 2021), Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act established, in Section 1102, the Paycheck Protection Program ("PPP"), *see* CARES Act § 1102 (codified at 15 U.S.C. § 636(a)(36)), which authorized the United States Small Business Administration ("SBA") "to guarantee favorable and potentially forgivable loans to businesses negatively impacted by the pandemic," *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 408-09 (2d Cir. 2022).

As previously described, *see generally Gordon College v. SBA* ("*Gordon I*"), No. 23-cv-614 (BAH), 2024 WL 3471261 (D.D.C. July 18, 2024), plaintiff Gordon College is "a religious nonprofit higher educational institution" that received a PPP loan for $7,046,037 but was denied loan forgiveness when SBA concluded that plaintiff "exceeded the maximum allowable number of employees and therefore [did] not qualify under the SBA small business size standard qualifications for a [PPP] loan." Second Am. Compl. ("SAC") ¶¶ 1, 142-52, 172, ECF No. 31. Plaintiff administratively appealed the denial to SBA's Office of Hearings and Appeals

1

("OHA"), which denied plaintiff's appeal.  *Id.* ¶ 3.  Plaintiff subsequently petitioned for reconsideration, and the OHA upheld SBA's decision to deny plaintiff's loan forgiveness application because plaintiff was ineligible for the loan in the first place.  *Id.*

After exhausting its administrative appeals, plaintiff instituted the instant action against the SBA, Kelly Loeffler, in her official capacity as Administrator of SBA, and the United States (collectively "defendants").  *See generally* Compl., ECF No. 1.[1]  Following grant of defendants' partial motion to dismiss plaintiff's first amended complaint, *see Gordon I*, 2024 WL 3471261, at *15, plaintiff filed the now operative second amended complaint, alleging that SBA's denial of loan forgiveness violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, the Fifth Amendment's Equal Protection and Due Process Clauses, U.S. CONST. amend. V., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  SAC ¶¶ 293-367.  Defendants have now moved for summary judgment as to plaintiff's APA claim, to dismiss plaintiff's Equal Protection claim for either lack of subject matter jurisdiction or failure to state a claim, and to dismiss plaintiff's Due Process and Declaratory Judgment claims for failure to state a claim.  Defs.' Mot. for Summ. J. & Dismiss ("Defs.' Mot.") at 1, ECF No. 32; Defs.' Mem. Supp. Mot. ("Defs.' Mem.") at 1-3, ECF No. 32-1.  For the reasons stated below, defendants' motion for summary judgment and to dismiss is granted.

## I.    BACKGROUND

Reviewed below is the relevant statutory background, factual background, and procedural history.

---

[1]    Although plaintiff originally named as a defendant the former Administrator of the Small Business Administration, the current holder of the position is "automatically substituted as a party" in her place, pursuant to Federal Rule of Civil Procedure 25(d).

2

### A.    Statutory Background

The Small Business Act, 15 U.S.C. § 631 *et seq.*, created the SBA to "aid, counsel, assist, and protect, insofar is is possible, the interests of small-business concerns," *id.* § 631(a); *see also id.* § 633(a) (establishing SBA).  Its "primary mechanism" for doing so is "by financing private 'Section 7(a) loans,'" which are "typically issued by private lenders" with SBA's "guarantee[]." *Springfield Hosp.*, 28 F.4th at 408-09; *see also* 15 U.S.C. § 636(a) (establishing Section 7(a) of the Small Business Act); *SBA v. McClellan*, 364 U.S. 446, 447 (1960) (explaining that SBA has "extraordinarily broad powers to accomplish [its] important objectives, including that of lending money to small businesses whenever they could not get necessary loans on reasonable terms from private lenders"); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3 (1979) (explaining that SBA "prefers to guarantee private loans rather than to disburse funds directly"). To qualify for a Section 7(a) loan, an applicant must be a "small business concern," 15 U.S.C. § 636(a), which SBA has defined to be an entity that is an "operating business," "organized for profit," "located in the United States," under certain "size requirements" that vary by industry, and "demonstrate[s] a need for the desired credit," 13 C.F.R. § 120.100; *see also* 15 U.S.C. § 632(a)(2)(A) (allowing SBA to define "small business concern").

To blunt the economic fallout during the COVID-19 pandemic, Congress tasked SBA with implementing provisions of the CARES Act.  In particular, the CARES Act, *inter alia*, established the PPP as "a temporary program targeted at providing small businesses with the funds necessary to meet their payroll and operating expenses and therefore keep workers employed."  *Springfield Hosp.*, 28 F.4th at 409; *see also* Business Loan Program Temporary Changes; Paycheck Protection Program ("April 2020 IFR"), 85 Fed. Reg. 20,811, 20,811 (Apr. 15, 2020) (explaining that the PPP is "intended to provide economic relief to small businesses nationwide adversely impacted [by COVID-19]").  "Rather than establishing the PPP as a

3

standalone program, the CARES Act place[d] the PPP under Section 7(a) of the Small Business Act," *Springfield Hosp.*, 28 F.4th at 410, and temporarily expanded SBA's pre-existing business loan authority by authorizing SBA, "[e]xcept as otherwise provided" in Section 1102, to guarantee PPP loans "under the same terms, conditions, and processes" as an ordinary Section 7(a) loan, 15 U.S.C. § 636(a)(36)(B).

At the same time, the CARES Act "relaxed many of the Section 7(a) eligibility criteria for PPP applicants and waived some of the standard Section 7(a) requirements altogether." *Springfield Hosp.*, 28 F.4th at 410 (citing 15 U.S.C. §§ 636(a)(36)(D), (H)–(J), (R)).  For example, the CARES Act "[i]ncreased [the] eligibility" for PPP loans, such that PPP loans could be guaranteed not only to "small business concerns" but also to "any . . . nonprofit organization" that "employ[ed] not more than . . . 500 employees" (the "500-employee cap").  15 U.S.C. § 636(a)(36)(D).  The CARES Act defined "employee," "[f]or purposes of determining whether . . . a nonprofit organization . . . employs not more than 500 employees," to "include[] individuals employed on a full-time, part-time, or other basis."  *Id.* § 636(a)(36)(D)(v).  The PPP was launched on April 3, 2020, with Congress authorizing SBA to guarantee up to $349 billion of PPP loans to small businesses.  *See* April 2020 IFR, 85 Fed. Reg. at 20,812.[2]

The CARES Act also provides a process for loan forgiveness, *see* CARES Act § 1106 (codified at 15 U.S.C. § 636m), authorizing that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness" on the portions of the PPP loan used for certain enumerated purposes, such as payroll costs and payments for rent, utilities, and mortgage interest, 15 U.S.C. § 636m(b); *see also id.* § 636(a)(36)(A)(iv) (defining "eligible recipient"); *see also Springfield*

---

[2]    Initially, the CARES Act allocated $349 billion to guarantee PPP loans. Pub. L. 116-136, § 1102(b)(1).  On April 16, 2020, the SBA announced that the PPP was closed to new applications.  Eight days later, on April 24, 2020, Congress appropriated an additional $310 billion for loan guarantees under the PPP.  *See* The Paycheck Protection and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020).

*Hosp.*, 28 F.4th at 409 ("The PPP provides potentially forgivable loans to eligible small businesses, allowing the recipient to seek loan forgiveness if at least 60% of the loaned funds are used for specified expenses, such as payroll.").  "The amount of loan forgiveness can be up to the full principal amount of the loan and any accrued interest," so long as "the borrower uses all of the loan proceeds for forgivable purposes" and certain "employee and compensation levels are maintained."  April 2020 IFR, 85 Fed. Reg. at 20,813; *see also* 15 U.S.C. § 636m(d)(1) ("The amount of loan forgiveness . . . shall not exceed the principal amount of the financing made available under the applicable covered loan.").  Loans that are not forgiven are to be repaid at a fixed one-percent interest rate.  April 2020 IFR, 85 Fed. Reg. at 20,813.

To obtain forgiveness, a borrower must submit a PPP loan forgiveness application with supporting documentation to its lender.  *See* 15 U.S.C. §§ 636m(e)–(f).  Within 60 days of receiving the application, the lender must "issue a decision on the . . . application."  *Id.* § 636m(g).  If the borrower is determined to be entitled to loan forgiveness, the lender submits a request for payment to SBA, and SBA, within 90 days, must "remit to the lender an amount equal to the amount of forgiveness, plus any interest accrued through the date of payment."  *Id.* § 636m(c)(3).

"In light of the structure of the PPP . . ., in which loans and loan forgiveness are provided based on the borrower's certifications and documentation provided by the borrower," SBA established a series of "procedures and criteria through which SBA will review" a borrower's eligibility for a PPP loan, calculation of the loan amount, use of loan proceeds, and entitlement to loan forgiveness "to ensure that PPP loans are directed to the entities Congress intended, and that PPP loan proceeds are used for the purposes Congress required."  Business Loan Program Temporary Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related

Borrower and Lender Responsibilities ("June 2020 IFR"), 85 Fed. Reg. 33,010, 33,012 (June 1, 2020).  "SBA may undertake a review at any time in SBA's discretion."  *Id.*  "If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application," and, "[f]urther, if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate."  *Id.*

In sum, if an applicant was originally ineligible for a loan but received a PPP loan nonetheless, the SBA will deny loan forgiveness.  *Id.*  If a loan has already been forgiven, "SBA may . . . seek repayment of the outstanding PPP loan balance or pursue other available remedies."  *Id.*

### B.    Factual Background

As described above, plaintiff is a "religious nonprofit higher education institution" that received a PPP loan but was ultimately denied PPP loan forgiveness.  SAC ¶¶ 1, 3-4.  Specifically, in April 2020, plaintiff submitted a PPP loan application to its bank reporting that it had 495.67 employees.  *Id.* ¶¶ 39-40.  Plaintiff calculated this number using a full-time equivalent ("FTE") counting method, which counts part-time employees as a fraction of an employee depending on the number of hours the employee worked.  *Id.*  The bank quickly approved plaintiff's loan application under the PPP's streamlined procedures, and plaintiff received a loan for $7,046,037.  *Id.* ¶¶ 45, 152.

In July 2021, plaintiff applied for full forgiveness of its PPP loan.  *See* Certified Administrative Record ("AR") at 137.  SBA requested additional information about plaintiff's loan, on September 7, 2021, and informed plaintiff, on October 13, 2021, that a "Hold Code" had been placed on its loan based on its "Employee Count," which was "indicative of concern" because plaintiff reported a fractional number and was reflective of a "[p]otential eligibility

6

issue." *Id.* at 137-41, 232.  To complete its "quality control process and review [of plaintiff's] loan file," SBA requested additional documentation related to plaintiff's number of employees, such as plaintiff's "most recent 3 years Federal Tax Returns"; a "list of locations to include employee count per location"; and a variety of reports for the 2019 fiscal year, including reports summarizing employer health contributions, employment retirement contributions, and payroll per employee.  *Id.* at 138-41; *see also* SAC ¶¶ 165, 172.  On November 15, 2021, and again on December 8, 2021, SBA informed plaintiff that although "a thorough review of all documentation provided" to support plaintiff's application for loan forgiveness was ongoing, "[b]ased on our preliminary findings of the review, we are considering recommending a Full Denial" because plaintiff, in relevant part, self-reported "639 employees for the Massachusetts location, which exceeds the maximum limit of 500 employees per location."  AR at 138-39.  In total, plaintiff employed 808 individuals, excluding students who participated in the federal work-study program and are not counted as employees by SBA.  *Id.* at 183.

On April 12, 2022, SBA issued its Final Loan Review Decision, denying forgiveness of plaintiff's PPP loan and explaining that plaintiff "was ineligible for the PPP loan" based on SBA's conclusion that plaintiff "exceeded the maximum allowable number of employees and therefore does not qualify under the SBA small business size standard qualifications for a [PPP] loan."  *Id.* at 140; SAC ¶¶ 3, 172.  "The bottom line of SBA's decision [denying plaintiff loan forgiveness] was a finding that [plaintiff] exceeded the 500-employee limit for PPP loan eligibility."  SAC ¶ 3.

### C.    Procedural History

Plaintiff administratively appealed the denial to OHA, and an ALJ affirmed the denial of PPP loan forgiveness.  *See* AR at 137.  On plaintiff's petition for reconsideration, *see id.* at 146-64; SAC ¶ 3, the ALJ noted that the initial decision erroneously categorized plaintiff as a "small

business concern" rather than a "tax-exempt nonprofit," but explained that this categorization "change[d] the analysis but not the result of the Initial Decision," and again upheld SBA's decision to deny plaintiff's loan forgiveness application, AR at 201-02.

Looking carefully at the CARES Act, the ALJ further explained that nonprofit organizations "employ[ing] not more than 500 employees" are eligible for a PPP loan, and that "employee" is defined to "include[] individuals employed on a full-time, part-time, or other basis." AR at 202 (emphasis omitted) (first quoting 15 U.S.C. § 636(a)(36)(D)(i); and then quoting *id.* § 636(a)(36)(D)(v)). In the ALJ's view, "the CARES Act's text resolves the employee-counting dispute" and is "very clear": "SBA's proposed 'headcount' method—that is, counting every employed individual regardless of full-time or part-time status as an 'employee'—is the proper method with which to determine whether a nonprofit organization is eligible for a PPP loan based on the 500-employee threshold," not the FTE method for which plaintiff advocated and used when submitting its original PPP loan application. *Id.* at 203. Plaintiff's employment of over 800 individuals made plaintiff ineligible for the PPP loan and, thus, ineligible for loan forgiveness. *Id.* at 183, 201-07.

Plaintiff then instituted this action on March 6, 2023, alleging that SBA's denial of its loan forgiveness application because of the PPP's 500-employee cap violated the Religious Freedom Restoration Act ("RFRA") and the religious protections granted by the First and Fifth Amendments, and that the process by which the SBA denied its loan forgiveness application violated the APA and Fifth Amendment. Compl. ¶¶ 179-300, ECF No. 1; First Am. Compl. ¶¶ 293-460, ECF No. 15. Defendants' partial motion to dismiss plaintiff's claims alleging violations of RFRA and the religious protections afforded under the First and Fifth Amendments was granted because "plaintiff . . . alleged no facts connecting the 500-employee cap to any

religious practice," *Gordon I*, 2024 WL 3471261, at *9, "fail[ed] to identify any 'exercise of religion' that ha[d] been burdened," *id.* at *10, and "failed to bring a rational-basis challenge by not plausibly alleging that no reasonable set of facts could provide a rational basis for the PPP's 500-employee cap," *id.*

After grant of defendants' partial motion to dismiss, plaintiff filed the second amended complaint at issue here, alleging in four counts that: the ALJ's decision affirming SBA's denial of its loan forgiveness application was "erroneous as a matter of law" or "arbitrary and capricious," in violation of the APA (Count 1), SAC ¶¶ 293-302; the CARES Act's 500-employee cap "burdens [plaintiff's] religious exercise," in violation of the Fifth Amendment's Due Process and Equal Protection clauses (Count 3), *id.* ¶¶ 313-45; defendants violated plaintiff's Fifth Amendment Due Process clause "by failing to provide [plaintiff] with even the minimal protection that due process requires" (Count 4), *id.* ¶¶ 346-67; and plaintiff is entitled to a declaratory judgment (Count 2), *id.* ¶¶ 303-12. Defendants now seek summary judgment as to Count 1, dismissal of Count 3 either for failure to state a claim or for lack of subject matter jurisdiction, and dismissal of Counts 2 and 4 for failure to state a claim. *See* Defs.' Mem. at 1-3.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A defendant may move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). FED. R. CIV. P. 12(b)(1). Indeed, "[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), federal courts thus "have an affirmative obligation 'to consider whether the constitutional and statutory authority

9

exist for [it] to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092

(D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Absent subject matter jurisdiction, a case must be dismissed.  *See Arbaugh v. Y&H Corp.*, 546

U.S. 500, 506-07 (2006); FED. R. CIV. P. 12(b)(1), 12(h)(3).

 "[T]he defect of standing is a defect in subject matter jurisdiction."  *Sattler v. U.S. Dep't*

*of Justice*, 849 F. App'x 1, 1 (D.C. Cir. 2021) (quoting *Haase v. Sessions*, 835 F.2d 902, 906

(D.C. Cir. 1987)).  When reviewing a motion to dismiss for lack of standing under Rule 12(b)(1),

the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d

1274, 1278 (D.C. Cir. 2016), and "accept the well-pleaded factual allegations as true and draw

all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986

F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

Furthermore, a court "may consider materials outside the pleadings to determine [its]

jurisdiction."  *Id.* at 866 n.7.

### B. Motion to Dismiss for Failure to State a Claim

 To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A facially plausible claim pleads facts that are not "'merely consistent with' a

defendant's liability" but "that allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-

57).  In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true,

"even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint 'in favor of the

plaintiff,'" *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (quoting *Hettinga v.*

*United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)).  Courts, however, "need not accept

inferences . . . not supported by the facts set out in the complaint, nor must the court accept legal conclusions." *Id.* (quoting *Hettinga*, 677 F.3d at 476).  In determining whether a complaint fails to state a claim, although a court must review the whole complaint, *Twombly*, 550 U.S. at 555, courts are limited to "consider[ing] only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271-72 (D.C. Cir. 2019) (second alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### C.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When assessing a motion for summary judgment in an APA case, such as this one, "the district judge sits as an appellate tribunal," *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)), since the "'entire case on review is a question of law,' and the 'complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action,'" *id.* (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

As such, the APA "instructs a reviewing court to set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 61 (D.C. Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)).  This standard "'requires agencies to engage in reasoned decisionmaking,' and . . . to reasonably explain to reviewing courts the bases for the actions they take and the conclusions they reach."

11

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 115 (D.C. Cir. 2020) (internal citations omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* ("*Regents*"), 591 U.S. 1, 16 (2020)).  While "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action,'" *Regents*, 591 U.S. at 20 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)), the agency, too, "must defend its actions based on the reasons it gave when it acted," *id.* at 24.

## III.    DISCUSSION

Defendants' challenges to Counts 1, 3 and 4 in plaintiff's third complaint filed in this action are addressed *seriatim*.[3]  For the reasons explained below, defendants are correct that no claim withstands scrutiny.

### A.    COUNT 1: Denial of Plaintiff's Loan Forgiveness Was Neither Contrary to Law nor Arbitrary and Capricious Under the APA.

Count 1 alleges that defendants' conclusion that plaintiff did not qualify for the PPP loan, and is thus ineligible for loan forgiveness, was "arbitrary and capricious" and "erroneous as a matter of law," in violation of the APA.  SAC ¶ 297.  Defendants move for summary judgment on this claim on grounds that the SBA properly construed governing law as requiring a "headcount" method to calculate plaintiff's number of employees, as opposed to plaintiff's FTE method, and therefore the decision to apply the 500-employee cap to deny plaintiff's loan forgiveness application was not arbitrary and capricious.  Defs.' Mem. at 10-14; *id.* at 2 (arguing that plaintiff's claim "fails as a matter of law because SBA's application of the 500-employee

---

[3]    Defendants also seek dismissal of Count 2, claiming entitlement to a declaratory judgment, SAC ¶¶ 303-12, because the "Declaratory Judgment Act does not alone 'provide a cause of action'" and "is more properly included in the [] prayer for relief."  Defs.' Mem. at 38 (alteration in original) (first quoting *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); then quoting *Am. First Legal Found. v. Cardona*, 630 F. Supp. 2d 18, 24 (D.D.C. 2010)).  Plaintiff concedes this point, Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") at 44, ECF No. 36, and, accordingly, Count 2 will be dismissed.

cap . . . was not arbitrary and capricious but was instead mandated by the plain text of the [CARES Act].").  Review of the relevant APA rules and the statutory text at issue demonstrates that defendants are entitled to summary judgment as to Count 1.

"In determining whether an agency's interpretation of its governing statute is contrary to law, [courts] must exercise [their] 'independent judgment' and 'apply[] all relevant interpretive tools' to reach 'the best reading of the statute.'"  *Env't Def. Fund v. EPA*, 124 F.4th 1, 11 (D.C. Cir. 2024) (third alteration in original) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412 (2024)).  In contrast, "review under the 'arbitrary and capricious' standard is narrow." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Under this standard, the reviewing court must avoid substituting its "judgment for that of the agency," but must nonetheless ensure that the agency has "examine[d] the relevant data and [has] articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

### 1.    *Contrary to Law*

Defendants properly construed the relevant statutory language governing loan forgiveness eligibility for nonprofit organizations like plaintiff as requiring, *inter alia*, 500 or fewer total employees and not 500 or fewer FTE employees based on the number of hours worked.  Statutory interpretation "begins, as always, with the text of the statute." *Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  If the text of the statute is "plain and ambiguous," the "analysis ends with the text as well." *Id.* (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.,* 583 U.S. 109, 127 (2018) ("Because the plain language [the statute] is

13

'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion)); *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) ("We must first 'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' If it does, our inquiry ends and we apply the statute's plain language." (internal citation omitted) (quoting *Robinson*, 519 U.S. at 340 and citing *Barnhart*, 534 U.S. at 450)).

As relevant here, the CARES Act permits PPP loans to be guaranteed to "any . . . nonprofit organization," 15 U.S.C. §§ 636(a)(36)(D)(i), that "employs not more than . . . 500 employees," *id.* § 636(a)(36)(D)(i)(I), and provides that "[f]or purposes of determining whether a . . . nonprofit organization . . . employs not more than 500 employees . . . the term 'employee' includes individuals employed on a full-time, part-time, or other basis," *id.* § 636(a)(36)(D)(v). The word "or" "is 'almost always disjunctive,'" meaning in this statutory context that an employee is counted for purposes of the 500-employee cap regardless of the "basis" for their employment. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018). The plain meaning here is clear: to be eligible for a forgivable PPP loan, a nonprofit organization must employ 500 or fewer individuals regardless of the employee's employment status or the number of hours they work.

Accordingly, the statute forecloses plaintiff's alternative FTE method of counting the number of employees for purposes of qualifying for a PPP loan, and thus subsequent loan forgiveness, which proposed method counts the number of staff based on the number of hours they worked as a fraction of the hours of a full-time employee. SAC ¶ 40. Instead, as defendants succinctly argue, the statute prescribes a simple and straight-forward method to calculate the

14

number of individuals a nonprofit employs to determine its eligibility for a PPP loan: "one employee plus one employee equals two employees." Defs.' Mem. at 13.

Further support for this conclusion is found elsewhere in the statute. Specifically, Congress drafted other provisions of the statute to require FTE calculation for certain purposes. For example, Congress specified the use of the FTE method to determine reductions in loan forgiveness proportional to a borrower's reduction in its number of FTE employees. 15 U.S.C. § 636m(d)(2)(A). "[H]ad Congress intended" to authorize prospective loan applicants to calculate its number of employees using the FTE method in 15 U.S.C. § 636(a)(36)(D), "it would have done so," as it did in Section 636m(d)(2)(A). *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 34 (2016); *see also Barnhart*, 534 U.S. at 452 ("[I]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

Faced with the statute's plain language, plaintiff offers a smattering of rhetorical questions and misplaced arguments—none of which confronts the statute's text. *See* Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") at 2-11, 14-22, ECF No. 36. First, plaintiff argues that the statute's definition of "employee" was meant "to distinguish workers who are employed by [eligible organizations] from workers who 'operate under a sole proprietorship or as an independent contractor and eligible self-employed individuals.'" Pl.'s Opp'n at 21 (emphasis omitted) (quoting 15 U.S.C. § 636(a)(36)(D)(ii)). Plaintiff's argument, pointing to a separate provision that does not provide a method to count employees for purposes of loan eligibility, however, is of no persuasive help in reading the statutory provision which *does* exactly that. *See* 15 U.S.C. §

15

636(a)(36)(D)(v). Moreover, as defendants correctly point out "it would not make sense for the statute to define 'employee' as a means of distinguishing 'self-employed' when the statute expressly and separately defines the term 'eligible self-employed individual.'" Defs.' Reply Supp. Mot. ("Defs.' Reply") at 4-5, ECF No. 39 (citing 15 U.S.C. § 636(a)(36)(A)(v), which adopts the definition of "eligible self-employed individual" from § 7002(b) of the Families First Coronavirus Response Act).

Second, plaintiff asserts that "there is little reason to think that, in its rush to pass the CARES Act, Congress implicitly established Defendants' formula for counting employees" and that doing so would "oppose the essence of the PPP." Pl.'s Opp'n at 19, 21. Clear statutory text is no "little reason," however. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Here, Congress did not "implicitly" establish defendants' formula for counting employees, the text did so *explicitly* in defining "employee" "[f]or purpose of determining whether a . . . nonprofit organization . . . employs not more than 500 employees" as including "individuals employed on a full-time, part-time, or other basis." 15 U.S.C. § 636(a)(36)(D)(v). Further, "no legislation pursues its purpose at all costs" and deciding which nonprofits were eligible for, and could receive, PPP loans "is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). Congress made a choice to decide how "small" a nonprofit had to be to be eligible for a PPP loan, and thus receive PPP loan forgiveness. *See* 15 U.S.C. § 636(a)(36)(D)(v); *id.* § 636m(b) (limiting forgiveness to only "eligible recipient[s]"). That decision, and "not individual policy preferences," governs resolution of the parties' interpretive dispute. *Loper Bright*, 603 U.S. at 403.

16

Third, plaintiff cites to "sources of official guidance" that refer to the FTE method, including the PPP loan application, the April 2020 IFR, and the PPP promissory note.  Pl.'s Opp'n at 17.  Nowhere do these documents suggest, however, that a PPP loan applicant could, or should, count employees using the FTE method to determine eligibility for such a loan.  AR at 167-70 (PPP loan Application); AR at 35-41 (April 2020 IFR); AR at 273-92 (promissory note).  To the contrary, the sources' "use [of] the phrase 'full-time equivalent employees,'" Pl.'s Opp'n at 17, is unremarkable given the fact that the number of FTE employees was necessary to determine potential reductions in loan *forgiveness* proportional to a borrower's reduction in its number of full-time equivalent employees during the relevant period, 15 U.S.C. § 636m(d)(2)(A).  For loan *eligibility* purposes, Congress directed applicants to count each individual employee regardless of the basis of their employment—full-time, part-time, or other.  15 U.S.C. § 636(a)(36)(D)(v).  On April 26, 2020, after PPP loan disbursements began, SBA issued a statement reiterating this distinction and reminding applicants that "[f]or purposes of loan eligibility, . . . [a] borrower must . . . calculate the total number of employees, including part-time employees, when determining their employee headcount for purposes of the eligibility threshold," as mandated by the plain text of the statute.  AR at 143.  Plaintiff attempts to frame this statement as a "*revision* of the counting method," Pl.'s Opp'n at 15 (emphasis in original), but the guidance did not impose any new requirements for loan eligibility.  Instead, this guidance merely "remind[ed] parties of existing statutory or regulatory duties," "track[ed] preexisting requirements[,] and explain[ed] something the statute . . . already required."  *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014) (cleaned up).[4]

---

[4]    Plaintiff argues that defendants' interpretation of the definition of "employee" to exclude students participating in the federal work-study program undermines the plain language of the statute.  Pl.'s Opp'n at 3. This is simply not persuasive since the purpose of the federal work-study program, "a federally subsidized financial aid program," is to provide a form of financial aid to help students afford their educational program and continue in the

In sum, "[j]udges are not free to overlook plain statutory commands." *Bostock v. Clayton County*, 590 U.S. 644, 683 (2020). "[W]hen the meaning of the statute's terms is plain, [the court's] job is at an end." *Id.* at 674. Here, defendants did not act contrary to law when they appropriately construed the statute's definition of "employee" for purposes of loan eligibility, and thus loan forgiveness, as requiring 500 or fewer total employees regardless of the basis of their employment and not plaintiff's proposed FTE method.

### 2.    *Arbitrary and Capricious*

Plaintiff also alleges that defendants acted arbitrarily and capriciously in denying its loan forgiveness application. SAC ¶ 297. Defendants are correct this portion of plaintiff's claim is untenable based on the administrative record. Defs.' Mem. at 11-14.

Under the arbitrary and capricious standard, courts are "highly deferential to the agency's decision and presume[] that the agency action is valid." *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1336 (D.C. Cir. 2023) (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 863 (D.C. Cir. 2019)). An agency's action will be upheld as long as the agency "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Columbia Gulf Transmission, LLC v. FERC*, 106 F.4th 1220, 1230 (D.C. Cir. 2024) (brackets omitted) (quoting *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016)). "Agency action is arbitrary and capricious if it 'has relied on factors which Congress has not intended it to consider, entirely failed to consider

---

status as a student, and thus, its "primary purpose" is to "advance education" and not to meet employment needs. Business Loan Program Temporary Changes; Paycheck Protection Program 85 Fed. Reg. 27,282, 27,289 (May 8, 2020); *id.* ("[Work-study programs] . . . provide part-time jobs to students with financial need, and their services are incident to and for the purposes of pursuing a course of study."). In any event, defendants' decision to exclude students who participate in federal work-study programs from a nonprofit educational institution's total employee count has no bearing on the outcome of this case as plaintiff exceeds the 500-employee cap regardless of whether work-study students are counted, or not, in plaintiff's employee count. Without counting work-study students, plaintiff employed 808 individuals. AR 183; *Gordon I*, 2024 WL 3471261, at *12 (making this point).

an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) (quoting *State Farm*, 463 U.S. at 43).

The administrative record reflects that SBA properly examined the relevant considerations and articulated satisfactory reasons for denying plaintiff's loan forgiveness application. Concluding that plaintiff "had more than 500 employees," AR at 205, SBA properly conducted "[a] thorough analysis of the IRS 941 reports and additional supporting documentation," plaintiff submitted, which "confirm[ed] that [plaintiff] exceeded the maximum allowable number of employees and therefore d[id] not qualify under the SBA small business size standard qualifications for a [PPP] loan," *id.* at 140. A review of the administrative record reinforces that "there is no shortage of . . . evidence . . . that [plaintiff] exceeded the 500-employee threshold and was consequently ineligible for the PPP loan." *Id.* at 205-06. In fact, plaintiff does not dispute employing more than 500 employees at the time of submission of its PPP loan application, *id.* at 183, 205-06, but only the interpretation of how it was meant to count them, *see* Pl.'s Opp'n at 14-25. Accordingly, "the process by which [the agency] reache[d] [its] result [was] logical and rational" and easily satisfies arbitrary and capricious review. *Michigan*, 576 U.S. at 750 (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).

In light of this reasoned decision-making and plaintiff's concession about employing more than 500 employees at the time of applying for the PPP loan, none of plaintiff's arguments intended to show the denial of its loan forgiveness was arbitrary and capricious hold water.

First, plaintiff suggests that because the administrative record "contains no intra- or inter-agency communications that might suggest motive" for denying plaintiff's loan forgiveness application, that record "might as well be 1,744 blank pages." Pl.'s Opp'n at 44. Basic black-letter law provides, however, that "in reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019). This fundamental principle "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Id.* (quoting *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). While a "narrow exception to the general rule against inquiring into 'the mental process of administrative decisionmakers'" may be available on a "strong showing of bad faith or improper behavior," *id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)), plaintiff provided no factual support, let alone made "a significant showing," *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011), that satisfies that standard here—nor could plaintiff make such a showing given the clarity in the statutory text.[5]

Second, plaintiff contends it was treated differently from similarly situated colleges. SAC ¶¶ 7, 218-35; *id.*, Ex. 8 ("List of Colleges") at 2-4, ECF No. 31-8; Pl.'s Opp'n at 2-3, 30. To be sure, "an agency may not treat like cases differently." *Eagle Broadcasting Grp., Ltd. v.*

---

[5]    Plaintiff's mere suspicion of animus simply does not satisfy that standard. *See* SAC ¶ 325 (alleging that defendants' actions "*may* be motivated by animus" (emphasis added)). Despite plaintiff's protestations that it is "impossible to obtain, and fundamentally unfair to require, proof of animus or other motive without some discovery," Pl.'s Opp'n at 43, the "APA is not a discovery mechanism," *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 328 (D.D.C. 2018). In other words, plaintiff "cannot use the APA to justify a fishing expedition for evidence that defendants were motivated, not by their stated reason[s] . . . , but by a discriminatory policy that plaintiff believes exists." *Id.*

*FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009) (quoting *Freeman Eng'g Assocs., Inc. v. FCC*, 103

F.3d 169, 178 (D.C. Cir. 1997)).  A similarly situated comparator is one that is "*prima facie*

identical in all relevant respects, or directly comparable . . . in all material respects."  *Muwekma*

*Ohlone Tribe v. Salazar*, 813 F. Supp. 2d 170, 197 (D.D.C. 2011) (alteration in original) (quoting

*Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677,680 (7th Cir. 2005), *aff'd*,

708 F.3d 209 (D.C. Cir. 2013).  In this case, a similarly situated comparator would, at a

minimum, be one that: (1) is a nonprofit college; (2) had more than 500 employees at a single

location, while excluding federal work-study students from the total headcount; (3) used the FTE

method to calculate the number of employees in applying for a PPP loan; (4) received a PPP

loan; (5) applied for PPP loan forgiveness; (6) had the PPP loan forgiveness application trigger a

"hold code" indicating potential eligibility issues and prompting SBA's close scrutiny; and (7)

received loan forgiveness despite triggering a hold code and employing more than 500

employees at a single location while excluding federal work-study students from the total

headcount.

      Plaintiff's complaint ultimately does not allege sufficient facts about any proposed

comparators and suffers from significant substantive defects.  While plaintiff makes the broad

allegation that other colleges used the FTE method to calculate the number of employees on their

PPP loan applications and received loan forgiveness, SAC ¶ 44, this allegation, standing alone,

falls far short of showing the colleges were similarly situated in all relevant characteristics.  Put

simply, plaintiff offers insufficient "facts to support its conclusory allegation that [they] are

similarly situated."  *Gordon I*, 2024 WL 3471261, at*11; *see also Monkey Jungle*, *Inc. v. SBA*,

No. 22-cv-2537 (JDB), 2024 WL 3987016, at *11 (D.D.C. Aug. 29, 2024) (rejecting a dissimilar

treatment APA claim where plaintiff "fail[ed] to make any 'significant showing' that the[]

entities are genuinely 'analogous'" (quoting *Republic Airline Inc. v. U.S. Dep't of Transp.*, 669

F.3d 296, 300 (D.C. Cir. 2012))). [6]  For example, with respect to the first similar characteristic,

*i.e.*, being a nonprofit college, plaintiff's List of Colleges attached to its second amended

complaint identifying the supposedly similarly situated colleges contains "Asa College," which

is classified as a "corporation" and not a nonprofit organization, *see* List of Colleges at 2,

undermining plaintiff's position that the exhibit in fact "shows that the government has treated it

differently from a similarly situated party," *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209,

215 (D.C. Cir. 2013).

In addition, while alleging that other colleges used the FTE method to calculate fewer

than 500 employees but employed over 500 employees and still received forgiveness, SAC ¶¶

218-35, plaintiff does not account for the fact that "other colleges . . . were [potentially] eligible

for forgiveness on grounds unavailable to [plaintiff]."  Defs.' Mem. at 18.  As previously

discussed in *Gordon I*, higher education institutions could exclude work-study students from

their total employee count, and this could, in some instances, reduce a college's total number of

employees to under 500—as was the case in Husson University, one of plaintiff's alleged

similarly situated comparators.  2024 WL 3471261, at *12; Business Loan Program Temporary

---

[6]        In opposition, plaintiff raises for the first time allegations that an additional 145 colleges not identified in its second amended complaint, were similarly situated, for a total of 170 such colleges.  SAC, Decl. of Philip D. Eskeland, Attach. 1 ("2d List of Colleges"), ECF No. 38-1.  These allegedly similarly situated comparators were not presented to the SBA during the administrative process.  In any event, like the initial 25 colleges, plaintiff does not allege that these comparators satisfy all the relevant characteristics discussed in the text nor provide analysis that these additional colleges are similarly situated in "all of the relevant aspects."  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295 (D.C. Cir. 2015).  Indeed, two purported comparators on the new list of colleges are reported as "professional associations" and not nonprofit colleges, calling into question whether the list accurately reflects appropriate comparators.  2d List of Colleges at 1, 5 (listing "Crown College" and "Albion College" as "professional associations").  Given the insufficiency of the factual pleading and analysis, the declaration of Jacon C. Frulla submitted by defendants in reply to rebut plaintiff's belated new list by describing the process by which SBA implemented the PPP loan forgiveness application process, including how hold codes were placed on accounts that triggered closer agency review of documentation, Defs.' Reply, Decl. of Jason C. Frulla ("Frulla Declaration"), Program Analyst, SBA, ECF No. 39-1, and plaintiff's surreply responding to the Frulla Declaration, *see* Pl.'s Surreply at 1-5, ECF No. 41, are not necessary to consider.

Changes; Paycheck Protection Program 85 Fed. Reg. 27,282, 27,289 (May 8, 2020); SAC ¶¶

237-50.  In contrast to the example of Husson University, plaintiff "does not dispute that the

question whether work-study students constitute 'employees' was not at issue in its PPP loan

forgiveness application or appeal, nor that, excluding work-study students, plaintiff still has more

than 500 employees." *Gordon I*, 2024 WL 3471261, at *12; *see generally* SAC (not alleging

new facts that change the conclusion in *Gordon I*); Pl.'s Opp'n (not making any arguments that

change the conclusion in *Gordon I*).  Notably, plaintiff does not allege that *any* of the other

colleges it identifies as similarly situated would exceed the 500-employee cap when work-study

students are excluded.  *See* SAC.

Likewise, a nonprofit organization can also receive forgiveness if its physical locations

each maintain fewer than 500 employees, even if the total number of employees across all

physical locations is over 500.  *See* 15 U.S.C. § 636(a)(36)(D)(iii)(III)(aa).  Plaintiff fails to

allege that the purportedly similarly situated colleges meet this second characteristic of having

500 or more employees at the same location, *see* SAC, as plaintiff does at its Massachusetts

location alone, AR at 201, and this silence undercuts a claim that the other colleges are similarly

situated.

Moreover, the proposed comparators flunk the sixth characteristic of having a PPP loan

forgiveness application trigger a hold code prompting the agency's close scrutiny.  A hold code

was placed on plaintiff's loan forgiveness application because it reported a fractional number of

employees, 495.67, on its PPPP loan application.  AR at 232, 254, 258, 325-29.  The code

flagged that its application for forgiveness was "indicative of concern" because of a "[p]otential

eligibility issue" for its PPP Loan, which resulted in SBA's manual review of plaintiff's loan

forgiveness application and associated documentation.  AR at 232, 254, 258, 325-29.  Plaintiff

does not allege that the supposedly similar colleges' loan forgiveness applications triggered a hold code. *See SAC*. In the same vein, no factual allegations are provided that any of the purportedly similarly situated comparators meet the seventh characteristic of having received loan forgiveness despite both triggering a hold code and employing more than 500 employees at a single location (excluding federal work-study students from the total headcount), which is plaintiff's precise situation.

In sum, plaintiff has not "plausibly allege[d] that it has received inconsistent treatment" compared to any "similarly situated parties," and defendants have "offered a reasonable and coherent explanation for" any perceived "inconsistent results." *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020).[7]

In a last gasp effort to show that defendants acted arbitrarily and capriciously, plaintiff insists that defendants adopted an employee counting method contrary to its own regulations in violation of the *Accardi* doctrine. SAC ¶¶ 299, 235; Pl.'s Opp'n at 22-23. The referenced doctrine requires that agencies follow their "existing valid regulations." *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("[T]he essence of an *Accardi* claim is that an agency did not follow its rules."). An agency's

---

[7]       In any event, plaintiff's reliance on extra-record comparator evidence would not result in the relief principally sought in this lawsuit, namely: an order reversing the ALJ and directing SBA to issue plaintiff loan forgiveness. SAC (prayer for relief ¶ b); Pl.'s Opp'n at 44 ("[Plaintiff] asks the Court to . . . reverse the decisions below . . ., entitling [it] to" loan forgiveness.). "Rather, the remedy would be to . . . remand to the agency for further analysis." *Monkey Jungle*, 2024 WL 3987016, at *11 n.7. "Insofar as SBA concluded that it improperly awarded grants to other [colleges], the further step [would] be for SBA to recoup those . . . funds, not to improperly issue [loan forgiveness] to [plaintiff]." *Id.* In other words, "the law does not require the Government to perpetuate the mistake" by ordering defendants to grant loan forgiveness to plaintiff if other colleges incorrectly received loan forgiveness. *Tex. Int'l Airlines, Inc. v. Civ. Aeronautics Bd.*, 458 F.2d 782, 785 (D.C. Cir. 1971). To the extent that any colleges were not entitled to loan forgiveness but nevertheless mistakenly received loan forgiveness, defendants have expressly reserved the right to claw back such funds. June 2020 IFR, 85 Fed. Reg. at 33,012. *Cf. MomoCon, LLC, v. SBA*, No. 21-cv-2386 (RC), 2023 WL 8880335, at *10-12 (D.D.C. Dec. 22, 2023) (affirming denial of a PPP loan because "[u]nlike the initial denial, the SBA" on remand "applied its methods to those competitors and acknowledged a mistake" and instituted procedures to recoup incorrect awards). Such claw back measures, as opposed to perpetuating administrative mistakes, is logical because colleges, including plaintiff, are not "entitle[d] . . . to benefit from the . . . mistake [of receiving PPP loan forgiveness] at the taxpayer's expense." Defs.' Reply at 19.

24

failure to do so, "can be challenged under the APA." *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988).

Plaintiff's second amended complaint did not identify which supposed regulations SBA violated, SAC ¶¶ 293-302, but in opposing defendants' motion, plaintiff argues that 13 C.F.R. § 121.106 permitted SBA to create a "custom-fit" definition of employee based on the "totality of the circumstances" to "fulfill the relevant statutory goals." Pl.'s Opp'n at 24. Nowhere does plaintiff argue that SBA violated 13 C.F.R. § 121.106, only that the regulation permits SBA to adopt the FTE method in certain circumstances. *Id.* As support, plaintiff cites two cases involving another statute entirely, the HUBZone Act. *See* Pl.'s Opp'n at 24-25 (citing *Metro Mach. Corp. v. SBA*, 305 F. Supp. 2d 614 (E.D. Va. 2004) and *Aeolus Systs., LLC v. United States*, 79 Fed. Cl. 1 (Fed. Cl. 2007)). Yet, as those cited cases make clear, "*because* the [HUBZone Act] is silent on the issue of how to determine who [are] the 'employees,'" SBA could make a "discretionary decision" to define employee as "a matter of regulatory, not statutory, interpretation." *Metro Mach. Corp.*, 305 F. Supp. 2d at 623 (E.D. Va. 2004) (emphasis in original); *see also Aeolus Systs., LLC*, 79 Fed. Cl. at 6 n.9 (noting that the "HUBZone statute does not define the term 'employee'"). Here, plaintiff's position fails because the CARES Act mandates the headcount method in its definition of employee. 15 U.S.C. § 636(a)(36)(D)(v).

Accordingly, plaintiff's arguments fail to overcome the conclusion that "the agency . . . acted within a zone of reasonableness and, in particular, . . . reasonably considered the relevant issues and reasonably explained the decision" to deny plaintiff's loan forgiveness application because it employed over 500 employees at the time it applied for, and received, its PPP loan. *FCC v. Prometheus Radio Proj.*, 592 U.S. 414, 423 (2021).[8]

---

[8] After roughly two years of litigation in this Court, three complaints, and one round of dispositive briefing, plaintiff for the first time in opposition argues that "SBA never legally employed" the ALJ who adjudicated

### B.    COUNT 3: Plaintiff's Equal Protection Claim Fails.

After dismissal of the RFRA and First Amendment Free Exercise Clause claims in

*Gordon I*, plaintiff's second amended complaint "re-framed its case in terms of equal protection"

by alleging, in Count 3, "classic denial of equal treatment" under the Fifth Amendment's Due

Process and Equal Protection Clauses.  Pl.'s Opp'n at 27.  In plaintiff's view, SBA denied its

loan forgiveness even though other colleges used the FTE method to qualify for PPP loan while

allegedly employing more than 500 total employees, and those other colleges received

---

the underlying dispute before the agency, "and thus all his decisions, are invalid and must be set aside."  Pl.'s Opp'n at 8.  This wholly new attack on the ALJ is waived.  *See Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012) ("Where the . . . complaint does not make a claim, plaintiff cannot add a new claim through an opposition brief.").

       Even considered on the merits, this attack on the ALJ still fails.  First, while plaintiff argues that the "entire process of appointing ALJs to OHA for . . . appeals . . . violated statutory and constitutional law," nowhere in its pages of confusing discussion does it describe what aspects of the ALJ appointment process is unconstitutional. Indeed, plaintiff cites only one case one time for the proposition that the ALJ presiding over the administrative process at issue here "had no more power to act here than the SEC ALJs did in *Lucia v. SEC*, 585 U.S. 237 (2018)." Pl.'s Opp'n at 8.  In *Lucia*, the Supreme Court held that Securities and Exchange Commission (SEC) ALJs tasked with overseeing enforcement actions are "Officer[s] of the United States" and subject to the Appointments Clause. *Lucia*, 585 U.S. at 244.  Key to that decision was that the SEC ALJs "exercise[d] the same 'significant discretion' when carrying out . . . 'important functions' . . . [with] the authority to ensure fair and orderly adversarial hearings." *Id.* at 248 (internal citation omitted) (quoting *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991)).  Plaintiff fails to provide any analysis describing how the ALJ who adjudicated its case resembles the ALJs the Supreme Court held as unconstitutionally appointed in *Lucia*.  On the present record, there is no showing that the ALJ had any "discretion" to deny plaintiff its loan forgiveness application nor that the underlying proceedings were adversarial— SBA was not a party to the case advocating for or against loan forgiveness.  *See* 13 C.F.R. § 134.603 (describing that "adversary adjudications are administrative proceedings before OHA which involve SBA as a party" and do not include OHA proceedings "such as" "appeals" of "loan review decisions," like in this case, found in 13 CFR § 134.102); *see Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (reasoning, in a case involving Social Security Administration, that the proceedings were not adversarial because the regulations ensured a nonadversarial process and "[the ALJ] has no representative before [it] to oppose the claim for benefits").  Second, plaintiff argues that the ALJ was labeled an "administrative judge" as opposed to a "hearing officer," the term used in the statute creating the OHA framework, *see* 15 U.S.C. § 634(i).  Pl.'s Opp'n at 7.  The regulation describing this label change, however, clearly states that an "Administrative Judge means a Hearing Officer, as described at 15 U.S.C. § 634(i)." Rules of Procedure Governing Cases Before the Office of Hearings and Appeals, 82 Fed. Reg. 25,503, 25,506 (June 2, 2017).  The label used or title for the ALJ, made pursuant to a final rule that plaintiff does not challenge, does not *ipso facto* render the ALJ's employment illegal.  Third, plaintiff's remaining argument is that the ALJ served contrary to the statute because plaintiff asserts the ALJ was "not classified" at the proper employment, or "General Schedule," level to hold his position.  Pl.'s Opp'n at 8 (citing 15 U.S.C. § 634(i)(3)(B)).  The only "fact" cited to support this assertion is a non-government affiliated website that does not "guarantee that information" provided is "100% accurate or complete," but purportedly shows that the ALJ got paid at a lower employment level.  Pl.'s Opp'n at 8 n.8 (citing to the ALJ's profile on www.govsalaries.com).  Plaintiff's leap from this information to a conclusion that SBA did not legally employ the ALJ is unadorned with any citation to case law and is rejected.

forgiveness. *Id*.; SAC ¶¶ 313-45.[9]  Defendants seek dismissal of Count 3, on grounds, first, that

plaintiff has failed to allege facts sufficient to establish standing, and, second, even if standing is

present, plaintiff "has not sufficiently alleged intentional discrimination, and this Court has

already held that the PPP's 500-employee cap survives rational basis."  Defs.' Reply at 16; *id*. at

2 (arguing that plaintiff "has not alleged non-conclusory facts that SBA discriminated against it"

nor "alleged sufficient facts to support a finding that it was treated differently than materially

similar entities in violation of [plaintiff's] equal protection rights").

     While plaintiff does have standing to bring the equal protection claim in Count 3, this

claim fails to state a claim for relief and must be dismissed.

### 1.   *Standing*

     "Article III confines the federal judicial power to the resolution of 'Cases' and

Controversies.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  A case presents a

---

[9]    Tucked in a footnote in its 367-paragraph-long second amended complaint, plaintiff argues that "to the extent these equal-protection claims are better analyzed 'under the Free Exercise Clause,' Plaintiff pleads this cause of action under that Clause as well,"  SAC ¶ 315 n.26 (quoting *Gordon I*, 2024 WL 3471261, at *9), with another passing reference, in opposition briefing, to "Free Exercise principles[] as may be appropriate," Pl.'s Opp'n at 27, but absolutely no further development of any such claim or argument.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority," like plaintiff's arguments here, are typically "deemed waived."  *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 265 (D.D.C. 2018) (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)). These oblique references to "the Free Exercise Clause" are, accordingly, deemed waived.

    In any event, no new factual allegations in the second amended complaint cure the fundamental flaws previously found to have doomed plaintiff's prior claim for relief under the Free Exercise Clause of the First Amendment.  Namely, plaintiff has failed to allege facts that "identify any 'exercise of religion' that has been burdened" by the 500-employee cap or "sincere religious belief" in employing over 500 people.  *Gordon I*, 2024 WL 3471261 at *6, 10; *see* SAC ¶¶ 313-45.  To the extent the new allegation that "having more than 500 employees is essential to [plaintiff's] central mission of Christian education" and that "application of the 500-employee cap . . . burdens [its] religious exercise by pressuring it to consider reductions of its part-time staff to meet such a cap," SAC ¶ 317, was added to support a Free Exercise clause claim, this allegation fails to provide *facts* regarding how and why the 500-employee cap "prevent[s] conduct required by [plaintiff's] religion or placed substantial pressure on [it] to violate [its] beliefs."  *Ferguson v. Owen*, No. 23-5102, 2024 WL 120099, at *1 (D.C. Cir. Jan. 11, 2024).  No newly alleged facts, *see* SAC ¶¶ 313-45, undermine this Court's prior finding that "the application of the PPP's 500-employee cap to plaintiff is neutral and generally applicable," surviving "rational basis review."  *Gordon I*, 2024 WL 3471261, at *10; *see* Pl.'s Opp'n at 31 (claiming, unadorned with case law or reasoning, that "the claim has a real shot under rational basis").

"case or controversy under Article III," when the plaintiff has "a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*

Defendants principally argue that plaintiff has not sufficiently alleged an injury in fact to establish standing. Defs.' Reply at 14-16. Specifically, defendants claim that plaintiff's alleged injury of facing "stigma and personal injury from discrimination itself" fails to "support a finding of standing" because plaintiff "has failed to allege sufficient facts to support a finding that SBA discriminated against it." Defs.' Reply at 14-15. This argument conflates what plaintiff must show to establish standing with what plaintiff must show to succeed on the merits. As the D.C. Circuit has observed, "[w]hether a plaintiff has a legally protected interest that supports standing does not require that he show he will succeed on the merits; if it did, every merits loss would amount to a lack of standing." *Estate of Boyland v. U.S. Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019). To avoid that outcome, "[f]or purposes of analyzing plaintiff's standing, [the court] make[s] the requisite assumption that [plaintiff] would prevail on the merits of [its] claim." *Id.* "[A]ssum[ing][] *arguendo*, the merits of [plaintiff's] legal claim," *id.* (quoting *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007)), plaintiff's alleged injury of stigma and personal injury from discrimination, SAC ¶¶ 313-43, easily satisfies the standing standard, *see Heckler v. Mathews*, 465 U.S. 728, 739 (1984) (recognizing that "discrimination itself" causes "serious non-economic injuries" by "stigmatizing members of the disfavored group").[10]

---

[10]    Puzzlingly, neither side argues that, assuming plaintiff would prevail on the merits of its claims, defendants' denial of a $7,046,0367 loan in violation of plaintiff's equal protection rights would also satisfy the

While neither side seriously disputes that plaintiff meets the second and third prerequisites for standing, these prongs are addressed because courts "have an affirmative obligation" to assure itself of its jurisdiction. *Ludwig*, 82 F.3d at 1092. Plaintiff has alleged that its injury, stigma or discrimination resulting in unfair treatment, is "fairly traceable to the challenged action of the defendant," *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))—namely, the denial of its loan forgiveness application in violation of its equal protection rights, *see* SAC ¶¶ 29, 343. This is sufficient to satisfy the second prong. Finally, "a favorable decision by the court would redress . . . plaintiff's injury." *Id.* "If this court were to give [plaintiff] what [it] wants," *i.e.*, an order directing the SBA to grant its loan forgiveness application, *see* SAC (prayer for relief), "the differential treatment because of" its religious affiliation "would disappear." *Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1180 (D.C. Cir. 2015). *See also id.* (noting that "in analyzing the redressability prong of standing, it must be remembered that 'a court sustaining' an equal protection claim" can order at least "two remedial alternatives: [it] may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion" (brackets in original) (quoting *Heckler*, 465 U.S. at 738-39)). Thus, plaintiff has standing to raise the equal protection claim in Count 3.

### 2.    *Equal Protection*

Although the Fifth Amendment does not contain an Equal Protection Clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause, which applies to the

---

injury prong. *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.").

federal government, as containing an equal protection guarantee. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991) (applying "the equal protection component of the Fifth Amendment's Due Process Clause" to resolve a dispute). That guarantee is concomitant with the protection afforded by the Fourteenth Amendment's Equal Protection Clause. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995) (noting that courts "treat the equal protection obligations imposed by the Fifth and the Fourteenth Amendments as indistinguishable"); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 104 F. Supp. 2d 58, 65 n.3 (D.D.C. 2000) (noting that the "guarantee of equal protection" in the Fifth Amendment "is coterminous with the Fourteenth Amendment Equal Protection Clause"). As such, "[t]he liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

Lawsuits asserting violations of equal protection rights may be framed in various ways, including, for example, allegations that (1) "the government has expressly classified individuals based on their [protected characteristic]"; (2) "the government has applied facially neutral laws or policies in an intentionally discriminatory manner"; or (3) "facially neutral laws or policies result in . . . disproportionate impact and are motivated by a . . . discriminatory purpose." *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 63 (D.C. Cir. 2016) (internal citations and quotation marks omitted); *see also Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (noting that the government would have engaged in "selective prosecution" or enforcement of a law if it singled out the plaintiff from among others similarly situated due to improper motivation, *i.e.*, "based on race, religion or another arbitrary classification" (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983))); *Vill. of Willowbrook v. Olech*, 528

30

U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Plaintiff's claim flops under any of these theories because the factual allegations underlying Count 3 fail sufficiently to allege similarly situated comparators, dissimilar treatment because of a protected characteristic, intentional differential treatment, and that the 500-employee cap, or the denial of its loan forgiveness application because of application of the 500-employee cap, lacks a rational basis.

At bottom, equal protection directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 313 (1985). "The Constitution, however, does not require things which are different in fact or opinion to be treated in law as though they were the same." *Women Prisoners of D.C. Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) (citation and internal quotation marks omitted). Accordingly, "[t]he threshold inquiry in evaluating an equal protection claim is, therefore, to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *Id.* (citation and internal quotation marks omitted). Plaintiff has failed to make this threshold showing.

Plaintiff's equal protection claim relies on the same assumption already rejected, *see supra* Part III.A.2, that the agency's alleged grant of loan forgiveness to certain colleges with a headcount of more than 500 employees, when they used the FTE method to report fewer than 500 employees for purposes of PPP loan eligibility, violated its rights. For the same reasons, *id.*, plaintiff has failed to allege sufficient facts about how it is similarly situated to the identified colleges in all relevant respects or characteristics. Indeed, as described above, plaintiff fails to

allege facts that these comparators are all nonprofit colleges (characteristic 1), that these comparators had more than 500 employees at a single location, while excluding federal work-study students from the total headcount (characteristic 2), that the comparators' PPP loan forgiveness applications triggered a hold code indicating potential loan eligibility issues (characteristic 6), and that the comparators received loan forgiveness despite triggering a hold code and employing more than 500 employees at a single location while excluding federal work-study students from the total headcount (characteristic 7). Additionally, relevant for purposes of plaintiff's equal protection claim, plaintiff almost entirely omits allegations that those who received favorable treatment were non-religious colleges. Out of all the purportedly similar colleges, plaintiff alleges that only sone was secular: Husson University. SAC ¶ 237. While Husson University may be secular, it is not comparable because it does not share characteristic 2 as it had fewer than 500 employees excluding federal work-study students, nor, for the same reason, characteristic 7. *See supra* Part III.A.2.

Plaintiff, thus, does not allege sufficient facts to conclude that it is "similarly situated" to the colleges it has identified who received PPP loan forgiveness, failing to clear "a required 'threshold showing'" to state an equal protection violation claim. *Richards v. Gelsomino*, 814 F. App'x 607, 610 (D.C. Cir. 2020); *see also Henderson v. Kennedy*, 253 F.3d 12, 17-18 (D.C. Cir. 2001) (dismissing plaintiffs' religious equal protection claim for, *inter alia*, failing to show they were similarly situated to other t-shirt vendors on the National Mall); *Muwekma Ohlone Tribe*, 708 F.3d at 217 (rejecting the plaintiff's equal protection claim for failing to show that it was similarly situated to other tribes who were allegedly treated more favorably).

Even if plaintiff made the necessary threshold showing of dissimilar treatment, its equal protection claim would still fail as plaintiff has not plead "sufficient factual matter" permitting

the plausible inference "that the defendant[s] acted with discriminatory purpose" "on account of . . . religion," *Iqbal*, 556 U.S. at 676, in denying its PPP loan forgiveness application.  On this point, plaintiff does not even allege defendants were aware of plaintiff's religious affiliation, a flaw observed in the prior round of briefing.  *Compare Gordon I*, 2024 WL 3471261 *11 ("Plaintiff does not even allege that SBA knew of its religious affiliation."), *with* SAC.  Indeed, a review of the complaint and its attachments reveals that nothing in plaintiff's PPP loan application suggests that plaintiff was a religious college.  *See* SAC; *id*., Ex. 4 (PPP Loan Application), ECF No. 31-4.[11]  In addition to that pleading deficiency, plaintiff effectively concedes that the second amended complaint fails to allege non-conclusory allegations of religious discrimination, arguing that "discovery" is needed to understand defendants' intent in denying its application.  *See* Pl.'s Opp'n at 39 ("Whether that intent was benign or invidious is a question that only discovery can resolve.").  "[T]he doors of discovery," however, are not "unlock[ed]," absent "factual" allegations, "accepted as true," that "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. 678-79.

Here, putting aside merely conclusory allegations, which do not suffice, and accepting all factual allegations as true, and construing the complaint in favor of plaintiff, the allegations fail to support a claim that defendants denied plaintiff's loan forgiveness application "because of" its religion or intentionally treated plaintiff differently than other similarly situated colleges.  *See, e.g.*, *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1147-48 (D.C. Cir. 2023) (affirming dismissal of plaintiff's equal protection claim for failing to allege sufficient

---

[11]    Many of the exhibits attached to plaintiff's complaint are also in the administrative record.  Joint Appendix, ECF No. 42.  In ruling on a motion to dismiss, "the Court may consider . . . documents attached to or incorporated by reference in the complaint," *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017), which is why the exhibits are relied upon, as opposed to citations to the administrative record, in discussing the claims that defendants seek to dismiss under Rule 12(b)(6).

facts that defendants took action "because of, not merely in spite of" plaintiffs' viewpoint

(quoting *Iqbal*, 556 U.S. at 681)); *Alive Church of the Nazarene, Inc. v. Prince William County*,

59 F.4th 92, 113 (4th Cir. 2023) (affirming dismissal of plaintiff's religious equal protection

claim because it failed to allege facts suggesting a zoning ordinance was passed "with religious

animus"); *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 869 (8th Cir. 2023) (affirming

dismissal of plaintiff's religious equal protection claim because plaintiff "ha[d] not plausibly

alleged" "similarly situated" comparators, "that it was treated differently," "[n]or ha[d] it

plausibly alleged that the" law "was discriminatory on its face or had a discriminatory purpose or

impact").

      Given that the 500-employee cap is "facially neutral . . . and no showing of intent to

discriminate" has been made, plaintiff's "equal protection attack" can "succeed only with an

argument that the polic[y] lack[s] a rational basis." *In re Navy Chaplaincy*, 738 F.3d 425, 430

(D.C. Cir. 2013). This "highly deferential" standard "entitle[s]" the 550-employee cap "to a

presumption of rationality." *Dixon v. District of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir.

2011). A "social or economic policy" "must be upheld 'if there is any reasonably conceivable

state of facts that could provide a rational basis' for the legislative choice." *Sanchez v. Off. of St.

Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022) (quoting *FCC v. Beach Commnc's*,

*Inc.*, 508 U.S. 307, 313 (1993)). "A plaintiff bringing a constitutional challenge to a regulation

on rationality grounds thus faces the unenviable task of refuting 'every conceivable basis which

might support it.'" *Id.* (quoting *Beach*, 508 U.S. at 315).

      Like the first review of the asserted claims in this case, plaintiff "makes little attempt to

satisfy its burden here." *Gordon I*, 2024 WL 3471261, at *13. With respect to the 500-

employee cap generally, plaintiff does not dispute that it survives rational basis. Pl.'s Opp'n at

41 (arguing only that its difference in treatment is not rational as opposed to the law itself); *Gordon I*, 2024 WL 3471261, at *13 (finding the 500-employee cap easily survives rational basis). Without any citation to case law, plaintiff simply argues that defendants' denial of loan forgiveness was "irrational" when other colleges were granted loan forgiveness, seemingly drawing upon "class of one" jurisprudence. Pl.'s Opp'n at 38; *see Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605 (2008) ("[T]he class-of-one theory of equal protection . . . presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review."). As already discussed, however, plaintiff has failed to allege these other colleges are similarly situated to it in all relevant respects, or that it was *intentionally* treated differently. Even if the government had to rely on a rational basis to "treat" plaintiff "differently," *Enquist*, 553 U.S. at 605, the fact that plaintiff's application for loan forgiveness triggered a hold code because of the reported fractional number of employees on its PPP loan application, leading to a manual review and close examination of plaintiff's employee-count documentation and, ultimately, denial of its loan forgiveness application—a sequence of events, with each step leading inexorably to the next—easily satisfies rationality. *See* SAC, Ex. 2 ("SBA Initial Decision") at 2, ECF No. 31-2; *see Enquist,* 553 U.S. at 603 (denying a "class of one" equal protection claim because government action often involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments"); *Lillemoe v. U.S. Dep't of Agric., Foreign Agric. Serv.*, 344 F. Supp. 3d 215, 230 (D.D.C. 2018) ("Given the discretion afforded [to the government] in administering the program and acting on thousands of individual guarantee applications . . . the Court will not second-guess [its] decision to prevent [plaintiffs] from using rented trade flow transactions in the program, even while allowing others to do so at the same time.").

***

Despite the amount of ink spilled over fifteen briefing pages by plaintiff in trying to bolster Count 3, Pl.'s Opp'n at 26-41, the takeaway is simple: plaintiff has failed to allege facts sufficient to state a claim that defendants' actions violated its equal protection rights.[12] Accordingly, defendants' motion to dismiss Count 3 for failure to state a claim is granted.

### C.    COUNT 4: Plaintiff Fails to State a Due Process Violation.

Plaintiff alleges, in Count 4, that defendants violated its procedural due process rights during the administrative process by failing to provide a "fundamentally fair, judicial-like process."  SAC ¶¶ 259, 346-47.  Defendants argue that plaintiff's challenges to the procedural integrity of the administrative process fail to support a due process claim because none of the "alleged procedural deficiencies prejudiced [plaintiff]."  Defs.' Reply at 2; *id*. at 34, 36 (contending that plaintiff "received sufficient . . . process" has failed to allege that any "procedural defects affected the outcome of its OHA appeal").  Defendants are correct.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V. To prevail on a procedural due process claim, plaintiffs must show (1) that they "were deprived of a

---

[12]    To the extent plaintiff argues that its equal protection rights were violated because the application of the 500-employee cap burdens its fundamental religious rights, *see* Pl.'s Opp'n at 28; SAC ¶¶ 314-318, its arguments are wholly duplicative of its free exercise claims rejected in *Gordon I* and *supra* Part III.B. n.9.  To be sure, courts apply "strict scrutiny" when a law "jeopardizes exercise of a fundamental right."  *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  Here, though, "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *Wirzburger v. Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) (citing *Locke v. Davey*, 540 U.S. 712, 721 n.3 (2004)); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (same); *see also We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 158 (2d Cir. 2023) ("While plaintiffs are correct that the free exercise of religion is a fundamental constitutional right, we have already concluded that the Act does not impermissibly burden plaintiffs' free exercise rights.  Plaintiffs' attempt to argue that they need only 'demonstrate a burden on a fundamental constitutional right,' rather than plead a Free Exercise Clause claim under the applicable tests, is without support in the Supreme Court's cases." (internal citations omitted)).  As such, for the same reasons stated above, plaintiff has failed to state a claim that the 500-employee cap burdens its fundamental rights, and the law survives rational basis review.  *See supra* Part III.B. n.9; Part III.B.2.

protected interest, and" (2) that they did not receive "the process they were due." *Statewide*

*Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020) (quoting *UDC*

*Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of Univ. of D.C.*, 56 F.3d 1469,

1471 (D.C. Cir. 1995)).  The parties here assume that plaintiff has a protected interest and only

dispute whether the process provided during the administrative proceedings were sufficient.

Defs.' Mem. at 34 n.9; Pl.'s Opp'n at 41-44.

"The essential requirements of due process . . . are notice and an opportunity to respond."

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Here, plaintiff does not dispute

that proper notice was provided but challenges aspects of the administrative appeal process for

lacking "procedural integrity," critiquing the ALJ for the following: (1) "fail[ing] to close the

Administrative Record at any point in the OHA appeal"; (2) "fail[ing] to rule on [plaintiff's]

*Objections to Administrative Record* prior to [the] ALJ . . . issuing his Initial Decision"; and (3)

admitting SBA's supplement as a reply, which "did not exist at the time of the original SBA loan

examiner decision."  SAC ¶ 357.  As an initial matter, "[t]he fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful manner."

*Statewide Bonding,* 980 F.3d at 118 (quoting *Mathews*, 424 U.S. at 333).  Despite the critiques of

certain actions taken by the ALJ, plaintiff had an opportunity to be heard with respect to the

applicable evidence in both its initial appeal to SBA's decision, SAC, Ex. 7 ("Pl.'s Initial Appeal

Decision"), ECF No. 31-7, and its reconsideration petition, SAC, Ex. 3 ("Pl.'s Recon. Pet."),

ECF No. 31-3.  Plaintiff also had the opportunity to raise and explain its objections to SBA's

supplement before the ALJ issued a final decision, SAC, Ex. 15 ("Pl.'s Obj. to SBA Supple."),

ECF No. 31-15.  Plaintiff "may have desired a greater opportunity to present [its] case than the

limited nature of the . . . hearing provided," *La. Ass'n of Indep. Producers & Royalty Owners v.*

*FERC*, 958 F.2d 1101, 1115 (D.C. Cir. 1992), but "the procedures" were "tailored . . . to [e]nsure that [it] [was] given a meaningful opportunity to present [its] case," *Mathews*, 424 U.S. at 349.

Moreover, plaintiff's due process claim fails for at least two additional, independent reasons. First, plaintiff neither alleges nor argues that any of the procedural defects affected the outcome of its administrative appeal. *See* SAC ¶¶ 346-66; *see* Pl.'s Opp'n at 41-44. Consequently, even assuming the alleged ALJ actions occurred as alleged, any error, whether constituting a due process violation or not, would essentially be harmless "because . . . the agency's mistake did not affect the outcome," and "if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) (quoting *PDK Lab'ys, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)). Indeed, none of the critiqued ALJ actions changes the reality that plaintiff employed more than 500 employees in one location, and plaintiff does not allege otherwise. *See* SAC; *id.*, Ex. 1 ("SBA Final Decision") at 5-6, ECF No. 30-1. Thus, plaintiff has not alleged, and likely could not allege, any prejudice. *See Horning v. SEC*, 570 F.3d 337, 437 (D.C. Cir. 2009) (holding, in an agency action, "[i]n the absence of any suggestion of prejudice, we cannot conclude that [plaintiff] was deprived . . . of procedural due process").

Second, plaintiff does not allege or identify "what plausible alternative safeguards would be constitutionally adequate," which is a necessary element to support a due process violation. *Statewide Bonding*, 980 F.3d at 120; *see* SAC ¶¶ 346-66.[13]

---

[13] The remainder of plaintiff's opposition addressing its due process claim repackages its already rejected APA and equal protection arguments or merely restates conclusory allegations—*see, e.g.,* Pl.'s Opp'n at 42 ("[Plaintiff] challenged the whole process as a violation of the *Accardi* Doctrine."); *id.* ("[Plaintiff] also challenged the entire process as likely infected with religious animus, but proof of this would require discovery."); *id.* at 43 (arguing that lack of access to information not in the administrative record is "a Due Process problem")—and are, consequently, not persuasive.

In sum, defendants' motion to dismiss Count 4 for failure to state a claim for relief is granted.

## IV.     CONCLUSION

Consequently, for the reasons stated above, defendants' motion for summary judgment on plaintiff's APA claim in Count 1 and its motion to dismiss plaintiff's equal protection, due process, and declaratory judgment claims in Counts 2-4 of plaintiff's complaint for failure to state a claim is granted.  An order consistent with this memorandum opinion will enter contemporaneously.

Date: May 28, 2025

_____
**BERYL A. HOWELL**
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GORDON COLLEGE,

            Plaintiff,

        v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION, *et al.*,

            Defendants.

Civil Action No. 23-614 (BAH)

Judge Beryl A. Howell

## <u>ORDER</u>

Upon consideration of plaintiff Gordon College's Second Amended Complaint ("SAC"), ECF No. 31; defendants United States Small Business Administration, Kelly Loeffler, in her official capacity as Administrator of SBA, and the United States' Partial Motion for Summary Judgment and Partial Motion to Dismiss the SAC, ECF No. 32; the related legal memoranda, declarations, and exhibits submitted in support and in opposition; and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby—

**ORDERED** that defendant's Partial Motion for Summary Judgement and Partial Motion to Dismiss, ECF No. 32, is **GRANTED**; it is further

**ORDERED** that defendants' motion for summary judgment, on Count 1 in plaintiff's SAC, is **GRANTED**; it is further

**ORDERED** that defendants' motion to dismiss Counts 2, 3, and 4 in plaintiff's SAC is **GRANTED**; it is further

**ORDERED** that Counts 2, 3, and 4 in plaintiff's SAC are **DISMISSED** without prejudice for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6); and it is further

**ORDERED** that the Clerk of the Court shall close this case.

**SO ORDERED.**

*This is a final and appealable order.*

Date:   May  28, 2025

_____
**BERYL A. HOWELL**
United States District Judge